# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, ) ) Petitioner, ) ) ) KIRSTJEN M. NIELSEN, ) Secretary of Homeland Security, ) CHRISTOPHER CRONEN, ) Immigration and Customs Enforcement, ) Boston Field Office Director, ) YOLANDA SMITH, ) Superintendent of Suffolk County ) Correctional Facility, ) STEVEN W. TOMPKINS, ) Sheriff of Suffolk County, ) ) Respondents. ) ) | Civ. No. **PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** **ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

1. Petitioner Lilian Pahola Calderon Jimenez is in immigration detention—and faces the prospect of removal—because she was seized by Immigration and Customs Enforcement (ICE) while following the very instructions that the government gave her for seeking to stay in this country while applying to become a lawful permanent resident. On January 17, 2018, ICE abruptly detained Ms. Calderon after she and her U.S. citizen husband appeared for an interview at the offices of U.S. Citizenship and Immigration Services (USCIS). Without this Court's intervention, the government will continue to detain Ms. Calderon, and may

undertake efforts remove her, in violation of federal law, federal regulations, and due process—and at great risk to her already-traumatized children.

2. Ms. Calderon is 30 years old and has lived in the United States since she was three. She has been subject to a final order of removal since her father's asylum application was denied when she was 15. She is now married to a U.S. citizen and has two U.S. citizen children, ages four and one.

3. In 2016, new regulations created a streamlined process for certain individuals—who had unlawfully entered the country and were living with final orders of removal—to seek lawful permanent residency based on a family relationship to a United States citizen. Ms. Calderon and her husband availed themselves of these regulations. In November 2016, they filed the immigration petition that constitutes the first step in this process.

4. To confirm their relationship, Ms. Calderon and her husband appeared for a USCIS interview on January 17, 2018. But after her interview, Petitioner was unexpectedly detained by ICE. Upon information and belief, ICE intends to remove Ms. Calderon based on her 2002 removal order.

5. This seizure occurred even though Ms. Calderon followed procedures that the government itself has prescribed for avoiding such a tragedy. In effect, the government's left hand beckoned her forward, and its right hand grabbed her.

6. Ms. Calderon's detention and intended removal violate and would violate the Immigration and Nationality Act and its regulations, the Administrative Procedures Act, and the U.S. Constitution's due process guarantee. Unless habeas

relief is granted, she faces removal to a country she does not know, and continued detention away from her U.S. citizen husband and children.

## PARTIES

7. Petitioner Lilian Pahola Calderon Jimenez was detained by ICE on January 17, 2018. She remains in immigration custody at the Suffolk County House of Correction in Boston, Massachusetts.

8. Respondent Kirstjen M. Nielsen is the Secretary of Homeland Security and is Petitioner's ultimate legal custodian. She is sued in her official capacity.

9. Respondent Christopher Cronen is the Field Office Director for ICE Enforcement and Removal Operations in ICE's Boston Field Office. He is one of Petitioner's legal custodians, and is sued in his official capacity.

10. Respondent Yolanda Smith is the Superintendent of the Suffolk County House of Correction and is Petitioner's immediate custodian. She is sued in her official capacity.

11. Respondent Steven W. Tompkins is the Sherriff of Suffolk County and is Petitioner's immediate custodian. He is sued in his official capacity.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and Article I, Section 9, Clause 2, of the United States Constitution (Suspension Clause).

13. Venue is proper in the District of Massachusetts because Petitioner is currently detained at the Suffolk County House of Correction in Boston,

Massachusetts, under color of the authority of the United States, in violation of the Constitution, laws or treaties thereof. 28 U.S.C. §§ 1391, 2241.

## FACTS

### I. Petitioner's immigration history.

14. Petitioner Lilian Pahola Calderon Jimenez came to the United States from Guatemala with her family in 1991, when she was three years old. Ex. 1, ¶ 3. She and her family entered the U.S. by crossing its border with Mexico. Ex. 2, ¶ 6.

15. In 1999, when Petitioner was 12 years old, an immigration judge denied her father's application for asylum, and gave her and her family 60 days to voluntarily depart the United States. Ex. 1, ¶ 4.

16. The Board of Immigration Appeals (BIA) affirmed that order in 2002, providing Petitioner and her family 30 days to voluntarily depart. When they did not leave, that voluntary departure grant automatically became a final order of removal. Ex. 1, ¶¶ 5-6; see 8 C.F.R. § 1240.26. Petitioner was 15 years old.

17. In 2008, the BIA denied a motion to reopen that immigration proceeding, filed on behalf of Petitioner and her parents. Ex. 1, ¶¶ 8-11.

18. Petitioner applied for Deferred Action for Childhood Arrivals (DACA) in May 2016. In April 2017, her application for DACA was denied because, according to the government, she had not provided sufficient evidence of her continuous presence in the United States. Ex. 1, ¶ 12.

## II. Petitioner's effort to avail herself of "provisional waiver" regulations and become a lawful permanent resident.

19. In 2016, while her DACA application was pending, Petitioner began the process of seeking to become a lawful permanent resident by virtue of her marriage to a U.S. citizen. Ex. 2, ¶¶ 4-23.

20. Petitioner and her husband were high school sweethearts and have lived together for more than 10 years. They had their first child, a daughter, in 2013. Their son was born in 2016. Like their father, both children are U.S. citizens.

21. Petitioner and her husband were married in September 2016, after the birth of their second child.

22. Government regulations permit a noncitizen who has married a U.S. citizen to apply to become a lawful permanent resident, and to seek to remain in this country during most of the process of pursuing that application, *even if the noncitizen has a final order of removal, and even if the noncitizen entered the country without inspection.*

   a. A noncitizen who enters the United States without inspection—i.e., by crossing the border—is ordinarily ineligible to "adjust" her status to that of a lawful permanent resident, even if she marries a United States citizen. Instead, the immigration laws generally require her to leave the United States and then to seek to "immigrate" to the country by virtue of her marriage. Ex. 2, ¶¶ 5-6.

   b. In turn, immigrating to the United States is possible only if she obtains a waiver of any applicable grounds of "inadmissibility," including

5

provisions that render noncitizens inadmissible if they have previously lived unlawfully in the United States, or departed the United States under a prior order of removal. See 8 U.S.C. § 1182(a)(9); Ex. 2, ¶¶ 8-10.

    c.    Recognizing the need for family unity during the potentially lengthy process of applying for waivers of inadmissibility, regulations allow noncitizens who entered the United States without inspection to apply for *provisional* waivers of inadmissibility while still living with their families in United States. See 8 C.F.R. §§ 212.2(j) & 212.7(e). The regulations are designed to allow these noncitizens to await the results of those applications in the United States, and travel abroad for a consular interview *after* obtaining approvals of the required waivers. See Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule, 78 Fed. Reg. 536, 536 (Jan. 3, 2013).

    d.    These regulations enable noncitizens who are ineligible to adjust their status in the United States, but who qualify for waivers of inadmissibility, to avoid lengthy separations from their families while seeking lawful status. See *id.* at 536, 574; Ex. 3 (printout from www.uscis.gov).

23.    Under these laws and regulations, Petitioner and her husband undertook a process that has five basic steps. See Ex. 2, ¶¶ 16-22.

24.    First, Petitioner's husband—the U.S. citizen petitioner—had to demonstrate the existence of a bona fide marital relationship to Petitioner—the

noncitizen for whom he intended to seek an immigration benefit—by filing an I-130, Petition for Alien Relative. An interview is often required as part of the adjudication of the I-130 petition. See Ex. 2, ¶ 17.

25. Second, to overcome the ground of inadmissibility that would bar Petitioner from applying for readmission within 10 years of departing the country after an order of removal, Petitioner would need to obtain the Attorney General's "consent[]" to her application for readmission. See 8 U.S.C. § 1182(a)(9)(A)(ii), (iii). To do so, Petitioner would need to file an I-212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal. See 8 C.F.R. § 212(j); Ex. 2, ¶ 18.

26. Third, after obtaining a conditional approval of her I-212 application, Petitioner would need to overcome the 10-year bar on admission to the United States for individuals who have lived in the country unlawfully for more than one year. See 8 U.S.C. § 1182(a)(9)(B)(i)(II). To do so, she would need to file an I-601A, Application for Provisional Unlawful Presence Waiver, and demonstrate that refusal of admission would cause "extreme hardship" to her U.S. citizen spouse. See 8 U.S.C. § 1182(a)(9)(B)(v); Ex. 2, ¶ 19.

27. Fourth, Petitioner would have to depart the United States to complete her application for an immigrant visa abroad, with an interview at a U.S. consulate. Ex. 2, ¶ 21.

28. Fifth, if approved, Petitioner would be permitted to return to the United States with her immigrant visa. Upon admission to the United States,

Petitioner would become a lawful permanent resident. Ex. 2, ¶ 22.

29. Petitioner and her husband began that process in November 2016, when her husband filed an I-130 petition. Ex. 2, ¶ 23.

30. They were scheduled for an I-130 interview on January 17, 2018 at USCIS's offices in Johnston, Rhode Island. Ex. 2, ¶ 25; Ex. 4.

31. Consistent with the purpose of an I-130 interview to assist in verification of their marriage, the interview notice instructed Petitioner and her husband to bring "proof of [their] marital relationship," including their children's birth certificates and other documents. Ex. 4.

**III. Petitioner's detention during the provisional waiver process.**

32. Petitioner and her husband were interviewed on January 17, 2018.

33. ICE detained Petitioner immediately after her interview.

34. Upon information and belief, nothing in Petitioner or her husband's interview provided grounds for Petitioner's detention and attempted removal.

35. To the contrary, Petitioner was informed that the I-130 was approved, meaning that USCIS recognized her marital relationship to a U.S. citizen as legitimate, the first step of her effort to apply for permanent residency. Ex. 4, ¶ 28; Ex. 5.

36. Petitioner poses no danger or flight risk.

37. Upon information and belief, her detention and intended removal is founded on nothing other than her 2002 removal order—which she was attempting to address through the provisional waiver process.

38. Petitioner's abrupt detention has already caused significant harm to her four-year-old daughter and 22-month-old son. Her daughter has begun having nightmares three or four times a night, bursting into tears without warning, crying for her mother, and becoming frightened by brief separations from other family members. Her son can no longer sleep in his crib on his own and becomes distressed because his mother is not there to soothe him. Ex. 1, Attachment.

39. Both children face the risk of lasting trauma if their separation from their mother continues. Ex. 1, Attachment.

40. According to media accounts, at least three other individuals attempting to take advantage of the provisional waiver regulations were detained in January 2018 at their I-130 interviews. See Antonio Planas, *ICE arresting spouses seeking legal residency: 'Callous' crackdown shakes up family*, Boston Herald (Jan. 30, 2018), available at bostonherald.com/news/local_coverage/2018/01/ice_arresting_ spouses_seeking_legal_residency.

41. Since her detention, Petitioner has filed a motion for an administrative stay of removal from ICE. She has also filed a motion to reopen her immigration case, and requested an emergency stay of removal from the BIA. Neither ICE nor the BIA have ruled on these requests. Ex. 1, ¶¶ 15-20.

42. Upon information and belief, ICE intends to remove Petitioner from the United States.

43. Without intervention of this Court, Petitioner may be removed from the United States without the opportunity to continue applying for permanent

residency by way of the provisional waiver regulations, and without the opportunity to obtain a decision on her motion to reopen her immigration case. Alternatively, Petitioner will continue to be detained while pursuing immigration relief. Both outcomes would be unlawful.

## CLAIMS FOR RELIEF

### Count 1 - Immigration and Nationality Act and Applicable Regulations
### (as applied to Petitioner's detention)

44. The foregoing allegations are realleged and incorporated herein.

45. Interpreted in light of the Constitution, the Immigration and Nationality Act (INA) and its applicable regulations did not permit Petitioner's abrupt detention while she was engaged in the process of attempting to regularize her immigration status and without any determination that she poses a danger or flight risk. The INA makes detention mandatory only during the "removal period"—a 90-day period that began when Petitioner's order of removal became final, and has long since expired. 8 U.S.C. § 1231(a)(1). After the 90-day period, detention is permissible only in certain circumstances, upon notice to the noncitizen and after an individualized determination of dangerousness and flight risk. See 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d), (f), (h) & (k).

46. Petitioner's detention 13 months after she began the process of applying for her permanent resident status—without any notice, opportunity to present argument or evidence, or individualized determination that she poses a danger and flight risk, and based on nothing more than the outstanding order of removal that she was seeking to address—violates the INA and its regulations.

**Count 2 - Due Process under the U.S. Constitution**
**(as applied to Petitioner's detention)**

47. The foregoing allegations are realleged and incorporated herein.

48. Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas* v. *Davis*, 533 U.S. 678, 690 (2001) (quotations omitted). Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson* v. *Indiana*, 406 U.S. 715, 738 (1972); see also *Foucha* v. *Louisiana*, 504 U.S. 71, 79 (1992); *Zadvydas*, 533 U.S. at 690. In the immigration context, those purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

49. Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha*, 504 U.S. 78-80. Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. *Id.* at 79; *Zadvydas*, 533 U.S. 692; *Casas-Castrillon* v. *Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court must assess whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring her appearance or protecting the community. *Zadvydas*, 533 U.S. at 699.

50. Because Petitioner was detained without any determination that she poses a danger or flight risk, and because she in fact poses no danger or flight risk, her detention violates due process.

**Count 3 - Immigration and Nationality Act and Applicable Regulations (as applied to Petitioner's removal)**

51. The foregoing allegations are realleged and incorporated herein.

52. The INA does not condemn individuals who live in the United States unlawfully and under final orders of removal to permanent separation from their U.S. citizen spouses and children. Instead, it allows these individuals, if otherwise eligible, to leave the U.S. temporarily and return as lawful permanent residents—if they are granted waivers of applicable inadmissibility grounds under 8 U.S.C. § 1182(a). Specifically, § 1182(a)(9)(A)(iii) allows an individual who departed under an order of removal to avoid a 10-year bar on admission by obtaining the "consent[]" of the Attorney General. And § 1182(a)(9)(B)(v) allows an individual who lived in the United States unlawfully for more than a year to avoid a similar 10-year bar by demonstrating that a denial of admission would cause "extreme hardship" to a U.S. citizen spouse or parent.

53. Recognizing that requiring a noncitizen to await the adjudication of these waivers overseas would create precisely the "extreme hardship" that the waiver of unlawful presence is designed to avoid, the Department of Homeland Security's regulations interpret the INA to permit an individual who requires waivers under 8 U.S.C. § 1182(a)(9)(A)(iii) and (B)(v) to obtain conditional, advance approval of these waivers before she departs the U.S. to complete the immigrant

12

visa process. See 8 C.F.R. §§ 212.2(j) & 212.7(e); Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016).

54. These regulations thus allow an otherwise eligible individual who is married to a U.S. citizen—and who lives in the United States unlawfully and with a final order of removal—to demonstrate the bona fide nature of her marriage, prove her eligibility for required waivers, depart the country briefly to complete processing of an immigrant visa application at a U.S. consulate, and then return to the United States to rejoin her family as a lawful permanent resident.

55. Petitioner was abruptly detained by ICE after she presented herself for an interview as part of this process. ICE's efforts to remove Petitioner without allowing her to follow these provisional waiver procedures violates the INA and applicable regulations.

### Count 4 - Due Process under the U.S. Constitution
### (as applied to Petitioner's removal)

56. The foregoing allegations are realleged and incorporated herein.

57. Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. See *Arevalo* v. *Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). Petitioner has a protected due process interest in her ability to apply for provisional waivers and ultimately for legal permanent resident status.

58. Any efforts by ICE to remove Petitioner, without allowing her to avail herself of the procedures created by the INA and its regulations, violate and would violate due process.

59. Moreover, any efforts by ICE to remove Petitioner also violate and would violate due process by depriving her of her interest in the adjudication of her motion to reopen. See *Devitri* v. *Cronen*, --- F. Supp. 3d ----, 2018 WL 661518, *5-6 (D. Mass. Feb. 1, 2018).

### Count 5 - Administrative Procedures Act
### (as applied to Petitioner's detention and removal)

60. The foregoing allegations are realleged and incorporated herein.

61. The Administrative Procedures Act (APA) forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang* v. *Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

62. Petitioner's detention and any efforts to remove Petitioner under the facts alleged here, including facts showing that she was seized after a USCIS interview while availing herself of the provisional waiver process created under the INA, are and would be arbitrary and capricious under the APA.

63. The APA also sets forth rule-making procedures that agencies must follow before adopting substantive rules. See 5 U.S.C. § 553. The Department of

Homeland Security followed these rulemaking procedures to establish the provisional waiver process for the unlawful presence waiver, see 78 Fed. Reg. 536, and to expand the availability of that waiver to noncitizens living with final orders of removal, see 81 Fed. Reg. 50244.

64. ICE's sudden decision to prohibit some noncitizens with final orders of removal from pursuing the process created by these regulations—a prohibition accomplished in this case by detaining and attempting to remove Ms. Calderon in the midst of her efforts to legalize her status—improperly alters these substantive rules without notice-and-comment rulemaking, in violation of the APA.

## REQUEST FOR ORAL ARGUMENT

65. Petitioner respectfully requests oral argument on this Petition.

## PRAYER FOR RELIEF

Petitioner asks that this Court grant the following relief:

1. Order Petitioner's release from custody;

2. Enjoin Respondents from removing Petitioner from the United States until she has had the opportunity to apply for and receive decisions on her waivers of inadmissibility under 8 U.S.C. § 1182(a)(9) as part of the provisional process made available to her by 8 C.F.R. § 212.7(e); and until she has had an opportunity to receive a decision on her motion to reopen her immigration proceedings, and to seek judicial review of that determination if necessary;

3. Award attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504, if applicable; and,

4. Order any further relief this Court deems just and proper.

Respectfully submitted this 5th day of February, 2018.

/s/ Adriana Lafaille
Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
211 Congress Street
Boston, MA 02110
(617) 482-3170