# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 18-cv-10225-MLW |
| KIRSTJEN M. NIELSEN, et al. | ) ) ) | |
| Respondents. | ) ) | |

## AFFIDAVIT FROM ICE REPRESENTATIVE

Pursuant to this Court's order on February 15, 2018 (ECF No 17), ordering Respondents, by 12:00 noon on February 21, 2018, to file an affidavit from an ICE representative, Respondents submit the following affidavit from Deputy Field Office Director, Todd M. Lyons.

Respectfully submitted,

CHAD READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

Elianis N. Perez
Assistant Director

Sarah L. Vuong
Senior Litigation Counsel

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

/s/ Eve A. Piemonte (by MLL)
Eve A. Piemonte (BBO # 628883)
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 920
Boston, MA  02210
(617) 748-3100
Eve.Piemonte@usdoj.gov

*Counsel for Respondents*

## **CERTIFICATE OF SERVICE**

    I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

|  |  |
|---|---|
|  | /s/ Mary L. Larakers |
|  | Mary L. Larakers |
| Dated: February 21, 2018 | Trial Attorney |

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR
TODD M. LYONS

Pursuant to the authority of 28 U.S.C. § 1746, I, Todd M. Lyons, a Deputy Field Office Director at the Burlington, Massachusetts, United States Immigration and Customs Enforcement office, Department of Homeland Security ("ICE"), declare as follows:

1. I am a Deputy Field Office Director at the Burlington, Massachusetts, United States Immigration and Customs Enforcement office, Department of Homeland Security.

2. Included in my official duties as a Deputy Field Office Director is the responsibility for oversight of the operations of the Boston, Massachusetts, Area of Responsibility ("AOR") Enforcement and Removal Operations ("ERO") component of ICE.

3. I am responding to the Court's Order dated February 15, 2018, issued in Calderon-Jimenez v. Nielsen, et al., 18cv10225-MLW (D. Mass. filed Feb. 5, 2018) directing a sworn statement responding to eleven questions. After my official inquiry into the circumstances relating the Court's questions, I report the following:

4. In response to the Court's question at ¶ 1(a) regarding "the official who made the decision that she [Calderon-Jimenez] be detained," that official was Supervisory Detention and Deportation Officer Todd Falvey.

5. Responding to the Court's question at ¶ 1(b) regarding "the legal basis for the decision, including whether ICE considered her detention mandatory or discretionary," the legal bases were 8 U.S.C. §§ 1182(a)(6)(A)(i), the inadmissibility charge under which she was found removable from the United States, and 1231 which authorizes the detention of such aliens in order to implement the removal process. A valid travel document, Calderon's Guatemalan passport, existed for execution of Calderon's final order of removal, her children were in the care and custody of their father, and she is not eligible of any immigration benefits that would allow her to remain in the United States. On July 20, 1999, an immigration judge granted Calderon voluntary departure and denied her other applications. On September 25, 2002, the Board of Immigration Appeals affirmed the immigration judge's decision and dismissed the appeal. The Board of Immigration Appeals permitted Calderon "30 days from the date of this order or any extension beyond that time as may be granted by the district director." The decision also advised Calderon of the penalties for failing to depart timely. Calderon's Petition for Review was voluntarily dismissed based upon her counsel's motion informing the court that she had departed the United States and did not seek to proceed with her Petition for Review.

2

Although Calderon had an approved I-130, which was filed in 2016, this alone does not accord her lawful status in the United States. Based upon the totality of these factors and in accordance with Executive Order 13768 of January 25, 2017 – Enhancing Public Safety in the Interior of the United States, the decision to detain her was never viewed as a matter of being mandatory or discretionary; but simply in accordance to the law, and ICE's operating procedures.

6.   In response to the Court's question at ¶ 1(c) regarding "the procedures followed in reaching it [detention decision] and the individualized reasons for it, if any," ERO's processing system, the Risk Classification Assessment (RCA), assists the agency in making detention determinations. The RCA is then reviewed by a Supervisory Detention and Deportation Officer (SDDO). The RCA determined Calderon was a flight risk based on the final order of removal, the BIA's dismissal of her appeal, and her failure to comply with the previous voluntary departure order in 1999 issued by an immigration judge. The availability of bed space and lack of child-care issues were also considered and determined to weigh in the favor of detention. SDDO Todd Falvey agreed with the system's determination and ERO detained her accordingly in order to execute the final order of removal.

7. In response to the Court's question at ¶ 1(d) regarding "the official who decided that Calderon should be released," the Acting Field Office Director, Thomas P. Brophy, made the decision that Calderon be released.

8. In response to the Court's question at ¶ 1(e) regarding "the reasons for her [Calderon's] release," Calderon had submitted Form I-246 Application for Stay of Removal, on January 30, 2018, requesting an administrative stay of removal. ERO reviewed her Form I-246 application and based on a review of all circumstances, ICE released her. Included among the considerations generally when adjudicating an administrative stay of removal are the following factors: medical condition, ties to the community, and likelihood of removal.

9. In response to the Court's question at ¶ 1(f) regarding "the reason(s) why she [Calderon] was released on February 13, 2018, rather than sooner or later,". ICE needed a reasonable period of time to review and adjudicate the Form I-246 application. Additionally, this case was brought to the Acting Field Office Director's attention on February 12, 2018. After case review, consultation with supervisory staff and the ICE Office of Chief Counsel, the Acting Field Office Director granted Calderon's Form I-246 stay request. With the granting of the Form I-246 stay request, ICE initiated steps to release Calderon.

4

10. In response to the Court's question at ¶ 1(g) regarding "whether respondents assert that they had, and still have, the authority to detain Calderon without an individualized determination of dangerousness and risk of flight," ICE relies on the authority in 8 U.S.C. § 1182(a)(6)(A)(i), the inadmissibility charge under which she was found removable from the United States, and § 1231 that authorizes detention in order to execute a removal order.

11. In response to the Court's question at ¶ 1(h) regarding "whether Calderon has been released for a defined period of time and, therefore, may be detained again." Calderon has been granted a stay of removal for the period of three months. So long as she remains subject to a final administrative order of removal the immigration statute provides for her detention for the purpose of execution of the removal order. Calderon may apply for an additional period of stay of removal if she so desires. At that time, any subsequent I-246 will be adjudicated and a discretionary determination will be made.

12. In response to the Court's question at ¶ 1(i) regarding "whether any individuals other than Calderon and de Oliveira were arrested while taking steps to seek permanent residency at a Massachusetts or Rhode Island CIS office in January 2018," the answer is yes, that an

5

additional five aliens subject to final orders of removal were so apprehended during January 2018.

13. In response to the Court's follow-up at ¶ 1(j) regarding any positive response to the Court's question as posed in paragraph 12 above -- "if so, whether any of those individuals have received individualized determinations of dangerousness of flight without filing petitions under §2241" -- ERO's processing system, the Risk Classification Assessment (RCA), referred to above, assists the agency in making detention determinations, and factors of flight risk and danger are included in the RCA assessment. The five additional aliens referred to in the paragraph above received RCA determinations, which were then reviewed in an individualized respective determination as to each alien's case and individual circumstances, prior to their detention.

14. In response to the Court's follow-up at ¶ 1(k) regarding any positive responses to the Court's questions posed in paragraphs 12 and 13 above -- "whether any of them have also been released," - yes, one of the additional five final order aliens referred to in paragraph 12 was released from ICE custody the same day of the arrest.

6

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:
      Date      Signature

2/21/2018

Todd M. Lyons
Deputy Field Office Director
U.S. Immigration & Customs Enforcement
Dept. Homeland Security
Burlington, Massachusetts

7