**<u>EXHIBIT A</u>**

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR
TODD M. LYONS

Pursuant to the authority of 28 U.S.C. § 1746, I, Todd M. Lyons, a Deputy Field Office Director at the Burlington, Massachusetts, United States Immigration and Customs Enforcement office, Department of Homeland Security ("ICE"), declare as follows:

1. I am a Deputy Field Office Director at the Burlington, Massachusetts, United States Immigration and Customs Enforcement office, Department of Homeland Security.

2. Included in my official duties as a Deputy Field Office Director is the responsibility for oversight of the operations of the Boston, Massachusetts, Area of Responsibility ("AOR") Enforcement and Removal Operations ("ERO") component of ICE.

3. I am responding to the Court's Order dated February 15, 2018, issued in Calderon-Jimenez v. Nielsen, et al., 18cv10225-MLW (D. Mass. filed Feb. 5, 2018) directing a sworn statement responding to eleven questions. After my official inquiry into the circumstances relating the Court's questions, I report the following:

4. In response to the Court's question at ¶ 1(a) regarding "the official who made the decision that she [Calderon-Jimenez] be detained," that official was Supervisory Detention and Deportation Officer Todd Falvey.

5.   Responding to the Court's question at ¶ 1(b)
regarding "the legal basis for the decision, including
whether ICE considered her detention mandatory or
discretionary," the legal bases were 8 U.S.C. §§ 1182(a)
(6)(A)(i), the inadmissibility charge under which she was
found removable from the United States, and 1231 which
authorizes the detention of such aliens in order to
implement the removal process.  A valid travel document,
Calderon's Guatemalan passport, existed for execution of
Calderon's final order of removal, her children were in the
care and custody of their father, and she is not eligible of
any immigration benefits that would allow her to remain in
the United States.  On July 20, 1999, an immigration judge
granted Calderon voluntary departure and denied her other
applications.  On September 25, 2002, the Board of
Immigration Appeals affirmed the immigration judge's
decision and dismissed the appeal.  The Board of Immigration
Appeals permitted Calderon "30 days from the date of this
order or any extension beyond that time as may be granted by
the district director."  The decision also advised Calderon
of the penalties for failing to depart timely.  Calderon's
Petition for Review was voluntarily dismissed based upon her
counsel's motion informing the court that she had departed
the United States and did not seek to proceed with her
Petition for Review.

2

Although Calderon had an approved I-130, which was filed in 2016, this alone does not accord her lawful status in the United States. Based upon the totality of these factors and in accordance with Executive Order 13768 of January 25, 2017 – Enhancing Public Safety in the Interior of the United States, the decision to detain her was never viewed as a matter of being mandatory or discretionary; but simply in accordance to the law, and ICE's operating procedures.

6.   In response to the Court's question at ¶ 1(c) regarding "the procedures followed in reaching it [detention decision] and the individualized reasons for it, if any," ERO's processing system, the Risk Classification Assessment (RCA), assists the agency in making detention determinations. The RCA is then reviewed by a Supervisory Detention and Deportation Officer (SDDO). The RCA determined Calderon was a flight risk based on the final order of removal, the BIA's dismissal of her appeal, and her failure to comply with the previous voluntary departure order in 1999 issued by an immigration judge. The availability of bed space and lack of child-care issues were also considered and determined to weigh in the favor of detention. SDDO Todd Falvey agreed with the system's determination and ERO detained her accordingly in order to execute the final order of removal.

3

7.   In response to the Court's question at ¶ 1(d) regarding "the official who decided that Calderon should be released," the Acting Field Office Director, Thomas P. Brophy, made the decision that Calderon be released.

8.   In response to the Court's question at ¶ 1(e) regarding "the reasons for her [Calderon's] release," Calderon had submitted Form I-246 Application for Stay of Removal, on January 30, 2018, requesting an administrative stay of removal.   ERO reviewed her Form I-246 application and based on a review of all circumstances, ICE released her.   Included among the considerations generally when adjudicating an administrative stay of removal are the following factors:  medical condition, ties to the community, and likelihood of removal.

9.   In response to the Court's question at ¶ 1(f) regarding "the reason(s) why she [Calderon] was released on February 13, 2018, rather than sooner or later,".  ICE needed a reasonable period of time to review and adjudicate the Form I-246 application.   Additionally, this case was brought to the Acting Field Office Director's attention on February 12, 2018.   After case review, consultation with supervisory staff and the ICE Office of Chief Counsel, the Acting Field Office Director granted Calderon's Form I-246 stay request.   With the granting of the Form I-246 stay request, ICE initiated steps to release Calderon.

4

10.   In response to the Court's question at ¶ 1(g) regarding "whether respondents assert that they had, and still have, the authority to detain Calderon without an individualized determination of dangerousness and risk of flight," ICE relies on the authority in 8 U.S.C. § 1182(a)(6)(A)(i), the inadmissibility charge under which she was found removable from the United States, and § 1231 that authorizes detention in order to execute a removal order.

11.   In response to the Court's question at ¶ 1(h) regarding "whether Calderon has been released for a defined period of time and, therefore, may be detained again." Calderon has been granted a stay of removal for the period of three months.  So long as she remains subject to a final administrative order of removal the immigration statute provides for her detention for the purpose of execution of the removal order.  Calderon may apply for an additional period of stay of removal if she so desires. At that time, any subsequent I-246 will be adjudicated and a discretionary determination will be made.

12.   In response to the Court's question at ¶ 1(i) regarding "whether any individuals other than Calderon and de Oliveira were arrested while taking steps to seek permanent residency at a Massachusetts or Rhode Island CIS office in January 2018," the answer is yes, that an

additional five aliens subject to final orders of removal
were so apprehended during January 2018.

13.    In response to the Court's follow-up at ¶ 1(j)
regarding any positive response to the Court's question as
posed in  paragraph 12 above -- "if so, whether any of those
individuals have received individualized determinations of
dangerousness of flight without filing petitions under
§2241" -- ERO's processing system, the Risk Classification
Assessment (RCA), referred to above, assists the agency in
making detention determinations, and factors of flight risk
and danger are included in the RCA assessment.  The five
additional aliens referred to in the paragraph above
received RCA determinations, which were then reviewed in an
individualized respective determination as to each alien's
case and individual circumstances, prior to their detention.

14.    In response to the Court's follow-up at ¶ 1(k)
regarding any positive responses to the Court's questions
posed in paragraphs 12 and 13 above -- "whether any of them
have also been released," - yes, one of the additional five
final order aliens referred to in paragraph 12 was released
from ICE custody the same day of the arrest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:

Date

2/21/2018.

Signature

Todd M. Lyons   64/2018.
Deputy Field Office
Director
U.S. Immigration & Customs
Enforcement
Dept. Homeland Security
Burlington, Massachusetts

7