UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, SANDRO DE SOUZA and CARMEN SANCHEZ, OSCAR RIVAS and CELINA RIVERA RIVAS, LUCIMAR DE SOUZA and SERGIO FRANCISCO, DENG GAO and AMY CHEN, individually and on behalf of all others similarly situated, Plaintiffs-Petitioners, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| v. | ) ) | C.A. No. 18-10225-MLW |
| KIRSTJEN M. NIELSEN, Secretary of Homeland Security, THOMAS HOMAN, Acting Director, Immigration and Customs Enforcement, THOMAS BROPHY, Immigration and Customs Enforcement, Enforcement and Removal Office, Boston Field Office Director, YOLANDA SMITH, Superintendent of Suffolk County House of Correction, STEVEN TOMKINS, Sheriff of Suffolk County, DONALD J. TRUMP, President of the United States, Defendants-Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                        April 16, 2018

     Lilian Pahola Calderon Jimenez filed this case on February 5, 2018, alleging that she was detained without due process by United States Immigration and Customs Enforcement ("ICE"), at an Office of the United States Citizenship and Immigration Services ("CIS"),

while she was in the process of seeking to become a permanent
resident by virtue of her marriage to a United States citizen. She
sought, under 28 U.S.C. §2241, immediate release from custody and
a stay of her removal until the issues concerning whether she
should be allowed to remain in the United States permanently were
finally determined.

On February 6, 2018, the court ordered the parties to confer
in an effort to resolve the matter, and established a schedule for
expedited briefing and a hearing if they could not reach an
agreement. After the parties reported it would be necessary to
litigate, on February 13, 2018, the court ordered respondents to
inform Calderon of the official who made the decision to detain
her, the legal basis and reasons for the decision, and any
procedures followed in reaching it.

Later on February 13, 2018, however, respondents reported
that ICE had released Calderon from custody and granted her an
administrative stay of removal until May 12, 2018. They requested
an extension of the expedited briefing schedule so that they could
file a motion to dismiss the petition.

In a February 15, 2018 Memorandum and Order, the court granted
the requested extension, but noted that Calderon's release did not
necessarily moot the claims regarding her detention or her other
claims. It explained that the circumstances of Calderon's arrest,
and her release shortly before the court was to consider the

2

legality of her detention, are part of a pattern seen in previous cases assigned to this court, including <u>Arriaga Gil v. Tomkins</u>, C.A. No. 17-10743, and <u>De Oliveira v. Moniz et al.</u>, C.A. No. 18-10150. The court questioned whether Calderon's claims are, therefore, "capable of repetition, yet evading review." <u>Kingdomware Techs, Inc. v. United States</u>, 136 S. Ct. 1969, 1976 (2016). If so, they would not be moot and the court could decide them. <u>Id.</u> Accordingly, the court ordered respondents to provide an affidavit from an ICE representative responding to the questions in the February 13, 2018 Memorandum and Order regarding the circumstances of Calderon's detention and, in addition, addressing: why Calderon was released on February 13, 2018, rather than sooner or later; whether respondents asserted that they had the authority to detain Calderon again; whether any other individuals were arrested while taking steps to seek permanent residency at a Massachusetts or Rhode Island CIS office in January 2018; whether any of those individuals had received individualized determinations of dangerousness and risk of flight without filing petitions; and whether any of them had been released. Respondents did so on February 21, 2018.

On March 27, 2018, respondents filed their motion to dismiss. On April 10, 2018, rather than file an opposition to it, petitioner Lilian Pahola Calderon Jimenez filed an Amended Complaint naming

3

nine additional petitioners.[1] Together, they seek to represent a class of similarly situated individuals who are subject to final orders of removal and pursuing waivers of inadmissibility and regularization of their status as spouses of United States citizens, and their spouses.

Petitioners subsequently filed a Motion for Order to Show Cause and for Emergency Relief Preserving this Court's Jurisdiction (Docket No. 30). They moved for an order "directing respondents to promptly respond to that part of the Amended Complaint that seeks the release of petitioner Lucimar De Souza; and an order preserving this court's jurisdiction by barring ICE from removing any of the named petitioners from the United States, and from removing De Souza from Massachusetts." Docket No. 30 at 1. On April 13, 2018, the court granted the motion in part, ordering respondents not to move Lucimar De Souza or any of the other named petitioners outside the District of Massachusetts during the pendency of this case. The court is now allowing De Souza's request that respondents seek to show cause for her detention. See 28 U.S.C. §2243 (stating that "a court, justice or

---

[1] A petitioner may, as of right, file an amended petition within 21 days of a motion to dismiss. See 28 U.S.C. §2242 (stating that petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Fed. R. Civ. P. 15(a)(1)(B) (allowing a pleading to be amended without leave of court within 21 days of the filing of a motion to dismiss under Rule 12(b)(6)).

judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.").

Counsel for petitioners in this case include Adriana Lafaille, Esq. and Jonathan A. Cox, Esq. As explained in the February 6, 2018 Memorandum and Order, Ms. Lafaille was a student intern working about a day a week in my chambers from February to May 2010, and was one of my law clerks from September 2011 to September 2012. On February 12, 2018, the parties reported that neither the court's nor Ms. Lafaille's disqualification was required under 28 U.S.C. §455(a), and waived any potential ground for disqualification related to Ms. Lafaille's role in this case under 28 U.S.C. §455(e).

Mr. Cox entered his appearance on April 10, 2018. He served as one of my law clerks from 2013 to 2014. His participation in this case with Ms. Lafaille as counsel does not raise a question of whether I have a personal bias or prejudice against a party that would require my disqualification under 28 U.S.C. §455(b). Nor does my service in the Department of Justice as a Special Assistant to the Deputy Attorney General (1974), as a Special Assistant to the Attorney General (1975-1977), or as the Deputy

United States Attorney for the District of Massachusetts (1981-1985) raise such a question.

28 U.S.C. §455(a) states that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." I described the standards generally applicable to recusal under §455(a) in United States v. Sampson, 148 F. Supp. 3d 75, 79-80, 85-88 (D. Mass. 2015).

The appearance of a former law clerk before a judge does not ordinarily require recusal under §455(a). As the First Circuit has recognized, "[i]t is common knowledge in the profession that former law clerks practice regularly before judges for whom they once clerked." In re Martinez-Catala, 129 F.3d 213, 221 (1st Cir. 1997). Courts, however, often impose their own prophylactic rules that forbid a former law clerk from appearing in that court for a year or more after the clerkship. Id. For example, the United States Supreme Court prohibits former law clerks from participating in any case before it within two years of the termination of their employment. See Rule 7, Rules of the Supreme Court of the United States (Nov. 2017). The Court of Appeals for the First Circuit prohibits former law clerks from practicing or appearing before it for one year following their separation. See Local Rule 46(e), Rules of the First Circuit (Aug. 2017). These rules, as well as the Code of Conduct for Judicial Employees, however, require the disqualification of the former clerk, rather than the judge, if

they are violated. See Guide to Judiciary Policy, Vol. 2A, Ch. 3, Code of Conduct for Judicial Employees, Canon 4(D). A one or two-year disqualification of the former clerk, rather than the judge he or she served, is the practice of many federal courts. See United States v. Hollister, 746 F.2d 420, 425 (8th Cir. 1984) (citing A. DiLeo & A. Rubin, Law Clerk Handbook 57 (1977)).

As my clerks are informed, I require that they do not appear before me for two years after the conclusion of their clerkship. Mr. Cox's clerkship ended more than three years ago.

Since the conclusion of Mr. Cox's clerkship I have seen him occasionally in my chambers at an annual holiday party I host for my former clerks and, I believe, at a reunion with my former clerks in 2015. I do not now believe that such contacts would cause, or contribute to causing, a reasonable person to question my impartiality in this case. As the Seventh Circuit has written:

> In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer.

United States v. Murphy, 768 F.2d 1518, 1537-38 (7th Cir. 1985) (citing cases).

In view of the foregoing, I do not now perceive a basis for Mr. Cox's disqualification or mine pursuant to 28 U.S.C. §455(a) or (b).

Accordingly, it is hereby ORDERED that:

1.    The parties shall confer and, by April 19, 2018, state: (a) whether they believe my disqualification is required pursuant to 28 U.S.C. §455(a) and/or (b); whether they believe Mr. Cox's disqualification is required; and, in any event, (c) whether they wish to waive any §455(a) ground for my disqualification relating to Mr. Cox, pursuant to §455(e); or (d) that they need more time to consider the matter. If the parties wish to question me about this matter, they shall so state in their reports, and they will be allowed to defer responding to the foregoing questions until they are discussed at the beginning of the first hearing in this case.

2.    De Souza's Motion for Order to Show Cause (Docket No. 30) is ALLOWED. Respondents shall, by April 23, 2018, file a memorandum and affidavit(s) responding to that part of the Amended Complaint that seeks De Souza's release. Respondents' submission shall include an affidavit from a United States Immigration and Customs Enforcement representative describing, among other things: (a) the official who made the original decision that De Souza

8

should be detained; (b) the legal basis for the decision, including whether ICE considers De Souza's detention mandatory or discretionary; (c) the procedures followed in reaching the decision and, if any, the individualized reasons for it; and (d) whether Respondents assert that they had, and still have, the authority to detain De Souza without an individualized determination of dangerousness and risk of flight.

3.   De Souza shall respond by April 30, 2018.

4.   A hearing on the detention issue shall be held on May 8, 2018, at 10:00 a.m., in conjunction with related cases raising the same or similar issues.

UNITED STATES DISTRICT JUDGE