UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ AND LUCIMAR DE SOUZA, ET AL. Petitioner-Plaintiffs, | ) ) ) ) | |
| v. | ) ) | C.A. No. 18-10225-MLW |
| CHRISTOPHER CRONEN, ET AL, Respondent-Defendants. | ) ) ) ) ) | |
| EDUARDO RALPH JUNQUEIRA, Petitioner, | ) ) ) ) | |
| v. | ) ) | C.A. No. 18-10307-MLW |
| STEVEN SOUZA, ET AL, Respondents. | ) ) ) ) ) | |
| EDJANN HENRIQUE DOS SANTOS, Petitioner, | ) ) ) ) | |
| v. | ) ) | C.A. No. 18-10310-MLW |
| KIRSTJEN NIELSEN, ET AL. Respondents. | ) ) ) ) ) | |
| MANUEL JESUS PINGUIL LOJA, Petitioner, | ) ) ) ) | |
| v. | ) ) | C.A. No. 18-10579-MLW |
| STEVEN SOUZA, ET AL. Respondents. | ) ) ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                    April 19, 2018

In these four cases, petitioners Lilian Pahola Calderon Jimenez, Lucimar De Souza, Eduardo Ralph Junqueira, Edjann

1

Henrique Dos Santos, and Manuel Jesus Pinguil Loja each allege that they were unlawfully arrested and detained by United States Immigration and Customs Enforcement ("ICE"). Each of them except Pinguil allege that he or she was, at the time, pursuing legal permanent residency in the United States by virtue of his or her marriage--or in the case of petitioner Dos Santos, his intended marriage--to a United States citizen.[1] Each of them is the subject of a final order of deportation issued years before his or her arrest.

At issue in all four cases is whether ICE was required to follow the procedures described in 8 C.F.R. §241.4, or any procedures required by the United States Constitution, when deciding to detain the petitioners. On April 5, 2018, the court advised the parties in each case except for Pinguil v. Souza, C.A. No. 18-10579, that it would begin a May 8, 2018 consolidated hearing by addressing that common issue. The court indicated that it would then address the issues unique to each case.[2] Respondents'

---

[1] Calderon, C.A. No. 18-10225, includes 10 named plaintiffs, who are aliens and their United States citizen spouses. The other cases include only alien petitioners. Each of the alien petitioners' spouses, except for Pinguil's and Dos Santos', applied for an I-130 petition to establish the legitimacy of their marriages. An I-130 petition is the first step in the process by which the noncitizen spouse of a United States citizen may be granted permanent residency. See Calderon, C.A. No. 18-10225, Am. Compl. at ¶31.

[2] The court did not order the parties in Pinguil to attend the May 8, 2018 hearing, as that case was not related to the others under

2

motions to dismiss the petitions raise some of these unique issues.[3]

In Calderon, C.A. No. 18-10225, respondents argue that Calderon's claims concerning her detention are moot because ICE has released her from custody and stayed her deportation through May 12, 2018. Respondents, however, also reported that the Department of Homeland Security ("DHS"), of which ICE is part, "cannot categorically agree that it will not re-detain [Calderon] during the pendency of [respondents'] motion to dismiss." Docket No. 23 at ¶2(a). Therefore, it now appears that if ICE does not extend Calderon's stay of removal beyond May 12, 2018, it may detain her after that date. As the court has previously indicated, in these circumstances, the prospect that Calderon will be again detained suggests that her request to enjoin future detention without due process may not be moot. See Feb. 15, 2018 Memo. and Order at 6-7.

---

Rule 40.1(g) of the Local Rules of the United States District Court for the District of Massachusetts. However, as explained below, the court is now considering also addressing the issues in Pinguil at the hearing.

[3] As indicated below, on April 10, 2018, Calderon amended the petition in C.A. No. 18-10225, to add claims by Lucimar De Souza, among other petitioners. On April 5, 2018, Dos Santos amended the complaint in C.A. No. 18-10310. Respondents have not yet responded to the Amended Complaints in Calderon, C.A. No. 18-10225 and Dos Santos, C.A. No. 18-10310.

3

On April 10, 2018, Calderon amended her petition to add as plaintiffs Lucimar De Souza, three other named aliens ordered deported while seeking legal permanent residence as spouses of United States citizens, as well as their spouses, as co-petitioners. They seek to represent a putative class of similarly situated couples. De Souza has been detained by ICE since January 30, 2018, at the Suffolk County House of Corrections in Boston, Massachusetts. On April 16, 2018, the court ordered the respondents to respond to De Souza's claim for release by April 23, 2018. It ordered De Souza to reply by April 30, 2018. The court is not now aware of any unique issues raised by De Souza's challenge to her detention.[4] However, there is an issue of whether Calderon and De Souza's co-petitioners have standing to seek to enjoin ICE from detaining them or other similarly situated individuals without ICE following the allegedly required procedures, as ICE has not yet detained them or threatened them personally with detention. See,

---

[4] De Souza alleges that she did not receive notice of her 2002 deportation hearing. 8 U.S.C. §1229a(b)(5)(C)(ii) provides that an alien may move the immigration court to rescind her removal order and reopen her deportation proceedings if she demonstrates that (1) she did not receive proper notice of the hearing or (2) that she was not at fault for failing to appear. De Souza filed such a motion in 2014, which an immigration judge and the Board of Immigration Appeals denied. See Amended Petition at ¶64. Therefore, the court is not aware of any reason the lack of notice would influence the analysis of the legality of De Souza's detention.

e.g., Susan B. Anthony's List v. Driehaus, 134 S. Ct. 2334, 2342 (2014).

In Junqueira v. Souza, C.A. 18-10307, the petitioner departed the United States pursuant to a July 2004 removal order and reentered without authorization in November 2004. See C.A. No. 18-10307, Compl. at ¶20-22. Similarly, in Pinguil v. Souza, C.A. No. 18-10579, the petitioner has been removed three times from the United States and unlawfully reentered most recently in 2014. An asylum officer found that Pinguil reasonably fears that he will be torture if deported to Ecuador, and that he may qualify for withholding of removal under the Convention Against Torture (the "CAT"). In addition, ICE determined that Pinguil appears to be eligible for U-nonimmigrant status under 8 C.F.R. §214.14, which applies to victims of certain crimes who suffered mental or physical abuse as a result and are helpful to law enforcement in the investigation or prosecution of the crimes. Pinguil has pending applications for withholding of removal under the CAT and for a U-Visa before the immigration court and CIS, respectively. ICE has stayed his removal until September 9, 2018. See Case. No. 18-10579, Docket No. 1 at ¶¶16-23.

The government asserts that because Junqueira and Pinguil reentered the United States illegally, their removal orders were reinstated under 8 U.S.C. §1231(a)(5), which provides that:

5

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Id.

It is unclear which statute governs the detention of an alien subject to a reinstated removal order who, like Pinguil, is applying for withholding of removal.[5] Compare Padilla-Ramirez v. Bible, 882 F.3d 826, 832 (9th Cir. 2017) (holding 8 U.S.C. §1231 applies) with Guerra v. Shanahan, 831 F.3d 59 (2d Cir. 2016) (holding 8 U.S.C. §1226 applies). 8 U.S.C. §1226(a) governs detention "pending a decision on whether the alien is to be removed from the United States." Aliens detained under §1226 are entitled, by regulation, to a bail hearing before an immigration judge. See 8 C.F.R. §§236.1(d)(1), 1236.1(d)(1).

8 U.S.C. §1231(a) governs detention after an alien is ordered removed. §1231(a)(2) requires DHS to detain an alien, pending removal, during the "removal period," which is defined by

---

[5] "[Withholding] proceedings are an exception to the general prohibition against seeking relief from removal pursuant to a reinstated order. The Department of Homeland Security likely "cannot execute the reinstated removal order until the reasonable fear and withholding of removal proceedings are complete." Padilla-Ramirez, 882 F.3d at 832 (citing 8 C.F.R. §241.8(e), 208.1(a), 208.5(a)).

6

§1231(a)(1) as 90 days after the order of removal becomes final. For aliens who are "inadmissible" because they entered the United States unlawfully, §1231(a)(6) gives the Attorney General discretion to detain them after the removal period expires. 8 C.F.R. §241.4 may require an alien be given by DHS notice and an opportunity to be heard before DHS, on behalf of the Attorney General, decides how to exercise that discretion.

Therefore, a material threshold issue in Junqueira, C.A. 18-10307, and especially Pinguil, C.A. No. 18-10579, is whether 8 U.S.C. §1226 or §1231 governs the petitioners' detention.

In Dos Santos v. Nielsen, C.A. No. 18-10310, the government argues that the removal period is still in effect, and Dos Santos is subject to mandatory detention under 8 U.S.C. §1231(a)(2), because he "has taken steps to thwart his removal and he has received four Notices of Failure to Comply as a result of his refusal to cooperate with ICE to effectuate his removal." Memo. in Supp. of Motion to Dismiss at 4. 8 U.S.C. § 1231(a)(1)(C) provides that "the removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."

7

Moreover, two of the petitioners have been detained for more than six months. Dos Santos has been detained since June 14, 2017, for over ten months, and Pinguil has been detained since August 2017, for over seven months. Therefore, even if ICE followed the required procedures in deciding to detain them, the court must decide whether §1231(a)(6) authorizes their prolonged detention. See Zadvydas v. Davis, 533 U.S. 678, 701 (2001). In making this determination, the court must consider whether their detention "exceeds a period reasonably necessary to...assur[e] [their] presence at the moment of removal." Id. at 699. If there is "no significant likelihood" that Dos Santos or Pinguil will be removed "in the reasonably foreseeable future," their detention is unlawful, and the court must order their release. Id. The Supreme Court also suggested that even if removal is reasonably foreseeable, this court may consider the petitioner's risk of committing future crimes in deciding whether his or her detention is reasonably necessary. Id. at 700.

Finally, Dos Santos and Calderon and her co-petitioners seek, among other things, an order enjoining ICE from removing them from the United States while they are pursuing legal permanent residency as the spouses, and in Dos Santos' case the intended spouse, of United States citizens. This challenge to their deportations raises various, complex issues, including whether the court has the power to hear it. See 8 U.S.C. §1252(g)(stripping jurisdiction

8

to hear any claim, including under 28 U.S.C. §2241, arising from a decision by the government to execute a removal order); but see Devitri v. Cronen, 2017 WL 5707528, at *5 (D. Mass. 2017)(Saris, C.D.J.)(holding in the circumstances of the case that "[i]f the jurisdictional bar in 8 U.S.C. §1252(g) prevented the Court from giving Petitioners an opportunity to raise their claims through fair and effective administrative procedures, the statute would violate the Suspension Clause [of the United States Constitution] as applied").

While there are many petitioners in these cases, they are all represented by one of two law firms.[6] The Department of Justice represents the respondents, as the United States and DHS are the real parties in interest. As there are relatively few counsel involved, the court finds it appropriate to order them to confer and report, jointly if possible, concerning how to most fairly and efficiently resolve the common and distinct issues in these cases. The court is scheduling a joint status conference to discuss the issues identified by it and to be identified the parties, and how to proceed.

---

[6] In particular, Adriana Lafaille and Matthew Segal of the Massachusetts American Civil Liberties Union, and Todd Pomerleau of Rubin Pomerleau PC, represent the petitioners. The petitioners in Calderon et al., C.A. 18-10225, are also represented by Jonathan Cox, Kevin Prussia, and Stephen Provazza of Wilmer Hale LLP.

In view of the foregoing, it is hereby ORDERED that:

1. The parties to these cases shall, by April 26, 2018, confer and report, jointly if possible. The report shall: (1) identify issues common to all or many of these cases, and issues unique to a particular case or cases, including any issues not identified in this Memorandum; (2) propose a schedule for briefing the issues in these cases that are not yet briefed; (3) propose an agenda for the May 8, 2018 hearing; and (4) identify any other matters the court should consider to promote a just and efficient resolution of these cases.

2. A status conference will be held on May 1, 2018, at 10:00 a.m., to discuss the matters addressed in this Memorandum, the proposals of the parties, and a schedule for these cases.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE