## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ
and LUIS GORDILLO, et al.,

Petitioners,

v.

KIRSTJEN M. NIELSEN, et al.,

Respondents.

Civil Action No. 1:18-cv-10225-MLW

**RESPONDENTS' OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS, MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, RESPONSE TO ORDER TO SHOW CAUSE, AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

STATEMENT OF THE FACTS ................................................................................ 3

      i.      Petitioner Lilian Pahola Calderon Jimenez ............................... 3

      ii.     Petitioner Lucimar de Souza .................................................... 4

      iii.    Petitioner Sandro de Souza ..................................................... 4

      iv.    Petitioner Oscar Rivas ............................................................. 5

      v.     Petitioner Deng Gao ................................................................ 5

      vi.    Procedural History .................................................................. 5

ARGUMENT .............................................................................................................. 6

  A.    This Court lacks subject matter jurisdiction over all Petitioners'
       habeas petitions, other than Ms. de Souza's habeas petition because
       there is no live case or controversy. ................................................... 6

  B.    Section 1252 of Title 8 requires dismissal of this Complaint ............................. 7

  C.    The Petition does not establish that Ms. de Souza is detained in
       violation of the Constitution or the laws or treaties of the
       United States.................................................................................... 10

      i.      This Court should dismiss Ms. de Souza's Petition because she
          has failed to exhaust her administrative remedies .................................. 10

      ii.     Ms. de Souza's detention is lawful under 8 U.S.C. § 1231(a)(6)
          and Supreme Court Precedent................................................... 11

      iii.    The Post Order Custody Review regulations do not apply to
          Ms. de Souza ........................................................................... 12

  D.    Petitioners cannot establish that their detention and removal would be
       unlawful under the INA and applicable regulations .......................................... 13

  E.    Petitioners do not have a due process right to remain in the United
       States while their unlawful presence waiver is adjudicated ............................... 14

F.      Petitioners have failed to adequately state an Equal Protection claim under the Fifth Amendment ................................................................ 17

G.     Petitioner's claim under the Administrative Procedure Act is barred by section 1252(g) and because ICE has not engaged in any rulemaking. ................................................................................................. 19

**CONCLUSION** ................................................................................................. **20**

**LOCAL RULE 7.1 CERTIFICATE** ................................................................. **22**

**CERTIFICATE OF SERVICE** ........................................................................ **22**

**INTRODUCTION**

In lieu of responding to Respondents' Motion to Dismiss the original habeas petition, Petitioners amended their petition to request a stay of removal for the five named Petitioners, and others similarly situated, and request other related relief that this Court is without jurisdiction to issue. Respondents now submit this memorandum in response to this Court's order on April 16, 2018 (ECF No. 34), and in support of their motion to dismiss the amended complaint.

Petitioners' First Amended Complaint ("FAC") is nothing more than a back door attempt to challenge their final orders of removal, which is expressly prohibited by the Supreme Court and Congress. Despite the due process Petitioners received throughout their removal proceedings and the remedies available to them during their time in the United States, Petitioners ask this Court to create new rights and remedies not found in any legal precedent. Accordingly, Respondents move to dismiss the FAC for the following reasons.

As an initial matter, a habeas action is inappropriate for each Petitioner, other than Ms. de Souza, because they are not in custody and no live case or controversy exists. Moreover, the First Circuit has routinely held that 8 U.S.C. § 1252(g) bars jurisdiction to consider habeas petitions, and any other action, challenging DHS's authority to execute removal orders. The provision states that, in a Petition for Writ of Habeas Corpus under section 2241 of title 28, "or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Government] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g). Thus, the claims in the FAC seeking to enjoin Petitioners' removal from the United States are precluded by 8 U.S.C. § 1252(g), and the Court has no jurisdiction to consider these claims.

1

Moreover, Lucimar de Souza is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6) as an inadmissible alien with a final order of removal. Similarly, the alien Petitioners are not entitled to the procedures in 8 C.F.R. § 241.4(d), (f), (h), and (k) prior to any detention because those procedures do not apply to aliens who have been detained for less than 90 days.

Furthermore, the alien Petitioners have no due process or statutory right to remain in the United States while they seek an unlawful presence waiver. First, the alien Petitioners' removal would not deprive them of a right to seek relief because the unlawful presence waiver is available from outside the United States. Second, the Supreme Court has already rejected the U.S. citizen Petitioners' claimed liberty interest in "living with his spouse in the United States." Finally, the unlawful presence waiver is not a stay of removal; therefore, the alien Petitioners do not have a legitimate expectation of entitlement to remain in the United States while their waiver is adjudicated.

Petitioners' Equal Protection claim is likewise without merit. Petitioners fail to allege any facts that Executive Order 13768, which prohibits "exempt[ing] classes or categories of removable aliens from potential enforcement," classifies aliens on the basis of race or nationality. Furthermore, Petitioners failed to identify any cognizable fundamental right which they have been deprived of due to an alleged classification.

Lastly, Petitioners' attempt to challenge their detention and removal under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, is without merit because such an action is barred by section 1252(g) (prohibiting courts from hearing claims challenging ICE's authority to execute removal orders). For these reasons, this Court should dismiss the Complaint in its entirety.

**STATEMENT OF THE FACTS**

2

i.    Petitioner Lilian Pahola Calderon Jimenez

Calderon is a citizen of Guatemala who entered the United States without inspection in 1991. Compl. at ¶ 38. In 1999, an immigration judge denied Calderon's father's application for asylum, on which she was a derivative. *Id*. at ¶ 39. The Board of Immigration Appeals ("BIA") affirmed the immigration judge's order in 2002 and gave the family thirty days to voluntarily depart. *Id*. When Petitioner and her family did not depart as ordered, their voluntarily departure automatically converted to a final order of removal, which Petitioner remains subject to. *Id*. at ¶ 40; *see* 8 C.F.R. § 1241.1(f).

Calderon is the beneficiary of an approved Form I-130, Petition for Alien Relative, filed on her behalf by her U.S. citizen husband, Luis Alberto Gordillo. Compl. at ¶ 53. On January 17, 2018, after Petitioner and her husband were interviewed in connection with the Form I-130, ICE took Petitioner into custody to execute her 2002 removal order. *Id*. at ¶ 49. Petitioner filed a Form I-246, Application for Stay of Deportation or Removal, with ICE on January 30, 2018. ECF. No. 22-1 at ¶ 8. On February 13, 2018, ICE granted Calderon's Form I-246, thereby staying her removal for three months and releasing her without conditions. *Id*.

ii.    Petitioner Lucimar de Souza

Lucimar de Souza (Ms. de Souza) is a citizen of Brazil and was ordered removed in 2002 after she failed to attend her immigration court proceedings. Compl. at ¶ 63. She is the beneficiary of an approved Form I-130 petition based on her marriage to her U.S. citizen husband, Sergio Francisco. *Id*. at ¶ 65. ICE detained Ms. de Souza pursuant to her final order of removal on January 30, 2018, after her Form I-130 interview. *Id*. As of April 20, 2018, Ms. de Souza has not filed a Form I-246, request for administrative stay of removal. Ex. A. at ¶ 7. Ms. de Souza is currently in immigration custody. *Id*.

### iii.    Petitioner Sandro de Souza

Sandro de Souza is a citizen of Brazil who entered on a tourist visa in 1997. Compl. at ¶ 75. An immigration judge denied his asylum application in 2007 and granted him voluntary departure. *Id*. The BIA affirmed the immigration judge's decision in 2011. *Id*. When Mr. de Souza failed to comply with his voluntary departure order, it automatically converted into a final order of removal. *Id*.; *see* 8 C.F.R. § 1241.1(f).

Mr. de Souza is the beneficiary of an approved Form I-130 petition filed on his behalf by his U.S. citizen spouse, Carmen Sanchez. *Id*. at ¶ 79. Mr. de Souza has applied for and received several administrative stays of removal from ICE. ICE has never detained Mr. de Souza. *Id*. at ¶¶ 77, 82. On February 8, 2017, ICE denied Mr. de Souza's most recent request for an administrative stay of removal, but did not detain him. *Id*. at ¶ 80. In January 2018, ICE instructed Mr. de Souza to depart the United States by March 9, 2018. *Id*. at ¶ 81. Upon hearing that Mr. de Souza's Form I-130 petition was progressing, ICE ultimately allowed Mr. de Souza to depart by April 24, 2018.[1]

### iv.    Petitioner Oscar Rivas

Oscar Rivas is a citizen of El Salvador who was ordered removed after his asylum application was denied in 2009. *Id*. at ¶¶ 86-87. The BIA affirmed the immigration judge's order in 2011. *Id*. ICE has not detained Mr. Rivas since his removal order became final. *Id*. at ¶ 88. ICE granted Mr. Rivas' continuous requests for administrative stays of removal until March 24, 2017, when ICE denied his request for an administrative stay, but did not detain him. *Id*. at ¶¶ 87-88. On

---

[1] On April 13, 2018, this Court ordered Respondents not to remove any of the named alien petitioners from Massachusetts while this case is pending. ECF No. 32. In accordance with this order, ICE Enforcement and Removal Operations has directed its officers not to remove the named alien Petitioners from Massachusetts or, otherwise, from the United States. ECF No. 38.

April 2, 2018, ICE placed Mr. Rivas on electronic monitoring and instructed Mr. Rivas to depart the country by May 2, 2018. *Id.* at ¶ 91.

Mr. Rivas is the beneficiary of a Form I-130 petition filed on his behalf by his U.S. citizen wife, Celina Rivera Rivas, on April 12, 2017. *Id.* at ¶ 89. Mr. Rivas also filed a Form I-212 on July 7, 2017. *Id.* at ¶ 90.

v.      Petitioner Deng Gao

Deng Gao is a citizen of China who originally entered the United States on a K-3 visa. *Id.* at ¶ 95. An immigration judge ordered Mr. Gao removed in 2008 after he failed to show up to his immigration court hearing. *Id.* at ¶ 96. The immigration court denied Mr. Gao's motion to reopen his immigration case in August 2017 and his appeal is pending at the BIA. *Id.* at 98. Mr. Gao is the beneficiary of a Form I-130 petition filed on his behalf by his U.S. citizen wife, Amy Chen, on June 28, 2016. *Id.* at ¶ 99. ICE has never detained Mr. Gao and he is not under any ICE supervision. *Id.* at ¶ 99. Mr. Gao has not yet attended his Form I-130 interview with United States Citizenship and Immigration Services ("USCIS").

vi.      Procedural History

On February 27, 2018, this Court adopted the parties' briefing schedule and ordered Respondents to file a motion to dismiss, by March 27, 2018. ECF No. 21 at ¶ 1. On April 10, 2018, in lieu of filing a response to Respondents' motion to dismiss, Petitioners filed an amended complaint and petition for writ of habeas corpus. ECF No. 27. The next day, Petitioners filed a motion for order to show cause and for emergency relief requesting this Court to order Respondents to show cause as to Ms. de Souza's detention and to stay the removal of the alien petitioners. ECF No. 30. On April 13, 2018, this Court ordered Respondents not to remove any of the named alien petitioners from Massachusetts while this case is pending. ECF No. 32. In

accordance with this order, ICE Enforcement and Removal Operations directed its officers not to remove the named alien Petitioners from Massachusetts or, otherwise, from the United States. ECF No. 38. On April 16, 2018, this Court allowed Petitioner's Motion for Order to Show Cause and ordered Respondents to "file a memorandum and affidavit(s) responding to that part of the Amended Complaint that seeks de Souza's release." ECF No. 34 at ¶ 2. On April 19, 2018, this Court scheduled a conference with the parties to be held on May 1, 2018, and directed the parties to report jointly, by April 26, 2018, in preparation for the May 8, 2018, hearing. ECF No. 35.

## ARGUMENT

### A.     This Court lacks subject matter jurisdiction over all Petitioners' habeas petitions, other than Ms. de Souza's habeas petition because there is no live case or controversy.

A federal court's jurisdiction is limited to cases and controversies. U.S. Const. art. III, § 2, cl. 1. At all stages in the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). "Even if an actual case or controversy exists at the inception of litigation, a case may be rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate any possibility of effectual relief." *Main School Administration District No. 35 v. Mr. R.,* 321 F.3d 9, 17 (1st Cir. 2003). In the immigration context, a habeas petition is moot once the petitioner is released because it eliminates the possibility of the District Court granting any relief. *Omondiagbe v. McDonald,* No. 13-11182-MBB, 2014 WL 1413560 at *2 (D. Mass. April 10, 2014); *see also Hernandez v. Gonzales,* 424 F.3d 42 (1st Cir. 2005) (finding the district court lacks subject matter jurisdiction to consider immigration matters other than "challenges to detention that are independent of challenges to removal orders"); *c.f. Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002) (remanding to the district court to assess

"collateral consequences of the underlying proceeding" prior to the REAL ID Act which clearly stripped district courts of jurisdiction).[2]

All of the named Petitioners' habeas petitions, other than Ms. de Souza's, are moot because those petitioners are not in ICE custody.[3] *See Leitao v. Reno,* 311 F.3d 453, 455 (1st Cir. 2002). Additionally, Petitioners' request that this Court declare any *future* detention unlawful is, in fact, an inappropriate challenge to their removal orders, which this Court is without jurisdiction to hear. *See Hernandez,* 424 F.3d at 42. The only remaining relief the non-detained Petitioners seek is a stay of their removal, which may not be granted in a habeas action.[4] *See id.* Accordingly, this Court should dismiss this habeas petition as to the non-detained Petitioners. *See Mr. R.,* 321 F.3d at 17.

## B.      Section 1252 of Title 8 requires dismissal of this Complaint.

---

[2] The First Circuit's decision in *Leitao*, decided prior to the REAL ID Act, was predicated on the belief that the District Court had jurisdiction to decide whether the alien was eligible for a discretionary waiver. *Leitao,* 311 F.3d at 455. Since then, Congress has clarified that the District Court is without jurisdiction to consider such a claim and other habeas petitions that challenge an underlying removal order. 8 U.S.C. § 1252(b)(9); *Hernandez,* 424 F.3d at 42. Therefore, the collateral consequences analysis in *Leitao* has no bearing on whether this petition is now moot. *See id.*

[3] This Court should, at a minimum, dismiss alien Petitioner Deng Gao and his wife from this action because Mr. Gao has never been detained by ICE and therefore has suffered no injury. *See* Compl. at ¶ 100; *Katz v. Pershing LLC,* 672 F.3d 64, 71 (1st Cir. 2012) ("[A] plaintiff must have personally suffered some harm.").

[4] Respondent's position is that 8 U.S.C. 1252 *et. seq.* precludes a habeas court in the immigration context from issuing any relief other than release from custody. *See* 8 U.S.C. § 1252(g), (b)(9), (a)(2)(D). Accordingly, the "capable of repetition, yet evading review" exception to mootness is not applicable here because section 1252 strips this Court of jurisdiction to hear the Petitioners' remaining claims, including their request for a stay of removal. *See id*; *see e.g., Pelletier v. United States,* 653 F. App'x 618, 622 (10th Cir. 2016) ("To the extent that [petitioner] seeks modification or release from the conditions of his bond, 8 U.S.C. § 1226(e) expressly bars [jurisdiction] . . . To the extent [petitioner] seeks release from his removal proceedings, 8 U.S.C. § 1252(g) strips courts of jurisdiction . . . Because the district court could not provide relief to [petitioner], Defendants were entitled to judgment as a matter of law . . . ).

Petitioners' claims are precluded by 8 U.S.C. § 1252(g). Congress enacted the REAL ID Act in 2005. *See* Pub. L. No. 119-13, Div. B, 119 Stat. 302 (May 11, 2005). The REAL ID Act added jurisdiction-stripping provisions to the INA that speak directly to the availability of habeas corpus relief for aliens. *See Ishak v. Gonzales*, 422 F.3d 22, 29 (1st Cir. 2005). Importantly, the REAL ID Act amended 8 U.S.C. § 1252(g) to make clear that it "definitively eliminated any provision for [habeas] jurisdiction." *Id.* As amended by the REAL ID Act, 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, (statutory or nonstatutory), *including section 2241 of Title 28, or any other habeas corpus provision* . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Government] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Thus, Congress unequivocally protected the government's authority to make "discretionary determinations" over whether and when to execute a removal order. *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 485 (1999).

Additionally, the REAL ID Act establishes a specific statutory mechanism that expressly channels all claims relating to removal proceedings into a petition for review before the appropriate circuit court of appeals, after the alien has completed the administrative removal process and is subject to a final order of removal. Specifically, 8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter *shall be available only in judicial review of a final order under this section*. Except as otherwise provided in this section, *no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision*, by section 1361 or 1651 of such title, or by any other

8

provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

Section 1252(a)(2)(D) of the INA further clarifies that nothing in the Act "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section," making clear that an alien may raise legal claims in the court of appeals as part of the petition for review process. *See generally Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9-12 (1st Cir. 2007) (explaining that "Congress's purpose in enacting section 1252(b)(9) … is to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals"); *accord* H.R. Rep. No. 109-72, at 174 ("[B]y channeling review to the courts of appeals, section 106 will eliminate the problems of bifurcated and piecemeal litigation."); *see also* 8 U.S.C. § 1252(a)(5) ("Notwithstanding any other provision of law (statutory or nonstatutory) . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . .").

Section 1252(b)(9)'s "expanse is breathtaking" and is "not limited to challenges to singular orders of removal or to removal proceedings simpliciter." *Aguilar*, 510 F.3d at 9. Consequently, allowing Petitioners' habeas petition to move forward in this Court—when Congress has provided ample administrative remedies, as well as a petition for review process—would "belie[] the statute's plain meaning and run[] contrary to Congress's discernible intent." *Id.*

9

Petitioners ask this Court to intervene in ICE's decision to *execute* their removal orders, entered years ago, which is explicitly prohibited by the statute and binding Supreme Court precedent. *See* Compl. at ¶¶ 39, 63, 75, 85, 96. Section 1252(g) plainly prohibits judicial review of the "decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *AADC*, 525 U.S. 482 (emphasis in original); *Foster v. Townsley,* 243 F.3d 210, 214 (5th Cir. 2001) (holding the district court had no jurisdiction even though DHS executed a removal order contrary to an automatic stay); *Tejada v. Cabral*, 424 F .Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—*be they stays or permanent injunctions*—were to be issued by the appropriate court of appeals.") (emphasis added); *Cf. Aziz v. Chadbourne,* 2007 WL 3024010, *2 (D. Mass. Oct. 15, 2007) (acknowledging that 8 U.S.C. § 1252(g) bars granting of any stay of removal for alien admitted under Visa Waiver Program who had pending adjustment application). Accordingly, this Court should dismiss this Complaint, which merely seeks to stay the named alien Petitioners' removal from the United States.

**C.   The Petition does not establish that Ms. de Souza is detained in violation of the Constitution or the laws or treaties of the United States.**

     i.     This Court should dismiss Ms. de Souza's Petition because she has failed to exhaust her administrative remedies

"Precedent is clear in this circuit that failure to pursue administrative remedies is virtually always fatal to a habeas petition." *Sitcha v. MacDonald,* 365 F. Supp. 2d 103, 106 (D. Mass. 2005) (citing *Sayyah v. Farquharson,* 382 F. 3d 20, 26 (1st Cir. 2004). The First Circuit recognized that the exhaustion requirement found in section 1252(d) equally requires exhaustion in the habeas context. *Sayyah,* 382 F. 3d at 26; *see also* 8 U.S.C. § 1252(d).

The Form I-246, Application for a Stay of Deportation or Removal is available to aliens like Ms. de Souza, with final orders of removal. *See* 8 C.F.R. 241.6. Ms. de Souza has not applied

10

for an administrative stay of removal, which could potentially give her the relief she now seeks before this Court. *See* Ex. A at ¶ 7. Therefore, this Court should dismiss Ms. de Souza's habeas petition because she has failed to exhaust her administrative remedies, via a Form I-246. *See id.; Sayyah,* 382 F. 3d at 26.

        ii.     Ms. de Souza's detention is lawful under 8 U.S.C. § 1231(a)(6) and Supreme Court Precedent.

To the extent that Ms. de Souza, and any of the other alien Petitioners, are challenging the lawfulness of their immigration detention, this Court has no basis to grant any relief because Ms. de Souza's detention, and the detention of any of the other alien Petitioners, is lawful under 8 U.S.C. § 1231(a)(6) and as a matter of constitutional interpretation under *Zadvydas v. Davis,* 533 U.S. 678, 701 (2001). Section 1231(a)(6) authorizes detention of aliens with orders of removal beyond the 90 day removal period. 8 U.S.C. § 1231(a)(6). Detention pursuant to this section is presumptively reasonable for six-months, thereby making habeas petitions filed prior to the six-month mark not ripe for adjudication. *See Zadvydas,* 533 U.S. at 701; *Akinwale v. Ashcroft,* 287 F.3d 1050, 1052 (11th Cir. 2002) (holding that the "six-month period . . . must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*"); *accord Hodel v. Aguirre,* 260 F. Supp. 2d 695, 699 (N.D. Ill. 2003) (*Zadvydas* not implicated where criminal alien held fewer than six months); *Lamotte v. Holder,* No. CIV.A. 13-10582-RGS, 2013 WL 1629135, at *1-2 (D. Mass. Apr. 9, 2013). After the expiration of the six-month period, if an alien provides good reason to believe that there is *no* significant likelihood of removal in the reasonably foreseeable future ("SLRRFF"), the government must respond with evidence sufficient to rebut that showing. *Zadvydas,* 533 U.S. at 701.

The Supreme Court's analysis in *Zadvydas* is the sole inquiry in cases like Ms. de Souza's and the alien Petitioners'. *See Poeuv v. Smith,* 169 F.Supp.3d 297 (D. Mass. 2016); *Penate-Diaz v. Moniz*, No. 18-10156-NMG, 2018 WL 889217 at *2 (D. Mass February 12, 2018). Ms. de Souza has been detained for less than three months; therefore, under *Zadvydas*, her claim is premature. *See Lamotte v. Holder*, No. CIV.A. 13-10582-RGS, 2013 WL 1629135, at *1-2 (D. Mass. Apr. 9, 2013); Compl. at ¶ 66. Moreover, Ms. de Souza cannot show a lack of significant likelihood of removal in the reasonably foreseeable future because ICE has requested a passport for Ms. de Souza based on her Brazilian birth certificate and can effectuate removal as soon as the stay granted by this Court in ECF No. 32 is lifted. *See* Ex. A at ¶ 7. For these reasons, this Court should dismiss Count 5.

  iii.  The Post Order Custody Review regulations do not apply to Ms. de Souza.

  As stated above, procedural due process claims concerning post order detention and removal are analyzed solely under the *Zadvydas* framework. Petitioners and Ms. de Souza cannot attempt to skirt around this framework by asserting that the Post Order Custody Review ("POCR") regulations apply to them *prior* to any detention. *See* Compl. At ¶ 46. The plain language of the regulations states that the POCR regulations apply only to currently detained aliens. *See* 8 C.F.R. § 241.4(a).

  An agency's interpretation of its own regulations is controlling unless it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461 (1997). The agency's interpretation is worthy of deference even if the interpretation is "in the form of a legal brief." *Id.* at 462. The purpose of the POCR regulations is to provide alien detainees with administrative review of their continued detention after they have already been detained for ninety days, otherwise known as the "removal period." *See* 8 C.F.R. § 241.4(a). These regulations apply

when ICE decides to exercise its "authority to *continue* an alien in custody" and explains what procedures must be followed when ICE wants to "*continue* an alien in custody beyond the removal period." *Id.* (emphasis added). The regulations provide factors to be considered when deciding whether to "recommend *further* detention or release of detainee" and ICE must give 30 day "written notice to the *detainee*" of the pending record review. 8 C.F.R. § 241.4(f), (h)(2) (emphasis added). Any "decision to *retain custody*" must be provided to the "detained alien." 8 C.F.R. § 241.4(d) (emphasis added).

ICE interprets these regulations to mean that only aliens currently detained at the expiration of the removal period are entitled to a POCR[5] and that these regulations do not apply to aliens prior to their detention or before they have been detained 90 days. Because the agency's interpretation is consistent with the statutory language, it must be given deference. *See Auer,* 519 U.S. at 461. Petitioners' claim that they are entitled to these regulations prior to any detention is contrary to both the regulatory language and the agency's interpretation of it. *See* Compl. at ¶ 45. As a result, this Court should dismiss Count 1 and Count 2 of the Complaint.

**D.   Petitioners cannot establish that their detention and removal would be unlawful under the INA and applicable regulations.**

Petitioners cannot establish that their removal would be unlawful because the filing or approval of a provisional unlawful presence waiver has *no effect* on the immigration status of the applicant or ICE's authority to remove the applicant from the United States. 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute

---

[5] Applying the POCR regulations to Plaintiffs prior to any detention would mean every alien with a final order of removal, even criminal aliens, would have to be given an effective "notice to run." Applying the POCR regulations would merely reward those aliens who refused to comply with their removal orders with more due process than those who followed an immigration judge's orders to depart from the United States.

a grant of a lawful immigration status or a *period of stay* authorized by the Secretary.") (emphasis added). To deter aliens from accruing unlawful presence in the United States, Congress adopted the three year and ten year bars of inadmissibility. 8 U.S.C. § 212(a)(9)(B). A person who accrues unlawful presence of more than one year and then leaves the United States is inadmissible from immigrating to the United States for a period of ten years. *See id.* USCIS, in its *sole discretion*, may waive this ten year bar through the "unlawful presence waiver" if the applicant can prove that the bar would result in "extreme hardship" to the applicant's citizen or permanent resident spouse or parent. 8 U.S.C. § 1182(a)(9)(B)(v). U.S. citizen children are not relatives that could qualify an applicant for a waiver. *Id.* In 2013, a rule was promulgated to allow aliens within the United States to provisionally apply for the Section 1182(a)(9)(B)(v) unlawful presence waiver. 8 C.F.R. § 212.7(e)(2)(i). The provisional unlawful presence waiver process is described in 8 C.F.R. § 212.7(e). "The decision whether to approve a provisional unlawful presence waiver application is discretionary." 8 C.F.R. § 212.7(e)(2)(i).

However, the filing or approval of a provisional unlawful presence waiver has *no effect* on the immigration status of the applicant or ICE's authority to remove the applicant from the United States. 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a *period of stay* authorized by the Secretary.") (emphasis added). Consequently, Petitioners cannot use the mere availability of this waiver as a means to stay their removal, especially when regulations place no limit on ICE's ability to execute removal orders. *See id.* Thus, this Court should dismiss Count One.

**E.**     **Petitioners do not have a due process right to remain in the United States while their unlawful presence waiver is adjudicated.**

Petitioners fail to state a cognizable due process claim because they have no right to remain in the United States while their unlawful presence waiver is adjudicated. Petitioners have not, as they argue in their Complaint, been denied any "right to seek relief." *See* Compl. at ¶ 117. The alien Petitioners seek a waiver of only *one* ground of inadmissibility. *See* 8 U.S.C. § 1182(a)(9)(B)(v). The regulations allow that waiver to be sought from both within and outside the United States. *See* 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(2)(i). Because the alien Petitioners' removal would not preclude them from seeking the *same* unlawful presence waiver from outside the United States, they have not been denied any due process right to seek relief. *See id.* Accordingly, all that remains is the U.S. citizen Petitioners' claim that they have a right to live in the United States with their alien spouses. *See* Compl. at ¶ 118. The Supreme Court, however, was adamant that "there is no such constitutional right." *Kerry v. Din,* 576 US __, 135 S. Ct. 2128 (2015).

As discussed above, Petitioners are subject to lawful orders of removal. Compl. at ¶¶ 40, 63, 75, 87, 96. Because Petitioners have already been ordered removed in their underlying immigration proceedings, they no longer have a due process right to remain in the United States. *See Enwonwu v. Gonzales,* 438 F.3d 22, 30 (1st Cir. 2006) (refusing to find a due process right to remain in the United States where the alien had been ordered removed); *Pena-Muriel v. Gonzales,* 489 F.3d 438, 433 (1st Cir. 2007) ("[T]he fact that a vacatur may be an 'appropriate' basis for reopening a deportation order does not establish a due process right to such reopening after one has departed the country."); *Smith v. I.N.S.,* 684 F. Supp. 1113, 1118 n.2 (D. Mass. 1988) ("Obviously, an alien cannot claim a constitutional right to remain in this country because of the existence of a marital relationship with a citizen."). Similarly, their U.S. citizen spouses do not have a due process right to live with their alien spouses in the United States. *Din,* 135 S.Ct. at

2128; *Silverman v. Rogers,* 437 F.2d 102, 107 (1st Cir. 1970) (holding that even assuming there is a right to marriage, preventing the alien spouse from remaining in the United States "does not attack the validity of the marriage").

Finally, the mere availability of the unlawful presence waiver from within the United States does not create a due process right. To have a due process interest in a benefit "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 756 (2005). The claimant must "have a legitimate claim of entitlement to it." *Id.* These entitlements are not created by the Constitution, but by an independent source of law such as a statute. *Id.* Generally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Clukey v. Town of Camden,* 717 F.3d 52, 56 (1st Cir. 2013); *see also Chun Xin Chi v. Holder,* 606 F.3d 6, 10 (1st Cir. 2010) ("Because an alien has *no* right or entitlement to a reopening, he or she has *no* protected liberty or property interest in that remedy."); *Juniper v. Ashcroft,* 396 F.3d 487, 492 (1st Cir. 2005) ("Adjustment of status is not an entitlement, but rather, a matter of administrative discretion.").

Petitioners have no entitlement to remain in the United States while their unlawful presence waiver is adjudicated. Nor is there a legitimate claim of entitlement because the statutes and regulations governing the waiver make it available from *both* within and outside the United States. *See Town of Castle Rock,* 545 U.S. at 756; 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary."). Petitioners' "need or desire" to stay with their families in the United States while their waivers are adjudicated is not sufficient to create a liberty or property interest where Petitioners have lawful final orders of removal and governing law expressly disclaims any such right. *See id.; see also Silverman v.*

16

*Rogers*, 437 F.2d 102, 107 (1st Cir. 1970); *Smith*, 684 F. Supp. at 1118 n.2; *Ansong v. District Director*, 596 F. Supp. 882, 888 (D. Me. 1984); *Li v. Hodgson,* C.A. No. 12-12347-DPW, 2012 WL 6738262, at *3 (D. Mass. Dec. 27, 2012); *Cf. Khalaj v. Cole*, 46 F.3d 828, 835 (8th Cir. 1995) (rejecting petitioner's view of due process that "would prohibit the INS from ever attempting to deport an alien pursuant to a valid deportation order if any further administrative relief, such as motions to reopen, were available"). Moreover, whether to grant a stay of removal pending the waiver application process is within the agency's discretion. *See* 8 C.F.R. § 212.7(e)(2)(i); 241.6(a) (allowing for an administrative stay of removal). Therefore, Petitioners cannot meet the threshold requirement of showing that they have a protected liberty or property interest in remaining in the United States while their waivers are adjudicated and this Court should dismiss Count Two.[6] *See Chun Xin Chi* 606 F.3d at 10.

**F.   Petitioners have failed to adequately state an Equal Protection claim under the Fifth Amendment.**

In Count 3, Petitioners allege that Executive Order 13768 ("EO") and Respondents' actions taken to execute final orders of removal are "motivated by racial animus and animus based on national origin." Compl. at ¶ 122. While the Court must accept as true all well-pleaded factual allegations in the complaint, the Court need not, however, accept Petitioners' mere legal conclusions or conclusory statements. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676-78 (2009). In order

---

[6] Even if such a due process right existed – which it does not – the availability and adjudication of Form I-246, administrative stay of removal, is a "fundamentally fair proceeding" where ICE may consider factors, such as community and family ties, in adjudicating the request. *See Matias v. Sessions,* 871 F.3d 65, 71 (1st Cir. 2017) ("Procedural due process protects a right to a fundamentally fair immigration proceeding; but few proceedings are perfect and one can have real errors, including ones that adversely affect the alien's interests, without automatically violating the Constitution."); 8 C.F.R. § 241.6 (identifying factors that may be considered when adjudicating an I-246). Thus, the availability and adjudication of the Form I-246 would satisfy any procedural due process protections owed Plaintiffs.

to state an equal protection claim under the Fifth Amendment, a Petitioner must allege that (1) they are subject to a government classification that does not meet the appropriate level of scrutiny (invidious discrimination) or (2) the government has deprived them of a fundamental right based on their membership in a particular class. *See Iqbal,* 556 U.S. at 676-77 (describing both invidious discrimination claims and claims based on a "violation of a clearly established right"). "Where the claim is invidious discrimination . . . the Petitioner must plead and prove that the defendant acted with a discriminatory purpose." *Id.* at 676.

Petitioners have not "nudged [their] claims of invidious discrimination across the line from conceivable to plausible." *Id.* at 680; Compl. at ¶ 122. Notably, Executive Order 13768 does not mention race or national origin as a basis for removal. *See* Executive Order 13768 ("We cannot faithfully execute the immigration laws of the United States if we exempt classes or categories of removable aliens from potential enforcement."). Petitioners downplay this key fact and ask that the Court read into the Executive Order an animus for "non-white people." Compl. at ¶ 110, 122. However, Petitioners identify no canon of interpretation that would allow this Court to rely on extrinsic statements to find a discriminatory purpose.

Additionally, the First Circuit has rejected conclusory equal protection claims in the immigration context. *Kandamar v. Gonzales,* 464 F.3d 65, 74 (1st Cir. 2006) ("It is worth emphasizing that the decision to remove Petitioner was based on the fact that he had overstayed his visa, but not based on his national origin."). Here, Respondents are instructed, by statute, to remove aliens who are subject to final orders of removal and the purpose of the EO is the "enforcement of our Nation's immigration laws." Executive Order 13768. As between that "obvious alternative explanation for the arrests and the purposeful, invidious discrimination [Petitioners] ask[] us to infer, discrimination is not a plausible conclusion." *Iqbal,* 556 U.S. at 682.

18

Furthermore, as discussed *supra*, "a claim of selective enforcement based on national origin is virtually precluded by [the Supreme Court]." *Kandamar,* 464 F.3d at 74 (citing *AADC,* 525 U.S. 471, for the proposition that Section 1252(g) precludes jurisdiction over discretionary prosecution cases).

Ultimately, Petitioners equal protection challenge is not a claim of invidious discrimination; their claim is that enforcement of our nation's immigration laws should somehow be illegal as applied to them. For the reasons discussed *supra,* Petitioners have not identified any cognizable fundamental right to remain in this country or live with their alien spouses in the United States. *Din,* 135 S. Ct. at 2128; *Silverman,* 437 F.2d at 107. Moreover, the remedy under this equal protection claim would be to remove *all* aliens with final orders of removal — not staying the removal of all removable aliens. *Sessions v. Morales-Santana,* 582 U.S. __, 137 S. Ct. 1678 (2017) (dispensing with the "favorable treatment for a discrete group" by applying the more stringent requirements to everyone). Petitioners' equal protection claim is wholly incompatible with the relief they seek. *See* Compl. at ¶ 138-145. Accordingly, Petitioners have not stated an Equal Protection claim under the Fifth Amendment and this Court should dismiss Count 3.

**G.      Petitioner's claim under the Administrative Procedure Act is barred by section 1252(g) and because ICE has not engaged in any rulemaking.**

Petitioners' attempt to challenge their detention and removal under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*., fails because any such challenge is barred by section 1252(g) (prohibiting courts from hearing claims challenging ICE's authority to execute removal orders). *See supra,* at 8-11. Furthermore, ICE's decision to execute the removal of the alien Petitioners' removal orders is one of those "discretionary determinations" that are not the "bases for separate rounds of judicial intervention outside the streamlined process designed by

Congress." *AADC*, 525 U.S. at 471. As a discretionary decision, it is absolutely precluded from review under the APA. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); 5 U.S.C. § 701(a)(2) (noting that there is no APA review of agency action committed to agency discretion by law).

Additionally, Petitioners purport that ICE has changed a rule without engaging in proper rulemaking procedures under the APA, but fails to identify what rule changed. Compl. at ¶¶ 126-127. ICE's decision to execute the Petitioners' removal order is not inconsistent with 8 C.F.R. § 212.7(e), which allows ICE to execute removal orders even if a provisional unlawful presence waiver is approved or pending. 8 C.F.R. § 212.7(e) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a *period of stay* authorized by the Secretary."). Accordingly, this Court should dismiss Petitioner's Count Four.

## CONCLUSION

This Court should dismiss the Amended Class Action Complaint and Petition for Writ of Habeas Corpus for lack of subject-matter jurisdiction. Alternatively, this Court should deny the Petition for Writ of Habeas Corpus because none of the alien Petitioners have established that their detention or removal is in violation of the Constitution or laws or treaties of the United States.

DATED: April 23, 2018             Respectfully submitted,

                                  CHAD READLER
                                  Acting Assistant Attorney General

                                  ANDREW E. LELLING
                                  United States Attorney

                                  WILLIAM C. PEACHEY
                                  Director
                                  Office of Immigration Litigation

                                  T. MONIQUE PEOPLES
                                  Senior Litigation Counsel

                                  */s/ Mary L. Larakers.*

MARY L. LARAKERS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

*/s/ Eve A. Piemonte (By MLL)*
EVE A. PIEMONTE, BBO No. 628883
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
Eve.Piemonte@usdoj.gov


ATTORNEYS FOR RESPONDENTS

## LOCAL RULE 7.1 CERTIFICATE

Pursuant to Local Rule 7.1(A)(2), I certify that I conferred with counsel for Petitioners in a good faith effort to narrow or resolve the issues presented by this motion.

/s/ *Mary L. Larakers*
MARY L. LARAKERS
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Respondents' Opposition to Petition for Writ of Habeas Corpus, Motion to Dismiss First Amended Complaint, and Memorandum in Support Thereof was electronically served via CM/ECF on the 23th day of April, 2018, to the following counsel of record for the Petitioner:

Matthew R. Segal
Adriana Lafaille
American Civil Liberties Union
Foundation of Massachusetts, Inc.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kevin Prussia, Esq. (BBO # 666813)
Jonathan Cox, Esq. (BBO # 687810)
Stephen Provazza, Esq. (BBO # 691159)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
kevin.prussia@wilmerhale.com
jonathan.cox@wilmerhale.com
stephen.provazza@wilmerhale.com

Kathleen M. Gillespie (BBO # 661315)

Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

/s/ *Mary L. Larakers*
MARY L. LARAKERS
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice