UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, et al., <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW |

**PETITIONER LUCIMAR DE SOUZA'S TRAVERSE AND RESPONSE
IN SUPPORT OF RELEASE FROM CUSTODY**

Since ICE snatched Petitioner[1] Lucimar de Souza at her I-130 interview and tore her family's life apart, she has already had to endure three months of unlawful detention and separation from her husband and son. On April 16, 2018, this Court ordered the government to respond to that part of the amended complaint that seeks Ms. de Souza's release from detention. Dkt. No. 34. On April 23, 2018, as part of their Second Motion to Dismiss, Respondents attempted to justify their detention of Ms. de Souza and attached the April 23, 2018 Declaration of Deputy Field Office Director James L. Rutherford ("Rutherford Decl.") proffering Immigration and Customs Enforcement's ("ICE") legal basis for her continuing detention. Dkt. Nos. 40 & 40-1. Respondents' submission confirms that Ms. de Souza's detention is unlawful and that she is entitled to immediate release.

---

[1] Plaintiffs-Petitioners and are referred to herein as Petitioners; Defendants-Respondents are referred to as Respondents.

## BACKGROUND

**I.     Petitioner Lucimar de Souza**

Ms. de Souza entered the United States on or around February 22, 2002. Andrade Aff. ¶ 4.[2] That same year, she was ordered removed after failing to appear at her immigration hearing. *Id.* ¶ 5. Ms. de Souza moved to reopen those proceedings in May 2014, but her motion was denied. *Id.* ¶ 6. Her appeal to the Board of Immigration Appeals ("BIA") was dismissed in July 2015. *Id.* ¶ 7.

Ms. de Souza married her husband, Petitioner Sergio Santos Francisco, a United States Citizen, on August 22, 2006. *Id.* ¶ 3. They have an eleven-year-old son. *Id.*

On September 29, 2016, Mr. Francisco submitted an I-130 Petition for Alien Relative for Ms. de Souza. *Id.* ¶ 9. Ms. de Souza and Mr. Francisco were scheduled for an I-130 interview on January 30, 2018 at U.S. Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 10. Consistent with the purposes of the I-130 interview to assist in USCIS's determination of whether Ms. de Souza's marriage was bona fide, the interview notice instructed the couple to bring, among other things, "verifiable clear and convincing evidence that you have been residing together in a bona fide marital relationship from date of marriage continuously to the present." *Id.* ¶ 10 & Ex. B.

At that interview, the I-130 Petition was approved. *Id.* ¶ 10 & Ex. A. But as Ms. de Souza exited the interview room in the JFK Federal Building, five ICE officers were waiting for her outside. *Id.* ¶ 11. Despite her attorney's pleading, the ICE officers detained Ms. de Souza.

---

[2] The April 27, 2018 Affidavit of Tiffany Andrade ("Andrade Aff."), Ms. de Souza's immigration attorney, and accompanying exhibits are filed as Exhibit E to the contemporaneously filed Memorandum of Law in Support of Petitioner's Motion for a Temporary Restraining Order and/or Preliminary Injunctive Relief ("Injunctive Relief Motion").

*Id*.  Since January 30, Ms. de Souza has been detained at the South Bay House of Corrections in Boston.  *See id*. ¶ 3.

Immediately following her detention, on January 30, 2018, Ms. de Souza filed an Emergency Motion to Reopen with the BIA.  *Id*. ¶ 12.  On February 1, 2018, she filed an Emergency Stay of Removal with the BIA.  *Id*. ¶ 13.  On February 6, 2018, Ms. de Souza's attorney received a receipt notice for the Emergency Motion to Reopen from the BIA, and on February 9, 2018, she called the BIA to check on the Emergency Motion.  *Id*. ¶¶ 14-15.  She was informed that the BIA's internal tracking system mistakenly indicated Ms. de Souza was "released" and therefore the BIA would not entertain her Emergency Motion.  *Id*. ¶ 15.  Over the following weeks, Ms. de Souza's attorney called the BIA seven times and ICE's Burlington, MA office eight times in order to correct the issue.  *Id.* ¶¶ 16-18.  By March 8, 2018, the BIA's systems were finally corrected.  *Id*. ¶ 19.

On March 23, 2018, Ms. de Souza submitted to ICE a Request for Bond, or Supervised Release.  *Id.* ¶ 20 & Ex. C.  ICE has not responded to that request.  *Id.* ¶ 20.

On April 13, 2018, the BIA denied Ms. de Souza's motion to reopen.  *Id.* ¶ 22 & Ex. D.  While Ms. de Souza had moved to reopen her case in order to pursue legal status by applying for a provisional unlawful presence waiver, *see* 8 U.S.C. § 1182(a)(9)(B)(v), the BIA's decision emphasized that she "does not need to have her proceedings reopened prior to filing a request for a provisional unlawful presence waiver."  *Id.*  The BIA explained that, "[e]ffective August 29, 2016, the final rule on provisional unlawful presence waivers permits individuals, such as the respondent, with final orders of removal, to apply for provisional waivers under certain circumstances."  *Id.* (citing 8 C.F.R. § 212.7(e)(4)(iv)).

On April 11, 2018, Ms. de Souza filed an I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal. *Id.* ¶ 21. That application is pending. *Id.*

On April 23, 2018, Ms. de Souza was given a Notice to Alien of File Custody Review, informing her of the ability to submit documents to assist in ICE's review of her custody status, which would occur "on or about" April 30, 2018. *Id.* ¶ 21 & Ex. E. A copy was not sent to her attorney, who received it from Ms. de Souza on Friday, April 27, 2018. *Id.* ¶ 23. On April 30, 2018, in an effort to pursue every avenue in favor of release, Ms. de Souza submitted to ICE both documentation in support of release under the post-order custody review, and a request for a stay of removal (Form I-246). *Id.* ¶¶ 23-24.

## II. Respondent's justification for Ms. de Souza's detention

On April 10, 2018, Ms. de Souza, Mr. Francisco, and eight other Petitioners filed an Amended Class Action Complaint and Petition for Writ of Habeas Corpus alleging that, among other things, Ms. de Souza's detention violates the Immigration and Nationality Act ("INA"), applicable regulations, and the Due Process Clause of the U.S. Constitution. Dkt. No. 27 at ¶¶ 128-136. On April 16, 2018, this Court granted Ms. de Souza's Motion for Order to Show Cause and required Respondents to "file a memorandum and affidavit(s) responding to that part of the Amended Complaint that seeks [Ms.] [d]e Souza's release." Dkt. No. 34 at 8. The Court also requested an "affidavit from a United States Immigration and Customs Enforcement [R]epresentative" identifying the official who made the original decision to detain Ms. de Souza, the legal basis for that decision, the procedures followed in reaching that decision, and whether Respondents believe they still have authority to detain Ms. de Souza without an individualized determination of dangerousness and risk of flight. *Id.* at 8-9.

Respondents filed their Second Motion to Dismiss on April 23, 2018. Dkt. No. 40. In that motion, Respondents argue that Ms. de Souza's legal and constitutional claims challenging her detention fail for two reasons: (1) she did not exhaust administrative remedies and (2) her detention is lawful pursuant to 8 U.S.C. § 1231(a)(6) "and as a matter of constitutional interpretation under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)." Dkt. No. 40 at 10-12.

Respondents also submitted the declaration of Deputy Field Office Director James L. Rutherford in support of Ms. de Souza's detention. Dkt. No. 40-1 (Ex. A). Deputy Rutherford acknowledged that Ms. de Souza's detention is discretionary under 8 U.S.C. §1231. Rutherford Decl. ¶ 5. He further explained that Officer Stephen W. Wells decided to detain Ms. de Souza using ICE's "Risk Classification Assessment" system. *Id*. ¶ 6. Officer Wells found Ms. de Souza to be a flight risk based on her final order of removal and his determination that she is ineligible for any immigration benefits that would allow her to remain in the United States. *Id*. He also "considered the availability of bed space, her lack of health issues and her lack of dependent-care issues, (De Souza's child was in the care and custody of his father and there were no elderly or infirmed [sic] parents to care for)." *Id*. Finally, Deputy Rutherford declared that Respondents have the authority to continue detaining Ms. de Souza without an individualized determination of dangerousness or flight risk based on 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1231. *Id*. ¶ 7.

**ARGUMENT**

I. **Ms. de Souza was not required to exhaust remedies, had no remedy to exhaust, and has—in any event—pleaded for her release in every way possible.**

Respondents contend that this Court should decline to hear Ms. de Souza's claims until she exhausts administrative remedies by seeking a stay of removal from ICE (Form I-246). That claim is incorrect and disingenuous.

5

First, exhaustion is not required in the habeas context. *See Doe v. Smith*, No. 17-cv-11231-LTS, 2017 WL 6509344, at *6 n. 6 (D. Mass. Dec. 19, 2017); *Sengkeo v. Horgan*, 670 F. Supp. 2d 116, 121 (D. Mass. 2009). Even if the Court had the discretion to require prudential exhaustion,[3] it should not do so where a "particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *Portela-Gonzalez*, 109 F.3d at 77 (internal quotations omitted). Ms. de Souza suffers such irreparable harm "each day of wrongful incarceration," *McGuinness v. Pepe*, 150 F. Supp. 2d 227, 230 n.8 (D. Mass. 2001), and should not be required to exhaust, *see Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 464 (D. Mass. 2010) ("[A]dditional delay attendant to exhaustion would just contribute to the troubling delay [Flores] has already experienced in attempting to resolve [his] immigration status." (internal quotations omitted)); *see also* Lucimar de Souza Aff. at ¶¶ 1-6, Dkt. No. 30-5.

Additionally, Ms. de Souza has sought her release in every possible way. Because Respondents take the position that Ms. de Souza was ineligible for a bond hearing and for the post-order custody review procedures of 8 C.F.R. § 241.4, Dkt. No. 40 at 11-12, no standard mechanism at all existed for her to ask for release. Undeterred, Ms. de Souza requested that ICE release her over a month ago—a request they have ignored. *See* Andrade Aff. Ex. C; ¶ 20. In that request, Ms. de Souza provided the same information and documentation that she would in a

---

[3] It would be improper for the Court to require exhaustion as a prudential matter because Congress has not remained "silent" as to exhaustion. *Cf. Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (noting "courts have more latitude in dealing with exhaustion" if faced with Congressional silence). Congress required exhaustion of habeas petitioners challenging state convictions, 28 U.S.C. § 2254(b)(1)(A), and of noncitizens filing petitions of review of their removal orders, 8 U.S.C. § 1252(d). *See Sayyah v. Farquharson*, 382 F.3d 20, 26 (2004) (affirming § 1252(d) applied to noncitizen's habeas petition challenging his *removal order*). In the same section, Congress imposed limits on the claims that noncitizens filing habeas petitions under 28 U.S.C. § 2241 may raise. *See, e.g.*, 8 U.S.C. § 1252(a)(5). None of these provisions require exhaustion of Ms. de Souza's claims. In this context, Congress cannot be said to have left the question of exhaustion up to the courts.

Form I-246.[4]  And on April 30, 2018, she submitted materials for post-order custody review, seeking her release from detention, and submitted an I-246 seeking a stay of removal.  But ICE has already determined that Ms. de Souza should be detained.  Rutherford Decl. ¶ 6.  It may not now seek to defer her legal claims by insisting that she ask them to change their minds.

**II.     Ms. de Souza is entitled to release.**

Ms. de Souza has endured three months of detention for no good reason.  The government's submission confirms that it has little reason to label her a flight risk and detain her while she seeks to obtain legal status by virtue of her U.S. citizen husband. Because Ms. de Souza's detention is arbitrary and unlawful, the Court should order her immediate release.

**A.    Ms. de Souza's detention unlawfully interferes with her pursuit of legalization under the 2016 provisional waiver regulations.**

Ms. de Souza incorporates by reference arguments that her detention is unlawful *because* it is contrary to regulations whose purpose is to permit noncitizens like her to remain with their families while pursuing legal status by way of provisional waivers.  See Injunctive Relief Motion at I.A.  Because Ms. de Souza's detention arbitrarily tears her from her family and pretermits her ability to pursue the provisional waiver process, and because ICE has interfered with her and others' ability to legalize for reasons of animus, that detention violates the INA and its

---

[4] Form I-246 Application for a Stay of Deportation or Removal is a basic, one-page form that requests some background information about the applicant, provides space for an applicant to describe why a stay should be granted, and allows an applicant to indicate whether documents are attached.  Immigration and Customs Enforcement, https://www.ice.gov/sites/default/files/documents/Document/2017/ice_form_i_246.pdf.  The form's instructions explain that "a decision in a stay … application is within the sole discretion" of ICE and "you may not appeal," that a pending application "does not preclude the execution" of an order of removal, and that the Field Office Director has complete discretion to revoke the approval of an application and execute the order at any time with no advance notice.  *Id*.

regulations, the Administrative Procedure Act, and the Fifth Amendment to the U.S. Constitution. *Id.*

      **B.    Even apart from its interference with the provisional waiver process, Ms. de Souza's detention is arbitrary and violates due process.**

Even if it did not contravene the provisional waiver regulations, ICE's detention of Ms. de Souza is inconsistent with constitutional limits on the agency's detention power. "In our society liberty is the norm, and detention … without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Because Ms. de Souza's detention goes beyond these careful limits, it violates due process. Although the government argues that Ms. de Souza's custody is rendered lawful by *Zadvydas*, nothing in that decision transforms unlawful detention into lawful custody merely because six months have not elapsed.

      **1.    Ms. de Souza's detention is arbitrary and not reasonably related to preventing flight or protecting the community.**

The government concedes that Ms. de Souza's detention is not mandated by Congress. *See* Dkt. No. 40 at 14; Rutherford Decl. ¶ 5. ICE must therefore justify it—if at all—with reasons specific to Ms. de Souza and consistent with the limited purposes of immigration detention to prevent flight and protect the community. It cannot do so, and Ms. de Souza is entitled to release as a matter of law.

Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas,* 533 U.S. at 690 (quotations omitted). Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana,* 406 U.S. 715, 738 (1972); *see also Foucha v. Louisiana,* 504 U.S. 71, 79

8

(1992); *Zadvydas,* 533 U.S. at 690. In the immigration context, those purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.* (quotations omitted).

Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha,* 504 U.S. 78-80. Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. *Id.* at 79; *Zadvydas,* 533 U.S. 692; *Casas-Castrillon v. Dep't of Homeland Sec.,* 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court may determine whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring her appearance or protecting the community. *Zadvydas,* 533 U.S. at 699.

In this case, ICE has not alleged that Ms. de Souza, who has no criminal record, Andrade Aff. Ex. C, is a danger. Instead, with the aid of a computer algorithm, Officer Stephen Wells determined that she was a flight risk based solely on her "final order of removal and the fact"—according to ICE—"that [she] is not eligible for any immigration benefits that would allow her to remain in the United States." Rutherford Decl. ¶ 6.

In fact, Ms. de Souza is addressing her order of removal through a process that has been deliberately made available to those with final orders. USCIS's website expressly acknowledges the eligibility of individuals with final orders to seek legalization through the provisional waiver process, *see Provisional Unlawful Presence Waivers*, USCIS (Jan. 5, 2018), https://www.uscis.gov/family/family-us-citizens/provisional-waiver/provisional-unlawful-presence-waivers (noting date of last review/update as January 5, 2018) ("If You Have a Final order of Removal, Exclusion or Deportation Including an In Absentia Order of Removal Under

9

INA 240(b)(5) . . . [o]nce we have approved your Form I-212, you can apply for a provisional unlawful presence waiver by filing Form I-601A"),[5] and the BIA recognized Ms. de Souza's eligibility for it when it denied her motion to reopen, *see* Andrade Aff. Ex. D (noting, as a result of the 2016 provisional waiver regulations, that Ms. de Souza "does not need to have her proceedings reopened" to seek a provisional unlawful presence waiver). Indeed, less than two months after regulations made her eligible to pursue lawful status, Ms. de Souza and her husband made a deliberate choice to come out of the shadows and seek her lawful status. *See id.* ¶ 9. On January 30, 2018, Ms. de Souza voluntarily presented herself for her I-130 interview. *Id.* ¶ 10. Her I-130 marriage petition was approved, and she has continued to advance the process by filing her I-212 even while detained. *Id.* ¶¶ 10, 21.

Far from being reasonably related to the purposes of protecting the community and preventing flight, Ms. de Souza's detention at and since her I-130 interview has been and continues to be entirely arbitrary. Because ICE's determination was based solely on an order of removal that Ms. de Souza was actively addressing, and because there is no other evidence that she poses a danger or flight risk, Ms. de Souza must be released.

> **2. Respondents misread *Zadvydas* as a *grant* of authority to detain for six months without judicial scrutiny.**

Citing the Supreme Court's decision in *Zadvydas*, the government asserts that Ms. de Souza's detention claim is not "ripe" and cannot be adjudicated because she has not yet endured six months of detention. Dkt. No. 40 at 10-11. But that argument misunderstands both ripeness and *Zadvydas*.

First, ripeness problems arise when courts "entangle[e] themselves in abstract disagreements" over policies whose consequences have not yet been felt in a "concrete way."

---

[5] A copy of this webpage can be found at Exhibit I to the Injunctive Relief Motion.

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (internal quotations omitted). Ms. de Souza asserts that she is unlawfully detained *now*. It is difficult to imagine a claim more ripe.

Second, if what the government means is that post-order detention is automatically lawful for six months, it has misconstrued *Zadvydas*. The decision affirmed the duty of a habeas court to "carry out . . . the historic purpose of the writ" and determine the legality of executive custody in each individual case. *Zadvydas*, 533 U.S. at 699 (internal quotations omitted). *Zadvydas* provided a framework for deciding claims of noncitizens whose detention dragged on indefinitely while the government attempted to remove them. *Id.* at 684-86. Affirming that detention must be reasonably related to the purpose of effecting removal, the Court limited post-order custody to circumstances where removal is "reasonably foreseeable," and established six months as a presumptively reasonable period for the government to detain a noncitizen while attempting to remove him. *Id.* at 690, 699-701.

*Zadvydas* never held that this framework is the only conceivable challenge to post-order detention, much less granted the government a blank check for six months of unreviewable detention. Indeed, the majority affirmed that even "within [a] reasonable removal period," the habeas court must evaluate whether detention is justified in light of the statute's purposes or ensuring the noncitizen's appearance and protecting the community. *Id.* at 700. Detention, in short, can be unlawful for reasons other than its duration. *See Ragbir v. Sessions*, No. 18-cv-236-KBF, 2018 WL 623557, at *1 (S.D.N.Y. Jan. 29, 2018) (recognizing abrupt detention of longtime resident raised due process concerns).

This is such a case. Ms. de Souza's detention was arbitrary and illegal from its inception and is even more so now that three months have passed. Nothing in *Zadvydas* requires her to suffer an additional three months before this Court may hear her claims.

### C. Ms. de Souza's detention violates the INA and its regulations.

Ms. de Souza is also entitled to release because ICE did not comply—and continues to fail to comply—with 8 C.F.R. § 241.4. ICE concedes that Ms. de Souza was detained outside the 90-day removal period provided for in 8 U.S.C. § 1231(a)(1), and that her detention is governed by 8 U.S.C. § 1231(a)(6). By its terms, 8 C.F.R. § 241.4 governs discretionary custody determinations under § 1231(a)(6). *See* 8 C.F.R. § 241(a) (defining regulation's scope by reference to categories of noncitizens subject to § 1231(a)(6)). Ms. de Souza's detention must therefore comply with the provisions of this regulation, which provide a process to make individualized custody determinations from the moment that a detainee's detention is not mandatory. *See* 8 C.F.R. § 241.4(d), (f), (h) & (k) (describing the circumstances in which noncitizen can be held beyond removal period, and circumstances favoring release, including a determination that a noncitizen "do[es] not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending … removal").

Ms. de Souza was detained abruptly and without the benefit of any notice, opportunity to present arguments against her detention, or individualized custody determination under the factors and procedures specified in § 241.4. Even now, it is unclear whether the government's position is that she will *never* receive the protections of the regulation, or whether she is entitled to them but only after 90 days of detention. Dkt. No. 40 at 12-13. Ms. de Souza has received a notice advising her of the opportunity to submit documentation for a File Custody Review to take place on or about April 30, 2018—the three month anniversary of her detention. But

because the notice was given to her on April 23, 2018, rather than 30 days in advance, *see* 8 C.F.R. § 241.4(h)(2), and because it was not sent to her attorney as required, *id.* § 241.4(d)(3), her attorney did not learn of it until April 27, 2018. See Andrade Aff. ¶ 23 & Ex. E. Because the government has failed to provide Ms. de Souza with even the limited procedures of 8 C.F.R. § 241.4, her detention is unlawful. *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 388-403 (W.D.N.Y. 2009) (report and recommendation adopted) (ordering release because, among other things, ICE failed to comply with procedures of 8 C.F.R. § 241.4).

Although the government argues that it is entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997), such deference is inappropriate where "there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question"—including because the interpretation "conflicts with a prior interpretation, or … is nothing more than a convenient litigating position, or a post hoc rationalization." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (internal quotations omitted). This is such a case. First, the government's brief articulates no clear interpretation of whether and when 8 C.F.R. § 241.4 applies to Ms. de Souza. *See* Dkt. No. 40 at 12-13. Indeed, the government has no consistent position on the application of 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.4 to individuals who are detained on the basis of old orders of removal. It recently argued that another noncitizen in this District who had been granted stays of removal remained within his removal period and subject to mandatory detention six years after being ordered removed, *see* Gov't Reply Br. at 2-7, Dkt. No. 49, *Rodriguez Guardado v. Smith*, 17-cv-11300-RGS (filed Aug. 25, 2017); before this Court, it characterized Petitioner Lilian Calderon's detention in circumstances similar to Ms. de Souza's as neither mandatory nor discretionary, Lyons Decl. ¶ 5, Dkt. No. 19; and it now correctly regards Ms. de Souza's detention as discretionary, but argues

that she is not entitled to the protections of 8 C.F.R. § 241.4. Moreover, ICE's interpretation of 8 C.F.R. § 241.4 cannot be taken seriously where it provided Ms. de Souza a notice of her April 30, 2018 File Custody Review on April 23, 2018, and failed to notify her attorney of record, in violation of § 241.4(d)(3) and (h)(2). Because the agency has failed and continues to fail to comply with any reasonable interpretation of § 241.4, Ms. de Souza is entitled to release.

**III.     In the alternative, Ms. de Souza is entitled to a bond hearing.**

If the Court does not order her release, it should conduct a bond hearing or order the immigration court to conduct one. Because the 2016 provisional waiver regulations establish a presumption that those who are subject to them will be permitted to remain with their families as they seek legalization, *see Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule*, 81 Fed. Reg. 50244, 50245-46 (July 29,2016), any bond hearing must require government to rebut that presumption with clear and convincing evidence that Ms. de Souza poses a flight risk or danger that warrants pretermitting her ability to seek provisional waivers. *See Addington v. Texas*, 441 U.S. 418, 427 (1979) ("The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.").

## CONCLUSION

For the foregoing reasons, the Court should order Ms. de Souza's release or, in the alternative provide the bond hearing described above.

Respectfully submitted this 30th day of April, 2018.

                                                                                                             /s/ Kevin S. Prussia

| | |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Michaela P. Sewall (BBO # 683182) |
| AMERICAN CIVIL LIBERTIES UNION | Jonathan A. Cox (BBO # 687810) |
| FOUNDATION OF MASSACHUSETTS, INC. | Stephen Provazza (BBO # 691159) |
| 211 Congress Street | WILMER CUTLER PICKERING |
| Boston, MA 02110 |   HALE AND DORR LLP |
| (617) 482-3170 | 60 State Street |
| | Boston, MA 02109 |
| Kathleen M. Gillespie (BBO # 661315) | Telephone: (617) 526-6000 |
| Attorney at Law | Facsimile:  (617) 526-5000 |
| 6 White Pine Lane | kevin.prussia@wilmerhale.com |
| Lexington, MA 02421 | jonathan.cox@wilmerhale.com |
| (339) 970-9283 | stephen.provazza@wilmerhale.com |

*Attorneys for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2018, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

/s/ *Kevin S. Prussia*
Kevin Prussia