**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., | ) ) ) ) |
| Individually and on behalf of all others similarly situated, | ) ) No. 1:18-cv-10225-MLW ) |
| Plaintiffs-Petitioners, | ) **ORAL ARGUMENT REQUESTED** ) |
| v. | ) ) |
| KIRSTJEN M. NIELSEN, et al., | ) ) |
| Defendants-Respondents. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'
MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

     I.     Petitioners ....................................................................................................3

     II.    Respondents' illegal practice ...............................................................4

PROPOSED CLASS DEFINITION ......................................................................................5

ARGUMENT ..........................................................................................................................5

     I.     The proposed class meets the requirements of Rule 23(a). ....................................6

         A.     The class is sufficiently numerous that joinder of all members is impracticable. .................................................................................6

         B.     There are common questions of law and fact. ...........................................8

         C.     Petitioners' claims are typical of class members' claims. ........................10

         D.     The class is adequately represented. .........................................................12

     II.    The proposed class meets the requirements of Rule 23(b). ...................................13

     III.   In the alternative, the Court should certify this case as a representative habeas action. ...................................................................................................15

     IV.   If the class is not ripe for certification, the Court should open class discovery. ...16

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Andrews v. Bechtel Power Corp.*,
  780 F.2d 124 (1st Cir. 1985) ................................................................12

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ...............................................................11

*Arriaga Gil v. Tompkins*,
  No. 17-cv-10743-MLW ..........................................................................4

*Baggett v. Ashe*,
  No. 11-cv-30223-MAP, 2013 WL 2302102 (D. Mass. May 23, 2013) ...................11

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008) .............................................................11

*DeGrace v. Rumsfeld*,
  614 F.2d 796 (1st Cir. 1980) ...............................................................11

*Doe v. Patrick*,
  No. 1:14-cv-12813 (D. Mass.) .............................................................12

*Garcia-Rubiera v. Calderon*,
  570 F.3d 443 (1st Cir. 2009) .................................................................6

*George v. Nat'l Water Main Cleaning Co.*,
  286 F.R.D. 168 (D. Mass. 2012) ..........................................................10

*Gordon v. Napolitano*,
  No. 3:13-cv-30146 (D. Mass.) .............................................................12

*Griffin v. Burns*,
  570 F.2d 1065 (1st Cir. 1978) .........................................................11, 13

*Mack v. Suffolk County*,
  191 F.R.D. 16 (D. Mass. 2000) .............................................................8

*McCuin v. Sec'y of Health and Human Servs.*,
  817 F.2d 161 (1st Cir. 1987) .................................................................6

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
  247 F.R.D. 253 (D. Mass. 2008) ...........................................................8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
 522 F.3d 6 (1st Cir. 2008) ................................................................................8

*In re New Motor Vehicles Canadian Export*,
 2006 WL 623591 (D. Me. March 10, 2006) ......................................................13

*Oliveira v. Moniz et al.*,
 No. 18-cv-10150-MLW ......................................................................................4

*Rancourt v. Concannon*,
 207 F.R.D. 14 (D. Me. 2002) .............................................................................7

*Reid v. Donelan*,
 297 F.R.D. 185 (D. Mass. 2014), *reversed on other grounds*, 819 F.3d 486
 (1st Cir. 2016) .......................................................................................6, 7, 13

*United States ex rel. Sero v. Preiser*,
 506 F.2d 1115 (2d Cir. 1974) ............................................................................15

*Connor B. ex rel. Vigurs v. Patrick*,
 272 F.R.D. 30 (D. Mass. 2011) ..........................................................................8

*Connor B. ex rel. Vigurs v. Patrick*,
 272 F.R.D. 288 (D. Mass. 2011) ...............................................................6, 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ......................................................................8, 9, 13, 14

*Yaffe v. Powers*,
 454 F.2d 1362 (1st Cir. 1972) .......................................................8, 13, 16

**Federal Statutes**

8 U.S.C. § 1182(a)(9)(A) ...................................................................................3

8 U.S.C. § 1182(a)(9)(B) ...................................................................................3

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................... *passim*

Fed. R. Civ. P. 23(b) ............................................................................... *passim*

Fed. R. Civ. P. 23(g) ...................................................................................13, 16

**Regulations**

8 C.F.R. § 212.7(e)..........................................................................................3

8 C.F.R. § 212.7(e)(4)(i) ................................................................................................5

8 C.F.R. § 212.7(e)(4)(vi) .............................................................................................5

Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final
    Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016) ....................................................3

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions*, (5th ed. 2013) .........................8, 10

## INTRODUCTION

Petitioners[1] are married couples comprising a U.S. citizen and a noncitizen who has a final order of removal in the United States.  In each case, the U.S. citizen spouse has filed an I-130, Petition for Alien Relative, to begin the process of seeking legal status for the noncitizen spouse.  Yet Respondents are engaged in a practice of targeting the noncitizen Petitioners and class members for detention and removal from the United States despite their efforts to pursue lawful status and despite regulations designed to make it possible for them to do so while remaining in the United States.

Because most noncitizens with final orders of removal are ineligible to "adjust" their status to that of lawful permanent residents from within the United States, they must leave the country and apply to *immigrate* on the basis of their marriage to U.S. citizens.  This process used to require an applicant to spend months or years outside the United States applying for waivers of certain bars to admission.  But in 2016, U.S. Citizenship and Immigration Services (USCIS) promulgated regulations allowing noncitizen Petitioners to seek *provisional* waivers of inadmissibility from within the United States, thus making it possible for them to complete most of the process before departing the United States to process their immigrant visa applications at a U.S. consulate.  The express purposes of these regulations were to encourage noncitizen Petitioners to obtain lawful status, to promote family unity, and to reduce the hardship on U.S. citizen spouses that would otherwise result from prolonged separation during the application process.

In direct contravention of these regulations, Immigration and Customs Enforcement (ICE) has arrested and sought to remove noncitizens availing themselves of the provisional

---

[1] Plaintiffs-Petitioners are referred to herein as Petitioners; Defendants-Respondents are referred to as Respondents.

waiver process based on nothing more than the fact that they are subject to final orders of removal. These removals are part of a practice or policy that, at best, deprives the noncitizen Petitioners and class members of the ability to avail themselves of the 2016 regulations. At worst, by targeting individuals for arrest when they appear at USCIS interviews as part of the first step in the process, ICE improperly transforms the 2016 provisional waiver regulations into a carefully-laid trap. Without intervention by this Court, Respondents will continue to illegally detain and remove class members in contravention of the 2016 regulations and relevant immigration statutes, and in violation of the Administrative Procedure Act and the Fifth Amendment to the U.S. Constitution.

The proposed class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). The proposed class is sufficiently numerous; there are well over 40 couples in the jurisdiction of the ICE-ERO Boston Field Office who have filed an I-130 petition on behalf of a noncitizen spouse with a final order of removal, and do not fall under one of the eligibility exceptions for the provisional unlawful presence waiver. The class also presents the common question of whether Respondents' detention and removal of individuals pursuing lawful status under the 2016 provisional waiver regulations is illegal, and it seeks common equitable relief. Petitioners are also proper class representatives as their claims are typical of those of absent class members, and they and their counsel will adequately and vigorously represent the class. And, through their interference with the 2016 provisional waiver regulations, Respondents have "acted or refused to act on grounds that apply generally to the class," such that class-wide injunctive relief is appropriate. Fed. R. Civ. P. 23(b)(2).

## STATEMENT OF FACTS

### I.     Petitioners

Petitioners are five married couples in which, like the class members they seek to

represent, a noncitizen with a final order of removal is seeking to obtain legal status through his

or her U.S. citizen spouse.  Under regulations promulgated in 2016, the noncitizen Petitioners are

eligible to pursue their lawful status without a lengthy separation from their family, by (1) being

the beneficiary of an approved marriage petition filed by their U.S. citizen spouse (form I-130),

(2) securing conditional "consent[] . . . to reapply[] for admission" (form I-212), and thereby

waiving a bar to admission based on their final order of removal, 8 U.S.C. § 1182(a)(9)(A), (3)

obtaining approval of the provisional unlawful presence waiver (form I-601A), and thereby

waiving a bar to admission based on their unlawful presence in the United States, *see id.*

§ 1182(a)(9)(B), (4) travelling abroad to attend an immigrant visa interview at a U.S. consulate,

and (5) returning to the United States, thereby becoming lawful permanent residents upon

admission.  *See* Am. Compl. ¶¶ 30-36; Expansion of Provisional Unlawful Presence Waivers of

Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016); 8 C.F.R. § 212.7(e).

Two of the noncitizen Petitioners—Lilian Calderon and Lucimar de Souza—were

detained by ICE following their I-130 interviews, and Ms. de Souza remains in custody.  Harris

Aff. ¶ 16; Andrade Aff. ¶ 11.[2]  Ms. Calderon has also filed an I-212 application, which was

approved on April 2, 2018, Harris Aff. ¶ 30 & Ex. D; Ms. de Souza's I-212 application is still

pending, Andrade Aff. ¶ 21.  Two other noncitizen Petitioners—Sandro de Souza and Oscar

Rivas—faced imminent departure from the United States prior to this Court's April 13, 2018

---

[2] The April 28, 2018 Affidavit of Martin D. Harris and exhibits thereto is Exhibit C to the Memorandum of Law in Support of Petitioners Motion for a Temporary Restraining Order and/or Preliminary Injunctive Relief filed contemporaneously with this Memorandum ("Injunctive Relief Motion").  Similarly, the April 27, 2018 Affidavit of Tiffany R. Andrade is Exhibit E to the Injunctive Relief Motion.

Order.  Mr. Sandro de Souza's I-130 was approved on March 1, 2018, but ICE had ordered him to depart the country by April 24, 2018.  Loscocco Aff. ¶¶ 16-19.[3]  Mr. Rivas has filed both I-130 and I-212 applications, but had been ordered to depart the country by May 2, 2018.  Sniffin Aff. ¶¶ 20-24.[4]  Petitioner Deng Gao has a pending I-130 application through his U.S. citizen wife, but they fear that he will be detained and removed after his interview.  Corbaci Aff. ¶¶ 12, 21;[5] Gao Aff. ¶ 3, Dkt. No. 30-4.  Collectively, the named Petitioners care for ten children.[6]

## II.     Respondents' illegal practice

Respondent's treatment of Petitioners illustrates a pattern of illegally detaining and deporting noncitizen spouses who have embarked on the provisional waiver process.  This practice involves the illegal arrest and detention of noncitizen spouses while they are in the process of seeking lawful status through the provisional waiver process—including at USCIS offices where they appear for interviews; their removal from the United States before the process has run its course; and their illegal detention without an adequate and individualized determination of flight risk and dangerousness.

As this Court has already observed, ICE's treatment of the Petitioners appears to be "part of a pattern that has emerged in related cases."  Feb. 15, 2018 Order (Dkt. No. 17) at 2.  ICE has admitted that, in January 2018 alone, six individuals other than Ms. Calderon were arrested while seeking permanent residency at a Massachusetts or Rhode Island USCIS office—presumably including Petitioner Lucimar de Souza.  Lyons Affidavit ¶¶ 12-14, Dkt. No. 19; *see also Oliveira v. Moniz et al.*, No. 18-cv-10150-MLW.  Similarly, this Court has also noted that the petitioner in *Arriaga Gil v. Tompkins*, No. 17-cv-10743-MLW, was one of five noncitizens aliens arrested by

---

[3] The Affidavit of John Loscocco is Exhibit F to the Injunctive Relief Motion.
[4] The April 30, 2018 Affidavit of Ondine Sniffin is Exhibit B to the Injunctive Relief Motion.
[5] The April 27, 2018 Affidavit of Christina A. Corbaci is Exhibit G to the Injunctive Relief Motion.
[6] Sandro de Souza Aff. ¶ 1, Dkt. No. 30-1; Rivas Aff. ¶ 1, Dkt. No. 30-2; Calderon-Jimenez Aff. ¶ 1, Dkt. No. 30-3; Gao Aff. ¶ 1, Dkt. No. 30-4; Lucimar de Souza Aff. ¶ 1, Dkt. No. 30-5.

ICE at a USCIS office in March 2017 while seeking lawful permanent residency by virtue of their marriages to U.S. citizens. Feb. 15, 2018 Order (Dkt. No. 17) at 2. Respondents' practice may manifest itself differently depending on the stage of each spouse's legalization process. Respondents arrest some noncitizens at their I-130 interviews, or order others to depart the country during the pendency of their I-130 application or even after it is approved. But in each instance, Respondents' actions have the same practical effect of illegally separating applicants from their families and depriving them of their ability to avail themselves of the 2016 provisional waiver regulations.

## PROPOSED CLASS DEFINITION

Petitioners seek to represent any U.S. citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the U.S. under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the U.S. citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of Boston ICE-ERO field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

## ARGUMENT

This case involves a large group of similarly situated people subject to an illegal government practice, and a single injunction prohibiting that practice would provide class-wide relief. The proposed class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) and is appropriate for resolution on a class-wide basis.

Federal Rule of Civil Procedure 23(a) sets out four prerequisite requirements for class certification. First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, the court must find that "there are questions of law or fact common to the class." *Id.* at 23(a)(2). Third, the claims of the representative plaintiffs must be

"typical of the claims or defenses of the class." *Id.* at 23(a)(3). Fourth and finally, those

representative plaintiffs must "fairly and adequately protect the interests of the class." *Id.* at

23(a)(4). Where all four requirements of Rule 23(a) are met, parties seeking class certification

must additionally show that the action is maintainable under one of the categories of Rule 23(b).

Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing

the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole." *Id.* at 23(b)(2).

**I.      The proposed class meets the requirements of Rule 23(a).**

      **A.      The class is sufficiently numerous that joinder of all members is
            impracticable.**

The proposed class of individuals affected by the government's detention and removal

practice satisfies Rule 23(a)(1)'s requirement that the class be "so numerous that joinder of all

members is impracticable." Not only are there well over 40 putative class members, but the

proposed class presents a common scenario across New England immigrant communities beyond

the known Petitioners. Further, the transitory nature of the proposed class makes joinder

inherently impracticable.

Although Rule 23(a)(1) does not impose a precise numerical requirement or a minimum

threshold, "classes of forty or more are [generally] considered sufficiently numerous under Rule

23(a)(1)." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011). Plaintiffs

need not provide a precise number for class certification, as "district courts may draw reasonable

inferences from the facts presented to find the requisite numerosity." *McCuin v. Sec'y of Health

and Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987). Ultimately, the numerosity requirement

imposes only a "low threshold," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009),

particularly where, as here, plaintiffs seek only injunctive or declaratory relief. *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) ("[T]he threshold may be relaxed when a party seeks only declaratory or injunctive relief, since the inclusion of future members increases the impracticability of joinder." (citation omitted)), *reversed on other grounds*, 819 F.3d 486 (1st Cir. 2016).

Here, that threshold is easily crossed. Two local immigration attorneys have affirmed that the fact pattern identified in this case is a common one.  One has identified 25 clients at his law firm who are likely class members, Ex. A (Joyce Aff.) ¶ 3; while the other represents that his firm represents hundreds of clients who fall within the class definition, Ex. B (Born Aff.) ¶ 3.  That fact alone establishes numerosity.

Additionally, as of September 30, 2017, USCIS had 9,336 pending I-130 applications filed by U.S. citizens on behalf of their immediate family members in states within the jurisdiction of ICE-ERO Boston Field Office.[7]  Even if less than one percent of these were filed by and on behalf of putative class members, the numerosity requirement would be readily satisfied.

Moreover, new class members will come into the class as U.S. citizens continue to file I-130 applications for noncitizen spouses who are subject to final orders of removal.  These future applicants may be considered now because, in evaluating the numerosity of a proposed class seeking injunctive relief, courts "may consider who might be injured in the future in the class." *Rancourt v. Concannon*, 207 F.R.D. 14, 15 (D. Me. 2002).

---

[7] *Number of Form I-130, Petitioner for Alien Relative, by Category, Case Status, and USCIS Field Office or Service Center Location July 1 – September 30 2017*, USCIS (Dec. 7, 2017), *at* https://www.uscis.gov/sites/default/files/ USCIS/Resources/Reports%20and%20Studies/ImmigratImm%20Forms%20Data/Family-Based/I130 _performancedata_fy2017_qtr4.pdf (attached as Ex. C).

Beyond satisfying the numerosity requirement from a quantitative perspective, the composition of the class also makes joinder impracticable.  The class is inherently fluid; class membership necessarily changes as individuals continue to submit I-130 applications, acquire lawful permanent resident status, or are removed from the United States.  "The potential inclusion of these currently uncountable, future class members not only increases the number beyond forty, but also illustrates the transient nature of the proposed class."  *Reid*, 297 F.R.D. at 189 (quoting William B. Rubenstein, *Newberg on Class Actions*, § 3.15 (5th ed. 2013), for the proposition that inclusion of future members "may make class certification more, not less likely").  Joinder would be even more difficult given the challenges of locating and joining people harmed by this particular government practice.  These challenges include the difficulty of identifying and locating individual class members, inefficiencies in pursuing claims in an individual capacity, and the lack of financial resources to bring such claims.  For precisely these reasons, courts in this circuit have recognized civil rights claims as particularly well-suited for class-wide relief.  *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972); *Mack v. Suffolk County*, 191 F.R.D. 16, 22 (D. Mass. 2000) ("Rule 23 was drafted to accommodate civil rights actions in which the members of the class are often incapable of specific enumeration." (citation omitted)).

**B.      There are common questions of law and fact.**

This case presents "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy Rule 23(a)(2)'s requirement, Petitioners must "demonstrate that the class claims 'depend upon a common contention' and that determining the truth or falsity of that contention 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Connor B., ex rel. Vigurs v. Patrick*, 278 F.R.D. 30, 32 (D. Mass. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  In other words, a Court must assess, the

"capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal quotation omitted) (emphasis original). Additionally, "commonality . . . does not require that all putative class members share identical claims." *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008) (internal quotations omitted). Indeed, "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 564 U.S. at 369 (internal quotations omitted).

At its core, this case concerns a single common legal question—whether Respondents' practice of detaining and deporting class members pursuing legalization under the provisional waiver process is unlawful. Petitioners have presented several different grounds for ruling that the practice is illegal, *see* Am. Compl. ¶¶ 112-36, and resolving any of those asserted grounds in Petitioners' would resolve the class's claims in a single stroke. At a more granular level, there are numerous common issues of fact and law, including:

- Whether Respondents have a practice or policy of detaining or removing noncitizen class members on the basis of their final orders of removal, without regard to or even because of their participation in the provisional waiver process;

- Whether detaining or threatening to detain or remove noncitizen class members without allowing them to follow the provisional waiver process violates the Immigration and Nationality Act and its regulations;

- Whether detaining or threatening to detain or remove noncitizen class members without allowing them to follow the provisional waiver process violates the Administrative Procedure Act;

- Whether detaining or threatening to detain or remove noncitizen class members without allowing them to follow the provisional waiver process violates the Due Process Clause of the Constitution;

- Whether Respondents' detention and threatened detention and removal of noncitizen class members without allowing them to follow the provisional waiver process is motivated by animus, in violation of the Equal Protection Clause;

- Whether Respondents have a practice or policy of detaining noncitizen class members without an adequate and individualized determination of their flight risk or dangerousness, including by using an algorithm that creates a presumption of detention for any individual subject to a final order of removal;

- Whether Respondents' detention or threatened detention of class members without an adequate and individualized determination of flight risk or dangerousness violates the Immigration and Nationality Act and applicable regulations; and

- Whether Respondents' detention or threatened detention of class members without an adequate and individualized determination of flight risk or dangerousness violates the Due Process Clause of the Constitution.

- Whether, as a consequence of the 2016 provisional waiver regulations, class members are entitled to a presumption against detention.

All of these questions may be answered with common evidence on a class-wide basis.

Additionally, the relief that the class is seeking—which would bar Respondents from detaining or removing noncitizen class members based only on their final order of removal while they are seeking lawful status under the provisional waiver regulations—would provide common relief to the class.

**C.    Petitioners' claims are typical of class members' claims.**

Here, "the claims or defenses of the [Petitioners] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 176 (D. Mass. 2012); *see also Newberg on Class Actions*, § 3:29 ("[T]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct."). Because Petitioners seek injunctive relief, and Rule 23(b)(2)

classes are more "rough-hewn than those in which the court is asked to award damages,"
typicality requirements are relaxed. *Griffin v. Burns*, 570 F.2d 1065, 1074 (1st Cir. 1978) (where
government policy quashed all absentee ballots in election, plaintiff only needed to demonstrate
that substantial part of the class would have voted in person had they known of policy).

Petitioners' claims are typical of the proposed class: Petitioners and putative class
members are subject to the same detention and deportation practices and seek the same remedies.
Every U.S. citizen Petitioner and class member has begun the process of seeking legalization of
the noncitizen spouse by filing an I-130; and every noncitizen spouse is threatened with being
unable to pursue legalization under the provisional waiver process because of Respondents'
unlawful practices. *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (Rule 23(a)(3)
satisfied when "the cause of the injury is the same—here, the Board's discriminatory policy and
practice" and the injury asserted in plaintiff's claims were similar to the putative class members);
*Baggett v. Ashe*, No. 11-cv-30223-MAP, 2013 WL 2302102, at *1 (D. Mass. May 23, 2013)
("Plaintiff's claims and defenses, since she contends that she herself was a subject of the policy,
are obviously typical of the claims and defenses of the class").

Additionally, no individual inquiries regarding Petitioners' claims have the potential to
derail the class. Petitioners' claims do not hinge on the *merits* of their provisional waiver
applications; they merely seek the opportunity to participate in the application *process* provided
by the 2016 regulations. Because Petitioners are challenging the same practice without regard to
the outcome of their own efforts to legalize their status, they "can fairly and adequately pursue
the interests of the absent class members without being sidetracked by [their] own particular
concerns." *In re Credit Suisse-AOL Sec. Litig*., 253 F.R.D. 17, 23 (D. Mass. 2008); *see also*
*DeGrace v. Rumsfeld*, 614 F.2d 796, 811 (1st Cir. 1980) ("When the named representative's own

claim transcends the individual and implicate a discrete employment practice, the commonality and typicality requirements of Fed. R. Civ. P. 23(a) may be satisfied and class treatment may be appropriate.").

> **D.   The class is adequately represented.**

Finally, Petitioners and their counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To satisfy this requirement, Petitioners "must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *see also Connor B.*, 272 F.R.D. at 297.

The named Petitioners' interests do not conflict with those of the absent class members. These Petitioners have not only claimed similar injuries arising from the same conduct, but they also seek the same injunctive and declaratory relief, which will apply equally to the benefit of all class members.  Petitioners and putative class members share an identical interest in preventing the government from unlawfully detaining or removing noncitizen spouses without regard to their efforts to pursue legalization under the provisional waiver regulations.  And given the serious harm inflicted as a direct result of Respondents' unlawful practices, the proposed class representatives and counsel alike are motivated to pursue this claim actively and with zeal.

Finally, the proposed class counsel satisfies the requirement of adequate counsel under Rule 23(a)(4).  The proposed class is represented by the American Civil Liberties Union of Massachusetts, Wilmer Cutler Pickering Hale and Dorr LLP, and immigration attorney Kathleen Gillespie.  Collectively, Petitioners' counsel have considerable experience in the areas of immigration law and constitutional law, complex federal civil-rights litigation, class action litigation, and/or habeas corpus actions, including class actions involving the rights of

noncitizens. *See, e.g.*, *Gordon v. Napolitano*, No. 3:13-cv-30146 (D. Mass.) (class action on behalf of noncitizens); *Doe v. Patrick*, No. 1:14-cv-12813 (D. Mass.) (class action on behalf of women subjected to civil commitment).  To date, counsel have already devoted significant resources and vigorously pursued Petitioners' present claims before this Court, and "no evidence suggests that their level of commitment will diminish."  *Reid*, 297 F.R.D. at 194.  For the same reasons, Petitioners' counsel also satisfy Rule 23(g)'s requirements for the appointment of class counsel.  Thus, Petitioners and co-counsel have demonstrated that they will adequately represent the interests of the class.

## II.   The proposed class meets the requirements of Rule 23(b).

Certification of the proposed class is appropriate under Rule 23(b)(2) because Respondents have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The general applicability of a defendant's conduct towards the putative class is the essential inquiry under Rule 23(b)(2): "[T]he conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists and a 23(b)(2) class is defined by the actions which a defendant has taken toward the class, and which should arguably be enjoined."  *In re New Motor Vehicles Canadian Export*, 2006 WL 623591 at *6 (D. Me. March 10, 2006) (quoting *Yaffe*, 454 F.2d at 1366).  Cases involving unlawful discrimination or systematic violations of constitutional law are prototypical actions under Rule 23(b)(2).  *See Dukes*, 564 U.S. at 361 ("As we observed in *Amchem*, '[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." (citation omitted)); *see also Connor B.,* 272 F.R.D. at 292 ("Rule 23(b)(2) is uniquely suited to civil rights action[s]." (citation omitted)).  Moreover, the threshold for certification under Rule 23(b)(2) is lower than for claims seeking monetary awards or damages.  *See Griffin*,

570 F.2d at 1074 ("Actions under Rule 23(b)(2) may be more rough-hewn than those in which the court is asked to award damages . . . .").

Both prongs of Rule 23(b)(2) are satisfied here:  Respondents have acted on grounds generally applicable to the class, and the class seeks to enjoin that unlawful detention and removal practice.  Putative class members or their spouses all have pending I-130 petitions and seek relief from ICE's unlawful and discriminatory interference with their ability to avail themselves of the 2016 provisional waiver regulations.  Indeed, an injunction against ICE's policies would provide relief to all members of the proposed class, the hallmark of a Rule 23(b)(2) claim.  Because Respondents' challenged practices are of general application, injunctive or declaratory relief will provide relief on a class-wide basis.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Dukes*, 564 U.S. at 360 (internal quotation omitted).

Even if Respondents have not directed their conduct towards each individual class member, the discriminatory pattern of behavior carried out by Respondents and the threat of such action is more than sufficient to deter class members from asserting his or her rights. Certification under Rule 23(b)(2) is appropriate where the "[a]ction or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."  Rule 23(b)(2) Advisory Committee Notes (1966 Rule Amendment).

Although the identities of individual class members change over time, the potential that Respondents continue to carry out their unlawful practice and inflict harm on putative class members will remain the same.  ICE's policies inflict the same constitutional and statutory

14

violations broadly against members of the proposed class. In addition, class-wide injunctive and declaratory relief is the appropriate remedy given the immediate threat posed by these policies. Because the relief sought would resolve the claims of every class member, the proposed class meets the certification requirements under Rules 23(a) and 23(b)(2).

III.     **In the alternative, the Court should certify this case as a representative habeas action.**

In the alternative to certification under Rule 23, Petitioners seek certification of a habeas corpus class on behalf of people who have been or will be detained while lawfully pursuing the provisional waiver application process. A habeas corpus petition may proceed on a representative or class-wide basis under the appropriate circumstances. *See United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974) (finding in habeas action "compelling justification for allowing a multi-party proceeding similar to the class action authorized by [Rule 23]"). In *Sero*, the Second Circuit articulated three factors that together justified class action treatment in the habeas context: (1) the challenge brought by the class was "applicable on behalf of the entire class, uncluttered by subsidiary issues"; (2) "more than a few [class members] would otherwise never receive the relief here sought on their behalf" given insufficient resources to bring individual suits or an incomplete understanding of the U.S. judicial system; and (3) the representative action would promote judicial economy by avoiding the "considerable expenditure of judicial time and energy in hearing and deciding numerous individual petitions presenting the identical issue." *Id.* at 1126.

Each of the conditions described in *Sero* is present in this case. First, Petitioners' challenge applies equally to all members of the proposed class, such that class-wide injunctive or declaratory relief would provide a remedy to the entire class. Second, class members are unlikely to have the resources necessary to file habeas corpus petitions on their own behalf. Of

15

course, the threat of detention and removal is also an enormous disincentive against class members asserting their rights in the first instance.  These factors all reduce the likelihood that class members will otherwise receive the relief sought in the absence of a class proceeding. Third, the concerns regarding judicial economy present in *Sero* are equally applicable in this case, as the requested injunctive or declaratory relief would eliminate the need for class members to proceed with individual suits.  Accordingly, the proposed class can be certified as a representative habeas action.

## IV.    If the class is not ripe for certification, the Court should open class discovery.

Because the record demonstrates that class certification is proper, there is no need for class discovery.  However, in the event that the Court finds the record inadequate to determine whether the class should be certified, Plaintiffs respectfully request class discovery.  *See Yaffe*, 454 F.2d at 1367 (remanding case to district court for further class discovery after reversing denial of class certification).  Respondents possess extensive information about members of the proposed class.  Even with limited class discovery, Petitioners would access additional information further supporting class certification.

## CONCLUSION

This action satisfies all requirements for class certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.  Accordingly, Petitioners respectfully request that this Court certify this action as a class action pursuant to Rule 23, or, in the alternative, as a class-action habeas proceeding on behalf of the U.S. citizen and noncitizen spouses described herein.  Petitioners also respectfully request that the Court appoint the undersigned as class counsel under Federal Rule of Civil Procedure 23(g).  If the Court does not now certify a class, Petitioners respectfully request the opportunity to conduct class discovery.

Respectfully submitted this 30th day of April, 2018.


                                            /s/  Kevin S. Prussia

Matthew R. Segal (BBO # 654489)             Kevin S. Prussia (BBO # 666813)
Adriana Lafaille (BBO # 680210)             Michaela P. Sewall (BBO # 683182)
AMERICAN CIVIL LIBERTIES UNION              Jonathan A. Cox (BBO # 687810)
FOUNDATION OF MASSACHUSETTS, INC.           Stephen Provazza (BBO # 691159)
211 Congress Street                         WILMER CUTLER PICKERING
Boston, MA 02110                              HALE AND DORR LLP
(617) 482-3170                              60 State Street
                                            Boston, MA 02109
Kathleen M. Gillespie (BBO # 661315)        Telephone: (617) 526-6000
Attorney at Law                             Facsimile:  (617) 526-5000
6 White Pine Lane                           kevin.prussia@wilmerhale.com
Lexington, MA 02421                         michaela.sewall@wilmerhale.com
(339) 970-9283                              jonathan.cox@wilmerhale.com
                                            stephen.provazza@wilmerhale.com

                                            *Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I certify that, in accordance with Local Rule 7.1(a)(2), counsel for Petitioners conferred with counsel for Respondents on April 30, 2018 in an attempt to resolve the issues raised in this motion. The parties were unable to reach a resolution.

*/s/ Adriana Lafaille*
Adriana Lafaille

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2018, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

*/s/ Kevin S. Prussia*
Kevin S. Prussia