**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., | ) ) ) ) |
| Individually and on behalf of all others similarly situated, | ) No. 1:18-cv-10225-MLW ) ) |
| Plaintiffs-Petitioners, | ) ) **ORAL ARGUMENT REQUESTED** |
| v. | ) ) |
| KIRSTJEN M. NIELSEN, et al., | ) ) |
| Defendants-Respondents. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

STATUTORY AND REGULATORY FRAMEWORK ........................................ 4

STATEMENT OF FACTS................................................................................... 7

ARGUMENT ...................................................................................................... 8

   I.   Petitioners satisfy the requirements for class-wide injunctive relief. ................. 8

     A.   Petitioners are likely to succeed on the merits of their claims that ICE's detention and removal of noncitizen Petitioners unlawfully interferes with their pursuit of provisional waivers. .................................................................................................... 8

        1.   The government's detention and removal of noncitizen Petitioners and class members violates the INA and supporting regulations....................................... 9

        2.   The government's detention and removal of noncitizen Petitioners and class members violates the APA................................................................................ 12

        3.   The Government's detention and removal of noncitizen Petitioners violates due process........................................................................................................ 14

        4.   This court has jurisdiction over these claims....................................... 18

     B.   Petitioners are likely to succeed on the merits of their claims that the government's detention of noncitizen Petitioners violates due process and the INA even apart from its interference with legalization under the provisional waiver regulations. ............................ 20

        1.   The government's detention of Petitioners and class members without notice or an opportunity to be heard violates the INA and its regulations. ......................................... 21

        2.   Detaining Petitioners and class members without a meaningful, individualized determination of dangerousness and flight risk violates due process. ............................. 22

     C.   Petitioners will suffer irreparable harm if detained or removed, the balance of equities tips in their favor, and an injunction is in the public interest............................... 23

   II.   The Court should provide relief that protects Petitioners and class members from undue interference with their access to the provisional waiver process. ........................... 28

CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*Accardi v. Shaughnessy*, 347 U.S. 260 (1954)..........................................................................10, 15

*Addington v. Texas*, 441 U.S. 418 (1979) ...................................................................................23

*Anderson ex rel. Dowd v. City of Boston*, 375 F.3d 71 (1st Cir. 2004) .........................................12

*Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003)..........................................................................15

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)...........................................................26

*Batalla Vidal v. Nielsen*, No. 16-cv-4756, 2018 WL 1532370 (E.D.N.Y. Mar. 29, 2018) .......................................................................................................................................15

*Brennan v. Cunningham*, 813 F.2d 1 (1st Cir. 1987).........................................................14, 15, 28

*Casas-Castrillon* v. *Dep't of Homeland Sec.,* 535 F.3d 942 (9th Cir. 2008)................................22

*Chehazeh v. Attorney Gen. of U.S.*, 666 F.3d 118 (3d Cir. 2012)..................................................18

*Clark v. Martinez*, 543 U.S. 371 (2005) .....................................................................................20

*Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017)............................................................13

*Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981) ..................................................15

*D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368 (W.D.N.Y. 2009)...............................................21

*De Araujo v. Gonzalez*, 457 F.3d 146 (1st Cir. 2006) .................................................................14

*Devitri v. Cronen*, — F. Supp. 3d —, 2018 WL 661518 (D. Mass. Feb. 1, 2018)......19, 23, 26, 27

*Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488 (S.D.N.Y. 2009) .............................................21

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).........................................................14

*Foucha v. Louisiana,* 504 U.S. 71 (1992)....................................................................................22

*Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998) .......................................................................10

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ...................................................................................28

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .................................................................................25

*INS v. St Cyr*, 533 U.S. 289 (2001)...........................................................................................19

III

*Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233 (4th Cir. 2018)....................................24

*Jackson v. Indiana,* 406 U.S. 715 (1972)...................................................................................22

*Jennings v. Rodriquez*, 138 S.Ct. 8300 (2018) ...........................................................................18

*Judulang v. Holder*, 565 U.S. 42 (2011)....................................................................................13

*Kaoru Yamataya v. Fisher*, 189 U.S. 86 (1903) .........................................................................14

*KG Urban Enters. v. Patrick*, No. CIV.A 11-12070-NMG, 2014 WL 108307 (D. Mass. Jan. 9, 2014) ....................................................................................................12

*Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016)...........................................20

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)...............................................................................28

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ..................................................................23

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) ...............................................................20

*McGuinness v. Pepe*, 150 F. Supp. 2d 227 (D. Mass. 2001) .......................................................25

*McLaughlin v. Pernsley*, 876 F.2d 308 (3d Cir. 1989) ................................................................24

*Ng Fung Ho v. White*, 259 U.S. 276 (1922)..........................................................................16, 17

*Nicolson v. Pappalardo*, 685 F. Supp. 2d 142 (D. Me. 2010) .....................................................24

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).....................................................................16, 17

*Olim v. Wakinekona*, 461 U.S. 238 (1983) .................................................................................15

*Raley v. State of Ohio*, 360 U.S. 423 (1959)..............................................................................16

*Raso v. Lago*, 135 F.3d 11 (1st Cir. 1998).................................................................................12

*Reid v. Donelan*, 22 F. Supp. 3d 84, 90 (D. Mass. 2014) .....................................................25, 27

*Reno v. AADC*, 525 U.S. 471 (1999) .........................................................................................19

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ..........................................................25, 27

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12 (1st Cir. 1996) ............................23

*Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir. 2003) .................................................................10

*Sanchez v. Sessions*, 857 F.3d 757 (7th Cir. 2017) ....................................................................24

IV

*Seid v. Nielsen*, No. 17-cv-06785, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018) .........................19

*Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005) ...........................................27

*Ulysse v. Dep't of Homeland Security*, 291 F.Supp.2d 1318 (M.D. Fla. 2003) .........................21

*United States v. Windsor*, 133 S.Ct. 2675 (2012) .........................................................17

*United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6 (1st Cir. 1987) ...................23

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .........................................8

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ..................................................................14

*Yuen Jin v. Mukasey*, 538 F.3d 143 (2d Cir. 2008)........................................................15

*Zablocki v. Redhail*, 434 U.S. 374 (1978)...................................................................17

*Zadvydas v. Davis,* 533 U.S. 678 (2001) ..................................................14, 21, 22, 23, 26, 28, 29

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 9, cl. 2.............................................................................19

## STATUTES, RULES, AND REGULATIONS

5 U.S.C. § 553(b), (c).......................................................................................13

5 U.S.C. § 702.............................................................................................12

8 U.S.C. § 1182(a)(9).....................................................................................5, 9, 10

8 U.S.C. § 1231(a) .......................................................................................3, 20, 21

8 U.S.C. § 1252...........................................................................................18

8 U.S.C. § 1255...........................................................................................4, 5

8 C.F.R. § 212.2(j) .......................................................................................7

8 C.F.R. § 212.7(e).....................................................................................9, 10, 15, 16

8 C.F.R. § 241.4 .......................................................................................3, 20, 21, 23, 30

*Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate
   Relatives; Final Rule*, 78 Fed. Reg. 536 (Jan. 3, 2013) ..................................5, 13

*Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final
   Rul*e, 81 Fed. Reg. 50244 (July 29, 2016) .........................................6, 9, 13, 30

**OTHER AUTHORITIES**

Josh Dawsey, "Trump Derides Protections for Immigrants from 'Shithole' Countries," Wash. Post. (Jan. 12, 2018) ...........................................................................12

Julie Bykowicz & Rebecca Ballhaus, "Trump Revives Attack on Diversity Visa, 'Chain Migration' in Speech," Wall St. J. (Feb. 23, 2018)................................................12

Julie Hirschfield Davis & Maggie Haberman, "Trump Pardons Joe Arpaio, Who Became Face of Crackdown on Illegal Immigration," N.Y. Times (Aug. 25, 2017) ...........................................................................................................12

*Provisional Unlawful Presence Waivers*, USCIS, https://www.uscis.gov/family /family-us-citizens/provisional-waiver/provisional-unlawful-presence-waivers (noting date of last review/update as January 5, 2018) ...................................6, 13

**INTRODUCTION**

The named Petitioners are five married couples comprising noncitizens living in the United States and their U.S. citizen spouses.  The noncitizen Petitioners are subject to final orders of removal and, by virtue of their marriages, are applying for legal immigration status through a process prescribed by U.S. Citizenship and Immigration Services (USCIS).  Petitioners seek class-wide preliminary injunctive relief to stop Immigration and Customs Enforcement (ICE) from separating their families before they can complete the steps to seek legal status.

The process afforded to the noncitizen Petitioners makes it possible for them to remain with their families in the United States while pursuing waivers to certain inadmissibility grounds that would otherwise prevent them from gaining legal status.  Historically, they would have had to complete the waiver application process abroad.  But in 2013 and 2016, USCIS promulgated regulations allowing noncitizens, including those with final orders of removal, to apply for *provisional* waivers while remaining in the United States.  While the Petitioners must ultimately apply for an immigrant visa at a U.S. consulate abroad, the provisional waiver regulations shortened the time that they would have to be overseas from many months or years to a few weeks.  The express purpose of these regulations was to encourage eligible noncitizens to obtain lawful status, to promote family unity, and to reduce the hardship on U.S. citizen spouses.

In direct contravention of these purposes, ICE has arrested and sought to remove noncitizens with final orders of removal who are seeking lawful status through the provisional waiver process.  ICE's actions deceive Petitioners and systematically deprive them, and others, of access to the relief established by the 2016 regulations, even though the government has not undertaken any regulatory process to revoke or amend them.

1

Petitioner Lilian Calderon's case is illustrative.  Ms. Calderon was brought to the United States when she was three years old and has lived under a final order of removal since 2002, when she was 15.  In 2016, Ms. Calderon and her U.S. citizen husband began the process to seek to legalize her immigration status.  During the first step in this process, they appeared for a USCIS interview in January 2017 to demonstrate that their marriage is bona fide.  USCIS recognized that it is.  But ICE agents nevertheless entered the room and arrested Ms. Calderon in order to remove her from the United States.  If she is removed, Ms. Calderon will be separated from her husband and children—now ages two and four—for perhaps two years or more, while pursuing the opportunity to return lawfully to the United States.

Ms. Calderon filed a petition for writ of habeas corpus on February 5, 2018.  The next day, this Court ordered that she not be removed from the district of Massachusetts during the pendency of this case.  Dkt. No. 6.  On February 13, 2018, ICE granted Ms. Calderon a three-month stay of removal and released her.

Ms. Calderon's case is not unique.  On April 10, 2018, Petitioners filed a class action complaint and petition for writ of habeas corpus, seeking to stop ICE's unlawful interference with the provisional waiver process. The Petitioners are five U.S. citizens and their noncitizen spouses: two of the noncitizen Petitioners were detained in January 2018 at USCIS interviews; two were ordered to purchase tickets to depart the country; and one fears detention at his upcoming USCIS interview.  They, with their Petitioner spouses, seek to represent a class of similarly situated couples comprising a noncitizen living in the United States with a final order of removal and a U.S. citizen who has filed an immigration petition for the noncitizen spouse.

Petitioners and class members are entitled to preliminary injunctive relief.

2

First, they are likely to succeed on the merits of their claims that ICE's detention and/or removal of noncitizen Petitioners and class members seeking provisional waivers unlawfully interferes with the provisional waiver process.  Specifically, Respondents are violating the Immigration and Nationality Act (INA) and its regulations by refusing to allow eligible individuals to seek provisional waivers.  The detention and removal of individuals pursuing provisional waivers also violates the Administrative Procedure Act (APA) because it is arbitrary and capricious and effectively changes agency rules without notice-and-comment procedures. And it runs afoul of the Due Process Clause by arbitrarily depriving Petitioners and class members of their interest in applying for their legal status under the 2016 regulations, and by interfering with the fundamental marriage interests that these regulations protect.

Second, even apart from their claims arising out of ICE's violation of the provisional waiver regulations, Petitioners are likely to prevail on their claim that ICE's detention of Petitioners and class members is unlawful.  Indeed, ICE detains Petitioners and class members while they are seeking legal status with no meaningful individualized determination at all, in violation of both immigration law and the strict limitations of due process.

Finally, Petitioners readily satisfy the other requirements for preliminary injunctive relief. Petitioners and class members will suffer irreparable harm if their detention and removal is not enjoined because they will be forced to spend years abroad, apart from their families, waiting the approval of their waiver applications and many facing threats in the countries to which they would be sent.  And the balance of equities and the public interest also favor injunctive relief, as the government has no legitimate interest in separating families in violation of a program it created.  In short, the government's policy is unlawful, senselessly inflicts harm on American families, and serves no legitimate public benefit.

Accordingly, Petitioners respectfully request that the Court issue a temporary restraining order and preliminary injunction that would prevent Respondents from detaining, removing, or otherwise unduly interfering with Petitioners' ability to avail themselves of the provisional waiver process.  Such a remedy would permit ICE to detain or remove a noncitizen class member only if there were specific and individualized justifications for pretermitting a noncitizen's ability to seek provisional waivers and legalization.  It would confirm that the 2016 regulations are not a dead letter—or, worse, a trap—but can instead continue to serve their purpose of giving noncitizen Petitioners and class members a fair opportunity to be considered for lawful status while preventing hardship to their U.S. citizen families.

## STATUTORY AND REGULATORY FRAMEWORK

While certain noncitizens present and living in the United States can adjust their status to become legal permanent residents without leaving the country, 8 U.S.C. § 1255, noncitizens who are subject to final orders of removal are generally not so eligible, even if married to a U.S. citizen.  Instead, such noncitizens are usually required to leave the United States for immigrant visa processing at a U.S. embassy or consulate abroad.

But departure from the United States for consular interviews triggers certain inadmissibility grounds.  Specifically, a noncitizen who has been unlawfully present in the United States for at least a year who departs and then seeks to return is generally inadmissible for at least 10 years.  8 U.S.C. § 1182(a)(9)(B)(i)(II).[1]  Similarly, a noncitizen who has a final order

---

[1] A noncitizen who has been unlawfully present in the United States for less than one year but more than 180 days who departs and then seeks to return is generally inadmissible for 3 years. 8 U.S.C. § 1182(a)(9)(B)(i)(I).

of removal who departs and then seeks to return is also generally inadmissible for 10 years. *Id.* § 1182(a)(9)(A)(ii)(II).[2]

USCIS is authorized under the Immigration and Nationality Act (INA) to waive both grounds for inadmissibility. Under 8 U.S.C. § 1182(a)(9)(B)(v), a noncitizen may obtain a waiver of the unlawful presence bar by showing that denying readmission would cause "extreme hardship" to a U.S. citizen spouse, and under 8 U.S.C. § 1182(a)(9)(A)(iii), a noncitizen may obtain a waiver of the final-order-of-removal bar if the Attorney General "consent[s]."

Historically, noncitizens could apply for these waivers only *after* attending the consular immigration visa interview abroad—and thus had to await a decision on the waivers from outside of the United States, away from their families. The government recognized that these family separations led to the exact kind of financial and emotional hardship for U.S. citizen family members that the statutory waiver provision was designed to mitigate. Thus, by regulation, it allowed noncitizens subject to both grounds of inadmissibility to obtain *provisional* approval of their waivers prior to departing the United States.

First, in 2013, USCIS allowed certain noncitizens subject to the unlawful-presence bar to apply for provisional waivers from within the United States. *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule* ("2013 Final Rule"), 78 Fed. Reg. 536 (Jan. 3, 2013). Then, in 2016, USCIS expanded these regulations to encompass noncitizens subject to final orders of removal, so that they, too, could apply for the applicable waivers from within the United States. *Expansion of Provisional Unlawful Presence Waivers of*

---

[2] The period is five years for noncitizens who were removed or departed under expedited removal orders or after removal proceedings initiated upon arrival in the United States, 8 U.S.C. § 1182(a)(9)(A)(i), and 20 years in the case of a noncitizen convicted of an aggravated felony, *id.* § 1182(a)(9)(A)(ii).

*Inadmissibility; Final Rul*e ("2016 Final Rule"), 81 Fed. Reg. 50244, 50262 (July 29, 2016). Through this process, noncitizens with final orders of removal can become legal residents by (1) being the beneficiary of an approved petition filed by their U.S. citizen spouse (form I-130), (2) securing conditional "consent[] . . . to reapply[] for admission" (form I-212), (3) obtaining approval of the provisional unlawful presence waiver (form I-601A), (4) travelling abroad to attend an immigrant visa interview at a U.S. consulate, and (5) returning to the United States, thereby becoming lawful permanent residents upon admission. *Id.*; *see also* Am. Compl. ¶¶ 30-36.

These rules were promulgated through notice-and-comment rulemaking and were intended to promote family unity and remove barriers that prevented eligible individuals from seeking lawful status through consular processing. They were expanded in 2016—including to those who, like the noncitizen Petitioners and class members, have final orders of removal—because of their success in lowering the government's processing costs, encouraging eligible noncitizens to pursue lawful status, and "reduc[ing] hardships to U.S. citizen families." 2016 Final Rule, 81 Fed. Reg. at 50244-45.

The first step in the provisional waiver application process—applying for an I-130—can require appearing for an interview with USCIS. *See* USCIS Adjudicator's Field Manual § 15.1 (attached as Ex. A). Apparently recognizing the fact that arresting applicants during these interviews would undermine its ability to adjudicate and administer immigration benefits, USCIS provides narrow circumstances in which an individual who appears for an interview may be arrested. *Id.* § 15.1(c)(1). Specifically, noncitizens with final orders of removal are generally not subject to arrest if they are "seeking benefits under a provision of a law … which specifically

6

allows an alien under an order of deportation or removal to seek such benefits." *Id.* § 15.1(a), (c)(2).

## STATEMENT OF FACTS

The Petitioners are five noncitizens living in the United States under final orders of removal, and their U.S. citizen spouses.  Am. Compl. ¶¶ 38-100.  Each of the citizen Petitioners has filed an I-130, Petition for Alien Relative, for his/her noncitizen spouse, and each noncitizen Petitioner is pursuing or intends to pursue provisional waivers under 8 C.F.R. §§ 212.2(j) and 212.7(e).  Ex. B (Sniffin Aff. for Petitioner Oscar Rivas) ¶¶ 15-16, 18; Ex. C (Harris Aff. for Petitioner Lilian Calderon) ¶¶ 14, 15, 29, 30, 32; Ex. D (Ordonez Aff. for Petitioner Lilian Calderon) ¶¶ 15, 23-27; Ex. E (Andrade Aff. for Petitioner Lucimar De Souza) ¶¶ 3, 8-10, 21, Ex. F (Loscocco Aff. for Petitioner Sandro De Souza) ¶¶ 6, 14, 16, 23, 24; Ex. G (Corbaci Aff. for Petitioner Deng Gao) ¶¶ 12, 20.  Two of the noncitizen Petitioners—Lilian Calderon and Lucimar de Souza—were detained by ICE at their I-130 interviews, and Ms. Lucimar de Souza remains in custody.  *See* Ex. D (Ordonez Aff.) ¶ 28; Ex. E (Andrade Aff.) ¶ 11.  Petitioner Sandro de Souza's I-130 was approved on March 1, 2018, but he was ordered to depart the country by April 24, 2018.  Ex. F (Loscocco Aff.) ¶¶ 16, 19, 22.  Petitioner Oscar Rivas has filed both I-130 and I-212 applications, but was ordered to depart the country by May 2, 2018.  Ex. B (Sniffin Aff.) ¶ 15-16, 18, 20.  Petitioner Deng Gao has a pending I-130 application through his U.S. citizen wife, but fears detention and removal after his interview.  Ex. G (Corbaci Aff.) ¶ 12, 21.  Collectively, the named Petitioners care for ten children.  Sandro De Souza Aff. ¶ 1, Dkt No. 30-1; Calderon-Jimenez Aff. ¶ 1, Dkt. No. 30-3; Ex. B (Sniffin Aff.) ¶ 3; Ex. E (Andrade Aff.) ¶ 3; Ex. G (Corbaci Aff.) ¶ 18.

As this Court has observed, ICE's treatment of the Petitioners appears to be "part of a pattern that has emerged in related cases." Feb. 15, 2018 Order (Dkt. No. 17) at 2. ICE concedes that six individuals other than Ms. Calderon were arrested while seeking permanent residency at a Massachusetts or Rhode Island USCIS offices in January 2018 alone—presumably including Petitioner Lucimar de Souza. Lyons Affidavit (Dkt. No. 19) ¶¶ 12-14; *see also Oliveira v. Moniz et al.*, No. 18-cv-10150-MLW. And the petitioner in *Arriaga Gil v. Tompkins*, No. 17-cv-10743-MLW, was one of five noncitizens arrested by ICE at a USCIS office in March 2017 while seeking lawful permanent residency by virtue of their marriages to U.S. citizens. Feb. 15, 2018 Order (Dkt. No. 17) at 2.

## ARGUMENT

### I.     Petitioners Satisfy the Requirements for Class-wide Injunctive Relief.

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioners readily satisfy these requirements, both with regard to claims relating to the government's unlawful interference with the provisional waiver regulations, *see infra* Part I.A; Am. Compl. Counts 1-4, and claims that relate solely to the government's unlawful detention of certain noncitizen Petitioners and class members, *see infra* Part I.B; Am. Compl. Counts 5-6.

### A.     Petitioners are likely to succeed on the merits of their claims that ICE's detention and removal of noncitizen Petitioners unlawfully interferes with their pursuit of provisional waivers.

Petitioners can demonstrate a likelihood of success on the merits of their claims that the government's interference with their ability to follow the provisional waiver process violates both the law and the Constitution. The government extended the provisional waiver process to

the noncitizen Petitioners and similarly situated members of the proposed class, despite their

final orders of removal, in recognition of their irreplaceable role as members of American

families.  It cannot arbitrarily detain and remove these Petitioners as they follow the process laid

out for them.  Doing so contravenes the INA and its regulations, the APA, and the Due Process

Clause.

> **1.    The government's detention and removal of noncitizen Petitioners and class members violates the INA and supporting regulations.**

The government's detention and removal of noncitizens pursuing legal status under the

provisional waiver regulations violates these regulations and the INA.  By creating waivers of

inadmissibility, Congress granted noncitizen Petitioners the right to seek lawful status by, among

other things, showing that their absence from the United States would cause "extreme hardship"

to their U.S. citizen spouse.  *See* 8 U.S.C. § 1182(a)(9)(B)(v); *see also id.* § 1182(a)(9)(A)(iii)

(allowing waiver of bar to admission for those who depart under prior final order).  Recognizing

that the need to spend months or years outside the United States pursuing waiver applications

"caus[ed] some U.S. citizens … to experience the significant emotional and financial hardships

that Congress aimed to avoid when it authorized the waiver," DHS then interpreted the INA—

through notice-and-comment rulemaking—to allow Petitioners to address their orders of removal

and seek lawful status by pursuing waivers of inadmissibility from within the United States.

2016 Final Rule, 81 Fed. Reg. at 50245 (citing 8 U.S.C. § 1182(a)(9)(B)(v)); *see* 8 C.F.R.

§ 212.7(e)(2)(i) ("USCIS may adjudicate applications for a provisional unlawful presence waiver

of inadmissibility based on section 212(a)(9)(B)(v) of the Act …."); *id.* § 212.2(j) (providing for

conditional approval of 8 U.S.C. § 1182(a)(9)(A)(iii) waiver from within United States).

The government's decision to target Petitioners while they pursue this process renders the

2016 regulations a nullity.  Although the government has discretion concerning "whether to

approve" a stateside provisional waiver application, 8 C.F.R. § 212.7(e)(2)(i), what the government is doing here is not such an exercise in discretion.  Rather, the government is enforcing a *per se* policy that anyone with a final order of removal may be detained and removed, regardless of whether the individual is availing him or herself of the 2016 regulations. To put it differently, the government is prohibiting such noncitizens from being considered for the provisional waiver process *at all*.  That prohibition is not an exercise in discretion; it is something the government simply may not do.  *Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003) ("[I]f a statute makes an alien eligible to be considered for a certain form of relief," then, while he may be unable to challenge "the agency's decision to exercise or not exercise its discretion to grant relief," he may still "raise on habeas the refusal of the agency to even consider him."); *Goncalves v. Reno,* 144 F.3d 110, 125 (1st Cir. 1998) ("[I]t is no answer to [petitioner's] argument to emphasize the broad discretion of the political branches in immigration matters.  It was the intent of Congress that such discretion be exercised.").  And although the government need and should not treat an application for a provisional waiver as an automatic stay of removal, *see* 8 C.F.R. § 212.7(e)(2)(i), it is also not permitted to eliminate the availability of provisional waivers arbitrarily or on the basis of grounds unsupported by the regulation's purposes and unrelated to an applicant's eligibility for legalization under the process.  *Accardi v. Shaughnessy*, 347 U.S. 260, 265-267 (1954).

In response to this Court's order (Dkt. No. 17), the government explained that its decision to detain Ms. Calderon was based on a government computer program, the Risk Classification Assessment (RCA), which "determined Calderon was a flight risk based on the final order of removal, the BIA's dismissal of her appeal, and her failure to comply with the previous voluntary departure order in 1999 issued by an immigration judge."  Dkt. No. 19, ¶ 6.  In

addition, the government has cited "the availability of bed space" and its belief that Ms. Calderon "lack[ed]" child care issues—on the theory that her husband could care for her then-one-year-old son and four-year-old daughter—as factors weighing in favor of detention. *Id.* A supervisory officer "agreed with the system's determination" and thus decided to detain Ms. Calderon. *Id.* ¶¶ 4, 6. In response to another Order of this Court (Dkt. No. 34), the government explained that Ms. Lucimar de Souza, too, was detained with the use of the RCA, based on her final order, her supposed lack of "eligibility for any immigration benefits that would allow her to remain in the United States," and her "lack of dependent-care issues" and health complications. Dkt. No. 40-1, ¶ 6. According to the government, other individuals who were detained at their I-130 interviews in January 2018 similarly had their custody determined with use of the RCA. Dkt. No. 19, ¶ 13.

These declarations make clear that, while USCIS regulations provide Petitioners and class members a way to seek lawful status, ICE subjects them to detention and removal on the basis of an algorithm and decision-making process that appears to give near-decisive weight to the singular fact that they have an order of removal and no weight to the fact that they are following a process to address it. These policies and practices subject Petitioners and class

members to the arbitrary and wholesale deprivation of their access to the provisional waiver

process for no legitimate reason, in violation of the regulations and the INA.[3]

### 2. The government's detention and removal of noncitizen Petitioners and class members violates the APA.

The APA provides that "[a] person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of a relevant statute, is

entitled to judicial review thereof."  5 U.S.C. § 702.  The government's detention and removal or

noncitizens who are eligible to pursue legalization under the 2016 provisional waiver regulations

violates the APA for two reasons.

---

[3] Although the absence of a *legitimate* reason for the government's actions is a sufficient reason to order preliminary injunctive relief, *see* Parts I.A.1 to I.A.3, Petitioners have also alleged the presence of an *illegitimate* reason: animus based on race and national origin.  *See* Am. Compl. Count 3.  Government action based on discriminatory animus violates the Constitution's Equal Protection guarantee, with or without evidence that the action also results in disparate harm to the disfavored group.  *See KG Urban Enters. v. Patrick*, No. CIV.A 11-12070-NMG, 2014 WL 108307, at *9 (D. Mass. Jan. 9, 2014) ("While no racially disproportionate impact is evident the record permits several inferences of discriminatory intent from the legislative and administrative background …." (citing *Anderson ex rel. Dowd v. City of Boston*, 375 F.3d 71, 83 (1st Cir. 2004))); *Raso v. Lago*, 135 F.3d 11, 16 (1st Cir. 1998) ("[G]overnment action taken out of hostility to a racial group can be condemned out of hand.").

Petitioners expect to prove their Equal Protection claim on the merits.  At this stage, however, the Court could appropriately consider the abundant judicially noticeable evidence of the Trump Administration's animus against nonwhite people, especially those from Central and South America, in assessing the likelihood that Petitioners will succeed on their claims alleging that the policy and practice challenged in this case is not supported by a legitimate rationale. *See, e.g.*, Am. Compl. ¶¶ 110-111; Josh Dawsey, "Trump Derides Protections for Immigrants from 'Shithole' Countries," Wash. Post. (Jan. 12, 2018), https://www.washingtonpost.com /politics/trump-attacks-protections-for-immigrants-from-shithole-countries-in-oval-office -meeting/2018/01/11/bfc0725c-f711-11e7-91af-31ac729add94_story.html; Julie Hirschfield Davis & Maggie Haberman, "Trump Pardons Joe Arpaio, Who Became Face of Crackdown on Illegal Immigration," N.Y. Times (Aug. 25, 2017), http://www.nytimes.com/2017/08/25/us/ politics/joe-arpaio-trump-pardon-sheriff-arizona.html; Julie Bykowicz & Rebecca Ballhaus, "Trump Revives Attack on Diversity Visa, 'Chain Migration' in Speech," Wall St. J. (Feb. 23, 2018), https://www.wsj.com/articles/trump-revives -attack-on-diversity-visa-chain-migration-in -speech-1519410081.

*First*, the government's actions are arbitrary and capricious.  Section 706(2) of the APA empowers courts to "hold unlawful and set aside" agency action that courts determine to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2), (A).  Under this standard, a reviewing court must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011).  And "agency action must be based on non-arbitrary, relevant factors, which here means that the [government's] approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system." *Id.* at 55 (internal quotation marks omitted).  The government fails this test.  Although, as of the filing of this motion, USCIS appropriately describes the provisional waiver process on its website,[4] and even makes public that people who appears for an interview will not be arrested if they are pursuing a benefit specifically allowed for them, USCIS Field Manual § 15.1(c)(2), ICE arbitrarily inflicts senseless hardship on precisely those families that the INA and its regulations seek to protect. These actions have turned "deportation decisions" into "a sport of chance"—"and that is what the APA's 'arbitrary and capricious' standard is designed to thwart." *Judulang*, 565 U.S. at 59 (internal quotation marks omitted).

*Second*, the government's actions violate the APA's notice-and-comment procedures. *See* 5 U.S.C. § 553(b), (c).  DHS followed those procedures to establish the provisional waiver process for the unlawful presence waiver, 2013 Final Rule, 78 Fed. Reg. at 536, and to expand the availability of that waiver to noncitizens living with final orders of removal, 2016 Final Rule, 81 Fed. Reg. at 50244.  Having promulgated that rule, DHS "is itself bound by the rule until that

---

[4] *Provisional Unlawful Presence Waivers*, USCIS (Jan. 5, 2018), https://www.uscis.gov/family /family-us-citizens/provisional-waiver/provisional-unlawful-presence-waivers (noting date of last review/update as January 5, 2018) (attached as Ex. I).

rule is amended or revoked and may not alter such a rule without notice and comment." *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) (alterations and internal quotation marks omitted). The agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). By operating as though it were no longer bound by the provisional waiver regulations, the government violates the notice and comment requirements of the APA.

### 3. The Government's detention and removal of noncitizen Petitioners violates due process.

Detaining and removing noncitizens seeking to avail themselves of the 2016 provisional waiver regulations also violates due process. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). This right extends "to all 'persons' within the United States, including aliens," regardless of "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It thus protects unlawful immigrants with the guarantee that the executive will not detain or remove them except in accordance with the law. *Kaoru Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). And it protects U.S. citizens from the arbitrary deprivation of their fundamental right of marriage. By arbitrarily curtailing the provisional waiver process, the government interferes with Petitioners' interests in both the application process itself and in their marriage, without due process of law.

*First*, detaining and removing noncitizens pursuing legalization under the provisional waiver process interferes with their liberty interest in pursuing legalization under the 2016 regulations. The Due Process Clause protects Petitioners' and class members' interest in not being arbitrarily deprived of the process that the 2016 regulations provide. *See Brennan v. Cunningham*, 813 F.2d 1, 2-3, 8 (1st Cir. 1987). That their applications for provision waivers or

14

other forms of discretionary immigration relief may ultimately be rejected is irrelevant. *See De Araujo v. Gonzalez,* 457 F.3d 146, 154 (1st Cir. 2006) (noncitizen could state due process claim "from the refusal of an agency to even consider him for discretionary relief" (quotation marks omitted and adaptations adopted)); *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) ("A right to seek relief is analytically separate and distinct from a right to the relief itself."); *see also Yuen Jin v. Mukasey*, 538 F.3d 143, 161 n.1 (2d Cir. 2008) (Sack, J., concurring in part and in the judgment).

Thus, in *Accardi v. Shaughnessy*, the petitioner stated a claim for violation of his due process rights where he alleged that the BIA denied his application to suspend his deportation based on his inclusion on a list of individuals disfavored by the Attorney General—rather than in accordance with the regulatory procedures requiring the BIA to exercise of its own discretion. 347 U.S. at 265-266.  And where a state created a work-release program and made it a path to parole, it could not revoke an inmate's participation in the program on the basis of community reaction where this was not a ground listed in applicable regulations.  *Brennan*, 813 F.2d at 2-3, 8 (holding that prison rules established "a legitimate expectation on the part of inmates that they would be treated according to the regulation and would not simply be transferred back to prison on the basis of criteria to which no allusion may be found in the regulation").  Instead, the regulations created a protected liberty interest because they give individuals "a legitimate expectation" that the government will not deprive them of their rights for impermissible reasons. *Id.* at 8; *Batalla Vidal v. Nielsen*, No. 16-cv-4756, 2018 WL 1532370, at *13 (E.D.N.Y. Mar. 29, 2018) (holding that litigants had stated claim by alleging that government had refused to consider their applications for final extension of DACA benefits, even though, upon consideration, it

15

could grant or deny them); *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 467 (1981) (Brennan, J., concurring)).

Here, the 2016 regulations extending the provisional unlawful presence waiver to Petitioners and class members created a due process interest in being able to pursue those procedures.  The regulations carefully specify categories of eligible and ineligible individuals, *see* 8 C.F.R. § 212.7(e)(3), (4), and give Petitioners and class members a legitimate expectation of being permitted to avail themselves of the provisional waiver process.  Although ICE has discretion as to whether to remove noncitizens with outstanding orders of removal, that discretion is constrained by USCIS's express decision to allow such individuals to apply for provisional waivers from within the United States.

Because the government cannot simply decline to adjudicate the Petitioners' provisional waiver applications, it also cannot achieve the same result by using its detention and removal power to halt the process.  USCIS recognized that such a practice would be self-defeating by implementing in its own Field Manual the policy of not arresting applicants for a benefit that "specifically allows an alien under an order of deportation or removal to seek" them—*i.e.*, the provisional waivers.  *See Raley v. Ohio*, 360 U.S. 423, 426, 438-439 (1959) ("convicting a citizen for exercising a privilege which the State clearly had told him was available to him" was the "most indefensible sort of entrapment by the State" and violated Due Process Clause).  Detaining and removing applicants not only pretermits any provisional waiver applications, *see* 8 C.F.R. § 212.7(e)(3)(i) (provisional waivers available only to those "present in the United States"); it also arbitrarily robs them and their families of the central benefit of the regulations, *i.e.*, avoiding protracted family separation and harm to U.S. citizen family members.

***Second***, in addition to the legitimate expectation of eligibility created by the 2016 regulations, Petitioner spouses and similarly situated class members also have a protected interested based on their fundamental right to marry and live with their spouse in the United States.  *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015); *Ng Fung Ho v. White*, 259 U.S. 276, 284-285 (1922).  The right to marriage has long been held to be one of the most central aspects of individual liberty.  *Obergefell*, 135 S. Ct. at 2598 (recognizing marriage as fundamental due process right); *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978) ("[T]he right to marry, establish a home and bring up children is a central part of the liberty protected by the Due Process Clause." (internal quotation marks omitted)).  Indeed, the Supreme Court has explained that "[n]o union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family."  *Obergefell*, 135 S. Ct. at 2608.  And the right to marriage is intimately connected with the right to live together and raise a family.  *Id.* at 2600 (explaining that right to marriage "safeguards children and families," "allows children 'to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives,'" and "affords the permanency and stability important to children's best interests" (quoting *United States v. Windsor*, 133 S. Ct. 2675, 2694-2695 (2012))).

The government's refusal to permit the spouses of U.S. citizens to live in the United States interferes with U.S. citizens' right to marriage and right to live in the United States with their spouse.  The government's action forces citizens to choose between leaving the country to live with their non-citizen spouses or living in the country without them.  Such a choice between fundamental rights is not a choice at all, and it is one that the government has no right to impose. *See Ng Fung Ho*, 259 U.S. at 284-85 (recognizing U.S. citizen's due process right to live in

United States); *Kerry v. Din*, 135 S. Ct. 2128, 2142 (2015) (Breyer, J., dissenting) ("[T]he Court has long recognized that a citizen's right to live within this country, being fundamental, enjoys basic procedural due process protection."). Thus, the government may not arbitrarily restrict this right absent any evidence that a valid restriction applies.

Because the 2016 provisional waiver regulations implicate and are designed to protect the fundamental right of married couples to live together in the United States, the government violates due process if it arbitrarily deprives families of the benefits of these regulations. Yet that is what it is doing. Despite the importance of these interests—in the opportunity to remain with one's spouse while applying for legal status under the process prescribed in the provisional waiver regulations, and in one's marriage itself—the government has detained and sought to deport Petitioners for no reason other than the final order of removal that the 2016 regulations would have permitted them to address. Lyons Aff. (Dkt. No. 19). By arbitrarily depriving Petitioners and class members of the family unity that the regulations protect, the government violates due process.

### 4.     This court has jurisdiction over these claims.

Relying on 8 U.S.C. §§ 1252(b)(9) and 1252(g), the government has argued that the Court lacks jurisdiction to hear Petitioner's claims. But neither provision removes jurisdiction from this Court.

Section 1252(b)(9) channels review of "questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States" into petition for review of final order of removal. The statute's "arising from" language should be interpreted narrowly so as not to make certain types of claims effectively unreviewable. *Jennings v. Rodriquez*, 138 S. Ct. 830, 839-840 (2018). Thus, it does not apply when a person is not seeking review of an order of removal. *Chehazeh v. Attorney Gen. of U.S.*, 666 F.3d 118, 132 (3d Cir.

2012) (finding § 1252(b)(9) did not preclude district court on habeas from considering claim that BIA's decision to sua sponte re-open proceeding against petitioner after he had been granted asylum violated APA).  Petitioners do not seek review of their orders of removal.

Section 1252(g) bars jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The Supreme Court has explained that this provision does not cover "all claims arising from deportation proceedings"; it instead indicated that this provision is limited to claims that attack decisions to deny deferred action or similar prosecutorial discretion. *Reno v. AADC*, 525 U.S. 471, 476-87 (1999); *Seid v. Nielsen*, No. 17-cv-06785, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018) (holding that § 1252(g) does not bar judicial review of his claim not to be detained or removed before his motion to reopen his immigration case has been decided).  Petitioners do not seek review of a discretionary determination, but instead argue that ICE's discretion has been constrained by the 2016 provisional waiver regulations.

Even if these provisions stripped jurisdiction here—though they do not—they would be unconstitutional as applied.  The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. art. I, § 9, cl. 2.  The legality of a removal must be reviewable in some court to avoid a constitutional Suspension Clause violation.  *INS v. St Cyr*, 533 U.S. 289, 300-301 (2001); *Devitri v. Cronen*, — F. Supp. 3d —, 2018 WL 661518, at *5-6 (D. Mass. Feb. 1, 2018) (holding § 1252(g) unconstitutional in its denial of jurisdiction over the Attorney General's decision to remove petitioners before their motions to reopen would be decided); *Seid*, 2018 WL 1142202, at *11-12 ("[Section 1252(g)] violates the Suspension Clause

as applied if it deprives Petitioners of a meaningful opportunity to exercise their statutory right

….").

Here, as the experiences of the Petitioners demonstrate, there is no effective way for

Petitioners to obtain legal review of ICE's decision to pretermit their ability to apply for

provisional waivers besides bringing a habeas petition in federal court. If not for this Court's

willingness to consider Petitioners' claims, for example, Petitioner Sandro de Souza would have

been forced to depart the United States on April 24, 2018, with *no* opportunity to obtain judicial

review of the standardless and arbitrary determination to deprive him of the process that the laws

plainly provide him with. Ex. F (Loscocco Aff.) ¶ 22. For these reasons, there is no

jurisdictional impediment to the Court's review of Petitioners' claims.[5]

### B. Petitioners are likely to succeed on the merits of their claims that the government's detention of noncitizen Petitioners violates due process and the INA even apart from its interference with legalization under the provisional waiver regulations.

Even if it did not unlawfully interfere with Petitioners' interest in pursuing provisional

waivers, ICE's detention of Petitioners Lilian Calderon and Lucimar de Souza, and other class

members, is unlawful. Because ICE detains these Petitioners and class members without even

minimal procedural protections, it violates the INA and its regulations, and due process.

---

[5] Petitioners' claims concerning their detention by ICE are also not mooted by ICE's release of any or all of those Petitioners. *See, e.g., Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (petitioner's one-year parole, subject to discretionary termination, did not moot case because he "'continue[d] to have a personal stake in the outcome' of his petition" (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478 (1990))); *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) ("[T]his Court's precedents recognize an exception to the mootness doctrine for a controversy that is 'capable of repetition, yet evading review.'" (citation omitted)); Feb. 15, 2018 Order (Dkt. No. 17) at 6-7 (collecting cases and noting that "Calderon's release may not necessarily moot her claims concerning detention or her other claims").

      1.      **The government's detention of Petitioners and class members without notice or an opportunity to be heard violates the INA and its regulations.**

The government's detention of Petitioner Lucimar de Souza—and any other class member who is similarly detained—is contrary to the INA and applicable regulations.  *See* Am. Compl. ¶¶ 128-131.  Although the INA provides for mandatory detention during the 90-day "removal period" that begins immediately after a noncitizen's order of removal becomes final, 8 U.S.C. § 1231(a)(1), detention *after* the 90-day removal period is generally permissible only upon notice to the noncitizen and after an individualized determination of dangerousness and flight risk.  *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d), (f), (h) & (k).

It is undisputed that Petitioners Lilian Calderon and Lucimar de Souza, and—in all likelihood—any similarly situated detained class member, were detained far outside the 90-day removal period.  Dkt. No. 40 at 14.[6]  Thus, the only possible legal basis for their detention is after notice and an individualized determination in accordance with the regulations.  *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d), (f), (h) & (k) (describing the circumstances in which noncitizen can be held beyond removal period, and circumstances favoring release, including a determination that they "will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending … removal").  Petitioners Lilian Calderon and Lucimar de Souza were detained without such individualized determinations, in violation of 8 C.F.R. § 241.4.  *See D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 388-403

---

[6] ICE's own decision to withhold enforcement of a removal order does not extend the removal period.  *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 502-03 (S.D.N.Y. 2009) (rejecting government's argument that 90-day removal period did not begin until petitioner was taken into custody); *Ulysse v. Dep't of Homeland Sec.*, 291 F.Supp.2d 1318, 1321 (M.D. Fla. 2003) (same).  Further, if ICE officials believed that a Petitioner's removal period should be extended due to noncooperation, the agency was required to a Notice of Failure to Comply.  *See* 8 C.F.R. § 241.4(g)(1)(C).

(W.D.N.Y. 2009) (report and recommendation adopted) (ordering release because, among other things, ICE failed to comply with procedures of 8 C.F.R. § 241.4).

> ### 2. Detaining Petitioners and class members without a meaningful, individualized determination of dangerousness and flight risk violates due process.

Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances … where a special justification … outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas,* 533 U.S. at 690 (quotations omitted). Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana,* 406 U.S. 715, 738 (1972); *see also Foucha v. Louisiana,* 504 U.S. 71, 79 (1992); *Zadvydas,* 533 U.S. at 690. In the immigration context, those purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.* at 690 (quotations omitted).

Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha,* 504 U.S. at 78-80. Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. *Id.* at 79; *Zadvydas,* 533 U.S. at 692; *Casas-Castrillon* v. *Dep't of Homeland Sec.,* 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court may assess whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring her appearance or protecting the community, *Zadvydas,* 533 U.S. at 699, or require release unless an adequate procedure—*i.e.*, a bond hearing—is provided.

In this case, Petitioners Lilian Calderon and Lucimar de Souza were detained with few, if any, procedural protections. According to ICE, their detention was determined with an algorithm

and decision-making process that appears to have given near decisive weight to the fact that they were previously ordered removed, while giving no consideration to their decision to appear at the offices of USCIS to pursue lawful status.

But this presumption in favor of detention of Petitioners and class members all but guarantees that noncitizens whose detention serves no legitimate purpose will find themselves locked up.  It is difficult to imagine a clearer violation of the Due Process Clause's requirement that "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington v. Texas*, 441 U.S. 418, 427 (1979).  Petitioner Lucimar de Souza's continued detention, and the detention of other class members, is unlawful.

> ### C.    Petitioners will suffer irreparable harm if detained or removed, the balance of equities tips in their favor, and an injunction is in the public interest.

Petitioners ready satisfy the other requirements of injunctive relief.  In addition to being likely to succeed on the merits, Petitioners and those similarly situated are likely to suffer irreparable harm if detained or removed.  A preliminary injunction may issue when "the moving party demonstrates that it would likely suffer irreparable harm before a decision on the merits could be rendered."  *Devitri*, 2018 WL 661518, at *6.  An injury is "irreparable" if it is "not accurately measurable or adequately compensable by money damages."  *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996); *see also United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (putative class members irreparably harmed by "emotional distress, concern about potential financial disaster, and possibly deprivation of life's necessities").  Here, both Petitioners and their families will suffer irreparable harm absent a preliminary injunction—and similar harm will befall all proposed class members.

Unlawful removal or detention will have a severe physical, psychological, and financial impact on Petitioners, class members, and their families.  Separating individuals and their families inflicts irreparable harm on both.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 969-970 (9th Cir. 2011) ("[S]eparation from family members, medical needs, and potential economic hardship" are important factors when considering irreparable harm).[7]  By deporting Petitioners, Respondents are subjecting them to a separation from their families and homes for approximately two years or more.  Ex. H (Cannon Aff.) ¶ 5.  Each Petitioner and class member necessarily has deep familial ties to United States citizens, and many have children that they care for.  In every instance, separating these individuals from their families will deprive them of mutual love and support and thus inflict emotional distress on all family members.  Additionally, this emotional distress will likely exacerbate any existing physical and mental health issues or financial strain they are facing.  Petitioners and putative class members, as well as their U.S. citizen, Lawful Permanent Resident, and immigrant family members present in the United States face certain irreparable harm if they are detained or deported.

Each Petitioner's story demonstrates the irreparable harm they will suffer and also illustrates the harm that will be visited on every class member.  The strain of these detentions and potential removals has already been agonizing for Petitioners and their families.  Lucimar de

---

[7] *See also, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 270 (4th Cir. 2018). ("Prolonged and indefinite separation of parents [and] children … create not only temporary feelings of anxiety but also lasting strains on the most basic human relationships."); *Sanchez v. Sessions*, 857 F.3d 757, 759 (7th Cir. 2017) ("Given the irreparable harm that Sanchez's removal could inflict on his minor U.S.-citizen children, we have decided to stay the order of removal until we rule on his petition for review of the decision of the Board of Immigration Appeals denying his motion to reopen."); *McLaughlin v. Pernsley*, 876 F.2d 308, 315 (3d Cir. 1989) (parents' separation from their foster child caused irreparable harm because "the bonds between the [parents] and their foster child will weaken continuously with the passage of time apart"); *Nicolson v. Pappalardo*, 685 F. Supp. 2d 142, 145-146 (D. Me. 2010) ("[e]very additional day" of separation from child causes parent further irreparable harm).

Souza's husband—who has a history of mental health issues—and ten-year-old son are already suffering because of her detention.  Lucimar de Souza Aff. ¶¶ 1-6, Dkt. No. 30-5.  Lilian Calderon's children suffered severe emotional trauma from their mother's month-long absence—to the extent that a medical professional has expressed concerns about her son's long-term mental health in the event of further separation.  Calderon-Jimenez Aff. ¶ 6, Dkt. No. 30-3.  Beyond his own anxieties about removal to Brazil, Sandro de Souza fears for his family's financial and physical well-being if he were absent.  Sandro de Souza Aff.  ¶¶ 2, 9, Dkt. No. 30-1.  Oscar Rivas is frightened to return to El Salvador, where gang members once beat and threatened to kill him.  Rivas Aff. ¶ 4, Dkt. No. 30-2.  And if Deng Gao is removed, he would leave his wife Amy with a newborn, two young children, and his thirteen-year-old son, who is autistic and suffers from mobility limitations.  Gao Aff. ¶¶ 5-9, Dkt. No. 30-4.

Similarly, if Petitioners or proposed class members are unlawfully detained, they will suffer a violation of their Due Process rights amounting to irreparable harm.  An individual has "been deprived of liberty unconstitutionally suffers irreparable injury enduring each day of wrongful incarceration." *McGuinness v. Pepe*, 150 F. Supp. 2d 227, 230 n.8 (D. Mass. 2001); *see also Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) ("The interest of the habeas petitioner in release pending appeal [is] always substantial …."); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-1145 (9th Cir. 2013) (finding clear irreparable harm where noncitizens were likely to prevail on merits of their claim that their detention violated § 1226(c)).  Ms. Calderon has already been subject to abrupt, unlawful detention for nearly a month following her I-130 interview.  Am. Compl. ¶¶ 49-58.  Any further "deprivation of [a Petitioner or class member's] due process rights … is sufficient on its own to establish irreparable harm." *Reid v. Donelan*, 22 F. Supp. 3d

84, 90 (D. Mass. 2014) (irreparable harm where noncitizens were held without individualized

bail hearings for six months), *vacated on other grounds*, 819 F.3d 486 (1st Cir. 2016).

Additionally, if plaintiffs are erroneously deported before judicial review of their claims

in the Class Action Complaint they will suffer a gross violation of their constitutional right to

due process amounting to an irreparable harm.  Here, Plaintiffs are not asking for judicial review

on the merits of their waiver applications, orders of removal, or any other part of their

immigration status or proceedings.  Instead, they are seeking to "enforce their constitutional

rights to due process in the context of those" applications and proceedings.  *Barahona-Gomez v.*

*Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999) (finding court jurisdiction to issue preliminary

injunction enjoining enforcement of an amendment to the Immigration and Naturalization Act),

*supplemented*, 236 F.3d 1115 (9th Cir. 2001).  If individuals are erroneously removed while that

judicial review is proceeding, they will suffer a gross violation of their right to due process.

*Devitri*, 2018 WL 661518, at *5 ("The Due Process Clause also protects an alien subject to a

final order of deportation, 'though the nature of that protection may vary depending upon status

and circumstance.'" (quoting *Zadvydas*, 533 U.S. at 693-94)); *Barahona-Gomez*, 167 F.3d at

1236 (requiring government give notice of injunction to "prevent the irreparable harm of an

erroneous deportation").

Moreover, the severe and irreparable harm each Petitioner and putative class member

faces if the government is not enjoined from illegally detaining or removing them far outweighs

any government interest in separating these individuals from their families.  In determining

whether to issue a preliminary injunction in the immigration context, courts apply a two-pronged

test: they "must weigh the irreparable harm to Petitioners against the harm to the Government

and must determine whether a preliminary injunction would be in the public interest."  *Devitri*,

2018 WL 661518, at *7.  However, "these two inquiries merge in a case like this one, where the Government is the party opposing the preliminary injunction."  *Id.*  As demonstrated above, Petitioners and putative class members face real, immediate, and grave irreparable harm if they are detained or deported.  This harm will be visited not only on noncitizen Petitioners, but also on their U.S. citizen spouses and other family members.

On the other side of the scale, the government's equities also weigh in favor of issuing a preliminary injunction here.  First, the public and government have an interest in protecting families and keeping them together.  This bedrock legal principal reflects the core public policy that underlies our immigration laws and the provisional waiver process specifically.  *See, e.g.*, *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1094 (9th Cir. 2005) ("Public policy supports recognition and maintenance of a family unit.  The [INA] was intended to keep families together.  It should be construed in favor of family units and the acceptance of responsibility by family members."); Ex. I (*Provisional Unlawful Presence Waivers*, USCIS) ("This new process was developed to shorten the time that U.S. citizens and lawful permanent resident family members are separated from their relatives while those relatives are obtaining immigrant visas to become lawful permanent residents of the United States.").  The government has an interest in keeping Petitioners and putative class members together with their families.

Additionally, the public and government have an "interest in ensuring that all persons, including aliens, obtain fair treatment in legal proceedings."  *Reid*, 22 F. Supp. 3d at 91; *see also* *Rodriguez*, 715 F.3d at 1145 (a government agency "cannot suffer harm from an injunction that merely ends an unlawful practice"); *Devitri*, 2018 WL 661518, at *7 ("The public's interest in providing due process for non-citizens to ensure that they are not removed to a country where they will be persecuted is an extremely weighty one.").  While the government has an interest in

enforcing the nation's immigration laws, the government's actions here are in direct contravention of the department's regulations.  And the public has an interest in protecting Petitioners and putative class members from unlawful detention or removal.  Additionally, the public has an interest in allowing these individuals to utilize the provisional waiver process to obtain legal status—the government's actions prevent immigrants from taking advantage of a system it created, administers, and funds.

II.    **The Court should provide relief that protects Petitioners and class members from undue interference with their access to the provisional waiver process.**

In light of Petitioners' likelihood of success on the merits, and to prevent irreparable harm while this litigation proceeds, the Court should issue a temporary restraining order and preliminary injunction that prohibits the detention and removal of Petitioners and class members unless Respondents make specific and individualized justifications for pretermitting a particular noncitizen class member's ability to seek provisional waivers and legalization.  Further, to ensure Respondents' compliance with that preliminary relief, as well as regulatory, statutory, and constitutional provisions making it unlawful for Respondents to detain or remove Petitioners and class members based on their final orders of removal, a preliminary injunction should also require Respondents to provide Petitioners and class members with notice before taking action against them.  *Cf. Brennan*, 813 F.2d at 7, 9; *Zadvydas*, 533 U.S. at 699. Petitioners outline below the form that this preliminary relief could take.

**With respect to removal,** the USCIS Field Manual supplies a ready model for injunctive relief.  Recognizing that noncitizens with final orders of removal should not risk wholesale removal when they apply for benefits that the government has specifically made available to them, the Field Manual states that those noncitizens "shall not be arrested" except where the noncitizen's actions are "so egregious as to justify making an exception," including where the

noncitizen "is the subject of an outstanding warrant of arrest for criminal violations," or is "a threat to the safety or well-being of another party."   Ex. A (USCIS Field Manual) § 15.1(c)(2). These guidelines were created by USCIS to guide behavior for I-130 and other interviewees, and they could logically be adapted to protect the class in this case.  Specifically, modeled upon the Field Manual's curtailment of *arrests*, a preliminary injunction should provide that class members who are pursuing legal status through the provisional waiver process with due diligence "shall not be *removed*" except where his actions are "so egregious" as to justify invoking one of the exceptions described in the Field Manual. And in order to ensure that any remedial order is applied fairly, a class member threatened with removal should first receive notice (including notice sent to class counsel) and the opportunity to be heard before ICE determines whether the person will be removed or required to depart.

**With respect to detention**, similarly, this preliminary injunctive relief should make clear that Petitioners and class members cannot be arrested at an interview associated with any of the steps required for the provisional waiver process, including the I-130, without a determination by USCIS that arrest is warranted under § 15.1(c) of the Field Manual for reasons other than a noncitizen's final order of removal.

**If detained in accordance with the Field Manual**, Petitioners and class members should receive adequate procedures to determine that their detention is reasonably related to the purposes of ensuring the noncitizen's appearance at a hearing or protecting the community. *Zadvydas,* 533 U.S. at 699.  Because the 2016 provisional waiver regulations establish a presumption that those who are subject to them will be permitted to remain with their families as they seek legalization, *see* 2016 Final Rule, 81 Fed. Reg. at 50245-46, Petitioners are entitled to a bond hearing in which the government rebuts that presumption with clear and convincing

evidence that the noncitizen poses a flight risk or danger, and a sufficient basis for pretermitting

their ability to seek provisional waivers.  Petitioners shall be released unless Respondents show

that no conditions of release will be sufficient to ensure the safety of the community or a

noncitizen's appearance or compliance with an order to depart.

**At the very least,** preliminary injunctive relief should provide that Petitioners cannot be

detained unless Respondents follow the procedures required in 8 C.F.R. § 241.4(d), (f), (h) & (k).

**With regard to the named noncitizen Petitioners**, who have not been shown to fall

within any of the categories for arrest described in the Field Manual, Respondents should be

enjoined from detaining or removing them without authorization of this Court, unless exigent

circumstances render detention prior such authorization necessary to preserve public safety or

prevent flight.  This is in keeping with this Court's April 13, 2018 Order to preserve its

jurisdiction, Dkt. No. 32, and the evidence already before the Court demonstrating petitioners'

diligent pursuit of legal status through the provisional waiver process.

## CONCLUSION

Petitioners are likely to succeed on the merits of their claim that the government's actions

violate the Constitution, the INA and its regulations, and the APA.  If the government's detention

and removal of the noncitizen Petitioners is not enjoined, Petitioners and similarly situated class

members will face irreparable harm.  Accordingly, Petitioners respectfully request that the Court

issue a temporary restraining order and preliminary injunction.

Respectfully submitted this 30th day of April, 2018.

/s/      *Kevin S. Prussia*

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

Kevin S. Prussia (BBO # 666813)
Michaela P. Sewall (BBO # 683182)
Jonathan A. Cox (BBO # 687810)
Stephen Provazza (BBO # 691159)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
kevin.prussia@wilmerhale.com
michaela.sewall@wilmerhale.com
jonathan.cox@wilmerhale.com
stephen.provazza@wilmerhale.com

*Attorneys for Petitioners*