```
                      UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS

    ---------------------------------
    LILIAN PAHOLA CALDERON JIMENEZ,   )
                      Petitioner,    )
                                     )   Civil Action
    vs.                              )   No. 18-10225-MLW
                                     )
    KIRSTJEN M. NIELSEN,              )
    Secretary of Homeland Security,  )
    CHRISTOPHER CRONEN,              )
    Immigration and Customs          )
    Enforcement, Boston Field Office )
    Director, YOLANDA SMITH,         )
    Superintendent of Suffolk County )
    Correctional Facility,           )
    STEVEN W. TOMPKINS,              )
    Sheriff of Suffolk County,       )
                      Respondents.   )
    ---------------------------------
                                     )
    EDUARDO RALPH JUNQUEIRA,          )
                      Petitioner,    )   Civil Action
                                     )   No. 18-10307-MLW
    vs.                              )
                                     )
    STEVE SOUZA, Superintendent of   )
    Bristol County House of          )
    Corrections, THOMAS M. HODGSON,  )
    Sheriff of Bristol County,       )
                      Respondents.   )
    ---------------------------------
                                     )
    EDJANN HENRIQUE DOS SANTOS,       )
                      Petitioner,    )   Civil Action
                                     )   No. 18-10310-MLW
    vs.                              )
                                     )
    KIRSTJEN M. NIELSEN, Secretary   )
    of Homeland Security,            )
    CHRISTOPHER CRONEN, Immigration  )
    and Customs Enforcement, Boston  )
    Field Office Director,           )
    YOLANDA SMITH, Superintendent of )
    Suffolk County House of          )
    Correction, STEVEN W. TOMPKINS,  )
    Sheriff of Suffolk County,       )
                      Respondents.   )
    ---------------------------------
```

```
----------------------------------
                                 )
MANUEL JESUS PINGUIL LOJA,       )
                 Petitioner,     )   Civil Action
                                 )   No. 18-10579-MLW
vs.                              )
                                 )
STEVEN SOUZA, Superintendent of  )
Bristol County Jail and House of )
Corrections, THOMAS M. HODGSON,  )
Sheriff of Bristol County,       )
                 Respondents.    )
----------------------------------
```

BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE

LOBBY CONFERENCE

May 8, 2018

John J. Moakley United States Courthouse
Courtroom No. 10
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RMR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way, Room 5200
Boston, Massachusetts  02210
mortellite@gmail.com

```
 1    APPEARANCES:

 2    Counsel on behalf of Petitioners Calderon and Pinguil:
      Adriana Lafaille
 3    American Civil Liberties Union
      211 Congress Street
 4    Boston, MA 02110
      617-482-3170
 5    alafaille@aclum.org

 6    Counsel on behalf of Petitioner Calderon:
      Jonathan A. Cox
 7    Colleen McCullough
      Wilmer Hale LLP
 8    60 State Street
      Boston, MA 02109
 9    617-526-6212
      jonathan.cox@wilmerhale.com
10    colleen.mccullough@wilmerhale.com

11    Counsel on behalf of Petitioners Junqueira and Dos Santos:
      Todd C. Pomerleau
12    Rubin Pomerleau PC
      One Center Plaza
13    Suite 230
      Boston, MA 02108
14    617-367-0077
      tcp@rubinpom.com
15
      Counsel on behalf of Respondents:
16    Eve A. Piemonte
      Michael P. Sady
17    United States Attorney's Office
      Suite 9200
18    1 Courthouse Way
      John Joseph Moakley Federal Courthouse
19    Boston, MA 02210
      617-748-3271
20    eve.piemonte@usdoj.gov
      michael.sady@usdoj.gov
21
      Mary Larakers
22    U.S. Department of Justice, Office of Immigration Litigation
      District Court Section
23    P.O. Box 868
      Washington, DC 20044
24    202-353-4419
      mary.larakers@usdoj.gov
25
```

```
 1                    P R O C E E D I N G S
 2          THE COURT:  Let's go on the record.  I'm trying to
 3   think about the implications of what's going on because you
 4   want a hearing scheduled that conflicts with a month I told
 5   about three dozens lawyers to put aside for hearings in a
 6   multibillion-dollar patent case.  This is more important.
 7   People's liberty is at stake.  It's just money.  But there's a
 8   lot of competing -- lot of competition for a limited time.
 9          All right.  So De Souza's detention issue is resolved,
10   but she's part of the putative Calderon class --
11          MR. COX:  Yes, Your Honor.
12          THE COURT:  -- that are seeking an order that they be
13   allowed to stay in the United States while they seek
14   provisional waivers, right?  Is that the issue?
15          MS. LAFAILLE:  Essentially, yes, sir.
16          THE COURT:  And now, if Dos Santos gets married, would
17   Dos Santos also be a member of that putative class?
18          MR. POMERLEAU:  Yes, he would, Your Honor.
19          MS. LAFAILLE:  Assuming he would file the I-130.
20          MR. POMERLEAU:  He could file the I-130 in 24 hours.
21          THE COURT:  All right. Here.  I'll help you out a
22   little bit.  This is a civil case, so I can -- if you reach an
23   agreement that he can get married, that will be one less thing
24   for me to decide, but I don't know whether or not I would go
25   along with him getting married in the courthouse.  You know, he
```

1  could get married in the jail.  May not be as romantic.

2         MR. POMERLEAU:  Mr. Sady and I had discussed they

3  could bring him to ICE and he could get married there.

4         THE COURT:  Right, exactly.  But I have to be deciding

5  actual cases and controversies.  So if he can get married, that

6  seems to me it's an extrajudicial thing, try to find someplace

7  else.  Although, if there's some reason it should be here, you

8  can tell me and I'll be open-minded and consider it.  So that's

9  Dos Santos.

10         Then in Calderon, you have your briefing schedule and

11  you're good at filing your briefs and sort of talking

12  afterwards about whether you can narrow the issues or resolve

13  the cases.  I really want to urge you -- you know, the class

14  action aspects of it may be tough.  Just off the top of my head

15  I wondered whether this could proceed as a class action,

16  whether common issues of fact would predominate and whether

17  people who are not detained could be in the class.

18         When are your briefs due in Calderon?

19         MR. COX:  The 21st would be the opposition to the

20  motion to dismiss, our opposition to the motion to dismiss, and

21  the government's opposition to the motion of the preliminary

22  injunction --

23         MS. LARAKERS:  Yes, yes.

24         MS. LAFAILLE:  And the 31st is the replies.

25         THE COURT:  Well, the 21st is a week from Monday.  I'm

ordering that by the 17th you confer and see whether there's anything you can agree on that would resolve the case or narrow the issues. I don't -- I'm not sufficiently focused on it, but my point is I'd like to save you the trouble of briefing any issues that don't need to be briefed. In fact, Ms. Larakers, is that a reasonable date, given your travel to Texas? It's a week from Thursday.

MS. LARAKERS: It's a week from Thursday. I think based on --

THE COURT: I can give you more time.

MS. LARAKERS: It's more about me talking to my client than it is about my schedule.

THE COURT: I can give you until the 18th or something.

MS. LARAKERS: Every day counts, Your Honor. That's fine with me.

THE COURT: It's just that they have a filing to make on the 21st.

MS. LARAKERS: We both do.

THE COURT: You both do. So I'm trying to save you some work if you can reach an agreement in advance. And you have to talk to your client. I'd like to talk to your client, too. No. I'm going to do it. I'm going to do it.

MS. LARAKERS: I know.

THE COURT: I think this -- I'm going to do it. So

```
 1    anyway.  All right.  I'll give you until the 18th to report on
 2    whether you've reached any agreement to resolve issues of the
 3    whole case or whether you want some brief modification of the
 4    briefing schedule because you're making progress.  You probably
 5    need to file the briefs.  But you're doing a lot of work, and
 6    Ms. Larakers is flying all over the country, and the DHS
 7    develops a different view.  So it would just be good for all of
 8    us if you could figure out what do -- what's really in
 9    controversy, what does the court need to decide, and focus on
10    that, and I'll continue to give you high priority.  All right?
11    Is there anything else we should discuss?
12              MS. PIEMONTE:  Your Honor, at the risk of revisiting
13    the schedule, I was going to ask to be excused May 15.  I have
14    an appearance in Calderon, but I am not going to be here May 15
15    and for the remainder of the week.
16              THE COURT:  Maybe Mr. Sady can cover for you.  As long
17    as somebody appears.  My schedule next week is very crowded.
18    I'm supposed to start a two-week trial a week from Monday.  So
19    you can be excused as long as somebody else will appear.
20              MS. PIEMONTE:  Thank you, Your Honor.
21              MR. COX:  One thing, Your Honor, we were wondering for
22    Calderon what if any involvement or preparation you wanted from
23    us for the hearing if it goes forward for Junqueira.
24              THE COURT:  I don't think I understand the
25    implications of that question.  Well, you represent De Souza?
```

```
 1            MR. COX:  Correct.
 2            THE COURT:  My order runs to you.  I want to -- what
 3   do I want?  I want you to brief the burden of proof and, you
 4   know, what kind of conditions are reasonable in a case like
 5   this.  I mean, if I'm going to have to do it in Junqueira, you
 6   might as well -- you've thought about this.  You can help Mr.
 7   Pomerleau.
 8            I also have to schedule Pinguil.  Are you counsel in
 9   Pinguil?
10            MS. LARAKERS:  No, Your Honor.
11            THE COURT:  Mr. Kanwit is counsel in Pinguil.
12            MR. POMERLEAU:  There is one other issue regarding
13   Mr. Dos Santos.  One issue is getting married.  The other issue
14   is detention, which wasn't resolved today, challenging his
15   detention.
16            THE COURT:  And I didn't decide that why?
17            MR. POMERLEAU:  You didn't get into it.
18            THE COURT:  No, but there was a reason it wasn't
19   scheduled for today.  I think it wasn't briefed or something.
20   Here.  You report by the 18th.  What's that?
21            MS. PIEMONTE:  Your Honor, my memory is he had failed
22   to file a response, so it was considered unbriefed as of last
23   week.  That's my memory.
24            THE COURT:  He hasn't filed a response?
25            MR. SADY:  He has now, though.
```

1           MS. PIEMONTE:  But he has now.

2           THE COURT:  Well, fine.  By the 18th, talk.  You know

3    what my view is.  Did Dos Santos get a 60-day notice?

4           MS. LARAKERS:  Your Honor, he's a failure to comply

5    case.

6           THE COURT:  That's right.  Okay.  Wait a minute.  He's

7    the failure to comply case.

8           MR. POMERLEAU:  They arrested him 37 months outside of

9    what we believe to be --

10          THE COURT:  No.  So he was arrested when, last August,

11   June?

12          MR. SADY:  June of 2017.

13          MR. POMERLEAU:  And his removal became final in May

14   of 2018.

15          THE COURT:  That's actually part of the reason it

16   wasn't done.  So if he's refusing -- and you've stipulated that

17   he's refusing to cooperate?

18          MR. POMERLEAU:  I stipulated that he didn't sign these

19   documents outside of my presence.  Whether that's a failure to

20   cooperate I think is a legal determination.

21          THE COURT:  All right.  Then I think that's also a

22   straight Zadvydas issue.  If he got the process to which he was

23   entitled, then the question is is his detention unreasonably

24   long.  Because he's been detained how long?

25          MR. POMERLEAU:  Ten months now.

```
 1                    THE COURT:  Right.  You say that's fully briefed?
 2                    MR. POMERLEAU:  Yes.
 3                    MS. LARAKERS:  Your Honor, there is another section in
 4       241.4 that talks about noncompliance and how that affects --
 5                    THE COURT:  All right.  It's fully briefed.  Well, I'm
 6       ordering that by a week from Friday you confer and see whether
 7       you can resolve Dos Santos and the detention issues; and if
 8       not, succinctly tell me what the issues are and what your
 9       respective positions are and point me to the briefs that I
10       should focus on.  Okay?
11                    MR. POMERLEAU:  Yes, sir.
12                    THE COURT:  Anything else?  All right.
13                    MS. LAFAILLE:  Can I raise one thing, Your Honor?
14       Your Honor indicated that we should discuss whether Probation
15       or ICE should supervise Ms. De Souza's release.
16                    THE COURT:  If you're content with ICE, that's fine by
17       me.
18                    MS. LAFAILLE:  Does that include the question of
19       whether Probation or ICE would set the conditions of release?
20                    THE COURT:  I suppose so, except ICE is -- I hadn't
21       decided yet that she should be released.  I was going to
22       conduct the hearing.  Now she's going to get out faster.
23       She'll be home for Mother's Day.  I haven't thought all of this
24       through.  I was absorbed in trying to figure this out, and I
25       walk into court and they say, "We decided to let her out."
```

1               MS. LARAKERS:  I apologize for that.  I was trying to
2     be expedient.  However, I think we had contemplated narrowing
3     the issue at least on Tuesday.  Maybe we just haven't -- with
4     regard to Mr. Junqueira, since that's what's most urgent, I can
5     tell you it is going to be very difficult to get ICE on the
6     same page and for me to get my client on the same page with
7     regard to hearing on Ms. De Souza.
8               THE COURT:  What do you mean "on the same page"?
9               MS. LARAKERS:  Because I have to corral a lot of
10    people.  There have been several affidavits filed.  I have to
11    make sure all those people are in line and ready to go, and I'm
12    not going to be there.
13              THE COURT:  Well, as I said, this isn't an invitation.
14    You know, these people are deciding -- somebody is making these
15    decisions.  This is a little bit like the Wizard of Oz, you
16    know, who is behind the curtain?  Somebody is deciding to
17    detain him.  Somebody is ignoring the requirements of the
18    241.4.  So what I've ordered is by the end of the week you have
19    to tell me who made that litany of decisions, and they've got a
20    court order to be here.
21              MS. LARAKERS:  Yes, Your Honor.  Since De Souza --
22    since the urgency for De Souza, since that's been alleviated a
23    little bit, if we can push those questions for De Souza any
24    later -- I understand the court's schedule may not allow that.
25    Because if we hear Junqueira --

```
 1              THE COURT:  I see.  Talk to counsel for De Souza, and
 2    if you're in agreement, I may be in agreement, too.
 3              MS. LARAKERS:  I think we're in agreement that we can
 4    come to some sort of agreement as to her conditions of release,
 5    et cetera, moving forward.  And then of course I would get
 6    whoever you need from ICE to answer those questions at perhaps
 7    a later date to make sure there's answers to the questions of
 8    the court.
 9              THE COURT:  With regard to De Souza.
10              MS. LARAKERS:  Yes, Your Honor, so that all the
11    questions are answered.
12              THE COURT:  Then you would focus on Junqueira for next
13    Tuesday?
14              MS. LARAKERS:  Yes, Your Honor.
15              THE COURT:  Do counsel for De Souza have a problem
16    with that approach?
17              MR. COX:  I don't think so.  I think we prefer, again,
18    in the general keeping of things, trying to streamline and make
19    sure we're triaging issues.
20              THE COURT:  Well, streamline them, but my schedule
21    doesn't get any better, and I'm immersed in this now.  Three or
22    four weeks from now, I will have dealt with many other things.
23              All right.  But I don't issue orders I don't intend to
24    enforce.  So I don't want to get to a point where I have to
25    say, "Where is this one?  Where is that one?  Do I have to send
```

```
 1   the marshals for him?"
 2           All right.  If you're in agreement -- we're talking
 3   about a hearing for Junqueira.  But I do want the affidavit
 4   this week that tells me who made the decisions.  They don't
 5   have to be here Tuesday, but you've told me they'll come, and
 6   we'll figure out when.
 7           MS. LARAKERS:  Yes, Your Honor.  That would make it
 8   much better.  Thank you.
 9           THE COURT:  It may be if you don't settle everything
10   in Calderon, which could be challenging, maybe we'll do it in
11   conjunction with that in June.  But I'm relying on essentially
12   the implicit representation that it won't be argued that this
13   is moot; they shouldn't have to come.  This is important, and
14   it has relevance to other cases.  All right.  Thank you very
15   much.
16           (Adjourned, 4:52 p.m.)
17
18
19
20
21
22
23
24
25
```

```
 1                CERTIFICATE OF OFFICIAL REPORTER
 2
 3        I, Kelly Mortellite, Registered Merit Reporter
 4   and Certified Realtime Reporter, in and for the United States
 5   District Court for the District of Massachusetts, do hereby
 6   certify that pursuant to Section 753, Title 28, United States
 7   Code that the foregoing is a true and correct transcript of the
 8   stenographically reported proceedings held in the
 9   above-entitled matter and that the transcript page format is in
10   conformance with the regulations of the Judicial Conference of
11   the United States.
12                    Dated this 15th day of May, 2018.
13
14                    /s/ Kelly Mortellite
15                    _____
16                    Kelly Mortellite, RMR, CRR
17                    Official Court Reporter
18
19
20
21
22
23
24
25
```