# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., | ) ) ) ) |
| Petitioners, | ) ) No. 1:18-cv-10225-MLW |
| v. | ) ) **RESPONDENTS' OPPOSITION** |
| KIRSTJEN M. NIELSEN, et al., | ) **TO PETITIONERS' MOTION** ) **FOR PRELIMINARY** |
| Respondents. | ) **INJUNCTION** ) ) ) |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND....................................................................................................1

    I.    Petitioner Lilian Pahola Calderon Jimenez ...................................................1

    II.    Petitioner Lucimer de Souza ........................................................................2

    III.    Petitioner Sandro de Souza .........................................................................2

    IV.    Petitioner Oscar Rivas..................................................................................3

    V.    Petitioner Deng Gao.....................................................................................3

STATUTORY AND REGULATORY BACKGROUND..........................................................4

LEGAL STANDARD................................................................................................................6

ARGUMENT .............................................................................................................................6

    I.    Petitioners are not likely to succeed on the merits of their claims ............6

        a.    Petitioners' habeas claims are either moot or outside the Court's jurisdiction ...............................................................................................7

        b.    Section 1252 of Title 8 requires that the Court dismiss the Complaint......8

        c.    Petitioners cannot establish that their detention and removal would be a violation of the Constitution or the laws of treaties of the United States.12

    II.    Petitioners are not entitled to an individualized determination of dangerousness and flight risk prior to any detention............................................................................13

    III.    Petitioners are not entitled to the procedures in 8 CFR section 241.4 prior to ICE's decision to detain them...........................................................................................14

    IV.    Petitioners are not entitled to a Post Order Custody Review under section 241.4 until they have been detained for a continuous period of 90 days...................................16

        d.    Petitioners cannot establish that their detention and removal would be unlawful under the INA and applicable regulations ...............................19

        e.    Petitioners do not have a due process right to remain in the United States while their unlawful presence waiver is adjusted ...................................21

f.   Petitioners have failed to adequately state an Equal Protection claim under the Fifth Amendment ...........................................................................24

g.   Petitioners' claims under the Administrative Procedure Act are barred by section 1252(g) and because DHS has not engaged in any rulemaking .26

V.   The Other Preliminary Injunction Factors Are Irrelevant in the Absence of Likely Success on the Merits............................................................................................27

CONCLUSION........................................................................................................................ 28

# TABLE OF AUTHORITIES

## CASES

*Accardi v. Shaughnessy,*
    347 U.S. 260 ........................................................................................................ 23

*Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.,*
    510 F.3d 1 (1st Cir. 2007) .................................................................................... 10

*Akinwale v. Ashcroft,*
    287 F.3d 1050 (11th Cir. 2002) ............................................................................ 12

*Ansong v. District Director,*
    596 F. Supp. 882 (D. Me. 1984) ........................................................................... 23

*Asarco, Inc. v. EPA,*
    616 F.2d 1153 (9th Cir. 1980) .............................................................................. 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................ 25, 26

*Auer v. Robbins,*
    519 U.S. 452 (1997) .............................................................................................. 18

*Aziz v. Chadbourne,*
    2007 WL 3024010 (D. Mass. Oct. 15, 2007) ....................................................... 11

*Bonitto v. Bureau of Immigration & Customs,*
    *Enf't,* 547 F. Supp. 2d 747 (S.D. Tex. 2008) ...................................................... 15

*Brenna v. Cunningham,*
    813 F.2d 1 (1st Cir. 1987) ..................................................................................... 23

*Chun Xin Chi v. Holder,*
    606 F.3d 6 (1st Cir. 2010) ........................................................................ 20, passim

*Clukey v. Town of Camden,*
    717 F.3d 52 (1st Cir. 2013) ................................................................................... 22

*Conservation Law Found. of New England, Inc. v. Clark,*
    590 F. Supp. 1467 (D. Mass. 1984) ...................................................................... 17

*Dantran, Inc. v. U.S. Dept. of Labor,*
    171 F.3d 58 (1999) ................................................................................................ 18

*Devitri v. Cronen,*
   290 F. Supp. 3d 86 (D. Mass. 2017) ........................................................ 11

*Enwonwu v. Gonzales,*
   438 F.3d 22 (1st Cir. 2006) .................................................................... 21

*Esso Std. Oil Co. (Puerto Rico) v. Monroig-Zayas,*
   445 F.3d 13 (1st Cir. 2006) ...................................................................... 6

*Foster v. Townsley,*
   243 F.3d 210 (5th Cir. 2001) ................................................................. 11

*Fox Television Stations, Inc.,*
   556 U.S. 502 (2009) ............................................................................... 27

*Gonzales-Droz v. Gonzalez-Colon,*
   573 F.3d 75 (1st Cir. 2009) ...................................................................... 6

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ............................................................................... 27

*Hernandez v. Gonzales,*
   424 F.3d 42 (1st Cir. 2005) .................................................................. 7, 8

*Hodel v. Aguirre,*
   260 F. Supp. 2d 695 (N.D. Ill. 2003) ..................................................... 12

*INS v. Abdu,*
   485 U.S. 94 (1988) ................................................................................. 24

*INS v. Jong Ha Wang,*
   450 U.S. , 139 (1981) ............................................................................ 24

*Ishak v. Gonzales,*
   422 F.3d 22 (1st Cir. 2005) .................................................................. 8, 9

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018) ........................................................................ 13, 14

*Juniper v. Ashcroft,*
   396 F.3d 487 (1st Cir. 2005) .................................................................. 22

*Kandamar v. Gonzales,*
   464 F.3d 65 (1st Cir. 2006) .............................................................. 25, 26

*Katz v. Pershing LLC,*
   672 F.3d 64 (1st Cir. 2012) ............................................................................. 8

*Kerry v. Din,*
   135 S. Ct. 2128 (2015) ........................................................................... 22, 26

*Khalaj v. Cole,*
   46 F.3d 828 (8th Cir. 1995) ............................................................................ 23

*Lamotte v. Holder,*
   No. CIV.A. 13-10582-RGS, 2013 WL 1629135 (D. Mass. Apr. 9, 2013) .............................. 12

*Leitao v. Reno,*
   311 F.3d 453 (1st Cir. 2002) ......................................................................... 7, 8

*Lewis v. Continental Bank Corp.,*
   494 U.S. 472 (1990) ...................................................................................... 7

*Li v. Hodgson,*
   C.A. No. 12-12347-DPW, 2012 WL 6738262 (D. Mass. Dec. 27, 2012) ................................ 23

*Main School Administration District No. 35 v. Mr. R.,*
   321 F.3d 9 (1st Cir. 2003) .............................................................................. 7

*Markets Inc.,*
   622 F.3d 36 (1st Cir. 2010) ............................................................................ 6

*Matias v. Sessions,*
   871 F.3d 65 (1st Cir. 2017) ........................................................................... 24

*McCuin v. Secretary of Health and Human Services,*
   817 F.2d 161 (1st Cir. 1987) .......................................................................... 18

*Munaf v. Geren,*
   553 U.S. 674 (2008) ..................................................................................... 6

*New Comm Wireless Servs., Inc. v. SprintCom, Inc.,*
   287 F.3d 1 (1st Cir. 2002) ......................................................................... 7, 27

*Omondiagbe v. McDonald,*
   No. 13-11182-MBB, 2014 WL 1413560 (D. Mass. April 10, 2014) ...................................... 7

*Pelletier v. United States,*
   653 F. App'x 618 (10th Cir. 2016) ..................................................................... 8

*Pena-Muriel v. Gonzales,*
  489 F.3d 438 (1st Cir. 2007) ................................................................ 21

*Penate-Diaz v. Moniz,*
  No. 18-10156-NMG, 2018 WL 889217 (D. Mass February 12, 2018) ................................... 13

*Poeuv v. Smith,*
  169 F. Supp. 3d 297 (D. Mass. 2016) ........................................................ 13

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
  *("AADC")*, 525 U.S. 471 (1999) ........................................................ 9, 26, 27

*Saint Fort v. Ashcroft,*
  329 F.3d 191 (1st Cir. 2003) ................................................................ 20

*Santana v. Holder,*
  731 F.3d 50 (1st Cir. 2013) ................................................................ 12

*Sessions v. Morales-Santana,*
  582 U.S. __, 137 S. Ct. 1678 (2017) ........................................................ 26

*Silverman v. Rogers,*
  437 F.2d 102 (1st Cir. 1970) ........................................................ 22, 23, 26

*Skidmore v. Swift & Co.,*
  323 US 134 (1944) ........................................................................ 19, 20

*Small v. Avanti Health Sys., LLC,*
  661 F.3d 1180 (9th Cir. 2011) ................................................................ 28

*Smith v. I.N.S.,*
  684 F. Supp. 1113 (D. Mass. 1988) ........................................................ 22, 23

*Tejada v. Cabral,*
  424 F .Supp. 2d 296 (D. Mass. 2006) ........................................................ 11

*Town of Castle Rock, Colo. v. Gonzales,*
  545 U.S. 748 (2005) ........................................................................ 22, 23

*U.S. v. Montalvo-Murillo,*
  495 U.S. 711 (1990) ........................................................................ 16

*Udall v. Tallman,*
  380 U.S. 1 (1965) ........................................................................ 18

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,*
  645 F.3d 26 (1st Cir. 2011) ................................................................ 6

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) .................................................................. passim

## STATUTUES

5 U.S.C. § 701 ........................................................................... 26

5 U.S.C. § 701(a)(2) ................................................................... 27

8 U.S.C. § 212(a)(9)(B) .............................................................. 19

8 U.S.C. § 704 ........................................................................... 27

8 U.S.C. § 1182 .......................................................................... 4

8 U.S.C. § 1182(a)(6)(B) ............................................................. 4

8 U.S.C. § 1182(a)(9)(A) ............................................................. 4

8 U.S.C. § 1182(a)(9)(A)(iii) ....................................................... 5

8 U.S.C. § 1182(a)(9)(B) ............................................................. 4

8 U.S.C. § 1182(a)(9)(B)(v) ......................................................... 5

8 U.S.C. § 1226(e) ...................................................................... 8

8 U.S.C. § 1231(a) ................................................................. 17, 20

8 U.S.C. § 1231(a)(1)(A) ............................................................. 23

8 U.S.C. § 1231(a)(6) .......................................................... 12, 14, 16

8 U.S.C. § 1252 ........................................................................... 8

8 U.S.C. § 1252(a)(5) ................................................................. 10

8 U.S.C. § 1252(b)(9) ............................................................... 8, 9

8 U.S.C. § 1252(g) ............................................................... 8, 9, 27

8 U.S.C. § 1361 ........................................................................... 9

8 U.S.C. § 1651 ................................................................................................................ 9

## REGULATIONS

8 C.F.R. § 1245.15 ........................................................................................................... 6

8 C.F.R. § 212.7(e) ..................................................................................................... 19, 27

8 C.F.R. § 212.7(e)(2)(i) ....................................................................................... 5, passim

8 C.F.R. § 241.4 .................................................................................................. 14, 17, 18

8 C.F.R. § 241.4(a) ......................................................................................................... 16

8 C.F.R. § 241.4(h)(1) ..................................................................................................... 15

8 C.F.R. § 241.4(k)(1)(i) .................................................................................................. 15

8 C.F.R. § 241.6 .............................................................................................................. 24

8 C.F.R. § 1241.1(f) ...................................................................................................... 1, 2

## FEDERAL REGISTER

65 Fed. Reg. 40540 ........................................................................................................ 14

65 Fed. Reg. 80281-01 .................................................................................................... 15

65 Fed. Reg. 80294 ........................................................................................................ 14

66 Fed. Reg. 56967 ........................................................................................................ 14

81 Fed. Reg. 50249 .......................................................................................................... 5

81 Fed. Reg. 50250 .......................................................................................................... 5

## INTRODUCTION

This Court should deny preliminary relief. Petitioners' claims fail on the merits because they are nothing more than back door attempts to challenge final orders of removal, which is expressly prohibited by the Supreme Court and Congress. Despite the due process Petitioners received throughout their removal proceedings and the remedies available to them during their time in the United States, Petitioners ask this Court to create new rights and remedies not found in any legal precedent and overlook the fact that they all have valid and enforceable final orders of removal. Petitioners are not likely to succeed on the merits of their claims because, to do so, they would need a brand new body of immigration law. Accordingly, this Court should deny their preliminary injunction motion.

## FACTUAL BACKGROUND

### i.    Petitioner Lilian Pahola Calderon Jimenez

Lilian Pahola Calderon Jimenez ("Ms. Calderon") is a citizen of Guatemala who entered the United States without inspection in 1991. ECF No. 27 at ¶ 38. In 1999, an immigration judge denied Calderon's father's application for asylum, on which she was a derivative. *Id.* at ¶ 39. The Board of Immigration Appeals ("BIA") affirmed the immigration judge's order in 2002 and gave the family thirty days to voluntarily depart. *Id.* When Ms. Calderon and her family did not depart as ordered, their voluntarily departure automatically converted to a final order of removal, to which Ms. Calderon remains subject. *Id.* at ¶ 40; *see* 8 C.F.R. § 1241.1(f).

Ms. Calderon is the beneficiary of an approved Form I-130, Petition for Alien Relative, filed on her behalf by her U.S. citizen husband, Luis Alberto Gordillo. ECF No. 27 at ¶ 53. On January 17, 2018, after Ms. Calderon and her husband were interviewed in connection with the Form I-130, ICE took Ms. Calderon into custody to execute her 2002 removal order. *Id.* at ¶ 49.

1

Ms. Calderon then filed a Form I-246, Application for Stay of Deportation or Removal, with ICE on January 30, 2018. ECF. No. 22-1 at ¶ 8. On February 13, 2018, ICE granted Calderon's Form I-246, thereby staying her removal for three months and releasing her without conditions. *Id.*

ii.     Petitioner Lucimar de Souza

Lucimar de Souza ("Ms. de Souza") is a citizen of Brazil and was ordered removed in 2002 after she failed to attend her immigration court proceedings. ECF No. 27 at ¶ 63. She is the beneficiary of an approved Form I-130 petition based on her marriage to her U.S. citizen husband, Sergio Francisco. *Id*. at ¶ 65. ICE detained Ms. de Souza pursuant to her final order of removal on January 30, 2018, after her Form I-130 interview. *Id*. On May 8, 2018, Respondents released Ms. de Souza pursuant to an order of supervision. *See* ECF No. 68.

iii.     Petitioner Sandro de Souza

Sandro de Souza ("Mr. de Souza") is a citizen of Brazil who entered on a tourist visa in 1997. ECF No. 27 at ¶ 75. An immigration judge denied his asylum application in 2007 and granted him voluntary departure. *Id.* The BIA affirmed the immigration judge's decision in 2011. *Id.* When Mr. de Souza failed to comply with his voluntary departure order, it automatically converted into a final order of removal. *Id.*; *see* 8 C.F.R. § 1241.1(f).

Mr. de Souza is the beneficiary of an approved Form I-130 petition filed on his behalf by his U.S. citizen spouse, Carmen Sanchez. *Id.* at ¶ 79. Mr. de Souza has applied for and received several administrative stays of removal from ICE. ICE has never detained Mr. de Souza. *Id.* at ¶¶ 77, 82. On February 8, 2017, ICE denied Mr. de Souza's most recent request for an administrative stay of removal, but did not detain him. *Id.* at ¶ 80. In January 2018, ICE instructed Mr. de Souza

to depart the United States by March 9, 2018. *Id.* at ¶ 81. Upon hearing that Mr. de Souza's Form

I-130 petition was progressing, ICE ultimately allowed Mr. de Souza to depart by April 24, 2018.[1]

iv.     Petitioner Oscar Rivas

Oscar Rivas ("Mr. Rivas") is a citizen of El Salvador who was ordered removed after his

asylum application was denied in 2009. *Id.* at ¶¶ 86-87. The BIA affirmed the immigration judge's

order in 2011. *Id.* ICE has not detained Mr. Rivas since his removal order became final. *Id.* at ¶

88. ICE granted Mr. Rivas' repeated requests for administrative stays of removal until March 24,

2017, when ICE denied his request for an administrative stay, but did not detain him. *Id.* at ¶¶ 87-

88. On April 2, 2018, ICE placed Mr. Rivas on electronic monitoring and instructed Mr. Rivas to

depart the country by May 2, 2018. *Id.* at ¶ 91.

Mr. Rivas is the beneficiary of a Form I-130 petition filed on his behalf by his U.S. citizen

wife, Celina Rivera Rivas, on April 12, 2017. *Id.* at ¶ 89. Mr. Rivas also filed a Form I-212 on July

7, 2017. *Id.* at ¶ 90.

v.      Petitioner Deng Gao

Deng Gao ("Mr. Gao") is a citizen of China who originally entered the United States on a

K-3 visa. *Id.* at ¶ 95. An immigration judge ordered Mr. Gao removed in 2008 after he failed to

show up to his immigration court hearing. *Id.* at ¶ 96. The immigration court denied Mr. Gao's

motion to reopen his immigration case in August 2017 and his appeal is pending with the BIA. *Id.*

at 98. Mr. Gao is the beneficiary of a Form I-130 petition filed on his behalf by his U.S. citizen

wife, Amy Chen, on June 28, 2016. *Id.* at ¶ 99. ICE has never detained Mr. Gao and he is not under

---

[1] On April 13, 2018, this Court ordered Respondents not to remove any of the named alien petitioners from Massachusetts while this case is pending. ECF No. 32. In accordance with this order, ICE Enforcement and Removal Operations has directed its officers not to remove the named alien Petitioners from Massachusetts or, otherwise, from the United States. ECF No. 38.

any ICE supervision. *Id.* at ¶ 99. Mr. Gao has not yet attended his Form I-130 interview with United States Citizenship and Immigration Services ("USCIS").

**STATUTORY AND REGULATORY BACKGROUND**

The Immigration and Nationality Act ("INA" or the "Act") sets strict limits on when and how a person may immigrate to the United States. Generally, an alien who is married to a U.S. citizen may only immigrate to the United States and obtain permanent resident status if the government determines they are *admissible* under the Act. *See* 8 U.S.C. § 1182. If an alien is *inadmissible* under the Act, the government may not issue the alien an immigrant visa or adjust the alien's status until the alien obtains a *waiver* of each ground of inadmissibility. *See id.* Not all grounds of inadmissibility are waivable and waivers under the Act are committed to agency discretion by law. Assuming the facts as alleged in Petitioners' Complaint are true, the named petitioners are all inadmissible under two distinct grounds, which will be triggered upon their departure from the United States: (1) 8 U.S.C. § 1182(a)(9)(A), being subject to final orders of removal; *and* (2) 8 U.S.C. § 1182(a)(9)(B), being unlawfully present in the United States for at least a year. Additionally, two of the named petitioners, Lucimar de Souza and Deng Gao, are subject to a third ground of inadmissibility, triggered by their failure to attend their removal proceedings. *See* 8 U.S.C. § 1182(a)(6)(B).

In order to lawfully immigrate to the United States, the named petitioners must complete the following steps: (1) be the beneficiary of an approved I-130, Petition for Alien Relative; (2) obtain consent to reapply for admission to the United States via a Form I-212 from USCIS; (3) receive a waiver of their unlawful presence by proving their absence would cause extreme hardship to a U.S. citizen spouse or child; (4) attend an interview with a consular officer who, in his or her discretion, will determine whether the alien is eligible for an immigrant visa; and (5) if an

4

immigrant visa is approved an issued, enter the United States at a port of entry. *See* 8 U.S.C. §§ 1182(a)(9)(A)(iii), 1182(a)(9)(B)(v), 1201. This process is far from guaranteed; at each step in the process, the alien must show that their case warrants a favorable exercise of discretion. *See id.* For petitioners Ms. de Souza and Mr. Gao, this process is not sufficient; they must additionally remain outside the country for five years before immigrating because there is no waiver for their third ground of inadmissibility. *See* 8 U.S.C. § 1182(a)(6)(B).

In 2016, the unlawful presence waiver was expanded to allow those with final orders of removal to apply for it from within the United States. *See* 81 Fed. Reg. 50243. This rule was promulgated in part to shorten the amount of time eventual immigrants must spend away from their U.S. citizen family members. *See id.* However, the rule did not create a right for an unlawfully present alien to remain in the United States. *See* 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a *period of stay* authorized by the Secretary."); 81 Fed. Reg. 50243, 50250 (explaining that the U.S. Department of Homeland Security does not consider it appropriate to confer any interim benefits to a person applying for the waiver because "the purpose is not to prolong an applicant's unlawful presence in the United States"). In fact, the U.S. Department of Homeland Security ("DHS") specifically rejected a commentator's suggestion that DHS grant applicants deferred action when applying for the unlawful presence waiver. *See id.* at 50249. None of the state-side immigration waivers at issue in this case preclude DHS from executing Petitioners' final orders of removal.[2] For that reason, and the reasons discussed herein, this Court should deny Petitioners' motion for preliminary injunction.

---

[2] Petitioners argue that USCIS Adjudicator's Field Manual "recognize[s] the fact that arresting applicants during these interviews would undermine its ability to adjudicate and administer immigration benefits." ECF No 50 at 6. However, the Field Manual specifically excepts from

## LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy.'" *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,* 645 F.3d 26, 32 (1st Cir. 2011) (quoting *Munaf v. Geren,* 553 U.S. 674, 689-90 (2008)). In deciding a preliminary injunction motion, the Court "must consider: (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." *Gonzales-Droz v. Gonzalez-Colon,* 573 F.3d 75, 79 (1st Cir. 2009) (internal citation and quotation marks omitted). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." *Esso Std. Oil Co. (Puerto Rico) v. Monroig-Zayas,* 445 F.3d 13, 18 (1st Cir. 2006). Where, as here, a movant asks for a mandatory preliminary injunction, a heightened standard applies. "Because a mandatory preliminary injunction alters rather than preserves the status quo, it normally should be granted only . . . when the exigencies of the situation demand such relief." *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.,* 622 F.3d 36, 41 (1st Cir. 2010) (internal citation and quotation marks omitted).

## ARGUMENT

**I.      Petitioners are not likely to succeed on the merits of their claims.**

---

this general rule aliens with final orders of removal unless they are "seeking benefits under a provision of a law (e.g., NACARA or HRIFA)." Both of the examples used to illustrate this exception are statutes where an alien with a final order of removal does not need to travel outside the country to consular process; indeed, both NACARA and HRIFA allow eligible aliens to adjust status from within the United States, a benefit not available to the instant Petitioners. *See* Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, 111 Stat. 2160, 2196 (1997); 8 C.F.R. 1245.15. Additionally, USCIS makes an exception for "any other similar action or situation, which in the view of district management, warrants placing the alien under arrest." *Id.* at 15.1(c)(2).

The Court should deny Petitioners' preliminary-injunction motion because Petitioners are not likely to succeed on the merits. This Court lacks subject-matter jurisdiction over their claims and, even if the Court had jurisdiction, Petitioners still fail to plead plausible claims for relief. Because Petitioners are not likely to succeed on the merits of their claim, the remaining factors are "matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir. 2002).

### a.   Petitioners' habeas claims are either moot or outside the Court's jurisdiction.

A federal court's jurisdiction is limited to cases and controversies. U.S. Const. art. III, § 2, cl. 1. At all stages in the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). "Even if an actual case or controversy exists at the inception of litigation, a case may be rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate any possibility of effectual relief." *Main School Administration District No. 35 v. Mr. R.,* 321 F.3d 9, 17 (1st Cir. 2003). In the immigration context, a habeas petition is moot once the petitioner is released because it eliminates the possibility of the district court granting any relief. *Omondiagbe v. McDonald,* No. 13-11182-MBB, 2014 WL 1413560 at *2 (D. Mass. April 10, 2014); *see also Hernandez v. Gonzales,* 424 F.3d 42 (1st Cir. 2005) (finding the district court lacks subject matter jurisdiction to consider immigration matters other than "challenges to detention that are independent of challenges to removal orders"); *c.f. Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002) (remanding to the district court to assess

"collateral consequences of the underlying proceeding" prior to the REAL ID Act which clearly stripped district courts of jurisdiction).[3]

The Petitioners' habeas claims are moot because Petitioners are not in ICE custody.[4] *See Leitao v. Reno,* 311 F.3d 453, 455 (1st Cir. 2002). Additionally, Petitioners' request that this Court declare any *future* detention unlawful is, in fact, an inappropriate challenge to their removal orders, which this Court is without jurisdiction to hear. *See Hernandez,* 424 F.3d at 42. While Petitioners argue their claim is not moot under *Clark v. Martinez,* 543 U.S. 371, 377 n.3 (2005) the alien in that case had demonstrated facts that DHS would be unable to be removed in the reasonably foreseeable future leading the Court to find even though he was released, he had a remaining "stake in the outcome." However, the only remaining relief the non-detained Petitioners seek here is a stay of their removal, which may not be granted in a habeas action and they have not, like the alien in *Martinez,* alleged any facts that the government cannot effect removal.[5] *See Martinez,* 543 U.S.

---

[3] The First Circuit's decision in *Leitao,* decided prior to the REAL ID Act, was predicated on the understanding under then-existing law that the district court had jurisdiction generally to review removal orders where such review was otherwise unavailable at the circuit court under former section 8 U.S.C. § 1252(a)(2)(C)(jurisdictional bar to judicial review of removal orders entered against certain broad classes of criminal aliens), and so also decide whether the alien was eligible for a discretionary waiver of inadmissibility. *Leitao,* 311 F.3d at 455. Since then, Congress has clarified that district courts are without jurisdiction to consider such a claim and other habeas petitions that challenge an underlying removal order. 8 U.S.C. § 1252(b)(9); *Hernandez,* 424 F.3d at 42. Therefore, the collateral consequences analysis in *Leitao* has no bearing on whether this petition is now moot. *See id.*

[4] This Court should, at a minimum, dismiss alien Petitioner Deng Gao and his wife from this action because Mr. Gao has never been detained, or threatened to be detained, by ICE and therefore has suffered no injury. *See* ECF No. 27 at ¶ 100; *Katz v. Pershing LLC,* 672 F.3d 64, 71 (1st Cir. 2012) ("[A] plaintiff must have personally suffered some harm.").

[5] Respondent's position is that 8 U.S.C. § 1252 *et. seq.* precludes a habeas court in the immigration context from issuing any relief other than release from custody. *See* 8 U.S.C. § 1252(g), (b)(9), (a)(2)(D). Accordingly, the "capable of repetition, yet evading review" exception to mootness is not applicable here because section 1252 strips this Court of jurisdiction to hear the Petitioners' remaining claims, including their request for a stay of removal. *See id*; *see e.g., Pelletier v. United States,* 653 F. App'x 618, 622 (10th Cir. 2016) ("To the extent that [petitioner] seeks modification or release from the conditions of his bond, 8 U.S.C. § 1226(e)

at 377 n.3 Finally, the Supreme Court decided *Martinez* prior to Congress' amendments to the jurisdictional stripping sections in section 1252, which made it clear that habeas courts could not intervene in DHS's decision to execute a removal order. *See id* (decided January 12, 2005). Accordingly, this Court is without jurisdiction to grant any other relief and Petitioners must pursue their claims in the proper Court of Appeals. *See Pelletier,* 653 F. App'x at 622.

### b.   Section 1252 of Title 8 requires that the Court dismiss the Complaint.

Petitioners' claims are precluded by 8 U.S.C. § 1252(g). Congress enacted the REAL ID Act in 2005. *See* Pub. L. No. 119-13, Div. B, 119 Stat. 302 (May 11, 2005). The REAL ID Act added jurisdiction-stripping provisions to the INA that speak directly to the availability of habeas corpus relief for aliens. *See Ishak v. Gonzales*, 422 F.3d 22, 29 (1st Cir. 2005). Importantly, the REAL ID Act amended 8 U.S.C. § 1252(g) to make clear that it "definitively eliminated any provision for [habeas] jurisdiction." *Id.* As amended by the REAL ID Act, 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, (statutory or nonstatutory), *including section 2241 of Title 28, or any other habeas corpus provision* . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Government] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Thus, Congress unequivocally protected the government's authority to make "discretionary determinations" over whether and when to execute a removal order. *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 485 (1999).

---

expressly bars [jurisdiction] . . . To the extent [petitioner] seeks release from his removal proceedings, 8 U.S.C. § 1252(g) strips courts of jurisdiction . . . Because the district court could not provide relief to [petitioner], Defendants were entitled to judgment as a matter of law . . .").

Additionally, the REAL ID Act establishes a specific statutory mechanism that expressly channels all claims relating to removal proceedings into a petition for review before the appropriate circuit court of appeals, after the alien has completed the administrative removal process and is subject to a final order of removal. Specifically, 8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter *shall be available only in judicial review of a final order under this section*. Except as otherwise provided in this section, *no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision*, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

Section 1252(a)(2)(D) of the INA further clarifies that nothing in the Act "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section," making clear that an alien may raise legal claims in the court of appeals as part of the petition for review process. *See generally Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9-12 (1st Cir. 2007) (explaining that "Congress's purpose in enacting section 1252(b)(9) … is to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals"); *accord* H.R. Rep. No. 109-72, at 174 ("[B]y channeling review to the courts of appeals, section 106 will eliminate the problems of bifurcated and piecemeal litigation."); *see also* 8 U.S.C. § 1252(a)(5) ("Notwithstanding any other provision of law (statutory or nonstatutory) . . . or any other habeas corpus provision . . . a petition for review

10

filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . .").

Section 1252(b)(9)'s "expanse is breathtaking" and is "not limited to challenges to singular orders of removal or to removal proceedings simpliciter." *Aguilar*, 510 F.3d at 9. Consequently, allowing Petitioners' habeas petition to move forward in this Court—when Congress has provided ample administrative remedies, as well as a petition for review process—would "belie[] the statute's plain meaning and run[] contrary to Congress's discernible intent." *Id.* Petitioners' attempt to re-characterize their claims in order to avoid the jurisdictional limits set by Congress is not persuasive. This Court must "consider the fundamental nature of the claims asserted." *Aguilar,* 510 F.3d at 17. Here, Petitioners argue that their final orders of removal *are not valid and enforceable* until they have had the full opportunity to apply for an unlawful presence waiver.[6] This is precisely the type of "creative labeling" that would result in a "collective end run[] around congressional directives." *See Aguilar,* 510 F.3d at 17.

Petitioners ask this Court to intervene in ICE's decision to *execute* their removal orders, entered years ago, which is explicitly prohibited by the statute and binding Supreme Court precedent. *See* ECF No. 27 at ¶¶ 39, 63, 75, 85, 96. Section 1252(g) plainly prohibits judicial review of the "decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *AADC*, 525 U.S. 482 (emphasis in original); *Foster v. Townsley,* 243 F.3d 210, 214 (5th Cir. 2001) (holding the district court had no jurisdiction even though DHS executed a removal order contrary to an automatic stay); *Tejada v. Cabral*, 424 F .Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—*be they stays or*

---

[6] Petitioners cite to no authority that would preclude them from bringing their constitutional claims in the proper court of appeals. *See* ECF No. 50 at 20.

*permanent injunctions*—were to be issued by the appropriate court of appeals.") (emphasis added); *Cf. Aziz v. Chadbourne,* 2007 WL 3024010, *2 (D. Mass. Oct. 15, 2007) (acknowledging that 8 U.S.C. § 1252(g) bars granting of any stay of removal for alien admitted under Visa Waiver Program who had pending adjustment application). Petitioners cannot evade the jurisdiction-stripping provisions of section 1252(g) with creative pleading. At the heart of Petitioners' requested relief is a stay of removal; this relief would directly intervene with ICE's ability to execute their removal orders and must be denied.

Moreover, Petitioners' argument that section 1252 is unconstitutional as applied to them is meritless and should be denied.  As an initial matter, Petitioners never asserted in their first amended complaint (ECF No. 27) that section 1252 violates the Suspension Clause; therefore, this Court should decline to consider this argument because it was not properly pled. Nonetheless, Petitioners cannot use the Suspension Clause to pick and choose where they bring their claims. In *Devitri v. Cronen,* 290 F. Supp. 3d 86, 91 (D. Mass. 2017), the plaintiffs' claims were premised on their *statutory right* to file a motion to reopen and the United States' "obligation not to remove aliens to countries where they will be tortured." Here, on the other hand, the Petitioners do not claim they are being effectively deprived of a statutory right, nor do they claim they risk persecution if removed. *See* ECF No. 50 at 25-26. Even if *Devitri* were factually similar to the case at hand, the Suspension Clause is not violated because, in the First Circuit, a motion to reopen is a sufficient substitute for a habeas remedy. If removed, Petitioners could pursue their motion to reopen from outside the United States, asserting all their claims presented here. *See Santana v. Holder*, 731 F.3d 50, 51 (1st Cir. 2013) ("The post-departure bar cannot prevent a noncitizen from invoking his statutory right to file a motion to reopen."). Mere inconvenience is insufficient to

constitute a violation of the Suspension Clause. Accordingly, this argument should also be rejected.

### c. Petitioners cannot establish that their detention and removal would be a violation of the Constitution or the laws or treaties of the United States.

#### i. Section 1231(a)(6) authorizes Petitioners' detention.

The detention of any of the alien Petitioners would be lawful under under 8 U.S.C. § 1231(a)(6) and as a matter of constitutional interpretation under *Zadvydas v. Davis,* 533 U.S. 678, 701 (2001). Section 1231(a)(6) authorizes detention of aliens with orders of removal beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6). Detention pursuant to this section is presumptively reasonable for six-months, thereby making habeas petitions filed prior to the six-month mark not ripe for adjudication. *See Zadvydas,* 533 U.S. at 701; *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (holding that the "six-month period . . . must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*" ); *accord Hodel v. Aguirre*, 260 F. Supp. 2d 695, 699 (N.D. Ill. 2003) (*Zadvydas* not implicated where criminal alien held fewer than six months); *Lamotte v. Holder*, No. CIV.A. 13-10582-RGS, 2013 WL 1629135, at *1-2 (D. Mass. Apr. 9, 2013). After the expiration of the six-month period, if an alien provides good reason to believe that there is *no* significant likelihood of removal in the reasonably foreseeable future ("SLRRFF"), the government must respond with evidence sufficient to rebut that showing. *Zadvydas,* 533 U.S. at 701. The Supreme Court's analysis in *Zadvydas* is the sole inquiry in habeas petitions such as the one here. *See Poeuv v. Smith,* 169 F. Supp. 3d 297 (D. Mass. 2016); *Penate-Diaz v. Moniz*, No. 18-10156-NMG, 2018 WL 889217 at *2 (D. Mass February 12, 2018). Petitioners have failed to present any evidence that there is no SLRRFF and any future detention would be lawful until they satisfied this burden in another habeas court.

13

### ii. Petitioners are not entitled to an individualized determination of dangerousness and flight risk prior to any detention.

Whether the Petitioners' detention violates the standard articulated in *Zadyvdas* is the sole inquiry at hand. Petitioners cherry-pick language from *Zadvydas* while conveniently ignoring the constitutional avoidance canon that the Supreme Court used to interpret section 1231(a)(6). Perhaps Petitioners ignore the canon of constitutional avoidance because, in light of the Supreme Court's decision in *Jennings v. Rodriguez,* 138 S. Ct. 830 (2018), their argument fails. In *Zadvydas,* the Court applied the constitutional avoidance canon and concluded that, if section 1231(a)(6) were interpreted to permit indefinite detention, it would be unconstitutional. *Zadvydas,* 533 U.S. at 697-99. To avoid holding section 1231(a)(6) unconstitutional, the Court read the statute to have a six-month period of presumptively reasonable detention, after which an alien should be released on conditions if the alien can show that there is no SLRRFF. *Zadvydas,* 533 U.S. at 701. However, the Supreme Court made clear in *Jennings* that "*Zadvydas* represents a notably generous application of the constitutional-avoidance canon" and courts may not "transmute existing statutory language into its polar opposite." *Jennings*, 138 S. Ct. at 846. Despite this, Petitioners argue that this Court should *go further* than the Court in *Zadyvdas* and import a bond hearing requirement into 1231(a)(6) to avoid a constitutional violation. *See* ECF No. 50 at 22. Yet, that is not how the canon of constitutional avoidance works. A court "must interpret the statute, not rewrite it." *Id.* at 836. Section 1231(a)(6), like the detention statutes at issue in *Jennings*, does not "say[] anything whatsoever about bond hearings." *Id.* at 842. Therefore, this Court should not go further than the Court did in *Zadyvydas* and rewrite section 1231(a)(6) to require bond hearings or a determination of dangerousness and flight risk where the statute says *nothing* of that sort. *See id.*

Simply put, "[t]he constitutional-avoidance canon does not countenance such textual alchemy." *Id.* at 846.[7]

> ### *iii.* Petitioners are not entitled to the procedures in 8 CFR § 241.4 prior to ICE's decision to detain them.

In December 2000, with the implementation of 8 C.F.R. § 241.4 – entitled "Continued detention of inadmissible, criminal, and other aliens beyond the removal period" – legacy Immigration and Naturalization Services amended its regulations by "providing a uniform review process governing the *detention* of criminal, inadmissible, and other aliens, excluding Mariel Cubans, who have received a final administrative order of removal, deportation, or exclusion but whose departure has not been effected within the 90-day removal period." 65 Fed. Reg. 80294 (emphasis added).[8]

In 2001, after the Supreme Court decided *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), legacy INS promulgated regulations to implement the newly established constitutional constraints

---

[7] At any rate, any notion of the legal necessity for an assessment of "dangerousness and flight risk" with respect to aliens subject to final orders of removal whom DHS intends and is able to remove from the United States in compliance with 8 U.S.C. § 1227(a) is unfounded in law.  The *Zadvydas* Court clearly stated with respect to the post-removal period detention authorized under 8 U.S.C. § 1231(a)(6) that, "[a]fter all, the provision is part of a statute that has as its basic purpose effectuating an alien's removal." *Zadvydas,* 533 U.S. at 697.  Whether an alien subject to a final removal order also happens to be dangerous, or not dangerous, or a flight risk, or not a flight risk, does not control the possibility of the alien's removal.  Otherwise -- and as Petitioners might have it -- any non-dangerous and geographically stable final-order alien could perpetually exempt himself from execution of his removal order.  There is no basis in law for such an implausible re-writing of the immigration removal statute.

[8] In 1999, pending promulgation of more specific procedures by regulation, and to institute a more uniform process nationwide, the legacy INS issued a series of memoranda to provide specific guidance to field offices concerning implementation of interim procedures governing post-order custody cases. On June 30, 2000, the Department of Justice published in the Federal Register, at 65 Fed. Reg. 40540, a proposed rule with request for comments to implement a permanent, periodic custody review process for aliens whose removal has not been effected at the expiration of the 90-day removal period pursuant to 8 U.S.C. § 1231(a)(6).  The initial comment period was for 30 days and expired on July 31, 2000, but was extended for 10 days until August 11, 2000.

affecting immigration custody. *See* 8 C.F.R. § 241.4; 66 Fed.Reg. 56967, 56969 (Nov. 21, 2001) ("This rule amends the *custody* review process governing the *detention* of aliens who are the subject of a final order of removal, deportation or exclusion, in light of the decision of the U.S. Supreme Court in *Zadvydas*") (emphasis added).  These amendments required the district director to conduct a post-order custody review ("POCR") before the 90-day removal period expires if the alien's removal cannot be accomplished during the removal period. *See* 8 C.F.R. § 241.4(k)(1)(i). In conducting the POCR, officials must review the alien's records and any and all documents submitted by the alien and must inform the alien of the decision. *See* 8 C.F.R. § 241.4(h)(1); *Bonitto v. Bureau of Immigration & Customs Enf't*, 547 F. Supp. 2d 747, 752 (S.D. Tex. 2008). Therefore, it is clear that Section 241.4, which follows section 241.3, entitled "Detention of aliens during removal period," was meant to specifically apply to detained aliens. The title – and the history of Section 241.4 – clearly informs the reader that these procedures should apply to aliens with two qualities: (1) currently detained and (2) after the removal period has ended.  To interpret these procedures to apply to aliens prior to any detention requires ignoring the history and the explicit language of the regulation.[9]

    Additionally, this conclusion is supported by the regulation's commentary, which states: "Who is Covered Under This Final Rule? … [The regulation] establishes a permanent review procedure applying to aliens who *are detained* following expiration of the 90-day removal period." 65 Fed. Reg. 80281-01 at 80291 (emphasis added).  The use of the present tense "are" instead of using words such as "will be" or "going to be" demonstrates the regulation applies to aliens who

---

[9] Applying the POCR regulations to Petitioners prior to any detention would mean that every alien with a final order of removal, even criminal aliens, would have to be given an effective "notice to run." Doing so would essentially reward those aliens who refused to comply with their removal orders with more due process than those who followed an immigration judge's orders to depart from the United States.

are currently detained. The statement in the Federal Register that "[t]his permanent review procedure governs all post-order custody reviews inclusive of aliens who are subjects of a final order of removal, deportation, or exclusion" likewise does not alter DHS's interpretation. *Id.* This sentence merely clarifies that *all aliens* who are *continued in detention* in accordance with "this permanent review procedure" shall be entitled to the POCR regulations — regardless of whether they are subject to legacy orders of deportation or exclusion, or the modern form, orders of removal. *See id.* The Federal Register comments therefore make clear that the regulations only apply to those who are detained, since the POCR regulations provide an opportunity for an alien's release. Nothing in the language of the regulation or the Federal Registrar compels Petitioners' interpretation that the procedures apply to Petitioners prior to *any* detention.

### iv. Petitioners are not entitled to a Post Order Custody Review under section 241.4 until they have been detained for a continuous period of 90 days.

Section 241.4 does not contemplate the situation at hand where an alien is apprehended after his or her removal period has ended. However, the Supreme Court has stated "we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Zadvydas,* 533 U.S. at 701. With that in mind, DHS believes it is important to apply the regulation consistently across all classes of aliens, with the "POCR clock" beginning on the day that two conditions are met: (1) the alien has been detained for a continuous period of 90 days and (2) the alien is currently subject to discretionary post-order detention under 8 U.S.C. § 1231(a)(6).[10] *See* 8 C.F.R. § 241.4(a). This

---

[10] Any violation of section 241.4's requirements, if one occurred, would not provide a basis for this Court to stay removal or order release. *See* U.S. v. Montalvo-Murillo, 495 U.S. 711, 717 (1990) (finding that the failure to provide a timely detention hearing did not bar detention after a tardy hearing and reversing Tenth Circuit's order of release). Otherwise, "every time some deviation from the strictures" of the statute were to occur, the Court explained, it would "bestow upon the defendant a windfall" and "visit upon the Government and the citizens a severe penalty

administration and interpretation is consistent with both the text and purposes of section 1231(a)(6) and its corresponding regulation in section 241.4, and should be given deference.

DHS's interpretation is compatible with the regulation's plain text, which does not provide for *any* review being conducted prior to the 90-day mark. *See* 8 C.F.R § 241.4. Additionally, as explained above, this rule was promulgated to align with the Supreme Court's decision in *Zadvydas,* where the Court interpreted section 1231(a)(6) "to contain an implicit 'reasonable time' limitation." 533 U.S. at 681. The Court considered making that period 90 days, which Congress also considered a reasonable time for ICE to accomplish removal, before settling on six months. *Id.* at 701. DHS's interpretation of the regulation, which starts the POCR clock on day one of detention, is consistent with Congress' intent that DHS should have at least 90 days to accomplish removal. *See* 8 U.S.C. § 1231(a). It is also consistent with the Supreme Court's limits on prolonged detention because it provides review *three months before* the presumptively reasonable period ends. *See Zadvydas* at 701.

There are also practical reasons why the POCR clock should start on day one of detention, notice be given on day 60, and review occur on day 90. Interpreting the regulation in this manner results in equal access to a POCR for all post-order detained aliens and a consistent application by ICE. On the other hand, providing a POCR at a random, unspecified interval, as Petitioners suggest, would lead to unequal application of the POCR regulations to detained aliens. When the

---

by mandating release of possibly dangerous defendants." Montalvo-Murillo, 495 U.S. at 720. Rather, the remedy for an alleged violation of a regulatory procedure is to order *the agency* to provide the required procedure. Cf. Conservation Law Found. of New England, Inc. v. Clark, 590 F. Supp. 1467, 1475 (D. Mass. 1984) ("If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction *by undertaking its own inquiry into the merits.*") (quoting Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980) (emphasis added).

purpose of post-order detention is to allow DHS a reasonable time to remove an alien, it is counterintuitive to provide a POCR when DHS has had merely hours to effectuate removal. In short, the text, history, and purpose of section 241.4 all support DHS's construction of section 241.4 as not requiring a POCR until an alien has been continuously detained for 90 days under section 1231(a)(6).

To the extent the Court determines that the regulation is somehow ambiguous, the Court should defer to DHS's interpretation of section 241.4, which is reinforced by the commentary in the Federal Register. An agency's interpretation of its own regulations "is to be given considerable weight." *McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 168 (1st Cir. 1987). A reasonable interpretation, even if it is not the only one permitted by the regulatory language, must be adopted. *Auer v. Robbins,* 519 U.S. 452, 457 (1997); *Udall v. Tallman,* 380 U.S. 1, 4 (1965). The agency's interpretation is worthy of deference even if the interpretation is "in the form of a legal brief." *Auer*, 519 U.S. at 462. When interpreting a regulation, all words and phrases should be given effect. *Dantran, Inc. v. U.S. Dept. of Labor,* 171 F.3d 58, 63 (1999).

Here, DHS's interpretation of this regulation is reasonable and the Court "must therefore respect it." *See Udall*, 380 U.S. at 4. Even if Petitioners' interpretation of the regulation was reasonable – which Respondents assert it is not – this Court could only disregard DHS's interpretation if it was "plainly erroneous or inconsistent" with the regulation. *See Auer,* 519 U.S. at 457. As shown above, DHS's interpretation is not "plainly erroneous or inconsistent" with the regulation, nor is it a post-hoc litigating position; rather, it is harmonious with the regulation's text and constitutes the well-reasoned interpretation of the agency, as evidenced by Exhibit A. In this memo, DHS instructs field office directors that they are required to conduct POCRs for "all aliens with administratively final orders of removal detained *90 days beyond the removal period.*"

Guidance Relating to 8 CFR § 241.4, Continued Detention of Aliens Beyond the Removal Period and New Procedures Relating to Case Transfers to the Custody Determination Unit (CDU), attached hereto as Exhibit A, at 1. Accordingly, because DHS's interpretation is reasonable and is not a post-hoc litigating position, this Court must uphold the agency's interpretation.[11] *See id.*

###### d. *Petitioners cannot establish that their detention and removal would be unlawful under the INA and applicable regulations.*

Petitioners cannot establish that their removal would be unlawful because the filing or approval of a provisional unlawful presence waiver has *no effect* on the immigration status of the applicant or ICE's authority to remove the applicant from the United States. 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a *period of stay* authorized by the Secretary.") (emphasis added). To deter aliens from accruing unlawful presence in the United States, Congress adopted the three year and ten year bars of inadmissibility. 8 U.S.C. § 212(a)(9)(B). A person who accrues unlawful presence of more than one year and then leaves the United States is inadmissible from immigrating to the United States for a period of ten years. *See id.* USCIS, in its *sole discretion*, may waive this ten year bar through the "unlawful presence waiver" if the applicant can prove that the bar would result in "extreme hardship" to the applicant's citizen or permanent resident spouse or parent. 8 U.S.C. § 1182(a)(9)(B)(v). U.S. citizen children are not relatives that could qualify an applicant for a waiver. *Id.* In 2013, a rule was promulgated to allow aliens within the United States to provisionally apply for the section 1182(a)(9)(B)(v) unlawful presence waiver. 8 C.F.R. § 212.7(e)(2)(i). The provisional unlawful presence waiver process is described in 8 C.F.R.

---

[11] To the extent that this Court determines that *Auer* deference is not appropriate, the agency's interpretation still must be given some deference due to the validity of the agency's reasoning. *See Skidmore v. Swift & Co.,* 323 US 134, 140 (1944).

§ 212.7(e). "The decision whether to approve a provisional unlawful presence waiver application is discretionary." 8 C.F.R. § 212.7(e)(2)(i).

However, the filing or approval of a provisional unlawful presence waiver has *no effect* on the immigration status of the applicant or ICE's authority to remove the applicant from the United States. 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a *period of stay* authorized by the Secretary.") (emphasis added). Consequently, Petitioners cannot use the mere availability of this waiver as a means to stay their removal, especially when regulations place no limit on ICE's ability to execute removal orders. *See id.* Even the authority Petitioners cite in support of their position cuts against them. While it is true that if a *statute* makes an alien eligible for a certain form of relief, the agency must at least consider the application. *Saint Fort v. Ashcroft,* 329 F.3d 191, 203 (1st Cir. 2003). But there is *no statute* here that makes any of the petitioners eligible for a form of relief that precludes ICE from removing them and Petitioners here make no claim that USCIS has failed to consider their unlawful presence waiver applications. Even more, the applicable regulation permits Petitioners to seek a waiver of removal from anywhere the Petitioners may be residing. Congress has expressed no intent that aliens with final orders of removal should be allowed to remain in the United States; in fact, the statutory scheme in place supports the opposite view.*See* 8 U.S.C. § 1231(a). Indeed, even if petitioners were eligible for adjustment of status — a process in which a consular interview is not required — ICE's authority to remove Petitioners would remain the same. *See Chun Xin Chi v. Holder,* 600 F.3d 6, 11 (refusing plaintiff's due process claim that was based on the BIA's denial of his motion to reopen even when he was facially eligible to adjust status). Accordingly, Petitioners are not likely to prevail on the claim that their removal and detention are contrary to the INA and applicable regulations.

### e.   Petitioners do not have a due process right to remain in the United States while their unlawful presence waiver is adjudicated.

Petitioners have no right to remain in the United States while their unlawful presence waiver is adjudicated. Their attempt to cloak this due process claim as the government "denying them a right to seek relief" is patently false because the relief is available to them even if removed from the United States. *See* ECF No 50 at 15; 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(2)(i). The provisional unlawful presence waiver is not a separate and distinct form of relief; all the 2016 final rule at issue only expanded the pool of those eligible to apply for relief that was already statutorily available. The right Petitioners really claim is the purported right to remain in the United States while they seek two purely discretionary forms of relief[12], despite their final, lawful orders of removal. They seek a declaration of this right, even though those aliens who *comply* with their orders of removal and this country's immigration laws would not have such a right.  Iterations of this argument have been continuously struck down by courts in this district and across the country. Furthermore, the regulations at issue expressly deny such a right exists. According, Petitioners are not likely to prevail on their due process claims.

As discussed above, Petitioners are subject to lawful, final orders of removal. ECF No. 27 at ¶¶ 40, 63, 75, 87, 96. Because Petitioners have already been ordered removed in their underlying immigration proceedings, they no longer have a due process right to remain in the United States. *See Enwonwu v. Gonzales,* 438 F.3d 22, 30 (1st Cir. 2006) (refusing to find a due process right to remain in the United States where the alien had been ordered removed); *Pena-Muriel v. Gonzales*, 489 F.3d 438, 433 (1st Cir. 2007) ("[T]he fact that a vacatur may be an 'appropriate' basis for reopening a deportation order does not establish a due process right to such reopening after one

---

[12] Petitioners would first have to apply for consent to reapply to the United States via a Form I-212 before submitting their unlawful presence waiver via a Form I-601A.

has departed the country."); *Smith v. I.N.S.,* 684 F. Supp. 1113, 1118 n.2 (D. Mass. 1988) ("Obviously, an alien cannot claim a constitutional right to remain in this country because of the existence of a marital relationship with a citizen.").

Similarly, their U.S. citizen spouses do not have a due process right to live with their alien spouses in the United States. *Kerry v. Din,* 135 S. Ct. 2128 (2015); *Silverman v. Rogers,* 437 F.2d 102, 107 (1st Cir. 1970) (holding that even assuming there is a right to marriage, preventing the alien spouse from remaining in the United States "does not attack the validity of the marriage").

Finally, the mere availability of the unlawful presence waiver does not create a due process right to remain in the United States. To have a due process interest in a benefit, "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 756 (2005). The claimant must "have a legitimate claim of entitlement to it." *Id.* These entitlements are not created by the Constitution, but by an independent source of law such as a statute. *Id.* Generally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Clukey v. Town of Camden,* 717 F.3d 52, 56 (1st Cir. 2013); *see also Chun Xin Chi v. Holder,* 606 F.3d 6, 10 (1st Cir. 2010) ("Because an alien has *no* right or entitlement to a reopening, he or she has *no* protected liberty or property interest in that remedy."); *Juniper v. Ashcroft,* 396 F.3d 487, 492 (1st Cir. 2005) ("Adjustment of status is not an entitlement, but rather, a matter of administrative discretion.").

Petitioners have no entitlement to remain in the United States while their unlawful presence waiver is adjudicated. Nor is there a legitimate claim of entitlement because the statutes and regulations governing the waiver make it available from *both* within and outside the United States. *See Town of Castle Rock,* 545 U.S. at 756; 8 U.S.C. § 1182(a)(9)(B)(v); 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a

lawful immigration status or a period of stay authorized by the Secretary."). Petitioners' "need or desire" to stay with their families in the United States while their waivers are adjudicated is not sufficient to create a liberty or property interest where Petitioners have lawful final orders of removal and governing law expressly disclaims any such right. *See id.; see also Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970); *Smith*, 684 F. Supp. at 1118 n.2; *Ansong v. District Director*, 596 F. Supp. 882, 888 (D. Me. 1984); *Li v. Hodgson,* C.A. No. 12-12347-DPW, 2012 WL 6738262, at *3 (D. Mass. Dec. 27, 2012); *Cf. Khalaj v. Cole*, 46 F.3d 828, 835 (8th Cir. 1995) (rejecting petitioner's view of due process that "would prohibit the INS from ever attempting to deport an alien pursuant to a valid deportation order if any further administrative relief, such as motions to reopen, were available"). Petitioners cannot use a regulation to create a right where the statutory scheme in place instructs the opposite. *See* 8 U.S.C. § 1231(a)(1)(A) ("[W]hen an alien is ordered removed, the [government] shall remove the alien from the United States . . . ").

The cases Petitioners cite are distinguishable from the regulations at hand that explicitly deny a right to a stay of removal. *See* 8 C.F.R. § 212.7(e)(2)(i); *compare Accardi v. Shaughnessy,* 347 U.S. 260, 268 (holding the plaintiff was entitled to the due process required by the regulations) *with* 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary."). These cases are also distinguishable because they only require the agency to comply with their own regulations; here, there is no claim here that USCIS has failed to accept Form I-601A waivers from Petitioners. *See Brenna v. Cunningham,* 813 F.2d 1, 2-3 (1st Cir. 1987) (finding a due process violations where the regulations *required* their parole would be revoked only for the violations listed in the regulations). Absent such facts, these cases are not persuasive.

Moreover, whether to grant a stay of removal pending the waiver application process is within the agency's discretion. *See* 8 C.F.R. § 212.7(e)(2)(i); 241.6(a) (allowing for an administrative stay of removal).[13] Therefore, Petitioners cannot meet the threshold requirement of showing that they have a protected liberty or property interest in remaining in the United States while their waivers are adjudicated and cannot show they are likely to prevail on this claim.[14] *See Chun Xin Chi*, 606 F.3d at 10.

### f.   Petitioners have failed to adequately state an Equal Protection claim under the Fifth Amendment.

Petitioners have all but conceded that they are not likely to prevail on their equal protection claim because they "expect to prove their Equal Protection claim on the merits" at some later time. *See* ECF No. 50 at 12. Regardless, petitioners have failed to state a cognizable equal protection claim, let alone proven they are likely to succeed on the merits of that claim. Petitioners allege that Executive Order 13768 ("EO") and Respondents' actions taken to execute final orders of removal are "motivated by racial animus and animus based on national origin." ECF No. 27 at ¶ 122. While

---

[13] There is a "strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *See INS v. Abdu*, 485 U.S. 94, 107 (1988). Freely granting aliens the right to remain in this country after their final orders of removal are entered permits "endless delay of deportation by aliens" who use their illegal time in the United States as a creative shield to deportation. *See id.* at 108 (quoting *INS v. Jong Ha Wang*, 450 U.S. , 139, 144, n. 5 (1981)). If the "[agency's] discretion is to mean anything, it must be that the [agency] has some latitude" in deciding who is entitled to a stay of removal. *See id.*

[14] Even if such a due process right existed – which it does not – the availability and adjudication of Form I-246, administrative stay of removal, is a "fundamentally fair proceeding" where ICE may consider factors, such as community and family ties, in adjudicating the request. *See Matias v. Sessions,* 871 F.3d 65, 71 (1st Cir. 2017) ("Procedural due process protects a right to a fundamentally fair immigration proceeding; but few proceedings are perfect and one can have real errors, including ones that adversely affect the alien's interests, without automatically violating the Constitution."); 8 C.F.R. § 241.6 (identifying factors that may be considered when adjudicating an I-246). Thus, the availability and adjudication of the Form I-246 would satisfy any procedural due process protections owed Petitioners.

the Court must accept as true all well-pleaded factual allegations in the complaint, the Court need not, however, accept Petitioners' mere legal conclusions or conclusory statements. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676-78 (2009). In order to state an equal protection claim under the Fifth Amendment, a Petitioner must allege that (1) they are subject to a government classification that does not meet the appropriate level of scrutiny (invidious discrimination) or (2) the government has deprived them of a fundamental right based on their membership in a particular class. *See Iqbal,* 556 U.S. at 676-77 (describing both invidious discrimination claims and claims based on a "violation of a clearly established right"). "Where the claim is invidious discrimination . . . the Petitioner must plead and prove that the defendant acted with a discriminatory purpose." *Id.* at 676.

Petitioners have not "nudged [their] claims of invidious discrimination across the line from conceivable to plausible." *Id.* at 680; ECF No. 27 at ¶ 122. Notably, Executive Order 13768 does not mention race or national origin as a basis for removal. *See* Executive Order 13768 ("We cannot faithfully execute the immigration laws of the United States if we exempt classes or categories of removable aliens from potential enforcement."). Petitioners downplay this key fact and ask that the Court read into the Executive Order an animus for "non-white people." ECF No. 27 at ¶ 110, 122. However, Petitioners identify no canon of interpretation that would allow this Court to rely on extrinsic statements to find a discriminatory purpose within the four corners of the Executive Order.

Additionally, the First Circuit has rejected conclusory equal protection claims in the immigration context. *Kandamar v. Gonzales,* 464 F.3d 65, 74 (1st Cir. 2006) ("It is worth emphasizing that the decision to remove Petitioner was based on the fact that he had overstayed his visa, but not based on his national origin."). Here, Respondents are instructed, by statute, to

remove aliens who are subject to final orders of removal and the purpose of the EO is the "enforcement of our Nation's immigration laws." Executive Order 13768. As between that "obvious alternative explanation for the arrests and the purposeful, invidious discrimination [Petitioners] ask[] us to infer, discrimination is not a plausible conclusion." *Iqbal,* 556 U.S. at 682. Furthermore, as discussed *supra,* "a claim of selective enforcement based on national origin is virtually precluded by [the Supreme Court]." *Kandamar,* 464 F.3d at 74 (citing *AADC,* 525 U.S. 471, for the proposition that Section 1252(g) precludes jurisdiction over discretionary prosecution cases).

Ultimately, Petitioners equal protection challenge is not a claim of invidious discrimination; their claim is that enforcement of our nation's immigration laws should somehow be illegal as applied to them. Yet, for the reasons discussed *supra,* Petitioners have not identified any cognizable fundamental right to remain in this country or live with their alien spouses in the United States. *Din,* 135 S. Ct. at 2128; *Silverman,* 437 F.2d at 107. Moreover, the remedy for Petitioners' equal protection claim would be to remove *all* aliens with final orders of removal — not stay the removal of all removable aliens. *See Sessions v. Morales-Santana,* 582 U.S. __, 137 S. Ct. 1678 (2017) (dispensing with the "favorable treatment for a discrete group" by applying the more stringent requirements to everyone). Petitioners' equal protection claim is wholly incompatible with the relief they seek. *See* ECF No. 27 at ¶ 138-145. Petitioners have not stated an Equal Protection claim under the Fifth Amendment; therefore, they cannot possibly prove they are likely to succeed on the merits of this claim as required.

> **g. Petitioners' claims under the Administrative Procedure Act are barred by section 1252(g) and because DHS has not engaged in any rulemaking.**

Petitioners' attempt to challenge their detention and removal under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, fails because any such challenge is barred by the

INA.  8 U.S.C. § 1252(g) (prohibiting courts from hearing claims challenging ICE's authority to execute removal orders); *see supra,* at 8-11; 8 U.S.C. § 704. Furthermore, ICE's decision to execute the alien Petitioners' removal orders is one of those "discretionary determinations" that is not the "bases for separate rounds of judicial intervention outside the streamlined process designed by Congress." *AADC*, 525 U.S. at 471. As a discretionary decision, it is absolutely precluded from review under the APA. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); 5 U.S.C. § 701(a)(2) (noting that there is no APA review of agency action committed to agency discretion by law).

Additionally, Petitioners purport that ICE has changed a rule without engaging in proper rulemaking procedures under the APA, but fails to identify what rule purportedly changed. ECF No. 27 at ¶¶ 126-127. ICE's decision to execute the Petitioners' removal order is not inconsistent with 8 C.F.R. § 212.7(e), which allows ICE to execute removal orders even if a provisional unlawful presence waiver is approved or pending. 8 C.F.R. § 212.7(e) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a *period of stay* authorized by the Secretary."). Petitioners have not alleged any facts that indicate USCIS has rejected Form I-601A applications from people eligible under the 2016 final rule. Accordingly, their citations to cases where an agency disregarded regulations on the books are inapplicable here. *See FCC. V. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009). The 2016 final rules located in 8 C.F.R. § 212.7(e) make clear that the rules were not intended to stay the removal of those with final orders, and those rules have not been changed or ignored by the relevant agencies. Accordingly, Petitioners are not likely to succeed on the merits of their APA claim.

## II.   The Other Preliminary Injunction Factors Are Irrelevant in the Absence of Likely Success on the Merits.

When a movant fails to establish that he is likely to succeed on the merits, "the remaining [preliminary injunction] factors become matters of idle curiosity." *New Comm Wireless Servs.,*

*Inc.,* 287 F.3d at 9. As explained above, Petitioners are not likely to succeed on the merits of their

claims. Consequently, they are not entitled to preliminary relief regardless of the other preliminary

injunction factors.

If the Court nevertheless considers the other facts, the key point is that "the public interest

favors applying the federal law correctly." *Small v. Avanti Health Sys., LLC,* 661 F.3d 1180, 1197

(9th Cir. 2011). Petitioners ask this Court to stay their removal based on a due process right

unrecognized or supported by any existing law. "Under our constitutional system of separation of

powers, it is not [the Court's] job to rewrite clear statutes to better reflect common sense and the

public weal — that is Congress's job." *Chun Xin Chi,* 606 F.3d 6, 11 (2011). Petitioners thus

cannot meet their burden to show that preliminary relief is in the public interest. *See Small,* 661

F.3d a 1197.

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioners' preliminary injunction

motion.

DATED:  May 21, 2018                    Respectfully submitted,

                                        CHAD READLER
                                        Acting Assistant Attorney General

                                        ANDREW E. LELLING
                                        United States Attorney

                                        WILLIAM C. PEACHEY
                                        Director
                                        Office of Immigration Litigation

                                        T. Monique Peoples
                                        Senior Litigation Counsel

                                        */s/ Mary L. Larakers.*
                                        MARY L. LARAKERS
                                        Trial Attorney
                                        U.S. Department of Justice, Civil Division
                                        Office of Immigration Litigation,
                                        District Court Section

P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

*/s/ Eve A. Piemonte (By MLL)*
EVE A. PIEMONTE, BBO No. 628883
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3100
Eve.Piemonte@usdoj.gov

ATTORNEYS FOR RESPONDENTS

## CERTIFICATE OF SERVICE

I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Mary L. Larakers
Mary L. Larakers
Dated: May 21, 2018                          Trial Attorney