**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, et al., <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW |

**PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS'**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

STANDARD OF REVIEW .....................................................................................................2

ARGUMENT ........................................................................................................................3

I.      This Court Has Jurisdiction. ......................................................................................4

        A.      Petitioners have standing to challenge ICE's unlawful conduct, and their
                claims are not moot. ......................................................................................4

        B.      Section 1252 does not deprive this Court of jurisdiction. ..............................9

II.     Petitioners State Claims on the Basis of Respondents' Interference
        with Their Attempt to Avail Themselves of the 2016 Regulations. ...........................15

        A.      Petitioners state a claim under the INA. ........................................................16

        B.      Petitioners state a claim for violation of their due process rights. ..................17

        C.      Petitioners state a claim under the APA. ........................................................21

        D.      Petitioners state a claim based on the equal protection guarantees of the
                Due Process Clause. .....................................................................................24

III.    Petitioners State Claims of Unlawful Detention. .......................................................26

        A.      Petitioners state a claim for violation of their due process rights
                not to be detained without an adequate determination of dangerousness
                and flight risk. .............................................................................................27

        B.      Petitioners state a claim for violation of the INA and its regulations. ............29

        C.      Petitioners do not need to file an I-246 before bringing their claims. ............30

CONCLUSION.....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) .............................................................................................. 18

*Aguilar v. ICE*,
    510 F.3d 1 (1st Cir. 2007) ............................................................................. 10, 11

*Alexander v. Attorney Gen.*,
    495 Fed. App'x 274 (3d Cir. 2012) ...................................................................... 27

*Ali v. United States*,
    849 F.3d 510 (1st Cir. 2017) ................................................................................ 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 25

*Batalla Vidal v. Nielson*,
    291 F. Supp. 3d 260 (E.D.N.Y. 2018) .................................................................. 25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 1

*Boumediene v. Bush*,
    553 U.S. 723 (2008) .............................................................................................. 14

*United States v. Caceres*,
    440 U.S. 741 (1979) .............................................................................................. 18

*Chehazeh v. Attorney Gen. of U.S.*,
    666 F.3d 118 (3d Cir. 2012) ................................................................................. 10

*Chhoeun v. Marin*,
    No. 17-cv-01898, 2018 WL 566821 (C.D. Cal. Jan. 25, 2018) ........................... 13

*Chmakov v. Blackman*,
    266 F.3d 210 (3d Cir. 2001) ................................................................................. 12

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012) .............................................................................................. 30

*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982) ................................................................................................ 6

*Clark v. Martinez*,
543 U.S. 371 (2005) ...................................................................................6

*Clean Air Council v. Pruitt*,
862 F.3d 1 (D.C. Cir. 2017) .....................................................................23

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991) ............................................................................4, 7, 8

*Cruz v. Farquharson*,
252 F.3d 530 (1st Cir. 2001) .....................................................................9

*Decotiis v. Whittemore*,
635 F.3d 22 (1st Cir. 2011) .......................................................................2

*Devitri v. Cronen*,
289 F. Supp. 3d 287 (D. Mass. 2018),
*appeal docketed*, No. 18-1281 (1st Cir. Apr. 6, 2018) ..................5, 14, 15

*Diouf v. Napolitano*,
634 F.3d 1081 (9th Cir. 2011) ...................................................................7

*Doe v. Smith*,
No. 17-11231-LTS, 2017 WL 6509344 (D. Mass. Dec. 19, 2017) .........30

*Enwonwu v. Gonzales*,
438 F.3d 22 (1st Cir. 2006) .....................................................................19

*Flores-Ledezma v. Gonzales*,
415 F.3d 375 (5th Cir. 2005) ...................................................................12

*Flores-Powell v. Chadbourne*,
677 F. Supp. 2d 455 (D. Mass. 2010) ......................................................30

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .................................................................................24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
528 U.S. 167 (2000) ...............................................................................5, 6

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) ...............................................................................6, 8

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ...................................................................................8

*Gomillion v. Lightfoot*,
364 U.S. 339 (1960) .................................................................................25

*Green v. Johnson*,
513 F. Supp. 965 (D. Mass. 1981) ........................................................8

*Hamama v. Adducci*,
258 F. Supp. 3d 828 (E.D. Mich. 2017)................................................15

*Heckler v. Chaney*,
470 U.S. 821 (1985)..........................................................................21, 22

*United States v. Hovsepian*,
359 F.3d 1144 (9th Cir. 2004) (en banc) ..............................................12

*Ibrahim v. Acosta*,
No. 17-cv-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018)..............15

*Jama v. INS*,
329 F.3d 630 (8th Cir. 2003) ................................................................12

*Judulang v. Holder*,
565 U.S. 42 (2011)..........................................................................22, 23

*Julce v. Smith*,
No. 18-cv-10163-FDS, 2018 WL 1083734 (D. Mass. Feb. 27, 2018) ....15

*Kerkhof v. MCI WorldCom, Inc.*,
282 F.3d 44 (1st Cir. 2002) ....................................................................9

*Kiedos v. Apfel*,
45 F. Supp. 2d 80 (D. Mass. 1999) ........................................................8

*Kingdomware Techs., Inc. v. United States*,
136 S. Ct. 1969 (2016)........................................................................4, 6

*Madu v. U.S. Attorney Gen.*,
470 F.3d 1362 (11th Cir. 2006) ........................................................10, 12

*Mangual v. Rotger-Sabat*,
317 F.3d 45 (1st Cir. 2003)....................................................................6

*United States v. Nixon*,
418 U.S. 683 ........................................................................................24

*Ocasio-Hernández v. Fortuño-Burset*,
640 F.3d 1 (1st Cir. 2011)......................................................................3

*Olson v. Brown*,
594 F.3d 577 (7th Cir. 2010) ................................................................8

*Omondiagbe v. McDonald*,
   No. 13-cv-11182-MBB, 2014 WL 1413560 (D. Mass. April 10, 2014) ..................................7

*Pena-Muriel v. Gonzales*,
   489 F.3d 438 (1st Cir. 2007) ...................................................................................19

*Ping Ping Zhou v. Kane*,
   No. 07-cv-0785-PHX-DGC (ECV),
   2007 WL 1559938 (D. Ariz. May 29, 2007) ........................................................13

*Railway Labor Executives' Ass'n v. United States*,
   987 F.2d 806 (D.C. Cir. 1993) ..................................................................................5

*Raley v. Ohio*,
   360 U.S. 423 (1959) ..................................................................................................18

*Raso v. Lago*,
   135 F.3d 11 (1st Cir. 1998) ......................................................................................26

*Rosales-Garcia v. Holland*,
   322 F.3d 386 (6th Cir. 2003) .....................................................................................6

*Saint Fort v. Ashcroft*,
   329 F.3d 191 (1st Cir. 2003) ......................................................................17, 18, 22

*Sengkeo v. Horgan*,
   670 F. Supp. 2d 116 (D. Mass. 2009) .......................................................................30

*Sied v. Nielsen*,
   No. 17-cv-06785, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018) .......................12, 15

*Singh v. Gonzales*,
   499 F.3d 969 (9th Cir. 2007) ....................................................................................10

*Soto-Torres v. Fraticelli*,
   654 F.3d 153 (1st Cir. 2011) ......................................................................................3

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) ...............................................................................................5

*Swain v. Pressley*,
   430 U.S. 372 (1977) ..................................................................................................14

*Swisher v. Brady*,
   438 U.S. 204 (1978) ....................................................................................................8

*Viana v. President of United States*,
No. 18-CV-222-LM, 2018 WL 1587474 (D.N.H. Apr. 2, 2018),
*appeal docketed*, No. 18-1276 (1st Cir. Apr. 3, 2018)............................................................15

*Village of Elk Grove Village v. Evans*,
997 F.2d 328 (7th Cir. 1993) ..........................................................................................5

*Weiss v. Regal Collections*,
385 F.3d 337 (3d Cir. 2004)............................................................................................8

*Wilkerson v. Bowen*,
828 F.2d 117 (3d Cir. 1987)............................................................................................8

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886)......................................................................................................26

*Zadvydas v. Davis*,
533 U.S. 678 (2001)............................................................................................7, 27, 28

**Federal Statutes**

5 U.S.C. § 701................................................................................................................21, 22

5 U.S.C. § 702....................................................................................................................21

5 U.S.C. § 706....................................................................................................................22

8 U.S.C. § 1182..................................................................................................................20

8 U.S.C. § 1229a................................................................................................................11

8 U.S.C. § 1231............................................................................................................27, 28

8 U.S.C. § 1252...................................................................................................... *passim*

**Regulations**

8 C.F.R. § 212.2 ...................................................................................................................2

8 C.F.R. § 212.7 ...................................................................................................... *passim*

8 C.F.R. § 241.4 ...................................................................................................... *passim*

8 C.F.R. § 241.6 .................................................................................................................19

*Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate
Relatives; Final Rule*, 78 Fed. Reg. 536 (Jan. 3, 2013) ............................................23

*Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule*, 81 Fed. Reg. 50244, 50262 (July 29, 2016) ......................................................... *passim*

**Constitutional Provisions**

U.S. Const. Article I, § 9, cl. 2 ...............................................................................................4, 13

**Other Authorities**

Peter Raven-Hansen, *Regulatory Estoppel: When Agencies Break Their Own "Laws,"* 64 Tex. L. Rev. 1 (1985) .........................................................................................18

*Provisional Unlawful Presence Waivers*, USCIS (Jan. 5, 2018), https://www.uscis.gov/family/family-us-citizens/provisional-waiver/provisional-unlawful-presence-waivers (noting date of last review/update as January 5, 2018) ...........................................................................................23

## INTRODUCTION

In 2016, the government issued regulations that allow certain noncitizens with final orders of removal to seek lawful permanent residency based on their marriages to U.S. citizens, while remaining in the United States.  Now, in 2018, the government is arresting, detaining, and seeking to deport people seeking to benefit from these regulations.  Respondents' motion to dismiss (ECF No. 44) argues that this practice is unreviewable and lawful.  In fact, it is reviewable and lawless.

Petitioners allege, on behalf of themselves and a putative class, that Respondents' practice violates the Immigration and Nationality Act (INA), due process, equal protection, and the Administrative Procedure Act (APA).  *See* Am. Compl. (ECF No. 27).  As explained below, these claims are not moot, as Respondents contend, but urgent, and no statute deprives this Court of jurisdiction to hear them.  These claims are also valid.  Respondents are unduly pretermitting Petitioners' efforts to apply for lawful status, depriving them of their liberty, and separating them from their families.  To justify this practice, Respondents repeatedly offer the refrain that Petitioners are subject to final orders of removal.  *See, e.g.*, ECF No. 44 at 1, 8, 10, 16-19.  But the regulations expressly benefit noncitizens with final orders of removal and their U.S. citizen spouses.  Thus, as Petitioners argue in seeking a preliminary injunction (ECF No. 50), their claims are likely to succeed on the merits.  At the very least, they demonstrate a "plausible entitlement to relief" sufficient to defeat Respondents' motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

## BACKGROUND

The noncitizen Petitioners are individuals who either have been detained, have been ordered to depart the United States, or are in imminent fear of such action, all while they attempt to avail themselves of a process set out in the government's own regulations.  Am. Compl. ¶¶ 38-

100.  Each of the citizen Petitioners has filed a Form I-130 (Petition for Alien Relative) for his or

her noncitizen spouse, and each noncitizen Petitioner is pursuing or intends to pursue provisional

waivers under 8 C.F.R. §§ 212.2(j) and 212.7(e).  *Id.* ¶¶ 46, 59, 65, 69, 76, 78, 89, 90, 99.  Two

of the noncitizen Petitioners—Lilian Calderon and Lucimar de Souza—were detained by

Immigration and Customs Enforcement (ICE) at I-130 interviews designed to confirm the

legitimacy of their marriages.  *Id.* ¶¶ 49, 66.  Respondents voluntarily released Petitioner Lilian

Calderon on February 13, 2018, after 27 days in detention.  *Id.* ¶ 58.  Ms. Calderon was granted a

stay of removal until August 18, 2018.  *See* ECF No. 50, Ex. C (Harris Aff.) ¶ 31.  On May 8,

2018—the same day that the Court heard arguments concerning Petitioner Lucimar de Souza's

detention and ruled that ICE had violated its own regulations and her procedural due process

rights—Respondents released Ms. de Souza.  She had been detained 99 days.

 The other Petitioners would have been, or fear that they will imminently be, prevented

from pursuing provisional waivers absent action by this Court.  Petitioner Sandro de Souza,

whose Form I-130 was approved on March 1, 2018, was ordered to depart the country by April

24, 2018.  Am. Compl. ¶ 73.  Petitioner Oscar Rivas was ordered to depart the country by May 2,

2018, despite pending I-130 and I-212 applications filed on his behalf.  *Id.* ¶ 85.  Respondents

suspended these dates in compliance with this Court's April 10, 2018 order preserving its

jurisdiction.  ECF No. 32.  Petitioner Deng Gao has a pending Form I-130 application through

his U.S.-citizen wife, but fears detention and removal at his interview or elsewhere absent

judicial intervention.  Am. Compl. ¶ 94.

## STANDARD OF REVIEW

 "To survive a motion to dismiss," a complaint "must 'give the defendant fair notice of

what the … claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to

relief.'"  *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011) (alteration in original) (quoting

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 559 (2007)).  To determine whether the factual

allegations in the complaint are sufficient to survive a motion to dismiss, the Court "employ[s] a

two-pronged approach":  first, it "identif[ies] the factual allegation and … identif[ies] statements

in the complaint that merely offer legal conclusions couched as facts or are threadbare or

conclusory."  *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011).  Second, it assesses

whether the factual allegations "'allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'"  *Id.* at 159 (alteration in original) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  If they do, "the claim has facial plausibility."

*Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

## ARGUMENT

Petitioners' claims fall into two categories.  First, Petitioners allege that ICE's detention

and removal of Petitioners and class members pursuing lawful status under the provisional

waiver regulations violates federal law and the U.S. Constitution.  Am. Compl. ¶¶ 112-127

(Counts 1-4) (the "provisional waiver" claims).  Specifically, Petitioners assert that these

practices violate the regulations and accompanying statutes (Count 1), the Constitution (Counts 2

and 3), and the APA (Count 4), and they seek declaratory and injunctive relief that would permit

Petitioners and class members to seek provisional waivers without the risk of detention and

removal in the ordinary course.  *Id.* at 30-31; ECF No. 49.  Second, Petitioners assert that ICE

misinterprets 8 C.F.R. § 241.4 and violates the Due Process Clause with regard to those

Petitioners and class members whom it detains.  Am. Compl. ¶¶ 128-131 (Counts 5-6) (the

"detention-only" claims).  Petitioners likewise seek individual and class-wide relief ensuring

adequate individual determinations of the need for detention.  *Id.* at 30-31; ECF No. 49.

Respondents argue that these claims are moot as to anyone who is "not in ICE custody"

(ECF No. 44 at 7), that this Court lacks jurisdiction to hear these claims (*id.* at 7-10), and that

Petitioners' allegations are inconsistent with federal law and the U.S. Constitution, and thus fail to state a claim on which relief may be granted (*id.* at 10-20). These arguments are mistaken.

## I.       This Court Has Jurisdiction.

This Court has jurisdiction to hear Petitioners' claims. ***First***, Petitioners' detention-only claims are not mooted by Ms. Calderon's and Ms. de Souza's recent release from the Suffolk County House of Corrections. As detailed in the Amended Complaint, the government has engaged in a pattern of detaining individuals, denying them their right to review under Section 241.4, and then releasing them when the issue faces a possible judicial decision. Am. Compl. ¶ 101 (citing ECF No. 17 at 2). This does not moot Petitioners' claims where, as here, the controversy is "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). And the release of individual Petitioners does not moot the class action. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) ("[T]hat the class was not certified until after the named plaintiffs' claims had become moot does not deprive [the court] of jurisdiction."). ***Second***, contrary to the government's argument, 8 U.S.C. §§ 1252(b)(9) and 1252(g) do not deprive this court of jurisdiction. The government's interpretation of the statute is incorrect and—even if given credence—would violate the Constitution's Suspension Clause. *See* U.S. Const. art. I, § 9, cl. 2.

### A.       Petitioners have standing to challenge ICE's unlawful conduct, and their claims are not moot.

This case presents live controversies centering on whether ICE may continue to detain and remove Petitioners and class members who are seeking lawful status under the 2016 provisional waiver regulations. Respondents' contrary argument relies on the mistaken premise that a class action challenging illegal detention and removal practices can become moot once "petitioners are not in ICE custody." ECF No. 44 at 7. That is not so.

As a threshold matter, Petitioners have standing to bring their claims.  Petitioners have standing because they have "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," their "injury is fairly traceable to the challenged action of the defendant," and "it is likely … that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-181 (2000).  When their claims were filed, Ms. Calderon and Ms. Lucimar de Souza were both detained and in danger of imminent removal.  Two other Petitioners, Mr. Sandro de Souza and Mr. Rivas, had been ordered to leave the United States within weeks and had been placed on electronic monitoring and intensive supervision in order to enforce their departure.  Finally, Mr. Gao was, and is, in the queue for an I-130 interview in Boston, where he has every reason to fear that he will be subject to the same treatment as other Petitioners.[1]

---

[1] Contrary to Respondents' contention, ECF No. 44 at 7 n.3, this Court should not dismiss Petitioners Deng Gao and his wife, Amy Chen. "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013)). While there is no numerical threshold at which likelihood of harm becomes a "substantial risk" of harm, "even a small probability of a great harm [may be] sufficient." *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993). Thus, the Supreme Court has found that plaintiffs faced a substantial risk of being prosecuted under an unlawful statute where there were only twenty to eighty instances of such prosecution nationally per year. *Susan B. Anthony List*, 134 S. Ct. at 2345. Similarly, in *Alasaad v. Nielsen*, Judge Casper found plaintiffs had alleged a substantial risk of harm by alleging that they could be unlawfully searched at the border, even though the percent of people actually searched pursuant to the allegedly unlawful policy was 0.008%. No. 17-cv-11730-DJC, 2018 WL 2170323, at *9-11 (D. Mass. May 9, 2018) (noting that four out of eleven plaintiffs had already been subject to policy). In light of ICE's repeated detention of those in Mr. Gao's position at their I-130 interviews, or requirement that they imminently depart the United States, Mr. Gao has standing to bring these claims. In any event, "[i]f one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case." *Railway Labor Executives' Ass'n v. United States*, 987 F.2d 806, 810 (D.C. Cir. 1993).

Moreover, to the extent Respondents attempt to argue that Petitioners do not satisfy the "in custody" requirement for habeas jurisdiction, they are incorrect. *See Devitri v. Cronen*, 289 F. Supp. 3d 287, 293 & n.9 (D. Mass. 2018).

Nothing has happened since this case was filed that could moot the claims of the individual Petitioners, let alone the entire class action. "The burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Mootness is far less rigid than simply "standing set in a time frame." *Friends of the Earth*, 528 U.S. at 190. Instead, the doctrine accounts for "practicalities and prudential considerations," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 n.11 (1980), recognizing that abandoning ongoing litigation "may prove more wasteful than frugal," *Friends of the Earth*, 528 U.S. at 192. Here, Respondents make no mootness argument concerning any of Petitioners' provisional waiver claims. And for good reason. But for this Court's jurisdiction-preserving order (ECF No. 32), Petitioners might already have been removed even as they pursued lawful status.

Respondents do argue that Petitioners' detention-only claims become moot when they were released, ECF No. 44 at 7, but that argument is mistaken. A claim is not mooted if the controversy is "capable of repetition, yet evading review," *Kingdomware Techs*, 136 S. Ct. at 1976, or if the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time, *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Thus, where a petitioner who is not currently detained may be detained again, he or she "'continue[s] to have a personal stake in the outcome.'" *Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478 (1990)). In *Clark v. Martinez*, the Supreme Court held that the petitioner's claim that he had been held beyond the 90-day removal period was not mooted by his release on one-year parole. *Id.* His paroled release was for a finite period, and could be terminated on DHS's discretion. *Id.*; *see also Rosales-Garcia v. Holland,*

6

322 F.3d 386, 395-397 (6th Cir. 2003) (petitioner released on immigration parole had standing to challenge detention as unreasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001)); *Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011) (petitioner had standing to challenge his detention even though he had been released).[2]

By the same token, the releases of Ms. de Souza and Ms. Calderon did not moot their detention claims because Respondents have not disclaimed an intention to re-detain them, to interfere with their pursuit of a provisional waiver, or to deny them immediate notice and expedited review of their detention.  ECF No. 19 (Lyons Aff.) ¶¶ 10, 11.  Indeed, while Ms. Calderon has been granted a stay of removal, *id.*, its duration is finite (until August 18, 2018), and ICE has argued that it can detain someone whose removal has been stayed.  *See* ECF No. 23 (Joint Status Report) at 1 ("DHS cannot categorically agree that it will not re-detain Petitioner [Calderon] during the pendency of the motion to dismiss."); Tr. of Status Conf. (May 1, 2018), at 47:11-14.  Moreover, Ms. de Souza's petition for a stay of removal was denied on May 2, 2018.[3]

Just as important, even if an individual Petitioner's release could moot her individual detention claims, it still would not moot the class action.  Under the "inherently transitory" exception to mootness, the fact "that the class was not certified until after the named plaintiffs' claims had become moot does not deprive [the court] of jurisdiction."  *County of Riverside v.*

---

[2] The case Respondents cite—*Omondiagbe v. McDonald*, No. 13-cv-11182-MBB, 2014 WL 1413560 (D. Mass. April 10, 2014)—is not informative here.  In that case, the petitioner "did not oppose the request to dismiss the petition as moot or otherwise identify a collateral consequence sufficient to give rise to an Article III case or controversy."  *Id.* at *1.

[3] This Court found a violation of Ms. De Souza's due process rights with respect to the government's botched Section 241.4 review process in April 2018.  May 8, 2018 Ruling Tr. at 101:8-103:9.  She has since been released.  However, for the reasons explained here, her remaining claims regarding the requirement that ICE afford her and others similarly situated review procedures as soon as practicable upon detention and that they not detain or remove her while she pursues provisional waivers remain ripe.

*McLaughlin*, 500 U.S. 44, 52 (1991). Instead, where claims are "inherently transitory," "the 'relation back' doctrine," which allows a court to consider a motion for class certification as though at the time of the complaint was filed, "is properly invoked to preserve the merits of the case for judicial resolution," and the court can weigh mootness using the facts alleged in the class complaint. *Id.*; *see also Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978); *Weiss v. Regal Collections*, 385 F.3d 337, 346-347 (3d Cir. 2004); *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010); *Kiedos v. Apfel*, 45 F. Supp. 2d 80, 86 (D. Mass. 1999) (recognizing that mootness for named plaintiff does not bar class certification in cases where claims are inherently transitory).

Here, Petitioners moved for class certification when Ms. de Souza was still in custody, and "there will be a constant class of persons suffering the deprivation complained of in the complaint," *Olson*, 594 F.3d at 582, so the "inherently transitory" exception applies. Indeed, it is customary for class actions to proceed even though the named plaintiffs are no longer suffering the harm alleged in the complaint; otherwise serious but ephemeral violations of rights might escape judicial review. *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (class claims related to constitutionality of pretrial detentions not moot even where named petitioners were subsequently convicted); *Green v. Johnson*, 513 F. Supp. 965, 975 (D. Mass. 1981) (certifying class of school-age inmates where named plaintiffs' and proposed intervenors' claims became moot). At this stage, the government's practice of detaining individuals, denying them their right to review under Section 241.4, and then releasing them when the issue faces a possible judicial decision, should not moot Petitioners' claims.[4]

---

[4] Moreover, even if Petitioners' claims were not "inherently transitory," Ms. de Souza's detention claims would not be moot because she sought to represent the class and retains an interest in class certification. *See Geraghty*, 445 U.S. at 404-406 & n.11. These interests are sufficient to allow a Court to adjudicate a class action even if the named representative's claim becomes moot while the class certification motion is pending. *Wilkerson v. Bowen*, 828 F.2d

**B.       Section 1252 does not deprive this Court of jurisdiction.**

The only avenue for judicial review of Petitioners' claims is in the district court, and this

Court has jurisdiction over Petitioners' claims.  As the Supreme Court explained in *INS v. St.*

*Cyr*, the Constitution guarantees judicial review of removal decisions.  533 U.S. 289, 306-307

(2001).

Respondents argue that jurisdiction has been stripped by 8 U.S.C. §§ 1252(b)(9) and

1252(g).  ECF No. 44 at 7-10.  But, contrary to the government's unexplained suggestion, these

claims cannot be brought to the Court of Appeals through the petition for review process, for the

simple reason that the Petitioners are not challenging their orders of removal.  Respondents

claim, in effect, that they may violate the provisional waiver regulations at will, and no court can

stop them.  Because the jurisdictional provisions Respondents cite do not sweep so broadly, and

because Respondents' reading would violate the Suspension Clause, this Court has jurisdiction

over Petitioners' claims.

**1.       *Section 1252 does not bar review of these claims.***

Neither Section 1252(b)(9) nor Section 1252(g) bars judicial review of these claims

because Petitioners do not seek review of their final orders of removal, nor do they seek review

of any discretionary decision by the Attorney General.

---

117, 121 (3d Cir. 1987) (no mootness where claim of named representative becomes moot while
class certification motion was pending); *see also Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44,
54 (1st Cir. 2002) ("Kerkhof might still adequately represent the class despite the mootness of
her individual claim, and she thus retains a sufficient personal interest in seeing the class
certified.").  *But cf. Cruz v. Farquharson*, 252 F.3d 530, 533-534 & n.3 (1st Cir. 2001)
(affirming dismissal where class certification motion was filed after individual claims were
mooted, and noting that granting of relief for plaintiff before a decision on class certification
"ordinarily" requires dismissal of action as moot, but declining to decide whether to adopt more
generous rule).

Section 1252(b)(9) does not apply on its face because Petitioners do not ask this Court to review their orders of removal.  By its terms, all of Section 1252(b)—which is entitled "Requirements for review of orders of removal"—is addressed only to the "review of an order of removal."  It provides various requirements for the judicial review of an order of removal, which occurs through a petition for review to a Court of Appeals.  *See* 8 U.S.C. § 1252(a)(1).  One of these requirements is paragraph (9), which provides:

> **(9) Consolidation of questions for judicial review**
>
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*Id.* § 1252(b)(9).  Thus, where a claim does not directly challenge the validity of an order of removal, Section 1252(b)(9) does not preclude habeas jurisdiction.  *See Singh v. Gonzales*, 499 F.3d 969, 978-980 (9th Cir. 2007) (distinguishing between "challenges to orders of removal and challenges that arise independently," *id.* at 978, and applying Section 1252 (b)(9) only to the former); *Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("Because section 1252(b)(9) applies only '[w]ith respect to review of an order of removal,' and this case does not involve review of an order of removal, we find that section 1252(b)(9) does not apply to this case."); *Chehazeh v. Attorney Gen. of U.S.*, 666 F.3d 118, 132-133 (3d Cir. 2012) (same).

The government relies on the First Circuit's decision in *Aguilar* to describe Section 1252(b)(9) as "breathtaking" in its "expanse," but that very case was clear that Section 1252(b)(9) applies only to claims that can be raised in a petition for review challenging of an order of removal.  *Aguilar v. ICE*, 510 F.3d 1, 9-12 (1st Cir. 2007).  As the First Circuit

explained, "section 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Id.* at 11. Reasoning that it would be "perverse" to read the provision to apply to claims that *cannot* be addressed in a petition for review of an order of removal, the court in *Aguilar* excluded from the purview of Section 1252(b)(9) "claims that cannot effectively be handled through the available administrative process." *Id.*

Petitioners' claims plainly are not challenging their orders of removal and not raising claims that can be addressed in a petition for review. Petitioners are challenging the deprivation of their eligibility to pursue a legalization process—one that is expressly open to people with final orders of removal. *See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule* ("2016 Final Rule"), 81 Fed. Reg. 50244, 50262 (July 29, 2016). Petitioners' challenges are, thus, entirely collateral to and independent of their removal orders and any removal proceedings.

The government has not suggested, nor could it, that judicial review of these claims is available in a petition for review, or in any forum other than this Court.[5] Accordingly, Section 1252(b)(9) does not apply.

Nor does Section 1252(g) apply. That section provides:

**(g) Exclusive jurisdiction**

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

---

[5] Motions to reopen, for example, provide no relief because such motions must typically be filed within 90 days of the entry of the final removal order. 8 U.S.C. § 1229a(c)(7)(C)(i).

8 U.S.C. § 1252(g).  The Supreme Court held in *Reno v. AADC* that Section 1252(g) is a "narrow" provision, 525 U.S. 472, 487 (1999), which is directed "against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."  *Id.* at 485 n.9. Accordingly, it does not bar consideration of a "legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority."  *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc); *see also Madu*, 470 F.3d at 1368 (Section 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions"); *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005) (no Section 1252(g) bar where petitioner "challenges the constitutionality of the statutory scheme allowing for such discretion"); *Jama v. INS*, 329 F.3d 630, 632 (8th Cir. 2003) (Section 1252(g) does not bar review of Attorney General's non-discretionary "legal conclusion[s]"); *Chmakov v. Blackman*, 266 F.3d 210, 215 (3d Cir. 2001) (Section 1252(g) "limits the power of federal courts to review the discretionary decisions of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders").

Here, Petitioners claim that the Attorney General has acted outside his lawful discretionary authority by depriving Petitioners of access to the stateside provisional waiver application process—and thus has violated Petitioners' due process and equal protection rights, as well as their rights under the APA, INA, and associated regulations.  These claims are purely legal and do not go to the exercise of discretion, but rather the mandatory constraints on that discretion.  They are, therefore, not barred by Section 1252(g).  *See Sied v. Nielsen*, No. 17-cv-06785, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018) ("Section 1252(g) does not divest

courts of jurisdiction over cases that do not address prosecutorial discretion and address 'a purely

legal question, which does not challenge the Attorney General's discretionary authority[.]'"

(alteration in original) (quoting *Hovsepian*, 359 F.3d at 1155)); *Chhoeun v. Marin*, No. 17-cv-

01898, 2018 WL 566821, at *8-9 (C.D. Cal. Jan. 25, 2018) (Section 1252(g) did not strip court

of jurisdiction over Petitioners' claim that due process required an opportunity to file and litigate

motions to reopen prior to removal); *Ping Ping Zhou v. Kane*, No. 07-cv-0785-PHX-DGC

(ECV), 2007 WL 1559938, at *1-3 (D. Ariz. May 29, 2007) (preliminarily ruling that Section

1252(g) did not divest court of jurisdiction over petitioner's claim that she should not be

removed before U.S. Citizenship and Immigration Services (USCIS) had adjudicated her

application for adjustment of status on basis of her marriage to U.S. citizen).

Finally, should there be any ambiguity in Section 1252(g)'s scope, the Court should

resolve that in favor of jurisdiction. *See St. Cyr*, 533 U.S. at 298 (government "must overcome

both the strong presumption in favor of judicial review of administrative action and the

longstanding rule requiring a clear statement of congressional intent to repeal habeas

jurisdiction" (footnote omitted)). Because Petitioners' construction of the statute is permissible,

and—as detailed below—a Suspension Clause problem would arise if Petitioners were left

without any judicial forum for their claims, Petitioners' interpretation must prevail. *Id.* at 299-

314.

### 2.    *If provisions of Section 1252 strip jurisdiction, they are unconstitutional as applied.*

Even if any provision of Section 1252 could be read to strip jurisdiction here, it would be

unconstitutional as applied. The Suspension Clause provides that "[t]he Privilege of the Writ of

Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public

Safety may require it." U.S. Const. art. I, § 9, cl. 2. "[B]ecause of that Clause, some 'judicial

intervention in deportation cases' is unquestionably 'required by the Constitution.'"  *St. Cyr*, 533

U.S. at 300 (quoting *Heikkila v. Barber*, 345 U.S. 229, 235 (1953)).

For a statute to limit the writ, it "must overcome both the strong presumption in favor of

judicial review of administrative action and the longstanding rule requiring a clear statement of

congressional intent to repeal habeas jurisdiction."  *St. Cyr*, 553 U.S. at 298 (footnote omitted).

Further, Congress can remove jurisdiction without violating the Suspension Clause only where it

provides "a collateral remedy which is neither inadequate nor ineffective to test the legality of a

person's detention."  *Swain v. Pressley*, 430 U.S. 372, 381 (1977).  Such a substitute must

provide the petitioner "a meaningful opportunity to demonstrate that he is being held pursuant to

'the erroneous application or interpretation' of relevant law."  *Boumediene v. Bush*, 553 U.S.

723, 779 (2008) (quoting *St. Cyr*, 533 U.S. at 302).

Congress has not provided an adequate substitute for the writ of habeas corpus for

Petitioners.  They cannot seek review through a petition for review, as explained above, and thus

without review by this Court, there is no way for them to obtain relief from Respondents'

unlawful practices prior to their removal and separation from their families, which is precisely

the sort of irreparable harm that the stateside waiver process was created to avoid.  Thus, if either

Section 1252(b)(9) or (g) did preclude jurisdiction, it would be unconstitutional as applied to this

case.  *See Devitri v. Cronen*, 289 F. Supp. 3d 287, 294 (D. Mass. 2018) (finding Suspension

Clause violated where lack of judicial review would create a "'Kafkaesque procedure, [under

which petitioners] will be removed back to the very country where they fear persecution and

torture while awaiting a decision on whether they should be subject to removal because of their

fears of persecution and torture"), *appeal docketed*, No. 18-1281 (1st Cir. Apr. 6, 2018)[6]; *Sied*,

2018 WL 1142202, at *11-12 ("[Section 1252(g)] violates the Suspension Clause as applied if it

deprives Petitioners of a meaningful opportunity to exercise their statutory right …." (quoting

*Ibrahim v. Acosta*, No. 17-cv-24574, 2018 WL 582520, at *6 (S.D. Fla. Jan. 26, 2018)));

*Hamama v. Adducci*, 258 F. Supp. 3d 828, 838-842 (E.D. Mich. 2017) (concluding habeas court

had jurisdiction to grant relief staying deportation of class of Iraqis to allow filing of motions to

reopen immigration proceedings, because no alternative sufficient to satisfy the Suspension

Clause existed); *Ibrahim*, 2018 WL 582520 (same, for group of Somali nationals who were

subject of botched deportation attempt).

## II.     Petitioners State Claims on the Basis of Respondents' Interference with Their Attempt to Avail Themselves of the 2016 Regulations.

Beyond their challenges to the Court's jurisdiction, Respondents also challenge the merits

of Petitioners' claims, arguing that Petitioners have failed to state a claim with respect to

Respondents' detention and removal of Petitioners who are availing themselves of the 2016

regulations.  ECF No. 44 at 13-20.  Respondents are incorrect, and Petitioners have adequately

pleaded these claims.

---

[6] The Court in *Devitri* allowed that Section 1252(g) would strip jurisdiction over the petitioner's claims if it were not unconstitutional.  However, in that case, the petitioners did not claim that they were pursuing avenues of relief specifically made available to individuals in their position, and therefore that the government did not have discretion to remove them on that basis.  289 F. Supp. 3d at 291-292.  Other courts in this Circuit holding that Section 1252(g) barred jurisdiction also faced similar claims.  *See Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *3 (D.N.H. Apr. 2, 2018) (holding that Section 1252(g) stripped court of jurisdiction over claim that petitioner's removal should be prevented while he pursued various avenues for relief from removal), *appeal docketed*, No. 18-1276 (1st Cir. Apr. 3, 2018); *Julce v. Smith*, No. 18-cv-10163-FDS, 2018 WL 1083734 (D. Mass. Feb. 27, 2018) (same).

A.      **Petitioners state a claim under the INA.**

Petitioners have stated a claim that Respondents are violating the 2016 regulations governing the provisional waiver process, and thus violating the INA, by targeting Petitioners and other class members for detention and removal even as they pursue provisional waivers. Am. Compl. ¶¶ 112-115; ECF No. 50 at 9-12.  Respondents' sole attempt to rebut this claim is their argument that they can freely detain and deport individuals who may benefit from the 2016 provisional waiver regulations because these individuals do not have legal status *yet.*  This argument relies on the truisms that—until legalization is complete—a provisional waiver application has "*no effect* on the immigration status of the applicant" and does not constitute a stay of removal, and that the Secretary has sole discretion whether to approve a waiver.  *See* ECF No. 44 at 14.  This argument misses the mark.

The provisional waiver process was expressly expanded in 2016 to allow Petitioners, among others, to seek lawful status by applying for provisional waivers while remaining with their families in the United States.  *See* 2016 Final Rule, 81 Fed. Reg. at 50245-46.  The mere fact that Petitioners continue to have final orders of removal, and that the Secretary has discretion to grant or deny provisional waivers on a case-by-case basis, does not permit Respondents to proceed as if the regulations did not exist.  To the contrary, Petitioners are entitled to the process that those regulations make available to them—no more, but also no less.

Respondents are violating these regulations.  As outlined in the Amended Complaint (Am. Compl. ¶¶ 37-103), the government's practice of detaining or forcing the removal of Petitioners in the midst of this process—relying on their final orders of removal—is contrary to the INA and its regulations and imposes the exact "extreme hardship" on U.S. citizen Petitioners that the provisional waiver process was enacted to avoid.  2016 Final Rule, 81 Fed. Reg. at 50244; Am. Compl. ¶¶ 26-29.  By enforcing a *per se* policy that allows *any* noncitizen Petitioner

16

and class member to be detained and removed regardless of his progress towards lawful status under the 2016 regulations, the government strips the regulations of their very purpose and curtails Petitioners' right to individualized determinations of their eligibility to gain legal status under the provisional waiver process. *Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003) ("[I]f a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him."). Respondents' motion to dismiss Count 1 should be denied.

### B. Petitioners state a claim for violation of their due process rights.

Respondents' due process argument also talks past the claim that Petitioners are actually making. Petitioners allege that, by detaining and deporting them without regard to their pursuit of the provisional waiver process, Respondents are effectively negating the regulations created for their benefit and thus depriving them of due process. Am. Compl. ¶¶ 52-57, 70, 79-82, 91, 117-120; ECF No. 50 at 14-18; 2016 Final Rule, 81 Fed. Reg. at 50244-01, 50245-46; 8 C.F.R. § 212.7(e). Respondents argue that this claim should be dismissed because: (1) Petitioners can seek the same waivers from outside the United States; (2) the grant or denial of a provisional waiver is discretionary; (3) Petitioners, by virtue of their final orders of removal, "no longer have a due process right to remain in the United States"; and (4) the citizen Petitioners have no right to have their U.S. citizen spouses remain in the United States. ECF No. 44 at 15-17. These arguments amount to nothing less than a claim of authority to deny Petitioners the benefits of duly enacted provisional waiver regulations for arbitrary reasons or for no reason at all.

*First*, Respondents' contention that Petitioners lack "any due process right to seek relief" because they could pursue waivers abroad (ECF No. 44 at 15) quite obviously ignores the hardship of being forced to leave the U.S. while pursuing that relief. The 2013 and 2016 regulations recognize that the old waiver process—which required applicants to be abroad for the

duration of their provisional waiver applications—caused "significant emotional and financial hardships that Congress aimed to avoid when it authorized the waiver."  2016 Final Rule, 81 Fed. Reg. at 50245.  The very purpose of the new process is thus to allow noncitizens to remain with their U.S. citizen spouses and children while applying for provisional waivers.  Without it, Petitioners would face two years or more of separation from their families.  ECF No. 50, Ex. H (Cannon Aff.) ¶ 5.  For these noncitizen Petitioners and their families—including ten U.S. citizen children—such a prolonged absence would be devastating.  Am. Compl. ¶¶ 44, 61, 72, 84, 93; ECF No. 30, Exs. 1-5.

*Second*, contrary to Respondents' claims, Petitioners have a cognizable "liberty or property interest" in "stay[ing] with their families in the United States while their waivers are adjudicated."  ECF No. 44 at 16.  The government's argument confuses the due process interest in being *awarded* a waiver of their inadmissibility conditions—which Petitioners do not assert here—with the due process interest in being permitted to *pursue* such waivers while remaining with their families in the U.S.  *Saint Fort*, 329 F.3d at 203.  Through its 2016 regulations, the government expressly created this latter form of liberty interest for Petitioners.  2016 Final Rule, 81 Fed. Reg. at 50244; 8 C.F.R. § 212.7(e)(4)(iv).  Respondents cannot, consistent with due process, deprive Petitioners of the benefits of this regulation without any individualized reason or process for doing so.  *Accardi v. Shaughnessy*, 347 U.S. 260, 265-267 (1954); *Raley v. Ohio*, 360 U.S. 423, 425-426, 438-439 (1959).[7]  Instead, as set forth in Petitioners' Memorandum in

---

[7] Moreover, an individual can have a due process right not to be punished for relying on government statements of permission.  *See United States v. Caceres*, 440 U.S. 741, 753 n.15 (1979); Peter Raven-Hansen, *Regulatory Estoppel: When Agencies Break Their Own "Laws,"* 64 Tex. L. Rev. 1, 44, 56-57 (1985) (explaining that procedural due process operates "as a constitutional theory of regulatory estoppel" to require the enforcement of agency law even when that law was "required neither by the Constitution nor by federal statute").  Here, not only do the 2016 regulations offer Petitioners a path to come forward and pursue lawful permanent

Support of a Preliminary Injunction, ECF No. 50 at 14-16, the 2016 regulations create a legitimate expectation protectable under the Constitution's due process guarantee.

*Third*, Respondents are wrong to contend that Petitioners' final orders of removal have extinguished their due process interests in remaining in the United States.  Once again, Respondents' argument proceeds as if the provisional waiver regulations do not exist.  And, not surprisingly, none of the cases Respondents cite (ECF No. 44 at 15) concerns applications for lawful status *explicitly extended* to individuals with final orders of removal.  *See Enwonwu v. Gonzales*, 438 F.3d 22, 29-30 (1st Cir. 2006) (rejecting petitioner's claim that he had due process right not to be removed to unstable country on "state-created danger theory"); *Pena-Muriel v. Gonzales*, 489 F.3d 438, 443 (1st Cir. 2007) (holding that there is no due process right to reopen one's removal proceedings on basis of vacated underlying conviction more than ten years after order became final and petitioner departed the country).  Those cases do not control here. Petitioners have a legitimate interest in not being arbitrarily denied the process provided by the provisional waiver regulations.[8]

_____

residency, but the USCIS Field Manual also states that noncitizens with final orders of removal "shall not be arrested" except where the noncitizen's actions are "so egregious as to justify making an exception."  ECF No. 50-1 (USCIS Field Manual) § 15.1(c)(2).  Petitioners have thus further stated a claim for violation of their due process rights because they relied on the government's invitation to participate in the process, and this process was instead used to trap them.

[8] Respondents contend that adjudication of a Form I-246 (an application for an administrative stay of removal) is sufficient to satisfy the process owed to Petitioners "even if such a due process right existed."  ECF No. 44 at 17 n.6.  This fails to grasp the due process right that Petitioners are claiming.  With respect to removal, Petitioners assert the right not to have the existence of their final orders of removal alone serve as a basis to detain or remove them while they pursue provisional waivers. Am. Compl. ¶¶ 112-120, 123-127.  And they assert the right not to be targeted for removal on the basis of their race. *Id.* ¶¶ 121-122.  The I-246 application— the granting of which is entirely discretionary (*see* 8 C.F.R. § 241.6)—does nothing to prevent this.

**Finally**, like the noncitizen Petitioners, the citizen Petitioners are intended beneficiaries of the 2016 provisional waiver process and thus have a cognizable interest in its protections. 2016 Final Rule, 81 Fed. Reg. at 50250 (explaining that the regulations "promote family unity" by "reduc[ing] the time that applicants are separated from their U.S. citizen or LPR family members"). In fact, the citizen Petitioners take the first step of the provisional waiver process by filing the I-130 petition. Justice Scalia's three-member plurality opinion in *Kerry v. Din*, which Respondents cite, does not decide Petitioners' claims because "*Din* did not produce a definitive answer to the question of whether a citizen has a liberty interest, warranting due process, in residing in the United States with his or her noncitizen spouse." *Ali v. United States*, 849 F.3d 510, 515 n.3 (1st Cir. 2017).

Moreover, Respondents' citation to *Silverman v. Rogers* only helps illustrate Petitioners' claims. 437 F.2d 102, 107 (1st Cir. 1970). There, the Turkish petitioner sought a waiver of the two-year foreign residency requirement in 8 U.S.C. § 1182(e) for certain people in the United States on educational visas. *Id.* She argued that separation from her U.S.-citizen husband for the requisite period would cause exceptional hardship. *Id.* at 103-104. The First Circuit directed the district court to dismiss her complaint, explaining that her application for an exceptional hardship waiver had received individualized consideration by the relevant authorities. The authorities had denied her application after "extended discussions" with the Turkish government, which revealed that "[t]he Turkish Government believe[d] her services are indispensable, and a position [was] being held open for her" at a nursing home in Istanbul. *Id.* at 104 n.4. She had also signed a bond that obligated her to serve in Turkey for ten years after completing her training in the United States. *Id.* Respondents' conduct with respect to the petitioner in *Silverman* possessed

the central thing that is lacking in Petitioner's cases: individualized consideration and adjudication of her exceptional hardship waiver.[9]

### C.      Petitioners state a claim under the APA.

Respondents are also incorrect that the Court should dismiss Petitioners' claims under the APA.  Beyond their misplaced reliance on Section 1252(g), *see supra* Section I.B, Respondents argue that: (1) ICE's removal decisions are "discretionary determinations" exempt from APA review under 5 U.S.C. § 701(a)(2); and (2) ICE has not undertaken any kind of rulemaking that should have triggered notice-and-comment requirements.  ECF No. 44 at 19-20.  These arguments are incorrect.

*First*, the government's policy is not a "discretionary determination" shielded from APA review, but instead an arbitrary and capricious action that violates the APA.  By default, the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Respondents correctly note that APA limits judicial review when an "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *see* ECF No. 44 at 20 (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).  But this exception is "narrow," *Chaney*, 470 U.S. at 838 (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S.

---

[9] The other case Respondents cite for this contention, *Smith v. INS*, is also inapposite.  684 F. Supp. 1113 (D. Mass. 1988).  There, the petitioners argued that provision of the INA that sought to prevent individuals from receiving immigration benefits by entering into sham marriages was unconstitutional.  *Id.* at 1115.  Denying their claims on summary judgment, the district court explained that the petitioners had no "interest created by statute—the statute at issue in this case specifically denies the immigration benefits that the plaintiffs seek to acquire."  *Id.* at 1118. There is no comparison to this case, where Petitioners seek to *enforce* a regulation that protects Petitioners' interest in living together as a family, and thus reinforces their due process rights.

402 (1971)), especially where the challenged agency decision is to *initiate* enforcement action rather than refraining from doing so, *see id.* at 828-835.

Here, Respondents' practice of targeting Petitioners while they pursue the provisional waiver process renders the 2016 regulations a nullity, and is therefore not an action "committed to agency discretion" within the meaning of Section 701(a)(2). Although the decision "whether to approve" an individual provisional waiver application is committed to agency discretion by law, 8 C.F.R. § 212.7(e)(2)(i), the decision whether to sabotage the process is not. By imposing a *per se* policy that individuals with final orders of removal may be detained and removed, even when they follow the 2016 regulations, Respondents are effectively blocking *all* such noncitizens from even being considered for the provisional waiver process. That practice reflects the abandonment, rather than the exercise, of the discretion committed to Respondents by law. *Saint Fort*, 329 F.3d at 203 ("[I]f a statute makes an alien eligible to be considered for a certain form of relief," then, while he may be unable to challenge "the agency's decision to exercise or not exercise its discretion to grant relief," he may still "raise on habeas the refusal of the agency to even consider him.").

Not only are Respondents' actions subject to judicial review, they are also arbitrary and capricious. The APA empowers courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2), (A). A reviewing court must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). To pass this test, "agency action … must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system." *Id.* at 55. Respondents fail this test.

Although USCIS correctly understands the provisional waiver process[10]—it even has a policy that people who appear for interviews *will not be arrested* while pursuing a benefit specifically allowed for them, USCIS Field Manual § 15.1(c)(2)—ICE inflicts senseless hardship on precisely those people and their families.  That is textbook arbitrariness and capriciousness, which turns "deportation decisions" into "a sport of chance."  *Judulang*, 565 U.S. at 59 (internal quotation marks omitted); *see also* ECF No. 50 at 13.

*Second*, contrary to Respondents' claim that Petitioners have "fail[ed] to identify what rule [Respondents have] changed," ECF No. 44 at 20, Petitioners' claim is that Respondents have changed the very rule that the government created by promulgating the provisional waiver process.  DHS followed notice-and-comment procedures to establish the provisional waiver process for the unlawful presence waiver, *see Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule*, 78 Fed. Reg. 536 (Jan. 3, 2013), and to expand the availability of that waiver to noncitizens living with final orders of removal, *see* 2016 Final Rule, 81 Fed. Reg. at 50244.  Having promulgated that rule, DHS "may not alter such a rule without notice and comment."  *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) (alterations and internal quotation marks omitted).  Yet, by targeting provisional-waiver applicants with final orders of removal for detention and removal—thus making the application process essentially unavailable to Petitioners and similarly situated class members—that is what Respondents have done.  Further, Respondents cannot skirt the APA by simply lying in wait for applicants at their marriage interviews, as opposed to publicly announcing that it has a new policy.  An agency may not "depart from a prior policy *sub silentio* or simply disregard rules that

---

[10] *See Provisional Unlawful Presence Waivers*, USCIS (Jan. 5, 2018), https://www.uscis.gov/ family/family-us-citizens/provisional-waiver/provisional-unlawful-presence-waivers (noting date of last review/update as January 5, 2018) (Mot. for Prelim. Inj. Ex. I (ECF No. 50-9)).

are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also United States v. Nixon*, 418 U.S. 683, 696 ("So long as [a] regulation remains in force the Executive Branch is bound by it …."). By operating as though it were no longer bound by the provisional waiver regulations, the government violates the notice-and-comment requirements of the APA.

The change is illustrated starkly by the agency's shifting message to prospective applicants. In enacting the regulations, DHS explicitly stated that the application process would not be used to ***target*** applicants for removal: "[T]he Department will not initiate removal proceedings against individuals who are not enforcement priorities solely because they filed or withdrew provisional waiver applications, or because USCIS denied such applications." 2016 Final Rule, 81 Fed. Reg. at 50259. Although the 2016 regulations beckoned applicants to come forward and assured them that their applications would not be used to their detriment, ICE's current policy of ambushing applicants at their interviews is in direct conflict with those assurances.

**D.     Petitioners state a claim based on the equal protection guarantees of the Due Process Clause.**

Petitioners have stated a claim that the detention and removal of people applying for provisional waivers is motivated by discriminatory animus, and therefore violates the equal protection guarantees of the Fifth and Fourteenth Amendments. Am. Compl. ¶¶ 110-111, 121-122. Respondents argue that this claim is too "conclusory" to survive a motion to dismiss, ECF No. 44 at 17 (citing *Iqbal v. Ashcroft*, 556 U.S. 662, 676-678 (2009)), but the allegations and record supporting this claim are, sadly, abundant.

The Trump Administration's statements and actions—from its termination of Temporary Protected Status (TPS) and Deferred Action from Childhood Arrivals (DACA) for approximately

one million lawfully present individuals, to its attacks on lawful family-based immigration, to its

restrictions on the naturalization of permanent residents in the armed services—readily

substantiate the allegation that it intends to prevent nonwhite individuals from becoming

Americans, to harm individuals who are nationals of predominantly nonwhite countries, to

extend that harm to their U.S. citizen family members.  Am. Compl. ¶¶ 110-111.  Indeed,

President Trump has called for more immigration from Norway, while explaining that

immigrants from countries with nonwhite populations are undesirable.  *Id.* ¶ 111.  He has

pardoned a sheriff who violated a court order barring him from racially profiling Latinos in

executing removals.  *Id.*  He has declined to criticize white nationalist demonstrators.  *Id.*  And

President Trump and other Administration officials have voiced strong concerns about so-called

"chain migration," which allows immigrants to gain lawful status and then sponsor their family

members.  *Id.* ¶ 110.  These realities go well beyond the allegations in the complaint dismissed in

*Iqbal*, 556 U.S. at 676-678, and support Petitioners' claim that Respondents' sabotage of the

provisional waiver process is the product of animus.  The Administration's actions appear

calculated to cause noncitizens to fear applying for waivers, to cause them to leave or be

removed from the U.S., and to cause their U.S. citizen spouses and children to follow them.  *See*

*Batalla Vidal v. Nielson*, 291 F. Supp. 3d 260, 277 (E.D.N.Y. 2018) (holding that petitioners

stated equal protection claim because President Trump's statements were "sufficiently racially

charged, recurring, and troubling as to raise a plausible inference that the decision to end the

DACA program was substantially motivated by discriminatory animus").

Although Respondents appear to question whether "extrinsic statements" can support

Petitioners' allegation of discriminatory purpose, *see* ECF No. 44 at 18, it is hornbook law that

they can.  *See Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960) (invalidating boundary drawn

around the city of Tuskegee as motivated by race); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-374 (1886) (invalidating conviction of Chinese national prosecuted in pattern of discriminatory enforcement of San Francisco ordinance concerning laundries); *Raso v. Lago*, 135 F.3d 11, 16 (1st Cir. 1998) ("[G]overnment action taken out of hostility to a racial group can be condemned out of hand ...."). Although Respondent Trump has argued elsewhere that First Amendment case law prohibits the use of extrinsic evidence to prove animus when the President excludes noncitizens who are outside the United States, Respondents have not argued in this case that equal protection case law prohibits the use of extrinsic evidence when the President takes adverse action against noncitizens and U.S. citizens who are on U.S. soil and who are the express beneficiaries of an existing regulation. Br. for Petitioners at 16, *Trump v. Hawaii*, No. 17-965 (U.S. argued Apr. 25, 2018), 2018 WL 1050350 (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972)). Petitioners, accordingly, have stated a claim that Respondents' policy and practice concerning the provisional waiver process constitutes unconstitutional discrimination based on race and national origin.[11]

## III.   Petitioners State Claims of Unlawful Detention.

Respondents also argue that Petitioners have failed to state a claim with respect to the detention of Ms. Lucimar de Souza. ECF No. 44 at 10-13. Petitioner's detention-only claims were addressed in part at the May 8, 2018 hearing, during which the Court held that Ms. de

---

[11] Respondents also argue that the appropriate remedy for this claim would be to remove white noncitizens along with nonwhite noncitizens. ECF No. 44 at 19 (citing *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017)). But that argument presents no solution for a claim that removal practices are caused by animus. Nor do questions of remedy bear on whether Petitioners have stated a claim. *Id.* (holding that petitioners' equal protection rights had been violated before considering the appropriate remedy).

Souza had been denied procedural due process.  The Court's decision confirms that Petitioners' claims of unlawful detention should not be dismissed.

> **A.**   **Petitioners state a claim for violation of their due process rights not to be detained without an adequate determination of dangerousness and flight risk.**

Respondents argue that detention is presumptively lawful for six months under *Zadvydas* regardless of the government's proper application of its own regulations, and, further, that those regulations require review proceedings only *after* a person has been detained for three months. ECF No. 44 at 11-12 (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)).  The government's interpretation would allow ICE to arrest any Petitioner any time without cause, regardless of how long she has lived peacefully in the United States, the needs of her family, and her attempts to avail herself of the legalization process provided by the provisional waiver regulations.  This interpretation is incorrect.

*First*, the six-month presumption under *Zadvydas* was premised on the government's compliance with its own regulations for periodic review of the need for continued detention after the expiration of the removal period under 8 U.S.C. § 1231(a)(2).  Indeed, the majority opinion in *Zadvydas* took for granted that the government would provide the procedural protections of 8 C.F.R. § 241.4.  *See Zadvydas*, 533 U.S. at 683 (describing review under regulations).  In other words, *Zadvydas* established a presumption of reasonableness as to the duration of detention that was *free of procedural defects*—but not a general presumption that every detention is reasonable. *See Alexander v. Attorney Gen.*, 495 Fed. App'x 274, 277 (3d Cir. 2012) ("A failure to satisfy *Zadvydas* may not necessarily be fatal to an alien's ability to prevail on an alternative ground predicated on regulatory non-compliance.").  As the Court has already found, and as discussed in greater detail below, *infra* Section III.B, ICE has failed to comply with procedural

requirements—thus erasing any presumption of reasonableness under *Zadvydas*. *See also* de Souza Traverse (ECF No. 45) at 10-12.

**Second**, *Zadvydas* requires that a person's detention be reasonably related to either effectuating his removal or protecting public safety, and mandates a review process once detention becomes discretionary. *Zadvydas*, 533 U.S. at 690. Detention under 8 U.S.C. § 1231(a) is "civil, not criminal," and is "nonpunitive in purpose and effect." *Id.* Although detention during the 90-day removal period is mandatory, 8 U.S.C. § 1231(a)(2), the default *after* the expiration of the removal period, under § 1231(a)(6), is supervised release. *Id.* § 1231(a)(3). Therefore, discretionary detention during that period requires justification. Without it, Respondents violate the due process requirement that—at a minimum—individuals be free from detention that is "arbitrary and capricious." *Zadvydas*, 533 U.S. at 721 (Kennedy, J., dissenting) ("[B]oth removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious. Where detention is incident to removal, the detention cannot be justified as punishment nor can the confinement or its conditions be designed in order to punish.").

The question raised in the Amended Complaint is whether the government's detention decision for Ms. Calderon, Ms. de Souza, and other similarly situated class members, is credibly related to the twin goals spelled out in *Zadvydas*, and whether the government has provided a review process that ensures this. *See Zadvydas*, 533 U.S. at 690 (noting government's claim that goals of § 1231(a)(6) were "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community"). As explained in Ms. de Souza's April 30, 2018 Traverse and during the May 8, 2018 hearing, for example, her detention had no apparent connection to either of those goals, and was therefore arbitrary and capricious. *See* de Souza Traverse (ECF No. 45) at 8-10. And the proposed class members, who may be detained

by ICE at any time, have a right to procedural protections immediately upon detention that

ensures that there are legitimate reasons to detain them.

### B.      Petitioners state a claim for violation of the INA and its regulations.

Similarly, the government is also incorrect that the post-order custody review regulations

under 8 C.F.R. § 241.4 do not apply until 90 days after the beginning of detention.  ECF No. 44

at 12-13.[12]   The government's reading is inconsistent with the language and purposes of the

regulations themselves.

Nothing in the regulations suggests that the review is triggered by the start of detention,

rather than the end of the removal period.  *See, e.g.*, 8 C.F.R. § 241.4(h)(1) (discussing

requirement for "records review prior to the expiration of the removal period").  And as the

Court noted during the May 8, 2018 hearing, "the regulations permit the Department of

Homeland Security to issue the 30-day notice and conduct a custody review as soon as possible

after the removal period, allowing for any unforeseen circumstances or emergent situation."

May 8, 2018 Ruling Tr. at 17-18 (citing 8 C.F.R. § 241.4(k)(2)(iv).  Furthermore:

> The fact that an alien is not in custody may well be good cause to
> postpone the review under the authority of Section 241.4(k)(3).  In
> addition, when notice is not practicable before an arrest, there would
> be good cause to allow the alien up to 30 days to submit materials
> to assist in the review.  However, as stated in Section 241.4(k)(3),
> reasonable care must be exercised to ensure that the alien's case is
> reviewed once the reason for the delay is remedied.

*Id.* at 18.  The government's interpretation, by contrast, is untethered from the regulatory text.

---

[12] During the May 8, 2018 hearing, this Court recognized that, even under the government's own
reading of the regulations, ICE had failed to provide an adequate record review within the first
90 days of Ms. de Souza's detention and was therefore in violation of the regulations and Ms. de
Souza's due process rights.  May 8, 2018 Ruling Tr. at 14 ("In view of the undisputed violations
of Section 241.4, De Souza is entitled to relief under Section 2241.").

Moreover, the government is incorrect that its narrow reading of the regulations deserves *Auer* deference.  ECF No. 44 at 13.  The fact that the government has identified no basis for its interpretation outside of this litigation—as well as its apparent failure to apply its interpretation to detainees with any consistency—strongly indicates that deference is inappropriate. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012).

Ms. de Souza and Ms. Calderon were entitled to a custody review no later than thirty days after her detention began on January 30, 2018, and similarly situated class members are also entitled to timely custody review.[13]

### C.     Petitioners do not need to file an I-246 before bringing their claims.

Respondents also argue that Ms. de Souza failed to exhaust her administrative remedies because she did not file Form I-246.  ECF No. 44 at 10-11.  But exhaustion is not required when challenging immigration detention in the habeas context.  *See de Souza Traverse (ECF No. 45) at* 6-7; *see also Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010); *Doe v. Smith*, No. 17-11231-LTS, 2017 WL 6509344, at *6 n.6 (D. Mass. Dec. 19, 2017), *Sengkeo v. Horgan*, 670 F. Supp. 2d 116, 121 (D. Mass. 2009).

### CONCLUSION

Respondents' motion to dismiss should be denied.

---

[13] Consistent with their arguments in Section III.A, *supra*, Petitioners do not concede that the procedures under Section 241.4 are adequate for the protection of Petitioners' and class members' constitutional rights.  To be clear, Petitioners and class members are entitled to protections *beyond* those that must be granted to every detainee with a final order of removal. Detention of individuals in the process of seeking lawful permanent resident status cannot be presumptively reasonable—even if all of the Section 241.4 procedures are followed—because the government cannot be presumed to have any interest in the removal of people who may soon become lawful permanent residents, and individuals presenting themselves for legalization cannot be presumed to be flight risks during the pendency of the application process.  However, the Court does not need to reach that question for purposes of resolving the motion to dismiss.

Respectfully submitted this 21st day of May, 2018.

                                              /s/ Kevin S. Prussia

Matthew R. Segal (BBO # 654489)               Kevin S. Prussia (BBO # 666813)
Adriana Lafaille (BBO # 680210)               Michaela P. Sewall (BBO # 683182)
AMERICAN CIVIL LIBERTIES UNION                 Jonathan A. Cox (BBO # 687810)
FOUNDATION OF MASSACHUSETTS, INC.              Stephen Provazza (BBO # 691159)
211 Congress Street                           Colleen M. McCullough (BBO # 696455)
Boston, MA 02110                              WILMER CUTLER PICKERING
(617) 482-3170                                   HALE AND DORR LLP
                                              60 State Street
Kathleen M. Gillespie (BBO # 661315)          Boston, MA 02109
Attorney at Law                               Telephone: (617) 526-6000
6 White Pine Lane                             Facsimile:  (617) 526-5000
Lexington, MA 02421                           kevin.prussia@wilmerhale.com
(339) 970-9283                                michaela.sewall@wilmerhale.com
                                              jonathan.cox@wilmerhale.com
                                              stephen.provazza@wilmerhale.com
                                              colleen.mccullough@wilmerhale.com

                                              *Attorneys for Petitioners*

31

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2018, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

/s/  Kevin S. Prussia
Kevin S. Prussia