# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al.,<br><br>Petitioners,<br><br>v.<br><br>KIRSTJEN M. NIELSEN, et al.,<br><br>Respondents. | Civil Action No. 1:18-cv-10225-MLW<br><br>**RESPONDENTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................2

ARGUMENT .................................................................................................................................2

    I.     PETITIONERS' CLAIMS ARE UNDENIABLY MOOT. ..........................................2

    II.    SECTION 1252 OF TITLE 8 REQUIRES DISMISSAL OF THESE PETITIONS. ....4

    III.   DETAINING AND REMOVING THE ALIEN PETITIONERS IS NOT A VIOLATION OF THE UNLAWFUL PRESENCE WAIVER REGULATIONS. ........7

    IV.   PETITIONERS FAIL TO STATE A VALID CLAIM UNDER THE DUE PROCESS CLAUSE. .........................................................................................................................9

    V.    PETITIONERS' APA CLAIMS ARE BARRED BY SECTION 1252(G); FURTHERMORE, DHS HAS NOT ENGAGED IN ANY RULEMAKING. ...........11

    VI.   PETITIONERS CANNOT STATE AN EQUAL PROTECTION CLAIM. ...............12

    VII.  PETITIONERS CANNOT ESTABLISH THAT THEIR DETENTION WOULD BE UNLAWFUL. ..................................................................................................................13

CONCLUSION ............................................................................................................................15

CERTIFICATE OF SERVICE ....................................................................................................17

**INTRODUCTION**

This Court lacks jurisdiction over Petitioners' claims because the sole relief authorized by 28 U.S.C. § 2241—release from any unlawful detention—has already been granted, rendering Petitioners' claims now moot. This Court should dismiss Petitioners' remaining claims because they are nothing but back-door challenges to their final orders of removal, which must be brought in the proper court of appeals pursuant to section 1252. Alternatively, Petitioners fail to state any colorable equal protection or due process claim that would support a stay of execution of their removal orders because it is well recognized that aliens with final orders of removal do not have a due process right to remain in the United States. The unlawful presence waiver regulations do not create such a right because the express language of the regulation denies as such. Furthermore, removing the alien Petitioners does not invade the right to marriage just as merely marrying a U.S. citizen does not give an alien petitioner a due process right to live in the United States. Additionally, Petitioners' claims are not reviewable under the APA because the decision to execute a removal order is discretionary and there has been no change to the unlawful presence regulations that would require notice and comment rulemaking. For these reasons, this Court should dismiss the alien Petitioners' habeas petitions and the Petitioners' claims for class-wide relief.

**ARGUMENT**

**I.    PETITIONERS' CLAIMS ARE UNDENIABLY MOOT.**

The parameters of this Court's habeas jurisdiction are defined by *Zadvydas v. Davis,* 533 U.S. 678 (2001). Absent facts that present a live case or controversy within those parameters, this Court does not have jurisdiction over Petitioners' claims. *See Clark v. Martinez,* 543 U.S. 371, 376 (2005). Petitioners rely heavily on *Clark* in an attempt to defeat Respondents' mootness argument. *See* ECF No. 79 at 6. The *Clark* Court found that a live case or controversy existed, despite the

1

petitioner's release on parole; however, that petitioner had claimed that there was no significant likelihood of his removal in the reasonably foreseeable future ("SLRRFF"). *Clark,* 543 U.S. at 376 & n.3. These circumstances are not present here because Petitioners have presented no facts supporting a lack of SLRRFF. Instead, Petitioners rely on the erroneous assertion that any future detention (and removal) would be unlawful as long as they are eligible to apply for an unlawful presence waiver from within the United States.[1] However, as discussed *infra*, section 1252 strips this Court of jurisdiction to hear those claims. Simply put, none of the Petitioners are in custody and any future detention is not only speculative, but would also not be authorized under 8 U.S.C. § 1231(a)(6) until they can prove no SLRRFF. *Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002) (remanding to the district court to assess "collateral consequences of the underlying proceeding" prior to the REAL ID Act which clearly stripped district courts "collateral consequence" jurisdiction); *see also Ishak v. Gonzales*, 422 F.3d 22, 29 (1st Cir. 2005). Therefore, their claims are moot and should be dismissed. *See id.*

Similarly, the "capable of repetition, yet evading review" exception does not apply. This is a "recognized, albeit narrow, exception to the general principles of mootness." *Cruz v. Farquharson,* 252 F.3d 530, 534 (1st Cir. 2001). In cases where "no class has been certified, the exception pertains only if there is some demonstrated probability that the same controversy,

---

[1] Indeed, "for good reason," Respondents do not make a mootness argument concerning Petitioner's provisional waiver claims. *See* ECF No. 79. Doing so would conflate the mootness issue with the separate jurisdictional issue under section 1252. This Court lacks jurisdiction over the original habeas action because Petitioners are not in custody and any future detention would be lawful. *See Clark*, 543 U.S. at 376. This Court lacks jurisdiction over Petitioner's remaining claims, not because they are moot, but rather because section 1252 precludes it. *See e.g., Pelletier v. United States,* 653 F. App'x 618, 622 (10th Cir. 2016) ("To the extent that [petitioner] seeks modification or release from the conditions of his bond, 8 U.S.C. § 1226(e) expressly bars [jurisdiction] . . . To the extent [petitioner] seeks release from his removal proceedings, 8 U.S.C. § 1252(g) strips courts of jurisdiction . . . Because the district court could not provide relief to [petitioner], Defendants were entitled to judgment as a matter of law . . . ).

2

involving the same parties will reoccur." *Id.* Ordinarily, even when the case is brought as a putative class action, it must be dismissed as moot if the named plaintiffs' claims become moot. *Id.* at 533 (citing *Arnold v. Panora,* 593 F.2d 161, 164 (1st Cir. 1979); *Cicchetti v. Lucey,* 514 F.2d 362, 365-66 (1st Cir. 1975)). Additionally, even if the named class members can show that the controversy is likely to reoccur, the controversy must also evade review. *Id.* at 535. The First Circuit does not recognize a distinct "inherently transitory" exception to mootness; rather, evading review "necessitate[s] a showing that the claims are inherently transitory." *Id.* at 535.

Here, nothing prevents the alien Petitioners from seeking habeas relief if they are taken into custody and detained at some unidentified point in the future. In fact, this Court heard and ruled on, at least partially, Ms. de Souza's and Mr. Junqueira's claims of unlawful detention prior to their release. ECF No. 64; May 8, 2018 Ruling Tr. at 12:23. For that reason, "there is no realistic threat that *no trial court ever* will have enough time to decide the underlying issues (or, at least, to grant a motion for class certification) before a named plaintiff's individual claim becomes moot." *Id.* (emphasis added). The First Circuit made clear that, even when the allegations are serious, "mootness goes to the federal courts' jurisdiction" and, if it exists, courts should go no further. *Id.* at 536. Accordingly, this Court should dismiss the complaint as moot.

## II. SECTION 1252 OF TITLE 8 REQUIRES DISMISSAL OF THESE PETITIONS.

Petitioners' claim that they do not seek to challenge the validity of an order of removal is merely a matter of semantics without legal distinction. Petitioners seek to stay their orders of removal, which may only be granted — by the proper forum — if there is some basis to conclude their removal orders are invalid and should not be executed. *See Nken v. Holder,* 556 U.S. 418 (2009) (laying out the standard circuit courts must use when determining whether to grant a stay of removal); 8 C.F.R. § 1003.23 (providing that a stay of execution of a removal order may be

3

granted by the Immigration Judge, the Board, or an authorized officer). In determining whether a claim is barred by 8 U.S.C. § 1252(b)(9), this Court must "look through such easy evasions as creative labeling and consider the fundamental nature of the claims asserted," and should not think "that aliens can dodge the channeling machinery of section 1252(b)(9) simply by draping the individual claims in the mantle of a class action." *Aguilar,* 510 F.3d at 17. Here, Petitioners argue that their final orders of removal *are not valid and enforceable* until they have had the full opportunity to apply for an unlawful presence waiver. This is precisely the type of "creative labeling" that would result in a "collective end run[] around congressional directives" and should be denied. *See Aguilar,* 510 F.3d at 17.

Moreover, judicial review of these claims is available in a petition for review, despite Petitioners' claim to the contrary. *See* ECF No. 79 at 11. While Petitioners are outside the 90-day filing period for a motion to reopen, they can all seek sua sponte reopening before the Board of Immigration Appeals ("BIA") or the immigration court. 8 C.F.R. § 1003.2(a) (providing that the BIA may reopen at any time); 8 C.F.R. § 1003.23(b)(1) (providing that the immigration judge may reopen at any time). If Petitioners' motions for sua sponte reopening are denied and administratively exhausted, they may appeal to the proper court of appeals through a petition for review, especially because Petitioners' claims are constitutional in nature. *See e.g., Matias v. Sessions,* 871 F.3d 65, 68-69 (1st Cir. 2017)[2]; *Bonilla v. Lynch,* 828 F.3d 1052, 1061-65 (9th Cir. 2016) (holding jurisdiction exists with regard to a sua sponte denial where the claims were

---

[2] In *Matias,* the First Circuit did not decide the precise issue of whether an alien may appeal the denial of a sua sponte motion to reopen because the petitioner did not "bring this jurisdictional point to [its] attention." *Matias,* 871 F.3d at 69. However, the Court was clear that when an alien makes constitutional claims in a sua sponte motion to reopen, no First Circuit precedent absolutely precludes the Court from examining those constitutional claims. *Id.* The Court also recognized that other circuit courts have recently held that constitutional and legal claims may be examined in a petition for review of a denial of a sua sponte motion to reopen. *Id.*

4

constitutional or legal in nature); *Butka v. U.S. Att'y Gen.,* 827 F.3d 1278, 1285-86 (11th Cir. 2016); *Salgado-Toribio v. Holder,* 713 F.3d 1267, 1271 (10th Cir. 2013); *Pllumi v. Att'y Gen.,* 642 F.3d 155, 160 (3d Cir. 2011); *Mahmood v. Holder,* 570 F.3d 466, 469 (2d Cir. 2009); *Cevilla v. Gonzales,* 446 F.3d 658, 660 (7th Cir. 2006); *Tamenut v. Mukasey,* 521 F.3d 1000, 1005 (8th Cir. 2008); *Nawaz v. Holder,* 314 Fed. Appx. 736, 737 (5th Cir. 2009). Accordingly, there is nothing that would preclude Petitioners' claims from being heard in the First Circuit.

Further, Petitioners cannot evade the jurisdiction-stripping provisions of section 1252(g) with creative pleading. At the heart of Petitioners' requested relief is a stay of removal; yet, this relief would directly interfere with ICE's ability to execute their removal orders and is precluded by section 1252(g). *See Tejada v. Cabral*, 424 F .Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—*be they stays or permanent injunctions*—were to be issued by the appropriate court of appeals.") (emphasis added). Petitioners' characterization of their claims as asserting the "mandatory constraints on that discretion" is not persuasive because whatever they claim to be challenging, the relief sought would *still* interfere with the government's *execution* of a valid removal order. *See* ECF No. 79 at 12. Even under the Supreme Court's narrow interpretation of section 1252(g) in *Reno v. AADC,* 525 U.S. 472, 487 (1999), all the relief petitioners request would "impose judicial constraints upon prosecutorial discretion" in executing removal orders. Additionally, the cases Petitioners cite from outside the First Circuit involved legal challenges distinct from the ones made here, and most of which were decided prior to the REAL ID Act amendments in 2005 that "eliminated habeas review as to most types of immigration claims." *See Enwonwu v. Gonzales,* 438 F.3d at 33; *see e.g., Madu v. U.S. Att'y Gen.,* 470 F.3d 1362 (11th Cir. 2006) (challenging the very existence of an order of removal); *Jama v. I.N.S.,* 329 F.3d 630, 632-33 (8th Cir. 2003) (holding section 1252(g) did not

5

apply in part because the alien was *unable to* present the claim through a petition for review); *Flores-Ledezma v. Gonzales,* 415 F.3d 375, 380 (5th Cir. 2005) (holding section 1252(g) did not strip jurisdiction over a constitutional claim brought in a *petition for review*, *not in a habeas*); *United States v. Hovsepian,* 359 F.3d 1144, 1155 (9th Cir. 2004) (challenging the retroactivity of a ground of removability).

Moreover, Petitioners' argument that section 1252 is unconstitutional as applied to them due to the Suspension Clause is meritless and should be rejected. As an initial matter, this argument appears nowhere in Petitioners' first amended complaint (ECF No. 27); therefore, this Court should decline to consider an argument that was not properly pled and appears for the first time in briefing. Nonetheless, Petitioners cannot use the Suspension Clause to pick and choose where they bring their claims.[3] In *Devitri v. Cronen,* 290 F. Supp. 3d 86, 91 (D. Mass. 2017), the plaintiffs' claims were premised on their *statutory right* to file a motion to reopen and the United States' "obligation not to remove aliens to countries where they will be tortured." Here, on the other hand, the Petitioners do not claim they are being effectively deprived of a statutory right; nor do they claim they risk persecution if removed. *See* ECF No. 50 at 25-26. Even if *Devitri* were factually similar to this case, the Suspension Clause is still not violated because, in the First Circuit, a motion to reopen is a sufficient substitute for a habeas remedy. If removed, Petitioners could pursue their motion to reopen from outside the United States, asserting all the claims they present here. *See Santana v. Holder*, 731 F.3d 50, 51 (1st Cir. 2013) ("The post-departure bar cannot prevent a noncitizen from invoking his statutory right to file a motion to reopen."). Mere inconvenience is

---

[3] Much of Petitioners' suspension clause argument is predicated on their incorrect assertion that review of their claims is unable through other means. As discussed *supra,* Petitioners' claims can be brought in a sua sponte motion to reopen which may be appealed to the proper court of appeals. *See* 8 C.F.R. § 1003.2(a); 8 C.F.R. § 1003.23(b)(1).

6

insufficient to constitute a violation of the Suspension Clause. Accordingly, this argument should also be rejected.

### III. DETAINING AND REMOVING THE ALIEN PETITIONERS IS NOT A VIOLATION OF THE UNLAWFUL PRESENCE WAIVER REGULATIONS.

It is a well-established principle of immigration law that the availability of immigration benefit applications have no effect on the government's authority to execute a final lawful order of removal. *Chun Xin Chi v. Holder,* 600 F.3d 6, 11 (refusing plaintiff's due process claim that was based on the BIA's denial of his motion to reopen, *even when he was facially eligible to adjust status*). This principle remains true even when the purpose of the immigration benefit is to allow aliens with final orders of removal an opportunity to apply. *See id.*[4] If Congress intended to stay the removal of, or allow deferred action for, the alien Petitioners, it could have done so, like it did in other areas of the INA and its regulations. *Compare* 8 U.S.C. § 1182(a)(9)(A), (a)(9)(B) *with* 8 U.S.C. § 1154(a)(D)(i)(II) ("Any individual described in subclause (I) is eligible for deferred action and work authorization."); 8 U.S.C. § 1227(d) (allowing the agency to grant a stay of removal for those who can show a prima facie case for approval of a T or U visa); 8 C.F.R. § 1003.6 (allowing the BIA to stay deportation while an appeal is pending). Instead, the statutory scheme in place makes Congress' intent clear that final orders of removal *shall* be executed and there is no exception in the applicable statutes. *See* 8 U.S.C. § 1231(a). The text of the regulation interpreting the unlawful presence waiver further supports Congress' directive. *See* 8 C.F.R. § 212.7(e)(2)(i). Furthermore, when promulgating the final rule, the agency denied suggestions that deferred action and interim benefits be given to waiver applicants — relief almost identical to the relief Petitioners seek here. 81 Fed. Reg. 50243, 50249-50 (explaining that the U.S. Department of Homeland

---

[4] Adjustment of status is another immigration benefit that expressly allows an individual to apply for a benefit from *within* the United States. *See* 8 U.S.C. § 1255.

7

Security does not consider it appropriate to confer any interim benefits to a person applying for the waiver because "the purpose is not to prolong an applicant's unlawful presence in the United States" and denying a commenter's suggestion that DHS grant applicants deferred action).

Indeed, the only case Petitioners cite on this issue in their opposition is *Saint Fort v. Ashcroft,* 329 F.3d 191, 203 (1st Cir. 2003), which only stands for the proposition that when a *statute* makes an alien eligible for a certain form of relief, the agency must at least consider the application. *Id.* Here, Petitioners make no claim that USCIS has stopped accepting unlawful presence waiver applications from aliens with final orders of removal. *See* ECF No. 79 at 16-17. Furthermore, the applicable regulation permits Petitioners to seek these waivers from anywhere the Petitioners may be residing; therefore, Petitioners are not being denied their right to seek the benefit of the statutory waiver. *See* 8 C.F.R. § 212.7. Accordingly, this Court should dismiss Petitioners' claim that Respondents would violate the INA and its regulations by detaining and removing the alien petitioners.

## IV. PETITIONERS FAIL TO STATE A VALID CLAIM UNDER THE DUE PROCESS CLAUSE

Petitioners fail to state a valid due process claim for relief. The alien Petitioners ask this Court to declare that they have a due process right to remain in the United States — despite their final lawful removal orders — due to (1) their familial relationship to U.S. citizens and (2) a regulation, the text of which denies blanket stays of removal for those applying. *See* ECF No. 79 at 17-18. The statutory scheme Congress set in place, including the implementing regulations, do not support this argument. Similarly, the U.S. citizen Petitioners do not have a right to reside in the United States with their alien spouses who have been ordered removed.

First, Petitioners cannot point to a single case where relation to a U.S. citizen has created a due process right to remain in the United States after being ordered removed. *See* ECF No. 79 at

17-20. While *Kerry v. Din,* -- U.S. --, 135 S. Ct. 2128 (2015), did not definitively answer the question of whether a citizen has a liberty interest in residing in the United Sates with his or her noncitizen spouse, the plurality, which is still persuasive authority, was clear that "there is no such constitutional right." *Id.*; *see Ali v. United States,* 849 F.3d 510, 515 n.3 (1st Cir. 2017). Moreover, the First Circuit in *Silverman v. Rogers,* 437 F.2d 102, 107 (1st. Cir. 1970), assuming there was a fundamental right to marriage, held that denying the alien a right to remain in the United States *did not* implicate the right to marriage. *Id.* ("It does not attack the validity of the marriage."). The Court decided this issue at the first step in the analysis, whether a right existed, not at the second step in the due process analysis, whether the process protecting the right is sufficient, as urged by Petitioners. *See* ECF No. 79 at 20 ("Respondents' conduct with respect to the petitioner in *Silverman* possessed the central thing that is lacking in Petitioner's cases: individualized consideration . . ."). Furthermore, to hold that a relationship with a United States citizen confers some due process right upon an alien would be nonsensical in light of the statutory scheme in place because it would punish aliens who comply with their orders of removal and do not have the opportunity to marry U.S. citizens. *See Smith v. I.N.S.,* 684 F. Supp. 1113, 1118 n.2 (D. Mass. 1988) ("Obviously, an alien cannot claim a constitutional right to remain in this country because of the existence of a marital relationship with a citizen.").[5]

---

There is a "strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *See INS v. Abdu,* 485 U.S. 94, 107 (1988). Freely granting aliens the right to remain in this country after their final orders of removal are entered permits "endless delay of deportation by aliens" who use their illegal time in the United States as a creative shield to deportation. *See id.* at 108 (quoting *INS v. Jong Ha Wang,* 450 U.S. , 139, 144, n. 5 (1981)). If the "[agency's] discretion is to mean anything, it must be that the [agency] has some latitude" in deciding who is entitled to a stay of removal. *See id.*

The crux of Petitioners' argument, however, is that the *purpose* of the regulations in 8 C.F.R. § 212.7 creates a due process right to remain in the United States even when the *text* of the regulations expressly denies such relief. *See* 8 C.F.R. § 212.7(e)(2)(i) ("A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a *period of stay* authorized by the Secretary."). While Petitioners point to the purpose of the regulations set forth in the Federal Register, they ignore this plain text and other parts of the Federal Register where the agency specifically denied suggestions to extend deferred action to those applying for the waiver stateside. 81 Fed. Reg. 50243, 50249-50 (explaining that the U.S. Department of Homeland Security does not consider it appropriate to confer any interim benefits to a person applying for the waiver because "the purpose is not to prolong an applicant's unlawful presence in the United States"). An individual cannot have a "legitimate claim of entitlement" to something that the regulation's plain language denies. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *see also Cruz-Camey v. Gonzalez*, 504 F.3d. 28, 29 n.2 (1st Cir. 2007 (attempts "to circumvent the jurisdictional bar" by recasting a challenge to an administrative discretionary judgment as alleged due process violations "will not wash.").

V.  **PETITIONERS' APA CLAIMS ARE BARRED BY SECTION 1252(G); FURTHERMORE, DHS HAS NOT ENGAGED IN ANY RULEMAKING.**

Petitioners' APA claim is nothing more than a challenge to ICE's discretionary decision to execute the removal orders of the alien Petitioners and, as such, is barred by section 1252(g). *See* 8 U.S.C. § 1252(g) (prohibiting courts from hearing claims challenging ICE's authority to execute removal orders). Indeed, Petitioners challenge ICE's decision *not* to grant deferred action to the alien Petitioners, which the Supreme Court held was exactly one of the "discretionary determinations" that section 1252(g) was designed to protect. *See AADC*, 525 U.S. at 471 ("Section 1252(g) seems clearly designed to give some measure of protection to "no deferred action"

10

decisions *and similar discretionary determinations,* providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed). Furthermore, because a grant or denial of deferred action is a "discretionary determination[]," it is not reviewable under the APA. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); 5 U.S.C. § 701(a)(2) (noting that there is no APA review of agency action committed to agency discretion by law).

Additionally, there has been no change to the regulations interpreting the unlawful presence waiver that would give rise to APA review. Petitioners have not alleged that USCIS has rejected Form I-601A applications from people eligible under the 2016 final rule. Therefore, Petitioners' reliance on cases where an agency disregarded regulations on the books is ineffective. *See FCC. V. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009). The 2016 final rule in 8 C.F.R. § 212.7(e) make clear that the rules were not intended to stay the removal of aliens with final orders of removal, and those rules have not been changed or ignored by the relevant agencies.

Finally, Petitioners incorrectly refer to the Federal Register comments to support their claim. The Federal Register states that the government "will not *initiate removal proceedings* against individuals who are not enforcement priorities *solely* because they filed or withdrew provisional waiver applications, or because USCIS denied such applications." 81 Fed. Reg. at 50249 (emphasis added). The alien Petitioners' removal proceedings ended long ago; therefore, no removal proceedings were recently *initiated*. The Petitioners are subject to enforcement not *solely* because they filed provisional waiver applications, rather because they have legal, final orders of removal. Accordingly, their cited portions of the Federal Register do not support their argument. For these reasons, Petitioners fail to state a valid claim under the APA.

VI.     **PETITIONERS CANNOT STATE AN EQUAL PROTECTION CLAIM.**

11

Executive Order 13768 does not mention race or national origin as a basis for removal. *See* Executive Order 13768 ("We cannot faithfully execute the immigration laws of the United States if we exempt classes or categories of removable aliens from potential enforcement."). The Executive Order only reiterates Congress' statutory instruction: to remove aliens who have valid final orders of removal. *See* 8 U.S.C. § 1231. As between this "obvious alternative explanation for the arrests and the purposeful, invidious discrimination . . . discrimination is not a plausible conclusion." *Ashcroft v. Iqbal,* 556 U.S. 662, 682 (2009). Furthermore, Respondents are entitled to the presumption of regularity, "and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *U.S. v. Armstrong,* 517 U.S. 456, 464 (1996) (holding that the presumption of regularity applies in the context of prosecutorial discretion); *see also Lutaaya v. Mukasey,* 535 F.3d 63, 71 (1st Cir. 2008) (applying the presumption of regularity in the immigration context). Petitioners cannot meet such a high standard by using extrinsic statements alone. This is true especially in light of the "facially legitimate and *bona fide* reason" the government has for removing the alien Petitioners. *See Campos v. I.N.S.,* 961 F.2d 309, 316 (1st Cir. 1992).[6] Therefore, this Court should dismiss Petitioners' equal protection claim.

### VII. PETITIONERS CANNOT ESTABLISH THAT THEIR DETENTION WOULD BE UNLAWFUL.

---

[6] In *Campos,* the First Circuit analyzed whether Congress' *discretionary* decision to treat crimes differently violated the equal protection guarantees of the Fifth Amendment. *Campos,* 961 F.2d at 316. In determining the legality of Congress' decision, it looked to whether there was a "facially legitimate and bona fide reason" for the discretionary decision, found that there was, and upheld the discretionary decision. *Id.* The decision here, to execute a removal order, is also a discretionary decision. *See AADC,* 525 U.S. at 471. The alien Petitioners all have old final orders of removal, which most of the alien Petitioners actively absconded from. This provides a "facially legitimate and *bona fide* reason" for the Respondents' decision to execute their removal order. *See Campos,* 961 F.2d at 316. Accordingly, this Court should not look any further behind this exercise of discretion, especially in the face of Petitioners' conclusory equal protection claim. *See id.*

12

The alien petitioners may be lawfully detained under section 1231(a)(6) unless and until Petitioners can show that their detention is unlawful under the Supreme Court's decision in *Zadvydas v. Davis,* 533 U.S. 678, 701 (2001). Petitioners fail to present any evidence that they are not likely to be removed in the reasonably foreseeable future *and* none of the petitioners are currently detained. As a result, any future detention of the alien Petitioners would be related to "assuring the alien's presence at the moment of removal" and lawful under section 1231(a)(6). *Zadvydas,* 533 U.S. at 701. Accordingly, Petitioners cannot maintain any claim of unlawful detention in this Court.

Furthermore, Petitioners are not entitled to a determination of flight risk and dangerousness prior to detention, or the equivalent of a bond hearing. Petitioners cherry-pick language from *Zadvydas* while conveniently ignoring the constitutional avoidance canon that the Supreme Court used to interpret section 1231(a)(6). Perhaps, Petitioners ignore the canon of constitutional avoidance because, in light of the Supreme Court's decision in *Jennings v. Rodriguez,* 138 S. Ct. 830 (2018), their argument fails. In *Zadvydas,* the Court applied the constitutional avoidance canon and concluded that, if section 1231(a)(6) were interpreted to permit indefinite detention, it would be unconstitutional. *Zadvydas,* 533 U.S. at 697-99. To avoid holding section 1231(a)(6) unconstitutional, the Court read the statute to have a six-month period of presumptively reasonable detention, after which an alien should be released on conditions if the alien can show that there is no SLRRFF. *Zadvydas,* 533 U.S. at 701. However, the Supreme Court made clear in *Jennings* that "*Zadvydas* represents a notably generous application of the constitutional-avoidance canon" and courts may not "transmute existing statutory language into its polar opposite." *Jennings*, 138 S. Ct. at 846. Despite this, Petitioners argue that this Court should *go further* than the Court in *Zadyvdas* and import a bond hearing requirement, or its equivalent, into 1231(a)(6) to avoid a

13

constitutional violation. *See* ECF No. 79 at 27. Yet, that is not how the canon of constitutional avoidance works. A court "must interpret the statute, not rewrite it." *Id.* at 836. Section 1231(a)(6), like the detention statutes at issue in *Jennings*, does not "say[] anything whatsoever about bond hearings." *Id.* at 842. Therefore, this Court should not go further than the Court did in *Zadvydas* and rewrite section 1231(a)(6) to require bond hearings or a determination of dangerousness and flight risk where the statute says *nothing* of that sort. *See id.* Simply put, "[t]he constitutional-avoidance canon does not countenance such textual alchemy." *Id.* at 846.[7]

Finally, DHS's interpretation of 8 C.F.R. § 241.4 is consistent with both the regulatory text, which continuously refers to a 90-day time period and Congress' intent that DHS should have at least 90 days to accomplish removal. *See* 8 U.S.C. § 1231(a); 8 C.F.R. § 241.4(k)(2)(ii) (referring to the "90-day review" and whether the alien has been "removed within three months of the district director's decision"). DHS has furthermore established before this Court, that this interpretation is the reasoned interpretation of the agency that is entitled to some deference, not merely a litigating position.[8] *See Auer v. Robbins,* 519 U.S. 452, 457 (1997); ECF No. 78 at Ex. A.

---

[7] At any rate, any notion of the legal necessity for an assessment of "dangerousness and flight risk" with respect to aliens subject to final orders of removal whom DHS intends and is able to remove from the United States in compliance with 8 U.S.C. § 1227(a) is unfounded in law. The *Zadvydas* Court clearly stated with respect to the post-removal period detention authorized under 8 U.S.C. § 1231(a)(6) that, "[a]fter all, the provision is part of a statute that has as its basic purpose effectuating an alien's removal." *Zadvydas,* 533 U.S. at 697. Whether an alien subject to a final removal order also happens to be dangerous, or not dangerous, or a flight risk, or not a flight risk, does not control the possibility of the alien's removal. Otherwise -- and as Petitioners might have it -- any non-dangerous and geographically stable final-order alien could perpetually exempt himself from execution of his removal order. There is no basis in law for such an implausible re-writing of the immigration removal statute.

[8] Respondents' interpretation of this regulation has been consistent since the beginning of this litigation. In its Motion to Dismiss the First Amended Complaint, Respondents asserted that Ms. de Souza was not entitled to a post order custody review because an alien is not entitled to a post order custody review "prior to their detention *or before they have been detained 90 days*." *See* ECF No. 40. at 12. At the time Respondents' motion was filed, Ms. de Souza had been detained for less than 90 days and accordingly was not yet entitled to a post order custody review under

14

Case 1:18-cv-10225-MLW   Document 96   Filed 06/14/18   Page 17 of 19

**CONCLUSION**

For these reasons, this Court should dismiss the Amended Class Action Complaint and Petition for Writ of Habeas Corpus.

---

DHS's interpretation of 8 C.F.R. § 241.4; *see id.* The same is true for Ms. Calderon at the time Respondents' first Motion to Dismiss was filed. *See* ECF No. 22.

15

DATED:  June 14, 2018                           Respectfully submitted,

CHAD READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

T. MONIQUE PEOPLES
Senior Litigation Counsel

/s/ Mary L. Larakers.
MARY L. LARAKERS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

ATTORNEYS FOR RESPONDENTS

## **CERTIFICATE OF SERVICE**

    I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

|  |  |
|---|---|
|  | /s/ Mary L. Larakers |
|  | Mary L. Larakers |
| Dated: June 14, 2018 | Trial Attorney |