**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, et al., <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW <br><br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY BRIEF IN SUPPORT OF PETITIONERS'**
**MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

Page

**INTRODUCTION**................................................................................................ 1

**ARGUMENT** .................................................................................................... 2

I.      Petitioners' detention claims are not moot........................................................2

II.     Section 1252 does not strip this court of jurisdiction ........................................4

        A.      Section 1252 does not apply. ................................................................4

        B.      Even if § 1252 applied, the Suspension Clause would still require
                jurisdiction. ..........................................................................................5

III.    Petitioners are likely to prevail on the merits of their provisional waiver claims. .............7

        A.      The government's detention and removal of noncitizen Petitioners and
                class members violate the INA and supporting regulations.....................................8

        B.      Respondents' detention and removal of noncitizen Petitioners violate
                due process. ..........................................................................................9

        C.      The government's detention and removal of noncitizen Petitioners and
                class members violate the APA. ..........................................................................10

IV.     Petitioners are likely to prevail on the merits of their claims of unlawful detention.........11

        A.      Petitioners have shown a likelihood of success on the merits of their claim
                that ICE's detention of Petitioners and class members violates due process. .......12

        B.      Petitioners have shown a likelihood of success on their claim that ICE's
                detention of Petitioners and class members violates the INA and its
                regulations. ..........................................................................................14

V.      Petitioners will suffer irreparable harm if detained or removed, the balance
        of equities tips in their favor, and an injunction is in the public interest. ...........................15

**CONCLUSION** ..............................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Addington v. Texas*,
    441 U.S. 418 (1979)................................................................................13

*Auer v. Robbins*,
    519 U.S. 452 (1997)................................................................................15

*Aziz v. Chadbourne*,
    No. 07-11806-GAO, 2007 WL 3024010 (D. Mass. Oct. 15, 2007) ........................................4

*Bah v. Mukasey*,
    521 F.3d 857 (8th Cir. 2008) ...................................................................5

*Diouf v. Napolitano*,
    634 F.3d 1081 (9th Cir. 2011) ...................................................................2

*El Badrawi v. Dep't of Homeland Sec.*,
    579 F. Supp. 2d 249 (D. Conn. 2008)...................................................................4

*Flores-Ledezma v. Gonzales*,
    415 F.3d 375 (5th Cir. 2005) ...................................................................4

*Foster v. Townsley*,
    243 F.3d 210 (5th Cir. 2001) ...................................................................4

*Hamama v. Adducci*,
    258 F. Supp. 3d 828, 838-842 (E.D. Mich. 2017) ...................................................................5

*Heckler v. Chaney*,
    470 U.S. 821 (1985)................................................................................10

*Ibrahim v. Acosta*,
    No. 17-cv-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018)...................................................................5

*Jennings v. Rodriquez*,
    138 S. Ct. 830 (2018)................................................................................13

*Judulang v. Holder*,
    565 U.S. 42 (2011)................................................................................10

*Mangual v. Rotger-Sabat*,
    317 F.3d 45 (1st Cir. 2003) ...................................................................3

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..........................................................................................13

*United States v. Nixon,*
    418 U.S. 683 (1974)............................................................................................6

*Oklahoma Tax Com'n v. Graham,*
    489 U.S. 838 (1989)............................................................................................7

*Rombot v. Souza,*
    296 F. Supp. 3d 383 (D. Mass. 2017) .............................................................14

*Saint Fort v. Ashcroft,*
    329 F.3d 191 (1st Cir. 2003)..............................................................................8

*Seid v. Nielsen,*
    No. 17-cv-06785, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018) ......................5

*Tejada v. Cabral,*
    424 F. Supp. 2d 296 (D. Mass. 2006) ...............................................................4

*Texas v. United States,*
    787 F.3d 733 (5th Cir. 2015) .............................................................................4

*Waldron v. I.N.S.,*
    17 F.3d 511 (2d Cir. 1993)...............................................................................14

*Zadvydas v. Davis,*
    533 U.S. 678 (2001). Dkt. No. 19 ...................................................................12

**Federal Statutes**

8 U.S.C. § 1151-1154 ............................................................................................10

8 U.S.C. § 1182................................................................................................6, 8, 9, 10

8 U.S.C. § 1229a(c)(7).............................................................................................6

8 U.S.C. § 1231(a)(1).............................................................................................15

8 U.S.C. § 1231(a)(6)..................................................................................11, 13, 14

8 U.S.C. § 1252..............................................................................................4, 5, 6, 7

**Rules**

Fed. R. Civ. P. 8(a)(1)..............................................................................................7

**Regulations**

8 C.F.R. § 212.7(e).............................................................................................5, 6, 8, 10

8 C.F.R. § 241.4 ....................................................................................... *passim*

*Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rul*e, 81 Fed. Reg. 50244 (July 29, 2016) ...............................................................9

## INTRODUCTION

This is a case of pressing equities. The noncitizen Petitioners—final-order noncitizens seeking lawful immigration status through their U.S. citizen spouses—have come perilously close to being forced out of the United States. Two have been detained, and all have had reason to fear that their families would be imminently torn apart. Immigration and Customs Enforcement (ICE) has not disavowed its intent to detain or remove them; this lawsuit is the only reason they are able to remain at liberty with their families. Indeed, at a check-in two days ago, ICE ordered Petitioner Lucimar de Souza to depart the U.S. by August 12, only to withdraw that command when ICE's counsel reminded its client of this Court's April 13 Order. Decl. of Stephen N. Provazza, Ex. A (Emails Regarding Ms. de Souza's Removal), Ex. B (Letter Regarding Ms. de Souza's Removal). Untold others who lack the protection of that order may have been detained or face departure orders that can separate them from their families for years.[1]

This Court has already held that ICE broke the law and violated due process in detaining Ms. de Souza for nearly 100 days without any meaningful review of her custody. Dkt. No. 95. Thus, one of the claims underlying Petitioners' preliminary injunction motion has already been proved. Petitioners are also likely to prevail on their remaining claims. When ICE turns a path to legalization into a minefield, it violates regulations that were expressly designed to keep final-order noncitizens and their families together *during* the process of seeking lawful status; it vitiates Petitioners' due process interests in those procedures and in the family unity that the regulation protects; and it violates the Administrative Procedure's Act's (APA's) proscriptions against arbitrary and capricious agency conduct and the *sub silencio* repeal of regulations. And

---

[1] Of the eight individuals arrested at CIS offices in January 2018, at least two have already been removed. Dkt. No. 95 at 26; Provazza Decl. Ex. C (Information on CIS Arrests, May 23, 2018).

detention itself, because it occurs with no meaningful determination of danger or flight risk, separately violates due process and ICE's own post-order custody regulations, 8 C.F.R. § 241.4.

In opposing preliminary injunctive relief, Respondents primarily contend that this Court cannot review Petitioners' claims because Petitioners have alternative forums, that ICE's actions are perfectly consistent with the regulations, and that this case is about nothing more than Petitioners' desire to avoid the "inconvenience" of pursuing their applications from abroad. These arguments are mistaken. Though the federal government may have become impervious to the pain suffered by families and children who are needlessly separated, the regulations are not. ICE is violating the law by deliberately interfering with Petitioners' eligibility to remain with their families while pursuing the legal process that these regulations provide, and there is no other forum in which Petitioners may seek redress from these violations. Because this Court has jurisdiction over their claims, and because Petitioners are likely to demonstrate that ICE's conduct is unlawful, preliminary injunctive relief should issue.

## ARGUMENT

### I. Petitioners' detention claims are not moot.

Petitioners' detention claims (Counts 5-6) are not mooted by the government's release of Ms. Calderon and Ms. de Souza. As Petitioners explained in their opposition to the motion to dismiss, the Supreme Court has held that a noncitizen's release from detention does not moot a habeas claim where the government does not disclaim its authority to re-detain the petitioner. Dkt. No. 79 at 4-8, *see also id.* at 6 (citing *Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005)); *Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011) (claim not mooted where petitioner was released and ICE continued to seek to remove him). That is true here.

Respondents argue that *Clark v. Martinez* is inapplicable because, in that case, the noncitizen had demonstrated that the government would be unable to remove him in the

foreseeable future.  Resps. Opp. to Pets. Mot. For P.I. (Dkt. No. 78) ("Resp. Br.") at 8.  But that

is merely a fact about *Martinez*, not an element of the Court's mootness analysis.  The relevant

circumstances in *Martinez* were like those here—the petitioner was released with the possibility

that he would be re-detained if, at a later time, the government had the authority and ability to

remove him.  Moreover, if it were true that Petitioners' removal is more likely than that of the

noncitizen in *Martinez*, that would only increase the likelihood that ICE would seek their

detention again soon, and that it would commit the same violations of law that it committed

before.

Finally, as Petitioners explained previously, this case is a class action, and could not

become moot simply because ICE released a named plaintiff before a decision on class

certification.  *See* Dkt. No. 79 at 7-8.[2]  Appropriately, the government has not argued that Acting

Director Brophy's "directive" ceasing the practice of arresting individuals at I-130 interviews

moots Petitioners' claims.  Nor could it.  The "directive" is, at best, informal, does not prevent or

discourage detention at any location other than a USCIS office, and could be rescinded at any

time by Department of Homeland Security (DHS) officials.[3]  Respondents have thus failed to

meet their "heavy" burden to demonstrate mootness.  *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60

(1st Cir. 2003).

---

[2] For example, although the Court has ruled that the government violated due process by failing
to timely provide a § 241.4 review to Ms. de Souza within 90 days of her detention, the Court
reserved judgment about whether the regulations required review as soon as possible after her
detention commenced.  *See* Hearing Tr. (May 8, 2018) at 105-107; Dkt. No. 95 at 49.  Without
further judicial intervention, ICE will continue detaining Petitioners and putative class members
for up to 90 days without any substantive evaluation of the need for such detention.  These
claims have not been mooted or resolved.
[3] Hearing Tr. (May 22, 2018) (Brophy) at 93:22-94:6; 98:22-24; 122:11-12; 122:16-18, 142:15-
22; Hearing Tr. (May 23, 2018) (Rutherford) at 65:22-24, 68:23-69:10; *id.* (Lyons) at 147:25-
148:7, 149:20-150:2.

## II.     Section 1252 does not strip this court of jurisdiction

As Petitioners explained in opposing the motion to dismiss, Dkt. No. 79 at 9-15, 8 U.S.C.

§ 1252 does not strip this Court of jurisdiction to decide whether Petitioners can be routinely

detained and removed while they are pursuing lawful status under the provisional waiver

regulations.  Respondents' arguments to the contrary are incorrect.

### A.     Section 1252 does not apply.

As Petitioners have previously explained, the jurisdictional provisions of § 1252 are

specific:  those in subsection (b)(9) apply only where a claim directly challenges the *validity of*

*an order of removal*; those in subsection (g) apply only where the claim challenges the

executive's decision not to favorably *exercise prosecutorial discretion*.[4]

Respondents reiterate the arguments made in support of their motion to dismiss, to which

Petitioners have already responded, *see* Dkt. No. 44 at 7-10; Dkt. No. 79 at 9-15; Resp. Br. at 11-

13, and make one additional argument: they imply that Petitioners could bring their claims in the

---

[4] The cases Respondents cite are inapplicable.  First, *Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006), interpreted § 1252(a)(2)(C), a provision not at issue in this case that limits jurisdiction in cases involving noncitizens removable by reason of having committed crimes.  *Id.* Second, in *Aziz v. Chadbourne,* No. 07-11806-GAO, 2007 WL 3024010, *2 (D. Mass. Oct. 15, 2007), there was no discussion of—and no apparent basis for—an argument that any decision by the Attorney General to remove the petitioner would exceed his discretion.  *Id.*  Third, *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001), concerned a *Bivens* claim for damages based on allegations that petitioner had been removed in retaliation for filing a mandamus action against the BIA.  *Id.*  *Foster* has been limited by the Fifth Circuit's subsequent decisions holding that § 1252(g) does not preclude jurisdiction over "challenges [to] the constitutionality of the statutory scheme allowing for . . . discretion."  *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005); *Texas v. United States*, 787 F.3d 733, 756 (5th Cir. 2015) (judicial review may be available, despite § 1252(g), where certain removal decisions "are not made on a case-by-case basis"); *see also El Badrawi v. Dep't of Homeland Sec.,* 579 F. Supp. 2d 249, 266 (D. Conn. 2008) (explaining that *Foster* is unpersuasive because it "relied heavily" on a 1999 case whose interpretation was rejected by *Reno v. American Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999)).  In any event, the petitioners' claim in *Foster*—unlike in this case—was that the decision to proceed with their removal was retaliatory and thus an improper use of agency discretion.  *See AADC*, 525 U.S. at 485 n.9.

court of appeals.  Resp. Br. at 11 n.6.  In fact, they cannot.  Section 1252(a)(1) gives courts of appeals jurisdiction *only* over petitions for review of orders of removal.  *See, e.g.*, *Bah v. Mukasey*, 521 F.3d 857, 859 (8th Cir. 2008).  Petitioners do not seek review of their orders of removal; by law, they can pursue provisional waivers without disturbing these orders. 8 C.F.R. § 212.7(e)(4)(iv).

### B.       Even if § 1252 applied, the Suspension Clause would still require jurisdiction.

Petitioners have demonstrated that, even if § 1252 applied, the Suspension Clause would require this Court's jurisdiction because there is no other forum for Petitioners' claims.  Dkt. No. 50 at 19-20.  Respondents' arguments are two-fold.

*First*, Respondents attempt to distinguish *Devitri v. Cronen*, in which the District Court interpreted § 1252(g) to prevent jurisdiction over the petitioners' claims but held that the provision's limitation violated the Suspension Clause.  289 F. Supp. 3d 287, 294 (D. Mass. 2018), *appeal docketed*, No. 18-1281 (1st Cir. Apr. 6, 2018).  Exercising jurisdiction, the Court in *Devitri* then stayed the removal of Indonesian Christians so that they could pursue motions to reopen their removal proceedings based on changed country conditions.  *Id.* at 295.  Because the *Devitri* petitioners feared persecution, the Court concluded that leaving them to pursue motions to reopen *after* removal would expose them to the very harm they sought protection against, and judicial intervention was thus necessary to provide meaningful access to the motion-to-reopen process.[5]  *Id.* at 296-97.

Respondents argue that, unlike in *Devitri*, Petitioners here do not contend they are being deprived of a statutory right.  That is incorrect.  Petitioners seek to enjoin their removal without

---

[5] *See also Seid v. Nielsen*, No. 17-cv-06785, 2018 WL 1142202, at *11-12 (N.D. Cal. Mar. 2, 2018); *Hamama v. Adducci*, 258 F. Supp. 3d 828, 838-842 (E.D. Mich. 2017); *Ibrahim v. Acosta*, No. 17-cv-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018).

cause while they pursue the provisional waivers made available to them under the INA, as interpreted by DHS regulations that also have "the force of law." *United States v. Nixon*, 418 U.S. 683, 695-696 (1974) (citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)); *see* 8 U.S.C. § 1182(a)(9); 8 C.F.R. § 212.7(e).

Respondents also contend that *Devitri* is inapposite because the petitioners there faced persecution, while the Petitioners here, in the government's view, can simply pursue relief "from outside the United States." Resp. Br. at 12. This argument misses the fact that, as in *Devitri*, Petitioners' claims cannot be meaningfully reviewed after their removal because they will already have been deprived of a chance to pursue the relevant benefit—the prospect of remaining with their families while DHS considers their waiver applications. *See Devitri*, 289 F. Supp. 3d at 292-93.[6] Therefore, if § 1252 were to strip this Court of jurisdiction, it would be unconstitutional.

*Second*, Respondents argue that Petitioners' procedural rights are met by the availability of a motion to reopen. Resp. Br. at 12. That is disproven by the record. Each of the Petitioners has tried and failed to reopen immigration proceedings, in some cases multiple times. Other than for changed country conditions, noncitizens are generally limited to one motion to reopen, to be filed within 90 days of a removal order being final. 8 U.S.C. § 1229a(c)(7); *see, e.g.*, Provazza Decl. Ex. D (Calderon BIA Denial) (denying Petitioner Lilian Calderon reopening because her motion was "untimely and number-barred"). In any event, the whole purpose of the 2016

---

[6] Moreover, if the noncitizen Petitioners are removed while pursuing the provisional waiver process, their families may face eviction from housing, poverty, loss of security, mental health crises, and lasting trauma to their children. Dkt. No. 50 at 24-25; Hearing Tr. (May 22, 2018) Ex. 4 (Video of Lucimar de Souza). "Each day with their families is, therefore, precious," Dkt. No. 95 at 59, and the separation of those families is not, as Respondents would have it, a "[m]ere inconvenience." Resp. Br. at 12-13.

provisional waiver regulations was to allow noncitizens to seek lawful status *without* reopening

their cases.  As the Board of Immigration Appeals wrote when denying Petitioner Lucimar de

Souza's motion to reopen: "*The respondent does not need to have her proceedings reopened*

*prior to filing a request for a provisional unlawful presence waiver*."  Dkt. No. 50-5 at 22

(emphasis added).  Similarly, in denying reopening for Petitioner Oscar Rivas, the BIA observed

that "an alien who is subject to an administratively final order of removal can apply for a

provisional waiver under some circumstances."  Dkt. No. 50-2 at 7 n.1.  And in denying

reopening for Petitioners Sandro de Souza and Deng Gao, the BIA found they were not far

enough along in the process to merit such extraordinary action, where each Petitioner had only a

*pending* I-130.  Provazza Decl. Ex. E (Sandro de Souza BIA Denial), Ex. F (Gao BIA Denial).

Petitioners here thus have *even fewer* options than those found in *Devitri* to be inadequate

substitutes to the writ of habeas corpus.  In *Devitri*, the court was concerned that Petitioners

might be removed before their motions to reopen were adjudicated.  289 F. Supp. 3d at 294.

Petitioners here, however, have *no* similar process available, and *no* forum other than this Court.

Because there is no adequate substitute for this Court's review, the Court has jurisdiction.[7]

## III.    Petitioners are likely to prevail on the merits of their provisional waiver claims.

The 2016 Regulations made Petitioners eligible for provisional waivers.  Petitioners have

a right to pursue those waivers without arbitrary or targeted interference.

---

[7] Respondents also argue that Petitioners did not plead that § 1252 violates the Suspension
Clause, and that this Court should not consider that argument.  But Petitioners did plead that
argument, Am. Compl. ¶ 16, although a legal argument responding to a jurisdictional defense
need not be pleaded. Fed. R. Civ. P. 8(a)(1) (requiring a "a short and plain statement of the
grounds for the court's jurisdiction"); *Cf. Oklahoma Tax Com'n v. Graham*, 489 U.S. 838, 840
(1989).  Respondent's motion to dismiss also failed to raise this argument, and so it is waived.

A.     **The government's detention and removal of noncitizen Petitioners and class members violate the INA and supporting regulations.**

Petitioners have demonstrated that they are likely to prevail on the merits of their claim that ICE's detention and removal of noncitizens who are pursuing lawful status under the provisional waiver regulations violates these regulations and the INA.

Reprising their motion to dismiss (Dkt. No. 44 at 13-14), Respondents contend that ICE may target Petitioners and class members because the provisional waiver process does not automatically stay removal.  Resp. Br. at 21 (quoting 8 C.F.R. § 212.7(e)(2)(i)).  But, as explained in Petitioners' opposition to the motion to dismiss (Dkt. No. 79 at 16-17), Petitioners do not seek an automatic stay of removal.  They challenge the government's unlawful practice of proceeding with removals as if the regulations did not exist, or—worse yet—using the regulations as a trap to target people for arrest.  *Id.*  The alternative to this unlawful practice is not an automatic stay of removal but instead, consistent with ICE officials' testimony, a recognition that noncitizens pursuing provisional waivers should not normally be detained or removed absent a threat to national security or public safety, or for other reasons unrelated to their eligibility to receive lawful status under the provisional waiver process.

Respondents also argue that *Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003)— which provides that an agency must at least *consider* a noncitizen's application for relief for which she is statutorily eligible—is inapplicable here, because Petitioners are not "eligible for a form of relief that precludes ICE from removing them . . . ."  Resp. Br. at 21.  But removing Petitioners obviates their eligibility for the stateside provisional waiver process established by DHS.  *See* 8 U.S.C. § 1182(a)(9)(B)(v), (A)(iii); 8 C.F.R. § 212.7(e).  This is because, once a noncitizen is removed, she cannot hope to pursue regulations that offer the possibility of

spending only a short time abroad before reentering the U.S. to become a lawful permanent resident.[8]

### B.     Respondents' detention and removal of noncitizen Petitioners violate due process.

Because the provisional waiver regulations create a due process interest in not being arbitrarily deprived of a fair opportunity to seek lawful status under the regulations, and not being arbitrarily deprived of the family unity that the regulations protect, ICE's practices also violate due process.  *See* Dkt. No. 79 at 17-21.  Respondents also argue here—as they have argued in response to Petitioners' INA claim—that the regulations "explicitly deny a right to a stay of removal."  Resp. Br. at 24 (citing 8 C.F.R. § 212.7(e)(2)(i)).  But, as explained *supra*, Section III.A, Petitioners do not seek an automatic stay, but cessation of Respondents' unlawful practice of proceeding with removals as if the regulations did not exist.

The only new argument Respondents raise here, citing 8 U.S.C. § 1231(a)(1)(A), is that "Petitioners cannot use a regulation to create a right where the statutory scheme in place instructs the opposite."  Resp. Br. at 24.  But by its own terms, § 1231(a)(2)(A) applies only during the first 90 days after the order is entered.  Respondents have conceded that Petitioners are no longer subject to that provision (Dkt. No. 44 at 11), but rather subject to § 1236(a)(6)—which does not require removal.  Moreover, Respondents' own conduct in granting stays of removal to many

---

[8] Respondents contend that Petitioners Lucimar de Souza and Deng Gao are also subject to a five year bar under 8 U.S.C. § 1182(a)(6)(B). Resp. Br. at 5. This is incorrect. Section 1182(a)(6)(B) applies only when a noncitizen fails to attend removal proceedings "without reasonable cause." Neither Ms. de Souza nor Mr. Gao has been found to be subject to § 1182(a)(6)(B).  The determination whether § 1182(a)(6)(B) or any other inadmissibility ground applies is made at the U.S. consulate.  *See generally Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rul*e, 81 Fed. Reg. 50244, 50249-50 (July 29, 2016).  By way of clarification, Petitioners also note that Mr. Gao and Mr. Sandro de Souza lawfully entered the United States, but cannot adjust status with final orders of removal.  *See* Resp. Br. at 2-3; *cf.* Dkt. No. 95 at 25 n.8.

final-order noncitizens prevents any serious argument that § 1231(a)(2) *mandates* the removal of every noncitizen with a final order of removal, much less individuals seeking lawful status.[9]

### C. The government's detention and removal of noncitizen Petitioners and class members violate the APA.

Petitioners are likely to prevail on their APA claims. First, Respondents' unreasoned detention and removal of noncitizens seeking lawful status under the regulations violates the APA's requirement that agency action be "based on non-arbitrary, relevant factors." *Judulang v. Holder*, 565 U.S. 42, 55 (2011) (internal quotation marks omitted). Second, Respondents have violated the APA's notice and comment requirement by treating the provisional waiver regulations as if they were non-existent, or—worse—as if their purpose was to lure people into government offices so that ICE can arrest and remove them. *See* Dkt. No. 50 at 12-14.

Respondents repeat the arguments raised in their motion to dismiss. First, they argue that ICE's actions are "committed to agency discretion by law," so this Court cannot review whether ICE has acted arbitrarily and capriciously in detaining and removing noncitizens whom DHS has expressly permitted to seek lawful status. Resp. Br. at 28 (citing 5 U.S.C. § 701(a)(2)). This argument could succeed only if this Court had been left with "no law to apply," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985), which is not the case. Detailed eligibility criteria govern both provisional waivers and immigrant visas. *See* 8 C.F.R. § 212.7(e); *see generally* 8 U.S.C. §§ 1151-1154, 1182. If ICE followed these criteria, it would not give rise to Petitioners' claims.

Second, Respondents contend that Petitioners have failed to "identify" a rule change triggering notice-and-comment obligations. Resp. Br. at 28. In essence, Respondents contend

---

[9] Respondents' arguments against Petitioners' equal protection claim, on which Petitioners have not moved for a preliminary injunction (*see* Dkt. No. 50 at 12 n.3), restate those made in their motion to dismiss. Dkt. No. 44 at 17-19. As Petitioners have stated, Dkt. No. 79 at 24-26, the detention and removal of Petitioners is the product of impermissible animus.

that ICE's detention and removal of Petitioners and class members does not amount to changing the regulations, even though the regulations were enacted for the very purpose of decreasing family separation and avoiding undue hardship on U.S. citizen family members.  *See* Resp. Br. at 5, 28.  It is true that USCIS has not "rejected Form I-601A applications from people eligible under the 2016 final rule."  *Id.* at 28.  But that is precisely the point.  ICE has used force to negate those applications, and thus to eliminate the process that was supposed to give them meaning.  Therefore, Petitioners are likely to succeed on the merits of their APA claim.

**IV.     Petitioners are likely to prevail on the merits of their claims of unlawful detention.**

Petitioners have *already* prevailed in their claims of unlawful detention, at least in part.  This Court has held that, even under Respondents' present interpretation of 8 C.F.R. § 241.4, ICE has repeatedly failed to satisfy the requirement to provide proper notice of an upcoming custody review.  Dkt. No. 95 at 10.  ICE has also admitted to violating § 241.4 with respect to several other people, including an apparent class member.  *See* Provazza Decl. Ex. C (showing Mr. Morales did not receive POCR review within 90 days).  And this Court has held such violations of § 241.4 contravene due process.  Dkt. No. 95 at 50-57.  That holding demonstrates a likelihood—indeed, certainty—of success on at least some of Petitioners' detention claims.

Petitioners' other detention claims, which have yet to be decided, are that due process entitles them to a more meaningful, individual determination of danger and flight risk than that provided under § 241.4 and that, in any event, § 241.4 must at least require a custody determination when detention under 8 U.S.C. § 1231(a)(6) begins, not 90 days later.  Far from refuting these claims, Respondents' brief only confirms that ICE will continue detaining Petitioners and class members who pose no danger or flight risk, without an opportunity to contest that detention until they and their families have suffered for three months.  As explained below, each of these arguments is deeply troubling and legally incorrect, and Petitioners as a

class are therefore likely to succeed not only on the detention claims that this Court has already

decided, but also on the merits of their remaining detention claims.

> A.   **Petitioners have shown a likelihood of success on the merits of their claim that ICE's detention of Petitioners and class members violates due process.**

Beyond ICE's admitted regulatory violations, Petitioners have demonstrated that they are

likely to succeed on the merits of their due process claim.  As confirmed by Ms. Calderon and

Ms. De Souza's cases, Respondents' procedures, even when followed, do not adequately protect

Petitioners' due process rights under *Zadvydas v. Davis*, 533 U.S. 678, 694-95 (2001).  Dkt. No.

19 (Lyons Aff.) at ¶ 6; Dkt. No. 40-1 (Rutherford Aff.) ¶ 6.  In making detention decisions, ICE

continues to use an algorithm that apparently gives deciding weight to orders of removal and no

weight to an individual's pursuit of lawful status.  Hearing Tr. (May 22, 2018) at 103:5-24

(Brophy), 108:6-15.  After those decisions, ICE detains noncitizens for 90 days without any

opportunity to present evidence in support of release.  And after those 90 days, if ICE follows its

present interpretation of § 241.4—which it has repeatedly failed to do, *see* Dkt. No. 95 at 38,

62—an ICE official is then permitted but not required to release a noncitizen who demonstrates

that she poses no danger or flight risk.  *Id.* at 21-22; 8 C.F.R. § 241.4.

These practices are inadequate to protect the liberty interests of Petitioners and class

members.  They resulted in the detention of Ms. Calderon and Ms. de Souza, for example, even

though it is abundantly clear—as even ICE now admits—that neither poses a flight risk that

requires that confinement.  *See* Dkt. No. 95 at 59 (noting likelihood that Ms. de Souza would

persuade Court of her entitlement to release);[10] Hearing Tr. (May 8, 2018) at 108:6-8.  Because

---

[10] The Court noted that ICE apparently did not have a travel document for Ms. de Souza.  Dkt. No. 95 at 59.  Ms. de Souza provided ICE with her travel document as part of her application for a stay of removal, filed April 30, 2018.  *See generally* Dkt. No. 50 Ex. E (Andrade Aff.) ¶ 23 & Ex. E (Notice of Alien to File Custody Review).

each noncitizen class member is similarly taking steps to seek lawful status through his or her U.S. citizen spouse, subjecting Petitioners and class members to a presumption in favor of detention rather than a meaningful bond determination yields too high a risk that they will be erroneously deprived of their liberty, and thus violates due process. *See Addington v. Texas*, 441 U.S. 418, 427 (1979); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Respondents' arguments do not show otherwise. First, Respondents contend that post-order detention challenges are never "ripe" until six months have passed, and that a Court may intervene in post-order custody only if a noncitizen shows that removal is not reasonably foreseeable. Resp. Br. at 13. This Court has already determined that these arguments are both dangerous and wrong. Dkt. No. 95 at 9-11, 50-56.

Second, Respondents argue that *Zadvydas*'s constitutional avoidance holding is undermined by *Jennings v. Rodriquez*, 138 S. Ct. 830 (2018), and that, consequently, Petitioners cannot "import a bond hearing requirement" into 8 U.S.C. § 1231(a)(6). Resp. Br. at 14-15. This argument bears no relation to Petitioners' actual claims. Petitioners rely on *Zadvydas*'s analysis of *constitutional law*, not its interpretation of § 1231(a)(6). And Petitioners advance bond hearings not as a statutory requirement but as a remedy for Respondents' constitutional violations—one well within a habeas Court's equitable powers. *See* Dkt. No. 95 at 57-58.

Third, Respondents contend that limiting detention to cases involving flight risk or dangerousness would prevent the removal of "any non-dangerous and geographically stable final-order alien." Resp. Br. at 15 n.7. This argument reveals a profound lack of imagination. The record shows that ICE is perfectly capable of removing many people without caging them— by, for example, placing them on supervision and setting their departure dates. Hearing Tr. (May 22, 2018) (Brophy) at 94:7-12, 99:25-100:11. Because Respondents have repeatedly violated

even the limited procedures required under their own claimed interpretation of § 241.4, and because the Constitution requires more, Petitioners are likely to prevail on their due process claims.

### B. Petitioners have shown a likelihood of success on their claim that ICE's detention of Petitioners and class members violates the INA and its regulations.

Petitioners are also likely to prevail on the merits of their claim that, even if ICE were to consistently follow its current interpretation of 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4, it would still be violating the law.  Properly understood, § 241.4 requires that detainees receive an opportunity to argue for release whenever their detention is not mandatory.  Because ICE is not fulfilling this requirement, Petitioners are entitled to court intervention, including possible release.  Dkt. No. 95 at 56-57; *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017); *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993).

Respondents' arguments to the contrary are unavailing.  First, Respondents argue at length that noncitizens cannot be notified of their detention *before* being arrested.  Resp. Br. at 14-17.  Petitioners request nothing of the sort.  Dkt. No. 50 at 21-22; Dkt. No. 45 at 12.  Where a noncitizen is detained after the removal period has ended, the regulation is properly read to provide an opportunity to contest detention "*as soon as possible*," not 90 days after arrest.  *See* 8 C.F.R. § 241.4(k)(2)(iv) (emphasis added) (providing review that has not occurred at the conclusion of the removal period due to unforeseen circumstances should occur "as soon as possible thereafter").  As this Court observed, that interpretation is consistent with the regulation's plain text and its purposes to provide procedural protections for all post-order custody detainees.  *See* Dkt. No. 95 at 45-49.

Second, Respondents' plea for deference under *Auer v. Robbins*, 519 U.S. 452 (1997), should be rejected because Respondents' interpretation has been offered only in the context of

litigation.  Resp. Br. at 19-20.  *Auer* deference is especially unwarranted because, even in the short span of this litigation, Respondents' interpretation of § 241.4 has evolved.  Dkt. No. 95 at 39-41.[11]  Petitioners are thus likely to prevail on the merits of their claims.

## V.   Petitioners will suffer irreparable harm if detained or removed, the balance of equities tips in their favor, and an injunction is in the public interest.

Respondents scarcely challenge Petitioners' showing that the equities weigh in Petitioners' favor.  Resp. Br. at 28-29.  The government does not dispute that Petitioners will suffer irreparable harm, or that Petitioners' interest in staying with their families outweighs Respondents' interest in removing Petitioners for the period during which they would await adjudication of their waivers of inadmissibility before reentering the U.S.  Although Respondents assert a general "public interest" in the correct application of the law, *id.* at 29, that interest favors Petitioners.  And the damage ICE's actions have already visited upon American children and families leaves little doubt that injunctive relief is both warranted and necessary.  Hearing Tr. (May 22, 2018) Ex. 4 (Video of Lucimar De Souza and Son); Dkt. No. 50, Ex. C (Harris Aff.) at Ex. C (Psych. Eval. by Casey Gallagher).

### CONCLUSION

For these reasons, Petitioners' motion for a preliminary injunction should be granted.

---

[11] Respondents have now supplied a guidance document that merely references ICE's general obligation to conduct § 241.4 reviews after the removal period.  *See* Dkt. No. 78-1.  It does not say how ICE interprets its § 241.4 obligations when it detains noncitizens after the removal period has ended.  Another guidance document, produced at the May 23 hearing but not cited in Respondents' brief, comes closer but still misses the mark.  *See* Provazza Decl. Ex. G (Chapter 17 Removal Process: Post Order Custody Review (POCR), § 17.4: Field Procedures).  It provides that review under § 241.4 shall be completed "no later than 90 days after the issuance of a final order (if in custody when final order issued) or no later than 90 days after coming into custody with an outstanding final order."  *Id.* at § 17.4(d).  It, too, is not clearly addressed to situations in which the removal period has ended, as opposed to situations in which the removal period begins at the time of detention, such as when a noncitizen who is imprisoned when he is ordered removed is then transferred to ICE custody.  *See* 8 U.S.C. § 1231(a)(1)(B)(iii).

Respectfully submitted this 14th day of June, 2018.

*/s/ Kevin S. Prussia*

| | |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Michaela P. Sewall (BBO # 683182) |
| AMERICAN CIVIL LIBERTIES UNION | Jonathan A. Cox (BBO # 687810) |
| FOUNDATION OF MASSACHUSETTS, INC. | Stephen Provazza (BBO # 691159) |
| 211 Congress Street | Colleen M. McCullough (BBO # 696455) |
| Boston, MA 02110 | WILMER CUTLER PICKERING |
| (617) 482-3170 | HALE AND DORR LLP |
| | 60 State Street |
| Kathleen M. Gillespie (BBO # 661315) | Boston, MA 02109 |
| Attorney at Law | Telephone: (617) 526-6000 |
| 6 White Pine Lane | Facsimile:  (617) 526-5000 |
| Lexington, MA 02421 | kevin.prussia@wilmerhale.com |
| (339) 970-9283 | michaela.sewall@wilmerhale.com |
| | jonathan.cox@wilmerhale.com |
| | stephen.provazza@wilmerhale.com |
| | colleen.mccullough@wilmerhale.com |

*Attorneys for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2018, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

*/s/  Kevin S. Prussia*
Kevin S. Prussia