## fUNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., | ) ) ) | |
| | ) | |
| Individually and on behalf of all others similarly situated, | ) ) | No. 1:18-cv-10225-MLW |
| | ) | |
| Plaintiffs-Petitioners, | ) ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| v. | ) ) | |
| KIRSTJEN M. NIELSEN, et al., | ) ) | |
| Defendants-Respondents. | ) ) | |
| | ) | |

## REPLY BRIEF IN SUPPORT OF PETITIONERS' <u>MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

   I.   The Proposed Class Satisfies the Elements of Rule 23(a). ...................................2

      A.  The proposed class satisfies Rule 23(a)(1)'s numerosity requirement. ........................2

      B.  Petitioners and the proposed class satisfy Rule 23(a)(2). ...............................3

      C.  The Petitioners are typical and adequate class representatives....................8

   II.  Section 1252(f)(1) Does Not Strip This Court of Jurisdiction to Issue Class-wide Injunctive or Declaratory Relief. ......................................................................10

      A.  Section 1252(f)(1) is not a bar to class certification because it does not limit declaratory relief. ...........................................................................11

      B.  Section 1252(f)(1) does not apply to habeas actions. ...................................11

      C.  Petitioners do not seek to enjoin or restrain "the operation of" any immigration provisions. .........................................................................................12

   III.  Class Certification Under Rule 23(b)(2) Is Appropriate....................................14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003) ..............................................................13

*Alli v. Decker*, 650 F.3d 1007 (3d Cir. 2011) ...............................................................11

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) ....................................3

*Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003)........................................................11, 12

*Bynum v. D.C.*, 214 F.R.D. 27 (D.D.C. 2003) .....................................................7, 9, 10

*Caliste v. Cantrell*, No. CV 17-6197, 2018 WL 1365809 (E.D. La. Mar. 16, 2018) ...................14

*Colon v. Wagner*, 462 F. Supp. 2d 162 (D. Mass. 2006)................................................8

*Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288 (D. Mass. 2011)...........................3

*Demore v. Kim*, 538 U.S. 510 (2003) ...........................................................................11

*DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87 (D. Mass. 2010) ..............................................................................................................10, 15

*DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010).................................7

*Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1 (D. Mass. 2010)..............................3

*Dos Santos v. Nielsen*, 1:18-cv-10310-MLW (D. Mass.)...............................................3

*Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015) .....................................15

*Gonzalez v. Sessions*, No. 18-CV-01869-JSC, 2018 WL 2688569 (N.D. Cal. June 5, 2018) ............................................................................................................11, 13

*Gordon v. Johnson*, 300 F.R.D. 28 (D. Mass. 2014) .....................................................3

*In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17 (D. Mass. 2008).............................9

*INS v. St. Cyr*, 533 U.S. 289 (2001).........................................................................10, 11

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)........................................................14

*Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012)..........................15

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ..............................................................13

*M.K.B. v. Eggleston*, 445 F. Supp. 2d 400 (S.D.N.Y. 2006) ........................................................10

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ..............................................................13

*Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007) ..................................................................12

*Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014 ......................................................................11

*Risinger ex rel. Risinger v. Concannon*, 201 F.R.D. 16 (D. Me. 2001)........................................15

*Rutkowski v. Nielsen*, 1:18-cv-10953-MLW (D. Mass.)................................................................3

*Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir. 2003) ..................................................................12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................................4

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) .................................................................7, 8, 15

## STATUTES, RULES, AND REGULATIONS

8 C.F.R. § 212.7 ........................................................................................................................5, 6

8 C.F.R. § 241.4 ...........................................................................................................................13

8 C.F.R. § 1003.2 ............................................................................................................................9

8 C.F.R. § 1003.23 ..........................................................................................................................9

8 U.S.C. § 1182 ...............................................................................................................................5

8 U.S.C. § 1231 .............................................................................................................6, 12, 13, 14

8 U.S.C. §§ 1252 ...............................................................................................10, 11, 12, 13, 14

28 U.S.C. § 2241 ......................................................................................................................11, 12

*Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule*, 81 Fed. Reg. 50244 (July 29, 2016) ................................................................4, 6, 8

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 306, 110 Stat. 3009 (1996)..........................................................13

Fed. R. Civ. P.  23 ..............................................................................2, 2, 8, 1 14, 15, 15

## OTHER AUTHORITIES

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1775 (3d ed.) ...............................................................................................................14

H.R. Rep. No. 104-469, pt. 1 (1996)...........................................................................................13

USCIS Adjudicator's Field Manual § 43.2....................................................................................8

## INTRODUCTION

This case involves a proposed class of individuals that has been, on the one hand, invited to come out of the shadows and seek legal status, and, on the other, unlawfully threatened with being ambushed when they do so. In their court papers, Respondents argue that this Court should deny class certification and tell these individuals to raise their claims one by one. But in communities across New England, Respondents know exactly how to hurt these individuals as a single class.

In 2016, U.S. Citizenship and Immigration Services (USCIS) expressly expanded the provisional waiver process—which allows certain noncitizens to remain with U.S. citizen family members for most of the time spent pursuing lawful permanent resident status—to noncitizens with final orders of removal, i.e. the noncitizen class members in this case.  But in 2017, acting in part on what it perceives to be instructions from the President, Immigration and Customs Enforcement (ICE) began to sabotage that process.  Respondents now seek to insulate ICE's actions from this Court's review by arguing that the individuals that USCIS has handled as a group are not a group at all, but a disjointed collection of applicants who might win or lose their bids for lawful status.  Respondents confuse the opportunity to seek relief, which Petitioners seek to protect, with the actual granting of lawful status.  Because USCIS deliberately extended its regulations to *this class* of noncitizens, as a group, and an injunction in this case would protect their ability to avail themselves of that regulatory process, class certification is proper.

The need for class certification, and class-wide relief, has only become more apparent in recent weeks.  Having temporarily disavowed the tactics that landed Petitioners Lucimar de Souza and Lilian Calderon in custody following interviews at USCIS offices, ICE has now made clear that class members are unprotected from being detained at government offices or

1

elsewhere.[1]  It is also apparent that ICE continues to target class members for removal, including

Petitioner de Souza, who—only a month after her release from illegal detention—was

erroneously ordered to depart the U.S. by August 12, 2018.  Dkt. No. 98, Ex. A.[2]  Because the

Petitioners continue to be threatened on a class-wide basis, the class in this case should be

certified, and ultimately protected, on a class-wide basis as well.

## ARGUMENT

### I.     The Proposed Class Satisfies the Elements of Rule 23(a).

#### A.     The proposed class satisfies Rule 23(a)(1)'s numerosity requirement.

Petitioners have amply demonstrated that the proposed class is numerous enough to

satisfy Rule 23(a)(1).  Just two local immigration attorneys have affirmed that they represent

hundreds of individuals that fall within the class definition.  Dkt. No. 47, Ex. A (Joyce Aff.) ¶ 3;

Ex. B (Born Aff.) ¶ 3.  The Court also has evidence before it of eight apparent class members,

including Petitioners Lilian Calderon and Lucimar de Souza, who were detained at I-130

interviews in Massachusetts and Rhode Island in January 2018.  Dkt. No. 98, Ex C; Dkt. No. 50-

3 (Harris Aff.) ¶ 16; Dkt. No. 50-5 (Andrade Aff.) ¶¶ 10-11.  This number *alone* indicates that

the class is larger than forty individuals, as I-130 Petitions take five months or more to

adjudicate[3] and the presence of at least eight class members who were interviewed in January

---

[1] *Compare* Hearing Tr. (May 22, 2018) 22:15-23 (explaining "that we weren't going to CIS any longer to arrest people unless there was a direct threat to national security or public safety) *with* ECF No. 100, Adduci Decl. ¶ 5 ("I also understand that statements may have been made by prior local ERO leadership, which may have been interpreted as a commitment with regard to the prioritization of enforcement resources. … although ERO Boston will continue to prioritize enforcement efforts toward the apprehension and removal of criminal aliens and those who pose a danger to the community or to the national security of the United States, *no classes or categories of removal aliens are exempt from enforcement, including detention*." (emphasis added)).

[2] That command, which was inconsistent with this Court's April 13 Order, Dkt. No. 32, was withdrawn the same day after counsel intervened.  Dkt. No. 98, Ex. B.

[3] *See* USCIS case processing time for I-130, *available at* https://egov.uscis.gov/processing-times.

2018 is evidence of a pipeline of more than 40 others who were awaiting adjudication or had moved on to other parts of the provisional waiver process.[4]

In response, Respondents present two strained arguments:  (1) Petitioners cannot identify how many of the 9,336 individuals with pending I-130 applications in New England are class members, and (2) joinder is practicable because class members reside in New England.

The first argument ignores the hundreds of class members already attested to, and the other evidence before the Court, which easily meets the standard forty-person threshold.  *See Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011).  Petitioners are not required to identify the exact size of the class.  *Donovan v. Philip Morris USA, Inc*., 268 F.R.D. 1, 10 (D. Mass. 2010).  The second argument fails to explain how proximity across a six-state region would make joinder of this class practicable, particularly when class members have little way to learn about each other, and new members are continually coming into the class.[5]

### B.    Petitioners and the proposed class satisfy Rule 23(a)(2).

Petitioners easily satisfy the "commonality" requirements of Rule 23(a)(2), which requires at least one common question of fact or law that is capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the

---

[4] The Court has also had directly before it since January 2018 at least two other class members who were detained at locations other than USCIS. *See* Hearing Tr. (May 1, 2018) 20:4-20 (discussing Edjann dos Santos' arrest); Hearing Tr. (May 22, 2018) 179:17-180:4 (discussing Mr. dos Santos' marriage, status as beneficiary of pending I-130, and membership in putative class); *Dos Santos v. Nielsen*, 1:18-cv-10310-MLW (D. Mass.); *Rutkowski v. Nielsen*, 1:18-cv-10953-MLW (D. Mass.) (dismissed by joint stipulation June 20, 2018).

[5] The single case Respondents cite in support of their contention that the geographic proximity of class members across New England makes joinder practicable, *Andrews v. Bechtel Power Corp*., 780 F.2d 124, 132 (1st Cir. 1985), is easily distinguished.  There, the district court declined to certify a 49-member class that all lived in southeastern Massachusetts.  *Id.* at 132.  Here, the putative class is much larger than the *Andrews* class and is spread across the entire region; the class membership is fluid and class members cannot readily be identified except by the government itself.  Joinder is thus impracticable.  *See Gordon v. Johnson*, 300 F.R.D. 28, 30 (D. Mass. 2014).

validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As Petitioners have demonstrated, the proposed class—which was rendered eligible for the provisional waiver process in 2016—confronts common legal questions about the legality of ICE's efforts to detain and remove individuals who are availing themselves of that process. Pets. Mot. For Class Cert. (Dkt. No. 47) (Pets. Br.) at 8-10.

In response, Respondents point to differences among class members, and suggest that Petitioners' due process claims, in particular, would require the Court to "delve into the specific facts of each alien's case." Resps. Opp. to Pets. Mot. For Class Cert. (Dkt. No. 99) ("Resp. Br.") at 8. These arguments are unavailing. The class definition in this case is lifted from USCIS's own regulations, which treat this class as a group that is eligible to seek lawful status through a specific path. And Respondents' arguments about the distinctions between class members go to whether each class member will ultimately be awarded legal status, not whether ICE may arbitrarily deprive them of the opportunity to seek it.

### 1. The putative class tracks USCIS's own expansion of the provisional waiver process.

This case stems from the decision of USCIS to render *this precise class* of individuals eligible for the provisional waiver process, and the actions of ICE to sabotage that process. In 2016, USCIS confronted the question of whether to expand provisional waivers to "individuals who are subject to final orders of removal, deportation, or exclusion," and determined that it would do so.[6] *Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final*

---

[6] Petitioners intended the term "final order of removal" in the class definition to refer also to pre-1996 orders, which are technically called orders of "exclusion" and "deportation." For greater precision, and to avoid excluding individuals who have pre-1996 final orders, Petitioners respectfully request that if the Court certifies a class, it modify Petitioners' proposed class definition to include any individual with a final order of removal, exclusion, or deportation.

*Rule*, 81 Fed. Reg. 50244, 50255 (July 29, 2016).  In its final rule, USCIS thus indicated that it

was "[a]llowing individuals with final orders of removal . . . to be eligible for provisional

waivers" and provided details about the process that these individuals would have to follow in a

section entitled, "Individuals Subject to Final Orders of Removal, Deportation, or Exclusion."

*Id.* at 50255-56, 50262.

      USCIS's website on provisional waivers similarly speaks directly to the class in this case,

providing a drop-down section addressing how to apply for a provisional waiver "If You Have a

Final Order of Removal, Exclusion, or Deportation Including an in Absentia Order of Removal

Under INA 240(b)(5)."  Dkt. No 50-9 at 6.  That section describes the process class members

must follow—i.e. they must apply for a provisional unlawful presence waiver only after gaining

approval of a conditional I-212, Application for Permission to Reapply for Admission into the

United States After Deportation or Removal.  In other words, USCIS recognizes and speaks to

the members of the putative class in this case as a group, providing a common answer to the

question of their eligibility and process for seeking lawful status under the 2016 regulations.

      Petitioners' proposed class tracks USCIS's own eligibility guidelines nearly to a T.  It

does not exclude individuals whose final order of removal is an "*in absentia*" order, because

USCIS expressly included such individuals in its regulations.  *See* Dkt. No. 50-9 at 6; 8 C.F.R. §

212.7(e)(4)(iv) (noncitizen with a final order "including an *in absentia* order" must have

approved I-212 before applying for a provisional unlawful presence waiver).[7]  Instead, the

---

[7] Respondents are incorrect that Petitioners Lucimar de Souza and Deng Gao are ineligible for
the provisional waiver process.  Resp. Br. at 5-6.  As stated above, the provisional waiver
regulations expressly allow individuals with *in absentia* orders to seek lawful status.  Like all
class members and all applicants for immigrant visas generally, Ms. de Souza and Mr. Gao will
be screened by a consular official for any grounds of inadmissibility that have not been waived,
including for whether they are subject to a five-year bar for failing to appear at their immigration
proceeding *without reasonable cause* under 8 U.S.C. § 1182(a)(6)(B).

proposed class excludes the three categories of final-order individuals that USCIS excluded from the provisional waiver process—those who are under 17, have pending applications for lawful permanent resident status, or are subject to reinstatement of a prior order of removal.  *See* 8 C.F.R. § 212.7(e)(4).[8]  The only difference between the proposed class at issue in this case and the category of final-order noncitizens rendered newly eligible for provisional waivers in 2016 is that the proposed class is geographically limited and is restricted to noncitizens whose U.S. citizen spouses have filed visa petitions for them, not individuals seeking lawful status under other visa categories. But that limitation only increases the class's commonality.

> **2.    Respondents' arguments confuse the entitlement to lawful status with the ability to *apply* for that status under available regulations.**

Respondents' contention that the "dissimilarities between the named Petitioners and the proposed class" destroy the commonality and typicality of the putative class and its representatives is incorrect.  Resp. Br. at 4-9.  The distinctions Respondents point to may affect

---

[8] Respondents' contention that the putative class does *not* track the ineligibility requirements of 8 C.F.R. § 212.7(e)(4) is incorrect.  It is true that only those ineligible for provisional waivers under 8 C.F.R. § 212.7(e)(4)(i) and (vi) are explicitly called out in the class definition.  But this argument ignores that individuals addressed in § 212.7(e)(4)(ii) through (v) are either already excluded from the class definition or will no longer be rendered ineligible as they progress through the provisional waiver process.  For example, § 212.7(e)(4)(iii) and (v) exclude individuals who:  (1) are currently in removal proceedings in which no final order of removal has been entered, or (2) have a reinstated prior order of removal—i.e., they have re-entered the United States after departing on an order of removal, and had the prior order reinstated under 8 U.S.C. § 1231(a)(5).  Here, the class is defined to only include individuals with final orders of removal who have not departed the U.S. under that order, Pets. Br. at 5, and therefore neither category is part of the class.  Additionally, § 212.7(e)(4)(ii) excludes from eligibility to apply for an unlawful presence waiver those individuals who do not have a case pending before the Department of State based on an approved immigrant visa petition for which the immigrant visa processing fee has been paid.  But this merely describes class members' obligation to pay the immigrant visa fee as part of the provisional waiver process.  *See* 8 C.F.R. § 212.7(e)(5)(F)(1); *see generally* Dkt. 50, Ex. H (Cannon Decl.) ¶ 4.c. Similarly, § 212.7(e)(4)(iv) simply requires that an individual have an approved I-212 before filing an I-601A application for a provisional unlawful presence waiver, another step that every class member must take.  *See* Dkt. 27 at 10.

the outcome of an individual's application, not whether he or she may be arbitrarily denied access to the provisional waiver process altogether. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification" where class raised due process challenge to government's procedures.).  Indeed, Respondents fail to demonstrate how any differences within the class will impede the resolution of a single common question. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) ("Every member of the class need not be in a situation identical to that of the named plaintiff[s] … where common questions of law exist.") (internal quotations and citations omitted) (alterations in text adopted); *Bynum v. D.C.*, 214 F.R.D. 27, 33 (D.D.C. 2003) ("[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members.").

For example, Respondents explain that class members' final orders of removal may be based on different grounds, or that some class members' marriages may not be bona fide.  But this does not defeat commonality.  Rejection of an I-130 is merely a potential outcome of the first step in the provisional waiver process, and, once an I-130 is denied, the individual is no longer part of the proposed class.  By the same token, Petitioners and putative class members will not be awarded an immigrant visa at a U.S. consulate—and may in some instances be denied provisional waivers—if they are found to be subject to additional grounds of inadmissibility that have not been waived.  *See* 81 Fed. Reg. at 50254; USCIS Adjudicator's Field Manual § 43.2, https://www.uscis.gov/ilink/docView/AFM/HTML/AFM/0-0-0-1/0-0-0-19162/0-0-0-19266.html

(last visited Jul. 6, 2018).  But that relates to a class member's ultimate success in his application, not the opportunity to apply.[9]

Respondents' due process arguments are similarly unavailing.  They do not even attempt to explain how any of the purported difference within the class would prevent the Court from resolving the common questions Petitioners' present.  Instead, Respondents only argue that "[b]ecause due process is a flexible concept, these dissimilarities would require this Court to delve into the specific facts of each alien's case, thereby rendering it impossible to dispose of the classwide claims in an efficient manner."  Resp. Br. at 8.  But none of the cases Respondents cite are denials of class certification.  Rather, Courts widely recognize that, while remedies in due process cases are flexible, a court can, and must, properly construct a remedy for class-wide violations.  *E.g.*, *Walters*, 145 F.3d at 1047 (certifying class of noncitizens claiming that the INS's practices in document-fraud proceedings violated due process; "While the government correctly observes that numerous individual administrative proceedings may flow from the district court's decision, it fails to acknowledge that the district court's decision eliminates the need for individual litigation regarding the constitutionality of INS's official forms and procedures" and therefore furthers judicial efficiency); *Colon v. Wagner*, 462 F. Supp. 2d 162, 174 (D. Mass. 2006) (certifying Rule 23(b)(2) class action for due process claim brought by people to whom a state agency sent notices of termination of emergency shelter benefits).

**C.    The Petitioners are typical and adequate class representatives.**

Petitioners have also shown that the named Petitioners are typical of the class, and that they will be adequate representatives.  As explained above, the purported differences identified

---

[9] To the extent that any categories of individuals are subject to readily-discernable bar to obtaining lawful status under the provisional waiver regulations, that is the type of objective and easily-applied criteria that could be made part of class-wide remedy.

by Respondents simply illustrate how Petitioners' claims do not hinge on the merits of their provisional waiver applications.  This allows Petitioners to "pursue the interests of the absent class members without being sidetracked by [their] own particular concerns."  *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008).  Where, as here, the "named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims."  *Bynum*, 214 F.R.D. at 35.

Respondents identify one specific difference they argue defeats typicality and adequacy: some individuals in the class who entered the country lawfully could be eligible to "adjust" their status to lawful permanent resident if only they could reopen their immigration court cases; if they did so, they would not need the provisional waiver process.  Resp. Br. at 9 & n.4.  In fact, Petitioner Sandro de Souza is one such individual.  But if he moved to reopen his case, as the government suggests, that motion would likely be denied as time- and number-barred.  *See* 8 C.F.R. § 1003.2(c)(2) (noncitizen is entitled to only one motion to reopen, filed within 90 days of a final order).  Indeed, because *jointly* filed motions to reopen are an exception to these bars, *see* 8 C.F.R. § 1003.23(b)(4)(iv), Mr. de Souza asked DHS to join him in a motion to reopen after his I-130 was approved.  Dkt. No. 50-6 (Loscocco Aff.) ¶ 18.  Rather than do so, and facilitate his adjustment of status, DHS denied his request and insisted that he depart the United States.  *Id.* at ¶¶ 15, 18-19.  Far from "not need[ing]" the provisional waiver process, Resp. Br. at 9 n.4, Mr. de Souza is dependent upon it, and on the remedies Petitioners seek in this case.

In addition to being disingenuous, Respondents' argument is also irrelevant.  Any class member who successfully reopened his immigration case would cease to be a member of the proposed class by virtue of the fact that he would no longer have a final order of removal.

As Mr. de Souza's example shows, the interests of the Petitioners in this case "will not conflict with" and are "align[ed with] the interests of the class," such that the Petitioners "will work to benefit the entire class through the pursuit of their own goals." *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 100 (D. Mass. 2010) (internal quotations and citations omitted); *see Bynum*, 214 F.R.D. at 34 ("Factual variations between the claims of class representatives and the claims of other class members do not negate typicality."). The relief sought here will "have no detrimental effect on any of the other class members, but will only benefit them . . . ." *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 442 (S.D.N.Y. 2006). Petitioners have suffered and continue to suffer the same injuries they seek to remedy on behalf of the class, and they satisfy both the adequacy and typicality requirements of Rule 23(a).

## II.     Section 1252(f)(1) Does Not Strip This Court of Jurisdiction to Issue Class-wide Injunctive or Declaratory Relief.

Respondents' attempt to stretch 8 U.S.C. § 1252(f)(1)'s limitation on jurisdiction to shield their practices from judicial intervention also fails.  Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Like other jurisdictional provisions, Section 1252(f)(1) must be interpreted narrowly to preserve the availability of a judicial forum to address legal and constitutional claims.  *See INS v. St. Cyr*, 533 U.S. 289, 314 (2001).  Section 1252(f)(1) does not bar class certification here because it does not apply to declaratory relief or to habeas actions, and it does not prevent the Court from enjoining the unlawful *applications* of the INA's detention and removal authority to the class.

10

**A.      Section 1252(f)(1) is not a bar to class certification because it does not limit declaratory relief.**

As a threshold matter, 8 U.S.C. § 1252(f)(1) provides no reason to deny class certification because it does not apply to declaratory relief.  *See Reid v. Donelan*, 297 F.R.D. 185, 193 (D. Mass. 2014), *reversed on other grounds*, 819 F.3d 486 (1st Cir. 2016).  The very title of Section 1252(f) is "Limit on injunctive relief", and—unlike the neighboring 8 U.S.C. § 1252(e)(1)—its text places no restriction on declaratory relief.  *Compare* 8 U.S.C. § 1252(f)(1) *with* § 1252(e)(1) (under heading of "Limitations on relief," expressly barring "declaratory, injunctive, or other equitable relief" pertaining to expedited removal).  The First Circuit has thus interpreted the terms "enjoin" and "restrain" to refer, respectively, to permanent and temporary injunctions, *see Arevalo v. Ashcroft*, 344 F.3d 1, 7 (1st Cir. 2003), and other Courts have agreed that § 1252(f)(1) places no limit on declaratory relief at all.  *See Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[I]t is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief . . ."); *Gonzalez v. Sessions*, No. 18-CV-01869-JSC, 2018 WL 2688569, at *7 (N.D. Cal. June 5, 2018) ("[T]he text of the Act clearly shows that Section 1252(f) was not meant to bar class-wide declaratory relief." (internal quotations and citation omitted)).

**B.      Section 1252(f)(1) does not apply to habeas actions.**

Additionally, Section 1252(f)(1) cannot prohibit class-wide injunctive relief where, as here, the Class invokes the Court's habeas corpus jurisdiction under 28 U.S.C. § 2241.  *See* Dkt. No. 27 at ¶ 16.  Federal courts will not read a statute to restrict their habeas jurisdiction without "a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas . . . ."  *St. Cyr*, 533 U.S. at 314 (holding that 8 U.S.C. §§ 1252(a)(1), 1252(a)(2)(C), and 1252(b)(9) do not eliminate habeas review); *Demore v. Kim*, 538 U.S. 510, 517 (2003) ("[W]here a provision precluding review is claimed to bar habeas review, the Court

11

has required a particularly clear statement that such is Congress' intent."); *Saint Fort v. Ashcroft*, 329 F.3d 191, 201 (1st Cir. 2003) (refusing to strip habeas jurisdiction where "[t]here is the absence of explicit language by Congress repealing § 2241 jurisdiction").

Here, Section 1252(f)(1) does not explicitly revoke the Court's authority to grant injunctive relief in habeas corpus cases.  It is completely silent on the subject.  This silence is in stark contrast to Congressional actions in the wake of *St. Cyr*, when other provisions of Section 1252 were amended to explicitly limit habeas jurisdiction.  *See*, *e.g.* 8 U.S.C. § 1252(a)(2)(B); § 1252(b)(9); *Ramadan v. Gonzales*, 479 F.3d 646, 650-54 (9th Cir. 2007) (explaining enactment history of REAL ID Act, which amended several provisions of Section 1252 to explicitly limit habeas jurisdiction).  When read in this context, it is clear that Congress did not intend Section 1252(f)(1) to apply to habeas corpus.  Section 1252(f)(1) thus presents no bar to this Court's adjudication of the claims in this case.

> **C.   Petitioners do not seek to enjoin or restrain "the operation of" any immigration provisions.**

Finally, Section 1252(f)(1) does not apply here because Petitioners do not seek any permanent or temporary injunctive relief against "the operation of" any immigration provisions. *See Arevalo*, 344 F.3d at 7 (explaining "enjoin" and "restrain" refer to permanent and temporary injunctions).  Respondents contend that by seeking to prevent ICE from arbitrarily detaining and removing Petitioners and class members while they pursue lawful status under the provisional waiver regulations, Petitioners are asking this court to enjoin *the operation of* 8 U.S.C. § 1231. In essence, Respondents would view any action by this Court to enforce legal limitations on the government's *application* of Section 1231(a) as a restraint on "the *operation* of" that statute— even if the Court simply ordered compliance with 8 C.F.R. § 241.4 or struck down a policy requiring removal of Black but not White immigrants.  That reading sweeps too broadly.

Section 1252(f)(1) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 306, 110 Stat. 3009 (1996), and was aimed at ensuring that "single district courts or courts of appeals" did not "enjoin procedures *established by Congress*" for detention and removal.  H.R. Rep. No. 104-469, pt. 1, 1996 WL 168955, at 161 (1996) (emphasis added).  An injunction cannot be said to enjoin the "operation" of a statute where that statue does not authorize the challenged conduct.  *Gonzalez*, 2018 WL 2688569, at *7; *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015).

Because Petitioners merely seek to enforce legal limitations on ICE's application of § 1231, the limitations of § 1252(f)(1) do not apply.[10]  Here, Petitioners' claim is that ICE's ability to detain or remove class members under Section 1231 is limited by the notice and individualized determination requirements of Section 1231(a)(6), other sections of the INA, supporting regulations, and the Constitution.  *See* Dkt. No. 50 at 15-17, 20-24, 27-29. Petitioners' suit addresses only ICE's application of the detention and removal provisions of Section 1231 to individuals who are in the process of seeking lawful status under the 2016 provisional waiver regulations; it does not seek a wholesale injunction against the "operation" of any part of Section 1231, either as a whole or with regard to any individual.  *See Ali v. Ashcroft*, 346 F.3d 873, 886-87 (9th Cir. 2003), *opinion withdrawn on denial of reh'g sub nom. Ali v.*

---

[10] The only case Respondents cite in support of their argument, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), is not to the contrary.  There, the Supreme Court remanded a class action that had been decided on statutory grounds for analysis of the petitioners' constitutional claims.  *Id*. at 851-852.  In so doing, the Court took no issue with the Ninth Circuit's holding that Section 1252(f)(1) does not bar jurisdiction where the class's claims did not "seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct ... not authorized by the statutes."  *Id*. at 851.  As Respondents note, the Court did write that *that* reasoning "does not seem to apply to an order granting relief on constitutional grounds."  *Id*.  But the Court did not suggest that 8 U.S.C. § 1252(f)(1) applied, only that the Court of Appeals' prior analysis of the provision did not resolve the question "whether it may issue classwide injunctive relief based on respondents' constitutional claims."  *See Id*. at 851.

*Gonzales*, 421 F.3d 795 (9th Cir. 2005), *as amended on reh'g* (Oct. 20, 2005) ("§ 1252(f)(1) is inapplicable because Petitioners seek not to enjoin the operation of § 1231(b) but violations of the statute and 'to ensure that the provision is properly implemented.'").

## III.   Class Certification Under Rule 23(b)(2) Is Appropriate.

Respondents do not dispute that that the government "has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). And for good reason. USCIS has expressly acted to make this class eligible for the benefits of the provisional waiver process, and ICE has affirmed that it will continue to ambush class members as they attempt to avail themselves of it. Respondents only make two arguments for why class-wide relief would be inappropriate. First, they argue that where a court lacks jurisdiction to grant class-wide injunctive relief, it is also unable to grant class-wide declaratory relief. Resp. Br. at 11. Second, they argue that the court would need to conduct individual inquiries in order to grant relief. Resp. Br. at 12-13. Both of these arguments fail.

As explained above, *supra* § II, this Court does have jurisdiction to issue class-wide injunctive relief, and, in any event, there is no limitation on the Court's jurisdiction to issue class-wide declaratory relief. Thus, even if Section 1252(f)(1) did prevent an injunction, the Court may still certify a Rule 23(b)(2). Rule 23(b)(2) authorizes certification for "injunctive relief *or corresponding* declaratory relief." (emphasis added). And it is well established that "a class action seeking solely declaratory relief may be certified under [Rule 23](b)(2)" so long as a favorable ruling could later support individualized injunctive relief. 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1775 (3d ed.).[11]

---

[11] *See, e.g.*, *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) (certifying Rule 23(b)(2) class for declaratory relief); *Caliste v. Cantrell*, No. CV 17-6197, 2018 WL 1365809, at *2 (E.D. La. Mar. 16, 2018) (same).

Respondents' second argument is based on a mischaracterization of the relief sought by Petitioners.  Petitioners seek a single class-wide injunction or declaration that would provide a remedy for the class as a whole—specifically, an injunction that would permit ICE to detain or remove a non-citizen class member only if there is a specific and individualized justification for pretermitting their ability to seek provisional waivers and legalization.[12]  *See Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1333 (W.D. Wash. 2015) (certifying 23(b)(2) class, over defendants' assertions that evidentiary hearings would be required to determine whether an individual is a member of the class, where plaintiffs sought the implementation of "appropriate policies, practices, and procedures by Defendants"); *Risinger ex rel. Risinger v. Concannon*, 201 F.R.D. 16, 23 (D. Me. 2001) (certifying 23(b)(2) class seeking injunction against "Defendants' general policies, practices, and procedures, which, Plaintiffs allege, fail to provide for prompt, reliable, and adequate in-home mental health services").  Contrary to Respondents' assertions, "the claims raised by [Petitioners] in this action are precisely the sorts of claims that Rule 23(b)(2) was designed to facilitate."  *Walters*, 145 F.3d at 1047; *see DeRosa*, 694 F. Supp. 2d at 103 (noting "putative civil rights class action[s] with an uncertain number of class members" are "uniquely suited to Rule 23(b)(2) certification" (internal quotations omitted)).

## CONCLUSION

For these reasons, Petitioners' motion for class certification should be granted.

---

[12] The case relied on by Respondents, *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012), is easily distinguished.  There, the plaintiffs challenged the defendants' "failure to find and refer individual disabled children for [individualized education programs] evaluation" but failed to allege a "systemic failure" or "illegal policy" that bound the class together, and the "relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made."  *Id*. at 497-499.

Respectfully submitted this 6th day of July, 2018.

                                        /s/  Kevin S. Prussia

Matthew R. Segal (BBO # 654489)         Kevin S. Prussia (BBO # 666813)
Adriana Lafaille (BBO # 680210)         Michaela P. Sewall (BBO # 683182)
AMERICAN CIVIL LIBERTIES UNION          Jonathan A. Cox (BBO # 687810)
FOUNDATION OF MASSACHUSETTS, INC.       Stephen Provazza (BBO # 691159)
211 Congress Street                     Colleen M. McCullough (BBO # 696455)
Boston, MA 02110                        WILMER CUTLER PICKERING
(617) 482-3170                            HALE AND DORR LLP
                                        60 State Street
Kathleen M. Gillespie (BBO # 661315)    Boston, MA 02109
Attorney at Law                         Telephone: (617) 526-6000
6 White Pine Lane                       Facsimile:  (617) 526-5000
Lexington, MA 02421                     kevin.prussia@wilmerhale.com
(339) 970-9283                          michaela.sewall@wilmerhale.com
                                        jonathan.cox@wilmerhale.com
                                        stephen.provazza@wilmerhale.com
                                        colleen.mccullough@wilmerhale.com

                                        *Attorneys for Petitioners*

CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2018, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

/s/ *Kevin S. Prussia*

Kevin S. Prussia