**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., ) ) ) ) Plaintiffs-Petitioners, ) ) v. ) ) KIRSTJEN M. NIELSEN, et al., ) ) Defendants-Respondents. ) ) ) ) | No. 1:18-cv-10225-MLW |

**RESPONDENTS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF
THEIR OPPOSITION TO PETITIONERS' MOTIONS FOR PRELIMINARY
INJUNCTIVE RELIEF AND CLASS CERTIFICATION**

## INTRODUCTION

Pursuant to this Court's order on July 16, 2018 (ECF No. 117), Petitioners took the deposition of: Interim Field Office Director ("FOD") Rebecca Adducci, Acting Field Office Director ("AFOD") Thomas Brophy, and AFOD Todd Lyons. *See* ECF No. 128, Ex. A, B, C. These depositions were taken, in part, to determine (1) whether ICE is violating the regulations in 8 C.F.R. § 241.4, and (2) whether ICE Boston's enforcement practices regarding the arrest and detention of putative class members has changed since the May 22-23, 2018 hearings (the "Hearings"). *See* ECF No. 117 at 8-9. The depositions clarified that ICE Boston enforces immigration laws in accordance with Executive Order 13768 and its implementation memorandum, "Enforcement of the Immigration Laws to Serve the National Interest," issued by then DHS Secretary John Kelly, on February 20, 2017. *See* Ex. A. As set forth in the implementation memorandum, "…the Department no longer will exempt classes or categories of removable aliens from *potential* enforcement." Ex. A at 2 (emphasis added). In his memorandum, then Secretary Kelly directs that, consistent with Executive Order 13768, "[d]epartment personnel should prioritize for removal those aliens described by Congress in Sections 212(a)(2) [criminal and related grounds] and (a)(6)(C) [fraud or willful misrepresentation of a material fact to procure a visa or immigration benefit], 235(b) and (c) [expedited removal], and 237(a)(2) [criminal] and (4) [security and related grounds] of the Immigration and Nationality Act (INA)." *Id.* Further guidance, again echoing Executive Order 13768, is given to prioritize the removal of aliens who fall within 7 other areas, most of which generally target public safety, benefit fraud, and national security; however, also included are removable aliens who "…are subject to a final order of removal but have not complied with their legal obligation to depart the United States…". *Id.* Executive Order 13768 and its implementation memorandum both received media coverage upon their issuance and are publicly available online. ICE Boston's enforcement efforts are consistent

with these directives. *See* Adducci Dep. 133:19-133:21 ("I mean, practically, we would prioritize criminal aliens in national security cases, as we always have, I believe."); Adducci Dep. 134:9-134:13 ("Well, in the instance as it relates to CIS arrest, I did say initially I wanted to be consulted; that it needed to come up the chain. So I wouldn't be necessarily relying on [my subordinates] to make that decision."); Lyons Dep. 110:19-110:21 (responding "yes" to the question "And under [Mr. Brophy's] direction, ICE ceased making arrests at CIS offices for individuals with no criminal history, correct?"); Lyons Dep. 114:2-114:5 ([Ms. Adducci's policy with respect to arrests at CIS offices] in line with Mr. Brophy's, in that arrests will only take place if there's a significant public safety threat or national security implication."); Ex. B (showing that ICE Boston has not made an arrest at USCIS in the Boston Area of Responsibility since February of 2018). This testimony supports Respondents' arguments against class certification because (1) Petitioners' proposed class is overbroad, as it includes individuals who have not been aggrieved by ICE and (2) even if the class was narrowed to aggrieved parties, it would not meet the numerosity requirement in Rule 23(a)(1).

The depositions also revealed that Petitioners cannot establish that there is a significant risk of irreparable harm with regard to the detention issues before this Court. Since the Hearings, ICE Boston's leadership has taken considerable steps to ensure strict compliance with 8 C.F.R. § 241.4 ("POCR") and ICE Boston has released aliens who did not benefit from the procedures under POCR regulations.[1] Adducci Dep. 184:11-184:15 ("And the assistant field office director has mandated POCRs be on his desk at about day 80, and he has seen them at day 80 or 81, given a weekend or something like that."); Adducci Dep. 23:17 (responding "Yes. Many had been

---

[1] The deposition transcripts of Rebecca Adducci, Todd Lyons, and Thomas Brophy are attached as Exhibit A, B, and C, to Petitioners' Supplemental Memorandum (ECF No. 128).

addressed by the time I got here" in response to a question about whether she had been working to address the issues in the after-action report); Brophy Dep. 114:19-114:20 ("So we did, we had to release some people whose POCRs weren't timely adhered to."). Accordingly, the Court should deny Petitioners' class certification and preliminary injunction motions.

## ARGUMENT

I. **Petitioners' proposed class is overbroad because it includes members who have suffered no injury and any precise class would fail to meet the numerosity requirement of Rule 23(a)(1).**

"It is well-established that members of a plaintiff class must have all have the legal right to bring suit against the defendant on their own; inclusion of those without such standing renders the class overbroad." *In re TJX Companies Retail Sec. Breach Litig.,* 246 F.R.D. 389, 393 (D. Mass 2007). A court may strike class allegations that encompass individuals who cannot meet basic jurisdictional requirements. *Monteferrante v. Williams-Sonoma, Inc.,* 241 F. Supp. 3d 264, 269 (D. Mass. 2017) (Wolf, D.J.); *see also Pagan v. Dubois,* 884 F. Supp. 25, 28 (D. Mass. 1995) (holding plaintiffs' class definition as overbroad because it included those who did not have an injury).

Petitioners' proposed class is impermissibly overbroad because it includes those who have not suffered an injury. A plaintiff invoking federal jurisdiction bears the burden of establishing they have suffered an "injury in fact." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). This injury must be both concrete and particularized and actual or imminent — not conjectural or hypothetical. *Id.* Petitioners' class definition includes aliens ultimately pursuing a provisional waiver, regardless of whether ICE has taken any enforcement action against them and irrespective of the eligibility for that waiver. ICE simply does not have the resources to take an enforcement action against every person pursuing a provisional waiver. Adducci Dep. 90:15 – 90:18 (stating that she would not generally use her resources to make arrests at USCIS offices). Therefore,

4

Petitioners' class necessarily includes a vast number of individuals whose claimed injury is hypothetical and falls short of the requisite injury to confer standing. *See Lujan,* 504 U.S. at 560. In fact, even one of the named Petitioners, Deng Gao, lacks standing as ICE has not taken any enforcement action against him or otherwise intervened in his pursuit of a provisional waiver. *See* ECF No. 27 at ¶ 99. Additionally, the discovery taken illustrates that the proposed class must include aliens who have not been injured as ICE's enforcement focus is *not* on aliens who are merely applying for USCIS benefits and who do not have any criminal history. Lyons Dep. 116:9-116:11 ("I don't believe so. I still believe Ms. Adducci's focus is still on public safety."). Because Petitioners' proposed class is overbroad, this court should deny their motion for class certification. *See Pagan* 884 F. Supp. At 28.

Even if Petitioners were to narrow their class to individuals who have a cognizable injury, the discovery conducted illustrates that the class of such aggrieved individuals would not meet the numerosity requirement under Rule 23(a)(1). Of the seventeen aliens arrested at USCIS in 2018, only thirteen would have fallen into the Petitioners' proposed class at the time they were arrested, and only five fall into the proposed class now. ECF No. 127 at 5. This is much less than the forty people usually needed to certify a class. *See DeRosa v. Massachusetts Bay Commuter Rail Co.,* 694 F. Supp. 2d 87, 98 (D. Mass. 2010). Moreover, because the implementation memo directs ICE to use their resources on enforcement actions that maximize the benefit to public safety, Petitioners would be merely speculating as to numerosity of a precisely defined class. *See Reid v. Doneland,* 297 F.R.D. 185, 189 (D. Mass 2014) (holding that speculation as to numerosity does not satisfy Rule 23(a)(1)). Therefore, because any precise class would not be so numerous as to make joinder impracticable, this Court should deny Petitioners' motion for class certification.

**II.     The putative class members who have claims pending before this Court illustrate that the proposed class lacks commonality.**

Since Petitioners filed this class action complaint, several putative class members have filed individual habeas cases. *See Nkojo,* C.A. No. 18-11401 (filed July 3, 2018); *Aligaweesa v. Nielsen,* C.A. No. 18-11388 (filed July 2, 2018). The differences in these cases perfectly illustrate the lack of commonality within Petitioners' proposed class that would prevent this court from generating common answers to Petitioners' due process claims. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.") (citation omitted). Moreover, the fact that putative class members have brought their own individual habeas cases inherently highlights that relief should be tailored based on the facts of their particular case.

It is well established that the Due Process clause is flexible and that the nature of this flexibility dictates that the amount of process due is dependent on each particular situation. *See Matthews v. Eldridge,* 424 U.S. 319, 321 (1976); *Goss v. Lopez,* 419 U.S. 565, 577 (1975). Recently, the Supreme Court in *Jennings v. Rodriguez,* -- U.S. --, 138 S. Ct. 830, 852 (2018) expressed that a class action may not be the proper vehicle to resolve Due Process claims because of this same flexibility *even when* it is litigated on common facts.[2] Specifically the Court stated:

---

[2] The Supreme Court was also skeptical of the Court of Appeals' analysis regarding Section 1252(f)(1). It stated: "The Court of Appeals held that this provision did not affect its jurisdiction over respondents' statutory claims because those claims did not "seek to enjoin the operation of the immigration detention statutes, ***but to enjoin conduct . . . not authorized by the statutes.*** [] ***This reasoning does not seem to apply to an order granting relief on constitutional grounds***, and therefore the Court of Appeals should consider on remand whether it may issue classwide injunctive relief based on respondents' constitutional claims. If not, and if the Court of Appeals concludes that it may issue only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own. *See e.g.,* Rule 23(b)(2) (requiring "that final injunctive relief or *corresponding* declaratory relief [be] appropriate respecting the class as a whole.")" (emphasis added in bold). Despite the Supreme Court's disapproval of the Ninth Circuit's Section 1252(f)(1) analysis, Petitioners nonetheless use an identical reasoning. *See* ECF No. 113 ("[Section 1252(f)(1) does not prevent the Court from enjoining the unlawful *applications* of the INA's detention and removal authority to the class.").

> "Similarly, the Court of Appeals should also consider on remand whether a Rule 23(b)(2) class action litigated on common facts is an appropriate way to resolve respondents' Due Process Claims. Due process is flexible, we have stressed repeatedly, and it calls for such procedural protections as the particular situation demands."

*Id.* at 852 (internal quotations and citations omitted).

The cases of Mr. Nkojo and Mr. Aligaweesa demonstrate that the amount of process due is dependent on each particular situation. Unlike Lilian Calderon and Lucimar DeSouza, who had not been in ICE custody until after their arrests at USCIS, both Mr. Nkojo and Mr. Aligaweesa had previously been in ICE custody[3] and released on Orders of Supervision. *See* Ex. C, D, E. Upon their arrests, ICE revoked the Orders of Supervision for both Mr. Nkojo and Mr. Aligaweesa pursuant to 8 C.F.R. § 241.13[4], not 8 C.F.R. § 241.4. *See* Ex. F. Each was also afforded an informal interview. *See* Ex. G. Moreover, Mr. Nkojo did not marry his U.S. Citizen spouse until May 8, 2018, well after he was placed on an order of supervision. *See* Ex. E; J. USCIS and the Board of Immigration Appeals (BIA) found that Mr. Aligaweesa committed marriage fraud was therefore ineligible to have any subsequent Form I-130 approved on his behalf. *See* 8 U.S.C. 1154(c); Ex. K. Thus, facts indicating that the alien is engaging in fraudulent actions or at the very least using this process as a defensive tactic against impending removal, should factor into whether these individuals have a due process right to remain in the United States while they pursue relief. These cases establish that the facts of each case will preclude this Court from generating answers to

---

[3] In fact, when ICE arrested Mr. Nkojo in 2010, he presented an admittedly fraudulent Form I-551, Alien Registration Receipt Card. Ex. C.

[4] 8 C.F.R. § 241.13 interplays with 8 C.F.R. § 241.4 such that some aliens who have their order of supervision revoked under 8 C.F.R. § 241.13 are also entitled to the custody review under 8 C.F.R. § 241.4. *See* 8 C.F.R. § 241.13(i)(2). Both Mr. Nkojo and Mr. Aligaweesa would have been entitled to a custody review pursuant 8 C.F.R. § 241.4. However, neither Mr. Nkojo nor Mr. Aligaweesa was in custody long enough to receive a post order custody review. *See* Ex. E, I.

common questions. Therefore, this Court should deny Petitioners' motion for class certification. *See Jennings,* 138 S. Ct. at 852.

### III. Petitioners cannot establish they would suffer irreparable harm absent preliminary injunctive relief.

Petitioners allege that their irreparable harm emanates from the detention and removal of the alien Petitioners. However, this Court only has jurisdiction to determine whether Petitioners are likely to suffer irreparable harm due to violations of the standard articulated in *Zadvydas v. Davis,* 533 U.S. 678 (2001). *See id.* (holding that detention is unlawful if the alien can show that there is no significant likelihood of removal in the reasonably foreseeable future); 8 U.S.C. § 1252. The depositions revealed that Petitioners cannot demonstrate a likelihood that Petitioners will suffer such irreparable harm absent a preliminary injunction. First, in accordance with this Court's order on May 21, 2018, ICE Boston released many aliens whose POCR was not properly conducted. Brophy Dep. 114:19-114:20 ("So we did, we had to release some people whose POCRs weren't timely adhered to."). Second, ICE Boston has taken considerable steps to remedy the underlying issues causing a failure to comply with the POCR regulations.[5] Adducci Dep. 184:11-184:15 ("And the assistant field office director has mandated POCRs be on his desk at about day 80, and he has seen them at day 80 or 81, given a weekend or something like that."); Adducci Dep. 23:17 (responding "Yes. Many had been addressed by the time I got here" in response to a question asking if she had been working to address the issues in the after-action report). As a result,

---

[5] While Respondents were found to have not provided the required notice to Mr. Matias' attorney, Mr. Matias was originally detained on March 18, 2018, prior to this Court's decision on May 8, 2018 and in the midst of changes being made to correct the process. *See* Exhibit H; Adducci Dep. 22:12 – 22:19 (describing the issues that caused challenges with the post order custody review process). Additionally, Mr. Matias' POCR was completed timely, prior to his 90th day in custody and he was personally served with a notice that he would receive a POCR prior to his 60th day in custody. *See* Ex. H.

Petitioners cannot show that they are likely to suffer irreparable harm from violations of the POCR regulations and this Court should deny their motion for preliminary injunctive relief.

## **CONCLUSION**

For these reasons, and the reasons set forth in Respondents' oppositions (ECF Nos. 78, 99) this Court should deny Petitioners' motions for preliminary injunctive relief and for class certification.

Respectfully submitted,

CHAD READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

ELIANIS N. PEREZ
Assistant Director

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: August 7, 2018

/s/ Mary L. Larakers
Mary L. Larakers
Trial Attorney