UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ     )
AND LUIS GORDILLO, ET AL.,         )
individually and on behalf of all  )
others similarly situated,         )
     Petitioner-Plaintiffs,       )
                                   )
           v.                    )     C.A. No. 18-10225-MLW
                                   )
KIRSTJEN M. NIELSEN, ET AL.,       )
     Respondent-Defendants.       )
                                   )

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 21, 2018

Table of Contents

I.     SUMMARY ................................................. 2
II.    PROCEDURAL HISTORY ...................................... 4
III.  THE PROVISIONAL WAIVER REGULATIONS ...................... 6
IV.   THE MOTION TO DISMISS STANDARD ......................... 10
V.    THE FACTS .............................................. 12
VI.   JURSIDICTION ........................................... 16
VII.  THE MERITS OF THE MOTION TO DISMISS .................... 28
VIII.PETITIONERS' DETENTION CLAIMS .......................... 42
IX.   ORDER .................................................. 48

This Memorandum is based upon the transcript of the decision
rendered orally on August 23, 2018. This Memorandum: adds a
summary, some discussion, and citations; deletes some colloquy;
and clarifies some language.

* * *

I. SUMMARY

Petitioners are unauthorized aliens in various stages of the process of seeking to become Lawful Permanent Residents, and their spouses, who are United States citizens. Among other things, petitioners claim that Immigration and Customs Enforcement ("ICE"), an agency of the Department of Homeland Security ("DHS"), is attempting to remove the alien petitioners from the United States in violation of regulations permitting them to apply for provisional waivers of their inadmissibility.

More specifically, petitioners claim that ICE's attempts to remove the aliens before they can pursue and receive a decision on their applications for provisional waivers violates the Immigration and Nationality Act ("INA"), 8 C.F.R. §212.7, and the Due Process Clause of the Fifth Amendment. In particular, they allege that §212.7 gives the aliens a liberty interest in remaining with their families in the United States while they pursue their applications for provisional waivers with Citizenship and Immigration Services ("CIS"), another agency of DHS. They also allege that the Constitution provides the United States citizen petitioners with a liberty interest in living with their spouses in the United States while their provisional waiver applications are being decided. They claim that ICE is unlawfully depriving them of those liberty interests by attempting to deport the alien

petitioners based solely on their final orders of removal and without considering whether they should be allowed to pursue provisional waivers.

Petitioners also assert that ICE's actions are "arbitrary and capricious" under the Administrative Procedures Act ("APA"), 5 U.S.C. §706(2)(A). Finally, petitioners alleged that ICE is unlawfully targeting them for deportation on the basis of their race in violation of their constitutional right to Equal Protection.

Petitioners have moved for a preliminary injunction. They also seek certification to represent a class of similarly situated individuals.

Respondents have moved to dismiss on multiple grounds. Respondents assert that three provisions of the REAL ID Act, which amended 8 U.S.C. §1252, deprive this court of jurisdiction over this case. With regard to the merits, respondents argue that petitioners fail to state any claim on which relief can be granted.

For the reasons explained in this Memorandum, the respondents' motion to dismiss is being denied. The court finds that it has jurisdiction concerning the petitioners' claims and that petitioners have stated a claim upon which relief can be granted. More specifically, contrary to respondents' contention, 8 U.S.C. §§1252(a)(5) and 1252(b)(9) do not divest the court of

jurisdiction in this case because there is not a means to have the issues presented decided by a court of appeals. 8 U.S.C. §1252(g) would strip this court of jurisdiction over petitioners' claims if allowed to operate. However, the Suspension Clause of the Constitution guarantees petitioners review of their claims in some federal court, and because those claims cannot be presented to a court of appeals, this court has jurisdiction.

In addition, petitioners have stated a plausible claim that they are being deprived of their right to procedural due process. The court finds that ICE may only remove petitioners after considering the fact that they are pursuing those waivers and the policies codified in the provisional waiver regulations. The court is reserving judgment on the viability of petitioners' other claims regarding removal, including their APA and Equal Protection claims. The court has previously decided petitioners' claims concerning detention. See <u>Jimenez v. Cronen</u>, 317 F. Supp. 3d 626 (D. Mass. 2018), and now finds they are not moot. Petitioners' motions for a preliminary injunction and for class certification will be addressed in future proceedings.

II.  PROCEDURAL HISTORY

Petitioners filed their Petition for Writ of Habeas Corpus on February 5, 2018. On April 10, 2018, the petitioners filed an Amended Complaint and Petition for Writ of Habeas Corpus.

On April 13, 2018, the court ordered respondents not to remove any of the named alien petitioners from Massachusetts while this case is pending.[1] ICE has directed its officers to obey this Order. See Resp. Opp. to Mot. for Clarification (Docket No. 38).

On April 23, 2018, respondents filed their Motion to Dismiss the Amended Complaint, which petitioners opposed. On May 8, 2018, the court issued an oral decision regarding the petitioners' detention claims. See May 8, 2018 Tr. (Docket. No. 73); May 8, 2018 Order (Docket No. 66). On June 11, 2018, the court issued a Memorandum amplifying that decision. See Jimenez, 317 F. Supp. 3d 626. In that Memorandum, the court explained that it had jurisdiction to consider claims by aliens that ICE violated the statute and regulations governing detention and removal, as well as the Due Process Clause, by detaining the aliens for more than three months without an opportunity to be heard. Id. at 637. The court also held that ICE had failed to follow its regulations with respect to the two aliens whose detention was then at issue, Eduardo Junqueira and Lucimar De Souza. Id. at 647-52. The court concluded that the most appropriate remedy for ICE's violation of their rights to due process would be an exercise of its equitable

---

[1] As some petitioners reside in Rhode Island and Connecticut, respondents have properly construed the April 13, 2018 Order to prohibit their removal from those states as well.

authority to decide promptly itself whether each should be released. Id. at 656-68. However, on May 8, 2018, after the court's oral ruling, ICE released Junqueira and De Souza. ICE subsequently released approximately 20 other aliens that it determined were being improperly detained. Id. at 658.

On August 20 and 21, 2018, the court held hearings on petitioners' claims concerning removal, as well as respondents' argument that their detention claims are now moot. On August 23, 2018, the court denied the motion to dismiss these claims in an oral decision, which this Memorandum memorializes and amplifies.

III. THE PROVISIONAL WAIVER REGULATIONS

At the heart of petitioners' procedural due process claims are regulations that give CIS the discretion to permit certain aliens with final orders of removal or deportation to remain in the United States with their United States citizen spouses, and often their citizen children, while seeking a discretionary decision by CIS that, if granted, would make him or her a Lawful Permanent Resident after departing the United States briefly. See 8 C.F.R. §212.7(e); Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244 (July 29, 2016); Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536 (Jan. 3, 2013).

Pursuant to 8 U.S.C. §1182(a)(9)(B)(i)(II), an alien who has been unlawfully present in the United States for at least one year and then leaves the country is barred from re-entering the United States for ten years. Pursuant to 8 U.S.C. §1182(a)(9)(B)(i)(I), if an alien has been in the United States unlawfully for more than 180 days but less than one year and then departs, he or she is barred from re-entering the United States for three years. However, the Secretary of DHS has been given by statute the discretion to waive these unlawful presence bars if refusing to admit an alien would "result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." 8 U.S.C. §1182(a)(9)(B)(v).

The authority and responsibility to make this waiver determination was delegated to CIS. See 8 C.F.R. §212.7(e). Before 2013 an alien had to be outside the United States to apply for an unlawful presence waiver by submitting a Form I-601. See 78 Fed. Reg. at 565. In 2013, DHS recognized that: this scheme caused a separation of United States citizen spouses, and often United States citizen children, from their husbands, their wives, and parents for a year or more; this created financial, emotional, and humanitarian hardships that the waiver process is intended to avoid; and that separating families that included at least one United States citizen was incompatible with promoting family

unification, an important objective of the United States immigration laws. See id. Therefore, in 2013, DHS adopted regulations to permit unlawful aliens who were immediate relatives of United States citizens to apply while in the United States for provisional waivers of the unlawful presence bars to readmission, and to leave only briefly before being readmitted and becoming Lawful Permanent Residents upon re-entering the country. See id.

In 2016 these regulations were amended and expanded to make unlawful aliens with final orders of removal eligible for provisional waivers. See 8 C.F.R. §212.7(e); 81 Fed. Reg. at 50244-45. DHS explained that the 2016 regulation was promulgated to address the significant emotional and financial hardship that Congress aimed to avoid when it authorized the waiver. See id. at 50243-45.

Under the 2016 regulations, an alien subject to a final removal order and his United States citizen spouse may follow a five-part process that allows the alien to apply to become a Lawful Permanent Resident without leaving the United States except for a brief trip to a United States consulate abroad.

First, the United States citizen spouse may file a Form I-130, Petition For Alien Relative. See 8 C.F.R. §212.7(e)(3)(vi); 8 U.S.C. §1182(a)(9)(B)(v). CIS may require an appearance at an interview to determine whether the United States citizen and the

alien's spouse have a bona fide marriage. <u>See</u> 8 U.S.C. §1153(f), §1154(a)(1); Nat'l Lawyers Guild, 1 <u>Immigr. Law and Defense</u>, §§4:38-39.

Second, the alien spouse may file a Form I-212, Permission to Reapply For Admission to the United States After Deportation Or Removal. 81 Fed. Reg. at 50245. Consistent with the 2016 regulations, aliens can file a Form I-212 and obtain conditional approval prior to their departure from the United States if they will become subject to inadmissibility on the ground of having previously been removed or having departed with a final order of removal. <u>See</u> 8 C.F.R. §212.2(j); 81 Fed. Reg. at 50262.

Third, after a Form I-212 is conditionally approved, an application for a provisional unlawful presence waiver using a Form I-601A, Application For Provisional Unlawful Presence Waiver, may be filed. <u>See</u> 8 C.F.R. §212.7(e); 81 Fed. Reg. at 50245, 50256.

Fourth, after an alien obtains a provisional unlawful presence waiver, he or she must leave the United States and appear for an immigrant visa interview at a United States consulate, and the Department of State may issue an immigrant visa if no other inadmissibility ground applies. <u>See</u> 8 C.F.R. §212.7(e)(12), (e)(3)(v).

Fifth, the alien may travel to the United States with his or her immigrant visa. Upon admission to the United States, the alien becomes a Lawful Permanent Resident. See id. §212.7(e)(12)(i).

In essence, these regulations allow an otherwise eligible individual who is the spouse of a United States citizen, and who lives in the United States unlawfully with a final order of removal outstanding, to seek to demonstrate the bona fide nature of his or her marriage, obtain the necessary waivers of inadmissibility, depart the country only briefly to obtain an immigrant visa, and then return to the United States to rejoin his or her family as a Lawful Permanent Resident. The provisional waiver application process was designed to shorten the time that an alien applicant is separated from his or her family. See 78 Fed. Reg. at 536, 565; 81 Fed. Reg. at 50244, 50271.

IV.   THE MOTION TO DISMISS STANDARD

A motion to dismiss must be denied if a plaintiff has shown "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). That is, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

10

662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996).

"Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quotations omitted); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to

11

in the complaint." <u>Watterson</u>, 987 F.2d at 3-4. When "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." <u>Beddall v. St. Street Bank & Tr. Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document trumps the allegation. See <u>Clorox Co. P.R. v. Proctor & Gamble Consumer Co.</u>, 228 F.3d 24, 32 (1st Cir. 2000) (citing <u>Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F.3d 449, 454 (7th Cir. 1998)).

V. THE FACTS

Petitioners allege the following facts.

Petitioners are aliens with final orders of removal who are pursuing provisional waivers and are at various stages of the process, and their citizen spouses. The respondents include the Secretary of DHS, the Acting Director of ICE, the Acting Boston Field Office Director of the Enforcement and Removal Office of ICE (the "Boston ICE office"), and the President of the United States.

Lilian Pahola Calderon Jimenez's family brought her to the United States from Guatamala in 1991, when she was three. In 2002, when she was 15, the Board of Immigration Appeals ("BIA") ordered her to voluntarily depart. When she did not, a final order of

removal automatically entered. Calderon married Luis Gordillo, a United States citizen, in 2016, after they had lived together for 10 years. They have two children, ages two and four, who are United States citizens. ICE arrested Calderon at her I-130 interview on January 17, 2018. On February 13, 2018, shortly after she filed the original complaint in this case, ICE released her and granted her a three-month administrative stay of removal, which was later extended to August 18, 2018. See Harris Aff. (Mot. for Prelim. Inj., Docket No. 50-3, Ex. C) ¶31. The BIA subsequently granted her a further stay of removal. CIS has approved Calderon's Form I-130 and I-212 advance waiver of the final order-based bar. See id. ¶30. She is in the process of preparing her I-601A. See id. ¶32.

Lucimar De Souza, who immigrated from Brazil, was ordered removed in 2002. She married Sergio Francisco, a United States citizen, in 2006. They have a ten-year-old son who is a United States citizen. De Souza was arrested on January 30, 2018, immediately after the interview at which the request for an I-130 was approved. De Souza has a pending I-212 application to lift the final order-based bar. ICE released her on May 8, 2018, after this court held that ICE was detaining her in violation of its regulations and the Fifth Amendment's guarantee of due process. See Jimenez, 317 F. Supp. 3d at 658.

Sandro de Souza fled Brazil in 1997 after being threatened by a criminal group, entered the United States on a tourist visa, overstayed, married United States citizen Carmen Sanchez in April 2011, and was ordered removed in September 2011. He voluntarily reported to ICE on June 12, 2017, while applying for an I-130, and was released under an order of supervision. At his January 2018 check-in, ICE told de Souza to depart the United States by March 9, 2018. He had an I-130 interview on March 1, 2018, and was not arrested. His I-130 application was approved. Because of progress on his I-130, ICE postponed his departure date to April 24, 2018. As a result of this court's April 13, 2018 Order that petitioners not be removed during the pendency of this case, De Souza is still in the United States.

Oscar Rivas entered the United States in 2006 from El Salvador after being beaten and shot by a gang he refused to join. He was ordered removed in 2012, and in 2013 was granted a stay of removal by ICE, which has been renewed annually. Rivas married United States citizen Celina Rivera Rivas in 2016. They have two daughters, ages five and seven. Rivas has pending I-130 and I-212 applications, but has not had an interview. At a March 1, 2018 ICE check-in, he was ordered to depart by May 2, 2018. He too is still in the United States as a result of this court's April 13, 2018 Order.

Deng Gao came to the United States from China in 2005 on a visa, was ordered removed in 2008, married United States citizen Amy Chen in 2016, and filed an I-130 petition that year. The couple has four children, ranging from a few months to 13-years old. They have not had an I-130 interview, but fear Gao will be arrested if he appears for one.

It is undisputed that the petitioners have all filed motions to reopen their immigration cases with the BIA, and all but one, Gao, have been denied. See Harris Aff. ¶12 (Calderon); Andrade Aff. (Mot. for Prelim. Inj., Ex. E, Docket No. 50-5) ¶¶6-7, 22 (Lucimar De Souza); Sniffin Aff. (Mot. for Prelim. Inj., Ex. B, Docket No. 50-2) ¶19 (Rivas); Loscocco Aff. (Mot. for Prelim. Inj., Ex. F, Docket No. 50-6) ¶9 (Sandro De Souza); Corbaci Aff. (Mot. for Prelim. Inj., Ex. G, Docket No. 50-7) ¶13 (Gao) (appeal to BIA pending). Calderon filed a second motion to reopen in January 2018, which was pending as of April 30, 2018. See Harris Aff. ¶¶20-22. All of the petitioners except Gao have requested administrative stays of removal from ICE under 8 C.F.R. §241.6. However, only Calderon has been granted a stay. If petitioners are removed or deported, they would be required to file I-601 applications from outside the United States. 81 Fed. Reg. at 50245. As indicated earlier, this would often cause them to be separated from their

15

United States citizen spouses and children for a year or more. <u>See</u>

78 Fed. Reg. at 565.

Petitioners seek to represent a class comprising:

Any United States citizen and his or her noncitizen
spouse who (1) has a final order of removal and has not
departed the United States under that order; (2) is the
beneficiary of a pending or approved I-130, Petition for
Alien Relative, filed by the United States citizen
spouse; and (3) is not "ineligible" for a provisional
waiver under 8 C.F.R. §212.7(e)(4)(i) or (vi).

VI.  JURISIDICTION

28 U.S.C. §2241 gives district courts jurisdiction to grant

a writ of habeas corpus to individuals in custody in violation of

the Constitution or laws or treaties of the United States. The

respondents do not dispute that the petitioners are all "in

custody" for the purpose of §2241 because of their final orders of

removal and, for four of the petitioners, orders of supervision

that require that they appear for removal when ordered to do so.

<u>See</u> Resp. Reply in Supp. of Mot. to Dismiss (Docket No. 96) at 2

n.1. The court in any event finds that the petitioners are in

custody. <u>See</u> <u>Devitri v. Cronen</u>, 290 F. Supp. 3d 86, 90 (D. Mass.

2017) ("<u>Devitri I</u>").

The respondents argue that three provisions of the REAL ID

Act of 2005, codified at 8 U.S.C. §1252(a)(5), (b)(9) and (g),

strip this court of jurisdiction concerning petitioners' claims

regarding removal. Section 1252(a)(5), titled "Exclusive means of

review," provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review," including habeas review, "of an order of removal entered or issued under any provision of this chapter." Section 1252 (b)(9), titled "Consolidation of questions for judicial review," provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Neither of these provisions applies to petitioners' claims. Despite its broad terms, §1252(b)(9), like §1252(a)(5), only governs review of an order of removal. See 8 U.S.C. §1252(a)(1), (b). Therefore, in I.N.S. v. St. Cyr, 533 U.S. 289, 313 (2001), the Supreme Court held that §1252(b)(9) does not bar habeas jurisdiction over claims not subject to judicial review under §1252(a)(1). The REAL ID Act did not alter the language in §1252(b) on which St. Cyr relied. Accordingly, as the First Circuit explained in Aguilar v. I.C.E., 510 F.3d 1, 11 (1st Cir. 2007), "§1252(b)(9) is a judicial channeling provision, not a claim-

barring one." It does not apply to claims that "cannot be raised
efficaciously within the administrative proceedings delineated by
the INA," because the failure to exercise habeas jurisdiction over
such claims "would foreclose them from any meaningful judicial
review." Id. However, if petitioners could raise their claims in
the Immigration courts and obtain review of an adverse decision by
a court of appeals, this court would lack jurisdiction concerning
them. See id. at 17-18.

Petitioners claim that DHS's decision, made by ICE, to execute
their removal orders without considering that they have initiated
the provisional waiver process violates their right to receive a
decision on the requested waivers before they leave the United
States. This claim could not "effectively be handled through the
available administrative process," id. at 11, because it is too
late for petitioners to file motions to reopen removal proceedings
as only 90 days are permitted to do so. See 8 U.S.C.
§1229a(c)(7)(C)(i).

Respondents assert that petitioners could raise their
provisional waiver claims on motions to reopen their cases "sua
sponte," which, if granted, would vacate their removal orders.
However, the Immigration court could not reopen petitioners' cases
because, if it did so, it could not provide any relief concerning
their claims. As the First Circuit explained in Pandit v. Lynch,

"[i]n order for a motion to reopen to succeed, it must . . . establish a prima facie case for the underlying substantive relief sought." 824 F.3d 1, 3 (1st Cir. 2016) (quotations omitted). If a petitioner's removal proceedings were reopened, he or she would be ineligible to apply for, or be considered for, a provisional waiver, which is the substantive relief sought. See 8 C.F.R. §212.7(e)(4)(iii).

In addition, as a result of a recent decision by the Attorney General, the Immigration court could not close or stay the proceedings to make petitioners eligible again for provisional waivers. See Matter of Castro-Tum, 27 I. & N. Dec. 271, 292 (2018), 2018 WL 2299243.

In any event, petitioners' claims would not be subject to judicial review in the First Circuit, under §1252(a)(1), of their final orders of removal or their motions to reopen them. See St. Cyr, 533 U.S. at 313. "Judicial review" of a "final order" by a court of appeals "includes all matters on which the validity of the final order is contingent." Cano-Saldarriaga v. Holder, 729 F.3d 25, 27 (1st Cir. 2013) (quoting I.N.S. v. Chadha, 462 U.S. 919, 938 (1983)). As indicated earlier, petitioners do not challenge the validity of their orders of removal or any decision on which they are contingent. Rather, they only challenge ICE's decision, on behalf of DHS, to enforce the order while they are

19

pursuing provisional waivers. In <u>Cheng Fan Kwok</u>, the Supreme Court held that the court of appeals could not directly review the Immigration and Naturalization Service ("INS") District Director's decision not to stay the execution of a removal order. <u>See</u> 392 U.S. 206, 213 (1968). The Court explained that the "application for a stay assumed the prior existence of an order of deportation," and the "petitioner did not attack the deportation order itself"; instead, he "sought relief [consistent] with it." <u>Id.</u> (quotations omitted). Therefore, the court of appeals could not review the denial of the stay. <u>Id.</u>

Although <u>Cheng Fan Kwok</u> analyzed §1252(b)(9)'s predecessor, courts of appeals have held that under §1252(b)(9), they do "not have jurisdiction over denials of petitions [to ICE] to stay removal." <u>Casillas v. Holder</u>, 656 F.3d 273, 274 (6th Cir. 2011); <u>see also</u> <u>Duron v. Johnson</u>, 898 F.3d 644, 646-47 (5th Cir. 2018). Therefore, the court of appeals would not have a means to review the claims in this case. Accordingly, §1252(b)(9) does not strip this court of jurisdiction.

The other jurisdictional provision on which respondents rely is 8 U.S.C. §1252(g). Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of DHS] to commence proceedings, adjudicate cases, or execute removal

orders against any alien." It applies only to these three discrete actions, including the decision to "execute removal orders." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999). ICE's decision not to stay petitioners' deportation is a decision "directly part of a decision to execute a removal order." Moussa v. Jenifer, 389 F.3d 550, 554 (6th Cir. 2004); see also Devitri I, 290 F. Supp. 3d at 91.

However, the question is not whether the action the petitioners seek to enjoin is "taken to remove an alien but whether the legal questions in this case arise from such an action." Jennings v. Rodriguez, 138 S.Ct. 830, 841 n.3 (2018) (emphasis in original). Petitioners argue that their claims "arise from" DHS's misinterpretation of a regulation, not from the decision to execute their removal orders and, therefore, §1252(g) does not apply in this case. Some courts of appeals have agreed, holding that §1252(g) does not apply to "a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General will later exercise discretionary authority." United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004); see also Jama v. I.N.S., 329 F.3d 630 (8th Cir. 2003). Those decisions emphasize that in Reno the Supreme Court stated that "[s]ection 1252(g) was directed against a particular evil:

attempts to impose judicial constraints upon prosecutorial discretion." Hovsepian, 359 F.3d at 1155 (quoting Reno, 525 U.S. at 485 n.9); see also Jama, 329 F.3d at 632 (citing Reno, 525 U.S. at 482-85). Whether ICE can remove an applicant for a provisional waiver based solely on an outstanding order of removal, thus "fail[ing] to exercise the discretion authorized" by the provisional waiver regulations, is a question of law concerning what a regulation requires, not a claim that ICE abused the discretion that it exercised. St. Cyr, 533 U.S. at 307.

Nevertheless, this court finds that §1252(g) applies to the legal question raised by petitioners' claim. This court understands that statutes must be read, where plausible, to avoid the serious constitutional questions that would arise if they stripped habeas jurisdiction. See St. Cyr, 533 U.S. at 299-300. However, "the canon of constitutional avoidance comes into play only when, after application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." Jennings, 138 S.Ct. at 842-43 (quotations omitted). This court finds that §1252(g) is not ambiguous. Unlike other provisions in §1252, it does not limit itself to "discretionary" decisions, see 8 U.S.C. §1252(a)(2)(B)(ii), or preserve jurisdiction over "constitutional claims or questions of law," see id. §1252(a)(2)(D). In Kucana v. Holder, the Supreme Court stated that

22

"[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." 558 U.S. 233, 249 (2010) (quoting Nken v. Holder, 556 U.S. 418, 430 (2009)). Petitioners have not suggested alternative language that Congress could have used if it wanted to make any more clear that §1252(g) covers the claims alleged here, without using a broad phrase such as "relating to." Such a broad formulation would threaten to bar jurisdiction over claims that Congress did not intend to cover, including, for example, challenges to detention in the execution of an order. See Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

In addition, as the Eighth Circuit has summarized:

> [The Supreme Court's] reference to discretionary decisions [in Reno] did not say that §1252(g) applies only to discretionary decisions, notwithstanding plain language that includes no such limitation. "Congress often passes statutes that sweep more broadly than the main problem they were designed to address." Gonzales v. Oregon, 546 U.S. 243, 288 (2006). The terms of the statute, not the principal concerns of the enacting legislators, must govern.

Silva v. United States, 866 F.3d 938, 941 (8th Cir. 2017); see also Foster v. Townsley, 243 F.3d 210, 213 (5th Cir. 2001); Devitri I, 290 F. Supp. 3d at 91. Although the Eighth Circuit in Silva concluded that §1252(g) contains an implied exception for habeas corpus petitioners but applies to claims for damages, it did not

identify any basis in the text for that distinction. <u>See</u> 866 F.3d at 941. In addition, the Supreme Court in <u>Reno</u> explained that §1252(g) exists not only to protect exercises of discretion from judicial review, but also to reduce the "deconstruction, fragmentation, and hence prolongation of removal proceedings," by avoiding "separate rounds of judicial intervention outside the streamlined process that Congress has designed." 525 U.S. at 485-87.

Petitioners assert that ICE cannot execute their removal orders and thus "eliminate the availability of provisional waivers arbitrarily or on the basis of grounds unsupported by the regulations' purposes and unrelated to an applicant's eligibility for legalization under the process." Pet. Memo. in Supp. of Prelim. Inj. (Docket No. 50) at 10. Although this is, as indicated earlier, a legal claim, it is also a direct challenge to the decisions to execute their removal orders. In particular, petitioners seek to enjoin removal until ICE considers that they are pursuing provisional waivers. Therefore, the court finds that §1252(g), if allowed to operate, would bar jurisdiction over the claim.

However, the Suspension Clause of the Constitution requires that this court exercise jurisdiction over petitioners' claim that the I-601A waiver regulation, 8 C.F.R. §212.7, requires ICE to consider their pursuit of provisional waivers before deciding to

24

execute their removal orders. As indicated earlier, 28 U.S.C. §2241 gives district courts jurisdiction to grant a writ of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." Article I, §9, clause 2 of the Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless in Cases of Rebellion or Invasion that public safety may require it." The Supreme Court has held that "[b]ecause of that Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" St. Cyr, 533 U.S. at 300 (quoting Heikkila v. Barber, 345 U.S. 229, 235 (1953)).

In St. Cyr, the Court explained that the habeas jurisdiction required by the Constitution extends to "questions of law concerning an alien's eligibility for discretionary relief," including claims, such as petitioners here, that DHS failed to make a discretionary decision required by regulation. Id. at 304. In Heikkila, involving an earlier statutory immigration scheme, the Supreme Court indicated that it had exercised habeas jurisdiction only "insofar as it was required by the Constitution." 325 U.S. at 234-35; see also St. Cyr, 533 U.S. at 304. Similarly, as noted in St. Cyr, in Accardi v. Shaughnessy, the Court held that "a deportable alien had a right to challenge the Executive's

25

failure to exercise the discretion authorized by the law." 533

U.S. at 308 (citing 347 U.S. 260 (1954)). The Court explained:

> It is important to emphasize that [the Court is] not
> here reviewing and reversing the manner in which
> discretion was exercised. If such were the case [it]
> would be discussing the evidence in the record
> supporting or undermining the [petitioners'] claim[s] to
> discretionary relief. Rather, [the Court] object[s] to
> the Board's alleged failure to exercise its own
> discretion, contrary to existing valid regulations.

Accardi, 347 U.S. at 268; see also Saint Fort v. Ashcroft, 329

F.3d 191, 203 (1st Cir. 2003); Goncalves v. Reno, 144 F.3d 110,

125 (1st Cir. 1998). Therefore, as in Accardi, in this case the

Constitution requires that, if it is a colorable claim, some court

must have jurisdiction to review petitioners' claim that by

deporting or removing them without considering their applications

for provisional waivers, DHS is failing to exercise the discretion

required by 8 C.F.R. §212.7, even though this court could not

review a discretionary decision for possible abuse if DHS's

discretion was actually exercised.

As the Supreme Court wrote in St. Cyr, "Congress could,

without raising any constitutional questions, provide an adequate

substitute [for habeas corpus] through the courts of appeals."

533 U.S. at 314 n.38. To do so, it must provide petitioners "a

meaningful opportunity to demonstrate" that ICE will execute their

removal orders "pursuant to the [alleged] erroneous application or

interpretation of relevant law," and an opportunity to seek

adequate relief -- in this case, a stay of removal until DHS considers their pursuit of the provisional waivers authorized by statute and DHS regulations. Boumediene v. Bush, 553 U.S. 723, 779-80 (2008) (quotations omitted); see also Devitri I, 290 F. Supp. 3d at 93.

However, as explained earlier, the administrative process leading to direct review in the court of appeals could not adequately address petitioners' challenge to the execution of their removal orders in this case. As in Devitri v. Cronen, 289 F. Supp. 3d 287, 294 (D. Mass. 2018) ("Devitri II"), if deported, petitioners would be deprived of the relief they assert the regulations entitle them to seek from DHS -- an opportunity to remain in the United States with their families until they must briefly travel abroad for their visa interviews. Therefore, if petitioners' claim is colorable, this court must exercise §2241 habeas jurisdiction over it.

A claim is "colorable" if it is not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). In this case, the petitioners' claim under §2241 is not only colorable. As explained below, it also meets the higher

27

standard of being "plausible." This court, therefore, has jurisdiction to decide it.

## VII. THE MERITS OF THE MOTION TO DISMISS

As indicated earlier, respondents have moved to dismiss under Rule 12(b)(6), alleging that petitioners have failed to state a claim on which relief can be granted. This contention is not correct. Petitioners have alleged a procedural due process claim rooted in the provisional waiver regulations on which relief can be granted. As this case will continue in any event, it is not necessary for the court to decide now the viability of petitioners' other claims, including whether family ties create a liberty interest entitling them to due process or their Equal Protection claims with regard to removal. Accordingly, the court is not doing so.

Petitioners have stated a plausible procedural due process claim that ICE may only remove an alien who is pursuing a provisional waiver after considering that fact and the policy reasons for the provisional waiver regulations. As the court explained on May 8, 2018, and amplified in its June 11, 2018 Memorandum and Order, see Jimenez, 317 F. Supp. 3d 626, the Due Process Clause of the Fifth Amendment protects the "liberty" of "all 'persons' within the United States, including aliens, [regardless of] whether their presence here is lawful, unlawful,

temporary, or permanent." Zadvydas, 533 U.S. at 693. "A liberty
interest may arise from the Constitution itself, by reason of
guarantees implicit in the word 'liberty,' . . . or it may arise
from an expectation or interest created by [other] laws or
policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). A
regulation is for the purpose of a case such as this a "law." See
Goncalves, 144 F.3d at 125. To create a constitutionally protected
interest in a benefit, a regulation must create a "legitimate claim
of entitlement" to it. Ky Dept. of Corr. v. Thompson, 490 U.S.
454, 460 (1989).

When a regulation grants an entitlement to apply for relief,
"[t]he availability of relief (or, at least, the opportunity to
seek it) is properly classified as a substantive right" and a
"legitimate expectation[]" even when the relief depends on the
exercise of an agency's discretion. Arevalo v. Ashcroft, 344 F.3d
1, 11, 14 (1st Cir. 2003). For example, the INA, 8 U.S.C.
§1229(a)(7)(a), states that "an alien may file one motion to
reopen." (emphasis added). This has been held to create a right to
have the BIA adjudicate the motion. See Santana v. Holder, 731
F.3d 50, 55-56 (1st Cir. 2013); Devitri II, 289 F. Supp. 3d at
291. The regulation at the heart of this case uses comparable
language, stating that "certain immigrants," including immigrants
who are subject to final orders of removal, "may apply" for a

29

provisional waiver. 8 C.F.R. §212.7(a)(1), (e)(4)(iv) (emphasis added). The regulation also states that "USCIS will adjudicate a provisional unlawful presence waiver application." Id. §212.7(e)(8) (emphasis added).

Therefore, although the regulation does not require CIS, acting on behalf of DHS, to grant a provisional unlawful presence waiver, it does require that the agency exercise discretion in deciding whether to do so. As the Supreme Court explained in Accardi, "if the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience." 347 U.S. at 266-67. Therefore, as the First Circuit recognized in Succar v. Ashcroft, courts have reviewed and reversed decisions to remove an alien where "the effect [would] preclude an alien from even applying for relief" that he or she is entitled to pursue under a statute or regulation. 394 F.3d 8, 19-20 (1st Cir. 2005).

Again, as in Accardi:

It is important to emphasize that [the court is] not . . . reviewing . . . the manner in which discretion was exercised. If such were the case [it] would be discussing the evidence in the record supporting or undermining the [petitioners'] claim[s] to discretionary relief. Rather, [the Court] object[s] to [DHS's] alleged failure to exercise its own discretion, contrary to existing valid regulations.

Accardi, 347 U.S. at 268; see also Succar, 394 F.3d at 29 n.28 ("[T]he Attorney General cannot categorically refuse to exercise discretion favorably for classes deemed eligible by the statute."). This court may, therefore, decide petitioners' claim on a petition for habeas corpus under 28 U.S.C. §2241. See Goncalves, 144 F.3d at 125.

The court concludes that 8 C.F.R. §212.7 requires DHS, acting through ICE, to consider an eligible alien's application for a provisional unlawful presence waiver before deciding to remove him or her from the United States. The regulation entitles an eligible applicant to relief that is distinct from a waiver granted while the alien is outside of the United States. As explained earlier, in the 2016 explanation of the regulation, DHS stated that "without [the ability to pursue a provisional waiver], individuals who must seek a waiver of inadmissibility abroad through the Form I-601 waiver process after the immigrant visa interview may face longer separation times from their families in the United States and will experience less certainty regarding the approval of a waiver of the three- to ten-year unlawful presence bar before departing from the United States." 81 Fed. Reg. at 50246. The regulation was designed to avoid the "extreme" and "significant emotional and financial hardship that Congress aimed to avoid when it authorized the waiver." Id. at 50245. On its website, CIS states that the

provisional waiver "process was developed to shorten the time that U.S. citizens and lawful permanent resident family members are separated from their relatives while those relatives are obtaining immigrant visas to become lawful permanent residents of the United States." See Mot. for Prelim. Inj., Docket No. 50, Ex. I, at 1.

Therefore, the provisional waiver regulation protects a "prevailing purpose" of the INA: to "implement[] the underlying intention of our immigration laws regarding the preservation of the family unit." Nwozuzu v. Holder, 726 F.3d 323, 332 (2d Cir. 2013) (quoting H.R. Rep. No. 82-1365 (1952)). Certain provisions of the INA were enacted because "Congress felt that, in many circumstances, it was more important to unite families and preserve family ties than it was to enforce strictly the quota limitations or even the many restrictive sections that are designed to keep undesirable or harmful aliens out of the country." I.N.S. v. Errico, 385 U.S. 214, 220 (1966).

Accordingly, in the explanation of the 2016 regulation, DHS promised applicants that it would decide an application for provisional waiver before the alien was required to leave the United States. In describing the benefits of the 2016 regulation, DHS stated:

> Those applying for provisional waivers will receive advance notice of USCIS' decision to provisionally waive their three- or ten-year unlawful presence bar before they leave the United States for their immigrant visa

> interview abroad. This offers applicants and their
> family members the certainty of knowing that the
> applicants have been provisionally approved for waivers
> of the three and ten-year unlawful presence bars <u>before
> departing from the United States</u>.

81 Fed. Reg. at 50246 (emphasis added).

> DHS also stated that:

> Instead of attending multiple immigrant visa interviews
> and waiting abroad while UCIS adjudicates a waiver
> application as required under the Form I-601 process,
> the provisional waiver process allows individuals to
> file a provisional waiver application while in the
> United States <u>and receive a notification of USCIS'
> decision on their provisional waiver application before
> departing</u> for Department of State consular processing of
> their immigrant visa applications.

<u>Id.</u> at 50271 (emphasis added).

The text of 8 C.F.R. §212.7(e) also manifests the Secretary of DHS's expectation that the alien would be in the United States until the application for a provisional waiver is adjudicated. An alien is eligible if, among other things, he or she "<u>[w]ill</u> depart from the United States to obtain the immigrant visa." 8 C.F.R. §212.7(e)(3)(v) (emphasis added). Eligible aliens must "[p]rovide[] biometrics to USCIS at a location <u>in the United States</u> designated by us USCIS." <u>Id.</u> §212.7(e)(3)(ii), (e)(6) (emphasis added). In addition, "[i]f an alien fails to appear for a biometric services appointment or fails to provide biometrics <u>in the United States</u> as directed by USCIS, a provisional unlawful presence waiver application will be considered abandoned and denied." <u>Id.</u>

§212.7(e)(6)(ii) (emphasis added). It would be impossible for somebody to attend a biometrics appointment "in the United States" after he or she was deported and barred from re-entering. The regulation also states that "[a] provisional unlawful presence waiver granted under this section . . . [d]oes not take effect unless and until the alien who applied for and obtained the provisional unlawful presence waiver . . . [d]eparts from the United States" for an interview abroad. Id. §212.7(e)(12)(i) (emphasis added).

However, respondents argue that the regulation does not constrain ICE's discretion to execute a removal order because it also states that "[a] pending or approved provisional unlawful presence waiver does not constitute a grant of lawful immigration status or a period of stay authorized by the Secretary." Id. §212.7(e)(2)(i). This contention is incorrect. In 2013, DHS characterized this provision as "mak[ing] clear that approval of the provisional unlawful presence waiver is discretionary," and "does not constitute a grant of any lawful immigration status or create a period of stay authorized by the Secretary for purposes of INA §212(a)(9)(B), 8 U.S.C. §1182(a)(9)(B)." 78 Fed. Reg. at 561 (emphasis added). 8 U.S.C. §212(a)(9)(B) defines "unlawful presence" for the purpose of determining whether and for how long an alien is inadmissible for having been illegally present in the

34

United States. In effect, 8 C.F.R. §212.7(e)(2)(i) provides that a pending application for a provisional waiver does not make an alien lawfully present, and that if he or she remains in the United States for more than a year while the application is pending, he or she may become subject to the ten-year bar for admission rather than for the three-year bar. It also clarifies that applicants are not eligible for certain immigration benefits available to aliens who are lawfully present. Unlike the statute and regulation governing stays of removal by DHS, 8 U.S.C. §1231(c)(2) and 8 C.F.R. §241.6, the regulation does not refer to a "stay of removal" or a "stay of deportation." See generally 8 C.F.R. §212.7(e).

Nevertheless, the court finds that ICE may deport an alien before CIS has the opportunity to adjudicate his or her application for a provisional waiver if it makes an individualized decision to do so based on more than the mere fact that the alien is subject to a final order of removal. In its explanation of the 2013 Rule, DHS stated that it did not intend the pending waiver application to prevent ICE from removing all aliens applying for unlawful presence waivers. See 78 Fed. Reg. at 555. Therefore, DHS evidently intended that in some circumstances ICE should be allowed to remove aliens who are applying for provisional waivers. However, a decision by ICE to remove an alien pursuing a provisional waiver solely because he or she has a final order of removal would, as a

practical matter, eliminate that alien's right to apply for a provisional waiver and CIS's opportunity to decide the merits of the application before the alien must depart the United States and be separated from his or her family. The binding promises to United States citizens and their alien spouses in the provisional waiver regulations would be meaningless, and their purposes would be undermined, if ICE were not required to consider that an alien with a final order of removal is seeking a provisional waiver before requiring him or her to leave the United States. There is no reason to conclude that, having promulgated the provisional waiver regulations in 2013, and amended them in 2016 to make aliens with final orders of removal eligible for such waivers, the Secretary of DHS intended to allow ICE to ignore the regulations and their important purposes.

In essence, this case is analogous to Ceta v. Mukasey, 535 F.3d 639, 643 (7th Cir. 2008). In Ceta, the Seventh Circuit held on direct review, not habeas review, that although it did not generally have jurisdiction to review an immigration judge's discretionary decision, such as the denial of a continuance, it "retain[ed] jurisdiction . . . if that denial operates to nullify some statutory right or leads inescapably to a substantive adverse decision on the merits of an immigration claim." Id. at 646 (quotations omitted). The Seventh Circuit found that "[t]he

36

[immigration judge]'s denial -- more specifically, the BIA's affirmation of that denial -- of Mr. Ceta's request for a continuance amounts," under the circumstances of that case, "to a denial of his statutory right to apply for adjustment of status." Id. The Seventh Circuit explained:

> The BIA's ruling has the effect of a substantive ruling on [Mr. Ceta's] application to adjust his status. Under the INA, in general, an administratively final order of removal, unless appealed, must be executed within a period of 90 days. Moreover, once an alien has been removed, he no longer may obtain adjustment of status based on marriage. See . . . 8 U.S.C. §§1182(a)(9)(A), 1255(a)(2). Because of the denial of the continuance, therefore, Mr. Ceta's statutory right to apply for adjustment of status is trapped within a regulatory interstice: Section 1255 and the amended regulation, 8 C.F.R. §245.2(a)(1), afford him an opportunity to seek adjustment of status with the USCIS, but he will be deported by [ICE] before the USCIS is able to adjudicate that application. Indeed, under the new regulatory regime, unless these subagencies engage in some minimal coordination of their respective proceedings--for example, by the immigration courts favorably exercising discretion, in the appropriate case, to continue proceedings to allow the other subagency to act--the statutory opportunity to seek adjustment of status will prove to be a mere illusion.

Id. at 646-47 (emphasis added) (quotations and citations omitted).

This reasoning is equally applicable in the instant case in which the regulations create an entitlement to receive a decision concerning a provisional waiver in the United States. Therefore, the court finds that ICE may not order the removal of an alien pursuing a provisional waiver solely because he or she is subject to a final order of removal. Rather, ICE must consider the reasons

37

for the provisional waiver regime and the facts of the alien's particular case before deciding to order a removal that eliminates CIS's opportunity to decide the merits of the request, and the right of the alien to pursue, and potentially receive, a provisional waiver. Other courts addressing the provisional waiver process have reached similar conclusions. See <u>Villavicencio Calderon v. Sessions</u>, 2018 WL 3584704 (S.D.N.Y. 2018); <u>Martinez v. Nielsen</u>, C.A. No. 18-10963 (D.N.J. 2018); <u>You v. Nielsen</u>, 2018 WL 3677892, at *10 (S.D.N.Y. 2018).

The court finds that it is also plausible that if this case is dismissed, ICE will deny petitioners' future requests for stays of removal and execute their removal orders without determining whether there is a reason, other than their final orders of removal, that petitioners should be prevented from remaining in the United States while they pursue provisional waivers. In their Amended Complaint, petitioners allege with adequate specificity a "pattern" of arrests at the CIS offices, indicating that ICE has been "systematically targeting" for arrest, detention, and removal individuals who were applying for provisional waivers or launching that process at their I-130 interviews. This claim is plausible.[2]

---

[2] While the court must decide the motion to dismiss based on the complaint itself, the court has been presented with evidence relevant to the merits of petitioners' claims in connection with the pending motion for preliminary injunction. The court is not relying on that evidence for the purpose of deciding the motion to

The respondents asserted for the first time at the August 20, 2018 hearing that even if 8 C.F.R. §212.7 entitles aliens seeking an unlawful presence waiver to an exercise of discretion concerning their applications before they are deported, that entitlement only vests when they receive an approved I-212 waiver of the removal order-based bar and become eligible for a provisional unlawful presence waiver under §212.7(e)(3) and (e)(4). The respondents did not present this argument in their several memoranda concerning the motions to dismiss or for preliminary injunction. As a result, the petitioners did not have fair notice and an opportunity to address it in their submissions. Nor did the court have an opportunity to consider it before the hearings on August 20 and 21, 2018, or to receive further briefing before rendering its oral decision on August 23, 2018.

The First Circuit has held that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Courts in the District of Massachusetts also apply this rule. See e.g., Kuznarowis v. Tobey Hosp., 2018 WL 3213491, at *5 (D. Mass. 2018) (Gorton, J.); De Giovanni v. Jani-

---

dismiss. However, that evidence, which was discussed by the court on August 23, 2018, reinforces the conclusion that the petitioners' claim is plausible. See Aug. 23, 2018 Tr. (Docket No. 155) at 35.

King Int'l, Inc., 968 F. Supp. 2d 447, 450 (D. Mass. 2013) (Wolf, J.); Coopersmith v. Lehman Bros., Inc., 344 F. Supp. 2d 783, 790 n.5 (D. Mass. 2004) (Gorton, J.). Therefore, respondents' argument that only petitioners and putative class members with approved I-212 waivers are entitled to an adjudication of their provisional waiver applications is deemed waived for the purpose of the motion to dismiss. If properly presented, the issue may be decided at later stages of this case.

In view of the foregoing, the motion to dismiss petitioners' procedural due process claims based on the provisional waiver regulations is being denied. As indicated earlier, because this case will continue in any event, it is not necessary to decide now the viability of petitioners' other claims regarding removal, including whether their family ties create a liberty interest entitling them to due process or their Equal Protection claim.

The court notes that this ruling on the respondents' motion to dismiss does not compel them to disregard the President of the United States' January 25, 2017 Executive Order: Border Security and Immigration Enforcement Improvements, or the guidance concerning it provided by then-Secretary of DHS John Kelly. See Exec. Order No. 13768, Enhancing Public Safety in the Interior of the United States (Jan. 25, 2017); Memorandum of John Kelly, on Enforcement of the Immigration Laws to Serve the National Interest

40

(Feb. 20, 2017) (the "Kelly Memorandum"). The Kelly Memorandum states that DHS "no longer will exempt classes or categories of removable aliens from potential enforcement." Kelly Memorandum at 2. This court's ruling on petitioners' motion to dismiss does not exempt all aliens with final orders of removal who are seeking provisional waivers from being removed. Rather, it only requires that ICE consider their pursuit of provisional waivers, and the reasons for the regulations that created them, in making an individualized determination concerning whether the alien should be required to leave the United States before his or her application is adjudicated by CIS.

The Kelly Memorandum directs DHS personnel to give priority to seven categories of removable aliens, beginning with "aliens who have been convicted of any criminal offense." Id. In the sixth category are "aliens subject to a final order of removal [who] have not complied with their legal obligation to depart the United States." Id. However, the Kelly Memorandum encourages ICE "to allocate appropriate resources to prioritize enforcement activities within these categories -- for example, by prioritizing enforcement activities against removable aliens who are convicted felons or who are involved in gang activity or drug trafficking." Id.

In addition, the Kelly Memorandum provides that establishing priorities for removal "is not intended to remove the individual, case-by-case decisions of immigration officers." Id. at 4. To the contrary, the Secretary instructed that "[t]he exercise of prosecutorial discretion with regard to any alien who is subject to arrest . . . or removal in accordance with law shall be made on a case-by-case basis." Id. This court's decision only requires that ICE consider an alien's pursuit of a provisional waiver in making that individualized, discretionary decision.

In any event, as Judge Brett Kavanaugh testified on September 6, 2018, in connection with his nomination to become an Associate Justice of the United States Supreme Court, "a court order that requires a president to do something or prohibits a president from doing something under the [C]onstitution or laws of the United States is the final word." See CNN Rush Transcript (Sept. 6, 2018), http://transcripts.cnn.com/TRANSCRIPTS/1809/06/ip.02.html (citing United States v. Nixon, 418 U.S. 683 (1974); Cooper v. Aaron, 358 U.S. 1 (1958); Marbury v. Madison, 5 U.S. 137 (1803)). Therefore, if ICE perceives some inconsistency between the Kelly Memorandum and this court's Order, it must obey the Order.

## VIII.    PETITIONERS' DETENTION CLAIMS

The remaining claims subject to the motion to dismiss relate to detention. For the reasons explained orally on May 8, 2018, and

in the June 11, 2018 Memorandum and Order, petitioners have stated
plausible claims that respondents were detaining them without due
process in violation of the Fifth Amendment and ICE's regulations,
as interpreted by ICE. See Jimenez, 317 F. Supp. 3d 626.
Respondents now argue that because petitioners have been released,
their detention claims are moot. This contention is incorrect.

Petitioners allege that if the court vacates the April 13,
2018 Order which, in effect, directs DHS not to remove them from
the United States during the pendency of these habeas proceedings,
ICE will detain them for removal and continue their detention in
violation of 8 C.F.R. §241.4 and the Due Process Clause of the
Fifth Amendment. As the First Circuit wrote in Dubois v. U.S.
Department of Agriculture, "the court need not determine the
standing of all plaintiffs if at least one plaintiff has standing
to maintain each claim" for prospective relief. 102 F.3d 1273,
1282 (1st Cir. 1996) (discussing Wash. Legal Found. v. Mass. Bar
Found., 993 F.2d 962, 971-72 (1st Cir. 1993)); see also Ry. Labor
Execs. Ass'n v. United States, 987 F.2d 806, 810 (D.C. Cir. 1993).

Petitioners Calderon and De Souza were each detained when
they filed their claims. Each alleges that her detention was not
reasonably related to permissible purposes. See Zadvydas, 533 U.S.
at 690. In Jimenez, this court decided that De Souza's claims were
not only plausible, they were valid. Jimenez, 317 F. Supp. 3d at

43

656. As explained in Jimenez, petitioners were detained without the benefit of procedures sufficient to satisfy the requirements of the Fifth Amendment. See id. at 652-53 (discussing Mathews v. Eldridge, 424 U.S. 319 (1976) and Morrissey v. Brewer, 408 U.S. 471 (1972)).

In addition, petitioners now face an "actual and imminent" threat that ICE will again detain them without complying with its own interpretation of the post-order custody review regulation, 8 C.F.R. §241.4, which petitioners allege does not provide the constitutionally required Due Process. As explained in Jimenez, 317 F. Supp. 3d at 650-51, ICE may be interpreting §241.4 incorrectly and, therefore, detaining aliens for longer than the regulation permits. In any event, Calderon was released only after she filed this case. Her release was part of a pattern of ICE releasing detainees who filed petitions for writs of habeas corpus, but continuing to detain other individuals without complying with §241.4, even as ICE interprets it. Indeed, ICE has admitted that at least until May 2018, it frequently kept aliens in detention in violation of §241.4. See May 8, 2018 Tr. at 15-18, 22-25, 35-36; Jimenez, 317 F. Supp. 3d at 635. After this court's May 8, 2018 Order, ICE discovered that it was detaining at least 30 aliens in violation of its regulations, as it interpreted them. See id. at 637.

44

Although ICE released both De Souza and Calderon, their claims regarding detention are not moot because there is a reasonable likelihood that in the future ICE will violate the process the court found is due to them. More specifically, there is a reasonable likelihood that ICE will detain the petitioners again and continue their detention without the notice and opportunity to be heard required by ICE's regulations and the Fifth Amendment. As the Supreme Court has held, "[a] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013). Rather, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)). Respondents have not satisfied this requirement.

In their April 3, 2018 status report, respondents stated that they may detain Calderon again to effectuate her removal. See Docket No. 23. The respondents have not disclaimed an intention to detain De Souza again if her detention claims are dismissed. The court has been informed that the Boston ICE office has undertaken efforts, including internal auditing, training, and hiring new staff to ensure that detainees receive notice and an opportunity

45

to be heard before being detained for more than three months. However, there is evidence that the Boston ICE office has continued to violate §241.4 after the training occurred. See June 26, 2018 Memorandum and Order (Docket No. 106) at 2 (citing Matias v. Tomkins, C.A. No. 18-11056, Docket No. 26 at 1); May 8, 2018 Tr. at 96-108.

In addition, on August 12, 2018, ICE gave De Souza a notice to depart the United States despite this court's April 13, 2018 Order that she not be removed during the pendency of this case. See Mot. for Leave to Depose ICE Directors Adducci, Brophy, and Lyons (Docket No. 108) at 2. This indicates that ICE staff might not be receiving or implementing the instructions of superiors. In addition, there is the potential for changes in the leadership of the ICE Boston Office that creates a risk that new management will be appointed and end the current efforts to improve ICE's detention and custody review practices. For example, this court adjourned these proceedings in May 2018 to provide then-Acting ICE Boston Office Director Thomas Brophy an opportunity to devote attention to making a transition to his designated acting successor, Todd Lyons. See May 23, 2018 Order (Docket No. 85) at 2. However, Lyons was only allowed to serve for four days before being replaced by Rebecca Adducci, who disclaimed representations made to the court

46

by Lyons. <u>See</u> Notice of Substituted Party (Docket No. 100); Declaration of Rebecca J. Adducci (Docket No. 100) ¶5.

In these circumstances, the respondents have not shown that it is "absolutely clear" that petitioners cannot "reasonably expect" ICE will not violate the Constitution and relevant regulations by detaining them again and causing them irreparable harm. The Supreme Court and courts of appeals have found that a detainee's release did not moot comparable claims brought by alien habeas petitioners where "absent action by this court[,] the government could redetain [the petitioner], and deny him [due process], at any time." <u>See</u> <u>Diouf v. Napolitano</u>, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011); <u>see also</u> <u>Clark v. Martinez</u>, 543 U.S. 371, 376 n.3 (2005); <u>Rosales-Garcia v. Holland</u>, 322 F. 3d 386, 395 (6th Cir. 2003). This court reaches the same conclusion in this case.

Therefore, it is not necessary to address petitioners' arguments that the issues regarding detention are "capable of repetition, yet evading review," or that their claims are "inherently transitory" and the request for class certification preserves a live controversy even if their individual claims become moot. <u>See</u> Pet. Response to Mot. to Dismiss (Docket No. 79) at 6-8.

IX.   ORDER

For the foregoing reasons, this court has jurisdiction, petitioners state plausible claims on which relief can be granted, and their detention claims are not moot. Therefore, respondents' Motion to Dismiss the First Amended Complaint (Docket No. 44) is hereby DENIED.

UNITED STATES DISTRICT JUDGE