1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
2

3     ---------------------------------
      LILIAN PAHOLA CALDERON JIMENEZ,  )
4     et al.,                          )
                         Petitioners,  )
5                                      )   Civil Action
      vs.                              )   No. 18-10225-MLW
6                                      )
      KIRSTJEN M. NIELSEN, et al.,     )
7                                      )
                         Respondents.  )
8     ---------------------------------

9

10              BEFORE THE HONORABLE MARK L. WOLF
                   UNITED STATES DISTRICT JUDGE
11
                         MOTION HEARING
12

13                     October 9, 2018
                        11:15 a.m.
14

15

16           John J. Moakley United States Courthouse
                     Courtroom No. 10
                     One Courthouse Way
17             Boston, Massachusetts  02210

18

19

20
                     Kelly Mortellite, RMR, CRR
21                   Official Court Reporter
                     One Courthouse Way, Room 5200
22                   Boston, Massachusetts  02210
                     mortellite@gmail.com
23

24

25

APPEARANCES:

Counsel on behalf of Petitioners Calderon and Pinguil:
Adriana Lafaille
Matthew Segal
American Civil Liberties Union
211 Congress Street
Boston, MA 02110
617-482-3170
alafaille@aclum.org

Counsel on behalf of Petitioner Calderon:
Michaela P. Sewall
Jonathan A. Cox
Stephen Nicholas Provazza
Colleen M. McCullough
Kathleen M. Gillespie
Wilmer Hale LLP
60 State Street
Boston, MA 02109
617-526-6212
colleen.mccullough@wilmerhale.com

Counsel on behalf of Respondents:
Eve A. Piemonte
United States Attorney's Office
Suite 9200
1 Courthouse Way
John Joseph Moakley Federal Courthouse
Boston, MA 02210
617-748-3271
eve.piemonte@usdoj.gov

Mary Larakers
U.S. Department of Justice, Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, DC 20044
202-353-4419
mary.larakers@usdoj.gov

```
 1                    P R O C E E D I N G S

 2              (The following proceedings were held in open court

 3     before the Honorable Mark L. Wolf, United States

 4     District Judge, United States District Court, District of

 5     Massachusetts, at the John J. Moakley United States Courthouse,

 6     One Courthouse Way, Courtroom 10, Boston, Massachusetts, on

 7     October 9, 2018.)

 8              THE COURT:  Good morning.  Would counsel please

 9     identify themselves for the court and for the record.

11:12  10         MS. LAFAILLE:  Good morning, Your Honor.  Adriana

11     Lafaille for the petitioners.

12              MS. SEWALL:  Good morning, Your Honor.  Michaela

13     Sewall for the petitioners.

14              MR. PROVAZZA:  Good morning.  Stephen Provazza for the

15     petitioners.

16              MR. COX:  Good morning, Your Honor.  Jonathan Cox for

17     the petitioners.

18              MS. MCCULLOUGH:  Good morning.  Colleen McCullough for

19     the petitioners.

11:12  20         MR. SEGAL:  Good morning, Your Honor.  Matthew Segal

21     for the petitioners.

22              MS. GILLESPIE:  Good morning, Your Honor.  Kathleen

23     Gillespie for the petitioners.

24              MS. LARAKERS:  Good morning, Your Honor.  Mary

25     Larakers on behalf of the United States.
```

1          MS. PIEMONTE:  Good morning, Your Honor.  Eve Piemonte
2     for the respondents.
3          THE COURT:  In my August 27, 2018 order, I directed
4     that representatives of petitioners and respondents with full
5     settlement authority be present today, including Nathalie
6     Asher, who was then the acting head of ERO in Washington, or
7     her designee.
8          Who is present in response to that order?
9          MS. LARAKERS:  Natalie Asher has delegated her
11:14 10    authority to Todd Lyons, and he is present.
11         THE COURT:  So whatever Mr. Lyons agrees is it for the
12    purposes of the Department of Homeland Security; is that
13    correct?
14         MS. LARAKERS:  Yes, Your Honor.
15         THE COURT:  And how about for the plaintiffs,
16    petitioners?  Are they present?
17         MS. SEWALL:  The petitioners are not present today,
18    no.
19         THE COURT:  Why not?
20         MS. SEWALL:  Well, it wasn't our understanding that --
21         THE COURT:  First of all, you have to speak up.  I
22    can't hear you.
23         MS. SEWALL:  We didn't understand the court's order to
24    require the petitioners to be here today.
25         THE COURT:  Let's see.  It says, "Representatives of

1   petitioners and respondents with full settlement authority

2   shall attend each future hearing and conference."  Does that

3   mean that you have the authority to essentially settle this

4   case on behalf of the petitioners without consulting them?

5          MS. SEWALL:  No, Your Honor.

6          THE COURT:  Okay.  Then you're in violation of the

7   order.  How could I have made that more clear?  What should I

8   have written?

9          MS. SEWALL:  Apologies, Your Honor.

11:15 10          THE COURT:  Where are they?

11          MS. SEWALL:  They're at work, at home.  For future

12   hearings, is it Your Honor's order that all ten petitioners

13   should be present.

14          THE COURT:  Either that or you have to have the

15   authority to act for them without consulting them.  Were you

16   here on August 23?

17          MS. SEWALL:  I was here, yes.

18          THE COURT:  And this is the conversation I had in the

19   lobby with the respondents when they told me that not everybody

11:15 20   was around the table who was necessary to resolve the issues

21   that I was taking time to discuss.

22          MS. SEWALL:  Yes.

23          THE COURT:  And I said that's not the way I would

24   operate.  That equally applies to you, to the petitioners, and

25   that's why I wrote the order that way.

1         All right.  We're here and we'll proceed.  All right.

2    With regard to the context of this, orally in May and in

3    writing in June, I held that the defendants were unlawfully

4    detaining two petitioners with final orders of deportation who

5    are pursuing provisional waivers.  The Department of Homeland

6    Security, ICE, released those two aliens, only one of whom may

7    be a petitioner in this putative class action, and I was told

8    they released about 20 others who it recognized had also not

9    received the process due under its regulations as it

11:17 10    interpreted them.

11         Orally in August and in writing in September I denied

12    the respondents' motion to dismiss, finding that I had

13    jurisdiction and that it would be unlawful for ICE to remove

14    the aliens without considering the fact that they were pursuing

15    provisional waivers.

16         Because the respondents did not properly raise the

17    issue of when the right to consideration of provisional waiver

18    applications vests, I did not decide that issue in denying the

19    motion to dismiss.  The plaintiffs argue that that right vests

11:18 20    with the filing of an I-130, essentially the first step in the

21    provisional waiver process.  The defendants, as I understand

22    it, argue that any such right vests only after approval of an

23    I-212 waiver, a later stage of the process.

24         As I noted in an earlier order, this issue has

25    implications for plaintiffs' motions for class certification

1   and preliminary injunction.  In part, it would define the scope

2   of the class.  I received joint reports pursuant to my orders

3   on September 12, 2018 and October 3, 2018.  ICE reported, as

4   required, the actions being taken to assure compliance with my

5   decision that it must consider the pursuit of provisional

6   waivers in deciding whether to remove aliens with final orders

7   of removal.  I'm going to want an amplification and any update

8   on that part of the report today.

9        I was told that the petitioners agreed to a stay of

11:20 10   their motion for a temporary restraining order or preliminary

11   injunction for three months provided that the respondents

12   furnish monthly reports with certain relevant information that

13   includes information on aliens who filed an I-130 application.

14        It's reported that the defendants agreed to provide

15   that information.  In my September 21, 2018 order, I expressed

16   the view that the vesting issue should be decided before the

17   motion for class certification is more fully briefed and

18   argued.  I ordered the parties to address this and propose a

19   schedule to complete briefing of the vesting issue by November

11:21 20   7, 2018.

21        In the October 3 report, the parties jointly proposed

22   that the respondents file their brief on vesting by October 24

23   and the respondents or the petitioners respond by November 7.

24   I note that there's no provision for a reply, and frequently

25   parties want to file a reply, so we should address that.

1          The parties disagree on whether class certification

2     should be briefed or more fully briefed simultaneously with the

3     vesting issue and argued immediately after vesting is decided

4     as petitioners request or whether after the vesting issue is

5     decided there should be further briefing as I at least

6     implicitly suggested at the defendants' request.  And this also

7     relates to whether more discovery is needed with regard to

8     class certification.

9          As I understand it, the plaintiffs request discovery

11:22 10   begin immediately or be enlarged immediately and that discovery

11     relates to the merits of the amended complaint.  This is in the

12     joint proposed schedule, docket number 162 at page 4.  It

13     appears to me that the petitioners are seeking immediate

14     class-wide discovery.  I'm told that the respondents proposed

15     to answer the amended complaint by October 16, and that's fine.

16     That's hereby ordered.  They oppose any discovery at this time,

17     arguing in part that it's not ordinarily available in a habeas

18     action.  The parties agree that the plaintiffs can request

19     discovery from Citizenship and Immigration Services without

11:23 20   making CIS a party, therefore the petitioners will not seek to

21     amend the complaint to make CIS a party.

22          Is that an accurate and complete description of

23     matters since the last hearing in August, or have I left

24     something out?

25          MS. SEWALL:  That sounds accurate and complete to me.

1            MS. LARAKERS:  I agree, Your Honor.

2            THE COURT:  All right.  So I think on the agenda for

3       today is, I would like an updated oral report or reiteration,

4       amplification, update on Mr. Lyons' report about what ICE has

5       done since my decision in August requiring consideration of

6       pursuit of provisional waivers before ordering removal of

7       aliens, at least the aliens in this case.

8            I want to hear more about your agreement to stay the

9       motion for TRO or preliminary injunction based on voluntary

11:24 10      discovery and how that's proceeding.  That agreement seems

11       reasonable to me.  And then I would like to get an overview

12       with regard to the class certification and discovery issues,

13       figure out if the respondents are likely to want to file a

14       reply, build a time in for it if you would like to and maybe a

15       time for a sur-reply, schedule a hearing date, and hear from

16       you on whether briefing of class certification and any related

17       discovery should proceed before I decide the vesting issue.

18            Is there more that ought to be on the agenda?

19            MS. LARAKERS:  Not directly, Your Honor.  I think

11:26 20      respondents would like to talk about motions for summary

21       judgment, when that might be appropriate as well.

22            THE COURT:  Well, okay.  That's actually my next note.

23       I think that's really something that needs to be clarified and

24       is fairly fundamental to how we would proceed because in one

25       of -- as I noted in my September 21 order, in an earlier joint

1    report, the respondents state they oppose any request to

2    conduct any further discovery as unnecessary to resolve the

3    purely legal issues presented in the motion for summary

4    judgment.  As I pointed out, there was no pending motion for

5    summary judgment.  So I want respondents' position clarified.

6    It wasn't clear to me from the joint report, but you'll clarify

7    it today.  And as I said, I think that's potentially very

8    important to how we proceed.

9            But let's -- I'd like to hear about what ICE has been

11:28 10   doing since my decision in August, and then we'll get to your

11   agreement with regard to the TRO and the preliminary

12   injunction.  So why don't I hear from the respondents first

13   with regard to what ICE has been doing.

14           MS. LARAKERS:  So Your Honor, it's just a continuation

15   of what Mr. Lyons said in his declaration.  He has continued to

16   make it a priority in his field office.  He has had several

17   teleconferences with his staff, both the supervisor of

18   detention, deportation officers and the deputy -- the assistant

19   field office directors and has made it a priority to make clear

11:28 20   that pending applications should be considered when making all

21   enforcement decisions.

22           And in addition to that, the Office of Chief Counsel

23   is working on training to be provided to the officers.  That

24   training has not been completed yet.  However, it is in the

25   works and will include, among other things, how the facts and

circumstances of each individual case should be taken into
account prior to making any enforcement decision, which
obviously includes the provisional waiver process.

THE COURT:  Hold on just a second.  All right.  And do
petitioners have any comment or concern to express about that?

MS. SEWALL:  Petitioners have received the updates
that the court has received, and we don't have any immediate
concerns, except for that it sort of informs the need for
discovery to proceed in this case, because without it, we're
going on these updates that are not completely fulsome, and we
don't know what's actually happening, and we would need to rely
on the say-so of the government rather than exploring the
documents and the facts in the normal course of discovery.

THE COURT:  All right.  And what about the agreement
you've reached with regard to the temporary restraining order
and preliminary injunction?

MS. LARAKERS:  Your Honor, that's respondents showing
of good faith.  We understand that the petitioners would like
some sort of documentation showing that ICE has taken these
actions, and we certainly understand that.  So in exchange for
agreeing to stay the PI, we have offered limited reporting with
the caveats that we put in the joint report that we're
instructing officers to do this, this is in addition to their
daily duties and updating their internal systems.

THE COURT:  Instructing them to do what?

```
  1              MS. LARAKERS:  To -- well, among other things,
  2     obviously to take the provisional waiver process into account
  3     when making enforcement decisions, but with the reporting,
  4     they've been instructed that when they identify basically a
  5     putative class member, someone who has -- starting with a
  6     pending I-130, they're supposed to put it down on a -- put that
  7     person down on a spreadsheet and identify, among other things,
  8     the instruction given to the individual at that time.
  9              THE COURT:  They record what?  I'm sorry.
 10              MS. LARAKERS:  Yes.  They record the person, what
 11     application they have pending, whether it be an I-130, I-212 or
 12     the I-601A, so anywhere in that process, and then the outcome,
 13     so whether that person was told to report, when that person was
 14     told to report and what they were told to do.
 15              THE COURT:  And what should I know from the
 16     petitioners about this?
 17              MS. SEWALL:  We've agreed to move to stay the
 18     preliminary injunction motion for three months pending the
 19     outcome of this reporting.  We're willing to see if -- see how
 20     the government is handling these cases going forward, and we
 21     think this should be a sufficient amount of information for us
 22     to keep some monitoring on it from our end.  We do request that
 23     if the reports aren't fulsome or if at the end of three months
 24     it looks like our putative class members are in jeopardy, we
 25     would ask to lift the motion -- lift the stay on the motion.
```

11:31 (line 10)
11:32 (line 20)

1          THE COURT:  Okay.  Well, you know, you've reached an

2     agreement on this and the -- what is the -- what are the

3     petitioners receiving?  As I understand it, information on the

4     decisions that are being made with regard to whether people

5     with pending applications for provisional waivers are being

6     ordered removed?

7          MS. LARAKERS:  Your Honor, the outcome, that's what I

8     was referring to on the outcome.  It would be what instructions

9     were given to the person at their check-in.  So it's important

11:33 10     to note that this will be a spreadsheet of just people checking

11     in with ERO.  Respondents believe that that was the best way to

12     capture putative class members since Mr. Lyons stated that

13     they're no longer making arrests at CIS categorically, so we

14     thought that looking at the people checking in was the best way

15     to capture those people.

16          THE COURT:  But that would include whether they're

17     being told they have to leave the country by a particular date

18     or whether they just need to check in again?

19          MS. LARAKERS:  Yes, Your Honor.

11:34 20          MS. SEWALL:  And that's our understanding from the

21     discussions we had prior to the status conference and the joint

22     report.  We have not yet received any report on this yet.

23          THE COURT:  On what?

24          MS. SEWALL:  On what they have offered to give us

25     monthly in exchange for staying.  So we haven't seen the actual

document.

        THE COURT:  You haven't received any monthly report yet?

        MS. SEWALL:  No, we have not.

        THE COURT:  When will that first report be available?

        MS. LARAKERS:  We expect it the first week of November.  So it will be -- the reporting will be for the month of October for the people who checked in in October.  And then we expect to be able to provide that the first week of November.  But I'm still, I'll be in communication with petitioners about when that report -- when they will be able to expect that report every month.  Because I'm still getting an answer as to how long it will take each ERO to combine the spreadsheet, but it shouldn't take long.

        So there's multiple check-in areas, so they'll have to combine the spreadsheet, make sure it looks uniform, and then send it over to petitioners.  But we don't at this time expect that to take longer than a week to compile.  So it will probably be in the first week of October -- I mean November.  Sorry, Your Honor.

        THE COURT:  Well, I think it's a positive development that you've reached this agreement and that petitioners are receiving voluntarily certain information.  That's important.  So as requested by the parties, I'm ordering a stay on the motion for a temporary restraining order or preliminary

1   injunction for at least three months, and I guess the three

2   months are October, November, and December.

3        So I'm ordering that say by December 20, the parties

4   confer and report whether they request an extension of the stay

5   or that it be lifted.  And the petitioners could move for a

6   lifting of the stay, or the respondents could, at any time

7   after you confer.  If that occurs, I'll decide what to do.  I

8   haven't checked to see whether December 20 is a weekend,

9   though.  If it is, I'll adjust the date.

11:37 10        All right.  So I think I next need an overview on the

11   parties' positions concerning -- actually, I've got to give you

12   a date to brief vesting.  The proposal is that the respondents

13   will file a brief by October 20 -- what is it -- October 27,

14   and the petitioners will respond by November 7, I think.  Is

15   that correct?

16        MS. LARAKERS:  October 24, I believe, Your Honor.

17        THE COURT:  October 24.  All right.  Let me have your

18   book.  Do you anticipate you may want to file a reply?

19        MS. LARAKERS:  Your Honor, I expect this briefing to

11:38 20   be brief, and I think -- I don't expect to raise any additional

21   arguments.  However, if November 7 is a hard deadline, perhaps

22   we should build in a week for a reply.  I don't want to get

23   caught in the situation that --

24        THE COURT:  No.  Exactly.  And if there's going to be

25   a reply, the reply shall be filed by November 15 -- we'll say

         1    November 14, and if there's going to be any sur-reply, it will

         2    have to be filed by November 20.  And we'll come back to the

         3    hearing date because it may depend on how many things need to

         4    be heard.

         5         All right.  I think I need an overview of the parties'

         6    positions on class certification and discovery.  But I think it

         7    will be facilitated if the respondents explain this possible

         8    motion for summary judgment.  Typically I wouldn't entertain a

         9    motion for summary judgment until the end of discovery, but I

11:39   10    think I may know where this is going.

        11         MS. LARAKERS:  Precisely, Your Honor, and that's the

        12    reason why I haven't moved for it yet.  I think the

        13    respondents' position is that there is no fact in dispute,

        14    there are no facts in dispute in this case, that it is a purely

        15    legal issue that can be briefed immediately on summary

        16    judgment.

        17         THE COURT:  What do you understand the issue to be?

        18         MS. LARAKERS:  The issues brought in the complaint,

        19    Your Honor, those are all purely legal issues.  ICE has stated

11:40   20    that even if ICE is detaining and removing individuals without

        21    considering the provisional waiver process, that that is legal.

        22    That has been our argument since the beginning.

        23         THE COURT:  Your argument --

        24         MS. LARAKERS:  Obviously --

        25         THE COURT:  -- since the beginning.  That's been the

1    argument you made in the motion to dismiss, which I've already

2    rejected.

3          MS. LARAKERS:  Yes, Your Honor.  And of course we plan

4    to make it again on summary judgment, fully expecting that that

5    argument won't be a winning argument but just to preserve the

6    argument.  However, of course ICE is doing the things that were

7    stated in the declaration and is considering the provisional

8    waiver process when making enforcement decisions.  But because

9    that's the fundamental issue in this case and because ICE has

11:41 10   already admitted that it was at least doing that for a time

11   being as with regard to some petitioners --

12          THE COURT:  Doing what?

13          MS. LARAKERS:  Was, as the testimony, perhaps not

14   fully considering the provisional waiver process in every

15   single case.  So because that's the fundamental argument --

16          THE COURT:  If that's the issue, why is that a legal

17   issue?  The question seems -- sounds to me as if it's quite a

18   fact-intensive issue:  Is ICE considering provisional waivers

19   in every case now.  And it seems like a factual issue.  I

11:42 20   decided the legal issue on the motion to dismiss.

21          MS. LARAKERS:  Your Honor, I think that discovery on

22   whether ICE is or is not is appropriate after we have a motion

23   for a summary judgment and after that final decision, and then

24   it would be a compliance.

25          THE COURT:  There's never a final decision.  The court

          1    has the authority to revise the decision at any time if we --

          2    well, at any time.  So in that sense it's not final until the

          3    case is over, but I've spent a lot of time on the issue.

          4         I actually -- let me ask you this because I thought

          5    perhaps you had a different issue in mind, although it's not

          6    anywhere mentioned in these joint reports.  Early on in this

          7    case in the briefing with regard to class certification, I

          8    think the respondents argued that the court lacks jurisdiction

          9    under Section 1252(f)(1) to grant class-wide relief under Rule

11:43  10    23(b)(2).  Is that still the respondents' position?

         11         MS. LARAKERS:  Yes, Your Honor.

         12         THE COURT:  Well, that's the one I thought you were

         13    going to raise because if I didn't have jurisdiction to provide

         14    class-wide relief, I wouldn't certify a class.  You know, the

         15    Ninth Circuit has rejected that view in Ali and several other

         16    courts in making a distinction between a violation of a statute

         17    and the operation of a statute.

         18         MS. LARAKERS:  Yes, Your Honor.  And I know those

         19    cases -- our primary argument is those cases have been changed

11:44  20    by the Supreme Court's ruling in Jennings.  So that's our

         21    primary argument with regard to class certification, and we

         22    certainly plan to make it when we re-brief class certification,

         23    and it was already made in our original opposition to class

         24    certification.  However, that's separate.  That argument is

         25    separate and apart from the merits issue as to the five named

1   petitioners and their spouses.  And it's there where we believe

2   that the court doesn't need any more facts to decide, as you

3   already did, whether ICE must consider the provisional waiver

4   process, whether ICE can detain individuals solely based on a

5   final order of removal.  Those are the issues that we don't

6   believe need any facts in order for this court to decide it.

7   So we would propose briefing on a motion for summary judgment

8   and then the discovery --

9            THE COURT:  But again, this is -- you're not being

11:45 10   clear on some things that are important.  If I were to decide a

11   motion for summary judgment before class certification, the

12   motion would only pertain to the named petitioners.  How many

13   are there now?  You said five.

14            MS. LARAKERS:  Ten, right.

15            MS. SEWALL:  Ten.

16            THE COURT:  That would only pertain to the class, to

17   the named petitioners, the individual petitioners.  But the

18   propriety of doing that -- as far as I know, I haven't gone

19   back and studied all of it -- I didn't know -- is that what

11:46 20   you're asking for?

21            MS. LARAKERS:  It could happen concurrently.  The

22   briefing could happen concurrently with the motion for class

23   certification.  I know that's what we've done in the past.  And

24   then that final decision, after a class is certified, would

25   apply to the class if certified or would just apply --

1         THE COURT:  No.  That's a tactical decision you have

2    to make.  Occasionally I'll do this in a class action.  If I

3    grant summary judgment with regard to the individual

4    plaintiffs, it doesn't have class-wide effect.  I thought

5    that's what --

6         MS. LARAKERS:  Our preference, Your Honor, is that --

7    our preference is to brief the motion for summary judgment and

8    then class certification because we believe that any decision

9    on summary judgment will affect our arguments on class

11:47 10   certification.

11        Now, Your Honor --

12        THE COURT:  But that's -- then there would have to

13   be -- okay.  But then there would have to be discovery

14   regarding the ten named plaintiffs.  That would be a

15   conventional case for summary judgment.  It comes up at the end

16   of discovery.  If the argument is that the court lacks

17   authority to grant class relief, that may be a legal issue that

18   ought to be decided before class certification because if I'm

19   persuaded that that's correct, there can't be a (b)(2) class.

11:48 20   But I think that I've been trying -- I'm interested in hearing

21   from plaintiffs, but I've been trying to --

22        MS. LARAKERS:  Your Honor, if I may?

23        THE COURT:  No.  Listen.  I think it's very important

24   to identify precisely what the questions are.  So, you know,

25   one question, maybe the only question left, is consideration of

1    provisional waivers before ordering removal.  But there are

2    also detention issues that were raised.  And then you make some

3    arguments about how, even if I had jurisdiction, the court had

4    jurisdiction, a (b)(2) class wouldn't be appropriate because

5    individual decisions dominate.  But I think that depends on

6    what the question is.  If the question is did this person --

7    you know, why was this person removed, a person who was

8    pursuing a provisional waiver removed, there might be many

9    different -- you know, each case would be unique, but if the

11:49  10    question is is ICE considering provisional waivers before

11    making decisions as to whether somebody should be ordered

12    removed before the provisional waiver process is complete, that

13    would require looking into the practice of ICE, not the outcome

14    of each case.

15         So I mean, one issue is jurisdiction.  One issue is,

16    in my current conception, you know, do individual decisions

17    have to be considered?  What should I know from the

18    petitioners' point of view on this summary judgment point?  How

19    do you understand it?  Where do you think it fits?

11:51  20         MS. SEWALL:  We were a little confused on the

21    meet-and-confers about what the position is.  This is helping a

22    little bit.  But as far as we're concerned, the motion to

23    dismiss was denied.  The court made a ruling on certain legal

24    obligations, and the case should proceed in the ordinary course

25    of discovery.  The class certification issue is briefed and

1    ready.  Part of their opposition to our class certification

2    motion is the jurisdictional question Your Honor raised.  So

3    that's ready to be decided as well.  And this should just

4    proceed to ordinary discovery.  The question of --

5              THE COURT:  Ordinary discovery on what?

6              MS. SEWALL:  On liability.

7              THE COURT:  No.  That's why I read your papers.

8    You're looking for class-wide discovery on the merits, right?

9              MS. SEWALL:  Correct, correct, yes.

11:51 10          THE COURT:  Have you considered, for example, the

11    implications of the Supreme Court decision in Amgen for that?

12              MS. SEWALL:  I'm not sure, Your Honor.

13              THE COURT:  When class certification is disputed, you

14    don't get class-wide discovery on the merits generally until a

15    class is certified.  The only discovery you're entitled to

16    prior to class certification, if any, is discovery that goes to

17    whether the class should be certified.  Sometimes the Supreme

18    Court tells us there's overlap between class certification

19    discovery and merits discovery, but the fact that you're

11:53 20   seeking class certification isn't a blank check to get merits

21    discovery.  And this is something that isn't -- I discerned in

22    reading the joint statements and particularly, you know, your

23    proposed discovery schedule that that's a distinction that you

24    didn't discern.  I have docket number 162-1 at page 4 in mind.

25    So you're looking for merits discovery, as I said.

         1          In Amgen, the Supreme Court said that, "Pre-class
         2    certification discovery must be limited.  The determination of
         3    whether the Rule 23 prerequisites are satisfied, it may overlap
         4    somewhat with merits discovery, but Rule 23 doesn't permit free
         5    range in merits discovery."  That's 133 Supreme Court 1184 at
         6    1194-95.

         7          And if the respondents are right with regard to
         8    vesting, that there's no right to have your provisional waiver
         9    application considered until there's an approved I-212, that
11:54   10    would limit the amount of discovery you would get.  So that's
        11    why I thought it would be essential to decide vesting, which is
        12    what the parties have brought to my attention previously.
        13    Nobody -- I don't know why in the joint reports there's no
        14    mention of 1252(f)(1) if that's what you're relying on.

        15          MS. LARAKERS:  Your Honor, if I may, on 1252(f)(1).
        16    Our 1252 arguments were very separate and distinct in the
        17    motion to dismiss, but in the class cert context the 1252
        18    (f)(1) is very tied in with the requirements for 23(b).  That's
        19    why it's not -- that's why we didn't propose that it be heard
11:55   20    first and then do class certification second.  We think it's
        21    more feasible to do the jurisdiction arguments on class cert
        22    with the rest of the 23(b)(2) arguments.

        23          THE COURT:  I think I agree with that, but it relates
        24    to these issues of discovery.  And what I think ought to be
        25    briefed in this or you ought to point me -- you ought to point

1    me to the briefs you've already filed and give me any

2    jurisprudence in the last five or six months since you

3    submitted those briefs and be prepared to argue them.

4         I mean, one, if the respondents are right and there's

5    a lack of jurisdiction authority to certify a (b)(2) class in

6    this case, there's nothing more to discuss concerning class

7    certification.  So that's one.  Two, if the respondents are

8    right that -- I mean, I think this is <u>Wal-Mart</u>.  I've only

9    glanced at <u>Wal-Mart</u>.  You know, if an infinite number of

11:57 10    individual decisions would have to be made, it's not -- the

11    case is not amenable of class certification.

12         But that's not what I thought the petitioners were

13    focused on, but I don't know, not outcomes but what's ICE's

14    practice.  Because that's what, for (b)(2) purposes -- you're

15    seeking to certify a class based on the contention that the

16    class -- that ICE has acted or refused to act on grounds that

17    apply generally to the class so that final injunctive relief or

18    corresponding declaratory relief is appropriate respecting the

19    class as a whole, right?

11:58 20         MS. SEWALL:  Correct.

21         THE COURT:  So what exactly is the allegation; what do

22    the petitioners allege ICE has done or refused to do on grounds

23    that apply generally to the class?

24         MS. SEWALL:  Refused to grant them access to the

25    provisional waiver process, Your Honor.

```
 1            THE COURT:  All right.  So that's not a detention
 2   claim, right?
 3            MS. SEWALL:  Correct.
 4            THE COURT:  So you're not seeking certification of a
 5   detention claim?
 6            MS. SEWALL:  No.
 7            THE COURT:  Just to be clear --
 8            MS. SEWALL:  Well, it's certification of their right
 9   not to be detained or removed following -- without
11:59 10   consideration of the provisional waiver process.  They have a
11   right to that process before detention and removal.
12            THE COURT:  All right.  But that's not the issue that
13   I decided in May and amplified in June --
14            MS. SEWALL:  Correct.
15            THE COURT:  -- right?  And this also -- there's no
16   issue for class certification purposes, and maybe for any
17   purposes in the amended complaint, about the authority of ICE
18   to arrest at CIS offices, correct?  That's not part of the
19   class relief?
12:00 20            MS. SEWALL:  I think it is, Your Honor, because that
21   practice is depriving them of the right to the process.  It's
22   sort of the bait and switch argument.
23            THE COURT:  Let me have your amended complaint.  Is
24   that in the amended complaint?
25            MS. SEWALL:  I believe it is, Your Honor.
```

```
 1              THE COURT:  It says here -- let's see.  "Seeking
 2    relief on behalf of a class of people pursuing the provisional
 3    waiver application process.  The class is defined as any U.S.
 4    citizen and his or her non-citizen spouse who has a final order
 5    of removal and has not departed the U.S. under that order; two,
 6    is a beneficiary of a pending or approved I-130 petition for
 7    alien relative filed by the U.S. citizen spouse; and three, is
 8    not ineligible for a provisional waiver under a particular
 9    regulation."  And then I'm looking at the prayer for relief
12:01 10   that begins on page 30, paragraph 138 to paragraph 145.
11              MS. SEWALL:  Yeah.
12              THE COURT:  It doesn't seem to say anything about
13    arrests at CIS offices.
14              MS. SEWALL:  The paragraph about enjoining, paragraph
15    141 about "Enjoining respondents from subjecting non-citizen
16    petitioners and other non-citizen members of the proposed class
17    to detention and removal on the basis of a final order without
18    regard to their efforts."  By arresting individuals at their
19    I-130 interviews, that's part of the practice.
12:02 20             THE COURT:  So it would be part of this more general
21    relief that you're seeking?
22              MS. SEWALL:  Correct.
23              THE COURT:  I don't think the parties have really
24    briefed this discovery dispute.  You tell me about it in the
25    reports.  But for example, you haven't considered the
```

1    implications of Amgen.

2              MS. LARAKERS:  Your Honor, so --

3              THE COURT:  There's more to consider, but go ahead.

4              MS. LARAKERS:  Yes.  Your Honor, so if I can briefly

5    clarify.  My whole position about moving forward to

6    cross-motions for summary judgment was if this court agreed

7    with the government that no fact discovery is needed.

8    Obviously, if this court believes that fact discovery is needed

9    to decide the final merits issues, then my proposal is as

12:04 10   stated in the joint motion; that we should brief the vesting

11   issue first because that is directly -- will directly impact

12   any class certification arguments that the government has and

13   certainly as will the analysis of that decision.  So the

14   government --

15             THE COURT:  How do you think it will impact it?  I

16   know how I think it would will impact it.

17             MS. LARAKERS:  Much how you believe it will impact it.

18   That it could limit the class and it will determine our

19   commonality arguments.  Additionally, your decision on the

12:05 20   motion to dismiss certainly impacted our arguments for and

21   against commonality as well.  So the government would like an

22   opportunity.

23             THE COURT:  Yeah, explain that to me.

24             MS. LARAKERS:  So Your Honor, obviously it seems that

25   if your decision is that ICE must only consider the provisional

1      waiver process amongst a long list of other factors, our

2      commonality arguments in the class certification context are

3      not as strong as they are against petitioners' argument that

4      they shouldn't be removed categorically.

5              So if Your Honor's decision is that they shouldn't be

6      removed categorically, then obviously there are many arguments

7      against commonality.  However, your decision with the motion to

8      dismiss, that it's just one thing that should be considered,

9      that gets rid of a lot of those arguments.  Of course we'll

12:06  10     still make them in case a different decision is made on motion

11     for summary judgment.  However, it obviously impacts it.

12             THE COURT:  Well, I believe -- I mean, you know, I

13     decided this orally in August.  I took the time again to write

14     it to try to make it more complete and more clear.  But I

15     ordered that ICE had to consider, I didn't order -- I'm not

16     qualifying anything I wrote particularly in my written

17     memorandum and order, but I didn't write that ICE could never

18     remove or deport somebody who had applied for -- had a pending

19     application for a provisional waiver.

12:07  20             MS. LARAKERS:  Yes, Your Honor.

21             MS. SEWALL:  Correct.  And I think that our proposed

22     relief doesn't call for that as well.

23             THE COURT:  Your proposed relief would be consistent

24     with what I ruled.

25             MS. SEWALL:  Our proposed relief is a little bit

1    different from what you ruled.  I think it's more that for the

2    injunction that would issue would prevent removal of

3    petitioners and putative class members absent certain exigent

4    circumstances.

5         MS. LARAKERS:  So it was a bit broader.  Their request

6    for relief is a bit broader than what you ordered, so that

7    certainly -- all that to say, the vesting issue, the analysis

8    on the vesting issue and your analysis and decision in the

9    motion to dismiss affect the government's arguments in

12:07 10   opposition to the class certification.  Therefore that's why we

11   requested that the vesting issue be briefed separate, have a

12   decision on that, then move forward to supplementing our

13   arguments on class certification and then at that time it would

14   be proper to move into the discovery that petitioners are

15   requesting.

16        THE COURT:  Well, here is the way it's coming into

17   focus for me.  First, there has to be a clear definition of

18   what the questions are and, you know, what -- what's the

19   definition of the class?  You know, right now it starts with

12:08 20   anybody who has a pending I-130.  So that's part of the reason

21   I think that needs to be decided early.  But there's when --

22   then the question is, essentially, what's the relief being

23   sought?  What is the action -- you know, what is ICE doing or

24   refusing to do on grounds that apply generally to the class?

25   And that has to be pretty carefully defined because that

1    will -- let me just tell you where this is going.

2         So I noted in Amgen the Supreme Court's reminder,

3    because it said the same thing previously, that a motion for

4    class certification doesn't get you merits discovery, although

5    there can be some overlap.  But I think there's also -- you'll

6    have to look at this, another -- there's a nuance or an

7    exception to that.  And that is, if you look at Professor

8    Rubenstein's Newberg on Class Action Section 7:15, he says,

9    "Class certification discovery is appropriate in two

12:10 10   circumstances:  when the facts relevant to any of the

11   certification requirements are disputed; or, two, when the

12   opposing party contends that proof of the claims or defenses

13   unavoidably raises individual issues."

14        That's what the government was arguing when this was

15   briefed originally.  But as this has evolved, that may not even

16   be the respondents' position any longer, I don't know.  But

17   you'll take your positions.  If it's the respond -- if I find I

18   have jurisdiction, if I find Ali persuasive and then I think

19   the respondents' second argument is, well, (b)(2) certification

12:11 20   is not appropriate because, you know, there are too many

21   individual issues that would have to be resolved.  If that's

22   the argument, there may be broader discovery than would

23   otherwise be permissible.  I'm not saying there is, but this

24   occurs to me.

25        But to some extent, it depends on what the question --

the petitioners want to -- it seems to me at the moment that
there needs to be a more precise definition of what the issue
is, including -- you know, of what the respondents are
allegedly doing on a class-wide basis or failing to do that
should be enjoined.

Then there's going to be the question of whether
Section 1251, or is it 1252, I think, (f)(1) deprives this
court of jurisdiction to decide that question. Then third, you
know, do individual issues -- does the relief sought
unavoidably raise individual issues. And then fourth, at the
moment -- I thought previously this might be first -- vesting.

So let's say the petitioners get over all of those
threshold hurdles. You define the question. 1252(f)(1)
doesn't deprive the court of jurisdiction. The way the
question is framed, there's not individual issues, you know, a
myriad of individual issues that have to be decided.

You want to listen to me, not her. We'll take a
break.

And then I think vesting would come next. When does
it vest? Because, you know, this is potentially a class
action. If you've got over those hurdles, then what's the
scope of the class? Does it include people seeking an I-130 or
just people later in the process? And then there would be
issues of the scope of discovery and I believe -- I expect
that -- well, I guess I don't know what I expect. The

1   petitioners might be entitled to -- I don't know what I expect.

2   I don't know if the Rule 23 -- once we get to this point, I

3   don't know whether the Rule 23 prerequisites are going to be

4   disputed.

5          If individual issues are not unavoidably or inevitably

6   raised and have to be resolved, class certification is not the

7   point where the court is supposed to evaluate the merits of the

8   case.  So if a question has been defined which states a claim

9   for which relief can be granted, under (b)(2), I don't know if

12:16 10  any discovery would be necessary to decide class certification;

11  nor do I know whether the respondents would dispute anything

12  else, like numerosity or typicality of the individual

13  plaintiffs in this case, whether they're appropriate people to

14  represent the class.

15         Do you think you're following what I'm explaining?

16         MS. SEWALL:  Yes, Your Honor.  May I respond and

17  clarify a point made previously.

18         THE COURT:  Yes.

19         MS. SEWALL:  So I think the issues you ran through are

12:16 20  mostly in the current briefing that, at least our affirmative

21  brief, what the government is doing and what they've failed to

22  do.  They have enacted regulations and they're not allowing the

23  people they enacted them for to follow those regulations.

24  They're cutting them off from that process.  The jurisdiction

25  questions are also briefed.  Then the relief sought, we outline

1    how it does not raise an individual issue.  It's this question

2    of access.

3             THE COURT:  You address that where?

4             MS. SEWALL:  In the class certification motions.  The

5    issue that has not been addressed is the vesting issue.  And

6    the way the petitioners understand the vesting issue is that

7    this is a question that respondents should have put in their

8    opposition brief but did not.  They raised it at the hearing

9    later on.

12:17 10         So the way we set up the briefing schedule is we have

11   our opening brief.  They get their opposition where they get to

12   raise the vesting issue.  And if there are arguments related to

13   the vesting issue about numerosity, typicality, those should be

14   all raised at the same time.  We also propose that they raise

15   any additional issues that they think need to be addressed

16   given the transpiring of the last few months and what's

17   happened.  We wanted that all to be consolidated in briefing by

18   November 7 so that we can, as you say, move the class

19   certification issue along and get at least a provisional class

12:18 20   certification set so that we can move on to the merits

21   discovery.  The discovery we've sought in the meantime is more

22   going to the question of the class.

23             THE COURT:  Well, it's not what you sought.  What you

24   wrote in your submission is merits discovery.

25             MS. SEWALL:  Yeah.  And I think that sort of -- it was

very likely, you know, mixed in with everything else, so I
think basically we have served discovery and we are planning to
serve discovery that goes to the scope of the class and things
like that.  But also, I mean, it is intertwined with the
merits.

THE COURT:  I'm ordering that you not serve any
discovery.  You're going to have to brief these issues in a way
that they haven't been briefed yet.

MS. SEWALL:  Yeah.  Well, we served interrogatories on
Friday.  If that's the court's order, then we can --

THE COURT:  Well, I didn't know that, but I don't know
what the interrogatories are and whether they're going to be
inconsistent with what I'm telling you.  If they're
interrogatories that parallel the discovery that you said you
were seeking in the joint statement you provided it's merits
discovery, and it's probably going to be too expansive.

MS. LARAKERS:  Your Honor, I have a copy of the
discovery if you'd like to see it.

THE COURT:  Not right at the moment.

MS. SEWALL:  So the written discovery we've served
is -- if you look at --

THE COURT:  Is it limited to the prerequisites for
class certification?

MS. SEWALL:  It goes to the scope of the class in
terms of how the government, if the government is treating --

1    how the government is taking into account the provisional

2    waiver process.  There's an interrogatory asking them their

3    contention, if they take the provisional waiver process into

4    account, tell us how they are taking it into account.

5            THE COURT:  Well, I think --

6            MS. SEWALL:  Then there's also an interrogatory that

7    goes to some of the reporting from the PI that we discussed

8    earlier.

9            MS. LARAKERS:  Your Honor, it asks us to identify

12:20 10    putative class members and then report on those putative class

11    members, and they're starting that from the I-130.

12            MS. SEWALL:  So with the -- so if we can -- I mean, we

13    can meet and confer on these issues and try to narrow it if

14    that's the court's order.

15            THE COURT:  I think I can help you.  Let me see if

16    there are more issues I intended to --

17            MS. SEWALL:  We're happy to take a break at any point

18    as well.

19            THE COURT:  No.  Do the respondents -- I touched on

12:21 20    this, but I don't think I gave you a chance to answer.  Do the

21    respondents want any discovery from the plaintiffs,

22    petitioners?

23            MS. LARAKERS:  Your Honor, I don't know at this point.

24    Because our position was that it's a purely legal issue, and we

25    shouldn't need any.

1          THE COURT:  What's a purely legal -- the one you told

2     me is a purely legal issue is not a legal issue.  The

3     jurisdictional issue may be a purely legal issue, but that's

4     one that you didn't mention until I raised it.

5          MS. LARAKERS:  So the purely legal issues are the

6     issues raised in the complaint, Your Honor, whether ICE has to

7     consider the provisional waiver process when making enforcement

8     decisions.

9          THE COURT:  Okay.  I've decided --

12:22 10          MS. LARAKERS:  You decided that one.  The detention

11    issues that you have partially decided.  The interpretation of

12    the regulation we believe is a purely legal issue.  Whether ICE

13    can detain individuals solely based on their final order of

14    removal we believe is a legal issue.  And then that's sort of

15    the backbone of why we wanted to do the motion for summary

16    judgment first.  But I understand that Your Honor doesn't

17    agree, and that's why we in our joint report took the -- we

18    took that and we have moved forward from that for the most

19    part.

12:22 20          THE COURT:  Well, some of these issues I haven't

21    addressed.  Some of what you just said I've already decided,

22    and other things haven't been presented to me.

23          MS. LARAKERS:  Certainly, Your Honor.  And I would

24    think ideally we would have those decided before we even moved

25    into class certification.

1          THE COURT:  No.  At that level of generality, I agree.

2     What I'm inclined to do, having heard this, is say, one, there

3     needs to be a definition, you know, what's the question?  As I

4     said, with more specificity -- doesn't necessarily have to be

5     long, but it has to be focused.  You know, what is it that ICE

6     is allegedly doing or refusing to do on grounds that apply

7     generally to the class.

8          Then there would be the 1252(f)(1) issue, which is a

9     legal issue in the context of that question.  Does the court

12:24 10    have the -- is the court deprived of jurisdiction by that

11    statute?  Then if the answer to that is no, it seems to me is

12    certification under (b)(2) nevertheless inappropriate because

13    the question requires a degree of individual decisionmaking

14    that causes the question not to be amenable to resolution on a

15    class-wide basis.

16          If the answer is no, you know, you've stated a

17    question over which the court has jurisdiction and it can be

18    properly dealt with on a class-wide basis, then we get into

19    issues of defining the class.  That's where I think, based on

12:25 20    what I've heard today, the vesting issue comes in.  Is the

21    class, putative class people who file I-130s or only people

22    someplace further along in the process.  And as far as I know,

23    that issue -- well, I think we agree, that issue is not briefed

24    yet.

25          MS. SEWALL:  That issue is not briefed yet.

1          THE COURT:  So I'll give you a chance to do that.  And

2     then the government gets -- if the petitioners get over all of

3     those hurdles and the vesting is at the I-130, you may or may

4     not need discovery for class certification purposes.  If the

5     class is narrower because the vesting is later, you may or may

6     not need any discovery for class certification purposes.  If no

7     discovery is necessary for class certification purposes and

8     issues like numerosity and typicality are not disputed, I would

9     certify the class, and then you can get to merits discovery.

12:26 10          But I think I ought to create a schedule that permits

11     that to proceed and for you to brief all of those issues,

12     defining the question, or point me to where in the prior briefs

13     they're addressed.

14          MS. SEWALL:  And just so our position is clear, we do

15     think the prior issues are within our initial brief, the

16     initial briefing.  The vesting issue, if the court wants to

17     hear it now, I mean, there could be a provisional certification

18     of a class and the vesting issue could wait for summary

19     judgment after fact discovery proceeds.

12:27 20          THE COURT:  No, no.  It would be unfair to the

21     respondents to have to go through the burden of giving you

22     discovery on people who have applied for I-130s if they're not

23     going to be in the class.

24          MS. SEWALL:  Okay.  So then I think our position on

25     the vesting briefing, because we are anxious to get the class

```
 1    certified and to move along, our position on the vesting
 2    briefing is that it can come in two rounds, a supplemental
 3    opposition brief from the government, a reply brief from
 4    petitioners, and then move to a hearing, and all the issues
 5    could be decided after November 7.
 6              THE COURT:  So where in your briefs is the question
 7    defined?  I said that's the first point.
 8              MS. SEWALL:  I think that starting on page 2 we say --
 9              THE COURT:  Page 2 of docket number what?
10              MS. SEWALL:  Docket number 47.  I'll point you to a
11    few places, but I might defer to Stephen, who is the class
12    certification motion expert.
13              THE COURT:  Stephen who?
14              MS. SEWALL:  Stephen Provazza.
15              MR. PROVAZZA:  Good morning, Your Honor.
16              MS. SEWALL:  Sorry.  Go ahead, Stephen.
17              MR. PROVAZZA:  So we raised a number of common
18    questions in the commonality section of our motion.  So in our
19    brief in support of our motion we lay out common questions
20    related to all of our claims in that portion.
21              THE COURT:  Of course this -- and, you know, I haven't
22    studied this.  But I mean, you filed this April 30.  You didn't
23    have my ruling until August, so I really wonder whether it can
24    possibly be the last thing you should submit on this issue of
25    what the question is.
```

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | MR. PROVAZZA:  We understand, Your Honor.  We list                    |
|       | 2  | here --                                                                |
|       | 3  | THE COURT:  What page?                                                 |
|       | 4  | MR. PROVAZZA:  On page 9 we list nine different                       |
|       | 5  | questions as examples of the common questions that the                |
|       | 6  | litigation raises.  And so again on Rule 23(a)(2) --                  |
|       | 7  | THE COURT:  No.  Actually, see, this is different.                    |
|       | 8  | Page 9 of docket 47, so the paragraph introducing the nine            |
|       | 9  | questions says, "at its core this case concerns a single common       |
| 12:30 | 10 | legal question, whether respondents' practice of detaining and        |
|       | 11 | deporting class members pursuing legalization under the               |
|       | 12 | provisional waiver process is unlawful."                              |
|       | 13 | I haven't thought about this.  I don't know to what                  |
|       | 14 | extent you've thought about it.  But my decision was more             |
|       | 15 | nuanced.  In denying a motion to dismiss, I didn't find that          |
|       | 16 | ICE could never detain or deport somebody who had filed an            |
|       | 17 | I-130 or had an approved 212.  I said they had to consider that       |
|       | 18 | among other relevant factors.  I don't know if I said this at         |
|       | 19 | the last hearing, but I recall at least thinking let's say U.S.       |
| 12:31 | 20 | citizen wife had applied for an -- for a provisional waiver and       |
|       | 21 | then her alien spouse domestically abused her in a really             |
|       | 22 | violent way.  You know, I would think that that's something --        |
|       | 23 | if this person was viewed by ICE as dangerous, I would think         |
|       | 24 | the person could be removed even though his spouse had                |
|       | 25 | previously filed for an I-130.                                        |

1          Maybe that's not a good hypothetical or analogy, but I

2     don't think -- well, I didn't order them not to ever remove

3     anybody who had a pending application.  I ordered them to

4     consider it, to consider the very important public policies

5     expressed in the Immigration and Nationality Act about keeping

6     families of American citizens together.  So that's different

7     than this question.

8          MR. PROVAZZA:  Understood, Your Honor.  And I think

9     our proposed class-wide injunctive relief took that into

12:32 10    account, that there are some circumstances that ICE should

11    remove --

12         THE COURT:  Is there a reason I shouldn't require you

13    to sort of update this briefing, refine the question so I know

14    exactly what the question is and so the respondents know

15    exactly what the question is, and then we'll be able to focus

16    on whether I have jurisdiction over that question, whether

17    individual decisions have to be made and vesting.  That's how I

18    am inclined to proceed.

19         MR. PROVAZZA:  I understand your concerns, Your Honor.

12:33 20   If you look at the first question we list here, I believe

21    that's a very a close reiteration of what you articulated in

22    your order:  Removing someone without any regard for the

23    provisional waiver process.  So we've identified a list of

24    questions here that relate to all of the class-wide claims.

25    This might not be an exhaustive list, but under 23(a)(2), just

1  one common question is appropriate to proceed in a class-wide

2  basis.

3         THE COURT:  I haven't studied this.  I don't know if

4  that's true.  If there's one common question and many

5  individual questions, I doubt it would be appropriate -- I

6  think I'd have to -- I would narrow the class to the one

7  question, not the nine questions.

8         MR. PROVAZZA:  And again, if Your Honor's concerned

9  that we need to further refine our questions, that's something

12:34 10  that can be done in supplemental briefing.

11         THE COURT:  Right.  Or maybe on reflection you don't

12  think you need to do it, but I haven't studied these papers.

13  Here is what we're going to do.  Ms. Larakers, do you want to

14  say one more thing?

15         MS. LARAKERS:  One more thing.  Your Honor, the

16  respondents agree with the court.  The government would

17  certainly benefit from -- and I think the questions that you're

18  talking about, you're looking for a refined list of questions

19  on what they want class-wide relief on.

12:35 20         THE COURT:  Exactly.

21         MS. LARAKERS:  Not necessarily the common issues in

22  the class, if I -- they can overlap, but certainly what they're

23  looking for class-wide relief on, and I think their answer

24  is --

25         THE COURT:  Essentially, what would the injunction be,

        1    I think is the question.  And then does that question or those

        2    questions come within the definition of a (b)(2) class, right?

        3           MS. LARAKERS:  Yes.

        4           MR. PROVAZZA:  So if I understand your question, Your

        5    Honor, the question is what our proposed class-wide relief

        6    would be and whether the common questions get us to that

        7    class-wide relief.

        8           THE COURT:  Right.

        9           MR. PROVAZZA:  Okay.  Understood, Your Honor.

12:35  10           THE COURT:  All right.  And then -- all right.  So I

       11    think now we're talking about scheduling additional briefing

       12    and then enough days possibly for hearings so I can prepare for

       13    the hearings and decide the questions.  You know, the first

       14    would be 1251(f)(1), then the issue of whether, if I have

       15    jurisdiction, the question or questions are amenable to

       16    class-wide relief or whether they require too many individual

       17    decisions.  That may not be the government's position once the

       18    questions are focused.  And then the vesting issue.

       19           And then, as I said, right now it seems to me that you

12:37  20    may not need -- you know, if we get to that point, you may not

       21    need any discovery for me to decide class certification.  There

       22    may not be any disputed issues.  I'll have decided that a

       23    (b)(5) class is permissible, and there's no -- if there's no

       24    argument that the individual plaintiffs are atypical,

       25    inadequate to represent that class, we do class certification,

```
 1   and then you have merits discovery.

 2          MS. LARAKERS:  Your Honor, we agree with that, and we

 3   would say if that's the way it should proceed, then petitioners

 4   have the opening brief and then it go like a normal schedule.

 5          THE COURT:  Right.  At least they have to -- I think

 6   so.

 7          MS. SEWALL:  I guess there's the question of whether

 8   we can proceed with certain limited discovery in the meantime.

 9          THE COURT:  I don't -- I guess the short answer is no

12:38 10   based on what I know.  But you're getting -- look, I commend

11   ICE for doing this.  What's that?

12          MS. SEWALL:  As to the named petitioners, since the

13   motion to dismiss was denied, we would proceed with discovery

14   not necessarily --

15          THE COURT:  Concerning what?

16          MS. SEWALL:  -- class-wide relief --

17          THE COURT:  Concerning what?

18          MS. SEWALL:  Concerning the merits of the main

19   petitioners' claims.

12:38 20          THE COURT:  You can file a motion requesting it.  I

21   just don't know what you're talking about, and I've got another

22   major matter to prepare for this afternoon.  But the way you

23   described discovery in your joint report is inconsistent with

24   the directions given by the Supreme Court in Amgen and other

25   cases, and I can only decide things based on what you tell me
```

       1    in advance.  That's why I didn't decide the vesting issue in

       2    August, and you asked for more discovery than you're entitled

       3    to with regard to class certification, so I'm not permitting

       4    any discovery.

       5            And confer on it.  Did the respondents understand they

       6    only wanted discovery about the individual petitioners?

       7            MS. LARAKERS:  No, Your Honor.  We thought that the

       8    individual petitioners was done in expedited discovery, and

       9    then we wanted to confer on discovery after these issues were

12:39 10    briefed.

      11            THE COURT:  Well, I'll order that you confer about

      12    whether there should be any discovery on the individuals.  But

      13    right now ICE understands the individuals can't go anywhere

      14    because of my order.  As long as their habeas petition is

      15    pending, they get to stay in the United States.  Think about

      16    how fast you really want this to go.

      17            Here, I don't think discussing scheduling is done best

      18    in open court.  I'll see you and the court reporter in the

      19    lobby.  I'm ordering that you order this transcript on an

12:40 20    expedited basis because it will remind us all of what you're

      21    obliged to do and what the issues are.  Court is in recess.

      22            (Adjourned, 12:40 p.m.)

      23

      24

      25

CERTIFICATE OF OFFICIAL REPORTER

         I, Kelly Mortellite, Registered Merit Reporter
and Certified Realtime Reporter, in and for the United States
District Court for the District of Massachusetts, do hereby
certify that pursuant to Section 753, Title 28, United States
Code that the foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
above-entitled matter and that the transcript page format is in
conformance with the regulations of the Judicial Conference of
the United States.

                    Dated this 11th day of October, 2018.


                    /s/ Kelly Mortellite

                    _____

                    Kelly Mortellite, RMR, CRR

                    Official Court Reporter