# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., ) ) ) ) | |
| Individually and on behalf of all others similarly situated, ) ) ) | No. 1:18-cv-10225-MLW |
| Plaintiffs-Petitioners, ) ) | **ORAL ARGUMENT REQUESTED** |
| v. ) ) | |
| KIRSTJEN M. NIELSEN, et al., ) ) | |
| Defendants-Respondents. ) ) | |

## UPDATED MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .....................................................................................................1

    I.      Petitioners ................................................................................................1

    II.     Respondents' class-wide conduct ..........................................................3

    III.    Procedural History ..................................................................................7

PROPOSED CLASS DEFINITION .......................................................................................7

ARGUMENT ..........................................................................................................................7

    I.      The proposed class meets the requirements of Rule 23(a). ....................8

         A.      The class is sufficiently numerous that joinder is impracticable. ................8

         B.      There are common questions of law and fact. ...........................................11

         C.      Petitioners' claims are typical of class members' claims. .........................14

         D.      The class is adequately represented. ..........................................................16

    II.     The proposed class meets the requirements of Rule 23(b). ...................17

    III.    Alternatively, the Court should certify this case as a representative habeas action. ...................................................................................................................19

CONCLUSION......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455, 459 (2013)..................................................................................12

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985)............................................................................16

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ...........................................................................15

*Baggett v. Ashe*,
   No. 11-cv-30223-MAP, 2013 WL 2302102 (D. Mass. May 23, 2013)..................15

*Becerra v. United States Dep't of Interior*,
   276 F. Supp. 3d 953 (N.D. Cal. 2017) ..............................................................13

*Bruce v. Christian*,
   113 F.R.D. 554 (S.D.N.Y. 1986) ..........................................................................9

*In re Credit Suisse-AOL Sec. Litig.*,
   253 F.R.D. 17 (D. Mass. 2008)..........................................................................16

*Connor B. ex rel. Vigurs v. Patrick*,
   272 F.R.D. 30 (D. Mass. 2011)..........................................................................11

*Connor B. ex rel. Vigurs v. Patrick*,
   272 F.R.D. 288 (D. Mass. 2011).............................................................9, 16, 18

*DeGrace v. Rumsfeld*,
   614 F.2d 796 (1st Cir. 1980) .............................................................................16

*Doe v. Patrick*,
   No. 1:14-cv-12813 (D. Mass.) ..........................................................................17

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009).........................................................................................13

*Garcia-Rubiera v. Calderon*,
   570 F.3d 443 (1st Cir. 2009)...............................................................................9

*George v. Nat'l Water Main Cleaning Co.*,
   286 F.R.D. 168 (D. Mass. 2012)........................................................................14

*Gordon v. Napolitano*,
    No. 3:13-cv-30146 (D. Mass.) ........................................................17

*Griffin v. Burns*,
    570 F.2d 1065 (1st Cir. 1978) ...............................................14, 18

*Jackson v. Danberg*,
    240 F.R.D. 145 (D. Del. 2007) .........................................................9

*Mack v. Suffolk County*,
    191 F.R.D. 16 (D. Mass. 2000) ......................................................11

*McCuin v. Sec'y of Health and Human Servs.*,
    817 F.2d 161 (1st Cir. 1987) ............................................................9

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
    247 F.R.D. 253 (D. Mass. 2008) ....................................................11

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) .............................................................11

*In re New Motor Vehicles Canadian Export*,
    2006 WL 623591 (D. Me. March 10, 2006) ................................18

*Ramos v. Nielsen*,
    321 F. Supp. 3d 1083 (N.D. Cal. 2018) ......................................13

*Rancourt v. Concannon*,
    207 F.R.D. 14 (D. Me. 2002) .........................................................10

*Reid v. Donelan*,
    297 F.R.D. 185 (D. Mass. 2014) ..........................................9, 11, 17

*Reid v. Donelan*,
    3:13-cv-30125-PBS, Dkt. No. 416 (D. Mass. Oct. 23, 2018) ................12

*Risinger ex rel. Risinger v. Concannon*,
    , 201 F.R.D. 16 (D. Me. 2001) .......................................................10

*Torrezani v. VIP Auto Detailing, Inc.*,
    318 F.R.D. 548 (D. Mass. 2017) ...................................................10

*United States ex rel. Sero v. Preiser*,
    506 F.2d 1115 (2d Cir. 1974) ........................................................20

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
*Workers Int'l Union v. Fed. Highway Admin*,
    151 F. Supp. 3d 76 (D.D.C. 2015) ..............................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..........................................................................................11, 12, 18, 19

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ............................................................................................16

*Yaffe v. Powers*,
   454 F.2d 1362 (1st Cir. 1972)..............................................................................................18

**Federal Statutes**

5 U.S.C. § 553...........................................................................................................................13

5 U.S.C. § 706...........................................................................................................................13

8 U.S.C. § 1182...........................................................................................................................2

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes (1966 Rule Amendment)...........................19

**Regulations**

8 C.F.R. § 212.7 .......................................................................................................2, 7, 13, 18

Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final
   Rule, 81 Fed. Reg. 50244 (July 29, 2016) ............................................................................2, 3

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions*, (5th ed. 2013) .......................................11, 14

## INTRODUCTION

Petitioners are married couples pursuing the American dream under American law. Each couple comprises a U.S. citizen and a noncitizen who has a final order of removal in the United States, and each has begun the process of seeking legal status for the noncitizen spouse. Due to the 2016 expansion of the provisional waiver process—which allows the noncitizen Petitioners to seek lawful status without prolonged separation from their families—this Court has determined that Immigration and Customs Enforcement (ICE) may remove Petitioners only "after considering the fact that they are pursuing [provisional] waivers and the policies codified in the provisional waiver regulations." Dkt. No. 159 at 4. Petitioners now seek to represent a class of individuals who are entitled to that individualized consideration.

Class certification is warranted because Respondents have acted on a class-wide basis to stymie Petitioners' pursuit of the provisional waiver process. Respondents have targeted the noncitizen Petitioners and class members for detention and removal based solely on their final orders of removal, ignoring their pursuit of lawful status in accordance with the 2016 regulations. The class is thus bound together by this common question: whether Respondents' practice of disregarding participation in the provisional waiver process is lawful. Because Respondents have "acted or refused to act on grounds that apply generally to the class" through their interference with the 2016 provisional waiver regulations, Fed. R. Civ. P. 23(b)(2), and because Petitioners' proposed class meets requirements of Rule 23(a), class certification is appropriate.

## STATEMENT OF FACTS

### I.     Petitioners

Petitioners are five married couples that, like the class members they seek to represent, include a noncitizen with a final order of removal who is seeking to obtain legal status through his or her U.S. citizen spouse. Under 2016 regulations, the noncitizen Petitioners are eligible to

pursue lawful status without a lengthy separation from their families by (1) being the beneficiary of an approved marriage petition filed by their U.S. citizen spouse (form I-130), (2) securing conditional "consent[] . . . to reapply[] for admission" (form I-212), and thereby waiving a bar to admission based on their final order of removal, 8 U.S.C. § 1182(a)(9)(A), (3) obtaining approval of the provisional unlawful presence waiver (form I-601A), and thereby waiving a bar to admission based on their unlawful presence in the United States, *see id.* § 1182(a)(9)(B), (4) travelling abroad to attend an immigrant visa interview at a U.S. consulate, and (5) returning to the United States, thereby becoming a lawful permanent resident upon admission.  *See* Am. Compl. ¶¶ 30-36 (Dkt. No. 27); Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244, 50245 (July 29, 2016) ("2016 Final Rule").

Two of the noncitizen Petitioners—Lilian Calderon and Lucimar de Souza—were detained by ICE following interviews at which their I-130 petitions were approved.  Harris Aff. ¶ 16 (Dkt. No. 50-3); Andrade Aff. ¶ 11 (Dkt. No. 50-5).  Ms. Calderon's I-212 application was approved on April 2, 2018, Harris Aff. ¶ 30 & Ex. D (Dkt. No. 50-3), and she filed her I-601A application on June 21, 2018, Provazza Decl. Ex. A.[1]  Ms. de Souza's I-212 application was filed on April 11, 2018 and is still pending.  Andrade Aff. ¶ 21 (Dkt. No. 50-5).  Two other noncitizen Petitioners—Sandro de Souza and Oscar Rivas—faced imminent departure from the United States prior to this Court's April 13, 2018 Order staying their removal.  Mr. Sandro de Souza's I-130 was approved on March 1, 2018, but ICE ordered him to depart the country by April 24, 2018.  Loscocco Aff. ¶¶ 16-19 (Dkt. No. 50-6).  His I-212 application was approved on August 10, 2018.  Provazza Decl. Ex. B.  Mr. Rivas has filed both I-130 and I-212 applications, but had

---

[1] The October 24, 2018 Declaration of Stephen N. Provazza ("Provazza Decl.") is attached hereto as Exhibit 1.

been ordered to depart the country by May 2, 2018.  Sniffin Aff. ¶¶ 20-24 (Dkt. No. 50-2).

Petitioner Deng Gao has a pending I-130 application through his U.S. citizen wife.  Corbaci Aff.

¶¶ 4-5.[2]  After the government did not act on that application for more than two years, Mr. Gao

filed his I-212 application on August 7, 2018.  Corbaci Aff. ¶ 6.  Collectively, the named

Petitioners care for nine U.S. citizen children.[3]

## II.    Respondents' class-wide conduct

In 2016, the Department of Homeland Security (DHS) announced that it was "Allowing

Individuals With Final Orders of Removal, Deportation, or Exclusion to Apply for Provisional

Waivers."  2016 Final Rule, 81 Fed. Reg. at 50262.  That decision had an immediate impact on

Petitioners and class members—it rendered them eligible for the provisional waiver process that

DHS had created in 2013.  Declining to narrow eligibility for provisional waivers, DHS

explained that it was "confident that the expansion" of the provisional waiver process would

"reduce family separation and benefit the U.S. Government as a whole."  *Id.* at 50257.

This Court has already found that Petitioners plausibly alleged a pattern of conduct in

which ICE has arrested, detained, and removed (or attempted to remove) noncitizens seeking

lawful status through their U.S. citizen spouses without considering their efforts to gain lawful

status under the 2016 provisional waiver regulations.  *See* Dkt. No. 159 at 4, 38.  The record

confirms that class-wide practice.

First, consistent with their position that they have no duty to consider the provisional

waiver process in making decisions about *any* noncitizen's detention and removal, Oct. 9, 2018

---

[2] The October 23, 2018 Affidavit of Christina A. Corbaci ("Corbaci Aff.") is attached hereto as Exhibit 2.

[3] Rivas Aff. ¶ 1 (Dkt. No. 30-2); Calderon-Jimenez Aff. ¶ 1 (Dkt. No. 30-3); Gao Aff. ¶ 1 (Dkt. No. 30-4); Lucimar de Souza Aff. ¶ 1 (Dkt. No. 30-5).

Hr'g Tr. 16:18-22, Respondents have followed a policy of pursuing removal of any individual

with a final order of removal, regardless of participation in the provisional waiver process.  ICE

Boston Enforcement Removal and Operations ("Boston ERO") interpreted President Trump's

January 25, 2018 Executive Order 13768 to require the removal of all individuals with final

orders of removal regardless of their pursuit of legal status under the provisional waiver

regulations.  *See* Brophy Dep. Tr. 99:11-17 (Dkt. No. 137-5) ("Q. Executive Order 13768

requires ICE to remove all individuals with final orders of removal, correct? . . . A. I don't know

if that the specific language in it or not, but yes.").  Under this policy, Respondents have turned

noncitizens' good faith pursuit of legal status into a mechanism for ensnaring them.  Lyons Dep.

Tr. 38:5-21 (Dkt. No. 137-4) (Boston ERO had a practice of arresting people at CIS offices"[i]f

the subject had a valid unexecuted final order…."), 40:19-41:10 ("[A]s far as what they were

applying for, no, that wasn't one of the options or one of the considerations" on whether to take

enforcement action).  Boston ERO's policy has simply been that "[i]t's always time to leave once

you have a final order of removal."  Adducci Dep. Tr. 164:9-10 (Dkt. 137-3).

Second, Boston ERO must not have considered class members' pursuit of provisional

waivers when making decisions to arrest, detain, or remove them because it was never set up to

do so.  For starters, Boston ERO leadership knew almost nothing about the process.  *See*, *e.g.*,

Aug. 21, 2018 Hr'g Tr. 73:16-22 (Acting FOD Adducci was "not aware that individuals with

final orders who are married to U.S. citizens were eligible for the provisional waiver process");

Lyons Dep. Tr. 63:18-21 (Dkt. No. 137-4) ("Q:  And what are the forms a person has to file in

applying for provisional waivers?  A:  Off the top of my head, I'm not sure."); Brophy Dep. Tr.

26:22-25 (Dkt. No. 137-5) ("Q:  Do you know specifically what benefit they would gain from

applying [for provisional waivers]? . . . A:  Specifically, no.").  Not surprisingly, Boston ERO

had given no guidance or training to officers and was making no effort to learn of individuals'

pending provisional waiver applications.  *See* Aug. 21, 2018 Hr'g Tr. at 168:22-24 ("[D]id ICE

ask:  Do any of these people have petitions for I-212s or approved I-212s?  THE WITNESS:  No,

sir."); Lyons Dep. Tr. 45:14-17 (Dkt. No. 137-4) ("Q: Did ICE receive any information from CIS

regarding whether a person was eligible for provisional waivers? A: No."); Brophy Dep. Tr.

30:10-12 ("Q:  Did ICE ever conduct any training on the provisional waiver process?  A:  No.").

Although former Interim FOD Rebecca Adducci testified that she expected ICE officers to

consider eligibility for the provisional waiver process, she neither conveyed that expectation to

her subordinates nor educated any of her staff on the process at the center of this ongoing

litigation.  *See*, *e.g.*, Adducci Dep. Tr. 66:2-7; 90:22-91:4; 133:7-13 (Dkt. No. 137-3).

Finally, ICE has harmed numerous Petitioners and class members by failing to consider

the provisional waiver process.  Ms. Calderon and Ms. de Souza were among 13 individuals in

the first six weeks of 2018 alone who were targeted for detention and removal after appearing at

CIS for a required interview.  *See* Dkt No. 137-7 (ICE-0002125) (E-mail with attachment listing

individuals referred by CIS for arrest).  Ms. Calderon was detained because she had a final order

of removal, her husband could care for their children, and she had a valid passport; ICE regarded

her detention as "in accordance with Executive Order 13768 . . . and ICE's operating

procedures."  Feb. 21, 2018 Aff. of Todd M. Lyons ¶¶ 5-6 (Dkt. No. 19).  Mr. Lyons specified

that "she is not eligible of [sic] any immigration benefits that would allow her to remain in the

United States," and made no mention of Ms. Calderon's eligibility for and pursuit of provisional

waivers.  *Id*. at ¶ 5.  ICE similarly regarded Ms. de Souza as ineligible for any relief that it had to

consider, and thus kept her in custody without any consideration of the provisional waiver

process.  *See* April 23, 2018 Decl. of James L. Rutherford Ex. A ¶ 6 (Dkt. No. 40-1) (stating

officer "considered De Souza's final order of removal and the fact that De Souza is not eligible for any immigration benefits that would allow her to remain in the United States to be evidence of flight risk"). In another case, Mr. Lyons explained that "[t]his subject's attorney should have never advised him to attend this meeting. He has no path unless he leaves the country." Aug. 21 Hr'g Ex. 6, Dkt. No. 148 at 37 (ICE-0001641 – ICE-0001644). In February 2018, another 21 individuals were slated to be detained at CIS when—following this litigation—ICE halted its practice of arresting putative class members at their interviews. Aug. 21 Hr'g Ex. 7, Dkt. No. 148 at 41-43 (ICE-002883 – ICE-002885). But ICE continued to ignore the provisional waiver process in its enforcement decisions, including when it ordered Petitioners who were checking in pursuant to an Order of Supervision to depart the country.[4]

Even assuming that Respondents have taken steps in response to this Court's August 23, 2018 Order to consider provisional waiver applications when making enforcement decisions, there remains the very real threat that, without injunctive relief, Respondents could simply resume their illegal practice. *See* Dkt. No. 159 at 38. Despite this Court's August 23, 2018 ruling, *id.* at 31-38, Respondents continue to assert that they have the authority to continue "detaining and removing individuals without considering the provisional waiver process." Oct.

---

[4] On January 9, 2018, ICE instructed Mr. Sandro de Souza to report back by February 9, 2018 with a ticket to travel to Brazil on or before March 9, 2018. Loscocco Aff. at ¶ 12-13 (Dkt. No. 50-6). After a short extension, ICE placed Mr. Sandro de Souza on electronic monitoring pending his required departure from the United States on April 24, 2018. *Id*. at ¶ 19. On March 1, 2018, ICE instructed Mr. Rivas to report back on April 2, 2018 with a ticket to depart the United States by May 2, 2018 and placed him on electronic monitoring. Sniffin Aff. ¶ 20 (Dkt. No. 50-2). Mr. Rivas had both a pending I-130 and I-212 at the time he checked in. *Id*. at ¶ 15, 16, 18. On June 12, 2018, at her first check-in under her Order of Supervision, ICE instructed Ms. Lucimar de Souza to report back with a ticket to depart. Adducci Dep. Tr. 120:9-15 (Dkt. No. 137-3); June 14, 2018 Decl. of Stephen N. Provazza Exs. A & B (Dkt. Nos. 98-1, 98-2). Ms. Lucimar de Souza also had a pending I-212 at the time she checked in. Andrade Aff. ¶ 21 (Dkt. No. 50-5).

9, 2018 Hr'g Tr. 16:18-22.  Indeed, in states without litigation and Court rulings on this subject,

ICE continues to detain noncitizens who are pursuing the provisional waiver process and to

justify these detentions based only on the mere existence of an order of removal.[5]

## III.   Procedural History

Petitioners filed an amended class complaint on April 10, 2018, Dkt. No. 27, and moved

to certify a class on April 30, 2018.  Dkt. No. 46.  In July, the Court granted Petitioners' motion

for limited discovery regarding, among other things, "the 2018 policies and practices of the ICE

Boston Field Office Concerning the arrest, detention, and removal of aliens who . . . [are]

applying for provisional waivers . . . ."  Dkt. No. 117 at 2.  Following its denial of Respondents

motion to dismiss on August 23, 2018, *see* Dkt. No. 152, the Court ordered the parties to update

their briefing regrading class certification.  Oct. 9, 2018 Hr'g Tr. 39:21-25, 43:10-44:1.

## PROPOSED CLASS DEFINITION

Petitioners seek to represent any U.S. citizen and his or her noncitizen spouse who (1) has

a final order of removal and has not departed the U.S. under that order; (2) is the beneficiary of a

pending or approved I-130, Petition for Alien Relative, filed by the U.S. citizen spouse; (3) is not

"ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the

jurisdiction of Boston ICE-ERO field office (comprising Massachusetts, Rhode Island,

Connecticut, Vermont, New Hampshire, and Maine).

## ARGUMENT

Petitioners seek to certify a class of individuals who have begun applying for lawful

status under the 2016 provisional waiver regulations and seek protection from being removed

---

[5] *See, e.g.*, Sonia Moghe and Samira Said, *Arrests at immigration marriage interviews pop up in Florida*, CNN (Oct. 3, 2018), *available at* www.cnn.com/2018/10/03/politics/undocumented-immigrants-arrests-marriage-interview/index.html.

without the individual consideration described in this Court's Order.  This Court has already

ruled that such protection is required by law, using language that could apply just as clearly to

the putative class members as it does to the named Petitioners:

> ICE may deport an alien before CIS has the opportunity to adjudicate his or her application for a provisional waiver if it makes an individualized decision to do so based on more than the mere fact that the alien is subject to a final order of removal. . . . [A] decision by ICE to remove an alien pursuing a provisional waiver solely because he or she has a final order of removal would, as a practical matter, eliminate that alien's right to apply for a provisional waiver and CIS's opportunity to decide the merits of the application before the alien must depart the United States and be separated from his or her family. The binding promises to United States citizens and their alien spouses in the provisional waiver regulations would be meaningless, and their purposes would be undermined, if ICE were not required to consider that an alien with a final order of removal is seeking a provisional waiver before requiring him or her to leave the United States.

Dkt. No. 159 at 35-36.

The proposed class meets the requirements of Federal Rules of Civil Procedure 23(a).

First, the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P.

23(a)(1).  Second, "there are questions of law or fact common to the class."  *Id.* at 23(a)(2).

Third, the claims of the representative Petitioners are "typical of the claims or defenses of the

class."  *Id.* at 23(a)(3).  Fourth, those representative Petitioners will "fairly and adequately

protect the interests of the class."  *Id.* at 23(a)(4).  The proposed class also satisfies the

requirements of Rule 23(b)(2) because "the party opposing the class has acted or refused to act

on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole."  *Id.* at 23(b)(2).

I.      **The proposed class meets the requirements of Rule 23(a).**

A.      **The class is sufficiently numerous that joinder is impracticable.**

The proposed class of individuals affected by the government's detention and removal

practice satisfies Rule 23(a)(1)'s requirement that the class be "so numerous that joinder of all

members is impracticable."  There are numerous putative class members in the class, and the transitory nature of the proposed class makes joinder inherently impracticable.

Although Rule 23(a)(1) does not impose a precise numerical requirement or a minimum threshold, "classes of forty or more are [generally] considered sufficiently numerous under Rule 23(a)(1)."  *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011).  Petitioners need not provide a precise number for class certification, as "district courts may draw reasonable inferences from the facts presented to find the requisite numerosity."  *McCuin v. Sec'y of Health and Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987).  Ultimately, the numerosity requirement imposes only a "low threshold," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009), particularly where, as here, Petitioners seek only injunctive or declaratory relief.  *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014), *reversed on other grounds*, 819 F.3d 486 (1st Cir. 2016) ("[T]he threshold may be relaxed when a party seeks only declaratory or injunctive relief, since the inclusion of future members increases the impracticability of joinder.").[6]

Here, that threshold is easily crossed.  Two local immigration attorneys have affirmed that the fact pattern identified in this case is a common one.  *See* Joyce Aff. ¶ 3 (Dkt. No. 47-1) (identifying 25 clients as likely class members); Born Aff. ¶ 3 (Dkt. No. 47-2) (estimating his firm represents thousands of class members).  That fact alone establishes numerosity.

Additionally, as of March 31, 2018, USCIS had 10,842 pending I-130 applications filed by U.S. citizens on behalf of their immediate family members in states within the jurisdiction of

---

[6] *See, e.g.*, *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007) ("[T]he putative class of 16 members is sufficient, especially considering that, as long as the death penalty is a viable sanction, the class possesses the potential to increase at random"); *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (numerosity found because, although plaintiffs could identify only 16 class members, numerous individuals would be affected in the future and the fluid nature of the class supported certification under Rule 23(b)(2)).

Boston ERO.[7]  Even if less than one percent of these were filed by and on behalf of putative

class members, the numerosity requirement would be readily satisfied.

Moreover, new class members will come into the class because U.S. citizens continue to

file I-130 applications for noncitizen spouses who are subject to final orders of removal.  These

future applicants may be considered now; in evaluating the numerosity of a proposed class

seeking injunctive relief, courts may "consider who might be injured in the future in the class."

*Rancourt v. Concannon*, 207 F.R.D. 14, 15 (D. Me. 2002).

Beyond numbers, the composition of the class also makes joinder impracticable.  Class

members are spread across New England, may be unrepresented, and do not know each other.

Joinder is thus impracticable due to the difficulty of identifying and locating individual class

members, inefficiencies in pursuing claims in an individual capacity, and the lack of financial

resources to bring such claims.  *Torrezani v. VIP Auto Detailing, Inc*., 318 F.R.D. 548, 554 (D.

Mass. 2017) ("[A]voiding multiple suits by as many as thirty additional class members strongly

favors maintaining this suit as a class action.  This is particularly true in this case given that the

Court can reasonably infer that substantially all of the class members have limited financial

resources …."); *Risinger ex rel. Risinger v. Concannon*, 201 F.R.D. 16, 19 (D. Me. 2001) ("The

geographic dispersion of these children throughout the state of Maine and the practical

difficulties with identifying and formally joining all of these children and their parents persuade

the Court that joinder is impracticable under Rule 23(a)(1).").  Moreover, the class is inherently

fluid because class membership necessarily changes as individuals continue to submit I-130

---

[7] *See Number of Form I-130, Petitioner for Alien Relative, by Category, Case Status, and USCIS Field Office or Service Center Location January 1 – March 31, 2018*, USCIS (Dec. 7, 2017), *at* www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/Family-Based/I130_performancedata_fy2018_qtr2.pdf (Provazza Decl. Ex. C).

applications, acquire lawful permanent resident status, or depart the United States.  "The

potential inclusion of these currently uncountable, future class members not only increases the

number beyond forty, but also illustrates the transient nature of the proposed class." *Reid*, 297

F.R.D. at 189 (quoting William B. Rubenstein, *Newberg on Class Actions*, § 3.15 (5th ed. 2013),

for the proposition that inclusion of future members "may make class certification more, not less

likely").  For precisely these reasons, courts in this circuit have recognized civil rights claims as

particularly well-suited for class-wide relief.  *See Mack v. Suffolk County*, 191 F.R.D. 16, 24 (D.

Mass. 2000) ("[Rule 23(b)(2)] was designed to accommodate civil rights class actions in which

the members of the class may be difficult to enumerate.").  Petitioners readily satisfy the

numerosity requirement.

### B.      There are common questions of law and fact.

This case presents "questions of law or fact common to the class."  Fed. R. Civ.

P. 23(a)(2).  To satisfy Rule 23(a)(2), Petitioners must "demonstrate that the class claims

'depend upon a common contention' and that determining the truth or falsity of that contention

'will resolve an issue that is central to the validity of each one of the claims in one stroke.'"

*Connor B. ex rel. Vigurs v. Patrick*, 278 F.R.D. 30, 32 (D. Mass. 2011) (quoting *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  The Court must assess the "capacity of a

classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."

*Dukes*, 564 U.S. at 350 (internal quotation and citation omitted) (emphasis original).

"[C]ommonality . . . does not require that all putative class members share identical claims."

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008)

(internal quotations and citation omitted).  Indeed, "Rule 23(a)'s requirement of commonality is

a low bar, and courts have generally given it a 'permissive application.'"  *In re New Motor*

*Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).  "Even a single question

of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 564 U.S. at 369 (internal quotations and citations omitted).  Petitioners need not show that common questions "will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013); *see also Reid v. Donelan*, 3:13-cv-30125-PBS (D. Mass. Oct. 23, 2018) (Dkt. No. 416 at 14) ("Even if the answer to that [common] question is no, the class still meets the commonality requirement.").

The core of this case is a single question common to all named Petitioners and putative class members: whether Respondents must, in the ordinary course, allow them to pursue the provisional waiver process within the United States with their families.  In addressing Petitioners' due process claims, this Court has already demonstrated that the common question is capable of a common answer—Respondents must permit them to pursue the provisional waiver process unless there is an individualized reason for removal beyond the order of removal itself. Petitioners have also presented other grounds for ruling that Respondents' practice of arresting, detaining, and removing class members is unlawful, *see* Am. Compl. ¶¶ 112-36, and resolving any of those asserted grounds would resolve the class's claims in a single stroke.

This case thus presents common issues of fact and law.  Factual questions include:

- Whether Respondents' practice has entailed arresting, detaining, and removing (or attempting to remove) noncitizen class members based only on their final order of removal, without consideration of their pursuit of legal status through the provisional waiver process;

- Whether Respondents' policies and procedures have adequately ensured that noncitizen class members' pursuit of the provisional waiver process is considered when making arrest, detention, and removal decisions; and

- Whether Respondents have a practice or policy of detaining noncitizen class members without an adequate and individualized determination of their flight risk or dangerousness, including by using an algorithm that creates a presumption of detention for any individual subject to a final order of removal.

Legal questions include:

- Whether Respondents' arrest, detention, and removal (or attempted removal) of noncitizen class members without consideration of their efforts to pursue legal status through the provisional waiver process:

  o   violate the Due Process Clause of the Constitution;

  o   violate the Immigration and Nationality Act and 8 C.F.R. § 212.7(e);

  o   are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A);

  o   are a *sub silentio* departure from prior policy or "disregard[s] rules that are still on the books" in violation of the Administrative Procedure Act;[8]

  o   are an effective repeal of the provisional waiver regulations "without allowing the public an opportunity for meaningful comment" pursuant to 5 U.S.C. § 553;[9] and

  o   are motivated by animus, in violation of the Equal Protection Clause; and

- Whether Respondents' detention or threatened detention of noncitizen class members without an adequate and individualized determination of flight risk or dangerousness violates the Immigration and Nationality Act and applicable regulations and the Due

---

[8] *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-15 (2009); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1116 (N.D. Cal. 2018) (plaintiffs stated an APA where they alleged that, by terminating Temporary Protected Status for refugees from El Salvador, Haiti, Nicaragua, and Sudan, DHS "adopted a new policy or practice without an explanation for the change").

[9] *See Becerra v. United States Dep't of Interior*, 276 F. Supp. 3d 953, 965 (N.D. Cal. 2017); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Fed. Highway Admin.*, 151 F. Supp. 3d 76, 92 (D.D.C. 2015) (agency's interpretive memorandum exempting certain products from the Department of Transportations "Buy America" rules was an "interpretation adopt[ing] a new position inconsistent with . . . existing regulations" and therefore should have been subject to the rulemaking requirements of Section 553 (internal quotations and citations omitted)).

Process Clause.[10]

Those questions may be answered on a class-wide basis.  Additionally, the relief that the class is seeking—which would bar Respondents from detaining or removing noncitizen class members based only on their final order of removal while they are seeking lawful status under the provisional waiver regulations—would provide common relief to the class.

### C.  Petitioners' claims are typical of class members' claims.

Petitioners also satisfy Rule 23(a)(3)'s typicality requirement.  "The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class."  *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 176 (D. Mass. 2012); *see also Newberg on Class Actions*, § 3:29 ("[T]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct.").  Because Petitioners seek injunctive relief, and Rule 23(b)(2) classes are more "rough-hewn than those in which the court is asked to award damages," typicality requirements are relaxed.  *Griffin v. Burns*, 570 F.2d 1065, 1074 (1st Cir. 1978) (where government policy quashed all absentee ballots in election, plaintiff only needed to demonstrate that substantial part of the class would have voted in person had they known of policy).

---

[10] *See, e.g.*, Dkt. No. 95 at 47-49 (raising question whether detention "without a statutory mandate under § 1231(a)(2)" and without prompt review, is constitutional, and whether ICE's interpretation of § 241.4 to allow three months of detention without a custody review is correct). Petitioners do not propose that the Court certify a class of all detained individuals (regardless of participation in the provisional waiver process) affected by Respondents' failure to comply with 8 C.F.R. § 241.4 or related regulations.  Instead, because all class members are vulnerable to unlawful detention at any time, and because such detention interferes with their ability to avail themselves of the benefits of the provisional waiver process, such violations are properly encompassed by Petitioners' class-wide claims.

Petitioners' claims are typical of the proposed class:  Petitioners and putative class members are subject to the same arrest, detention, removal practices and seek the same remedies. Every U.S. citizen Petitioner and class member has begun the process of seeking legalization of the noncitizen spouse by filing an I-130; and every noncitizen spouse is threatened with being unable to pursue legalization under the provisional waiver process because of Respondents' unlawful practices.  *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (Rule 23(a)(3) satisfied when "the cause of the injury is the same—here, the Board's discriminatory policy and practice" and the injury asserted in plaintiff's claims were similar to the putative class members) (abrogated on other grounds); *Baggett v. Ashe*, No. 11-cv-30223-MAP, 2013 WL 2302102, at *1 (D. Mass. May 23, 2013) ("Plaintiff's claims and defenses, since she contends that she herself was a subject of the policy, are obviously typical of the claims and defenses of the class ….").

No individual inquiries regarding Petitioners' claims have the potential to derail the class. For example, Respondents' systemic lack of consideration for class members' pursuit of lawful status through the provisional waiver process can be proven with common evidence on a class-wide basis.  And Petitioners' claims do not hinge on the *merits* of their provisional waiver applications or on ICE's individual removal determinations; Petitioners merely seek the opportunity to participate in the application *process* provided by the 2016 regulations in the ordinary course.  Because Petitioners are challenging the same practice without regard to the outcome of their own efforts to legalize their status, they "can fairly and adequately pursue the interests of the absent class members without being sidetracked by [their] own particular

concerns." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008).[11]

The putative class's claims, which are focused on Respondents' practices and procedures (or lack thereof) will not require the Court to review each enforcement decision to determine whether it was unlawful. Instead, it will require the Court to determine only whether ICE is indeed providing an "individualized decision . . . based on more than the mere fact that the alien is subject to a final order of removal." *See* Dkt. No. 159 at 35; *see also Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011) ("Because Plaintiffs have identified specific systemic failures that expose the entire Plaintiff class to an unreasonable risk of harm, the typicality requirement is satisfied."). The typicality requirement is readily satisfied.

### D. The class is adequately represented.

Finally, Petitioners and their counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, Petitioners "must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *see also Connor B.*, 272 F.R.D. at 297.

The named Petitioners' interests do not conflict with those of the absent class members. Petitioners and putative class members share an identical interest in preventing the government from unlawfully detaining or removing noncitizen spouses without considering their efforts to

---

[11] *See also Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification" where class raised due process challenge to government's procedures.); *DeGrace v. Rumsfeld*, 614 F.2d 796, 811 (1st Cir. 1980) ("When the named representative's own claim transcends the individual and implicate a discrete employment practice, the commonality and typicality requirements of Fed. R. Civ. P. 23(a) may be satisfied and class treatment may be appropriate.").

pursue legalization under the provisional waiver regulations.  And given the serious harm

inflicted as a direct result of Respondents' unlawful practices, the proposed class representatives

and counsel alike are motivated to continue to zealously pursue this claim.

Finally, the proposed class counsel satisfies the requirement of adequate counsel under

Rule 23(a)(4).  The proposed class is represented by the American Civil Liberties Union of

Massachusetts, Wilmer Cutler Pickering Hale and Dorr LLP, and immigration attorney Kathleen

Gillespie.  Collectively, Petitioners' counsel have considerable experience in the areas of

immigration law and constitutional law, complex federal civil-rights litigation, class action

litigation, and/or habeas corpus actions, including class actions involving the rights of

noncitizens.  *See*, *e.g.*, *Gordon v. Napolitano*, No. 3:13-cv-30146 (D. Mass.) (class action on

behalf of noncitizens); *Doe v. Patrick*, No. 1:14-cv-12813 (D. Mass.) (class action on behalf of

women subjected to civil commitment).  To date, counsel have already devoted significant

resources and vigorously pursued Petitioners' present claims before this Court, including

successfully obtaining the release of Ms. Calderon and Ms. de Souza, defeating Respondents'

motion to dismiss, and communicating with government counsel regarding putative class

members.  "[N]o evidence suggests that their level of commitment will diminish." *Reid*, 297

F.R.D. at 194.  For the same reasons, Petitioners' counsel also satisfy Rule 23(g)'s requirements

for the appointment of class counsel.  Thus, Petitioners and co-counsel have demonstrated that

they will adequately represent the interests of the class.

## II.     The proposed class meets the requirements of Rule 23(b).

Class certification is also warranted under Rule 23(b)(2) because Respondents first

created, and then acted to harm, the class Petitioners seek to certify.

Certification under Rule 23(b)(2) is appropriate where defendants have "acted or refused

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The

general applicability of a defendant's conduct towards the putative class is the essential inquiry

under Rule 23(b)(2): "'[T]he conduct complained of is the benchmark for determining whether a

subdivision (b)(2) class exists' and a 23(b)(2) class 'is defined by the actions which a defendant

has taken toward the class, and which should arguably be enjoined.'" *In re New Motor Vehicles*

*Canadian Export*, 2006 WL 623591 at *6 (D. Me. March 10, 2006) (quoting *Yaffe v. Powers*,

454 F.2d 1362, 1366, 1367 (1st Cir. 1972)). Cases involving discrimination or systematic

violations of constitutional law are "'prime examples' of what (b)(2) is meant to capture."

*Dukes*, 564 U.S. at 361 (internal quotation citation omitted); *see also Connor B.*, 272 F.R.D. at

292 ("Rule 23(b)(2) is uniquely suited to civil rights action[s]." (internal quotation and citation

omitted)). Moreover, Rule 23(b)(2) classes "may be more rough-hewn than those in which the

court is asked to award damages ...." *Griffin*, 570 F.2d at 1074.

Rule 23(b)(2) is satisfied here because Respondents have acted on grounds generally

applicable to the class both in creating the provisional waiver process and in unlawfully

undermining that process. First, in 2016, Respondents made the Petitioners and class members

eligible for the provisional waiver process. The proposed class in this case carefully tracks the

eligibility criteria of a category of individuals that DHS itself selected to receive a benefit on a

class-wide basis. *See* 8 C.F.R. § 212.7(e)(4) (describing the eligibility requirements for

provisional waivers). [12] Second, less than one year later, DHS began all but eliminating the

benefits of these regulations—for the very class it created—through a practice of taking

enforcement actions against putative class members without considering their pursuit of legal

---

[12] The putative class here is narrower than the class of individuals for whom DHS expanded the
provisional waiver process in 2016 in that the putative class is limited to post-final order
individuals who are married to United States citizens and living in New England.

status through the provisional waiver process.  That interference with the regulations impacted every family who had stood to benefit from them.

Class-wide relief against that unlawful arrest, detention, and removal practice is therefore appropriate.  Because Respondents' challenged practices are of general application, injunctive or declaratory relief will provide relief on a class-wide basis.  Certification under Rule 23(b)(2) is appropriate where the "[a]ction or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."  Rule 23(b)(2) Advisory Committee Notes (1966 Rule Amendment).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Dukes*, 564 U.S. at 360 (internal quotation and citation omitted).

Such class-wide relief is appropriate and necessary here.  Although not all class members have been detained or faced imminent removal, *all* of them are attempting to participate in a legal process and yet must live in fear of detention or removal without consideration of their pursuit of lawful status (or even because of that pursuit).  Petitioners seek a single class-wide injunction and declaratory judgment that will benefit each Petitioner and class member by stopping Respondents' systematic interference with the provisional waiver regulations, ensuring that no detention and removal determination is made without the individualized consideration required, and thereby safeguarding the regulations' core purpose of promoting family unity.  Because the relief sought would resolve the claims of every class member, the proposed class meets the certification requirements under Rules 23(a) and 23(b)(2).

**III.  Alternatively, the Court should certify this case as a representative habeas action.**

In the alternative to certification under Rule 23, Petitioners seek certification of this case

as a representative habeas action.  *See United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125

(2d Cir. 1974) (finding in habeas action "compelling justification for allowing a multi-party

proceeding similar to the class action authorized by [Rule 23]").  In *Sero*, the Second Circuit

articulated three factors that together justified class action treatment in the habeas context: (1) the

challenge brought by the class was "applicable on behalf of the entire class, uncluttered by

subsidiary issues"; (2) "more than a few [class members] would otherwise never receive the

relief here sought on their behalf" given insufficient resources to bring individual suits or an

incomplete understanding of the U.S. judicial system; and (3) the representative action would

promote judicial economy by avoiding "considerable expenditure of judicial time and energy in

hearing and deciding numerous individual petitions presenting the identical issue."  *Id.* at 1126.

Each of the conditions described in *Sero* is present in this case.  First, Petitioners'

challenge applies equally to all members of the proposed class, such that class-wide injunctive or

declaratory relief would provide a remedy to the entire class.  Second, class members are

unlikely to have the resources necessary to file timely habeas corpus petitions on their own and

thus will no receive the relief sought in the absence of a class proceeding.  Third, the concerns

regarding judicial economy present in *Sero* are equally applicable in this case, as the requested

relief would eliminate the need for class members to proceed with individual suits.  Accordingly,

the proposed class can be certified as a representative habeas action.

## CONCLUSION

This action satisfies all requirements for class certification under Rules 23(a) and

23(b)(2) of the Federal Rules of Civil Procedure.  Accordingly, Petitioners respectfully request

that this Court certify this action as a class action and appoint the undersigned as class counsel

pursuant to Rule 23, or, in the alternative, certify this action as a class-action habeas proceeding

on behalf of the U.S. citizen and noncitizen spouses described herein.

Respectfully submitted this 24th day of October 2018.

/s/  Kevin S. Prussia

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

Kevin S. Prussia (BBO # 666813)
Michaela P. Sewall (BBO # 683182)
Jonathan A. Cox (BBO # 687810)
Stephen Provazza (BBO # 691159)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
kevin.prussia@wilmerhale.com
michaela.sewall@wilmerhale.com
jonathan.cox@wilmerhale.com
stephen.provazza@wilmerhale.com

*Attorneys for Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2018, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

*/s/  Kevin S. Prussia*
Kevin S. Prussia
