**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ<br>and LUIS GORDILLO, et al.,<br><br>Individually and on behalf of all others<br>similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>KIRSTJEN M. NIELSEN, et al.,<br><br>Defendants-Respondents. | No. 1:18-cv-10225-MLW<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY BRIEF IN SUPPORT OF PETITIONERS'**
**MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

ARGUMENT .......................................................................................................................2

I.   Section 1252(f)(1) Does Not Strip This Court of Jurisdiction to Issue Class-Wide
     Injunctive or Declaratory Relief. ...............................................................................2

     A.   Section 1252(f)(1) does not bar class certification because it does not limit
          declaratory relief. ...........................................................................................2

     B.   Class-wide injunctive relief would not enjoin or restrain "the operation of" any
          immigration provisions. .................................................................................5

     C.   Section 1252(f)(1) does not apply to habeas actions. ....................................6

II.  The Class Satisfies Rule 23 and the Requirements of Representative Habeas Action. ........7

III. The Class Should Not Be Further Narrowed. ...............................................................11

     A.   The putative class is narrowly drawn.............................................................12

     B.   The putative class members have standing because their pursuit of lawful status under
          the government's own regulations has created a substantial risk of detention and
          removal. .........................................................................................................12

     B.   Interpreting the provisional waiver process to benefit only those prepared to file the
          final waiver application would allow ICE to eliminate the process altogether without
          judicial review.................................................................................................15

     C.   Respondents confuse petitioners' and class members' interests in having their
          applications for lawful status considered with the ultimate result of those applications.
          ........................................................................................................................21

     D.   Respondents' violation of the Equal Protection Clause harms all class members. .....23

CONCLUSION ...................................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alasaad v. Nielsen*, No. 17-CV-11730-DJC, 2018 WL 2170323 (D. Mass. May 9, 2018) ...................................................................................................................14

*Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003) ...............................................................6

*Alli v. Decker*, 650 F.3d 1007 (3d Cir. 2011) ...............................................................3

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) .....................8

*Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003)...........................................................3, 5

*Batalla Vidal v. Duke*, 295 F. Supp. 3d 127 (E.D.N.Y. 2017)......................................14

*Bynum v. D.C.*, 214 F.R.D. 27 (D.D.C. 2003) ...............................................................11

*Ceta v. Mukasey*, 535 F.3d 639 (7th Cir. 2008)............................................................19

*Colon v. Wagner*, 462 F. Supp. 2d 162 (D. Mass. 2006)................................................9

*Craig v.* Boren, 429 U.S. 190 (1976)............................................................................24

*De Jesus Martinez v. Nielsen*, No. 18-cv-10963, 2018 WL 4442229 (D.N.J. Sept. 14, 2018) .............................................................................................................17, 20

*Demore v. Kim*, 538 U.S. 510 (2003) .............................................................................6

*DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87 (D. Mass. 2010) ......................................................................................................................11

*Diaz v. Hott*, 297 F. Supp. 3d 618 (E.D. Va. 2018) ....................................................5, 6

*Gonzalez v. Sessions*, No. 18-CV-01869-JSC, 2018 WL 2688569 (N.D. Cal. June 5, 2018) ...............................................................................................................3, 5

*Gordon v. Johnson*, 300 F.R.D. 31 (D. Mass. 2014) ..................................................6, 21

*In re AVEO Pharm., Inc. Sec. Litig.*, No. CV 13-11157, 2017 WL 5484672 (D. Mass. Nov. 14, 2017)...........................................................................................10

*In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17 (D. Mass. 2008)...........................11

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) .............................................13

*INS v. St. Cyr*, 533 U.S. 289 (2001)............................................................................2, 6

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) .......................................................3, 4, 5

*Kalilu v. Mukasey*, 548 F.3d 1215 (9th Cir. 2008) ......................................................20

*M.K.B. v. Eggleston*, 445 F. Supp. 2d 400 (S.D.N.Y. 2006) ......................................11

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ..............................................13

*Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007) ...................................................7

*Ramirez v. U.S. Immigration & Customs Enf't*, No. CV 18-508 (RC), 2018 WL
    4178176 (D.D.C. Aug. 30, 2018)............................................................................5

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, No. 18-15068,
    2018 WL 5833232 (9th Cir. Nov. 8, 2018).........................................................23

*Reid v. Donelan*, No. CV 13-30125-PBS, 2018 WL 5269992 (D. Mass. Oct. 23,
    2018) ............................................................................................................2, 3, 5, 9

*Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018) ................5

*Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ..................3

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ..............................................3, 4, 6

*Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir. 2003) ....................................................6

*Scott v. Greenville Cty.*, 716 F.2d 1409 (4th Cir. 1983) ..............................................24

*Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974)..............................................................8

*Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005) ...........................................................19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)............................................14

*Villavicencio Calderon v. Sessions*, No. 18-cv-5222-PAC, 2018 WL 3677891
    (S.D.N.Y. Aug. 1, 2018) ................................................................................17, 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................9

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) .....................................................8, 21

## STATUTES, RULES, AND REGULATIONS

8 C.F.R. § 212.7 ...............................................................................................7, 12, 22, 23

8 C.F.R. § 241.4 ............................................................................................................8, 10

8 U.S.C. § 1182...................................................................................................19, 22, 23

8 U.S.C. § 1231 ..................................................................................................................6

8 U.S.C. §§ 1252 ........................................................................................................ *passim*

28 U.S.C. § 2241 ..............................................................................................................6

*Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate
    Relatives; Final Rule*, 78 Fed. Reg. 536 (Jan. 3, 2013) ...............................................17, 19

*Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final
    Rule*, 81 Fed. Reg. 50244 (July 29, 2016) .............................................................. *passim*

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L.
    No. 104-208, Div. C, § 306, 110 Stat. 3009 (1996)............................................................5

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

## OTHER AUTHORITIES

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §
    1775 (3d ed.) ................................................................................................................13

H.R. Rep. No. 104-469, pt. 1 (1996)...................................................................................5

USCIS Adjudicator's Field Manual § 43.2 .........................................................................8

## INTRODUCTION

In an August 23, 2018 ruling, this Court held that immigration authorities may not detain or remove petitioners without considering their pursuit of lawful status under the 2016 provisional waiver regulations. Respondents do not dispute that they have, on a class-wide basis, failed to provide that required consideration. That failure has harmed the putative class members and made a mockery of regulations intended to prevent suffering, not cause it. In the wake of these developments, there is little serious dispute that the Court's August 23 ruling supplies a common answer capable of providing the basis for a class-wide remedy in this case.

Respondents' arguments do not challenge this central tenet. Rather, they first contend that a jurisdictional statute that limits certain class-wide injunctive relief provides a basis to deny class certification. But it does not. Next, Respondents focus on a number of arguments designed not to prevent class certification altogether, but to greatly diminish the scope of any class. These arguments rely on an implausibly circumscribed view of the people that the 2016 regulation was intended to help, and, consequently, of the people who were hurt by Respondents' failure to abide by the regulations' promises. Because the provisional waiver regulations were designed to help each of the petitioners and class members in this case—and because the government's conduct has harmed each of them—certification of Petitioners' proposed class is warranted.

**ARGUMENT**

**I.      Section 1252(f)(1) Does Not Strip This Court of Jurisdiction to Issue Class-Wide Injunctive or Declaratory Relief.**

Respondents argue that 8 U.S.C. § 1252(f)(1), a statutory "[l]imit on injunctive relief," bars *all* class-wide relief in this case, and consequently makes class certification futile.  Dkt. No. 178 at 9 & n.8.  Like other jurisdiction-limiting provisions, Section 1252(f)(1) must be interpreted narrowly.  *See INS v. St. Cyr*, 533 U.S. 289, 314 (2001).  Here, Respondents offer an expansive interpretation of that provision, which is wrong for three reasons.  First, Section 1252(f)(1) never bars declaratory relief and thus does not prohibit all class-wide remedies. Second, Section 1252(f)(1) bars injunctive relief only when such relief would enjoin "the operation of" certain immigration statutes, but that is not the situation here because no statute requires ICE to detain and remove petitioners without considering the provisional waiver process.  To the contrary, as this Court has already held, the provisional waiver process has the force of *law*, so an injunction requiring the government to respect that process does not restrain or enjoin the operation of law.  Third, as explained below, Section 1252(f)(1) does not apply to habeas cases.

**A.      Section 1252(f)(1) does not bar class certification because it does not limit declaratory relief.**

Section 1252(f)(1) provides no reason to deny class certification because it "does not bar class wide declaratory relief, which suffices to satisfy Rule 23(b)(2)."  *Reid v. Donelan*, No. CV 13-30125-PBS, 2018 WL 5269992, at *6 (D. Mass. Oct. 23, 2018).  The very title of § 1252(f) is "Limit on injunctive relief."  And unlike a neighboring provision that expressly bars "declaratory, injunctive, or other equitable relief" pertaining to expedited removal, *see* 8 U.S.C.

§ 1252(e)(1), the text of § 1252(f) places no restriction on declaratory relief.[1]  The provision

states:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

The Supreme Court has described Section 1252(f) as "nothing more or less than a limit on

injunctive relief," *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481

(1999), and the First Circuit has interpreted the terms "enjoin" and "restrain" to refer,

respectively, to permanent and temporary injunctions, *see Arevalo v. Ashcroft*, 344 F.3d 1, 7 (1st

Cir. 2003).  Other Courts have agreed that § 1252(f)(1) places no limit on declaratory relief at all.

*See*, *e.g.*, *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011); *Rodriguez v. Hayes*, 591 F.3d 1105,

1119 (9th Cir. 2010), *reversed on other grounds sub nom. Jennings v. Rodriguez*, 138 S. Ct. 830,

851 (2018); *Gonzalez v. Sessions*, No. 18-CV-01869-JSC, 2018 WL 2688569 at *7 (N.D. Cal.

June 5, 2018).

Here, as Respondents concede, Dkt. No. 178 at 12, Petitioners seek "corresponding"

declaratory relief that can sustain a class action under Rule 23(b)(2).[2]  But Respondents argue

---

[1] Further, if Section 1252(f)(1) barred all class-wide relief and prevented cases such as this from being certified as class actions, its provision for class-wide injunctive relief at the Supreme Court would be illusory.  *See Reid*, 2018 WL 5269992, at *7.

[2] *See* Fed. R. Civ. P. 23(b)(2) (requiring that "final injunctive relief or corresponding declaratory relief [be] appropriate respecting the class as a whole").  "Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief."  *Id*. advisory committee's note to 1966 amendment; *see*, *e.g.*, *Reid*, 2018 WL 5269992 at *7 ("[T]he main purpose of this requirement is to avoid certifying class actions under Rule 23(b)(2) that primarily seek monetary damages.").  Here, a declaratory judgment that ICE has a legal obligation to give adequate consideration announcing class members' right to pursue provisional waivers in the ordinary course would provide a basis for future injunctive relief.

that because declaratory relief in this case could give rise to separate actions for injunctive relief, it is the ***equivalent*** of injunctive relief for purposes of Section 1252(f)(1).  Respondents thus interpret Section 1252(f)'s reference to "injunctive relief" to mean "injunctive relief *or* declaratory relief that could later form the basis for separate actions for injunctive relief."

This argument is not supported by the statutory text or ***any*** court decision.  Although the government relies on *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), that case supports ***Petitioners'*** view.  In *Jennings*, the Supreme Court rejected the Ninth Circuit's interpretation of a detention provision and directed that court to consider, on remand, the petitioners' constitutional challenges.  *Id* at 851.  In doing so, the Supreme Court gave certain instructions about § 1252(f)(1).  The Ninth Circuit had held that § 1252(f)(1) did not bar class-wide injunctive relief because, given its interpretation of the detention provision, it believed it was ordering that provision to be followed rather than "enjoin[ed] or restrain[ed]."  *See Rodriguez*, 591 F.3d at 1119 (citing 8 U.S.C. § 1252(f)(1)).  The Ninth Circuit had not previously decided whether § 1252(f)(1)'s limitation on jurisdiction would apply to relief required by the constitution but not by federal immigration law.  *Jennings*, 138 S. Ct. at 851.  Accordingly, the Supreme Court directed the Ninth Circuit to consider its authority under Section 1252(f)(1) to "issue classwide injunctive relief based on [the noncitizen petitioners'] constitutional claims."  *Id.*  But the Court did not suggest that Section 1252(f)(1) could be interpreted to bar declaratory relief.  To the contrary, it assumed that Section 1252(f)(1) would authorize class-wide declaratory relief even if it barred class-wide injunctive relief.  It thus directed that, if the Ninth Circuit concluded Section 1252(f)(1) allowed only declaratory relief, it should consider whether, under Rule 23(b)(2), the declaratory relief sought would be sufficient to sustain the class—precisely the point the government concedes in this case.  *Id.*

4

In light of *Jennings*, the First Circuit issued a two-sentence ruling vacating a decision that had relied on the constitutional-avoidance rationale rejected in *Jennings*. *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018). Contrary to the government's suggestion, Dkt. No. 178 at 12, that decision does not even *mention* Section 1252(f)(1). And the only two courts to have considered the availability of declaratory relief under Section 1252(f)(1) in light of *Jennings* (including on remand in *Reid*) have correctly concluded that it does not limit declaratory relief. *Reid*, 2018 WL 5269992 at *7; *Gonzalez*, 2018 WL 2688569 at *7.

### B. Class-wide injunctive relief would not enjoin or restrain "the operation of" any immigration provisions.

Section 1252(f)(1) also does not bar class-wide injunctive relief in this case because Petitioners do not seek any permanent or temporary injunctive relief against "the operation of" any immigration provisions. *See Arevalo*, 344 F.3d at 7 (explaining "enjoin" and "restrain" refer to permanent and temporary injunctions). Section 1252(f)(1) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 306, 110 Stat. 3009 (1996), and was aimed at ensuring that "single district courts or courts of appeals" did not "enjoin procedures *established by Congress*" for detention and removal. H.R. Rep. No. 104-469, pt. 1, 1996 WL 168955, at 161 (1996) (emphasis added). An injunction does not enjoin the "operation" of a statute where that statue does not authorize the challenged conduct. *Ramirez v. U.S. Immigration & Customs Enf't*, No. CV 18-508 (RC), 2018 WL 4178176, at *30 (D.D.C. Aug. 30, 2018); *Diaz v. Hott*, 297 F. Supp. 3d 618, 627–28 (E.D. Va. 2018); *Gonzalez*, 2018 WL 2688569, at *7; *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015).

Respondents assert that the relief at issue here—i.e., requiring ICE to adequately consider the provisional waiver process—would "undoubtedly enjoin and restrain the operation of"

8 U.S.C. § 1231, but cannot point to any specific provision that would be impeded. Dkt. No. 178 at 10. That is because no provision of Section 1231 requires Respondents to detain and remove every noncitizen with a final order of removal without regard to other applicable law. And, as this Court has already held in denying Respondent's motion to dismiss, regulations having the force of law *require* the provisional waiver process to be considered when the government makes detention and removal decisions. Because Petitioners do not seek to enjoin the "operation" of any law, Section 1252(f)(1) does not apply.[3]

### C.   Section 1252(f)(1) does not apply to habeas actions.

Section 1252(f)(1) cannot prohibit class-wide relief where, as here, the Class invokes the Court's habeas corpus jurisdiction under 28 U.S.C. § 2241. *See* Dkt. No. 27 at ¶ 16. Federal courts will not read a statute to restrict their habeas jurisdiction without "a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas …. " *St. Cyr*, 533 U.S. at 314; *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Saint Fort v. Ashcroft*, 329 F.3d 191, 201 (1st Cir. 2003). Here, Section 1252(f)(1)'s silence on the subject of whether it limits habeas corpus is in stark contrast to other provisions of Section 1252, which were amended in 2005 to explicitly limit habeas jurisdiction. *See*, *e.g.* 8 U.S.C. § 1252(a)(2)(B);

---

[3] *See Rodriguez*, 591 F.3d at 1119 ("Section 1252(f) prohibits only injunction of "the operation of" the detention statutes, not injunction of a violation of the statutes."); *Ali v. Ashcroft*, 346 F.3d 873, 886-87 (9th Cir. 2003), *opinion withdrawn on denial of reh'g sub nom. Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005), as amended on reh'g (Oct. 20, 2005) ("§ 1252(f)(1) is inapplicable because Petitioners seek not to enjoin the operation of § 1231(b) but violations of the statute and 'to ensure that the provision is properly implemented.'"); *Diaz*, 297 F. Supp. 3d at 627–28 ("Petitioners are not seeking an injunction 'against the operation of' the INA but are instead seeking an injunction requiring respondents to comply with the terms of the INA, as interpreted by this Court."); *Gordon v. Johnson*, 300 F.R.D. 31, 40 (D. Mass. 2014), *vacated on other grounds sub nom. Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016) ("Here, the court will be ordering Defendants to apply § 1226(a) and its accompanying regulations to members of the class, as is required by the statute. Since an injunction will therefore not interfere with the operation of the law, class-wide relief is available.").

§ 1252(b)(9); *Ramadan v. Gonzales*, 479 F.3d 646, 650-54 (9th Cir. 2007) (explaining enactment history of REAL ID Act, which amended several provisions of Section 1252 to explicitly limit habeas jurisdiction).  Because Section 1252(f)(1) does not to apply to habeas corpus, it presents no bar to this Court's adjudication of class-wide claims in this case.

## II.     The Class Satisfies Rule 23 and the Requirements of Representative Habeas Action.

This case involves a class of individuals that has been, on the one hand, invited to seek legal status, and, on the other, unlawfully threatened with being ambushed when they do so. Faced with a putative class of their own making, Respondents barely contest that certification of *some* class is warranted.  They do not dispute, for example, that the government has "acted …. on grounds that apply generally to the class," by making enforcement and removal decisions without regard to noncitizens' pursuit of provisional waivers.  *See* Fed. R. Civ. P. 23(b)(2).  Nor do Respondents contest numerosity.  Dkt. No. 178 at 14 n.11.  Instead, most of their arguments seek to **narrow** the class, rather than to keep it from being certified at all.  But the class that Petitioners have proposed is the one that should be certified:  U.S. citizens and their noncitizen spouses who (1) have final orders of removal on which they have not departed; (2) are the beneficiaries of a pending or approved marriage petition (I-130); (3) are not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) are within the jurisdiction of the ICE's Boston office.  That class easily satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2), or, alternatively, the requirements for representative habeas action.[4]

---

[4] For reasons previously described, Petitioners also satisfy the requirements for a representative habeas action, which overlap significantly with Rule 23.  *See* Dkt. No. 175 at 24-25.  Although Respondents represent *Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974) to have stated that commonality requirements "are 'more stringent'" in a representative habeas action, Dkt. No. 178 at 30 (quoting *Sero*, 506 F.2d at 1127), the Court in that case actually stated, "we believe that more stringent standards may be appropriate in deciding whether a habeas action presents substantial and common questions of law or fact . . . ." *Sero*, 506 F.2d at 1127.

**First**, as a threshold matter, Respondents suggest that this Court should decline to consider class certification with regard to claims other than due process and 8 C.F.R. § 241.1. Deferring such consideration might make sense if the Court concludes that Petitioners' due process claim can sustain the proposed class. But Respondents appear to be arguing that even if the Court concluded that Petitioner's due process claim supports only a narrower class, it could not decide the remainder of Petitioner's class cert motion without new argument on Petitioner's claims and then a **third** round of briefing on the motion for class certification. That suggestion is illogical and inefficient. Class certification does not depend on Petitioners' ultimate success on the merits. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)("proof [on the merits] is not a prerequisite to class certification"). For good reason, Rule 23(C)(1)(A) of the Federal Rules of Civil Procedure directs courts to adjudicate class certification at "an early practicable time after a person sues or is sued as a class representative." Petitioners' claims are all properly before the Court, and any one of them can sustain the class in this case.

**Second**, with regard to commonality, Respondents argue that "a proper due process analysis . . . cannot be[] conducted in a class action," and that due process claims are inherently incapable of generating even the single common question needed to bind together a class. Dkt. No 178 at 16, 22. But courts routinely certify class actions raising due process claims.[5] And this Court has already done something that, according to Respondents' theory, should have been impossible: it has issued a due process ruling that is plainly capable of serving as the basis for

---

[5] *See, e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (certifying class of noncitizens claiming that the INS's practices in document-fraud proceedings violated due process); *Reid*, 2018 WL 5269992, at *6 (D. Mass. Oct. 23, 2018) ("The class still presents the common, unanswered question of whether the Due Process Clause or the Excessive Bail Clause requires an individualized hearing after six months of detention."); *Colon v. Wagner*, 462 F. Supp. 2d 162, 174 (D. Mass. 2006) (certifying Rule 23(b)(2) class action for due process claim brought by people to whom a state agency sent notices of termination of emergency shelter benefits).

class-wide relief.  Under that ruling, ICE must consider a noncitizen's participation in the provisional waiver process, not merely her final order of removal, in making detention and removal decisions.  Dkt. No. 159 at 35.  As that ruling confirms, Petitioners easily satisfy the "commonality" requirements of Rule 23(a)(2) because they can identify at least one common question of fact or law that is capable of class-wide resolution, "mean[ing] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, the claims of the proposed class—which was rendered eligible for the provisional waiver process in 2016—raise common legal questions about the legality of ICE's efforts to detain and remove them.  Dkt. No. 175 at 12-13. [6]

*Third*, Respondents argue that Petitioners' detention claims are incapable of producing a single common question.  Dkt. No. 178 at 18.[7]  But Respondents do not deny that ICE follows a single course of conduct for the class.  Every member of the class faces the substantial risk that she will be detained at any time regardless of her participation in the provisional waiver process; her initial custody will be determined using an algorithm that appears to slant heavily in favor of detention for any noncitizen with a final order of removal, without regard to eligibility for lawful status, *See* Dkt. 137-4 (Lyons Dep.) 131:5-25 (explaining that the algorithm does not use as an input whether someone filed an I-130); she will remain in custody for 90 days without any review, and, only then, receive a file review under a standard that presumes that she should

---

[6] Petitioners' claims have not changed over the course of the case.  *Cf.*  Dkt. No. 178 at 17 n.12.  Petitioners' motion for preliminary injunction contains a specific proposal for interim equitable relief, which expands on Petitioners' arguments about minimum constitutional protections that are required in every case.

[7] Respondents' legal analysis rests on the contention—already rejected by this Court, *see* Dkt. No 95 at 19—that post order custody can only be unlawful when, after six months of detention, there is no significant likelihood of removal in the reasonably foreseeable future.

continue to be detained, 8 C.F.R. § 241.4(d)(1). Petitioners contend that these procedures, which are applied in every case, are constitutionally inadequate, a claim that raises a common question capable of providing a class-wide remedy.

Moreover, Respondents admitted under oath that they now violate 8 C.F.R. § 241.1 for *every* post-order detainee by providing a "notice" of custody review 90 days prior to a custody review—at a time when it is too early to be meaningful—rather than the approximately 30 days required by regulation.  8 U.S.C. § 241.4(h)(2) ("The district director or Director of the Detention and Removal Field Office will provide written notice to the detainee approximately 30 days in advance of the pending records review so that the alien may submit information in writing in support of his or her release.").  That violation produces its own question capable of class-wide resolution.  Moreover, even if each of these claims did not produce questions common to the class—though they do—Rule 23(a)(2) "does not require that every question be common" to the class.  *See*, *e.g*., *In re AVEO Pharm., Inc. Sec. Litig*., No. CV 13-11157, 2017 WL 5484672, at *4 (D. Mass. Nov. 14, 2017) (internal quotations and citation omitted).  Instead, it requires Petitioners to present a single common question, a threshold Petitioners have readily cleared.

*Fourth*, Respondents' challenges to typicality and adequacy restate their arguments about commonality and about the scope of the class.  Petitioners have amply shown that the named Petitioners are typical of the class, and that they will be adequate representatives.  Where, as here, the "named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims."  *Bynum v. D.C*., 214 F.R.D. 27, 35 (D.D.C. 2003).  This allows Petitioners to "pursue the interests of the absent class

members without being sidetracked by [their] own particular concerns." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008) (internal quotations and citation omitted).

Respondents argue that the named Petitioners cannot represent a class where they have "stronger statutory and constitutional claims" than other named Petitioners or absent class members. Dkt. No. 178 at 24. But the alleged dissimilarities described by Respondents do not render certification inappropriate. Here, Petitioners' own conduct in this litigation has already demonstrated that their interests do not "conflict with" and are "align[ed with] the interests of the class," such that the Petitioners "will work to benefit the entire class through the pursuit of their own goals." *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 100 (D. Mass. 2010) (internal quotations and citations omitted); *see Bynum*, 214 F.R.D. at 34 ("Factual variations between the claims of class representatives and the claims of other class members do not negate typicality."). The relief sought here will "have no detrimental effect on any of the other class members, but will only benefit them …." *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 442 (S.D.N.Y. 2006). Petitioners have suffered and continue to suffer the same injuries they seek to remedy on behalf of the class, and they satisfy each of the requirements of Rule 23.

## III.   The Class Should Not Be Further Narrowed.

Respondents repeatedly characterize Petitioner's proposed class as "sweeping" and "overbroad." *See* Dkt. No. 178 at 8, 14, 29-30. Although sometimes phrased as challenges to commonality, typicality, and adequacy, most of Respondents' arguments actually suggest that a class ***can*** be certified, but seek to limit the scope of that class. Respondents argue that the putative class is overbroad because it includes individuals who (1) have not been the subject of enforcement action by ICE; (2) are at the initial stages of the provisional waiver process; (3) may ultimately be denied an immigrant visa based on inadmissibility grounds for which the provisional waiver process does not provide a waiver; and (4) may not be members of the

specific races or ethnicities that the government is alleged to disfavor.  Each of these contentions

fundamentally misconceives of the purposes of the provisional waiver regulations and the impact

of the governments' unlawful interference.  Because the putative class has been carefully defined

to include only people who were benefitted by the 2016 provisional waiver regulations, and then

harmed by the government's misuse of them, its scope should not be modified.

> **A.   The putative class is narrowly drawn.**

As a threshold matter, there is nothing about the proposed class that sweeps broadly.  It is

geographically limited and expressly tailored to the government's regulatory requirements for

seeking lawful status under the provisional waiver process with a final order of removal.  Each of

the three categories of final-order individuals that the regulation makes ineligible to seek lawful

status under the provisional waiver process—those who are under 17, those who are subject to

"reinstatement" of a prior removal order, and those with pending adjustment of status

applications, *see* 8 C.F.R. § 212.7(e)(4)(i), (v), and (vi)—are excised from the proposed class.

The class has also been defined to contain only a subset of those who fall within the

regulation's scope; specifically, those who are married to United States citizen and living with a

final order of removal.  Finally, the class includes only those who, via I-130 petitions, have

begun the process of seeking lawful status.  It would be difficult to conceive of a class more

carefully tailored to the government's actions.

> **B.   The putative class members have standing because their pursuit of lawful status under the government's own regulations has created a substantial risk of detention and removal.**

Respondents contend that the class is "overbroad" because some putative class members

have never been detained or ordered to purchase tickets to depart the United States.  Dkt. No.

178 at 14.[8]  Although they have classified each noncitizen class member as an enforcement priority, have each petitioners' address, and disclaim any obligation to consider their pursuit of lawful status, Respondents challenge standing based on the cold comfort that "ICE simply does not have the resources to take an enforcement action against every person pursuing a provisional waiver." Dkt. No. 178 at 14.  Their argument misapprehends the situation of the putative class members in this case and the law of standing.

The putative class members easily satisfy the injury-in-fact requirement as they all face a "substantial risk" that they will be arrested, detained, or removed.  *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 451 (D. Mass. 2018).  Each family in the class has begun the process of seeking lawful status for the noncitizen spouse by, among other things, paying at least one application fee (presently $535 for an I-130) and providing DHS with their address.  Despite the 2016 regulations—which invited them to come forward and follow a path to seek lawful status without prolonged separation from their families—each noncitizen class member is now among DHS's priorities for detention and removal.  *See* Exec. Order No. 13768, Enhancing Public Safety in the Interior of the United States (Jan. 25, 2017); Memorandum of John Kelly, on Enforcement of the Immigration Laws to Serve the National Interest (Feb. 20, 2017).  Not only that, but Respondents have ***already*** harmed a substantial number of such individuals by targeting noncitizens seeking lawful status under the provisional waiver process for detention and removal

---

[8] Despite Respondents' contention, Petitioners need not demonstrate that every class member has standing prior to class certification.  *In re Nexium Antitrust Litig.*, 777 F.3d 9, 23 (1st Cir. 2015) (holding that "a certified class may include a de minimis number of potentially uninjured parties" but declining to decide whether a class may contain a substantial number of uninjured parties); Charles Alan Wright, et al., Additional Certification Issues—Standing and Mootness, 7AA Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.) (proponent of class certification need only "show that there is a possibility that defendant's conduct may have a future effect, even if injury has not yet occurred …").

based only on their final orders of removal. *See* Dkt. No. 175 at 3-6.  That class-wide practice, Respondents' close collaboration with USCIS in effecting it, and its devastating consequences for many similarly-situated families, are undisputed.

Standing is therefore not undermined by the mere fact that resource constraints prevent the same tragedy from befalling every class member.  *See Batalla Vidal v. Duke,* 295 F. Supp. 3d 127, 155 (E.D.N.Y. 2017), *motion to certify appeal granted sub nom. Batalla Vidal v. Nielsen*, No. 16-CV-4756 (NGG) (JO), 2018 WL 333515 (E.D.N.Y. Jan. 8, 2018) (when an individual is subject to removal, they have suffered and injury-in-fact because "[t]here is nothing 'speculative' about the possibility that they would actually be removed").[9]  By analogy, it is as if the class members had purchased a home security system whose manufacturer has reprogrammed it so that it might explode rather than safeguard their home.  The legally cognizable harm is the reprogramming itself—in this case, DHS's repurposing of the provisional waiver process as an enforcement mechanism rather than a process designed to benefit families.

Among Petitioners' claims, for example, is that Respondents' *sub silencio* departure from the requirements and purposes of the provisional waiver regulations violates the APA.  Dkt. No. 27 ¶¶ 123-127.  Indeed, even those who are too fearful to file I-130 applications because of Respondents' unlawful conduct would have standing to challenge DHS's unlawful abandonment of a regulatory process that was intended to benefit them.  *See Alasaad*, 2018 WL 2170323, at *11.  There can be little question that class members here—who have actually ***begun*** the process

---

[9] *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."); *Alasaad v. Nielsen*, No. 17-CV-11730-DJC, 2018 WL 2170323, at *11 (D. Mass. May 9, 2018) (plaintiffs plausibly alleged they faced a "substantial risk of future harm" stemming from defendants' ongoing enforcement of border electronics search policies).

of seeking lawful status under these regulations, expended time and resources, and given their address to DHS—have standing.  Far from being "overbroad" or "sweeping," Dkt. No. 178 at 8, 12, the class in this case is narrowly circumscribed to those who fall within the precise eligibility criteria drawn by the regulation and who have begun the process that DHS provided for them. Nothing in our law requires these individuals to wait until their homes are ablaze or their lives are destroyed before seeking legal redress.

> **B.    Interpreting the provisional waiver process to benefit only those prepared to file the final waiver application would allow ICE to eliminate the process altogether.**

Respondents' next effort to limit the size of the class—framed as a question about when rights "vest"—is its contention that applicants who seek provisional waivers but who are not yet eligible to file the final waiver application (Form I-601A) have no procedural due process interest in access to the provisional waiver process.  Dkt. No. 178 at 3-9.  Respondents make a similar claim about Petitioners' claims under the APA, and under the INA and its regulations. *Id.* at 22.  These arguments are without merit.

Respondents correctly state that analysis of Petitioners' claims should consider the purposes of the provisional waiver regulations and the people that they were "designed to help." Dkt. No. 178 at 6, 17, 22.  But Respondents misapply that test.  Simply put, Respondents' "vesting" argument boils down to the claim that the provisional waiver process was ***not*** designed to help noncitizens unless they have already reached an advanced stage in the process.  That contention is inconsistent with the language and purposes of the 2013 and 2016 rulemaking, and it would turn the protections of the regulations, the APA, and the Due Process Clause into an empty shell.

***First***, the language and purposes of the provisional waiver regulations make clear that they are intended to help ***everyone*** who is eligible to benefit from the process, not merely those

who are already advanced in it.[10]  The provisional waiver regulations are designed to benefit

American citizens whose family members are eligible to seek lawful status.  This is

accomplished via *a process* in which, as Petitioners have previously described, noncitizen class

members must: (1) be the beneficiary of a marriage petition filed by their U.S. citizen spouse

(Form I-130); (2) secure conditional "consent[] … to reapply[] for admission" after departure on

a final order of removal (Form I-212); (3) obtain a provisional unlawful presence waiver (Form

I-601A); (4) attend an immigrant visa interview at a U.S. consulate abroad; and (5) become a

lawful permanent resident upon admission to the United States.  *See* Am. Compl. ¶¶ 30-36.

DHS's 2013 and 2016 provisional waiver regulations acknowledged that they were

creating a process for applying for lawful status, not merely a single application form.  The 2013

regulations—which did not apply to noncitizens who had final orders of removal and thus did

not involve Form I-212—allowed noncitizen spouses who had been unlawfully present in the

United States for at least a year to receive a provisional waiver of inadmissibility while

remaining in the United States, using the newly created Form I-601A.  *Provisional Unlawful

Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule* ("2013 Final

Rule"), 78 Fed. Reg. 536 (Jan. 3, 2013).  The rulemaking explained how the provisional waiver

process was to proceed, i.e., not by concurrent submission of the I-130 and I-601A applications,

but by requiring approval of the I-130 before proceeding to an I-601A.  *See*, *e.g.*, *id*. at 547-48.

Tellingly, when DHS calculated the costs to impacted families of both the existing and

new processes, that calculation did not begin and end with the unlawful presence waiver

---

[10] Indeed, this is a process that is newly available to putative class members as of 2016, and the
various applications can take months or even years to adjudicate.  Relatively few people would
be able to advance to obtaining an approved I-212 at this juncture.  That is especially the case
given the common-sense conclusion that ICE Boston's recent conduct in targeting and arresting
applicants at USCIS offices would make potential applicants afraid to participate in the process.

application, but instead accounted for the costs of the ***entire*** process—beginning with the preparation and submission of Form I-130. *Id.* at 573. And when DHS described the purposes of the rule, it spoke of relieving the burden on "American families … separated while the immigrant visa applicant is going through the immigrant visa process," not merely families of individuals with approved I-130s. *Id.* at 542. Indeed, DHS predicted that by making the process of seeking lawful status more accessible, the new regulations would give rise to an increased number of applications—beginning with an increase in "immigrant visa petitions for alien relatives," i.e., I-130 petitions. *Id.* at 566; *see also id.* at 572.

The 2016 regulations "***expand[ed] the class*** of eligible individuals who can benefit from provisional waivers" to include those with final orders of removal. *See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule* ("2016 Final Rule"), 81 Fed. Reg. 50244, 50259 (July 29, 2016) (emphasis added). As in 2013, the 2016 regulations created a sequential process, explaining that noncitizens with final orders of removal would need approved I-130 and I-212 applications prior to filing Form I-601A. *Id.*; *see* 8 C.F.R. § 212.2(j). Its purposes were to encourage eligible noncitizens to pursue lawful status, lower the government's processing costs, and "reduce[] hardships to U.S. citizen families." 2016 Final Rule, 81 Fed. Reg. at 50244-45. As other courts have found, the provisional waiver process encompasses each of the applications, not merely Form I-601A. *Villavicencio Calderon v. Sessions*, No. 18-cv-5222-PAC, 2018 WL 3677891, at *8-9 & n.13 (S.D.N.Y. Aug. 1, 2018) (describing "three step" process and finding that petitioner with pending I-130 had due process right); *De Jesus Martinez v. Nielsen*, No. 18-cv-10963, 2018 WL 4442229 (D.N.J. Sept. 14, 2018) (describing I-130 and I-212 applications as part of provisional waiver process and finding APA violation based on arrest at I-130 interview).

Respondents' view that the 2016 regulations were intended only to help noncitizens with approved I-212 applications is particularly paradoxical because until the regulations were enacted, few noncitizens with final removal orders had any reason to file a conditional I-212 application. From 1996 to 2016, the conditional I-212 was used in relatively rare cases, most commonly where an individual with a final order of removal had not yet accrued a year or more of unlawful presence in the United States and therefore did not also need a waiver of unlawful presence, which until 2016 were not available prior to departure from the United States.[11] *See* 8 U.S.C. § 1182(a)(9)(B); *id.* § 1182(a)(9)(A)(iii) (authorizing conditional waivers for those with final order of removal); 2013 Final Rule, 78 Fed. Reg. at 545, 548 (noting that individuals with final orders could file conditional I-212s, but also declining to extend provisional unlawful presence waivers to those with removal orders); 2016 Final Rule, 81 Fed. Reg. at 50245 (extending provisional waiver availability to those with removal orders). Thus, when the regulations went into effect in 2016, there would have been very few people with approved I-212 applications in the United States, and of those, almost none would have also needed a waiver of unlawful presence. If Respondents are right that the rulemakers aimed to help only those with approved I-212 applications, the intended beneficiaries of DHS's intentional expansion of the provisional waiver process to those with final orders of removal would be virtually a null set.

---

[11] The filing of conditional I-212 applications prior to departure from the United States was more useful prior to 1996, when Congress created the unlawful presence ground of inadmissibility. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 301, 110 Stat. 3009-546 (codified at 8 U.S.C. § 1182(a)(9)(B)). Between 1996 and the 2016 provisional waiver regulations, there was little reason for most noncitizens with final orders of removal to file an I-212 before departing the United States, as they would still need to seek a waiver of unlawful presence from abroad after departure by filing Form I-601. Thus, before the promulgation of the 2016 provisional waiver regulations, most final-order noncitizens who were married to U.S. citizens had nothing to gain by filing a conditional I-212 application in advance of departure.

*Second*, Respondents' position is not only based on a misreading of the regulations, but would also, if adopted, render illusory the due process and other legal protections Petitioners rely on.  Under Respondents' view, the government may prevent *each and every eligible noncitizen* from benefitting from the provisional waiver process by detaining and removing him or her at the outset of the process, long before he or she is eligible to file Form I-601A.

The possibility of such conduct is not speculative.  It is the *precise* action that the government was engaging in when this litigation began.  Thus, in February 2018, when ICE received a list of 23 individuals who would be appearing at USCIS over the coming months—most of them likely putative class members—it determined that it wished to detain and remove *21* of them.  Aug. 21 Hr'g Ex. 7, Dkt. No. 148 at 41-43 (GOV002883-85).  Individuals whom ICE did not detain at their I-130 interviews because they were already under its supervision (including Petitioner Sandro de Souza) did not fare much better.  In fact, each of the Petitioners in this case who checked in with ICE on an order of supervision was ordered to purchase a plane ticket and depart.  Although Petitioner Lilian Calderon now has an approved I-212 and a pending I-601A, she likely would never have reached that stage in the process had she not filed this litigation.

As this Court has already held, the Due Process Clause protects against such unlawful conduct because it protects *access* to the legal process for applying for an immigration benefit. Dkt. No. 159 at 30.  Thus, "courts have reviewed and reversed decisions to remove an alien where 'the effect [would] preclude an alien from even applying for relief' that he or she is entitled to pursue under a statute or regulation." *Id.* (alteration in original) (quoting *Succar v. Ashcroft*, 394 F.3d 8, 19-20 (1st Cir. 2005)); *see also Ceta v. Mukasey*, 535 F.3d 639, 646-47 (7th Cir. 2008) (denial of continuance, making removal imminent, was improper where it would

completely prevent applicant from seeking adjustment of status); *Kalilu v. Mukasey*, 548 F.3d 1215, 1218 (9th Cir. 2008).  Because the provisional waiver regulations benefited all putative class members by making them eligible for a process that begins with an I-130 application, each of the putative class members has a due process interest that begins—at the very least—once that application is filed.  As this Court observed:

> The binding promises to United States citizens and their alien spouses in the provisional waiver regulations would be meaningless, and their purposes would be undermined, if ICE were not required to consider that an alien with a final order of removal is seeking a provisional waiver before requiring him or her to leave the United States.  There is no reason to conclude that, having promulgated the provisional waiver regulations in 2013, and amended them in 2016 to make aliens with final orders of removal eligible for such waivers, the Secretary of DHS intended to allow ICE to ignore the regulations and their important purposes.

Dkt. No. 159 at 36.  Limiting the class with regard to Petitioners' due process claim to those with approved I-212 applications is therefore improper.

The same is true for Petitioners' claims under the APA, and under the INA and its regulations.[12]  Petitioners' claims are that Respondents' detention and removal of people who are availing themselves of the provisional waiver process violates these regulations and is unlawful and arbitrary government conduct under the APA.  Because Respondent's unlawful conduct harms all of those who seek to avail themselves of the provisional waiver process—not merely those who already have approved I-212 applications—limiting the class with regard to these claims is improper.  *See, e.g.*, *Villavicencio Calderon*, 2018 WL 3677891, at *8 (arrest of petitioner with pending I-130 unlawful under both APA and Due Process Clause); *De Jesus*

---

[12] This INA claim relates to, and is not a "restatement[] of," the constitutional claims.  Dkt. No. 178 at 22 n.15.  The claim is that Respondents' conduct contravenes the provisional waiver regulations, and—in so doing—violates the statutory provision that these regulations interpret and implement.  Compl. ¶¶ 123-127.

*Martinez*, 2018 WL 4442229, at *2 (where petitioner and his wife had "beg[u]n the process of applying for a provisional waiver" by filing I-130 application, arrest at interview violated APA).

**C.      Respondents confuse petitioners' and class members' interests in having their applications for lawful status considered with the ultimate result of those applications.**

Respondents' next effort to limit the size of the class—framed as part of Respondents' "vesting" issue—is its argument that the class is overbroad because it includes noncitizens who are subject to inadmissibility grounds other than those that can be waived through the provisional waiver process. This argument confuses the question of whether a noncitizen will ultimately be awarded lawful status under the provisional waiver process with his right to pursue and be considered for that status. *See* Dkt. No. 159 at 30; *see also Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification" where class raised due process challenge to government's procedures.); *Gordon v. Johnson*, 300 F.R.D. 31, 36 (D. Mass. 2014), *vacated on other grounds sub nom. Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016) (rejecting government's arguments against class certification on the grounds that they "entirely misconstrue[d] the point of this litigation by confusing the issue of whether an alien is entitled, at some point, to a bail hearing with the issue of what the Immigration Judge's decision might take into consideration once the bail hearing occurs").

Like all individuals applying for lawful status, the Petitioners and class members will have to demonstrate that they satisfy the statutory criteria, including not being subject to any grounds of inadmissibility that bar their admission to the United States. *See* 8 U.S.C. § 1182. The inadmissibility inquiry is part of the adjudication process for any immigration benefit and often requires complex legal and factual analysis. In the case of the provisional waiver process, DHS has made a deliberate choice that the inquiry must generally occur as part of the immigrant

visa interview, and not as part of the adjudication for a I-601A waiver.  2016 Final Rule, 81 Fed. Reg. at 50253-54.  If, after completion of the immigrant visa interview, the Department of State determines that an individual is subject to a ground of inadmissibility, his I-601A waiver will be revoked and the immigrant visa will be denied.  *See* 8 C.F.R. § 212.7(e)(14)(i).  But that determination is the *result* of the visa adjudication at the consulate, not a prerequisite for it.

The inadmissibility ground that creates a five-year-bar for individuals who have failed to attend a removal hearing "without reasonable cause," 8 U.S.C. § 1182(a)(6)(B), is a case in point.  As with any other inadmissibility ground, if a consular official determines that an individual has in fact failed to attend his removal proceeding "without reasonable cause," the result of his application will be the denial of his immigrant visa.  But the 2016 provisional waiver regulations made an express choice *not* to simply exclude from eligibility any noncitizen who received an *in absentia* order of removal after failing to attend an immigration hearing.  Instead, individuals with *in absentia* removal orders have the same eligibility for the provisional waiver process as individuals with other final orders of removal.  8 C.F.R. § 212.7(e)(4)(iv); 2016 Final Rule, 81 Fed. Reg. at 50262.  Petitioners Lucimar de Souza and Deng Gao, for example, are eligible for the provisional waiver process; if found at the consulate to be subject to Section 1182(a)(6)(B)'s five year bar, the result of their application for an immigrant visa will be a denial.[13]  By contrast, DHS made individuals with "reinstated" orders of removal expressly

---

[13] Contrary to the government's suggestion, Dkt. No. 178 at 14 n.7, in deciding not to reopen Ms. de Souza's and Mr. Gao's immigration cases the BIA did *not* determine whether they had "reasonable cause" for failing to appear at their immigration hearing, and would thus be subject to inadmissibility under 8 U.S.C. § 1182(a)(6)(B).  "Reasonable cause" is not the legal standard for rescinding and reopening an *in absentia* removal order, *see* 8 U.S.C. § 1229a(b)(5)(C), and as such, neither the immigration judges nor the BIA considered that question or addressed it in their decisions.

ineligible to apply for provisional waivers.  8 C.F.R. § 212(e)(4)(v); 2016 Final Rule, 81 Fed.

Reg. at 50262.

Far from being overbroad, the class Petitioners propose carefully tracks each of these

distinctions, excluding not only those who are subject to reinstatement of their prior removal

order, but ***every*** category of individual who is ineligible to participate in the provisional waiver

process.  DHS declined to impose additional eligibility limitations, including for people who

have committed crimes.  2016 Final Rule, 81 Fed. Reg. 50262.  Because each of the individuals

in the proposed class is harmed by ICE's failure to consider his application for lawful status in

making its enforcement and removal determinations, the class is not overbroad, and should be

certified.

> **D.**     **Respondents' violation of the Equal Protection Clause harms all class members.**

Finally, Respondents fault Petitioners for not limiting their equal protection claim to class

member of a particular race.  Dkt. No. 178 at 21.  Although framed as an argument about

commonality, this argument, too, relates to the scope rather than the existence of a class.

Respondents' argument misunderstands Petitioners' claim.  That claim is that ICE's

sabotage of the provisional waiver process, and its efforts to impede the legalization of

noncitizens who are eligible to gain lawful status in the United States—even if facially neutral—

are motivated by racial animus against non-White immigrants and harm all putative class

members.  *See* Dkt. No. 27 at ¶ 111.  Courts examining other immigration policies under the

current administration have found plausible similar allegations of policy-making tainted by

animus.  *See*, *e.g.*, *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, No. 18-

15068, 2018 WL 5833232, at *30 (9th Cir. Nov. 8, 2018) (declining to dismiss claim that

rescission of Deferred Action for Childhood Arrivals program was motivated by racial animus).

Because the harms of the government's conduct are spread among *all* putative class members, they can be challenged by any putative class member.  *See Craig v. Boren*, 429 U.S. 190, 194 (1976); *Scott v. Greenville Cty.*, 716 F.2d 1409, 1415 (4th Cir. 1983) ("[S]tanding to assert that discriminatory government action violated the equal protection clause is not lacking simply because the plaintiff is not a member of a minority.").  Accordingly, Petitioners' equal protection claim—like all of Petitioners' claims—supports certification of Petitioners' proposed class.

## CONCLUSION

For these reasons, Petitioners' motion for class certification should be granted.

Respectfully submitted this 15th day of November, 2018.

<table>
<tr>
<td>

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170


Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

</td>
<td>

*/s/  Kevin S. Prusia*
Kevin S. Prussia (BBO # 666813)
Michaela P. Sewall (BBO # 683182)
Jonathan A. Cox (BBO # 687810)
Stephen Provazza (BBO # 691159)
Colleen M. McCullough (BBO # 696455)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
kevin.prussia@wilmerhale.com
michaela.sewall@wilmerhale.com
jonathan.cox@wilmerhale.com
stephen.provazza@wilmerhale.com
colleen.mccullough@wilmerhale.com

*Attorneys for Petitioners*

</td>
</tr>
</table>

CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2018, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

/s/ *Kevin S. Prussia*
Kevin S. Prussia