**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, et al., <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW |

**RESPONDENTS' SURREPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO PETITIONERS' MOTION FOR CLASS CERTIFICATION**

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

    I.      Section 1252(f)(1) Prohibits Petitioners' Requested Relief Because It Would Enjoin the Operation of Section 1231. ............................................... 2

    II.     Section 1252(f)(1) Applies to Habeas Actions. ................................................. 3

    III.    Section 1252(f)(1) Prohibits the Declaratory Relief that Petitioners Request. ................................................................................................................ 5

    IV.    Petitioners' Claims Are Unsuitable For Classwide Resolution. .................. 6

        A. Petitioners' proposed class includes many aliens who lack standing or who allege a different injury than the named Petitioners. .................... 6

        B. Any right to have the provisional waiver process considered vests, if at all, at the time an alien has an approved Form I-212. ............................ 7

        C. An alien must be inadmissible only for their unlawful presence in order to have a due process interest in applying for a provisional unlawful presence waiver. ...................................................................................... 10

        D. Petitioners' remaining claims cannot be resolved on a common basis. ..................................................................................... 12

        E. No proposed class can sufficiently account for all factors needed to issue indivisible relief in this case. .................................................................. 13

CONCLUSION ................................................................................................................. 15

CERTIFICATE OF SERVICE ....................................................................................... 17

**INTRODUCTION**

This Court should deny Petitioners' motion for class certification. Petitioners requested injunctive and declaratory relief seeks to impose a prerequisite on ICE's ability to execute final orders of removal.[1] *See* ECF No. 27 at ¶¶ 138-45. Their request, if granted, would enjoin and restrain the normal operation of section 1231 which directs ICE to remove aliens with final orders of removal. *See* 8 U.S.C. § 1231. Section 1252(f)(1) plainly precludes this result. Furthermore, Petitioners' proposed class cannot be certified because Petitioners have not met their burden to satisfy the Rule 23 requirements. First, Petitioners' class includes many individuals who have not, since their removal order, had any contact with ICE; therefore, Petitioners cannot establish that Respondents have acted or refused to act on grounds that apply generally to the class. *See* Fed. R. Civ. P. 23(b)(2). At the very least, these aliens have alleged a different injury than the named Petitioners, which necessarily destroys any commonality amongst the class. *See* Fed. R. Civ. P. 23(a)(2). Additionally, their proposed class is overbroad with regard to their due process claims because the 2016 provisional waiver regulations make clear that, at most, only those with an approved Form I-212 and who are "otherwise admissible" have a liberty interest in applying for a provisional waiver. Their proposed class is also overbroad with regard to their claims concerning equal protection and the post order custody review regulations in 8 C.F.R. § 241.4. Even if Petitioners' proposed class were narrowed, the relief they seek,

---

[1] Petitioners clarified in their reply brief that their claims for relief have not changed during the pendency of this case. ECF No. 184 at 9 n.6. Accordingly, Respondents must assume that, consistent with their previous requests for relief in this case, Petitioners do not merely seek "consideration" of the provisional waiver process, but also seek to dictate the logistics of that consideration, which is purely discretionary. *See* ECF No. 49, Motion for Temporary Restraining Order and Preliminary Injunctive Relief; Transcript of August 20, 2018 Hearing at 117, 128 (describing the interim relief Petitioners seek).

coupled with the numerous factors that must be analyzed in each alien's case, preclude the issuance of common relief on their due process claim. For these reasons, this Court should deny Petitioners' motion for class certification.

**ARGUMENT**

    **I.    Section 1252(f)(1) Prohibits Petitioners' Requested Relief Because It Would Enjoin the Operation of Section 1231.**

Petitioners argue that they do not seek to enjoin the operation of section 1231, but rather to enjoin what section 1231 does not authorize. ECF No. 184 at 5-6. This argument fails for two reasons. First, it is nothing more than a "legal sleight of hand" that has been expressly foreclosed by the Supreme Court in *Jennings* in the context of constitutional claims. *See Jennings v. Rodriguez,* 138 S. Ct. 830, 851 (2018); *Alli v. Decker,* 650 F.3d 1007, 1021 (3d Cir. 2011) (Fuentes, J., dissenting). In *Rodriguez I,* the Ninth Circuit held that section 1252(f)(1) did not affect its jurisdiction over certain statutory claims because the claims did not "seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct . . . not authorized by the statutes." *Rodriguez v. Hayes,* 591 F.3d 1105, 1120 (9th Cir. 2010) ("*Rodriguez I*"). In rejecting this holding, the Supreme Court stated that the Ninth Circuit's reasoning "does not seem to apply to an order granting relief on *constitutional grounds*." *Jennings,* 138 S. Ct. at 851 (emphasis added). Here, Petitioners' claims regarding the provisional unlawful presence waiver rest primarily on constitutional grounds. *See* ECF No. 159 at 28 (holding that the provisional waiver regulations created a procedural due process right). Accordingly, *Jennings* explicitly forecloses Petitioners' requested relief.

Second, the pre-requisite imposed on removal in this case plainly inhibits the practical application of section 1231, which is to remove aliens with valid, enforceable

2

final orders of removal. *See* 8 U.S.C. § 1231(a) ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States . . ."). Petitioners' argument to the contrary is tantamount to arguing that the government has *no statutory authority* to remove the Petitioners. Indeed, this Court has found that the provisional waiver regulations created a *constitutional* limit on the government's removal authority — not that the plain text of section 1231 requires consideration of the provisional waiver regulations. *See* ECF No. 159. Requiring the government to consider the provisional waiver process prior to removal would place a pre-requisite on the government's statutory removal authority, thereby enjoining the normal operation of section 1231. Granting such relief on a classwide basis is barred by section 1252(f)(1).

## II. Section 1252(f)(1) Applies to Habeas Actions.

Despite 1252(f)(1)'s express application to all actions or claims and despite the fact that there is no recognized right to a classwide writ of habeas corpus, Petitioners contend that section 1252(f)(1)'s prohibition does not apply to habeas actions. *See* ECF No. 184 at 6-7. Section 1252(f)(1)'s text unambiguously forecloses their argument. The statute expressly reserves individual access to a habeas writ while eliminating the Court's jurisdiction to enter classwide relief "[r]egardless of the nature of the action or claim." Thus, it is clear that section 1252(f)(1) encompasses habeas class actions.

Section 1252(f)(1) does not even arguably suspend the writ of habeas corpus, bringing it outside the scope of *St. Cyr,* which only dealt with an *individual* plaintiff's access to habeas proceedings. *See St. Cyr,* 533 U.S. 289 (2001). The statute expressly excepts individual claims. 8 U.S.C. § 1252(f)(1) ("other than with respect to the application of such provisions to an individual alien"). Therefore, Petitioners' argument that section

3

1252(f)(1) must include a clear statement to preclude habeas jurisdiction is misplaced. By conflating section 1252(f)(1)'s prohibition on classwide relief with the sections eliminating individual habeas jurisdiction at issue in *St. Cyr,* Petitioners seem to argue that there is right to classwide habeas relief. *See* ECF No. 184 at 6. However, even the Ninth Circuit has concluded that no such right exists. *See J.E.F.M. v. Lynch,* 837 F.3d 1026, 1038 (9th Cir. 2016) ("We recognize that a class remedy arguably might be more efficient than requiring each applicant to file a PFR, but that is not a ground for ignoring the jurisdictional statute."). Therefore, because there is no right to classwide habeas relief, *St. Cyr* is inapplicable and provides no support for Petitioners' argument.[2]

Petitioners' argument that the statute does not apply because it was not amended in light of *St. Cyr* to include an express limit on habeas jurisdiction is also unavailing. Again, the statute's express language makes clear that individual petitioners are excepted from the bar, so any individual can seek the writ. *See* 8 U.S.C. § 1252(f)(1). Thus, there was no need for Congress to amend the language in section 1252(f)(1). *See id.* Therefore, this Court should not, as Petitioners' suggest, assign any meaning to Congress' decision to leave section 1252(f)(1) untouched.

### III. Section 1252(f)(1) Prohibits the Declaratory Relief that Petitioners Request.

---

[2] The Supreme Court has never taken issue with congressional limitations on certain remedies where other remedies are available. *See, e.g., Lauf v. E.G. Shinner & Co.,* 303 U.S. 323, 330 (1938) (rejecting constitutional challenge to statutory restrictions on injunctive relief); *Cary v. Curtis,* 44 U.S. 236, 250 (1845) (upholding Congress's abolition of a cause of action in part because the claimant "was not without other modes of redress"); *cf. Swain v. Pressley,* 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus").

As an initial matter, the First Circuit has not comprehensively addressed section 1252(f)(1)'s limit on injunctive relief and there have been very few courts, since the Supreme Court's decision in *Jennings,* to analyze whether section 1252(f)(1) limits corresponding declaratory relief in a Rule 23(b)(2) putative class. *See Gordon v. Lynch*, 842 F.3d 66, 71 (1st Cir. 2016) (court vacating district court's grants of summary judgment, declaratory judgment, and injunctive relief and remanding with direction that "the district court should reexamine its position on the inapplicability of § 1252(f)(1) which expressly provides a '[l]imit on injunctive relief' in the context of this statutory scheme")(brackets in original).

In arguing that section 1252(f)(1) does not apply to declaratory relief, Petitioners cite pre-*Jennings* cases, none of which address the new analytical framework established in *Jennings*. *See* ECF 184 at 3. Petitioners cite only one recent case, *Gonzalez v. Sessions,* No. 18-cv-01869, 2018 WL 2688569 (N.D. Cal. June 5, 2018). *Id.* However, that case is premised on current Ninth Circuit law requiring the government to demonstrate that *Jennings* is clearly irreconcilable with *Rodriguez I,* and other decisions that address section 1252(f)(1) — a burden that the First Circuit has not imposed on Respondents in this case. Therefore, Petitioners fail to cite any binding case law supporting their interpretation of section 1252(f)(1) and what the Supreme Court said in *Jennings*.

Petitioners also cite a Third Circuit decision, issued prior to *Jennings*, with a comprehensive dissent that found section 1252(f)(1) equally applies to declaratory relief. *Alli v. Decker,* 650 F.3d at 1016. Specifically, the dissent in *Decker* noted that section 1252(f)(1) must preclude classwide declaratory relief because "[a] classwide declaratory judgment, followed by individual injunctions from every member of the class is, in every

consequence that matters, the same as a class wide injunction." *Id.* at n.2. The dissent agreed with Respondents that "[t]his is precisely the restraint that § 1252(f)(1) purports to prevent." *Id.* Therefore, consistent with the purposes of section 1252(f)(1) and *Jennings*, this Court lacks jurisdiction to grant Petitioners' requested declaratory relief.

### IV. Petitioners' Claims Are Unsuitable For Classwide Resolution.

It is Petitioners' burden to "affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338, 350 (2011). In particular, Petitioners are required to demonstrate that the relief sought is *indivisible* because class certification is not appropriate when individual class members would be entitled to different relief. *Id.* Petitioners cannot meet this burden due to the broad scope of their proposed class. Even if the scope of Petitioners' putative class were narrowed, the inherent flexibility in a due process analysis, especially with regard to the specific procedures that Petitioners seek to be implemented, forecloses the ability to issue common relief.

#### A. Petitioners' proposed class includes many aliens who lack standing or who allege a different injury than the named Petitioners.

Contrary to Petitioners' argument, Respondents do not assert that putative class members must have an imminent threat of removal in order to have standing in this case. Nor do Respondents argue that aliens who are under ICE supervision and aliens who ICE plans to take enforcement action against lack standing. However, Petitioners' proposed class includes many individuals who, outside their removal proceedings, have had *no contact* with ICE and therefore have no standing because they have not suffered the "unlawful interference" Petitioners allege. *See In re TJX Companies Retail Sec. Breach Litig.,* 246 F.R.D. 389, 393 (D. Mass 2007); *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (requiring that a class be narrowed to include only aggrieved parties). Moreover,

6

even if aliens who have had no post-removal order contact with ICE have suffered a cognizable injury, it is certainly not the same injury the putative class representatives allege as required by Rule 23(a). *See Wal-Mart,* 564 U.S. at 348-49 (requiring that a class representative "must suffer the same injury as the class members"). Therefore, including aliens who, at the most, suffered a *different* injury destroys any commonality in the proposed class. *See id.*

Furthermore, including aliens who have no contact with ICE precludes certification under Rule 23(b)(2) because ICE has not acted or refused to act on behalf of the *entire* class. *See* Fed. R. Civ. P. 23(b)(2). ICE cannot *both* have no contact or planned contact with an alien and make "enforcement and removal decisions without regard to [a] noncitizen['s] pursuit of provisional waivers." *See* ECF No. 184 at 7; Fed. R. Civ. P. 23(b)(2). Petitioners cannot demonstrate that "declaratory relief is available *to the class as a whole*" when many in the proposed class *will not* have contact with ICE such that ICE will have to consider their pursuit of a provisional waiver. *See Wal-Mart,* 564 U.S. at 361. By including aliens without standing, or at the least, aliens with a different injury than the named Petitioners, the proposed class does not meet the Rule 23 requirements for class certification.

### B. Any right to have the provisional waiver process considered vests, if at all, at the time an alien has an approved Form I-212.

Only aliens who have an approved Form I-212 and who, upon departure from the United States, will not be inadmissible for any reason other than unlawful presence have a right to have their pursuit of the provisional unlawful presence waiver considered prior to

removal.³ Petitioners' arguments to the contrary are much broader than the First Circuit precedent they rely upon and the language of the 2016 provisional waiver regulations. Petitioners ignore that a regulation must "contain explicitly mandatory language" in order to create a liberty interest. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 461 (1989). Indeed, in each of the cases concerning the "right to seek relief," the First Circuit found that the government was *required* to adjudicate the application at issue because the applicant had *already applied* for the relief sought. *See e.g., Santana v. Holder,* 731 F.3d 50, 60 (1st Cir. 2013) (holding that the post-departure bar regulation conflicts with the motion to reopen statute but declining to address, as not presented by the facts, whether the alien must timely file the motion to reopen for a right to exist); *Arevalo v. Ashcroft,* 344 F.3d 1, 15 (1st Cir. 2003) (declining to apply statutory relief repeal retroactively because "[d]iscarding her application now would deprive her both of a right that she once had and of the reasonable expectation that she would have had the opportunity to convince the Attorney General to grant her relief"); *Goncalves v. Reno,* 144 F.3d 110 (1st Cir. 1998) (holding that plaintiff's application for relief under former 8 U.S.C. § 1182(c) must be adjudicated where he had been statutorily eligible to and did apply for the relief prior to the statutory repeal and where the presumption against statutory retroactivity applied). Here, the government, at most, is required to adjudicate a provisional waiver application

---

³ It is important to note that the Respondents' witnesses in this case have already testified that now they *do consider* applications for relief when making enforcement decisions, regardless of whether that application is a Form I-130, Form I-212, or Form I-601A. Transcript of August 21, 2018 Hearing at 115 (responding yes to a question about whether Field Office Director ("FOD") Adducci would expect her officers to consider pending applications when adjudicating a stay of removal); *id.* at 166 (FOD Lyons explaining that he has instructed his employees to consider pending applications when making enforcement decisions); *id.* at 172;

filed by an alien subject to an order of removal only, inter alia, if that person has an approved Form I-212. *See* 8 C.F.R. § 212.7(e)(4)(iv). There is no such mandatory language in the regulation for aliens who merely are beneficiaries of a pending Form I-130; therefore, a pending Form I-130 alone creates no corresponding due process interest in applying for a provisional unlawful presence waiver. *See Kentucky Dept. of Corrections,* 490 U.S. at 461.

Petitioners also argue that the due process right should vest at the filing of a Form I-130 because the *2013* regulations accounted for the process to begin at the Form I-130. *See* ECF No. 184 at 16-17; 78 Fed. Reg. 2, 536 (Jan. 3, 2013). This is inconsequential to the current analysis because the 2013 regulations did not allow aliens with final orders of removal, whose regulatory eligibility depends upon a prior filing and approval of a Form I-212, to apply for a provisional unlawful presence waiver. 78 Fed. Reg. 2 at 544; ; 8 C.F.R. § 212.7(e)(4)(iv). When the 2013 regulations were adopted, an alien need only have a Form I-130 approved on their behalf in order to apply for the provisional waiver; the Form I-212 was not required. *See id.* Because this case concerns the *2016* regulations and those regulations make clear that an alien must have an approved Form I-212 prior to applying for the provisional waiver process, any due process right cannot vest at the filing of a Form I-130.

Petitioners also argue that it could not have been the rulemakers' intention to help only those with approved I-212 applications; yet, that argument completely misses the point. *See* ECF No. 184 at 18. The rulemakers did not intend for a due process right to be created from these regulations *at all.* 81 Fed. Reg. 146, 50258 (July 29, 2016) ("DHS disagrees that there is a legal due process interest in *access to* or eligibility for discretionary

9

provisional waivers of inadmissibility."). In any event, when a court determines whether a due process right to seek relief exists, the focus is not solely on what the rulemakers intended, but whether the language of the regulation creates a legitimate expectation of entitlement to apply for relief. *See Kentucky Dept. of Corrections,* 490 U.S. at 461. The First Circuit has held that only those *who have applied* for the relief have such a right. *See Santana v. Holder,* 731 F.3d at 60; *Arevalo v. Ashcroft,* 344 F.3d at 15; *Goncalves v. Reno,* 144 F.3d at 110. And the provisional waiver regulation is clear that in order *to apply,* you must have an approved Form I-212. 81 Fed. Reg. 146 at 50256. Accordingly, the liberty interest in applying for a provisional waiver vests no sooner than the time the Form I-212 is approved.

Petitioners fail to meet the high burden that the Supreme Court set in determining whether a due process right exists. *See Kentucky Dept. of Corrections,* 490 U.S. at 461. There is no mandatory language in the 2016 regulations regarding the adjudication of Form I-130 petitions and there is no case law that bestows a right to seek relief *before* an applicant is eligible to apply for that relief. Accordingly Petitioners' proposed class, which includes alien beneficiaries of pending Form I-130 petitions, is overbroad with respect to their due process claim.

### C. An alien must be inadmissible only for their unlawful presence in order to have a due process interest in applying for a provisional unlawful presence waiver.

Contrary to Petitioners' characterization, Respondents do not confuse ultimate eligibility for the provisional waiver with the right to seek the waiver. Rather, a proper due process analysis requires that courts closely examine the language of the regulation alleged to create a due process interest and *limit* the due process interest according to that language.

*Kentucky Dept. of Corrections,* 490 U.S. at 461 ("The fact that certain state-created liberty interests have been found to be entitled to due process protection, while others have not, is not the result of this Court's judgment as to what interests are more significant than others; rather, our method of inquiry in these cases always has been to examine closely the language of the relevant statutes and regulations."). The language of the regulation requires that any due process right be limited to only those aliens who fall within its regulatory purpose. *See id.;* 81 Fed. Reg. 146 at 50252 (stating the principle goal of the regulation is to streamline visa issuance for "individuals who are eligible for an immigrant visa *and otherwise admissible to the United States* but whose family members would experience extreme hardship due to application of certain unlawful presence grounds of inadmissibility") (emphasis added); 8 C.F.R. § 212.7(e)(3)(iii) (providing "an alien may be eligible to apply for" the waiver if they are exclusively inadmissible for unlawful presence).The fact that the 2016 regulations were clearly designed solely for those who are "otherwise admissible" dictates that inadmissibility criteria must define the scope of any liberty interest.

Petitioners do not address this principle purpose; instead, they assert that the more general purpose of reducing hardship to U.S. citizen families should define the scope of the class. That argument is detached from the standard that instructs courts to examine closely the language of the regulation —not the significance of the interest implicated. *Kentucky Dept. of Corrections,* 490 U.S. at 461. It also cuts against a central tenet of statutory and regulatory interpretation that the more specific provision prevails. *In re Lazerus,* 478 F.3d 12, 18-19 (1st Cir. 2007) ("[T]he rationale against applying a general

11

provision in this circumstance is to protect against undermining limitations created by a more specific provision.").

Petitioners ask this Court to assign weight to the fact that the provisional waiver regulations did not include those with *in absentia* final orders of removal in the "Ineligible Aliens" section. ECF No. 184 at 22. However, the fact that a specific ground of inadmissibility was not mentioned does not negate the provision stating that an alien "may be eligible *to apply* and receive a waiver *if* he or she upon departure would be inadmissible only under section 212(a)(9)(B)(i) of the Act."[4] 8 C.F.R. § 212.7(e)(3)(iii) (emphasis added). Likewise, the fact that the regulation specifically excepts aliens with reinstated orders of removal, but does not specifically mention *in absentia* orders of removal, is unpersuasive. *See* ECF No. 183 at 22 ("By contrast, DHS made individuals with "reinstated" orders of removal expressly ineligible to apply for provisional waivers."). Aliens with reinstated orders are exempt from all relief *by* statute; therefore, this is merely a restatement of the statute which precludes these aliens from waivers, not a deliberate choice by the drafters. *See* 8 U.S.C. § 1231(a)(5); 81 Fed. Reg. 146 at 50262. Thus, while Petitioners purport that their class accounts for "every category of individual who is ineligible to participate in the provisional waiver process," they ignore the additional requirement to apply – being "otherwise admissible." *See* 8 C.F.R. § 212.7(e)(3)(iii).

### D. Petitioners' remaining claims cannot be resolved on a common basis.

---

[4] Throughout their brief, Petitioners argue that Respondents are confusing an alien's ultimate eligibility with his ability to apply for the relief. ECF No. 184 at 21. However, the regulation clearly limits those eligible *to apply for*, as well as *to receive*, the waiver in the previous section, entitled "Eligible aliens." *See* 8 C.F.R. § 212.7(e)(3)(iii).

Petitioners allege that Respondents violate the Post Order Custody Review ("POCR") regulations in 8 C.F.R. § 241.4 on a common basis. ECF No. 184 at 10. Although Petitioners focus on how the POCR regulations are applied to aliens with old orders of removal, their class is not limited to those aliens. The proposed class includes aliens who were detained immediately after their removal orders were entered and, consequently, whose removal periods have not run. Even under Petitioners' interpretation, these aliens with new removal orders would not be entitled to a POCR until their 90th day in detention. Given that their proposed class includes aliens who are entitled to different procedures under the POCR regulations, Petitioners cannot meet the commonality requirement as to this claim. *See Wal-Mart Stores, Inc.,* 564 U.S. at 349.

Petitioners likewise have no sufficient answer for failing to define an adequate class for the equal protection claim. The fact remains that their allegations are based on racial animus but their proposed class is not limited to any particular race. The cases they cite in their brief do not excuse this defect because each case, at a minimum, required that the non-minority claimant have suffered an injury sufficient to confer standing. *See Craig v. Boren,* 429 U.S. 190, 194 (1976); *Scott v. Greenville Cty.,* 716 F.2d 1409, 1415 (4th Cir. 1983). Here, Petitioners do not even allege that the non-minority class members have suffered an injury on account of the alleged discrimination. Absent this showing, Petitioners cannot demonstrate that their equal protection claim can be answered on a classwide basis.

### E. No proposed class can sufficiently account for all factors needed to issue indivisible relief in this case.

Even if the proposed class were sufficiently narrowed, resolving their claims would require this Court to delve into the factual circumstances of each case in order to determine

whether they are entitled to relief. Only those who are "otherwise admissible" under the provisional waiver regulations have a liberty interest sufficient to trigger due process protections. However, determining whether an alien is inadmissible, particularly for criminal acts and inadmissibility grounds with flexible standards,[5] often requires a complex factual and legal analysis. *See* 168 A.L.R. Fed. 575 (2001). Inevitably, this Court would be forced to make the final admissibility determination where the parties disagree. Indeed, the parties already disagree on whether two of the named Petitioners are inadmissible for failing to attend removal proceedings. *See* ECF No. 113 at 5.

Furthermore, a question remains as to the procedures Petitioners seek to be built into the ultimate relief in this case, in order to assure Respondents are considering an alien's ability to apply for a provisional waiver. *See* Transcript of August 20, 2018 Hearing at 128 ("Your Honor, I think that's built into the proposed injunctive relief here, that ICE would have to follow a procedure before they remove someone."); *Id.* at 117 ("And specifically we've asked that removal be limited to those extraordinary circumstances where someone is a threat to the safety or well-being of another party. So the individual decision would need to address that."). It seems that Petitioners not only seek consideration of the provisional waiver process, but also to dictate *how* that factor is considered. *See* ECF No. 184 at n.6 (stating that Petitioners' claims for relief have not changed, but rather that the proposal for relief *expands* upon their arguments about minimum constitutional protections). The Court's inquiry into this issue would have to consider: how much time to give an alien in between check-ins, how much time to give an alien to present the equities

---

[5] For example, aliens are only inadmissible for failing to attend removal proceedings if they lack "reasonable cause," a flexible concept. *See* 8 U.S.C. § 1182(a)(6)(B).

14

of his case before removal, how long to interview an alien about pending applications, the level of supervision, and whether to provide the alien with a written decision regarding an enforcement action. There is *no class* of aliens that is entitled to identical, universal procedures, like these, under the Due Process Clause. *See Matthews v. Eldridge,* 424 U.S. 319, 321 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.".) This is certainly true with regard to Petitioners' proposed class that fails to exclude criminal aliens and aliens with various inadmissibility issues.

Even if Petitioners' class were properly limited to "otherwise admissible" aliens with an approved Form I-212, the question about what specific, practical procedures are required and other divergent factors within this narrowed group still preclude issuing classwide relief. Among the individualized facts that must be considered are whether the alien has diligently pursued pending applications with USCIS and whether he has failed to comply with prior orders of supervision. These facts, among others, are impossible to account for in any class definition and on any classwide basis. Because there is no specific procedural relief that can be issued on a common basis, this Court should deny Petitioners' motion for class certification.

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioners' motion for class certification.

DATED: November 21, 2018							Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

T. MONIQUE PEOPLES
Senior Litigation Counsel

*/s/ Mary L. Larakers*.
MARY L. LARAKERS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

ATTORNEYS FOR RESPONDENTS

## **CERTIFICATE OF SERVICE**

      I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                   /s/ Mary L. Larakers
                                                 Mary L. Larakers
Dated: November 21, 2018                    Trial Attorney