```
                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------------
LILIAN PAHOLA CALDERON JIMENEZ,          )
                    Petitioner,          )
                                         )   Civil Action
vs.                                      )   No. 18-10225-MLW
                                         )
KIRSTJEN M. NIELSEN, Secretary of        )
Homeland Security, CHRISTOPHER CRONEN,   )
Immigration and Customs Enforcement,     )
Boston Field Office Director, YOLANDA    )
SMITH, Superintendent of Suffolk County  )
Correctional Facility,                   )
STEVEN W. TOMPKINS, Sheriff of           )
Suffolk County,                          )
                    Respondents.         )
-----------------------------------------



             BEFORE THE HONORABLE MARK L. WOLF
                UNITED STATES DISTRICT JUDGE



                      LOBBY CONFERENCE

                     December 6, 2018


         John J. Moakley United States Courthouse
                    Courtroom No. 10
                    One Courthouse Way
                Boston, Massachusetts  02210




                              Kelly Mortellite, RMR, CRR
                              Official Court Reporter
                              One Courthouse Way
                              Boston, Massachusetts  02210
                              mortellite@gmail.com
```

```
 1    APPEARANCES:

 2    Counsel on behalf of Petitioners:
      Adriana Lafaille and Matthew Segal
 3    American Civil Liberties Union
      211 Congress Street
 4    Boston, MA 02110
      617-482-3170
 5    alafaille@aclum.org

 6    Counsel on behalf of Petitioners:
      Stephen Provazza, Jonathan Cox and Michaela Sewall
 7    Wilmer Hale LLP
      60 State Street
 8    Boston, MA 02109
      617-526-6212
 9    stephen.provazza@wilmerhale.com

10    Kathleen M. Gillespie
      Attorney at Law
11    6 White Pine Lane
      Lexington, MA 02421
12    339-970-9283
      kathleen.m.gillespie@outlook.com
13
      Counsel on behalf of Respondents:
14    Eve A. Piemonte
      United States Attorney's Office
15    1 Courthouse Way
      John Joseph Moakley Federal Courthouse
16    Boston, MA 02210
      617-748-3271
17    eve.piemonte@usdoj.gov

18    Mary Larakers
      U.S. Department of Justice, Office of Immigration Litigation
19    District Court Section
      P.O. Box 868
20    Washington, DC 20044
      202-353-4419
21    mary.larakers@usdoj.gov

22    Also Present:
      Todd Lyons
23    Ron Seely
      Lilian Pahola Calderon Jimenez
24    Sergio Francisco
      Lucimar DeSouza
25
```

```
 1                    P R O C E E D I N G S
 2           THE COURT:  So we're in the lobby, and we have the
 3   lawyers.  Who do we have in addition -- what happened to
 4   Christine?
 5           All right.  We have all the lawyers who were in the
 6   courtroom I believe.  And who else for the government?
 7           MR. SEELY:  Ron Seely from ICE Chief Counsel Office.
 8           THE COURT:  Go ahead.
 9           MR. LYONS:  Todd Lyons.
10           THE COURT:  And who do we have for the petitioners?
11           MS. LAFAILLE:  Your Honor, we have Lilian Calderon,
12   Lucimar De Souza and Sergio Francisco.
13           THE COURT:  Do you have the authority to agree to
14   things for all of the other petitioners?
15           MS. LAFAILLE:  Yes, we do.
16           THE COURT:  All right.  I don't think it's -- we can
17   stay on the -- I don't think it's essential to be on the record
18   for this.  We'll come back.
19           (Off the record.)
20           THE COURT:  Let's go back on the record.  We've just
21   had a discussion, and the parties are agreeable and seem to be
22   interested in continuing their discussions on whether they can
23   reach an agreement that would resolve this case or possibly
24   result in an indefinite stay of it, so I've given them until
25   December 20 to talk further and report on the results of their
```

1     discussions.  And if their discussions haven't resulted in
2     agreement but they want more time to talk, I'll give them more
3     time to talk.
4             Now, Ms. Lafaille has some questions for me.  What are
5     the questions?
6             MS. LAFAILLE:  So it's our position that with regards
7     to the issues that we're briefing, that to the extent the
8     vesting issue has complicated the class certification motion
9     that the APA provides perhaps an easier alternative or
10    additional framework for --
11            THE COURT:  Right.  I think --
12            MS. LAFAILLE:  -- path to resolution of the class
13    certification.  Is that just something you want us to say in
14    our briefs?
15            THE COURT:  I don't know that it's necessary.  I think
16    if I accept the argument that the government's conduct violates
17    the Administrative Procedures Act because it constitutes an
18    impermissible repeal -- a repeal of the provisional waiver
19    regulation or regulations without following the procedures
20    required by the APA, then as far as I can tell now, that would
21    be a basis for class certification.  But I just thought
22    briefing on class certification would be simpler if you knew
23    what -- for you and then for me -- if you knew what the
24    parameters of the putative class would be.
25            I mean, if the class definition would only involve

1    four people, you wouldn't satisfy the numerosity requirement.
2    If it involves a thousand people, it would.
3             MS. LARAKERS:  Your Honor, to that same end, I guess
4    if the APA is going to be briefed, should it -- would it be
5    prudent to brief, I guess re-brief our arguments with regard to
6    the Equal Protection claim?
7             THE COURT:  Yeah, I think you've got to brief
8    everything.
9             MS. LARAKERS:  Right, so kind of reiterating our
10   arguments that are in the PI and motion to dismiss.  That way
11   we understand the parameters of a very -- basic merits base so
12   that we'll know whether the class needs to be certified for
13   Equal Protection reasons, for APA reasons.
14            THE COURT:  Yes.  And sometimes class certification
15   permits and requires some consideration of the merits.
16            MS. LARAKERS:  Yes, Your Honor.  And as I understand
17   it --
18            THE COURT:  I think I want you to brief everything
19   that will go to what the parameters -- what the rights of the
20   members of the class, you know -- yeah, that would affect the
21   definition of the class, but defining the rights and then
22   figure out who has those rights.
23            But yes, that's a very good point.  So it's the Equal
24   Protection and the APA as well as what we've been talking
25   about, correct?

```
 1              MS. LAFAILLE:  Yes.
 2              THE COURT:  But do you want to address class
 3   certification, too, again, or address class certification?
 4              MS. LAFAILLE:  By that does Your Honor mean the Rule
 5   23 factors?
 6              THE COURT:  Well, what do you mean?  You asked if you
 7   should brief class certification.
 8              MS. LAFAILLE:  Well, as I understood what the briefing
 9   had netted, it is that the Rule 23 factors aren't really
10   robustly disputed and that the rub of the dispute really
11   centers on the scope of the class issues.
12              THE COURT:  That's what I thought.
13              MS. LAFAILLE:  So that was part of our reason for, you
14   know, folding the Rule 23 arguments into the brief.  Because we
15   think once Your Honor decides the scope of the class that the
16   existence of the class will not be difficult to establish.
17              MS. LARAKERS:  I do have arguments against a class
18   being certified at all, but as Your Honor pointed out, some of
19   those arguments may go away and may be strengthened by what you
20   decide the scope to be.  And certainly with regard to the APA
21   claim and the Equal Protection claim, which I think the APA
22   claim -- if I'm right, I think the APA and Equal Protection
23   claim are the only claims that Your Honor hasn't substantively
24   addressed.  Because you addressed the POCR regulations.  Is
25   there another claim that I'm missing that hasn't been
```

1  subsequently addressed --
2          MS. LAFAILLE:  We have an INA claim, but that
3  essentially has heavy overlap with all of our claims.
4          MS. LARAKERS:  So I guess we can brief the claims that
5  have not been addressed in your motion to dismiss or by the May
6  8 order, Your Honor.  I don't know the implication -- as I
7  understood your motion to dismiss, I understood you to be
8  deferring any decision on the merits of those claims or
9  whether --
10         THE COURT:  Correct.
11         MR. LARAKERS:  -- they're even cognizable.
12         THE COURT:  Right.  I just didn't -- it's not what the
13 parties focused on.  It's not what I focused on.
14         MR. LARAKERS:  Right, Your Honor.  So I'm not sure if
15 the proper -- after we brief it, whether they could still be
16 dismissed or not, but we can brief them in that sort context,
17 if that's helpful.
18         THE COURT:  That's fine.  Yeah, that's fine.  I mean,
19 if they appear to me subject to being dismissed, they'll be
20 dismissed.
21         MR. LARAKERS:  Okay.
22         THE COURT:  I don't know if -- I think we're saying
23 the same thing, that once I decide what's been called for
24 shorthand vesting, that will define the parameters of the
25 putative class, and that class will have a right to class-wide

1  relief on declaratory judgment at least, and I'll continue to
2  think about injunctive relief.
3       And then I'm not -- I would order you to confer to see
4  if you can agree on class certification. And if you can't
5  agree on class certification, focus on the disputed issues,
6  which I assume would be discrete and manageable.
7       MR. LARAKERS: I think it is possible after we get
8  those issues decided that the government may, may be able to
9  agree to a proposed class, after we get those issues out of the
10 way. I'm not 100 percent sure, but I don't think the
11 government in this case and I am certainly not interested in
12 briefing or beating a dead horse, Your Honor.
13      If those issues are decided first and class
14 certification is briefed separately, I think there may be more
15 of a possibility that we could agree, since the 1252
16 argument --
17      MR. PROVAZZA: May I ask a clarifying question, Your
18 Honor? So addressing these other issues, are they going to
19 be -- when you say "brief them," is it in the context of Rule
20 23 or in the context of a motion to dismiss?
21      MR. SEGAL: If I could just clarify that question,
22 Your Honor. The way I've conceived of the discussion that
23 we've just had is what we're really briefing is just a brief on
24 class definition. In light of your ruling today, what we need
25 clarification on is if there is going to be, as you say, Your

Honor, a certifiable class in this case, what are the parameters of that class.

THE COURT: I looked at it in sort of a temporal way up until right now in the sense, you know, does the class include people who have applied for I-130s; is it people who have I-130s and applied for I-212s; is it people who have approved 212s. I haven't thought about it in terms of claims, and I haven't decided whether Equal Protection or -- what's the other claim?

MS. LAFAILLE: APA.

THE COURT: -- the APA claim are futile. If they're futile -- but once I define a class, so -- I don't know. Maybe we are back to the motion to dismiss.

MR. LARAKERS: Your Honor, what I envisioned, I guess, when I made the suggestion, is that because class certification allows you to look a little bit behind the merits, then it would be appropriate to brief these issues as we would a motion to dismiss. So certainly it wouldn't be a full merits. It would be really whether the relief is cognizable where it's a stated claim.

THE COURT: Yeah. I think you should do it as a motion to dismiss, because if I don't dismiss your APA or Equal Protection claims, then they would be a foundation for a class, wouldn't they?

MS. LAFAILLE: Yes, Your Honor, although nothing

1    prevents the court from dismissing them after, right?  I mean,
2    the claims just have to rise and fall together but they don't
3    necessarily have to rise.
4             THE COURT:  I don't really understand what that means.
5             MR. SEGAL:  Your Honor, if I could make one additional
6    suggestion.  One reason why I was advancing the idea of
7    conceiving this as briefing on the class definition is that it
8    would leave Your Honor with the option of either doing what
9    Your Honor did with respect to the motion to dismiss, which is
10   to decide the merits, the number of issues of your choosing,
11   which in that case, sort of one, or not, re-litigating the
12   motion to dismiss, for -- first of all, I don't know what that
13   is, absent a motion for consideration.  Second of all, I don't
14   know whether that would mean Your Honor would have to weigh in
15   on all of the merits issues.  It seems like you could resolve
16   the definition.
17            THE COURT:  Well, I don't think I could define the
18   class based on allegations that failed to state a claim on
19   which relief can be granted.  That's how I think it overlaps
20   with the motion to dismiss.  I'd have to be persuaded, using
21   the motion to dismiss standard, that you've stated a plausible
22   claim for violation of the APA.  So that's the first thing I
23   have to do on a motion to dismiss.  It came into especially
24   sharp focus on something I was doing last week.  I have to
25   decide what the applicable law is and then match the

```
 1  allegations up to it.
 2          So, you know, if there's a doctrine, which I don't
 3  think I've ever dealt with, that says, you know, if conduct has
 4  the practical effect of repealing regulations, that's a
 5  violation of the Administrative Procedures Act.  So if you
 6  persuade me that's the law and that you've alleged adequate
 7  facts to state a plausible claim that that occurred, in
 8  principle that could be a basis for defining a class.  And then
 9  sometimes you have to get into the merits to do class
10  certification, but that is not preferred.
11          MR. LARAKERS:  Your Honor, I guess it would make sense
12  also in our vesting issue process, because at this point you
13  have decided that the petitioners have stated a cognizable
14  claim, at the very least with regard to people who have
15  approved I-212s, at the very least.
16          THE COURT:  That's right.
17          MS. LARAKERS:  So we would only be looking at whether
18  there's a cognizable claim prior to that.  And I think that's
19  also appropriate in a motion to dismiss, and it's certainly
20  what I argued in my motion to dismiss, that there is no stated
21  claim, obviously for a larger reason.  So I think it does make
22  sense in a motion to dismiss context.  I don't know what we
23  would call it, but I think that that provides the best
24  framework for briefing, I guess, as we're most familiar with
25  it.
```

1      THE COURT: All right. That generally sounds
2 reasonable and I would say favorable to the petitioners because
3 I haven't decided -- I do have to decide whether the law
4 permits the claim and on a motion to dismiss standard whether
5 the allegations state a plausible claim for violation of what
6 the law requires. It might be a somewhat higher standard on
7 class certification.
8      MR. LARAKERS: Your Honor, one more point. This would
9 especially be good with regard to, you know, if there's any
10 discovery in the future, then we'll know whether they should
11 get discovery on those claims, and that saves a fight that we
12 don't have to have later down the road about the scope of any
13 discovery.
14      THE COURT: I think this makes sense.
15      MS. LAFAILLE: Your Honor, that's actually a point I
16 wanted to bring up, is discovery. We have refrained, until
17 now, based on our last discussion with Your Honor, from making
18 discovery requests, other than the ones we made prior to the
19 last hearing, which are off the table. We do think we are
20 entitled to proceed with discovery. We've found that discovery
21 has actually been helpful to us in understanding the
22 government's position.
23      THE COURT: What would you be looking for beyond what
24 they're giving you voluntarily by agreement?
25      MS. LAFAILLE: Well, what they're giving us by

1  agreement is very narrow --
2           MS. LARAKERS:  Are we talking about named petitioner
3  discovery, or are we talking about class discovery?  Because as
4  I had understood, class discovery isn't appropriate until after
5  a class or unless you move for it.  And then if it's named
6  petition discovery, I think the last -- I think you said you
7  would let us know and we would confer about it ahead of time.
8           THE COURT:  I mean, it seems to me that until I decide
9  when vesting occurs or until I decide the parameters of the
10 class, how can you determine what the scope of discovery is?
11          MS. LAFAILLE:  Well, if this case were not a class
12 action and were an action on behalf of ten individuals and we
13 had just survived a motion to dismiss, as we have, substantial
14 discovery would flow from that.
15          THE COURT:  So do you want discovery only with regard
16 to the named plaintiffs?
17          MS. LAFAILLE:  Well, discovery that's relevant to the
18 claims of individual named plaintiffs is of course not limited
19 to discovery about the individual named plaintiffs.
20          THE COURT:  Here --
21          MS. LAFAILLE:  Discovery into the government conduct
22 is something that we would ordinarily be entitled to.
23          THE COURT:  Conduct relevant to the claims of the
24 named plaintiffs.  Like what?
25          MS. LAFAILLE:  Well, for example, the process at USCIS

```
 1   when it receives these applications and its communications with
 2   ICE and headquarters, what headquarters is -- what policies are
 3   coming down from headquarters with regards to this process.
 4           THE COURT:  Here, you're going to get into discovery
 5   disputes.  I think all I can do at this point -- and I have to
 6   be someplace else shortly -- is, if you haven't agreed to
 7   settle the case or to stay the case, you can report to me your
 8   positions with regard to discovery.  Maybe I'll have you in to
 9   deal with that.  But this is at a level of abstraction that I
10   can't give you more meaningful guidance on.  All right?
11   Anything else for today?
12           MS. LARAKERS:  No, Your Honor.  Thank you.
13           MS. LAFAILLE:  Thank you.
14           THE COURT:  Thank you.
15           (Adjourned, 5:10 p.m.)
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE OF OFFICIAL REPORTER

I, Kelly Mortellite, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter to the best of my skill and ability.

Dated this <u>14th day of December, 2018.</u>

/s/ Kelly Mortellite

_____

Kelly Mortellite, RMR, CRR

Official Court Reporter