**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, et al., <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW |

## JOINT REPORT

This Court has ordered the parties to confer and report, by January 14, 2019, whether they have reached an agreement on conditions to be imposed on the requested stay and, if not, their respective positions on the imposition of the following proposed conditions:

1. Respondents will add an "attorney of record" column to the reporting Respondents were providing pursuant to the parties agreement (ECF No. 162) and will continue to provide pursuant to this Court's order (ECF No. 205). ECF No. 205 at 2.

2. Respondents will produce a report including the same information as the current reporting for putative class members within ICE Boston who have applied for a Stay of Removal and who ICE Boston has made a detention determination for. ECF No. 205 at 2.

1

3.   Respondents will provide Petitioners' counsel with at least five business days' notice prior to removing or enforcing the removal of any putative class member. ECF No. 205 at 2.

**Respondents' Statement:**

Adding an "attorney of record" column to the current reporting scheme would be impractical and unduly burdensome for Respondents. An alien may have had many different attorneys over the course of their immigration history; therefore, it would not be prudent to list every attorney that has ever entered an appearance on behalf of each alien included on the report. This is especially true given that the attorney may no longer represent the alien or may only represent the alien for a limited purpose, such as for applications with USCIS. To determine the attorney of record for matters before USCIS, ICE would normally have to order the A-file from USCIS. Additionally, because the current reporting is being generated from information within online systems and interactions with the alien, it would be unduly burdensome for ICE officers to conduct a separate search of physical files to identify whether there is an attorney of record for each alien checking in.

Petitioners' second condition is unnecessarily duplicative of the current reporting and not necessary to ensure ICE Boston is considering the provisional waiver process before making enforcement decisions. First, Todd Lyons's September 12, 2018 declaration states that ICE Boston will continue to consider pending applications with USCIS when determining whether to "*arrest, detain, or effectuate the removal of*" aliens with final orders of removal. ECF No. 158 at ¶ 5 (emphasis added). To illustrate Respondents' adherence to Mr. Lyons' declaration, Respondents have provided monthly reports that

identify individuals who: (1) have final orders of removal (2) have checked in with Boston ICE ERO in the past month and (3) whose deportation officers identify as having applications (Form I-130, Form I-212, Form I-601A) pending with USCIS. These reports include, among other things, whether the alien has a criminal history and whether that alien was detained or instructed to depart the United States.[1] Additionally, aliens checking in with ICE may be concurrently submitting applications for stays of removal. Therefore, providing a new and separate list of aliens who have "applied for a Stay of Removal and who ICE Boston has made a detention determination for" would be duplicative of the reporting Respondents are already providing. Moreover, because no system exists that would permit Respondents to automatically generate such a list, Petitioner's second condition would require ICE Boston employees to do a manual search of their records each month to identify aliens who (1) are putative class members and (2) have filed an application for a stay of removal or who have had a detention decision made in their case.

Regardless, to further illustrate that ICE Boston is considering the provisional waiver process when adjudicating applications for stays of removal, ICE Boston agrees to note within the *existing* reporting scheme whether the alien has a stay application pending and the outcome of any stay application filed within the past twelve months.

Petitioners' final proposed condition is likewise untenable. First, DHS policy generally prohibits the disclosure of an alien's personal identifiable information to third parties without the alien's written consent. Moreover, owing to the sometimes difficult and lengthy process required to arrange for an alien's removal – *e.g.*, coordinating with various

---

[1] Respondents have also, as a showing of good faith, provided additional facts to Petitioners' counsel about putative class members' cases upon request.

federal Government agencies (Department of Homeland Security, Department of State, Federal Bureau of Investigation) and with foreign governments to procure the necessary travel documents – it might not be feasible for Respondents to provide Petitioners' counsel with at least five business days' notice prior to removing an alien, and such a condition would, therefore, impose an unreasonable burden on Respondents. Finally, there is no indication or allegation that ICE Boston is *currently* failing to consider the provisional waiver process prior to making enforcement decisions that would arguably make such a notice necessary.

Mr. Lyons's declaration and the reporting Respondents have been providing illustrate that Respondents, as the Court has expressed it believes they must, are considering an alien's participation in the provisional waiver process prior to making enforcement decisions. Petitioners argue that additional reporting is necessary because Respondents have not stipulated that ICE will refrain from taking enforcement action against putative class members, but the Court should find that argument unpersuasive because that claim is beyond what this Court has indicated is required by due process. *See* ECF No. 205 at 2. Rather, this Court has declared that due process requires that ICE must consider the provisional waiver process prior to removing petitioners, not that ICE is prohibited from taking any enforcement action. ECF No. 159 at 4. Respondents have stipulated that their current practice is to consider the provisional waiver process prior to making enforcement decisions and have not objected to this Court's order that Respondents continue the current reporting scheme. ECF No. 158. For these reasons, no additional reporting is necessary to establish that ICE Boston's current practice is within the bounds

of due process as defined by this Court. Therefore, good cause exists to stay this case during the lapse in appropriations.

**Petitioners' Statement:**

In response to Respondents' request for an indefinite stay of this litigation, Petitioners seek only safeguards designed to ensure that a stay will not facilitate violations of law that cannot be immediately redressed. These proposed safeguards would constitute a modest expansion of already existing reporting to allow Petitioners' counsel to meaningfully assess whether the rights of putative class members are being violated during the pendency of any stay. The Court has already ordered continued reporting about the instructions given to putative class members who appear at ICE for check-ins. Dkt. No. 206. The additional information Petitioners seek is only that which is necessary to allow them to contact counsel of record when the information the government provides raises a question about the treatment of a putative class member, and to learn of cases involving the detention or imminent removal of a class member. In particular, Petitioners seek:

1) Adding a counsel of record column to the existing reporting.

2) Reporting of stays of removal and detention determinations for putative class members.

3) Notice before the removal (including enforced departure) of a putative class member.

Without this reporting, a stay of the litigation—including of Petitioners' motion for class certification—would improperly allow the government to harm putative class members while insulating their conduct from judicial review. Thus, without this reporting, Petitioners oppose Respondents' Motion to Stay.

The relief the government requests is sweeping. Respondents' January 10, 2019 Motion to Stay proposes an *indefinite* delay of this litigation, which could continue for

"months or even years."[2]  During that time, Respondents' proposal would not only stay the current Court-ordered briefing and the parties' settlement discussions, it will grind this litigation to a halt and shield Respondents from class certification, any possibility of discovery relating to the individual petitioners' claims, and a decision on the merits of this case.   In the meantime, having obtained a stay of Petitioners' motions for class certification and class-wide relief, Respondents could detain and deport putative class members without Petitioners' or this Court's knowledge.

In response, Petitioners have proposed a modest expansion of already ongoing reporting.  As to each of these categories, Respondents have not justified their refusal to provide the information Petitioners seek.

*First*, regarding the addition of a counsel of record column in the existing reporting, Respondents suggest that this information is difficult for them to obtain.  Respondents claims of burden are overstated.  ICE may look to its own records, consult DHS databases, or simply ask the individual that is at the check-in counter who their attorney is.  If any of the individuals were detained, ICE would be required to send a notice of their custody review to any attorney that had entered an appearance.  8 C.F.R. § 241.4(d)(3).  It simply is not credible that Respondents lack a system to track whether such an appearance exists.  Indeed, earlier in this litigation, when Petitioners sought counsel-of-record information for individuals who had been detained at their I-130 interviews in January 2018, Respondents readily emailed Petitioners' counsel with the G-28 (appearance forms) in each case.  *See* Provazza Decl. Ex. A.

---

[2] Sheryl Gay Stolberg & Michael Tackett, *Trump Suggests Government Shutdown Could Last for 'Months or Even Years*,' New York Times (Jan. 4, 2019),
https://www.nytimes.com/2019/01/04/us/politics/democrats-trump-meeting-government-shutdown.html.

*Second*, regarding reporting about stay of removal decisions and detention determinations, Respondents contend that such reporting is duplicative and unreasonably burdensome.  That is incorrect.  Petitioners seek this information precisely to capture the other ways in which ICE makes decisions that impact putative class members. Respondents need not scour their records for this information.  Having represented that they account for the provisional waiver process at all relevant decision points, Respondents need only record the cases in which they are accounting for it as they do so.  *See* Dkt. No. 158-1 (Declaration of Todd M. Lyons, affirming that "The Boston Field Office will continue to consider the equities of an alien's case when determining whether to arrest, detain, or effectuate the removal of aliens with final orders of removal, including considering whether an alien has any pending petitions or applications for immigration benefits such as a Form I-130, Petition for Alien Relative, Form I-212, Application for Permission to Reapply for Admission, and Form I-601A, Application for Provisional Unlawful Presence Waiver.").

With respect to Respondents' offer to provide information about stay applications for individuals checking in, above, that information would fail to cover putative class members who do not have a check-in that month, but have submitted a stay of removal application that will shape how they may be treated at a future check-in.  Nevertheless, Petitioners would accept this compromise as a substitute for separate monthly reporting regarding stay of removal determinations if the information was clearly provided in a separate column in the existing reporting, and included the status of the individual's most recent application for a stay of removal (even if, for example, that application was denied 14 months ago).

As to detention determinations, reporting about check-ins does not permit Petitioners' counsel to learn about putative class members who may be detained. This Court has already heard testimony about the significant harms these individuals and their families may be suffering. *See* Aug. 21, 2018 Tr. at 15-48. Given such harms, making a record of cases in which I-130, I-212, and I-601A applications are taken into consideration—at the moment that an officer makes the decision in which he accounts for these applications—is a minimal burden.

***Third***, Respondents assert that they cannot give counsel prior notice of removal determinations because of privacy considerations, practical concerns, and because such notice is unnecessary.[3] Contrary to their claims about privacy concerns—which lack any support—Respondents earlier in this case provided the names of individuals it had detained at I-130 interviews in open court. May 23, 2018 Tr. at 22. Because Petitioners do not seek precise travel date information, Respondents may notify Petitioners of individuals they are seeking to remove before a precise travel plan is in place. And if Respondents continue to adequately consider the provisional waiver process—as they contend they are—any such notices will be few and far between.

The reporting Petitioners seek is thus a reasonable compromise between the government's desire to preserve their self-limited resources while ensuring that Petitioners and putative class members have minimal safeguards against potentially unlawful actions.

Without such safeguards, Respondents cannot demonstrate that good cause exists to stay the upcoming filing deadlines. Fed. R. Civ. P. 6(b)(1). It is undisputed that ICE

---

[3] Petitioners would not oppose having any reporting subject to the existing protective order (Dkt. 119).

remains open and continues to take enforcement actions.[4]  It has not stipulated that it will refrain from taking such action against Petitioners or putative class members as a consequence of the shutdown.  Respondents cannot be discharged of their obligation to litigate this case, and therefore shield their actions from judicial scrutiny, because of an internal dispute over funding.  *See, e.g., Colon-Morciglio v. United States*, No. 17-02312-WGY (D.P.R. Jan. 2, 2019) (Dkt. No. 20) (lack of appropriations does not constitute "good cause" to stay proceedings) (Young, J. ); *United States v. Baltimore Police Dep't*, No. JKB-17-0099 (D. Md. Dec. 26, 2018) (Dkt. No. 173) ("Federal Government's attorneys . . . are required to find the means by which to continue their participation in this litigation on a timely basis regardless of their client's internal issues.").  If Respondents can find the funding necessary to continue taking potentially unlawful actions, they can find the funding necessary to defend those actions in this Court.

Petitioners thus oppose an indefinite stay of this litigation absent the additional reporting proposed above.  Without such reporting, because Respondents have not demonstrated good cause to indefinitely stay future filing deadlines and the continued litigation of this case is essential to protect Petitioners' rights, Respondents' Motion to Stay should be denied.

Respectfully submitted this 15th day of January, 2019.

| *Counsel for the Respondents* | *Counsel for the Petitioners* |
|---|---|
| JOSEPH H. HUNT | /s/ Shirley Cantin |
| Assistant Attorney General | Kevin S. Prussia (BBO # 666813) |
| | Shirley X. Li Cantin (BBO # 675377) |

---

[4] *See* Lisa Riordan Seville & Hannah Rappleye, *Shutdown nearly shuts U.S. immigration courts, but deportations continue*, NBC News (Jan. 5, 2019, 7:07 AM), https://www.nbcnews.com/politics/immigration/shutdown-nearly-shuts-u-s-immigration-courts-deportations-continue-n954826; Franklin Foer, *The Shutdown Makes Trump's Priorities Painfully Clear*, The Atlantic (Jan. 8, 2019), https://www.theatlantic.com/ideas/archive/2019/01/despite-shutdown-trump-pays-deport-mauritanians/579778/.

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

J. MAX WEINTRAUB
Senior Litigation Counsel

/s/ Mary L. Larakers
MARY L. LARAKERS
(Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

EVE A. PIEMONTE, BBO No.
628883
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
Eve.Piemonte@usdoj.gov

Michaela P. Sewall (BBO # 683182)
Jonathan A. Cox (BBO # 687810)
Stephen Provazza (BBO # 691159)
Colleen M. McCullough (BBO # 696455)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
kevin.prussia@wilmerhale.com
shirley.cantin@wilmerhale.com
michaela.sewall@wilmerhale.com
jonathan.cox@wilmerhale.com
stephen.provazza@wilmerhale.com

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

10