**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

LILIAN PAHOLA CALDERON JIMENEZ
and LUIS GORDILLO, et al.,

             Plaintiffs-Petitioners,

    v.

KIRSTJEN M. NIELSEN, et al.,

          Defendants-Respondents.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 1:18-cv-10225-MLW

## RESPONDENTS' MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND OPPOSITION TO PETITIONERS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

I.     This Court lacks subject-matter jurisdiction over the claims of some putative class members. ..................................................................................................................3

II.    Not all putative class members have a cognizable liberty interests, and, even if they did, the disparity of procedural protections renders class treatment inapplicable. ...................4

     A.   The Supreme Court has clarified that analysis of due process interests requires a strict analysis based on the language of the statute and regulations. ......................5

     B.   Putative class members who are not yet eligible to apply for a provisional waiver do not have a cognizable due process interest. ....................................................7

     C.   Other facts may prevent putative class members from establishing a cognizable due process interest. ...............................................................................................9

     D.   The procedures attendant on any liberty interest would not be common among putative class members. .....................................................................................10

III.   The Court should dismiss Petitioners' removal-based statutory claim, equal protection claim, APA claim, and substative due process claim under Fed. R. Civ. 12(b)(6). ..........11

     A.   Petitioners fail to state a claim under the INA......................................................11

     B.   Respondents' interpretation of their own regulations are reasonable and entitled to deference. ..........................................................................................................13

     C.   Petitioners Fail to State an Equal Protection Claim. ............................................15

     D.   Petitioners fail to state a claim for which the Court could grant the relief they request under the APA. ......................................................................................17

     E.   Peitioners fail to state a substantive due process claim upon which the Court could grant the relief they request. ..............................................................................22

CONCLUSION....................................................................................................................23

CERTIFICATE OF SERVICE ............................................................................................24

## **TABLE OF AUTHORITIES**

*Accardi v. Shaughnessy,*
   347 U.S. 260 (1954)............................................................................................. 6, 8

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997).................................................................................................. 3

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
   526 U.S. 40 (1999)............................................................................................... 6, 8

*Arevalo v. Ashcroft,*
   344 F.3d 1 (1st Cir. 2003).......................................................................................... 7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).......................................................................................... 16, 17

*Auer v. Robbins*,
   519 U.S. 452 (1997)................................................................................................. 15

*Ball Mem'l Hosp. v. Leavitt,*
   2006 WL 2714920 (D.D.C. Sept. 22, 2006) ........................................................... 21

*Bassidji v. Goe*,
   413 F.3d 928 (9th Cir. 2005) ................................................................................... 17

*Benjamin v. Fraser,*
   264 F.3d 175 (2d. Cir. 2001)...................................................................................... 6

*Board of Regents of State Colleges v. Roth,*
   408 U.S. 564 (1972).................................................................................................... 6

*Candra v. Cronen,*
   --- F.Supp.3d ---, 2019 WL 764752,(D. Mass. February 21, 2019) ................... 4, 18

*Ceta v. Mukasey,*
   535 F.3d 639 (7th Cir. 2008) ................................................................................... 14

*Chase Bank USA, N.A. v. McCoy,*
   562 U.S. ——, 131 S.Ct. 871 (2011).................................................................... 15

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984).......................................................................................... 14, 15

*City & Cty. of San Francisco v. Trump,*
   897 F.3d 1225 (9th Cir. 2018) ................................................................................. 17

*Clark v. Martinez,*
   543 U.S. 371 (2005)................................................................................................. 13

*Colon v. Carter,*
   633 F.2d 964 .......................................................................................................... 20

*Dantran, Inc. v. U.S. Dept. of Labor,*
   171 F.3d 58 (1999).................................................................................................. 15

*Decker v. Nw. Envtl. Def. Ctr.,*
   568 U.S. 597 (2013)................................................................................................. 15

*Devitri v. Cronen,*
   290 F.Supp.3d 86 (D. Mass. 2017) ............................................................................. 4

*Enwonwu v. Gonzales,*
   438 F.3d 22 (1st Cir. 2006).................................................................................... 3, 4

*F.C.C. v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009)........................................................................................... 21, 22

*Goncalves v. Reno,*
   144 F.3d 110 (1st Cir. 1998)..................................................................................... 7

*Gonzalez-Fuentes v. Molina,*
   607 F.3d 864 (1st Cir. 2010)..................................................................................... 5

*Goss v. Lopez,*
   419 U.S. 565 (1975)................................................................................................. 10

*Hamama v. Adducci,*
   912 F.3d 869 (6th Cir. 2018) .................................................................................... 4

*Heckler v. Chaney,*
   470 U.S. 821 (1985)................................................................................................. 20

*I.N.S. v. St. Cyr,*
   533 U.S. 289 (2001)................................................................................................... 8

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018).................................................................................... 9, 12, 13

*Jimenez v. Cronen,*
   334 F. Supp. 3d 370 (D. Mass. 2018) .......................................................... 3, 10, 18

*Kandamar v. Gonzales,*
    464 F.3d 65 (1st Cir. 2006) ................................................................. 17

*Kentucky Dept. of Corrections,*
    490 U.S. 454 (1989) ........................................................................... 5

*Kerry v. Din,*
    135 S. Ct. 2128 (2015) ....................................................................... 22

*Landgraf v. USI Film Products,*
    511 U.S. 244 (1994) ........................................................................... 8

*Luna v. Holder,*
    637 F.3d 85 (2d Cir. 2011) .................................................................. 4

*Ma v. Holder,*
    860 F.Supp.2d 1048 (N.D. Cal. 2012) ................................................. 19

*Martel v. Fridovich,*
    14 F.3d 1 (1st Cir. 1993) ..................................................................... 7

*Matthews v. Eldridge,*
    424 U.S. 319 (1976) ........................................................................... 10

*McCuin v. Secretary of Health and Human Services,*
    817 F.2d 161 (1st Cir. 1987) ............................................................... 15

*Mehilli v. Gonzales,*
    433 F.3d 86 (1st Cir. 2005) ................................................................. 4

Nw. Forest Res. Council v. Glickman,
    82 F.3d 825 (9th Cir. 1996) ................................................................ 17

*Payne-Barahona v. Gonzales,*
    474 F.3d 1 (1st Cir. 2007) ................................................................... 22

*Perez v. Mortg. Bankers Ass'n,*
    135 S. Ct. 1199 (2015) ....................................................................... 21

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*
    505 U.S. 833 (1992) ........................................................................... 11

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
    (AADC), 525 U.S. 471 (1999) ................................................. 15, 17, 18, 19

*Reno v. Flores,*
  507 U.S. 292 (1993) ........................................................................................... 22

*Sandin v. Connor,*
  515 U.S. 472 (1995) ............................................................................................. 6

*Santana v. Holder,*
  731 F.3d 50 (1st Cir. 2013) ................................................................................. 6

*Secretary of Labor v. Twentymile Coal Co.,*
  456 F.3d 151 (D.C. Cir. 2006) ........................................................................... 19

*Silverman v. Rogers,*
  437 F.2d 102 (1st Cir. 1970) ............................................................................. 22

*Smith v. I.N.S.,*
  684 F. Supp. 1113 (D. Mass. 1988) ................................................................... 23

*Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield By & Through Rainville,*
  719 F. Supp. 75 (D. R.I. 1989) .......................................................................... 22

*Tamenut v. Mukasey,*
  521 F.3d 1000 (8th Cir. 2008) ........................................................................... 19

*Tejada v. Cabral,*
  424 F.Supp.2d 296 (D. Mass. 2006) .................................................................. 19

*Town of Castle Rock, Colo. v. Gonzales,*
  545 U.S. 748 (2005) .................................................................................... 5, 6, 8

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) ................................................................................. 16, 17

*Udall v. Tallman,*
  380 U.S. 1 (1965) ............................................................................................... 15

*Valdez v. Rosenbaum,*
  302 F.3d 1039 (9th Cir. 2002) ............................................................................. 6

*Wayte v. United States,*
  470 U.S. 598 (1985) ........................................................................................... 17

*Webster v. Doe,*
  486 U.S. 592 (1988) ........................................................................................... 19

# STATUTES

5 U.S.C. § 551(4) ................................................................................................ 21

8 U.S.C. § 551(5) ................................................................................................ 21

5 U.S.C. § 553 ......................................................................................... 2, 21, 23

5 U.S.C. § 553(b)(A) ........................................................................................... 21

5 U.S.C. § 701(a)(2) ............................................................................................ 19

5 U.S.C. § 701(a)(1) ............................................................................................ 18

8 U.S.C. § 1182(a)(9)(A)(iii) ............................................................................... 13

8 U.S.C. § 1182(c) ................................................................................................. 7

8 U.S.C. § 1231 .................................................................................................... 18

8 U.S.C. § 1252(a)(2)(D) ............................................................................... 1, 3, 4

8 U.S.C. § 1252(g) ................................................................................... 1, passim

# FEDERAL RULES OF CIVIL PROCEDURES

1st Cir. R. 18 ......................................................................................................... 4

Fed. R. Civ. P. 82 .................................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ................................................................................. 13, 23

Fed. R. Civ. P. 23 .................................................................................................. 3

# REGULATIONS

78 Fed. Reg. 536 ................................................................................................. 14

81 Fed. Reg. 2 ................................................................................................. 8, 20

8 C.F.R. § 212.2(j) .............................................................................................. 13

8 C.F.R. § 212.7(e) .............................................................................................. 13

8 C.F.R. § 212.7(e)(4) ........................................................................................... 2

8 C.F.R. § 212.7(e)(4)(iv) ............................................................................................................ 8

**INTRODUCTION**

On December 7, 2019, this Court ordered the parties to brief issues relevant to Petitioners' Motion for Class Certification (ECF No. 46) and Respondents' Motion to Dismiss (ECF No. 40), as well as any "other issues that should be decided prior to briefing and argument concerning class certification." ECF No. 193.

As a threshold matter, this Court must consider whether it has subject-matter jurisdiction over each putative class members' claims. Petitioners' proposed class includes aliens who were married to U.S. Citizens and ordered removed *after* DHS expanded the provisional waiver on August 29, 2016. Because the claims these individuals present are questions of law and constitutional claims, they may present their claims via a petition for review with the court of appeals. 8 U.S.C. § 1252(a)(2)(D) A petition for review is an adequate substitute for habeas for these individuals, and the Suspension Clause is not implicated. Accordingly, this Court lacks subject-matter jurisdiction over these putative class members' claims. *See* 8 U.S.C. § 1252(g), (b)(9), (a)(2)(D).

During the December 6, 2018 hearing, this Court inquired whether the statutes and regulations governing the Form I-212 and Form I-130 *independently* create a due process right to apply for them from within the United States. Petitioners have already conceded that the statutes and regulations governing these two applications do not *independently* create a due process right to apply from within the United States. ECF No. 218 at 4. Instead, Petitioners rely solely on the provisional waiver regulations to support their argument that Petitioners have a due process right to file each application from *within* the United States. In doing so, Petitioners have tied the fate of their claims to the statutes and regulations governing the provisional unlawful presence waiver. This Court, therefore, must only decide whether the provisional unlawful presence waiver

regulations create a liberty interest that entitles *all* putative class members to more process than Respondents already afford them. As Respondents urged at the December 6, 2019 hearing, the answer is no. Any due process right created by the provisional waiver regulations is limited to aliens who are eligible to apply for the relief, because an alien does not have a legitimate expectation of entitlement to apply for the relief until he meets the basic eligibility requirements. *See* 8 C.F.R. § 212.7(e)(4). Petitioners' proposed class fails because it includes aliens who are ineligible for a provisional waiver and therefore, do not have a due process interest in applying for a provisional waiver.

Determining whether Petitioners have stated claims under the INA and Applicable Regulations (Count 1), substantive component of the Due Process Clause (Count 2),  Equal Protection Clause of the Fifth Amendment (Count 3), and Administrative Procedure Act, 5 U.S.C. §§ 553, 706(2)(A) (Count 4), is imperative at this stage in the litigation. The justiciability of these claims will determine the scope of any discovery as well as the scope of any class.

Plaintiffs fail to state a claim under the INA and applicable regulations because the statutes and regulations governing the provisional unlawful presence regulations cannot be plausibly interpreted to require the relief Petitioners seek. Petitioners' Equal Protection claim is likewise without merit because Petitioners fail to allege any facts that Executive Order 13768, which prohibits "exempt[ing] classes or categories of removable aliens from potential enforcement," classifies aliens on the basis of race or nationality. Additionally, Petitioners have no fundamental right to family unity in light of the alien Petitioners' final orders of removal and, accordingly, cannot state a claim under the substantive component of the Due Process clause. Finally, Petitioners' APA claim must also fail because, first, it challenges a purely discretionary decision for which no review is allowed under the APA, and, second, Respondents do not engage in rule-

making when they remove aliens pursuing a provisional waiver.  For those reasons, this Court should completely dismiss Count 1, 3, 4, and Petitioners' substantive due process claim under Count 2.

## ARGUMENT

**I.      This Court lacks subject-matter jurisdiction over the claims of some putative class members.**

This Court previously recognized that 8 U.S.C. § 1252(g) applied to Petitioners' claims. *Jimenez v. Cronen,* 334 F. Supp. 3d 370, 385 (D. Mass. 2018). In so holding, however, the Court further found that allowing that section to operate as applied in this situation would violate the Suspension Clause. *Id.* This Court explained that in order for the habeas substitute to be adequate under the Suspension Clause, the substitute must allow for "a stay of removal until DHS considers [the alien's] pursuit of the provisional waivers authorized by statute and DHS regulations." *Id.* Many putative class members have access to such an adequate remedy and, therefore, 8 U.S.C. § 1252(g) operates to prevent this Court from exercising subject-matter jurisdiction over their claims. As a result, Petitioners' proposed class fails to satisfy the requirements under Federal Rule of Civil Procedure 23. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613 (1997) (noting that the Rule 23 requirements must be interpreted in keeping with jurisdictional constraints); Fed. R. Civ. P. 82 ("rules shall not be construed to extend . . . the [subject-matter] jurisdiction of the United States district courts").

The REAL ID Act "eliminated habeas review of most types of immigration related claims." *Enwonwu v. Gonzales,* 438 F.3d 22, 33 (1st Cir. 2006). However, in doing so, Congress granted courts of appeals "full review of 'constitutional claims or questions of law.'" *Id.* (citing 8 U.S.C. § 1252(a)(2)(D)). When a case presents pure questions of law and colorable constitutional claims, the INA "encompasses at least the same review and the same relief as to [aliens] as were available

under prior habeas law." *Id.*: *see also Mehilli v. Gonzales,* 433 F.3d 86, 93-94 (1st Cir. 2005) (describing 8 U.S.C. § 1252(a)(2)(D) as a jurisdictional grant and an exception to other jurisdiction stripping provisions, allowing courts of appeals to review questions of law and colorable constitutional claims).

Petitioners' proposed class includes aliens who were married to U.S. citizens and ordered removed *after* DHS expanded the provisional waiver on August 29, 2016. *See* Compl., ECF No. 1 at ¶ 104. Because the claims these individuals present are questions of law and constitutional claims, they may *only* present their claims via a petition for review with the court of appeals. *See Enwonwu,* 438 F.3d at 33; *Mehilli,* 433 F.3d at 93-94. Moreover, in connection with their petition for review, they may move the First Circuit for a stay of removal. 1st Cir. R. 18. These individuals, therefore, have immediate and direct access to judicial review of their claims. Accordingly, Petitioners have an adequate substitute for habeas, such that the Suspension Clause is not implicated. *See Enwonwu,* 438 F.3d at 33; *Hamama v. Adducci,* 912 F.3d 869, 876 (6th Cir. 2018); *Luna v. Holder,* 637 F.3d 85, 97 (2d Cir. 2011); *Candra v. Cronen,* --- F.Supp.3d ---, 2019 WL 764752,(D. Mass. February 21, 2019) (distinguishing *Devitri v. Cronen,* 290 F.Supp.3d 86 (D. Mass. 2017)). Because this proposed class includes aliens who cannot independently establish subject-matter jurisdiction in this Court, Petitioners' proposed class fails to satisfy Rule 23.

## II. Not all putative class members have a cognizable liberty interest, and, even if they did, the disparity of procedural protections renders class treatment inapplicable.

The putative members of Petitioners' proposed class who are not yet eligible to apply for a provisional waiver lack any cognizable liberty interest and, even if they did, they are not entitled to the same procedures as the putative class members who have applied for a provisional waiver. Procedural due process claims are examined in two steps: the first step is to determine whether

there is a liberty interest which has been interfered with, and "the second step examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Gonzalez-Fuentes v. Molina,* 607 F.3d 864, 886 (1st Cir. 2010).

Petitioners, including every member of the putative class, have the burden to show that they each have a liberty interest in applying for a provisional waiver and that the procedures attendant to their removal were not constitutionally sufficient. *Id.* Petitioners cannot meet this burden because many putative class members lack a liberty interest in applying for a provisional unlawful presence waiver, as they are ineligible to apply. And, even if these putative class members had a liberty interest, they are entitled to different procedures that do not align with the relief Petitioners' seek.

### A. The Supreme Court has clarified that analysis of due process interests requires a strict analysis based on the language of the statute and regulations.

The Due Process Clause has two variants: substantive due process and procedural due process. Rights created from statutes and regulations implicate procedural due process. Procedural due process rights are further divided into liberty interests and property interests, but both require that a plaintiff establish "a legitimate claim of entitlement" to the relief sought. *Kentucky Dept. of Corrections,* 490 U.S. 454, 460 (1989); *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 749 (2005). To determine whether there is a legitimate claim of such entitlement, courts must "examine closely the language of the relevant statutes and regulations." *Id.* at 461. The Supreme Court has required that a regulation "contain explicitly mandatory language" to create an expectation of entitlement. *Id.* at 463; *see also Town of Castle Rock, Colo.* 545 U.S. at 749 (examining whether there was mandatory language in the state law that conferred a due process

interest but holding "even if the statute could be said to make enforcement 'mandatory,' that would not necessarily mean that respondent has an entitlement").[1]

The Supreme Court has consistently applied this rationale in cases concerning the creation of due process interests. *See, e.g., Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 578 (1972) (holding that because an employment contract's language did not require or even provide for contract renewal, it created no due process interest in re-employment for the following year); *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 60-61 (1999) (holding that a law requiring payment of "reasonable and necessary medical treatment" did not create a due process right for payment of *all* medical treatment). In cases where a plaintiff has claimed a due process interest in a particular benefit, the Supreme Court has held that due process interests arise from a benefit only when the plaintiff has met the statutory requirements of that benefit. *Sullivan,* 526 U.S. at 60-61. Indeed, the Supreme Court has clarified that the "decisive fact" determining the due process interest is whether a regulation, for instance, *required* the relevant Government component to exercise its discretion. *Accardi v. Shaughnessy,* 347 U.S. 260, 265, 268 (1954).

The First Circuit has followed this approach in its line of retroactivity cases. In each case where the First Circuit has found a due process interest, as the Supreme Court found in *Accardi,* the regulation at issue required *both* that the Government adjudicate the application for relief *and* that the alien had already applied for the specific relief sought. *See e.g., Santana v. Holder,* 731

---

[1] Petitioners suggest, in a footnote, that the Supreme Court refused to apply the mandatory language methodology in *Sandin v. Connor,* 515 U.S. 472, 483 (1995). ECF No. 218 at n.1. However, the Supreme Court has continued to view mandatory language as a hallmark that an individual has a legitimate claim of entitlement and consequently, a due process interest. *Town of Castle Rock, Colo.* 545 U.S. at 749. Courts have also interpreted *Sandin's* analysis narrowly and have refused to apply *Sandin's* methodology outside of the narrow facts presented in *Sandin.* *Valdez v. Rosenbaum,* 302 F.3d 1039, 1044 n.3 (9th Cir. 2002) (collecting cases); *Benjamin v. Fraser,* 264 F.3d 175, 188-89 (2d. Cir. 2001) (collecting cases).

F.3d 50, 60 (1st Cir. 2013) (holding that the post-departure bar regulation conflicts with the motion to reopen statute but declining to address, as not presented by the case's facts, whether the alien must timely file the motion to reopen for a right to exist); *Arevalo v. Ashcroft,* 344 F.3d 1, 15 (1st Cir. 2003) (declining to apply statutory relief repeal retroactively because "[d]iscarding her application now would deprive her both of a right that she once had and of the reasonable expectation that she would have had the opportunity to convince the Attorney General to grant her relief"); *Goncalves v. Reno,* 144 F.3d 110 (1st Cir. 1998) (holding that plaintiff's application for relief under former 8 U.S.C. § 1182(c) must be adjudicated where he had been statutorily eligible to and *did apply* for the relief prior to its statutory repeal and where the presumption against statutory retroactivity applied). Even outside the immigration context, the First Circuit has held that an individual who does not meet the eligibility requirements for a particular benefit does not have any liberty interest in the benefit. *Martel v. Fridovich,* 14 F.3d 1, 2 (1st Cir. 1993).

### B. Putative class members who are not yet eligible to apply for a provisional waiver do not have a cognizable due process interest.

Petitioners do not argue — for good reason — that the statutes and regulations governing the Form I-130 and Form I-212 create a due process right. Nor do Petitioners argue that a due process right is created by the unlawful presence waiver *statute*. Therefore, this Court must only decide whether the provisional waiver regulations create a due process right for *all* putative class members. The answer must be that it does not, because Petitioners simply cannot have a "legitimate claim of entitlement" to apply for a provisional unlawful presence waiver until they are eligible to apply for that waiver. Granting a due process right to aliens who are not yet eligible to apply — due to a lack of an approved Form I-212 — would be inconsistent with Supreme Court precedent determining when a statute or regulation creates a "legitimate claim of entitlement." *See*

*e.g., Town of Castle Rock, Colo.* 545 U.S. at 749; *Sullivan,* 526 U.S. at 60-61; *Accardi,* 347 U.S. at 268.

DHS made clear when adopting the regulations that it did not intend to curtail ICE's authority to execute removal orders. 81 Fed. Reg. 2, 536 (January 3, 2013) ("[T]he filing or approval of a provisional unlawful presence waiver will *not . . .* protect an alien from being placed in removal proceedings or removed from the United States in accordance with current DHS policies governing initiation of removal proceedings and the use of prosecutorial discretion.") (emphasis in original).[2] Conversely, therefore, any notion that the regulations anticipate some entitlement to apply must be limited by that clarification. In fact, the comments expressly disclaim any "cognizable due process interest *in access to* or eligibility for a discretionary, provisional unlawful presence waiver of inadmissibility." *Id.* at 555 (emphasis added). Moreover, the language of the regulation expressly limits eligibility to aliens who have an *approved* Form I-212, Application for Permission to Reapply for Admission. 8 C.F.R. § 212.7(e)(4)(iv).

Petitioners' analogize their situation to retroactivity cases. *See* ECF No. 218 at 15-16. This effort, however, supports – rather than disproves – Respondents' argument.  In order for there to be a retroactivity problem — and consequently a due process interest — an individual must have applied for the relief sought before the government action eliminating the relief occurred.[3] *See e.g., I.N.S. v. St. Cyr,* 533 U.S. 289 (2001). Petitioners point to no case where a court found a due process interest existed where the plaintiff was ineligible for the ultimate relief sought, let alone

---

[2] This same phrase is repeated later in the comments. 81 Fed. Reg. 2, 555.

[3] Respondents do not concede that removing petitioners in the middle of applying for a provisional waiver would even constitute a change in the law sufficient to trigger a retroactivity analysis because the provisional waiver regulations made clear from the beginning that an application for or approval of a provisional waiver would not protect an alien from removal. 81 Fed. Reg. 2, 536; *see generally Landgraf v. USI Film Products,* 511 U.S. 244 (1994).

where the regulation governing the relief expressly disclaimed any right to apply for the relief itself. *See* ECF No. 218 at 15-16. Even applying the logic in the cases Petitioners cite, therefore, putative class members who are not yet eligible to apply for a provisional waiver lack a liberty interest. Accordingly, this Court should hold that only aliens with approved Form I-212s have a due process interest in applying for a provisional unlawful presence waiver.

### C. Other facts may prevent putative class members from establishing a cognizable due process interest.

Whether an individual has a liberty or property interest in applying for a certain form of relief is highly dependent on the facts of each individual's case. *See Jennings v. Rodriguez,* 138 S. Ct. 830, 852 (2018). Even if this Court declined to limit the due process interest to aliens with an approved Form I-212, there are other reasons why putative class members may not have a liberty interest in applying for a provisional waiver.  Chief among those reasons would be if an alien had a criminal history or other negative factors in one's background that would prevent the individual from being able to establish that he or she is deserving of the favorable exercise of discretion required for a Form I-212 and provisional unlawful presence waiver. *See* 8 U.S.C. § 1182(a)(9)(A)(ii), (a)(9)(B)(v). DHS, an immigration judge, the Board of Immigration Appeals, or even a circuit court may have already denied some putative class members similar immigration relief on discretionary grounds, further illustrating the alien's inability to obtain an approved Form I-212 or a provisional waiver. Therefore, even if this Court held that a due process interest vests at the time an alien has a pending or approved Form I-130, some putative class members' criminal history or other negative discretionary background, such as gang membership or evidence of previous immigration fraud, would prevent them from having a legitimate expectation of entitlement to *apply* for the provisional waiver because of the high degree of certainty that DHS will deny their Form I-212 and provisional unlawful presence waiver. *C.f. Matias v. Sessions*, 871

F.3d 65, 72 (1ˢᵗ Cir. 2017) (relief that is purely discretionary "does not create a cognizable liberty interest"), citing *Jupiter v. Ashcroft*, 396 F.3d 487, 492 (1st Cir. 2005). *See also Chun Xin Chi v. Holder*, 606 F.3d 6, 10 (1st Cir. 2010); *Naeem v. Gonzales*, 469 F.3d 33, 39 (1st Cir. 2006).

**D.  The procedures attendant on any liberty interest would not be common among putative class members.**

To avoid needless briefing on the commonality of relief amongst the class, this Court should declare and define the procedures attendant on any due process interest implicated. This Court has found that the liberty interest in applying for a provisional waiver demands that "DHS, acting through ICE, [must] consider an eligible alien's application for a provisional unlawful presence waiver before deciding to remove him or her from the United States." *Jimenez,* 334 F. Supp. 3d at 387. This Court has further explained: "I didn't hold that ICE couldn't remove them. [The pursuit of provisional waivers] was just one factor to be considered . . . it would still be up to ICE to decide on an individual basis whether the person should be allowed to stay in the United States or be removed." Transcript of December 6, 2018, Hearing at 13. Respondents recognize that this Court has found that DHS's consideration of an alien's ability to pursue a provisional waiver is the appropriate procedure attendant on that due process interest. *Jimenez,* at 334 F.Supp.3d at 390. Petitioners, however, are seeking much more than consideration and much more than the minimum protections of due process. ECF No. 184 at 9 n.6.; ECF No. 49, Motion for Temporary Restraining Order and Preliminary Injunctive Relief; Transcript of August 20, 2018 Hearing at 117, 128 (describing the interim relief Petitioners seek); Transcript of December 6, 2018 Hearing at 32-33.

Petitioners' proposed class fails to meet the Rule 23 commonality requirement because there is no iteration of the proposed class where every member of the class would be entitled to the relief Petitioners seek. *See Matthews v. Eldridge,* 424 U.S. 319, 321 (1976) ("Due process is

flexible and calls for such procedural protections as the particular situation demands."); *Goss v. Lopez,* 419 U.S. 565, 577 (1975) ("[T]he interpretation and application of the Due Process Clause are intensely practical matters and [] the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." (citation omitted)); *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 834 (1992) ("Rather, the adjudication of substantive due process claims may require this Court to exercise its reasoned judgment in determining the boundaries between the individual's liberty and the demands of organized society.").

There are simply too many variables among class members that must be accounted for in order to determine whether they are entitled to Petitioners' requested relief, including: (1) whether and to what extent the alien has a criminal history or other negative factors in the alien's background, (2) whether the alien has diligently pursued the applications with USCIS, (3) whether the alien has complied with prior orders of supervision and cooperated with ICE, and (4) whether the alien is a flight risk. These considerations, among others, are impossible to account for in any class definition and on any classwide basis. Accordingly, this Court should declare that any relief Petitioners seek beyond DHS's consideration is more than the minimum procedures required by due process and therefore a class may only be certified if the relief is limited to DHS's consideration.[4]

### III. This Court should dismiss Petitioners' removal-based statutory claim, equal protection claim, APA claim, and substantive due process claim under Fed. R. Civ. P. 12(b)6).

#### A. Petitioners fail to state a claim under the INA.

---

[4] Respondents do not concede that a class can be certified under Rule 23. However, given that this Court has indicated a class will eventually be certified, Respondents put forth this alternative argument.

The two waivers at issue are found in 8 U.S.C. § 1182(a)(9)(A)(ii) (consent for permission to reapply for admission) and 8 U.S.C. § 1182(a)(9)(B)(v) (unlawful presence waiver). The waiver providing consent to reapply for admission after departing the United States under a removal order, which authorizes the Form I-212, provides:

> "Clauses (i) and (ii) shall not apply to an alien seeking admission within a period if, prior to the date of the alien's reembarkation at a place outside the United States or attempt to be admitted from foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission. 8 U.S.C. § 1182(a)(9)(A)(ii).

The unlawful presence waiver, which authorizes the Form I-601 and Form I-601A, provides:

> The [government] has sole discretion to waive clause (i) in the case of an immigrant who is the spouse . . . of a United States citizen . . . if it is established to the satisfaction of the [government] that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse. . . No court shall have jurisdiction to review *a decision or action* by the [government] regarding a waiver under this clause.

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added).

Nothing in these statutes provides for a stay of removal or places any limit on ICE's authority to remove an alien who is pursuing either of these waivers. In fact, the statute governing the Form I-212 requires that a person leave the United States and the statute governing the Form I-601A is clear that no decision *or action* regarding the waiver is reviewable by any court. 8 U.S.C. § 1182(a)(9)(B)(v). Far from requiring a stay of removal, Congress clearly intended to preclude all legal challenges connected to an unlawful presence waiver by including that no *"action regarding the waiver"* is reviewable. *See* 8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). Because nothing in the text of these statutes even hints that Congress meant to mandate a stay of removal, or the other relief Petitioners seek, while an alien seeks relief under these sections, Petitioners' interpretation to the contrary is not plausible. *See Jennings v. Rodriguez,* 138 S. Ct. at 843 (holding that where nothing in the text of the statute hints at the relief sought, the plaintiff's interpretation

is not plausible). Moreover, because these statutes are only subject to one plausible interpretation, Petitioners cannot apply the canon of constitutional avoidance to support their argument that a stay of removal or other related relief is required. *Jennings,* 138 S. Ct. at 834, 843; *Clark v. Martinez,* 543 U.S. 371, 385 (2005).

Petitioners' argument conflates their claims under the INA with their due process and APA claims and ignores fundamental principles of statutory interpretation. *See* ECF No. 218 at 28, 31. To state a statutory claim, Petitioners must either show (1) that plain text of the statute can be interpreted to require the relief they seek or (2) that the statute can be plausibly interpreted to avoid a *constitutional* question. *Jennings,* 138 S. Ct. at 842 ("In the absence of more than one plausible construction, the canon [of constitutional avoidance] simply has no application."). Petitioners can show neither. Petitioners do not include any discussion of the relevant *statutory* provisions let alone identify what language in the statute can be plausibly interpreted to require the requested relief. Therefore, Petitioners have failed to state a claim under the INA and applicable regulations, and the Court should dismiss count 1 under Federal Rule of Civil Procedure 12(b)(6).

### B. Respondents' interpretation of their own regulations are reasonable and entitled to deference.

Removing Petitioners while they pursue a provisional unlawful presence waiver would not violate the governing regulations. As a threshold matter, some putative class members are not even eligible to apply for a provisional unlawful presence waiver because they have not yet received consent to reapply for admission via an approved Form I-212. *See* 8 C.F.R. § 212.7(e)(4)(iv) ("[A]n alien is ineligible for a provisional unlawful presence waiver" if "[t]he alien is subject to an administratively final order of removal, . . . unless the alien has already filed and USCIS has already granted, before the alien applies for a provisional unlawful presence waiver under 8 CFR 212.7(e), an application for consent to reapply for admission under [8 U.S.C. § 1182(a)(9)(A)(iii)]

and 8 CFR 212.2(j).").  Regardless, DHS does not violate the provisional waiver regulations when it removes aliens who have filed an application for a provisional unlawful presence waiver, let alone aliens who are not yet eligible to apply. DHS has cautioned that "the *filing or approval* of a provisional unlawful presence waiver application will not . . . protect an alien from being placed in removal proceedings or removed from the United States . . . ."  2013 Final Rule, 78 Fed. Reg. 536, 536; *id.* at 555 (same).

Petitioners' reliance on *Ceta v. Mukasey,* 535 F.3d 639 (7th Cir. 2008) ignores key distinctions between the regulation at issue in *Ceta* and the provisional waiver regulations. ECF No. 218 at 25. Highlighting the regulation's language, the *Ceta* court noted that "it will ordinarily be appropriate for an immigration judge to exercise his or her discretion to favorably grant a continuance" in order for an alien to pursue relief.  *Id.* at 647. No such protection exists in the provisional waiver regulations.  Rather, the provisional waiver regulations expressly *disclaim* that the filing or approval of a provisional waiver will protect an alien from removal. 2013 Final Rule, 78 Fed. Reg. 536, 536; *id.* at 555 (same) ("the *filing or approval* of a provisional unlawful presence waiver application will not . . . protect an alien from being placed in removal proceedings or removed from the United States . . . ."). Additionally, removing an alien would not "amount[] to a denial of his *statutory* opportunity to apply" for a waiver of unlawful presence because the statutory relief here, a waiver of inadmissibility based upon an alien's unlawful presence, is available regardless of the alien's location inside the United States or abroad. *See Ceta*, 535 F.3d at 649*;* 8 U.S.C. § 1182(a)(9)(B)(v).

Because Petitioners fail to identify any language in the regulation that *requires* the relief they seek, they can only show, at best, that the regulations are ambiguous (although Respondents do not concede that point). To the extent the Court determines that the Form I-212 and Form I-

14

601A regulations are ambiguous, the Court must defer to DHS's interpretation, which is reinforced by the commentary in the Federal Register. *See Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984). An agency's interpretation of its own regulations "is to be given considerable weight." *McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 168 (1st Cir. 1987). The Supreme Court has clarified that "an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail." *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 613 (2013). Finally, when interpreting a regulation, all words and phrases should be given effect. *Dantran, Inc. v. U.S. Dept. of Labor,* 171 F.3d 58, 63 (1999).

Here, DHS's interpretation of the regulations is reasonable and the Court "must therefore respect it." *See Udall*, 380 U.S. 1, 4 (1965). Even if Petitioners' interpretation of the regulations were reasonable – which Respondents assert it is not – this Court could only disregard DHS's interpretation if it was "plainly erroneous or inconsistent" with the regulations. *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. ——, ——, 131 S.Ct. 871, 880 (2011) (quoting *Auer*, 519 U.S. 452, 461 (1997)). As shown above, DHS's interpretation is not "plainly erroneous or inconsistent" with the regulations, nor is it a post-hoc litigating position; rather, it is harmonious with the regulations' text and constitutes the well-reasoned interpretation of the agency. Accordingly, this Court should defer to DHS's interpretation of the regulations — *i.e.*, that the regulations do *not* require that Petitioners removal' be stayed. *See Chevron,* 467 U.S. at 843; *Decker*, 568 U.S. at 613.

### C.  Petitioners Fail to State an Equal Protection Claim.

In Count 3, Petitioners allege that Executive Order ("EO") 13768 and Respondents' actions taken to execute final orders of removal are "motivated by racial animus and animus based on national origin." ECF No. 1, at ¶ 122. As a threshold matter, this claim is nothing more than a

selective enforcement claim, which the Supreme Court has been reticent to review, especially in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 491 (1999) (noting that the concerns in reviewing a selective enforcement claim are "greatly magnified in the deportation context").

Regardless, Petitioners fail to state an equal protection claim. Although the Court must accept as true all well-pleaded factual allegations in the complaint, the Court need not accept Petitioners' mere legal conclusions or conclusory statements. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676-78 (2009). In order to state an equal protection claim under the Fifth Amendment, Petitioners must allege that (1) they are subject to a government classification that does not meet the appropriate level of scrutiny (invidious discrimination) or (2) the government has deprived them of a fundamental right based on their membership in a particular class. *See Iqbal,* 556 U.S. at 676-77 (describing both invidious discrimination claims and claims based on a "violation of a clearly established right"). "Where the claim is invidious discrimination . . . the Petitioner must plead and prove that the defendant acted with a discriminatory purpose." *Id.* at 676.

Petitioners have not "nudged [their] claims of invidious discrimination across the line from conceivable to plausible." *Id.* at 680; *see* ECF No. 1 at ¶ 122.  Notably, Executive Order 13768 does not mention race or national origin as a basis for removal. *See* Executive Order 13768 ("We cannot faithfully execute the immigration laws of the United States if we exempt classes or categories of removable aliens from potential enforcement."). Petitioners downplay this key fact and ask that the Court read into the Executive Order an animus for "non-white people" based on President Trump's extrinsic statements. ECF No. 1 at ¶ 110, 122. However, the Supreme Court has espoused that the issue "is not whether to denounce the statements. It is instead the significance of those statements in reviewing a Presidential directive, neutral on its face, addressing a matter

16

within the core of executive responsibility. In doing so, [courts] must consider not only the statements of a particular President, but also the authority of the Presidency itself." *Trump v. Hawaii,* 138 S. Ct. 2392, 2418 (2018); *see also AADC,* 525 U.S. at 490-91 ("This broad discretion [afforded the Executive] rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." (citing *Wayte v. United States,* 470 U.S. 598, 607-08 (1985)). Further, when interpreting an Executive Order, a court must begin with the text of the order itself.  *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1238–39 (9th Cir. 2018) ("As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text," which "must be construed consistently with the Order's 'object and policy'.") (citing *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (quoting *1239 Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 830 (9th Cir. 1996)).

Here, the text of the order instructs Respondents to comply with the congressional mandate, expressed in the INA, to remove aliens who are subject to final orders of removal. Executive Order 13768 (noting that the purpose of the EO is the "enforcement of our Nation's immigration laws"). As between that "obvious alternative explanation for the arrests and the purposeful, invidious discrimination [Petitioners] ask[] us to infer, discrimination is not a plausible conclusion." *Iqbal,* 556 U.S. at 682; *see also Kandamar v. Gonzales,* 464 F.3d 65, 74 (1st Cir. 2006) ("It is worth emphasizing that the decision to remove Petitioner was based on the fact that he had overstayed his visa, but not based on his national origin."). "[I]n all cases, deportation is necessary in order to bring to an end *an ongoing violation* of United States law. The contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *AADC,* 525 U.S. at 491.

     **D.  Petitioners fail to state a claim for which the Court could grant the relief they request under the APA.**

17

Petitioners allege that ICE's discretionary decision to execute their removal orders while they pursue provisional unlawful presence waivers is arbitrary, capricious, and contrary to law. ECF No. 1 at ¶¶ 123-27. Petitioners claim is not reviewable under the APA because (1) 8 U.S.C. § 1252(g) and (b)(9) preclude APA review; (2) ICE's decision to remove Petitioners is committed to agency discretion; and (3) ICE does not engage in rulemaking by removing Petitioners. *See* 5 U.S.C. §§701(a)(1), (a)(2), 553.  Regardless, even if Petitioners' claim were reviewable under the APA, Respondents' decision to remove Petitioners applying for provisional waivers is not arbitrary, capricious, or contrary to law.

Where Congress has created a statute that expressly precludes judicial review of agency actions, the APA cannot provide the basis for a court to review agency decisions.  *See 5* U.S.C. § 701(a)(1) ("Agency actions are reviewable under the APA "except to the extent that . . . statutes preclude judicial review.").  Here, therefore, 8 U.S.C. § 1252(g) provides just such a bar to judicial review of the agency decisions Petitioners challenge in their APA claim.  This Court has held that 8 U.S.C. § 1252(g) applies to Petitioners' claims, but that the Suspension Clause preserves this Court's *habeas* jurisdiction. *Jimenez,* 334 F.Supp.3d at 383 ("Nevertheless, this court finds that § 1252(g) applies to the legal question raised by petitioners' claim). Under the Court's analysis, therefore, the Suspension Clause only applies to habeas actions, not any count that might allege violations of the APA. *Jimenez,* 334 F.Supp.3d at 384. Accordingly, § 1252(g) precludes review of Petitioners' APA claim. *See AADC*, 525 U.S. at 471; *Candra v. Cronen,* 2019 WL 764752 at * 6 ("Because seeking to stay Candra's removal order is effectively delaying or cancelling his removal order, under *Hamdi* the Candra Children's APA claim is likely within the jurisdictional bar to the extent it seeks an injunction or stay.").

Moreover, in 8 U.S.C. § 1231Congress has expressly committed to DHS's discretion the decision to execute an alien's final order of removal and decision to grant an unlawful presence waiver. This statutory delegation of discretion provides another reason why Petitioner's APA claim must fail.  *See* 5 U.S.C. § 701(a)(2) ("This chapter applies, according to the provisions thereof, except to the extent that . . . agency action is committed to agency discretion by law."). Determining whether an action is committed to agency discretion "requires careful examination of the *statute* on which the claim of agency illegality is based." *Webster v. Doe,* 486 U.S. 592, 600 (1988) (emphasis added). Courts also must consider the "nature of the administrative action at issue." *Tamenut v. Mukasey,* 521 F.3d 1000, 1003 (8th Cir. 2008) (citing *Secretary of Labor v. Twentymile Coal Co.,* 456 F.3d 151, 156 (D.C. Cir. 2006)). "The absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry, generally supports the conclusion that the "agency action is committed to agency discretion by law." *Id.*; *see also Webster*, 486 U.S. at 599-600 ("under § 701(a)(2), even when Congress has not affirmatively precluded judicial oversight, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.") (internal marks and citation omitted).

Courts have not had the occasion to specifically review whether the decision to execute a removal order falls within § 701(a)(2) due to IIRIRA's jurisdiction stripping provisions. *See* 8 U.S.C. § 1252(g). However, the Supreme Court has recognized that the decision to execute a removal order is a "discretionary determination[]" that "is particularly ill-suited to judicial review." *AADC*, 525 U.S. at 471, 490. Furthermore, a court in this district has refused to review the denial of an application for a stay of removal under the APA, which is indistinguishable from the claims presented here. *Candra,* 2019 WL 764752 at *7 ("This Court simply does not have the

19

jurisdiction to interfere with the execution of a removal order.") (citing *Tejada v. Cabral*, 424 F.Supp.2d 296, 298 (D. Mass. 2006); *Ma v. Holder*, 860 F.Supp.2d 1048, 1061 (N.D. Cal. 2012) (noting that, regardless of how plaintiffs frame their argument, seeking to "halt a final order of removal . . . strips this Court of jurisdiction")). Furthermore, Congress' intent to shelter the decision to execute a removal order from any kind of judicial review is clear. *See* 8 U.S.C. § 1252(g); *Colon v. Carter,* 633 F.2d 964, 966 (1st Cir. (1980) ("Although we will not lightly interpret a statute to confer unreviewable power . . . the ultimate analysis is always one of Congress' intent."). Accordingly, the APA does not provide the Court with the authority to review Petitioners' claims. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (holding that the FDA's decision not to enforce the Food, Drug, and Cosmetic Act against state prison officials was unreviewable under the APA).

Decisions regarding the unlawful presence waiver are likewise committed to agency discretion and therefore unreviewable pursuant § 701(a)(2). The statute precludes judicial review of any "decision or action by the [government] regarding a waiver" and it vests "sole jurisdiction" in the government to waive the ground of inadmissibility. 8 U.S.C. § 1182(a)(9)(B)(v). Because this waiver is committed to the governments' sole discretion, decisions concerning any action regarding the waiver fall within § 701(a)(2). *See Colon,* 633 F.2d at 967 (holding 701(a)(2) precluded review where the statute provided that "assistance shall be provided on such terms and conditions as the President may determine).

Petitioners' attempt to bootstrap their claim into a rule-making challenge likewise does not allow this Court to review Respondents' discretionary decision to execute his removal order. First, Petitioners fail to establish that ICE's decision to execute petitioners' removal orders changed any of the provisional waiver regulations. As discussed *supra,* the provisional unlawful presence

waiver regulations do not, by their plain terms, protect from removal aliens who have filed applications for provisional waivers, and it certainly does not shelter aliens who are ineligible to apply for a provisional waiver. *See supra* at 12-15; 81 Fed. Reg. 2, 536. By removing Petitioners, DHS is merely exercising the discretion inherent in the provisional waiver regulations — not altering the provisional unlawful presence regulation. *See, e.g., Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015) (the APA "states that unless 'notice or hearing is required by statute,' the Act's notice-and-comment requirement 'does not apply ... to interpretative rules.') (citing 5 U.S.C. § 553(b)(A). As the Supreme Court expressed, "This exemption of interpretive rules from the notice-and-comment process is categorical." *Id.*

Additionally, ICE's decision to remove an alien with a final order of removal, regardless of their ability to apply for a provisional waiver is not a "rule" under the APA, let alone a rule that would require notice-and-comment rulemaking. *See* 5 U.S.C. § 551(4), (5).[5] Nor does DHS's decision to execute valid removal orders provisional waiver applicants, and prospective applicants, constitute a *sub silentio* departure from the regulations, because there is no allegation that ICE is removing *every* individual eligible for a provisional waiver, nor do Petitioners allege that USCIS is refusing to accept provisional waiver applications. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."); *Ball Mem'l Hosp. v. Leavitt*, 2006 WL 2714920, at *7 (D.D.C. Sept. 22, 2006) (finding that the obligation to engage in notice-and-

---

[5] The word "rule" is defined by the APA as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). Rulemaking "means agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5)

comment rulemaking when an agency changes position "is implicated only when the disavowed interpretation was an authoritative one") (citations and internal quotation marks omitted).

Even if Petitioners' claim were reviewable under the APA, for the same reasons as previously discussed *supra*, Petitioner's APA claim fails on the merits. *See supra* at 12-15. The regulation's plain text does not protect putative class members from removal, and it certainly does not protect aliens who are ineligible to even apply. *Id.* The constitutional issues Petitioners proffer here not heighten the arbitrary and capricious standard of review. *F.C.C.,* 556 U.S. at 515. Moreover, as the Supreme Court has clarified, an agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." *Id.* Accordingly, the Court cannot find that Respondents' decision to execute Petitioners' removal orders is arbitrary, capricious, or contrary to law.

### E.  Petitioners fail to state a substantive due process claim upon which the Court could grant the relief they request.

The Due Process clause has two variants: substantive due process and procedural due process. *See Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield By & Through Rainville*, 719 F. Supp. 75, 80 (D. R.I. 1989), *aff'd sub nom. Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239 (1st Cir. 1990). Substantive due process forbids the government to infringe on certain "fundamental liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores,* 507 U.S. 292, 302 (1993). The spouses of the alien Petitioners allege that they have a substantive due process right to remain with their alien spouse in the United States and a right to family unity. ECF No. 1 at ¶ 118.The First Circuit, a plurality of the Supreme Court, and numerous

courts across the country, however, have rejected identical claims. *See Kerry v. Din,* 135 S. Ct. 2128, 2131 (2015); *Payne-Barahona v. Gonzales,* 474 F.3d 1, 2  n.1 (1st Cir. 2007) (collecting cases) (*Silverman v. Rogers,* 437 F.2d 102, 107 (1st Cir. 1970) (holding that even assuming there is a right to marriage, preventing the alien spouse from remaining in the United States "does not attack the validity of the marriage"); *Smith v. I.N.S.,* 684 F. Supp. 1113, 1118 n.2 (D. Mass. 1988) ("Obviously, an alien cannot claim a constitutional right to remain in this country because of the existence of a marital relationship with a citizen."). Because the First Circuit refused to recognize such a right exists, Federal Rule of Civil Procedure 12(b)(6) requires this Court to dismiss Petitioners' substantive due process claim included in Count 2. *C.f. Herrera-Inirio v, I.N.S.,* 208 F.3d 299, 309 (2000) ("Executive actions that do no more than comport with valid statutory commands simply are not the stuff from which substantive due process violations can be fashioned.") (citation omitted).

**CONCLUSION**

Because this Court's habeas jurisdiction is limited, Petitioners' proposed class fails to satisfy the Rule 23 requirements. Moreover, only putative class members who are eligible to apply for a provisional waiver can state a valid claim under the due process clause. This Court should also dismiss Petitioners' claims under the INA and Applicable Regulations (Count 1), substantive component of the Due Process Clause (Count 2),  Equal Protection Clause of the Fifth Amendment (Count 3), and Administrative Procedure Act, 5 U.S.C. §§ 553, 706(2)(A) (Count 4). Determination of the aforementioned issues is imperative at this stage in the litigation in order to determine whether Petitioners' proposed class meets the Rule 23 requirements and due to Petitioners' impending requests for discovery.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

ELIANIS N. PEREZ
Assistant Director

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


/s/ Mary L. Larakers
Mary L. Larakers
Dated: March 7, 2019                     Trial Attorney