## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., | ) ) ) ) | |
| Individually and on behalf of all others similarly situated, | ) ) ) | No. 1:18-cv-10225-MLW |
| Plaintiffs-Petitioners, | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| v. | ) ) | |
| KIRSTJEN M. NIELSEN, et al., | ) ) | |
| Defendants-Respondents. | ) ) | |

## SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................4

I.    Petitioners' proposed class is appropriate in scope.........................................................4

    A.    All putative class members have a "vested" due process right to seek lawful status under the provisional waiver process.........................................................4

        1.    Due process rights attach to those who have filed I-130 applications because the I-130 application is the first step in the process created by the provisional waiver regulations. ............................................................ 5

        2.    Due process rights attach to those who have filed I-130 applications because doing so "enhances the significance" of the I-601A to them........ 6

        3.    Due process protects U.S. citizen class members' interest in receiving the benefits of the provisional waiver regulations. ................................... 10

    B.    No other issues limit the scope of the putative class. ...........................................11

        1.    Respondents' remaining due process arguments provide no reason to limit the scope of the proposed class. ........................................................ 11

        2.    Respondents' new effort to truncate the class on jurisdictional grounds is without merit. .................................................................................... 12

        3.    Petitioners' APA, INA, and equal protection claims will be resolved on a class-wide basis. .................................................................................. 13

II.    Respondents' motion to dismiss Petitioners' remaining claims should be denied. ...........14

    A.    Petitioners have stated a claim under the APA.....................................................14

        1.    Petitioners' APA claims are reviewable. .................................................. 14

        2.    Respondents violated the APA. ................................................................ 16

    B.    Petitioners have also stated a claim for violation of the INA. ..............................17

    C.    Petitioners stated a claim for violation of the Equal Protection Clause.................18

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*United States ex rel. Accardi v. Shaughnessy,*
    347 U.S. 260 (1954)..................................................................................................8, 17

*Ali v. United States,*
    849 F.3d 510 (1st Cir. 2017)..........................................................................................10

*Alliance to Protect Nantucket Sound, Inc. v. U.S. Dep't of Army,*
    398 F.3d 105 (1st Cir. 2005)..........................................................................................18

*Arevalo v. Ashcroft,*
    344 F.3d 1 (1st Cir. 2003)........................................................................................5, 8, 9

*Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977)......................................................................................................19

*Batalla Vidal v. Nielson,*
    291 F. Supp. 3d 260 (E.D.N.Y. 2018)..........................................................................20

*Benjamin v. Fraser,*
    264 F.3d 175 (2d Cir. 2001)............................................................................................7

*Bowden v. United States,*
    No. 1:11-cr-00132-JAW, 2015 WL 3649469 (D. Me. June 11, 2015)...........................18

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988)......................................................................................................18

*Candra v. Cronen,*
    CA No. 18-108230OBS, 2019 WL 764752 (D. Mass. Feb. 21, 2019)...........................15

*CASA de Maryland, Inc. v. Trump,*
    No. 18-cv-00845, 2018 WL 6192367 (D. Md. Nov. 28, 2018).......................................19

*Centro Presente v. United States Dep't of Homeland Sec.,*
    332 F. Supp. 3d 393 (D. Mass. 2018)..........................................................................20

*Ceta v. Mukasey,*
    535 F.3d 639 (7th Cir. 2008) ........................................................................................18

*Chrysler Corp. v. Brown,*
    441 U.S. 281 (1979)......................................................................................................17

*Citizens' Loan Ass'n v. Boston & M.R.R.,*
    82 N.E. 696 (Mass. 1907) ..............................................................................................9

*Cornejo-Barreto v. Seifert*,
  218 F.3d 1004 (9th Cir. 2000) ........................................................................15

*Fernandez-Vargas v. Gonzales*,
  548 U.S. 30 (2006)...................................................................................2, 3, 7, 8, 9

*F.C.C. v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)........................................................................................17

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)........................................................................................12

*Goncalves v. Reno*,
  144 F.3d 110 (1st Cir. 1998)...........................................................................8

*Gordon v. Johnson*,
  300 F.R.D. 31 (D. Mass. 2014).......................................................................11

*Gordon v. Lynch*,
  842 F.3d 66 (1st Cir. 2016).............................................................................11

*Heckler v. Chaney*,
  470 U.S. 821 (1985)........................................................................................15

*Hootkins v. Chertoff*,
  No. 07-5696, 2008 WL 1735146 (C.D. Cal. Apr. 7, 2008) ...........................15

*Iqbal v. Ashcroft*,
  556 U.S. 662 (2009) .......................................................................................19

*Jane Doe 1 v. Nielsen*,
  No. 18-cv-02349-BLF, 2018 WL 7302493 (N.D. Cal. Jul. 10, 2018)............17

*Judulang v. Holder*,
  565 U.S. 42 (2011)..........................................................................................16

*Kentucky Department of Corrections v. Thompson*,
  490 U.S. 454 (1989)........................................................................................7, 8

*Kerry v. Din*,
  135 S. Ct. 2128 (2015)....................................................................................10

*Lin v. Nielson*,
  No. 18-cv-03548-GJH (D. Md. Nov. 19, 2018)..............................................17

*Martel v. Fridovich*,
  14 F.3d 1 (1st Cir. 1993).................................................................................8, 9

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*,
　138 S. Ct. 1719 (2018) ................................................................ 19

*Nat'l Ass'n for the Advancement of Colored People v. U.S. Dep't of Homeland
　Sec.*, No. 18-cv-0239, 2019 WL 1126386 (D. Md. Mar. 12, 2019) ................................... 20

*Navlet v. Port of Seattle*,
　194 P.3d 221 (Wash. 2008) ............................................................ 9

*Patel v. Gonzales*,
　432 F.3d 685 (6th Cir. 2005) ........................................................ 17

*Perez v. Mortg. Bankers Ass'n*,
　135 S. Ct. 1199 (2015) ................................................................ 16

*Putnam v. Winn*,
　441 F. Supp. 2d 253 (D. Mass. 2006) .............................................. 15

*Ramos v. Nielsen*,
　336 F. Supp. 3d 1075 (N.D. Cal. 2018) ........................................... 20

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
　908 F.3d 476 (9th Cir. 2018) ...................................................... 15, 20

*S.A. v. Trump*,
　No. 18-CV-03539-LB, 2018 WL 6470253, (N.D. Cal. Dec. 10, 2018). ................... 20

*Saget v. Trump*,
　345 F. Supp. 3d 287 (E.D.N.Y. 2018) ............................................ 19, 21

*Saint Fort v. Ashcroft*,
　328 F.3d 191 (1st Cir. 2003) ...................................................... 15

*Sandin v. Connor*,
　515 U.S. 472 (1995) ................................................................... 8

*I.N.S. v. St. Cyr*,
　533 U.S. 289 (2001) ............................................................... 2, 8, 9

*Taylor v. Barton-Child Co.*,
　117 N.E. 43 (Mass. 1917) ......................................................... 2, 8, 9

*Town of Castle Rock, Colo. v. Gonzales*,
　545 U.S. 748 (2005) ................................................................... 7

*Trump v. Hawaii*,
　138 S. Ct. 2392 (2019) .............................................................. 20

*Valdez v. Rosenbaum*,
   302 F.3d 1039 (9th Cir. 2002) ............................................................................7

*Waldron v. INS*,
   17 F.3d 511 (2d Cir.1993)..................................................................................1

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ..........................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..........................................................................................13

## Federal Statutes

5 U.S.C. § 553...........................................................................................................3, 14

5 U.S.C. § 706...........................................................................................................3, 14

8 U.S.C. § 1252................................................................................................... *passim*

8 U.S.C. § 1182...........................................................................................................6, 17

## Regulations

8 C.F.R. § 212.7 ..............................................................................................6, 9, 12, 22

## INTRODUCTION

This Court has held that Petitioners have a due process right to apply for lawful status under the provisional waiver regulations and that ICE cannot remove them without a reason that is distinct from the mere fact of their final orders of removal.  Respondents' latest brief asks this Court to define a class narrow enough to render that due process ruling illusory, and to dismiss Petitioners' other claims—thus, to allow ICE officials to return to raiding Boston area USCIS offices and separating American families, just as the government is still doing elsewhere in the country.  But the government's brief rests on fundamental misconceptions about the nature of the regulations, Petitioners' legal rights, and this Court's jurisdiction.  Their arguments provide no reason to narrow the proposed class or to dismiss any of Petitioners' legal claims.

Although Respondents did not specifically answer the questions this Court posed, Dkt. 193, the parties' positions are addressed below.

**(a) Whether the statutes and regulations governing the Form 1-130 ("Petition for an Alien Relative") and/or the Form I-212 ("Application for Permission to Reapply for Admission into the United States After Deportation or Removal") establish a right to apply for each and, therefore, alone create a liberty interest which entitles an alien to Due Process.**

Yes. Respondents have conceded that Petitioners have a due process right to file I-130 and I-212 applications and have them be considered and decided. *See*, *e.g.*, Dec. 6, 2018 Hr'g Tr. at 79:3-7; 93:22-94:3.  Respondents' brief provides no further argument on this point.

**(b) If there is a right to apply for approval of an 1-130 application or 1-212 application, whether there is a right to receive a decision regarding those applications while still in the United States.**

Yes.  Petitioners do not argue that this right derives from the I-130 and I-212 themselves. Rather, as discussed further in response to (c), Petitioners' due process interest in receiving a decision on these applications while Petitioners are in the United States results from the

procedure established by the I-601A regulations.  *See* Dkt. 218 at 7-19.[1]

 **(c) Whether the statutes and regulations governing the provisional waiver process establish a right to apply for a provisional waiver beginning at the 1-130 or 1-212 stage.**

Yes.  As Petitioners previously explained and as argued below, the 2013 and 2016 regulations establish a due process right that extends to the entire provisional waiver process, including the I-130 stage.  This is so for three reasons.

First, Petitioners argued—and Respondents have not disputed—that the regulations designed *one process* for seeking lawful status that begins with the filing of an I-130.  Thus, the due process interest created by the regulations extends to the entire process, not merely to the filing of an I-601A.  Although Respondents point out that Petitioners cannot file an I-601A without approval of an I-130 petition and I-212 application, that is merely a description of the process that the regulations were designed to make possible.  *See infra* Section I.A.1.

Second, even if the liberty interest created by the I-601A regulations attached only to the Form I-601A, that liberty interest has "vested" in individuals who have taken actions that "enhance the significance" of the I-601A application to their lives, including the filing of an I-130.  *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 n.10 (2006).  Respondents argue that "Petitioners simply cannot have a 'legitimate claim of entitlement' to apply for a provisional unlawful presence waiver until they are eligible to apply for that waiver."  Dkt. 220 at 15.  But that view misinterprets *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), in which a noncitizen was found to have a "vested" right to relief that he could not yet apply for.  *See id.* at 321-25; *Fernandez-Vargas*, 548 U.S. at 44 n.10; *see also infra* Section I.A.2.

---

[1] Respondents state, "Petitioners have already conceded that the statutes and regulations governing these two applications do not *independently* create a due process right to apply from within the United States."  Dkt. 220 at 9 (emphasis original).  To clarify, Petitioners do not concede the *absence* of an independent due process interest, but press no argument in this regard.

Third, the due process right should be liberally applied to protect the entire process, starting with the filing of an I-130 application, because the provisional waiver regulations protect a due process right in U.S. citizens remaining in the United States with their spouses. Respondents contend that the U.S. citizen Petitioners have no *substantive* due process right to live with their noncitizen spouses in the United States, but do not address how the marital interests at stake weigh on Petitioners' *procedural* due process claims. *See infra* Section I.A.3.

**(d) Explain their respective positions on the merits of the petitioners' claims concerning the Administrative Procedure Act, 5 U.S.C. §§553, 706(2)(A), and the Equal Protection Clause of the Fifth Amendment, and the relevance of those claims for certification of the proposed class.**

Petitioners' claims under the APA and Equal Protection Clause readily support certification of the proposed class and allow no distinction between those who are eligible to submit a Form I-601A and those who are at earlier stages. Dkt. 218 at 25-31, 32-33. Respondents provide no reasons to narrow the scope of the putative class regarding these claims. Instead, they argue that each of these claims fall on a class-wide basis. Dkt. 220 at 21-30. Their arguments regarding Petitioners' APA claim restate theories about both jurisdiction and interpretation of the provisional waiver regulations that are contrary to this Court's order. *Id.* at 21-23, 25-30. And their arguments to dismiss Petitioners' equal protection claim ask the Court to overlook pervasive and relevant evidence of discriminatory intent. *Id.* at 23-25. The Court should deny Respondents' motion regarding both claims.

**(e) Any other issues that should be decided prior to further briefing and argument concerning class certification.**

This Court should also deny Respondents' motion to dismiss Petitioners' INA claim, which is adequately pled and supports certification of the proposed class. Respondents' opposition regarding jurisdiction and the INA revive arguments already rejected by this Court or that are otherwise inconsistent with the law. Dkt. 220 at 19-21.

3

Respondents ask the Court to decide three additional issues prior to briefing on class certification: they argue that noncitizens whose orders of removal became final after the provisional waiver process went into effect should be excluded from the class, *id.* at 17, that some class members don't "deserve" provisional waivers and therefore lack a due process interest, *id*., and that the Court should prescribe the remedy it would apply if Petitioners were to succeed on the merits. *Id*. at 17-19.  These arguments are without merit. *See infra* Section I.B.

## ARGUMENT

## I.      Petitioners' proposed class is appropriate in scope.

Petitioners' proposed class is comprised of final-order noncitizens and their U.S. citizen spouses.  It includes only the individuals that DHS sought to benefit when it expanded the provisional waiver process in 2016.  The class carefully tracks the regulations' eligibility criteria and encompasses only those couples who have begun the process by filing an I-130.  Because this Court's due process ruling applies to the class as a whole, and because Respondents have provided no other valid basis to narrow the class, the proposed class is appropriately defined.

### A.      All putative class members have a "vested" due process right to seek lawful status under the provisional waiver process.

Petitioners have demonstrated that the Court's due process ruling applies to the entire proposed class.  The provisional waiver regulations beckoned a class of people forward, offering certain married couples a path to legalization for the noncitizen spouse.  This Court recognized they created a due process interest that prevents ICE from removing Petitioners without considering their applications for lawful status and the regulations' purpose of keeping families together.  Dkt. 159 at 4.  In their first brief, Petitioners' demonstrated—based on the regulations' design, due process doctrine, and the marital interests involved—that the liberty interest the Court identified extends to all class members, regardless whether they have just begun the

provisional waiver process by filing an I-130.

Although this Court held that "the regulations create an entitlement to receive a decision concerning a provisional waiver in the United States," Dkt. No. 159 at 37, the government asks this Court to do nothing less than allow ICE to *eliminate* the regulations' benefits for noncitizens and their families. Under their proposed rule, DHS could readily circumvent this Court's ruling and return to the practices it was engaged in when this case began. It could resume raiding I-130 interviews, remove every putative class member before they file an I-601A, and separate every family that the regulators intended to protect. The government's view is not only grim, it is legally incorrect.

> **1.     Due process rights attach to those who have filed I-130 applications because the I-130 application is the first step in the process created by the provisional waiver regulations.**

This Court has already explained that where, as here, a regulation grants an entitlement to apply for relief, "'[t]he availability of relief (or, at least, the opportunity to seek it) is properly classified as a substantive right' and a 'legitimate expectation[]' even when the relief depends on the exercise of an agency's discretion." Dkt. 159 at 29 (quoting *Arevalo v. Ashcroft*, 344 F.3d 1, 11, 14 (1st Cir. 2003)). Petitioners have shown the "relief" created by the provisional waiver regulations is a *process* for seeking lawful status, which begins with the filing of an I-130. The government's brief does not undercut that showing.

As a threshold matter, the government does not deny that the regulations had the design and purpose of creating a multi-step process. It does not dispute that—for noncitizens with final orders of removal like the Petitioners and putative class members—that process requires the filing of Forms I-130, I-212, and I-601A. Nor does the government contest that the final-order noncitizens in the putative class have no other way to seek lawful status through their U.S. citizen spouses without a prolonged absence, and can derive no benefit from their I-130 and

I-212 applications in the United States other than through the provisional waiver process. Finally, the government does not disagree that the purpose of the provisional waiver process was to allow families to stay together while seeking lawful status for the noncitizen spouse.  And it does not deny that—if its legal arguments were accepted—ICE could readily circumvent these purposes and this Court's due process ruling and separate every family that the regulation intended to benefit.  *See* Dkt. 218 at 17-20.

Instead, the government makes two arguments, neither of which has merit.

First, the government points to 8 C.F.R. § 212.7(e)(4)(iv), which makes post-final order noncitizens ineligible to submit an I-601A form unless they have an approved I-212.  *See* Dkt. 220 at 16.  Although the government balances nearly all of its argument on this provision, Section 212.7(e)(4)(iv) concerns *when* a Form I-601A can be filed.  It provides no basis to myopically ignore the regulations' design or the class of individuals they were designed to benefit.

Second, the government argues that the explanation for the 2013 provisional waiver regulation illustrates that "DHS . . . did not intend to curtail ICE's authority to execute removal orders" and "disclaim[ed] any 'cognizable due process interest *in access to*'" the provisional waiver process.  *Id*. (quoting 81 Fed. Reg. 1, 536, 555 (emphasis added by Respondents)).  But this Court already found that the provisional waiver regulations *did* create a liberty interest that constrains ICE's discretion over removal, and that DHS did not intend to "allow ICE to ignore the regulations and their important purposes."  Dkt. 159 at 36-38.

### 2.    Due process rights attach to those who have filed I-130 applications because doing so "enhances the significance" of the I-601A to them.

Although Petitioners have shown that the due process interest that the Court identified extends to the entire *process* created by the provisional waiver regulations, beginning with the

filing of an I-130, the government's "vesting" argument would fail even if that were not the case.

That is because—as Petitioners have also demonstrated—their liberty interests in having *I-601A*

applications adjudicated in the United States "vest" once they have taken a step that "enhances

[the] significance" of the I-601A to them.  *See Fernandez-Vargas*, 548 U.S. at 44 n.10.

Respondents have not challenged this legal framework, nor disputed that filing an I-130

"enhances [the] significance" of the I-601A application.

The government, instead, simply repeats its tired refrain that "due process interests arise

from a benefit only when the plaintiff has met the statutory requirements of that benefit."  Dkt.

220 at 14.  But the government cites cases that merely address *whether* a regulation creates a

liberty interest—a question this Court has already resolved—and mischaracterize or ignore the

cases that address *when* that liberty interest is present.

First, the government argues that *Kentucky Dept. of Corrections v. Thompson*, 490 U.S.

454, 460 (1989) requires "explicitly mandatory language" in order for a regulation to create "a

legitimate claim of entitlement."  Dkt. 220 at 13.  It may be true that *prison* regulations only

create liberty interests where they create nondiscretionary criteria such that "if the regulations'

substantive predicates are present, a particular outcome must follow."  *Kentucky*, 490 U.S. at

463.[2]  But this Court has already held that that is not the standard here.  Instead, when

immigration laws or regulations create forms of immigration relief, even discretionary, the Due

---

[2] Although the Supreme Court backed away from its focus on mandatory language in *Sandin v. Connor*, 515 U.S. 472, 483 (1995), Respondents cite Courts of Appeals cases limiting *Sandin* to sentenced inmates, while continuing to apply *Kentucky* to pre-trial detention.  Dkt. 220 at 14 (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 n.3 (9th Cir. 2002) and *Benjamin v. Fraser*, 264 F.3d 175, 188-89 (2d Cir. 2001)).  These cases do not address applications for discretionary immigration relief.  Nor does *Town of Castle Rock, Colo. v. Gonzales*, which held that a restraining order did not create a liberty interest in enforcement of that order.  545 U.S. 748, 760 (2005).  In that context, the Supreme Court considered that even "mandatory" statutory language might not be enough to overcome the "well established tradition of police discretion."  *Id.*

Process Clause protects the opportunity to apply and receive an adjudication.  Dkt. 159 at 29; *see*

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954); *Arevalo*, 344 F.3d at

11, 14.  Accordingly, this Court has resolved the question whether the provisional waiver

regulations create a due process interest in the I-601A—they do.  *See* Dkt. 159 at 34.

Second, with regard to *when* that liberty interest attaches, the government does not appear

to dispute that retroactivity cases—which involve the presumption that Congress does not intend

to retroactively extinguish interests protected by the Due Process Clause—provide the

appropriate legal framework.  In that context, the Supreme Court has made clear that the right to

pursue discretionary forms of immigration relief "vests" when a noncitizen "avail[s] himself of

[those forms of relief] *or* t[akes] action that enhance[s] their significance to him in particular."

*Fernandez-Vargas*, 548 U.S. at 44 n.10 (emphasis added).  The government is correct that

relevant First Circuit cases involving retroactivity have involved noncitizens who had already

applied for the relief in question.  *See*, *e.g.*, *Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998).

But it is *incorrect* in suggesting that the result in these cases would not have been reached

without such pending applications.  *See* Dkt. 220 at 14.  Worse still, the government wholly

misreads the leading case on point, *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), to hold that "an

individual must have applied for the relief sought" in order to have a due process interest. Dkt.

220 at 16.  Not only does *St. Cyr* not impose such a requirement, but the Court found that the

individual's right to apply for immigration relief had vested even though he *had not applied* and

*could not yet have applied* for the relief at the time in question.  *See* 533 U.S. at 321-25;

*Fernandez-Vargas*, 548 U.S. at 44 n.10.[3]

_____

[3] *St. Cyr* and this case are distinct from *Martel v. Fridovich*, 14 F.3d 1 (1st Cir. 1993).  *See* Dkt.
220 at 15.  The First Circuit in *Martel* tersely rejected a plaintiff's claimed entitlement to a short-
term release program at a treatment center for sexually dangerous persons, where rules made the

Petitioners' "vested" rights are, if anything, even stronger than those in *St. Cyr* because the I-130 and I-601A applications are more closely tied than the guilty plea and immigration relief at issue in *St. Cyr*.  Mr. St. Cyr "took action that enhanced the[] significance" of relief under former Section 212(c) to him when he gave up his right to a criminal trial and entered into a plea that preserved his ability to apply for that relief if he were ever put into removal proceedings.  *St. Cyr*, 533 U.S. at 321-25; *see also Fernandez-Vargas*, 548 U.S. at 44 n.10; *Arevalo*, 344 F.3d at 14-15.  Here, every Petitioner and class member has taken an action that is within the immigration system, not outside it.  The I-130 petitions that the putative class members filed serve the singular purpose of seeking lawful status for the noncitizen spouse through the marriage.  And the *only* way these final-order noncitizens can pursue that lawful status through their spouses, without prolonged family separation, is to continue the process that will lead to an I-601A application.  In exchange for the ability to seek lawful status through this process, class members have paid substantial application fees and exposed themselves to the risks of coming forward, providing their address to the U.S. government, and presenting themselves at government offices.  Thus, even if the Court does not deem the I-130 to be a *part* of the provisional waiver process itself, its filing sets applicants on a distinct path and unquestionably "enhances [the] significance" of the I-601A to them.  The liberty interest the Court identified is thus present for all putative class members.[4]

---

plaintiff and other individuals who were serving criminal sentences ineligible for the program. *See Martel*, 14 F.3d at 2-3.

[4] This conclusion is bolstered by the analysis of vesting in trusts and estates and property law. Property rights "vest" well before someone is actually eligible to receive them.  *See*, *e.g.*, *Navlet v. Port of Seattle*, 194 P.3d 221, 226 n.5 (Wash. 2008) (en banc) ("A right to deferred compensation vests at the time it is created, although the right to payment does not accrue until a condition has been fulfilled in the future."); *accord Taylor v. Barton-Child Co.*, 117 N.E. 43, 43-44 (Mass. 1917); *Citizens' Loan Ass'n v. Boston & M.R.R.*, 82 N.E. 696, 697 (Mass. 1907).

### 3.    Due process protects U.S. citizen class members' interest in receiving the benefits of the provisional waiver regulations.

While the due process protections that apply to discretionary forms of immigration relief are sufficient to resolve this case on their own, these protections are only strengthened by the marital interests involved.  The U.S. citizen class members each have a liberty interest in living together with their spouses in the United States, and the Due Process Clause therefore ensures that they "will not be deprived of that kind of liberty without fair procedures."  *Kerry v. Din*, 135 S. Ct. 2128, 2142 (2015) (Breyer, J. dissenting).[5]  Petitioners have shown that, because the provisional waiver process was created to protect that liberty interest and keep families together during the legalization process, any associated due process protections should extent to class members who have begun pursuing provisional waivers by filing I-130 petitions.  *See id.* (due process protections flow from a regulation that "creates 'an expectation' that a person will not be deprived of that kind of liberty without fair procedure"); *see also* Dkt. 218 at 23-25.

Respondents, ignoring the *procedural* rights that flow from the provisional waiver regulations' protection of these important freedoms, focus instead on the *substantive* rights implicated by their family separation practices.  Dkt. 220 at 22.  But Petitioners do not argue that ICE may never effectuate a class members' final order of removal; they only seek to ensure class members receive fair procedures when facing the devastating prospect of prolonged family separation.  *See Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is

---

[5] As noted in Petitioners' opening brief, although the Court held against the petitioner in *Din*, two justices assumed that Ms. Din had a liberty interest in living with her spouse in the United States but found that any associated due process rights were satisfied, and four dissenters believed due process was not satisfied. *See* 135 S. Ct. at 2131-38 (J. Scalia); *id.* at 2139-41 (J. Kennedy, concurring); *id.* at 2141-47 (J. Breyer, dissenting). Thus, "*Din* did not produce a definitive answer to the question of whether a citizen has a liberty interest, warranting due process, in residing in the United States with his or her noncitizen spouse." *Ali v. United States*, 849 F.3d 510, 515 n.3 (1st Cir. 2017) (denying due process claim based on lack of prejudice).

promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required.").  Because the due process interest this Court recognized protects all putative class members, the proposed class is appropriately defined with respect to the due process claim.

> **B.     No other issues limit the scope of the putative class.**

No other reason exists to narrow the proposed class.  Although the government contends that noncitizens who are not "deserving" of provisional waivers do not have the same due process rights, and raises a novel jurisdictional argument, these arguments are without merit. Importantly, the government does not raise arguments that seek to limit the class for purposes of Petitioners' APA, INA, and equal protection claims.

> **1.     Respondents' remaining due process arguments provide no reason to limit the scope of the proposed class.**

In addition to its claims about "vesting," the government makes two more arguments that it frames as being relevant to the scope of the class for Petitioners' due process claim.

*First*, the government contends that applicants who are not "deserving" of relief do not have a due process interest.  Dkt. 220 at 17.  But that claim confuses the question of whether a noncitizen will ultimately be awarded lawful status under the provisional waiver process with his or her interest in pursuing and be considered for that status. *See* Dkt. No. 159 at 30.[6]  Although

---

[6] *See also Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification" in procedural due process case); *Gordon v. Johnson*, 300 F.R.D. 31, 36 (D. Mass. 2014), *vacated on other grounds sub nom. Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016) (rejecting similar arguments against class certification because they "entirely misconstrue[d] the point of this litigation by confusing the issue of whether an alien is entitled, at some point, to a bail hearing with the issue of what the Immigration Judge's decision might take into consideration once the bail hearing occurs").

DHS officials may consider relevant factors when reviewing individual cases, *see id.* at 35, basing the existence of a liberty interest on whether individuals "deserve" ultimate relief would scrap decades of due process law. *See*, *e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970) (setting parameters for hearings required prior to termination of welfare, without excluding those who are "deserving" or will ultimately be found to meet eligibility requirements).

*Second*, the government contends that some class members will not be entitled to the class-wide remedy, and suggests that this Court should skip past discovery and summary judgment briefing to decide the appropriate remedy. Dkt. 220 at 17-19. That argument ignores that this Court has already held that, at a minimum, class-wide declaratory relief is consistent with 8 U.S.C. § 1252(f)(1). Dkt. 193. It has also provided a legal rule—requiring consideration of the provisional waiver process—that is appropriate for class-wide application. Dkt. 159 at 35. Any further attempt to define the appropriate class-wide remedy would inappropriately tie the Court's hands and hamstring Petitioners before they have had the benefit of the Court's ruling on class certification and the discovery necessary to inform a determination about the appropriate scope of any permanent relief.

### 2. Respondents' new effort to truncate the class on jurisdictional grounds is without merit.

Respondents also attempt to narrow the scope of the class by arguing for the first time that this Court lacks jurisdiction over the claims of noncitizens whose orders of removal became final after the provisional waiver process went into effect. However, the Court's ruling that the Suspension Clause requires jurisdiction over this case applies equally to those ordered removed after the provisional waiver process went into effect on August 29, 2016. Here, because "petitioners do not challenge the validity of their orders of removal or any decision on which they are contingent" but rather "ICE's decision, on behalf of DHS, to enforce the order while

12

they are pursuing provisional waivers," they raise claims that cannot be brought in a court of appeals under § 1252.  Dkt. 159 at 19-20.[7]

### 3. Petitioners' APA, INA, and equal protection claims will be resolved on a class-wide basis.

Respondents seek dismissal of Petitioners' APA, INA and equal protection claims with arguments that apply to the class as a whole, confirming that Petitioners' proposed class is appropriately defined as to these claims.  Petitioners contend that the government unlawfully abandoned the promises of the provisional waiver regulations in violation of the APA and INA, and that this departure was motivated by animus in violation of the equal protection clause.  In their prior briefing, Petitioners demonstrated that every member of the proposed class has standing to challenge these APA, INA, and equal protection violations, even if they have just begun the provisional waiver process by filing an I-130.  *See* Dkt. 118 at 23-27.

Respondents do not dispute Petitioners' standing analysis, do not contend that noncitizens with pending I-130 applications are not within the statutory "zone of interest," *see* Dkt. 218 at 29, and do not otherwise seek to narrow the class for purposes of Petitioners' INA, APA, or equal protection claims.  Instead, arguments relevant to class scope appear only in passing echoes of Respondents' "vesting" arguments—stating, for example, that the regulations do not protect *any* provisional waiver applicants, "let alone those who are not yet eligible to apply."  *See* Dkt. 220 at 13, 21, 22.  Despite these bare references, Respondents' arguments for dismissal of these claims apply to the class as a whole, confirming that the putative class's claims will survive or fall with "one stroke."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[7] Petitioners preserve their argument that § 1252 is inapplicable here because Petitioners and putative class-members do not seek review of a discretionary determination, but rather seek to enforce the limitations on ICE's discretion created by the 2016 provisional waiver regulations. *See* Dkt. 79 at 19-21.

**II.      Respondents' motion to dismiss Petitioners' remaining claims should be denied.**

Respondents also argue that Petitioners' APA, INA, and equal protection claims should be dismissed.  Their arguments are inconsistent with the Court's previous ruling in this case, *see* Dkt. 159, and otherwise without merit.

**A.      Petitioners have stated a claim under the APA.**

Petitioners have plausibly alleged that (1) Respondents' policy and practice of taking enforcement action against Petitioners and putative class members without considering the provisional waiver process was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and (2) this policy and practice effectively nullified the provisional waiver regulations in violation of the APA's notice and comment requirements. *See* 5 U.S.C. § 553.  Respondents argue that the Court lacks authority to review this claim and that their conduct neither violated not altered the meaning of the regulation.  That is not so.

**1.      Petitioners' APA claims are reviewable.**

Although Respondents argue that review of Petitioners' claims is barred by 8 U.S.C. § 1252(g) and 5 U.S.C. § 701(a)(2), no provision prevents review over Petitioners' claims.

Petitioners' APA claim does not "aris[e] from the decision or action . . . to . . . execute removal orders," 8 U.S.C. § 1252(g), because it arises from the government's class-wide sabotage of the provisional waiver process.[8]  *Cf.* Dkt. 159 at 22-24 (holding § 1252(g) applies to

---

[8] *See generally Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 503–04 (9th Cir. 2018) (Section 1252(g) applies to individual decisions but not a "programmatic shift like the DACA rescission."); *Hootkins v. Chertoff*, No. 07-5696, 2008 WL 1735146, at *4 (C.D. Cal. Apr. 7, 2008) (Section 1252(g) does not bar APA "claims arise from USCIS' allegedly erroneous interpretation" of the immigration laws as manifested in regulation). Although the Respondents cite *Candra v. Cronen*, CA No. 18-108230-OBS, 2019 WL 764752, *6 (D. Mass. Feb. 21, 2019), the court there noted, without deciding, that it "likely has jurisdiction to examine a challenge to the agency's decision to revoke a rule without going through the regular rulemaking procedures."  Although the *Candra* Court held that the application of § 1252(g) did not raise Suspension Clause concerns, there—unlike here, *see* Dkt.

Petitioners' due process claim).

Even if Respondents were correct that 8 U.S.C. § 1252(g) applies, the Suspension Clause requires jurisdiction over Petitioners' challenge.  *See* Dkt. 159 at 24-25.  Judicial review of claims under the APA can occur in "any applicable form of legal action, including . . . habeas corpus."  5 U.S.C. § 703; *Putnam v. Winn*, 441 F. Supp. 2d 253, 255-56 (D. Mass. 2006) (holding the court had habeas jurisdiction over APA claim, and collecting cases); *see also Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1015-16 (9th Cir. 2000).  This Court has already held that the Suspension Clause requires habeas jurisdiction over legal claims regarding DHS's failure to make a discretionary decision required by regulation.  *See* Dkt. 159 at 25-26.  That decision applies with equal force to Petitioners' APA claim.

Review over Petitioners' claims is also not limited by 5 U.S.C. § 701(a)(2)'s bar to review of "agency action [that] is committed to agency discretion by law."  Section 701(a)(2) provides a "narrow" exception to the APA's otherwise broad judicial review provisions, and applies only when there is "no law to apply."  *See Heckler v. Chaney*, 470 U.S. 821, 830, 838 (1985).  Here, as the Court has itself explained, Petitioners challenge the abandonment, rather than the exercise, of the discretion committed to Respondents by law.  *See* Dkt. 159 at 26.  And in holding that the provisional waiver regulations prevent Petitioners' removal based solely on their final orders, this Court has already found that there is law to apply.  *Id.* at 35.[9]

---

159 at 19—the Court concluded that judicial review was available through a petition for review. *Candra*, 2019 WL 764752, at *4.

[9] Respondents cite 8 U.S.C. § 1182(a)(9)(B)(v)'s restriction of judicial review over a "decision or action . . . regarding a waiver under this clause" in support of their argument that the waiver determinations are "committed to agency discretion by law," under 5 U.S.C. § 701(a)(2). Rightly, Respondents do not argue that § 1182(a)(9)(B)(v) bars review of Petitioners' claims. Petitioners do not seek review of a "decision or action" made by the government "regarding a waiver," but review of conduct eliminating the opportunity to apply for the waivers from within the United States, as the regulations promised. *See Saint Fort v. Ashcroft*, 328 F.3d 191, 203 (1st Cir. 2003); Dkt. 159 at 26.

## 2.      Respondents violated the APA.

With regard to the merits of Petitioners' APA claim, the government does not deny that it systematically separated the very families that the provisional waiver regulations aimed to keep together.  Instead, it argues only that its conduct was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because the *text* of the provisional waiver regulations does not protect noncitizens from removal.  *See* Dkt. 220 at 30.  That argument is foreclosed by this Court's conclusion that removing Petitioners without considering the provisional waiver process would render the regulations' "binding promises . . . meaningless" and undermine their purposes.  Dkt. 159 at 36.  Having caused families the very harm that the regulations sought to avoid, the government cannot argue that its conduct was "tied, even if loosely, to the purposes of the immigration laws."  *Judulang v. Holder*, 565 U.S. 42, 55 (2011).  The government's conduct thus violated the APA.  *See id.*

With regard to notice-and-comment, Respondents argue that they did not alter any regulations.  Dkt. 220 at 29.  That argument falls flat.  The APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance."  *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015).  It is of no moment whether DHS is "removing *every* individual eligible for a provisional waiver."  Dkt. 220 at 29.  Respondents' actions rendered the regulations a virtual nullity, *see* Dkt. 159 at 35-36, and notice and comment was therefore required.  *See F.C.C. v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009) ("An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."); *Lin v. Nielson*, No. 18-cv-03548-GJH (D. Md. Nov. 19, 2018) ("To allow ICE—a federal agency under the jurisdiction of DHS—to arrest and deport those who seek this legal protection would be to allow DHS to nullify its own rule without explanation.").

**B.      Petitioners have also stated a claim for violation of the INA.**

Respondents raise two arguments for dismissal of Petitioners' INA claim.  *First,*

Respondents argue that, to succeed on their INA claim, Petitioners must show that the text of the

INA—rather than the regulations—entitles Petitioners to a stay of removal or otherwise limits

ICE's ability to remove noncitizens pursuing provisional waivers.  Dkt. 218 at 20-21.[10]  That

argument misses the point.  Petitioners' "INA" claim is a claim that Respondents have violated

the "INA and applicable regulations."  Dkt. 27, ¶¶ 112-15.  Moreover, violations of regulations

"with the force and effect of law" are violations of the statute itself.  *Accardi*, 347 U.S. at 265

(holding petitioner stated claim for violation of Immigration Act of 1917 by alleging violation of

regulations); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979) ("[S]ubstantive agency

regulations have the 'force and effect of law'"); *Jane Doe 1 v. Nielsen*, No. 18-cv-02349-BLF,

2018 WL 7302493, at *19 (N.D. Cal. Jul. 10, 2018).  And this Court has already ruled that the

conduct alleged in this case—*i.e.*, removing noncitizens without regard for the provisional

waiver process—is inconsistent with the requirements of the provisional waiver regulations.

Dkt. 159 at 31-36.[11]

---

[10] As in their response to Petitioners' APA claim, Respondents cite U.S.C. § 1182(a)(9)(B)(v) to argue that this provision illustrates Congressional intent to "preclude all legal challenges connected to an unlawful presence waiver," but do not challenge this Court's jurisdiction over Petitioners' INA claim.  Dkt. 220 at 20.  This provision, related to the merits of an individual's I-601A application, has no bearing on this Court's analysis regarding whether Respondents' actions violated the provisional waiver regulations.  *Cf. Patel v. Gonzales*, 432 F.3d 685, 689 (6th Cir. 2005) (holding § 1182(a)(9)(B)(v) does not bar jurisdiction over claim that USCIS applied the wrong law in making its decision about a noncitizen's waiver application).

[11] Respondents also attempt to distinguish *Ceta v. Mukasey*, 535 F.3d 639 (7th Cir. 2008), injecting "key distinctions" between the regulation at issue in *Ceta* and the provisional waiver regulations.  Dkt. 220 at 22.  Respondents are unable to see the forest for the trees.  Despite any subtle factual variations, *Ceta* reinforces the broader point that DHS violates the INA when, in the process of determining to remove someone, the agency ignores that person's ability to seek legal status through their spouse in the United States and renders that regulatory benefit a nullity. 535 F.3d at 646.

*Second*, Respondents argue that their interpretation of the provisional waiver regulations should be given deference.  Dkt. 220 at 21-23.  Respondents did not raise this in support of their motion to dismiss, in opposition to a preliminary injunction, or in any of their briefs regarding class certification.  *See* Dkt. 44, 78, 96, 99, 112, 178, 187.  The argument is therefore waived. *Bowden v. United States*, No. 1:11-cr-00132-JAW, 2015 WL 3649469, at *14 (D. Me. June 11, 2015) ("[C]laims asserted for the first time in the supplemental memorandum" are waived).

The argument is also incorrect.  Deference is not owed to interpretations announced for the first time in litigation.  *See Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *Alliance to Protect Nantucket Sound, Inc. v. U.S. Dep't of Army*, 398 F.3d 105, 112 n. 5 (1st Cir.2005) ("[D]eference is not due to interpretations that are post hoc rationalizations offered by an agency seeking to defend past agency action against attack").  Respondents have not demonstrated that, prior to this case, they had ever interpreted the provisional waiver regulations to permit their use to facilitate the detention and removal of intended beneficiaries.  To the contrary, the testimony of local ICE leadership in this case indicates that they barely knew of the regulations' existence.[12]

### C.   Petitioners stated a claim for violation of the Equal Protection Clause.

Petitioners adequately alleged, through the President's statements and a consistent pattern of action, that the policies challenged in this case result from a desire to prevent non-White people from becoming Americans.  Dkt. 27, ¶¶ 110-111, 122.  Although Respondents

---

[12] *See*, *e.g.*, Aug. 21, 2018 Hr'g Tr. 73:16-22 (Acting FOD Adducci was "not aware that individuals with final orders who are married to U.S. citizens were eligible for the provisional waiver process"); Lyons Dep. Tr. 63:18-21 (Dkt. No. 137-4) ("Q: And what are the forms a person has to file in applying for provisional waivers? A: Off the top of my head, I'm not sure."); Brophy Dep. Tr. 26:22-25 (Dkt. No. 137-5) ("Q: Do you know specifically what benefit they would gain from applying [for provisional waivers]? . . . A: Specifically, no.").

characterize this as a "selective enforcement" claim, Dkt. 220 at 23-24, it is not.  Petitioners'

claim is that the government's policy and practice of detaining and removing individuals seeking

lawful status, even if neutral on its face, is impermissibly motivated by animus.  *See Vill. of*

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977); *Saget v. Trump*, 345

F. Supp. 3d 287, 301 (E.D.N.Y. 2018); *CASA de Maryland, Inc. v. Trump*, No. 18-cv-00845,

2018 WL 6192367, at *12 (D. Md. Nov. 28, 2018).  The government's arguments essentially ask

this Court to overlook abundant evidence of racism and assume good faith.  But this Court has

already found that Petitioners have adequately alleged violations of their due process rights, and

should not ignore the ample and supported allegations that the violation has been caused by

animus.

First, citing *Iqbal v. Ashcroft*, 556 U.S. 662, 676-78 (2009), Respondents argue that the

allegations are too "conclusory" to survive a motion to dismiss.  Dkt. 220 at 23-24.  But

comparisons to *Iqbal* fall flat.  Whereas the claim of invidious classification there relied on

inferences based on the detentions of Arabs and Muslims after the September 11, 2001,

Petitioners' allegations rely on the President's own words.  Respondents do not deny that these

statements demonstrate animus.  *See Batalla Vidal v. Nielson*, 291 F. Supp. 3d 260, 277

(E.D.N.Y. 2018) (petitioners stated equal protection claim because President's statements were

"sufficiently racially charged, recurring, and troubling as to raise a plausible inference that the

decision to end the DACA program was substantially motivated by discriminatory animus").[13]

Respondents also appear to acknowledge that the President's policies, through Executive Order

13768, have caused the harm in this case.  Dkt. 220 at 24-25.  And unlike in *Iqbal*, where the

---

[13] *See also Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 138 S. Ct. 1719, 1729-30 (2018) (holding that commission members' disparaging comments about plaintiff's religion showed its decision motivated by hostility toward his beliefs).

Court determined that a legitimate terrorism investigation was the "obvious alternative explanation" for the government conduct and thus undercut claims of an invidious classification, 556 U.S. at 682 (citation and quotation marks omitted), the Court here has already held that the practices Petitioners allege—the sabotage of a legal process designed to help American families—are not only illegitimate, but unlawful.  Dkt. 159 at 37-38.

Second, without explicitly addressing *Arlington Heights*, Respondents suggest that it does not apply.  Respondents rely on the deferential review of *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2019) to suggest that the President's racist statements cannot make out an equal protection violation where the government conduct at issue is otherwise lawful.  Dkt. 220 at 24-25.  While *Hawaii* did not involve a Fifth Amendment claim and Courts have correctly rejected its application to non-national security cases involving noncitizens within the United States,[14] the bigger problem for the government is that this case does *not* involve conduct that DHS is otherwise allowed to engage in.  Where this Court has already found that the complaint adequately alleged unlawful conduct, and petitioners have sufficiently alleged that the unlawful conduct was motivated by animus, Petitioner's equal protection claim should not be dismissed.

## CONCLUSION

For these reasons, Petitioners' class should be drawn to include those who have filed I-130 applications and otherwise meet Petitioners' proposed criteria, and none of Petitioners' claims should be dismissed.

---

[14] *See*, *e.g., Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 518-20 (9th Cir. 2018); *CASA de Maryland, Inc.*, 2018 WL 6192367, at *15-18; *Saget*, 345 F. Supp. 3d at 301-04; *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1098-08 (N.D. Cal. 2018); *Centro Presente v. United States Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 409-12 (D. Mass. 2018); *Nat'l Ass'n for the Advancement of Colored People v. U.S. Dep't of Homeland Sec.*, No. 18-cv-0239, 2019 WL 1126386, at *8 (D. Md. Mar. 12, 2019); *cf. S.A. v. Trump*, No. 18-CV-03539-LB, 2018 WL 6470253, at *36 (N.D. Cal. Dec. 10, 2018).

Respectfully submitted this 22nd day of March, 2019.

| | /s/  Kevin S. Prussia   |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Shirley X. Li Cantin (BBO # 675377) |
| AMERICAN CIVIL LIBERTIES UNION | Stephen Provazza (BBO # 691159) |
| FOUNDATION OF MASSACHUSETTS, INC. | Colleen M. McCullough (BBO # 696455) |
| 211 Congress Street | Matthew W. Costello (BBO # 696384) |
| Boston, MA 02110 | WILMER CUTLER PICKERING |
| (617) 482-3170 | HALE AND DORR LLP |
| | 60 State Street |
| Kathleen M. Gillespie (BBO # 661315) | Boston, MA 02109 |
| Attorney at Law | Telephone: (617) 526-6000 |
| 6 White Pine Lane | Facsimile:  (617) 526-5000 |
| Lexington, MA 02421 | kevin.prussia@wilmerhale.com |
| (339) 970-9283 | shirley.cantin@wilmerhale.com |
| | stephen.provazza@wilmerhale.com |
| | colleen.mccullough@wilmerhale.com |
| | matthew.costello@wilmerhale.com |
| | |
| | *Attorneys for Petitioners* |