**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., | ) ) ) ) |
| Plaintiffs-Petitioners, | ) No. 1:18-cv-10225-MLW ) |
| v. | ) ) |
| KIRSTJEN M. NIELSEN, et al., | ) ) |
| Defendants-Respondents. | ) ) ) ) |

**RESPONDENTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND OPPOSITION TO PETITIONERS' MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

As a threshold matter, this Court lacks subject-matter jurisdiction over some putative class members' claims because they have another adequate remedy through their petitions for review with the court of appeals. Regardless, Petitioners' claims fail on the merits. Petitioners ask this Court to go further than any court has gone before and to declare that a due process right exists in an immigration benefit even where (1) an alien is ineligible to apply for the relief and (2) the regulation and supporting comments refute that a right exists. Petitioners refuse to apply the "legitimate claim of entitlement" test despite the validity of that standard as the framework for determining whether a due process right arises from a source of non-constitutional law, such as the provisional waiver regulations. Even if retroactivity cases were to lend support to Petitioners' argument — which Respondents assert they do not — Petitioners fail to apply the three-part retroactivity test. Nor do Petitioners establish that it is applicable here where there is no retroactive statute or regulation at issue. Instead, Petitioners seem to make an equitable argument by citing to the alleged purpose of the regulations; however, that argument is not sufficient, under either standard, to confer a due process interest.

Petitioners spend the latter portion of their reply brief arguing that because this Court refused to dismiss their due process claims, it should similarly find that their claims for violations of the provisional waiver regulations, equal protection, and the APA are cognizable. However, Petitioners cannot rely on this Court's previous decision regarding due process to prove that they can maintain their remaining claims, which are subject to completely different legal standards. Moreover, Petitioners fail to point to language in the provisional waiver regulation that can be plausibly interpreted to limit ICE's authority to remove petitioners, especially with regard to aliens who are not yet eligible to apply for a provisional waiver. Thus, their claim that Respondents

1

violated the provisional waiver regulations fails under principles of regulatory interpretation. Petitioners further fail to explain how this Court has subject-matter jurisdiction over their APA claims where the Suspension Clause does not apply to APA claims, but, rather, only to habeas claims. Petitioners likewise fail to state an equal protection claim because Executive Order 13768 is neutral on its face, and the president's statements that are unrelated to the executive order do not nudge their claim across the threshold. With regard to the U.S. citizen petitioners' due process claim to family unity, the First Circuit and a plurality of the Supreme Court have already clarified that these types of claims do not pass muster. For these reasons, Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) mandates that this Court completely dismiss Count 1, 3, 4, and the U.S. citizen petitioners' due process claim in Count 2.

**ARGUMENT**

    **I.    This Court lacks subject-matter jurisdiction over the claims of some putative class members.**

Petitioners' attempt to address Respondents' jurisdictional argument in a single conclusory paragraph necessarily fails. This Court has not yet addressed the viability of claims of aliens who were married to U.S. citizens and ordered removed *after* DHS expanded the provisional waiver in 2016 and, accordingly, could have raised their claims related to the provisional waiver in their petitions for review with the court of appeals. This Court only analyzed the application of the Suspension Clause to Petitioners who did not have the opportunity, in their original removal proceedings, to argue that they were entitled to apply for a provisional waiver. In doing so, this Court declared that for a remedy to be adequate under the Suspension Clause, the substitute must allow for "a stay of removal until DHS considers [the alien's] pursuit of the provisional waivers authorized by statute and DHS regulations." *Jimenez v. Cronen,* 334 F. Supp. 3d 370, 385 (D. Mass. 2018). For aliens married to U.S. citizens and ordered removed *after* August 29, 2016, that

adequate remedy *was* available through a petition for review with the court of appeals. Further, 8 U.S.C. § 1252(a)(2)(D) and the First Circuit's decision in *Enwonwu v. Gonzales,* 438 F.3d 22 (1st Cir. 2006) preclude the argument that aliens could not raise this claim in a petition for review. The First Circuit has clarified that the court of appeals, through § 1252(a)(2)(D), has "at least the same review and same relief as to [aliens] as were available under prior habeas law." *Enwonwu,* 438 F.3d at 33. That review certainly encompasses the constitutional claims regarding the provisional waiver that Petitioners present in this habeas action. *See id.* Accordingly, because putative class members ordered removed after 2016 had an adequate substitute for habeas through their petition for review, this Court lacks subject-matter jurisdiction over their claims, and the Suspension Clause does not alter that conclusion.[1]

II. **Petitioners' proposed class is overbroad because it includes individuals who have no due process interest in applying for a provisional waiver.**

a. **The provisional waiver regulations define the scope of any due process interest.**

The parties fundamentally disagree on the legal framework for determining whether an alien with a pending Form I-130 or a pending Form I-212 has a due process interest in applying for a provisional waiver. Because Petitioners proffer that their due process claim arises from the provisional waiver regulations, this Court must determine whether the provisional waiver regulations create a "legitimate claim of entitlement" to apply for a provisional waiver. *Ky. Dept. of Corrections v. Thompson,* 490 US. 454, 460 (1989). This Court already held that this is the proper test for determining whether a regulation creates a claim of entitlement. *Jimenez,* 334 F. Supp. 3d at 386. Moreover the Supreme Court has consistently applied this test when determining

---

[1] Since this Court's decision, the Sixth Circuit issued a decision in *Hamama v. Adducci,* 912 F.3d 869 (6th Cir. 2018) dismissing petitioners' arguments that the Suspension Clause applied to their request for a stay of removal.

whether a due process interest is created by a source of non-constitutional, positive law such as a statute, regulation, or contract. *See e.g., Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 749 (2005); *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 60-61 (1999); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 578 (1972).

Petitioners' primary contention is that Respondents invade on a DHS-established process[2] by removing Petitioners before they can apply for a provisional waiver. *See* ECF No. 224 at 5. However, whether there is a due process interest at each stage in the alleged process turns on the language of the regulations, not on whether the government action would keep an alien from applying for another form of immigration relief. *See Town of Castle Rock, Colo.,* 545 U.S. at 749; *Accardi v. Shaughnessy,* 347 U.S. 260 (1954) (limiting the due process interest to the process required by the regulation). The mere existence of a process to follow is not enough, absent language in the regulation supporting a due process right at each step, to create a due process interest.[3] *See e.g., Mendez-Garcia v. Lynch,* 840 F.3d 655 (9th Cir. 2016) (refusing to find a due process interest in having an application adjudicated in a certain time period even where the alien

---

[2] Many forms of immigration relief have the same hallmarks of the provisional waiver regulations here in that they are (1) made available to a certain group of aliens and (2) require applications and petitions be submitted in a specific order. *See e.g.,* 8 U.S.C. § 1255(i) (allowing aliens who entered without inspection to apply for adjustment of status from within the United States and requiring that a Form I-130 be approved prior to adjustment); 8 U.S.C. § 1154 (a)(1)(A)(vi) (allowing certain juveniles to adjust status if they first get approval for a special immigrant juvenile visa). Despite this, Petitioners point to no case where any alleged process, articulated by the regulations or otherwise, conferred a due process interest at each stage. In fact, the case law reflects the opposite. *See infra* at 4.

[3] Petitioners allege that petitioners "can derive no benefit from their I-130 and I-212 applications in the United States other than through the provisional waiver process." ECF No. 224 at 5. This statement is patently false. These applications are required regardless of an alien's removal and are the same whether the alien applies for them from within the United States or from without. Moreover, an alien who submits these applications will not have to submit them again, regardless of whether he or she is removed from the United States during the application process. Accordingly, an alien derives a benefit through the mere filing of these applications, regardless of the provisional waiver.

would otherwise be unable to apply for cancellation of removal); *Ruiz-Diaz v. United States,* 703 F.3d 483, 487 (9th Cir. 2012) ("The regulation does not bar religious workers from applying for adjustment of status. The regulation has only the practical effect of making it necessary for religious workers to file *visa petitions* earlier.") (emphasis added). This is true even if the outcome would "effectively deny" the alien the ability to apply for relief. *Id.; Aguilar-Aguilar v. Napolitano,* 700 F.3d 1238, 1244 ("Petitioner has a constitutionally protected interest in [the termination of proceedings to apply for discretionary relief] *only if* [the statute] and its accompanying regulations provide substantive criteria limiting DHS's discretion to deny him that outcome.") (emphasis in original); *Mudric v. Attorney General,* 469 F.3d 94, 98 (3d Cir. 2006). The provisional waiver regulations contain no language that suggests an alien has a due process right in applying for a provisional waiver prior to having an approved Form I-212. *See* 8 C.F.R. § 212.7(e). In fact, the regulations expressly disclaim such a right exists. *See* 81 Fed. Reg. 2, 555 (January 3, 2013) (there is no "cognizable due process interest in access to or eligibility for a discretionary, provisional unlawful presence waiver of inadmissibility"). Without language in the regulation indicative of a due process interest at the Form I-130 or Form I-212 stage, Petitioners' argument fails.

Petitioners make a bald assertion that the "legitimate claim of entitlement" framework does not apply to immigration benefit cases but fail to (1) cite a single case in support of that argument and (2) fail to explain why rights created by immigration regulations are analytically distinct from rights created by any other agency regulation or source of non-constitutional law. ECF No. 218 at n.1 ("More importantly, however, separate analysis of whether an "entitlement" is created is unnecessary in the context of immigration benefits."). First, the "legitimate claim of entitlement" test and the Supreme Court cases associated with it have consistently been applied to due process

claims arising from immigration benefits. *Mudric,* 469 F.3d at 98-99 (citing *Roth,* 408 U.S. at 569); *Achacoso-Sanchez v. I.N.S.,* 779 F.2d 1260, 1264 (7th Cir. 1985) (citing cases involving prison regulations and *Roth,* 408 U.S. at 570-77); *Mendez-Garcia v. Lynch,* 840 F.3d 655, 666 (9th Cir. 2016) (citing *Roth,* 408 U.S. at 577). Second, the key cannot be simply that this is an immigration case — rather, it must be that  any perceived due process right arises from a regulation, which is a positive rule of law. *See Knauff v. Shaghnessy,* 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Mudric,* 469 F.3d at 98 ("In making a request for immigration benefits, "aliens only have those statutory rights granted by Congress."). Where, as here, neither Congress, nor the regulation, has created a due process interest at the Form I-130 or Form I-212 stage, the Court should decline Petitioners' invitation to find that one exists.

### b. Petitioners' fail to identify a framework that demands aliens have a due process interest simply because of pending Form I-130s and Form I-212s.

Even though Petitioners assert that a due process right arises from the provisional waiver regulations, they refuse to analyze their claim under the applicable "legitimate claim of entitlement" test. ECF Nos. 218 at 9-16, 224 at 4-9. Instead, Petitioners use conclusions from retroactivity cases without applying the underlying analysis those cases employ.[4] *Id*. Retroactivity is a specific legal issue that has its own legal standard, yet, that standard does not appear anywhere in Petitioners' briefing. This is presumably because a retroactivity analysis cannot apply unless a

---

[4] The three-part retroactivity test was set forth originally in *Landgraf v. USI Film Prod.,* 511 U.S. 244, 266 (1994), and again in *Fernandez-Vargas.* The first step requires courts to look to "whether Congress has expressly prescribed the statute's proper reach." *Fernandez-Vargas,* 548 U.S. at. at 37. If not, courts then ask "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment." *Id.* If it would, then the court "applies the presumption against retroactivity by construing the statute as inapplicable to the event or act in question." *Id.*

new statute or regulation produces a retroactive effect. *Fernandez-Vargas,* 548 U.S. at 40 (It is not "until a statute is shown . . . to produce a retroactive effect when straightforwardly applied that the presumption [against retroactivity] has its work to do."). Petitioners point to no case where a court applied a retroactivity analysis to a government action analogous to the decision to execute a removal order. Indeed, in each case Petitioners cite, there was a change made to a statutory scheme or regulation. *See* ECF No. 224 at 4-9.

For example, in *INS v. St. Cyr,* 533 U.S. 289, 290 (2001), the Supreme Court employed the three-part retroactivity test to determine whether the statutory amendments to the INA eliminating §1182(c) relief to certain aliens, may be applied retroactively. The Court held that "Section 212(c) relief remains available for aliens, like St. Cyr, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, *would have been eligible for § 212(c) relief at the time of their plea* under the law then in effect. *Id.* at 326. Conversely, there is no retroactive statute or regulation here that is even arguably being applied retroactively. Further, aliens without an approved Form I-212 *are not eligible* for a provisional waiver. 8 C.F.R. § 212(e)(4)(iv). Accordingly, Petitioners' "leading case" is not only analytically inapplicable, but is also factually distinguishable. *See id.* Other cases Petitioners cite are distinguishable on identical grounds. *See Fernandez-Vargas v. Gonzales,* 548 U.S. 30 (2006) (applying the three part-retroactivity test to a newly enacted statute); *Ortega v. Holder,* 747 F.3d 1133 (9th Cir. 2014) (same); *Arevalo v. Ashcroft,* 344 F.3d 1 (1st Cir. 2003) (same).

Unlike those cases, there is no new statute or regulation at issue here. Congress, in 8 U.S.C. § 1231, has *always* authorized the removal of aliens with final orders of removal, even though Respondents' priorities in executing removal orders may have changed. *See* 8 U.S.C. § 1231. In fact, DHS recognized that removal priorities change and made clear that even a pending

provisional waiver will not "protect an alien from being placed in removal proceedings or removed from the United States *in accordance with **current DHS policies governing initiation of removal proceedings and the use of prosecutorial discretion.*" 81 Fed. Reg. 2, 536 (emphasis added). Simply put, Petitioners' analysis "puts the cart before the horse." *Fernandez-Vargas v. Gonzales,* 548 U.S. at 40. It assumes that ICE's action in removing petitioners is impermissibly retroactive before determining whether that action triggers the presumption against retroactivity, and, by extension, the due process interest.

The remainder of Petitioners' due process argument is a reiteration of their regulatory claim — that Respondents violate the provisional waiver regulations when they attempt to remove an individual who is pursuing the waiver. However, this argument only prevails if the regulation *requires* the relief Petitioners seek. For the reasons explained *infra,* the text of the regulations precludes such argument at least with regard to aliens without an approved Form I-212. *See Accardi v. Shaughnessy,* 347 U.S. 260 (1954) ("If successful, he may still fail to convince the Board or the Attorney General, in the exercise of their discretion, that he is entitled to suspension, but at least he will have been afforded that due process *required by the regulation* in such proceedings.") (emphasis added).

Petitioners' reliance on the Form I-130 and Form I-212 "enhancing the significance" of the Form I-601A cannot establish that aliens who are not yet eligible to apply for a provisional waiver have a due process interest. First, this quote arose in the context of determining whether an individual had "substantive rights, liabilities, or duties on the basis of conduct arising prior to a statute's enactment." *Fernandez-Vargas,* 548 U.S. at 37. Despite Plaintiff's suggestion, a "substantive right" and a "due process interest" are distinct inquiries. For example, an individual may have a "substantive right" in a particular cause of action or amount of statutory damages, but

it does not follow that they also have a due process interest in it. *See Landgraf v. USI Film Products,* 511 U.S. 244, 284 n. 36 (1994) (collecting cases that describe substantive rights). Accordingly, whether the filing of a prior application "enhances the significance" of another application does not aid in the determination of whether a *due process interest* arises. *See id.* Second, the Supreme Court has never held that taking steps toward legal status and proving reliance triggers the presumption against retroactivity. *See, e.g., Fernandez-Vargas v. Gonzales,* 548 U.S. at 46 ("For that matter, he could have married the mother of his son and applied for adjustment of status during that period, in which case he would at least have had a claim (*about which we express no opinion*) that proven reliance on the old law should have been honored.") (emphasis added). Petitioners fail to identify a framework that lends support to their argument that aliens who are not yet eligible to apply for a provisional waiver have a due process interest in applying for it. Accordingly, this Court should limit the scope of any proposed class to individuals with approved Form I-212s.

> **c. Other facts may prevent putative class members from establishing a cognizable due process interest and may affect the amount of procedural protection they are due.**

Respondents do not confuse any right to ultimate relief sought with any right to apply for that relief. Nonetheless, there are factual circumstances, such as criminal history, that necessarily inform the procedural protections due and whether an alien has a due process interest in applying for a provisional waiver. In *Jennings v. Rodriguez,* 138 S. Ct. 830, 852 (2018), for instance, the plaintiffs were seeking a bond hearing — not a particular result in that hearing. The Supreme Court, regardless, concluded that class certification might not be appropriate because "some members of the certified class may not be entitled to bond hearings as a constitutional matter." *Jennings,* 138 S. Ct. at 852.

Petitioners' argument that it is inappropriate to decide whether these differences impact the ultimate class relief in this case must therefore fall flat. The Supreme Court has clarified that a *single* injunction or declaratory judgement must provide relief to *each* member of a Rule 23(b)(2) class. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360 (2011). Petitioners cannot plausibly argue that the relief they request, however, is applicable to every member of the proposed class. *See Matthews v. Eldridge,* 424 U.S. 319, 321 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands."). If there are differences in the proposed class that will impact what, if any, procedures Petitioners are entitled to *beyond* consideration of the pursuit of a provisional waiver, those differences must be reflected in the class definition. *See Wal-Mart,* 564 U.S. at 360. Accordingly, the Court should declare that Petitioners' proposed class lacks commonality because not every individual of the proposed class is entitled to the relief Petitioners' seek.

### III.   This Court should dismiss Petitioners' claim that Respondents have violated the provisional unlawful presence waiver regulations.

To attempt to state a claim under the INA or applicable regulations, Petitioners must plead facts that indicate that Respondents violated a specific provision of the INA or applicable regulations.[5] Petitioners' argument – grounded in the spirit and purpose of the provisional waiver regulations – may be equitably persuasive, but it does not suffice under a statutory interpretation analysis. *Jennings,* 138 S. Ct. at 842. Rather, the Court should not permit Petitioners to bootstrap

---

[5] Respondents, in their opening brief, argued that Petitioners must establish a violation of either the INA *or* applicable regulations in order to state a claim. ECF No. 220 at 12-13 ("Removing Petitioners while they pursue a provisional unlawful presence waiver would not violate the governing regulations."). Respondents addressed, in turn, whether their actions violated the statute or the regulations. *Id.* Petitioners' blatant mischaracterization of Respondents' argument does not alter this fact. ECF No. 224 at 17 ("Respondents argue that, to succeed on their INA claim, Petitioners must show that the text of the INA — rather than the regulations — entitles Petitioners to a stay of removal . . . ").

what is actually a due process claim into a statutory claim. *See id.* ("In the absence of more than one plausible construction, the canon [of constitutional avoidance] simply has no application."). Petitioners fail to point to a single provision in 8 C.F.R. § 212.7(e) that Respondents violate when they remove an alien pursuing a waiver. *See generally,* ECF No. 224. Moreover, the text of the regulations do not place any such limits on ICE's authority to remove aliens who merely have a pending Form I-212 or Form I-130. 8 C.F.R. § 212.7(e). Courts are not permitted to "transmute existing [regulatory] language into its polar opposite." *Jennings,* 138 S. Ct. at 846. This Court should dismiss Petitioners' claim regarding violations of 8 C.F.R. § 212.7(e) because there is no plausible interpretation of the regulation that requires the relief requested for aliens who do not yet have an approved Form I-212.

Deference to the agency's interpretation of their regulations is appropriate here to the extent this Court finds the regulation ambiguous. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 843 (1984). The text of the regulation says *nothing* about ICE's authority to remove an alien applying for a provisional waiver and the Federal Register Comments refuse any protection from removal. 8 C.F.R. § 212.7(e); 81 Fed. Reg. 2, 536. Therefore, it is hard to imagine why DHS would spend precious resources documenting, through other means, why it believes this regulation does not limit ICE's authority or insulate an applicant from removal. Petitioners' disagreement with Respondents' interpretation does not automatically make Respondents' argument a post-hoc litigation position. Accordingly, Respondents' interpretation of the provisional waiver regulations is entitled to deference and the Court should dismiss under

Federal Rule of Procedure 12(b)(6) Petitioners' claim that Respondents have violated the provisional unlawful presence waiver regulations.[6]

**IV.     This Court should dismiss Petitioners' APA claim.**

Petitioners attempt, yet again, to creatively plead their way around the jurisdictional mandate of 8 U.S.C. § 1252(g) by alleging that their APA claim is not related to the execution of their final orders of removal. However, this Court already held that Petitioners' claims arise from Respondents' decision to execute their removal orders. *See Jimenez,* 334 F.Supp.3d at 383. Further, Petitioners would surely admit that if Respondents never attempted to remove Petitioners, then there would be no "class-wide sabotage of the provisional waiver process." *See* ECF No. 224 at 14. Accordingly, Petitioners' APA claim falls squarely within § 1252(g)'s prohibition on claims arising from the decision to execute a removal order.

Petitioners' argument that the Suspension Clause confers jurisdiction over their APA claim because habeas claims can co-exist with APA claims is unavailing. *See* ECF No. 224 at 15. The issue, as addressed even in the cases Petitioners cite, is not whether a habeas claim can proceed concurrently with an APA claim. *See Putnam v. Winn,* 441 F. Supp. 2d 253, 255-56; *Cornejo-Barreto v. Seifert,* 218 F.3d 1004, 1015-16 (9th Cir. 2000). The issue here is whether the Suspension Clause, which by its terms only protects *habeas* jurisdiction, also preserves jurisdiction over APA claims. As Respondents explain in their opening brief, the answer is no, and Petitioners

---

[6] Respondents have not waived their arguments regarding deference. Respondents properly raised this argument in an opening brief where Petitioners had an adequate opportunity to respond. *See* ECF No. 220. Moreover, the quote Petitioners use to attempt to support their waiver argument provides in full: "The claims are subject to dismissal because they are new claims, *brought in violation of the Court's order* that permitted the supplemental memorandum but disallowed new claims, i.e., claims asserted for the first time in the supplemental memorandum." *Bowden v. United States,* No. 1:11-cr-00132, 2015 WL 3649469 at *14 (D. Mass. June 11, 2015) (emphasis added) Far from ordering the parties from presenting new arguments, this Court encouraged it. *See* ECF No. 193.

fail to address that argument. ECF No. 220 at 18 (citing *Candra v. Cronen,* -- F. Supp. 3d --, 2019 WL 764752 at *6 (D. Mass. February 21, 2019)); *see generally*, ECF No. 224. Accordingly, this Court lacks jurisdiction over Petitioners' APA claim.

Petitioners' arguments regarding the merits of their APA claim merely repeat arguments to which Respondents already responded in their opening brief. ECF No. 220 at 20-21. Respondents' alleged actions do not rise to the level of departing from the provisional waiver regulations *sub silentio. See F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009). Moreover, because the provisional waiver regulations do not limit ICE's authority to remove Petitioners, there is no violation of the regulation. Therefore, this Court should dismiss Petitioners' APA claim under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

### V.     This Court should dismiss Petitioners' equal protection claim.

Petitioners cannot defend their equal protection claim by merely asserting that Respondents' action is unlawful for reasons *unrelated* to animus. *See* ECF No. 224 at 19-20 ("the bigger problem for the government is that this case does *not* involve conduct that DHS is otherwise allowed to engage in"). Whether a government action is unlawful for other reasons unrelated to animus has no bearing on whether a plaintiff has stated a cognizable equal protection claim relating to racial animus. Moreover, Petitioners concede that the executive order Petitioners' allege is discriminatory is facially neutral. ECF No. 224 at 19.Accordingly, in order to state an equal protection claim, Petitioners must show either: (1) that the executive order "has been applied in an intentionally discriminatory manner"; or (2) that the executive order "has an adverse effect and that it was motivated by discriminatory animus." *Alharbi v. Miller,* No. 18-cv-2435, 2019 WL 1367758 at *21 (E.D. N. Y. March 26, 2019). Even construing the president's statements in a light most favorable to Petitioners, there is no suggestion that Executive Order 13768 was enacted

"because of rather than in spite of any discriminatory animus." *See Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 676-77 (2009)). Although courts have an obligation to read factual allegations in the amended complaint in the light most favorable to the plaintiff, courts "must also be conscious of the Supreme Court's admonition that '[a]ny rule of constitutional law that would inhibit the flexibility of the President to respond to changing world conditions should be adopted only with the greatest caution, and our inquiry into matters of entry and national security is highly constrained.'" *Id.* at *23, n. 13 (citing *Trump v. Hawaii,* 138 S. Ct. 2392, 2419-20 (2018)). With that admonition as guidance, and in light of Petitioners' failure to attach racial animus to an otherwise facial neutral government action, the Court should dismiss Petitioners' equal protection claim under Federal Rule of Civil Procedure 12(b)(6).

## VI.    This Court should dismiss the U.S. Citizen Petitioners' due process claim.

No court has found that a U.S. citizen has a due process interest, substantive or procedural, in living with an alien spouse in the United States. Although the plurality opinion in *Kerry v. Din,* 135 S. Ct. 2128 (2015), is not controlling, it is nonetheless persuasive. *See* ECF No. 224 at 10; *Texas v. Brown,* 460 U.S. 730, 737 (1983) (noting that plurality opinions are persuasive). That holding is especially persuasive in light of the First Circuit cases that disclaim due process rights relating to family unity. *See, e.g., Payne Barahona v. Gonzales,* 474 F. 3d 1 (2007) ("Deportations of [family members] are routine and do not themselves dictate family separation."). The First Circuit has clarified that if "there were such a right, it is difficult to see why [family members] would not also have a constitutional right to object to a [family member] being sent to prison, or during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service." *Id.* at 3.  Moreover, circuit courts have continuously rejected claims based on family unity. *Id.* (collecting cases); *see also Silverman v. Rogers,* 437 F.2d 102, 107 (1st

Cir. 1970); *Smith v. I.N.S.,* 684 F. Supp. 1113, 1118 n.2 (D. Mass. 1988). Accordingly, there is no iteration of a family unity due process claim that can survive Respondents' motion to dismiss and the Court should grant that motion under Federal Rule of Civil Procedure 12(b)(6).

**CONCLUSION**

Because this Court's habeas jurisdiction is limited, Petitioners' proposed class fails to satisfy the Rule 23 requirements. Moreover, only putative class members who are eligible to apply for a provisional waiver can state a valid claim under the due process clause, and the Court should dismiss the claim as to all other putative class members. This Court should also dismiss Petitioners' claims under the INA and Applicable Regulations (Count 1), family unity due process claim (Count 2), Equal Protection Clause of the Fifth Amendment (Count 3), and Administrative Procedure Act, 5 U.S.C. §§ 553, 706(2)(A) (Count 4). Determination of the aforementioned issues is imperative at this stage in the litigation in order to determine whether Petitioners' proposed class meets the Rule 23 requirements and due to Petitioners' impending requests for discovery.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

J. MAX WEINTRAUB
Senior Litigation Counsel

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Mary L. Larakers
Mary L. Larakers
Dated: March 29, 2019                     Trial Attorney

16