```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
 2

 3  ━━━━━━━━━━━━━━━━━━━━━━━        CIVIL ACTION NUMBER:
    SYED TAZU,
 4                                 2:19-cv-07872-ES
         Petitioner,
 5                                 ORAL OPINION
         v.
 6                                 Pages 1 - 20
    WILLIAM P. BARR, in his
 7  official capacity as the
    Attorney General of the
 8  United States, THOMAS R.
    DECKER, in his official
 9  capacity as New York Field
    Office Director of U.S.
10  Immigration and Customs
    Enforcement, U.S. DEPARTMENT
11  OF HOMELAND SECURITY, STEVEN
    AHRENDT, in his official
12  capacity as Warden of the
    Bergen County Jail,
13
         Respondents.
14  ━━━━━━━━━━━━━━━━━━━━━━━

15       Martin Luther King Building & U.S. Courthouse
         50 Walnut Street
16       Newark, New Jersey 07101
         Friday, March 29, 2019
17

18

19  B E F O R E:            THE HONORABLE ESTHER SALAS,
                            UNITED STATES DISTRICT JUDGE
20

21

22
           Mary Jo Monteleone, Official Court Reporter
23                maryjomonteleone@gmail.com
                       (973) 580-5262
24
    Proceedings recorded by mechanical stenography; transcript
25           produced by computer-aided transcription.
```

```
 1          (PROCEEDINGS held in open court before The Honorable

 2   ESTHER SALAS, United States District Judge.)

 3          THE COURT:  We are on the record in the matter of

 4   Tazu v. Barr, et al., Civil Action Number 19-7872.

 5          The Court held oral argument on March 26, 2019.

 6   During the hearing, the Court ruled that it had jurisdiction

 7   to hear Petitioner's claims.  The Court reserved its decision

 8   as to the merits of Petitioner's habeas petition.  Having

 9   considered the parties' submissions and arguments, the Court

10   is now ready to rule.

11          American history is a story of immigration.  After

12   all, the United States is "a country whose life blood came

13   from an immigrant stream." Ex parte Kumezo Kawato, 317 U.S.

14   69, 73 to 74 (1942).  But that story, it has been said, is a

15   "complicated history of inclusion and exclusion." Villas at

16   Parkside Partners v. City of Farmers Branch, Texas, 726 F.3d

17   524, 526 (Fifth Circuit 2013).  This case is a clear example.

18   It arises from the government's exercise of its "broad,

19   undoubted power over the subject of immigration and the status

20   of aliens," particularly the power to exclude Petitioner from

21   the United States.  See Arizona v. U.S., 567 U.S. 387, 394

22   (2012).

23          Petitioner has called this country his home for over

24   twenty-five years.  (Docket Entry Number 16, Paragraph 27).

25   He is married and the father of three, of which two are United
```

1    States citizens.  (*Id.*).  He entered the United States in 1993

2    without inspection, allegedly attempting to flee from extreme

3    political persecution he and his wife had suffered in

4    Bangladesh.  (*See* Docket Entry Numbers 16-21 and 29-1).

5         If the allegations are true, Petitioner has had the

6    misfortune of being represented by ineffective counsel at

7    almost every step of his immigration proceedings.  (*See*

8    *generally* Docket Entry Number 16).  Petitioner has been the

9    subject of a final order of removal since June 10, 2003.  (*Id.*

10   Paragraph 38).  In February 7, 2009, he was detained by ICE.

11   (*Id.* Paragraph 41).  Four months later, Petitioner was

12   released on an order of supervision after ICE was unable to

13   obtain travel documents.  (*Id.*).

14        Based on this record, Petitioner is a model

15   supervisee:  He has consistently complied with his order of

16   supervision and has never missed an interview; he has no

17   criminal record; he has maintained a steady job; he has paid

18   his taxes; he has instilled a love for education in his

19   children; and he is a productive and beloved member of his

20   community.  (*See generally* Docket Entry Number 16).

21        On January 6, 2017, his United States citizen son,

22   Addan, filed a Form I-130 Petition for Alien Relative,

23   starting the long and convoluted process to adjust

24   Petitioner's status.  (*Id.* Paragraph 46).  USCIS approved the

25   petition on September 13, 2017.  (*Id.*).  Petitioner, did not,

1  however, take the next steps to seek lawful residency and

2  failed to apply for form I-212.  (*Id.* Paragraph 47 and 48).

3  He alleges that his attorney did not advise him of this part

4  of the process, and that he only learned about it from current

5  counsel.  (*Id.* Paragraph 48).

6       On February 14, 2019, Petitioner attended one of his

7  regular check-in interviews pursuant to his order of

8  supervision, as he had done for the past ten years.  (*Id.*

9  Paragraph 49).  ICE detained him on the spot.  (*Id.*).  ICE

10  asserts that it has finally secured travel documents, and that

11  they intend to remove Petitioner imminently.  (*See* Docket

12  Entry Number 23-5).

13       During oral argument, Respondents' counsel could not

14  explain why it had taken so long to execute the order of

15  removal, nor did Respondents offer any justification for

16  taking this man from his family and his home after so many

17  years of productive presence in this country.  The Court can

18  think of none.  It is with great regret, then, that the Court

19  feels compelled to find that Petitioner's habeas petition

20  fails.  The statutes and regulations adopted by Congress and

21  the Executive provide a short and straight path by which the

22  Executive may remove individuals unlawfully present in this

23  Country.  And though the Court is not "compelled to find the

24  government's actions in this case fair or just" *Ortiz v.*

25  *Sessions*, 857 F.3d 966, 967 (9th Cir. 2017) (Reinhardt, J.,

concurring), the Court feels compelled to find them lawful.

Petitioner requests that he be released and moves for a stay of his removal order.  He raises claims based on the Fifth Amendment due process clause and the Administrative Procedures Act.  The Court applies the traditional stay factors, which require the Court to consider: 1) whether the applicant for the stay has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and 4) where the public interest lies.  *Nken v. Holder*, 556 U.S. 418, 426 (2009).  This is a demanding standard, and "courts should not grant stays of removal on a routine basis." *Id.* At 438.

Here, Petitioner's claims fail on the first prong, and as a result, the Court must deny the petition.

The Court first turns to Petitioner's claims based on a right to complete his motion to reopen sua sponte. Petitioner recently filed a motion to reopen his immigration proceedings.  (Docket Entry Number 29 at 18; Docket Entry Number 29-1).  He asserts that he has a right to pursue and obtain a decision on his motion before ICE can remove him. (Docket Entry Number 29 at 18 to 19).

Immigration law recognizes two types of motions to reopen: Motions resting on the statutorily created right to

file one motion to reopen pursuant to 8 U.S.C. §

1229a(c)(7)(A) -- so-called statutory motions to reopen -- and

motions resting on the BIA's discretionary sua sponte

authority pursuant to 8 C.F.R. § 1003.2(a), which are commonly

referred to as regulatory motions to reopen.

The statutory motion to reopen is "an important

safeguard intended to ensure a proper and lawful disposition

of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233,

242 (2010) (quoting *Dada v. Mukasey*, 554 U.S.1, 18 (2008).

The Third Circuit underscored the importance of this right,

concluding that an alien's statutory right to litigate a

motion to reopen cannot be curtailed by regulations that both

barred the filing of motions to reopen after removal and

deemed existing motions to be withdrawn once an alien is

removed. *See Prestol Espinal v. Attorney General*, 653 F.3d

213, 224 (Third Circuit 2011).  This statutory right is

subject to a time and numerical limitation.  With few

exceptions, an alien can file only one statutory motion, which

must be filed within 90 days of the final order of removal.

*See* 28 U.S.C. § 1229a(c)(7)(A); *Mata v. Lynch*, 135 S. Ct.

2150, 2153 (2015).  These limitations do not apply to motions

that pertain to claims of asylum or withholding of removal

based on changed country conditions.  *See* 28 U.S.C.

§1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

Here, however, Petitioner has filed a regulatory

1  motion to reopen.  (*See* Docket Entry Number 29 at 19).  This

2  is because Petitioner's newly filed motion to reopen is

3  subject to both the numerical and temporal bar of section

4  1229(c)(7)(A).  Particularly, Petitioner's order of removal

5  became final in June 10, 2003, meaning that the 90-day period

6  is long past.  (*See* Docket Entry Number 16, Paragraph 38); 28

7  U.S.C. § 1229a(c)(7)(A).  Moreover, Petitioner filed a

8  statutory motion to reopen in 2009, which sought asylum and

9  withholding of removal based on changed country conditions.

10  (*See* Docket Entry Number 16-22).  Thus, he has taken one bite

11  of the apple.  Petitioner's newly filed motion to reopen does

12  not assert changed country conditions in Bangladesh, but

13  rather, asserts that Petitioner received ineffective

14  assistance of counsel during his prior immigration

15  proceedings.  (*See generally* Docket Entry Number 29-1).

16  Petitioner's motion to reopen, therefore, can only go forward

17  if the BIA decides to exercise its sua sponte discretionary

18  authority, a fact that Petitioner's reply brief acknowledges.

19  (*See* Docket Entry Number 29 at 19).  This distinction is key.

20       As the Third Circuit has explained, regulatory

21  motions to reopen are quite different from statutory motions

22  to reopen.  *See Pllumi v. Attorney General*, 642 F.3d 155, 159

23  (Third Circuit 2011).  Particularly, "because the BIA

24  considers motions sua sponte pursuant to a grant of authority

25  from the Attorney General, there is no statutory basis for a

1  motion to reopen in the sua sponte context." *See Desai v.*

2  *Attorney General*, 695 F.3d 267, 270 (Third Circuit 2012).  As

3  such, the Third Circuit has indicated that regulatory motions

4  to reopen do not implicate either the statutory right or the

5  congressional intent of 8 U.S.C. § 1229a(c).  *See id.*  For

6  instance, while a party like Petitioner is free to file a

7  regulatory motion at any time, nothing in the regulation

8  requires the BIA to act on it.  *See id.*; *Calle-Vujiles v.*

9  *Ashcroft*, 320 F.3d 472, 475 (Third Circuit 2003).  Indeed, the

10 regulation providing for reopening a case sua sponte "offers

11 no standard governing the agency's exercise of discretion."

12 *Id.*  The BIA's discretion is so wide that "even if the party

13 moving has made out a prima facie case for relief," the BIA

14 can deny a motion to reopen a deportation order.  8 C.F.R. §

15 1003.2(a).

16      As a purely discretionary matter, therefore,

17 Petitioner does not have "a protectable interest in being

18 considered for such relief." *See United States v. Torres*, 383

19 F.3d 92, 104 (Third Circuit 2004); *Oladokun v. Attorney*

20 *General*, 207 Federal Appendix 254, 257 (Third Circuit 2006).

21 That is, while the statutory motion to reopen is a right

22 guarded by various protections, the regulatory motion to

23 reopen is "akin to an act of grace" implicating no due process

24 concerns.  *See Alam v. Nielsen*, 312 F. Supp. 3d 574, 583 (S.D.

25 Texas 2018); *Oladokun*, 207 F. App'x at 257; *see also Torres*,

1     383 F.3d at 104 to 106.

2          Petitioner provides no case law that would support a

3 finding that he has a right to obtain a decision on the

4 regulatory motion to reopen before he is removed.  Instead,

5 Petitioner relies to two non-binding district court cases from

6 outside this Circuit.  (*See* Docket Entry Number 29 at 19 to

7 20).  But these cases are easily distinguishable because they

8 involved petitioners who had invoked the statutory right, not

9 the BIA's sua sponte discretion, to reopen their removal

10 proceedings.  *See Compere v. Nielsen*, No. 18-1036, 2019 WL

11 332193 at *3 (District of New Hampshire 2019); *Devitri v.*

12 *Cronen*, 290 F. Supp. 3d 86, 91 (District of Massachusetts

13 2017).

14          During oral argument, Petitioner's counsel attempted

15 to argue that the newly filed motion is a statutory motion to

16 reopen.  But Petitioner's counsel could not point to any case

17 law, statute, or regulation -- and the Court's own research

18 has uncovered none -- that would permit the BIA to consider a

19 regulatory motion to reopen based on infective assistance of

20 counsel, like the one here, as a statutory motion.

21          Consequently, the Court finds that Petitioner has

22 failed to show that he has a due process right to stay his

23 removal pending the adjudication of his motion to reopen.  As

24 such, petitioner cannot show any likelihood of success on the

25 merit as to Count Six.

1    The Court will next address Petitioner's claims based

2  on the asserted due process right to pursue the provisional

3  waiver process.

4    Petitioner asserts that he has a protected due

5  process right to pursue the provisional waiver process, since

6  he has an approved form I-130.  (*See* Docket Entry Number 10 at

7  7 through 9).  In opposition, Respondents contend that no such

8  right exists. (*See* Docket Entry Number 23 at 4).

9    Respondents state that Petitioner's asserted right

10 hinges on a fundamental misunderstanding of the regulations.

11 (*Id.*).  In support, they point to the language in the

12 regulation, as well, as to the regulatory history where DHS

13 provided its own interpretation of the regulation.  (*See id.*

14 At 7 through 9).

15    Inexplicably, Petitioner's reply brief ignores these

16 arguments.  (*See* Docket Entry Number 29).  During oral

17 argument, Petitioner's counsel cited several district court

18 opinions, including a case out of this district, which have

19 held that the provisional waiver process creates a due process

20 right to obtain a decision before the alien can be removed.

21 These cases, however, have failed to analyze the underlying

22 regulatory language and history cited by Respondents.  *See*,

23 *for example, De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400

24 (D.N.J. 2018); *Calderon v. Sessions*, 330 F. Supp. 3d 944

25 (S.D.N.Y. 2018).

1      The Due Process Clause of the Fifth Amendment

2 protects the "liberty" of "all persons within the United

3 States, including aliens, regardless of whether their presence

4 here is lawful, unlawful, temporary, or permanent." *Zadvydas*

5 *v. Davis*, 533 U.S. 678, 693 (2001).  "A liberty interest may

6 arise from... an expectation or interest created by other laws

7 or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

8 To have a due process interest in a benefit, "a person clearly

9 must have more than an abstract need or desire and more than a

10 unilateral expectation of it." *Town of Castle Rock, Colorado.*

11 *V. Gonzales*, 545 U.S. 748, 756 (2005).  Rather, the regulation

12 must create a "legitimate claim of entitlement" to it.

13 *Kentucky Department of Correction v. Thompson*, 490 U.S. 454,

14 460 (1989).

15      To determine whether there is a legitimate claim of

16 such entitlement, courts must "examine closely the language of

17 the relevant statutes and regulations." *Id.*; *Gonzales*, 545

18 U.S. at 749.  Generally, "a benefit is not a protected

19 entitlement if government officials may grant or deny it in

20 their discretion." *Clukey v. Town of Camden,* 717 F.3d 52, 56

21 (First Circuit 2013).  Rather, when determining if a

22 regulation creates a liberty or property due process interest,

23 the Court must look at whether the regulation:  1) establishes

24 substantive predicates to govern official decision-making, and

25 2) "contains explicitly mandatory language" directing the

decisionmaker to reach a particular outcome.  *See Thompson*, 490 U.S. at 462 to 463; *Torres*, 383 F.3d at 105.  Indeed, the Supreme Court has clarified that the "decisive fact" determining the due process interest is whether the regulation requires the relevant agency to exercise its discretion.  *See Accardi v. Shaughnessy,* 347 U.S. 260, 265, 268 (1954).  Thus, for instance, in *Accardi* the Supreme Court found that the BIA erred in failing to exercise the discretion to adjudicate a petition to suspend deportation because the underlying regulation specifically provided that the BIA "shall exercise such discretion and power conferred upon the Attorney General by law." *Id.* At 266 (quoting applicable regulations).

Also relevant here is the principle that "where an agency has promulgated rules pursuant to notice and comment procedures, the Supreme Court has held that courts must defer to the agency's reasonable interpretation." *Cleary ex rel. Cleary v. Waldman*, 167 F.3d 801, 807 (Third Circuit 1999) (citing *Chevron, U.S.A., Inc. V. National Resources Defense Council, Inc*., 467 U.S. 837, 844 (1984)).

Here, the provisional waiver process is set out by 8 C.F.R. 212.7(e), a regulation promulgated by the DHS through the notice and comment process.  *See* 78 Federal Register 536-01; 81 Federal Register 50244-01.  The regulation grants USCIS the exclusive jurisdiction to adjudicate provisional unlawful presence waiver applications. 8 C.F.R. 212.7(e)(1).

The regulation also contemplates that the applicant will be in the United States when he or she applies.  *See id.* 212.7(e)(3)(i).  The regulation does not create, however, a legitimate claim of entitlement.

First, the underlying regulation contains no language requiring USCIS to exercise its discretion, even when an applicant meets the requirements.  Particularly, section 212.7(e)(2)(i) states that "USCIS **may** adjudicate applications for a provisional unlawful presence waiver of inadmissibility..."  Further, this provision states that "the decision whether to approve a provisional unlawful presence waiver application is discretionary."  *Id.*  Thus, unlike the regulation at issue in *Accardi*, where the BIA was mandated to exercise its discretion, no such requirement is present here.

Moreover, the regulation also states that "a pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary."  8 C.F.R. § 212.7(e)(2). The regulatory history unambiguously shows that DHS purposefully added this language to clarify that applicants for the provisional waiver would receive no interim benefits, including any protection from removal or law enforcement action.  *See* 78 Federal Register at 555.  Particularly, several commenters requested that individuals with pending provisional waiver applications be extended various benefits,

1   including a request that the individual should be placed in a

2   "period of stay authorized by the Secretary."   *Id.*   DHS

3   expressly declined to do so, and stated that it had added the

4   language in section 212.7(e)(2) to the final rule to make

5   clear that: "the filing or approval of a provisional unlawful

6   presence waiver application *will not*: (1) Confer any legal

7   status; (2) protect against the accrual of additional unlawful

8   presence; (3) authorize an alien to enter the United States

9   without securing a visa or other appropriate entry document;

10  (4) convey any interim benefits...; or (5) **protect an alien**

11  **from being placed in removal proceedings or removed from the**

12  **United States**, in accordance with current DHS policies

13  governing initiation of removal proceedings and use of

14  prosecutorial discretion." *See id.*

15          Further, DHS indicated that "there is no cognizable

16  due process interest *in access* to or eligibility for a

17  discretionary, provisional unlawful presence waiver of

18  inadmissibility."   *Id.* At 554.   DHS explained that

19  "provisional unlawful presence waiver process is purely

20  discretionary and no alien has a right to obtain a waiver from

21  the Secretary of Homeland Security."   *Id.*   DHS reiterated this

22  view in the 2016 amendment, again stating that it "disagrees

23  that there is a legal due process interest *in access to* or

24  eligibility for discretionary provisional waivers of

25  inadmissibility" because the provisional waiver process does

1   not "involve a comprehensive, final assessment of an

2   applicant's admissibility and eligibility for a benefit."  81

3   Federal Register at 50259.

4           Faced with DHS's own reasonable interpretation of the

5   regulatory language, then, this Court is unable to conclude

6   that Petitioner has any right to remain in the United States

7   to complete the provisional waiver process -- or that the

8   regulation limits ICE's legal authority to execute the removal

9   order -- when DHS expressly refused to interpret its own

10  regulation as creating such as right.  *See Waldman*, 167 F.3d

11  at 807.

12          Second, even assuming that that the regulation

13  creates a legitimate entitlement to obtaining a decision on

14  the provisional waiver application, Petitioner here does not

15  yet have a vested interest in that entitlement.

16          A due process interest in a particular benefit

17  attaches only when the party meets the eligibility

18  requirements of that benefit.  *See American Manufacturers*

19  *Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 60 to 61

20  (1999).  For instance, in *Sullivan* the respondents claimed

21  that state law created a property interest in receiving

22  payment for medical treatment for work-related injuries.  *See*

23  *id.* at 60.  The law required employers to pay for reasonable

24  and necessary medical expenses, and that any disputes as to

25  reasonableness and necessity be resolved before payment.  *Id.*

1  Relying on this language, the Supreme Court held that while

2  respondents had established initial eligibility to receive the

3  alleged benefit by showing a work-related injury, they had not

4  yet cleared the hurdle of showing that the medical treatment

5  was reasonable and necessary.  *Id.* at 61.  That is,

6  respondents had not met all the conditions to obtain the

7  benefit.  *Id.*  Consequently, respondents had no due process

8  claim because they had no vested property interest.  *Id.*

9        Here, the regulation states that "an alien is

10  ineligible for a provisional unlawful presence waiver" if "the

11  alien is subject to an administratively final order of

12  removal, ...**unless** the alien has already filed and **USCIS has**

13  **already granted,**" form I-212.  8 C.F.R. § 212.7(e)(4)(iv).

14  The text makes plain that in order for Petitioner to be

15  entitled to any consideration for the provisional waiver he

16  must first show he has an approved I-212.

17        Again, the regulatory history to the 2016 amendment

18  support this finding.  Particularly, commenters recommended

19  that USCIS permit individuals subject to a final order of

20  removal to file provisional waiver applications concurrently

21  with Form I-212.  81 Federal Register at 50255.  In declining

22  this recommendation, DHS explained "that requiring the filing

23  of separate Forms I-601A and I-212 simply reflects the fact

24  that they are intended to address two separate grounds of

25  inadmissibility, each with different waiver eligibility

1   requirements."   *Id.* At 50256.   DHS further explained that

2   "given that an applicant still has to demonstrate visa

3   eligibility, including admissibility, at the time of the

4   immigrant visa interview..., the Department believes the goals

5   of the provisional waiver process are supported by making it

6   available to those with final orders only if they already have

7   conditionally approved a Form I-212 application."   *Id.*   As

8   such, DHS explained that "USCIS will deny a provisional waiver

9   application if the applicant's Form I-212 application has not

10  yet been conditionally approved at the time the individual

11  files his or her provisional waiver application."   *Id.*

12          Based on the language of the regulation, then, any

13  entitlement Petitioner might have to be considered for a

14  provisional waiver attaches only after he clears the hurdle of

15  obtaining consent to reapply for admission into the United

16  States.   8 C.F.R. § 212.7(e)(4)(iv).

17          Petitioner recently filed Form I-212, but the record

18  does not show that USCIS has conditionally approved it.   (*See*

19  *generally* Docket Entry Numbers 29 and 29-3).   Because

20  Petitioner has not yet cleared this hurdle, his "due process

21  claim falters for lack of a property interest."   *See Sullivan*,

22  526 U.S. at 61.   Consequently, Petitioner cannot show that he

23  is likely to succeed on the merits as to Counts One through

24  Four.

25          Petitioner next argues that his detention is

1  unlawful.  Petitioner asserts that when an individual like him

2  has complied with the terms of the order of supervision, he is

3  entitled to "an orderly departure."  (D.E. No. 19 at 26 to 27

4  (citing *Rombot v. Souza*, 296 F. Supp. 3d 383 (District of

5  Massachusetts 2017) and *Ragbir v. Sessions*, No. 18-0236, 2018

6  WL 623557 (S.D.N.Y. January 29, 2018)).  But as the Court

7  explained during oral argument, these cases are easily

8  distinguishable.  Specifically, the underlying order of

9  supervision in those cases contained an explicit promise that

10  the alien would "be given an opportunity to prepare for an

11  orderly departure" when he had to leave the United States.

12  *See Rombot*, 296 F. Supp. 3d at 388; *Ragbir*, 2018 WL 623557, at

13  *2, note 9.  Here, Petitioner has provided no evidence that

14  such a promise was ever made to him.

15       Petitioner also argues that ICE has not complied with

16  relevant regulations, which require that an alien be given an

17  informal interview upon revocation of the order of

18  supervision.  (*See* Docket Entry Number 29 at 26).  The

19  regulations permit ICE to revoke an order of supervision if

20  "it is appropriate to enforce a removal order."  8 C.F.R. §

21  241.4(l)(2)(iii); *see also* § 241.13(i)(2).  Generally, ICE is

22  required to provide the alien with an informal interview to

23  afford the alien an opportunity to respond to the reasons for

24  the revocation.  § 241.4(l)(1).  However, "the district

25  director or the HQPDU Director may, in his or her discretion,

suspend... the custody review process if such detainee's prompt removal is practicable and proper, or for other good cause."  8 C.F.R. § 241.4(k)(3).

Here, Petitioner has been detained pursuant to 8 U.S.C. § 1231.  (Docket Entry Number 16 at 25).  Respondents have provided evidence that Petitioner' removal was imminent because Respondents received the necessary travel documents on February 11, 2019.  (*See* D.E. No. 23-5, Paragraph 11).  In fact, during the March 11, 2019 telephone conference, Respondents' counsel indicated that ICE was going to remove Petitioner that evening.  Consequently, because Petitioner's removal was imminent, ICE was permitted to revoke Petitioner's order of supervision, detain him, suspend the informal interview, and effectuate his removal pursuant to the final order of removal.  *See, for example, Alam*, 312 F. Supp. 3d at 581.

Moreover, even assuming respondents were required to provide Petitioner with the informal interview, Petitioner presents no cognizable claim.  The purpose of the interview in this case would have been to provide Petitioner with the opportunity to show that his removal is not reasonably forceable.  Because ICE had secured travel documents, his removal is undoubtably imminent.  *See, for example, Alam*, 312 F. Supp. 3d at 581; *Doe v. Smith*, No. 18-11363, 2018 WL 4696748, at 9 to 10 (District of Massachusetts October 1,

1   2018).  Thus, Petitioner has failed to show that he is likely

2   to succeed as to Counts Seven and Eight.

3          Finally, Petitioner asserts that Respondent's actions

4   violated the APA.  (Docket Entry Number 16 at 30).  This claim

5   is contingent on his asserted due process claims.  (*See* Docket

6   Entry Number 10 at 6 to 7; *see generally*, Docket Entry Number

7   29).  Because the Court has already found that Respondents

8   have not violated Petitioner's due process right and that the

9   regulations permit Respondents to take the actions at issue,

10  Petitioner cannot show that Respondents have acted

11  arbitrarily, capriciously, or not in accordance with law.  *See*

12  5 U.S.C. § 706(2)(A).  Therefore, Count Five also falters.

13         Therefore, the Court denies the petition and the

14  request for a stay of removal.  An appropriate Order will

15  accompany this oral opinion.

16                    (Proceedings concluded.)

17

18         -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

19

20         I certify that the foregoing is a correct transcript

21  from the record of proceedings in the above-entitled matter.

22

23  */S/ Mary Jo Monteleone, CCR, CRCR, RPR*
    *Court Reporter*

24
    *03/29/2019*

25  *Date*