# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., | ) ) ) ) | |
| Individually and on behalf of all others similarly situated, | ) ) ) | No. 1:18-cv-10225-MLW |
| Plaintiffs-Petitioners, | ) ) ) | |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| KIRSTJEN M. NIELSEN, et al., | ) ) ) | |
| Defendants-Respondents. | ) ) | |

## MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION TO OPEN DISCOVERY FOR THE NAMED PETITIONERS

## I.    INTRODUCTION

Petitioners are five married couples seeking lawful status for their non-citizen spouse through the Provisional Waiver Process.  One year ago, almost to the day, they filed their Amended Class Action Complaint asking this Court to end Respondents' illegal arrest, detention, and removal practices.  More than seven months have passed since this Court denied Respondents' Motion to Dismiss, finding that it would violate the Due Process Clause to remove a Petitioner unless Respondents make "an individualized decision to do so based on more than the mere fact that the alien is subject to a final order of removal."  Dkt. No. 159 at 35.

During this time, and in accordance with the Court's directive, Petitioners have made numerous overtures to begin merits discovery.  Respondents have stonewalled Petitioners' every attempt and refuse to produce even the most basic information that go to the heart of their claims.  Having attempted to negotiate discovery with the government for the past four months with no

success, Petitioners respectfully ask this Court to issue an Order to open merits discovery with respect to the named Petitioners to "secure the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1. Petitioners further ask that the Court issue an Order compelling Respondents to produce documents responsive to the four narrow Requests for Productions Petitioners have proposed. *See infra* Section I.B. Finally, Petitioners ask that the Court set a Rule 16 conference and issue a scheduling order pursuant to Fed. R. Civ P. 16(b) and 26(f).

## I.      FACTUAL BACKGROUND

### A.      Relevant Procedural History

Petitioners filed their Amended Class Complaint on April 10, 2018 alleging that Respondents' practices violate the Immigration and Nationality Act (INA), due process, equal protection, and the Administrative Procedure Act (APA). *See* Dkt. No. 27. On April 23, 2018, Respondents filed their Motion to Dismiss Petitioners' First Amended Complaint. *See* Dkt. No. 40. Thereafter, on April 30, 2018, Petitioners filed a Motion for Class Certification, *see* Dkt. No. 46, and a Motion for a Temporary Restraining Order and Preliminary Injunctive Relief ("PI Motion"). *See* Dkt. No. 49. On May 14, 2018, this Court ordered former Acting Deputy Field Office Director ("FOD") Thomas Brophy and Deputy FOD Todd Lyons to testify before the Court regarding Petitioners' pending PI Motion. *See* Dkt. No. 69 at 1-2. After Respondents testified that they changed their pre-existing policy and practice of arresting noncitizens who attended interviews for immigration benefits at CIS offices, *see* Hearing Tr. (May 22, 2018) at 22:15-23, the Court ordered the parties to discuss settlement. *See* Lobby Conference Tr. (May 23, 2018) at 6.

In June 2018, Respondents filed a "Notice of Substituted Party," replacing Mr. Brophy with Rebecca Adducci. *See* Dkt. No. 100. In a declaration in support of this notice, Respondents appeared to reverse their policy once more, stating that "no classes or categories of removal aliens are exempt from enforcement, including detention." *See id.* at 6-7 (Adducci Decl. ¶ 5). Shortly after, Petitioner Lucimar de Souza appeared for a routine check-in at the Boston Field Office and was ordered by ICE representatives to depart the United States on or before August 12, 2018. *See* Dkt. No. 98 (Provazza Decl.) Ex. B (Letter Regarding Ms. de Souza's Removal). Similarly, on July 2, 2018, ICE arrested Godfrey Nkojo, a putative class member, at a check-in. *See* Dkt. No. 115 at 4-5; *Nkojo v. Nielsen*, 1:18-cv-11401-MLW (filed July 3, 2018).

In light of the Boston Field Office's continued practice of arresting, detaining, and attempting to remove provisional waiver applicants, Petitioners moved for limited discovery. *See* Dkt. Nos. 108 & 115. On June 28, 2019, Petitioners requested an order directing Respondents to:

> (i) produce Ms. Adducci, Mr. Brophy, and Mr. Lyons for deposition on or before July 31, 2018, or as soon thereafter as the parties' and witnesses' schedules permit; and (ii) no later than ten (10) days before any such deposition, produce all documents regarding (a) Ms. Adducci's appointment as Interim FOD at ERO Boston, (b) enforcement activities against persons presenting for I-130 interviews at CIS and/or otherwise pursuing the provisional waiver process, including documents sufficient to identify any such persons who have been arrested, detained, and/or deported, and (c) the June 12 decision to give Ms. De Souza a notice to depart the United States.

*See* Dkt. No. 108 at 3.

On July 16, 2018, this Court granted Petitioners' motion in part, allowing Petitioners to depose Ms. Adducci, Mr. Brophy, and Mr. Lyons, and ordering Respondents to produce by July 18 documents, regarding:

> (a) the 2018 policies and general practices of the ICE Boston Field Office concerning the arrest, detention, and removal of aliens presenting for I-130 interviews at CIS offices or otherwise pursuing the provisional waiver process; (b) the identity and status of all aliens

arrested while at a CIS office in 2018 within the jurisdiction of the ICE Boston Field
Office while appearing for an I-130 interview, including: whether and for how long they
have been detained; whether and when they received or will receive notices of custody
reviews and custody reviews; whether and when ICE intends to deport them; whether
they have received stays of removal; and whether ICE considered their applications for
provisional waivers when deciding whether to deport them; and (c) the reasons for the
decision to give De Souza a June 12, 2018 notice to depart the United States and to
withdraw it, and the identity of the official(s) who made those decisions.

See Dkt. No. 117 at 11-12. Petitioners completed their depositions by July 30, and Respondents

continued to produce documents related to the detention of noncitizens seeking provisional

waivers at CIS offices in 2018 until August 14.

On August 27, 2018, the Court denied Respondents' Motion to Dismiss with respect to

the due process claims, ruling that it would violate the Due Process Clause to remove a Petitioner

unless Respondents make "an individualized decision to do so based on more than the mere fact

that the alien is subject to a final order of removal." Dkt. Nos. 152 & 159 at 35.

On September 21, 2018, the Court ordered the parties to confer and, among other things,

"[p]ropose a schedule for other matters, including possible discovery." Dkt. No. 160 at 3.

Consequently, on October 3, 2018, the parties filed a Joint Report and a Joint Statement Pursuant

to Fed. R. Civ. P. 26(f) and Local Rule 16.1(d). See Dkt. No. 162. Respondents stated that they

opposed any additional discovery, claiming that such discovery was unnecessary to decide the

merits of Petitioners' claims and would ordinarily be unavailable in a habeas action. See id. at 6.

Petitioners informed this Court that they intended to serve their first set of document production

requests seeking information regarding:

(i) Respondents' targeting, arrest, detention, and/or removal of persons availing
themselves of the provisional waiver process; (ii) the extent to which Respondents
take into account the provisional waiver process in connection with the targeting,
arrest, detention, and/or removal of noncitizens; (iii) what instruction or training is
provided on how the provisional waiver is being assessed as a criterion for removal
or detention determinations; (iv) the cases in which ICE took participation in the

provisional waiver process into account for removal or detention determinations; and (v) the outcome of such cases.

*See* Dkt. No. 162-1 at 4.[1]

On October 4, 2018, Petitioners served Respondents with Petitioners' First Set of Interrogatories.  At a hearing on October 9, the Court ordered the parties to "confer about whether there should be any discovery on the individual[] [Petitioners]" and stated that Petitioners could file a motion requesting such discovery.  *See* Dkt. No. 166 at 44-45.  The Court then issued an order stating that "Respondents need not respond to [Petitioners'] October 5, 2018 [sic] requests for discovery" and directing the parties to "not serve any additional requests for discovery unless a motion to do so is allowed."  *See* Dkt. No. 168 at 3.

On October 11, 2018, at Petitioners' request, this Court stayed Petitioners' PI Motion in exchange for limited reporting regarding outcomes for putative class members at Boston ICE-ERO Order of Supervision check-ins.[2]  *See* Dkt. No. 168 at 3.[3]

---

[1] Petitioners also informed this Court that they anticipated needing further discovery regarding "(vi) Respondents' handling of individuals who were pursuing provisional waivers since the August 2016 provisional waiver regulations went into effect in, including the detention and removal of individuals seeking lawful status under the regulations; (vii) the reasons and impact of Respondents' conduct;"; "(viii) the adjudicative process for I-130s, I-212s, and I-601s;" and "(ix) USCIS's involvement in arrests made at I-130 interviews or elsewhere."  *See* Dkt. No. 162-1 at 4.

[2] The parties conditioned the Stay upon Respondents' agreement to provide reporting concerning the outcome of cases at Boston ICE-ERO Order of Supervision check-ins in which ICE considered an individual's participation in the provisional waiver process.  *See* Dkt. No. 162 at 2.

[3] Petitioners continue to receive this limited reporting from Respondents.  It consists of a spreadsheet listing, for putative class members, the following categories of information: "Check In Date"; "A-Number" (redacted); "Last Name" (redacted); "First Name" (redacted); "Final Order"; "I-130"; "I-212"; "I-601A"; "Petitioner"; "Criminal"; "Instructions to Aliens"; and "Additional Comments (if any)."  Petitioners have not received any information or reporting regarding enforcement actions in any other context, including individuals arrested by Respondents, individuals not under orders of supervision, or individuals who may be targeted for arrest at the address used on their USCIS applications.

B.       **Petitioners' Discovery Requests**

Pursuant to this Court's Order, Petitioners have attempted to negotiate discovery

regarding the merits of Petitioners' individual due process claims.  On December 20, 2018,

Petitioners presented Respondents with four narrowly tailored Requests for Production[4]

concerning named Petitioners' due process claims:

### REQUEST FOR PRODUCTION NO. 1

All Documents and Things concerning a) any Enforcement Action taken or considered by
the Boston ICE ERO against any Petitioner, or b) any adjudication of a stay of removal
(Form I-246). This includes Documents and Things related to any Risk Classification
Assessments, stay adjudications, arrest or release decisions, and order of supervision
notations.

### REQUEST FOR PRODUCTION NO. 2

All Documents and Things concerning any Petitioner and in the custody or control of
United States Citizenship and Immigration Services, including internal communications
and communication between USCIS and any other entity about the scheduling or
adjudication of any application.

### REQUEST FOR PRODUCTION NO. 3

All DHS, ICE, or ERO headquarters' communications, including internal
communications and communications with the Boston ERO, relating to Petitioners,
arrests at USCIS offices in the Boston ERO, or consideration of the Provisional Waiver
Process or its parts by the Boston ERO.

### REQUEST FOR PRODUCTION NO. 4

All Documents and Things concerning whether and how Respondents accounted or
currently account for a person's Participation in the Provisional Waiver Process in
considering whether to take Enforcement Action or adjudicating a stay of removal in the
Boston ERO, including any Communications or Documents relating to the Provisional
Waiver Process or its parts, how Participation in the Provisional Waiver Process was/is
considered when determining whether to take Enforcement Action or adjudicate an
application for a stay of removal, how an officer came to know of an individual's

---

[4] A true and correct copy of the proposed Requests for Production is attached to the
contemporaneously filed April 18, 2019 Declaration of Shirley X. Li Cantin ("Cantin Decl.") as
Exhibit A.

Participation in the Provisional Waiver Process, and what information was/is available to that officer.

*See* Dkt. No. 200 at 2; Cantin Decl. Ex. A at 8-9.

On a February 14, 2019 telephone call, the parties conferred concerning Petitioners' proposed requests. *See* Email from Mary L. Larakers (Feb. 14, 2019, 12:35 EST); Email from Colleen McCullough (Mar. 1, 2019, 9:20 EST).[5]  During that call, Respondents objected to Petitioners' proposed discovery, claiming that these requests were duplicative of materials that Respondents had previously produced. *See* Email from Colleen McCullough (Mar. 1, 2019, 9:20 EST) (summarizing February 14 call).  Respondents indicated, however, that they might be willing to produce documents that they had not previously produced. *See id.* (summarizing February 14 call).  In response, Petitioners identified several categories of directly relevant and nonduplicative documents, such as "any documents regarding Petitioners who were not detained (Deng Gao, Sandro De Souza, and Oscar Rivas), USCIS internal communications, any responsive documents from before January 1, 2018, . . . RCA work-ups for the Petitioners" and "documents from the named Petitioners' A-files."[6] *See id.*

Nevertheless, on February 25, Respondents informed Petitioners that they refuse to provide any documents responsive to Petitioners' proposed Requests for Production and would only "consider" "specific requests" for "specific documents." *See* Email from Mary L. Larakers (Feb. 25, 2019, 16:19 EST).

---

[5] A true and correct copy of the referenced email correspondence is attached to the Cantin Decl. as Exhibit B.

[6] The "A-file" is a comprehensive collection of official documents maintained by DHS detailing a non-citizen's full immigration history.

On March 1, as a result of Respondents' refusal to meaningfully engage, Petitioners informed Respondents that they intended to move the Court to open discovery on behalf of named Petitioners' individual claims and asked whether Respondents would assent.  *See* Email from Colleen McCullough (Mar. 1, 2019, 9:20 EST).  In an effort to further narrow their requests, Petitioners asked whether Respondents would be willing to, at the very least, produce specific documents from the "A-files that 1) have not already been produced, and 2) were not submitted by the noncitizens or their spouses, or, if submitted by the noncitizens or their spouses, contain notations (other than receipt stamps) made by government officials."  *See id.*  In other words, these are documents solely within the government's possession.

On March 4, 2019, Respondents refused to assent to Petitioners' motion seeking discovery, *see* Email from Mary L. Larakers (Mar. 4, 2019, 13:36 EST), and declined to "produce the documents requested from Petitioners' [A]-files at this time," claiming that "[m]any" of the documents in the A-files were "unrelated to the claims presented" because they "were created in connection with [Petitioners'] removal proceedings" "but would still need to be reviewed for privileged information."  *See* Email from Mary L. Larakers (Mar. 4, 2019, 15:50 EST).  Respondents offered to consider any "further narrow[ed]" requests regarding the A-files. *See id.*

On March 6, 2019, Petitioners emailed Respondents that, despite repeated attempts to narrow their requests, Respondents continued to deny Petitioners any discovery related to Petitioners' A-files.  *See* Email from Stephen Provazza (Mar. 6, 2019, 18:32 EST).  Petitioners explained that it would not be possible for them "to know in advance what specific relevant documents" the A-files contained, or "to keep guessing at possible documents within [named Petitioners'] A-files that the government might be willing to provide."  *See id.*  Petitioners

informed Respondents that they viewed the government's position as a "refusal to provide any discovery related to named Petitioners' claims." *See id.*

## II.     ARGUMENT

Petitioners respectfully move this Court to open discovery pursuant to Federal Rules of Civil Procedure 1 and 37, Federal Rule of Evidence 102, and Local Rules 26.1 and 37.1. Seven months have passed since this Court denied Respondents' Motion to Dismiss, allowing Petitioners' due process claims to move forward. Respondents have stonewalled every attempt by Petitioners to seek discovery and refused to produce even the most basic documents that go to the heart of Petitioners' claims. The requested discovery is critical to determine not only the merits of their claims, but also the necessity and scope of any injunctive relief.

### A. The Court Should Open Discovery as to Named Petitioners' Claims

To "secure the just, speedy, and inexpensive determination" of this action, this Court should open discovery as to Petitioners' individual claims. *See* Fed. R. Civ. P. 1; *see also* Fed. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly, [and to] eliminate unjustifiable expense and delay . . . ."); LR, D. Mass. 26.1(a) ("The judicial officer should encourage cost effective discovery by means of voluntary exchange of information among litigants and their attorneys."). Given that the Court has already denied Respondents' motion to dismiss, there is no legitimate basis for Respondents to refuse to provide discovery on Petitioners' due process claims. Postponing individual discovery any further will only serve to delay the eventual resolution of this litigation, increase the danger of losing evidence, and frustrate the interests of the parties or the public. *See S.E.C. v. K2 Unlimited, Inc*., 15 F. Supp. 3d 158, 160 (D. Mass. 2014) (denying government's motion to stay discovery citing "the risk of losing evidence through the death of witnesses or fading memories") (Wolf, J.). Indeed, since

this litigation began, Petitioners have witnessed a revolving door of ICE-ERO Boston Field

Office Directors, *see* Dkt. No. 100, resulting in purported changes to ICE policy.  *See* Hearing

Tr. (May 22, 2018) at 22:15-23:13; Dkt. No. 100 at 6-7 (Adducci Decl. ¶ 5).  By postponing

discovery any further, Petitioners risk losing access to the memories and knowledge possessed

by this rotating cast of ICE officials.

### B.  Respondents Should Be Compelled to Provide the Requested Discovery

 "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case."  *In re Intuniv Antitrust Litig.*,

No. 16-cv-12396-ADB, 2018 WL 6590616, at *2 (D. Mass. Dec. 14, 2018) (quoting Fed. R. Civ.

P. 26(b)(1)).

The requested discovery is directly relevant to Petitioners' due process claims.  This

Court held that Respondents' failure to consider an applicant's participation in the Provisional

Waiver Process when executing orders of removal violates due process.  *See* Dkt. No. 159 at 28

("ICE may only remove an alien who is pursuing a provisional waiver after considering that fact

and the policy reasons for the provisional waiver regulations.").  Petitioners' requests seek

information regarding the government's consideration, or failure to consider, the named

Petitioners' participation in the Provisional Waiver Process.  *See*, *e.g.*, Cantin Decl. Ex. A at 8

("All DHS, ICE, or ERO headquarters' communications . . . relating to Petitioners, arrests at

USCIS offices in the Boston ERO, or consideration of the Provisional Waiver Process or its parts

by the Boston ERO."); Cantin Decl. Ex. A at 8-9 ("All Documents and Things concerning

whether and how Respondents accounted or currently account for a person's Participation in the

Provisional Waiver Process in considering whether to take Enforcement Action . . . .").  There

can be no dispute that the discovery sought is fundamental to the due process claims at issue in

this case, and for which this Court has ruled may proceed.  *See* Dkt. Nos. 152 & 159; *see also In re Intuniv Antitrust Litig.*, No. 16-cv-12653-ADB, 2018 WL 6492747, at *2 (D. Mass. Dec. 10, 2018) ("Nonprivileged documents that are responsive to reasonable requests for production and relevant to any party's claim or defense must, as a general matter, be produced.").

Petitioners' requests are also narrowly tailored and non-burdensome.   In an effort to minimize the burden on the government, Petitioners presented Respondents with four discrete document requests that are directly relevant to the claims at issue.  At first, Respondents objected that Petitioners' requests were "duplicative" of materials produced during expedited discovery. *See* Email from Colleen McCullough (Mar. 1, 2019, 9:20 EST).  In response to this concern, Petitioners identified several specific categories of documents that had not been previously produced during expedited discovery, such as internal USCIS communications and documents from named Petitioners' A-files.  *See* Email from Mary L. Larakers (Feb. 24, 2019, 16:19 EST). Confronted with the fact that the sought documents were not duplicative, Respondents shifted their objection from duplication to burden, and claimed for the first time that review of the sought information would require a privilege review.  *See* Email from Mary L. Larakers (Mar. 4, 2019, 15:50 EST).  Respondents do not seriously contest the relevance of the sought discovery. Instead, their only objection appears to be that it would be burdensome to review its files for privilege.

In a further attempt to narrow the requested information, with respect to the A-files, Petitioners asked whether Respondents would be willing to, at the very least, produce specific documents that "1) have not already been produced, and 2) were not submitted by the noncitizens or their spouses, or, if submitted by the noncitizens or their spouses, contain notations (other than receipt stamps) made by government officials."  *See* Email from Colleen

McCullough (Mar. 1, 2019, 9:20 EST).  Despite this gesture, Respondents have made clear that they will not provide any documents unless Respondents receive "specific requests" for "specific documents."  *See* Email from Mary L. Larakers (Feb. 25, 2019, 16:19 EST).  But as Petitioners have repeatedly informed Respondents, Petitioners do not know the content of their A-files, and it is not possible for Petitioners to guess the content of those files that the government might be willing to produce.  *See* Email from Stephen Provazza (Mar. 6, 2019, 18:32 EST.)  That information is uniquely within the government's possession.

Respondents have not articulated any legitimate reason to refuse to provide the limited discovery requested by Petitioners other than that it would require them to review internal documents for relevance and potential privilege.  *See* Email from Mary L. Larakers (Mar. 4, 2019, 15:50 EST) (refusing to provide some documents in Petitioners' A-files because other documents in the same file may be unrelated to Petitioners' due process claims and "would still need to be reviewed for privileged information").  But that is not a proper basis to refuse discovery that is clearly relevant to the issues in the case.  *See Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976)  ("Merely because compliance with a 'Request for Production' would be costly or time-consuming is not ordinarily sufficient reason to grant a protective order where the requested material is relevant and necessary to the discovery of evidence."); *Beyer v. Medico Ins. Grp.*, 266 F.R.D. 333, 337 (D. S.D. 2009) ("[I]f discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable.").  Further, where the sought discovery is uniquely within the possession of the opposing party, Respondents must produce responsive, non-privileged information.

Because informal efforts at obtaining discovery related to Petitioners' individual claims have been fruitless, Petitioners have no choice but to ask the Court to intervene and take "control of discovery." *See* LR, D. Mass. 26.1(1); Fed. R. Civ. P. 37(a)(1) (before moving to compel discovery, the parties must certify "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").

## III.   CONCLUSION

The parties have exhausted efforts to advance discovery on their own.  Because "reasonable and good faith effort to reach agreement with opposing counsel," *see* LR, D. Mass. 26.2(c), with respect to discovery has been futile, Petitioners respectfully request that the Court intervene.  Specifically, Petitioners request that the Court:

1.   Open discovery with respect to named Petitioners' claims;

2.   Issue an order compelling Respondents to produce documents responsive to Petitioners' proposed Requests for Production (Cantin Decl. Exhibit A); and

3.   Set a scheduling conference and issue a scheduling order pursuant to Fed. R. Civ P. 16(b) and 26(f).

Respectfully submitted this day of April 18, 2019.

/s/   *Kevin S. Prussia*

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law

Kevin S. Prussia (BBO # 666813)
Shirley X. Li Cantin (BBO # 675377)
Stephen Provazza (BBO # 691159)
Colleen M. McCullough (BBO # 696455)
Matthew W. Costello (BBO # 696384)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

Facsimile:  (617) 526-5000
kevin.prussia@wilmerhale.com
shirley.cantin@wilmerhale.com
stephen.provazza@wilmerhale.com
colleen.mccullough@wilmerhale.com
matthew.costello@wilmerhale.com
*Attorneys for Petitioners*