## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KEVIN McALEENAN, et al., <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW |

## PETITONERS' REPORT

This Court has ordered the parties to confer and report regarding:  (1) whether they agree to settle or jointly stay this case, or whether they request more time to confer; (2) whether class members should receive notice under Federal Rule of Civil Procedure 23(c)(2)(A) and, if so, how; (3) when the court should decide the appropriate definition of a class with respect to petitioners' detention-related claims (Counts 5 and 6), and (4) the nature of the limited discovery to be conducted by July 31, 2019.  Dkt. No. 253.  On May 28, 2019, the parties jointly reported that they have met and conferred on these issues, while seeking more time (until June 5, 2019) to confer and report.  Dkt. No. 257, 259.

Given the length of the parties input, which were exchanged shortly before the filing deadline, the parties file separately their status reports.  The parties request 48 hours to address arguments raised in each report, or as otherwise directed by the Court.

Petitioners report as follows:

1.  **Whether the parties have agreed to settle or jointly stay this case.**

      The parties do not at this time have an agreement to settle or jointly stay the case.

The government continues to consider Petitioners' proposed framework for settlement.

2.  **Respective positions concerning whether notice should be directed to class members under Federal Rule of Civil Procedure 23(c)(2)(A) and, if so, how.**

      Petitioners propose a reporting framework that would provide class counsel with adequate notice of enforcement actions against class members and sufficient information to challenge them, if necessary.  This would obviate the need for notice to each class member.  Petitioners respectfully request that the Court order Respondents to provide reporting regarding enforcement decisions against class members as follows:

| Petitioners' Proposed Reporting | Summary of Response and Remaining Dispute |
|---|---|
| **Check-ins**: Monthly reporting of interactions at Order of Supervision check-ins with the name and A-numbers un-redacted, and a counsel of record column based on the most recent Form G-28 (Notice of Entry of Appearance as Attorney or Accredited Representative) on file. | Respondents have agreed to provide this reporting. |
| **Detained class members**: Monthly reporting of all currently detained class members, including name, A-number, attorney-of-record, and information about whether any ERO Stay of Removal (I-246) applications filed by the individual. | Respondents agree to provide such reporting limited to individuals who are class members at the time they are detained, including one detention report of class members currently detained.<br><br>Respondents do not agree to provide information about individuals who become class members after they are detained. |
| **Stays of removal**: Monthly reporting of all ERO Stay of Removal (I-246) adjudications involving class members (including class members who may not be checking-in or detained). | Respondents do not agree to provide such reporting. |

| Notice of imminent removals: Respondents provide class counsel five business days' notice before removing or enforcing the removal of any class member, along with an explanation of the enforcement action. | Respondents agree to provide notice of imminent removals *only* in circumstances in which a class member has not appeared on a prior check-in or detention report. Respondents do not agree to provide notice within any particular minimum time before removal is effectuated. |
|---|---|

Respondents' position would leave class counsel with insufficient information to be able to protect class members. For example, Respondents do not agree to inform Petitioners' counsel about how it is handling class members' applications for stays of removal, except in the limited case of detained class members.[1] Respondents' proposal would leave class counsel blind as to class members who may be removed as soon as a stay expires. Similarly, Respondents' notice provision—with no minimum time period for providing notice—would permit the government to give class counsel notice of a removal minutes before a plane departs.

If the Court does not order Respondents to comply with Petitioners' proposed framework, Petitioners respectfully request additional time to confer with Respondents regarding forms of class notice.

3. **Respective positions concerning when the Court should decide the appropriate definition of a class with respect to Petitioners' detention-related claims (Counts 5 and 6).**

It is Petitioners' view that, at this juncture, the Court need not define a class with respect to Counts 5 and 6. It is not necessary for the Court to define a class until later in the case when this Court decides the necessary remedies, if any, with respect to detention.

---

[1] Even though Ms. Adducci testified that a Stay of Removal application is the way seek relief from removal, *see* Aug. 21, 2018 Hr'g Tr. at 84:21-86:9, Respondents do not currently report on this information nor do they propose reporting on this information unless an individual is detained.

4. **Respective positions concerning the nature of limited discovery to be conducted by July 31, 2019.**

Petitioners have proposed three depositions and the production of eight limited categories of discovery.  Respondents have agreed only to one deposition and to meaningfully respond to only two of Petitioners' requests for discovery.  Instead of relevant discovery, Respondents propose to spend their time producing a large cache of 2016 documents that they incorrectly characterize as the administrative record.

Petitioners' deposition and discovery requests have two main purposes: 1) helping Petitioners understand the Boston ERO's current treatment of class members and the likelihood that these practices will continue without litigation and judicial scrutiny; and 2) helping Petitioners focus future discovery by eliciting top-level information about the government's actions that form the basis of this case.  In response, the government refuses to allow the deposition of anyone other than Marcos Charles and refuses to provide any discovery from USCIS or that relates to the Boston ERO's practices and policies before July 2018.  Petitioners therefore seek an order requiring Respondents to provide the discovery Petitioners requested by July 31, 2019.

Petitioners have proposed the following depositions, and Respondents have responded with the following positions:

| Petitioners' Proposed Deposition | Summary of Response and Remaining Dispute |
| --- | --- |
| A 30(b)(6) deposition of Marcos Charles (or another witness or witnesses) regarding how the Boston ERO identifies individuals as *Calderon* class members and its supervision, arrest, detention, and removal of these class members from July 30, 2019 to present. | Respondents have identified Mr. Charles as their 30(b)(6) deponent but agree to make him available to testify only to the Boston ERO's practice regarding the arrest, detention, and removal of class members from July 30, 2018 to present. |

| | Respondents do not agree to allow deposition of Mr. Charles on the subjects of how ERO identifies individuals as *Calderon* class members and the supervision of these individuals. |
|---|---|
| A 30(b)(6) deposition of USCIS regarding, from August 29, 2016 to the present, USCIS District 01's (1) policies or practices regarding processing, scheduling, and handling of class member's USCIS applications; and (2) policies or practices regarding coordination or communication with ICE regarding applications or appointments connected to I-130, I-212, I-601A and other immigration applications filed by individuals subject to final administrative orders of removal. Since the USCIS deponent has been identified, please identify him/her to us. | Respondents do not agree to provide any USCIS deponent. |
| A deposition of Christopher Cronen regarding Boston ERO's practice regarding the identification, supervision, arrest, detention, and removal of class members from January 25, 2017 (when Executive Order 13768 issued) to the present and how that practice was the same or different from Boston ERO's prior practice based on his position as the Boston Field Office Director and in his current role supervising operations in the Boston Field Office and other Eastern field offices. | Respondents do not agree to produce Mr. Cronen for a deposition. |

Petitioners have proposed the following limited categories of documents, and Respondents have responded with the following positions:

| Petitioners' Proposed Discovery Requests | Summary of Respondents' Response and Remaining Disputes |
|---|---|
| 1.  A refresh of the search the government conducted in response to the Court's July 16, 2018 order (Dkt. 117). | Respondents agree to produce Boston ERO documents responsive to this request.[2] |
| 2.  All documents from the denial of the motion to dismiss on August 23, 2018 to the present related to the measures taken by acting Field Office Directors Todd Lyons and Marcos Charles to ensure compliance with the Court's August 23, 2018 Order. | Respondents agree to produce Boston ERO documents responsive to this request. |
| 3.  All documents reflecting whether and how, since August 23, 2018, the Boston ERO uses information provided by individuals on USCIS application forms, and/or how the Boston ERO communicates with USCIS to obtain address or other information about individuals with final orders of removal. | Respondents refuse to produce documents responsive to this request. |
| 4.  All USCIS District 01 and Boston ERO documents, including correspondence, e-mails, notes, regarding this case (18-cv-10225-MLW), or related cases before Judge Mark L. Wolf since April 27, 2017,[3] but excluding communications with OIL | Respondents agree to produce documents relating only to two cases (*Batista Ferreira v. Lyons*, No. 19-cv-10258-MLW; and *Lima v. Lyons*, No. 19-cv-10400-MLW) and do not agree, even as to these cases, to provide communications or a privilege log |

---

[2] To the extent a document is protected by the attorney-client, work-product, deliberative process, or other privilege, Respondents have agreed to provide Petitioners with a privilege log by which they can assess each claim of privilege.

[3] These related cases are: *Arriaga Gil v. Tompkins*, No. 17-cv-10743-MLW; *Dos Santos v. Nielsen*, No. 18-cv-10310-MLW; Junquiera v. Souza, No. 18-cv-10307-MLW; *De Oliveira v. Moniz*, No. 18-cv-10150-MLW; *Rutkowski v. Nielsen*, No. 18-cv-10953-MLW; *Aligaweesa v. Nielsen*, No. 18-cv-11388-MLW; *Nkojo v. Nielsen*, No. 18-cv-11401-MLW; *Li v. Nielsen*, No. 18-cv-11596-MLW; *Batista Ferreira v. Lyons*, No. 19-cv-10258-MLW; and *Lima v. Lyons*, No. 19-cv-10400-MLW. Petitioners do not seek privileged communications. Thus, this request exempts any communications with the Office of Immigration Litigation and the Boston U.S. Attorney's Office entirely so that they do not need to be included in any privilege log.  Petitioners ask that other claims of privilege—including those relating to communications with ICE counsel—be addressed through ordinary privilege log procedures.

| | |
|---|---|
| counsel and the Boston U.S. Attorney's Office. | covering communications with agency counsel.<br><br>Respondents refuse to produce communications and other documents relating to this case and the other related cases. |
| 5.  All USCIS District 01 documents concerning the scheduling of standalone I-130 interviews for class members since August 23, 2018. | Respondents refuse to produce documents responsive to this request. |
| 6.  All USCIS District 01 documents regarding the potential or actual detention, arrest, and removal of any class member since January 25, 2017 (when Executive Order 13768 issued). | Respondents refuse to produce documents responsive to this request. |
| 7.  Documents created by or communications involving Christopher Cronen from January 25, 2017 (when Executive Order 13768 issued) to the present regarding Boston ERO practices for class members. | Respondents refuse to produce documents responsive to this request. |
| 8.  An aggregate report that shows every stay of removal decision, arrest decision, custody determination, or removal of a class members since August 23, 2018, or, alternatively, records of each of these decisions. | Respondents refuse to produce documents responsive to this request. |

Petitioners address Respondents' primary objections to discovery below.

**1.  <u>Documents and Information Regarding Events Prior to August 23, 2018</u>**

The parties have a fundamental disagreement regarding whether this initial

discovery period should be "limited" to focus only on the most relevant testimony and

documents to move this case forward or is limited only to information concerning events

since this Court denied Respondents Motion to Dismiss in part on August 23,

2018.  Nothing in this Court's May 17, 2019 Order or during the May 16, 2019

proceedings placed any time limit on the types of materials and testimony Respondents
could provide during this initial period.  Petitioners are pursuing narrow categories of
information that will substantially move the case forward by potentially providing a basis
for settlement and, at the least, focus future discovery and deposition requests.

Documents from before August 23, 2018 would help Petitioners understand not
just *what* happened to the class members (and therefore focus future discovery and
deposition requests), but *how* it happened, and thus how it can be prevented going
forward.  The documents Petitioners received in July revealed—to an extent not made
clear in the depositions of ICE officers—the agency's shocking disregard for the
provisional waiver process and the families pursuing it.  Although ERO has reportedly
modified its conduct, it has done so during a period in which it has been appearing
regularly before this Court, and during which DHS has declined to appoint a permanent
Field Office Director.  Some discovery into the government's conduct prior to the start of
this case is critical to informing Petitioners and the Court as to how the Boston ERO and
other DHS actors are likely to behave when not under Court supervision, including when
a permanent Field Office Director is appointed.

Petitioners have confined their requests at this stage to narrowly target those areas
that would be most useful in moving the case forward.  Still, Respondents refuse to
produce any such documents reflecting pre-July 2018 practices and policies.

## 2. **Deposition and Documents Related to USCIS Internal Policies and Practices**

Respondents have refused to produce a 30(b)(6) deponent or documents regarding
CIS internal policies or practices.  Discovery from CIS is crucial to this action, including
to any potential settlement.  The July discovery—which was limited to ICE

communications—revealed that CIS worked closely with ICE to facilitate the arrest of

class members.  But Petitioners have not received a single piece of discovery from CIS.

Respondents not only refuse to provide discovery into how CIS helped to interfere with

class members' provisional waiver applications in 2017 and 2018, but they also refuse to

provide discovery into CIS's *current* treatment of class members, including whether CIS

is delaying the scheduling of class members' I-130 interviews.

### 3.  <u>Deposition of and Documents Belonging to Mr. Cronen</u>

Petitioners seek to depose former Boston ICE ERO Field Office Director

Christopher Cronen regarding that office's enforcement policies and practices during his

time as FOD, his "policy to have [class members] arrested at CIS offices," *see* May 23,

2018 Hearing Tr. at 129:17-130:25, changes to those policies after his promotion to

Deputy Assistant Director for Domestic Operations within ICE ERO Headquarters Field

Operations Division, and the likelihood that ICE ERO's policy and practice of taking

enforcement action against class members without consideration of their provisional

waiver applications will be reimplemented in the future.  Petitions also seek his

corresponding documents.  *See* Petitioners' Request No. 7 in the above chart.

It is appropriate to depose Mr. Cronen and compel production of his documents

during this limited discovery period for three reasons:

**First**, Mr. Cronen's testimony and documents are indisputably relevant to all of

the Class's Constitutional, INA, and APA claims; as the Boston ICE ERO FOD from

August 2016 to January 2018, he oversaw ERO operations and responsibilities from the

implementation of the provisional waiver regulations in August 2016, was tasked with

implementing Executive Order 13768, and formulated the Boston ERO policy of

targeting class members at CIS offices.[4]  Mr. Cronen's actions and decision-making are at the core of this case.  He is also the only witness the parties have identified that has personal knowledge of the time period preceding Mr. Lyons' appointment as Deputy FOD on September 19, 2017, when the policies and practices at issue in this case were implemented.

   *Second*, given his role at the center of this case, deposing Mr. Cronen and reviewing his documents prior to July 31, 2019 will substantially focus merits discovery going forward since this information will assist the parties in identifying the relevant decisions, time periods, documents, and eyewitnesses.

   *Third*, Mr. Cronen's testimony and documents are also relevant to ICE Boston ERO's current policies and practices and any intention that ICE will resume targeting class members for enforcement without regard for their pursuit of provisional waivers. After implementing ICE Boston's enforcement policies targeting class members, Mr. Cronen was promoted to Deputy Assistant Director at ICE Headquarters where he

---

[4] Mr. Cronen served as "Field Office Director for the Boston Field Office, overseeing all ERO operations and responsibilities within the six New England states" from August 2016 to January 2018.  Aug. 13, 2018 Decl. of Christopher Cronen, ¶ 4, Grace v. Sessions, 1:18-cv-01853-EGS (D.D.C. Aug. 13, 018) (*available at* https://www.aclu.org/legal-document/grace-v-sessions-declaration-christopher-cronen) (the "August 13, 2018 Cronen Decl.").

continues to supervise Boston ICE ERO's enforcement and removal efforts.[5]  Emails

produced by Respondents in this case also indicate that Mr. Cronen remained involved in

ICE Boston's USCIS arrest practices at a time when he had apparently been promoted.

*See* ICE-0001645 – ICE-0001647 (January 30, 2018 email chain where Mr. Cronen and

others discuss an arrest of a potential class member at USCIS).[6]  Under Mr. Cronen's

supervision, ICE Enforcement Operations in the eastern United States has continued to

expand their practice of targeting individuals with final orders of removal at USCIS

offices.[7]  Therefore, Mr. Cronen's testimony is crucial to determine the structure of any

potential settlement or stay of this case and the scope of injunctive relief should the Class

prevail on the merits.

---

[5] Mr. Cronen is "currently the Deputy Assistant Director (DAD) for Domestic Operations
– East, within the U.S. Department of Homeland Security (DHS), U.S. Immigration and
Customs Enforcement (ICE), Enforcement and Removal Operations (ERO),
Headquarters Field Operations Division."  August 13, 2018 Cronen Decl., ¶ 1.  In that
role, Mr. Cronen "supervise[s] operations for Field Offices in the Easter United States,
providing guidance and coordination in support of ERO's enforcement and removal
efforts conducted by its Field Offices."  *Id.* at ¶ 2.  His "duties and responsibilities
include oversight and management of ERO enforcement, detention, and removal
operations for Field Offices in the eastern half of the United states, including application
of governing laws, regulations, policies, and procedures."  *Id.*

[6] A true and correct copy of ICE-0001645 – 0001647 is attached to the
contemporaneously filed June 5, 2019 declaration of Stephen N. Provazza as Exhibit A.

[7] *See, e.g.*, Natalia Megas, *ICE Jailed Pregnant Woman and Could've Killed her Unborn
Child*, Daily Beast (Jan. 31, 2019), https://www.thedailybeast.com/ice-jailed-pregnant-
woman-and-couldve-killed-her-unborn-child; Brenda Medina, *Her Husband Went to an
Immigration Interview about their Marriage.  He Was Detained by ICE*, Miami Herald
(Oct. 1, 2018), https://www.miamiherald.com/news/local/immigration/article219298775.
html.

4. **Administrative Record**

Petitioners respectfully request that the Court order, to the extent Respondents intend to certify an administrative record regarding Petitioners' Administrative Procedure Act claim, that such record include and begin with documents relevant to the challenged conduct in this case.  During the May 16, 2019 hearing, Respondents asserted that they

> intend to submit a certified administrative record addressing the 2016 regulatory change and that the regulation will show one of two things:  Either the petitioners' position about when and what penumbra of rights was created when the regulation was promulgated was considered by DHS in a notice and comment in compliance with 5 U.S.C. 553 and either rejected such that ICE's actions haven't been contrary to anything within the regulation or adopted by DHS, at which point in time the court would have the factual basis it needs to rule on the regulatory review on the rule-making claim.

May 16 Hearing Tr. at 42:6-16**.**  Based on this and other representations at the May 16 hearing, Petitioners understand Respondents position to be that the administrative record consists of records that led to promulgating the 2016 provisional waiver regulations. However, the 2016 provisional waiver regulation rulemaking is not the relevant administrative record for Petitioners APA claim and does not meaningfully bear on the issues in this case.

Rather, any appropriate administrative record must include documents relevant to the conduct challenged in this case:  Respondents actions *after* the 2016 provisional waiver regulations went into effect.  *See, e.g.*, *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1272 (D. Colo. 2010) ("[T]he proper scope of the Administrative Record" is based on "the nature and scope of the decisions challenged by Petitioners"). Indeed, Respondents' proposed administrative record will necessarily be incomplete

since any documents relevant to whether the regulations were violated must post-date the enactment of those regulations.

      For that reason, Respondents' remarks that the rulemaking record is voluminous and difficult to assemble creates cause for concern that Respondents seek to devote significant resources to assembling a record that does not meaningfully bear on the issues in this case before they produce any relevant discovery.  While Petitioners would receive the rulemaking record, it is not requested and should not come at the expense of other relevant record materials or discovery.

Respectfully submitted this 5th day of June, 2019.

|  | /s/  Kevin S. Prussia |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Michaela P. Sewall (BBO # 683182) |
| AMERICAN CIVIL LIBERTIES UNION | Shirley X. Li Cantin (BBO # 675377) |
| FOUNDATION OF MASSACHUSETTS, INC. | Stephen Provazza (BBO # 691159) |
| 211 Congress Street | Colleen M. McCullough (BBO # 696455) |
| Boston, MA 02110 | Matthew W. Costello (BBO # 696384) |
| (617) 482-3170 | WILMER CUTLER PICKERING |
|  | HALE AND DORR LLP |
| Kathleen M. Gillespie (BBO # 661315) | 60 State Street |
| Attorney at Law | Boston, MA 02109 |
| 6 White Pine Lane | Telephone: (617) 526-6000 |
| Lexington, MA 02421 | Facsimile:  (617) 526-5000 |
| (339) 970-9283 | kevin.prussia@wilmerhale.com |
|  | michaela.sewall@wilmerhale.com |
|  | shirley.cantin@wilmerhale.com |
|  | stephen.provazza@wilmerhale.com |
|  | colleen.mccullough@wilmerhale.com |
|  | matthew.costello@wilmerhale.com |

*Attorneys for Petitioners*