DECLARATION OF ACTING FIELD OFFICE DIRECTOR
MARCOS CHARLES

Pursuant to the authority of 28 U.S.C. § 1746, I, Marcos Charles, the Acting Field Office Director for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1. I am currently serving as the Acting Field Office Director (FOD) for the Boston Field Office of the Office of Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS). I have been serving in this position since May 1, 2019. I am stationed in Burlington, Massachusetts.

2. Prior to my current role, I was a Deputy Field Office Director (DFOD) in the Boston Field Office from February 3, 2019. My duties in that position included assisting in the oversight of the operations in the Boston Field Office.

3. Prior to serving as the DFOD in the Boston Field Office, I served as the Acting Chief of Staff and Deputy Chief of Staff for the ERO Executive Associate Director, and prior to that I served as the Assistant Field Office Director overseeing ERO operations in the state of Oklahoma for the Dallas Field Office.

4. Todd Lyons was formerly the Acting FOD in the Boston Field Office, serving in such position from August 19, 2018 to April 30, 2019. Todd Lyons' term as Acting FOD was required to terminate on April 30, 2019 because per 5 C.F.R. § 317.903, the temporary assignment of a non- SES member to an SES position cannot exceed 240 days.

5. Todd Lyons has returned to his position as DFOD in the Boston Field Office and remains responsible for assisting in the oversight of the operations of the Boston Field Office.

6. Among my official duties as the Acting FOD is the responsibility for managing and monitoring the scheduling and execution of removal orders for aliens detained in ICE custody

or otherwise encountered within the Boston Field Office's area of responsibility.

7. ICE maintains electronic and paper records on aliens in the course of its regularly conducted business activity. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events.

8. I have examined the official records available to me regarding the immigration history and custody status of ███████████, Administrative File No. ████████. I have also discussed this case with Officers within my office. Unless otherwise stated, this declaration is based on that review and discussions.

9. ICE became aware of Mr. ████████ while conducting routine criminal records screening following his conviction for disorderly conduct in Manchester, New Hampshire.

10. Before encountering Mr. ████████, ICE conducted record checks which indicated that he had no evidence of lawful admission in the United States and that he had no pending applications or petitions filed on his behalf.

11. On October 23, 2012, ICE questioned Mr. ████████ to further determine whether he had any lawful status in the United States. During this questioning, Mr. ████████ confirmed that he did not have permission to be present in the United States.

12. Mr. ████████ entered ICE custody on October 23, 2012 when ICE arrested him outside his residence of ████████████████████████████.

13. ICE decided to detain Mr. ████████ pursuant to 8 U.S.C. § 1226(a) because of his criminal record and inadmissibility to the United States. He was released on bond on November 9, 2012.

Criminal History

14. On February 12, 2012, Mr. ████████ was charged with Disorderly Conduct in Manchester, New Hampshire. He was convicted on April 19, 2012.

15. On April 4, 2014, Mr. ████████ was charged with Driving Without a License in Nashua, New Hampshire. He was convicted on May 20, 2015.

16. On May 26, 2016, Mr. ▆▆▆▆▆▆▆▆ was charged with Driving Without a License in Nashua, New Hampshire. He was convicted on or about December 1, 2016.

17. On October 8, 2016, Mr. ▆▆▆▆▆▆▆▆ was charged with Driving Without a License in Nashua, New Hampshire. This case was nolle prossed on December 1, 2016.

18. On or about April 12, 2018, Mr. ▆▆▆▆▆▆▆▆ was charged with Driving Without a License in Nashua, New Hampshire. He was convicted on or about May 2, 2018.

19. On December 6, 2018, Mr. ▆▆▆▆▆▆▆▆ was charged with Operating a Motor Vehicle Under the Influence of Liquor ("OUI"), in Shelburne Falls, Massachusetts. On May 24, 2019, he was convicted of Operating Negligently.

20. On March 17, 2019, Mr. ▆▆▆▆▆▆▆▆ was arrested in North Smithfield, Rhode Island, and was charged with OUI and Driving with a Suspended/Revoked License. On May 30, 2019, the OUI charge was dismissed and he was convicted of Driving with a Suspended/Revoked License.

21. On June 1, 2019, Mr. ▆▆▆▆▆▆▆▆ was arrested in Woonsocket, Rhode Island, and was charged with OUI and Driving with a Suspended/Revoked License. These charges remain pending.

Immigration Proceedings History

22. On October 24, 2012, ICE served Mr. ▆▆▆▆▆▆▆▆ with a Notice to Appear, which was filed with the Boston Immigration Court on November 2, 2012.

23. On November 9, 2012, Mr. ▆▆▆▆▆▆▆▆ had a bond redetermination hearing and was bonded out of ICE custody.

24. On December 15, 2015, an Immigration Judge administratively closed Mr. ▆▆▆▆▆▆ ▆▆▆▆▆▆ removal proceedings because there was a Form I-130, Petition for Alien Relative, filed on Mr. ▆▆▆▆▆▆▆▆ behalf and it was pending adjudication.

25. On February 23, 2016, Mr. ▆▆▆▆▆▆▆▆ moved to recalendar removal proceedings at the

3

Immigration Court because the Form I-130 was approved by U.S. Citizenship and Immigration Services ("USCIS").  The Immigration Court granted that motion.

26. On April 19, 2017, the Immigration Court again administratively closed Mr. ███████ case because he sought to file an application to "consular process" for a visa from abroad.

27. On or about October 2, 2017, the Immigration Court granted a motion to recalendar removal proceedings.

28. On December 6, 2017, Mr. ███████ appeared at a master calendar hearing before an Immigration Judge, where he was issued a hearing notice to appear at a subsequent hearing in Immigration Court on October 31, 2018.

29. On October 31, 2018, Mr. ███████ failed to appear in Immigration Court as required, so the Immigration Judge issued a final order of removal *in absentia*.

## ICE Removal Efforts

30. On June 1, 2019, ICE received a notification that Mr. ███████ had been arrested in Woonsocket, Rhode Island, for OUI.  A search of immigration records revealed that Mr. ███████ had been ordered removed *in absentia* on October 31, 2018, because he had failed to appear in Immigration Court.

31. On June 2, 2019, ICE officers responded to the Woonsocket Police Department where Mr. ███████ was being released on personal recognizance with a summons to appear and arrested him.

32. The ICE officers present at the time of arrest noted that Mr. ███████ claimed to be separated from the spouse who filed a Form I-130 on his behalf on August 10, 2015, which was approved on January 28, 2016.  At the time there was no record in USCIS databases of a Form I-601A, Application for Provisional Unlawful Presence Waiver, having been filed.

33. ICE is aware of this Court's ruling in the <u>Jimenez v. Nielsen,</u> 334 F. Supp. 3d 370, 390 (D. Mass. 2018), in which the Court stated that "ICE may not order the removal of an alien pursuing a provisional waiver solely because he or she is subject to a final order of removal. Rather, ICE must consider the reasons for the provisional waiver regime and the facts of the alien's particular case before deciding to order a removal that eliminates U.S. Citizenship and Immigration Service's ("USCIS") opportunity to decide the merits of the request, and the right of the alien to pursue, and potentially receive, a provisional waiver."

34. In seeking to effectuate Mr. ███████ order of removal, ICE is considering numerous factors beyond Mr. ███████ final order of removal. Specifically, ICE knows that Mr. ███████ is married to a U.S. Citizen who filed an I-130 petition with USCIS on August 10, 2015, which was approved on January 28, 2016. ICE is also considering that Mr. ███████ has not filed a Form I-212 or Form I-601A per USCIS databases. ICE is also considering his criminal record as well.

35. Based upon the foregoing, ICE intends to effectuate Mr. ███████ removal order to Honduras as soon as possible.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on the Seventeenth day of June, 2019

Marcos Charles

Acting Field Office Director

U.S. Department of Homeland Security

United States Immigration and Customs Enforcement

Burlington, Massachusetts