<pre>
 1                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
 2

 3                                      )
     LILIAN PAHOLA CALDERON JIMENEZ    )
 4   and LUIS GORDILLO, et al.,         )
     Individually and on behalf of      )
 5   all others similarly situated,     )
                                        )  Civil Action
 6          Plaintiffs-Petitioners, )  No. 18-10225-MLW
                                        )
 7   v.                                 )
                                        )
 8   KEVIN McALEENAN, et al.,           )
                                        )
 9          Defendants-Respondents. )
                                        )

10


11

                 BEFORE THE HONORABLE MARK L. WOLF
12                 UNITED STATES DISTRICT JUDGE

13

                          MOTION HEARING
14

15                        June 18, 2019

16


17          John J. Moakley United States Courthouse
                     Courtroom No. 10
18                   One Courthouse Way
                Boston, Massachusetts  02210
19


20


21                              Kelly Mortellite, RMR, CRR
22                              Official Court Reporter
                                One Courthouse Way, Room 5200
23                              Boston, Massachusetts  02210
                                mortellite@gmail.com
24

25
</pre>

1    APPEARANCES:

2    Counsel on behalf of Plaintiffs-Petitioners:
     Adriana Lafaille
3    Matthew Segal
     American Civil Liberties Union
4    211 Congress Street
     Boston, MA 02110
5    617-482-3170
     alafaille@aclum.org
6
     Stephen Nicholas Provazza
7    Matthew W. Costello
     Shirley X. Cantin
8    Colleen McCullough
     Wilmer Hale LLP
9    60 State Street
     Boston, MA 02109
10   617-526-6313
     stephen.provazza@wilmerhale.com
11   matt.costello@wilmerhale.com
     shirley.cantin@wilmerhale.com
12   colleen.mccullough@wilmerhale.com

13   Counsel on behalf of Defendants-Respondents:
     Eve A. Piemonte
14   U.S. Attorney's Office
     1 Courthouse Way
15   Suite 9200
     Boston, MA 02210
16   617-748-3100
     eve.piemonte@usdoj.gov
17
     Mary Larakers
18   William Weiland
     U.S. Department of Justice, Office of Immigration Litigation
19   District Court Section
     P.O. Box 868
20   Washington, DC 20044
     202-353-4419
21   mary.l.larakers@usdoj.gov
     William.h.weiland@usdoj.gov

22

23

24

25

P R O C E E D I N G S

(Case called to order.)

THE COURT:  Good morning.  Would counsel please identify themselves for the court and for the record.

MR. PRUSSIA:  Good morning, Your Honor.  Kevin Prussia from Wilmer Hale on behalf of the petitioners.

MS. CANTIN:  Good morning.  Shirley Cantin from Wilmer Hale for the petitioners.

MS. LAFAILLE:  Good morning, Your Honor.  Adriana Lafaille also for the petitioners.

MR. SEGAL:  Good morning, Your Honor.  Matthew Segal for the petitioners.

MS. McCULLOUGH:  Good morning, Your Honor.  Colleen McCullough for the petitioners.

MR. COSTELLO:  Good morning, Your Honor.  Matt Costello from Wilmer Hale for the petitioners.

MR. PROVAZZA:  Good morning, Your Honor.  Stephen Provazza for the petitioners.

MS. LARAKERS:  Good morning, Your Honor.  Mary Larakers on behalf of the United States.

MS. PIEMONTE:  Good morning, Your Honor.  Eve Piemonte on behalf of the United States.

THE COURT:  We're here today in connection with my order yesterday shortly after the petitioners' emergency motion for a temporary restraining order was filed.  Later

1    yesterday -- well, in my August 27, 2018 order, docket number

2    152, I ordered that a representative of the petitioners and a

3    representative of the respondents with full settlement

4    authority be present for each future hearing or conference.

5    Who has that authority for the petitioners?

6               MR. PRUSSIA:  It's myself and Ms. Lafaille, Your

7    Honor.

8               THE COURT:  And later yesterday the respondents filed

9    a notice of unavailability, which claims that the August 27

10   order does not apply to this hearing.  That's incorrect.  The

11   order applies to each hearing.  "Each" means every.  The notice

12   states that the acting Field Office Director Marcos Charles

13   departed D. Mass, or the District of Massachusetts, on official

14   business.  When did he depart?

15              MS. LARAKERS:  Your Honor, I'm not exactly sure when

16   he departed.  It was certainly for this week.  It was before

17   the order.

18              THE COURT:  Okay.  Before the order?

19              MS. LARAKERS:  Yes, Your Honor.

20              THE COURT:  And where is he?

21              MS. LARAKERS:  In Kentucky, Your Honor.

22              THE COURT:  On official business?

23              MS. LARAKERS:  Yes, at a conference.

24              THE COURT:  And it says his predecessor, and I believe

25   deputy, Todd Lyons is also unavailable.  Where is Mr. Lyons?

1          MS. LARAKERS:  Your Honor, he was on leave and we were

2     unable to reach him.  I'm uncomfortable to talk about the

3     reasons behind that in open court, but I'd be happy to talk to

4     you in chambers about that if you would like.

5          THE COURT:  Well, if it was necessary, we'd do it at

6     the sidebar, but I don't think so.

7          I'm going to proceed because the motion for temporary

8     restraining order was filed yesterday and I was told that the

9     person referred to as Mr. V, a class member, is scheduled to be

10    removed today.  So that's why I'm conducting this hearing now.

11         I will get to this in a minute, but Mr. Charles filed

12    an affidavit.  If it turns out that his testimony is necessary,

13    this matter won't be concluded today, and Mr. V can't be

14    removed today.  But it's essential that all parties understand

15    that the August 27, 2018 order applies to every hearing.  And

16    while this isn't I think properly part of the motion for a

17    temporary restraining order, if no protocol, you know, no

18    reasonably feasible protocol is either agreed upon or ordered,

19    there are going to be foreseeably more motions for temporary

20    restraining orders, and Mr. Charles is going to be required to

21    drop everything, and I know he's got other important duties,

22    and be here, just the way I'm required as a practical matter to

23    drop everything and deal with this or put everything aside.  So

24    we'll come back to that.

25         Where is Mr. V now?

```
 1              MS. LARAKERS:  Your Honor, he remains in detention
 2    in -- sorry, it's slipping my mind.  Yes.  In Strafford County.
 3              THE COURT:  Where?
 4              MS. LARAKERS:  In New Hampshire, Your Honor.
 5              THE COURT:  He's in New Hampshire?
 6              MS. LARAKERS:  Yes, Your Honor.
 7              THE COURT:  And is he indeed scheduled to be removed
 8    today?
 9              MS. LARAKERS:  Not anymore, Your Honor, because of
10    this court's order.
11              MR. PRUSSIA:  Your Honor, I just rise briefly just to
12    note that we tried to see Mr. V in person yesterday in New
13    Hampshire, and when we contacted the facility, we were told
14    that he was not there.  And we understand that counsel is
15    trying to locate him as well and was informed that he was en
16    route, and so I only rise to ask for confirmation that he is in
17    fact there today.
18              THE COURT:  Do you know where he is?
19              MS. LARAKERS:  Your Honor, the last information I got
20    was that he was in transit to Strafford County, and I did not
21    get any indication that he did not arrive there.
22              THE COURT:  How do you spell the name of that county,
23    please?
24              MS. LARAKERS:  In the email that I got from ICE it was
25    spelled S-t-r-a-f-f-o-r-d.
```

1          MR. PRUSSIA:  Your Honor, not to belabor the point,

2     but Ms. Lafaille and my colleague Ms. McCullough spent about

3     two hours yesterday driving up there and was first told he was

4     there after communication with counsel confirmed that he was

5     there.  Then after another phone call was told by the facility

6     he's not there and please stop calling us.

7          So I think it's really important, given Your Honor's

8     order, to in fact have confirmation of some kind that he is in

9     fact at that facility.

10          MS. LARAKERS:  Your Honor, I'm happy to provide

11     confirmation.  My hands are tied.  I reached out to my client

12     multiple times.  I took their phone calls.  I did my best, Your

13     Honor.

14          THE COURT:  Is there anybody present for ICE?

15          MS. PIEMONTE:  If I may, Your Honor, the person

16     present here from ICE is Brandon Lowy, agency counsel, and he's

17     actually in the hallway confirming the location of Mr. V right

18     now.

19          THE COURT:  Okay.

20          All right.  So we have the plaintiffs' motion for a

21     temporary restraining order.  The motion and memo are docket

22     numbers 268 and 268-1.  Contrary to the respondents'

23     contention, I'm deciding the motion for a temporary restraining

24     order, not a motion for a preliminary injunction.  I may not

25     have all the information that would be necessary or appropriate

1      to decide a motion for a preliminary injunction.

2             So for example, if I need Mr. Charles' testimony, I'm

3      not going to have it today.  So if a temporary restraining

4      order issues, it will be for no more than 14 days unless

5      extended for good cause by another 14 days as provided in

6      Federal Rule of Civil Procedure 65(b)(2), which I understand

7      are the limits for a temporary restraining order even if the

8      motion like this one or the order was granted after notice.

9             What is the relief that the petitioners are seeking,

10     please?  Since, despite having one, two, three, four, five,

11     six, seven, eight lawyers, you didn't do what I was trained to

12     do on day one when I was seeking a temporary restraining order

13     in 1971, is provide a form of order.  So what's the relief

14     that's being sought?

15            MS. CANTIN:  So Your Honor, there's two forms of

16     relief.  With respect to Mr. V's specific case --

17            THE COURT:  Well, that's the only thing I think is the

18     proper subject of the TRO.  But go ahead.

19            MS. CANTIN:  And I think you've already -- we hoped

20     that you would stay his removal for two weeks so that we can

21     form a meaningful assessment about whether we need to challenge

22     the government's decision to remove him.  As Mr. Prussia noted,

23     we haven't had a chance to speak with him.  We'd like the

24     opportunity to do that.  Insofar as we know, he is without

25     counsel.  He does not know that this class action exists.  We

1    would like the information that we've put to the government

2    responded to.

3              So for example, we would like to have Mr. V's EARM

4    form, which would give us a record of his immigration history,

5    his criminal history and the basis, the contemporaneous basis

6    for the decision to remove him.  We would like a copy of his

7    I-130 form so that we may contact his U.S. citizen spouse, and

8    we'd like an explanation from the government as to how they

9    meaningfully considered Mr. V's pursuit of the provisional

10   waiver process.

11             We did receive Mr. Charles' affidavit, which gives us

12   a bit more information than we had 24 hours ago, but we still

13   have questions about the circumstances of his arrest,

14   detention, and removal.  And Your Honor, if I may, all of this

15   information is information we're entitled to under discovery.

16             THE COURT:  Well, that's separate or maybe it's not.

17   We'll get to it.  But my question was what are you seeking.  So

18   I think you want his removal stayed for two weeks.  You want an

19   opportunity to speak to him.  You want certain documents:  The

20   EARM, which somebody will have to explain to me further, his

21   I-130 form; and if there's a two-week delay, you would propose

22   to talk to his citizen spouse, too.

23             The Charles affidavit does provide some information

24   that you're seeking.  Anyway.  I guess we'll get to that.

25             All right.  Well, the standard -- you may be seated.

1    The standard for obtaining a temporary restraining order is the

2    same as the standard for obtaining a preliminary injunction.

3    It hasn't materially changed, as I understand it, since I

4    decided Cablevision of Boston in 1999, 38 F. Supp. 2d 46 at 53.

5    The burden of proof is on the plaintiff.  The court is required

6    to weigh four factors.  The first is whether the plaintiff has

7    shown a likelihood of success on the merits.  The second is

8    whether the plaintiff has established an imminent threat of

9    irreparable harm in the absence of a preliminary injunction.

10   The court is also required to balance the hardship to the

11   plaintiff if no injunction is issued against the hardship to

12   the defendant if the requested injunction is ordered.

13          In addition, the court must consider the effect of the

14   proposed injunction on the public interest.  As the Court of

15   Appeals for the First Circuit has said on a number of

16   occasions, the likelihood of success on the merits is of

17   primary importance.  It is the sine qua non for obtaining a

18   preliminary injunction.  If a great showing of likely success

19   of the merits is made by the plaintiff, a reduced showing of

20   irreparable harm may be appropriate.  In addition, preliminary

21   injunction is an equitable remedy.  It doesn't issue

22   automatically even if the foregoing criteria indicate that the

23   injunction is warranted.  In addition, Rule 65(c) requires a

24   prevailing plaintiff to post a bond.

25          So I think that's the framework, and the critical

1   threshold prong is the likelihood of success on the merits.  So

2   why don't the petitioners address the standards but

3   particularly the likelihood of success on the merits with

4   regard to Mr. V.

5           MS. CANTIN:  Your Honor, at this point our position is

6   that we don't have sufficient information to even engage in

7   that analysis.  And that is why we had to run to Your Honor

8   over the Father's Day weekend to prepare this preliminary

9   injunction motion.  Because notwithstanding our repeated

10  requests to the government for basic information so that we can

11  have an informed analysis whether this is proper or not proper,

12  we can't engage in that analysis.  We don't know who made this

13  decision.  We don't know how this decision was made.  We don't

14  know the calculus that went into the government's decision.

15          This is not an issue where we're challenging ICE's

16  discretionary authority.  It is literally, we are flying blind.

17  We don't have the information we need to do our job as class

18  counsel to make sure our class members are being protected.

19  And that's what we're seeking, Your Honor, is an order

20  requesting that the government give us this basic information

21  so that we can form our opinion as to whether we need to be

22  challenging this action in court.

23          It can't be the case that every time we're notified of

24  an imminent removal we need to run to Your Honor and burden

25  this court with an emergency hearing.

1          MR. PRUSSIA:  If I may just add, Your Honor?

2          THE COURT:  Actually, no.

3          MR. PRUSSIA:  Okay.

4          THE COURT:  This is a motion for a temporary

5    restraining order.  I have a court meeting in an hour with my

6    colleagues.  You can decide who is going to argue the motion.

7    It's not a tag-team wrestling match.

8          I'm looking at Mr. Charles' affidavit, 272, and it

9    does provide -- as I understand it, it provides more

10   information than the petitioners had previously.  It says, In

11   seeking to effectuate Mr. V's order of removal, ICE is

12   considering many factors beyond Mr. V's final order of removal.

13   Specifically, ICE knows that Mr. V is married to a U.S. citizen

14   who filed an I-130 petition with USCIS in August 2015.  It was

15   approved on January 28, 2016.  It's also considering that Mr. V

16   has not filed a Form I-212 or Form I-601A per USCIS databases.

17   ICE is also considering his criminal record as well, and the

18   criminal record is detailed earlier in the affidavit.

19         If those assertions are accepted as true, would

20   petitioners -- and that's "if" -- have a reasonable likelihood

21   of succeeding on merits?

22         MS. CANTIN:  Your Honor, we don't know the answer to

23   that.  And it's only because in petitioners' mind we don't know

24   when this decision was made and whether it was contemporaneous.

25   For all we know, this is a post hoc rationalization only after

1    we filed this information.

2         THE COURT:  That's why I'm just saying hypothetically,

3    if the affidavit is true.

4         The respondents argue that in my September 21, 2018

5    decision I held that the court finds that ICE may deport an

6    alien before CIS has the opportunity to adjudicate his or her

7    application for a provisional waiver if it makes an

8    individualized decision to do so based on more than the mere

9    fact that the alien is subject to a final order of removal.

10        So Mr. Marcos Charles asserts that he did that.  He

11   has an I-130, but earlier they say somewhere he's separated

12   from his spouse.  There hasn't been filed an I-212 or an

13   I-601A, and he's got a criminal record.  So they claim they

14   considered all of those things, not just the fact that he had

15   been ordered removed previously.

16        If those facts were true, is it your contention that

17   you would still have a reasonable likelihood of succeeding on

18   the merits of your claim that they didn't comply with my order?

19        MS. CANTIN:  Candidly, Your Honor, I don't know the

20   answer to that only because we received this information at

21   5:00 p.m.  We have not had a chance to think through all of

22   those issues to confirm the facts.  And the main point here is

23   it can't be that they've just said here are some facts.

24   Consider them.  This is the key word they've latched onto from

25   your order, that, so long as they consider these factors other

1     than the final order of removal, then any removal is justified.

2          THE COURT:  But they pointed out something else that I

3     wrote.  Every time I get -- I was quoting before Jimenez, 334

4     F. Supp. 3d at 388-89.  But the respondents point out that I

5     wrote at 385 -- I was deciding the Suspension Clause issue.  So

6     I wrote, "As in Accardi, in this case the Constitution requires

7     that if it is a colorable claim, some court must have

8     jurisdiction to review petitioners' claim that by deporting or

9     removing them without considering their applications for

10    provisional waivers, DHS is failing to exercise the discretion

11    required by 8 C.F.R. section 212.7 even though this court could

12    not review a discretionary decision for possible abuse if DHS's

13    discretion was actually exercised."

14         So when I did this in last September, I didn't think

15    that the District Court could review whether the exercise of

16    discretion was an abuse of discretion if it was in fact

17    exercised.  I may have to refresh myself further on that.  I

18    think that's what -- well, that's what I said I was deciding.

19    That I had to consider it but not that they couldn't deport a

20    person or remove a person just because the person was pursuing

21    the provisional waiver process.

22         Why don't I hear from the defendants, though.

23         MS. LARAKERS:  Your Honor, we agree that the

24    appropriate focus here should be that in any other motion for a

25    temporary restraining order or motion for preliminary

1    injunction.  And that focus is on, as you said, the likelihood

2    of success on merits.

3         And they would have to show, in order to meet their

4    burden, they would have to show that ICE -- a likelihood that

5    ICE has failed to consider the fact that this individual alien

6    is pursuing a provisional waiver.  They have failed to make

7    that allegation in their motion for a temporary restraining

8    order.  The allegation that they make is exactly how they state

9    it just now.  They want to know how it was done, the calculus

10   that was used, who made that decision.  All of those things

11   speak directly to the discretionary decision of ICE, not to

12   whether ICE actually considered the fact.

13        THE COURT:  I don't think that's necessarily right.

14   Let me ask you this.  Is there a contemporaneous record made of

15   the -- well, when was the decision made to remove Mr. V?

16        MS. LARAKERS:  Your Honor, I believe that's in the

17   declaration.  The only information that I have is included.

18        THE COURT:  Well, what's --

19        MS. LARAKERS:  It would be around June 2, the day that

20   he was detained, Your Honor.

21        THE COURT:  All right.  And do we know the name of the

22   human being who made the decision?

23        MS. LARAKERS:  I believe it was Marcos Charles, Your

24   Honor, the field office director.  To my knowledge he's the one

25   that personally reviewed this case.

1          THE COURT:  And was a contemporaneous record of the

2    reasons for the decision made?

3          MS. LARAKERS:  I know that the practice is sometimes

4    there is and there probably would be in this case.  But it may

5    be as simple as notes in their internal system, and it is

6    probably not anything formal, Your Honor, to the extent that

7    there is one.  But I know many of these decisions are made just

8    with communications between the officer and the field office

9    director, so there may not be any contemporaneous notes.

10         THE COURT:  Well, that would be contemporaneous.

11         MS. LARAKERS:  There may have been a conversation,

12   Your Honor.  I don't know if there's any record of that

13   conversation written down.  It's possible, but I don't know

14   that.

15         THE COURT:  Just a second.  And now -- sit, please.

16         Okay.  So now when I issued my order yesterday saying

17   Mr. V couldn't be removed until I had this hearing either today

18   or if you needed more time to respond after tomorrow.  You

19   know, it was my hope to decide this matter this morning or now

20   this afternoon.  But you say Mr. V is not now scheduled for

21   removal?

22         MS. LARAKERS:  No, Your Honor, because of this court's

23   order.

24         THE COURT:  And what's the process necessary to remove

25   somebody that's in some respects -- it relates to Mr. V but it

relates more broadly.  Do you have, for example, do you have to get some document from the country to which he's going to be removed saying that we'll accept him, you have to get plane tickets, things like that?

MS. LARAKERS:  Yes, Your Honor.  And I can only speak in generalities, and that's the general understanding that I have.  You have to get a travel document.  It's a conversation with the country of origin.  And then ICE can facilitate, has many different ways of facilitating removal.

THE COURT:  Like what?

MS. LARAKERS:  If Your Honor would like more specific information regarding specifically how Mr. V would be removed, I can get that for you.  But I can assure you, Your Honor, that as long as his removal is stayed by this court, he will not be removed, and ICE understands that.

THE COURT:  Well, if I deny the temporary restraining order, I'm not staying his -- I might not stay his removal any further, but if he's not going to get on a plane this afternoon, then do you know how long it would take to schedule him for removal again?

MS. LARAKERS:  Unfortunately, I do not, Your Honor.  I think it's highly dependent on each situation and the type of travel document the individual has.  It depends on a lot of factors.  I can certainly get that information for you, Your Honor.

1           But I do know the reason we're here today and the

2      reason I filed that response yesterday is so that we can get

3      clarification from this court and so that we can do things in

4      the most efficient way moving forward.  And in order to do

5      that, Your Honor, I think it would be helpful if we knew

6      exactly the type of information that this court believes is

7      required in order to show consideration.

8           THE COURT:  But I returned to the courthouse yesterday

9      after being away.  And I understand that.  And this is useful.

10     I haven't studied your June 5 reports.  And I think this is --

11     whenever you're with me, it seems like you're very close to

12     reaching agreement.  Whenever I let you go, you seem to

13     diverge.  You know, I think that you've just identified an

14     important question that goes beyond Mr. V, which is what moved

15     this to the top of my agenda when I returned yesterday morning.

16          Let me just ask you, to the extent you know the

17     answers, you can tell us a couple of questions.  So you said

18     there may or may not always -- well, there may not always be a

19     record of the reasons for removal made contemporaneously.

20     There might be in this case.  And we'd have to find out about

21     Mr. V.

22          MS. LARAKERS:  Your Honor, to clarify that, there was

23     a record made.  And if I can direct you to my email that I sent

24     to petitioners, that was a portion of a spreadsheet that ICE is

25     now creating when they detain a class member.

```
 1              THE COURT:  Here.  Let me look at that.  So this is
 2    the response to the emergency motion.  Where is the email?
 3              MS. LARAKERS:  I think it's at 268-3, Your Honor.
 4    Yes, 268-3.
 5              THE COURT:  I have it.
 6              MS. LARAKERS:  If you go to the last, to page 3 and 4,
 7    you can see, it looks like, it's like a copy-and-pasted section
 8    from a spreadsheet.  Respondents had agreed that in order to
 9    show consideration that they're considering a class member's
10    pursuit of a provisional waiver, we would, ICE would, upon
11    detaining a class member, create this record on a spreadsheet.
12              THE COURT:  Wait a minute.  What page are you looking
13    at?
14              MS. LARAKERS:  Page 3 and 4 on 268-3.  You see these
15    columns says A number, first name, last name, U.S.C. spouse.
16    And then the next page, page 4, has the columns filled out.
17    Oh, I'm sorry, Your Honor.  It's 4 on the numbered page.  It's
18    5 on the ECF numbered page.
19              THE COURT:  For some reason I don't have any numbers.
20              MS. LARAKERS:  But in any case, it's the last two
21    pages.
22              THE COURT:  What information on the last page gives
23    the reason?
24              MS. LARAKERS:  So this is the record -- the only
25    reason why this record exists is because ICE, upon taking a
```

1    class member into detention, is making a special spreadsheet to

2    take that information down.  The fact that this record is being

3    created at all --

4         THE COURT:  Take what information down?

5         MS. LARAKERS:  This information.

6         THE COURT:  All it says is name, whether he has an

7    attorney.

8         MS. LARAKERS:  Whether he has a final order of

9    removal, whether he has a pending Form I-130, whether he has a

10   pending Form I-212, whether he has a pending I-601A, this

11   information that the court has declared is relevant and that

12   ICE must consider.

13        The fact that this record is being created by ICE when

14   it was not being created before demonstrates -- and when they

15   put it down on that piece of paper, it demonstrates that they

16   are in fact considering it.  This is a record they are creating

17   solely for the purposes of this case.

18        THE COURT:  I question -- you told me Mr. Charles made

19   the decision.  And somebody advised him on it, I assume.  You

20   said that it might have been done in a phone conversation.  But

21   whoever wrote this down evidently is not the person who made

22   the decision.  I don't know if Mr. Charles even saw this.

23        MS. LARAKERS:  Your Honor, it's my understanding

24   that --

25        THE COURT:  Well --

1          MS. LARAKERS:  -- these decisions certainly have, you

2     know, a hierarchy, because as people testified, you know, just

3     because a person is targeted for enforcement of their final

4     order of removal --

5          THE COURT:  Hold on.

6          MS. LARAKERS:  -- that may be the initiation.

7          THE COURT:  Well, let's see.  Now, where did I put

8     Mr. Charles' affidavit.  Paul, come here, please.

9          Does Mr. Charles' affidavit say he's the one who made

10    the decision to have Mr. V removed?

11         MS. LARAKERS:  Your Honor, it says that he reviewed

12    the records.  As I personally understand from conversations

13    with my client, he did make the decision in this case.

14         THE COURT:  It doesn't say that in the affidavit, does

15    it?

16         MS. LARAKERS:  No.  But again, Your Honor, I think

17    it's a question of how to put that in an affidavit because,

18    again, he may be the one that made the final decision, he may

19    be the one that approved it.  But it certainly could have been

20    someone else who brought this person to the field office

21    director's attention.

22         THE COURT:  But this doesn't say that he made the

23    decision.  It says he's reviewed the file, so he's explaining

24    to me what he understands the reasons were, but he doesn't say

25    they were his reasons or that he made the decision.

1          MS. LARAKERS:  Your Honor, I think, you know, it's

2     just because, even assuming that the field office director is

3     not the one who made the first decision, maybe he made the last

4     decision, maybe he didn't make the decision at all in other

5     cases.  Just because he isn't the one that makes the decision

6     does not mean that ICE did not consider it.  And the fact that

7     this record was created by an individual who has the authority

8     to execute removal orders at ICE Boston shows that these

9     factors --

10          THE COURT:  How do I know that it was made by somebody

11    who had the authority to execute a removal order as opposed to

12    some clerk?

13          MS. LARAKERS:  Your Honor, we can certainly submit an

14    affidavit to that effect.

15          THE COURT:  But, look, I'm requiring the petitioners

16    rely -- it's a motion for a temporary restraining order.  I

17    thought, you know, you had tickets to remove Mr. V this

18    afternoon, sometime today, and I wanted to give you the

19    earliest possible hearing so if I denied -- if I had sufficient

20    information and denied the TRO, you'd be able to put him on the

21    plane.  But you're making arguments that go beyond the record.

22          I don't know who made the decision, and at the moment

23    I'm not persuaded by the fact that somebody wrote down this

24    information when Mr. V was taken into custody that it even came

25    to the attention of the person unnamed or unknown to me at the

1  moment who made the decision, because although Mr. Charles

2  provides a lot of detail in this affidavit about what's in the

3  records, he doesn't, I think, say in here that he made the

4  decision and this is what he knew when he made the decision.

5           MS. LARAKERS:  The declaration does state, Your Honor,

6  that ICE did consider it.  He swore that ICE considered the

7  factors that this --

8           THE COURT:  Where is that?

9           MS. LARAKERS:  That's in paragraph 33, 34.  That's on

10 the last page, other than the signature page, Your Honor.

11          THE COURT:  Well, I think 34 says, "In seeking to

12 effectuate" -- I'm looking at the redacted version -- "Mr. V's

13 order of removal, ICE is considering numerous factors beyond

14 Mr. V's final order of removal.  Specifically, ICE knows that

15 Mr. V is married to a U.S. citizen who filed an I-130 petition

16 with USCIS on August 10, 2015, which was approved on January 8,

17 2016.  ICE is also considering that Mr. V has not filed a Form

18 I-212 or Form I-601A per USCIS databases.  ICE is also

19 considering his criminal record as well."

20          I mean, it says "is considering."  It doesn't say "did

21 consider."  That's an ambiguity.  If he was here, I would ask

22 him.

23          MS. LARAKERS:  Your Honor, but at the same time we

24 also notified petitioners' counsel prior to removing him.  It's

25 hard for me to image how ICE could notify DOJ counsel to notify

```
 1    petitioners' counsel of a class member's impending removal, the
 2    fact that they are recognizing that they are a class member,
 3    that they do have this information, without at the same time
 4    considering that information.  And then we have a declaration
 5    here that states --
 6              THE COURT:  Well, I don't know.  They gave you notice
 7    that they were going to remove him today, evidently, but that
 8    doesn't necessarily mean -- look, let's go back a year when you
 9    were arguing that ICE knew all about the POCR regulations, as
10    you call them, P-O-C-R, and was following them.  And then I
11    found that not only were the relevant officials not following
12    the regulations that ICE claims apply, but they didn't even
13    know about them.
14              And to be more complete, my impression is that ICE has
15    taken the orders in this case seriously and have been trying to
16    follow them.  But I don't have an affidavit that says these
17    factors were considered.  As I said, he's reviewed the file,
18    and this is what he finds in the file.  But he doesn't even say
19    what you argue, that he made the decision.
20              MS. LARAKERS:  Your Honor, paragraph 34 says, "In
21    seeking to effectuate his removal, ICE is considering."  The
22    fact that it's present tense is because they have not actually
23    effectuated his removal.  It goes to show that ICE is
24    continuing to consider those factors even as we stand here now.
25    And again, Your Honor, he also mentions separate, you know,
```

1    that makes this situation completely unlike the POCR

2    regulations last year, that he knows of this court's order.

3    And we have a declaration from Todd Lyons after this court's

4    order that says that he's communicated that to the field

5    office.  So this field office knows.

6           And the question here before us today is two-part.

7    The first question is whether this information given to

8    petitioners is enough information to show that ICE has complied

9    with this court's order.

10          THE COURT:  Okay.  This information given in the

11   affidavit, does this go beyond what you told them last week?

12          MS. LARAKERS:  Yes, Your Honor, it does.  But our

13   position, Your Honor, is that this information given to them in

14   a spreadsheet that is created for the sole purpose of complying

15   with this court's order is enough to show consideration.  If it

16   is not, Your Honor, then we would understand the court's

17   position there, but what we seek today is an order clarifying

18   what information we would have to give in order to show

19   consideration.  Our position is that this is enough to show

20   consideration.

21          THE COURT:  Well, that's not in my view properly part

22   of the motion for a temporary restraining order.  You filed

23   these things two weeks ago -- not two weeks ago -- whenever you

24   filed them.  I have devoted a lot of attention to this case.

25   It's not the only case I have.  And I think I've told you

1   before I'm a senior judge.  I'm away a lot.  You filed this on

2   June 4 or 5.  I was with the Pope, literally with the Pope, so

3   I didn't drop everything to read it.

4        Look, this is important, but the reason we're here is

5   I have to decide -- I wanted to give you a chance to -- I

6   wanted to have a chance to decide whether you should be allowed

7   to put Mr. V on the plane later today.  But now he's not going

8   on the plane later today.

9        MS. LARAKERS:  Well, Your Honor.

10        THE COURT:  Go ahead.

11        MS. LARAKERS:  Sorry.  If I may just reframe the

12   issues, which I hope will be helpful.

13        In this case, as specifically with regard to Mr. V,

14   which is specifically what their temporary restraining order is

15   about, plaintiffs have the burden to show that it is likely

16   that ICE did not consider the fact that he is pursuing a

17   provisional waiver before seeking to effectuate his removal.

18   They have failed to meet that burden.  And respondents'

19   position is they failed to meet that burden by their own

20   admission in their temporary restraining order because they

21   state that consideration requires how in the calculus.

22        But the calculus and how the decision -- how much

23   weight each factor was given and how exactly ICE considered it

24   doesn't go to whether ICE considered it.  It actually assumes

25   that ICE has made that consideration.  They only seek

1   information to determine whether they agree with that decision

2   of ICE.  Because they have failed to meet that burden to show

3   that ICE has likely in this case failed to consider the fact

4   that Mr. V's pursuing a provisional waiver, the temporary

5   restraining order should not be granted.

6          The second issue, which I won't provide any argument

7   on but will seek to frame for the court, is whether and what

8   information respondents have to provide to petitioners in order

9   to show that consideration so that we're not in this courtroom

10  every third week before seeking to effectuate removal.

11         THE COURT:  Well, we can start on that because that's

12  what the remainder of my questions went to.  You say "every

13  third week."

14         So here are some of the questions that are based on my

15  necessarily quick review of this, because I haven't studied it,

16  I want to know if there is a record of the reasons for removal

17  made contemporaneously.  Somebody types even in, you know, the

18  system that said this person, you know, reviewed Mr. V's file,

19  and it was recognized that there's an approved I-130, so

20  implicitly that the person is in the class, however, it was

21  also considered that three years have passed and the

22  provisional waiver process hasn't been pursued, and he has a

23  criminal record, he's separated from his wife, I decided he

24  should be removed.

25         If there was something, maybe not even in full

1    sentences, that exists like that, A, I think it would be very

2    helpful to ICE.  If we think about what this case is about, the

3    petitioners essentially are going to be arguing that they're

4    entitled to declaratory relief because ICE is not faithfully

5    following my orders.  So I would think it would be in ICE's

6    interest to make a record that it is.  So that's one.

7         And then if that document existed presumably when you

8    give notice, because you're doing it, you could, unless there

9    was some countervailing consideration, share that document and

10   not so they can attack the discretionary decision, which so far

11   I've said that's up to ICE, but just as evidence that something

12   more than the fact that there's an outstanding order of removal

13   is being considered.  So I think you want to find out whether

14   there's a regular practice of making some record of who made

15   the decision and what was considered beyond that spreadsheet.

16   I don't know -- if some intake clerk makes a spreadsheet, it

17   doesn't even mean that the decisionmaker looked at it or knew

18   about it.

19        Then -- here, you want to listen to me.  If you want a

20   break, I'll let the two of you talk.

21             MS. LARAKERS:  No, Your Honor.

22             THE COURT:  Have you agreed between each other on how

23   many days' notice of removal will be given, or does it just

24   happen to be five calendar days with regard to Mr. V's case?

25             MS. LARAKERS:  It just happens to be five calendar

1  days.  ICE is not willing to agree to a specific time period.

2          THE COURT:  Why is that?

3          MS. LARAKERS:  Your Honor, because it could be

4  different in every case.  Petitioners may well end up getting a

5  month notice in some cases.  They may end up getting shorter.

6  But as I understand, it would impede ICE's operations because

7  they just -- a lot of the time they just simply do not know.

8  They may not know sufficiently ahead of time.

9          THE COURT:  And that's what I wanted to get fleshed

10  out because in other cases, you know, I've been educated to

11  understand that if somebody's going to be removed, some country

12  has to agree to take them and issue documents, and the

13  documents I think are only good for some defined period of

14  time, and then if the person is not going to leave voluntarily,

15  ICE buys the tickets, and somebody takes him or her to that

16  country.  But I think -- and you want to get more specific

17  because it may be that there's always at least five days'

18  notice that ICE gets or maybe they aren't.  Maybe sometimes you

19  get the documents on Monday and buy the tickets on Tuesday and

20  the person leaves on Wednesday.  But I think you want to be

21  more specific.

22          MS. LARAKERS:  Your Honor, I think that's only one of

23  the reasons.  I think the primary reason with all of the

24  information that ICE is and is not willing to provide goes to

25  the understanding, ICE's understanding of this court's order.

1          ICE understood.  You know, this spreadsheet that

2     they're creating specifically for class members to comply with

3     this court's order, perhaps we can supplement -- and I don't

4     want to come to this court saying like there's a great

5     likelihood that we would agree to all of these things, and I

6     don't think that that makes this hearing very helpful if I just

7     say I'll go back to my client.  I've had a lot of discussions

8     with my client, and I can tell you from those discussions that

9     we view the spreadsheet to be created as sufficient.  If we

10    need a declaration --

11         THE COURT:  And I'll tell you, not having studied it,

12    that I'm skeptical about that because I doubt that Mr. Charles,

13    the acting field office director, is making a spreadsheet.  I

14    expect that some clerk is entering data and the spreadsheet is

15    there, but there's no indication that -- you know, no direct

16    evidence --

17         MS. LARAKERS:  I understand.

18         THE COURT:  -- that the spreadsheet goes to the person

19    who makes the decision.

20         MS. LARAKERS:  I understand.  And perhaps that

21    spreadsheet could be supported with a declaration saying

22    exactly how it's created and how ICE will be creating it.  But

23    outside of the information that is provided on this

24    spreadsheet, ICE is not willing to provide anything else other

25    than this record.  And that's for many different reasons.

1          First, because we believe that this shows

2     consideration.  And if it needs to be supported by a

3     declaration saying exactly how that gets recorded and why

4     that's proof of consideration, then we would certainly consider

5     that, and that's likely.  But the other reason why ICE wouldn't

6     want to provide an EARM printout as they say --

7          THE COURT:  What is --

8          MS. LARAKERS:  It's the module, the

9     law-enforcement-sensitive module that ICE uses in how they keep

10    track of information on individual aliens to target them for

11    removal.

12         So it would be one thing to take that record, to take

13    that summary out and put it on a spreadsheet, which is what I

14    believe ICE is doing here and what I've been informed ICE is

15    doing here.  It's a totally different thing to print out that,

16    you know, module from the computer of ICE's internal database

17    that we believe is law-enforcement-sensitive and provide it to

18    petitioners.  We believe that can be done in a different way.

19         THE COURT:  It can be done in a different way?

20         MS. LARAKERS:  Yes.

21         THE COURT:  Like in what way?

22         MS. LARAKERS:  Like in this spreadsheet.

23         THE COURT:  A different, an amplified spreadsheet?

24         MS. LARAKERS:  Or a spreadsheet, perhaps an amplified

25    spreadsheet or a spreadsheet with a declaration from ICE

```
 1    stating exactly how they compiled that spreadsheet.

 2            But stating that, Your Honor, this is when an

 3    individual comes in, this is exactly what happens, this is the

 4    officer, the officer puts this information down, the officer

 5    considers it, the fact that it's on this spreadsheet is proof.

 6    Or, alternatively, an amplified spreadsheet where there may be

 7    a comment that says, you know, ICE considered the fact that he

 8    had a criminal history and has no pending I-601A before

 9    removing him.  Those are the options that ICE would be willing

10    to consider.  Outside of that --

11            THE COURT:  Absent a court order?

12            MS. LARAKERS:  Exactly, Your Honor.

13            THE COURT:  Just a second.  I want to read what you

14    just said.

15            Yeah.  It seems to me that an amplified spreadsheet --

16    this is not final, and I haven't heard from the petitioners.

17    But an amplified spreadsheet that says a decision to remove

18    Mr. V was made on June, whatever it is, 2, by X, some ICE

19    officer, ideally identified but you can argue about that if you

20    wanted to.  And then, you know, the ICE officer considered that

21    there was an approved I-130 but no application for any other

22    relief; that, as of a certain date, the alien and the American

23    spouse, citizen spouse were separated; that the alien had a

24    criminal record, including recently; and the officer decided he

25    should be removed.
```

```
1            MS. LARAKERS:  Your Honor --

2            THE COURT:  And, you know, then, unless there was some

3    basis not to believe the assertion, whether that was wise or

4    unwise or an abuse of discretion would I think not be an issue

5    for this court.

6            MS. LARAKERS:  Well, Your Honor, I can tell you that

7    ICE again views what, exactly what you just said as being

8    embodied by the spreadsheet.  Now, I understand that that needs

9    to be explained, and perhaps a declaration can explain that,

10   but the fact that these columns exist specifically exist for

11   that reason.  This is a factor ICE is considering.  This is a

12   factor ICE is considering.  You know, final order of removal,

13   Form I-130.  But putting it --

14           THE COURT:  Have you explained this to the

15   petitioners?

16           MS. LARAKERS:  Yes, Your Honor.  That's why the

17   statement to them in the email was that we believe this

18   spreadsheet is sufficient.  I'm understanding from Your Honor

19   that you may not believe that without some explanation of like

20   a declaration stating how it's created that it may not be

21   sufficient.  That is something ICE is willing to consider.  I

22   know from conversations with my client that ICE would be less

23   likely to consider to include a narrative.  They would be more

24   likely to explain the spreadsheet and explain how that's

25   created and how it's done in the cases of individual aliens.
```

1      They would be less likely to provide that narrative.

2           THE COURT:  How long would it take to provide that

3      explanation?

4           MS. LARAKERS:  Your Honor, if you could give me until

5      the end of the week, since Mr. Charles is on -- or until

6      Monday.  He's coming back later this week, as I understand.

7           THE COURT:  Well, there's some problems with the

8      scheduling, but let me ask you this.  You said you hope to

9      avoid running in every three weeks.  I'm concerned about

10     running in every three days.  Do you have some idea of how many

11     people are in the class and what percentage of them might be

12     removed during the pendency of this case?

13          MS. LARAKERS:  No, Your Honor.  But I think we can

14     look at the amount of cases that this district has pending that

15     are claiming to be Calderon class members.  I think there

16     really have only been a handful.

17          THE COURT:  A handful?

18          MS. LARAKERS:  Like, I think -- I can count four off

19     the top of my head that have pending cases within, you know,

20     the District of Massachusetts.

21          THE COURT:  Pending?

22          MS. LARAKERS:  Individual habeas petitions, Your

23     Honor, like Mr. Ferrara and Mr. Lima and a couple of others.

24          THE COURT:  But see again, this goes -- this came up

25     because I raised a question of whether I should give notice to

1    the class.  If people don't know they're in the class, don't

2    know they have lawyers, unless -- and you both urged me to rely

3    on the notice you're giving the petitioners, as I understand

4    it.  It's a substitute for giving notice to the class.

5            But I mean, how many people with provisional waiver --

6    are you giving them information on how many people who have

7    applied for an I-130 or got further along in the process are

8    being removed?

9            MS. LARAKERS:  If they're being removed, if they're

10   checking in with ICE, or if they're being detained to be

11   removed, or being detained, Your Honor, and they're a class

12   member, they're getting information on them.  That's the

13   information that they're receiving.

14           Your Honor, I just want to -- I again just want to

15   clarify so that this hearing is the most efficient, that ICE

16   may be willing to submit a declaration describing the extent of

17   the spreadsheet.

18           ICE is not willing -- I would go back and check with

19   them for the tenth time, but ICE is likely not willing to

20   include a narrative.  ICE is also not willing to provide a

21   certain amount of days' notice prior to removing a class

22   member.  Although they do, they will provide that spreadsheet

23   prior to removal.

24           And the reason why I called petitioners' motion for a

25   temporary restraining order and their request in their filings

1    as a request for a preliminary injunction is because if the

2    court requires that information, any information that ICE is

3    not willing to agree to, if the court requires ICE to give that

4    information to petitioners and that notice to petitioners prior

5    to effectuating what ICE believes is a lawful removal of a

6    class member, then that would be enjoining ICE from removing an

7    individual, and that's the reason why I called it.

8         THE COURT:  All right.  And I think we're on the same

9    wavelength here because I said I saw those as two discrete

10   issues.  One, should I enjoin the removal of Mr. V, temporarily

11   restrain the removal of Mr. V so he couldn't be put on the

12   plane this afternoon.  That's what brought us here.  That's why

13   I scheduled this on an expedited basis.

14        The other issue can be dealt with more deliberately.

15   But my availability is extremely limited because I have three

16   days of hearings in another major case next week, and I need to

17   prepare for those, and then I have very little availability

18   right after that.  So I think I may need Mr. Charles' affidavit

19   much sooner than the beginning of next week.

20        MS. LARAKERS:  And perhaps that would be helpful.  So

21   perhaps going forward, you know, assuming -- I haven't -- this

22   is something I haven't checked with my client about.  Assuming

23   that ICE is willing to provide that declaration describing how

24   they come up with the spreadsheet, we can submit that.

25        THE COURT:  But what they do with it.

1          MS. LARAKERS:  What they do it with it, how it's

2     created, and assuming after they present that to Your Honor,

3     then Your Honor can look at that and determine whether that

4     information is enough.  And if it's not enough, then this court

5     will be informed as to how much information petitioners should

6     get.  But again, Your Honor, because ICE is not willing to

7     agree to any information beyond that, it would be -- and if

8     this court requires information to be given to them prior to

9     removal of a class member, that would be enjoining --

10          THE COURT:  All right.  Okay.  Now I understand better

11     why you said that.  But to me, the subject that's appropriate

12     for temporary injunctive relief, if the factors are met,

13     relates to Mr. V only, not what kind of information should be

14     made available generally.  I don't think that's the proper

15     subject of a temporary restraining order.

16          MS. LARAKERS:  And Your Honor, you're absolutely

17     correct, Your Honor, but we wanted to raise that before you

18     granted their request because it would be enjoining the

19     government's action.

20          As to Mr. V, as I already said, their motion for a

21     temporary restraining order doesn't even touch on the

22     preliminary injunction factors.  It doesn't say that ICE failed

23     to consider.  It says that they don't know how and what

24     calculus was used.  We have a declaration here that's more than

25     sufficient.

1          THE COURT:  Don't repeat that because it's ambiguous.

2     It doesn't say that this was considered.  It says I've looked

3     in the file and this is the information that's there.  And

4     you're right.  I might infer that if it's there, somebody

5     considered it.

6          MS. LARAKERS:  Well, Your Honor, let me clarify.  It's

7     sufficient for this purpose of the temporary restraining order.

8     It may not have been, you know, sufficient on a merits motion

9     or a motion for summary judgment, but that standard is

10    different.  And here, where they're seeking to enjoin an

11    action, specifically the government's action, that burden to

12    show likelihood on the success of the merits as you've stated

13    many times is extremely high.

14         Here, ICE has submitted multiple declarations in this

15    case, has worked very hard to comply with this court's order.

16    It is very clear that ICE takes this seriously.  There is still

17    yet anyone to come to this court and allege that ICE has truly

18    ignored the provisional waiver, their pursuit of a provisional

19    waiver, even in the cases pending before this court.

20         ICE has always been able to submit a declaration

21    stating with specificity all the things that they considered.

22    Absent any of that backdrop, absent a true allegation in this

23    case that ICE has ignored this individual's pursuit of a

24    provisional waiver, their motion can't be granted.  And I will

25    also note that the criminal history here, you know, even though

 1    this court does not have jurisdiction to look behind the

 2    curtain and determine whether, as Your Honor has said, whether

 3    ICE made a wise discretionary decision, I think even here it's

 4    indicated that it was wise, Your Honor.  He's had multiple

 5    arrests for operating under the influence, Your Honor.  But

 6    again, that's not the question here.

 7         The question is whether they've met their burden to

 8    show that ICE ignored, that ICE likely ignored his pursuit of a

 9    provisional waiver and that's simply not present.  And to the

10    extent that this court would order on the second issue any

11    information beyond which ICE is willing to provide, that would

12    be enjoining the lawful removal of class members, and we would

13    ask this court not issue that injunction.

14         THE COURT:  All right.  Would the petitioners like to

15    respond?

16         MS. CANTIN:  Your Honor, I don't want to belabor the

17    point, but we filed an emergency motion.  We had none of the

18    information that is being conveyed today.  Even the affidavit

19    that was submitted at 5:00 p.m. yesterday provided a little bit

20    more information, but we still don't know who made the

21    decision, when that decision was made, how it was made.

22         I'm hearing Ms. Larakers say that Mr. Marcos made that

23    decision, that he made it on June 2.  I'm not seeing that

24    reflected as I'm reading the affidavit again.  So there is

25    that.

1        Also, the spreadsheet, Your Honor, respectfully, there

2   is no consideration being conveyed by the spreadsheet.  This

3   spreadsheet gives me the name, the A number, the fact that this

4   person has an approved I-130.  This person is identified as a

5   criminal with no explanation whatsoever on that information.

6   This does not show consideration.  Is does not show meaningful

7   consideration.  We can't work with this record to make an

8   informed decision about whether we do in fact need to run to

9   Your Honor's court.

10        I also want to point Your Honor to one further issue.

11   So far we've been very focused on whether the government has

12   complied with your September 2018 order.  That order was made

13   in the context of petitioners' due process claims.  We're a

14   year out.  Since then Your Honor certified a class on the APA

15   claim, on the EPC claim, on the INA claim.  These are live

16   claims that our class members have against the government.  And

17   the test about whether the government has complied with --

18        THE COURT:  Well, how does that relate to whether

19   Mr. V can properly be removed?

20        MS. CANTIN:  The question here is the government is

21   saying they have considered the provisional waiver process with

22   respect to Mr. V.  That litmus test or that test is for the due

23   process claim.  We also have these other three live claims for

24   which we're supposed to be in active discovery on.

25        THE COURT:  Well, how does the -- I'd have to go back

1    back and further refresh myself.  But how does the APA claim

2    help Mr. V?  I said they can't -- it would be -- they can't

3    abrogate the provisional waiver regulations by ignoring them,

4    but if they considered them, that he might be entitled to

5    provisional waiver relief; but also consider that he's not

6    pursued that relief for three years, that he's separated from

7    his U.S. citizen spouse and that he's committed crimes, how

8    would he get relief under the APA?

9         MS. CANTIN:  Under these three claims we're asking for

10   discovery to learn more about what is happening with Mr. V.

11   All I'm saying is they're premising their entire justification

12   that this is a proper decisionmaking process based on your

13   order from 2018, which doesn't take into account now the live

14   claims that we have moving forward.  And because Mr. V is a

15   proper class member under those three classes, we're entitled

16   to discovery and the basic information we're seeking.

17        Your Honor, all we're asking is the same thing we've

18   been asking and trying to work with the government for now

19   seven months' time, which is to please explain to us what are

20   the current policies that the Boston ERO is undertaking to make

21   sure that this provisional waiver process is accounted for?

22        Your Honor ordered limited discovery the last time we

23   were here.  You asked us to focus on the current practices

24   because that is what's most relevant.  All of the questions

25   we're asking go squarely to what is Boston ICE doing now.

1    Respondents have submitted docket 264, the supplemental report

2    to the June 5 report.  And Your Honor has seen the submissions.

3    We're fighting about discovery and the scope of the limited

4    discovery, but even respondents can agree that your May order

5    was to allow limited discovery with the focus on what is

6    happening today.

7         THE COURT:  All right.  Okay.  I'm going to take a

8    break, and we'll see where we are and where we're going.  Court

9    is in recess.

10        (Recess taken 12:45 p.m. - 12:58 p.m.)

11        THE COURT:  All right.  You may be seated.  Wait a

12   minute.

13        (Discussion off the record.)

14        All right.  I'm going to take the motion for the

15   temporary restraining order under advisement briefly.  I'm

16   ordering, and I'll hear you on the timing but by the close of

17   business tomorrow, 6:00, that Mr. Charles amplify his affidavit

18   with regard to Mr. V, essentially to assert if it's true that

19   the information regarding -- the information that he says in

20   the affidavit filed yesterday is in ICE's files that's relevant

21   was considered, that Mr. V had the approved I-130 but it was

22   considered that three years had passed and there was no effort

23   to get an I-212 or an I-601A, that he was separated from his

24   wife, if that's in the files, and that he had a criminal

25   record, and that the official who decided to order removal

1    considered those matters and concluded that the potential or

2    provisional waiver was outweighed by the other considerations.

3          I'm also ordering that he state who made the decision

4    or seek to explain why that information should not be required

5    in Mr. V's particular case.  That doesn't mean it wouldn't be

6    required necessarily in every case, but this case is in

7    litigation.  It would be helpful, it could be a separate

8    affidavit, to show that these are compartmentalized.  But with

9    regard to the discovery dispute, it would be helpful to me to

10   know why at least five business days' notice of removal should

11   not be ordered by the court, you know, why that would be

12   burdensome or otherwise inappropriate, and why, when notice of

13   a removal is given to the petitioners, as ICE has agreed to do,

14   there shouldn't be -- well, why there shouldn't be that

15   representation that more than the outstanding order of

16   deportation was considered.

17         And then this could be a second discrete point, why

18   there shouldn't be some brief indication of the reasons.  It

19   could be just a couple of words, you know, no I-212 or

20   application for an I-212, 601A filed, criminal conduct, you

21   know, just a few words, and why you shouldn't be required to

22   give the record of the decision and if there's some law

23   enforcement system that's confidential and ordinarily wouldn't

24   be accessible.

25         Part of the reason I say I'd like -- but I'll hear you

1    on this -- the affidavit tomorrow is I'm about to get immersed

2    in a very major matter, and I'd like to focus on this before I

3    do.

4         But I mean, you came up, you produced an -- I gave you

5    until tomorrow morning as a practical matter.  I offered the

6    government that option because I thought if you wanted to

7    remove Mr. V this afternoon, I'd give you the hearing today and

8    maybe you could do that.  But he's not going anywhere today

9    anyway.

10        If you'd like a little more time, until sometime on

11   Thursday, I'll hear you on that, but I'd really like to get

12   something quickly so I can decide the TRO regarding Mr. V.  And

13   then now you've moved up on my agenda something that was going

14   to be high but perhaps not highest anyway, the discovery

15   dispute.  Do you want to file this affidavit or two affidavits?

16   Two might be better to keep separate what's Mr. V and what's

17   the larger issue.  Do you want to try to file it tomorrow and,

18   if necessary, ask me for an extra half a day or something?

19        MS. LARAKERS:  Yes, Your Honor.  That will give me

20   enough time to confer with my clients.

21        THE COURT:  All right.  Well, I'm ordering that you

22   file it no later than 6:00 tomorrow.  And if the petitioners

23   want to supplement based on this hearing, they shall make a

24   filing at the same time, by 6:00 tomorrow.  In connection with

25   that there was no reference to the APA claim, for example, in

1       the submissions that were made.  I essentially -- the APA claim

2       has essentially been treated so far, as I recall it, is the

3       functional equivalent of the due process claim, although it

4       might be broader, the class might be broader.  I don't know

5       what difference that makes, but if you think it does -- but you

6       have an obligation when you come in seeking a temporary

7       restraining order to go with what you've got and seek to show

8       you've got a reasonable likelihood of succeeding on the merits.

9       And so far it's essentially acknowledged that petitioners don't

10      have that.

11             But by filing what you filed, because of the

12      government's response, which is appropriate, you've got a

13      temporary restraining order for some limited period of time at

14      least.  Mr. V's not going anywhere today.  And he can't go

15      anywhere until I decide the motion for a temporary restraining

16      order, which I would have if Mr. -- I think it was Mr. Charles'

17      affidavit that addressed all the issues that have come into

18      sharper focus, not just that this is in the files but somebody

19      considered it.  Then I might have been able -- then I probably

20      could have decided this today.  But let's go one step at a

21      time.

22             Anything further in this matter for today?

23             MS. CANTIN:  One request, Your Honor.  We understand

24      that Mr. V is without counsel.  If we can --

25             THE COURT:  What's that?

1          MS. CANTIN:  Mr. V is currently without counsel.  If

2    we can ask the government to provide the name of his last

3    counsel who we understood withdrew representation during the

4    removal proceedings, that would be helpful for us to connect

5    with his lawyer.

6          THE COURT:  Is there any objection to that?

7          MS. LARAKERS:  No, Your Honor.

8          THE COURT:  Okay.  And actually, there's one other

9    thing.  I think this is where we started, and it would be in

10   the government's interest, does the petitioner still want to

11   know where Mr. V is?

12         MS. CANTIN:  Yes.

13         MS. PIEMONTE:  Your Honor, he's in Strafford as we

14   represented, in Dover, New Hampshire.  We had that confirmed

15   this morning.

16         THE COURT:  Where is he?

17         MS. PIEMONTE:  Strafford County, Dover, New Hampshire.

18         THE COURT:  And is there any claim that it would be

19   ethically impermissible for class counsel to contact him

20   because they represent him as a class member?

21         MS. LARAKERS:  No, Your Honor.

22         THE COURT:  All right.  I'm sure it's nice in New

23   Hampshire this time of year.  For the lawyers, not for somebody

24   in jail.  All right.  Court is in recess.

25         (Recess taken 1:09 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Kelly Mortellite, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter to the best of my skill and ability.

Dated this 19th day of June, 2019.

/s/ Kelly Mortellite

_____

Kelly Mortellite, RMR, CRR

Official Court Reporter