# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al.,<br><br>Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs-Petitioners,<br><br>    v.<br><br>KEVIN McALEENAN, et al.,<br><br>    Defendants-Respondents. | No. 1:18-cv-10225-MLW |

## PETITIONERS' JUNE 25, 2019 STATUS REPORT REGARDING CLASS NOTICE AND DISCOVERY

This Court has asked the parties to confer and report whether disputes regarding discovery and class notice have been resolved or narrowed. Dkt. No. 288. They have not.

With regard to discovery, the parties' positions remain unaltered. Petitioners request the depositions and discovery described in Dkt. No. 261 at 5-7.

With regard to reporting and notice, recent developments have demonstrated that Petitioners' prior proposal (which Respondents had not agreed to), Dkt. No. 261 at 2-3, was insufficient. Petitioners have updated their reporting and notice proposal as follows to ensure that class members who interact with Immigration and Customs Enforcement's Enforcement and Removal Operations (ICE ERO) are informed that they are part of ongoing litigation, and that Petitioners' counsel have access to all necessary information and earlier opportunities to engage with class members threatened with removal.

|  | **Petitioners' Updated Proposal with Regard to Notice and Reporting** | **Respondents' Position, as Understood by Petitioners** |
|---|---|---|
| **Notice to class members who interact with ICE** | All class members with whom ICE ERO comes into contact—whether they are under supervision, detained, applying for a stay of removal (Form I-246), or otherwise in contact with ICE—will receive notice regarding the *Calderon* litigation. Petitioners' proposed notice is attached as Ex. A to this status report. | - No |
| **Monthly reporting** | Petitioners' counsel will receive a monthly report of any class members encountered by ERO during that month, including class members who checked in, were in detention, applied for or received a decision on a Stay of Removal, or other. For each of these individuals, Petitioners request the following information: | - Yes as to reports regarding check-in encounters and individuals who are class members at the time they are detained (including stay decisions for detained class members only).<br>- No as to including individuals who become class members after they are detained<br>- No as to reporting about Stay of Removal applications, except in the case of individuals appearing on the detention report |
|  | - Name, alien number, country of origin, and contact information for individual and spouse (including location detained, if detained) | - Yes for name and alien number<br>- No for country of origin, contact information for individual and spouse (including location detained, if detained) |
|  | - Date of final order of removal | - No |
|  | - I-130, I-212, and I-601A status, including filing date or decision date, if decision has occurred | - Yes for status of an alien's I-130, I-212, and I-601A<br>- No for filing date or decision date, if a decision has occurred |
|  | - Most recent attorney of record | - Yes |
|  | - Status of most recent stay application, including decision and date; and a copy of any recent (last 6m) stay decisions | - Yes for status of most recent stay application<br>- No for any applicable stay decisions and dates, or a copy of any recent stay decisions (over the last six months) |
|  | - Supervision information, if applicable: check-in date, next | - Yes for check-in date, next report date, and instructions given |

2

|  | **Petitioners' Updated Proposal with Regard to Notice and Reporting** | **Respondents' Position, as Understood by Petitioners** |
|---|---|---|
|  | report date, any restrictive conditions of supervision (such as GPS monitoring), instructions given | • No for restrictive conditions of supervision |
|  | • Detention information, if applicable: For all class members currently in detention, and those who are later detained or become class members while in custody, the date detained, date and result of any custody reviews | • Yes for date detained, as to individuals who were class members at the time of detention<br>• No for date and result of any custody interviews |
|  | • Removal information: If a decision to pursue removal has been made, the decision maker, reasons for the determination, including any criminal record considered; and a record of the decision, if one exists. | • As to individuals who did not appear on a prior detention report and are scheduled for removal, Respondents agree to provide information about upcoming removal, including the decision-maker, and the "reasons for the removal."<br>• Respondents do not agree to provide information about the criminal record considered (beyond "yes" or "no" for whether criminal record exists)<br>• No to a record of the decision, if one exists |
|  | • EARM printout (only for detained individuals or individuals being ordered to depart) | • No |
|  | • Any notice of revocation of release, release notice, Risk Classification Assessment (RCA) printout, Post Order Custody Review (POCR) notice or decision, or other similar detention decision (only for detained individuals) | • No |
|  | • Upon request, I-130, I-212, and/or I-601A applications | • No |
| **Notice of detentions and** | • Respondents will provide class counsel notice within two business days when a class member is arrested or ICE becomes aware | • Respondents agree to provide notice of imminent removals *only* in circumstances in which a class member has not appeared on a prior |

3

|  | **Petitioners' Updated Proposal with Regard to Notice and Reporting** | **Respondents' Position, as Understood by Petitioners** |
|---|---|---|
| **imminent removals** | that a class member is in its custody<br>• Respondents provide class counsel five business days' notice before removing or enforcing the removal of any class member<br>• Each such notice will include the information above | detention report. Respondents do not agree to provide notice within any particular minimum time before removal is effectuated. |

# ARGUMENT

In light of the history of this case and Petitioners' obligations to the class, Petitioners cannot accept Respondents' proffer that they are complying with this Court's order and "considering" class members' pursuit of provisional waivers before removing them from the United States and from the jurisdiction of this Court. The events of the past two weeks—including the circumstances of Petitioners' motion to enjoin the removal of Mr. V, Dkt. No. 268, and the President's public announcement of an operation intended to quickly whisk individuals with final orders of removal out of the country—underscore the need for robust reporting and notice procedures to protect the rights of class members. These events also demonstrate the need for the discovery that Petitioners previously proposed. *See* Dkt. No. 261 at 5-7.

### I. The Events of the Past Two Weeks Support Petitioner's Updated Reporting and Notice Proposal.

Since Petitioners provided this Court their prior proposal for reporting and notice, Dkt. No. 261 at 2-3, Respondents notified Petitioners of the intended removal of "Mr. V" but refused to provide any additional details until Petitioners had moved this Court for emergency relief. Eventually, the government provided information. But that material revealed that ten months after this Court first ruled on Petitioners' motion to dismiss, Respondents have no reliable mechanisms to ensure that class members' pursuit of lawful status is appropriately considered.

4

These events have informed Petitioners' counsel about the information that they must receive in order to make an informed assessment of the government's handling of a class member's case, and the measures necessary to protect class members' rights.  Accordingly, Petitioners have updated their notice proposal to provide greater specificity about the information required, ensure that the government's actions can be meaningfully understood, and provide certain class members with independent notice.

### A. Reporting Must Ensure That Petitioners' Counsel Receive Timely and Adequate Information About the Government's Treatment of Class Members, Including Five Business Days' Notice of Imminent Removal.

Petitioners' notice and reporting framework would provide class counsel with adequate notice of enforcement actions against class members and sufficient information to challenge them, if necessary.  Mr. V's case demonstrates why Petitioners need timely and adequate information, including five business days' notice for imminent removals.  The government had custody of Mr. V for 17 days.  The short notice provided by the government did not afford Petitioners an opportunity to communicate with Mr. V before the date of his scheduled removal.  Further, the information that the government did provide with its belated notice, was insufficient to permit Petitioners to locate Mr. V.  For example, the notice did not provide Mr. V's country of origin—a fact necessary for looking a detainee up by name in the online ICE Detainee Locator, where he was detained, or the name of his most recent attorney.

ICE has not provided any cogent reason why it cannot give Petitioners five days' notice before removing a class member.  Indeed, the only reason ICE refuses to provide five business days' notice to class members of their removal is that such advance notice may allow a class member to challenge his or her removal.  *See* Charles Decl. (June 20, 2019) (Dkt. 284-1) at ¶ 3 ("[I]f such advanced notice is given, it is not uncommon for individuals to take proactive steps to counter ICE operations in an attempt to prevent an individual's removal.").  This is no reason at

all. The Court has denied Respondents' motion to dismiss, has certified a class, and has implicitly found that ICE previously acted unlawfully by failing to consider class members' pursuit of provisional waivers. The ability to ensure ICE is considering provisional waivers—and challenge unlawful removal where the provisional waiver process has not been considered—is exactly the relief needed while this litigation is pending.[1]

> B. **Reporting Must Provide Information Adequate to Permit Petitioners' Counsel to Understand the Government's Consideration of a Class Member's Provisional Waiver Status.**

Mr. V's case demonstrates that the government is failing to consider a class member's pursuit of the provisional waiver process. "Consider" means "to think about carefully." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/consider (visited June 25, 2019). It is not a box-checking exercise. As the Court explained in its September 2018 decision, the law requires that Respondents consider "the ***reasons*** for the provisional waiver regime and the ***facts*** of the alien's ***particular*** case before deciding to order a removal that eliminates CIS's opportunity to decide the merits of the request, and the right of the alien to pursue, and potentially receive, a provisional waiver." Dkt. No. 159 at 38 (emphasis added); *see also id.* at 36, 41. Checking a box acknowledging that a person has submitted an I-130, or an I-212, or an I-601A does not show that the decisionmaker has thought carefully about the facts of

---

[1] Indeed, at the same time that it insists it cannot give Petitioners' counsel too much advance notice of a class member's removal, the government publicly announced anticipated enforcement activities that were to take place starting this past Sunday, June 23. *See, e.g.*, Nick Miroff, *ICE Raids Targeting Migrant Families Slated to Start Sunday in Major U.S. Cities*, Washington Post, June 21, 2019 ("The 'family op,' as it is referred to at ICE and the Department of Homeland Security, is slated to target up to 2,000 families in as many as 10 U.S. cities, including Houston, Chicago, Miami, Los Angeles and other major immigration destinations, said the officials . . . ."); Richard Winton, *Trump Immigration Sweeps to Target 2,000 People, Including 140 in Southern California*, Los Angeles Times, June 21, 2019, https://www.latimes.com/local/lanow/la-me-immigration-sweeps-southern-california-20190621-story.html. If operational concerns were not enough to stop the Administration from announcing detailed enforcement plans in the media, then they cannot be enough to preclude them from providing notice to class counsel.

the case prior to making a decision, and says nothing about considering those facts in light of the regulations' purpose. It simply shows that ICE has the ability to aggregate data.

Respondents originally explained Mr. V's removal with no more than a single row from a spreadsheet.

| A-Number | Last Name | First Name | U.S.C. Spouse | Final Order | I-130 | I-212 | I-601A | Attorney (G-28) | Stay of Removal | Criminal | Instructions to Alien | Additional Comments (if any) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ▇ | ▇ | ▇ | Yes | Yes | Approved 1/28/16 | No | No | No (previously had attorney that withdrew representation during removal proceedings) | No. Has not applied. | Yes | n/a | |

Dkt. 268-3 at 4-5. This spreadsheet does not show contemporaneous consideration of an individual's pursuit of provisional waivers. As Mr. Charles confirmed, it is created *after* making a decision about a person's removal. *See* Charles Decl. (June 20, 2019) (Dkt. 284-1) at ¶ 4 (admitting that the spreadsheet would "not be relied upon when deciding to take an enforcement action," but would instead be created after that decision had been made). Mr. V's case confirms that *before* his arrest and detention, ICE never considered: the provisional waiver regulations' purpose of avoiding family separation, Dkt. 159 at 7-8, that Mr. V. has three U.S. citizen children, or that Mr. V was the sole source of support for his three children and is an involved father. Declaration of Mr. V (Dkt. 279-1) at ¶¶ 3-5.

Respondents should provide contemporaneous records of their efforts to consider the provisional waiver process in connection with making enforcement decisions (to the extent any such records even exist). Mr. Charles declared that ICE "maintains electronic and paper records on aliens" that are made "at or near the time of relevant events by a person with knowledge of these events," Charles Decl. (June 16, 2019) (Dkt. 281-1) at ¶ 7. But ICE refuses to provide any

7

such contemporaneous documentation. Although Respondents assert that it would be burdensome to provide such documents, Charles Decl. (June 20, 2019) (Dkt. 284-1) at ¶ 5, that position is belied by Respondents' own conduct. In their most recent notice of class members' removal, Respondents provided a narrative (beyond the spreadsheet) purporting to identify "reasons for removal." But Respondents also asserted, without explanation, that they would not supply this simple explanation in the future absent a court order. McCullough Decl. Ex. 1. And even if they did, such information is meaningless if Petitioners are not provided contemporaneous documents that may contradict (or support) the post-hoc "reasons for removal" narrative that is created by litigation counsel.

This information is important to avoid allowing Respondents to use discovery as both a sword and a shield—on the one hand, refusing to provide information on Boston ERO's purported consideration of provisional waivers, and, on the other hand, arguing that Petitioners are not able to meet their burden of establishing that their conduct is unlawful and should be enjoined. This should not be allowed.

### C. The Court Should Require the Government to Provide Notice to Class Members Who Interact with ERO.

Petitioners have proposed notice to the class that would enable class members to be aware of this class action contemporaneous with their arrest or other interaction with ERO, and would allow them to consider this litigation in deciding whether to challenge the merits of the government's actions. Although the parties have agreed that some notice will be provided to class counsel, the events of the past two weeks have revealed that class members' rights would be best protected if they received their own notice about this case as soon as they interact with ERO. As Mr. V's case demonstrates, class members who are targeted for enforcement may need to make fast decisions, including whether to hire an attorney and whether to attempt to stop an

impending removal. The decisions these class members make within the first few days of their detention or contact with ERO can alter the course of their families' lives forever. Accordingly, independent notice is the best way to ensure that Petitioners and their counsel can communicate with class counsel and consider the implications of this litigation for their cases.

II. **The Events of This Past Week Demonstrate the Importance of the Discovery Previously Sought.**

The June 18 TRO hearing demonstrated that ten months after this Court denied Respondents' motion to dismiss Petitioners' due process claim, Respondents still cannot articulate how they are actually ensuring compliance with this Court's August 23, 2018 order. First, when asked who and when the decision was made to remove Mr. V, Respondents represented that Mr. Charles made the decision to remove Mr. V "around June 2, the day that Mr. V was detained." June 19, 2019 Hearing Tr. at 15:14-25. But Mr. Charles's affidavit is notably silent on when he made the decision. Second, the fact that the government continues to assert that it has "considered" a class member's pursuit of the provisional waiver process by virtue of its chart making exercise confirms that the government is not meaningfully considering the provisional waiver process. These facts underscore the pressing need for discovery into Boston ERO's current practice regarding the identification, supervision, arrest, detention and removal of class members, and how the current practice differs from its practice prior to the Court's August 2018 order. Petitioners need to understand Boston ERO's current practices so they can assess whether the government is in fact complying with the Court's order.

Respectfully submitted this 25th day of June, 2019.

/s/ Shirley Cantin

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

Kevin S. Prussia (BBO # 666813)
Michaela P. Sewall (BBO # 683182)
Shirley X. Li Cantin (BBO # 675377)
Stephen Provazza (BBO # 691159)
Colleen M. McCullough (BBO # 696455)
Matthew W. Costello (BBO # 696384)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000
kevin.prussia@wilmerhale.com
michaela.sewall@wilmerhale.com
shirley.cantin@wilmerhale.com
stephen.provazza@wilmerhale.com
colleen.mccullough@wilmerhale.com
matthew.costello@wilmerhale.com

*Attorneys for Petitioners*