# EXHIBIT T

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br>Individually and on behalf of all others similarly situated, <br><br>Plaintiff-Petitioners, <br><br>v. <br><br>KEVIN K. McALEENAN, et al., <br><br>Defendants-Respondents. | No. 18-10225-MLW <br><br><br>**REVISED** <br>**PUBLIC VERSION** |

## MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE

A recent detention report on class members has revealed that Respondents have engaged in continuing violations of the Post Order Custody Review ("POCR") Regulations. Petitioners therefore seek an order requiring Respondents to show cause why the Court should not order the release of the impacted individuals—including ███████████████, ████████, ████████████, ████████, █████████████, █████████████████, and ████████. Because several of these individuals face imminent removal, and because Respondents have not agreed to forgo that removal while this issue is before the Court (Ex. S (July 25, 2019 Email from Larakers to Sewall)), Petitioners also respectfully request that the Court preserve its jurisdiction over these individuals by requiring them to be released or kept in the jurisdiction pending this Court's examination of the issues raised.

### BACKGROUND

On May 8, 2018, this Court recognized that ICE violated the POCR regulations (8 C.F.R. § 241.4) with respect to Lucimar de Souza and Eduardo Junqueira. Hearing Tr. (May 8, 2018) at

1

49. Among other violations, the Court noted that Ms. de Souza received a POCR review and decision prior to the date for which the review had been noticed. The Court found that this violated ICE's obligation under the regulations to give notice of a POCR review to a noncitizen and his or her attorney "30 days in advance [of the POCR review] to afford them the opportunity to provide information in support of the alien's release." Dkt. No. 95 (June 11, 2018 Order) at 7-8 (citing 8 C.F.R. § 241.4(d)(3), (h)(2)); see also id. at 8 ("[T]he ICE Deputy Field Office Director decided to continue De Souza's detention before her attorneys had an opportunity to provide information in support of her release."). The Court further found that Ms. de Souza's custody review should have occurred on April 30, 2018, under ICE's own interpretation of its regulations, but that ICE had not conducted a proper custody review by that date. See id. at 8-9. At hearings on May 22 and 23, 2018, ICE informed the Court that it disregarded the POCR regulations in at least thirty to forty additional cases, which prompted it to release approximately 20 noncitizens from custody. See Dkt. No. 72 (May 22, 2018 Tr.) at 86; Dkt. No. 73 (May 23, 2018 Tr.) at 51, 136-38.

On July 12, 2019, over a year after the Court's order, Petitioners received for the first time a document that, according to Respondents, identifies all class members currently held in detention by ICE (the "July 12, 2019 Detention Report"). Ex. A. The July 12, 2019 Detention Report provides the dates on which the detained individuals received a POCR notice, POCR reviews and decisions, and 180-day POCR reviews. Ex. A (POCR dates listed in columns titled "Date POCR Notice Issued" and "Date POCR Conducted and Decisions"). Respondents have also provided Petitioners with POCR notices and POCR decisions for individuals listed on the July 12, 2019 Detention Report. Exs. D–R. Respondents have informed Petitioners that "ICE ERO intends to proceed with removal" of Mr. ▮, Mr. ▮, Mr. ▮ Mr ▮, and

Mr. ▇ "no sooner than July 22, 2019." Ex. B (July 12, 2019 Email from Larakers to Calderon class counsel).

On their face, the July 12, 2019 Detention Report and supporting documents show that ICE has continued systematically violating its obligations under POCR regulations. Specifically, as in Lucimar De Souza's case, several detained individuals received POCR reviews in advance of the date for which their reviews were noticed such that, *before* the deadline by which they had been told they would be able to submit documents in support of their release, they were notified that a decision had been made to continue their detention. It also revealed that ICE continues to hold custody reviews after the deadline in the regulations, even under ICE's own interpretation of that deadline, as several detained individuals did not receive a timely 90-day or 180-day POCR review. *Id.* When Petitioners questioned Marcos Charles about these issues at his deposition on July 16, 2018 (transcript attached as Exhibit C), he was unable to recall the specifics of any individual case and could not state that a POCR violation had not occurred.[1] *See* Ex. C (Charles Dep. Tr.) at 271-320.

---

[1] Mr. Charles stated that he would have to review additional documents, including an alien's "EARM case file" and "A-file" in order to assess whether a POCR violation has occurred. *See, e.g.*, Ex. C at 281:18-282:7 ("Q. So you think this spreadsheet is not enough information to tell you about whether there's been a POCR violation, correct? A. I would have to – the only way to see if there was a POCR violation … would be by looking at what EARM case file, A-file. That would be the way – that's how I would be able to tell. I wouldn't be able to tell you that definitively by looking at just these forms in front of me and this spreadsheet."). Respondents have refused to produce class members' EARM case files or A-files in this litigation. *See, e.g.*, June 27, 2019 Hr'g Tr. at 50-51, 60 (counsel for Respondents invokes "deliberative process privilege" and "serious operational concern" for refusal to produce EARM case files or A-files).

3

# ARGUMENT

**I.   This Court should order the government to show cause why the detained individuals should not be released.**

**A.   Failure to provide notice approximately 30 days prior to review violates the regulations.**

ICE must notify individuals of their custody review "approximately 30 days in advance of the pending records review so that the alien may submit information in writing in support of his or her release." 8 C.F.R. § 241.4(h)(2). Since this Court found that ICE Boston has committed POCR violations, however, ICE has turned this notice requirement on its head. ICE now sends notices of custody review almost immediately upon detaining someone, which is generally about 90 days ahead of when a custody review will be scheduled rather than "approximately 30 days in advance of the pending records review," as provided in the regulation. ICE's conduct is a short-cut attempt to check a box rather than provide meaningful notice. Through this conduct, ICE violates both the plain meaning and the purpose of 8 C.F.R. § 241.4(h)(2)'s notice requirement with regard to every detained class member (and, it appears, every post-order detainee).

**B.   Early custody reviews—prior to the opportunity to submit documents— violate the regulations.**

ICE must notify detainees when their POCR review will be conducted so that the detainee can submit documents in support of his or her release. 8 C.F.R. § 241.4(h)(2). For many of the individuals listed in the July 12, 2019 Detention Spreadsheet, however, ICE has conducted POCR reviews and issued a decision to continue detention well *before* the date set in the notice for the POCR review. The documents Petitioners received reveal the following:

- **Mr.** ▮▮▮▮▮▮▮▮ was given notice on February 14, 2019 that his POCR review would occur on or about May 13, 2019, and that he could submit documents to support his release "prior to" the May 13, 2019 date. (Ex. F.) However, his POCR review was conducted on May 3, 2019—***ten days earlier*** than the noticed date and deadline for

4

submitting documents. Ex. A. He received a notice that the review was complete and his detention would continue on May 7, 2019—*six days earlier* than the noticed date and deadline for submitting documents. (Ex. G.)

- Mr. ▮▮▮▮ was given notice on August 22, 2018 that his POCR review would occur on or about November 20, 2018, and that he could submit documents to support his release "prior to" the November 20, 2018 date. (Ex. M.) However, his POCR review was conducted on November 1, 2018—*twenty days earlier* than the noticed date and deadline for submitting documents. Ex. A. He received a notice that the review was complete and his detention would continue on November 14, 2018—*six days earlier* than the noticed date and deadline for submitting documents. (Ex. N.)

- Mr. ▮▮▮▮ was given notice on March 26, 2019 that his POCR review would occur on or about June 6, 2019, and that he could submit documents to support his release "prior to" the June 6, 2019 date. (Ex. H.) However, his POCR review was conducted and he received notice that the review was complete and his detention would continue on June 4, 2019—*two days earlier* than the noticed date and the day before his deadline for submitting documents. Ex. A; Ex. I.

- Mr. ▮▮▮▮ was given notice on December 18, 2018 that his POCR review would occur on or about March 12, 2019, and that he could submit documents to support his release "prior to" the March 12, 2019 date. (Ex. J.) However, his POCR review was conducted and he received notice that the review was complete and his detention would continue on March 8, 2019—*four days earlier* than the noticed date and deadline for submitting documents. Ex. A; Ex. K.

- Mr. ▮▮▮▮ was given notice on November 29, 2018 that his POCR review would occur on or about February 11, 2019, and that he could submit documents to support his release "prior to" the February 11, 2019 date. (Ex. D.) However, his POCR review was conducted on January 25, 2019—*seventeen days earlier* than the noticed date and deadline for submitting documents. Ex. A. He received a notice that the review was complete and his detention would continue on January 28, 2019—*fourteen days earlier* than the noticed date and deadline for submitting documents. (Ex. E.)

- Mr. ▮▮▮▮ was given notice on January 24, 2019 that his POCR review would occur on or about March 28, 2019, and that he could submit documents to support his release "prior to" the March 28, 2019 date. (Ex. L.) However, his POCR review was conducted and he received notice that the review was complete and his detention would continue on March 27, 2019—*one day earlier* than the noticed date and the same day as his deadline for submitting documents. (Ex. H.)

There is no indication that these individuals or their attorneys were ever notified that the reviews would be conducted early. *See, e.g.,* Ex. C (Charles Dep. Tr.) at 272:17-273:9 ("Q. It says, 'The POCR was conducted on November 1, 2018.' Do you see that? A. Yes. Q. That is 20 days

5

before he was told it would be conducted in this notice to alien, file custody review … correct? A. Correct. Q. Was he informed his review would take place early? A. I don't know. I would have to look at the case history on this one. A. Was his attorney informed? A. I don't know."). By conducting the review and issuing the detention decision before the date on which the review was scheduled, ICE has impaired these individuals' ability to submit documents in support of their release and has thus undermined the very purpose of the notice.

### C. Late custody reviews violate the regulations.

Within 90 days of a detained person receiving a final order of removal, or within 90 days of detaining a person with a final order of removal (who is outside the "removal period" described in 8 U.S.C. § 1231(a)(1)(A)), ICE must review that person's custody. 8 C.F.R. § 241.4(a), (k)(1)(i); Dkt. No. 95 at 4-5. If the person is not released, jurisdiction over custody determinations transfers to ICE headquarters to conduct a second review. *Id.* § 241.4(k)(2)(ii). This second review "will ordinarily be conducted at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable." *Id.* It can also be postponed "for good cause," and "the reasons for the delay shall be documented in the alien's custody review file." *Id.* § 241.4(k)(3). Thus, compliance with these regulations would ordinarily result in second custody reviews occurring within approximately 180 days. Under 8 C.F.R. § 241.4(k)(3), ICE can delay custody review "if such detainee's prompt removal is practicable and proper"; however, "[r]easonable care will be exercised to ensure that the alien's case is reviewed … if the alien is not removed from the United States as anticipated at the time review was suspended or postponed." *Id.*

At least one listed individual, **Mr. ▮**, did not receive a timely 90-day review. Mr. ▮ was detained on October 29, 2018 (Ex. A), and his custody review was noticed for January

6

27, 2019 (Ex. P). However, Mr. ▮'s review did not take place until February 4, 2019—over a week later. Ex. A; Ex. Q.

In addition, Mr. ▮ and at least three others did not receive timely 180-day reviews:

- Mr. ▮'s first custody review occurred on February 4, 2019, but his second custody review was not until May 29, 2019. Ex. A; Ex. R.

- Mr. ▮ was detained on August 21, 2018 (Ex. A) and received a first POCR decision on November 14, 2018. Ex. N. However, he did not receive a 180-day review until March 5, 2019—almost four months later. Ex. A.

- Mr. ▮ was detained on October 24, 2018 and had a final order of removal as of December 12, 2018. Ex. A. He received a first POCR decision on March 8, 2019, but as of July 12, 2019 when the detention spreadsheet was produced, had not received a 180-day review. Ex. A. And although he was given notices of imminent removal on May 24 and June 25, 2019, it has been more than two months since Mr. ▮'s imminent removal was anticipated, but to Petitioners' knowledge he has neither been removed nor received a 180-day review to date. Ex. A.

- Mr. ▮ was detained on January 23, 2018 and had a final order of removal as of December 28, 2018. Ex. A. He received a first POCR decision on March 27, 2019, Ex. L, but as of July 12, 2019 when the detention spreadsheet was produced, had not received a 180-day review. Ex. A.

By failing to conduct timely 90- and 180-day reviews, ICE has violated the POCR regulations with respect to these individuals.

**II.    This Court should bar ICE from removing any of the impacted individuals from the United States until further order and pending this Court's examination of the issues raised in this motion.**

An order preventing removal of the impacted class members would preserve this Court's jurisdiction pending the Court's adjudication of the issues raised in this motion. ICE has stated that it will remove at least five of these individuals—Mr. ▮, Mr. ▮, Mr. ▮, Mr. ▮, and Mr. ▮—any time after July 22, 2019. Ex. B. Respondents have not confirmed that they will forgo removing impacted class members while this motion is pending before the

7

Court. Ex. S. Petitioners therefore request that the Court bar ICE from removing them or otherwise ordering them to leave the United States pending further order.

## CONCLUSION

ICE has systematically violated the POCR regulations, including by improperly anticipating or delaying reviews for at least seven of the thirteen currently detained class members. This is a small fraction of Boston ERO's detained docket, and these violations are occurring "in cases that ICE knew would be subject to scrutiny by a federal judge." Dkt. No. 95 at 11; *see also* Ex. C (Charles Dep. Tr.) at 320 ("Q. The people we have reporting on is a fraction of the detained docket, correct? A. Correct. It's a -- but not of the Calderon class members. Q. No, of the detained docket, generally. A. Correct. Q. It's a small fraction? A. (Witness nodding.) Q. And these are class members in an ongoing litigation, correct? A. Correct. … Q. How many times do you think there's been a POCR violation that you don't know about for the entire detained docket? … A. I don't know."). Without Court intervention, they will persist. Each day of wrongful detention presents irreparable harm to these individuals and their U.S. citizen families. Dkt. No. 95 at 10.

Accordingly, Petitioners respectfully request that this Court enter an order directing Respondents to show cause why the detained individuals—particularly ▄▄▄▄▄▄▄▄ ▄▄, ▄▄▄▄▄▄▄▄, ▄▄▄▄▄▄▄▄▄▄, ▄▄▄▄▄▄, ▄▄▄▄▄▄▄▄▄▄▄, ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄, and ▄▄▄▄▄▄▄—should not be released from custody.

Respectfully submitted this 25th day of July, 2019.

                                                                    */s/ Kevin S. Prussia*

| | |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Michaela P. Sewall (BBO # 683182) |
| AMERICAN CIVIL LIBERTIES UNION | Shirley X. Li Cantin (BBO # 675377) |
| FOUNDATION OF MASSACHUSETTS, INC. | Jonathan Cox (BBO # 687810) |
| 211 Congress Street | Colleen M. McCullough (BBO # 696455) |
| Boston, MA 02110 | Matthew W. Costello (BBO # 696384) |
| (617) 482-3170 | WILMER CUTLER PICKERING |
| |    HALE AND DORR LLP |
| Kathleen M. Gillespie (BBO # 661315) | 60 State Street |
| Attorney at Law | Boston, MA 02109 |
| 6 White Pine Lane | Telephone: (617) 526-6000 |
| Lexington, MA 02421 | Facsimile: (617) 526-5000 |
| (339) 970-9283 | kevin.prussia@wilmerhale.com |
| | michaela.sewall@wilmerhale.com |
| | shirley.cantin@wilmerhale.com |
| | jonathan.cox@wilmerhale.com |
| | colleen.mccullough@wilmerhale.com |
| | matthew.costello@wilmerhale.com |

                                                                    *Attorneys for Petitioners*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2019, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

                                                                    */s/ Kevin S. Prussia*
                                                                    Kevin S. Prussia