# Exhibit A

DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR

<u>TODD LYONS</u>

Pursuant to the authority of 28 U.S.C. § 1746, I, Todd Lyons, the Deputy Field Office Director for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1. I am the Deputy Field Office Director ("DFOD") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE").

2. I have experience utilizing ICE record systems to obtain information regarding specific aliens. ICE maintains electronic and paper records on aliens in the course of its regularly conducted business activity. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events. In preparing this declaration, I have examined ICE official records, including the Enforce Alien Removal Module ("EARM"). EARM is the ICE electronic database utilized by ERO to maintain information regarding the custody and removal status of aliens. EARM is the electronic records ordinarily relied upon to ascertain an alien's immigration and criminal history, current case status, and plans for removal, if any.

3. In the course of preparing this declaration, I have examined the official records available to me regarding the immigration history and custody status of a number of <u>Calderon</u> class members. Based upon this examination, I convey the following information:

1

4. ICE Boston believes that 8 C.F.R. § 241.4(h)(1) and 241.4(k)(1) direct it to conduct an initial post-order custody review within 90 days of an alien receiving a final order of removal or within 90 days of ICE detaining an alien with a final order of removal.

5. When ICE Boston encounters a detained alien with a final order of removal, ICE complies with 8 C.F.R. § 241.4(h)(2) which requires ICE to provide "written notice to the detainee approximately 30 days in advance of the pending records review so that the alien may submit information in writing support of his or her release."

6. ICE Boston's general practice is to provide an alien subject to a final order of removal with this Notice well in advance of the pending custody review so the alien can have as much time as possible to obtain and provide documentation in support of his release. If an alien submits documentation in support of release at an earlier stage of the 90-day review period, ICE can also review this documentation and potentially decide to release the alien in a more expeditious fashion.

7. If an alien submits documentation in support of release after ICE conducts its custody review and after ICE issues its decision regarding continued detention, it is ICE Boston's practice to review those documents and conduct a new review if such documents are received within the 90-day time period. Even after the 90-day time period expires, ICE retains discretion at the local level to conduct further review of the case and would do so if the alien provides documentation in support of release.

8. ███████████████████████████████████████████ Mr. ███████ entered the United States without inspection on or about July 10, 2004. On August 29, 2006, Mr. ███████ was ordered removed by the immigration judge <u>in absentia</u> to Brazil.

9. On January 1, 2019, Mr. ▮ was arrested and charged with assault and battery on a family/household member. On February 12, 2019, ICE arrested Mr. ▮ pursuant to his final order of removal. On February 14, 2019, ICE issued Mr. ▮ with a Notice to Alien of File Custody Review document as required by 8 C.F.R. § 241.4(h)(2).

10. ICE stated that Mr. ▮ custody status will be reviewed "on or about May 13, 2019" and that he could submit documentation in support of his release prior to this date. On February 26, 2019, ICE mailed a copy of this Notice to Mr. ▮ last known attorney of record.

11. ICE conducted Mr. ▮ custody review on May 3, 2019 which is within 90 days of Mr. ▮ entering ICE custody with a final order of removal. Mr. ▮ did not submit any information in writing in support of his release prior to or after, May 3, 2019. ICE issued a Decision to Continue Detention letter to Mr. ▮ on May 7, 2019.

12. ICE transferred Mr. ▮ from Massachusetts to the Strafford County House of Corrections on July 19, 2019. On July 23, 2019, ICE transferred Mr. ▮ to the Alexandria Staging Facility in Oakdale, Louisiana.

13. ICE effectuated Mr. ▮ removal to Brazil on a charter flight which departed from Louisiana at approximately 7:00AM on Friday, July 26, 2019. Mr. ▮ is not currently in ICE custody.

14. ▮▮▮▮▮ Mr. ▮ was ordered removed by an immigration judge <u>in absentia</u> to Cape Verde on July 9, 2012. Mr. ▮ was placed on an Order of Supervision on or about April 28, 2015. On August 21, 2018, ICE enrolled Mr. ▮ in the Alternatives to Detention program and

issued him an electronic monitoring device. On the same day, Mr. ▆ physically removed his electronic monitoring device from his person.

15. ICE therefore arrested Mr. ▆ and revoked his Order of Supervision on August 22, 2018. As required by 8 C.F.R. § 241.4(l), ICE served Mr. ▆ with a Notice of Revocation of Release and conducted an informal interview to explain to him the reasons why it was revoking his release and to give him an opportunity to respond to the reasons for the revocation.

16. On August 22, 2018, ICE also served him with a Notice to Alien of File Custody Review document as required by 8 C.F.R. § 241.4(h)(2). Such Notice instructed Mr. ▆ that ICE would review his custody status "on or about" November 20, 2018 and that he could submit documentation for ICE to review in support of his release.

17. Within 90 days of Mr. ▆ entering ICE custody, on November 6, 2018, an ICE Deportation Office submitted an ICE worksheet regarding Mr. ▆ custody review to the Assistant Field Office Director for review. ICE issued a Decision to Continue Detention letter to Mr. ▆ on November 14, 2018. Mr. ▆ did not submit any documentation in support of his release prior to or after November 14, 2018.

18. Pursuant to 8 C.F.R. § 241.4(k)(2)(ii), ICE's Headquarters' Removal and International Operations ("HQ RIO") unit conducts a custody review "at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable." This is known colloquially as the 180-day review. On the 178th day after Mr. ▆ came into ICE custody, February 15, 2019, ICE Boston provided ICE HQ RIO with Mr. ▆ worksheet regarding his custody status. ICE HQ RIO then reviewed his custody status and on March 5, 2019, ICE HQ RIO issued Mr. ▆ with a Decision to Continue

4

Detention letter. ICE HQ RIO conducted an additional custody review for Mr. ███ and issued him with a Decision to Continue Detention letter on June 6, 2019.

19. ████████████████████████████████████████ Mr. ███████ entered the United States without inspection on or about July 4, 2004 and he was arrested by the U.S. Border Patrol and provided with a Notice to Appear. Mr. ███████ was ordered removed <u>in absentia</u> by an immigration judge on September 1, 2004. ICE arrested and detained Mr. ███████ on March 8, 2019 as he was subject to a final order of removal.

20. On March 26, 2019, ICE served him with a Notice to Alien of File Custody Review document as required by 8 C.F.R. § 241.4(h)(2). Such Notice instructed Mr. ███████ that ICE would review his custody status "on or about" June 6, 2019 and that he could submit documentation for ICE to review in support of his release. On April 13, 2019, ICE mailed a copy of the Notice to Mr. ███████ attorney of record.

21. Within 90 days of entering ICE custody, ICE reviewed his custody and issued Mr. ███████ a Decision to Continue Detention on June 4, 2019. He did not submit any documentation in support of his post order custody review prior to or after June 4, 2019.

22. ████████████████████████████████████████ An immigration judge ordered Mr. ███████ removed from the United States to St. Lucia on December 12, 2018; Mr. ███ did not appeal this order of removal. On December 18, 2018, ICE served him with a Notice to Alien of File Custody Review document as required by 8 C.F.R. § 241.4(h)(2).

23. Such Notice instructed Mr. ███ that ICE would review his custody status "on or about" March 12, 2019 and that he could submit documentation for ICE to review in support of his release.

5

24. Within 90 days of entering ICE custody, on March 8, 2019 ICE conducted its custody review and issued him a Decision to Continue Detention letter on March 11, 2019. Mr. ███ did not submit any documentation in support of his release prior to or after March 11, 2019.

25. On May 8, 2019, the St. Lucian government provided ICE with an intent to issue letter regarding his travel document.

26. On May 22, 2019, ICE scheduled Mr. ███ for removal to St. Lucia on June 5, 2019.

27. On May 24, 2019, ICE issued Mr. ███ with a letter informing him that pursuant to 8 C.F.R. § 241.4(g)(4), ICE was not required to conduct his next scheduled custody review because his removal order was ready to be executed.

28. ICE did not receive Mr. ███ travel document from St. Lucia prior to his scheduled removal on June 5, 2019.

29. On June 17, 2019, the St. Lucian government advised that it would issue a new travel document as soon as his removal was scheduled.

30. On June 25, 2019, ICE issued Mr. ███ with a letter informing him that pursuant to 8 C.F.R. § 241.4(g)(4), ICE was not required to conduct his next scheduled custody review because his removal order was ready to be executed. In this letter, ICE advised Mr. ███ that it would provide him notice prior to any custody review if his removal was delayed or cancelled.

31. On June 26, 2019, ICE scheduled Mr. ███ for removal to St. Lucia on July 12, 2019.

32. On July 8, 2019, ICE received Mr. ███ travel document.

33. ICE cancelled Mr. ███ removal to St. Lucia on July 9, 2019 due to his status as a Calderon class member.

34. On July 17, 2019, ICE provided Mr. ▓ with a Notice to Alien of File Custody Review in which it instructed him that his pending custody review would be conducted unless ICE again notified him prior to such review that his removal is imminent.

35. On July 19, 2019, ICE scheduled Mr. ▓ removal for August 3, 2019. However, such removal was cancelled on July 26, 2019 due to this Court's July 26, 2019 order.

36. As such, Mr. ▓ custody review is currently pending with ICE HQ RIO.

37. ▓ The Board of Immigration Appeals affirmed the immigration judge's removal order on November 13, 2018. On November 28, 2018, ICE served him with a Notice to Alien of File Custody Review document as required by 8 C.F.R. § 241.4(h)(2). Such Notice instructed Mr. ▓ that ICE would review his custody status "on or about" February 11, 2019 and that he could submit documentation for ICE to review in support of his release. ICE sent copies of this Notice to Mr. ▓ attorneys of record on December 4, 2018 and December 19, 2018.

38. Within 90 days of accruing his final order of removal, on January 25, 2019 ICE conducted Mr. ▓ custody review and issued him a Decision to Continue Detention on January 29, 2019. Mr. ▓ did not submit documentation in support of his post order custody review prior to or after January 29, 2019.

39. On the 178th day after Mr. ▓ order of removal became final, May 10, 2019, ICE Boston provided ICE HQ RIO with Mr. ▓ worksheet regarding his custody status.

40. On May 24, 2019, ICE served Mr. ▓ pursuant to 8 C.F.R. § 241.4(g) with a Notice of Failure to Comply letter as Mr. ▓ was not authorizing the Brazilian government

7

to issue a travel document for his return to Brazil. Such Notice indicated that ICE HQ RIO was therefore not obligated by regulation to complete its scheduled custody review until he demonstrated compliance with his statutory and regulatory obligation to assist in obtaining travel documents. Such Notice further indicated that ICE Boston decided in its exercise of discretion to conduct its own additional custody review and determined that he posed a danger to the community if he was to be released. If Mr. ▮▮▮ demonstrates compliance with his statutory and regulatory obligations to assist ICE in obtaining travel documents, ICE will complete his next scheduled custody review.

41. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Board of Immigration Appeals dismissed Mr. ▮▮▮ appeal of the immigration judge's removal order on December 28, 2018. ICE arrested and detained Mr. ▮▮▮ subject to his final order of removal on January 23, 2018. On January 24, 2019, ICE served him with a Notice to Alien of File Custody Review document as required by 8 C.F.R. § 241.4(h)(2). Such Notice instructed Mr. ▮▮▮ that ICE would review his custody status "on or about" March 28, 2019 and that he could submit documentation for ICE to review in support of his release. ICE sent copies of this Notice to Mr. Pontes' attorney of record on January 25, 2019.

42. Within 90 days of entering ICE custody, on March 27, 2019 ICE conducted Mr. ▮▮▮ custody review and issued him a Decision to Continue Detention. Mr. ▮▮▮ did not submit documentation in support of his release prior to or after March 27, 2019.

43. On April 16, 2019, ICE scheduled Mr. ▮▮▮ for removal on May 3, 2019. However, ICE was unable to conduct this escorted removal as a Deportation Officer was unable to accompany him due to scheduling conflicts.

44. ICE therefore rescheduled his removal for June 4, 2019. However, ICE was unable to conduct this removal because Mr. ▮ physically refused to board his scheduled removal flight.

45. As such, on June 25, 2019, ICE, pursuant to 8 C.F.R. § 241.4(g), issued Mr. ▮ with a Notice of Failure to Comply letter. Such letter advised Mr. ▮ that by regulation, ICE was not required to conduct its next scheduled custody review until Mr. ▮ demonstrated that he was complying with the removal order and cooperating with ICE's efforts to effectuate his removal.

46. ICE scheduled Mr. ▮ on July 8, 2019 for removal on July 22, 2019.

47. On July 22, 2019, ICE effectuated Mr. ▮ removal order. Mr. ▮ is no longer in ICE detention.

48. ▮ Mr. ▮ was ordered removed by an immigration judge on October 18, 2007. On April 10, 2008, Mr. ▮ was released from detention pursuant to an Order of Supervision. He was most recently detained by ICE on October 29, 2018. Pursuant to 8 C.F.R. § 241.4(l), ICE served Mr. ▮ with a Notice of Revocation of Release and provided him with an informal interview to provide him with an opportunity to respond to the reasons for revocation.

49. On November 2, 2018, ICE served him with a Notice to Alien of File Custody Review document as required by 8 C.F.R. § 241.4(h)(2). Such Notice instructed Mr. ▮ that ICE would review his custody status "on or about" January 27, 2019 and that he could submit documentation for ICE to review in support of his release. ICE sent copies of this Notice to Mr. ▮ attorney of record on November 5, 2018.

50. Mr. ▮ filed a petition for a writ of habeas with the U.S. District Court for the District of Massachusetts on November 11, 2018 under case number 18-cv-12356.

51. On November 13, 2018, ICE scheduled Mr. ▮ for removal on December 6, 2018.

52. On December 4, 2018, Judge William G. Young transferred Mr. ▮ habeas petition to the U.S. Court of Appeals for the First Circuit. On this same day, Mr. ▮ filed a motion to stay removal with the First Circuit. Pursuant to the First Circuit's Local Rule 18, the First Circuit's clerk entered an administrative stay of removal. Therefore, ICE cancelled Mr. ▮ December 6, 2018 removal.

53. On December 6, 2018, the First Circuit granted Mr. ▮ a temporary stay of removal.

54. ICE Boston conducted a review of Mr. ▮ custody on January 25, 2019. Because Mr. ▮ had previously been detained for more than 90 days, ICE Boston forwarded Mr. ▮ custody worksheet to ICE HQ RIO on January 25, 2019. However, because Mr. ▮ had received a stay of removal from the First Circuit, ICE HQ RIO advised ICE Boston that jurisdiction for Mr. ▮ custody review remained with ICE Boston while Mr. ▮ stay of removal was in place. As such, ICE Boston reviewed Mr. ▮ custody status again on February 1, 2019 and issued him a Decision to Continue Detention on February 4, 2019. Such letter informed Mr. ▮ that jurisdiction of Mr. ▮ custody status would remain with ICE Boston while the stay of removal remained active.

55. On April 29, 2019, the First Circuit vacated its temporary stay of removal and transferred Mr. ▮ habeas petition back to the District Court.

56. On May 3, 2019, ICE Boston forwarded Mr. ▮ custody worksheet to ICE HQ RIO. ICE HQ RIO issued Mr ▮ Decision to Continue Detention letter on May 29, 2019. ICE provided a copy of this letter to Mr. ▮ ttorney of record on June 3, 2019.

57. ICE scheduled Mr. ▮ for removal on June 23, 2019; however, this removal was cancelled due to his pending petition for habeas corpus with the District Court.

58. On July 1, 2019, Judge Young dismissed Mr. ▮ habeas petition but stayed such order for 30 days.

59. **Calderon Class Member Removals:** As noted above, ICE removed Mr. ▮ nd Mr. ▮ prior to this Court's July 26, 2019 order staying removal of the individuals included on the July 12, 2019 Detention Report (Exhibit A). In addition to Mr. ▮ and ▮ ICE removed ▮ on July 16, 2019 and ▮ on July 25, 2019.

60. ICE also released ▮ from its custody pursuant to an Order of Supervision on July 18, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on the Thirtieth day of July, 2019

_____
Todd Lyons
Deputy Field Office Director
U.S. Department of Homeland Security
United States Immigration and Customs Enforcement
Burlington, Massachusetts