## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ
and LUIS GORDILLO, et al.,

Individually and on behalf of all others
similarly situated,

        Plaintiff-Petitioners,

    v.

KEVIN K. McALEENAN, et al.,

        Defendants-Respondents.

No. 1:18-cv-10225-MLW

## PETITIONERS' OPPOSITION TO
## RESPONDENTS' MOTION FOR RECONSIDERATION

On July 19, 2019, Respondents moved for reconsideration of the Court's June 27, 2019

Order (Dkt. No. 295), claiming that the order constitutes an unwarranted preliminary injunction.

Resp.' Mot. for Reconsideration ("Mot") (Dkt. No. 302).  But the Court has issued no such

injunction—only a reasonable extension of reporting that Respondents had already agreed to in

order to avoid the prospect of preliminary injunctive relief in this case.  Because the Court has

not interfered with removal, but only provided a reasonable alternative to class-wide notice,

Respondents' motion should be denied.

First, Respondents argue that the Court transformed its prior ruling denying Respondents'

motion to dismiss into a preliminary injunction when it stated that a violation of the orders in this

case could constitute contempt.  Rather than creating an injunction, the Court's references to

civil and criminal contempt simply reflected the fact that violations of prior orders could lead

Petitioners to seek injunctive relief—and that violations of any such injunctions could then

constitute contempt.

Second, Respondents argue that the reporting ordered by the Court, including the requirement that the government provide notice prior to the execution of a removal order, constitutes a preliminary injunction.  But the Court carefully crafted its order to avoid interfering with removal.  The required reporting comprises information that Petitioners are entitled to in discovery, and it provides a reasonable alternative to class-wide notice.  Moreover, the requirements reflect the obligations that Respondents voluntarily assumed in exchange for a stay of Petitioners' motion for preliminary injunction.  The Court's modest expansion of that limited monthly reporting was appropriate after the Court certified a class, and after Petitioners raised serious concerns about the government's consideration of the provisional-waiver process and about counsel's ability to adequately discharge their obligations to class members.  *See* Pets.' Status Report at 4-9 (June 25, 2019) (Dkt. No. 290).

Now, Respondents are unhappy with the deal they struck and are trying to re-cast this Court's decisions as a preliminary injunction.  Respondents further fault Petitioners for not justifying this reporting by proving "that ICE Boston is not complying by its agreement to voluntarily abide by the Court's June and September 2018 orders."  Mot. at 6.  These arguments are incorrect, and if condoned they would lead to the perverse result of permitting Respondents to withhold discovery while faulting Petitioners for failing to prove violations of law.  Because the Court has not entered a preliminary injunction, and because the reporting requirements are appropriate, Petitioners respectfully request that the Court deny Respondents' motion for reconsideration.

## PROCEDURAL BACKGROUND

## I.      The Parties Agreed to Stay Petitioners' Preliminary Injunction Motion.

After this Court's August 23, 2018 denial of Respondents' motion to dismiss with respect to Petitioners' due process claim, Respondents represented that they "took immediate action to

comply with the legal obligations" described in the Court's order.  Joint Report at 2-3 (Sept. 12,

2018) (Dkt. No. 158).  On September 21, 2018, the Court issued a written order memorializing

its oral ruling, stating that "ICE may only remove petitioners after considering the fact that they

are pursuing [provisional] waivers and the policies codified in the provisional waiver

regulations."  Sept. 21, 2018 Memo. & Order at 4 (Dkt. No. 159).  Petitioners' motion for a

preliminary injunction (Dkt. No. 49) remained pending.

In October 2018, the parties agreed on a three-month stay of the preliminary injunction

motion.  *See* Joint Report at 2-3 (Oct. 3, 2018) (Dkt. No. 162).  The agreement was premised on

Respondents' provision of reporting on potential class members: "Respondents have offered to

provide Petitioners with reporting, once a month, for an initial period of three months, in

exchange for Petitioners' agreement to stay the motion for preliminary injunctive relief."  *Id.* at

2.  The Court entered the requested stay.  Oct. 11, 2018 Order at 3 (Dkt. No. 168).  Although the

three-month window expired in early 2019, the parties retained the reporting arrangement in lieu

of a revival of the preliminary-injunction motion.  *See, e.g.*, Dec. 6, 2018 Hr'g Tr. at 109-110;

Joint Status Report (Jan. 15, 2019) (Dkt. No. 2019); May 16, 2019 Hr'g Tr. at 29.

Respondents have consistently described this reporting as demonstrating ICE's

compliance with the Court's orders, obviating the need for further discovery.  For example, on

June 25, 2019, Respondents represented:

> The monthly reporting that Respondents have agreed to provide is
> consistent with the Court's September 21, 2018 order, and
> demonstrates that ICE Boston, through a Field Office Director or
> Deputy Field Office Director, considers a class member's potential
> eligibility to apply for a provisional waiver *prior to* effectuating
> their removal from the United States.

Resps.' Status Report at 3 (June 25, 2019) (Dkt. No. 289) (citation omitted).  Respondents made

several similar representations over the preceding months.  *See, e.g.*, Joint Status Report at 3

(Jan. 15, 2019); Opp'n to Mot. for Discovery at 8 (Apr. 30, 2019) (Dkt. No. 240); Resps.' Suppl.

Status Report at 3 (June 7, 2019); May 16, 2019 Hr'g Tr. at 30.

Respondents' compliance with the Court's orders was a focal point of hearings during the

stay of the preliminary injunction motion.  For example, during a hearing in December 2018

concerning the availability of class-wide declaratory relief, the Court discussed the distinction

between declaratory relief and injunctive relief, including as it might apply to the Court's legal

rulings.  Todd Lyons, who was then the Acting Field Officer Director (AFOD) of the Boston

Field Office, confirmed he understood the distinction:

> THE COURT: … If I were to issue a declaratory judgment, I would in effect be telling you what your legal obligations are, but I wouldn't be ordering you to do anything.  I would be expecting that you would follow the law as I described it unless some higher court says it was wrong.
>
> MR. LYONS: Correct, sir.
>
> THE COURT: If I issue—and then if one or more of the petitioners thought you weren't following the law, they would come back to court, and they could move for an injunction.  And if there was any ambiguity in what you were required to do, it could get clarified. And if I thought that you were going to—that you were violating the law as I described it and that you were going to continue to violate it, I would issue an injunction.  And then if you continued to violate it, you could be held in contempt and locked up—
>
> MR. LYONS: Yes, sir.
>
> THE COURT: —either until you start obeying the law, and also punished if you intentionally violated it.  So that's one option. Declaratory judgment, but there's no threat that you could get locked up immediately, essentially, without further litigation, much further litigation.
>
> If I issue an injunction, that's enforceable.  If a petitioner were to come back and say, In my case ICE, personified by Mr. Lyons, didn't follow the law as you described it, Judge Wolf, then you could be locked for that violation without that longer process.
>
> MR. LYONS: Yes, sir.

Dec. 6, 2018 Hr'g Tr. at 15-16.

**II.     The Court Certified Classes, Considered Mr. V's Case, and Expanded Reporting.**

On May 16, 2019, the Court denied Respondents' motion to dismiss with respect to the

remaining claims and certified classes under Federal Rule of Civil Procedure 23(b)(2).   May 17,

2019 Order at 1-3 (Dkt. No. 253).   The parties were ordered to confer on any notice that should

be directed to class members.   *Id.*   In a June 5, 2019 report, Respondents proposed that in lieu of

class notice, the government would agree to continue providing check-in reports and would

provide additional reporting about detained class members.   Resps.' Status Report at 6 (Dkt. No.

260).   Respondents agreed to provide notice prior to the removal of a class member—but only

when the class member had not previously appeared on a monthly report—and further did not

agree to a timing requirement for the notice.   In contrast, Petitioners proposed that Respondents

provide five business days' notice before enforcing the removal of any class member, along with

an explanation of the enforcement action.   Pets.' Status Report (Dkt. No. 261).

On June 17, 2019, Petitioners filed an emergency motion seeking to stay the removal of a

class member known in the briefing as "Mr. V."   Dkt. No. 268.   Respondents had informed

Petitioners that Mr. V was scheduled for removal.   Although Respondents asserted that ICE had

considered his status as a class member, they refused Petitioners' requests for additional

information about how ICE had done so, or about Mr. V himself.   Petitioners sought an

emergency order barring Mr. V's removal until ICE provided that information.   *See* Memo in

Support of Motion for TRO at 6 (June 17, 2019) (Dkt. No. 268-1); Decl. of Mr. V (June 19,

2019) (Dkt. No. 279-1).

In response, the Court held a hearing on June 18, 2019.[1]  The Court then ordered Respondents to provide an affidavit from Marcos Charles, the current AFOD of the Boston Field Office, explaining why it would be "burdensome or inappropriate" to provide Petitioners with certain information regarding removal decisions for class members.  June 20, 2019 Order at 1-2 (Dkt. No. 282).  In his affidavit, Mr. Charles stated that providing advanced notice would permit individuals to take "proactive steps … to prevent removal."  Charles Decl. ¶ 3 (Dkt. No. 284-1).

Meanwhile, Petitioners also updated their proposal for notice and reporting.  *See* Pets.' Status Report (June 25, 2019) (Dkt. No. 290).  Because Mr. V's case had demonstrated that Respondents refused to provide follow-up information until Petitioners sought relief in Court, Petitioners' updated proposal sought to guarantee that Petitioners' counsel would have consistent and adequate information about class members who might be subject to removal—and thus could avoid racing to Court each time.  *Id.*

On June 27, 2019, the Court held a hearing concerning "what additional information, if any, should be provided to class counsel regarding the possible removal of class members, including but not limited to information on the monthly reports that ICE has been providing to petitioners," as well as other discovery issues.  June 27, 2019 Hr'g Tr. at 3-4.  During a colloquy with Mr. Charles, the Court confirmed that Mr. Charles was familiar with the previous orders in the case and that "a violation of the orders, any of the orders, could be … civil and/or criminal contempt."  *Id.* at 6.  The Court also learned of another local ICE official who might be making decisions pertaining to the removal of *Calderon* class members.  *Id.* at 4-5.  In response, the

---

[1] After learning that Mr. V wished to depart the United States, Petitioners ultimately withdrew the Emergency Motion on June 20.  Petitioners nevertheless noted that "their examination of this case confirms Petitioners' serious concern that Respondents are not adequately and contemporaneously considering the provisional waiver process and its important purposes."  Mot. to Withdraw at 1 (June 20, 2019) (Dkt. No. 286).

Court discussed its inclination to order that the official read the relevant orders in this case and submit an affidavit affirming his familiarity with those orders and his understanding "that any violation could be a civil and/or criminal contempt." *Id.* at 7.  Counsel for Respondents stated, "I have no objection to that." *Id.*  Counsel further provided that the position held by that official was rotated between three officials. *Id.* at 7-8.  Asked whether the government had "any concern or objection" to an order that required all three of these officials to affirm that they had read the Court's prior orders in this case and understood "the consequences if there's a violation," Counsel for Respondents stated, "No, Your Honor." *Id.* at 8.

The June 27, 2019 hearing also addressed in detail the parties' proposals for notice. Respondents had already agreed to provide monthly reporting to Petitioners' counsel regarding class members who were detained or checking-in with ICE, including their names, alien numbers, attorneys, detention date or check-in information, and the status of certain applications. The Court further ordered:

- That Respondents' reporting include county-of-origin information, information about stay-of-removal applications and custody reviews, the date of the final order of removal of any detained class member, and the custody-review documents for each detained class member;

- That reporting about detained class members include those whose membership in the *Calderon* class materializes and becomes known to ICE during their custody, nor merely those who were class members at the time of their detention;

- That certain class members receive a notice about the litigation[2];

- That Respondents notify Petitioners' counsel within five business days of a class member's detention, or of a detained noncitizen becoming a class member;

- That Respondents provide five business days' notice to Petitioners' counsel, where possible, of a class member's intended removal, including a brief narrative description of the factors and information considered; and

---

[2] The parties dispute the precise scope of this requirement.  *See* Proposed Order at 4-5 (July 10, 2019) (Dkt. No. 301).

- That where Respondents cannot reasonably provide five business days' notice, they must provide notice as promptly as reasonably possible.

*See* Proposed Order at 1 (July 10, 2019) (Dkt. No. 301).  The Court declined to adopt several of Petitioners' additional proposals, including Petitioners' requests to receive contact information for the U.S.-citizen spouses and ENFORCE Alien Removal Module ("EARM") printouts for detained class members.  June 27, 2019 Hr'g Tr. at 31, 51-52.  And in response to Respondents' argument that requiring five business days' notice would in some cases force the government to delay removal, the Court created an exception to for cases in which Respondents could not reasonably provide such notice.  *Id.* at 64-67; *see also* June 28, 2019 Order ¶ 4 (Dkt. No. 295). When counsel for Respondents argued that the notice requirement constituted a preliminary injunction, the Court granted Respondents leave to brief the issue by July 19.  *Id. at* 69-70.

In a written order the next day, the Court further ordered three Deputy Field Office Directors to review its orders concerning detention and removal and to submit affidavits stating that they "understand that any violation of such orders could constitute civil and/or criminal contempt."  June 28, 2019 Order at 1 (Dkt. No. 295).  The Court also memorialized its orders concerning the notice requirement and briefing on the preliminary injunction issue.  *Id.* at 2-3.

On July 19, 2019, Respondents filed the motion that is the subject of this opposition.

## ARGUMENT

**I.     The Court's Reference to the Possibility of "Criminal and/or Civil Contempt" Did Not Transform the Court's Orders into Injunctions.**

The Court did not issue a preliminary injunction when it asked ICE officials to affirm that they understood that violation of the "orders" in this case "could" constitute criminal or civil contempt.  To the extent Respondents argue that ICE officials cannot be subject to contempt for

violating the legal analysis underlying the Court's denial of their motion to dismiss, Petitioners submit that the Court has made that clear.  *See, e.g.*, Dec. 6, 2018 Hr'g Tr. at 15-16. [3]

To the extent Respondents make a different argument—that the mere reference to contempt transformed the Courts' motion-to-dismiss rulings into an injunction—they are incorrect.  Respondents focus heavily on the Court's recent references to the ***possibility*** of contempt proceedings if Respondents fail to comply with the Court's orders.  *See* Mot. at 4, 5. But Respondents themselves have represented to the Court on numerous occasions that they are complying with the Court's rulings concerning POCR review and consideration of provisional-waiver applications.  In light of those representations, the Court cautioned AFOD Marcos Charles and former AFOD Todd Lyons that a violation of its orders ***could*** lead to contempt.  *See supra* pp. 3-7.  This instruction reflects Respondents' own responsibilities in light of the representations they have made to the Court.  The instruction also reflected the fact that the Court was ***not*** issuing a preliminary injunction, but that Petitioners could move for—and the Court could grant—a preliminary injunction if the Court's orders were not followed.  As the Court explained to Mr. Lyons in December 2018: "[I]f one or more of the petitioners thought you weren't following the law, they would come back to court, ***and they could move for an injunction***. … And ***if I thought that you were going to—that you were violating the law as I described it and that you were going to continue to violate it, I would issue an injunction***.  And then if you continued to violate it, you could be held in contempt …."  Dec. 6, 2018 Hr'g Tr. at

---

[3] Beyond the substantive arguments herein concerning Respondents' motion, Petitioners also note that the motion does not include any certification under Local Rule 7.1(a)(2), which specifies that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  Counsel for Respondents made no effort to discuss the substance of their motion with Petitioners before it was filed.

15-16; *see also Steffel v. Thompson*, 415 U.S. 452, 470 (1974) (explaining that noncompliance with declaratory judgment, unlike injunction, is not contempt).

The Court has observed that "a preliminary injunction should never be issued casually, particularly against the government."  Aug. 20, 2018 Hr'g Tr. at 120.  Consistent with that statement, the Court has not done so here.  Instead, the Court's orders set forth the Court's findings concerning the applicable legal standards for detention and removal, which Petitioners can and have used as the basis for targeted, fact-specific motions for injunctive relief. Respondents' claims to the contrary are without merit.

## II.   The Court's Order on Detention and Removal Reporting Is Not a Preliminary Injunction and Is Appropriate.

The Court's order on reporting concerning the removal and detention of class members is not a preliminary injunction and is entirely appropriate.  Contrary to Respondents' representations, such reporting only a modest extension of the discovery obligations that Respondents voluntarily assumed in exchange for staying Petitioners' preliminary injunction motion.  The central premise of that agreement is that the government avoids being directly constrained by an injunction, while Petitioners' counsel has information that permits it to monitor the government's treatment of class members and take action to protect them when necessary.  The Court's order merely clarifies the parameters for that reporting to ensure that it meaningfully informs class counsel of ICE Boston's activities, with sufficient lead time for Petitioners to raise ICE Boston's conduct with the Court as appropriate.  Furthermore, this reporting comprises discovery to which Petitioners are entitled as class counsel and functions as a substitute for class notice under Rule 23(c)(3).  It is not, as Respondents now assert, a "preliminary injunction."

### A.     The Reports Are Not Overly Burdensome and Are Based on Discovery that ICE Boston Itself Negotiated to Stay Petitioners' Preliminary Injunction.

The Court's orders concerning reporting requirements do not qualify as a preliminary injunction and do not "intrude[] on the inner-workings of one of ICE Boston's primary agency functions, executing removal orders." Mot. at 5. On the contrary, the reporting is carefully crafted to ensure that such reporting provides class counsel with information that is ordinarily available as part of discovery, allowing class counsel to fulfill their obligations to class members without burdening the government excessively. Respondents have not argued that the government will ever need to delay removal because of this order. Indeed, the government clearly does not think anything in the Court's order requires them to delay removal—since the Court ordered class notice, they have continued to deport class members while the parties have been negotiating the contents of the notice.[4]

Respondents' complaints concerning reporting also ring hollow when they are considered in light of earlier negotiations between the parties. As explained above, Respondents' monthly reports were provided in exchange for a stay of the Petitioners' preliminary injunction motion. *See* Oct. 3, 2018 Joint Report at 2 (Dkt. No. 162). The Court's modest expansion of those reports to include (where practicable) five business days' notice, narratives, and detention documentation does not meaningfully intrude on ICE's removal authority. Instead, it simply

---

[4] Respondents also incorrectly claim that injunctions in other cases are "indistinguishable" from the instant case. Mot. at 5. In *Nguyen Da Yen*, for example, the injunction under review ordered the INS to undertake "immediate repatriation of children the INS determines 'should be returned to their parents in Vietnam'" and placed the district court in direct control of an internal INS investigation. *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1198-1199 (9th Cir. 1975). And in *Red Star Laboratories*, the injunction required insurance companies to modify contracts to changes the identity of the beneficiary and receiver. *Red Star Labs. Co. v. Pabst*, 100 F.2d 1, 4-5 (7th Cir. 1938). Far from being "indistinguishable," the injunctions in those cases went far beyond the reporting requirements at issue here.

requires ICE to provide information *about* planned removals.  Petitioners may then use that

information to seek temporary restraining orders or injunctions in specific cases, subject to the

Court's careful evaluation of whether the requirements for such orders have been met based on

the Court's appraisal of the facts and conclusions concerning the applicable law.  In fact, the

Court discussed this precise possibility with then-AFOD Lyons in December 2018, noting that

Petitioners could use reported information to seek injunctions at the appropriate time—just as

Petitioners did on behalf of Mr. V.  *See* Dec. 6, 2018 Tr. at 15-16.

> **B.**     **The Reports Are Part of ICE Boston's Discovery and Satisfy Notice Obligations to the Calderon Class.**

Respondents now claim that Petitioners "have not met their burden to establish the

preliminary injunction factors" (Mot. at 6)—ignoring that, in part due to Respondents' repeated

assertions that it is complying with the Court's orders, the Court has denied Petitioners' requests

for full discovery.  In light of those positions, Petitioners have appropriately sought to obtain

relevant information through discovery channels—a separate inquiry from whether injunctive

relief is appropriate if such violations are proven.  The reporting ordered by the Court is

therefore appropriate because it comprises discovery to which Petitioners are entitled,

particularly given that this is now a class-action suit, and it also provides a substitute for

providing notice to every class member under Rule 23(c)(2)(A).

Indeed, even the limited reporting to date has proven indispensable to protecting the

rights of class members where such violations appeared likely.  For example, with respect to Mr.

V, this reporting cast severe doubt on whether ICE Boston was in fact complying with the

Court's orders concerning the consideration of the provisional-waiver process when making

removal decisions—prompting the Court's expansion of those reporting requirements.  *See*

Memo in Support of Motion for TRO at 6 (June 17, 2019) (Dkt. No. 268-1).  And now, reporting

concerning the detention of class members suggests that more than a year after this Court's findings concerning Lucimar de Souza, ICE Boston continues to violate the rights of detainees under POCR regulations.  *See* Mot. for Order to Show Cause (Dkt. No. 304).

Furthermore, such reporting reflects the discovery that Respondents would ordinary provide in a class-action lawsuit, and—by putting particular time constraints on that discovery—provides an appropriate substitute for class-wide notice.  Where, as here, a class has been certified under Rule 23(b)(2), "the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  Indeed, Respondents themselves viewed similar reporting as satisfying the notice requirements of Rule 23—with no claim that such reporting would unreasonably hinder removal operations.  *See* Resps.' Status Report at 1 (June 25, 2019) ("In lieu of class notice under Rule 23(c)(2), Respondents agree to continue to provide the monthly reports on class members checking in with ICE Boston."); Resps.' Status Report at 6 (June 5, 2019) (Dkt. No. 260) ("If ICE Boston orders a class member to depart prior to the class member's initial inclusion on the next monthly check-in report, ICE Boston will notify Petitioners' counsel of the class members' impending removal.").

The Court's order concerning reporting is an appropriate form of class notice.  Rather than give class members notice as soon as they have contact with USCIS, the Court has limited notice to the most vulnerable class members and paired it with procedures to provide reporting to class counsel, also limited to individuals who are already in contact with ICE.  In order to be an adequate substitute for class-wide notice, the reporting must be robust enough to maximize the chances that class members will be able to make informed decisions and that class counsel will be able to learn about and assist class members who may be at risk of removal.  The reporting here is appropriately designed give timely information to class members and their counsel, while

providing class counsel with the ability to seek any appropriate relief in a timely manner before removal deprives the Court of jurisdiction.

Respondents are trying to have it both ways.  Having agreed to provide reporting in order to sidestep Petitioners' preliminary injunction motion for nine months, Respondents now seek to avoid providing Petitioners with discovery that is critical to securing the rights of class members and developing the evidentiary record that will be necessary for an eventual ruling on the merits.

### C.       Even if the Court's June 27 Order Could Be Construed as a Preliminary Injunction—Though It Cannot—the Court Should Not Reconsider It.

Finally, regardless of whether the challenged order can be construed as a "preliminary injunction," the Court should deny Respondents' motion for reconsideration of that order. Respondents have failed to identify any reason such reconsideration is appropriate under the stringent standard that applies to such motions.  *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) ("[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.").

Respondents incorrectly claim that the Court's order is unnecessary because "Petitioners have yet to allege, let alone provide any evidence, that ICE Boston is not complying by its agreement to voluntarily abide by the Court's June and September 2018 Orders."[5]  Mot. at 6. This is false.  Petitioners have alleged and presented evidence that ICE Boston is continuing to

---

[5] In support of this claim, Respondents rely on the Court's position "that ICE may lawfully remove class members as long as 'it makes an individualized decision to do so based on more than the mere fact that the alien is subject to a final order of removal.'"  *Id.* at 6 (quoting Dkt. No. 159 at 35).  But Respondents overlook the Court's more demanding complementary formulation of ICE's legal obligations: "that ICE may only remove petitioners after considering the fact that they are pursuing those waivers and the policies codified in the provisional waiver regulations."  Sept. 21, 2018 Order at 4.

violate class members' rights by engaging in POCR violations and by not considering the purposes of provisional-waiver applications when executing removals. *See, e.g.*, Memo in Support of Motion for TRO at 6 (June 17, 2019) (Dkt. No. 268-1); Mot. for Order to Show Cause (Dkt. No. 304). And even where Respondents have eventually provided *some* justifications for their removal decisions, the reporting has been critical for Petitioners to develop the factual record concerning whether those decisions were reached after ICE actually considered class members' status and the policies underlying the provisional-waiver regulations.

What is more, the *only* reason that Respondents offer on why the reporting requirements are burdensome is that five business days' notice might allow "individuals to take proactive steps to counter ICE operations in an attempt to prevent an individual's removal." Charles Decl. ¶ 3 (Dkt. No. 284-1). That is no reason at all—stopping removals that are inconsistent with the Court's legal rulings in this case is precisely the purpose of this limited form of class discovery and notice.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the Court deny Respondents' Motion for Reconsideration.[6]

---

[6] If the Court does grant Respondents' motion for reconsideration and rescinds the disputed portion of its June 27, 2019 Order, Petitioners will consider whether to seek a lifting of the stay of the Petitioners' Motion for Preliminary Injunction, to allow the issue of injunctive relief to be litigated fully.

Respectfully submitted this 1st day of August, 2019.

/s/ Kevin S. Prussia

| | |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Michaela P. Sewall (BBO # 683182) |
| AMERICAN CIVIL LIBERTIES UNION | Shirley X. Li Cantin (BBO # 675377) |
| FOUNDATION OF MASSACHUSETTS, INC. | Jonathan A. Cox (BBO # 687810) |
| 211 Congress Street | Stephen Provazza (BBO # 691159) |
| Boston, MA 02110 | Colleen M. McCullough (BBO # 696455) |
| (617) 482-3170 | Matthew W. Costello (BBO # 696384) |
| | WILMER CUTLER PICKERING |
| Kathleen M. Gillespie (BBO # 661315) |   HALE AND DORR LLP |
| Attorney at Law | 60 State Street |
| 6 White Pine Lane | Boston, MA 02109 |
| Lexington, MA 02421 | Telephone: (617) 526-6000 |
| (339) 970-9283 | Facsimile: (617) 526-5000 |
| | kevin.prussia@wilmerhale.com |
| | michaela.sewall@wilmerhale.com |
| | shirley.cantin@wilmerhale.com |
| | stephen.provazza@wilmerhale.com |
| | colleen.mccullough@wilmerhale.com |
| | matthew.costello@wilmerhale.com |

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2019, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

/s/ Kevin S. Prussia
Kevin S. Prussia