# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ
and LUIS GORDILLO, et al.,

Individually and on behalf of all others
similarly situated,

                Plaintiff-Petitioners,

     v.

KEVIN K. McALEENAN, et al.,

                Defendants-Respondents.

No. 1:18-cv-10225-MLW

**REDACTED PUBLIC VERSION**

## REPLY AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE

## TABLE OF CONTENTS

**Page**

I.     Respondents Have Repeatedly and Systematically Violated the POCR Regulations Based on Clear Misinterpretations of Those Rules. .........................................2

    A.    90-Day Custody Reviews .......................................................................3

        1.    ICE fails to provide notice "approximately"—as opposed to "at least"—30 days in advance of the first custody review. (*all seven cases*) ...........................................................................3

        2.    ICE's unannounced early 90-day reviews vitiate the regulation's requirement of notice "so that the alien may submit information" in support of release. (█████████████ .......................................5

        3.    In any event, the Court should reject Respondents' premise that the initial custody review must occur only within 90 days of detention (██████████████████████████████) .................8

    B.    Review Following Revocation of Release (████████ ....................................10

    C.    180-Day Custody Reviews ...................................................................10

        1.    Respondents ignore the notice requirements entirely for detainees' "180-day review." (*all seven cases*) ..........................................10

        2.    ICE systemically violates Section 241.4 by failing to conduct interviews as part of its 180-day review. (███████████ ██████████ .......................11

        3.    ICE has also failed to provide timely 180-day reviews for several class members (██████████████████████ ████████) ......................12

II.     Petitioners Need Not Show Prejudice—But They Have in Any Event. ...........................13

III.    The Government Violated the POCR Regulations in All Seven Cases at Issue ................15

    A.    ████████████████ ..................................................15

    B.    ████████████████ ..................................................17

    C.    ███████████████ ...................................................17

    D.    ███████ ................................................................18

    E.    ███████████ .......................................................20

    F.    ██████████████████ ............................................21

    G.    ██████████ .........................................................22

IV.    The Appropriate Remedy Is Release or, at a Minimum, an Individualized Bail Hearing for Affected Class Members. ....................................................24

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abdulai v. Ashcroft,*
    239 F.3d 542 (3rd Cir. 2001) ...............................................................13

*Dealy v. Heckler,*
    616 F. Supp. 880 (W.D. Mo. 1984) .......................................................6

*United States v. DeLeon,*
    444 F.3d 41 (1st Cir. 2006)...................................................................13

*Ex Parte Endo,*
    323 U.S. 283, 306 (1944)......................................................................21

*Figueroa v. McDonald,*
    No. 18-cv-10097-PBS, 2018 WL 2209217 (D. Mass. May 14, 2018) ...................................14

*Flores-Powell v. Chadbourne,*
    677 F. Supp. 2d 455 (D. Mass. 2010) ...................................................24

*United States v. Jacques,*
    463 F.2d 653 (1st Cir. 1972).............................................................. 14-15

*Leslie v. Attorney General,*
    611 F.3d 171 (3rd Cir. 2010) ................................................................13

*Martinez v. Sessions,*
    873 F.3d 655 (9th Cir. 2017) .................................................................6

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..............................................................................13

*Pardae v. Holder,*
    454 F. App'x 547 (9th Cir. 2011) .........................................................14

*Pensamiento v. McDonald,*
    315 F. Supp. 3d 684 (D. Mass. 2018) ..............................................14, 15

*Procter & Gamble Co v. CAO Grp., Inc.,*
    No. 1:13-cv-337, 2014 WL 2117047 (S.D. Ohio May 21, 2014).............................4

*Rombot v. Souza,*
    296 F. Supp. 3d 383 (D. Mass. 2017) ........................................... *passim*

*Schlup v. Delo,*
    513 U.S. 298 (1995).................................................................................24

*INS v. St. Cyr,*
    533 U.S. 289 (2001)...................................................................................9

*Strickland v. Comm'r, Me. Dept. of Human Servs.,*
    48 F.3d 12 (1st Cir. 1995)..........................................................................4

*Vlaicu v. INS,*
    998 F.2d 758 (9th Cir. 1993) ......................................................................6

*Dearinger ex rel. Volkova v. Reno,*
    232 F.3d 1042 (9th Cir. 2000) ...................................................................14

*Waldron v. INS,*
    17 F.3d 511 (2d Cir. 1993).........................................................................13

*You Xiu Qing v. Nielsen,*
    321 F. Supp. 3d 451 (S.D.N.Y. 2018)..........................................................9

*Zadvydas v. David,*
    533 U.S. 678 (2001)...................................................................................13

**State Cases**

*Columbia Fed. Sav. Bank v. Buyokas,*
    534 N.Y.S.2d 643 (N.Y. Sup. Ct. 1988) .......................................................5

**Federal Statutes**

8 U.S.C. § 1231 ...............................................................................................8

**Regulations**

8 C.F.R. § 241.4 ......................................................................................... *passim*

INS, *Detention of Aliens Ordered Removed*, 65 Fed. Reg. 80281 (Dec. 21, 2000) ........................4

In view of its finding more than a year ago that Immigration and Customs Enforcement

("ICE") was systematically violating the Post-Order Custody Review ("POCR") regulations,

8 C.F.R. § 241.4, this Court recently ordered ICE to provide Petitioners' counsel with the

custody-review documents of detained class members.  June 27, 2019 Tr. at 53-57 (Dkt. 297).

That order proved prescient.  In ***each*** of the seven remaining cases that form part of Petitioners'

Motion for Order to Show Cause (Dkt. 304), ICE has violated the requirements of Section

241.4.[1]  Due to these endemic violations, each of these individuals should now be released.

Petitioners have identified the following violations of Section 241.4:

- None of the seven individuals received notice "approximately" 30 days before his 90-day custody review, as required by Section 241.4(h)(2).

- In five cases, the government further violated the requirements of Section 241.4(h)(2) to provide notice "so that the alien may submit information in writing in support of his or her release," by conducting a review before the deadline to submit information, the precise scenario found to violate the regulation and due process in *Rombot v. Souza*, 296 F. Supp. 3d 383, 387-88 (D. Mass. 2017).

- In another case, involving a man whose supervised release was revoked, ICE entirely ignored procedures that entitled the individual an interview and review of that revocation three months into his detention.  *See* 8 C.F.R. § 241.4(l)(3).  That individual instead received notice of an ordinary 90-day review, which was conducted late, contrary to Section 241.4(k)(1)(i).  Indeed, of the seven individuals at issue in this motion, only one received a timely 90-day review.

- None of the three individuals that received 180-day reviews received notice of that review, as required by Section 241.4(k)(2)(ii).

- None of the three individuals that received 180-day reviews was interviewed in connection with that review, as required by Section 241.4(i)(3).

---

[1] The seven individuals are: ███████████████████████████████████ ████████████████████████ Although Mr. ███████ was released on August 6, 2019, ICE purports to have released him only during the pendency of this motion.  *See* Dkt. 348 ¶ (b).  Four individuals that were part of Petitioners' original motion have been removed: ████████████████████████████████████████████████ ████. Petitioners seek no relief on behalf of ██████████, who was released on July 18, 2019, and ██████████████, who has informed Petitioners' counsel that he wishes to be removed.

- Two of the three 180-day reviews were conducted well beyond "the expiration of the three-month period after the 90-day review," even factoring in that the regulation permits reviews "as soon thereafter as practicable." *See* 8 C.F.R. 241.4(k)(2)(ii). One other individual received a timely 180-day review, but two others have received no 180-day reviews at all, for reasons described below.

The Court should also now find, as it suggested in June 2018, that if the removal period has expired, initial custody reviews must be completed as soon as possible after detention begins.

More than a year ago, this Court found that the government's violations of Section 241.4 had "profound human consequences" that warranted relief. *Jimenez v. Cronen*, 317 F. Supp. 3d at 638, 636 (D. Mass. 2018). The same is true here. Those harmed by the government's unlawful actions include: a six-year-old girl who still asks her mother to save dinner for her father; a nurse working two jobs to support her children alone; a ten-year-old getting into fights at school because he misses his Grandpa's daily presence at home and at all of his sports games; and a mother who for nearly two years has been raising five children alone—including a step-son who was born drug addicted. ICE insists that it was lawful to deprive the noncitizens before the Court of the opportunity to submit materials in connection with their reviews, and that no one was harmed. But that is not so. ICE's violations of Section 241.4 merit the remedy of release, or, at a minimum, an individual inquiry into whether the continued separation of these seven American families is necessary.

## ARGUMENT

### I.    Respondents Have Repeatedly and Systematically Violated the POCR Regulations.

As detailed in Petitioners' Motion for Order to Show Cause, and as further detailed below, Respondents' systemic violations of the POCR regulations include their disregard for notice requirements, failure to allow time for the submission of documents, failure to conduct timely reviews, and failure to conduct required custodial interviews. ICE's actions violate both the regulations and the Due Process Clause. *See Jimenez*, 317 F. Supp. 3d. at 638.

A.      **90-Day Custody Reviews**

1.      **ICE fails to provide notice "approximately"—as opposed to "at least"—30 days in advance of the first custody review.** *(all seven cases)*

First, Respondents' decision to begin giving notices of 90-day custody reviews 90 days in advance, rather than "approximately" 30 days, contradicts the regulations' plain meaning, and ignores the balance struck by the agency in crafting the regulations.  The new notice procedures reduce ICE's administrative burdens by allowing the agency to hand out POCR notices with the other paperwork it provides when processing new post-order detainees,[2] but the procedure violates the regulations provides no benefit to detained noncitizens.

ICE must notify detainees "***approximately*** 30 days in advance of the pending records review so that the alien may submit information in writing in support of his or her release." 8 C.F.R. § 241.4(h)(2) (emphasis added).  The Court restated this requirement in June 2018: "the alien and his or her attorney must be given written notice ***approximately*** 30 days in advance of a custody review by ICE to determine whether detention should continue, so that the alien can submit information to support a request for his or her release."  June 11, 2018 Memo. & Order at 38 (emphasis added) (citing 8 C.F.R. § 241.4(d)(3), (h)(2)).

Respondents now rewrite both the regulations and the Court's restatement.  Respondents claim that "the Court … required that … the alien and alien's attorney receive notice of an impending POCR ***at least*** 30 days in advance of the custody review."  Response at 2 (emphasis

---

[22] These notices may include any notices of revocation of release, *see* 8 C.F.R. § 241.4(l)(1), a Warning for Failure to Depart (Form I-229(a)), and an Instruction Sheet to Detainee Regarding Requirement to Assist in Removal.  *See* ICE Memorandum, Post Order Custody Reviews Responsibilities and Guidance at 1, 4-5 (Sept. 17, 2007), *available at* ice.gov/doclib/foia/dro_policy_memos/postordercustodyreviewsresponsibilitiesandguidancesep172007.pdf (explaining that Warning for Failure to Depart forms and Instruction Sheets should be given at around "day 1" of post-order detention).

added).  Similarly, Respondents claim that because they "provided each alien with **at least** 30 days to submit documents on his or her behalf … ICE complied with the plain language of the regulations and with this Court's June 11, 2018, order."  *Id.* at 5 (emphasis in original).

"At least" does not mean "approximately."  Rather, the two terms reflect distinct regulatory requirements.  *Cf. Procter & Gamble Co v. CAO Grp., Inc.*, No. 1:13-cv-337, 2014 WL 2117047, at *5 (S.D. Ohio May 21, 2014) (rejecting a claim construction that "improperly replace[d] 'about' with 'at least'").  Respondents elide this distinction, never addressing why conflating the terms is reasonable.  In lieu of regulatory analysis, Respondents provide policy reasons why providing an early notice to detainees is beneficial and "aligns with this Court's suggestion that ICE provide notice to the alien of the custody review promptly."  Response at 5.  But the Court's suggestion was that Respondents conduct earlier reviews, not simply reduce administrative burdens by giving notice early.  Providing notice earlier than 30 days before the POCR review can be an appropriate **additional** notice—but suggesting that early notice is a **substitute** for timely notice violates the regulations and the wisdom of every doctors' office that provides appointment reminders shortly before an appointment, not three months in advance.[3]

Respondents never address the consequence of their conflation of "approximately" and "at least."  Providing only early notice—shortly after initial post-order detention—without providing another notice "approximately 30 days in advance" of the custody review undermines

---

[3] This dispute is not academic.  Regulations necessarily reflect an agency's efforts to balance different policy considerations, based on commentary and feedback.  *Cf. Strickland v. Comm'r, Me. Dept. of Human Servs.*, 48 F.3d 12, 21 (1st Cir. 1995) (observing that agency, in formulating regulation, "balance[s] the relevant policy considerations").  In fact, the notice requirement in § 241.4 was expressly the subject of such commentary and agency feedback.  *See* INS, *Detention of Aliens Ordered Removed*, 65 Fed. Reg. 80281, 80289 (Dec. 21, 2000) ("Some commenters requested that the notification of custody review be extended to 45 or 60 days prior to the review.  The Department declines to extend this notification period.").

a detainee's ability to prepare adequately for that custody review.  "Too much notice is just as

fatal as too little."  *Columbia Fed. Sav. Bank v. Buyokas*, 534 N.Y.S.2d 643, 643 (N.Y. Sup. Ct.

1988).  Among other things, 30 days' notice serves as a reminder to the detainee, encouraging

him or her to collect up-to-date documentation at a time relatively close to the custody review.

In contrast, a detainee who has just been detained and is being given various notices at the same

time may be too shocked and confused to absorb the importance of a notice whose relevance is

still months away, at a time when he or she may never imagine that they will still be detained.

Whereas detainees previously had to receive a separate visit from an ICE officer handing them a

notice 30 days before their review, ICE's new procedure eliminates that additional contact with

post-order detainees—a benefit to ICE, not to the detainees.  ICE's conflation of

"approximately" 30 days with a time period multiple times as long violates both the plain text

and the clear intention of the regulation's notice requirement.

> **2.      ICE's unannounced early 90-day reviews vitiate the regulation's
> requirement of notice "so that the alien may submit information" in
> support of release. (** ████████████████████████████████████
> ████████████████████████

Next, Respondents defend the discrepancies between the custody review dates listed in

the 90-day POCR notices and the dates on which those custody reviews actually occur by

pointing out that the notices promise only that the review will occur "on or about" the specified

date.  Again, Respondents ignore both the plain meaning of the regulation and its importance to

the lives of real people.

The purpose of Section 241.4(h)(2)'s notice requirement is written right into the

regulation: notice is required "so that the alien may submit information in writing in support of

his or her release."  Respondents' unannounced early reviews render their notices wholly

ineffectual, in violation of Section 241.4.  By giving detainees inaccurate information about the

date of their custody review, ICE hampers their ability to prepare and submit documents before the review occurs.

ICE also has a due process obligation to avoid making misrepresentations that will impede detainees' access to review.[4]  Respondents cannot show that they have accurately represented the date by which detainees may submit documents.  They focus on the example of a custody review held one day before the date listed on the POCR notice—involving an individual who has been removed—as though they would be untroubled if this Court ruled against them on a motion a mere one day or a full 20 days before a briefing deadline.[5]

This issue was addressed in *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017). There, the detainee challenged his initial detention by ICE, as well as ICE's decision to continue detention under the POCR regulations.  *Id.* at 387-388.  Among other violations, the petitioner alleged that ICE had unfairly conducted his custody review too early.  His review was conducted on October 24, 2017, even though his Notice to Alien of File Custody Review indicated that his custody status would be "reviewed on or about 10/30/2017" and that he could submit documents until that date.  Ex. 1 to Pet.'s Mot. for Release, *Rombot v. Souza*, No. 1:17-cv-11577-PBS (D.

---

[4] *See, e.g.*, *Vlaicu v. INS*, 998 F.2d 758, 760 (9th Cir. 1993) (excusing untimely appeal where INS provided petitioner with letter that was "misleading" about the date for filing notice of appeal, leading petitioner to file notice after deadline); *Martinez v. Sessions*, 873 F.3d 655, 660 (9th Cir. 2017) (vacating denial of asylum where petitioner had been misled concerning appeal, noting that "the conflicting and confusing information available to aliens … makes them susceptible to being caught in a trap for the unwary"); *cf. Dealy v. Heckler*, 616 F. Supp. 880, 886 (W.D. Mo. 1984) ("The essential due process issue involved is whether the Secretary has an affirmative obligation to avoid providing Social Security applicants with misleading information. Clearly that duty exists.").

[5] The number of days between the review actually being conducted and the date by which noncitizens were told that their materials had to be submitted is as follows: six days (████████); fourteen days (████████); four days (████████); two days (████████); and fourteen days (████████).

Mass. Oct. 30, 2017), Dkt. 43-1 (emphasis added).  Chief Judge Saris agreed that this early review was a violation of the petitioner's rights:

> ICE's Decision to Continue Detention [was] issued on October 24, 2017.  In the letter, Field Office Director Cronen represents that his decision to continue Rombot's detention until at least January 28, 2018 was "based on a review of [Rombot's] file ... and consideration of any information [he] submitted to ICE reviewing officials."  However, on October 24, 2017, Rombot's counsel had not yet submitted any documentation in support of Rombot's release.  The Notice to Alien of File Custody Review had stated that evidence could be submitted until the October 30, 2017 deadline.  ***When it reviewed Rombot's custody status prematurely on October 24, 2017, ICE violated its own regulations and procedures, see 8 C.F.R. § 241.4, depriving Rombot of his right to a meaningful custody status review.***

296 F. Supp. 3d at 387-388 (emphasis added).  Judge Saris further noted that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid ....'"  *Id.* at 388 (quoting *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993)).  Judge Saris stated that "[b]ased on ICE's violations of its own regulations, the Court concludes Rombot's detention was unlawful," and the Court ordered his release.  *Id.* at 388.

This facts in this case are on all fours with those in *Rombot*.  Under these circumstances, the inaccurate notices and premature custody reviews constitute a violation of the class members' due process rights.[6]  These violations have devastating consequences—including for

---

[6] Respondents also attempt to justify one earlier-than-noticed custody review on the grounds that ICE otherwise would have failed to comply with the 90-day custody-review requirement under its interpretation of 8 C.F.R. §241.4(h)(1) and § 241.4(k)(1)(i).  Response at 6.  This only reveals the extent of Respondents' disregard for their obligation to provide meaningful notice to class members.  ICE should never have noticed the incorrect date, and conducting the "review" earlier—without giving the detainee an opportunity to submit documents—is not the *meaningful* 90-day custody-status review that the regulations require.  *See Rombot*, 296 F. Supp. 3d at 388.

one family who for two months had no idea that ICE had not even looked at the approximately 80 pages of materials they submitted in support of release.  Dkt. 327-1 (████ Decl.) ¶¶ 6-9; *see also* Ex. 1 (████ Decl.) at ¶¶ 11-15.[7]

### 3.   In any event, the Court should reject Respondents' premise that the initial custody review must occur only within 90 days of detention. (██████████████████████████████████████)

The analysis above is premised on Respondents' own interpretation of the POCR regulations—an interpretation that has evolved over the course of this litigation.  *See* June 11, 2018 Order at 43 ("Perhaps recognizing that it was legally untenable to continue to contend that ICE's failure to detain De Souza during her 90-day removal period gave it the unfettered discretion to later detain her for up to six months without notice and any opportunity to be heard, ICE changed its position.").  As explained above, Respondents have violated the regulations even on their own terms.  But it is appropriate at this juncture for the Court to evaluate Respondents' interpretation on the merits—and reject it.

This Court has noted, "Section 241.4 is ambiguous with regard to detention of aliens … who were not detained during their initial 90-day removal periods as required by 8 U.S.C. §1231(a) (2) and 8 C.F.R. § 241.3."  June 11, 2018 Order at 44 (Dkt. 95).  ICE now interprets that regulation to "giv[e] it 90 days after arrest within which to conduct all custody reviews," but the Court has already observed that this interpretation "is inconsistent with the regulation's express 'requirement that the review occur ***prior to the expiration of the removal period***,' in the absence of exceptional circumstances."  *Id.* at 45 (citations omitted) (citing 8 C.F.R. § 241.4(h)(2), (h)(1), (k)(2), (k)(3)).  For that reason, the Court pointed to a different, more reasonable interpretation:

---

[7] "Ex. __ " refers to exhibits to the Declaration of Colleen M. McCullough, filed herewith.

> The regulation can be reasonably read in a manner that is consistent with its language and that would not require ICE to give aliens notice of a custody review before arresting and detaining them, while still affording these aliens due process.  The regulations permit ICE to issue the 30-day notice and conduct the custody review "as soon as possible [] after" the removal period, "allowing for any unforeseen circumstances or [an] emergent situation."  § 241.4(k)(2)(iv).  ICE could, consistent with this provision, give notice and decide whether detention is justified "as soon as possible" after the arrest of an alien who was not detained during his or her removal period.  *Id.*  This approach would also be consistent with the authority to postpone a custody review "for good cause" as long as "reasonable care [is] exercised to ensure that the alien's case is reviewed once the reason for delay is remedied."  *Id.* § 241.4(k)(3).  Therefore, for an alien arrested after the removal period like De Souza, it would be faithful to the language of § 241.4 to interpret the regulation as requiring notice promptly after arrest and a custody review approximately 30 days later.

*Id.* at 46.  This approach is consistent with that taken by other courts to have examined the issue.

*See, e.g.*, *You Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 463 (S.D.N.Y. 2018) ("Even assuming arguendo that Respondents had the authority to revoke Petitioner's release under § 241.4 in May 2018, they could not detain him without providing him with notice and an informal interview. Nor could they detain Petitioner without finding that he was 'a risk to the community or unlikely to comply with the order of removal.'  Detention to facilitate removal—even imminent removal—is not permitted beyond the removal period for an alien like Petitioner except upon such findings." (quoting 8 U.S.C. § 1231(a)(6))).  Moreover, this interpretation respects "'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.'"  *INS v. St. Cyr*, 533 U.S. 289, 320 (2001) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987)).

The detention of Ms. de Souza and Mr. Junqueira was unlawful even under ICE's own interpretation, so the Court did not need to reach this issue at that early stage of the case.  June 11, 2018 Order at 49.  Although clear violations are present again, the Court may now find that

9

the initial custody review must be conducted "as soon as possible" after the removal period, rather than at the 90-day mark that Respondents prefer.

**B.      Review Following Revocation of Release (**████████**)**

When ICE revokes the release of an individual who has been released from detention on an order of supervision, the regulations entitle him to specialized procedures both at the time of detention, and three months later.  8 C.F.R. § 241.4(l)(3).  This provision applies to at least one of the individuals before the court—████████—but ICE wholly failed to provide him with the three-month review the regulation requires.[8]

**C.      180-Day Custody Reviews**

**1.      Respondents ignore the notice requirements entirely for detainees' "180-day review." (**████████████████████████**)**[9]

Respondents consistently violate the notice requirements for the "180-day review," which is required to take place within three months of the initial custody determination.  The POCR regulations specify that:

> When the district director or Director of the Detention and Removal Field Office has advised the alien at the 90-day review as provided in paragraph (h)(4) of this section that he or she will remain in custody pending removal or further custody review, and the alien is not removed within three months of the district director's decision, authority over the custody determination transfers from the district director or Director of the Detention and Removal Field Office to the Executive Associate Commissioner.10  The initial HQPDU review will ordinarily be conducted at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable.  ***The Service will provide the alien with approximately 30 days notice of that review.***

---

[8] These procedures also arguably apply to ████████, who was not previously released under 8 C.F.R. § 241.4 but is now detained pursuant to a revocation of his supervision.

[9] ████████ also received no notice of a 180-day review, and no 180-day review.

[10] At that point, "all further custody determinations will be made by the Executive Associate Commissioner, acting through the HQPDU."  8 C.F.R. § 241.4(c)(2).  Two- or three-person Review Panels, or the HQPDU Director, conduct the 180-day review and issue a recommendation on further detention or release.  *Id.* § 241.4(i)(1)-(2).

8 C.F.R. § 241.4(k)(2)(ii) (emphasis added).

Respondents have not provided a 30-day notice for a single HQPDU determination. During a meet-and-confer on August 13, 2018, counsel for Respondents represented that the 90-day Decision to Continue Detention—which sometimes states that the person's "case will be transferred to the Headquarters Removal and International Operations Unit … [which] will make a final determination regarding your custody"—constitutes the required notice.[11]  That "notice" is not given approximately 30 days before the review—a plain violation of the express terms of 8 C.F.R. § 241.4(k)(2)(ii).  Section 241.4(k)(2)(ii) not only requires that a notice be given "approximately" 30 days before the 180-day review, but it also clearly contemplates that notice as a separate document from the one that advises the noncitizen of his continued detention.

Respondents have admitted they provide no separate 30-day notice concerning the 180-day custody reviews by HQPDU.  This failure is plainly impermissible under the regulations.

> **2.      ICE systemically violates Section 241.4 by failing to conduct interviews as part of its 180-day review.  (███████████████ █████████████ )**

In addition to the 30-day notice requirement for the 180-day review, the POCR regulations specify that an interview is required for 180-day reviews that do not result in release:

> If the HQPDU Director does not accept a panel's recommendation to grant release after a records review, or if the alien is not recommended for release, a Review Panel shall personally interview the detainee. … The alien may be accompanied during the interview by a person of his or her choice ….  The alien may submit to the Review Panel any information, in English, that he or she believes presents a basis for his or her release.

---

[11] One of the individuals at issue, █████████, did not receive even that language in his notice of custody review.  *See* Ex. 2.  Thus, he received nothing at all that can even arguably be thought of as notice—timely or otherwise—of his 180-day review.

8 C.F.R. § 241.4(i)(3)(i)-(ii).  Here, the government has provided *no such interviews* to any of the class members who have been detained after their 180-day reviews.  And because the regulations permit the detainee to provide testimony and submit additional documentation at the interview in support of release, ICE's failure to provide such interviews further deprives the class members of their protected ability to be heard.  Once again, this practice is a flagrant violation of the POCR regulations.

     **3.**      **ICE has also failed to provide timely 180-day reviews for several class members.  (**████████████████████████████

████████████**)**

Section 241.4(k)(2)(ii) provides that when the local ICE office has conducted a 90-day review and continued detention, the review by headquarters will "ordinarily be conducted at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable." Even with flexibility built in to this language, the regulation does not "ordinarily" allow a headquarters review to be delayed beyond three months after a 90-day review where it is practicable to conduct a review.  Exceptions to the requirement that review "ordinarily" occur at this time involve "unforeseen circumstances or emergent situation[s]," "a detainee's prompt removal," or a detainee's failure to comply with removal efforts.  8 C.F.R. 241.4(g)(4), (g)(5)(iii), (k)(2)(iv), (k)(3).  But current ICE practice with regard to the individuals before the Court made it especially "practicable" to conduct timely reviews because ICE conducts 180-day reviews without notice to the detainee and without the required interview.

Of the seven detainees at issue in this motion, five have been detained long enough to have 180-day reviews.  Of those five, ICE has violated these timing requirements in all but one case (████████).  In two cases—████████ and ████████████—ICE conducted reviews closer to four months after the 90-day reviews, and has offered no explanation for its lateness.  In

two other cases—████████████ and ██████████—180-day reviews have not occurred, and

ICE's effort to justify its failure to conduct reviews falls short.

## II.    Petitioners Need Not Show Prejudice—But They Have in Any Event.

Contrary to Respondents' arguments, Response at 6, the Court need not find prejudice.

Where immigration authorities violate a regulation that advances "fundamental rights derived

from the Constitution," the resulting decision is invalid without a showing of prejudice.  *Waldron*

*v. INS*, 17 F.3d 511, 518 (2d Cir. 1993); *see also Leslie v. Attorney General*, 611 F.3d 171, 178

(3rd Cir. 2010) ("[V]iolations of regulations promulgated to protect fundamental statutory or

constitutional rights need not be accompanied by a showing of prejudice to warrant judicial

relief.").   Section 241.4 plainly protects the fundamental right to a meaningful opportunity to be

heard in connection with procedures to determine one's freedom.  *See Zadvydas v. Davis*, 533

U.S. 678, 690 (2001); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The right to be heard

requires that one "be allowed to make arguments on his or her own behalf; and [have] … an

individualized determination of his [or her] interests," *Abdulai v. Ashcroft*, 239 F.3d 542, 549

(3rd Cir. 2001) (internal quotation marks omitted)—just what Section 241.4 seeks to preserve.[12]

This Court has already recognized that Section 241.4 is not a "housekeeping" regulation,

but one that protects fundamental rights.  *Jimenez*, 317 F. Supp. 3d at 638, 641-42.  Accordingly,

it held that a violation of Section 241.4 entitled Ms. de Souza and Mr. Junqueira to relief without

---

[12] In the case cited by Respondents in support of a prejudice requirement, the First Circuit imposed such a requirement in order to show that "delay in [an] appeal due to a tardy transcript may violate the due process rights of the defendant."  *United States v. DeLeon*, 444 F.3d 41, 56 (1st Cir. 2006).  Respondents ignore the context of *DeLeon*—in that case, which involved an appeal of a criminal conviction for reentry after removal, the court hinged its prejudice analysis on the noncitizen's ability to present his appeal where there was a delay in the availability of trial transcripts.  *See id.* at 56-57.  Tellingly, Respondents do not cite any cases in which courts have imposed a stringent prejudice requirement in the context of POCR violations.

conducting a separate analysis of prejudice.  *Id.* at 656 ("It is undisputed that ICE violated § 241.4 with regard to both De Souza and Junqueira.  They are entitled to judicial relief.").  In *Rombot*, Judge Saris similarly concluded that a POCR review prior to the deadline to submit documents constituted "ICE's violations of its own regulations," that the petitioner's "detention was unlawful," and that he should be released under the conditions of his preexisting order of supervision—without undertaking a separate prejudice analysis.  296 F. Supp. 3d at 388-389.

Even if prejudice were required, it is appropriate to presume prejudice here because ICE's errors deprived noncitizens of the ability to participate in the POCR process entirely. *See Pardae v. Holder*, 454 F. App'x 547, 549 (9th Cir. 2011) (presuming prejudice where immigration judge's incorrect instructions about what the noncitizen needed to prove to establish his claim deprived him of full and fair hearing); *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000) (prejudice presumed where attorney's late filing of appeal entirely deprived noncitizen of appeal proceeding, citing *Roe v. Flores–Ortega*, 528 U.S. 470 (2000)). Here, although reviews usually occurred, ICE's violations caused these fundamentally important decisions to be made almost entirely without the participation of the noncitizens—whether due to failed notice of the opportunity to submit written materials, or through the denial of interviews required by Section 241.4(i)(3).  Accordingly, prejudice may be presumed.

Even if that were not the case, the class members' rights were violated under any applicable standard of prejudice.  *See, e.g.*, *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018) (requiring noncitizen who was denied bond in hearing misallocating burden-of-proof to demonstrate that the result "could well have" been different under proper procedures); *Figueroa v. McDonald*, No. 18-cv-10097-PBS, 2018 WL 2209217, at *6 (D. Mass. May 14, 2018) (similar); *cf. United States v. Jacques*, 463 F.2d 653, 659 (1st Cir. 1972) ("Once a

14

registrant has shown deprivation of a substantial procedural right, the burden rests on the government to show absence of prejudice beyond a reasonable doubt."). For example, one class member spent ***two months*** in custody unaware that ICE had not even looked at the materials that he and his family had submitted in support of his release. Dkt. 321-1 (████ Decl.) ¶ 7. As this Court noted, "[a]ny unjustified loss of liberty for even one more day would be a particularly painful form of irreparable harm to [detainees] and to the United States citizens who love them." June 11, 2018 Order at 59. Each of the class members at issue here is, by definition, married to a U.S. citizen and attempting to gain lawful status through their spouse. Each has an acute interest in being released, and equities that were entirely absent from ICE's detention determinations. *See, e.g.*, Lyons Decl. ¶¶ 14-58 (Dkt. 318-1). As the case of the class member released on August 6 demonstrates, properly conducted review procedures in each of these cases could have resulted in release. *See Pensamiento*, 315 F. Supp. 3d at 693.

### III. ICE's Violations of the POCR Regulations Warrant Relief in All Seven Cases.

As demonstrated below, the violations described above are recurring and affected each of the seven individuals before the Court. Although Petitioners need not show prejudice, they can do so in abundance.

**A.** ████████████

*Mr. ████ did not receive the 30-day notice required by Section 241.4(h)(2) (**violation 1**).* Mr. ████ was detained on August 21, 2018. The next day, he received a Notice to Alien of File Custody Review along with other paperwork. Ex. 1 ¶ 10 & Ex. 1-A. The Notice stated that he could submit documents in support of his release before November 20, 2018. Ex. 1-A.

*ICE then conducted the review early, before his deadline to submit documents (**violation 2**).* On November 14, 2018, ICE decided to continue his detention. Ex. 1-B. After receiving that decision, Mr. ████ wrote to ICE and asked for a new review. Ex. 1 ¶ 12. It appears no

new review occurred.  Instead, when Mr. ███ inquired about his request for a new review, an

ICE officer merely restated to him the results of the review that had been conducted early.  Ex. 1-

C.  Although ICE contends that it never received "any documentation in support of [Mr.

███'s] release," Dkt. 318-1 ¶ 17 (Lyons affidavit), that is incorrect.  Mr. ███ wrote to

ICE on multiple occasions.  Ex. 1 ¶¶ 12, 13, 15, 17.

>      Everything about Mr. ███'s subsequent review was contrary to the regulations:

- *ICE did not send Mr. ███ a notice of his 180-day review as required by Section 241.4(k)(2)(ii) (**violation 3**)*.  Notwithstanding that, Mr. ███ wrote to ICE both before and after that review.  Ex. 1 ¶¶ 15, 17.

- *ICE did not interview Mr. ███ in connection with his 180-day review, in violation of Section 241.4(i)(3) (**violation 4**)*.  Ex. 1 ¶ 19.

- *Mr. ███'s review occurred late (**violation 5**)*.  The review should have occurred conducted around February 14, 2019, three months after his 90-day review.  *See* 8 C.F.R. § 241.4(k)(2)(ii).  It did not occur until March 5.  ICE has not explained why it was not "practicable" for the review to occur earlier, see *id.*, particularly considering that no interview occurred and ICE apparently did not review any of Mr. ███'s letters.  Lyons Decl. ¶¶ 17-18 (Dkt. 318-1).

ICE conducted an additional review on June 6, 2019.  Ex. 1-E.  Mr. ███ received no notice

of that review and was not interviewed in connection with it.  Ex. 1 ¶¶ 18-19.[13]

>      Mr. ███ was prejudiced by these violations.  *See* Ex. 1; Ex. 4.  So too has his wife of

over two decades and the step-grandson for whom he cares daily—helping him with homework,

and attending all of his football, soccer, and basketball games.  Ex. 1 ¶ 4-5; Ex. 4 ¶¶ 3, 11-15.

Mr. ███ repeatedly attempted to tell ICE about his equities, but there is no indication that

ICE ever considered this information.  *See* Ex. 1 ¶¶ 12, 13, 15, 17.

---

[13] After Petitioners pointed to ICE's pervasive failures to provide the interviews required by
Section 241.4(i)(3), *see* Aug. 2, 2019 Tr. at 61 (Dkt. 330), ICE informed Mr. ███ of an
interview to be conducted on August 28, 2019.  *See* Ex. 3.

**B.** ███████████████

*Ms. ██████ did not receive the 30-day notice required by Section 241.4(h)(2)* *(violation 1)*.  She was detained by ICE in January 2019 and has had a final order of removal since May 11, 2019.  On June 3, 2019, she received a Notice to Alien of File Custody Review along with other paperwork.  Ex. 5; Ex. 6 ¶ 11.  The Notice stated that she could submit documents in support of her release before August 19, 2019.  Ex. 5.

*ICE then conducted the review early, before the deadline to submit documents (violation 2)*.  On Friday, August 2, 2019, just prior to the hearing in this case, counsel for Petitioners pointed out to counsel for the Respondents that it appeared that August 9—not August 19—was the 90th day of Ms. ██████'s post-order custody.  On Monday, August 5, 2019, ICE abruptly conducted a custody review and decided to continue Ms. ██████s detention.  *See* Ex. 7; *see also* Ex. 6 ¶ 12.

Ms. ██████ was prejudiced by these violations.  *See* Ex. 6.  She has been with her wife since 2015.  *Id.* ¶ 6.  After suffering years of violence in Honduras on account of her sexual orientation, Ms. ██████ could have explained to ICE that, if released, she will work to build a life with her wife—bringing her son from Honduras, having another child, and buying a house. *Id.* ¶¶ 4, 6.

**C.** ███████████████

*Mr. ████ did not receive the 30-day notice required by Section 241.4(h)(2) (violation 1)*.  Mr. ████ was detained on December 14, 2018.  On December 15, 2018, likely along with other paperwork, he received a Notice to Alien of File Custody Review informing him that he could submit documentation in support of his release before March 14, 2019.  Ex. 8; Ex. 25.  His 90-day review was conducted on March 14, 2019.

ICE timely conducted his 180-day review around the 181st day of detention.  However, ICE did not send Mr. ███ a notice of his 180-day review as required by Section 241.4(k)(2)(ii) *(violation 2)*, and ICE did not interview Mr. ███ in connection with his 180-day review, in violation of Section 241.4(i)(3) *(violation 3)*.  Ex. 25.[14]

Mr. ███ was prejudiced by these violations.  *See* Ex. 25.  Given adequate 180-day review procedures, he likely would have sought to demonstrate to ICE that he has strong ties to the community, and has taken strides while detained to rehabilitate himself.  *Id.* ¶¶ 3, 7.

**D.**  ███████

*Mr. ███ did not receive the 30-day notice required by Section 241.4(h)(2) (violation 1)*. Mr. ███ was detained on October 24, 2018.  His order of removal became final on December 12, 2018.  That week, on December 18, 2018, he received a Notice to Alien of File Custody Review.  Ex. 9.  The Notice allowed him to submit documents before March 12, 2019.  *Id.*

*ICE then conducted the review early, before his deadline to submit documents (violation 2)*.  On March 8, 2019, ICE decided to continue his detention.  Ex. 10.

*ICE still has not conducted a 180-day custody review (violation 3)*.  Mr. ███ has not received a subsequent custody review since his 90-day review.  Mr. ███'s second custody review should ordinarily have occurred by June 8, 2019, three months later after his 90-day review, and he should have received notice of it on approximately May 9.  *See* 8 C.F.R. § 241.4(k)(2)(ii).  Instead, on May 24, Mr. ███ was found ineligible for a custody review in a notice stating that his removal was "ready to be executed."  Ex. 11.  He was not removed.  On

---

[14] On August 15, 2019, ICE provided Mr. ███ with a notice of an interview on September 9. Ex. 27.

June 25, ICE again decided not to review Mr. ███'s custody because his removal was "ready to be executed."  Ex. 12.   Mr. ███ is still in detention today, more than seven weeks later.

While ICE can "suspend or postpone the custody review process" if a "detainee's prompt removal is practicable and proper, or for other good cause," ICE must exercise "[r]easonable care … to ensure that the alien's case is reviewed once the reason for delay is remedied or if the alien is not removed from the United States *as anticipated at the time the review was suspended or postponed*."  8 C.F.R. § 241.4(k)(3).   When Mr. ███'s review was postponed on May 24, his removal was anticipated on June 5.  Lyons Decl. ¶ 28 (Dkt. 318-1).  But on June 5, he was not removed.  *Id.*  Although his removal had not occurred "as anticipated at the time the review was suspended or postponed," ICE did not schedule him for a custody review or issue a 30-day notice as required under § 241.4(k)(3).  Such a review would have occurred on approximately July 5.

On July 17, 2019, Mr. ███ was finally given a notice of custody review that informed him of an upcoming review around August 16, 2019.  Ex. 13.  To Petitioners' knowledge, it appears that review has not been conducted, *see* Dkt. 318-1 ¶ 35, and will not now be conducted. Instead, after Petitioners pointed to ICE's pervasive failures to provide the interviews required by Section 241.4(i)(3), *see* Aug. 2, 2019 Tr. at 61, ICE informed Mr. ███ of an interview to be conducted on August 28, 2019—his 309th day in detention.

Mr. ███ has been prejudiced by these violations.  Ex. 14 (███ Decl.).  He has spent nearly ten months away from his family, including a daughter who still asks if she can save dinner for him.  *Id.* ¶ 10.  Had a meaningful custody review occurred at any point during his detention, Mr. ███ could have explained that he is his daughter's primary caregiver, and could have detailed the challenges his wife has faced relying on friends and family to take care of the child while working two jobs.  *Id.* ¶¶ 3-5, 12.

**E.** ████████████████████

*Mr.* ███████ *did not receive the 30-day notice required by Section 241.4(h)(2) (**violation**

*1*).* Mr. ███████ was detained on March 8, 2019.  On March 26, 2019, he received a Notice to

Alien of File Custody Review, likely along with other paperwork.  Ex. 15.  The Notice stated

that he could submit documents in support of his release before June 6, 2019.  *Id.*

*ICE then conducted the review early, before his deadline to submit documents (**violation**

*2*).*  On June 4, 2019, ICE decided to continue his detention and served him with that decision.

Ex. 16.  When he received that decision, Mr. ███████'s wife had already collected approximately

80 pages of evidence in support of his release and provided it to an attorney for submission to

ICE.  Dkt. 327-1 (███████ Decl.) ¶¶ 6-7.  Although ICE originally contended that it had never

received "any documentation in support of [Mr. ███████'s] post order custody review," Dkt.

318-1 ¶ 21 (Lyons affidavit), that was incorrect.  Mr. ███████'s packet of information was

received by ICE on June 6, 2019.  Dkt. 327-2.

Mr. ███████ was prejudiced by these violations.  *See* Dkt. 327-1.  ICE's decision to

continue Mr. ███████'s detention before it had given him an opportunity to submit documents in

support of his release was shocking and devastating to his family.  *Id.* ¶ 9.  Mr. ███████ spent

two additional months in detention before ICE finally reviewed materials submitted on his

behalf.  During that time, his wife struggled to maintain and care for their children on their own,

while suffering from acute stress and post-traumatic stress symptoms.  *Id.* ¶¶ 13-16.

Following the August 2, 2019 hearing in this case, ICE released Mr. ███████ on August

6, 2019.  His Release Notification states that "ICE has determined that [he] may be released

while [his] removal is stayed by the court."  Ex. 17.  Although this Court ordered that ICE not

remove Mr. ███████ from the jurisdiction of the Boston Enforcement and Removal Operations

(Dkt. 307), ICE has ordered Mr. ███████ to go to ███████, where he and his wife live, and

not to leave that state without permission for more than 48 hours at a time.  Ex. 17.  Mr. ████

is on electronic monitoring.  Ex. 17.  He checked in with ICE in ████ as required on August

13, 2019, and his next check-in is on October 16, 2019.  Although Mr. ████ has been

released, he remains vulnerable to re-detention, and the claims regarding his unlawful detention

remain properly before this Court.  *See Ex Parte Endo*, 323 U.S. 283, 306 (1944).

> **F.**   ████████████

> *Mr. ████ did not receive the 30-day notice required by Section 241.4(h)(2)* (**violation**

**1**).  Mr. ████ was detained in February 2018 and received a final order of removal on

November 13, 2018.  On November 29, 2018, he received a Notice to Alien of File Custody

Review, along with other paperwork.  Ex. 18; *see also* Ex. 19.  The Notice stated that he could

submit documents in support of his release before February 11, 2019.  Ex. 18.

> *ICE then conducted the review early, a full two weeks before his deadline to submit*

*documents (**violation 2**)*, depriving his counsel of the opportunity to submit documents on his

behalf.  Ex. 25 ¶ 8.  On January 28, 2019, ICE decided to continue his detention.  Ex. 20.

> *Mr. ████ also received no notice of any 180-day review and never received a 180-day*

*review* (**violations 3**).  His 180-day custody review should ordinarily have been conducted

around April 28, 2019, three months after his 90-day review, 8 C.F.R. § 241.4(k)(2)(ii), and he

should have received a notice of that review on approximately March 28, 2019.  That did not

occur.  ICE apparently believes that this is lawful because it provided Mr. ████ with a notice,

pursuant to Section § 241.4(g), that he would not be receiving a custody review due to his failure

to comply with his requirement to aid in obtaining a travel document.  Ex. 19.  But as that notice

itself states, ICE first heard of any failure to cooperate in obtaining a travel document on May

21, 2019, *id.*, nearly one month after the date by which the 180-day custody review should

ordinarily have been be completed.  Moreover, ICE has not explained why it was not

"practicable" for the review to occur at any time before May 21, 2019.  *See* 8 U.S.C.

§ 241.4(k)(2)(ii), *see also* Dkt. 318-1 (Lyons Decl.).

Although Mr. ███████ was informed that ICE Boston conducted its own review as a

matter of discretion and decided not to release him, ICE provided Mr. █████ no notice of that

review and did not interview him as required by Section 241.4(i)(3).  Unsurprisingly, ICE's

description of that review fails to describe any of Mr. ██████'s positive equities other than his

membership in the *Calderon* class.  It is not clear when that review occurred, but it is plainly not

an adequate substitute for the 180-day review required by Section 241.4(k)(2)(ii).

Mr. ██████'s was prejudiced by these violations. Ex. 21 (██████ Decl.).  Had he

received meaningful review procedures, he would have demonstrated his acute need to be home

caring for his family.  *Id.* ¶ 19; Ex. 25 ¶ 8.  His detention has left his wife alone with the five

children that they are raising together—including his own six-year-old son and four of his wife's

children. Ex. 21 ¶¶ 7-9.  His wife's children are coping with the absence of the step-father that

they love dearly just two years after losing their biological father to suicide.  *Id.* ¶¶ 4, 12.  And

Mr. ██████'s son's biological mother lost custody of her child as a result of drug use.  *Id.* ¶ 8.

He is suffering without Mr. ██████ to care for him.  *Id.* ¶ 9.

**G.** ████████████

Mr.████ had been attending check-ins with ICE for decades under order of supervision

without incident when he was detained on October 29, 2018.  Ex. 22 (██████ Decl.) ¶ 11.

Detainees like Mr. ██████ whose orders of supervision are revoked are entitled to a notice of the

reasons for the revocation and an initial informal interview.  8 C.F.R. § 241.4(l)(1).  If the

detainee is not released, "the HQPDU Director shall schedule the review process," which "will

commence with notification to the alien of a records review and scheduling of an interview."  *Id.*

§ 241.4(l)(3).  "That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts a determined warrant revocation and further denial of release."  *Id*.  The review "will ordinarily be expected to occur within approximately three months after release is revoked."  *Id*.  These procedures were not followed.

- *Mr. ▮▮▮'s custody was not reviewed by the HQPDU Director after his order of supervision was revoked (**violation 1**)*.  Mr. ▮▮▮'s three-month custody review was not conducted by the HQPDU Director, but by Boston's Acting Field Office Director, Todd Lyons.  Ex. 23.

- *Mr. ▮▮▮ was not interviewed in connection with his custody review (**violation 2**)*.  Mr. ▮▮▮ was not scheduled for and did not receive an interview in connection with his 90-day review.

- *The custody review did not evaluate the facts relevant to the warrant of revocation (**violation 3**)*.  There is no discussion in his 90-day custody decision of the decision to revoke his release.  Ex. 23.

*Mr. ▮▮▮'s 180-day review was conducted over 3 weeks late (**violation 4**)*.  After the initial three-month HQPDU review, Mr. ▮▮▮'s reviews should have been conducted thereafter "under the provisions of paragraphs (i), (j), and (k) of this section."  Paragraph (k) requires a subsequent review to be conducted by headquarters "ordinarily . . . at the expiration of the three-month period or as soon thereafter as practicable."  § 241.4(k)(2)(ii).  Mr. ▮▮▮'s first custody review occurred on February 4, 2019, but his second custody review was not until May 29, 2019.  Exs. 23, 24. This was over 3 weeks after the expiration of the three-month period.

*Mr. ▮▮▮ was not given notice of his 180-day review (**violation 5**)*.  Mr. ▮▮▮ was given no notice of his 180-day review whatsoever.  § 241.4(k)(2)(ii).  The government has contended that a sentence in detainee's 90-day review stating that jurisdiction will transfer to headquarters satisfies the notice requirement.  However, Mr. ▮▮▮ did not receive even that deficient notice.

Ex. 23 (█████'s 90-day decision).  *Nor was Mr.* █████ *interviewed in connection with his 180-day review (**violation 6**)*.[15]

Mr. █████ was prejudiced by these violations.  Ex. 22 (█████ Decl.).  If Mr. █████ had been given adequate review procedures, he could have explained that he has been a devoted father and worked nearly 80-hour weeks to support his children and to put his wife through nursing school.  *Id.* ¶¶ 8, 9, 17.  Since his absence, his wife has had to take on two jobs and send their children to a babysitter.  *Id.* ¶ 12.  Mr. █████ could also have explained that the criminal conviction the government points to as reason for his detention and removal arose out of a dispute with his ex-girlfriend more than a decade ago, and that he is a loving and caring husband and father.  *Id.* ¶¶ 7, 10.

## IV.   The Appropriate Remedy Is Release or, at a Minimum, an Individualized Bail Hearing for Affected Class Members.

Finally, Petitioners request that the Court order the release of the identified class members or, in the alternative, that they be provided with individualized bail hearings.  "[H]abeas corpus is, at its core, an equitable remedy."  *Schlup v. Delo*, 513 U.S. 298, 299 (1995).  "[H]istorically, 'common-law habeas corpus was, above all, an adaptable remedy' in which the 'court's role was most extensive in cases of pretrial and noncriminal detention.'"  *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 474 (D. Mass. 2010) (Wolf, J.) (quoting *Boumediene v. Bush*, 553 U.S. 723, 780 (2008)).  Here, the remedy of release would be well within this Court's equitable powers and would best protect class members from Respondents' continued POCR violations.  Just as in June 2018, "ICE has repeatedly demonstrated an inability to perform lawfully and to decide fairly whether detention is justified," June 11, 2018 Order at 58, and "it

---

[15] On August 14, 2019, Mr. █████ received notice of an interview to be conducted on August 28. Ex. 28.

would not be appropriate to allow ICE to decide again whether … detention should continue." *Id.* at 59.

Other courts have ordered release as a proper remedy for violations of POCR requirements.  *See, e.g.*, *Rombot*, 296 F. Supp. 3d at 388.  However, should the Court determine that categorical release is inappropriate, Petitioners request that Respondents be directed to promptly identify any detained class members whose detention remains necessary in light of the violations detailed above, and then defend those detention determinations at a bail hearing to be held by this Court.

## CONCLUSION

For these reasons, Petitioners respectfully request that the Court allow the motion, find that Respondents have continued to violate the procedural due process rights of detained class members, and order an appropriate remedy.

Respectfully submitted this 16th day of August, 2019.

*/s/ Shirley X. Li Cantin*

| | |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Michaela P. Sewall (BBO # 683182) |
| AMERICAN CIVIL LIBERTIES UNION | Shirley X. Li Cantin (BBO # 675377) |
| FOUNDATION OF MASSACHUSETTS, INC. | Jonathan A. Cox (BBO # 687810) |
| 211 Congress Street | Stephen Provazza (BBO # 691159) |
| Boston, MA 02110 | Colleen M. McCullough (BBO # 696455) |
| (617) 482-3170 | Matthew W. Costello (BBO # 696384) |
| | WILMER CUTLER PICKERING |
| Kathleen M. Gillespie (BBO # 661315) |   HALE AND DORR LLP |
| Attorney at Law | 60 State Street |
| 6 White Pine Lane | Boston, MA 02109 |
| Lexington, MA 02421 | Telephone: (617) 526-6000 |
| (339) 970-9283 | Facsimile: (617) 526-5000 |
| | kevin.prussia@wilmerhale.com |
| | michaela.sewall@wilmerhale.com |
| | shirley.cantin@wilmerhale.com |
| | stephen.provazza@wilmerhale.com |
| | colleen.mccullough@wilmerhale.com |
| | matthew.costello@wilmerhale.com |

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2019, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

*/s/ Shirley X. Li Cantin*
Shirley X. Li Cantin