**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KEVIN K. McALEENAN, *et al.*, <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW |

**<u>RESPONDENTS' SUR-REPLY IN RESPONSE TO PETITIONERS'</u>**
**<u>MOTION FOR ORDER TO SHOW CAUSE</u>**

**INTRODUCTION**

This Court should deny Petitioners' request for relief for the remaining detained individuals and reject Petitioners' continued attempts to micromanage the inner-workings of ICE Boston. At bottom, Petitioners' complaints regarding the 90-day post order custody review ("POCR") process are not related to the regulations themselves but rather their belief that they could implement them better. This is illustrated by the incompatibility of their interpretation of the regulations and with the reality of agency operations. ICE Boston's practice of providing a 90-day POCR notice as early as possible allows the alien the most amount of time to gather documents to submit on their behalf. On the other hand, Petitioners' interpretation of the regulations would require ICE to review documents, conduct a custody review, and render a decision within a 48 hour time period. Petitioners' interpretation of the phrase "on or about" in the 90-day POCR notice is likewise inflexible; they refuse to acknowledge that June 4, 2019 is "on or about" June 6, 2019. Notwithstanding, Respondents revised the 90-day template notices to provide aliens with concrete dates and information about where to submit documents and communicated to this Court that they would consider any further documentation submitted by the aliens remaining in custody. Despite this, none of the remaining aliens in custody have alleged that they have submitted any documents for review in support of their release since the Court's hearing on August 2, 2019.

ICE Boston also conducted timely 180-day reviews for each alien who remains in custody. For the detainees who were immediately eligible for a 180-day review, ICE Boston conducted that review with the timeframe contemplated by the regulation. For the remaining detainees, ICE had specific reasons, contemporaneous with their decision to suspend the review, why the detainees were not eligible to receive a review on or about their 180th day in custody. Those reasons are

consistent with the text of the regulation. ICE also regularly provides notice of the impending 180-day reviews in the POCR decision.

While there were a few procedural irregularities in connection with the 180-day review, none of these irregularities deprived the detainees of their due process right in accordance with *Zadvydas v. Davis,* 533 U.S. 678 (2001). As a result, Petitioners cannot establish that they are entitled to habeas relief. The cases cited by Petitioners do not support their proposition that *every* small procedural misstep of the agency entitles the alien to swift release absent a showing of prejudice. Nor should this Court presume prejudice where the remaining detainees fail to establish either that: (1) the procedural violation interfered with their constitutional right to be free from detention that is unrelated to the purpose of removal or; (2) that they likely would have been released if they had received the proper procedures. Therefore, in the narrow circumstances presented by Petitioners' motion, the proper remedy for *any* of the alleged violations is remand to the agency to comply with the required procedures.

# ARGUMENT

## I.     ICE Boston conducted proper 90-day POCRs.

### A. ICE Boston provides notice of 90-day POCRs at an appropriate time that complies with the regulations.

ICE Boston's practice of supplying the POCR notice as soon as possible and allowing the alien more than 30 days to submit documents on their behalf comports with the POCR regulations, due process and common sense. However, Petitioners complain that this notice is "too early" and faults ICE for the detainees' failure to read the notice. ECF No. 354 at 5 (arguing that a detainee may be "too shocked and confused to absorb the importance of a notice"). To remedy this, Petitioners argue that ICE Boston must either:  (1) provide the POCR notice 30 days before the

review; or (2) provide two notices, one at time of detention and one 30 days prior to the review. The regulations require neither.

If ICE Boston were required to give notice 30 days prior to the review, ICE Boston would have little to no time to review any documents submitted by the alien in support of their release. The regulations require that aliens receive approximately 30 days to submit evidence to ICE in support of their release. Under Petitioners' view, ICE Boston would be required to serve the POCR notice 30-31[1] days prior to completing the review. Because that notice triggers the 30-day time period the alien has to submit documents, ICE Boston would, at most, have only 1 day to review the documents and render a decision. Under Petitioners' interpretation, the review process would look like this:

1. January 1, 2019: notice of POCR served on alien.

2. January 31, 2019: deadline for alien to submit documents because regulation requires ICE Boston give the alien approximately 30 days to submit documents.

3. January 31, 2019 – February 1, 2019: deadline for ICE Boston to conduct a custody review, interview the alien if necessary, and render a decision, thereby providing ICE Boston 1-2 days to complete the entire review process.

This Court should refuse to adopt such an inflexible and illogical interpretation of the regulation. There are over 200 detainees in ICE Boston for whom ICE must coordinate custody reviews. Allowing ICE Boston a period of 1-2 days to review documents, prepare for and conduct an interview, if necessary, and prepare and render a decision on an alien's custody is not only impracticable, but deprives ICE Boston of the time it needs to make a considered custody decision.

---

[1] Given that Petitioners believe the words "on or about June 6, 2019" does not inform the alien that the review could occur on June 4, 2019, Respondents doubt that Petitioners would interpret the word "approximately" to provide any more flexibility. *See* ECF No. 305 at 20.

ICE Boston is also not required to provide two separate POCR notices to comply with the regulations. The regulations provide that ICE Boston must provide *one* notice providing the alien a minimum of 30 days to compile and submit written documentation in support of his/her release. 8 C.F.R. § 241.4(h)(2). Accordingly, any interpretation that requires ICE Boston to give two notices of an impending POCR is not contemplated by the plain language of the regulation. *See id.*

ICE Boston's current practice comports with the POCR regulations. While the regulations only require ICE Boston to give approximately 30-days' notice of a POCR, ICE Boston is currently providing *more* notice than the regulation requires. Giving the notice more than 30 days in advance of the review provides aliens with the maximum amount of time to gather and submit documents. Petitioners' proposed alternative practices are impractical given the reality of a functioning agency and are inconsistent with the regulation. Accordingly, this Court should reject their argument that ICE Boston is somehow depriving aliens of an adequate opportunity to prepare documents in support of their release by providing notice at the first opportunity to do so.

### B.  ICE Boston conducted timely 90-day POCRs.

Contrary to Petitioners' argument, ICE Boston conducted timely post order custody reviews that provided aliens with at least 30 days to submit documents and were completed prior to the alien's 90th day in custody as required by the regulation. As Respondents explained in their opposition to Petitioners' motion, read together, the regulations requires that: (1) ICE give the POCR notice no later than day 60 and; (2) ICE give the alien approximately 30 days to submit documents on his or her behalf. *See id.;* 8 C.F.R. § 241.4(h)(2); ECF No. 95 at 8 (describing the time period for review).

4

In each case where Petitioners allege a violation occurred, it is undisputed that ICE gave notice of the impending custody review well in advance of day 60 and provided each alien with more than 30 days to submit documents on his or her behalf. ECF No. 305 at 4-5; Ex. A. Therefore, ICE complied with its regulatory requirements and with this Court's June 11, 2018, order. *See generally* ECF No. 95; 8 C.F.R § 241.4. Petitioners do not address how ICE violated the regulation's requirement – to provide notice so the alien can submit information in writing in support of his release – when, in fact, ICE provided these aliens with well more than 30 days to submit information in support of their release. Petitioners' argument that conducting the review early makes the review less effective is unrelated to what the text of the regulations requires.

In fact, in each of the cases Petitioners raised, ICE provided the notice of POCR and conducted the POCR as soon as practicably possible. ECF No. 306-1 at Ex. A. ICE Boston provides the notice of the custody review in an expeditious fashion so that an "alien can have as much time as possible to obtain and provide documentation in support of his release." ECF No. 318, Ex. A, Declaration of Todd Lyons, at ¶ 6. This practice also facilitates notice and opportunity for an alien to be heard as soon as practicable after being detained because it informs the alien at an earlier point in time of the type of information to gather and submit in support of his/her release. *Id.* This in turn allows ICE to "review this documentation and potentially decide to release the alien in a more expeditious fashion." *Id*. Far from violating the POCR regulations, ICE Boston's general practice aligns with this Court's suggestion that ICE provide notice to the alien of the custody review promptly and to review an alien's custody as soon as possible, instead of waiting until right before the 90th day. *See* ECF No. 95 at 46.

The court's analysis in *Rombot v. Souza,* 296 F. Supp. 3d 383, 388 (D. Mass. 2017), like Petitioners' argument, fails to point to a specific provision in 8 C.F.R. § 241.4 that ICE violated

by conducting the alien's review six days prior to the "on or about" date in the POCR notice. *Id.* at 388 (stating generally that conducting the alien plaintiff's custody review prematurely violated 8 C.F.R. § 241.4). Further, in *Rombot,* the Court found that ICE had incorrectly applied the terms of § 241.13 — rather than § 241.4 — and by ICE's own admission violated *several* specific provisions of the POCR regulations including failing to conduct an informal interview upon revocation of release pursuant to § 241.4(l)(1). *See id.* at 387. Because the court found that there had been several specific violations of the regulations, it determined the proper remedy was release. *See id.* at 388. However, contrary to Petitioners' suggestion, the court did not determine that release is the proper remedy for even the smallest procedural errors. *See id.*

### C. Petitioners fail to show that the remaining aliens in detention suffered prejudice.

Petitioners' allegation that the notice is misleading and therefore causes prejudice overstates the issue. The POCR notice informs aliens that their review will occur "on or about" a certain date. The aliens at issue received reviews one, two, four, six, and fourteen days prior to that "on or about" date. ECF No. 354 at 6. It is simply not plausible to conclude that one, two, four, and six days prior to the date certain are not "on or about" that date.

To the extent that fourteen days is beyond what would ordinarily be considered "on or about" a certain date — which Respondents do not concede — Petitioners must show that *this part* of the notice *actually* misled them such that they were *actually* deprived of the opportunity to submit documents and have ICE review them. Merely stating that an alien was deprived of the opportunity to submit documentary evidence is insufficient where the alien, despite *still* having an opportunity to submit documents, has failed to do so. *See* ECF No. 355, Ex. 1 at ¶ 21 (stating that he *could have* submitted documentary evidence in support of his release but did not do so); Ex. 6 at ¶ 13. Indeed, even in the cases cited by Petitioners, the result would have been different if the

alien who received misleading information about his ability to appeal, never actually tried to appeal his removal order. *See Vlaicu v. U.S. I.N.S.,* 998 F.2d 758 (9th Cir. 1993); *Martinez v. Sessions,* 873 F.3d 655 (9th Cir. 2017).

To the extent Petitioners argue that these aliens did not submit documents because they believed it too late once they received their decision, that too is insufficient to show prejudice. An alien's attorney can always contact ICE to request additional time to submit documentation and an individual alien can always ask their deportation officer for more time. *See* 8 C.F.R. § 241.4(h)(2). Moreover, it is ICE Boston's practice to review all documents submitted in support of an aliens' release regardless of when they are submitted. ECF No. 318-1 at ¶ 7. A detainee could also file an application for a stay of removal via Form I-246. A statement that the alien "would have" submitted documents "but for" ICE's actions is unpersuasive where the alien still failed to submit documents despite the remaining opportunity to do so.[2] Simply put, aliens and their attorneys cannot sit on their hands and then claim prejudice as a result. Because ICE did not deprive the detainees of the opportunity to submit documents, they cannot establish they have been misled or suffered prejudice. Therefore, they are not entitled to relief from this Court.

### D. ICE Boston's revisions to the template POCR notice obviates the need for prospective relief with regard to these issues.

Finally, this Court need not order any prospective relief in connection to this allegation because ICE Boston revised their template POCR notice to ensure aliens are informed about their opportunity to submit documents in support of their release. *See* Notice to Alien of File Custody Review, attached hereto as Exhibit A. Specifically, the notice now informs aliens that they must

---

[2] Indeed, at least one alien did take advantage of one of these avenues and received further consideration of his custody status. ECF No. 355, Ex. 1 (explaining that the alien requested release pursuant to a "Detainee Request to ICE" form and received a prompt response one day later).

submit documents in support of their release "prior to" a certain date that will always be at least 30 days after they receive the notice. *Id.* It also directs aliens where to send their documents as part of ICE Boston's effort to ensure that the proper ICE unit receives the documents needed to conduct a thorough review. *Id.* ICE Boston's revisions to the POCR notice eliminates any vague language in the prior notice that Petitioners allege is misleading. Accordingly, this Court need not order prospective relief regarding these allegations.

## II.     ICE Boston regularly conducts proper 180-day reviews.

### A. ICE Boston regularly provides notice to aliens of their impending 180-day POCRs.

As with the 90-day POCR, the 180-day POCR states "[t]he Service will provide the alien with approximately 30 days-notice of that review." ICE Boston provides this notice when an alien is informed that his detention status will continue. *See, e.g.,* ECF No. 355, Ex. 10. The notice states: "[if]f you have not been removed or released from custody by [day 180], jurisdiction of the custody decision in your case will be transferred to the Headquarters Removal and International Operations Unit (HQ RIO) . . .  HQ RIO will make a final determination regarding your custody." *Id.*

This notice is sufficient because it informs the alien that ICE will review the alien's custody status again and it is provides more advance notice of the review than as required by the regulations. *See* 8 C.F.R. § 241.4(k)(2)(ii). Contrary to Petitioners' argument, the regulation does not require that the notice must be in its own separate document. *See id.;* ECF No. 354 at 11. Further, Petitioners conflate the requirements of the 180-day and 90-day notice requirements and ignore key distinctions between the respective regulations. While the 90-day notice provision requires the "written notice to the detainee," the 180-day notice does not. 8 C.F.R. § 241.4(h)(2),

(k)(2)(ii). Therefore, the regulation contemplates the notice of the 180-day review be less formal and ICE Boston's practice of providing the notice *in writing* is sufficient.

Notwithstanding these arguments, and without conceding that the original notice was insufficient, ICE Boston has revised the 180-day notice it ordinarily includes in the POCR decision. The template notice now provides:

> If you have not been released or removed from the United States by Day 180, jurisdiction of the custody decision in your case will be transferred to the Headquarters Post Order Review Unit (HQ POCRU), Potomac Center North, 500 12th Street SW, Washington, DC 20536. HQ POCRU will *thereafter conduct a custody review* and will make a determination regarding your custody.

This more specific notice certainly comports with the POCR regulations' 180-day notice requirement. *See* 8 C.F.R. § 241.4(k)(2)(ii).

## B. ICE HQ completed timely 180-day POCRs.

Once again, Petitioners' interpretation fails to recognize regulations are instructions for agency operators and as such, must not be interpreted in a way that would make the regulations impossible to follow. The regulations provide that if "the alien is not removed within three months" of the 90-day review, then "authority over the custody determination transfers" to ICE Headquarters. 8 C.F.R. § 241.4(k)(2)(ii). "The initial [ICE HQ] review will *ordinarily* be conducted *at the expiration of* the three-month period after the 90-day review *or as soon thereafter as practicable.*" *Id.* (emphasis added). The comments in the federal register explain that this means that ICE HQ "will ordinarily *commence* a custody review *within 30 days*" of the transfer of custody determination authority. 65 Fed. Reg. 246 at 80291-92.

Despite this language, Petitioners argue that this provision requires ICE to conduct the 180-day review *on day 180* or else provide an explanation why it was "late." ECF No. 254 at 12. This argument ignores the language in the federal register that states that the review will *begin* within the 30 days after day 180. *See* 65 Fed. Reg. 246 at 80291-92. Therefore, far from requiring that

the review be completed by day 180, the regulation only suggests that it will *begin* within the 30 days after day 180. *See id.* Of the detainees who Respondents agree were entitled to a 180-day review, Petitioners do not allege that ICE failed to conduct their reviews within the 30 days after day 180. Accordingly, ICE complied with the regulations.

### III.    Petitioners are required to show prejudice and have failed to do so.

Courts have consistently held that a Plaintiff is only entitled to relief for a due process violation if he or she can establish prejudice resulting from that violation. *Skilling v. United States,* 561 U.S. 358, 380-81 (2010); *United States v. Deleon,* 444 F.3d 41, 56-57 (1st Cir. 2006) (holding that a "showing of prejudice" is a "threshold requirement" for establishing a valid due process claim);*Molina v. Whitaker,* 910 F.3d 1056, 1060 (8th Cir. 2018);   As explained *supra*, because ICE did not deprive the detainees of the opportunity to submit documents, Petitioners cannot establish they have been misled or suffered prejudice by ICE's alleged conduct. Therefore, they are not entitled to relief from this Court.

Additionally, Petitioners' analysis falls well short of what is required to dispense with a showing of prejudice pursuant to the out-of-circuit cases cited. *See* ECF No. 354 at 13. First, the cases cited by Petitioners are distinguishable because they analyzed whether *specific* provisions of a regulation (§ 242.2(g) and § 1240.10(a)(2)-(3)) were promulgated to protect constitutional rights. *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir. 1993); *Leslie v. Attorney General,* 611 F.3d 171, 178 (3d Cir. 2010).[3] However, while it is true that § 241.4 as a whole is not merely a housekeeping

---

[3] Indeed, in *Leslie,* the only case to actually bypass a finding of prejudice, the immigration judge failed to advise the respondent of the availability of free legal services located in the district where the removal hearing was held *and* ascertain that the respondent had received a list of such programs pursuant to 8 C.F.R. § 1240.10(a)(2)-(3). *Leslie,* 611 F.3d at 171. The court held that this regulation was directly derivative of an alien's constitutional right to be represented by counsel at their own expense. *Id.* The court conducted a lengthy factual and legal analysis focusing on the specific alien's need for counsel due to the particular seriousness of the allegations in his notice to appear

regulation, not every provision of the regulations was specifically promulgated to protect a constitutional right such that a violation does not require a showing of prejudice. *Leslie,* 611 F.3d at 179 (stating that "an administrative agency is not a slave of its rules"). Even if this Court determined the custody reviews themselves are derivative of the constitutional rights emanating from *Zadvydas v. Davis,* 553 U.S. 678 (2001), it does not follow that *every* procedure in § 241.4 is so closely connected to, and derivative of, the constitutional right at issue in *Zadvydas* so as to excuse a showing of prejudice. To do so is inconsistent with the analysis in *Leslie* and allows Petitioners to bypass a showing of prejudice even where ICE violates the provision requiring that ICE HQ conduct the custody review instead of local ICE[4] or where a copy of employment authorization isn't forwarded to ICE HQ. *See Leslie,* 611 F.3d at 181-82; 8 C.F.R. § 241.4(c)(2), (d)(2).

Second, even if the custody reviews themselves are derivative of the constitutional right at issue in *Zadvydas,* the specific regulations ICE allegedly violated and the *means* by which ICE allegedly violated them are too attenuated from that constitutional right to bypass the need for a finding of prejudice under *Leslie.* The exact date an alien must receive notice of the 90-day review, the "early" custody reviews, the language of the 180-day review notice, and a reasonable "delay" in the 180 day review are not so closely connected to the constitutional right at issue in *Zadvydas* — to be free from indefinite detention. *Zadvydas,* 533 U.S. at 697. Likewise, any failure to conduct the 180-day interview, where the 180-day review was still ultimately completed, is not directly related to preventing indefinite detention. This is especially true where ICE faced no true

---

and the close connection between the specific regulation and ability to obtain counsel. *Id.* at 181-82.

[4] Petitioners do in fact allege that this occurred in a detainee's case and that the remedy should be release. ECF No. 354 at 23.

impediment in securing travel documents for the removal of certain aliens.. *See* 65 Fed. Reg. 246 at 80291-92 ("The ability to secure a travel document by itself supports a decision to continue detention pending removal of the alien and obviates the need for further custody review because it means that the alien can be deported promptly. Custody reviews may be pretermitted in the case of an alien for whom travel documents are available."). To the extent this Court finds *Leslie* and *Waldron* persuasive, it should decline to apply their reasoning here where Petitioners have failed to establish the specific regulatory provisions at issue were necessary to protect the detainee's constitutional right to be free from indefinite detention.

Petitioners also ask this Court to presume prejudice because they claim "ICE's errors deprived noncitizens of the ability to participate in the POCR process entirely." ECF NO. 254 at 14. Even if that were true — which for the reasons stated *supra* Respondents do not concede — Petitioners clearly confuse the definition of prejudice. Prejudice requires a showing that the additional process would likely result in a different outcome. *Franco-Ardon v. Barr,* 922 F.3d 23, 25 (1st Cir. 2019) (holding that the alien failed to show the requisite prejudice "such as by demonstrating a likelihood of success with respect to his original petition for review had it not been waived"); *Molina,* 910 F.3d at 1050 (holding there was no due process violation where alien failed to articulate how her proposed social groups would have changed the outcome of the proceeding); *see also Skilling,* 561 US. at 381 ("A presumption of prejudice, our decisions indicate, attends only the extreme cases.") Here, to show prejudice, Petitioners would have to show that ICE would have likely decided to release them had ICE not violated the regulations as alleged. *See id.* However, even assuming that ICE violated the regulations as alleged by Petitioners, Petitioners do not attempt to show ICE would have likely decided to release them. ICE had already, pursuant to this Court's orders, conducted a review of the equities in each alien's case and determined that

they did not outweigh ICE's ability to remove them and their criminal history. *See generally,* ECF No. 318-1. As such, Petitioners cannot show the requisite prejudice to obtain relief.

The other prejudice Petitioners allege is not prejudice at all but rather a consequence of detention itself. While it is undoubtedly true that people dislike being separated from loved ones, that separation would have to be *because of,* rather than *in spite of,* the alleged violation. None of the Petitioners can demonstrate they would have been released, and therefore not have suffered this harm, absent the alleged violations. Contrary to Petitioners' assertions, Petitioners' equities in the United States are not the decisive factor or even most relevant in conducting a POCR — the availability of a travel document is. 65 Fed. Reg. 246 at 80291-92.

**IV.   ICE has not violated the POCR regulations as to any of the individual aliens.**

   **A.** ███████████████████

**Alleged Violations 1 & 2:** ICE Boston provided timely notice to Mr. ██████ of his impending POCR more than 30 days in advance of his review so that Mr. ████ o had more than 30 days to submit documents on in support of his release. *See supra* at 2-6. ICE Boston timely conducted Mr. ████████ 90-day custody review on November 14, 2018, which was "on or about" November 20, 2018 as explained in his POCR notice. ECF No. 355, Ex.1-A, 1-B.

**Alleged Violation 3, 4, and 5:** Mr. ██████ received more than the requisite 30-day notice of his 180-day custody review in his decision to continue detention letter. ECF No. 354, Ex. 1-B (providing that ICE HQ "will make a final determination regarding your custody" if he is not removed three months from the date of the letter). This notice is consistent with the regulations. *See supra* at 8-10. While ICE did not interview Mr. ██████ in connection with his 180-day review pursuant to § 241.4(i)(3), he did not suffer prejudice as a result. *See supra* at 10-13. ICE conducted

Mr. ▮▮▮▮ review as soon as practicable well within thirty days after the expiration of 180 days which is consistent with the regulation's text and federal register comments. *See supra* at 8-10.

**Alleged Prejudice:** The alleged harm Mr. ▮▮▮▮ and his family experience is in spite of, rather than because of, any alleged violation. Mr. ▮▮▮▮ cannot establish that ICE likely would have released him but for these alleged violations. *See supra* at 10-13. Additionally, contrary to Petitioners' statement and own exhibit, ICE clearly did consider the information Mr. ▮▮▮▮ submitted in support of his release. ECF No. 355, Ex. 1-C. He received a response to his assertion that he is "not a danger" or "flight risk" one day after he submitted this information in writing to ICE. *Id.*

**B.** ▮▮▮▮▮▮▮▮▮

**Alleged Violation 1 & 2:** ICE Boston provided timely notice to Ms. ▮▮▮▮ of her impending POCR more than 30 days in advance of her review so that she had more than 30 days to submit documents on in support of her release. *See supra* at 2-6; ECF No. 355 at Ex. 5, 6. ICE Boston then conducted that review on August 2, 2019, which was "on or about" August 19, 2019. *See supra* at 2-6. *Id.* at Ex. 5, 7.

**Alleged Prejudice:** The alleged harm Ms. ▮▮▮▮ suffers from being in detention is merely a consequence of her detention — not of any alleged violation. She has not demonstrated that she submitted any documents or information in support of her release even though she has had ample opportunity to do so even since receiving her POCR decision. *See supra* at 10-13.

**C.** ▮▮▮▮▮▮▮

**Alleged Violation 1:** ICE Boston provided timely notice to Mr. ▮▮▮▮ of his impending POCR more than 30 days in advance of his review so that he had more than 30 days to submit documents on in support of his release. *See supra* at 2-6; ECF No. 355 at Ex. 8. In fact, Mr. ▮▮▮▮

did submit supporting documents on his behalf (ECF No. 355 at Ex. 25) and ICE informs DOJ that it reviewed them in connection with his 90-day review. His attorney does not allege otherwise.  .

**Alleged Violation 2 & 3:** ICE provided Mr. ▇ of his impending 180-day review in his POCR decision letter. Decision to Continue Detention of Elton ▇ attached hereto as Exhibit B. ICE did not interview Mr. ▇ in connection with his 180-day review.

**Alleged Prejudice:** Mr. ▇ was not deprived of the opportunity to submit documents in support of his release. Indeed, Mr. ▇ attorney states that he did submit documents and does not allege that ICE failed to review them. ECF No. 355 at Ex. 25. Therefore, he cannot establish prejudice. Mr. ▇ fails to explain how an interview would have changed the outcome of his detention status; therefore, he fails to establish prejudice as a result of ICE's failure to interview him. *See supra* 10-13.

**D.** ▇

**Alleged Violation 1& 2:** ICE provided timely notice to Mr. ▇ of his impending POCR more than 30 days in advance of his review so that he had more than 30 days to submit documents on in support of his release. *See supra* at 2-6; ECF No. 355 at Ex. 9. ICE Boston then conducted that review on March 8, 2019, which was "on or about" March 12, 2019. *Id.* at Ex. 10.

**Alleged Violation 3:** As Respondents explained in its response to Petitioners' motion, Mr. ▇ 180-day review would have ordinarily occurred on approximately July 8, 2019, three months after his 90-day POCR. However, ICE Boston lawfully suspended his review on separate occasions because ICE anticipated his removal in the near future. ECF No. at 318-1 ¶ 25, 26; 8 C.F.R. § 241.4(g)(4) ("The Service will not conduct a custody review under these procedures when the Service notifies the alien that it is ready to execute an order of removal."). ICE Boston served Mr. ▇ with the required notices of his ineligibility for a custody review on May 24, 2019, and

June 25, 2019, in anticipation of removal which was scheduled for early June and then in mid-July. ECF No. 318-1 at ¶ 27, 30. However, on July 9, 2019, ICE Boston was forced to cancel Mr. ███ pending removal in order to ensure it had provided the newly ordered reporting and documents prior to removal. *See id.* at ¶ 33. After it ensured compliance with the Court's orders, ICE Boston served Mr. ███ with a POCR notice on July 17, 2019, explaining that he would have another custody review unless he was rescheduled for imminent removal. *Id.* at ¶ 34. However, two days later, on July, 19, 2019, ICE scheduled Mr. ███ removal for August 3, 2019, and therefore was not required to conduct the review, ***which Petitioners' argument ignores and fails to address***. *Id.* at ¶ 35; 8 C.F.R. § 241.4(g)(4). Before ICE could serve the required notice that Mr. ███ review would not be conducted due to his imminent removal, this Court stayed Mr. ███ removal. *Id.* As a result, ICE HQ conducted Mr. ███ records review pursuant to § 241.4(i)(2) and scheduled Mr. ███ for an interview because he has not been recommended for release pursuant to § 241.4(i)(3). Notice to Alien of Interview for Review of Custody Status, attached hereto as Exhibit C. His interview will be conducted as soon as possible because he has waived the 30-day time period ordinarily provided prior to such an interview. *Id.*

**Alleged Prejudice:** Mr. ███ fails to establish prejudice because the harm he suffers is in spite of rather than because of these alleged violations. *See supra* 10-13. ICE informs DOJ that to date, he has not submitted any documents or information in support of his release and even if he did, he fails to establish that would likely result in his release as required for a showing of prejudice

**E.** ███████████

As a threshold matter, Mr. ███ is no longer a class member because he has moved outside of ICE Boston's Area of Responsibility ("AOR"). ECF No. 253 (providing that, to be a class member, an alien must be "within the jurisdiction of Boston Immigration and Customs

Enforcement – Enforcement and Removal Operations ("ICE-ERO"). ICE released Mr. ██████ on an order of supervision after it reviewed the documents he submitted in support of his release. Accordingly, any claim that ICE violated the POCR regulations as to Mr. ██████ is moot especially since the only remedy Petitioners seek is release. Mr. ██████ *requested* that his order of supervision be transferred to Pittsburgh ERO because that is the ERO with jurisdiction over West Virginia, where he lives with his wife. Petitioners' accusation that Respondents have violated the Court's order by granting Mr. ██████ request that his order of supervision be transferred out of the Boston AOR is disingenuous especially given that Mr. ██████ requested his case be transferred. ECF No. 354 at 20.

**Alleged Violation 1 & 2:** ICE provided timely notice to Mr. ██████ of his impending POCR more than 30 days in advance of his review so that he had more than 30 days to submit documents on in support of his release. *See supra* at 2-6; ECF No. 355 at Ex. 15. ICE Boston then conducted that review on June 4, 2019, which was "on or about" June 6, 2019. *Id.* at Ex. 10.

**Alleged Prejudice:** Mr. ██████ was not prejudiced by these alleged violations. Although his counsel originally submitted the documents in support of his release to the wrong unit of ICE Boston, ICE nonetheless reviewed these documents pursuant to its ordinary practice and determined to release Mr. ██████ August 2, 2019 Hr'g. Tr. at 77:1-4; ECF Nos. 318-1, 342.

**F.** ████████████████████

**Alleged Violation 1&2:** ICE provided timely notice to Mr. ██████ of his impending POCR more than 30 days in advance of his review so that he had more than 30 days to submit documents on in support of his release. *See supra* at 2-6; ECF No. 355 at Ex. 18. ICE Boston then conducted that review on January 28, 2019, which was "on or about" February 11, 2019. *Id.* at Ex. 20.

**Alleged violation 3:** While 90 days after Mr. ▮▮▮▮ 90-day review was on April 28, 2019, ICE HQ was not even required to "***commence*** a custody review within 30 days." 65 Fed. Reg. 246 at 80291-92.While awaiting review, ICE learned that Mr. ▮▮▮▮ was hindering his removal by refusing to authorize the issuance of a travel document for his return to Brazil. ECF No. 355 at Ex. 19. As a matter of discretion, and out of an abundance of caution, ICE Boston conducted a custody review anyway. *Id.* Further, Mr. ▮▮▮▮ removal has been stayed by this Court since February 11, 2019 due to his pending habeas petition which this Court has not yet ruled on. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This provides additional good cause for ICE to suspend custody reviews because ICE would have been able to remove Mr. ▮▮▮▮ but for several actions he has taken to prevent his removal. 8 C.F.R. § 241.4(g)(5)(i) ("Release will be denied and the alien may remain in detention if the alien . . . conspires or acts to prevent the alien's removal.").

**Alleged Prejudice:** Mr. ▮▮▮▮ likewise fails to establish prejudice because the harm he suffers is in spite of rather than because of these alleged violations. To date, he fails to allege he has submitted any documents. ECF No. 355, Ex. 25. Further, USCIS recently denied his Form I-212 application, making him permanently ineligible for a provisional unlawful presence waiver, unless the decision is reversed on appeal, and invalidating any claim he had to remain in the United States to pursue the provisional waiver. *See* USCIS Decision, attached hereto as Ex. D.

G. ▮▮▮▮▮▮

**Alleged Violation 1, 2, & 3:** Although ICE Boston, rather than ICE HQ, conducted Mr. ▮▮▮▮ three-month custody review after revocation of his release, Petitioners concede that Mr. ▮▮▮▮ *still received a timely review.* ECF No. 354 at 23. While Mr. ▮▮▮▮ was not interviewed in connection with his 90-day custody review pursuant to § 241.4(l)(3), ICE Boston issued a timely

custody decision. Contrary to Petitioners' assertion, this decision aligned with the POCR regulations. The regulations provide that the custody review will include "an evaluation of *any* contested facts." 8 C.F.R. § 241.4(l)(3). Therefore, if there are no contested facts, there cannot be a discussion of them and how their "determination warrant revocation and further denial of release." *Id.*

**Alleged Violation 4, 5, and 6:** As a result of Mr. ███ unique procedural history, including a district court habeas case that was appealed to the First Circuit and then remanded, ICE did not provide him notice of his 180-day review. *See* ECF No. 318-1 at ¶¶ 48-58 (describing his complicated detention history). However, ICE conducted that custody review within the 30 days after the expiration of the 180th day as allowed by the regulations. ECF No. 355 at Ex. 24.

**Alleged Prejudice:** Mr. ███ likewise fails to establish prejudice because the harm he suffers is in spite of rather than because of these alleged violations. *See supra* at 10-13. Mr. ███ already challenged his detention in his habeas case with Judge Young. ECF No. 318-1 at ¶ 58. Ultimately, Judge Young dismissed his repeated requests for a stay of removal and release from detention based his status as a Calderon class member. *See id.; see also,* ███████████ ███████████████████████████████████ This Court should refuse to disturb Judge Young's order allowing Mr. ███ to be removed from the United States.

## V. The remedy for any violation of the POCR regulations as alleged by Petitioners is the benefit of the regulations.

As illustrated below, ICE has substantially complied with the POCR regulations with regard to each alien currently before the Court. Should the Court determine that ICE violated the POCR regulations, any remedy is the benefit of the procedures — not automatic release.

Respondents reiterate their argument that release is not an appropriate remedy for a violation of the POCR regulations unless the alien can show that they are not likely to be removed

in the reasonably foreseeable future. The right at issue in *Zadvydas* and the right the POCR regulations were designed to protect is not the right to remain in the United States or even the right to await removal with U.S. citizen family members. Rather, it is the right to be free from indefinite detention that is unrelated to the purpose of removal. *Zadvydas,* 533 U.S. at 697. The Supreme Court held that the POCR regulations were not procedurally sufficient to protect this constitutional interest. *Id.* at 696. The Court solved the constitutional inadequacy of the POCR regulations and 8 U.S.C. § 1231(a)(6) by interpreting § 1231(a)(6) to require release if there is no significant likelihood of removal in the reasonably foreseeable future ("SLRRFF"). *Id.* at 696 ("[W]e believe that an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, *irrespective of the procedures used,* c.f. post, at 18-21 (Kennedy, J., dissenting), the Constitution permits detention that is indefinite and potentially permanent."). Later, the Court in *Clark v. Martinez,* 543 U.S. 371, 382 (2005) clarified that the § 1231(a)(6)'s constitutional limits could not be re-evaluated based on the circumstances of the individual case. The Court reasoned that to do so, would render the "statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case." *Id.*

This Court cannot, consistent with *Clark,* limit the authority in § 1231(a)(6) by ordering release for *every* violation of the POCR regulations. Assuming that the Supreme Court's analysis in *Zadvydas* required both: (1) compliance with the POCR regulations and; (2) SLRRFF to ensure that the detention is related to the purpose of removal, the Court can only order release if the POCR violation deprived the alien of that specific constitutional right. *See Zadvydas* at 697; *see generally* ECF No. 95 (discussing how the POCR regulations relate to due process). In other words, if the POCR violation resulted in detention that is *unrelated* to the purpose of securing removal, then the POCR violation may cause a serious constitutional concern. However, the alleged POCR

20

violations here did not deprive any of these class members of the right to be free from indefinite detention that is unrelated to the purpose of removal. Despite any of the alleged violations, there is no allegation that ICE is unable to obtain a travel document for the detainees. Additionally, ICE made individualized flight risk and dangerousness determinations as to each of them prior to their 90th day in custody pursuant to their timely 90-day POCRs. Accordingly, their detention is related to the purpose of securing their removal and any violation of the POCR regulations was unrelated to the constitutional right at issue in *Zadvydas*. Therefore, the aliens' detention is lawful under § 1231(a)(6), and release is not warranted.

This approach is also consistent with the Supreme Court case of *United States v. Montalvo-Murillo,* 495 U.S. 711, 717 (1990) where the Court analyzed whether a failure to abide by the first appearance requirement in the Bail Reform Act "so subvert[ed] the procedural scheme of [the Act] as to invalidate the hearing." In holding that the deviation from the requirements did not invalidate the hearing, the Court stated that "[t]here is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must be some corollary punitive sanction for departures or omissions, even if negligent." *Id.* This was true even though the Court stated at the outset that "it is well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance." *Id.* at 723.

Alternatively, it is well established that the remedy for a violation of a regulation or statute, is the benefit that it provides. *Ford v. Wainwright,* 549 F.2d 981, 982-83 (5th Cir. 1977) (holding that the remedy for failure to conduct a parole hearing in accordance with the regulations is remand for a new hearing); *Sutherland v. McCall,* 709 F.2d 730, 732 (D.C. Cir. 1983) (providing that the remedy for failure to provide a parole revocation hearing within 90 days of arrest is a writ of

mandamus to compel compliance with the statute); *Northington v. United States Parole Comm'n,* 587 F.2d 2, 3 (6th Cir. 1978); *Whitlow v. Bellotti,* 508 F. Supp. 2d 108, 111 (D. Mass. 2007) (same). Failure to provide a parole revocation hearing pursuant to 18 U.S.C. § 4214(c) is constitutionally indistinguishable from violations of the POCR regulations. Like the POCR regulations, when an individual detained after an alleged parole violation, the detainee must receive a hearing within 90 days of arrest. And, similar to the POCR process, there may be facts and circumstances that, if presented, will secure the detainee's release. Both procedures provide an important process to ensure that detention is related to its purposes — whether it be for rehabilitation or removal. As such, this Court should adopt the analysis articulated in parole revocation habeas cases.

Courts in the parole context have also recognized that where the violation is undue delay of a proceeding, habeas relief is appropriate where the delay is both unreasonable and prejudicial. *See Sutherland,* 709 F. 2d at 732; *Northington,* 587 F.2d at 3. Therefore, applying this analysis would be consistent with this Court's decision in June 2018 regarding the POCR regulations where the Court found that release may be appropriate where ICE does not conduct timely POCRs and that failure caused alleged prejudice. ECF No. 95 at 10. However, this instant motion is "not a case in which the gravamen of the due process violation" is undue delay. *Ford,* 549 F.2d at 983. All class members received their 90-day and 180-day POCRs on time. *See supra* (explaining that ICE is allowed to conduct the 180-day review within 30 days after the 180th day). And even if this were a case concerning delay, for the reasons discussed *supra,* each alien has failed to establish that any delay in a review prejudicial, let alone unreasonable. *See supra* at 10-13. Accordingly,

should this Court find that relief is appropriate, it should limit the relief to a remand to the agency
to require proper POCRs.[5]

**VI.      This Court should adopt ICE's interpretation of the POCR regulations after
          further briefing by the parties.**

While the Court allowed Petitioners to raise new issues in their reply, Petitioners' reply far
exceeds that scope by requesting that this Court lift the stay on the part of their motion for a
preliminary injunction concerning the POCR regulations. *See* ECF No. 354 at 8 ("But it is
appropriate at this juncture for the Court to evaluate Respondents' interpretation on the merits and
reject it."). This Court should reject Petitioners' back door attempt to resurrect their motion for a
preliminary injunction and deprive Respondents of an adequate opportunity to respond to
Petitioners' new arguments in support of their interpretation.

Regardless, this Court should defer to ICE's interpretation of its regulations because it is
reasonable and comports with the purpose of the regulations — to provide reviews at regular
intervals to ensure that SLRRFF exists. *See Kisor v. Wilkie,* 139 S. Ct. 2400, 2415-16 (2019).
Petitioners' premise their interpretation of the POCR regulations on an erroneous view of the
purpose of the POCR regulations. The POCR regulations do not serve as a primary means to
review the equities of an alien's case. They are, above all else, concerned with ensuring that ICE
can secure a travel document for the alien's prompt removal. 65 Fed. Reg. 246 at 80293. This
purpose is severely diminished if a review is conducted as soon as possible before ICE can properly
assess its ability to secure travel documents.

---

[5] Respondents have provided interview notices for each of the individuals who did not receive an
interview in connection with their 180-day review. *See* Exs. D, E, F. These interviews will be
completed imminently. *Id.*

Further, ICE Boston already has a practice of considering an alien's equities in the United States, including an alien's class membership whenever possible, prior to making a detention decision. ECF No. 158-1 at ¶ 5 ("The Boston Field Office will continue to consider the equities of an alien's case when determining whether to arrest, detain, or effectuate the removal of aliens with final orders of removal . . ."). Therefore, an additional review of these equities so soon after detention is not necessary to ensure that ICE is considering an alien's equities early on in their detention. Additionally, ICE is already conducting POCRs at an accelerated pace that allows aliens more than 30 days to compile documents to submit in support of their release and conducting the POCR at around the 75th day in custody. *See* Ex. A; ECF No. 318-1. Considering the demonstrated difficulties aliens and their attorneys have in submitting documents on this current timeline, conducting the review even earlier does not seem to be in the best interest of the alien.

Finally, Respondents incorporate their arguments in support of their motion to dismiss and opposition to Petitioners' motion for preliminary injunction. *See* ECF Nos. 55; 78, 112. The POCR regulations were promulgated to align with the Supreme Court's decision in *Zadvydas,* where the Court interpreted section 1231(a)(6) "to contain an implicit 'reasonable time' limitation." 533 U.S. at 681. The Court considered making that period 90 days, which Congress also considered a reasonable time for ICE to accomplish removal, before settling on six months. *Id.* at 701. DHS's interpretation of the regulation, which starts the POCR clock on day one of detention, is consistent with Congress' intent that DHS should have at least 90 days to accomplish removal. *See* 8 U.S.C. § 1231(a). It is also consistent with the Supreme Court's limits on prolonged detention because it provides review *three months before* the presumptively reasonable period ends. *See Zadvydas* at 701.

To the extent this Court finds the regulations ambiguous, it should defer to DHS's reasonable interpretation of its regulations. *See Kisor,* 139 S. Ct. at 2415-16. As explained in its response to Plaintiff's motion, Respondents' interpretation has not evolved over the course of this case. *See* ECF No. 318 at n. 1. Respondents' interpretation is the reasoned opinion of the agency as illustrated by internal guidance which provides that a POCR "shall be completed pursuant to criteria and factors found in 8 C.F.R. § 241.4 (threat/flight risk) no later than 90 days after the issuance of a final order . . . ***or no later than the 90 days after coming into custody with an outstanding final order.***" Chapter 17 Removal Process: Post Order Custody Reviews (POCR), attached hereto as Exhibit E. Therefore, this Court should defer to Respondents' interpretation of its own regulations.

## CONCLUSION

For these reasons, this Court should deny Petitioners' motion for order to show cause and corresponding requests for relief.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

ELIANIS N. PEREZ
Assistant Director

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419

(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Mary L. Larakers
Mary L. Larakers

Dated: August 23, 2019                                 Trial Attorney