**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, Individually and on behalf of all others similarly situated, Plaintiffs-Petitioners, v. KEVIN K. McALEENAN, *et al.*, Defendants-Respondents. | No. 1:18-cv-10225-MLW |

**RESPONDENTS' UPDATED RESPONSE TO PETITIONERS'**
**MOTION FOR ORDER TO SHOW CAUSE**

**INTRODUCTION**

This Court should deny Petitioners' motion for order to show cause. Even if Petitioners could demonstrate that there have been violations of the Post Order Custody Review ("POCR") process — which Respondents do not concede — they fail to establish that their detention is unlawful as a result. In each of the detainee's cases, Immigration and Customs Enforcement ("ICE") conducted a meaningful custody review replete with equitable considerations and considerations of flight risk, dangerousness, and the availability of the necessary travel documents in order to effectuate their final orders of removal. In the face of this fact, Petitioners cannot prevail on their claim that their detention is unlawful. To order release where ICE, *at least*, substantially complied with the POCR regulations would bestow a windfall on detainees who ICE can otherwise immediately remove. The only remedy Petitioners are arguably entitled to is a remand to the agency to comply with the regulations' requirements. Because Petitioners have already received such a remedy, they are not entitled to any further relief from this Court. Therefore, this Court should deny Petitioners' motion and allow ICE to facilitate the detainees' final orders of removal from the United States as charged to do by statute and regulation.

**ARGUMENT**

**I.      Section 241.4 Does Not Require Immediate Review of a Detainee's Custody.**

Respondents' interpretation of its own regulations is reasonable and entitled to deference under *Kisor v. Wilkie,* 139 S. Ct. 2400, 2415-16 (2019). This Court has already held that 8 C.F.R. § 241.4 is ambiguous[1] as applied to aliens who were not detained during their initial 90-day

---

[1] Ms. ▮▮▮▮▮  Mr. ▮▮▮▮  and Mr. ▮▮▮ were detained during their traditional removal period. Therefore, the POCR regulations are not ambiguous as applied to them.

removal periods. ECF No. 95 at 44. Therefore, the only remaining question is whether Respondents' interpretation is entitled to deference.

For aliens who are detained for the first time after their removal order becomes administratively final,[2] Respondents interpret 8 C.F.R. § 241.4 to require a POCR prior to an alien's 90th day in custody in the same manner as an alien detained on the day he receives his final order of removal. This is the agency's "authoritative" and "official position" as required by the Supreme Court in *Kisor*. 139 S. Ct. at 2416. Respondents' interpretation is the reasoned opinion of the agency as illustrated by internal guidance which provides that a POCR "shall be completed pursuant to criteria and factors found in 8 C.F.R. § 241.4 (threat/flight risk) no later than 90 days after the issuance of a final order . . . *or no later than the 90 days after coming into custody with an outstanding final order.*" ECF No. 360 at Ex. E.

This interpretation also "implicate[s] [the agency's] substantive expertise" because the removal of aliens squarely falls within DHS's purview. *Kisor,* 139 S. Ct. at 2417. `This interpretation is not merely a "convenient litigating position." *Id.* As explained in its response to Plaintiff's motion, Respondents' interpretation has not evolved over the course of this case. *See* ECF No. 318 at n. 1. Respondents have consistently interpreted the 90-day POCR clock to begin —in cases of post-removal period aliens — on the first day of detention. *Id.* DHS's interpretation of the regulation is consistent with Congressional intent that DHS should have at least 90 days to accomplish removal. *See* 8 U.S.C. § 1231(a). It is also consistent with the Supreme Court's limits on prolonged detention because it provides review *three months before* the presumptively reasonable period ends. *See Zadvydas v. Davis*, 533, 678, 701 (2001). Finally, this interpretation

---

[2] The certified class is overbroad with regard to Petitioners' detention claims because the class includes aliens who ICE detained during their removal period.

is consistent with the purpose of the regulations: to provide custody reviews at regular intervals to ensure ICE can remove the alien in the reasonably foreseeable future. 65 Fed. Reg. 80293. Conducting the review as soon as an alien comes into custody would undercut this purpose because it would require ICE to do the review before ICE has time to properly assess its ability to secure travel documents. Therefore, this Court should defer to ICE's reasonable interpretation of the regulations.

## II.     ICE Boston Has Complied with the 90-Day POCR Requirements.

### a.  90-Day Notice

As a threshold matter, the Court need not order any prospective relief as to this issue because ICE Boston has decided to start serving the POCR notice on or about day 45 of an alien's post-final order custody period, inform the alien that they may submit documents up until day 75, and will conduct the review prior to the day 90. This practice allows ICE Boston sufficient time to conduct the review and also provides the alien with notice approximately 30 days prior to the review. This practice is also consistent with the Court's tentative view that the word "approximately" requires that the notice not be given 90 days or even 60 days before the detention review is conducted [3] August 27, 2019 Hr'g. Trans. at 42.

However, ICE Boston did not violate the POCR regulations in conducting the detainee's 90-day POCRs. While Petitioners point out that the word "approximately" does not mean "at least," they ignore that their proposed interpretation renders it virtually impossible to comply with the regulation. If ICE Boston had served the POCR notice 30-31 days prior to completing the review, they would, at most, only have had one day to review the documents submitted by the

---

[3] Respondents do not waive their argument that providing the notice promptly upon detaining an individual and conducting the POCR prior to an alien's 90th day in custody complies with § 241.4.

alien. One day is not sufficient for ICE Boston to comply with the requirements of § 241.4, let alone complete a meaningful review. The regulations require ICE to consider numerous factors in their analysis — many of which should not be considered until ICE receives documents or information from the alien. *See* 8 C.F.R. § 241.4(e) (listing 13 factors and sub-factors that must be considered prior to deciding whether to release a detainee). Further, only detention staff may conduct and render a decision on a POCR, thereby limiting the number of people within ICE ERO who may conduct the review. 8 C.F.R. § 241.4(h)(5).

While Petitioners argue that ICE could comply with the regulation by providing two notices, this would still not alleviate the problem as Petitioners would surely argue that the detainee's 30-day period to submit documents would not begin until ICE serves that *second* notice. Further, the regulations do not require two notices. 8 C.F.R. § 241.4(h)(2). Accordingly, the plain language of the regulation does not contemplate any interpretation that requires ICE Boston to give two notices of an impending POCR. *See id.* If the Court orders compliance with Petitioners' interpretation of the regulation, it will either be requiring the agency to perform an impossible task (requiring one notice 30-31 days before the review) or take action in contradiction to the text of the regulations (requiring two notices). Neither result is allowed; therefore, the Court should reject Petitioners' interpretation of the notice requirement in § 241.4(h)(2). *See American Hospital Ass. v. Price,* 867 F.3d 160, 168 (D.C. Cir. 2017) (holding a court cannot require an agency to perform an impossible task or contradict its own regulations).

Regardless, there is adequate textual support for Respondents' interpretation of the notice requirement. The word "approximately" in § 241.4(h)(2) is modified by the purpose of that provision, which is "so that the alien may submit information in writing in support of his or her

release." Therefore, providing more than 30-days notice complies with the regulation because it comports with the purpose of ensuring the alien is given sufficient time to submit documents.

### B. 90-Day Review

ICE did not violate the POCR regulations nor mislead the detainees when it conducted their respective POCRs one, two, four, six, and fourteen days prior to the "on or about" date ICE stated such review would occur. The POCR regulations do not require any specific content in the notice and Petitioners concede that each detainee had at least 30 days to submit documents; therefore, Petitioners cannot show that conducting the review prior to the "on or about" date violates the regulations. To the extent Petitioners argue that conducting the review "early" is a separate due process violation because the notice misled the detainees, they have not established the requisite prejudice to make out a due process violation.[4] *See* ECF No. 360 at 6-7. Accordingly, Petitioners cannot prevail on their claim they have been deprived of due process by ICE's decision to conduct their review prior to the respective POCR notices' "on or about" date.[5]

### III.     ICE HQ Has Consistently Conducted 180-Day POCRs.

### A. 180-Day Notice

As explained in Respondents' sur-reply, ICE HQ consistently provides a detainee notice of his or her 180-day review in the body of the detainee's 90-day POCR decision. Because the text

---

[4] To dispense with a showing of prejudice under *Leslie v. Attorney General, 611 F.3d 171, 179-180 (3d Cir. 2010),* the court must find that the government has violated a regulation borne of a constitutional right. Because the POCR regulations do not govern the content of the POCR notice, Petitioners cannot plausibly argue that conducting the review prior to the "on or about date" violated the regulations. Accordingly, to establish a due process violation for the alleged "misleading" notice, Petitioners must establish prejudice. As explained in Respondents' sur-reply, Petitioners have failed to do so. ECF No. 360 at 6-7.

[5] As discussed in their sur-reply, the Court need not issue any further relief with regard to this allegation because Respondents have changed their template POCR notice to prevent this issue from reoccurring. ECF No. 360 at A.

of the regulations is silent as to the form and content of this notice, ICE's practice of providing written notice of the 180-day review was sufficient. *See* 8 C.F.R. § 241.4(h)(2), (k)(2)(ii). However, the Court need not order any further relief with regard to the 180-day notice because ICE has revised the notice to clearly inform the alien of their impending 180-day custody review. ECF No. 360 at 9.

**B.  180-Day Review**

Each of the detainees, who the government agrees were entitled to a 180-day POCR, received a timely review. Although Petitioners' argue that this review must occur on that 181st day, the regulations' multistep process for the 180-day review forecloses this argument. "The ***initial*** [ICE HQ] review will ***ordinarily*** be conducted ***at the expiration of*** the three-month period after the 90-day review ***or as soon thereafter as practicable***." 8 C.F.R. § 241.4(k)(2)(ii) (emphasis added). The regulation provides that this initial review refers to the first ***records*** review conducted, at ICE HQ by the HQPDU director or Review Panel. 8 C.F.R. § 241.4(i)(2) ("initially, and at the beginning of each subsequent review, the HQPDU Director or a Review Panel shall review the alien's records"). If release is not recommended after this initial records review, the regulation calls for a Review Panel to conduct a personal interview where the alien may have their attorney present. 8 C.F.R. § 241.4(i)(1), (i)(3). Thereafter, the Review Panel must issue a recommendation to the Executive Associate Commissioner regarding the alien's custody. Only after that step may the Executive Associate Commissioner issue a decision on the alien's ***custody*** review. 8 C.F.R. § 241.4(i)(6). Therefore, while the initial ***records*** review is ordinarily conducted at or around the 180th day, the regulation provides that the rest of the ***custody*** process occurs after the 180th day. *Id.* The federal register comment that states ICE HQ "will ordinarily commence a ***custody review*** within 30 days," – as opposed to the "initial review" – is therefore consistent with the regulation

7

because the regulation contemplates that the ultimate *custody decision* will not occur until *after* the alien's 180th day in custody. 65 Fed. Reg. 246 at 80291-92 (emphasis added). Petitioners' argument that the entire custody review, including the initial records review, an interview, a recommendation based upon the interview, an ultimate decision based upon the recommendation, and notice of such custody decision, must occur on day 180 ignores this multistep process.

Even if the Court discounts the comment in the federal register, Respondents still prevail.[6] For the detainees who ICE Boston agrees were entitled to a 180-day review (Mr. ███ and Mr. ███ ICE HQ provided that review less than 30 days after the detention authority was transferred. ECF No. 360 at 14-19. Thereafter, ICE conducted interviews for both individuals to comply with the regulation's interview requirement. Since then, ICE HQ has conducted two more 180-day reviews in accordance with the regulation. This Court's stay of removal on July 26, 2019, made Mr. ███ eligible for a 180-day review. Mr. ███ "initial HQPDU review" was conducted shortly thereafter pursuant to § 241.4(k)(2)(ii) and ICE HQ scheduled him for his 180-day interview on September 9, 2019, in accordance with this Court's order to coordinate the scheduling of the pending interviews with Petitioners' counsel. ICE conducted Mr. ███ interview and rendered a decision to continue his detention on September 24, 2019. Likewise, ICE determined Mr. ███ was entitled to a 180-day custody review after he provided his passport to ICE on September 16, 2019, and therefore resumed his compliance with the statutory and regulatory obligations to assist in providing travel documents to effectuate removal. As a result, in addition to the de novo review ICE conducted pursuant to this Court's order, ICE scheduled Mr. ███

---

[6] The Court previously stated that it is "ICE's regular practice to commence the second review at or about 210 days after the alien is detained." August 27, 2019 Hr'g. Trans. at 45:14-15. However, ICE's practice is to issue a 180-day decision as close to the 180th day as possible, that also complies with the steps described in the regulation.

for a personal interview on October 2, 2019 and will issue a new custody decision shortly thereafter.  Accordingly, pursuant to the multi-step 180-day review process set forth in the POCR regulations, ICE has now conducted comprehensive 180-day POCRs for each of the eligible detainees.

**IV.     Petitioners Must Demonstrate Prejudice to Establish a Violation of Due Process.**

The First Circuit has consistently held in the immigration context that "[t]o make out a due process violation, a claimant must show that a procedural error led to fundamental unfairness as well as actual prejudice." *Conde Cuatzo v. Lynch,* 796 F.3d 153, 156 (1st Cir. 2015); *Miranda-Bojorquez v. Barr,* -- F.3d --, 2019 WL 40233640 at \*5, n.7 (1st Cir. 2019); *see also United States v. Deleon,* 444 F.3d 41, 56-57 (1st Cir. 2006) (holding that a "showing of prejudice" is a "threshold requirement" for establishing a valid due process claim). Although "prejudice is an amorphous concept," there is no prejudice if the error would "not make any difference to the outcome of the review." *Kheireddine v. Gonzales,* 427 F.3d 80, 86 (1st Cir. 2005). A claimant cannot demonstrate prejudice if he or she had the ability to correct the claimed prejudicial error and made no effort to do so. *See id.* at 86 ("Nor may a petitioner meet his burden of showing prejudice if the missing material can be reasonably recreated or derived from other sources, and the petitioner has made no effort to obtain such a substitute record."). A showing of prejudice is required even where the government has violated a statute or regulation protecting a detainee's constitutional rights. *United States v. Montalvo-Murillo,* 495 U.S. 711, 717 (1990) ("There is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must be some corollary punitive sanction for departures or omissions, even if negligent.").

At a minimum, Petitioners must show there is "a reasonable probability that" but for the procedural error, "the result of the proceeding would have been different." *Lee v. United States,*

137 S. Ct. 1958, 1964 (2017). As explained in Respondents' sur-reply, Petitioners' claim of prejudice falls short of this mark. ECF No. 360 at 13-19. While Petitioners claim they would have submitted documents but for the alleged violations, they do not allege they had started assembling those documents two, four, six, and fourteen days, respectively, prior to the notice's "on or about" deadlines. Further, they cannot establish that even if that information had been submitted through documents or in an interview, there is a reasonable probability that the result would have been different. A number of the detainees have significant criminal history that not only makes them a danger to the community, but also makes them ineligible for a provisional waiver due to having other grounds of inadmissibility to the United States. Additionally, ICE has the necessary travel documents to effectuate removal for the majority of the detainees and is confident that it can secure travel documents for the others in a relatively short period of time upon the lifting of the stay of removal. The POCR regulations are clear that ICE should not release an individual if travel documents are available unless immediate removal is not practicable or in the public interest. 8 C.F.R. § 241.4(e), (g)(3); 65 Fed. Reg. 80293. In the instant case, it is only the stay of removal that bars removal for the detainees and therefore detention remains fully warranted. Considering these facts, Petitioners are unable to demonstrate any reasonable likelihood that the outcome of their POCR would have been different if ICE conducted the reviews differently because the primary consideration in the POCR analysis – ICE's ability to remove an alien with a final order of removal from the United States – weighs against them.

Even if there are some circumstances where the court may presume prejudice, those circumstances are rare. To dispense with a showing of prejudice, the petitioner must establish that the specific provision of the regulation — as opposed to an entire regulatory scheme — is borne of a constitutional right. *Leslie,* 611 F.3d at 179-180. While it is true that § 241.4 is not merely a

housekeeping regulation, not every provision of the regulations was specifically promulgated to protect a constitutional right such that a violation does not require a showing of prejudice. *Leslie,* 611 F.3d at 179 (stating that "an administrative agency is not a slave of its rules"). Assuming this Court determines the custody reviews themselves to be derivative of the constitutional rights emanating from *Zadvydas*, it does not follow that *every* procedure in § 241.4 is so closely connected to, and derivative of, the constitutional right at issue in *Zadvydas* so as to excuse a showing of prejudice. To do so is inconsistent with the analysis in *Leslie* and would allow Petitioners to bypass a showing of prejudice even, for example, where ICE violates the provision requiring ICE HQ to conduct the custody review instead of local ICE, or where a copy of employment authorization is not forwarded to ICE HQ. *See Leslie,* 611 F.3d at 181-82; 8 C.F.R. § 241.4(c)(2), (d)(2).

Second, even if the custody reviews themselves are derivative of the constitutional right at issue in *Zadvydas,* the specific regulations ICE allegedly violated and the *means* by which ICE allegedly violated them are too attenuated from that constitutional right to bypass the need for a finding of prejudice under *Leslie.* The exact date an alien must receive notice of the 90-day review, the "early" custody reviews, the language of the 180-day review notice, and a reasonable "delay" in the 180 day review are not so closely connected to the constitutional right at issue in *Zadvydas* — the right to be free from indefinite detention. 533 U.S. at 697. Likewise, any failure to conduct the 180-day interview, where the 180-day review and interview was still ultimately completed, is not directly related to the goal of preventing indefinite detention. This is especially true where ICE faced no true impediment in securing travel documents for the removal of the detainees. *See* 65 Fed. Reg. 80291-92 ("The ability to secure a travel document by itself supports a decision to continue detention pending removal of the alien and obviates the need for further custody review

because it means that the alien can be deported promptly. Custody reviews may be pretermitted in the case of an alien for whom travel documents are available."). To the extent this Court finds *Leslie* persuasive, it should decline to apply its reasoning here where Petitioners have failed to establish the specific regulatory provisions at issue were necessary to protect the detainee's constitutional right to be free from indefinite detention.

## V.     Petitioners are not entitled to release.

Regardless of Petitioners' obligation or ability to demonstrate prejudice, the remedy for these particular alleged violations is a remand to the agency — not outright release or release after a bond hearing conducted by the Court. *See Ford v. Wainwright,* 549 F.2d 981, 982-83 (5th Cir. 1977) (holding that the remedy for failure to conduct a parole hearing in accordance with the regulations is remand for a new hearing); *Sutherland v. McCall,* 709 F.2d 730, 732 (D.C. Cir. 1983) (providing that the remedy for failure to provide a parole revocation hearing within 90 days of arrest is a writ of mandamus to compel compliance with the statute); *Northington v. United States Parole Comm'n,* 587 F.2d 2, 3 (6th Cir. 1978); *Whitlow v. Bellotti,* 508 F. Supp. 2d 108, 111 (D. Mass. 2007). The Supreme Court has recognized that automatic release for ***every*** violation of a detention statute or regulation would "bestow a windfall upon the [detainee] and visit a severe penalty upon the Government and citizens."[7] *Montalvo-Murillo,* 495 U.S. at 712. Release is not the proportionate remedy where the detention is otherwise lawful and in accordance with the applicable detention authority. *Id.* A person does not automatically "become immune from detention" for every timing violation. *Id.* This is true even where the statute or regulation is aimed at protecting a "vital liberty interest." *Id.* at 717. Rather, Courts reserve release only for those

---

[7] Indeed, even in the cases Petitioners' cited, the remedy for a violation of the regulation was a *remand to the agency* to conduct the proper procedures. *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir. 1993); *Leslie,* 611 F.3d at 183.

*procedural* due process violations that are so unreasonable and prejudicial that they invade on a petitioner's *substantive* rights. The remedy for a violation of a detention regulation cannot defeat the purposes of the statute authorizing the detention in the first place. *Id.* at 720 ("Automatic release contravenes the object of the statute, to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee."); *U.S. v. Shields,* 649 F.3d 78, 87 (1st Cir. 2011).

To order release for the alleged violations here would impermissibly limit the scope of the detention authority in 8 U.S.C. § 1231(a)(6), conflict with the Supreme Court's decision in *Zadvydas*, and defeat the purpose of post-order detention. The purpose of post-order detention in § 1231(a)(6) is to ensure an alien's presence at the time of removal. *Id.* at 680. Given this purpose, the Supreme Court held that where detention is unrelated to the purpose of removal, an alien's detention is unlawful. *Id.* Against this backdrop, the Court may only order the drastic remedy of release if the alleged procedural violations also caused the detainee's detention to be unrelated to the purposes of removal. *See Montalvo-Murillo,* 495 U.S. at 720; *Shields,* 649 F.3d at 87. To order release without such a finding would be contrary to the entire purpose of the detention statute, which authorizes detention until it is no longer related to the purpose of removal. *See Zadvydas,* 533 U.S. at 680.

Here, Petitioners request this Court order the release of the detainees to remedy the alleged violations of the POCR regulations. However, they do not explain why their *detention* — as opposed to the application of the POCR procedures in their respective cases — is unlawful. Petitioners do not, and cannot, attempt to argue that these alleged violations resulted in detention unrelated to the purpose of removal. Indeed, it is undisputed that ICE made individualized flight risk and dangerousness determinations and ensured the availability of travel documents prior to

continuing their custody based on the information available to them. ICE's multiple reviews in each of the detainees' cases confirmed its ability to effectuate removal and by extension the detainees ineligibility for release. Therefore, even in the face of these specific alleged violations, the alien's detention remains lawful.

This conclusion is consistent with this Court's prior order regarding the POCR regulations and other district court decisions addressing POCR violations. *See* ECF No. 95; *Bonitto v. Bureau of Immigration & Customs Enf't,* 547 F. Supp. 2d. 747, 758 (S.D. Tex. 2008) (remanding to ICE to conduct a proper POCR); *Achouatte v. Holder,* No. 4:11-cv-03977-VEH, 2012 WL2357711 at *3 (N.D. Ala. May 14, 2012) (recognizing the POCR violation is a due process violation but remanding to the agency to conduct a proper review). Last year, the Court held that it would conduct a bond hearing as a remedy for several violations of the POCR regulations. The Court reached this conclusion, however, only after hearings revealed that: (1) ICE had violated the POCRs even as it interprets them; (2) no one at ICE had completed a meaningful custody review of the detainees; and (3) some of the detainees "might be entitled to release" before being removed. ECF No. 95 at 49, 39. Accordingly, with respect to those individuals, it was at least arguable that the procedural due process violations also invaded on the detainee's substantive right to be free from detention that is not *related to the purpose of removal*. As explained above, the same is not true here. Petitioners cannot plausibly argue that the alleged violations invaded on their right to ensure their detention is related to the purpose of removal. ICE made an individualized decision that they were a flight risk, a danger to the community, or both in each of the detainees' cases, based on reliable information. To order release regardless of these indisputable facts would undercut the entire purpose of the detention authority in § 1231(a)(6). Because such a result is

impermissible under applicable precedent, this Court should deny Petitioners' request for release. *See Montalvo-Murillo,* 495 U.S. at 720; *Shields,* 649 F.3d at 87.

**VI.     Petitioners are not entitled to a bond hearing for any alleged procedural due process violations.**

This Court should also reject Petitioners' argument that the Court may conduct its own bond hearing to remedy the alleged procedural due process violations. "A court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" *United States v. Oakland Cannabis Buyer's Co-op,* 532 U.S. 483, 497 (2001) (citing *Virginian R. Co. v. Railway Employees,* 300 U.S. 515, 551 (1937)). "A Court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of the law." *INS v. Pangilinan,* 486 U.S. 875, 883 (1988). "The congressional command here could not be more manifest." *Id.* at 884. Congress has directed the removal of aliens with final orders of removal and has expressly authorized their detention beyond the removal period. 8 U.S.C. § 1231(a), (a)(6).

In interpreting that congressional intent, the Supreme Court in *Zadvydas* rejected the conclusion that a district court could order release from § 1231(a)(6) detention on flight risk and dangerousness considerations alone. Rather, the Court explained that the following analysis applies:

> "If removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period. We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention."

*Zadvydas,* 533 U.S. at 700. In *Clark,* the Court clarified that this is the *only* analysis applicable to determining whether an individual should be released from § 1231(a)(6) detention irrespective of the "presence or absence of constitutional concerns in [an] individual case." *Clark v. Martinez,* 543 U.S. 371, 382 (2005). Therefore, any hearing[8] that could potentially result in the release from § 1231(a)(6) detention *must* comport with the above analysis. *See id.*

Although an alien has a right to a POCR pursuant to § 241.4, the only legal remedy for a deprivation of those procedures is a remand to the agency to comport with the regulations.[9] *Haynes v. Dep't of Homeland Sec.,* No. 3:cv-05-0339, 2005 WL 1606321 at *1 (M.D. Pa. July 8, 2005). *Bonitto,* 547 F. Supp. 2d. at 758; *Achouatte* 2012 WL2357711 at *3. In other words, the remedy for a procedural due process violation is the procedures due. The Supreme Court has interpreted Congress's intent to avoid all constitutional concerns in § 1231(a)(6) detention and a court may not subvert that intent by ordering a bond hearing. To do so would conflict with *Clark's* conclusion that § 1231(a)(6) detention is lawful in *all* its applications until it is no longer "consistent with the purpose of effectuating removal." *Clark,* 543 U.S. at 384. Because a traditional bond hearing is an entirely different analysis than that explained in *Zadvydas* and *Clark,* does not comport with congressional commands, and is not provided for in the POCR regulations, this Court should refuse to order it as a remedy to Petitioners' alleged POCR violations.

**CONCLUSION**

For the following reasons, this Court should deny Petitioners' motion for order to show cause.

---

[8] A court, in its discretion, could conduct a hearing to develop any facts that are essential to this analysis. *Zadvydas,* 533 U.S. at 680.
[9] ICE conducted new POCRs pursuant to this Court's order; therefore, Petitioners have already received the relief they would be entitled for the alleged violations of the POCR regulations. *See* POCR Decisions, attached hereto as Exhibits A-F.

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

ELIANIS N. PEREZ
Assistant Director

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Mary L. Larakers
Mary L. Larakers
Dated: October 1, 2019                    Trial Attorney