# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KEVIN K. McALEENAN, *et al.*, <br><br> Defendants-Respondents. | ) ) ) ) ) ) ) ) No. 1:18-cv-10225-MLW ) ) ) ) ) ) ) ) ) |

## RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR INTERIM RELIEF

**INTRODUCTION**

Petitioners' most recent motion illustrates that they do not merely seek compliance with the Post Order Custody Review ("POCR") regulations, but, rather, Petitioners seek to dictate decisions within ICE's sole discretion. Petitioners base their arguments on several fundamental misconceptions about the procedural history of this case, the purpose and operation of the POCR regulations, the definition and consequence of a final order of removal, the purpose and operation of 8 U.S.C. § 1231, and this Court's jurisdiction. Therefore, this Court should deny the motion.

First, as Respondents have noted continuously throughout this case, this Court lacks subject-matter jurisdiction to stay the removal of aliens with final orders of removal under 8 U.S.C. § 1252(g). Petitioners' motion seeks to expand the scope of the subject-matter jurisdiction beyond what this Court has previously expressed it believes it may exercise, by asking the Court to stay the removal of aliens, whom ICE may otherwise immediately remove, for alleged violations of regulations which *even if ICE ignored* would not invalidate an alien's final orders of removal. An alien's right to a POCR or any procedure attendant on post-order detention terminates when ICE notifies the alien that it is ready to effectuate his removal order. 8 C.F.R. § 241.4(g)(4). Staying the removal of an alien to investigate allegations of POCR violations not only contradicts the entire statutory scheme put in place by Congress, but, further, the Court lacks the power to do it. If the Court grants Petitioners motion and stays the removal of aliens whom ICE can imminently remove, the Court is conferring temporary injunctive relief to which Petitioners would never be ultimately entitled. Therefore, the Court should deny Petitioners' motion and lift its stay of removal as to each detainee, because ICE can imminently remove them from the United States.

Second, Petitioners' motion incorrectly assumes that the primary considerations in a POCR are flight risk and dangerousness when, in fact, the regulations demonstrate that the availability of

a travel document to allow the effectuation of a valid and final order of removal should take precedence over other considerations. 8 C.F.R. § 241.4(g)(3); 65 Fed. Reg. 80281. No authority requires ICE to make a flight risk or dangerousness finding to authorize the continued detention of the detainees. *Id*. Therefore, ICE satisfied its obligation under the POCR regulations and this Court's order.

Third, Petitioners fail to demonstrate a likelihood of success on the merits. Even if the Court ultimately finds ICE violated the POCR regulations, Petitioners are not likely to succeed on the merits of their claim that release or a bond hearing is the appropriate remedy. Petitioners' reliance on this Court's equitable powers is also misplaced, because courts of equity cannot use that power to issue relief contrary to clear congressional commands.

Fourth, the detainees are not subject to prolonged detention, unrelated to the purpose of removal, such that their detention would be otherwise unlawful. The detainees caused their own detention to be extended by creating a delay in their removal from the United States. Therefore, the detainees fail to demonstrate that they are entitled to release on any substantive due process theory as they have not demonstrated that ICE will be unable to effectuate their removals upon the lifting of the stay of removal in this case.

Finally, the instant motion bears little if any relation to the issues this Court addressed last summer. Unlike last summer, this motion has not required ICE to admit its non-compliance with more than one provision of the POCR regulations. Instead, this motion challenges several interpretations of Respondents' regulations, which Respondents support with persuasive legal arguments. Despite these legal arguments, Respondents, in their discretion, made changes to their POCR practices, such as to the language and timing of the POCR notice, in an attempt to provide even more due process than they believe the regulations require. In the cases where ICE did not

conduct a 180-day interview in a timely manner, for instance, ICE immediately scheduled those interviews in accordance with the regulation. Against this backdrop, Petitioners' allegations that ICE does not take the POCR process or this litigation seriously is baseless. *See* ECF No. 384 at 5. This Court should reject Petitioners' continuous attempts to characterize ICE's actions as malicious and borne out of bad faith where they can provide no evidence to support such characterizations. Instead, ICE's attempt to effectuate the removal of the detainees is driven by Congress' mandate that ICE effectuate the final orders of removal from individuals ordered removed from the United States.

**ARGUMENT**

    **I.    This Court lacks subject-matter jurisdiction to stay the removal of the detainees and should lift its stay of removal.**

When examining the applicability of the INA's jurisdiction-stripping provisions, Courts "must discount nomenclature and follow the time-honored precept that substance trumps form." *Aguilar v. U.S. Immigration and Customs Enf't.,* 501 F.3d 1, 16-17 (1st Cir. 2007). Although Petitioners craft their motion in the form of a detention challenge, the substance of their motion seeks a stay of removal. By doing so, Petitioners are challenging ICE's decision to execute their removal orders and this Court is barred from issuing such relief. *Aziz v. Chadbourne,* No. 07-11806, 2007 WL 3024010 at *3 (D. Mass. October 15, 2007) ("Any stay of the final order of removal would squarely interfere with the 'execut[ion]' of the removal order. Given the express language in § 1252(g), this Court has no jurisdiction to make the requested order."); *Viana v. President of the United States,* No. 18-cv-222-LM, 2018 WL 1587474 at *5 (collecting cases where district courts have held that § 1252(g)'s jurisdictional bar applies to the specific relief of a stay from removal). And, unlike in prior motions, Petitioners fail to explain why any alien would ever be entitled to a stay of removal to remedy a POCR violation. Therefore, not only does this

Court plainly lack subject-matter jurisdiction to stay the detainees' removal under 8 U.S.C. § 1252(g), the detainees are not even arguably entitled to such relief because Petitioners admit the violations would not disturb their removal orders. The All Writs Act, 28 U.S.C. § 1651 *et seq.*, which this Court cites in its order staying the removal, does not preserve this Court's jurisdiction to stay removal because § 1252(g), by its express terms, applies notwithstanding[1]. 8 U.S.C. § 1252(g); ECF No. 307; *Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass 2006) (Young, D.J.) (holding that the REAL ID Act stripped district courts of jurisdiction to issue stays of removal even if otherwise warranted under the All Writs Act). . This Court should reject Petitioners' attempt to create yet another back-door challenge to ICE's discretion to execute their removal order and immediately lift its order staying the detainee's removal.

**II.     ICE complied with the Court's order to conduct de novo custody reviews for each remaining detainee.**

Petitioners' assertion that ICE violated this Court's order to conduct a *de novo* custody review is unsupported and unwarranted. Recognizing that Petitioners' primary complaint was that ICE prevented the detainees from participating in their POCRs, the Court ordered that the detainees submit documents for ICE to review. The Court ordered that ICE conduct these new POCRs *de novo*, with an open mind and "decide whether to continue the detention of each of them or to release them on appropriate conditions." August 2, 2019 Hr'g. Trans. at 19:1-8; ECF No. 36 at 1. On September 19, 2019, ICE informed its counsel that it had decided to continue the detention of the remaining detainees and the undersigned communicated this decision to Petitioners' counsel. After it made these decisions, ICE issued new *written* POCR decisions in accordance with

---

[1] Further, staying the removal of the detainees' creates an absurd result wherein ICE could enforce the aliens' removal orders if released, but not if they are detained. Indeed, but for the stay of removal issued by this Court, ICE would have effectuated the removal of the detainees and they would no longer be detained.

4

§ 241.4(d)(2)-(3). ECF No. 377 at Ex. A-F. Each decision explained the reasons why ICE decided to continue each detainee's detention and cited the information it considered in making this decision. *Id*.

Petitioners now allege that ICE failed to comply with the Court's order because no one with an "open mind" would have decided to continue the detainee's detention. In doing so, Petitioners ask this Court to either (1) infer bad faith where no evidence of bad faith exists or (2) review ICE's discretionary decision, which this Court lacks jurisdiction to do. Either way, Petitioners' motion fails and demonstrates a lack of understanding of (1) Congress' mandate under 8 U.S.C. § 1231 for ICE to effectuate the removal orders of aliens ordered removed from the United States and (2) of the POCR regulations' direction that release is generally not appropriate when ICE has obtained or is confident of obtaining travel documents in order to effectuate removal orders.

### A. ICE conducted de novo custody reviews pursuant to § 241.4 as ordered by this Court.

Throughout their motion, Petitioners ask this Court to review ICE's discretionary decision and find that ICE violated this Court's order by improperly weighing the factors in each case. This is plainly an improper attack on ICE's discretionary detention decision that this Court lacks jurisdiction to review. 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."); *Atanda v. Clark,* 646 F. Supp. 2d 1242, 1248 (W.D. Wash. 2009); *Hernandez-Esquivel v. Castro,* No. 5:17-cv-0564-RBF, 2018 WL 3097029, at *10 (W. D. Tex. June 22, 2018); <u>Ropati v. Lynch</u>, No. 6:17-CV-0219, 2017 WL 5560656, at *3 (W.D. La. Apr. 18, 2017). Further, while Petitioners may have decided to release the detainees, ICE did not violate the Court's order by coming to the opposite conclusion.

5

The Court ordered ICE to conduct an additional round of custody determinations. ECF No. 366. ICE had reviewed and issued custody decisions for each of the six detained class members at least one time. Nonetheless, ICE abided with this Court's order to review the newly submitted documents, information, and arguments in support of release and then to decide whether to continue their detention or release them on appropriate conditions. Contrary to Petitioner's unsupported assertion that ICE violated this order, ICE fully reviewed the evidence submitted, conducted interviews for a number of the detainees, and complied with the statutory and regulatory direction that counseled continued detention. Petitioners are incorrect in their belief that ICE was required to analyze flight risk and dangerousness ahead of the most relevant consideration for a post order custody review – whether the alien's valid and final order of removal can be effectuated. In fact, the POCR regulations illustrate that analysis of flight risk and dangerousness is only relevant when ICE is contemplating a release of the alien due to a lack of ability to effectuate the alien's final order of removal or a finding that *removal* is not in the public interest 8 C.F.R. § 241.4(e) (requiring a finding that travel documents are not available or removal is not in the public interest prior to releasing an alien).

As explained by the Supreme Court, the purpose of the post-removal period statute, 8 U.S.C. § 1231, is to "assur[e] the alien's presence at the moment of removal." *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001). As noted, § 1231 directs ICE to remove an alien ordered removed from the United States within 90 days. The POCR regulations were therefore designed to accomplish this statutory mandate and therefore lend credence to the most important factor in regards to continued detention or release from detention being ICE's ability to effectuate the alien's removal. As set forth in the Federal Register, "[t]he ability to secure a travel document by itself supports a decision to continue detention pending the removal of the alien and obviates the need for further

custody review because it means the alien can be deported promptly." 65 Fed. Reg. 80281; *see also* 8 C.F.R. § 241.4 (e), (g)(3) ("If it is established at any stage of a custody review that, in the judgement of the Service, travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate *removal* is not practicable or in the public interest.") (emphasis added); ."). Other Courts have recognized that when conducting POCRs, either at the 90-day or 180-day period, "ICE must consider its ability to obtain travel documents for the alien." *Bonitto v. Bureau of Immigration & Customs Enf't*, 547 F. Supp. 2d 747, 757 (S.D. Tex. 2008); *Hernandez-Esquivel v. Castro*, No. 5-17-CV-0564-RBF, 2018 WL 3097029, at *10 (W.D. Tex. June 22, 2018). In the instant matter, ICE fully reviewed the evidence and arguments made in support of release as noted in the Decisions to Continue Detention. ICE recognized the equities each alien set forth, but nonetheless determined that continued detention was appropriate under the statute and regulations in part because ICE is in receipt of, or anticipates receipt of, travel documents for each of the class members. Because there are no impediments to removal for such individuals aside from this Court's stay of removal, ICE determined that continued detention was necessary to ensure the effectuation of their removal orders from the United States.

And, while Petitioners' motion assumes ICE failed to consider the public interest in reaching the continued detention decision, this is plainly contradicted by ICE's decisions that summarize ICE's review of the equities presented by each alien's case. ECF No. 377 at Exs. A-F. Additionally, while Petitioners' motion only presumes that the "public interest" favors release, the Supreme Court has made clear that "[t]here is always a public interest in prompt execution of removal orders: [t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings" established by Congress. *Nken v. Holder*, 556 U.S. 418, 436 (2009). There is simply no evidence that ICE failed to conduct *de novo* custody reviews as this

7

Court ordered. Petitioners' disagreement with the outcome should not persuade this Court otherwise.[2]

### B. Petitioners fail to illustrate bad faith as otherwise required to substantiate their allegation that ICE violated the Court's order.

Petitioners' argument that ICE failed to conduct a meaningful review and instead used this opportunity to "shore up its travel documents" is a thinly veiled allegation of bad faith, which they fail to substantiate. ECF No. 383 at 8-9. DHS's exercise of its discretionary powers "must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary." *Bertrand v. Sava,* 684 F.2d 204, 212-13 (2d Cir. 1982). "The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy" and rests with the alien. *Id.* at 213 The fact that all requests by the alien were denied "is not at all probative on the question of whether there ha[s] been an individualized consideration of the actual [] requests." *Id.* at 213.

Here, ICE conducted individualized reviews based on the factors set forth in the POCR regulations. In each case, ICE articulated a reasonable basis for their decision. ECF No. 377 at Exs. A-F. Those reasons included serious criminal convictions and charges as well as demonstrated non-compliance with alternatives to detention. *Id.* Contrary to Petitioners' assertion, the fact that ICE decided not to release anyone does not illustrate bad faith. *See Sava,* 684 F.2d at 213.

Further, ICE is required to seek and secure travel documents for post-order aliens in order to comply with 8 U.S.C. § 1231, POCR regulations, and due process. Zadvydas; 8 C.F.R.

---

[2] This Court also did not require ICE to issue written decisions by September 19, 2019. Rather, it only required ICE to "decide." ECF No. 366. Respondents complied with this part of the order by informing Petitioners of their decision on September 19, 2019. Regardless, Petitioners did not meet and confer with Respondents on this issue; rather, Respondents learned of Petitioners' position for the first time in their motion for interim relief.

§ 241.4(g)(2), (g)(3). Depending on the country that issues the travel document, a travel document may only be valid for a certain period of time. As such, ICE continuously monitors the validity of travel documents for individuals in its custody and will apply for and seek travel documents multiple times if necessary throughout an alien's period of detention. Petitioners' suggestion that this was improper is wholly unsupported and without merit.

Petitioners' remaining argument focuses on their vehement disagreement with ICE's decision. ECF No. 383 at 9. ICE issued POCR decisions that "briefly set forth the reasons for the continued detention" including a discussion of the documents submitted by each detainee on their behalf. 8 C.F.R. § 241.4(d); ECF No. 377 at Exs. A-F. Such review complied with this Court's order and the POCR regulations. *See id.* Petitioners' disagreement with the outcomeis not enough to establish the decision makers' bad faith especially where there is no reason to suggest that ICE's review did not comport with the considerations provided in the POCR regulations .

### C. The Court did not require ICE to conduct a "custody review" of Mr. ▇▇▇ who is not detained.

Mr. ▇▇▇ is no longer detained, a class member, or within this Court's or ICE Boston's jurisdiction. Because Mr. ▇▇▇ is no longer detained, ICE could not "decide whether to continue [his] detention." ECF No. 366 at 1. The order's reference to the class members subject to Petitioner's motion did not require ICE to address non-detained class members. To the extent ICE could decide whether to *continue* the detention of a released alien, ICE Boston no longer has jurisdiction over Mr. ▇▇▇ case. Rather, ICE ERO Pittsburgh has jurisdiction over Mr. ▇▇▇ case, since he moved to West Virginia and ICE transferred his order of supervision there *at Mr. ▇▇▇ request*. As a result, ICE Boston can no longer make decisions regarding Mr. ▇▇▇ custody including whether to alter the terms of his order of supervision. Mr. ▇▇▇ voluntarily moved to West Virginia, thereby bringing him outside this Court's jurisdiction and

9

terminating his class membership. ECF No. 253 (defining class membership, in part, as aliens within the jurisdiction of ICE Boston); *see Rumsfeld v. Padilla,* 542 U.S. 426, 444 (2004) (requiring a habeas to be filed in the district court with territorial jurisdiction over the custodian). Therefore, this Court is without jurisdiction to, and need not, order ICE to take any further action in Mr. ▇▇▇▇ case.

### D. ICE duly considered each detainee's potential eligibility to seek a provisional waiver.

Petitioners' allegation regarding ICE's consideration of the provisional waiver is false and beyond this Court's jurisdiction to review. Again, Petitioners' sole basis for their argument that ICE failed to consider the detainee's pursuit of a provisional waiver is their disagreement with ICE's decision.t. ECF No. 383 at 8-9. However, ICE complied with this Court's orders by considering each detainee's pursuit of a provisional waiver and documenting such consideration through individualized explanations for each detainee as ordered to do by this Court. *See* ECF No. 340 (requiring monthly reporting) Because ICE has duly considered each detainee's pursuit of a provisional waiver, this Court lacks jurisdiction to order any further relief. ECF No. 159 at 26 ("[T]his court could not review a discretionary decision for possible abuse if DHS's discretion was actually exercised."). The Court may not review *how* ICE exercised that discretion, including whether to require ICE to identify "exceptional circumstances" to remove a class member. Petitioners' reference to an ambiguous statement from a lobby conference a year ago does not alter this analysis. *See id.;* ECF No. 383 at 9. Further, Petitioners fail to cite to any authority that requires separate explanation of ICE's consideration of a detainee's pursuit of a provisional waiver in a class members' POCR decision, especially where ICE had already provided, as required by this Court, the justification for seeking to effectuate the removal orders in light of the detainees' pursuit of the provisional wavier. Because this Court lacks subject-matter jurisdiction to review ICE's

10

discretionary decision to remove the detainees and Petitioners have no evidence that ICE failed to comply with this Court's orders regarding consideration, this Court should deny Petitioners request for immediate release.

### III. Petitioners are not likely to succeed on the merits of their claim that they are entitled to release.

Petitioners' motion seeks temporary injunctive relief in the form of release and a stay of removal pending their motion alleging POCR violations. It is Petitioners' burden to establish not only that they are likely to succeed on the merits of their claim that ICE violated the POCR regulations, but also that the remedy for such a violation is release and a stay of removal. *See Esso Std. Oil Co. (Puerto Rico) v. Monroig-Zayas,* 445 F.3d 13, 18 (1st Cir. 2006). As Respondents have explained in their response, sur-reply, and supplemental memoranda opposing Petitioners' motion, ICE has not violated the POCR regulations with regard to the remaining six detainees. *See generally,* ECF Nos. 318, 360, 377. Accordingly, Petitioners are not likely to succeed on their claim that ICE has violated the POCR violations as to each remaining detainee. Moreover, Petitioners' fail to establish they are entitled to release and a stay of removal as a result through their reference to this Court's equitable powers. ECF No. 383 at 3. Accordingly, this Court must deny their motion for temporary injunctive relief.

Petitioners' request for automatic release and a stay of removal upon release conflates the remedies available for procedural due process violations with those available for substantive due process violations. The remedy for any violation of procedural due process is additional procedures. *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). As such, habeas relief, in the form of release, is generally inappropriate for procedural due process violations. *United States v. Montalvo-Murillo,* 495 U.S. 711, 722 (1990) (refusing to grant habeas relief for conducting hearing late in violation of the detention statute); *United States v. Shields,* 649 F.3d 78, 87 (1st Cir. 2011)

(citing *Montalvo-Murillo,* 495 U.S. at 720); *Northington v. U.S. Parole Com'n,* 58 F.2d 2, 3-4 (6th Cir. 1978) (conducting the hearing 24 days late in violation of the detention statute did not require habeas relief); *Sutherland v. McCall,* 709 F.2d 730, 732 (D.C. Cir. 1983) (holding the appropriate remedy for a violation of the detention statute is a writ of mandamus to compel compliance with the statute); *Smith v. United States,* 577 F.2d 1025 (5th Cir. 1978); *Heath v. United States Parole Com.,* 788 F.2d 85 (2d Cir. 1986). Applying this standard, courts across the country have refused to grant release to remedy POCR violations. *Clarke v. Kuplinski,* 184 F. Supp. 3d 255, 261 (E.D. Va. 201) ("Here, Clarke confuses his substantive rights under *Zadvydas* and his procedural rights, the violation of which does not justify granting habeas relief."); *Ming Hui Lu v. Lynch,* No 1:15-cv-1100-GBL-MSN, 2016 WL 375053 at *8 (E.D. Va. Jan. 29, 2016); *Idowu v. Ridge,* No. 3:03-cv-1293-R, 2003 WL 21805, at *4-5 (N.D. Tex. Aug. 4, 2003); *Bonitto v. Bureau of Immigration & Customs Enf't,* 547 F. Supp. 2d. 747, 758 (S.D. Tex. 2008).

While a lack of procedural due process could, in some extreme situations, result in a substantive due process violation and require habeas relief, those circumstances are not present here. Petitioners cannot plausibly argue that the alleged violations invaded on their right to ensure their detention is related to statutorily and constitutionally permissible purpose: to ensure their availability for effectuation of their removal orders. ICE has now reviewed the detainees' custody status on several occasions. It has taken into account the equities each detainee has presented, including the potential eligibility to pursue a provisional unlawful presence waiver. Therefore, the alleged violations did not affect the detainees' substantive rights and, at most, Petitioners would be entitled only to a remand to the agency for proper compliance with the regulation. Because this remand has already occurred, the detainees are not entitled to any further relief from this Court.

Further, Petitioners cannot separately establish a violation of substantive due process based on their length in detention, because ICE has demonstrated its ability to remove each detainee. *See Zadvydas v. Davis,* 533 U.S. 678, 699-700 (2001). Stays of removal issued by this Court and others prevented ICE from removing the detainees and extended the amount of time each has spent in detention. Contrary to Petitioners' contention, aliens "cannot rely on the extra time resulting [from permissible litigation strategy] to claim that his [or her] detention violates substantive due process. *See* ECF No. 383 at 3; *Doherty v. Thornburgh,* 943 F.2d 204, 211 (2d Cir. 1991). Therefore, the detainees' detention is reasonably related to the purpose of removal and this Court cannot order the detainees' release.

**CONCLUSION**

For these reasons, this Court should deny Petitioners' motion for temporary injunctive relief.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

ELIANIS N. PEREZ
Assistant Director

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

    I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: October 7, 2019

/s/ Mary L. Larakers
Mary L. Larakers
Trial Attorney