Because unforeseen expenses often arise, have your government credit card with you when you travel.

Verify that the Form I-216, Record of Persons and Property Transferred, lists every person in the group. Confirm that all baggage is properly packed and tagged. Encourage everyone in the group to dress appropriately for the climate of the receiving country.

(b) Property and Baggage. Verify that every aliens property envelope includes the following: a copy of Form I-43 that lists all baggage and personal effects; the warrant of removal or other documentation of removal or voluntary departure; and medical certificates as required.

(c) Commercial Travel. When traveling by bus or train, familiarize yourself with all entrances, exits, and compartments. Do not allow detainees to open windows while en route. Allow detainees to walk up and down the aisle only when necessary. When traveling on commercial aircraft, pre-board. Remain seated during stopovers.

(d) Problem Cases. At least one officer must sit beside anyone expected to try to escape. When resorting to handcuffs, do not cuff the alien to the carrier.

(e) Escapes. Exercise judgment in deciding whether to purse an escapee. Consider such factors as the number of escort officers, group size, location, the likelihood of success, and whether pursuit could jeopardize the security and accountability of the other detainees or endanger the general public.

For procedures on reporting an escape, see Reporting Assaults, Escapes and Other Incidents in Chapter 44.1.

16.10 Justice Prisoner Alien Transportation System (JPATS) [Reserved].

16.11 Removals by Special Charter Aircraft

# Chapter 17 Removal Process: Post Order Custody Reviews (POCR)

17.1   Post Order Custody Regulation

17.2   Final Order Definition

17.3   Removal Period

17.4   Field Procedures

17.5   Other Factors for Consideration During Post Order Custody Review

17.6    Penalties for Failure to Cooperate in Obtaining A Travel Document

17.7    Likelihood of Removal

17.8    Possible Decisions of Deciding Officials At Field Level

17.9    Serving Notice of Final Decision

17.10   Postponement of Review

17.11   Headquarters Post Order Detention Unit

17.12   Orders of Supervision

17.13   Future Reviews

17.14   Sanctions Against Countries That Fail to Issue Travel Documents

17.15   Failure to Cooperate

References:

INA: Sections 212, 241

Regulations: 8 CFR Part 241

Other: HQCDU Intranet Web Site; Federal Register notices: Continued Detention of Aliens Subject to Final Orders of Removal, 66 FR 56967 (November 14, 2001) and Notice of Memorandum, 66 FR 38433 (July 24, 2001).

17.1    Post Order Custody Regulation.

(a)    History. As a result of the Supreme Courts decision in Zadvydas v. Davis, 533 U.S. 678 (2001), Headquarters Removal Operations Division has established procedures for the review of all final order cases in custody. This decision limits the Services ability to continue to detain aliens beyond 90 days after the issuance of a final order of removal. In general, the Supreme Court ruled that an alien can no longer be kept in detention (unless special circumstances as defined in 8 CFR 241.14 exist), once it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. This decision applies to aliens admitted into the United States as refugees and those who entered without inspection, but does not apply to aliens paroled under section 212(d)(5) of the Immigration and Nationality Act (Act), arriving aliens, or Mariel Cubans.

(b)    Overview. Post Order Custody Reviews (POCRs) will be conducted on aliens who are detained in Service custody to ensure that their detention is justified and that it is in compliance with governing laws and regulations. In particular, the instructions under

Field Procedures in section 17.4 of this manual are to be applied to all aliens in custody with a final order. When conducting POCRs, two key issues are to be considered:

Availability of a travel document and significant likelihood of removing the alien in the reasonably foreseeable future (pursuant to 8 CFR 241.13); and

Threat to the public or flight risk (pursuant to 8 CFR 241.4).

In general, field offices conduct POCRs within the 90-day removal period as defined by section 241(a) of the Act. They generally retain custody jurisdiction under 8 CFR 241.4 and continue efforts to remove the alien until the 180-day point (90 days beyond the expiration of the removal period) for all cases. Certain cases, where the alien is considered a threat to the public or a flight risk and whose removal is not likely, may be referred to the Headquarters Post-order Detention Unit (HQCDU) following the 90 day review. After day 180, custody jurisdiction for all cases transfers to HQCDU. Once HQCDU takes jurisdiction over a case, it will generally make a custody determination based on the feasibility of removal in the reasonably foreseeable future pursuant to 8 CFR 241.13.

17.2    Final Order Definition.

The definition of a final order can be found in 8 CFR 241.1. Authority to issue removal orders lies with an immigration judge, the Board of Immigration Appeals, a federal court judge, or any authorized Service official. An order of removal becomes final:

Upon dismissal of an appeal by the Board of Immigration Appeals (Board);

Upon waiver of appeal by the respondent;

Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;

If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;

If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or

If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period except where the respondent has filed a timely appeal with the Board. In such a case, the order becomes final upon an order of removal by the Board or the Attorney General, or upon overstay of any voluntary departure period granted or reinstated by the Board or the Attorney General.

17.3    Removal Period.

(a)     Removal Period Defined. Section 241(a)(1) of the Act contains the definition of the removal period. Except as otherwise provided in that section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the removal period). During this 90-day period, the Attorney General shall detain the alien. The removal period begins on the latest of the following:

   The date the order of removal becomes administratively final;

   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the courts final order; or

   If the alien is detained or confined (except under an immigration process), the date the alien is released from such detention or confinement.

The 90-day removal period refers to the initial period of 90 days that an alien is in INS custody subsequent to the issuance of a final order of removal.

(b)     Reasonable Time to Effect Removal. As indicated above, the removal period is defined to be a 90-day period. However, the Supreme Court ruled in Zadvydas that detention of an alien ordered removed is presumptively reasonable for a six-month period in order to effectuate removal. Further, the Court held that this does not mean that the alien must automatically be released after the six-month period. Rather, the Court held that an alien may be held in confinement past the six-month period, if the government has made a determination that there is a significant likelihood of removal in the reasonably foreseeable future. In addition, the Court found that there may be special circumstances requiring the aliens continued detention, as outlined in 8 CFR 241.14.

The Court held that the period of time which can be considered as the reasonably foreseeable future, becomes increasingly shorter as the length of time the alien has been held in post-order INS detention increases. See Zadvydas, 533 U.S. at 701. In other words, the longer an alien remains in INS custody after being ordered removed, the higher the burden on the government to establish that the aliens removal is going to occur in the reasonably foreseeable future.

(c)     Suspension of Removal Period. The removal period shall be extended and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to facilitate the aliens departure or conspires or acts to prevent the aliens removal. This includes any failure or refusal on the part of the alien to provide information or to take any other action necessary to obtain a travel document [See INA 241(a)(1)(C) of the Act]. Prior to the government suspending the removal period, the alien must have:

   Been served with a notice of what he/she is required to do [See the form, Instruction Sheet to Detainee;

Been given the opportunity to comply; and

Subsequently failed to comply.

(d) Deciding Official. The deciding official is responsible for making the final decision whether to continue detention of an alien. At the field level, the deciding official is the District Director. At the headquarters level, the Director of the Post Order Detention Unit is the deciding official.

17.4   Field Procedures.

These procedures apply to all detained aliens except Mariel Cubans whose parole is governed by 8 CFR 212.12.

(a) Travel Documents. Field offices will work to obtain a travel document for all aliens in custody with a final order. For countries where history shows that obtaining a travel document takes longer than 30 days, requests for assistance must be forwarded to the HQ Travel Document Liaison Unit at the same time as a request is sent to the local consulate. For all cases, the field should immediately forward a timely request for assistance to HQ Travel Document Liaison Unit upon determination that a problem exists in obtaining a document within the statutory removal period. The Information for Travel Document or Passport, Form I-217, is to be filled out accurately and completely, following an interview with the alien. The field office is responsible for making the appropriate follow up with the HQ Travel Document Unit regarding the status of the travel document and in making the appropriate annotations in the A-file and in DACS.

(b) Warning for Failure to Depart, Form I-229(a). Every alien in custody shall be served an I-229(a) and Instruction Sheet to Detainee. These forms can be obtained from the Intranet at: [(b)(2)High] [(b)(2)High]. The forms must be served no later than 30 days after receipt of a final order. The alien must be served either via personal service or certified mail, return receipt. The Instruction Sheet to Detainee gives the alien notice of what he or she is required to do in order to assist in the removal process and gives the alien the opportunity to comply with the request.

(c) Notice of Review (File or Interview). Every alien in custody must be served a Notice of Review (File or Interview, at the discretion of the deciding official) no later than 60 days after issuance of a final order (even on cases that the removal period has not yet begun or has been suspended). This notice will provide instructions to the alien on evidence or documentation that may be submitted by the alien for consideration during the file review. If the alien or his or her representative requests additional time to prepare materials beyond the time when the deciding official expects to conduct the records review, such a request will constitute a waiver of the requirement that the review occur prior to the expiration of the removal period. The deciding official must determine if the

review will be based solely on a file review or if it will include a telephonic, video teleconference, or personal interview.

(d)     POCR Review (File or Interview). For every alien in custody with a final order, a POCR Worksheet package shall be completed, pursuant to criteria and factors found in 8 CFR 241.4 (threat/flight risk) no later than 90 days after the issuance of a final order (if in custody when final order issued) or no later than 90 days after coming into custody with an outstanding final order. The package will be forwarded expeditiously to the deciding official for review and signature. A POCR is not to be completed without the aliens A-file. If, under extenuating circumstances, an A-file is not obtainable and a temporary file has to be created, the temporary file is to have copies of all immigration history documents, as well as other pertinent supporting documentation, investigative reports, and other pertinent memoranda, before a review is done.

17.5    Other Factors for Consideration During Post Order Custody Review.

(a)     Stays of Removal.

(1) Stay of Removal issued by a federal court. This issue is being reviewed by Office of General Counsel and HQDRO. An agency position is in the process of being developed.

(2) Stay of Removal Issued by Immigration Judge or Board of Immigration Appeals (BIA). Follow the procedures under Stay of Removal issued by a federal court.

(3) Stay Issued by District Director. The POCR process will continue as normal. The field will conduct a 90-day review and at day 180, the case will transfer to HQCDU. At day 181, HQCDU will review the case and the stay issued at the field level for determination of continuation of custody and/or the stay.

(4) Service and Court Agreement Stays. For the purposes of removal and the POCR process, if a formal, written stay has not been issued, no stay exists and the alien can be removed at anytime, unless otherwise advised by General Counsels Office, Office of Immigration Litigation, or the United States Attorneys Office. The POCR process will proceed through the normal process.

(b)     Field Responsibility. The field will complete an informal review every 30 days to ensure that the stay is still in place, and update DACS as appropriate. Further instructions will follow once stay issue has been resolved.

17.6    Penalties for Failure to Cooperate in Obtaining a Travel Document.

(a)     Refusing to Make a Timely Application for a Travel Document. If an alien refuses to make timely application (separate and apart from the Services efforts) for travel documents or conspires or acts to conspire to prevent his removal, the aliens removal period is to be extended. A POCR Worksheet package is to be completed and the Notice of Failure to Comply, is to be served on the alien advising him of the reason for the

extension of the removal period and the actions needed to restart the removal period. The Notice of Failure to Comply must state the specific request that the alien failed to comply with, as stated on the Instruction Sheet to Detainee. The alien shall be considered for criminal prosecution.

Until the alien has come into compliance, the case will remain under field jurisdiction. The field will complete an informal review every 30 days to determine if the alien has come into compliance with the requirement, and update DACS as appropriate. The field will conduct formal reviews in accordance with POCR procedures.

Once the alien has come into compliance with the requirement to assist with removal, the field must document the A-file and conduct a new POCR Worksheet package based on the change in circumstances. If the alien is continued in detention after the new review, the field will retain jurisdiction for 90 days after the decision before referring the case to HQCDU.

Just because an alien does not submit an application for a travel document on his or her own does not necessarily mean that the alien is refusing to cooperate. Some examples of refusal to cooperate may be:

   Refusal to fill out an application for a travel document;

   Refusal to provide information requested by a foreign consulate;

   Providing false or inaccurate biographical information;

   Failure to assist the Service in obtaining a travel document; or

   Acts deliberately committed to prevent his or her removal; etc.

Although such a conclusion might be warranted in a particular case, the totality of the circumstances must be weighed before a final determination is made.

(b) Criminal Prosecutions. Aliens who fail to comply with the requirement to assist the Service with obtaining a travel document should be referred to the United States Attorneys Office for criminal prosecution under Section 243(a) of the Act, 8 U.S.C. 1253(a). A current record of the referrals, which were accepted or declined by the U.S. Attorneys Office, is to be kept by the field office.

17.7   Likelihood of Removal.

Under 8 CFR 241.13, only HQCDU has the authority to make a custody determination based on the likelihood of removal in the reasonably foreseeable future. However, the field office may consider the availability of a travel document as a factor when making the custody decision pursuant to the 8 CFR 241.4 at the time of the 90-day review. HQCDU will review the case under 8 CFR 241.13 once the deciding official at the field

level transfers custody jurisdiction to HQCDU following the 90 day review or at day 181, if the deciding official had retained the custody determination for an additional 3 months after the expiration of the removal period.

The alien is required to assist in removal by helping to obtain a travel document and making individual efforts to effectuate his or her own removal. Under the Zadvydas decision, the alien has the initial burden of showing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The Service has the burden to rebut the aliens claim. The field office is to ensure that the alien knows his/her obligation to assist in obtaining a travel document. In addition, the field office is to actively pursue a travel document with the foreign consulate or embassy.

When reviewing inadmissible or excludable aliens (arriving aliens and aliens paroled pursuant to Section 212(d)(5) of the Act), 8 CFR 241.13 is inapplicable. However, the likelihood of repatriation may be weighed along with the threat and flight risk factors contained in 8 CFR 241.4.

Nonimmigrant S-visa Cases. Aliens pending an S-visa are not to be removed from the United States. Further clarification regarding release from custody is currently pending with General Counsel and with HQINV.

17.8    Possible Decisions of Deciding Officials At Field Level (Up to Day 180).

(a) Remain in Custody. A deciding official may decide to continue to detain an alien where:

   The alien has failed to comply with requirement to assist in his or her removal, and the removal period has been extended;

   The aliens removal is significantly feasible in the reasonably foreseeable future and/or alien is deemed a threat to the public or a flight risk; or

   The alien is deemed a flight risk or threat (for arriving aliens and aliens paroled into the U.S. pursuant to Section 212(d)(5) of the Act).

(b)    Release the Alien Under an Order of Supervision. Release the alien on an Order of Supervision (with required conditions) as the alien is not a threat to the public or a flight risk (and removal is not feasible in the foreseeable future) or because the alien is an arriving alien who is not deemed a threat or flight risk.

In the written detain decision, notification that custody jurisdiction will transfer to HQCDU on day 181, or 90 days after the end of the removal period, if period was extended (whichever is later), must be included.

POCR write-ups are to be complete, thorough, and must include all pertinent facts of the aliens case. Copies of documentation submitted by the alien are to be included in the

POCR package sent to HQCDU. All decisions must include case specific justifications. Boiler plate write-ups are unacceptable.

17.9     Serving Notice of Final Decision.

The deciding official will notify the alien in writing whether he or she is to be released from custody, or that he or she will be continued in detention pending removal or further review of his or her custody status.

If an alien is to be released from custody pending an action by the government or the alien, the alien must be notified of the conditions that must be met before the alien will be released. Upon the conditions being met, the alien will be served the Release Notification, Order of Supervision (Form I-220B) with all appropriate attachments, and then released under an order of supervision.

17.10    Postponement of Review.

In the case of an alien who is in the custody of the Service, the local office director or the HQCDU Director may, in his or her discretion, suspend or postpone the custody review process if such detainee's prompt removal is practicable and proper, or for other good cause. The decision and reasons for the delay shall be documented in the alien's custody review file and A-file, as appropriate. Reasonable care will be exercised to ensure that the alien's case is reviewed once the reason for delay is remedied or if the alien is not removed from the United States as anticipated at the time the review was suspended or postponed.

17.11    Headquarters Custody Determination Unit (HQCDU).

(a)    Cases Detained Beyond the 90-Day Removal Period. The field may maintain jurisdiction of all cases until the 180-day point (or transfer custody determination jurisdiction to Headquarters after the 90 day review, as removal is unlikely). If at day 181, removal has not been effected or release has not been granted, the 90-day POCR Worksheet package will be forwarded to HQCDU with a memorandum updating the worksheet package. Cases in which the alien has failed to cooperate will not be sent to HQCDU, as the removal period has not yet begun or has been extended.

(b)    For All Cases Over 180 Days (90 Days Beyond the 90-Day Removal Period). HQCDU will hold jurisdiction for custody decisions pursuant to 8 CFR 241.4, 241.13, and 241.14. The field officer will retain responsibility for docket control, case management, completion of future reviews, and will continue appropriate follow up efforts to remove the alien. Once HQCDU issues a decision to continue detention and the alien has not been removed within a reasonable time frame, the local field office is to inform HQCDU by way of a memorandum (which is also to include any updates to the POCR package) so that a new custody decision under 8 CFR 241.13 may be made. The review described in 8 CFR 241.13 is not an annual review. Reviews for inadmissible aliens pursuant to 8 CFR 241.4 are to be done annually, after the initial 90-day review.

For habeas cases over 180-days in custody, HQCDU will coordinate with the United States Attorneys Office (USAO), the Department of Justice Office of Immigration Litigation (OIL), and the INS Office of the General Counsel (OGC). The preferred method of transmittal of POCR Worksheet packages to HQCDU is express mail.

(c)   Referral to HQCDU Under 8 CFR 241.14 (Special Circumstances). Once the Service determines that removal is not likely to occur in the reasonably foreseeable future (pursuant to 8 CFR 241.13, usually because a travel document cannot be obtained), an alien may remain in Service custody only if he or she meets the criteria set forth in 8 CFR 241.14, as described below:

  Medical Case: contagious disease(s) that is a threat to the public safety, 8 CFR 241.14(b).

  Release that may result in adverse foreign policy consequences, 8 CFR 241.14(c).

  Release that may pose a significant threat to national security or a risk of terrorism, 8 CFR 241.14(d).

  Alien has been determined to be specially dangerous due to the prior commission of a crime of violence (8 CFR 241.14(f)(1)(i)), a mental condition or personality disorder (8 CFR 241.14(f)(1)(ii)), and no conditions of release can reasonably be expected to ensure the safety to the public (8 CFR 241.14(f)(1)(iii)). Determinations made under 8 CFR 241.14(f) require a physicians report based on a full medical and psychiatric evaluation of the alien (8 CFR 241.14 (f)(3)).

(d)   Consultation with Public Health Service. On all referrals that fall into the 1st or 4th category above (medical cases or specially dangerous), HQCDU will refer the case to HQPHS for certification of condition. Only HQCDU can make custody determinations under 8 CFR 241.14. Upon a decision by HQCDU to release an alien after referral under 8 CFR 241.14, HQCDU will forward to the field the release decision and the Public Health Services recommendations for appropriate conditions to be included in the order of supervision.

Upon a decision by HQCDU to detain an alien under 8 CFR 241.14(b), (c), or (d), HQCDU will forward the detain decision for service on the alien. For an alien detained under 8 CFR 241.14(f) as having been determined to be specially dangerous by Headquarters, HQCDU will forward to the field the detain decision and all relevant documents for service on the alien and EOIR. The field office must complete

Form I-863, Notice of Referral to Immigration Judge, and serve copies of the entire package on the alien and EOIR.

HQCDU retains the authority to take over jurisdiction of custody determination of any case, at any time.

(e) Other 8 CFR 241.14 Cases. For cases falling under 8 CFR 241.14(c) and (d), HQCDU will coordinate certification requirements with the Office of General Counsel. A complete copy of the A-file is to be sent to HQ for all potential 8 CFR 241.14 cases.

(f) Habeas Cases. For all cases where a Petition for Writ of Habeas Corpus is filed in the United States District Court where the case is within the 180-day period, the field will coordinate with the Office of the District Counsel, USAO, and/or OIL as appropriate. Cases beyond the 180-day period will be coordinated by HQCDU, Office of General Counsel, and the Office of Immigration Litigation, as well as the local USAO as appropriate.

(g) DACS. All pertinent information is to be noted in the appropriate screens (b)(2)High (b)(2)High by the field.

17.12    Orders of Supervision.

(a)    Release. Aliens approved for release will be released under an Order of Supervision (O/S) with such conditions that are deemed necessary (for example, regular reporting requirements, requirements to obtain travel documents, rehabilitative treatment programs, residence in halfway house, and so forth). The alien is to be served with the Release Notification decision, as well as the O/S (Form I-220B) with appropriate attachments. Bonds may be authorized for certain cases in order to ensure that the alien abides by the conditions of the O/S. Bond amounts are to be reasonable and must be in a range that the alien should be able to post. Chapter 15 (section 15.1(b)), and 8 CFR 241.5 contain additional information and guidance regarding O/S releases.

Release-on-bond decisions are to include instructions on how the alien may request reconsideration of the bond amount. The aliens request for reconsideration should include appropriate financial documentation in support of his/her request.

Conditions of release that require the successful completion of a halfway house or other outpatient treatment program will be coordinated between HQCDU and HQPHS. The local field office is to ensure that the alien provides proof of completion of the required program when he/she reports in on the O/S.

Initial release conditions may require weekly reporting for a period of time to be determined by each field office. If satisfactory appearances are made, reporting may be extended to monthly intervals. In no circumstance will the frequency-of-reporting requirement be less than once every three months. Failure-to-appear cases will be considered under the National Fugitive Operations program (NFOP) (Chapter 19) within five working days of the violation. The alien is required to report to a field office or sub-office with a permanent Detention and Removal Operations presence.

(b)    Revocation of Release. Upon violation of the conditions of the order of supervision, a complete review of the circumstances surrounding the violation must occur in order to make the determination to revoke the order. The alien is to be promptly served

with the Notice of Revocation of Release to indicate the reason for the revocation. In addition, an informal interview with the alien is to be conducted to afford the alien the opportunity to respond to the reasons for the revocation. If the alien is not released after the informal interview, the POCR review process begins anew. The government has another six months in order to effect the aliens removal, or to determine what conditions should govern the aliens release, if he or she cannot be removed. If the decision is made to allow the alien to remain on the order of supervision, additional conditions may be imposed on the alien. Certain repeat offenders may be good candidates for O/S bonds.

(c) Revocation of Release Due to Changed Circumstances. Upon the determination that a released alien can be removed, the aliens release may be revoked and the alien may be returned to custody. Upon return to Service custody, the same procedure as stated in (b) above are to be followed. If the circumstances under which an alien was taken back into custody no longer exist and his/her removal is no longer imminent, the alien is to be released.

The decision to revoke an aliens release may be made by the field office where the alien is physically located. The HQCDU may review any decision to revoke made at the field level. At any time after HQCDU has issued a decision letter to release an alien under 8 CFR 241.13 and before an alien has been physically released from custody, if the field receives notification a travel document will be issued, the notice of release is automatically revoked. The field will issue a withdrawal of release approval letter to the alien.

17.13    Future Reviews.

(a) General Field Office Responsibilities. If an alien is maintained in custody after a HQCDU review at the 180-day point, the aliens case will be reviewed again once the field office has made a determination that removal in the reasonably foreseeable future is not likely. The field office is to notify HQCDU by way of a memorandum or new updated POCR worksheet, so that a new custody decision may be made by HQCDU. The field officer is responsible for conducting the review, completing the POCR Worksheet package, and forwarding the field officers recommendation to HQCDU for a new decision.

Regardless of the mandated formal case reviews, each case officer is to review every long-term final order case and update DACS at the minimum every 30 days.

See the HQCDU Web Site for POCR-related forms and sample decisions.

(b) For Cases Under 8 CFR 241.4. After a decision to detain an alien as a threat to the public or a flight risk pursuant to 8 CFR 241.4, an alien may request a new review, based on a material change in circumstances, not more than once every 3 months in the interim between annual reviews. HQCDU has 90 days to respond to the aliens request. The alien will file this request with the field office having jurisdiction over his case. The field office will review the request to ensure it meets the requirements for a new request. If the

request is not in compliance with the requirements, the field will serve the alien with a notice stating the alien is not eligible for the review, as he has not met the requirements for a new review. If the requirements are met, the field will update the most recent POCR worksheet completed in the field and will forward the aliens request, POCR worksheet, and field update to HQCDU. Although the regulations allow for annual reviews pursuant to 8 CFR 241.4, the Supreme Courts restrictions on post-order detention in the Zadvydas decision must be taken into consideration. In essence, most cases (except those in which Zadvydas does not apply) will not remain subject to 8 CFR 241.4. Once their removal is no longer reasonably foreseeable, they would revert to a review under 8 CFR 241.13.

(c) For Cases Under 8 CFR 241.13. An alien may request a review under 8 CFR 241.13 by providing evidence that his removal will not occur in the reasonably foreseeable future. He may request this review six months after the HQCDU decision denying release under this section. The alien will file this request with the field office having jurisdiction over his case. The field office will review the request to ensure it meets the requirements for a new request. If the request is not in compliance with the requirements, the field will serve the alien with a notice stating the alien is not eligible for the review, as he has not met the requirements for a new review. If the requirements are met, the field will update the most recent POCR worksheet completed in the field and will forward the aliens request, POCR worksheet, and field update to HQCDU. HQCDU will consider any additional evidence provided by the alien or otherwise available and render a new decision on the likelihood of removal in the reasonably foreseeable future.

(d) Special Circumstances Case Reviews. For aliens detained pursuant to 8 CFR 241.14, further reviews are governed by 8 CFR 241.14(d), in the case of Foreign Policy and Security Concerns, and by 8 CFR 241.14(k), in the case of specially dangerous aliens.

17.14    Sanctions Against Countries That Fail to Issue Travel Documents.

See Chapter 16.1(a) and 16.2(b).

17.15    Failure to Cooperate.

# Chapter 18: Removal Process: Mariel Cubans

References:

Regulations: 8 CFR 212

Other: Cuban Review Plan Training Manual

Between April and October 1980, approximately 129,000 Cubans fled their nation in boats and arrived in or near Key West, Florida, during what became known as the freedom flotilla, or Mariel Boatlift. The migrants were initially screened by the Immigration and Naturalization Service, and most were paroled into the United States to family members or other sponsors. Under the Cuban Adjustment Act, Pub. L. 89-732