## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ
and LUIS GORDILLO, et al.,

Individually and on behalf of all others
similarly situated,

       Plaintiffs-Petitioners,

    v.

CHAD WOLF, et al.,

       Defendants-Respondents.

No. 1:18-cv-10225-MLW

**EMERGENCY RELIEF REQUESTED**

## MEMORANDUM IN SUPPORT OF MOTION FOR IMMEDIATE INTERIM RELEASE OF CLASS MEMBER AND SUPPLEMENTING SHOW-CAUSE MOTION

Class member Soeun Kim has been detained apart from his U.S. citizen wife and children for nearly nine months without an interview or other required 8 C.F.R. § 241.4 procedures. The government deprived Mr. Kim of these procedures even after Petitioners informed Respondents of repeated violations of these requirements for class members at issue in Petitioner's show-cause motion. Petitioners hereby supplement that motion, Dkt. Nos. 304 and 354, and move for Mr. Kim's immediate release. Petitioners respectfully request that the Court order Respondents to respond by 6:00 p.m. on Monday, December 23, 2019, with any reason why the Court should not order Mr. Kim's release so that he can spend Christmas with his family.

Mr. Kim's immediate release is appropriate. Mr. Kim has complied with conditions of release since 2014. Until his detention, he lived in Saco, Maine with his wife, her two oldest children, and their almost-two-year-old daughter; their five-month-old baby was born while Mr. Kim was in ICE custody. Mr. Kim's detention violates due process and 8 C.F.R. § 241.4. His immediate release is warranted due to the irreparable harm his family is suffering, the time it will

take to fully litigate the show-cause motion, and the government's choice to keep violating

Section 241.4 knowingly, after having been given every opportunity to comply.  The Court

should also stay Mr. Kim's release to permit adjudication of the issues in Petitioners' show-cause

motion.

## BACKGROUND

Mr. Kim was born in a refugee camp in Thailand and came to the United States at the age

of six.  He struggled in his youth, particularly after the death of his grandfather, whom he was

close to.  At age 22, Mr. Kim began what would be a 14-year prison term for burglary and

robbery.  While in prison, he turned his life around.  He took more than 50 educational courses,

completed his high school education, and voluntarily participated in the 12-step Alcoholics

Anonymous program.  Kim Aff. ¶ 11 (Cox. Decl. Ex. H[1]).  He became a devout Catholic while

incarcerated and was baptized in 2010 by Cardinal Sean O'Malley.  *Id.* ¶ 12.  In 2013, he married

Theresa St. Pierre Kim, whom he has known since 1997, when they met while growing up

together in Maine.  *Id.* ¶¶ 5-6, 14.

In 2014, Mr. Kim was transferred to Immigration and Customs Enforcement (ICE)

custody, ordered removed, and spent a total of approximately seven months in ICE custody.

Since his release on an order of Supervision in November 2014, Mr. Kim complied with

conditions of release, worked two jobs, continued his devotion to his faith, and started a life and

family with Ms. St. Pierre Kim.  *See id.* ¶¶ 2, 14-16.

In March 2019, Mr. Kim received a notice requiring him to report into ICE to be

detained.  He reported as required on March 20, 2019, knowing that he would be re-detained, and

---

[1] References to "Cox Decl. Ex. __" are to the exhibits to the Declaration of Jonathan A. Cox,
filed herewith.

has been in custody ever since. *Id.* ¶ 17. During his detention, Mr. Kim was assaulted by an ICE

officer and at times denied treatment for a debilitating disease which, without proper medical

treatment, could leave him paralyzed. *Id.* ¶ 22. Mr. Kim received 90-day and 180-day reviews,

but—in both instances—ICE entirely failed to comply with the requirements of Section 241.4.

ICE purported to conduct another custody review on November 14, 2019, but again did so

without notice or an interview. Mr. Kim's wife filed an I-130 petition on December 12, 2019,

making them *Calderon* class members. *Id.* at ¶ 1.[2]

## ARGUMENT

### I.  Mr. Kim's continued detention is unlawful because ICE violated 8 C.F.R. § 241.4.

ICE violated due process and Section 241.4 by failing to follow clear regulatory

requirements for revocation of release and for Mr. Kim's 180-day review. *See* June 11, 2018

Order (Dkt. No. 95) at 7 ("[The Post-Order Custody Review (POCR) regulations] were expressly

intended to provide all aliens the due process that is constitutionally required before deciding

whether their detention should be continued following the initial 90-day removal period.").

### A.  ICE revoked Mr. Kim's release without providing the three-month review required by Section 241.4(l).

After complying with an order of supervision and checking in with ICE for more than

four years, Mr. Kim's release was revoked on March 20, 2019, without any of the procedures

required under Section 241.4(l)(3).

When ICE revokes the release of an individual who has been released from detention on

an order of supervision, 8 C.F.R. § 241.4(l) entitles him to specialized procedures to determine

that revocation was warranted. "[W]ithin approximately three months after release is revoked"

---

[2] Before becoming a *Calderon* class member, Mr. Kim filed a habeas petition, which remains pending. *See Kim v. Donelan*, No. 1:19-cv-12342-ADB (D. Mass. Nov. 13, 2019).

ICE must conduct a full review with an interview to determine whether release will continue to be revoked.  8 C.F.R. § 241.4(l).  Specifically, the three-month review requires: (1) an interview (review "will commence with notification to the alien of a records review and scheduling of an interview"); (2) notice; (3) a review conducted by headquarters ("the HQPDU [Headquarters Post-Order Detention Unit] Director shall schedule the review process"); and (4) an evaluation of "any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."  *Id.* § 241.4(l)(3).

ICE does not follow these procedures.  Instead, in direct contravention of the regulation, its own Detention and Removal Operations Policy and Procedure Manual[3] treats three-month reviews under Section 241.4(l) like ordinary 90-day file reviews provided to noncitizens whose release has not been revoked.  *See* Dkt. No. 404-1 at 11-12; *see also* Dkt. No. 354 at 22-24 (discussing similar violations with regard to class member Sambu Sisse).  Unsurprisingly, the requirements for Mr. Kim's three-month review were ignored.

- *Mr. Kim was not interviewed in connection with his custody review (**violation 1**).*  Mr. Kim was not scheduled for and did not receive an interview in connection with his three-month review.  Kim Aff. ¶ 20.

- *The custody review did not evaluate the facts relevant to the warrant of revocation (**violation 2**).*  Although Mr. Kim's review was conducted by ICE

---

[3] Respondents recently stated to this Court that this manual is "no longer relie[d] on" by ICE and is "no longer available on ICE's intranet."  Dkt. No. 404 at 1.  But as recently as August 23, 2019, Respondents relied on this manual to argue that their interpretation of the meaning of the "removal period"—which, they claim, permits ICE to detain someone for 90 days without any custody review regardless of when their final order became final—is entitled to deference.  *See* Dkt. No. 360 at 26 ("Respondents' interpretation is the reasoned opinion of the agency as illustrated by internal guidance … ***Chapter 17 Removal Process: Post Order Custody Reviews (POCR), attached hereto as Exhibit E***." (emphasis added)).  Respondents only notified this Court of the status of the manual in response to the Court's October 12, 2019 Order, Dkt. No. 398.  They have not corrected their August 23, 2019 brief or other briefing related to Petitioners' Motion for Order to Show Cause relying on this manual.  And they dodged this Court's Order requiring them to state "when and why" ICE stopped relying on the Manual.  *Compare* Dkt. No. 406 at ¶ 3, *with* Dkt. No. 415 at ¶ 3.

headquarters, ICE conducted the review without an evaluation of whether revocation was warranted.  Thus, neither the notice of his review nor the decision to continue his detention discussed whether his release was appropriately revoked. Cox Decl. Exs. B, C, E, F, G.

**B.     In Mr. Kim's case and others, ICE has persistently failed to follow the 180-day custody review procedures.**

After more than six months in detention, Mr. Kim's custody was reviewed by ICE headquarters; however, his review was conducted without an interview and without notice.  All of these violations occurred after Petitioners filed their Motion for Order to Show Cause.

*Mr. Kim was not given notice of his 180-day review (**violation 3**)*.  Mr. Kim was given no notice of his 180-day review.  *See* Kim Aff. ¶ 20; Cox Decl. ¶ 10.  ICE was required to give Mr. Kim notice approximately 30 days before the review.  8 C.F.R. § 241.4(k)(2)(ii).

*Mr. Kim was not interviewed for his 180-day review (**violation 4**)*.  During the October 10 and 11, 2019 hearing on Petitioners' show-cause motion, testimony revealed that ICE Headquarters was systematically and continuously violating the POCR regulations by failing to conduct the interviews required as part of its 180-day custody reviews.  8 C.F.R. § 241.4(i)(3)(i)-(ii); Oct. 11, 2019 Hr'g Tr. 20:12-22; *id.* at 22:12-15.  Indeed, testimony revealed that ICE did not even have a panel of people to conduct interviews and make recommendations, as Section 241.4(i) requires.[4]  Like so many others, ICE headquarters did not interview Mr. Kim when conducting his 180-day custody review, and still has not done so, even though ICE was put on

---

[4] ICE likely disregarded not only the interview requirement, but also other aspects of the Review Panel's operation.  Under 8 C.F.R. § 241.4(i), which governs 180-day reviews, the HQPDU Director must work with a panel to make an initial recommendation regarding a person's release. Specifically, ICE Headquarters must assign a two-person panel to do an initial review.  8 C.F.R. § 241.4(i)(1).  If the panel's decision is not unanimous, the "Director of the HQPDU or his or her designee" shall join the panel, which shall make a recommendation "by majority vote."  *Id.*  If the panel does not recommend release, ICE must then conduct an interview and make a written recommendation as to the person's release, *id.* at §241.4(i)(3), (5).  But Michael Bernacke, who makes decisions on individuals' detention, indicated that a review panel did not exist.  Oct. 11, 2019 Hr'g Tr. 67:23-68:6, 68:23-69:5.

notice of its systemic violations of this requirement on August 2, 2019.  *See* Aug. 2, 2019 Hr'g

Tr. 59:1-4.

**II.      Mr. Kim's immediate release is appropriate.**

While Mr. Kim's unlawful custody warrants release as an ultimate remedy, release during

the pendency of Petitioners' show-cause motion is an appropriate and necessary exercise of the

Court's equitable habeas powers.  Mr. Kim's immediate release is also warranted under

traditional preliminary injunction standards.  *See Cablevision of Boston, Inc. v. Pub. Imp.*

*Comm'n of City of Boston*, 38 F. Supp. 2d 46, 53 (D. Mass. 1999) (in considering whether to

grant a preliminary injunction, the court held it must weigh "whether the plaintiff has shown a

likelihood of success on the merits," "whether the plaintiff has established an imminent threat of

irreparable harm in the absence of a preliminary injunction," "the hardship to the plaintiff if no

injunction is issued against the hardship to the defendants if the requested injunction is ordered,"

and "the effect of the proposed injunction on the public interest"), *aff'd*, 184 F.3d 88 (1st Cir.

1999).

As the parties' November 19, 2019 status report reveals, a full adjudication of

Petitioners' show-cause motion requires discovery into the factual record surrounding the

government's systemic violations of the post-order custody regulations.  *See* Joint Status Report

(Dkt. No. 428) ¶ 2.  Because (1) Petitioners have shown a likelihood of success on the merits,

(2) Mr. Kim, his wife, and his three U.S. citizen children face irreparable harm from his

continued detention, and (3) the public interest favors his release, Mr. Kim's immediate release

is warranted until this Court can resolve the issues raised in this Motion and in Petitioners' July

Motion for Order to Show Cause.

Two factors are of particular relevance with regard to the government's interests.  ***First***,

the government has no legitimate interest in Mr. Kim's detention.  Mr. Kim does not pose a

danger or a flight risk.  He has complied with the requirements of his supervision for more than four years.  Kim Aff. ¶ 15.  Additionally, Mr. Kim voluntarily reported to the ICE Field Office in Biddeford, Maine knowing that he would be re-detained.  Kim Aff. ¶¶ 17-20.  His detention serves no legitimate purpose.

*Second*, the government made this motion necessary by failing to follow the post-order custody review procedures in Mr. Kim's case almost two weeks after Petitioners informed ICE of the systemic violations of the interview requirements.  Although Petitioners notified the government on August 2, 2019 of systemic violations of the notice and interview requirements in connection with 180-day reviews, ICE nevertheless opted not to provide Mr. Kim with notice of his 180-day review or to conduct an interview in connection with his August 15, 2019 review. Although the government purported to conduct another custody review on November 14, 2019, it again did so without notice or an interview.

### III.    It is Appropriate to Stay Mr. Kim's Removal in Order to Permit the Court to Adjudicate Issues Concerning ICE's Violation of Section 241.4.

It is appropriate for the Court to preserve its jurisdiction over the important questions raised in this motion—including ICE's systemic noncompliance with Section 241.4 and its impacts on Mr. Kim—by staying Mr. Kim's removal during the pendency of Petitioners' show-cause motion.  *See* 28 U.S.C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."); Dkt. No. 6 at 2-3; Dkt. No. 32 at 1; Dkt. No. 307 at 1-2.

## CONCLUSION

For these reasons, Petitioners respectfully request that the Court allow the motion, find that Respondents have continued to violate the procedural due process rights of Mr. Kim, order his immediate release, and stay his removal until an appropriate final remedy can be entered.

Respectfully submitted this 20th day of December, 2019.

<div style="display:flex">
<div>

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

</div>
<div>

*/s/ Jonathan A. Cox*
Kevin S. Prussia (BBO # 666813)
Michaela P. Sewall (BBO # 683182)
Shirley X. Li Cantin (BBO # 675377)
Jonathan A. Cox (BBO # 687810)
Stephen Provazza (BBO # 691159)
Colleen M. McCullough (BBO # 696455)
Matthew W. Costello (BBO # 696384)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
kevin.prussia@wilmerhale.com
michaela.sewall@wilmerhale.com
shirley.cantin@wilmerhale.com
stephen.provazza@wilmerhale.com
colleen.mccullough@wilmerhale.com
matthew.costello@wilmerhale.com

*Counsel for Petitioners*

</div>
</div>