**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, | )<br>)<br>)<br>) |
| Individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs-Petitioners, | )  No. 1:18-cv-10225-MLW<br>)<br>) |
| v. | )<br>) |
| CHAD WOLF, *et al.*, | )<br>) |
| Defendants-Respondents. | )<br>)<br>) |

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION**
**FOR IMMEDIATE INTERIM RELEASE OF CLASS MEMBER**

## INTRODUCTION

This Court should deny Petitioners' motion for a preliminary injunction[1] seeking release and a stay of removal for Mr. Kim. Under the traditional factors, Petitioners must show, among other things, that this Court has jurisdiction to issue the requested relief and a likelihood of success on the merits of their claim. *Corp. Techs., Inc. v. Harnett,* 731 F.3d 6 (1st Cir. 2013). Yet, Petitioners have failed to make either showing. First, this Court lacks subject-matter jurisdiction to stay Mr. Kim's removal.[2] Contrary to Petitioners' argument, the plain text of 8 U.S.C. § 1252(g) precludes this Court from staying his removal pursuant to the All Writs Act. Nor can this Court exercise jurisdiction under the Suspension Clause because Petitioners advance no colorable argument that his removal is currently unlawful. ICE has "considered what it's legally required to consider, including the fact that [Mr. Kim is] applying for provisional waivers." Transcript of October 10, 2019 Hearing at 13:7-9. Therefore, under this Court's own analysis, it does not have habeas jurisdiction under the Suspension Clause to stay Mr. Kim's removal. *See id.* Accordingly, regardless of whether this Court orders Mr. Kim's release, this Court should deny Petitioners' request to stay Mr. Kim's removal during the pendency of their motion for order to show cause.

Second, Petitioners fail to demonstrate that release is the proper remedy for the alleged Post Order Custody Review ("POCR") violations. While Petitioners allege purported POCR violations, they still fail to demonstrate the rest of their claim – i.e., that Mr. Kim is entitled to

---

[1]. Because Petitioners seek release and a stay of removal during the pendency of their Motion for Order to Show Cause—a period beyond the traditional time limits of temporary restraining orders—Petitioners actually move for a preliminary injunction, not a temporary restraining order. *See* Fed. R. Civ. P. 65(b)(2). The parties seemingly agree that Petitioners, in fact, seek a preliminary injunction. *See* ECF No. 438 at 6 (referencing the "traditional preliminary injunction standards").

[2] Respondents acknowledge this Court's jurisdiction to order Mr. Kim's release under its habeas powers. However, this Court lacks jurisdiction to stay his removal.

release and a stay of removal as a result. Because Petitioners fail to demonstrate the likelihood of

success on this crucial element of their claim, their motion fails. Therefore, this Court should deny

Petitioners' motion for emergency relief.[3]

**ARGUMENT**

> **I.      This Court Lacks Subject-Matter Jurisdiction to Stay Mr. Kim's Removal.**

Notwithstanding whether the Court orders Mr. Kim's release from custody, the Court lacks

subject-matter jurisdiction to stay Mr. Kim's removal. As amended by the REAL ID Act of 2005,

8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of
> law, (statutory or nonstatutory), ***including section 2241 of Title 28, or any
> other habeas corpus provision and sections 1361 and 1651 of such title,*** no
> court shall have jurisdiction to hear any cause or claim by or on behalf of any
> alien arising from the decision or action by the [Government] to commence
> proceedings, adjudicate cases, or execute removal orders against any alien
> under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Therefore, in enacting section 1252(g), Congress

unequivocally stripped district courts of the authority to hear claims seeking to prevent ICE from

executing removal orders. *See, e.g., Ishak v. Gonzales,* 422 F.3d 22, 27-28 (1st Cir. 2005) ("[T]he

REAL ID Act [], in the plainest of language, deprives the district courts of jurisdiction in removal

cases."); *Foster v. Townsley,* 243 F.3d 210, 214 (5th Cir. 2001) (holding the district court had no

jurisdiction even though DHS executed a removal order contrary to an automatic stay); *Tejada v.

Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court

orders regarding alien removal—*be they stays or permanent injunctions*—were to be issued by the

appropriate court of appeals.") (emphasis added); *cf. Aziz v. Chadbourne,* No. 07-11806-GAO,

---

[3] Petitioners' motion alleges that Mr. Kim was assaulted by an ICE officer and cites Ms. St. Pierre-
Kim's declaration. ECF No. 438 at 3. However, her declaration states that it was a "correctional
officer," not an ICE officer, who allegedly assaulted her husband. ECF No. 439-8 at ¶ 22.

2007 WL 3024010, *2 (D. Mass. Oct. 15, 2007) (acknowledging that 8 U.S.C. § 1252(g) bars granting of any stay of removal for alien admitted under Visa Waiver Program who had pending adjustment application); *Julce v. Smith,* C.A. No. 18-10163-FDS, 2018 U.S. Dist. LEXIS 31510, 2018 WL 1083734, *4 (D. Mass. Feb. 27, 2018) (holding section 1252 deprives the district court of jurisdiction to stay petitioner's final removal order). Further, contrary to Petitioners' argument, the All Writs Act does not confer subject-matter jurisdiction on this Court because section 1252(g) applies notwithstanding ***any*** habeas provision ***and*** the All Writs Act in 28 U.S.C. § 1651(a). *See* 8 U.S.C. § 1252(g); *see also* ECF No. 438 at 7. Therefore, Petitioners have failed to carry their burden to demonstrate this Court's jurisdiction to issue the requested relief.

The Suspension Clause does not preserve this Court's jurisdiction either. Courts have only exercised jurisdiction under the Suspension Clause where an alien has claimed that his removal is temporarily unlawful. In those instances, courts reasoned that a district court has jurisdiction under the Suspension Clause to stay an alien's removal until the alien's removal becomes lawful. In *Devitri* and *Hamama,* the aliens claimed their removal was unlawful while their motions to reopen, which could ultimately invalidate their removal orders, were pending. *Devitri v. Cronen,* 289 F. Supp. 3d 287, 293-94 (D. Mass. 2018); *Hamama v. Adducci,* 258 F. Supp. 3d 828, 838-39 (E.D. Mich. 2017), rev'd *Hamama v. Adducci,* No. 18-1233 (6th Cir. 2018). And in this case, the Court exercised jurisdiction because it held that an alien's removal was unlawful until ICE considered an alien's pursuit of provisional waivers. *Jimenez v. Nielsen,* 334 F. Supp. 3d 370, 383 (D. Mass. 2018). Respondents are unaware of any case where a court has exercised jurisdiction under the Suspension Clause and stayed an alien's removal absent any argument that the alien's removal is currently unlawful. Even where the alien has alleged removal is unlawful, at least one court in this

district has held that where the alien was dilatory in pursuing relief, the Suspension Clause in not

implicated. *Julce,* 2018 U.S. Dist. LEXIS 31510, at *11.

Unlike those cases discussed above, Petitioners do not claim that Mr. Kim's **removal** is

unlawful due to alleged POCR violations. Nor could they. ICE has considered all it is required to

consider prior to enforcing Mr. Kim's final order of removal and has complied with this Court's

order regarding consideration. *See* Declaration of Marcos Charles, attached hereto as Exhibit A.

In making the decision to enforce Mr. Kim's removal order, ICE has considered the following:

1. Mr. Kim had a Form I-130 filed on his behalf less than two weeks ago, which makes
him a *Calderon* class member. *Id.* at ¶ 23.

2. The purpose of the provisional unlawful presence waiver (to minimize the time family
members have to spend apart) and the effect of Mr. Kim's removal on his U.S. citizen
wife and children. *Id.* at ¶¶ 24-25.

3. The declaration Ms. St. Pierre-Kim submitted in support of Petitioners' motion. *See*
ECF No. 439-8; *see also* Ex. A at ¶¶ 23, 25.

4. Mr. Kim's significant criminal history, including convictions for Robbery, Burglary,
and Aggravated Assault. *Id.* at ¶ 26.

5. The fact that Mr. Kim's convictions may categorically qualify as a crime involving
moral turpitude. *Id.* at ¶ 26; *see* 8 U.S.C. § 1182(a)(2)(A)(i)(I). And, as a result, ICE
believes Mr. Kim may be inadmissible for a ground other than 8 U.S.C. §
1182(a)(9)(B), and thus may not be able to benefit from a provisional unlawful
presence waiver. *See* 8 C.F.R. § 212.7(e)(3), (e)(14)(i) (automatically revoking a
provisional waiver upon a determination that the alien is inadmissible for reasons other
than unlawful presence). Ex. A at ¶ 26.

After considering all of these factors, ICE has decided to proceed with removing Mr. Kim, despite

his class membership.

This detailed consideration, as evidenced by the attached declaration, establishes that Mr.

Kim's removal is lawful even under this Court's analysis. Therefore, Petitioners cannot present

any colorable argument that Mr. Kim's removal is unlawful. Absent such an argument, Petitioners

cannot establish that the Suspension Clause preserves this Court's jurisdiction to stay Mr. Kim's

removal. Indeed, this Court has stated that as long as ICE has considered all it is required to consider with regard to a class member's pursuit of a provisional waiver, the Court lacks subject-matter jurisdiction to review ICE's exercise of discretion to enforce a class member's removal order. *Jimenez,* 334 F. Supp. 3d at 390; *see also* Transcript of October 10, 2019 Hearing at 13:7-9. Additionally, despite being married since 2013 and eligible to pursue a Form I-130 since then, ***and*** eligible to pursue a provisional waiver since 2016, Mr. Kim did not begin pursuing a provisional waiver until approximately two weeks ago. *See* ECF No. 439-8 at ¶ 14. Mr. Kim's unexplained delay in pursuing relief further cuts against any argument that the Suspension Clause preserves the Court's jurisdiction over his removal-based claims. *Julce,* 2018 U.S. Dist. LEXIS 31510, at *11.

Finally, Respondents have a substantial interest in enforcing Mr. Kim's final order of removal. *See Harnett,* 731 F.3d at 6 (discussing the balance of hardship and public interest preliminary injunction factors). Mr. Kim has been convicted of a violent crime and the United States has an interest in enforcing final orders of removal of individuals with criminal histories. *See Nken v. Holder,* 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable … 'permit[s] and prolong[s] a continuing violation of United States law.'"). Accordingly, Petitioners cannot establish the preliminary injunction factors with regard to staying Mr. Kim's removal and this Court should deny their request notwithstanding the Court's decision regarding release from custody.

## II.     Petitioners Incorrectly Describe the Extent of Purported POCR Violations in Mr. Kim's Case.

As a threshold matter, the parties do not dispute that Mr. Kim received several timely POCRs conducted by ICE Headquarters ("ICE HQ").[4] Rather, Petitioners allege that ICE violated the POCR regulations in four discrete ways. ECF No. 438 at 4-5. First, Petitioners allege ICE did not personally interview Mr. Kim in connection with his 90-day custody review. ICE admittedly did not interview Mr. Kim in connection with his 90-day review as required. However, ICE did provide an informal interview upon revocation of his release as required. Declaration of Marcos Charles, attached hereto as Exhibit A at ¶ 10; *see also* 8 C.F.R. § 241.4(l).

Second, Petitioners allege that ICE did not provide a proper 180-day review by failing to provide notice and a personal interview. ECF No. 438 at 5. However, ICE was not required to provide Mr. Kim with this 180-day review ***at all***. 8 C.F.R. § 241.4(l). Mr. Kim was only entitled to a 90-day review and annual reviews thereafter — not a 180-day review. 8 C.F.R. § 241.4(l)(3) (providing that the first review will occur "within approximately three months after release is revoked" and "[t]hereafter, custody reviews will be conducted annually. . ."). The review ICE conducted at day 180 in Mr. Kim's case was purely discretionary, with procedures that are not expressly defined. *See* 8 U.S.C. § 241.4(k)(2)(v) ("The HQPDU Director, in his or her discretion, may schedule a review of a detainee at shortal intervals when he or she deems such review to be warranted."). The lack of an interview and notice in connection with this ***discretionary*** review on day 180 could not violate the POCR regulations because no review was required in the first instance.[5] *See id.*

---

[4] Because ICE revoked Mr. Kim's release, his custody reviews are governed by 8 C.F.R. § 241.4(l) and conducted by ICE HQ, not ICE Boston. 8 C.F.R. § 241.4(l).

[5] This discretionary review is not a substitute for Mr. Kim's *annual* review, in March 2020, which will require proper notice and a personal interview. 8 C.F.R. § 241.4(l).

Finally, Petitioners misinterpret the regulation providing that the "***custody review*** will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.4(l)(3) (emphasis added). Unlike other provisions in section 241.4, this section only references the custody ***review*** and does not reference the custody ***decision*** that must be served on the alien. *Compare* 8 C.F.R. § 241.4(l)(3) *with* 8 C.F.R. § 241.4(d). Therefore, contrary to Petitioners' argument, this provision does not require that the determination or evaluation be written or memorialized in the custody decision. However, ICE nevertheless complied with that requirement even as Petitioners interpret it. More particularly, to the extent that a written evaluation and determination was required, ICE revoked Mr. Kim's release because ICE determined that it could now execute his removal order. ECF No. 439-1; Ex. A at ¶ 9. As a result, the only determination of facts related to the revocation that ICE was arguably required to make was whether ICE could indeed execute his removal order. *See* 8 C.F.R. § 241.4(l)(3). ICE made such a determination in its custody decision and therefore complied with the regulation, even under Petitioners' proposed interpretation. *See* 8 C.F.R. 241.4(l)(3); ECF No. 439-5, 439-6, 439-7.

Far from Petitioners' contention that "ICE *entirely* failed to comply with the requirements of Section 241.4," Respondents *at least* substantially complied with the POCR regulations. ECF No. 438 at 3. Therefore, this Court should deny the remedies Petitioners' seek as a result of the alleged POCR violations.

### III.   Mr. Kim Has Failed to Demonstrate Any Prejudice that Could Warrant Relief.

The First Circuit has consistently held in the immigration context that "[t]o make out a due process violation, a claimant must show that a procedural error led to fundamental unfairness as well as actual prejudice." *Conde Cuatzo v. Lynch,* 796 F.3d 153, 156 (1st Cir. 2015); *Miranda-*

*Bojorquez v. Barr,* -- F.3d --, 2019 WL 40233640, *5, n.7 (1st Cir. 2019); *see also United States v. Deleon,* 444 F.3d 41, 56-57 (1st Cir. 2006) (holding that a "showing of prejudice" is a "threshold requirement" for establishing a valid due process claim). Although "prejudice is an amorphous concept," there is no prejudice if the error would "not make any difference to the outcome of the review." *Kheireddine v. Gonzales,* 427 F.3d 80, 86 (1st Cir. 2005). A claimant cannot demonstrate prejudice if he or she had the ability to correct the claimed prejudicial error and made no effort to do so. *See id.* ("Nor may a petitioner meet his burden of showing prejudice if the missing material can be reasonably recreated or derived from other sources, and the petitioner has made no effort to obtain such a substitute record."). A showing of prejudice is required even where the Government has violated a statute or regulation protecting a detainee's constitutional rights. *United States v. Montalvo-Murillo,* 495 U.S. 711, 717 (1990) ("There is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must be some corollary punitive sanction for departures or omissions, even if negligent.").

At a minimum, Mr. Kim must show there is "a reasonable probability that" but for the procedural error, "the result of the proceeding would have been different." *Lee v. United States,* 137 S. Ct. 1958, 1964 (2017). He fails to do so with respect to the errors in his custody reviews. Mr. Kim's wife contends that they would have submitted documents had they known of the opportunity, but Petitioners do not contest that Mr. Kim received notice of his initial review that informed him he could submit documents in support of his release. *See* ECF Nos. 439-2, 439-8 at ¶ 20. Further, Mr. Kim cannot establish that if he had an interview, there is a reasonable probability that ICE would have released him despite his serious criminal history; nor can he negate the fact that the availability of a travel document weighed against his release from custody. *See* ECF No. 439-7. Indeed, Mr. Kim's spouse did not even file a Form I-130 on his behalf until *after* his latest

custody review in November; therefore, he could not have raised his pursuit of a provisional waiver as a factor weighing in favor of release. *See* Ex. A at ¶ 23.

Even though there may be circumstances where the court may presume prejudice, those circumstances are rare and none exist here. To dispense with a showing of prejudice, the petitioner must establish that the specific provision of the regulation — as opposed to an entire regulatory scheme — is borne of a constitutional right. *Leslie,* 611 F.3d at 179-180. To be sure, § 241.4 is not merely a housekeeping regulation; yet, not every provision of the regulation was specifically promulgated to protect a constitutional right such that a violation does not require a showing of prejudice. *Leslie,* 611 F.3d at 179 (stating that "an administrative agency is not a slave of its rules"). Assuming this Court determines the custody reviews themselves to be derivative of the constitutional rights emanating from *Zadvydas*, it does not follow that *every* procedure in § 241.4 is so closely connected to, and derivative of, the constitutional right at issue in *Zadvydas* so as to excuse a showing of prejudice. To do so is inconsistent with the analysis in *Leslie* and would allow Petitioners to bypass a showing of prejudice even, for example, where ICE allegedly violates the provision requiring ICE HQ to conduct the custody review instead of local ICE, or where a petitioner alleges that a copy of an employment authorization is not forwarded to ICE HQ. *See Leslie,* 611 F.3d at 181-82; 8 C.F.R. § 241.4(c)(2), (d)(2).

Even if the custody reviews themselves are derivative of the constitutional right at issue in *Zadvydas,* the specific regulations ICE allegedly violated are too attenuated from that constitutional right to bypass the need for a finding of prejudice under *Leslie.* Failure to conduct an interview and provide notice of a *recurring* custody review, where the review was timely completed and no request was made to submit documentation in support of release is not directly related to the constitutional right implicated in *Zadvydas* – the right to be free from indefinite

detention where there is no significant likelihood of removal in the reasonably foreseeable future. This is especially true here, where ICE faced no true impediment in securing travel documents for Mr. Kim and there were no contested facts regarding the likelihood of his removal. *See* 65 Fed. Reg. 80291-92 ("The ability to secure a travel document by itself supports a decision to continue detention pending removal of the alien and obviates the need for further custody review because it means that the alien can be deported promptly. Custody reviews may be pretermitted in the case of an alien for whom travel documents are available."); 8 C.F.R. § 241.4(g)(3). To the extent this Court finds *Leslie* persuasive, it should still decline to apply its reasoning here because Petitioners have failed to show that the specific regulatory provisions at issue were meant to protect Mr. Kim's constitutional right to be free from indefinite detention where Petitioners do not contest the likelihood of his removal.

### IV.    Mr. Kim is Not Entitled to Release.

Regardless of Mr. Kim's obligation or ability to demonstrate prejudice, the remedy for these particular alleged violations is a remand to the agency to comply with the proper procedures— not outright release or release after a bond hearing conducted by the Court. *See Ford v. Wainwright,* 549 F.2d 981, 982-83 (5th Cir. 1977) (holding that the remedy for failure to conduct a parole hearing in accordance with the regulations is remand for a new hearing); *Sutherland v. McCall,* 709 F.2d 730, 732 (D.C. Cir. 1983) (providing that the remedy for failure to provide a parole revocation hearing within 90 days of arrest is a writ of mandamus to compel compliance with the statute); *Northington v. United States Parole Comm'n,* 587 F.2d 2, 3 (6th Cir. 1978); *Whitlow v. Bellotti,* 508 F. Supp. 2d 108, 111 (D. Mass. 2007). The Supreme Court has recognized that automatic release for ***every*** violation of a detention statute or regulation would "bestow a

11

windfall upon the [detainee] and visit a severe penalty upon the Government and citizens."[6] *Montalvo-Murillo,* 495 U.S. at 712. Release is not the proportionate remedy where the detention is otherwise lawful and in accordance with the applicable *statutory* detention authority. *Id.* A person does not automatically "become immune from detention" for every regulatory violation. *Id.* This is true even where the statute or regulation is aimed at protecting a "vital liberty interest." *Id.* at 717. Rather, courts reserve release only for those *procedural* due process violations that are so unreasonable and prejudicial that they invade on a petitioner's *substantive* due process rights. Simply put, the remedy for a violation of a detention regulation cannot defeat the purposes of the statute authorizing the detention in the first place. *Id.* at 720 ("Automatic release contravenes the object of the statute, to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee."); *United States v. Shields,* 649 F.3d 78, 87 (1st Cir. 2011).

Considering the purpose of 8 U.S.C. § 1231(a)(6) detention and the substantive due process rights implicated by post-order detention, release is not the appropriate remedy for the alleged violations here. The purpose of post-order detention in § 1231(a)(6) is to ensure an alien's presence at the time of removal. *Zadvydas,* 533 U.S. at 680. Given this purpose, the Supreme Court held that where detention is unrelated to the purpose of removal, an alien's detention is unlawful. *Id.* Against this backdrop, the Court should only order the drastic remedy of release if the alleged procedural violations invaded the detainee's right to ensure his or her detention is related to the purpose of removal. *See Montalvo-Murillo,* 495 U.S. at 720; *Shields,* 649 F.3d at 87. To order release without such a finding would be contrary to the entire purpose of the detention statute,

---

[6] Indeed, even in the cases Petitioners cited in their Motion for Order to Show Cause (ECF No. 360), the remedy for a violation of the regulation was a *remand to the agency* to conduct the proper procedures. *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir. 1993); *Leslie,* 611 F.3d at 183.

which authorizes detention until it is no longer related to the purpose of removal – i.e. until there is no longer a reasonable likelihood of removal in the reasonably foreseeable future. *See Zadvydas,* 533 U.S. at 680.

Here, Petitioners request this Court order Mr. Kim's release to remedy the alleged POCR violations. However, they do not explain why Mr. Kim's *detention* — as opposed to the application of POCR procedures in his case — is unlawful. Petitioners cannot plausibly argue that these alleged violations resulted in detention unrelated to the purpose of removal. Indeed, it is undisputed that ICE made several individualized decisions to ensure that Mr. Kim's removal was foreseeable and thus his detention is related to the purpose of removal. Therefore, even in the face of these specific alleged violations, Mr. Kim's detention remains lawful.

This conclusion is consistent with this Court's prior order regarding the POCR regulations and other district court decisions addressing POCR violations. *See* ECF No. 95; *Bonitto v. Bureau of Immigration & Customs Enf't,* 547 F. Supp. 2d 747, 758 (S.D. Tex. 2008) (remanding to ICE to conduct a proper POCR); *Achouatte v. Holder,* No. 4:11-cv-03977-VEH, 2012 WL 2357711, *3 (N.D. Ala. May 14, 2012) (recognizing the POCR violation is a due process violation but remanding to the agency to conduct a proper review). Last year, the Court held that it would conduct a bond hearing as a remedy for several violations of the POCR regulations. The Court reached this conclusion, however, only after hearings revealed that: (1) ICE had violated the POCRs even as it interprets them; (2) no one at ICE had completed a meaningful custody review of the detainees; and (3) some of the detainees "might be entitled to release" before being removed. ECF No. 95 at 49, 39. Accordingly, with respect to those individuals, it was at least arguable that the procedural due process violations invaded on the detainee's substantive right to be free from detention that is not *related to the purpose of removal*. As explained above, the same is not true

13

here. Mr. Kim cannot plausibly argue that the alleged violations invaded on his right to ensure his detention is related to the purpose of removal. ICE made several *timely* individualized decisions regarding its ability to remove Mr. Kim. In fact, ICE conducted *more* reviews than even required in a Mr. Kim's case. *See* 8 C.F.R. § 241.4(l)(3) (requiring only one review within the first year of detention). To order release despite this indisputable fact would undercut the entire purpose of and drastically limit the scope of the detention authority in § 1231(a)(6). Because such a result is impermissible under applicable precedent, this Court should deny Petitioners' request for release. *See Montalvo-Murillo,* 495 U.S. at 720; *Shields,* 649 F.3d at 87.

**CONCLUSION**

For the following reasons, this Court should deny Petitioners' motion for immediate interim release.

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

T. MONIQUE PEOPLES
Senior Litigation Counsel

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov
*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

      I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

 

                                    /s/ Mary L. Larakers
                                    Mary L. Larakers
Dated: December 24, 2019              Trial Attorney