UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ AND LUIS GORDILLO, ET AL., individually and on behalf of all others similarly situated,

Petitioners-Plaintiffs,

v.

CHAD WOLF, ET AL.,

Respondents-Defendants.

C.A. No. 18-10225-MLW

MEMORANDUM AND ORDER

WOLF, D.J. December 24, 2019

On Friday, December 20, 2019, after 6:00 p.m., Seoun Kim, a member of the plaintiff class in this case, filed a Motion For Immediate Interim Release (the "Motion"), supported by a memorandum, documents, and an affidavit from his wife. In essence, Kim alleges he has been unlawfully detained by Immigration and Customs Enforcement ("ICE") for nine months.

On December 23, 2019, the court ordered respondents to, by December 24, 2019, either: (a) release Kim immediately pending resolution of his request that his removal be stayed until the issues raised by the Motion are resolved on the merits; or (b) respond to the Motion and seek to show cause why the court should not order Kim's release. The court also scheduled a December 27, 2019 hearing on the Motion if Kim is not released and ordered that

he not be removed from the District of Massachusetts until the Motion is resolved.

On December 24, 2019, counsel for respondents Mary Larakers reported that she is on leave and would be unavailable for the December 27, 2019 hearing. Therefore, she requested that the Motion be decided on the pleadings. Kim reportedly requests that the hearing be held if the court does not order his release based on the pleadings.

On December 24, 2019, respondents filed an opposition to the Motion, which argues primarily that the court lacks jurisdiction to stay Kim's removal indefinitely. An affidavit of the Acting ICE Field Office Director, Marcos Charles, was also filed.

The Motion is, in essence, a request for a temporary restraining order mandating Kim's temporary release. Therefore, the court deems the Motion to be subject to Federal Rule of Civil Procedure 65(b), and is analyzing it under the standards that apply to both a motion for a preliminary injunction and a motion for a temporary restraining order. See e.g. Cablevision of Boston v. Public Improvement Comm'n, 38 F. Supp. 2d 46, 53 (D. Mass. 1999).

For the reasons explained below, the court is: issuing the requested temporary restraining order; ordering that Kim be released forthwith on the conditions of his previous release; vacating paragraph 3 of the December 23, 2019 Order, which prohibits ICE from removing Kim from the United States; ordering

that the temporary restraining order continue until January 8, 2020, at 12:00 noon; and, in part because the court will be unavailable from December 30, 2019 to January 13, 2020, denying respondents' request to postpone the December 27, 2019 hearing unless, by 10:00 a.m. on December 26, 2019, respondents agree to an extension of the temporary restraining order until January 17, 2020, at 6:00 p.m.

The court's decision to order Kim's immediate release and to allow ICE to remove him from the United States is based on certain, evidently undisputed facts. These include the following.

Kim is of Cambodian descent. He was born in a refugee camp in Thailand. Kim came to the United States as a refugee and became a Lawful Permanent Resident. However, he lost that status after committing serious crimes, serving about 14 years in prison, and being ordered removed to Cambodia.

Upon his release from prison in 2014, Kim was temporarily detained by ICE and then released on certain conditions. Kim did not violate any of those conditions.

Kim is married to Theresa St. Pierre-Kim, who is a United States citizen. They have a daughter who is almost two and a son who is five-months old. Both children are United States citizens. In March 2019, Kim was ordered to report to ICE to be detained because it appeared ICE would soon obtain the documents necessary

to remove him to Cambodia. Kim did not flee. Rather, he voluntarily surrendered as directed.

Kim has demonstrated that he is reasonably likely to prevail on his claim that he has been unlawfully detained by ICE. It is undisputed that ICE violated its regulations concerning detention in at least one respect.

ICE regulations - which are laws, see Jimenez v. Cronen, 317 F. Supp. 3d 626, 655 (D. Mass. 2018) - require that when an alien's release is revoked and he is detained, whether his detention should be continued must be reviewed within approximately three months and that review must include an interview of the alien. See 8 C.F.R. §241.4(l). It is undisputed that Kim, who has been detained for nine months, has never been interviewed as required by §241.4(l).

There is a reasonable likelihood that Kim has been prejudiced by ICE's failure to interview him. An interview is not a mere formality. Although the written record may suggest that continued detention is appropriate, an interview focused on the unique circumstances and attributes of an individual can alter that assessment. Indeed, in this case that has in effect occurred. In October 2019, ICE reversed its decisions to detain three aliens pending removal after hearing their testimony in court. An interview would have permitted Kim to explain, among other things, that: he had complied with the conditions of his release for four

years; he voluntarily reported to ICE as ordered; he is devoted to his family and has worked to support them; and he has become a committed Catholic. If ICE had discharged its duty to discuss these matters with Kim, there is a reasonable likelihood that it would have decided to release him rather than to use some of its limited jail space to continue his detention.

Kim has been, and continues to be, irreparably harmed by ICE's unlawful conduct. As respondents have repeatedly acknowledged in this case, separation of an alien from his or her citizen spouse and children is a form of irreparable harm. Kim is scheduled to be removed from the United States the week of January 5, 2020. Therefore, the opportunity to spend time with his family now is especially precious and irreplaceable.

The balance of hardships also favors ordering Kim's temporary release. ICE does not contend that, if released, Kim will be dangerous or flee. His release would cause no cognizable hardship to ICE. However, again, Kim is being irreparably harmed by being separated from his wife and children.

Ordering Kim's release will also serve the public interest. In 2018, this court found that ICE officials in Massachusetts had repeatedly violated ICE regulations and denied two aliens due process by failing to give them the required notice of 90-day custody reviews. See Jimenez v. Cronen, 317 F. Supp. 3d 626 (D. Mass. 2018). ICE subsequently reported that 30 to 40 other

individuals were being detained without the procedural due process ICE's regulations are intended to provide. Id. at 637.

The October 2019 testimony of a high-ranking ICE official revealed that he and other ICE officials in Washington, D.C. had repeatedly violated ICE regulations with regard to 180-day reviews by failing to interview detainees. See Oct. 11, 2019 Tr. at 20, 22. Indeed, the witness, who shared responsibility for administering 180-day detention reviews nationally, was prior to this case not aware that the regulations require interviews and, therefore, had been making unlawful decisions for years. Id.

The failure of ICE to provide Kim the interview required by its regulations indicates that the prior decisions and proceedings in this case have not been sufficient to communicate to ICE that it is unlawful for it to ignore the requirements of its regulations. It is in the public interest to remind ICE, yet again, that it must obey the law.

As indicated earlier, respondents' opposition focuses primarily on its contention that the court lacks jurisdiction to enjoin Kim's removal, which is now scheduled for the week of January 5, 2020. This issue raises complex questions, which the court has discussed, but not decided, previously. The court understands that Kim is contesting ICE's authority to remove him in another case, Kim v. Donelan, Civ. No. 19-12342-ADB, which is pending before Judge Allison Burroughs. While the court is

concerned that the issues presented by Kim's unlawful detention are capable of recurring concerning other aliens and of evading review, it concludes that it is most appropriate to allow Judge Burroughs to decide whether Kim's scheduled removal is legally required or appropriate. Accordingly, the court is vacating paragraph 3 of its December 23, 2019 Order.

In summary, the court is granting Kim's request for a temporary restraining order, ordering his release for at least 14 days, but not prohibiting his removal in that period. If ICE agrees to an extension of the temporary restraining order until at least January 17, 2020, the court will postpone the December 27, 2019 hearing to the week of January 13, 2020.

In view of the foregoing, it is hereby ORDERED that to the extent that the Motion (Docket No. 437) requests a temporary restraining order, it is ALLOWED as follows:

1. ICE shall release Kim forthwith on the conditions previously imposed and promptly report to the court that this has been done.

2. Paragraph 3 of the December 23, 2019 Order (Docket No. 440) is VACATED.

3. This temporary restraining order shall expire on January 8, 2020, at 12:00 noon unless ICE consents to its extension to at least January 17, 2020, at 6:00 p.m., or good cause is shown for an extension.

4. Respondents shall, by 10:00 a.m. on December 26, 2019, report whether they consent to an extension of this temporary restraining order to at least January 17, 2020. If not, the court will conduct the December 27, 2019 hearing, at 9:30 a.m., as previously ordered.

UNITED STATES DISTRICT JUDGE