## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br> Individually and on behalf of all others similarly situated, <br><br>         Plaintiffs-Petitioners, <br><br>    v. <br><br> CHAD WOLF, et al., <br><br>         Defendants-Respondents. | No. 1:18-cv-10225-MLW <br><br><br> **EMERGENCY RELIEF REQUESTED** |

## MEMORANDUM IN SUPPORT OF MOTION TO ENJOIN THE REMOVAL OF TWO CLASS MEMBERS

Immigration and Customs Enforcement (ICE) intends imminently to remove two class members based on legal error.  This Court has explained that "a decision by ICE to remove an alien pursuing a provisional waiver solely because he or she has a final order of removal would, as a practical matter, eliminate the alien's right to apply for a provisional waiver," in violation of due process, the Administrative Procedure Act (APA), and the Immigration and Nationality Act (INA).  *Calderon Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 389 (D. Mass. 2018) (due process); May 3, 2019 Hr'g Tr. 36-37, 46-49 (APA and INA).  ICE now violates the INA, APA, and due process by seeking to remove Salvador Rodriguez-Aguasviva, who has no criminal history, based solely on a legally erroneous understanding of the consequences of his failure to appear at a removal hearing.  That same error infects the planned removal of Erik Rodriguez-Oseguera. Both removals should be enjoined, or—in the case of Mr. Rodriguez-Oseguera—stayed pending a determination not infected by error.

Mr. Rodriguez-Aguasviva and Mr. Rodriguez-Oseguera are class members who are the beneficiaries of Petitions for Alien Relative (I-130 petitions) filed by their U.S. citizen spouses. Each is thus at the initial stage of the five-step provisional waiver process. *See Calderon Jimenez*, 334 F. Supp. 3d at 378. Each was ordered removed *in absentia,* after failing to appear for an immigration court proceeding.

Although the provisional waiver regulations permit a noncitizen with a final order of removal—"*including* an *in absentia* order"—to apply for a Provisional Unlawful Presence Waiver (Form I-601A) after completing other steps, 8 C.F.R. § 212.7(e)(4)(iv) (emphasis added), ICE now interprets those regulations and this Court's rulings to allow it to pretermit any class member's ability to pursue the provisional waiver process based solely on an *in absentia* removal order. In a notice to class counsel, ICE stated that it will remove Mr. Rodriguez-Aguasviva because "he is likely unable to receive" an I-601A waiver due to his "being inadmissible under Section 212(a)(6)(B) of the Immigration and Nationality Act for failure to attend his removal proceeding." McCullough Decl. Ex. A.[1]  Similarly, in justifying Mr. Rodriguez-Oseguera's removal, ICE stated that "he may be unable to" receive the I-601A waiver for the same reason. McCullough Decl. Ex. B. These statements are incorrect. In making them, ICE relies on two legal errors: the first relates to the criteria for I-601A waivers, and the second relates to the ground of inadmissibility that ICE relies on, 8 U.S.C. § 1182(a)(6)(B).

***First***, the class members' *in absentia* removal orders—and any potential inadmissibility under 8 U.S.C. § 1182(a)(6)(B)—do not render them "unable" to receive I-601A waivers. To the contrary, USCIS has made the express decision to permit noncitizens with *in absentia* orders to

---

[1] References to "McCullough Decl." are to the Declaration of Colleen McCullough, filed herewith.

seek lawful status under the provisional waiver process.  8 C.F.R § 212.7(e)(4)(iv).  It also made

the decision **not** to factor any potential grounds of inadmissibility into its adjudication of I-601A

waivers.  *See* Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed.

Reg. 50,244, 50,253-54 (July 29, 2016) (2016 Final Rule).  Thus, even if Mr. Rodriguez-

Aguasviva and Mr. Rodriguez-Oseguera *were* inadmissible under 8 U.S.C. § 1182(a)(6)(B), that

would not impact their eligibility for I-601A waivers.

   ***Second***, ICE incorrectly assumes that all noncitizens with *in absentia* removal orders are

inadmissible under 8 U.S.C. § 1182(A)(6)(B).  But having an *in absentia* order of removal is not

itself a bar to admissibility.  Section 212(a)(6)(B) of the INA bars admission for five years only

if the noncitizen failed to appear at his or her immigration proceeding "*without reasonable

cause*,"  a determination made in the first instance by the Department of State at an individual's

consular interview.  8 U.S.C. § 1182(a)(6)(B) (emphasis added).  Mr. Rodriguez-Aguasviva and

Mr. Rodriguez-Oseguera have not been found to be subject to 8 U.S.C. § 1182(a)(6)(B).

   Because ICE's reasons for removing Mr. Rodriguez-Aguasviva rest entirely on ICE's

erroneous understanding of the consequences of his *in absentia* order of removal,[2] his removal

should be enjoined.  And because this legal error also infects ICE's decision to remove Mr.

Rodriguez-Oseguera, his removal should be stayed at least until ICE has considered whether his

removal is appropriate without relying on its misunderstanding of his *in absentia* order.

---

[2] Although ICE also cites the denial of his motion to reopen, a denied motion to reopen results in
nothing more than a noncitizen continuing to have a final order of removal.

# FACTS

## I.     Salvador Rodriguez-Aguasviva

Salvador Rodriguez-Aguasviva and his wife, Ana Rodriguez, have been together for approximately three years.  Mr. Rodriguez-Aguasviva was ordered removed *in absentia* in 2016 and has no criminal history.  He is his family's primary breadwinner and integral to Ana's mental health.  He has helped her cope with debilitating mental illness and supported her and her family through the death of her granddaughter.  Ex. 1 (Decl. of Ana Rodriguez) ¶¶ 1-13.

Mr. Rodriguez-Aguasviva was detained in September 2019 in a traffic stop when he was in New Hampshire.  The couple were married in November 2019, while he was in detention.  Ex. 1 at ¶¶ 2, 14-16.  She subsequently filed an I-130 Petition to begin the provisional waiver process.  McCullough Decl. Ex. A.

ICE has informed counsel for Petitioners that it intends to remove Mr. Rodriguez-Aguasviva from the United States imminently.  ICE explained that:

> [T]he Field Office Director considered that Mr. RODRIGUEZ-Aguasviva was ordered removed <u>in absentia</u> on September 22, 2016, his motion to reopen was denied on October 29, 2019, and he did not appeal to the Board of Immigration Appeals.  As such, the Field Office Director considered that he is likely unable to receive a Form I-601A waiver due being inadmissible under Section 212(a)(6)(B) of the Immigration and Nationality Act for failure to attend his removal proceeding. Based upon such considerations, the Field Office Director determined to effectuate the alien's order of removal from the United States.

McCullough Decl. Ex. A.

## II.     Erik Rodriguez-Oseguera

Erik Rodriguez-Oseguera and his wife Isabelle Santay have a two-year-old son and were trying for another baby when he was arrested by ICE in January 2020.  Ex. 2 (Decl. of Isabelle Santay) ¶ 4, 7. The couple also cares for Isabelle's young daughter.  *Id.* at ¶ 4, 8.  At 23 years

old, Isabelle suffers from a rare and debilitating auto-immune disease and severe rheumatoid arthritis; she relies on her husband to care for their children, to pay their bills, and to help her manage her health.  *Id.* at ¶¶ 6, 10-13.  Mr. Rodriguez-Oseguera was involved in an altercation with police after a car accident in late December 2019, and he has a court date related to these charges on February 25, 2020.[3]  He has a final order of removal that was entered *in absentia* in 2014, when he was 17 years old.  *Id.* at ¶¶ 1-21; McCullough Decl. Ex. B.

ICE has informed counsel for Petitioners that they intend imminently to remove Mr. Rodriguez-Oseguera from the United States.  ICE explained that:

> [T]he Field Office Director considered the alien's criminal history, including arrest history of operating under the influence of liquor, and pending charges for unlicensed operation of motor vehicle, leaving the scene of property damage, assault & battery on a police officer, disorderly conduct, and resisting arrest.  Additionally, the Field Office Director considered that Mr. Rodriguez-Oseguera was ordered removed in absentia on February 25, 2014 and therefore he may be unable to receive a Form I-601A waiver due being inadmissible under Section 212(a)(6)(B) of the Immigration and Nationality Act for failure to attend his removal proceeding.

McCullough Decl. Ex. B.

## ARGUMENT

### I.     ICE's Removal of These Class Members Is Unlawful Because It Is Based on Invalid Reasons

In removing noncitizens, ICE must act consistently with the INA and its accompanying regulations.  8 C.F.R. § 212.7(e)(4)(iv).  It must also act reasonably—it cannot take actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A)—and must comport with due process.  This Court has explained that:

> [A] decision by ICE to remove an alien pursuing a provisional waiver solely because he or she has a final order of removal would,

---

[3] If he is removed with open charges, he is unlikely ever to be permitted to return to the United States.  *See generally* 8 U.S.C. § 1201(g).

as a practical matter, eliminate that alien's right to apply for a provisional waiver and CIS's opportunity to decide the merits of the application before the alien must depart the United States and be separated from his or her family. The binding promises to United States citizens and their alien spouses in the provisional waiver regulations would be meaningless, and their purposes would be undermined, if ICE were not required to consider that an alien with a final order of removal is seeking a provisional waiver before requiring him or her to leave the United States. There is no reason to conclude that, having promulgated the provisional waiver regulations in 2013, and amended them in 2016 to make aliens with final orders of removal eligible for such waivers, the Secretary of DHS intended to allow ICE to ignore the regulations and their important purposes.

*Calderon Jimenez*, 334 F. Supp. 3d at 388-89.  Although the Court limited the effect of that due process ruling to noncitizens with approved I-130 petitions and I-212 waivers, it applied the same reasoning to explain that removing class members based solely on their final orders of removal would violate the INA and APA.  May 3, 2019 Hr'g Tr. 36:17-37:21.[4]  Where ICE's only reason for removing a class member with a final order of removal is a legal error, ICE runs afoul of the INA, APA, and Due Process Clause just as if it had no reason for removal other than the final order itself.

   A.   **Noncitizens Are Not "Unable" to Receive Provisional Unlawful Presence (I-601A) Waivers on the Basis of an *In Absentia* Removal Order.**

   ICE seeks to remove Mr. Rodriguez-Aguasviva and Mr. Rodriguez-Oseguera due to ICE's belief that the class members' I-601A applications would be denied because they have *in absentia* final orders.  But ICE is flatly incorrect.  The 2016 provisional waiver regulations expressly allow noncitizens with *in absentia* orders to pursue provisional waivers and disclaim any intent to deny applications on that basis.  2016 Final Rule, 81 Fed. Reg. at 50,253-54.

---

[4] Petitioners maintain that the class members have a due process interest for the reasons described in their response to Respondents' Motion to Dismiss.  *See* Pets.' Resp. in Opp. to Resps.' Mot. to Dismiss, Dkt. No. 79 at 17-21.

The provisional waiver regulations permit a noncitizen with a final order of removal, "including an *in absentia* order," to apply for an I-601A waiver after fulfilling the prerequisite steps.  8 C.F.R. § 212.7(e)(4)(iv).  USCIS's explanations for its 2016 expansion of the provisional waiver regulations to include noncitizens with final orders similarly addressed *in absentia* removal orders in the same manner as all other removal orders.  2016 Final Rule, 81 Fed. Reg. at 50,262.  Accordingly, USCIS's website instructs noncitizens that:

> If you have a final order of removal, exclusion, or deportation (***including an*** **in absentia** ***order of removal under INA 240(b)(5)***), you can only obtain a provisional unlawful presence waiver if you have applied for, and we have already approved, Form I-212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal, at the time you file Form I-601A.

> Once we have approved your Form I-212, ***you can apply for a provisional unlawful presence waiver by filing Form I-601A***.

*Provisional Unlawful Presence Waivers*, USCIS, (last updated Jan. 5, 2018), www.uscis.gov/ family/family-us-citizens/provisional-unlawful-presence-waivers (emphasis added) (McCullough Decl. Ex. C).

USCIS also made the express determination in 2016 that it would *not* consider grounds of inadmissibility when adjudicating I-601A waivers.  This decision was a change to prior regulations.  Before the 2016 provisional waiver regulations, in adjudicating I-601A waivers, USCIS would consider whether other inadmissibility grounds existed that might ultimately prevent individuals from receiving a visa from the Department of State when they applied at the consulate.  Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536, 546-47.  Thus, USCIS would "deny provisional waiver applications if it ha[d] 'reason to believe' that the applicant may be subject to a ground of inadmissibility other than unlawful presence at the time of the immigrant visa interview abroad."  2016 Final

Rule, 81 Fed. Reg. at 50,253.  This policy yielded criticism.  As commenters explained to DHS during the notice-and-comment period for the 2016 provisional waiver regulations, "USCIS often applie[d] the standard too rigidly by denying applications on mere suspicion, rather than actually adjudicating the relevant inadmissibility concerns consistent with applicable law relating to these grounds."  *Id.*  USCIS regularly failed to "consider the totality of the evidence"; did not issue requests for more evidence or notices of an intent to deny the application, which might have helped ensure that applicants had submitted all relevant evidence; and denied applications with standard templates that said nothing about the applicant's admissibility arguments.  *Id.*

DHS revoked the "reason to believe" standard in the 2016 provisional waiver regulations.  The regulations make clear that USCIS should not judge an I-601A provisional waiver application based on an assessment of an individual's admissibility on grounds other than the one for which the waiver was sought:

> [I]t would be counterproductive for USCIS to make other inadmissibility determinations during the adjudication of provisional waiver applications, given [the Department of State's (DOS)] role in the immigrant visa process.  ***It is DOS, and not USCIS, that generally determines admissibility under INA section 212(a), 8 U.S.C. 1182(a), as part of the immigrant visa process, which includes an in-depth, in-person interview conducted by DOS consular officers.***  Moreover, it is U.S. Customs and Border Protection (CBP) that ultimately determines admissibility at the time that individuals seek admission at a port of entry.  See INA sections 204(e), 221(h); 8 U.S.C. 1154(e), 1201(h).  ***It is thus generally not USCIS's role to determine whether an individual applying for an immigrant visa, or for admission as an immigrant at a U.S. port of entry, is admissible to the United States.***  Any assessment by USCIS with respect to other grounds of inadmissibility would be, at best, advisory in nature and would likely cause even greater confusion for applicants. … ***Accordingly, when adjudicating such applications, USCIS will only consider whether extreme hardship has been established and whether the applicant warrants a favorable exercise of discretion.***

*Id.* at 50,253-54 (emphasis added); *see also Questions and Answers: Provisional Waiver Engagement*, USCIS (Sept. 20, 2016), www.uscis.gov/sites/default/files/USCIS/Outreach/PED_ QA_ProvisionalWaiverStakeholderEngagement09202016.pdf (McCullough Decl. Ex. D) ("[W]hen adjudicating provisional waiver applications, USCIS will only consider whether extreme hardship has been established and whether the applicant warrants a favorable exercise of discretion.  USCIS will not assess whether the individual is inadmissible because the Department of State (DOS) (at the time of the immigrant visa interview), and U.S. Customs and Border Protection (CBP) (at the time of entry into the United States) makes this determination.").

ICE is thus incorrect that either Mr. Rodriguez-Aguasviva or Mr. Rodriguez-Oseguera is potentially "unable to receive a Form I-601A waiver due [to] being inadmissible under Section 212(a)(6)(B)."  To the contrary, any potential admissibility under 8 U.S.C. § 1182(a)(6)(B) is irrelevant to whether USCIS will grant or deny their I-601A applications.

> **B.      The Department of State Has Not Found Either Class Member Inadmissible.**

ICE is also wrong that Mr. Rodriguez-Aguasviva and Mr. Rodriguez-Oseguera are each "inadmissible under Section 212(a)(6)(B) of the Immigration and Nationality Act for failure to attend his removal proceeding."  McCullough Decl. Exs. A, B.

The INA's *in absentia* inadmissibility provision provides:

> Any alien who ***without reasonable cause*** fails or refuses to attend or remain in attendance at a proceeding to determine the alien's inadmissibility or deportability and who seeks admission to the United States within 5 years of such alien's subsequent departure or removal is inadmissible.

8 U.S.C. § 1182(a)(6)(B) (emphasis added).  This is not a blanket bar on individuals whose final orders were entered *in absentia*.  Rather, Congress recognized that individuals may have missed their proceedings with reasonable cause; Congress decided not to extend the five-year admission bar to them.  Further, the reasonable cause determination is made in the first instance by the

Department of State at a consular interview, not while the individual is in the United States. *See* 2016 Final Rule, 81 Fed. Reg. 50,244, 50,253 ("It is DOS, and not USCIS, that generally determines admissibility under INA section 212(a), 8 U.S.C. § 1182(a), as part of the immigrant visa process, which includes an in-depth, in-person interview conducted by DOS consular officers.").

ICE's assertion that Mr. Rodriguez-Aguasviva and Mr. Rodriguez-Oseguera are inadmissible—before they have attended their in-person interview conducted by consular officers—is incorrect. Their admissibility has not yet been determined, and it is not a basis to remove them.

## II.   A Temporary Restraining Order Should Be Entered to Prevent These Individuals' Imminent Removal

Petitioners understand that the individuals at issue are likely to be moved out of this jurisdiction for removal tomorrow, January 28, 2020. Therefore, until a final order can be entered, a temporary restraining order is appropriate under this Court's equitable habeas powers, to preserve this Court's jurisdiction, and under the factors to be considered for a temporary restraining order. Petitioners are likely to succeed on the merits, the removal of Mr. Rodriguez-Aguasviva and Mr. Rodriguez-Oseguera would result in irreparable harm to them and their families, and both the government's interest and the public interest favor a stay to ensure that ICE's conduct is consistent with the law. *Cablevision of Boston, Inc. v. Pub. Improvement Comm'n*, 38 F. Supp. 2d 46, 53 (D. Mass.), *aff'd*, 184 F.3d 88 (1st Cir. 1999).

## CONCLUSION

For these reasons, Petitioners respectfully request a temporary restraining order staying the removal of Mr. Rodriguez-Aguasviva and Mr. Rodriguez-Oseguera until a final remedy can be entered. Petitioners further request that the Court permanently enjoin Mr. Rodriguez-

Aguasviva's removal and stay the removal of Mr. Rodriguez-Oseguera until ICE re-assesses the

reasons for his removal.

Respectfully submitted this 27th day of January, 2020.

<div style="display:flex">
<div>

Matthew R. Segal (BBO # 654489)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283

</div>
<div>

*/s/ Shirley X. Li Cantin*
Kevin S. Prussia (BBO # 666813)
Michaela P. Sewall (BBO # 683182)
Shirley X. Li Cantin (BBO # 675377)
Jonathan A. Cox (BBO # 687810)
Stephen Provazza (BBO # 691159)
Colleen M. McCullough (BBO # 696455)
Matthew W. Costello (BBO # 696384)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
kevin.prussia@wilmerhale.com
michaela.sewall@wilmerhale.com
shirley.cantin@wilmerhale.com
stephen.provazza@wilmerhale.com
colleen.mccullough@wilmerhale.com
matthew.costello@wilmerhale.com

*Counsel for Petitioners*

</div>
</div>