**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, Individually and on behalf of all others similarly situated, Plaintiffs-Petitioners, v. CHAD WOLF, Acting Secretary of Homeland Security, *et al.*, Defendants-Respondents. | No. 1:18-cv-10225-MLW |

## RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO ENJOIN THE REMOVAL OF TWO CLASS MEMBERS

## INTRODUCTION

As a threshold matter, this Court lacks jurisdiction to enjoin Respondents from removing Petitioners, Mr. Rodriguez-Aguasviva and Mr. Rodriguez-Oseguera, pursuant to 8 U.S.C. § 1252 *et seq.* Specifically, § 1252(g) bars Petitioners' challenge to ICE's decision to execute their final orders of removal, and the Suspension Clause does not confer a right for every removal challenge to be heard in federal court.

Further, Petitioners lack any right to a stay of removal under the Immigration and Nationality Act ("INA"), its regulations, or the Administrative Procedure Act ("APA"). The text of the provisional unlawful presence waiver regulation plainly bars Petitioners from applying for and benefiting from the provisional waiver. Moreover, the regulation's drafters never intended Petitioners to be insulated from removal.[1]

Petitioners' motion understates the legal ramifications of their *in absentia* orders of removal. As required by this Court, Respondents considered Petitioners' pending Form I-130s — which they only filed *after* they had been detained — and the hardship to their U.S. citizen family members if removed. Respondents nevertheless decided to enforce Petitioners' removal orders because they reasonably believed, based on Petitioners' entire immigration histories, that they are likely to be found inadmissible for five years, due to their failure to attend removal proceedings without reasonable cause. Although Petitioners were warned a combined six times of the consequences of failing to attend their removal proceedings, both Petitioners failed to attend.

---

[1] Respondents recognize that the Court has generally found it has jurisdiction over the claims in the First Amended Complaint (ECF No. 27) and that it has found that class members can state a claim for alleged violations of the INA, its regulations, and the APA. *See generally,* Transcript of May 16, 2019 Hearing. However, the Court has never directly addressed its jurisdiction to review ICE's decision to remove an alien *after* a fact-specific determination that an alien is unlikely to benefit from any approved provisional unlawful presence waiver. Regardless, Respondents reiterate their jurisdiction arguments in this document to preserve them for appeal.

Immigration judges have declined to reopen these *in absentia* removal orders despite Petitioners' excuses for failing to appear. Courts of Appeals and the Board of Immigration Appeals' ("BIA") interpretation of "reasonable cause" supports Respondents' conclusion. Therefore, contrary to Petitioners' contention, Respondents' decision was *not* legally erroneous nor ignorant of their individual circumstances. Rather, Respondents reasonably believed that Petitioners' likely inadmissibility for failure to attend their removal proceedings would prevent them from benefitting from the purpose of the provisional unlawful presence waiver. Additionally, Respondents reasonably considered the fact that Petitioners are flight risks and poor candidates for an Order of Supervision given their immigration histories and likely forthcoming determination that they are inadmissible. *See* ECF No. 452 (notifying the Court of a class member, whose Form I-212 had been denied, who absconded after release on an Order of Supervision rather than depart the United States as previously agreed). Because it is clear that Respondents considered "the facts of the aliens['] particular case before deciding to order [execution of their removal] . . . and the right of the alien to pursue, and potentially receive, a provisional waiver," Respondents complied with this Court's prior orders and this Court should decline to stay their removal further. *See* ECF No. 159 at 37-38.

Additionally, with regard to Rodriguez-Oseguera, Respondents considered his December 2019 charges for unlicensed operation of a motor vehicle, leaving the scene of property damages, two counts of assault and battery on a police officer, and resisting arrest prior to deciding to execute his removal order. Declaration of Todd Lyons, attached hereto as Exhibit B, at ¶¶ 34-40. These charges and the police report describing the criminal incident led ICE to believe Rodriguez-Oseguera is a danger to the community. *Id.* at ¶ 40. Therefore, regardless of Rodriguez-Oseguera's

outstanding *in absentia* removal order, ICE independently seeks to remove him because based on its belief that he is a danger to the community. *Id.* at ¶ 47.

As such, Respondents duly considered both Petitioners' alleged pursuit of a provisional unlawful presence waiver, the purposes for that waiver, the facts and circumstances of each Petitioners' immigration and criminal history consistent with this Court's prior orders. Petitioners' motion, on the other hand, seeks an order that would require ICE to *ignore* relevant immigration history when exercising their discretion. Petitioners cannot have it both ways by relying on the purpose of the provisional waiver to support their class-wide claims, but then ignoring that purpose is *not* served by staying the removal of an alien whose chances of benefitting from that waiver are slim. Therefore, this Court should deny Petitioners' motion.

## LEGAL BACKGROUND AND STANDARD

### I.     Provisional Waivers of Inadmissibility

The Application for Permission to Reapply for Admission ("Form I-212") and Provisional Unlawful Presence Waiver ("Form I-601A") provide a streamlined path to lawful permanent residency for a *subset* of class members. These aliens, upon departure from the United States, will be inadmissible under only two grounds of inadmissibility. The first ground is due to their final order of removal under 8 U.S.C. § 1182(a)(9)(A), and may be waived through an approved Form I-212. An alien can apply for it from either inside or outside the United States. If the alien applies from within the United States, U.S. Citizenship and Immigration Services ("USCIS") can provisionally grant it prior to the alien's departure. 8 C.F.R. § 212.2. The second ground of inadmissibility is due to class members' accrual of unlawful presence under 8 U.S.C. § 1182(a)(9)(B), and may be waived through an approved Form I-601A. 8 C.F.R. § 212.7(e). An alien can apply for, and USCIS can approve, the Form I-601A waiver from within the United

States. *Id.* If USCIS grants the Form I-212 and Form I-601A, the alien can consular process abroad with the Department of State ("DOS"). DOS will schedule the alien for an interview in the alien's country of nativity or citizenship, and the alien will then depart the United States to attend that interview. *See* 8 U.S.C. §§ 1182(a)(9)(A)(iii), 1182(a)(9)(B)(v), 1201. If DOS determines the alien is admissible to the United States, DOS can grant their visa application and the alien can seek to return to the United States. Upon admission by U.S. Customs and Border Protection ("CBP"), the alien will become a lawful permanent resident. *See generally,* 8 U.S.C. § 1201. In this situation, an alien may only need to spend a short period apart from their U.S. citizen family members before becoming a lawful permanent resident.

Due to the breadth of this class definition in this case, however, not all class members can benefit from this streamlined process. *See* ECF No. 253.[2] Some class members, upon departing the United States, may be inadmissible for reasons unrelated to their final order of removal or their accrual of unlawful presence. For purposes of this response, Respondents will refer to these class members as being "otherwise inadmissible." There are many different grounds of inadmissibility, including criminal, fraud, terrorism, and health related grounds. *See generally* 8 U.S.C. § 1182. However, *any other* ground of inadmissibility — beyond unlawful presence and aliens previously removed or unlawfully present after previous immigration violations — prevents a class member from benefitting from the streamlined process described above. *See* 8 C.F.R. § 212.7(e)(14); 81 Fed. Reg. at 50254. An otherwise inadmissible class member may apply for waivers via Forms I-

---

[2] The class is defined as: any U.S. citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the United States citizen spouse; and (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(I) or (vi). ECF No. 253.

212 and I-601A. USCIS may even grant those applications.[3] However, if DOS determines that the

class member is otherwise inadmissible, their approved Form I-601A is *automatically* revoked. 8

C.F.R. § 212.7(e)(14)(i) (The waiver is automatically revoked if "[t]he Department of State denies

the immigrant visa application after completion of the immigrant visa interview based on a finding

that the alien is ineligible to receive an immigrant visa for any reason other than inadmissibility

under section 212(a)(9)(B)(i)(I) or (II) of the Act.").

     Some grounds of inadmissibility, like those stemming from certain criminal convictions,

may be waived with a waiver of inadmissibility via a Form I-601. *See* 8 C.F.R. § 212.7. However,

some grounds of inadmissibility are not waivable and either permanently bar the class member

from returning to the United States as a lawful permanent resident or may require that they remain

outside the United States for a certain period of time. *Compare* 8 U.S.C. § 1182(a)(2)(A)(i)(II)

(controlled substance violations) *with* § 1182(a)(6)(B) (five-year bar for failing to attend removal

proceedings). Either way, otherwise inadmissible class members cannot ultimately benefit from

an approved Form I-601A because they will have to complete *at least* one additional waiver

---

[3] Respondents recognize that USCIS may not necessarily deny a Form I-212 or Form I-601A based on any "reason to believe" that the applicant is otherwise inadmissible. As explained in the 2016 final rule, USCIS discontinued the practice of denying applications if USCIS had a "reason to believe" the applicant was otherwise inadmissible because the "reason to believe" standard caused too much confusion. 81 Fed. Reg. at 50254. However, Respondents are aware that some class members will be unlikely to benefit from any *approved* Form I-601A due to the automatic revocation provision. *See* Exs. A, B. It is this determination, not the possibility that USCIS could deny their Form I-212 or Form I-601A, that has influenced Respondents' decision to effectuate Petitioners' removal. *See id.* (describing ICE's consideration of the effect of Petitioners' inadmissibility). Regardless, "the extreme hardship and discretionary eligibility assessments made during a provisional waiver adjudication could be impacted by additional grounds of inadmissibility." 81 Fed. Reg. at 50254. USCIS also regularly denies Form I-212 applications if it believes the alien is inadmissible for failing to attend removal proceedings. *Matter of N-C-R-*, 2018 WL 3241598, at *2-3 (BIA June 4, 2018); *Matter of J-A-M-G-,* 2018 WL 3241606 at *2 (AAO June 14, 2018); *Matter of V-A-R-B-,* 2018 WL 1963995 at *2 (April 5, 2018); *see also* USCIS Policy Manual, Ch. 4 B.3, https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-7.

application, if such a waiver is available, from outside the United States. As a result, otherwise inadmissible class members will spend as much time apart from their U.S. citizen family members as they would if the Form I-601A did not exist.

## II.     Inadmissibility for Failing to Attend Removal Proceedings

Respondents reasonably believe that Rodriguez-Aguasviva and Rodriguez-Oseguera are otherwise inadmissible, and ultimately unable to benefit from any approved Form I-601A, because they failed to attend their removal proceedings without reasonable cause. *See* 8 U.S.C. § 1182(a)(6)(B) ("Any alien who without reasonable cause fails or refuses to remain in attendance at a proceeding to determine the alien's inadmissibility or deportability and who seeks admission to the United States within 5 years of such alien's subsequent departure or removal is inadmissible."). This ground of inadmissibility carries a five-year bar and cannot be waived. *Id.* Therefore, a class member who DOS finds is subject to this ground of inadmissibility must remain outside the United States for five years. *Id.* As explained above, a class member who is subject to this bar cannot benefit from applying for or receiving an approved Form I-601A. *Supra* at 3.

Courts have not defined the reasonable cause exception in the context of the five-year bar, but many courts have analyzed "reasonable cause" in the context of the legacy *in absentia* order statute. Under the legacy *in absentia* order statute, an immigration judge could enter an *in absentia* order if the alien lacked "reasonable cause" for failing to attend a hearing. *Caldero-Guzman v. Holder,* 577 F.3d 345, 348 (1st Cir. 2009). An *in absentia* order could be reopened, under the prior statute, if the alien could demonstrate reasonable cause for failing to attend. *Id.* At a minimum, reasonable cause requires a showing of circumstances that were outside the alien's reasonable control and prevented the alien from attending the scheduled hearing. *See e.g., Hernandez-Vivas v. I.N.S.,* 23 F.3d 1557, 1560 (9th Cir. 1994) (refusing to find reasonable cause where the alien

filed a motion to change venue but it had no yet been granted); *Wijeratne v. I.N.S.,* 961 F.2d 1344, 1466-47 (7th Cir. 1992) (rejecting the alien's reasonable cause argument where the alien moved after proceedings commenced and did not update their address). Lack of receipt of a hearing notice does not constitute reasonable cause where the alien was informed of their duty to inform the court of any change in address but failed to do so. *Wijeratne,* 961 F.2d at 1446-47; *Urbina-Osejo v. I.N.S.,* 124 F.3d 1314, 1316-17 (9th Cir. 1997); *Gonzalez v. U.S. Att'y Gen.,* 154 Fed. Appx. 169, 173 (11th Cir. 2005); *Matter of N-C-R-,* 2018 WL 3241598, at *2-3 (AAO June 4, 2018); *see also Matter of G-Y-R-,* 23 I. & N. Dec. 181 (BIA 2001) (listing the requirements to enter an *in absentia* order). As set forth below, Respondents have a strong basis to believe that the Petitioners lacked reasonable cause for their failure to appear at their removal proceedings and therefore are likely inadmissible on this basis.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Factual Background

#### A.   Rodriguez-Aguasviva's Immigration History

Petitioner, Rodriguez-Aguasviva, is a citizen and national of the Dominican Republic who entered the United States in 2015. Declaration of Todd Lyons, attached hereto as Exhibit A. at ¶¶ 9-10. Shortly thereafter, the Department of Homeland Security ("DHS") *personally served* him with a Notice to Appear ("NTA"). *Id.* at ¶ 10. The NTA advised Rodriguez-Aguasviva that he was required to provide DHS with his full mailing address, and that he had a continuing responsibility to inform DHS and the immigration court of any change in address since the immigration court would mail notices of future hearings to the address he provided. *Id.* The NTA also warned Rodriguez-Aguasviva that he could be ordered removed by an immigration judge if he failed to attend his scheduled immigration court hearings. *Id.*

On August 31, 2015, Rodriguez-Aguasviva bonded out of immigration detention in Louisiana and informed the immigration court of the address where he intended to reside in New York. *Id.* at ¶ 11. The immigration judge in Louisiana provided Rodriguez-Aguasviva and his attorney with a hearing notice for his next hearing. *Id.* at ¶ 12. This hearing notice likewise informed Rodriguez-Aguasviva of his duty to provide the immigration court with his address throughout removal proceedings and warned him of the consequences for failing to appear for immigration court hearings. *Id.*

On May 26, 2019, Rodriguez-Aguasviva, through his attorney, moved to transfer the venue of his immigration proceedings to New York. *Id.* at ¶ 14. In the motion, Rodriguez-Aguasviva's attorney provided the address where Rodriguez-Aguasviva was residing in New York and informed the immigration court that he had informed Rodriguez-Aguasviva of his scheduled hearing date and the consequences for failing to appear at all scheduled hearings. *Id.* The immigration judge granted Rodriguez-Aguasviva's motion and sent notice of this decision to Rodriguez-Aguasviva's address in New York. *Id.*

The New York immigration court subsequently sent written notification to Rodriguez-Aguasviva, and the attorney who filed the motion to transfer venue, that he was to appear for a hearing on September 22, 2016. *Id.* at ¶¶ 16-17. Despite being warned at least three times of the consequences of failing to appear at scheduled hearings, Petitioner did not appear at this hearing. *Id.* at ¶¶ 10-12, 14-15. As a result, the immigration judge entered an *in absentia* removal order in Rodriguez-Aguasviva's case after finding that he had been provided with proper notice of the hearing and of the consequences of failing to appear at the hearing. *Id.* at ¶ 18.

Rodriguez-Aguasviva did not have any other interactions with DHS until U.S. Border Patrol arrested him on September 4, 2019, and ICE detained him pursuant to the post-order

detention authority in 8 U.S.C. § 1231. *Id.* at ¶ 19. About one month later, Rodriguez-Aguasviva filed a motion to reopen his immigration proceedings with the New York immigration court, which the immigration judge denied. *Id.* at ¶ 20-22. In doing so, the immigration judge determined that (1) the immigration court mailed the hearing notice for Rodriguez-Aguasviva's September 22, 2016 hearing to the address Petitioner had provided a few months earlier in May 2016, (2) the notice was *not* returned as undeliverable, and (3) Rodriguez-Aguasviva had been warned at least once of the consequences of failing to appear to scheduled hearings and failing to update the immigration court of any change in address. *Id.* at ¶ 22. As a result, the immigration judge found that Rodriguez-Aguasviva had not demonstrated any exceptional circumstances preventing him from attending his hearing. *Id.* at ¶ 23. Rodriguez-Aguasviva did not appeal the denial of his motion to reopen to the Board of Immigration Appeals within the thirty-day appeal period. *Id.* at ¶ 24.

B. <u>ICE's Consideration of Rodriguez-Aguasviva's Alleged Pursuit of a Provisional Waiver</u>

In deciding whether to effectuate Rodriguez-Aguasviva's removal from the United States, ICE considered many factors. *Id.* at ¶ 25. First, ICE considered the fact that he has a pending Form I-130 filed on his behalf by his U.S. citizen spouse on January 7, 2020, and the information contained in the declaration submitted in this case by Rodriguez-Aguasviva's spouse. *Id.* at ¶ 31-32. ICE nevertheless decided to move forward with removing Rodriguez-Aguasviva for two primary reasons. First, ICE considers Rodriguez-Aguasviva to be a flight risk. *Id.* at ¶ 33, 41. This is due in part to Rodriguez-Aguasviva's initial statement upon apprehension in July of 2015 that he did not have a fear of return to his home country and that he entered the United States for the purpose of employment, followed soon thereafter, (when faced with removal), by a statement that he did indeed fear persecution in the Dominican Republic. *Id.* at ¶ 34-35. Additionally, his flight

risk is extremely high due to his past failure to appear and update his address as instructed during his removal proceedings — both of which are required to comply with an Order of Supervision. *Id.* at ¶ 36-41.

Second, ICE does not believe Rodriguez-Aguasviva will benefit from any approval of a provisional unlawful presence waiver, and that the purposes of the waiver are not served by allowing him to remain in the United States. *Id.* at ¶ 41-42. ICE reviewed and considered the entirety of Rodriguez-Aguasviva's immigration history regarding his failure to appear for his scheduled immigration court hearing. *Id.* ICE considered the fact that Rodriguez-Aguasviva failed to attend his removal proceedings despite being informed at least three times of his obligation to update his address and warned of the consequences for failing to appear. *Id.* These facts led ICE to reasonably believe that he is inadmissible under 8 U.S.C. § 1182(a)(6)(B), which carries an un-waivable five-year bar. *Id.* Therefore, ICE determined, after considering all of the relevant facts, that Rodriguez-Aguasviva would not benefit from any approved Form I-601A. *See id.* In other words, ICE determined that the purpose of the provisional unlawful presence waiver — to reduce the time eligible aliens spend abroad consular processing — would not be served by allowing Rodriguez-Aguasviva to remain in the United States. *See id.* Therefore, despite Rodriguez-Aguasviva's class membership and his relationship with his U.S. Citizen spouse, ICE decided to effectuate his removal from the United States. *Id.*

### C.   Rodriguez-Oseguera's Immigration History

Rodriguez-Oseguera is a citizen of Honduras who entered the United States around April 2013. Ex. B at ¶ 9. Upon apprehension by Customs and Border Protection ("CBP"), he stated that he did not fear returning to Honduras, and that he entered the United States to live with his parents and attend school. *Id.* CBP served Petitioner with an NTA in person on April 23, 2013, and ICE

filed the NTA in the Houston immigration court. *Id.* at ¶ 11. Just as in Rodriguez-Aguasviva's case, the NTA warned Petitioner that if he failed to attend an immigration court hearing, a removal order could be entered by an immigration judge and he could be arrested and detained for removal. *Id.* at ¶ 10. Rodriguez-Oseguera successfully changed the venue of his removal proceedings to Boston, and the immigration court subsequently notified him of his hearing on September 3, 2013. *Id.* at ¶ 12-13. This hearing notice advised Rodriguez-Oseguera of the consequences of failing to appear for his removal proceedings to include being ordered removed *in absentia. Id.* at ¶ 13. On September 3, 2013, Rodriguez-Oseguera appeared at his hearing and the immigration judge explained the consequences of failing to appear at future hearings. *Id.* at ¶ 14. The immigration judge also provided Petitioner with a hearing notice for his next hearing on February 25, 2014. *Id.* This hearing notice likewise advised Petitioner of the consequences for failing to appear at future hearings. *Id.* Despite receiving three warnings of the consequences for failing to attend removal proceedings, Rodriguez-Oseguera failed to attend his February 25, 2014 hearing and the immigration judge ordered him removed *in absentia. Id.* at ¶ 15.

Petitioner did not have any other interactions with ICE until ICE detained him on January 3, 2020, after being charged with the unlicensed operation of a motor vehicle, leaving the scene of property damage, two counts of assault and battery on a police officer, and resisting arrest. *Id.* at ¶ 16-19. While in immigration detention, Rodriguez-Oseguera's spouse filed a Form I-130 on his behalf, and Petitioner moved to reopen his immigration proceedings. *Id.* at ¶¶ 21, 28-29. On February 11, 2020, the immigration judge denied Rodriguez-Oseguera's motion to reopen and agreed with the ICE that it should be denied because he received proper notice of his hearing and his stated reason for failing to attend — not having an attorney — was insufficient. *Id.* at ¶ 24.

D. ICE's Consideration of Rodriguez-Oseguera's Alleged Pursuit of a Provisional Waiver

In deciding to effectuate Rodriguez-Oseguera's removal order, ICE considered many factors. Although ICE considered the fact that Rodriguez-Oseguera had a Form I-130 recently filed on his behalf and the declaration Rodriguez-Oseguera's wife submitted in this case, ICE nonetheless decided to effectuate his final order of removal for several reasons. *Id.* at ¶¶ 29, 34.

First, as with Rodriguez-Aguasviva, ICE reasonably believes that  Rodriguez-Oseguera will not benefit from any approval of a Form I-601A because he is likely inadmissible based on his failure to attend his removal proceedings without any reasonable cause. *Id.* at ¶¶ 41-46. Second, ICE determined that Rodriguez-Oseguera is a flight risk based on his failure to attend removal proceedings *even after* repeated warnings and instructions to do so and his failure to *ever* contact the immigration court regarding his proceedings until ICE detained him in December 2019. *Id.* at ¶¶ 41-42.

Finally, ICE believes that Rodriguez-Oseguera is a danger to the community. ICE considered his pending criminal charges as well as the police report supporting these charges. *Id.* at ¶¶ 36-40. Specifically, the police report states that Rodriguez-Oseguera was operating a vehicle without a license when he struck an unoccupied vehicle. *Id.* at ¶ 37. When the police officers asked Rodriguez-Oseguera to exit the vehicle, he refused to do so and yelled and swore at the police officers, including using a racial expletive against the two officers. *Id.* ¶¶ 37-38 According to the report, Rodriguez-Oseguera agreed to be transported to the hospital. *Id.* at ¶ 39. However, on the way to the hospital, Rodriguez-Oseguera kicked one of the officers in the face and struck another officer several times in the abdominal area. *Id.* at ¶ 39. Due to this incident, ICE reasonably believes he is a danger to the community and decided to effectuate his  order of removal. *Id.* at ¶ 40. This determination is an independent reason why ICE decided to effectuate Rodriguez-

Oseguera's removal order. *Id.* at ¶ 47. Therefore, regardless of this Court's ruling on the appropriateness of ICE's consideration of Rodriguez-Oseguera's potential inadmissibility under section 1182(a)(6)(B), ICE independently seeks to remove Rodriguez-Oseguera based on its determination that he is a danger to the community. *Id.*

## II.     Procedural Background

On January 27, 2020, Petitioners filed a motion to permanently enjoin the removal of Salvador Rodriguez-Aguasviva and enjoin the removal of Erik Fabricio Rodriguez-Oseguera unless ICE provides reasons for his removal that are unrelated to his *in absentia* order. ECF No. 466. Their motion concerns a single legal issue: whether ICE may enforce the removal of a class member if, after considering his immigration history, ICE believes he is likely to be inadmissible under 8 U.S.C. § 1182(a)(6)(B) due in part to his *in absentia* final order of removal. This issue, including the impact of other potential grounds of inadmissibility, has existed in the peripheral of this litigation, but this Court has never directly addressed it.

Respondents' motion to dismiss and Petitioners' motion for preliminary injunction were briefed and heard concurrently. ECF Nos. 78, 79, 96, 97. In that briefing, Respondents argued that two of the named Petitioners, Ms. De Souza and Mr. Gao were inadmissible under 8 U.S.C. § 1182(a)(6)(B) for failing to attend their removal proceedings without reasonable cause as illustrated, in part, by their *in absentia* orders of removal. ECF Nos. 78 at 4-5. This was significant, Respondents argued, because even if USCIS approved their provisional unlawful presence waiver, it would be automatically revoked because the DOS would likely find Petitioners inadmissible under this *additional* ground. *See* 8 C.F.R. § 212.7(e)(14). Accordingly, Respondents explained that aliens such as Ms. De Souza and Mr. Gao could not benefit from a provisional waiver, and the Court should deny their request for relief. ECF No. 78 at 5; *see id.* Petitioners argued that Ms.

De Souza and Mr. Gao were not inadmissible because DOS had not yet made that determination and, in any case, an *in absentia* order does not dictate inadmissibility under 8 U.S.C. § 1182(a)(6)(B). ECF No. 97 at n. 8.

On September 21, 2018, the Court issued its written ruling denying Respondents' motion to dismiss on Petitioners' due process claims. In it, the Court found that 8 U.S.C. § 1252(g) applied to Petitioners' claims, but that the Suspension Clause operated to preserve the Court's jurisdiction. The Court ultimately held that

> ICE may not order the removal of an alien pursuing a provisional waiver solely because he or she is subject to a final order of removal. Rather, ICE must consider the reasons for the provisional waiver regime and the facts of the alien's particular case before deciding to order a removal that eliminates CIS's opportunity to decide the merits of that request and the right of the alien to pursue, and potentially receive, a provisional waiver.

ECF No. 159 at 38. The Court did not address Respondents' arguments regarding § 1182(a)(6)(B) in its decision. *See generally id.*

Although the parties had already briefed Petitioners' motion for class certification, the Court's order necessitated further briefing on the class certification motion and the rest of Respondents' motion to dismiss regarding Petitioners APA, INA, and Equal Protection claims.[4] The Court also directed Respondents to brief whether putative class members without an approved Form I-212 could state a due process claim. ECF No. 21.

Throughout the class certification briefing, Respondents reiterated that putative class members with *in absentia* orders are ordinarily inadmissible under § 1182(a)(6)(B) and cannot benefit from any approved provisional waiver. ECF No. 178 at 8-9 & n. 7. Respondents urged that

---

[4] Petitioners also have detention related claims stemming from the Post Order Custody Review regulations in 8 C.F.R. § 241.4 which so far have remained legally distinct from their claims relating to the provisional unlawful presence waiver.

this precluded class certification because these "otherwise inadmissible" aliens' claims were not common to the rest of the class who were not inadmissible under § 1182(a)(6)(B). *Id.*

On May 3 and 16 2019, the Court issued its decision on Petitioners' motion for class certification and Respondents' motion to dismiss. Transcript of May 16, 2019 Hearing; Transcript of May 3, 2019 Hearing. The Court denied Respondents' motion to dismiss Petitioners' APA, INA, and Equal Protection claims. ECF No. 253 at 1. However, it granted Respondents' motion to dismiss the due process claims of putative class members who did not yet have an approved Form I-212. *Id.* at 2. Ultimately, the Court certified a class of aliens and their U.S. citizen spouses who have pending Form I-130s for purposes of the APA, INA, and Equal Protection claims and a subclass of aliens and their U.S. citizen spouses who have approved Form I-212s for purposes of Petitioners' due process claim. *Id.* The Court's decision did not address Respondents' argument that the class lacked commonality due to some of the class members' potential inadmissibility under § 1182(a)(6)(B). *See generally* Transcript of May 16, 2019 Hearing.

Petitioners now bring this motion alleging that ICE failed to consider Rodriguez-Aguasviva's and Rodriguez-Oseguera's pursuit of a provisional waiver as contemplated by the Court's September 21, 2018 order denying Respondents' motion to dismiss on the *due process* claim. ECF No. 466. However, the Court has never directly considered or decided the following issue implicated by Petitioners' motion: whether ICE may remove someone based on the fact that they have an *in absentia* final order of removal and where ICE believes that the class member will ultimately be found inadmissible under 8 U.S.C. § 1182(a)(6)(B). Respondents will address this issue below.

## ARGUMENT

### I.     This Court Lacks Subject-Matter Jurisdiction To Stay Petitioners' Removal.

Respondents recognize the Court has found it has subject-matter jurisdiction over Petitioners' claims under the Suspension Clause and the Administrative Procedure Act ("APA"). ECF Nos. 159, 251. However, Respondents incorporate by reference their arguments that this Court lacks subject-matter jurisdiction and outline those arguments below to preserve them for appeal. *See* ECF Nos. 40, 78, 96, 220, 225, 271.

Specifically, this Court lacks subject-matter jurisdiction to stay Petitioners' removal because such claims are barred by 8 U.S.C. § 1252(g). Section 1252(g) bars claims arising from the government's decision to execute a removal order. *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 485 (1999). By seeking to stay their removal based on a challenge to ICE's exercise of discretion, Petitioners' claims squarely fall within § 1252(g)'s jurisdictional bar. *See Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—*be they stays or permanent injunctions*—were to be issued by the appropriate court of appeals.") (emphasis added); *Ashqar v. Hott*, 2019 WL 2712276 at *4 (E.D. Va. June 5, 2019) (slip copy) ("These cases are not persuasive because they engage in the in the fiction that petitioners are not challenging their removal orders by seeking to stay the removal order."). Petitioners cannot avoid the confines of § 1252(g) by characterizing their claims as APA, statutory, or due process violations. *See Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 17 (1st Cir. 2007) (holding that courts must "consider the fundamental nature of the claims asserted" and be aware of "creative labeling" that would result in a "collective end run[] around congressional directives"). The relief they seek is a stay of removal; therefore, § 1252(g) bars their claims. *See id.* Likewise,

this Court was without jurisdiction to issue a temporary stay of removal under the All Writs Act because § 1252(g) applies notwithstanding. 8 U.S.C. § 1252(g) (stating that it applies notwithstanding 28 U.S.C. § 1651(a)).

Petitioners' claim that their removal would violate the INA, its regulations, and the APA is also barred by § 1252(g). When assessing whether a claim is barred by § 1252(g), a court must consider the fundamental nature of the claim asserted and the relief sought. *Aguilar,* 510 F.3d at 17. Petitioners seek a stay of removal based on their contention that ICE is improperly exercising discretion to effectuate their removal. ECF No. 467. That is precisely the type of claim § 1252(g) was designed to bar; therefore, this Court lacks subject-matter jurisdiction to grant Petitioners' motion. *See Tejada,* 424 F. Supp. 2d at 298; *see also* ECF Nos. 220, 225, 271 (expanding this analysis).

Finally, Petitioners' motion seeks to expand the limited jurisdiction this Court has found it has. This Court has stated it has jurisdiction to review *only* whether ICE has considered everything it is required to consider. Transcript of August 20, 2018 Hearing at 47. For the reasons stated herein, ICE has done so. *See* Exs. A, B. Petitioners' motion essentially requests that this Court re-weigh the factors ICE considered and determine that an *in absentia* order can *never* outweigh an alien's alleged right to pursue a provisional waiver. *See* ECF No. 467. This Court should reject Petitioners' request to instruct ICE to *ignore* the impact of their *in absentia* orders of removal because it plainly lacks jurisdiction to re-weigh discretionary factors, substitute its judgment for that of the agency's, and generally decide whether ICE's decision was "wise." ECF No. 159 at 26, 35; Transcript of August 20, 2018 Hearing at 47. There is simply no "colorable claim that ICE is failing to consider something it's legally required to consider." Transcript of August 20, 2018 Hearing at 47. Therefore, this Court should deny Petitioners' motion.

**A.  Petitioners' Removal-Based Claim Does Not Trigger the Suspension Clause.**

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Clause applies only to habeas corpus claims. Petitioners' removal-related claims are not habeas claims; rather, they are claims for injunctive relief in the form of a stay of removal. *Ashqar,* 2019 WL 2712276 at *4; *Hatami v. Ridge*, 270 F. Supp. 2d 763, 767–68 (E.D. Va. 2003) ("Hatami's complaint here is not one for habeas relief under § 2241, but is instead a request for a stay of the removal order; thus, it is § 1252(g) that is implicated, *not* the Suspension Clause."). Because the Suspension Clause protects "[t]he Privilege of the Writ of Habeas Corpus," not claims for injunctive relief, Petitioners' removal-related claims do not trigger the Suspension Clause.

The writ of habeas corpus "serve[s] as a means of reviewing the legality of Executive detention." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). It provides the remedy of "removing the injury of unjust and illegal confinement." 3 William Blackstone, *Commentaries on the Laws of England* 137 (1768); *see also Munaf*, 553 U.S. at 693 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody.")).

Petitioners' motion does not merely seek to secure release from confinement. Instead, it seeks "a court order requiring the United States to shelter [them]." *Munaf*, 553 U.S. at 693–94. Under these circumstances, "habeas is not appropriate." *Id.* at 693; *Hamama v. Adducci*, 912 F.3d 869, 875 (6th Cir. 2018). Indeed, immigration law has long distinguished between habeas relief and the injunctive relief that Petitioners seek here. *Jennings v. Rodriguez*, 138 S. Ct. 830, 858–59

(2018) (Thomas, J., concurring); *see also Swain v. Pressley,* 430 U.S. 372, 384 (1977) (Burger, C.J., concurring) ("The sweep of the Suspension Clause must be measured by reference to the intention of the Framers at their understanding of what the writ of habeas corpus meant at the time the Constitution was drafted."). In *Heikkila v. Barber*, for instance, the Supreme Court distinguished habeas relief from "injunctions, declaratory judgments and other types of relief" that "courts ha[d] consistently rejected" in immigration cases. 345 U.S. 229, 230 (1953). The Court rejected the alien's request for "injunctive and declaratory relief" because Congress had authorized courts to grant relief only in habeas proceedings. *Id.* at 230, 237. The Court reaffirmed this distinction in *St. Cyr*, noting that the 1961 Immigration and Nationality Act withdrew the district courts' "authority to grant declaratory and injunctive relief," but not habeas relief. 533 U.S. at 309–10; *see also Hamama,* 912 F.3d at 875-76 (distinguishing *St. Cyr* because the relief sought in *St. Cyr,* cancellation of removal, would have entitled the alien to be *released* into and remain in the United States). Congress reaffirmed this distinction by allowing one form of relief, but not the other, in particular circumstances. *Compare, e.g.*, 8 U.S.C. § 1252(e)(1) (prohibiting courts from granting "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)") *with* § 1252(e)(2) (allowing "judicial review . . . in habeas corpus proceedings" of particular "determination[s] made under section 1225(b)(1)").

Petitioners seek injunctive relief in the form of a stay of removal, not habeas relief. Because injunctive claims do not implicate the Suspension Clause, 8 U.S.C. § 1252's jurisdiction-stripping provisions do not violate the Clause as applied. *See Hamama,* 912 F.3d at 375-376.

**B. The Suspension Clause is Not Implicated Where an Alien Has Already Received an Opportunity to Obtain Judicial Review.**

This Court should reject the notion that the Suspension Clause is somehow implicated unless every colorable legal and constitutional question regarding an alien's removal is reviewable by a federal court. *See Jennings v. Rodriguez,* 138 S. Ct. 830, 856 (2018) ("The Constitution does not guarantee litigants the most effective means of judicial review for every type of claim they want to raise."). In the removal context, the Suspension Clause does not grant a final order alien the right to challenge their removal orders based on every new fact or form of relief that might benefit them. The Suspension Clause is satisfied in these aliens' cases through the normal motion to reopen process — which Petitioners admittedly had access to — and other administrative forms of relief, such as the ability to apply for a stay of removal. *Hamama,* 912 F.3d at 876-77.

In the prisoner context, Courts have upheld statutory restrictions on successive habeas petitions under the Suspension Clause, *even when* they foreclose a challenge to a conviction that would be invalid under current law. *U.S. v. Surratt,* 797 F.3d 240, 265 (4th Cir. 2015), *reh'g en banc granted.* Further, in *Herrera v. Collins,* the Supreme Court held that a claim of actual innocence did not entitle the petitioner to habeas relief where the accused constitutional rights were preserved in the criminal proceedings. 506 U.S. 390, 393, 400 (1993) ("This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."); *see also Wainwright v. Stone,* 414 U.S. 21, 23-24 (1973) (holding that a state prisoner was not constitutionally entitled to the benefit of a new interpretation of a state criminal statute).

This analysis is heightened in the immigration context where there are "compelling public interests in finality and the expeditious processing of proceedings." *Sihotang v. Sessions,* 900 F.3d 46, 49 (1st Cir. 2018). There is simply no Constitutional right for Petitioners to have every

challenge to their removal heard by a federal court. Petitioners received all the constitutional protections they were entitled to during their removal proceedings and subsequent opportunities to reopen their proceedings. *See Hamama,* 912 F.3d at 876-77. This reasonable limit on habeas does not violate the Suspension Clause. Just as the Constitution does not guarantee a prisoner release based on new favorable law, it does not allow Petitioners *another* opportunity to challenge the execution of their removal order due to their ability to seek a new form of relief via the provisional waiver. *See Wainwright,* 414 U.S. at 23-24.

## II. Petitioners' Removal Does Not Violate the Immigration and Nationality Act, its Regulations, nor the Administrative Procedure Act.[5]

Although Petitioners are part of the sub-class certified for purposes of Petitioners' INA and APA claims, neither the INA, its regulations, nor the APA confer any right to a stay of removal. As Respondents have previously explained, the provisional waiver regulations in 8 C.F.R. § 212.7(e) do not require a stay of removal nor consideration of an alien's pursuit of the waiver *especially where* an alien does not have an conditionally approved Form I-212.[6] ECF Nos. 40, 78, 96, 220, 225, 271. Interpreting a regulation always begins with the language of the regulation itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989). Where the regulation's language is plain, the inquiry ends because "the sole function of the courts is to enforce it according to its terms." *Id.* The plain meaning is conclusive "except in the rare cases in which the literal application of a [regulation] will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242.

---

[5] This Court has already held that Petitioners lack a due process interest in pursuing a provisional waiver because they do not have approved Form I-212s.

[6] Petitioners have never identified any *statute* that is violated by removing class members. *See generally* ECF No. 27. Rather, they claim any right to relief inheres solely from the provisional waiver regulations in 8 C.F.R. § 212.7(e). *See* ECF No. 224.

Here, the text of the regulation is clear: only individuals with conditionally approved Form I-212s are eligible to apply for a Form I-601A. 8 C.F.R. § 212.7(e)(4)(iv). Petitioners do not have conditionally approved Form I-212s; therefore, they do not have any right emanating from the provisional waiver regulations. *See id*. There is no evidence in the regulation itself or its comments that the drafters intended otherwise. *See Ron Pair Enterprises,* 489 U.S. at 242. While it may be clear that the drafters intended the provisional unlawful presence waiver to be generally available, it is equally clear that they did *not* intend it to be available as a shield once ICE decides to execute an alien's final removal order. 78 Fed. Reg. at 536 ("the *filing or approval* of a provisional unlawful presence waiver application will not . . . protect an alien from being placed in removal proceedings or removed from the United States . . . ."*); see also* Form I-601A instructions, available at https://www.uscis.gov/i-601a (A pending or approved provisional unlawful presence waiver…[d]oes NOT stop the accrual of unlawful presence or provide protection from removal. A pending or approved waiver will not prevent the Department of Homeland Security (DHS) from initiating removal proceedings against you or actually removing you from the United States."). Further, because Congress has provided that aliens *shall* be removed during the 90-day removal period, interpreting the provisional waiver regulation to protect final order aliens from removal would conflict with this statutory mandate. Petitioners' claim that the provisional waiver regulations protect them from removal is therefore inconsistent with the text of the regulation, the form instructions, the intention of the drafters, and Congress.

Moreover, even assuming that the provisional waiver regulations can plausibly be interpreted to cabin ICE's discretionary authority, Petitioners' motion fails. As explained below, ICE fully considered Petitioners' alleged pursuit of a provisional waiver prior to deciding to execute their removal orders and reasonably concluded that their individual circumstances almost

surely prevent them from ever benefitting from a provisional waiver. Additionally, in Rodriguez-Oseguera's case, ICE seeks to effectuate his removal order because he is a danger to the community. Therefore, Respondents decision to execute Petitioners' removal order is valid under any relevant APA standard of review. *See Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983) (holding the agency "must offer a rational connection between the facts found and choice made).

### III.     Respondents Fully Considered Petitioners' Alleged Pursuit of a Provisional Waiver Before Attempting to Execute Their Final Order of Removal.

Contrary to Petitioners' assertion, Respondents did not merely consider Petitioners' *in absentia* final orders in deciding to effectuate Petitioners' removal. Nor did they make a legal error in determining that Petitioners are likely inadmissible under § 1182(a)(6)(B). Rather, Respondents considered Petitioners' entire immigration histories, including their failure to appear for removal proceedings despite multiple warnings, the underlying reasons why the immigration court entered the *in absentia* orders, Petitioners' alleged excuses for failing to appear, Petitioners' lack of ensuing action to remedy their unlawful status up until they were detained, and the immigration court's denial of their motions to reopen their removal proceedings. Ex. A. at ¶¶ 36-43; Ex. B at ¶¶ 41-46. In view of these factors, ICE reasonably concluded that Petitioners are flight risks if released on an order of supervision, are likely inadmissible § 1182(a)(6)(B) for failing to attend their removal proceedings without reasonable cause, and are likely unable to benefit from any approved Form I-601A. *See id.* Therefore, under any applicable legal standard, Petitioners' motion fails.

This conclusion is supported by the case law interpreting reasonable cause. Courts and the BIA have rejected reasonable cause arguments where the alien, like Rodriguez-Aguasviva, failed to update their address with the immigration court despite being warned of the consequences for

failing to do so. *Wijeratne,* 961 F.2d at 1346-47; *Gonzalez,* 154 Fed. Appx. at 173; *Matter of N-C-R-,* 2018 WL 3241598, at \*2-3. Here,  Rodriguez-Aguasviva was instructed at least three times to update his address with the immigration court and warned that failure to do so could result in an *in absentia* removal order. Ex. A at ¶ 10-14. Despite this, he failed to change his address with the immigration court and consequently failed to attend his scheduled hearing. *Id.* at 20. Therefore, Rodriguez-Aguasviva, just as the aliens in the cases cited above, lacked reasonable cause for failing to attend his removal proceedings and is likely inadmissible under § 1182(a)(6)(B).

Rodriguez-Oseguera likewise lacks reasonable cause for failing to attend his removal proceedings. He does not dispute that he had personal notice of his immigration hearing nor that he attended at least one immigration hearing. Rather, he states that he willingly failed to appear because he did not have an attorney. *Id.* at ¶ 21. This is plainly not reasonable cause for failing to appear because nothing prevented him from attending the hearing. Accordingly, Rodriguez-Oseguera is also likely inadmissible under § 1182(a)(6)(B).

These reasonable conclusions led ICE to determine that the purpose of the provisional waiver — to shorten the time aliens must spend away from their U.S. citizen family members — would not be served by allowing Petitioners to remain in the United States. 81 Fed. Reg. at 50246. Based on the facts that Petitioners have admitted, DOS will likely find Petitioners inadmissible, any approved Form I-601A will be automatically revoked, and Petitioners will remain inadmissible from United States for five years. 8 U.S.C. § 1182(a)(6)(B); 8 C.F.R. § 212.7(e)(14). This conclusion and their immigration histories also led ICE to determine that Petitioners are flight risks because ICE does not believe that Petitioners, when faced with the likelihood that they will not benefit from any approved Form I-601A, will comply with any required check-ins with ICE or depart the United States upon ICE's instruction. *See, e.g.,* ECF No. 452 (notifying the Court of a

class member, whose Form I-212 was denied, who absconded when ICE instructed him to depart the United States). Accordingly, Respondents properly considered the relevant factors articulated by this Court and this Court lacks jurisdiction to further review ICE's discretionary decision to execute Petitioners' removal orders and stay their removal further. *See* ECF No. 159 at 26, 31, 35. Therefore, this Court should deny Petitioners' motion.

**IV.    Rodriguez-Oseguera's Criminal History Independently Justifies his Removal.**

Moreover, and contrary to Petitioners' assertion, Respondents did provide reasons for removing Rodriguez-Oseguera in particular that are unrelated to his *in absentia* order of removal. *See* ECF Nos. 466 at ¶ 2, 462-2 (noting that ICE considered Rodriguez-Oseguera's recent criminal charges before deciding to effectuate his removal order). As explained above,   Rodriguez-Oseguera has recent criminal charges including two counts of assault and battery on a police officer for kicking an officer in the face and hitting another several times in the abdomen. Ex. B. at ¶¶ 36-37. Based on this information ICE determined that Rodriguez-Oseguera is a danger to the community. *Id.* at ¶¶ 34-36. As such, even if this Court barred ICE from considering the impact of their *in absentia* removal orders likely rendering them inadmissible, ICE seeks to execute the existing removal order against  Rodriguez-Oseguera based on his criminal history. *Id.* at ¶ 47. As this Court has stated, it lacks jurisdiction to consider whether this independent reason for executing the removal order against Petitioner is sufficient. ECF No. 159 at 26, 31, 35. Therefore, it should deny Rodriguez-Oseguera's motion for a stay of removal.

<u>CONCLUSION</u>

For the forgoing reasons, this Court should deny Petitioners' motion to enjoin Respondents from removing them.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

C. FRED SHEFFIELD
Senior Litigation Counsel

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Mary Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Mary L. Larakers*
Mary L. Larakers
Dated: February 20, 2020                   Trial Attorney