# EXHIBIT B

DECLARATION OF ACTING FIELD OFFICE DIRECTOR

<u>TODD LYONS</u>

Pursuant to the authority of 28 U.S.C. § 1746, I, Todd Lyons, an Acting Field Office Director ("Acting FOD") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1.  I am the Acting Field Office Director (FOD) for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations Boston Field Office ("ICE ERO Boston"). I have been serving in this position since most recently December 28, 2019. I am stationed in Burlington, Massachusetts.

2.  Prior to my current role, I was a Deputy Field Office Director in the Boston Field Office. My duties in that position included oversight of the operations in the Boston Field Office.

3.  Among my official duties as the Acting FOD is the responsibility for managing and monitoring the scheduling and execution of removal orders for aliens detained in ICE custody or otherwise encountered within the Boston Field Office's area of responsibility.

4.  Also, among my official duties as the Acting FOD is approving the effectuation of removal orders for <u>Calderon</u> class members.

5.  I have experience utilizing ICE record systems to obtain information regarding specific aliens. ICE maintains electronic and paper records on aliens in the course of its regularly conducted business activity. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events. In preparing this declaration, I have examined ICE official records, including the Enforce Alien Removal Module ("EARM") and PLAnet. EARM is the

1

ICE electronic database utilized by ERO to maintain information regarding the custody and removal status of aliens. PLAnet is the ICE electronic database maintained by ICE's Office of the Principal Legal Advisor as a case and document management system. These databases are the electronic records ordinarily relied upon to ascertain an alien's immigration and criminal history, current case status, and plans for removal, if any.

6. In the course of preparing this declaration, I have examined the official electronic records available to me regarding the immigration history and custody status of Erik Fabricio Rodriguez-Oseguera, ("Petitioner"), Administrative File No. ████████ I have also examined the Petitioner's Alien File ("A-File") and the documents contained within. I have further discussed this case internally with officers within the ICE ERO Boston detained unit.

7. In making the determination to effectuate the Petitioner's removal order, I fully considered the following information.

Immigration Record

8. The Petitioner is a citizen and national of Honduras.

9. The Petitioner was encountered by a U.S. Border Patrol Agent on April 23, 2013, near Mission, Texas. The Border Patrol Agent determined that the Petitioner had unlawfully entered the United States and placed him under arrest. Upon apprehension, the Petitioner told the U.S. Border Patrol Agent that he would not be harmed or face persecution if he was removed to the Honduras, he did not have fear or concern about being removed to the Honduras, and he entered the United States for the purpose of living with his parents and going to school.

10. On April 23, 2013, the Petitioner was served with a Notice to Appear ("NTA") in person. The NTA contained a paragraph warning the Petitioner that if he failed to attend an immigration court hearing, a removal order may be entered by an immigration judge and that he could be arrested and detained by DHS.

11. The NTA was filed with the Houston immigration court and a hearing was scheduled for August 14, 2013.

12. On May 26, 2013, the Petitioner filed a pro se motion to change venue to the Boston immigration court because he had been released from custody and had moved to his family's residence in New Bedford, Massachusetts. An immigration judge granted the motion to change venue to the Boston immigration court on June 14, 2013.

13. The Boston immigration court mailed a hearing notice to the Petitioner on June 19, 2013, advising the Petitioner that he had a hearing scheduled in the Boston immigration court on September 3, 2013. The hearing notice advised the Petitioner of the consequences of failing to appear at the hearing to include being taken into custody and the immigration judge ordering him removed in his absence.

14. The Petitioner appeared before an immigration judge in Boston on September 3, 2013. The immigration judge explained to the Petitioner the nature and purpose of immigration proceedings, his rights in the proceedings, and the consequences of his failure to appear at future hearings. The immigration judge provided the Petitioner with a hearing notice for his next scheduled hearing on February 25, 2014, and instructed him to return to the hearing even if he did not have an attorney. The hearing notice advised the Petitioner of the consequences of failing to appear at future hearings to include being taken into custody and the immigration judge ordering him removed in his absence.

15. The Petitioner did not appear at this master calendar hearing scheduled for February 25, 2014. The immigration judge noted that the Petitioner was present in court on September 3, 2013, was provided with the hearing notice in person, and was provided with all of the necessary advisals. As such, the immigration judge determined that the Petitioner had received proper notice of the hearing and was removable as charged on his Notice to Appear. Therefore, the immigration judge entered an <u>in absentia</u> removal order.  The immigration court mailed a copy of the <u>in absentia</u> removal order to the Petitioner's address he had provided to the immigration court.

16. The Petitioner came to ICE's attention during a routine admissions screening at the Bristol County Jail in North Dartmouth, MA on December 26, 2019.  The Petitioner had been arrested on December 22, 2019, by the New Bedford Police Department for the offenses of unlicensed operation of a motor vehicle, leaving scene of property damage, assault and battery on a police officer (two counts), and resisting arrest.

17. ICE records checks indicated that the Petitioner was subject to a final order of removal and therefore he was targeted for arrest.

18. On January 3, 2020, ICE officers effectuated a traffic stop of a vehicle in which the Petitioner was a passenger.  Upon his arrest, the Petitioner fled from the ICE officers and ran down a public street.  ICE officers were eventually able to take the Petitioner into custody.

19. ICE maintained the Petitioner in custody pursuant to its authority under 8 U.S.C. § 1231 in order to effectuate his removal order.

20. ICE received a travel document for the Petitioner on January 14, 2020, and scheduled him for removal on January 31, 2020.

21. On or about January 27, 2020, the Petitioner filed a motion to reopen his removal proceedings and a motion to stay removal with the Boston immigration court.  In his motion, he admitted attending his September, 3, 2013 immigration court hearing, but asserted that he failed to attend his scheduled hearing in February of 2014 because his mother did not obtain an attorney on his behalf.

22. The immigration judge entered a stay of removal pending the adjudication of the motion to reopen on January 29, 2020.

23. On February 6, 2020, ICE opposed the Petitioner's motion to reopen and argued that the motion to reopen should be denied because it was untimely, he received proper notice of his hearing for which he failed to appear, there were no exceptional circumstances that prevented his appearance at the hearing.  Additionally, ICE argued the motion should not be granted as a matter of discretion because of Petitioner's pending criminal arrest.

24. On February 11, 2020, the immigration judge denied the Petitioner's motion to reopen. The immigration judge agreed with the reasons stated in the ICE opposition to the Petitioner's motion to reopen.

25. The Petitioner has thirty days to appeal the denial of the motion to reopen to the Board of Immigration Appeals.

Consideration of Calderon Class Membership

26. In terms of the Petitioner's Calderon class membership, I am aware of and I considered the following:

27. The Petitioner married a United States citizen on November 22, 2019.

28. On January 14, 2020, while Petitioner was in ICE custody, Petitioner's attorney faxed ICE a copy of an I-130, Petition for Alien Relative filed with U.S. Citizenship and Immigration Services on January 10, 2020.

29. On January 16, 2020, ICE records checks verified that the I-130 Petition had been filed and therefore ERO Boston determined that the Petitioner was a Calderon class member and provided the Petitioner and his attorney of record with the Calderon class notice.

30. On or about January 21, 2020, I was briefed by officers within the ERO Boston detained unit regarding the factual background of this case to aid in my determination of whether ERO should move forward with effectuating his removal order.

31. I am fully aware that this Court has ordered that "ICE may not order the removal of an alien pursuing a provisional wavier solely because he or she is subject to a final order of removal. Rather, ICE must consider the reasons for the provisional waiver regime and the facts of the alien's particular case before deciding to order a removal that eliminates [US]CIS's opportunity to decide the merits of the request, and the right of the alien to pursue, and potentially receive, a provisional wavier." Jimenez v. Nielsen, 334 F.Supp.3d 370, 390 (D. Mass. 2018).

32. As such, when I reviewed the factual background of this case, I noted and considered that the Petitioner was married to a United States citizen in November of 2019 and that she had filed an I-130 on his behalf in early January of 2020. I considered the reasons for the provisional unlawful presence waiver regulation – namely, promoting family unity by reducing the time that eligible individuals are separated from their family members while they seek an immigrant visa through consular processing abroad.

33. I have since considered the declaration submitted by Petitioner's wife in this case. Specifically, I considered that the Petitioner's wife asserts that the Petitioner previously resided with her, his daughter from a previous relationship, and their son (although the birth certificate submitted in support of his motion to reopen does not list the Petitioner as the boy's father). I considered that the Petitioner's wife asserts that the Petitioner supports the family financially and that he has strong relationship with both of Petitioner's wife's children. Further, I considered that Petitioner's wife indicates that she is in bad health and suffers from two illnesses and that Petitioner helps her confront these ailments. Additionally, I considered that she asserts that she is struggling emotionally and financially in his absence and that she fears his possible removal to Honduras because she would not join him there.

34. Against this backdrop, I also considered numerous factors that I believe render the Petitioner a danger to the community, a severe flight risk, and ultimately unlikely to benefit from any approved Form I-601A, provisional unlawful presence waiver.

35. For example, I considered the Petitioner's criminal history, including his November 2016 arrest for Operating Under the Influence and Negligent Operation of a Motor Vehicle. I am aware that he was found not guilty for both of these charges.

36. Additionally, and most concerning as to his danger to the community, I considered that the Petitioner was arrested on December 22, 2019, by the New Bedford Police Department for the offenses of unlicensed operation of a motor vehicle, leaving scene of property damage, assault and battery on a police officer (two counts), and resisting arrest.

37. I reviewed the New Bedford Police Department arrest report which noted that the police were dispatched to the scene of a motor vehicle accident with possible injuries. The

7

report indicated that Petitioner was operating a motor vehicle and struck an unoccupied vehicle and then fled the scene in his vehicle. The report notes that the police stopped Petitioner who admitted that he was operating the vehicle without a motor vehicle license. The police asked Petitioner to exit the vehicle, but according to the report, he refused to do so and called the police officer and his partner "Stupid Fucking Niggas."

38. Per the report, the police asked him once again to exit the vehicle, but he again refused and continued to yell and swear. The police officers then removed Petitioner from the vehicle and were able to place handcuffs on him and transport him to the station for booking.

39. According to the report, at the station, the police noted that Petitioner had a laceration above his eye. Medics were called and Petitioner agreed to be transported to the hospital. Per the report, while on the way to the hospital, Petitioner kicked an officer in the face with his left leg. Additionally, according to the report, Petitioner struck a different officer several times in the abdominal area while in the back of the ambulance.

40. As such, I believe Petitioner constitutes a danger to the community and ICE seeks to effectuate his removal order on this basis.

41. As to flight risk, I further considered the fact that Petitioner received ample notice, in writing and in person, of the consequences of his failure to appear in immigration proceedings, but nonetheless chose not to attend his hearing in the Boston immigration court in February of 2014.

42. Additionally, I considered the fact that despite Petitioner having full knowledge that he was in removal proceedings, there is no evidence that he inquired with DHS or the immigration court regarding the status of his removal proceedings after his removal order

was entered. I also considered that he failed to file a motion to reopen his removal proceedings until after he was detained by ICE and faced with imminent removal.

43. Further, I have since considered the fact that an immigration judge in Boston denied his motion to reopen for the reasons stated in ICE's opposition to such motion which I believe increases his flight risk.

44. The above facts led, and continue to lead, me to believe that Petitioner is a danger to the community and a flight risk despite being recently married to a United States citizen and despite her recent filing of the I-130 petition on his behalf. The above facts also led me to believe Petitioner would be unlikely to comply with any Order of Supervision, a condition of which requires an alien to report for ICE check-ins as instructed and to depart the United States as ordered.

45. Additionally, the above facts led, and continue to lead, to my belief that Petitioner is unlikely to benefit from consular processing with an approved I-601A waiver because if he departs the United States, the U.S. Department of State ("DOS") may find the alien inadmissible under section 212(a)(6)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(B), for failure to attend his removal proceeding without reasonable cause. I considered that because there is no waiver of this ground of inadmissibility, if found to be inadmissible by the DOS, Petitioner must remain outside the United States for a period of five years. The above facts led to my belief that even if his pending Form I-130 is approved, and even if his yet to be filed I-212 waiver is conditionally approved, and even if his Form I-601A is approved, the Petitioner is unlikely to expeditiously consular process because I believe he is likely inadmissible for failure to attend his removal proceeding without reasonable cause. While ICE does not dictate determinations of

inadmissibility to the DOS, ICE considers the Petitioner's entire immigration history, including any potential grounds of inadmissibility that may impede the ability to obtain an immigrant visa through the expedited consular processing envisioned by the provisional unlawful presence waiver, Form I-601A.

46. I remain fully aware that DOS makes the ultimate determination as to inadmissibility under Section 212(a)(6)(B) of the Immigration and Nationality Act for failure to attend his removal proceeding.  However, based upon the review of the facts of his case, I do not believe he would be able to satisfy the exception to this ground of inadmissibility by demonstrating that he had reasonable cause for failing to attend the hearing. This conclusion, along with my conclusion that Petitioner is a danger to the community and an extreme flight risk led to my decision to proceed with effectuating his valid final order of removal.

47. Although, based on the facts above, I believe Plaintiff is unlikely to benefit from any approved Form I-601A, I understand that Petitioner is challenging this determination and my consideration of his in absentia removal order and the circumstances surrounding it. However, even if Petitioner's removal order was not as a result of his failure to appear at his removal proceedings, I would still seek to effectuate Petitioner's final order of removal, despite his Calderon class membership, because I believe Petitioner is a danger to the community based on his pending criminal charges and the accompanying police report described above.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on the Nineteenth day of February, 2020

Todd Lyons

Acting Field Office Director

U.S. Department of Homeland Security

United States Immigration and Customs Enforcement

Burlington, Massachusetts