# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., <br><br>Individually and on behalf of all others similarly situated, <br><br>      Plaintiffs-Petitioners, <br><br>      v. <br><br>CHAD WOLF, et al., <br><br>      Defendants-Respondents. | No. 1:18-cv-10225-MLW |

## REPLY IN SUPPORT OF PETITIONERS' MOTION TO ENJOIN CLASS MEMBER'S REMOVAL[1]

Respondents cannot dispute that the sole reason for their decision to remove class member Salvador Rodriguez-Aguasviva—communicated to Petitioners on January 22, 2020—was a legal error. But Respondents attempt to obscure that fact by providing new reasoning that they say *could have* been proper had it *actually* motivated the January decision by Immigration and Customs Enforcement (ICE). *See* Resp'ts' Opp'n to Pet'rs' Mot., Dkt. No. 489 ("Resp'ts' Opp'n"). This post hoc rationalization is furthermore centered on an administrative record that Respondents have characterized and paraphrased, but which Respondents have failed to provide to Petitioners or submit to this Court. Because ICE has violated Mr. Rodriguez-Aguasviva's legal right not to be removed on the basis of his final order of removal alone, as well as his right

---

[1] Petitioners withdrew the portion of this motion that pertained to class member Erik Rodriguez-Oseguera on February 24, 2020. Pet'rs' Mot. to Withdraw, Dkt. No. 490.

not to be removed for reasons that are inconsistent with law, this Court should enjoin his removal.

## BACKGROUND

### I. ICE's Decision to Remove Mr. Rodriguez-Aguasviva

Respondents are required to provide Petitioners with "a brief narrative description of what factors and information *were considered* in making the decision to remove [a] class member." Aug. 7, 2019 Order, Dkt. No. 340 at 3 (emphasis added); Order, Dkt. No. 295 at ¶ 5. Accordingly, on January 22, 2020, Respondents told Petitioners:

> The Field Office Director has considered Mr. Salvador Bienvenido RODRIGUEZ-Aguasviva's potential eligibility for a Form I-601A, Application for a Provisional Unlawful Presence Waiver. The Field Office Director has further considered the reasons for the Provisional Unlawful Presence Waiver and the facts of the alien's particular case before deciding to effectuate the alien's removal order. Specifically, the Field Office Director considered that Mr. RODRIGUEZ-Aguasviva was ordered removed <u>in absentia</u> on September 22, 2016, his motion to reopen was denied on October 29, 2019, and he did not appeal to the Board of Immigration Appeals. As such, the Field Office Director considered that he is likely unable to receive a Form I-601A waiver due [to] being inadmissible under Section 212(a)(6)(B) of the Immigration and Nationality Act for failure to attend his removal proceeding. Based upon such considerations, the Field Office Director determined to effectuate the alien's order of removal from the United States.

McCullough Decl. Ex. A ("January 22 Notice"), Dkt. No. 468-1. As evident from this Notice, ICE's only stated rationale for removing Mr. Rodriguez-Aguasviva was that his *in absentia* order rendered him inadmissible and "likely unable" to receive an I-601A waiver.

### II. Petitioners' Response

Counsel for Petitioners contacted counsel for Respondents on January 23, 2020 to explain the legal error underlying ICE's decision, and to ask that the agency refrain from removing Mr. Rodriguez-Aguasviva. Petitioners also requested printouts from ICE's EARM system, which then-acting Field Officer Director Marcos Charles previously testified is a system he consults in

making removal decisions.  *See* Costello Decl.[2] Ex. A (Charles Tr.), at 129:7-12, 133:21-23, 134:12-17.  ICE declined to reconsider Mr. Rodriguez-Aguasviva's removal and did not provide the documents.  Costello Decl. Ex. B, at 1.

Petitioners moved to enjoin Mr. Rodriguez-Aguasviva's removal on January 27, 2020. Dkt. 466.  Petitioners explained that ICE's decision rested on two legal errors.  Pet'rs' Br. at 5-10, Dkt. No. 467.  ***First***, Mr. Rodriguez-Aguasviva's *in absentia* removal order—and any potential inadmissibility under 8 U.S.C. § 1182(a)(6)(B)—does not render him "unable" to receive I-601A waivers.  January 22 Notice, Dkt. No. 468-1.  Indeed, the provisional waiver regulations expressly permit noncitizens with *in absentia* orders to seek lawful status.  *See* 8 C.F.R. § 212.7(e)(4)(iv).  USCIS also made the decision not to factor potential grounds of inadmissibility into its adjudication of I-601A waivers.  *See* Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50,244, 50,253-54 (July 29, 2016) (hereinafter "2016 Final Rule") ("[I]t would be counterproductive for USCIS to make other inadmissibility determinations during the adjudication of provisional waiver applications.").

***Second***, Mr. Rodriguez-Aguasviva cannot be subject to the five-year bar in 8 U.S.C. § 1182(a)(6)(B) [Immigration and Nationality Act Section 212(a)(6)(B)] simply on the basis of his *in absentia* order.  Instead, that ground of inadmissibility applies only if he is found to have failed to attend his removal hearing "without reasonable cause."  8 U.S.C. § 1182(a)(6)(B).  That determination would be made by the State Department at his consular interview at the completion of the provisional waiver process.  *See* 2016 Final Rule, 81 Fed. Reg. at 50,253 ("It is [the Department of State], and not USCIS, that generally determines admissibility under . . .

---

[2] References to "Costello Decl." are to the Declaration of Matthew W. Costello, filed herewith.

8 U.S.C. § 1182(a), as part of the immigrant visa process, which includes an in-depth, in-person interview conducted by [Department of State] consular officers.").[3]

### III. Respondents' Post Hoc Rationalization

On February 19, 2020, Field Office Director Todd Lyons submitted a declaration purporting to explain "the determination" to remove Mr. Rodriguez-Aguasviva. Lyons Decl. ¶ 7, Dkt. No. 489-1. Nowhere in the declaration does Mr. Lyons rely on the sole reason previously provided for Mr. Rodriguez-Aguasviva's removal—*i.e.*, Mr. Lyons's belief that Mr. Rodriguez-Aguasviva was "inadmissible under [8 U.S.C. § 1182(a)(6)(B)]" and therefore "likely unable to receive a Form 601A waiver." January 22 Notice, Dkt. No. 468-1. Nor does the declaration explain whether "the determination" described is the one that ICE made on January 22 or a new determination made after receiving Petitioners' motion on January 27.

The declaration explains that, on January 16, Mr. Lyons was "briefed by officers within the ERO Boston detained unit regarding the factual background of this case," and that he "reviewed the factual background of this case." Lyons Decl. ¶¶ 29, 31, Dkt. No. 489-1. Mr. Lyons states that he considered: a letter that Mr. Rodriguez-Aguasviva wrote to the Boston ERO describing his love for his then-girlfriend and requesting permission to marry her while in detention; his subsequent marriage to her; her pending I-130 petition, for which he is a beneficiary; and the purposes of the provisional waiver process. *Id.* ¶ 31.

The remainder of Mr. Lyons's declaration appears to describe information that he "considered" after deciding to remove Mr. Rodriguez-Aguasviva. Mr. Lyons explains, for

---

[3] Petitioners' Memorandum stated that Mr. Rodriguez-Aguasviva has no criminal history. Pet'rs' Br. at 4, Dkt. No. 467. Mr. Rodriguez-Aguasviva was charged with illegal entry on July 6, 2005. He pleaded guilty and was sentenced to five days' confinement that same day. *United States v. Rodriguez-Aguasviva*, No. 5:15-po-07392 (S.D. Tex. July 6, 2015). The government has made no claim, however, that this conviction is relevant to his removal or this motion.

example, that he has "since considered the declaration submitted by Petitioner's wife in this case [submitted as part of Petitioners' January 27, 2020 filing, Dkt. No. 467-1] as well as the documents submitted by the Petitioner's attorney in support of his personal [post order custody] interview which was conducted with ERO on January 22, 2020." *Id.* ¶ 32. The following paragraphs describe a host of other information that he "also considered" "against this backdrop"—*i.e.*, *after* ICE decided to remove Mr. Rodriguez-Aguasviva on or before January 22. *Id.* ¶¶ 33-40. These considerations include Mr. Rodriguez-Aguasviva's alleged statements to Customs and Border Patrol in 2015, immigration court hearing notices, filings made by a prior attorney in Louisiana in 2016, and the immigration court's denial of his motion to reopen. *Id.* ¶¶ 34-40. Mr. Lyons does not assert that he considered any of this information before January 22. *See id.* ¶¶ 8-24, 32-43.

According to Mr. Lyons's February 19 declaration, these facts

> led to [Mr. Lyons's] belief that [Mr. Rodriguez-Aguasviva] is likely unable to benefit from consular processing with an approved I-601A waiver because if he departs the United States, the U.S. Department of State ("DOS") may find the alien inadmissible under Section 212(a)(6)(B) of the Immigration and Nationality Act for failure to attend his removal proceedings without reasonable cause.

Lyons Decl. ¶ 42.

Because Mr. Lyons's declaration relies heavily on his characterization of records that neither Mr. Rodriguez-Aguasviva's counsel nor Petitioners' counsel have, Petitioners have repeatedly asked Respondents to provide the documents supporting Mr. Lyons declaration. *See* Costello Decl. Ex. C, at 1-2; *see also* Costello Decl. Ex. D, at ¶ 3. Respondents declined, forcing Petitioners to rely only on their word. Costello Decl. Ex. C, at 1.

5

## ARGUMENT

I.  **The Decision to Remove Mr. Rodriguez-Aguasviva is Unlawful**

Because the sole factor that ICE actually considered in making the January 22 decision to remove Mr. Rodriguez-Aguasviva was undisputedly legal error, the decision to pretermit his provisional waiver process lacks any justification beyond Mr. Rodriguez-Aguasviva's order of removal, in violation of this Court's orders. *See* May 3, 2019 Hr'g Tr. 47:19-21; *see also id.* at 36:17-37:19.

   A.  **Mr. Lyons's Decision Must Be Evaluated Based on the Reasoning Provided on January 22, 2020, at the Time the Decision Was Made**

"[W]hen reviewing an agency's decision under the arbitrary and capricious standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *City of Taunton v. United States Envtl. Prot. Agency*, 895 F.3d 120, 127 (1st Cir. 2018) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)) (internal quotations omitted). If the grounds presented in that original record "are inadequate or improper, the court is powerless to affirm the administrative action." *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Thus, the court cannot review new evidence and "substitut[e] what it considers to be a more adequate or proper basis" for the agency's action—rather, it "must judge the propriety of [the agency's] action solely by the grounds invoked by the agency" in the original record. *Chenery*, 332 U.S. at 196; *see also Tebo v. Sedgwick Claims Mgmt. Servs., Inc.*, 848 F. Supp. 2d 39, 55 (D. Mass. 2012) ("It would be problematic, to say the least, to 'recognize an administrator's discretion to interpret a plan by applying a deferential 'arbitrary and capricious' standard of review, yet … allow the administrator to 'shore up' a decision after-the-fact by [providing] the 'true' basis for the decision after the matter is in litigation."). The same rationale

is true in an action brought under the writ of habeas corpus. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349, 359 (S.D.N.Y. 2019) ("[T]he operative question in deciding whether to issue the writ [of habeas corpus] is whether the detention was lawful *at the time the petition was filed*."); *Griggs v. United States*, 253 F. App'x 405, 412 n.7 (5th Cir. 2007) ("Reference to other reasons for the decision . . . offered for the first time on appeal is a '*post hoc* rationalization' advanced by an agency seeking to defend past agency decision against attack.").

## B. The Basis for Respondents' Decision to Remove Mr. Rodriguez-Aguasviva Was Legal Error

Respondents cannot dispute that their own court-ordered account of what factors "were considered" when ICE decided on January 22 to remove Mr. Rodriguez-Aguasviva—that "he is likely unable to receive" an I-601A waiver due to his *in absentia* order of removal—rested on legal error. Pet'rs' Br. at 6-10, Dkt. No. 467. "An agency action, however permissible as an exercise of discretion, cannot be sustained where it is based not on the agency's own judgment but on an erroneous view of the law." *Sea–Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 646 (D.C. Cir. 1998) (citation and internal quotations omitted). Respondents' decision to remove Mr. Rodriguez-Aguasviva is based only "on an erroneous view of the law." *See id.* This Court should reject Respondents' attempt to recast the record and find that ICE's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and violated the INA and applicable regulations, 8 U.S.C. § 1182(a)(9)(B)(v) and 8 C.F.R. § 212.7(e). *See* Mem. & Order, Dkt. No. 159 at 32; May 3, 2019 Hr'g Tr. 36:17-37:21.

## C. The Court Should Disregard Respondents' Post Hoc Rationalizations Based on a Secret Administrative Record

All of Respondents' new arguments in support of Mr. Rodriguez-Aguasviva's removal are post hoc rationalizations that are inconsistent with the prior, January 22 determination, and are based on a secret administrative record. This Court should disregard them.

7

*First*, *all* of the justifications now offered for Mr. Rodriguez-Aguasviva's removal are different than—and contradict—the government's January 22 explanation of its decision. Respondents use careful language in order to downplay and obscure these differences. For example, on January 22, Respondents contended that Mr. Rodriguez-Aguasviva was inadmissible for five years based solely on his *in absentia* order; they did not claim to have assessed whether he had "reasonable cause" for missing his immigration hearing. *See* January 22 Notice, Dkt. No. 468-1. After being confronted with their legal error, Respondents now state—based on documents they will not show Petitioners—that they "reasonably believe" that Mr. Rodriguez-Aguasviva "failed to attend [his] removal proceedings without reasonable cause" and that the Department of State "will likely find [him] inadmissible" for five years. Resp'ts' Opp'n at 6-7, 24. Without a showing that he has ever been trained to make a "reasonable cause" determination or has ever previously made one during his career, Mr. Lyons now states that he "believed it was likely [Mr. Rodriguez-Aguasviva] is inadmissible for failure to attend his removal proceeding without reasonable cause," and that Mr. Rodriguez-Aguasviva is "likely unable to benefit from consular processing with an approved I-601A" due to the five-year bar. Lyons Decl. ¶ 42.

Similarly, on January 22, Respondents sought to remove Mr. Rodriguez-Aguasviva because they believed "he is likely unable to receive a Form I-601A waiver." January 22 Notice, Dkt. No. 468-1. Now, in a footnote, Respondents appear to acknowledge ICE's legal error by stating that "USCIS may not necessarily deny a Form I-212 or Form I-601A based on any 'reason to believe' that the applicant is otherwise inadmissible." Resp'ts' Opp'n at 5 n.3. Respondents wish away this error by attempting to recharacterize the January 22 reasoning in a manner that is wholly inconsistent with the previous rationale. Specifically—in direct

contradiction to the January 22 reasoning—Respondents state that "[i]t is . . . not the possibility that USCIS could deny [Mr. Rodriguez-Aguasviva's] Form I-212 or Form I-601A[] that has influenced Respondents' decision to effectuate [his] removal." *Id.* Instead, Respondents claim that ICE relied on the determination that "some class members will be unlikely to benefit from any *approved* Form I-601A" because they may be found at the consulate to lack reasonable cause and be subject to a five-year bar. *Id.* In line with this new line of argument, Mr. Lyons now states that he decided to remove Mr. Rodriguez-Aguasviva because "even if his Form I-601A is originally approved, the Petitioner[] may be unlikely to expeditiously consular process." Lyons Decl. ¶ 42.

To further shore up their decision to remove, Respondents also add the new contention that Mr. Rodriguez-Aguasviva is a "severe" and "extreme" flight risk. Lyons Decl. ¶¶ 33, 35, 41, 43. ICE bases this contention on secret documents—which Respondents refuse to share with Petitioners—regarding Mr. Rodriguez-Aguasviva's supposed statements at the border[4] and the fact that he did not appear at his removal hearing. *Id.* at ¶¶ 33-43. Yet, this flight risk reasoning is absent from ICE's January 22 Notice of Removal. *See* January 22 Notice, Dkt. No. 468-1.

---

[4] Central to ICE's current contention is the claim that Mr. Rodriguez-Aguasviva purportedly told Border Patrol officers in 2015 that he had come to the United States to work and did not fear return to the Dominican Republic. Lyons Decl. ¶ 34. Respondents' decision to withhold any documents detailing the basis for this claim is particularly troubling in light of recent reports that Border Patrol officers commonly fabricate precisely such information in order to harm noncitizens' chances at asylum. *See* Br. for American Immigration Lawyers Association as Amici Curiae Supporting Respondents, *In re* Matter of M-R-R (2015) at 20-21, *available at* https://aila.org/infonet/brief-with-bia-artesia-case (describing an example where an immigration officer swore in his report that the asylum seeker—a three-year old child—left his home country "to look for work"); John Washington, *Bad Information: Border Patrol Arrest Reports Are Full of Lies That Can Sabotage Asylum Claims*, THE INTERCEPT (Aug. 11, 2019, 12:20 PM), https://theintercept.com/2019/08/11/border-patrol-asylum-claim/ (documenting examples of false statements that detainees "DO[] NOT fear harm and/or persecution should [detainee] be returned to his native country," as recorded by Border Patrol agents during interviews at the border).

Such post hoc rationalizations developed in response to litigation cannot sustain an agency decision with an actual basis that was unlawful. *See Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 30 (D.D.C. 2018) (declining to credit ICE officer's "bald, *post hoc* justifications for ICE's [detention] decision"); *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 849 (6th Cir. 2000) (rejecting post hoc rationales generated for purpose of litigation by ERISA plan administrators to deny benefits claims when rationales did not appear in denial letters sent to benefits claimants or in administrative record).

***Second***, even if it were proper for the Court to credit ICE's post hoc rationalizations—which it should not—the Court should still strike or decline to give any weight to these post hoc rationalizations because they characterize and are based upon an undisclosed administrative record. The information on which Mr. Lyons purports to rely is beyond his personal knowledge; it resides in documents that he purports to characterize, but which Respondents refuse to disclose. *See* Costello Decl. Ex. C, at 1. It would therefore be improper to rely on Mr. Lyons's declaration even if it purported to describe the decision that was actually made on January 22. *See, e.g.*, Fed. R. Evid. 602 (Need for Personal Knowledge); Fed. R. Evid. 802 (The Rule Against Hearsay); Fed. R. Evid. 1002 (Requirement of the Original). With limited exceptions,[5] Petitioners do not have the documents that Respondents relied upon.

It is appropriate for courts to strike affidavits or portions thereof where affiants purport to represent the contents of outside documents that have not yet been produced. *See, e.g., Creative Co-Op, Inc. v. Elizabeth Lucas Co., LLC*, No. CV 11-116-REB, 2012 WL 761732, at *6 (D. Idaho Mar. 7, 2012) (striking information in reply brief and supporting affidavit "that constitutes

---

[5] Petitioners have obtained from Mr. Rodriguez-Aguasviva's counsel documents related to the post order custody review process, his motion to reopen, and the I-130 petition filed by his wife. *See* Costello Decl. Ex. D, at ¶ 3.

or relies on new information not yet produced in discovery"); *Grew v. Kmart Corp. of Ill., Inc.*, No. 05-C-2022, 2006 WL 463310, at *2 (N.D. Ill. Feb. 22, 2006) (striking affidavit paragraphs because, rather than testifying to his own personal knowledge, declarant "discusse[d] the exact information allegedly contained in the Kmart records," which Kmart had not yet produced). The actual documents on which Mr. Lyons relied—not his summary of what those documents may represent—are the best evidence of their content. *See Grew*, 2006 WL 463310, at *2 (striking paragraphs of affidavit for failing to satisfy best evidence rule); *see also Rodriguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 34 (1st Cir. 2011) (explaining Federal Rule of Evidence 1002's requirement that an original writing is required to prove its content). Because Respondents refuse to provide Petitioners and the Court with the administrative record that form the basis of Mr. Lyons's declaration, the Court should strike or decline to give any weight to paragraphs 8 through 43 of Mr. Lyons's declaration, and corresponding arguments in the government's brief.

## II.    ICE Cannot Pre-Adjudicate Provisional Waiver Applications

Even if Mr. Lyons conducted the review described in his declaration prior to his decision to execute Mr. Rodriguez-Aguasviva's removal order on January 22, that decision would have violated the APA, INA, due process, and law of the case. When denying Respondents' Motion to Dismiss Petitioners' INA and APA claims, this Court ruled that "[t]he INA and its regulations are properly interpreted as requiring consideration of the provisional waiver process" prior to enforcement decisions. May 3, 2019 Hr'g Tr. 47:19-21; *see also id.* at 36:17-37:19 (holding that Petitioners stated a plausible claim that Respondents' "failure to consider participation in the provisional waiver process in enforcement decisions is arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law"). Respondents now attempt to skirt the Court's prohibition on removing class members based solely on their final order of removal by

weaponizing the very reasons they have an order of removal against them. *See* Mem. & Order, Dkt. No. 159 at 37 ("[T]he court finds that ICE may not order the removal of an alien pursuing a provisional waiver solely because he or she is subject to a final order of removal.").

Here, Mr. Lyons based his decision to detain and remove Mr. Rodriguez-Aguasviva solely on the circumstances that led him to become a class member in the first place. *See* Lyons Decl. ¶¶ 33-42. The reason that Mr. Rodriguez-Aguasviva is even eligible to pursue the 2016 provisional waiver process is that he has an *in absentia* order of removal—a circumstance to which USCIS expressly extended the provisional waiver process. *See* Pet'rs' Br. at 6-7.[6] Mr. Lyons points to the characteristics of every class member with an *in absentia* order of removal as evidence that he is a flight risk and is "likely unable to benefit from consular processing with an approved I-601A." Lyons Decl. ¶¶ 37, 42. This turns the provisional waiver process on its head by turning the facts that render individuals eligible for the provisional waiver process into the basis for a determination to detain and remove them. Mr. Lyons's decision also deprives USCIS and the State Department—the agencies properly tasked with and trained in adjudicating the provisional waiver applications and conducting consular interviews—of their responsibilities. In short, Mr. Lyons predetermined that Mr. Rodriguez-Aguasviva's attempt to obtain lawful status without a years-long separation from his wife would fail.

Respondents' claim is far-reaching and dangerous. It imbues a Field Office Director with no demonstrated training with the power to make "reasonable cause" determinations and remove

---

[6] As Petitioners explained in their opening brief, individuals with *in absentia* orders were specifically considered during USCIS rulemaking and consequently made expressly eligible by the regulations. *See, e.g.*, 8 C.F.R. § 212.7(e)(4)(iv); 2016 Final Rule, 81 Fed. Reg. at 50,262. USCIS also made the express determination in 2016 that it would *not* consider grounds of inadmissibility when adjudicating I-601A waivers. Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536, 546-47 (Jan. 3, 2013).

Ms. Lucimar de Souza, Mr. Deng Gao, Mr. Rodriguez-Aguasviva, and any other class member with an *in absentia* removal order *solely* on the basis of that order, so long as he claims to have determined—without notice and based on documents in his sole possession—that these noncitizens "likely" do not have reasonable cause for their failure to appear. If past is prologue, Respondents will simply assume that *every* noncitizen who missed a hearing lacked "reasonable cause." Respondents made just that assumption with regard to Ms. de Souza, Mr. Gao, and Mr. Rodriguez-Aguasviva, and they continue to fail to admit their legal error. *See* January 22 Notice, Dkt. 468-1; Resp'ts' Opp'n to Pet'rs' Mot. for Prelim. Inj., Dkt. No. 78 at 3-4; *see also* Resp'ts' Opp'n at 13 (claiming, circularly, to have found Ms. De Souza and Mr. Gao inadmissible under 8 U.S.C. § 1182(a)(6)(B) for failing to attend their removal proceedings *without reasonable cause* as illustrated, *in part,* by their *in absentia* orders of removal). Only if challenged will Respondents meticulously comb a noncitizen's file for any facts that might, after the fact, support their lack-of-reasonable-cause determination. Because the provisional waiver process is by definition a process that helps noncitizens with imperfect immigration histories, there will always be *something* that ICE can point to, including the standard warnings provided in English on the back of a Notice to Appear in every case. Respondents thus seek the power to eliminate the provisional waiver process for any noncitizen with an *in absentia* order based solely on that order, even though DHS expressly chose to make noncitizens with *in absentia* orders eligible for it. *See* 8 C.F.R. § 212.7(e)(4)(iv); 2016 Final Rule, 81 Fed. Reg. at 50,262.

Allowing Mr. Lyons to remove Mr. Rodriguez-Aguasviva based solely on the circumstances surrounding his *in absentia* order of removal has the "effect of a substantive ruling" on his provisional waiver application before USCIS and the State Department render their decisions. *Ceta v. Mukasey*, 535 F.3d 639, 646-47 (7th Cir. 2008) (citation omitted).

13

Therefore, this Court should find that Respondents' decision to detain and remove Mr. Rodriguez-Aguasviva based solely on his final order of removal violates the APA, INA, and due process.

### III. Respondents' Remaining Arguments Are Foreclosed by the Court's Prior Rulings

The remainder of Respondents' brief is an attempt to relitigate the jurisdictional issues that this Court has already decided. Resp'ts' Opp'n at 16-21. However, as Respondents acknowledge, the Court has already found it has jurisdiction over Petitioners' claim under the APA and pursuant to the Suspension Clause. Mem. & Order, Dkt. No. 159 at 4 ("[T]he Suspension Clause of the Constitution guarantees petitioners review of their claims in some federal court, and because those claims cannot be presented to a court of appeals, this court has jurisdiction."); *see also* May 3, 2019 Hr'g Tr. 33:19-34:10. To the extent Respondents are attempting to move for reconsideration of the Court's prior orders, that motion must be denied for the reasons laid out in Petitioners' Opposition to Respondents' Motion for Reconsideration, including Respondents' failure to identify any reasons such reconsideration is appropriate under the stringent standards applied to such motions. *See* Pet'rs' Opp'n to Resp'ts Mot. for Recons., Dkt. No. 326 at 14-15; *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) ("[M]otions for reconsideration are appropriate only in a limited number of circumstances . . . .").

### IV. A Meaningful Remedy—and Not Just a Re-Do—Is Required

An injunction against Mr. Rodriguez-Aguasviva's removal is particularly warranted where, as here, a good faith "re-do" is impossible. ICE cannot now make a lawful determination about Mr. Rodriguez-Aguasviva's removal because it has not even acknowledged its own legal error and has instead masked it with post hoc rationalizations. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349, 371-73 (S.D.N.Y. 2019) (finding that the government's "flagrant and tainted" conduct of providing deficient due process *after* ICE had detained petitioner justified immediate

14

release of petitioner pending completion of his immigration hearing, even if post hoc due process had converted detention into lawful one); *id.* at 368 ("[T]he Show Cause hearing reflected that the Government had no intention to independently cure Petitioner's constitutional infringements, as they only produced written notice on the day that Petitioner filed his Order to Show Cause."); *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 477-78 (D. Mass. 2010) (declining to remand to immigration judge for bond determination).

ICE's repeated failure to follow the law and acknowledge its legal errors in this case add to the concern that, if given an opportunity to make a new removal determination based on the existing facts, ICE will simply paper over its determination while adhering to the unlawful determination made previously. This Court should therefore order a meaningful remedy that fully addresses the violation to Petitioner's legal rights. *See Martinez*, 385 F. Supp. 3d at 372-73 ("[The Government] will not be allowed to flout another botched effort, at the risk of again unnecessarily depriving a person, residing within the United States of their liberty. . . [T]he only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediate[ly] release him and enjoin the Government from further similar transgressions."). In the case of Mr. Rodriguez-Aguasviva, in the absence of changed circumstances, that remedy is to enjoin his removal as he lawfully pursues the provisional waiver process.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court enjoin Mr. Rodriguez-Aguasviva's removal.

Respectfully submitted this 5th day of March, 2020.

| | |
|---|---|
| Matthew R. Segal (BBO # 654489)<br>Adriana Lafaille (BBO # 680210)<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF MASSACHUSETTS, INC.<br>211 Congress Street<br>Boston, MA 02110<br>(617) 482-3170<br><br>Kathleen M. Gillespie (BBO # 661315)<br>Attorney at Law<br>6 White Pine Lane<br>Lexington, MA 02421<br>(339) 970-9283 | */s/ Jonathan A. Cox*<br>Kevin S. Prussia (BBO # 666813)<br>Michaela P. Sewall (BBO # 683182)<br>Shirley X. Li Cantin (BBO # 675377)<br>Jonathan A. Cox (BBO # 687810)<br>Stephen Provazza (BBO # 691159)<br>Colleen M. McCullough (BBO # 696455)<br>Matthew W. Costello (BBO # 696384)<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000<br>kevin.prussia@wilmerhale.com<br>michaela.sewall@wilmerhale.com<br>shirley.cantin@wilmerhale.com<br>stephen.provazza@wilmerhale.com<br>colleen.mccullough@wilmerhale.com<br>matthew.costello@wilmerhale.com<br><br>*Counsel for Petitioners* |