# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> CHAD WOLF, Acting Secretary of Homeland Security, *et al.*, <br><br> Defendants-Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 1:18-cv-10225-MLW |

## RESPONDENTS' SURREPLY IN SUPPORT OF THEIR OPPOSITION TO PETITIONERS' MOTION TO ENJOIN THE REMOVAL OF TWO CLASS MEMBERS

## **INTRODUCTION**

Petitioners do not dispute that, based on the facts presented in Mr. Lyon's declaration, Mr. Aguasviva is likely inadmissible for failing to attend his removal proceedings without reasonable cause under 8 U.S.C. § 1182(a)(6)(B). ECF No. 494. Instead, Petitioners seek to alter this Court's prior orders by arguing that Immigration and Customs Enforcement ("ICE") can only remove a class member if: (1) ICE's "brief narrative" of its tentative removal decision withstands scrutiny under the Administrative Procedure Act ("APA"); and (2) ICE supports their decision by producing a purported "administrative record" upon demand. These arguments fail for several reasons.

First, Respondents' "brief narrative" does not mark the final agency action or bind the agency. Interpreting this "brief narrative" as the final agency action and limiting the agency's arguments to it would run counter to the Court's intention that the narrative be "brief" and the Court's rejection of Petitioners' request for a more substantial explanation. It would also be contrary to the Court's intention that the purpose of the "brief narrative" was to facilitate discussion between the parties. *See* Transcript of June 27, 2019 hearing at 19-20. In short, the narrative's purpose is to comply with the Court's order – not to signal legal consequences. The "brief narrative" is a tentative decision, interlocutory in nature, which ICE finalized in Mr. Aguasviva's case when ICE opposed Petitioners' motion. Nor is ICE required to produce a purported "administrative record" on demand. The Court expressly rejected Petitioners' request that ICE produce all documents related to removal decisions before removing a class member. Transcript of June 27, 2019 Hearing at 71.The Court should not allow Petitioner to make an end run around that order in this motion *especially given* that Petitioner, despite knowledge of what occurred

during his removal proceedings, does not dispute the veracity of Mr. Lyon's declaration concerning his potential inadmissibility.

Second, this Court's prior orders set forth the relevant legal standards for assessing the lawfulness of Mr. Aguavivsa's removal, and Respondents have more than met this standard. This Court has held that the APA and due process requires that ICE consider "the facts of the aliens['] particular case before deciding to order [execution of their removal] . . . and the right of the alien to pursue, and potentially receive, a provisional waiver." ECF No. 159 at 37-38. ICE considered Mr. Aguasviva's pursuit of a provisional waiver, but determined, based on his entire immigration history, that he is likely inadmissible for failing to attend removal proceedings without reasonable cause. ECF No. 489-1As a result, ICE concluded that he will not benefit from any approved provisional waiver. Based on this conclusion, as well as the entirety of his immigration history, ICE reasonably determined that he represented a risk of flight if released from detention. Because ICE considered the facts of the Petitioner's case, his pursuit of the provisional waiver and more than simply the Petitioner's final order of removal prior to executing his removal order, it complied with the Court's order.

Petitioners do not dispute Respondents' legal conclusion that Mr. Aguasviva is likely inadmissible under 8 U.S.C. § 1182(a)(6)(B). Rather, Petitioners avoid discussion of the legal issue by maintaining that they do not have sufficient information to dispute it and alleging that Respondents are relying on a "secret administrative record" to support their decision. ECF No. 494 at 7. This argument is as unpersuasive as it is unsupported. Mr. Aguasviva knows what occurred during his removal proceedings. Mr. Aguasviva *does not dispute* that he was repeatedly informed of the consequences of failing to attend removal proceedings. Mr. Aguasviva *does not dispute* that he failed to update his address with the immigration court. Rather, the information in Mr. Lyons

declaration remains uncontested, notwithstanding the fact that Mr. Aguasviva's knowledge of what occurred when he entered the United States and throughout his removal proceedings.

Third, even if the "brief narrative" marks the final agency action such that ICE's defense is limited to its reasoning, Respondents decision met the Court's standard. Even the "brief narrative" reflects that ICE considered information apart from Mr. Aguasviva's final order of removal – his likely inadmissibility — in deciding to execute his removal order. Consideration of his inadmissibility, which Respondents have supported with applicable case law and which Petitioner does not dispute, alone is enough to comply with the Court's order. Additionally, the statement that Mr. Aguasviva is "likely unable to receive a Form I-601A waiver" is not legally erroneous. Therefore, this Court must deny Petitioners' motion as it pertains to Mr. Aguasviva.

Finally, Petitioner creates a legal Frankenstein by arguing that despite the APA's applicability, principles of equity dictate that this Court should *permanently* enjoin his removal. This argument likewise fails. If the APA applies to ICE's decision to remove Petitioner, the only proper legal remedy is a *remand* to the agency for further consideration consistent with the Court's legal holding.

## ARGUMENT

### I.     Petitioners' Reply is Inconsistent with this Court's Reporting Order.

Petitioners' argument that ICE's defense of its removal decision is limited to the reasons stated in the "brief narrative" provided to Petitioners' counsel *and* that Respondents were required to immediately provide records related to ICE's removal decision is contrary to this Court's reporting order. After the Court certified the class, the Court imposed more reporting requirements on ICE than ICE originally agreed to in exchange for staying the permanent injunction. Among these new requirements, the Court required that if ICE wished to remove a class member, it must

3

provide a "brief narrative" of the reasons for its removal decision to opposing counsel. ECF No. 340 at ¶ 5. The Court did so to facilitate discussion between the parties and out of concern that the parties would flood the Court with disputes about ICE's compliance with this order. Transcript of June 27, 2019 Hearing at 19-20, 22. The Court did not state that this "brief narrative" should serve as an exhaustive list of *all* the factors considered. *Id.* at 69-70. Rather, the Court characterized the "brief narrative" as "some information, some detail" that would "provide greater assurance that the decision-maker considered everything and there wouldn't be any reasonable basis to claim there's a violation of the court's orders." Transcript of June 27, 2019 Hearing at 70:2-5. The Court rejected Petitioners' request for a more formal, exhaustive narrative presumably because it would be burdensome for ICE to produce in every case. *Id.* at 21:4-10 (requesting that the narrative be more than "brief" because "it would not adequately show that respondents are really giving meaningful consideration to the process. . ."). Instead, the Court envisioned that ICE would provide further information to the Court if a removal decision was challenged. *Id.* at 20:12-13 ("I'm trying to *minimize* the need for anybody to testify in the Court.") (emphasis added).

Now, Petitioners revive their claim for injunctive relief, albeit on an individual rather than a class-wide basis, and ask this Court to find that this "brief narrative" which this Court ordered ICE to provide Petitioners for the purpose of discussion and to affirm its consideration of the equities of an alien's case in deciding to effectuate an order of removal, is a record of "final agency action" akin to adjudication decisions issued by U.S. Citizenship and Immigration Services ("USCIS"). However, as described above, this Court never intended the "brief narrative" to be an exhaustive record of decision, and instead simply serves as an assurance that ICE's decision is not contrary to the Court's prior orders. The Court's previous denial of Petitioners' request to provide a more detailed decision and the Court's recognition that further explanation may be necessary in

certain cases, forecloses any argument by Petitioners that this "brief narrative" is a record of decision that binds the agency and that must be analyzed under the APA. Additionally, assessing ICE's decision to execute a removal order based on only those reasons stated in the "brief narrative" would be particularly problematic because Respondents had no prior notice that defense of a removal action would depend on a providing an exhaustive description of the reason for the action.

Petitioner's argument that Respondents are required to immediately produce documents related to ICE's decision to remove Mr. Aguasviva likewise conflicts with the Court's order. This Court deliberately refused to require Respondents to provide "records of the decision." Transcript of June 27, 2019 Hearing at 71 ("I think it might have been reasonable for me to order records of the decision, but I don't think it's the most appropriate thing.").

Regardless, Petitioners lack any basis for their contention that Mr. Lyon's declaration is based on a purportedly "secret" record.[1] Along with providing the required Post Order Custody Review documents, Respondents also voluntarily provided Petitioners' counsel with additional documents not ordered by this Court: EARM database print-outs of Mr. Aguasviva's encounter history with DHS and ICE's comments section. Respondents did so as a showing of good faith and in an attempt to resolve the dispute between the parties and avoid further litigation before this Court. The remaining documents that Petitioners seek supporting Mr. Lyon's attestation that Mr.

---

[1] Petitioners state that Respondents have "refused to provide Petitioners *and the Court*" with the documents supporting Mr. Lyon's declaration. ECF No. 494 at 11 (emphasis added). This is false. Respondents informed Petitioners that they would produce documents related to Mr. Aguasviva, consistent with their objections, that are responsive to Petitioners' Requests for Production through the ordinary course of discovery. ECF No. 495-3. Respondents only refused to *immediately* produce all of these documents on demand based on Petitioners' unsupported contention that Mr. Lyon's declaration, which simply discusses what occurred during Petitioner's own removal proceedings, is unreliable. *See id.* Respondents also have not, and would not, refuse to produce documents if ordered by this Court.

Aguasviva is likely inadmissible under § 1182(a)(6)(B) were filed in immigration court by Mr. Aguasviva or were provided to Mr. Aguasviva's during bond and removal proceedings such that Mr. Aguasviva and his prior attorneys should have access to them. Additionally, even without any documents, Mr. Aguasviva has personal knowledge of the reason he failed to attend his removal proceedings, and counsel is able to make a legal determination of whether this constitutes reasonable cause. Despite this, Mr. Aguasviva has failed to dispute *any of the facts* stated in Mr. Lyon's declaration that form the basis of Mr. Lyon's determination that he is likely inadmissible under § 1182(a)(6)(B), including that he had notice of the requirement to notify the immigration court of any change in address but failed to do so.[2] Accordingly, this Court must reject Petitioners' argument that Mr. Lyon's declaration should be discounted based on their unsubstantiated contention that Mr. Lyons' declaration is based on a purportedly "secret" record.

## II.     Petitioners Incorrectly Identify the Final Agency Action.

An agency action is final for purposes of the APA if (1) it "mark[s] the consummation of the agency's decision making process" and (2) the action is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997). Courts interpret the finality element in a pragmatic way. *Abbot Labs v. Gardner,* 387 U.S. 136, 149 (1967). Petitioner improperly defines the "final agency action" as Respondents' transmission of the "brief narrative" to Petitioners' counsel. This is erroneous for several reasons.

---

[2] For instance, Petitioner is certainly aware that he filed a motion to reopen his removal proceedings in which he argued that exceptional circumstances existed to explain his failure to appear at his removal hearing. Petitioner is also aware that an immigration judge denied his motion to reopen and found that proper notice of his removal hearing was provided to him and that no such exceptional circumstance prevented him from attending his hearing. Finally, Petitioner is most certainly aware that he chose not to challenge and appeal the immigration judge's decision denying his motion to reopen to the Board of Immigration Appeals.

First, this Court intended the "brief narrative" to *begin* discussions between the parties so that the parties could meaningfully confer about a class member prior to removal if necessary. *See* Transcript of June 27, 2019 hearing at 19-20. This demonstrates that the "brief narrative" was not intended to reflect the final decision of ICE but rather a starting point for discussion and a final decision.

Further, ICE's current practice, which is in compliance with this Court's orders, is to ordinarily provide a "brief narrative" of the reasons for *intended* removal as soon as possible in order to provide the parties time to work out any disagreements before the removal date. ICE expects that Petitioners will object to some intended removals, as they have with Mr. Aguasviva, which will require ICE to internally confer and consult their counsel. After Petitioner's counsel objected to Mr. Aguasviva's removal, ICE considered Petitioners' objections. Such further consideration and deliberation further illustrates that the "brief narrative" should not be treated as a final agency action because the "brief narrative" is far from a definite statement of the agency's decision. *See FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 239-41 (1980) (citing a number of criteria that suggested finality, including a "definitive statement" on the agency's position).

Finally, due in part to ICE's practice of providing the "brief narrative" as soon as possible after detention, ICE may not actually remove an individual until weeks after the transmission of the "brief narrative." In that time, ICE may discover additional information that lends itself to a decision to release the alien, the alien may submit further information in support of release, a motion to reopen may be filed or adjudicated, a case may be appealed to the Court of Appeals, or ICE may conduct a Post Order Custody Review ("POCR") in which they may decide anew whether to move forward with removal. ICE's decision-making process as to removal is not at an end and the legal consequences of removal do not trigger until ICE ceases considering whether they intend

to execute the removal of the class member. Properly understood, the "brief narrative" is preliminary in nature because at the time it is prepared ICE intends to proceed with removal, but has not made a final decision regarding an alien's removal. As a result, to the extent this Court decides to review the merits of ICE's decision to remove Mr. Aguasviva under the APA, it should do so based upon the reasoning set forth in Mr. Lyon's declaration – not in the interlocutory "brief narrative" provided to Petitioners.

### III. Respondents Complied with the Court's Order.

Petitioners do not dispute that Mr. Aguasviva is likely inadmissible for failing to attend his removal proceedings without reasonable cause. Petitioners seem to concede that their entire motion relies on an argument that the final agency action is ICE's "brief narrative" such that ICE should not be permitted to elaborate on the reasons for executing the removal order via a declaration when Mr. Aguasviva challenges ICE's decision and seeks injunctive relief. However, ICE's "brief narrative" satisfies this Court's order even when considered alone. Therefore, whether the Court analyzes ICE's decision on the "brief narrative" alone or upon consideration of the reasons set forth in Mr. Lyon's declaration, Petitioners' motion fails.

This Court has held that "ICE may deport an alien before CIS has the opportunity to adjudicate his or her application for a provisional waiver if it makes an individualized decision to do so based on more than the mere fact that the alien is subject to a final order of removal." ECF No. 159 at 35. Petitioners ignore the fact that ICE plainly did consider "more than the mere fact that [Mr. Aguasviva] is subject to a final order of removal" and take issue with *part of* ICE's "brief narrative," which in their view, renders the entire decision arbitrary and capricious. This is incorrect for two reasons. First, ICE's statement in the "brief narrative" that "he is likely unable to receive a Form I-601A" is not erroneous. As explained in Respondents' opposition, Form I-212

applications — a pre-requisite to the Form I-601A — are regularly denied if an alien is otherwise inadmissible for failing to attend removal proceedings without reasonable cause. *Matter of N-C-R-,* 2018 WL 3241598, at *2-3 (BIA June 4, 2018); *Matter of J-A-M-G-,* 2018 WL 3241606 at *2 (AAO June 14, 2018); *Matter of V-A-R-B-,* 2018 WL 1963995 at *2 (April 5, 2018); *see also* USCIS Policy Manual, Ch. 4 B.3, https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-7. Further, USCIS *can* deny Form I-601A applications because an alien is inadmissible for reasons other than unlawful presence. 81 Fed. Reg. at 50254. And ultimately, even if an otherwise inadmissible alien, like Mr. Aguasviva, *initially* receives an approved Form I-601A, that approval will be ultimately revoked. As such, it is as if the alien never received an approved waiver. Therefore, ICE's statement in the brief narrative was not legally erroneous.

Second, even if ICE's statement in the "brief narrative" that Petitioner is unlikely to receive a provisional waiver is erroneous, it is inconsequential under this Court's order and the APA. This Court only requires that ICE name *one* other reason, apart from the alien's final order of removal, to remove a class member. ECF No. 159 at 35. ICE complied with the Court's order by explaining in the "brief narrative" that it believes Petitioner is inadmissible under § 1182(a)(6)(B) based on "the facts of the alien's particular case," his recently denied motion to reopen, and refusal to appeal the denial. ECF No. 468-1. As explained in Respondents' opposition, ICE's determination that Petitioner is likely inadmissible is supported by the applicable case law. ECF No. 489 at 23-25. Inadmissibility is also relevant factor to consider when deciding whether to remove an individual because the Form I-212 and Form I-601A regulations prevent otherwise inadmissible aliens from benefitting from, and sometimes even receiving, provisional waivers. 8 C.F.R. § 212.7(e)(14) (providing for automatic revocation if the Department of State determines that the alien is inadmissible for some reason other than unlawful presence); 81 Fed. Reg. at 50254 ("[T]he

9

extreme hardship and discretionary eligibility assessments made during a provisional waiver adjudication ***could be impacted by additional grounds of inadmissibility***.") (emphasis added). Therefore, ICE has fully complied with this Court's order by considering Mr. Aguasviva's *entire case*, including his pursuit of provisional waivers and his likely inadmissibility, prior to removing him from the United States. *See* ECF No. 468-1. Accordingly, Petitioners' failure to dispute his likely inadmissibility is fatal to their motion regardless of where the Court pegs the final agency action and whether one part of ICE's "brief narrative" was erroneous.

Consistent with this reasoning, Petitioners have failed to meet their burden to show that any alleged error was prejudicial. 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); *Shinseki v. Sanders,* 556 U.S. 396, 406 (2009) (describing § 706 as an administrative law harmless error rule); *Sasen v. Spencer,* 879 F.3d 354, 366 (1st Cir. 2018) ("The party challenging the agency's determination . . . has the burden to show that a particular error is prejudicial."). As stated in ICE's "brief narrative," ICE *also* decided to remove Mr. Aguasviva because he was likely inadmissible under §1182(a)(6)(B). ECF No. 468-1. Even if ICE misstated in its summary explanation the *effect* of inadmissibility on Petitioner's ability to obtain a provisional waiver, ICE nonetheless intended to remove Petitioner because he is inadmissible. *Id.*; ECF No. 489-1. Because one of the grounds for removal – Petitioner's inadmissibility – is and remains valid, Petitioner has not met his burden to demonstrate prejudice by any alleged error *See Mail Order Ass'n of Am. V. USPS,* 2 F.3d 408, 434 (D.C. Cir. 1993) (affirming the agency's decision because one of the grounds for the decision was valid); *Ore v. Clinton,* 675 F.Supp.2d 217, 224-25 (D. Mass. 2009) (same). Therefore, because Petitioner did not suffer any prejudice as a result of any alleged error, he is not entitled to relief under the APA. *See* 5 U.S.C. § 706.

**IV.     While Unnecessary, the Only Proper Remedy is a Remand to the Agency.**

"If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances is to remand to the agency for additional investigation." *Fla. Power & Light Co. v. Larion,* 470 U.S. 729, 744 (1985); *see also I.N.S. v. Orlando Ventura,* 537 U.S. 13, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statues place primarily in agency hands."). If this Court erroneously finds that ICE's decision to remove Mr. Aguasviva did not comply with the Court's order (ECF No. 159) and the APA, the only proper remedy is a remand to ICE to comply with the Court's order. *See id.* Petitioners fail to point to any case where a Court has imposed an "equitable remedy" for a violation of the APA presumably because they know that courts generally do not have the authority under the APA to order specific relief. ECF No. 494 at 14-15; *see Fla. Power & Light Co.,* 470 U.S. at 744. Rather, all of the cases Petitioners cite concern due process violations that are not applicable here because Petitioner lacks a due process interest in pursuing a provisional waiver. *See* ECF No. 253 at 2 (limiting the due process class to class members who have approved Form I-212s). Therefore, the only remedy this Court can order is a remand to the agency for further consideration and a new decision that is consistent with its holding.

## CONCLUSION

For the forgoing reasons, this Court should deny Petitioners' motion to enjoin Respondents from removing them.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

C. FRED SHEFFIELD
Senior Litigation Counsel

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I, Mary Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                 /s/ *Mary L. Larakers*
                                                 Mary L. Larakers

Dated: March 18, 2020                          Trial Attorney