```
 1                        *  *  *  *  *

 2          THE COURT:  I'm going to decide this matter, and I will

 3     explain my decision.  The transcript will be a record of the

 4     decision and you must order it.  It's possible I'll write this

 5     up, but I do think this is an urgent matter and I should tell

 6     you my decision, so I will.

 7          First, I've concluded for the reasons described by the

 8     Second Circuit in Mapp v. Reno, 241 F. 3d 221 at 230, a 2001

 9     Second Circuit case, that District Courts do have the power to

03:23 10     order the release of immigration detainees on bail.  I don't

11     think that the REAL ID Act alters that fundamental authority.

12          As I said earlier, I believe that the Glynn v. Donnelly

13     case, the First Circuit case, 470 F.2d 95, 98 is

14     distinguishable in a material respect.  In Glynn, the First

15     Circuit did hold that in certain extraordinary circumstances a

16     District Court could release a detained petitioner before the

17     petition was decided on the merits.  It created a higher

18     standard or stated a higher standard than the Second Circuit in

19     Mapp.  In Glynn, the petitioner was somebody who had been

03:24 20     convicted of a crime.  I believe his appeal had been denied,

21     and then he was petitioning for habeas corpus, but he had no

22     presumption of innocence.

23          In this case, it's important to remember we're talking

24     about a civil detainee, somebody who has never been charged,

25     let alone convicted of any crime.  And I think that the Mapp
```

test or something similar or perhaps less is appropriate.  As I
said, the <u>Mapp</u> test where the court in <u>Mapp</u> said -- I don't
know -- somebody perhaps didn't mute their phone because,
unless I'm hearing the court reporter, there's something
clicking, banging.

But the court in <u>Mapp</u> said the court considering a habeas
petitioner's fitness for bail must inquire into whether the
habeas petitioner raises substantial claims and whether
extraordinary circumstances exist to make the grant of bail
necessary to make the habeas remedy effective.  And I would add
to that that, even if those requirements are met, the court
would have to be satisfied that the petitioner would not be a
danger to the community, reasonably assured that the petitioner
would not be a danger to the community or not would flee if
released on reasonable feasible conditions.

I do find, without expressing any prediction of how the
merits will be resolved, that a substantial claim or question
is raised by the petitioner's habeas petition.  The initial
description by ICE of the reason for his detention -- well, the
reason for his detention sent to petitioner's counsel in an
email was that in effect -- well, that he was likely to be
unable -- the petitioner was likely to be unable to receive an
approved I-601A because he did not appear at his removal
hearing.  He was ordered removed in absentia.  The essence of
this, the way it was stated initially indicated that ICE was

 1  under the impression or misimpression that the petitioner is

 2  ineligible for an I-601A.

 3       While I've commended Mr. Lyons and Mr. Charles on many

 4  things they've done, since June 2018, I have found ICE has

 5  repeatedly failed to understand its own regulations as I held

 6  in 2018.  And I learned, to my dismay, in the fall of 2019,

 7  when the witness responsible for much of the national program

 8  for many years testified that he didn't understand -- he didn't

 9  realize there was a regulation that required that everybody

03:28 10  detained more than six months had to be interviewed.  It would

11  be sadly consistent with the pattern in this case if ICE

12  misunderstood whether somebody who failed to appear for a

13  removal hearing was ineligible for an I-601A.

14       And indeed it appears that ICE's position has evolved and

15  they don't take that position anymore.  Mr. Lyons has

16  articulated in his declaration other reasons for the detention,

17  but there is the question of whether those reasons were in his

18  mind when he decided to detain the petitioner or whether the

19  affidavit that appears to have been drafted by a lawyer has

03:29 20  rationalizations that weren't part of the decisionmaking

21  process at issue.  That's an issue that I may need to hear

22  testimony on.  I also -- but I do think that there's a

23  substantial question, a substantial claim.

24       In addition, I find that extraordinary circumstances exist

25  that make the grant of bail necessary to make the habeas

1    effective, to make the habeas remedy effective.  To be blunt,

2    we're living in the midst of a coronavirus pandemic.  Some

3    infected people die; not all, but some infected people die.  If

4    the petitioner is infected and dies, the case will be moot.

5    The habeas remedy will be ineffective.

6          And being in a jail enhances risk.  Social distancing is

7    difficult or impossible.  Washing hands repeatedly may be

8    difficult.  There is, it appears not to be disputed, one

9    court -- one Plymouth County jail employee who has been

03:31 10   infected, and there's a genuine risk that this will spread

11   throughout the jail.  Again, the petitioner is in custody with

12   people charged with or convicted of crimes.  He's not been

13   charged or convicted of anything.

14         I've also considered what I ordinarily consider in making

15   or reviewing bail decisions in criminal cases.  There's no

16   contention that the petitioner will be dangerous to any

17   individual or the community if he's released on reasonable

18   conditions.

19         ICE does contend that he would be a risk of flight.  That

03:32 20   is based on the fact that he missed one immigration hearing at

21   which his removal was ordered and apparently did not tell ICE

22   of his change of address.  And he is facing a serious risk of

23   being removed.  He may not prevail on the habeas petition.  And

24   if he does, he may not get a provisional waiver.

25         However, there's no indication that the petitioner has

anyplace to go.  Being among other people, say, in a homeless
shelter is very dangerous, like being in a jail.  There's no
indication that he has any relatives or others who might take
him in other than his wife.  And I am ordering that he live
with his wife in Lawrence, Massachusetts; that he stay in their
residence, except if there is a medical need for him to leave;
and, unless it's a genuine emergency, he would need the
permission of ICE to leave.  And he is to be on electronic
monitoring, so if he leaves the residence when he hasn't been
authorized to leave, ICE would know that and, if appropriate,
could come back to me to revoke his release.

In addition, there are certain equities that favor the
release of the petitioner.  He's now been detained since
September 4, 2019.  On January 27, the motion was filed to
enjoin his removal.  As I indicated in the course of the
argument, with the assent of petitioner's counsel, class
counsel, ICE has repeatedly been given extensions of time to
respond to the motion.

On January 31, 2020, the parties filed a joint motion to
give ICE until February 14 to confer, and then on February 13,
the respondents filed an unopposed motion for an extension of
time to file their opposition until February 20, which I
allowed.  Then I was asked not to schedule a hearing in this
case until after March 25 because Mr. Lyons would not be
available from March 10 to 24.  I accommodated that.  And I was

1    told that local counsel, Ms. Piemonte, would be on trial until

2    April 6.  On March 19 I allowed the respondent's motion for

3    respondents to file a sur-reply.  And though it's possible,

4    except for ICE asking for and receiving extensions of time to

5    respond or file a sur-reply, that there would have been a

6    hearing and a decision on this case earlier.

7         So essentially we're in a circumstance where an individual

8    who has not been accused of any crime has been detained for --

9    I think it comes to about six and a half months.  Part of that

03:36 10   is because I've stayed his removal pending the decision on his

11   motion to enjoin removal, but because of accommodations to ICE,

12   that wasn't fully briefed until less than a week ago, and I had

13   been asked to defer to Mr. Lyons' availability, which I did.

14        So for all of those reasons, I'm ordering that the

15   petitioner be released no later than tomorrow, March 26, 2020,

16   on the conditions I articulated and will memorialize in a brief

17   order.

18        I'm ordering counsel for ICE to inform me when he has been

19   released, and if there's some problem with implementing this

03:38 20   order by tomorrow, you'll have to let me know promptly.

21   Petitioners' counsel I'm directing, ordering, to inform the

22   petitioner and his wife of my decision, including the

23   requirements that he live with his wife and that he be on

24   electronic monitoring.  And he'll have to confirm for ICE,

25   he'll have to provide ICE her address if they don't have it and

1  confirm her willingness to have her husband with her for the

2  duration of this case.

3                              *  *  *  *  *