# EXHIBIT B

| | | |
|---|---|---|
| 1 | BY MS. SLATER: | 11:27:35 |
| 2 |     Q.   Do you agree that ERO and USCIS colluded | 11:27:37 |
| 3 | to arrange the arrest of individuals at USCIS? | 11:27:38 |
| 4 |     MR. WEILAND:  Objection. | 11:27:44 |
| 5 |     THE WITNESS:  I should ask you, does | 11:27:46 |
| 6 | "collude" mean communicate? | 11:27:47 |
| 7 | BY MS. SLATER: | 11:27:57 |
| 8 |     Q.   I believe the "collusion" term was used | 11:27:59 |
| 9 | by you in your testimony earlier.  So what does | 11:28:00 |
| 10 | collusion mean to you I would say? | 11:28:04 |
| 11 |     A.   I would say in the way it's been | 11:28:07 |
| 12 | expressed is -- is by design, we're actively working | 11:28:08 |
| 13 | for the sole purpose of making people available to | 11:28:12 |
| 14 | ERO to arrest, and that is not true at all.  If | 11:28:18 |
| 15 | you're talking about communicating and -- and making | 11:28:24 |
| 16 | some logistical -- taking some logistical steps, | 11:28:31 |
| 17 | that we do.  But collude has a very negative | 11:28:35 |
| 18 | connotation. | 11:28:39 |
| 19 |     Q.   Mr. Riordan, what logistical steps do | 11:29:25 |
| 20 | you believe USCIS took to arrange for arrests at | 11:29:28 |
| 21 | USCIS's offices by ERO? | 11:29:34 |
| 22 |     A.   In terms of cases that were ERO-reported | 11:29:39 |
| 23 | or arrived at -- at the USCIS office in Lawrence, | 11:29:50 |
| 24 | for instance, we had a number of I-130 stand-alones | 11:29:56 |
| 25 | that had final orders of removal.  And we | 11:29:59 |

| | | |
|---|---|---|
| 1 | communicated with ERO to tell them that and, if they | 11:30:04 |
| 2 | were interested, give -- give them the times of the | 11:30:07 |
| 3 | appointments and made arrangements when they arrived | 11:30:14 |
| 4 | to enter into the parking lot, be escorted in the | 11:30:19 |
| 5 | building.  That is the sort of support, logistical | 11:30:23 |
| 6 | support we provided. | 11:30:27 |
| 7 | Q.   And USCIS actually worked with ERO to | 11:30:31 |
| 8 | schedule the interviews, right? | 11:30:35 |
| 9 | A.   If there were ten people or -- or nine | 11:30:46 |
| 10 | people with final orders of removal, ERO had to work | 11:30:49 |
| 11 | with us.  We didn't work with ERO.  We set up a | 11:30:55 |
| 12 | schedule where nine people -- if they were | 11:30:59 |
| 13 | interested in responding to the nine people, they | 11:31:02 |
| 14 | wouldn't do so in a single day or a single morning. | 11:31:05 |
| 15 | We wanted to have -- if they were interested in | 11:31:09 |
| 16 | responding -- to space those interviews for the | 11:31:12 |
| 17 | benefit of USCIS, not of ERO. | 11:31:17 |
| 18 | MS. SLATER:  Could we take this document | 11:31:22 |
| 19 | down, please?  Thanks. | 11:31:24 |
| 20 | BY MS. SLATER: | 11:31:25 |
| 21 | Q.   How was that a benefit to USCIS to | 11:31:26 |
| 22 | spread the interviews out if ERO was interested? | 11:31:28 |
| 23 | A.   It takes personnel.  It takes time. | 11:31:33 |
| 24 | It -- it can be disruptive if the -- an entire day | 11:31:37 |
| 25 | is taken up with referrals to ERO.  So for -- for | 11:31:44 |

| | | |
|---|---|---|
| 1 | Do you see that in the second paragraph? | 13:38:29 |
| 2 | A.   I do. | 13:38:32 |
| 3 | Q.   Why is it important to adjudicate the | 13:38:33 |
| 4 | case? | 13:38:38 |
| 5 | A.   As I mentioned earlier, earlier | 13:38:40 |
| 6 | testimony, our goal is to make a decision each -- on | 13:38:42 |
| 7 | each and every case at the time of interview.  Many | 13:38:47 |
| 8 | times that's not possible to do, but we certainly | 13:38:50 |
| 9 | want to conclude the interview and gather as much | 13:38:53 |
| 10 | information regarding the bona fides of the | 13:38:57 |
| 11 | relationship or -- or is the relationship | 13:39:02 |
| 12 | documented?  And if there are -- if there are -- is | 13:39:04 |
| 13 | there a need to collect additional evidence, we -- | 13:39:09 |
| 14 | we ask for that evidence, but it -- that is our | 13:39:12 |
| 15 | mission, to make decisions on cases for benefits out | 13:39:16 |
| 16 | of the immigration -- | 13:39:19 |
| 17 | Q.   Sorry. | 13:39:24 |
| 18 | If the individual is arrested, why is it | 13:39:29 |
| 19 | important to adjudicate the case? | 13:39:33 |
| 20 | A.   I think we are fulfilling our mission, | 13:39:40 |
| 21 | and I think a decision in the case is important | 13:39:42 |
| 22 | to -- to the beneficiary and the petitioner, | 13:39:45 |
| 23 | foremost to the petitioner.  The petitioner has the | 13:39:53 |
| 24 | contract with -- with the agency, with the | 13:39:58 |
| 25 | government.  We owe that person an answer, an | 13:39:59 |

| | | |
|---|---|---|
| 1 | approval, or if the case can't be approved, a | 13:40:01 |
| 2 | denial, but it's important to issue a decision. | 13:40:03 |
| 3 | Q.   What happens to that case if the | 13:40:09 |
| 4 | individual is arrested and removed? | 13:40:12 |
| 5 | A.   Well . . . | 13:40:19 |
| 6 | MR. WEILAND:  Objection. | 13:40:21 |
| 7 | THE WITNESS:  I can't recall at this | 13:40:24 |
| 8 | moment a time where a case -- a decision | 13:40:29 |
| 9 | wasn't made in one of those cases.  There have | 13:40:33 |
| 10 | been times when ERO has brought applicants to | 13:40:37 |
| 11 | the office for interview and decision on a | 13:40:40 |
| 12 | case.  That's not unusual at all.  But we -- | 13:40:47 |
| 13 | we certainly want to adjudicate that case. | 13:40:48 |
| 14 | BY MS. SLATER: | 13:40:53 |
| 15 | Q.   Can you adjudicate the case if the | 13:40:54 |
| 16 | person has been removed? | 13:40:55 |
| 17 | A.   Yes. | 13:40:59 |
| 18 | Q.   Does the removal impact the decision on | 13:41:01 |
| 19 | the adjudication? | 13:41:05 |
| 20 | MR. WEILAND:  Object. | 13:41:08 |
| 21 | THE WITNESS:  Of -- of an I-130? | 13:41:09 |
| 22 | BY MS. SLATER: | 13:41:11 |
| 23 | Q.   Yes. | 13:41:12 |
| 24 | A.   No, the focus, the attention or the | 13:41:12 |
| 25 | question in an I-130 is petitioner has filed a | 13:41:17 |