# Exhibit E

```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF MASSACHUSETTS
 3                                         x
 4    LILIAN PAHOLA CALDERON JIMINEZ,      :
 5    and LUIS GORDILLO, et al.,           :
 6           Plaintiff Petitioners,        :
 7       vs.                               : Case No.
 8    CHAD WOLF, et al.,                   : 1:18 cv 10225 MLW
 9           Defendant Respondents.        :
10                                         x
11
12       VIDEOTAPED DEPOSITION OF DENIS RIORDAN
13    (Reported Remotely via Video & Web Videoconference)
14       Boston, Massachusetts (Deponent's location)
15              Wednesday, August 5th, 2020
16                     9:05 a.m.
17
18
19
20
21
22   Reported Remotely Stenographically By:
23   Amy A. Brauser, RPR, RMR, CRR
24   Job No.: 312760
25   Pages: 1   288
```

```
 1   ALL APPEARANCES VIA WEB VIDEOCONFERENCE
 2   ON BEHALF OF THE PLAINTIFFS PETITIONERS:
 3       ALLYSON SLATER, Esquire
 4       STEPHEN PROVAZZA, Esquire
 5       CHRISTINA LUO, Esquire
 6       Wilmer Cutler Pickering Hale and Door, LLP
 7       60 State Street
 8       Boston, Massachusetts 02109
 9       617.526.6000
10       allyson.slater@wilmerhale.com
11       stephen.provazza@wilmerhale.com
12           (and)
13       MATTHEW R. SEGAL, Esquire
14       ADRIANA LAFAILLE, Esquire
15       JESSICA LEWIS, Esquire
16       American Civil Liberties Union
17             Foundation of Massachusetts
18       211 Congress Street
19       Boston, Massachusetts 02109
20       617.482.3170
21
22
23
24
25
```

```
 1      ALL APPEARANCES VIA WEB VIDEOCONFERENCE
 2   ON BEHALF OF THE DEFENDANT RESPONDENTS:
 3        WILLIAM H. WEILAND, Esquire
 4        MARY LARAKERS, Esquire
 5        WILLIAM BATEMAN, Esquire
 6        U.S. DEPARTMENT OF JUSTICE, OFFICE OF
 7        IMMIGRATION LITIGATION
 8        P.O. Box 868
 9        Washington, DC 20044
10        202.353.4419
11        william.h.weiland@usdoj.gov
12        mary.l.larakers@usdoj.gov
13
14   ALSO PRESENT:
15        Bryna Godar, ACLUM Intern
16        Daniel Polonsky, ALCUM Intern
17        Moshe Malashock, USCIS
18        Sarah Loiler, Technician
19        Mike Pietanza, Videographer
20
21
22
23
24
25
```

| | | |
|---|---|---|
| 1 | communicated with ERO to tell them that and, if they | 11:30:04 |
| 2 | were interested, give -- give them the times of the | 11:30:07 |
| 3 | appointments and made arrangements when they arrived | 11:30:14 |
| 4 | to enter into the parking lot, be escorted in the | 11:30:19 |
| 5 | building.  That is the sort of support, logistical | 11:30:23 |
| 6 | support we provided. | 11:30:27 |
| 7 |     Q.   And USCIS actually worked with ERO to | 11:30:31 |
| 8 | schedule the interviews, right? | 11:30:35 |
| 9 |     A.   If there were ten people or -- or nine | 11:30:46 |
| 10 | people with final orders of removal, ERO had to work | 11:30:49 |
| 11 | with us.  We didn't work with ERO.  We set up a | 11:30:55 |
| 12 | schedule where nine people -- if they were | 11:30:59 |
| 13 | interested in responding to the nine people, they | 11:31:02 |
| 14 | wouldn't do so in a single day or a single morning. | 11:31:05 |
| 15 | We wanted to have -- if they were interested in | 11:31:09 |
| 16 | responding -- to space those interviews for the | 11:31:12 |
| 17 | benefit of USCIS, not of ERO. | 11:31:17 |
| 18 |     MS. SLATER:  Could we take this document | 11:31:22 |
| 19 | down, please?  Thanks. | 11:31:24 |
| 20 | BY MS. SLATER: | 11:31:25 |
| 21 |     Q.   How was that a benefit to USCIS to | 11:31:26 |
| 22 | spread the interviews out if ERO was interested? | 11:31:28 |
| 23 |     A.   It takes personnel.  It takes time. | 11:31:33 |
| 24 | It -- it can be disruptive if the -- an entire day | 11:31:37 |
| 25 | is taken up with referrals to ERO.  So for -- for | 11:31:44 |

| | | |
|---|---|---|
| 1 | the efficient operation of a USCIS office, it did | 11:31:48 |
| 2 | not make good sense in   in managing an office that | 11:31:54 |
| 3 | their responses to these cases occur during a finite | 11:32:03 |
| 4 | period of time. | 11:32:11 |
| 5 | So we   we want to dictate the | 11:32:11 |
| 6 | schedule.  We want to dictate the times and the days | 11:32:15 |
| 7 | that ERO comes into our office. | 11:32:18 |
| 8 | Q.    So is it correct that depending on the | 11:32:34 |
| 9 | level of interest from ERO, an individual interview | 11:32:38 |
| 10 | could be scheduled at a different time that was | 11:32:42 |
| 11 | convenient for USCIS and for ERO? | 11:32:47 |
| 12 | A.    According to the CHAP, yes, that is | 11:32:52 |
| 13 | provided for. | 11:32:55 |
| 14 | MS. SLATER:  Can we go to Tab 36, | 11:32:57 |
| 15 | please? | 11:33:10 |
| 16 | THE TECHNICIAN:  I don't have a Tab 36. | 11:33:19 |
| 17 | I have up to Tab 35. | 11:33:21 |
| 18 | MS. SLATER:  I believe Tab 36 should | 11:33:28 |
| 19 | have been provided last night. | 11:33:30 |
| 20 | Well, we can come back to that. | 11:33:39 |
| 21 | BY MS. SLATER: | 11:33:43 |
| 22 | Q.    Mr. Riordan, where in the CHAP does it | 11:33:43 |
| 23 | actually specify that interviews are to be scheduled | 11:33:46 |
| 24 | in the way you just testified? | 11:33:50 |
| 25 | A.    I think it's Chapter 2, part B. | 11:33:54 |

| | | |
|---|---|---|
| 1 | Q. So your reaction to this change in | 11:55:58 |
| 2 | policy was that you thought there might be an | 11:56:01 |
| 3 | increase in the number of arrests at USCIS offices? | 11:56:06 |
| 4 | A. Yes, I thought the frequency of   of | 11:56:14 |
| 5 | responses would   would increase, yes. | 11:56:17 |
| 6 | Q. And were you ordered to take any | 11:56:27 |
| 7 | specific steps to implement this new policy? | 11:56:30 |
| 8 | A. No. | 11:56:34 |
| 9 | Q. Did you provide guidance to anyone in | 11:56:37 |
| 10 | the field offices about how to implement this new | 11:56:41 |
| 11 | policy? | 11:56:44 |
| 12 | A. Other than what I've said about an | 11:56:48 |
| 13 | orderly   an orderly process, I didn't provide any | 11:56:51 |
| 14 | guidance other than that. People are   are | 11:56:57 |
| 15 | professionals, and this is not   is not entirely | 11:56:59 |
| 16 | new. There have been through the years responses | 11:57:06 |
| 17 | from   from deportation officers. | 11:57:08 |
| 18 | Q. So your priority was making sure that | 11:57:18 |
| 19 | the arrests that occurred at CIS offices were done | 11:57:20 |
| 20 | in an orderly manner? | 11:57:28 |
| 21 | A. Correct, in a way that was secure and | 11:57:30 |
| 22 | orderly, not to inter   interfere with the | 11:57:34 |
| 23 | operations of CIS or to keep that interference to | 11:57:38 |
| 24 | the absolute minimum. | 11:57:44 |
| 25 | Q. And part of making sure things were kept | 11:57:47 |

| | | |
|---|---|---|
| 1 | orderly was the spacing out of the interviews where | 11:57:52 |
| 2 | ERO had expressed interest in arresting the | 11:58:00 |
| 3 | petitioner, correct? | 11:58:07 |
| 4 | A.   Yes, yes.  In terms of    I wanted | 11:58:08 |
| 5 | again, as I said earlier that our    our principal | 11:58:12 |
| 6 | responsibility is the good order of the USCS | 11:58:18 |
| 7 | USCIS operation. | 11:58:23 |
| 8 | If we notified people of    people    by | 11:58:26 |
| 9 | "people" I mean ERO    of the appearance of someone | 11:58:28 |
| 10 | with a final order and    and they're interested, we | 11:58:32 |
| 11 | certainly    there were days when it was just the | 11:58:35 |
| 12 | random    that the schedule from the NBC had five | 11:58:43 |
| 13 | people on the same schedule.  There was no design to | 11:58:46 |
| 14 | that at all.  But when we have advance notice to | 11:58:48 |
| 15 | have five day    five people on the same day, that | 11:58:52 |
| 16 | wouldn't be our ideal plan.  That wouldn't be the | 11:58:54 |
| 17 | plan we would be looking to have. | 11:58:57 |
| 18 | Q.   And who made the determination that the | 11:59:02 |
| 19 | arrests at USCIS should be spaced out? | 11:59:05 |
| 20 | A.   That was my direction. | 11:59:12 |
| 21 | Q.   When did you reach that opinion? | 11:59:15 |
| 22 | A.   I've always had that opinion, for years. | 11:59:17 |
| 23 | Q.   Who did you speak to about that | 11:59:22 |
| 24 | decision? | 11:59:25 |
| 25 | A.   Field office director    field office | 11:59:28 |

| | | |
|---|---|---|
| 1 | A.   Well, I   I think it's quite a bit | 13:10:02 |
| 2 | different. It's   it's providing information that | 13:10:04 |
| 3 | a person is coming to our office and has an order of | 13:10:07 |
| 4 | removal. They   they choose to respond or not | 13:10:11 |
| 5 | respond. And for many years or for a period of | 13:10:14 |
| 6 | time, was rather lengthy, they responded very | 13:10:16 |
| 7 | rarely, but we still made those notifications. | 13:10:21 |
| 8 | Q.   But you understood that once the Kelly | 13:10:25 |
| 9 | memo was put in place in February of 2017, that | 13:10:27 |
| 10 | those responses were going to be more frequent, | 13:10:30 |
| 11 | right? | 13:10:33 |
| 12 | A.   I didn't understand that until it | 13:10:36 |
| 13 | happened. | 13:10:37 |
| 14 | Q.   I believe you testified earlier that | 13:10:40 |
| 15 | your reaction to the Kelly memo was that you | 13:10:42 |
| 16 | understood ICE would be taking additional | 13:10:45 |
| 17 | enforcement actions against individual's final | 13:10:48 |
| 18 | orders, right? | 13:10:51 |
| 19 | MR. WEILAND: Objection. | 13:10:52 |
| 20 | THE WITNESS: I would say that in   in | 13:10:56 |
| 21 | ▮▮▮▮▮▮▮ memo, they didn't respond to | 13:10:57 |
| 22 | other   other calls earlier in the month. So | 13:11:02 |
| 23 | until the situation evolved, then I   I found | 13:11:05 |
| 24 | out that they would be   I was told at one | 13:11:12 |
| 25 | point they would respond to every case. | 13:11:14 |

BY MS. SLATER:
  Q.    And when were you told that?
  A.    I was told that on the date that I met Mr. Cronen.
  Q.    So Mr. Cronen told you that?
  A.    He did.
  Q.    Do you recall when that was?
  A.    And I believe it was November the 8th of 2017.
  Q.    So as early, if not before, November 8th, 2017, you understood that every time USCIS notified ICE that there was an individual with a final order who was coming in for an interview, that ICE planned to come to the USCIS office and arrest that individual?
  A.    I believed that there was a potential that every time we -- we outreached to -- to ICE, there was a possibility and probably a strong possibility that they would be responding.  There is a lot of factors that would play into that, and -- and ERO would make -- have to make their decisions on a case by case basis.
       Getting back to -- to the Kelly memo, yes -- yes, I should say, the enforcement -- the enforcement -- the message about responding to

1   people with final orders, yeah, I — I expected that          13:12:42
2   there would be increased activity, yes, I did.  So I         13:12:48
3   want to be — correct the record for whatever                 13:12:51
4   inconsistency exists right now, but until it                 13:12:55
5   happened, I didn't know for sure.                            13:13:04
6            Q.    And it happened approximately a month         13:13:05
7   later in March 2017?                                         13:13:06
8            A.    I — I'd have to — to remember, again,         13:13:12
9   what date the Kelly memo was, but if you're — if             13:13:13
10  it's — if it was issued a month later, a month               13:13:19
11  previous to — to these arrests, that would be                13:13:21
12  correct.                                                     13:13:25
13           Q.    Okay.  And your testimony earlier was         13:13:26
14  that Mr. Cronen told you in November of 2017 that            13:13:31
15  ICE would respond to every case, correct?                    13:13:40
16           A.    I need to — to clarify, put this in           13:13:46
17  context.  I discussed this with — with Mr. Cronen            13:13:48
18  for all of probably 30 seconds.  It was on the lawn          13:13:51
19  outside Constitution Hall in Washington, DC, The             13:13:58
20  Daughters of the American Revolution.  I was                 13:14:02
21  standing there with a group of people from Boston.           13:14:04
22  It was a Secretary of Homeland Security's award              13:14:07
23  presentation day.                                            13:14:14
24               And he came by and he said, Hello.              13:14:14
25               And I said — I mentioned about ERO              13:14:16

| | | |
|---|---|---|
| 1 | directive or the guidance, and we should follow | 13:22:08 |
| 2 | that. I must follow it. | 13:22:12 |
| 3 | Q. And is that true regardless of whether | 13:22:23 |
| 4 | someone is pursuing an immigration benefit? | 13:22:25 |
| 5 | A. It's true in every case where there is | 13:22:30 |
| 6 | an outstanding order of removal or warrant of | 13:22:32 |
| 7 | deportation. | 13:22:38 |
| 8 | Q. So the fact that an individual is in the | 13:22:40 |
| 9 | process of applying for a provisional waiver does | 13:22:42 |
| 10 | not impact the decision to notify ICE? | 13:22:45 |
| 11 | A. Again, if there's a warrant of | 13:22:51 |
| 12 | deportation, a final order in the file, we will | 13:22:53 |
| 13 | notify ICE. | 13:22:56 |
| 14 | Q. And as I said, is that  is it correct | 13:22:58 |
| 15 | that that is regardless of whether that individual | 13:23:00 |
| 16 | is pursuing an immigration benefit? | 13:23:02 |
| 17 | A. The  the driving force that  the | 13:23:06 |
| 18 | factor that guides us is the warrant of deportation | 13:23:10 |
| 19 | and the final order. | 13:23:15 |
| 20 | Q. So the only thing that you consider in | 13:23:16 |
| 21 | making the call to ICE or to ERO is whether there's | 13:23:18 |
| 22 | a warrant deportation or a final order of removal; | 13:23:21 |
| 23 | is that right? | 13:23:26 |
| 24 | A. That's correct. | 13:23:26 |
| 25 | Q. Nothing else is considered? | 13:23:31 |

|    |    |    |
|----|----|----|
| 1  | A. Yes. But in terms of the number of | 14:27:09 |
| 2  | advisories that were made, that would depend on the | 14:27:12 |
| 3  | number of cases that came to our attention with | 14:27:14 |
| 4  | final orders. | 14:27:16 |
| 5  | Q. Understood. | 14:27:17 |
| 6  | And all I'm saying is that the USCIS | 14:27:19 |
| 7  | alerts were going to result in additional in person | 14:27:21 |
| 8  | visits from ERO, correct? | 14:27:25 |
| 9  | A. In  in all probability seemed to be | 14:27:28 |
| 10 | the case. | 14:27:30 |
| 11 | Q. And the ERO visits would most likely | 14:27:34 |
| 12 | result in arrests, correct? | 14:27:37 |
| 13 | A. To date, during the period, it did. And | 14:27:46 |
| 14 | I  probably it would continue on  on that | 14:27:50 |
| 15 | that trend would continue, yes. | 14:27:53 |
| 16 | Q. When you spoke with Mr. Cronen or the | 14:27:59 |
| 17 | ERO field office director who was in that position | 14:28:02 |
| 18 | on April 4th, 2017, what were you hoping to achieve | 14:28:04 |
| 19 | with that conversation? | 14:28:08 |
| 20 | A. I would probably  and I don't remember | 14:28:13 |
| 21 | the conversation on that day, so this is speculation | 14:28:16 |
| 22 | on my part. I probably wanted to make sure that the | 14:28:21 |
| 23 | visits that  if ERO was going to respond to our | 14:28:27 |
| 24 | advisory or our alert, that it be done in an orderly | 14:28:31 |
| 25 | way. | 14:28:37 |

| | | |
|---|---|---|
| 1 | A. Yes. | 15:05:10 |
| 2 | Q. Do you believe that that practice had | 15:05:17 |
| 3 | been ongoing at the Lawrence office? | 15:05:18 |
| 4 | A. For an extended period of time, I 130 | 15:05:27 |
| 5 | stand alones were  were not being worked. They | 15:05:32 |
| 6 | were not the priority. So there could have been | 15:05:35 |
| 7 | cases in the office for extended periods of time | 15:05:40 |
| 8 | before it came to our attention that there was a | 15:05:43 |
| 9 | warrant of deportation in a case. So that | 15:05:46 |
| 10 | that's  that's what I can relate to you. | 15:05:52 |
| 11 | In terms of prior to  to that period | 15:05:56 |
| 12 | of 2017, there was discussions about focusing on | 15:06:00 |
| 13 | on stand alone I 130s for a long period of time, but | 15:06:04 |
| 14 | our priority at that time was N400 cases and 45 | 15:06:09 |
| 15 | cases, primarily N400 cases, and stand alone I 130s | 15:06:16 |
| 16 | was  was not  they were not being actively | 15:06:20 |
| 17 | worked. | 15:06:23 |
| 18 | Q. And what period of time were I 130s not | 15:06:26 |
| 19 | being actively worked? | 15:06:28 |
| 20 | A. I  I could not tell you. I'd have to | 15:06:32 |
| 21 | go back and research that. | 15:06:34 |
| 22 | Q. Do you believe that it was in 2016? | 15:06:36 |
| 23 | A. Yes. | 15:06:40 |
| 24 | Q. Do you believe it was over a period of | 15:06:42 |
| 25 | months in 2016? | 15:06:44 |

| | | |
|---|---|---|
| 1 | A.  Yes. | 15:27:16 |
| 2 | Q.  In looking at the dates that these | 15:27:16 |
| 3 | I 130s were filed on, some of them date back to | 15:27:19 |
| 4 | July 2015, correct? | 15:27:24 |
| 5 | A.  I see that, yes. | 15:27:27 |
| 6 | Q.  There are other dates in here that | 15:27:30 |
| 7 | reflect dates throughout 2016, and there's also an | 15:27:33 |
| 8 | application from June of 2014, correct? | 15:27:39 |
| 9 | A.  Yes. | 15:27:44 |
| 10 | Q.  Do you have any idea why these I 130s | 15:27:47 |
| 11 | were pending for so long before they had an | 15:27:51 |
| 12 | interview scheduled? | 15:27:54 |
| 13 | A.  Again, the priorities were on other | 15:27:57 |
| 14 | applications, and these applications built.  I think | 15:28:00 |
| 15 | if   if we look at   at the entire volume of | 15:28:05 |
| 16 | I 130s, you   we could find   well, we wouldn't | 15:28:08 |
| 17 | find them today, but you might find more | 15:28:15 |
| 18 | applications that   that were pending from 2014. | 15:28:18 |
| 19 | This is a limited number of   of all the | 15:28:23 |
| 20 | applications that were pending. | 15:28:25 |
| 21 | Q.  So to your knowledge, the fact that | 15:28:30 |
| 22 | these had been pending for so long was a result of | 15:28:32 |
| 23 | the backlog that you spoke about? | 15:28:34 |
| 24 | A.  I would say the result of our focus, our | 15:28:38 |
| 25 | attention to the larger   the principal application | 15:28:42 |

| | | |
|---|---|---|
| 1 | areas of N400s and N45s. | 15:28:47 |
| 2 | Q.   And ▮▮▮▮▮ stated in her e mail to | 15:28:54 |
| 3 | you that this list had been sent to ERO, correct? | 15:28:57 |
| 4 | A.   Could we go back to   to that?  I | 15:29:02 |
| 5 | frankly, I   I don't remember or that she sent | 15:29:03 |
| 6 | the   could we go back to the   the | 15:29:07 |
| 7 |      MS. SLATER:  Could we go back to | 15:29:12 |
| 8 |      Exhibit 16, please? | 15:29:14 |
| 9 | BY MS. SLATER: | 15:29:15 |
| 10 | Q.   So ▮▮▮▮▮▮▮ e mail, she says: | 15:29:34 |
| 11 | (Reading) | 15:29:38 |
| 12 |           Last week I mentioned to you | 15:29:38 |
| 13 |      that we have 26 stand alone I 130s | 15:29:39 |
| 14 |      pending at Lawrence for interview, | 15:29:41 |
| 15 |      lists attached.  The first list was | 15:29:43 |
| 16 |      already sent to ERO.  They are | 15:29:45 |
| 17 |      interested in 19 of the cases.  We | 15:29:47 |
| 18 |      have not yet sent the second list to | 15:29:48 |
| 19 |      ERO. | 15:29:51 |
| 20 |           Do you see that? | 15:29:51 |
| 21 | A.   Okay.  Thank you.  Thank you. | 15:29:53 |
| 22 | Q.   No problem. | 15:29:55 |
| 23 |      MS. SLATER:  Can we go back to | 15:29:58 |
| 24 |      Exhibit 17, please? | 15:29:58 |
| 25 | | |

Transcript of Denis Riordan
Conducted on August 5, 2020

234

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
| 1  | adjudicate these long standing I 130s.  Was anyone           | 16:00:38 |
| 2  | else involved in directing this push to happen at            | 16:00:41 |
| 3  | the local field office level?                                | 16:00:44 |
| 4  |      A.    Well, Mirella Tiberi    Mirella                   | 16:00:48 |
| 5  | Tiberi                 is the field office                   | 16:00:50 |
| 6  | director.  It would    it would have been    been            | 16:00:55 |
| 7  | her call.                                                    | 16:00:56 |
| 8  |      Q.    So do you believe that the    the push           | 16:01:01 |
| 9  | to adjudicate these I 130s in November of 2017 was a         | 16:01:07 |
| 10 | response to these backlogs that had built up from            | 16:01:12 |
| 11 | the resources of USCIS being directed toward other           | 16:01:17 |
| 12 | applications for a period of time?                           | 16:01:21 |
| 13 |      A.    I do.                                             | 16:01:26 |
| 14 |      Q.    Would you say USCIS was adjudicating              | 16:01:26 |
| 15 | more I 130s in late 2017 than    than you were               | 16:01:33 |
| 16 | around the same time a year prior?                           | 16:01:35 |
| 17 |      A.    Again, to give you a definite answer, I           | 16:01:43 |
| 18 | would    I would want to check our data.  I would            | 16:01:46 |
| 19 | want to check our historical records.                        | 16:01:48 |
| 20 |      Q.    Did you understand in November of 2017            | 16:01:56 |
| 21 | that the I 130 was the first step in the provisional         | 16:01:57 |
| 22 | waiver process?                                              | 16:02:00 |
| 23 |           MR. WEILAND:  Objection.                           | 16:02:05 |
| 24 |           THE WITNESS:  Well, classification of              | 16:02:10 |
| 25 |      of a person for issuance of a visa is the              | 16:02:13 |

```
1   STATE OF NORTH CAROLINA
2   COUNTY OF DAVIDSON
3
4             C E R T I F I C A T E
5         I, Amy A. Brauser, RPR RMR CRR, the officer
6   before whom the foregoing deposition was taken, do
7   hereby certify that the witness gave testimony under
8   the penalty of perjury; that the testimony of said
9   witness was taken by me remotely to the best of my
10  ability and thereafter reduced to typewriting under
11  my direction; that reading and signing was requested;
12  that I am neither counsel for, related to, nor
13  employed by any of the parties to the action in which
14  this deposition was taken, and further that I am not
15  a relative or employee of any attorney or counsel
16  employed by the parties thereto, nor financially or
17  otherwise interest in the outcome of the action.
18
19        This is the 17th day of August, 2020.
20
21
22                     Amy A. Brauser, RPR RMR CRR
                       Notary Public # 20023030055
23
24
25
```