# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | No.  18-cv-10225-MLW |
| CHAD WOLF, *et al.*, | ) ) | |
| Respondents. | ) ) ) | |

## RESPONDENTS' REPLY IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER UNDER RULE 26 (b)(2)(C)(iii) AND TO LIMIT THE SCOPE OF A DEPOSITION UNDER RULE 30(d)(3)(B)

# INTRODUCTION

Petitioners' opposition mischaracterizes their own complaint — which they had ample opportunity to amend — and the rules governing the scope of discovery in an attempt to defend their deposition Topics 9, 19, and 23.

Petitioners' opposition fails to meet their burden to show that Topics 9 and 19 — which seek details of USCIS's adjudication process for the Forms I-130, I-212, and I-601A — are relevant to the claims in their complaint that only challenge ICE's enforcement actions. *See generally* ECF No. 27. Petitioners defend Topics 9 and 19 by citing to discovery they allege demonstrates that "USCIS was entangled with ICE's unlawful actions." ECF No. 550 at 13. However, Petitioners fail to explain how this alleged entanglement, even assuming it is true, necessitates discovery into USCIS actions or processes that are completely independent from and have *nothing to do* with ICE's enforcement actions. Similarly, Petitioners fail to explain how USCIS' adjudicatory practices — in which ICE has no role — will affect their ability to prove their complaint's claims that ICE's enforcement actions were unlawful.

Petitioners attempt to use Respondents' recent discovery responses to bolster their argument that Topics 9 and 19 are relevant such that they have a tendency to prove or disprove facts consequential to their claims. *Moore v. Superway Logistics, Inc.,* 2019 WL 2285392 at *21 (E.D. Cal. May 28, 2019) (applying the Fed. R. Evid. 401 definition of relevance to a discovery dispute under Rule 26). However, these examples merely demonstrate that Respondents already have agreed to provide all discovery from USCIS that is potentially relevant to the actions challenged in the complaint *including* information about adjudicatory practices to the extent they might affect ICE's enforcement action. For example, Respondents have not only provided documents regarding communications between USCIS and ICE, but have also provided USCIS

policy documents about arrests at its offices and allowed Petitioners to depose USCIS witnesses about whether the potential for an ICE arrest affects the scheduling of an Form I-130 interview and adjudication of a Form I-130. However, Respondents reasonably and rightly have drawn a line and will not designate a witness specifically for Topics 9 and 19 because Petitioners clearly seek information that is unrelated to ICE or arrests at USCIS offices and therefore unrelated to any of the enforcement actions challenged in this case.

If Petitioners had a reasonable basis for believing that USCIS actions, that are unrelated to the arrest, detention, and removal of class members, were affecting class members' ability to pursue a provisional waiver, they could have amended their complaint to include such a claim and seek relief from this hypothetical action. Petitioners did not do so presumably because they still do not have a reasonable basis to make such an allegation even after reviewing of all the discovery provided in this case *and* knowing since the very beginning of this case about the communication between USCIS and ICE with regard to arrests at Form I-130 interviews.

This Court should therefore refuse to allow Petitioners to depose a USCIS witness on Topics 9 and 19 because Petitioners seek non-relevant discovery into unfounded claims not raised in the amended complaint and for which Petitioners refused to seek inclusion through a second amended complaint.

Petitioners' opposition also fails to adequately defend their overly broad and vague Topic 23. It is not Respondents responsibility to read between the lines to decipher what actions, in Petitioners' view, could "restrict access or eligibility for the Provisional Waiver Process." ECF No. 448, Ex. 1 at 7. Likewise, Petitioners refuse to explain why discovery into all of DHS's actions and motivations for those actions concerning the "Provisional Waiver Process" is needed to determine whether three of ICE ERO Boston's actions were motivated by racial animus.

Finally, neither Topic 9, 19, nor 23 is proportional to the needs of this case. Even if Petitioners could establish that some element of USCIS's adjudicatory practices are of some remote relevance to this action, — which they have not — Petitioners cannot establish that a deposition on *all* of the policies and practices concerning three distinct immigration forms is proportional to the needs of a case challenging only ICE's enforcement actions. This is especially true to the extent Topic 19 requires testimony from USCIS employees outside the Boston area who are responsible for the adjudication of Form I-601A at USCIS service centers. Topic 23 is likewise not proportional to the needs of this case because only a high-level DHS official can speak on behalf of the numerous agencies who, in Petitioners view, could conceivably take "steps to restrict access to or eligibility for the Provisional Waiver Process." ECF No. 548, Ex. A at 7. A deposition of a high-level DHS official is not proportional to this case concerning individuals only within the Boston area and where Petitioners can point to no discovery indicating that racial animus motivated ICE Boston's decision to take enforcement actions against class members.

## ARGUMENT

### I.     Petitioners fail to establish that Topics 9 and 19 are relevant to the claims in their complaint.

Contrary to Petitioners' assertion, Respondents *have not* refused to provide discovery on whether "USCIS acted contrary to its own lawful regulations in facilitating or encouraging [the] arrests [at USCIS]." ECF No. 550. Nor have Respondents refused to provide discovery on the basis that USCIS is not a party. Respondents agreed not to object to discovery on the basis of USCIS not being a party. But Respondents did *not* agree to allow Petitioners solely to define the scope of relevant USCIS discovery in this case. ECF No. 162 at 1-2 ("Respondents reserve their right to object to such discovery on any other basis.").

In accordance with Respondents' agreement, Respondents have provided discovery from USCIS related to the allegations in the complaint including the following:

1. Depositions of USCIS Director Denis Riordan, Supervisor Mirella Tiberi, and Field Office Director Michael McCleary over recorded testimony of around 17 hours.

2. Policy documents discussing when, where, and how arrests should occur at USCIS.

3. Emails and other correspondence between ICE and USCIS, including correspondence discussing arrests at USCIS and Form I-130 interview-scheduling logistics.

During the depositions, Petitioners deposed the USCIS deponents about ICE's arrests at USCIS offices and USCIS policies regarding arrests. *See generally* Ex. A-D. Respondents also allowed Petitioners to ask whether ICE's arrests of class members or interest in arresting class members affected the adjudication of class members' Form I-130s. *See, e.g.,* Ex. B. In short, if the information is related to an enforcement action taken against a class member, Respondents have agreed to provide it. Respondents have simply refused to provide discovery that has ***no tendency*** to prove or disprove the claims in Petitioners' complaint.

This case is not about USCIS's adjudication of Form I-130s, Form I-212s, and Form I-601As. There is no allegation in the complaint that USCIS has failed to lawfully adjudicate these applications. Petitioners' allegation that ICE's enforcement actions against class members is unlawful while members are pursuing a provisional waiver does not entitle Petitioners to discovery about whether a *different agency*[1] is engaging in an action *completely unrelated to ICE's enforcement action.*.

---

[1] Not only is USCIS distinct from ICE, but the adjudication of many Form I-130s, Form I-212s, and Form I-601As do not even occur in the USCIS District Boston field office.

Moreover, Petitioners cannot feign that they were caught off guard and unable to amend their complaint in time. Petitioners have known *from the outset* that USCIS is responsible for adjudicating the Forms I-130, I-212, and I-601A. They have known *since the beginning* that any abnormality in the adjudication of these applications could prevent a class member from obtaining a provisional waiver. In fact, Petitioners have gone so far as to mention alleged delays in Form I-130 interviews when discussing the scope of discovery in Court. When Respondents objected to this statement as being outside the scope of Petitioners complaint, the Court reminded Petitioners' counsel of their Rule 11 obligations and warned Petitioners: "I think you should develop a fuller factual basis and provide some support." Transcript of Hearing on June 27, 2019, at 79-87. Yet, Petitioners have never made an allegation, complying with Rule 11, that USCIS has unlawfully inhibited a class member from pursuing provisional waivers through their adjudicatory practices. Nor have Petitioners ever requested relief from any of USCIS's adjudicatory practices. Absent this, Petitioners are plainly not entitled to discovery into USCIS's adjudicatory practices.

## II. Petitioners' misstate the scope of discovery authorized by Rule 26.

To support their argument, Petitioners cite to several cases that do nothing to advance their arguments. First, Petitioners cite to an unreported case to assert that discovery is "designed to help define and clarify the issues." ECF No. 550 at 6 (citing *In re Intuniv Antitrust Litig.,* No. 16-cv-12396-ADB, 2018 WL 6590616, at *2 (D. Mass. Dec. 14, 2018)). However, the context of this quote, that the district court pulled from *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978), reveals the *Intuniv* court's erroneous characterization of the scope of discovery. In *Oppenheimer,* the Supreme Court stated:

> The key phrase in this definition -- "relevant to the subject matter involved in the pending action" -- has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *See Hickman* v. *Taylor*, 329 U.S. 495, 501

(1947).Consistently with the notice-pleading system established by the Rules, *discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.*" *Oppenheimer,* 437 U.S. at 351 (emphasis).

This quote, analyzing the pre-2000 Rule 26(b)(1), is plainly incompatible with the current Rule 26(b)(1) which requires discovery be relevant to the claims in the complaint as opposed to merely "relevant to the subject matter" and greatly restricted the scope of discovery. *Moore,* 2019 WL 2285392 at *21 ("[T]he *Oppenheimer Fund* definition, like the version of the Rule 26(b)(1) that preceded the 2015 amendments, is now relegated only to historical significance."). Therefore, *Intuniv* provides no support for Petitioners' arguments.

Similarly, Petitioners' reliance on *Thompson v. HUD,* 199 F.R.D. 168, 172 (D. Md. March 14, 2001) is mistaken because its standard is also based on an outdated version of Rule 26. In *Thompson,* the court analyzed the 2000 amendments which allowed discovery into what is relevant to the claims and defenses and for good cause, discovery that is relevant to the subject matter. *Id.* at 172-73. The 2015 amendments, however, deleted the provision authorizing the court to order discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26, advisory committee's note to 2015 amendments. This focused the scope of discovery even more on the contents of the complaint and made the pleadings the ending place as opposed to merely "the starting place" espoused by the *Thompson* court. *See Thompson,* 199 F.R.D at 172. Therefore, *Thompson's* standard, which cannot be separated from its reliance on the old language in Rule 26 and its commentary allowing for discovery into matters relevant to the subject matter, is inapplicable to this dispute.

Regardless, Petitioners fail to establish that Topics 9 and 19 are relevant even under their proposed standard. Contrary to Petitioners' assertion, Respondents have not taken the position with

regard to USCIS discovery that any fact must *directly* correlate to a fact in the complaint.[2] ECF No. 550 at 7 (citing*Thompson* 199 F.R.D. at 172).Respondents have provided a substantial amount of discovery that is arguably not directly correlated to an allegation in Petitioners' complaint in the spirit of compromise. For example, Petitioners' complaint does not allege that USCIS has unlawfully shared information with ICE. Nor does Petitioners' complaint include any allegations concerning USCIS' scheduling of Form I-130 interviews or its policies about arrests at its offices. Yet, Respondents have still provided discovery on both points. Conversely, whether USCIS is properly adjudicating applications does not have "any tendency to make the existence of any fact [of consequence to ICE's enforcement actions] more probable or less probable than it would be without the evidence." *Moore,* 2019 WL 2285392 at *13 (applying Fed. R. Evid. 401 to a dispute over the scope of discovery). Accordingly, Topics 9 and 19 do not seek to develop or provide support for Petitioners' claims that ICE's enforcement actions are unlawful; they seek to develop a *new* claim that *regardless of ICE's actions,* USCIS is acting unlawfully by improperly adjudicating applications. Therefore, Petitioners' deposition topics about USCIS's adjudication policies, are ***not*** relevant to Petitioners' claim that ICE's enforcement actions against class members are unlawful.

Regardless, USCIS's adjudicatory practices do not "define or clarify the issue[]" of whether ICE's enforcement actions, or even whether arrests at USCIS, are unlawful. *See* ECF No. 550 at 6; *In re Intuniv Antitrust Litig.,* 2018 WL 6590616, at *2.Whether USCIS is lawfully adjudicating applications is not the "same type" of incident as ICE's enforcement action. By that logic, a plaintiff that *only* alleged the state interfered in his ability to get a driver's license by failing

---

[2] As stated above, it is highly specious whether this standard from *Thompson* is applicable given that the 2015 amendments removed the reference to discovery about the general subject matter of the case and reaffirmed that Courts should limit discovery to the parties claims and defenses.

to construct a wheelchair ramp could obtain discovery into whether the state was properly administering the driver's test. Both state actions affect whether a plaintiff can get a driver's license, but a driver's test has nothing to do with whether the lack of a wheelchair ramp was lawful. Here, both USCIS's adjudicatory practices and ICE's enforcement actions could affect a class members' ability to get a provisional waiver, but USCIS's adjudicatory practices have nothing to do with whether the provisional waiver regulations preclude ICE from taking an enforcement action against a class member.

### III.   Petitioners' references to their complaint and recent discovery fail to establish Topics 9 and 19 are relevant to the claims and defenses in this lawsuit.

Throughout their opposition, Petitioners mischaracterize their complaint and deposition testimony in an attempt to defend their deposition Topics. First, Petitioners claim that they have "allege[d]" that "USCIS and ICE are partners in a scheme . . . to arrest, detain, and remove individuals applying for the Provisional Waiver Process," ECF No. 550 at 1 (citing ECF No. 27 at 37, 102-103). To the contrary, Paragraph 37 does not reference USCIS at all, and  while paragraphs 102-03 allege that ICE arrested individuals at USCIS offices, those allegations do so without any reference to USCIS's role in the arrest. ECF No. 27, 102-03. Regardless, Respondents have already provided and will continue to provide discovery from USCIS related to ICE arrests of class members at their offices.

Although Petitioners baldly assert their amended complaint was "alleging that DHS was using the path to lawful status outlined in the Provisional Waiver Process to trap and remove noncitizens," the amended complaint speaks specifically about ICE's actions, not DHS as a whole. ECF No. 550 at 2. While paragraph 119 asserts "due process protects Petitioners from being the victims of a bait and switch," none of the paragraphs mentioning "DHS" allege that DHS as a whole acted unlawfully. ECF No. 27 ¶ 119, ¶ 2 (stating the case arises from two DHS agencies'

incompatible actions while alleging that only ICE's actions were unlawful), ¶ 11 (stating that ICE is a part of DHS), ¶ 15 (stating that President Trump is responsible for DHS); ¶ 126 (stating DHS expanded the provisional waiver).

Similarly, Petitioners' reference to recent discovery does nothing to advance their point for several reasons. First, Petitioners mischaracterize the discovery responses from USCIS. For example, Petitioners disingenuously assert that deponent Tiberi was unable to answer "basic questions about the applications that make up the Provisional Waiver Process" citing to an answer where Ms. Tiberi stated "I don't know [whether you need an approved Form I-130 to apply for a provisional waiver] because I do not know about the provisional waiver." ECF No. 550 at 20. USCIS service centers, not local USCIS employees like Ms. Tiberi, adjudicate Form I-601As. Therefore, Ms. Tiberi was understandably not familiar with the provisional waiver's eligibility requirements. Ms. Tiberi, however, did testify about the Form I-130, which she is familiar with because she has adjudicated them. Ex. 1 at 53-56.

Second, the discovery Petitioners cite, contrary to their urging, does not suggest that open discovery into *all* of USCIS's adjudicatory practices is relevant to the claims in their complaint. The evidence Petitioners cite at best demonstrates what Petitioners and this Court have known since the beginning regarding communication between USCIS and ICE concerning the scheduled presence of aliens with final orders of removal at USCIS offices at Form I-130 interviews. At worst, Petitioners' cited discovery cuts against their claim that broader discovery is needed and any intimation that USCIS's communication with ICE was unlawful.

For example, Petitioners complain about USCIS *expediting* a Form I-130 despite the fact that such expedition would allow the alien to proceed further in the "Provisional Waiver Process" and if approved, would provide a positive discretionary factor for ICE to review when considering

whether to proceed with an enforcement action. ECF No. 550 at 11. Regardless, ICE informs DOJ

that it did not arrest, detain, or remove this alien which solidifies that it is ICE — not USCIS —

whose decisions are at the center of this lawsuit. Further, Petitioners' assertion that "USCIS

apparently provided the impetus for coordinating arrests with USCIS" with its 2017 policy

documents is misleading. ECF No. 550 at 11. While the Consolidated Handbook for Application

Procedures ("CHAP") in 2017[3] provided that USCIS *can* create a specific appointment for the sole

purpose of facilitating an ICE arrest (albeit requiring escalation to and approval of the Filed Office

Director and District Director), Mr. McCleary testified *twice* that he "had never had that happen

in his experience." ECF No. 550-8 at 5:22-24, 6:3-8. Further, the deponents consistently testified

that USCIS, to their knowledge, has always informed ICE of aliens with final orders of removal

appearing at their offices. Ex. A at 79; Ex. B at 108-110; Ex. C at 40; Ex. D. Therefore, it was

ICE's — not USCIS — decision to act on these notifications with increased frequency that

precipitated this lawsuit. Finally, Petitioners seemingly fault USCIS for *doing their job* and

reducing a Form I-130 backlog in 2017. ECF No. 550 at 12. They baldly suggest, *without any*

*supporting evidence*, that USCIS adjudicated these applications and conducted interviews solely

so ICE could arrest the applicants. *See id.* Not only is this assertion unsupported, but it also

contradicted by the deposition testimony from the USCIS witnesses.[4] Further, this assertion

ignores that class members' Form I-130s are subject to a higher standard of review, which supports

---

[3] This language was removed in 2019. ECF No. 550 at 11.

[4] Ex. A, Deposition of Mirella Tiberi at 178:15-18, 179: 5-7 (stating that USCIS does not consider whether ICE has an interest in detaining an individual when USCIS decides *whether* to schedule the applicant for an interview); Ex. B, Deposition of Denis Riordan at 246:17-22 ("the focus of – of the interview is to speak with the petitioner and speak with the beneficiary and make a judgment as to whether the beneficiary is eligible for classification. That is the purpose of the interview."), 105-108 (describing USCIS's policy with regard to arrests at USCIS was to ensure that any arrests were done in an orderly fashion and in a way that did not interfere with USCIS's operations).

the need for an in-person interview. *See* 8 U.S.C. §§ 1154(g), 1255(e)(3) (requiring the couple establish "clear and convincing" evidence of the marriage bona fides rather than a mere preponderance of the evidence); 8 C.F.R. § 103.2(b)(7) (in adjudication of benefit request "USCIS may require the taking of testimony, and may direct any necessary investigation."). Therefore, none of this cited discovery provides an adequate reason to allow Petitioners to conduct discovery into USCIS's adjudicatory practices that is wholly unrelated to their claims challenging ICE's enforcement actions.

Third, Petitioners claim that the discovery illustrates the need to conduct further discovery into USCIS's alleged "role" in ICE's arrests of class members and for more information about USCIS's policies regarding the scheduling of interviews that Petitioners allege were scheduled to facilitate arrests. Petitioners also claim that "the discovery evidences that USCIS was entangled with ICE's unlawful activities." ECF No. 550 at 10. But again, Respondents have not refused to provide discovery from USCIS concerning any purported role in enforcement actions and its policies about arrests at USCIS. Indeed, Respondents already have provided discovery about the USCIS policies of arrests at its offices; allowed questioning about whether the way USCIS Boston scheduled interviews directly or indirectly affected ICE's ability to arrest class members; allowed questioning about the impact of Executive Order 13768 on arrests at USCIS offices; and, provided Form I-130 scheduling communications between the agencies. Petitioners' own examples from recent discovery demonstrate as much. ECF No. 550 at 11.

However, regarding the instant requests, Respondents object to Topics 9 and 19, because they go far beyond the "needs" listed above by requesting information on *all* policies related to the adjudication of Form I-130, I-212, and I-601As, including policies unrelated to ICE's alleged "unlawful activities." Petitioners also do not explain why "discovery evidenc[ing] that USCIS was

11

entangled with ICE's unlawful activities" justifies Topics 9 and 19 that seek information about USCIS's actions that are ***completely independent from*** ICE's actions. Petitioners' opposition wholly fails to connect these stated needs with Topics 9 and 19, which seek much more information. Therefore, Petitioners' argument that the discovery so far supports their deposition topics fail.

**IV.     Respondents do not rely on USCIS adjudicatory practices as a defense to Petitioners' claims.**

Topics 9 and 19 are not relevant to Respondents' defenses. Respondents have made legal arguments about a class members' likelihood to benefit from a provisional waiver based on the provisional waiver regulations and federal register comments. *See generally* ECF No. 489. Respondents have also cited to case law supporting their ***legal argument*** that certain class members are not eligible for or likely to benefit from a provisional waiver. Respondents ***have not*** relied on USCIS declarations or other fact-based material to support their defenses that would make USCIS's adjudicatory practices relevant to Respondents' defenses. Petitioners' ignore this important distinction. Their reference to Respondents' briefing omits the citations establishing that Respondents argument is legal, based on the language of the provisional waiver regulations, the federal register, and Board of Immigration Appeals cases that are all publically available. ECF No. 489 at 5, n.5. Petitioners' assertion also ignores that Respondents' argument about a class members' ability to benefit from the provisional waiver focuses on the Form I-601A's automatic revocation provisions and the likelihood that the Department of State — *not* USCIS — would revoke any approved Form I-601A for class members who failed to attend removal proceedings. *Id.* Petitioners therefore cannot simply rely on Respondents' legal citations to the provisional waiver regulations in order to support their argument that the facts regarding *all of* USCIS' adjudicatory practices are relevant to Respondents' defenses.

**V.      Petitioners' opposition does not cure Topic 23's overbreadth and vagueness.**

Petitioners' attempt to defend Topic 23 is without merit. Respondents are under no obligation to fix Petitioners' overbroad deposition topics especially where the entire topic — as opposed to just a single word or phrase — seeks information beyond the bounds of their complaint. For example, although this case concerns ICE ERO Boston's enforcement actions, Topic 23 seeks a designee to speak on behalf of *all* of DHS. A DHS designee would need to be prepared to speak on behalf of agencies, such as U.S. Customs and Border Protection ("CBP"), and its components, specifically the Office of Field Operations and the U.S. Border Patrol that are not even mentioned in the complaint but that could conceivably interact with class members. Additionally, despite Petitioners' challenge to only the arrest, detention, and removal of class members, Topic 23 seeks information about *any* "step[] to restrict eligibility for or access to the Provisional Waiver Process" for any individual — not just class members. ECF No. 548, Ex. A at 9. This would arguably require the DHS designee to be prepared to speak about every immigration process that could, in Petitioners' view, possibly affect a person's ability to seek a provisional waiver, conceivably including removal proceedings, bond policies, notices to appear, pre-order and post-order detention, attorney access in detention centers, agency staffing, and even pandemic-related operational policies.[5] None of this information is related to the ICE ERO Boston's arrest, detention, and removal of class members, which are the *only* actions challenged in the amended

---

[5] It is easy to imagine how Petitioners would assert that these immigration processes could affect a person's ability to seek a provisional waiver. For example, Petitioners could argue that being placed in removal proceedings after an individual filed an Form I-130 prevents a person from being eligible for a I-601A, or that detention could prevent attorney access and ability to coordinate the filing of petitions and applications, or too high of a bond could prevent individuals from being able to afford the application fee for the provisional waiver, or that fewer agency staff could result in a delay in processing. Yet, none of these procedures are referenced in the complaint or even remotely related to the enforcement actions at issue in this lawsuit.

complaint. Nor is any of it related to whether the arrest, detention, and removal of class members

was motivated by racial animus. Therefore, regardless of Petitioners' arguments to the contrary,

Topic 23 is clearly beyond the scope of discovery authorized by Rule 26.

      **VI.**    **Topics 9, 19, and 23 are not proportional to the needs of this case.**

      Even if Petitioners manage to convince this Court that Topics 9, 19, and 23 cross the

relevancy threshold, these topics are not proportional to the needs of this case. Fed. R. Civ. P.

26(b)(1). In order to prevail, Petitioners need to show that ICE ERO Boston — not DHS as a

whole, nor USCIS — unlawfully arrested, detained, and removed class members. Regardless of

any communication between USCIS and ICE ERO Boston, it is ICE ERO Boston that decides

whether a class member is arrested, detained, or removed. Even more importantly, this Court has

held that it is ICE — not USCIS — that must consider an applicant's pursuit of a provisional

waiver before removing him or her from the United States. Despite this, Petitioners seek deponents

to testify on *all* of USCIS's adjudicatory practices with regard to three immigration forms. These

adjudicatory practices have no bearing on ICE's ability to consider whether an alien is pursuing a

provisional waiver nor whether ICE's decision to remove a class member is unlawful. Since this

discovery has no bearing on Petitioners' ability to prove their case, no amount of discovery on this

Topic is "proportional to the needs of the case, considering . . . the importance of the discovery in

resolving the issues". *Id*. Additionally, adequate preparation for Topic 9 would be burdensome as

there is not one person who could adequately testify about *all* of the intricacies including receipt,

processing, and adjudication of these three forms. While someone from USCIS Boston could likely

testify about the Form I-130, as USCIS deponents Denis Riordan and Mirella Tiberi have done

already, testimony about the Form I-601A would likely require a deponent from a USCIS service

center where the Form I-601As are adjudicated. Topic 9 would therefore require Respondents to

prepare government employees with no relation to the actions at issue and with no prior knowledge of this lawsuit to testify. Nor does Topic 9 limit itself to those USCIS practices and policies that prevail only within the class geography certified by the Court.

Topic 23 is even more burdensome. First, while Topic 23 does not specify a deponent, only a high level DHS official could speak on behalf of all DHS agencies that oversee all processes affecting class members to include ICE, USCIS, and CBP. This is not proportional to the needs of a case that concerns enforcement decisions against individuals only within the Boston area. *See Bogan v. City of Boston,* 489 F.3d 417, 423 (1st Cir. 2007) ("The need for limited access to high government officials through the discovery process is well established . . . the Supreme Court indicated that the practice of calling high ranking government officials as witnesses should be discouraged."). It is especially not proportional where Petitioners can point to no discovery, other than reference to the mere existence of the Executive Order, that any DHS officials were involved in ICE ERO Boston's decision to take enforcement actions against class members. Respondents have consented to search their records for any documents demonstrating racial animus and have allowed Petitioners to question numerous deponents regarding the existence of any racial bias within their agencies. Petitioners point to no discovery indicating racial bias such that further discovery regarding Petitioners' equal protection claim may be necessary from higher levels of DHS. Therefore, on balance, Topic 23 is likewise not proportional to the needs of this case.

## CONCLUSION

For these reasons, the Court should grant Respondents' motion for a protective order and to limit the scope of a deposition.

Respectfully submitted,

JEFFERY BOSSERT CLARK

Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

ELIANIS N PEREZ
Assistant Director

/s/ Mary L. Larakers
MARY L. LARAKERS (Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I certify that, in accordance with Local Rule 7.1(a)(2), counsel for Respondents conferred with counsel for Petitioners in an attempt to resolve the issues raised in this motion.  Petitioners oppose this motion.

## CERTIFICATE OF SERVICE

I, Mary L. Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Mary L. Larakers
Mary L. Larakers
Dated: October 28, 2020                    Trial Attorney