# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> CHAD WOLF, Acting Secretary of Homeland Security, *et al.*, <br><br> Defendants-Respondents. | No. 1:18-cv-10225-MLW |

### RESPONDENTS' RENEWED MOTION TO DISMISS AND RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

i

**INTRODUCTION**

Since this Court's ruling denying Respondents' motion to dismiss, the Supreme Court has decided two cases that foreclose Petitioners' claims. Pursuant to these cases, Respondents move to dismiss Petitioners' complaint, to the extent it seeks to interfere with the execution of their removal orders, for lack of subject-matter jurisdiction.[1] Further, Respondents move under Federal Rule of Civil Procedure 12(c) for judgment in favor of Respondents on Petitioners' equal protection claim.

First, on June 25, 2020, the Supreme Court reaffirmed that the "historic role of habeas is to secure release from custody." *D.H.S. v. Thuraissigiam,* 140 S. Ct. 1959, 1970 (2020). *Thuraissigiam* clarifies that the relief Petitioners seek[2]— suspension of removal while Petitioners' seek a provisional unlawful presence waiver — is not a remedy available in habeas corpus because such relief "falls outside the scope of the common-law habeas writ." *Id.* at 1970. Because the plaintiff in *Thuraissigiam* did "not want 'simple release' but, ultimately, the opportunity to" either avoid "removal" or to "remain lawfully in the United States . . . the relief requested . . . [fell] outside the scope of the writ as it was understood when the Constitution was adopted." *Id.* at 1971. Petitioners, like the plaintiff in *Thuraissigiam,* do not want simple release. They seek, despite already having a final order of removal, an additional opportunity to seek protection from removal. "[T]hey only challenge ICE's decision, on behalf of DHS, to enforce the [removal] order while they are pursuing provisional waivers." ECF No. 159 at 19-20. As such, Petitioners do not seek

---

[1] Respondents also file this motion in response to the Court's order that Respondents notify the court of any case that may affect this Court's subject-matter jurisdiction. Transcript of May 16, 2019 Hearing at 20: 5-10.

[2] Thus far, this Court has refused Petitioners' request for broader relief and only required ICE to "consider" a class member's pursuit of provisional waivers prior to removing them. *See generally* ECF No. 159.

habeas relief and therefore the Suspension Clause does not preserve this Court's habeas corpus subject-matter jurisdiction over their claims. Accordingly, because this Court lacks subject-matter jurisdiction over their claims, the Court should dismiss Petitioners' claims that seek to prevent their immediate removal from the United States.

In addition to the Court's lack of subject-matter jurisdiction by reason of *Thuraissigiam*, another intervening Supreme Court authority requires judgment in favor of Respondents on Petitioners' equal protection claim. In *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 140 S Ct. 1891 (2020)*,* the Supreme Court held that nearly identical allegations of racial animus and animus based on national origin as those made by Petitioners in this case were insufficient to state an equal protection claim. The Court rejected the claim that disparate impact on non-white individuals and statements by President Trump "either singly or in concert, establish[] a plausible equal protection claim." *Regents,* 140 S. Ct. at 1915. Since then, courts, including the Ninth Circuit, have rejected similar equal protection claims that primarily rely on President Trump's pre- and post- 2016 election statements. This Court should follow suit and deny Petitioners' equal protection claim on the pleadings.

## ARGUMENT

### I.   Petitioners' complaint is barred by 8 U.S.C. § 1252(g).

This Court has already held that Petitioners' complaint is subject to the jurisdictional bar in 8 U.S.C. § 1252(g). ECF No. 159 at 22 ("Nevertheless, this court finds that § 1252(g) applies to the legal question raised by petitioners' claims."). Section 1252(g) strips district courts of jurisdiction over "any cause or claim on or on behalf of any alien arising from the decision or action of the [secretary of DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). To determine whether § 1252(g) applies, courts must

look to the relief requested, not merely the framing of the claim. *Aguilar v. I.C.E.,* 510 F.3d 1, 17 (1st Cir. 2007). Aliens cannot escape the strictures of § 1252(g) with creative pleading. *Id.* Section 1252(g) strips courts of subject-matter jurisdiction to issue any relief that would prevent, interfere with, or place conditions on, DHS's discretionary decision to execute a removal order. *See Alvidres-Reyes v. Reno,* 180 F.3d 199, 201 (5th Cir. 1999) ("The Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders."); *Barahona-Gomez v. Reno,* 236 F.3d 1, 21-22 (9th Cir. 2001) (citing *Alvidres-Reyes* and dismissing plaintiffs' claims because they "necessarily call[ed] for court interference with the decision of [government] officials to exercise their discretion and temporarily halt the consideration of cases involving suspension of deportation.").

Petitioners' complaint raises several claims, but all of them arise from ICE's execution of a lawful removal order. Petitioners allege that executing their removal orders violates the Immigration and Nationality Act, provisional unlawful presence waiver regulations in 8 C.F.R. § 212.7(e), Administrative Procedure Act ("APA"), Due Process Clause, and the Equal Protection Clause. *See generally* ECF No. 27. They seek restrictions on ICE's ability to execute the removal orders of each alien class member in both certified classes. ECF Nos. 159 (denying Respondents' motion to dismiss), 253 (certifying a class and sub-class and ordering Respondents to comply with the Court's prior orders). Petitioners' claims are inseparable from the execution of their removal orders. *See Tazu v. Attorney General of the United States,* 975 F.3d 292, 2020 U.S. App. LEXIS 29031 *2, *17 (3d Cir. 2020) ("He demands that the Attorney General wait before removing him [because he is pursuing a provisional unlawful presence waiver]. And he contests how the Government re-detained him to remove him promptly. But both claims challenge the act of

3

executing his removal order."). Indeed, but for ICE's attempt to execute *some* class members' removal orders, none of Petitioners' claims would exist because ICE's attempt to execute their removal orders forms the basis of the injuries alleged in each claim of Petitioners' complaint. Accordingly, as this Court has already determined, § 1252(g) bars this Court from hearing Petitioners' claims. ECF No. 159 at 24.

## II.     The Suspension Clause does not preserve this Court's jurisdiction.

After finding Section 1252(g) applicable to bar consideration of Petitioners' claims, this Court determined that "the Suspension Clause of the Constitution requires that this court exercise jurisdiction over Petitioners' claim that the I-601A waiver regulation, 8 C.F.R. § 212.7, requires ICE to consider their pursuit of provisional waivers before deciding to execute their removal orders." *Id.* at 24-25. However, the Supreme Court's recent decision in *Thuraissigiam* defeats Petitioners' arguments that § 1252(g) violates the Suspension Clause as applied to Petitioners' claims. In *Thuraissigiam,* the Supreme Court addressed the question of whether the jurisdiction-limiting provisions of 8 U.S.C. § 1252(e)(2) violate the Suspension Clause. *Thuraissigiam,* 140 S. Ct. at 1963. Like Petitioners in this case, the plaintiff in *Thuraissigiam* did not seek simple release from ICE detention but rather sought a stay of removal while he applied for asylum. *Id.* Plaintiff argued that the district court had jurisdiction to review whether immigration officials complied with the applicable credible fear rules and whether he was deprived of a meaningful opportunity to establish his claims. *Id.* Even though plaintiff's claims raised legal questions, the Supreme Court held that plaintiff's "Suspension Clause argument fails because it would extend the writ of habeas corpus far beyond its scope 'when the Constitution was drafted and ratified.'" *Id.* (citing *Boumediene v. Bush,* 553 U.S. 723, 746 (2008)).

4

The Court likewise ***rejected*** the argument that its decisions in *Boumediene* and *St. Cyr* indicate that the Suspension Clause protects a broader habeas right in immigration cases, as Petitioners allege and as this Court previously held. ECF No 159 at 25-26. The Court explained that its holding in *Boumendine* did not concern immigration at all, but merely reaffirmed that release is not the "'exclusive' result of every writ, given that it is often 'appropriate' to allow the executive to cure defects in a detention." *Id.* at 1981. Similarly, and contrary to Petitioners' arguments with regard to jurisdiction, the Court in *Thuraissigiam* confirmed its observation in *St. Cyr* that: "[b]ecause of [the Suspension] Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution'" "does nothing" for the argument that the Suspension Clause guarantees review of constitutional claims. *Id*. (citing *St. Cyr,* 533 U.S. at 300). This is because the court in *St. Cyr* was not asked to determine the scope of the Suspension Clause in immigration cases. Rather, in applying statutory interpretive canons — and not addressing the scope of the Suspension Clause — it held that certain jurisdiction stripping provisions "***that did not refer expressly to habeas*** [] [could not] be interpreted as stripping the authority conferred by the habeas statute." *Id.* (emphasis added). *St. Cyr* did nothing more than apply the longstanding rules that a clear indication from Congress is required to repeal habeas jurisdiction and to adopt a "proposed interpretation [of a statute] would push the outer limits of Congress' power, and the canon of constitutional avoidance." *Id.* (internal quotes omitted). Given this, the Court in *Thuraissigiam* rejected the same reasoning Petitioners employ in this case, that pursuant to *St. Cyr* the Suspension Clause preserves the habeas court's jurisdiction to stay removal while it considers an alien's constitutional claims.

Moreover, since *St. Cyr*, Congress has amended these jurisdictional stripping statutes, including § 1252(g), to include specific language stripping subject-matter jurisdiction from habeas

5

courts that eliminated the statutory interpretation issue in *St. Cyr* and its relevance to future cases. 8 U.S.C. § 1252(g). *Cf. Enwonwu v. Gonzales,* 438 F.3d 22, 23 (1st Cir. 2006) (observing the distinctive significance that *St. Cyr,* and subsequent First Circuit immigration habeas cases "analyzed the landscape ***prior to*** the REAL ID Act. Now, under the provisions of the REAL ID Act, Congress has eliminated habeas review as to most types of immigration claims.") (emphasis added).

Just as the Supreme Court held - in *Thuraissigiam,* Petitioners' claims are not guaranteed review under the Suspension Clause because Petitioners seek much more than simple release. The vast majority of class members are not detained, nor are they in imminent danger of being detained. Even for class members who are detained, Petitioners seek the same relief the plaintiff in *Thuraissigiam* sought – to remain in the United States while they seek discretionary immigration benefits. The Suspension Clause does not guarantee a right to seek this relief from a habeas court. *Thuraissigiam,* 140 S. Ct. at 1963. Therefore, § 1252(g) does not violate the Suspension Clause as applied to Petitioners' request for a stay of removal, or otherwise delay their removal, while they seek a provisional unlawful presence waiver.

The Court's prior analysis regarding the Suspension Clause has also been foreclosed by the Supreme Court's analysis in *Thuraissigiam. See e.g.* ECF No. 159 at 22 ("[T]he Suspension Clause is implicated because there is not an adequate substitute that would have allowed for a stay of removal."). Petitioners, and this Court, interpreted *St. Cyr* to *require* that final-order aliens must have a meaningful opportunity to present cognizable claims to an Article III court. ECF No. 159 at 25-26. However, the Supreme Court has now clarified that this interpretation of *St. Cyr* is erroneous because it ignores the context of *St. Cyr* as a statutory interpretation case – not a case about the scope of relief protected by the Suspension Clause. *Thuraissigiam,* 140 S. Ct. at 1981.

*St. Cyr* merely held that habeas is a vehicle to challenge all manner of detention and that it could be invoked by aliens held in custody pending deportation. *Id.* Contrary to Petitioners' argument throughout this case, *St. Cyr* "does not signify approval of [Petitioners'] very different attempted use of the writ" — to remain in the United States —"which the Court did not consider." *Id.*

The fact that Petitioners' Suspension Clause challenge is to § 1252(g) while *Thuraissigiam* concerns § 1252(e)(2) is of no consequence. The Supreme Court has since removed any doubt of *Thuraissigiam's* relevance to other jurisdiction stripping sections of the INA by vacating and remanding the Second Circuit's decision in *Ragbir v. Homan,* 923 F.3d 53 (2d. Cir. 2019). *Pham v. Ragbir,* No. 19-1046, 2020 WL 5882107 (October 5, 2020). The principal question in *Ragbir* was whether § 1252(g) was unconstitutional under the Suspension Clause as applied to Plaintiff's cognizable constitutional claim that ICE violated his First Amendment rights by placing him in removal proceedings allegedly in retaliation for his speech criticizing ICE. *Ragbir,* 923 F.3d at 53. Plaintiff was a legal permanent resident, married to a U.S. citizen with one U.S. citizen daughter, and who was removable for his wire fraud convictions. *Id.* The court of appeals had held that although § 1252(g) applied to Plaintiff's claim because he sought to prevent the government from executing his final order of removal, the Suspension Clause preserved jurisdiction over his claim. *Id.* at 64. The court of appeals employed the same reasoning this Court did to hold that the Supreme Court's decision in *St. Cyr* required the court to exercise jurisdiction over plaintiff's constitutional claim because there was not a substitute procedure by which to raise this claim. *Id.* at 73. The Supreme Court vacated this ruling and remanded it for reconsideration pursuant to its decision in *Thuraissigiam.* By doing so, the Supreme Court removed any question about the scope of its ruling. Its decision in *Thuraissigiam* applies to aliens even if their claims are subject to different

jurisdiction stripping provisions, and even if the alien has more connections to the United States than the plaintiff in *Thuraissigiam.*

Other courts have also recognized that *Thuraissigiam* forecloses claims like those brought by Petitioners from review under the Suspension Clause. *D.A.M. v. Barr*, --- F.Supp.3d ---, 2020 WL 5525056, at *11 (D.D.C. Sept. 15, 2020) (reasoning that a case that "suggests that the Suspension Clause empowers courts to halt a deportation so that a noncitizen can take advantage of an administrative review process where 8 U.S.C. § 1252 otherwise bars judicial intervention . . . *has lost its persuasive value in the wake of Thuraissigiam*") (citation omitted, emphasis added). "Congress has specifically barred such claims [challenging implementation of removal orders] under 8 U.S.C. § 1252 . . . . [t]hat policy choice is consistent with the Suspension Clause of the Constitution, even if it sometimes produces troubling results." *Id.* at *1. Specifically, the Third Circuit, in a case challenging ICE's authority to remove an alien[3] pursuing a provisional unlawful presence waiver, dismissed the alien's claim that § 1252(g) was unconstitutional as applied because "judicial review of motions to reopen covers the same kind of issues and offers roughly the same safeguards and scope of review as habeas." *Tazu v. A.G. of the United States,* 975 F.3d 292, 2020 U.S. App. LEXIS 29031 *17 (3d Cir. 2020). The Third Circuit noted that regardless, the alien's "constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid — release into 'the cabin of a plane bound for [Bangledesh]." *Id.* (quoting *Thuraissigiam,* 140 S. Ct. at 1970).

"Holding that an Act of Congress unconstitutionally suspends the writ of habeas corpus is momentous." *Thuraissigiam,* 140 S. Ct. at 1979. Petitioners' claims do not properly invoke the

---

[3] If this individual were located within the jurisdiction of ICE Boston ERO, he would be a *Calderon* class member. *Tazu,* 2020 U.S. App. LEXIS at *4.

writ because they seek much more than simple release. Although this Court has held that Petitioners' legal claims are cognizable, they cannot escape the jurisdictional confines of § 1252(g) and the Supreme Court's recent interpretation of the Suspension Clause in *Thuraissigiam.* The Suspension Clause does not guarantee habeas jurisdiction over the question of whether an alien has been "deprived of a meaningful opportunity to establish his/[her] claims." *Thuraissigiam,* 140 S. Ct. at 1968. Therefore, § 1252(g) is "allowed to operate" and bar Petitioners' claims notwithstanding the Suspension Clause and this Court should dismiss all pending claims under Rule 12(b)(1) for lack of subject-matter jurisdiction. ECF No. 159 at 4.

### III. Respondents are entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) with regard to Petitioners' equal protection claim.

This Court should grant judgment[4] in favor of Respondents on Petitioners' equal protection claim because their claim is indistinguishable from the equal protection claim the Supreme Court recently dismissed in *Regents. Regents,* 140 S Ct. 1891. In *Regents,* plaintiffs challenged DHS's racially neutral decision to end the Deferred Action for Childhood Arrivals ("DACA") program, alleging, in part, that the decision was motivated by racial animus and violated the Equal Protection Clause. *Id.* at 1915. Plaintiffs claimed that animus was evidenced by (1) the disparate impact of the rescission on Latinos from Mexico, who represent 78% of DACA recipients; (2) the unusual history behind the rescission; and (3) pre- and post- election statements by President Trump." *Id.*

---

[4] The First Circuit has expressed that "while district courts enjoy broad discretion in managing their dockets, we think that, once the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement." *Grajales v. Puerto Rico Ports Authority,* 682 F.3d 40, 46 (1st Cir. 2012). However, the parties have not "invested substantial resources in discovery" with specific regard to Petitioners' equal protection claim and are currently litigating the proper scope of discovery on this claim. *See* ECF Nos. 548, 550, 556. Therefore, a ruling on Respondents' Rule 12(c) motion could avoid "unnecessary discovery" which is "one of the main goals of the plausibility standard." *Grajales,* 682 F.3d at 46.

The Supreme Court held that "none of these points, either singly or in concert establishes a plausible equal protection claim" even under the "motivating factor" standard established in *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266 (1977). *Id.* With regard to President Trump's pre- and post- election statements, the Court held that these statements were insufficient to state an equal protection claim because plaintiffs did not identify statements made by the Acting Secretary of DHS and the Attorney General who were the *relevant actors* in the decision to end DACA. *Id.* The Court also held that, even as interpreted by plaintiffs, the statements "do not qualify as contemporary statements" probative of the decision at issue." *Id.* (citing *Arlington Heights,* 429 U.S. at 268).

Since that decision, the Ninth Circuit rejected an equal protection claim regarding DHS's decisions to end Temporary Protected Status ("TPS") "due to the glaring lack of evidence tying the President's alleged discriminatory intent to the specific TPS terminations – such as evidence that the President personally sought to influence the TPS terminations, or that any administration officials involved in the TPS decision-making process were themselves motivated by animus against 'non-white, non-European' countries. *Ramos v. Wolf,* 2020 U.S. App. LEXIS 29050 *59-60 (9th Cir. 2020). The court dismissed plaintiff's argument that a "cat's paw" doctrine of employer liability in discrimination cases could be applied to the equal protection context. *Id.* It further explained that "it is expected – perhaps even critical to the functioning of the government – for executive officials to conform their decisions to the administration's policies. *Id.* at *61. Therefore, the mere fact that the White House exerted pressure on the agency's decisions is not alone enough to sustain an equal protection claim. *Id.*

With regard to the President's allegedly discriminatory statements, the Ninth Circuit held that these statements alone do not demonstrate that the President's purported racial animus was a

10

motivating factor in the decision. *Id.* (citing *Mendiola-Martinez v. Arpaio,* 836 F.3d 1239, 1261 (9th Cir. 2016). Rather, to qualify as a contemporary discriminatory statement under *Arlington Heights,* the statement must be connected to, made by a person who had a significant role in developing, and made in the same time period as the policy at issue. *Regents,* 140 S. Ct. at 1915; *Ramos, 2*020 U.S. App. LEXIS 29050 *59-60; *Arpaio,* 836 F.3d at 1261 (holding that offensive quotes attributed to Sheriff Arpaio and published in newspapers were insufficient to sustain and equal protection claim because they "do not mention the Restraint Policy and do not otherwise lead to any inference that Sheriff Arpaio's 2006 Restraint Policy was promulgated to discriminate against Mexican nationals"); *Cal v. U.S. Dep't of Homeland Sec.,* No. 19-cv-04975, 2020 U.S. Dist. LEXIS 137743 *86-87 (N.D. Cal 2020).

Here, Petitioners allege that two policies violate the Equal Protection Clause. First, they challenge Executive Order 13768 signed by President Trump on January 25, 2017. ECF No. 27 at ¶ 122. Second, they challenge ICE ERO Boston's "practice of subjecting noncitizen Petitioners and noncitizen members of the proposed class to detention and removal despite their efforts to legalize their immigration status." *Id.* Petitioners' allegations relating to improper animus consists of two paragraphs in their complaint. *Id.* at ¶¶ 110-11. The first paragraph describes all of the ***race neutral*** immigration policies that Petitioners believe "reflect a consistent desire to drive out immigrants of color and prevent non-white people from becoming American." *Id.* at ¶ 110. The second paragraph alleges that several of President Trump's statements provide evidence of animus to support their equal protection claim. *Id.* at ¶ 111. Some of these statements have been attributed to President Trump while others have been public statements. The statements mentioned in the

11

complaint are from February 2016,[5] June 2017,[6] August 2017,[7] and January 2018[8]. *Id.* None of the statements mentions Executive Order 13768 nor the removal of aliens with final orders of removal from the United States. *Id.* Two of the statements do not concern immigration policy at all. *Id.* Under *Regents,* each challenged policy is subject to a separate equal protection analysis, but they both fail as a matter of law.

### A. Petitioners' challenge to Executive Order 13768 fails under the *Regents* standard.

The Supreme Court's decision in *Regents* forecloses Petitioners' equal protection claim regarding Executive Order 13768. In support of their claim that the executive order was motivated by improper animus, Petitioners cite to several statements and actions of President Trump that, pursuant to *Regents,* are "unilluminating." *Regents,* 140 S. Ct. at 1916. First, none of the statements were made in the same time period as the January 2017 executive order; most were made *after* President Trump signed Executive Order 13768 while another was made nearly a year before it was issued. *See Cal.,* 2020 U.S. Dist. LEXIS 137743 at *87 (holding that the pre-inauguration statements were "remote in time and not applicable to the agency action at issue" while "the post-inauguration statements pertain to the same time period as the beginning of the rulemaking process but are not connected to the Rule"). Second, the alleged statements do not concern the removal of final order aliens from the United States, which is the part of the executive order at issue in this

---

[5] This date relates to Petitioners' allegation that "[w]hile campaigning, he labeled Mexican immigrants as criminals and rapists." ECF No. 27 at ¶ 111 n.12.

[6] This date relates to Petitioners' allegation that the President "asked why the United States could not have more immigrants from Norway. . ." and that "Haitians all have AIDS." *Id.* at ¶ 111 n.11, 13.

[7] This date relates to Petitioners' allegation that the President has "declined to criticize white nationalist demonstrators" and "pardoned an Arizona sheriff convicted of contempt of a judicial order requiring that he cease racially profiling Latinos, calling Sheriff Arpaio an 'American patriot." *Id.* at ¶ 111 n. 15-16.

[8] This date relates to Petitioners' allegation that President Trump "expressed a desire to reduce immigration from 'shithole' countries." *Id.* at ¶ 111 n.14.

lawsuit nor do any of them refer to Executive Order 13768. *See id.* Therefore, all of these statements, made in unrelated contexts and in remote periods of time to Executive Order 13768, are insufficient to allow Petitioners' equal protection claim to proceed. *See Regents,* 130 S. Ct. at 1916; *Arpaio,* 836 F.3d at 1261; *id.*

### B. Petitioners' challenge to ICE ERO Boston's alleged practice of taking enforcement action against class members fails under the *Regents* standard.

Petitioners' equal protection challenge to ICE ERO Boston's "practice of subjecting noncitizen Petitioners and noncitizen members of the proposed class to detention and removal despite their efforts to legalize their immigration status" fairs no better. Alleged discriminatory statements can support an equal protection claim *only if* the statements are attributable to the decision-makers behind the challenged policy. *Regents,* 130 S. Ct. at 1916. Petitioners have not pled any facts that suggest President Trump was involved in the individual decision to arrest any class member or even ICE ERO Boston arrests of class members at USCIS offices, nor can they. Petitioners have also failed to plead any facts that any decision makers at ICE ERO Boston – the only relevant actors to this part of their equal protection claim – were motivated by racial animus. *See Arlington Heights,* 429 U.S. at 268 (requiring statements by the decision-makers); *see also Cal.,* 2020 U.S. Dist. LEXIS 137743 at *87 ("They have not alleged sufficient factual matter concerning statements by decisionmakers."). This is fatal to *at least* their claim that ICE ERO Boston's actions violate the Equal Protection Clause because *Regents* requires allegations of racial animus from *relevant* actors. *Regents,* 140 S. Ct. at 1915; *Ramos,* 2020 U.S. App. LEXIS 29050 at *59-60. Therefore, this Court should enter judgment in favor of Defendants on Petitioners' equal protection claim.

Petitioners do not allege any evidence, other than President Trump's allegedly discriminatory statements, of improper animus to support their equal protection claim. Their claim

13

hinges solely on contextually unrelated, remote statements made by President Trump. Because these allegations are plainly insufficient to support Petitioners' claim, this Court should grant judgment in favor of Defendants on Petitioners' equal protection claim.

## **CONCLUSION**

For the forgoing reasons, this Court should dismiss Petitioners' complaint (ECF No. 27) and/or alternatively issue judgment under Rule 12(c) in favor of Respondents on Petitioners' equal protection claim (Count 3).

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

ELIANIS N. PEREZ
Assistant Director

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mary Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: November 18, 2020

/s/ *Mary L. Larakers*
Mary L. Larakers
Trial Attorney

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I certify that, in accordance with Local Rule 7.1(a)(2), counsel for Respondents conferred with counsel for Petitioners in an attempt to resolve or narrow the issues raised in this motion. Petitioners oppose this motion.

*/s/ Mary L. Larakers*
Mary L. Larakers
Trial Attorney