# Exhibit C

WILMERHALE

February 26, 2020

**By E-mail**

**Stephen Provazza**

+1 617 526 6000 (t)
+1 617 526 5000 (f)
stephen.provazza@wilmerhale.com

Mary Larakers
William H. Weiland
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
william.h.weiland@usdoj.gov
mary.l.larakers@usdoj.gov

Re:  *Calderon et al. v. McAleenan et al.*, No. 18-cv-10225-MLW (D. Mass.)

Dear Counsel,

I am writing regarding our call on January 22, 2020 to follow up on and to confirm our understanding of some of the issues we discussed.

First, we discussed Respondents' proposal to limit production from ICE to only Boston Field Office Directors, Deputy Field Office Directors, and Assistant Field Office Directors. This proposed list is underinclusive and any production should include materials from ICE Headquarters and lower level Boston ERO employees. To facilitate the parties' discussion, Petitioners' counsel circulated emails from prior productions (ICE-0002190 and GOV-002872) which include relevant and material communications between individuals at ICE Headquarters and among lower level ICE employees which would not be captured unless those documents happen to be forwarded to a FOD, DFOD, or AFOD. In order to minimize the burden of review and production, Petitioners proposed that, in the first instance, Respondents produce responsive materials for individuals in the direct reporting line from the Boston Field Office Director to the Secretary of Homeland Security and for Boston ERO Supervisory Detention and Deportation Officers who had some responsibility for enforcement decisions. Please let us know if Respondents agree to our proposal.

Second, the parties discussed Respondents' refusal to produce any documents responsive to Request Nos. 27 & 28 which seek documents related to Executive Order 13768 and Secretary John Kelly's February 20, 2017 implementation memorandum. Petitioners' counsel offered to limit the time frame of these requests to December 26, 2016 through March 20, 2017 (one month prior to the issuance of the Executive Order and one month after the memorandum was issued). Please let us know whether Respondents will produce responsive materials from this date range.

February 26, 2020
Page 2

WILMERHALE

Third, Respondents stated that, in response to Request Nos. 24 and 25, they intend to produce USCIS documents related to scheduling interviews for individuals with final orders of removal and policies and practices for scheduling interviews to facilitate ICE enforcement actions. However, Respondents refuse to produce materials regarding USCIS's scheduling of I-130 interviews. Petitioners offered to limit their request to policies and practices that may dictate whether and when a class member would be scheduled for an I-130 interview. Please let us know whether Respondents will produce documents subject to that limitation.

Fourth, the parties discussed Request No. 30, which seeks discovery related to racially disparaging language that may have been used by Respondents. You confirmed that the term "Guat" is an abbreviation used in DHS, ICE, and USCIS systems. Additionally, you noted that you would talk with your client to determine how burdensome it would be to review all documents where the term "animal" or "invasion" appears. Please let us know the volume of materials those search terms capture and whether you have been able to conduct a statistical sampling for responsiveness.

Fifth, the parties discussed Respondents' Interrogatory Responses:

- Regarding Interrogatory No. 1, which seeks the factors and information used in the Risk Classification Analysis, Petitioners asked (i) how the system considers USCIS benefits or provisional waiver applications, and (ii) whether someone's final order status always mandates their detention. Please let us know if your client agrees to supplement their response with answers to those two questions.
- Regarding Interrogatory No. 3, which asks for a description of Boston ICE ERO's practices regarding scheduling of Post-Order Custody Reviews ("POCRs") for class members, the parties discussed Respondents' failure to describe those policies and practices other than the recent changes they have made in response to this litigation. Petitioners therefore ask Respondents for a supplemented answer describing policies for the relevant period prior to the changes Respondents described in their response.
- Regarding Interrogatory No. 10, which asks Respondents to describe the enforcement actions taken with respect to the original named Petitioners, the parties discussed the fact that Respondents did not provide the names of decisions makers and instead only wrote that "ICE ERO" took each action even though those names could lead to potential document custodians and deponents. Please let us know whether your client will supplement that response to correct this deficiency.
- In response to Interrogatory No. 11, Respondents wrote: "Boston ICE ERO did not alter the decision to execute the alien's final order of removal when the alien reported as directed to Boston ICE ERO as a result of the Secretary's memorandum titled Enforcement of the Immigration Laws to Serve the National Interest." Could you please clarify this statement?

Finally, you objected to two of the topics delineated in our December 13, 2019 Notice of Deposition pursuant to Rule 30(b)(6). We have separately responded to those objections in my February 19, 2020 email with the subject line "RE: Calderon – 30(b)(6) Depositions."

February 26, 2020
Page 3

WilmerHale

Thank you for your prompt attention to these issues, and we look forward to your responses.

Sincerely,

Stephen N. Provazza