# Exhibit D

# WILMERHALE

November 26, 2019

**Colleen McCullough**

**By E-mail**

+1 617 526 6348 (t)
+1 617 526 5000 (f)
colleen.mccullough@wilmerhale.com

Mary Larakers
William H. Weiland
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
william.h.weiland@usdoj.gov
mary.l.larakers@usdoj.gov

Re:  *Calderon et al. v. McAleenan et al.*, No. 18-cv-10225-MLW (D. Mass.)

Dear Counsel,

    We write regarding deficiencies in Respondents' November 8, 2019 Responses and Objections to Petitioners' First Set of Requests for Production (Nos. 1-40) and to Petitioners' First Set of Interrogatories (Nos. 1-12), as well as USCIS's supplemental Responses and Objections to Petitioners' First Set of Interrogatories (Nos. 1-12).

## I.     General Objections

### A.     Presidential Privilege

    Respondents begin their responses by objecting generally to any discovery from the President and specifically to Requests for Production Nos. 27, 28, and 29.  *See* Resp. R&O to Pets.' First Set of Requests for Production at 2-3, 28-29 (Nov. 8, 2019); ICE R&O to Pets.' First Set of Interrogatories at 2-3 (Nov. 8, 2019); USCIS R&O to Pet. First Set of Interrogatories at 1-3 (Nov. 7, 2019).

    These objections are not well founded.  The caselaw does not permit a blanket denial of discovery regarding the President or other senior members of the Administration.  *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 706 (1974) ("[N]either the doctrine of separation of powers, nor the need for confidentiality of high-level communications, without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances.");  *In re Cheney*, 544 F.3d 311 (D.C. Cir. 2008) (denying mandamus petition to prevent discovery from Vice President).  Respondents cannot simply refuse to provide discovery without first working with Petitioners to address any legitimate concerns by, for example, seeking limitations on specific requests or allowing for an *in camera* review of sensitive documents.

November 26, 2019
Page 2

WILMERHALE

### 1. *Respondents' Reliance on* Cheney *Is Inapposite*

To support their position, Respondents chiefly rely on *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367 (2004) ("*Cheney*"). This reliance is misplaced. ***First***, in the underlying case in *Cheney*, the relief sought in the complaint itself was the production of documents about a certain executive agency. *Id.* at 374. In that limited case, granting broad discovery would have had the exact effect of a successful decision on the merits. Not so here, where discovery is merely a means of proving the broader substantive class claims.

***Second***, the requests in *Cheney* were broad, seeking "everything under the sky." *Id.* at 387. In contrast, Petitioners' requests—including those that might implicate discovery from the President himself—are limited in nature and scope. First, RFP Nos. 27 and 28 seek documents relating to Executive Order 13768 and its implementation memorandum, including those relied on in their formation. Because these requests concern an Executive Order, Petitioners anticipate that some responsive documents may be held by the Executive. But Respondents have simply refused to produce any documents in response to both requests. This is improper. Similarly, RFP No. 29 seeks documents concerning President Trump's own public statements listed in a single paragraph of the Amended Complaint. Unlike the requests at issue in *Cheney*, this request is limited by time and limited to the specific public statements outlined in the complaint. *Cf. In re Cheney*, 544 F.3d at 314 ("Here the discovery is far more limited [than in *Cheney v. U.S. Dist. Court*] and does not itself provide the relief sought in the complaint."). Indeed, Respondents have not objected to the breadth of these requests in themselves.

***Third***, the primary aim behind protections on discovery from the President is to prevent "vexatious litigation." *Cheney*, 542 U.S. at 382. This litigation is not vexatious, as the case's history to date shows. For example, in denying Respondents' motion to dismiss, the court deemed plausible Petitioners' claims for violations of due process, equal protection, and the APA. *See, e.g.*, ECF No. 159 at 38 ("[P]etitioners allege with adequate specificity a 'pattern' of arrests at the CIS offices, indicating that ICE has been 'systematically targeting' for arrest, detention, and removal individuals who were applying for provisional waivers or launching that process at their I-130 interviews. This claim is plausible."); *id.* at 47 ("[R]espondents have not shown that it is 'absolutely clear' that petitioners cannot 'reasonably expect' ICE will not violate the Constitution and relevant regulations by detaining them again and causing them irreparable harm."); *id.* at 39 n.2 ("[The] evidence . . . reinforces the conclusion that the petitioners' claim is plausible.").

Further, if the information sought is available from government sources other than the President, Respondents should produce it without reference to any privilege. If there are documents only available from the President, Respondent should identify them at a high level so that Petitioners can consider whether to seek them or request an *in camera* review. Respondents have not contended that any such documents are not relevant. *Cf. Karnoski v. Trump*, 926 F.3d 1180, 1205 (9th Cir. 2019) ("So long as Plaintiffs' discovery requests are narrowly tailored to

November 26, 2019
Page 3

**WILMERHALE**

seek evidence that is directly relevant to central issues in the litigation and is not available with due diligence elsewhere, Plaintiffs have met their preliminary burden.").

### 2. *The Presidential Communications Privilege Does Not Apply*

To the extent Respondents rely on the "presidential communications privilege," such a privilege is inapplicable here. ***First***, Petitioners are entitled to discovery into documents from or to the President regarding the specific public statements identified in the Amended Complaint. The presidential communications privilege is "qualified, not absolute, and can be overcome by an adequate showing of need." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997). Here, the President cannot contend that documents relating to his own public statements should "remain confidential." Officials should not be allowed to withhold from the public full information on one hand and benefit from the public divulsion of related information on the other. *See United States v. McGraw-Hill Companies, Inc.*, No. CV 13-0779-DOC JCGX, 2014 WL 8662657, at *8 (C.D. Cal. Sept. 25, 2014).

***Second***, even if the President had acted consistently to maintain the requested material as confidential, the Presidential communications privilege does not apply because Petitioners have a "specific need" for the requested discovery. *In re Sealed Case*, 121 F.3d 729, 754 (D.C. Cir. 1997) (explaining that presidential privilege does not protect materials where "each discrete group of the subpoenaed materials likely contains important evidence; and second, [where] this evidence is not available with due diligence elsewhere"); *U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 351 F. Supp. 3d 140, 156 (D.D.C. 2018) (same).

### 3. *The Deliberative Process Privilege Does Not Apply*

To the extent Respondents are relying on or will rely on the deliberative process privilege, such reliance is also inappropriate. ***First***, where the "'decision-making process itself is the subject of the litigation,' it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information.'" *Williams v. City of Bos.*, 213 F.R.D. 99, 102 (D. Mass. 2003) (quoting *Burka v. N.Y.C. Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986)); *see also Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004) (disallowing privilege for documents which "shed light on [an] allegedly tainted trial" and "reveal the prosecutor's state of mind or strategy" in criminal trial in which plaintiff alleged prosecutor withheld evidence). Here, Petitioners' claims clearly implicate the government's decision-making process regarding individuals' ability to pursue the provisional waiver process. *See, e.g.*, Dkt. 27 at ¶¶ 110, 111.

***Second***, because the privilege does not protect purely factual or explanatory documents, the government cannot withhold *all* documents under this privilege. *In re Sealed Case*, 121 F.3d at 737 ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.").

November 26, 2019
Page 4

**WilmerHale**

*Third*, even if the privilege did apply (which it does not), "an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995). Here, as explained above, there are compelling reasons to allow narrow, targeted discovery into the documents requested.

## II.     ICE's RFP Responses

### A.     Rule 34(b)(2)

Many of Respondents' responses to Petitioners' requests for production are silent as to whether Respondents are withholding any documents on the basis of their objections. Rule 34(b)(2) requires that an objection to a request for production "state with specificity the grounds for objecting to the request, including the reasons," and "state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(B)-(C). General objections, without more, are insufficient. *See, e.g.*, *Fischer v. Forrest*, No. 14-cv-1304-PAE-AJP, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017); *see also Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 184-88 (N.D. Iowa 2017). Petitioners assume that Respondents' statements that, "Consistent with these objections, ICE will produce any non-privileged communications or documents responsive to this request," and similar responses, represent that ICE is not withholding any documents in response to the Request. If that understanding is incorrect, please supplement ICE's responses to comply with Rule 34(b)(2).

### B.     Document Custodians

Respondents have not identified a single custodian responsible for supervising the conduct of the Boston ERO above the Field Office Director position, a single custodian from ICE Headquarters, or a single custodian from USCIS. Each of these entities has been implicated by the allegations in Petitioners' complaint and likely possesses documents or things responsive to Petitioners' requests. Please provide document custodians most likely to have discoverable information regarding the supervision of the Boston ERO, ICE Headquarters, and USCIS.

### C.     Stay Adjudication and Check-in Policies

Petitioners' RFP Nos. 13 and 14 request documents reflecting guidance about the adjudication of applications for stays of removal and documents concerning ICE check-ins. In response to these requests, Respondents stated that they will provide documents only "as related to" or "for" "Class Members." This qualification should not narrow the scope of what is produced. Petitioners' Requests seek documents reflecting guidance or concerning training regarding any policies or practices related to stays or check-ins that have been applied to individuals pursuing provisional waivers. To the extent such individuals were subject to generally applicable policies, documents regarding the applied policies are responsive to Petitioners' request. Petitioners interpret Respondents' response to include such documents. If

Petitioners interpretation is incorrect, please supplement Respondents' response to clarify whether Respondents will produce guidance or documents reflecting policies or practices related to these topics.

### D. Executive Order 13768

Petitioners' RFP Nos. 27 and 28 request documents related to and relied on in drafting Executive Order 137687 and its implementation memorandum, "Enforcement of the Immigration Laws to Serve the National Interest." In response, Respondents have refused to produce *all* documents responsive to Petitioners' requests based on a blanket assertion of the presidential privileges. This is improper. The presidential communications privilege only extends to "documents created within the White House or received by key White House advisers or their staff." *Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d 1108, 1117 (D.C. Cir. 2004); *see also Loving v. Dept. of Def.*, 550 F.3d 32, 39-41 (D.C. Cir. 2008). Respondents cannot refuse to produce responsive documents to these Requests by "[e]xtending presidential privilege to the communications of presidential advisers not directly involving the President . . . ." *In re Sealed Case*, 121 F.3d 729, 749 (D.C. Cir. 1997). Respondents should produce documents responsive to RFP Nos. 27 and 28 that were within DHS and "never received by the President or his Office," which are "unlikely to 'be revelatory of his deliberations.'" *Judicial Watch*, 365 F.3d at 1117 (quoting *In re Sealed Case*, 121 F.3d at 752). Please confirm that Respondents will produce such documents.

### E. Documents Used to Respond to Interrogatories

Petitioners' RFP Nos. 31-33 request documents relied upon, identified in, or relating to Respondents' responses to Petitioners' interrogatories, requests for production, or requests for admission. Respondents have refused to provide documents responsive to these requests on the basis that they are allegedly "duplicative" of other requests. This is improper. Whether or not discovery requests are "duplicative" is not the relevant standard. Please confirm Respondents will produce relevant and non-privileged documents.

### F. Improper Refusals to Produce Documents

Respondents object to the following requests as not relevant, not proportional to the needs of the case, and presenting a burden that outweighs the benefit of the documents sought. They improperly refuse to produce responsive documents. Each of the following requests is tailored to solicit relevant documents that are relevant to Petitioners' claims and proportional to the needs of the litigation.

- Rebecca Adducci's Hiring: Respondents' refusal to produce documents regarding "the hiring of Rebecca Adducci as Interim Field Office Director of the ICE Boston Field Office," Request No. 21, is improper. Ms. Adducci became the acting Field Office Director (FOD) of the Boston ERO on June 7, 2018, weeks after an internal audit that revealed widespread lack of compliance with the POCR regulations, May

23, 2018 Hr'g Tr. 18:15-19:5, 48:18-49:5, and days after acting FOD Brophy told this Court that he was ending ICE Boston's practice of making arrests at USCIS. *Id.* at 21:6-11. Therefore, documents relating to Ms. Adducci's appointment as acting FOD of the Boston ERO are relevant to at least ICE Boston's changes regarding these policies and practices.

- Allegations of Failure to Comply with the Provisional Waiver Process or POCR Regulations: Respondents' refusal to produce documents concerning allegations of failure of the Boston ERO to comply with the provisional waiver process or with 8 C.F.R. § 241.4 is improper. Request No. 23. Such documents are relevant to Respondents' compliance and individuals knowledgeable about such compliance, and to identifying class members.

- Scheduling of I-130 Interviews: Respondents' refusal to produce documents relating to the scheduling of I-130 interviews is improper. Request Nos. 24 and 25. Such documents are relevant to USCIS's cooperation with ICE in interfering with and inhibiting access to the provisional waiver process.

- RCA: Respondents' refusal to produce documents relating to the RCA is improper. Request No. 26. ICE Boston used the RCA in taking enforcement actions against individuals pursuing the provisional waiver process. Therefore, how it functions and is used are relevant.

- Communications Regarding President Trump's Statements of Animus: Respondents' limitation of their responses to Petitioners' request for documents concerning the statements made by President Trump, listed in Paragraph 111 of the Amended Class Action Complaint, to communications with Boston ERO FODs, is improper. Request No. 29. Similarly, Respondents' limitation of their search for documents reflecting racially disparaging terms to communications with AFODs and FODs is improper. Request No. 30. Communications by individuals both above and below FODs and AFODs in rank are relevant to Petitioners' claims of animus.

- Documents Reflecting Racially Disparaging Terms: Respondents' interpretation of Petitioners' suggested terms in Request No. 30 as a limitation on the scope of that Request is improper. Other terms may identify documents responsive to that request and relevant to Petitioners' claims of animus. It is Respondents' obligation to identify search terms that will result in a reasonable search for responsive documents.

- Organizational Charts**:** Respondents' refusal to produce organizational charts for ICE that describe ICE's structure above those at the Boston ERO, and that show the organizational structure of ICE Headquarters and USCIS, is improper. Request No. 35. These charts are relevant for determining those individuals who may have discoverable information.

November 26, 2019
Page 7

**WILMERHALE**

- <u>Document Destruction Policies or Incidents</u>:  Respondents' refusal to produce documents sufficient to describe Respondents' policies for generating, maintaining, retaining, and disposing documents and relating to the transfer or destruction of any documents requested by Petitioners' Requests is improper.  Request Nos. 36 and 37.  Such documents are relevant to the absence or potential spoliation of evidence.

Please supplement Respondents' responses to Petitioners' First Set of Requests for Production (Nos. 1-40) to correct the deficiencies identified above.

### III.     Respondents' Interrogatory Responses

#### A.     Improper Interrogatory Counting

Respondents' refusal to respond to Petitioners' Interrogatory Nos. 9-12 on the ground that they "exceed[] the 25 limit on interrogatories imposed by Fed. R. Civ. P. 33," *see* Resps.' R&O at 4, 13-14, is entirely improper for multiple reasons.

*First*, Respondents' position—which appears to count interrogatories based solely on the use of enumerated clauses rather than any analysis of the interrogatory's substance—has no support in the Federal Rules, the Local Rules, or any applicable case law.  It is blackletter law that "an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question . . . ."  8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2168.1 (3d ed.); *see also Synopsys, Inc. v. ATopTech, Inc*, 319 F.R.D. 293, 294 (N.D. Cal. 2016) (quoting Wright & Miller); *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 195 (E.D. Tex. 2016) (same).  This District's Local Rules expressly state that principle.  *See* L.R. 26.1(c) ("For purposes of determining the number of interrogatories propounded, subparts of a basic interrogatory which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory shall not be counted separately from the basic interrogatory.").

To the extent Petitioners' Interrogatories contain subparts, the subparts for each interrogatory are directed at the interrogatory's common theme and seek only "specified additional particularized information," *id.*, about that theme.  For example, Interrogatory No. 9 asks about a "Form" and then specifies six characteristics that the response should address.  These six characteristics, all of which refer back to "the Form" named in the basic interrogatory, are not separate interrogatories themselves, as Respondents apparently contend.  And more generally, the subparts requiring the identification of documents about the subject matter of the interrogatory or ICE employees involved in that subject matter are also logical extensions of the basic interrogatory; courts in this District have routinely recognized that.  *See, e.g.*, *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914-FDS, 2018 WL 4054903, at *2, n.1 (D. Mass. Aug. 24, 2018) (holding that interrogatory requiring identification of "any person with knowledge of" and "each document that refers or relates" to the facts

forming the basis of the interrogatory response is not "improperly compound" [and] "will be counted as one interrogatory for the purposes of Fed. R. Civ. P. 33(a)(1)").

*Second*, to the extent Respondents believed Petitioners' Interrogatories exceeded Rule 33's limits, ICE waived its objection by responding to Interrogatory Nos. 1-8. *See* 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest."); *see also Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order."); *Romanyk Consulting Corp. v. EBA Ernest Bland Assocs., P.C.*, No. CIV.A. AW-12-2907, 2013 WL 3280030, at *6 (D. Md. June 26, 2013) ("Plaintiff has effectively waived its right to this objection by answering other questions while raising this objection."). Respondents cannot simply decide for themselves how Petitioners' interrogatories will be counted and which ones it will answer.

Further, Respondents failed to raise this objection in their responses provided by USCIS. *See* USCIS R&O at 10-12.

Respondents must cure their failure to respond to Interrogatory Nos. 9-12 immediately. Please provide complete, certified responses no later than December 4, 2019. Please also confirm that ICE did not limit its response to Interrogatory No. 8 because of its interrogatory-limit objection (i.e., because ICE suggested that this interrogatory contained interrogatories "24-26").

### B.   Failure to Identify the Person Most Knowledgeable About Each Topic

Each of Petitioners' Interrogatories requested that Respondents identify the person most knowledgeable about the topic of the Interrogatory. Respondents have failed to provide this information in any of their Interrogatory responses without any objection or explanation. *See, e.g.*, *Mannai Home, LLC v. City of Fall River*, No. 17-11915-FDS, 2019 U.S. Dist. LEXIS 17989, at *15 (D. Mass. Feb. 5, 2019) ("Defendants here clearly failed to provide discovery as required by the rules" where they failed to identify persons most knowledgeable in response to initial disclosures and interrogatories.). Please identify the person most knowledgeable about the topic of each interrogatory.

### C.   Failure to Identify Documents and Communications

In Respondents' response to Interrogatory Nos. 2, 3, 4, 5, and 6, where Petitioners request that Respondents "identify and describe . . . any Communications or Documents concerning" the topic of interrogatory, Respondents reference yet-to-be-produced materials that may potentially be included in response to a Request for Production. Federal Rule of Civil Procedure 33(d) permits a party to produce business records in lieu of "examining, auditing, compiling,

abstracting, or summarizing" those records. However, a party seeking to rely on Rule 33(d) must both produce the relevant records and "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Please confirm that you intend to supplement Respondents' response to Interrogatory Nos. 2, 3, 4, 5, and 6 by either providing the requested information or, if relying on Rule 33(d), identifying the records upon which Respondents intend to rely by Bates number.

### D.  Improper Temporal Limitations

Respondents' objections to the definition of "Class Qualifier" are an inappropriate attempt to evade merits discovery.  Petitioners do not intend to create a sub-class or go beyond the classes the Court certified in May.  *See* Dkt. 253.  Respondents seek to withhold information about any individual whose "Alien Relative petitions have been denied or withdrawn, or those petitioners and/or beneficiaries who once resided in the Class geography but no longer do."  This subverts the purpose of a 23(b)(2) class action by undermining Petitioners' ability to prove their claims based on the way Respondents have handled the cases of individuals who no longer fall within the class but did at times relevant to the claims of the class.  *See, e.g.*, *Rule 23(b)(2)— Claims for Injunctive Relief*, 1 McLaughlin on Class Actions § 5:15 (16th ed.) ("The (b)(2) class action is reserved for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a ***group-wide injury***.").  Petitioners are entitled to discovery into the treatment of the class.  Respondents' position would allow Respondents to have an end-run around discovery entirely by simply taking a person out of the class (e.g., by effectuating their removal during the discovery period) if it would be convenient for Respondents not to provide discovery on that individual.

### E.  Individual Interrogatory Responses

- Interrogatory No. 1: Interrogatory No. 1 seeks information related to the factors accounted for by the Risk Classification Assessment ("RCA").  Respondents have improperly refused to answer this interrogatory.  First, information regarding the RCA is plainly relevant—ICE Boston has used the RCA in taking enforcement actions against individuals pursuing the provisional waiver process.  For example, Mr. Lyons has explained that the RCA system was used to determine that Ms. Calderon was to be detained.  Dkt. No. 19 at ¶ 6; Dkt. No. 40-1 at ¶ 6.  Additionally, information related to the factors accounted for by the RCA is not "'law enforcement technique or surveillance information' regarding any underlying criminal investigation" and is therefore not protected by law enforcement privilege, as Respondents contend.  *Lunn v. Smith*, No. CV 17-10938-IT, 2019 WL 569828, at *5 (D. Mass. Feb. 12, 2019).

- Interrogatory No. 2: Interrogatory No. 2 seeks information related to Boston ICE ERO's policies or practices relating to detention or removal of individuals pursuing Provisional Waivers since August 29, 2016, including the involvement of USCIS employees in the implementation and execution of those policies.

WILMERHALE

> Respondents' response and USCIS's supplemental response are incomplete because, at a minimum, it excludes facts already discovered in this case. For example, following Secretary Kelly's February 2017 memo, Christopher Cronen implemented a practice of arresting and detaining Provisional Waiver applicants at USCIS offices. May 23, 2018 Hr'g Tr. 129:17–130:5. Similarly, Thomas Brophy implemented a policy preventing ICE officers from making arrests at USCIS which was subsequently weakened by Rebecca Adducci. *See Id.* at 21:6-11; Adducci Dep. Tr. 66:2-11. Internal inconsistencies within Respondents' interrogatory responses demonstrate that they are incomplete; USCIS denies a role in "employ[ing] or administer[ing] any ICE ERO policies or practices relating to detention or removal of individuals," USCIS R&O at 5, while Respondents explain that the USCIS District Director "coordinated efforts" with Mr. Cronen to implement Mr. Kelly's February 2017 Memorandum. Resps. R&O at 6. Respondents' failure to include pertinent information in response to Interrogatory No. 2 indicates that the response is incomplete, and it must therefore be supplemented. Please do so promptly, not only to include additional details identified above but also any other responsive information that was omitted from the response.

- Interrogatory No. 3: Interrogatory No. 3 seeks information related to Respondents' practices and policies regarding scheduling of POCR events. Respondents' response is deficient.

  Specifically, while describing changes to these practices and policies in response to Interrogatory No. 3(b), Respondents only provide information regarding their policies and practices as of September 2019. At the very least, Respondents must supplement their response to provide information regarding the POCR scheduling policies and practices starting in August 29, 2016, describing the policies and practices in place when ICE violated the POCR regulations while scheduling the custody reviews of Ms. Calderon and Ms. de Souza, any subsequent changes to those policies and practices, and when the previous "process" described in the response was implemented. Respondents must also supplement their response to Interrogatory No. 3(c) based on that supplemental information.

  Respondents also improperly limit their response to Interrogatory No. 3(d) and (h) to the date of class certification (May 16, 2019). Information related to 90-day POCR reviews conducted prior to class certification is directly relevant to the class's claims because the challenged conduct was also occurring prior to class certification. Additionally, information related to 90-day POCR reviews of Class Qualifiers is relevant to the class's claims as it is relevant to policies and practices that the class was subject to. Please also confirm that Respondents did not similarly limit their responses to Interrogatory No. 3(e) and (f).

...

November 26, 2019
Page 11

**WilmerHale**

- <u>Interrogatory No. 6</u>:  Interrogatory No. 6 seeks information related to any activities or Communications by employees of USCIS District 01 and part of District 02 to support Boston ICE ERO's detention or removal of individuals participating in the Provision Waiver Process.  Respondents' response and USCIS's supplemental response are incomplete.  For example, they do not include information regarding USCIS's activities to support ICE's detention and removal efforts such as scheduling I-130 interviews at times convenient to ICE officers, Lyons Dep. Tr. 46:9-13, or extending interviews to allow ICE time to arrive at USCIS offices, Dkt. 128-9.  Respondents' failure to include this pertinent information in response to Interrogatory No. 6 indicates that the response is clearly selective and incomplete, and it must therefore be supplemented.  Please do so promptly, not only to include additional details concerning USCIS' interview-scheduling practices, but also to include information about all other aspects of USCIS' practices that were omitted from the original response.

- <u>Interrogatory No. 8</u>:  Interrogatory No. 8 requests the first arrest after January 25, 2017 by ICE officers of an individual visiting a USCIS facility for an I-130 interview.  Respondents respond to this Interrogatory by stating that they intend to produce responsive documents concerning this arrest but improperly attempt to shift the burden of responding to this interrogatory to Petitioners.  We trust that Respondents will produce responsive documents promptly and reserve the right to request further investigation and a supplemented response to this Interrogatory after we have received and reviewed those documents.

Please supplement your responses to each of these Interrogatories promptly, and in any event no later than December 4, 2019.

\*   \*   \*

To the extent Respondents will not immediately remedy the deficiencies identified above, please let us know your earliest availability to meet and confer about these issues.  We reserve the right to raise other issues with Respondents' written responses, including once we have received and had an opportunity to review Respondents' document production.

Sincerely,

*Colleen McCullough*

Colleen McCullough