Exhibit O

*Office of Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

February 21, 2017

MEMORANDUM FOR:      All ERO Employees

FROM:      Matthew T. Albence
Executive Associate Director

SUBJECT:      Implementing the President's Border Security and Interior
Immigration Enforcement Policies

On February 21, 2017, Secretary Kelly issued the attached memoranda, "Implementing the President's Border Security and Immigration Enforcement Improvements Policies," and "Enforcement of the Immigration Laws to Serve the National Interest." These new polices outline the role of the Department of Homeland Security (DHS) in the implementation of Executive Order (E.O.) 13767, "Border Security and Immigration Enforcement Improvements," 82 Fed. Reg. 8793 (Jan. 25, 2017), and E.O. 13768, "Enhancing Public Safety in the Interior of the United States," 82 Fed. Reg. 8799 (Jan. 25, 2017). Effective immediately, Enforcement and Removal Operations (ERO) will implement this direction from the Secretary, with particular guidance as set forth below.

Additionally, U.S. Immigration and Customs Enforcement (ICE) is reviewing all existing policies and guidance documents and will revise or rescind relevant policies in order to ensure consistency with the E.O.[1]

### A. Enforcement Policy

Effective immediately, ERO officers will take enforcement action against all removable aliens encountered in the course of their duties. As always, ERO officers must make an individualized custody determination in every case, prioritizing detention resources on aliens subject to expedited removal and aliens removable on any criminal ground, security or related ground, or for grounds related to fraud or material misrepresentation. Under the terms of the E.O., DHS will no longer exempt classes or categories of removable aliens from potential enforcement.

Additionally, regardless of the basis of removability, ERO officers should prioritize efforts to remove aliens who:

---

[1] With the exception of the June 15, 2012 memo, "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children," and the November 20, 2014 memo, "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents."

**Exhibit #**

**Cronen 9**

08/14/20  BK

ICE-00011400

FOR OFFICIAL USE ONLY

Subject: Implementing the President's Border Security and Interior Immigration
Enforcement Policies

      (1) Have been convicted of any criminal offense;

      (2) Have been charged with any criminal offense that has not been resolved;

      (3) Have committed acts which constitute a chargeable criminal offense;

      (4) Have engaged in fraud or willful misrepresentation in connection with any official matter before a governmental agency;

      (5) Have abused any program related to receipt of public benefits;

      (6) Are subject to a final order of removal but have not complied with their legal obligation to depart the United States; or

      (7) In the judgment of an immigration officer, otherwise pose a risk to public safety or national security.

Aliens listed above do not necessarily have to be placed in removal proceedings based on a criminal ground of inadmissibility or removability. Instead, ERO officers should prioritize individuals within the above priorities for removal proceedings based on any lawfully available removal grounds.

## B. Detention Policy

The agency is currently expanding detention space to support the E.O.'s termination of "catch-and-release" policies.[2] ERO will work to detain aliens pending a final determination of whether they will be removed from the United States, including a determination regarding eligibility for immigration relief and protection. ERO officers should only release from detention an alien detained pursuant to section 235(b) of the Immigration and Nationality Act (INA) on a case-by-case basis, in accordance with applicable statues and regulations, in the following situations:

      (1) When removing the alien from the United States pursuant to statute or regulation;

      (2) When the alien obtains an order granting relief or protection from removal or DHS determines that the individual is a U.S. citizen, national of the United States, or an alien who is a lawful permanent resident, refugee, asylee, holds temporary protected status, or holds a valid immigration status in the United States;

      (3) A Field Office Director consents to the alien's withdrawal of an application for admission, and the alien contemporaneously departs from the United States;

      (4) When required to do so by statute, or to comply with a binding settlement agreement or order issued by a competent judicial or administrative authority;

      (5) A Field Office Director authorizes the alien's parole pursuant to section 212(d)(5) of the INA with the written concurrence of the Deputy Director of ICE, except in exigent circumstances such as medical emergencies where seeking prior approval is not practicable. In those exceptional instances, any such parole will be reported to the Deputy Director as expeditiously as possible; or

      (6) When an arriving alien processed under the expedited removal provisions of section

---

[2] The implementation of this provision may be dependent upon the deployment of a surge of immigration judges and asylum officers and the acquisition of additional detention space, as determined by the Secretary.

FOR OFFICIAL USE ONLY

Confidential - Subject to Protective Order

ICE-00011401

Subject: Implementing the President's Border Security and Interior Immigration
Enforcement Policies

> 235(b) has been found to have established a "credible fear" of persecution or torture by
> an asylum officer or an immigration judge, provided that such an alien affirmatively
> establishes to the satisfaction of an immigration officer his or her identity, that he or she
> presents neither a security risk nor a risk of absconding, and provided that he or she
> agrees to comply with any additional conditions of release imposed to ensure public
> safety and appearance at any removal hearings.

As the agency works to expand its detention capacity, detention of all such individuals may not
be possible.  Detention resources should be prioritized based upon potential danger and risk of
flight if an individual alien is not detained.

### C.  Release and Parole Policy

ERO officers should process requests for parole or other release sparingly, and only in individual
cases where, after careful consideration of the circumstances, the officer believes that the release
would serve the best interests of the United States because of demonstrated urgent humanitarian
reasons or significant public benefit.  Parole or other release, with all available safeguards, may
also be warranted in instances where detention capacity limits the agency's ability to detain the
alien consistent with legal requirements, including court orders and settlement agreements.

Agency policy establishing standards and procedures for the parole of certain arriving aliens
found to have a credible fear of persecution or torture will remain in full force and effect until
further evaluation is completed and additional guidance is issued.[3]  ERO officers are reminded,
however, to apply ICE policy consistent with its plain language, and to ensure that the alien is
held to his or her burden of establishing identity and that his or her release will not pose a danger
or risk of flight.  There is no presumption that an individual alien's release would not pose a
danger or risk of flight.

### D.  Processing and Treatment of Unaccompanied Alien Minors

ERO officers will continue to comply with the requirements of the William Wilberforce
Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) and the *Flores* Settlement
Agreement, including all implementing policies and procedures, to ensure that all children,
including unaccompanied alien children, are provided special protections to ensure that they are
properly processed and receive appropriate care and placement when they are encountered by
DHS officers and agents.  Mexican and Canadian unaccompanied alien children may be
permitted to withdraw their application for admission and return to Mexico or Canada after
proper coordination with the Mexican or Canadian Consulate has been completed.

---

[3] Current agency policy is set forth in ICE Policy No. 11002.1: Parole of Arriving Aliens Found to Have a Credible
Fear of Persecution or Torture, dated December 8, 2009, which is available here.  The policy is implicated by
pending litigation before the U.S. Supreme Court in *Jennings v. Rodriguez*, No. 15-1204, and as noted in the
Secretary's February 17, 2017 memorandum, "Implementing the President's Border Security and Immigration
Enforcement Improvements Policies," is subject to further review and evaluation pending ongoing implementation
of Executive Order 13767.

Confidential - Subject to Protective Order

ICE-00011402

FOR OFFICIAL USE ONLY

Subject: Implementing the President's Border Security and Interior Immigration
Enforcement Policies

Unaccompanied alien children who are permitted to withdraw may be repatriated at the nearest
port of entry to Mexican or Canadian Consulate officials at a time designated by the consulate
official.

### E.  No Private Right of Action

This document provides only internal ICE policy guidance, which may be modified, rescinded,
or superseded at any time without notice.  This guidance is not intended to, does not, and may
not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by
any party in any administrative, civil, or criminal matter.  Likewise, no limitations are placed by
this guidance on the otherwise lawful enforcement or litigation prerogatives of ICE.

In implementing these policies, I direct all ERO employees to consult with legal counsel through
proper chain of command, to ensure compliance with all applicable laws, including the
Administrative Procedure Act.

FOR OFFICIAL USE ONLY

Confidential - Subject to Protective Order

ICE-00011403