## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | No. 18-cv-10225-MLW |
| CHAD WOLF, *et al.*, | ) ) | |
| Respondents. | ) ) ) | |

## OPPOSITION TO MOTION TO COMPEL DISCOVERY

## I.      INTRODUCTION

Respondents respectfully oppose Petitioners' Motion to Compel Discovery (ECF No. 566). At the outset, Petitioners' motion fails because their Amended Complaint cannot survive Respondents' Renewed Motion to Dismiss and Rule 12(c) Motion for Judgment on the Pleadings (ECF No. 560). Furthermore, Petitioners' motion fails because Petitioners do not and cannot demonstrate the relevance of the additional discovery they seek, basing their motion to compel instead upon incorrect characterizations of the allegations within the Amended Complaint. Finally, Petitioners' motion fails because Petitioners' demands are overbroad and not proportional to the actual needs of the case. Fed. R. Civ. P. 26(b)(1).

## II.      LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1), *Controlled Kinematics, Inc. v. Novanta Corp.*, Civil Action No. 17-cv-11029-ADB, 2019 U.S. Dist. LEXIS 116922, at *6-7 (D.

Mass. July 15, 2019). On a motion to compel, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Controlled Kinematics*, 2019 U.S. Dist. Lexis 116922 at \*6-7 (citing *Johansen v. Liberty Mut. Grp., Inc.*, No. 15-cv-12920-ADB, 2017 U.S. Dist. LEXIS 200422 at \*1 (D. Mass. Dec. 6, 2017)). "District courts exercise broad discretion to manage discovery matters" and "to tailor discovery narrowly." *Id.* (quoting *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003); *Primarque Prods. Co. v. Williams W. & Witt's Prod. Co.*, No. 15-cv-30067-TSH, 2016 U.S. Dist. LEXIS 144197 at \*2 (D. Mass. Oct. 18, 2016)).

When exercising this discretion, courts must also assess disputed discovery requests in light of the proportionality considerations articulated in Rule 26(b)(1), including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*; *see also* Fed. R. Civ. P. 26(b)(1); *Sustainable Sourcing, LLC v. Brandstorm, Inc.*, No. 12-cv-30093-MAP, 2017 U.S. Dist. LEXIS 6843 at \*6 (D. Mass. Jan. 18, 2017) ( "concepts of relevance and proportionality dictate limits on the discovery to which Plaintiff is entitled").

### III.   ARGUMENT

**A.   The Court Should Deny Petitioners' Motion to Compel Because Their Complaint Cannot Survive Respondents' Renewed Motion To Dismiss and Rule 12(c) Motion for Judgment on the Pleadings.**

As an initial matter, before this Court can rule on the propriety of Petitioners' demands for additional discovery, Respondents respectfully submit that this Court should first rule on whether Petitioners' complaint survives the motion to dismiss now pending before it. As previously briefed by Respondents, the Supreme Court ruling in *Thuraissigiam* reaffirmed the "historic role of habeas

is to secure release from custody." *D.H.S. v. Thuraissigiam*, 140 S. Ct. 1959, 1970 (2020). Where petitioners seek relief beyond simple release from custody, the relief sought "falls outside the scope of the common-law habeas writ." *Id*. at 1970; *Gicharu v. Carr*, No. 19-1864, 2020 U.S. App. LEXIS 39536, at *14 (1st Cir. Dec. 16, 2020). Petitioners here, like the plaintiff in *Thuraissigiam*, do not want simple release. They seek, despite already having a final order of removal, an additional opportunity to seek protection from that removal. "[T]hey only challenge ICE's decision, on behalf of DHS, to enforce the [removal] order while they are pursuing provisional waivers." ECF No. 159 at 19-20. As such, Petitioners do not seek relief that appropriately falls under habeas, and therefore the Suspension Clause cannot prevent the operation of 8 U.S.C. 1252(g) and preserve this Court's subject-matter jurisdiction over Petitioners' claims.[1] *Thuraissigiam*, 140 S. Ct. at 1970; *Gicharu,* 2020 U.S. App. LEXIS 39536, at *14. It necessarily follows, then, that without jurisdiction to consider the merits of Petitioners' claims, this Court cannot also compel discovery into those claims.

What's more, Petitioners fail to state a cognizable claim under the Equal Protection Clause of the Fifth Amendment. Am. Compl. at ¶¶110, 111 ((ECF No. 27); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*., 140 S Ct. 1891 (2020). The sum total of Petitioners' Equal Protection claim amounts to a "blunderbuss" assertion "on information and belief" that Executive Order 13768 was "motivated by racial animus and animus based on national origin." Am. Compl. at ¶¶ 110, 111,121, 122 ((ECF No. 27). However, the Supreme Court recently held that nearly identical allegations of animus were insufficient to state an equal protection claim. *Regents* 140 S. Ct. at 1915-1916. In *Regents,* the Supreme Court rejected the claim that the disparate impact of

---

[1] Section 1252(g) strips district courts of jurisdiction over "any cause or claim on or on behalf of any alien arising from the decision or action of the [secretary of DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g).

immigration policies upon non-white individuals, and statements by President Trump, "either singly or in concert, establish[] a plausible equal protection claim." *Id.* at 1915. Since then, other courts, including the Ninth Circuit, have rejected similar equal protection claims that generically claim animus against "non-white, non-Europeans" by relying on President Trump's pre- and post-2016 election statements. *See Ramos v. Wolf*, 975 F.3d 872, 897 (9th Cir. 2020). Here, because Petitioners' fail to state a sufficient claim meriting relief, Petitioners are also precluded from compelling discovery on that claim.

Accordingly, Petitioners' motion to compel discovery should be denied because this Court lacks jurisdiction over any cognizable claims. Or, in the alternative, this Court's ruling on Petitioners' motion to compel should be held in abeyance pending resolution of the dispositive motion to dismiss and Rule 12(c) motion for judgment on the pleadings.

**B.      The Additional Discovery Petitioners' Seek Is Not Relevant To The Claims In The Amended Complaint.**

The 2015 amendments to Rule 26 imposed heightened standards on a party to establish the relevance of discovery sought. *See, e.g., FERC v. Silkman,* No. 1:16-cv-00205-JAW, 2017 U.S. Dist. LEXIS 211538 at *19 (D. Me. Dec. 26, 2017)(denying motion to compel for failure to demonstrate relevance of documents sought)*; Gilead Scis., Inc. v. Merck & Co*., No. 13-cv-04057-BLF, 2016 U.S. Dist. LEXIS 5616, at *4 (N.D. Cal. Jan. 13, 2016) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence … [T]he old language to that effect is gone.");  Under the standard Fed. R. Civ. P. 26(b)(1), the discovery sought must be relevant to the specific claims or defenses at issue among the parties in the litigation, not just the "general subject matter" of the case. *FERC*, 2017 U.S. Dist. LEXIS 211538 at *19; C*ole's Wexford Hotel, Inc. v. Highmark Inc.,* 209 F. Supp. 3d 810, 812 (W.D. Pa. 2016); *see also Waste Mgmt. of La., LLC v. River Birch*, Inc., No. 11-2405, 2017 U.S. Dist. LEXIS 79298,

at *12 (E.D. La. May 24, 2017) (denying discovery based upon an unpleaded scheme that, while broadly connected to the issues before the court, was not relevant to the specific claims alleged in the complaint).

In a motion to compel, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Johansen v. Liberty Mut. Grp*., Civil Action No. 15-cv-12920-ADB, 2017 U.S. Dist. LEXIS 200422, at *3 (D. Mass. Dec. 5, 2017); *FERC,* 2017 U.S. Dist. LEXIS 211538 at *19; *Controlled Kinematics*, 2019 U.S. Dist. Lexis 116922 at *6-7; Fed. R. Civ. P. 26(b)(1). In order to surmount this basic requirement, Petitioners resort to mischaracterizing their complaint. From the outset, Petitioners assert that their complaint alleges an unlawful "scheme" between USCIS and ICE to take enforcement action against class members. Pets.' Memo at 1, (ECF No. 567). But this is a complete and total re-writing of their Amended Complaint, whose 145 numbered paragraphs contain not a single mention, or even reasonable inference, that any action taken by USCIS was unlawful. *Id*. Contrary to their assertions on brief, there is not a single instance in the Amended Complaint where Petitioners allege that USCIS and ICE jointly collaborated to "cut off class-members access to the provisional waiver process." *Compare* Pets.' Memo at 7 (ECF No. 567) with Am. Compl. (ECF No. 27). Nor is there any allegation within Petitioners' complaint that USCIS required individuals with final orders of removal to appear in person at USCIS offices for interviews with the nefarious "*ostensible* purpose of adjudicating I-130 applications in order to turn those individuals over to ICE." *Id.* (emphasis added).[2]

---

[2] Regardless, Respondents dispute Petitioners' characterization of the discovery. To the contrary, testimony makes clear that USCIS District 11's purpose in scheduling interviews was to adjudicate the Petitioners' I-130 applications, as it is the responsibility of USCIS. Ex. D (Riordan Dep. at 251:22-252:3); Ex. E (McCleary Dep. at 81:5-10).

     *a.       Petitioners demands for additional discovery from USCIS are not relevant to any allegation within Petitioners' amended complaint.*

Petitioners fail to explain how additional discovery from USCIS is relevant to the single issue actually pleaded in their complaint: whether ICE ERO Boston's enforcement actions against class members were unlawful. Their repeated refrain that the requested discovery "is plainly relevant" is conclusory and unpersuasive, and a review of what Petitioners actually pleaded establishes that they cannot meet their burden on their motion. To begin with, the conspicuous absence of USCIS as a named party entirely undermines Petitioners' current spin as to what they pleaded in their amended complaint. Furthermore, a review of the text of the amended complaint demonstrates that Petitioners did not plead what they say they did. For example, Amended Complaint Paragraphs 1-4 contain no allegation of "coordination" between USCIS and ICE, much less unlawful coordination. Paragraph 2 alleges no more than that "ICE thus defeats" the I-601A process by detaining or seeking to remove alien Petitioners. Paragraph 2's rhetoric that "the government's one hand beckons Petitioners forward, and its other hand grabs them" asserts no conduct by USCIS other than the fact that USCIS enacted the 2016 I-601A regulation. Paragraphs Nos. 3 and 4 contain no assertions of USCIS conduct whatsoever, with both Paragraphs focus entirely upon the conduct of ICE, which will allegedly "continue systematically targeting "alien Petitioners absent Court intervention. Thus, the Amended Complaint's "one hand beckons" imagery refers merely to the USCIS creation of the 2016 amended provisional waiver regulations and ICE's alleged frustration of the regulation's purpose – not coordinated 'scheming' by USCIS with ICE in an effort to restrict of eligibility for the very waiver USCIS itself created.

Likewise, Amended Complaint Paragraph 56 offers no support for Petitioners' current assertion that "this conduct" (i.e., USCIS schedule coordination with ICE) was "allege[d]" to be carried out under President Trump's Executive Order 13768, [and] the product of animus based

on race and national origin." Pets.' Memo at 2 (ECF No. 567), Am. Compl. ¶56 (ECF No. 27).

Paragraph 56 contains no such allegation. Nor do Paragraphs 110-11 in the Amended Complaint

contain more than a blunderbuss "[o]n information and belief" assertion of "Respondents' efforts

to restrict eligibility for the stateside provisional waiver process" as "motivated by racial animus

and animus based on national origin." *Id.* ¶¶ 110-111. At any rate, there are no factual allegations

therein mentioning USCIS to support Petitioners' assertion on brief that Petitioners have in the

Amended Complaint "allege[d] that this conduct [i.e., USCIS scheduling coordination with ICE]

was the product of animus based on race and national origin." Pets.' Memo at 2 (ECF No. 567).

What's more, Petitioners do not even mention in passing any other conduct of USCIS in

the Amended Complaint. Paragraphs 26-29 assert nothing about USCIS coordination with ICE;

those paragraphs merely describe the 2016 expansion of the I-601A provisional waiver regulation.

Amended Complaint Paragraphs 37-100 describe some details of the named Petitioners, but allege

no affirmative conduct of USCIS other than their approval of forms I-130. Paragraph 110, referring

to "Respondents' efforts to restrict eligibility" is a reference to a null set, inasmuch as no

antecedent action of USCIS is alleged in the Amended Complaint -- other than creation of the 2016

provisional waiver regulations to which Petitioners now seek unconditional entitlement.

At most, Paragraph 119 asserts that "due process protects Petitioners from being the

victims of a "bait and switch," citing to a 1959 Sixth Amendment Supreme Court case, *Raley v.*

*State of Ohio*, 360 U.S, 423, 438-439 (1959). That case held that defendants could not be convicted

for failing to respond to questions from a state commission, after having been informed that they

enjoyed a 5th Amendment privilege against self-incrimination. Here, Petitioners allege that the

provisional waiver regulations were bait that ICE – not USCIS – used to switch and take

enforcement actions against class members. Petitioners allege no congruent factual circumstances that USCIS, through their scheduling or adjudication of I-130s, also committed an illegal "switch."

Furthermore, nothing within Petitioners' complaint asserts that the scheduling of interviews by USCIS, or their adjudication of petitions submitted by the Petitioners, was unlawful. Despite knowing for *years* that USCIS and ICE communicated about the scheduling of I-130 interviews, despite warnings from this Court that Petitioners may need to amend their complaint to be entitled to broader discovery from USCIS, and despite their anecdotal and diffident innuendo in Court regarding impropriety in the way USCIS is scheduling interviews, ***Petitioners' complaint still lacks any allegation that USCIS's scheduling and/or adjudication of I-130s is unlawful.*** Consequently, Petitioners seek discovery on a claim that is not in their complaint while denying Respondents an opportunity to formally respond to such a claim, essentially skirting around the Rule 11 requirements.[3] Such tactics are improper under the federal rules. *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 8 (1st Cir. 2011) ("[A] plaintiff whose complaint does not state an actionable claim has no license to embark on a fishing expedition in an effort to discover a cause of action.")(citing *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006)("The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action."); *DM Research, Inc v. Coll. of Am. Path.*, 170 F.3d 53, 55 (1st Cir. 1999)).

As such, no further discovery from USCIS is warranted.

b.      *Even if Petitioners Equal Protection claim survives, Petitioners' motion to compel does not seek discovery relevant to the actions taken by ICE ERO Boston.*

---

[3] This Court has also reminded Petitioners of this requirement before:

THE COURT: What evidence is there they're [USCIS] not scheduling for interviews? Why do you make that representation, that argument? You've got a Rule 11 obligation to have a reasonable factual basis for the assertion that they're not scheduling interviews.

Jun. 27, 2019 Hrg. Tr. at 83:22-25.

Petitioners now seek discovery into the genesis of Executive Order 13768 (and implementing memoranda), which is not reasonably related or sufficiently connected to the actions of ICE ERO Boston, specifically ICE ERO Boston's "practice of subjecting noncitizen" class members "to detention and removal despite their efforts to legalize their immigration status." Am. Compl. ¶122 (ECF No. 27). Without such a nexus, Petitioners demand for additional discovery fails because alleged discriminatory statements can support an equal protection claim only if the statements are attributable to the decision-makers behind the challenged policy. *Regents*, 130 S. Ct. at 1916. Petitioners have not pled any facts that suggest Secretary Kelly or his immediate staff were involved in the individual decisions to arrest any class member, or even in the decision of ICE ERO Boston to make arrests at USCIS offices. Petitioners have also failed to plead any facts that any decision makers at ICE ERO Boston – the only relevant actors to their equal protection claim – were motivated by racial animus. *See Arlington Heights*, 429 U.S. at 268 (requiring statements by the decision-makers); *see also California v. United States Dep't of Homeland Sec.,* No. 19-cv-04975-PJH, 2020 U.S. Dist. LEXIS 137743 (N.D. Cal. Aug. 3, 2020) at *87 ("They have not alleged sufficient factual matter concerning statements by decision makers."). This is fatal to their demand for discovery from the Secretary of the Department of Homeland Security, as none of the information sufficiently relates to the relevant actors at ICE Boston ERO. *Regents*, 140 S. Ct. at 1915; *Ramos*, 2020 U.S. App. LEXIS 29050 at *59-60.

**C.    Petitioners' Demands are Overbroad and Disproportionate to the Needs of the Case.**

The 2015 amendments to the Federal Rules of Civil Procedure moved the proportionality factors in Rule 26 to a place of greater prominence in the text, directly linking the concept to relevance. Fed. R. Civ. P. 26(b)(1); *FERC,* 2017 U.S. Dist. LEXIS 211538 at *19. In doing so, it is clear that Petitioners are only entitled to discovery that is *both* relevant and proportional to the

needs of the case. *Id.* The key to the analysis is a "careful and realistic assessment of actual need." *Id. see also Tyree v. Foxx,* 835 F.3d 35, 42 (1st Cir. 2016)(affirming District Court's denial of motion to compel discovery on the basis of overbreadth). It follows then, that to be proportional to the actual needs of the case, Petitioners' discovery demands must be narrowly tailored the matters alleged in their amended complaint and take into consideration the actual need for such documents. *FERC*, 2017 U.S. Dist. LEXIS 211538, at *19-20 (D. Me. Dec. 26, 2017); *see also Controlled Kinematics,* 2019 U.S. Dist. LEXIS 116922 at *10 (Denying discovery demand which, as drafted, was overbroad in its terms); *TG Plastics Trading, Co. v. Toray Plastics*, No. 09-336S, 2010 U.S. Dist. LEXIS 23498, at *7 (D.R.I. Mar. 11, 2010)(denying motion to compel on the basis that the demands were not narrowly tailored to the disputes at issue);

As noted above, Petitioners have not sufficiently shown the relevance of the additional documents they demand. What's more, given the amount of the discovery already provided, even if some of the documents Petitioners' request were minimally relevant, the sweeping demands Petitioners make are not proportional to the actual needs of the case "considering the importance of the [requested] discovery in resolving the issues" alleged in the Amended Complaint. In addition, any *de minimis* probative value held by any of the documents demanded is grossly outweighed by the effort it would require DHS, ICE, or USCIS to search out, categorize, and assert privileges to all of the potentially relevant documents swept up by Petitioners' overly expansive demands. *See FERC*, 2017 U.S. Dist. LEXIS 211538 at *26.

1. *Petitioners' demands exceed the scope of discovery authorized by Fed. R. Civ. P. 26(b).*

In order to give the appearance that their demands comply with the limits of Fed. R. Civ. P. 26(b)(1), Petitioners blithely mischaracterize their current requests as "narrow." However, in each of the disputed Requests for Production, Petitioners demand all "Documents and

Communications" related to the topics of the requests. In attaching these discovery demands to their brief, Petitioners conveniently omit how limitlessly they define "Documents," "Communications," and "Relating to." ECF Nos. 567-1; 567-7. The sheer breadth of Petitioners' discovery demands becomes abundantly clear when one considers the untrammeled definitions they propounded alongside these demands. Specifically:

> - "Document" is defined broadly to be given the full scope of that term and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all nonidentical copies of a document, all drafts of final documents, e-mails, all other written, printed, electronic, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, regardless of the medium on which they are produced, reproduced, or stored (including, without limitation, electronically stored information), and any recording or writing, as these terms are defined in Rule 1001 Federal Rules of Evidence. Any Document bearing marks, including, without limitation, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate Document.
>
> - "Communication" means any contact, oral or written, whereby information of any nature is transmitted or transferred, including, without limitation, persons seeing or hearing any information by any means and any Document memorializing or referring to the contact.
>
> - "Relate to," "related to, "relating to," and "regarding" mean in whole or in part concerning, reflecting, alluding to, mentioning, regarding, discussing, bearing upon, commenting on, constituting, pertaining to, demonstrating, describing, depicting, directly or indirectly relating to, summarizing, containing, embodying, showing, comprising, evidencing, refuting, contradicting, analyzing, identifying, stating, dealing with, and/or supporting.

Exs. A at 2-3; B at 2-3

These definitions, when combined with Petitioners' demands, require Respondents to search for and produce nearly every document or communication imaginable bearing any tenuous relation to the discovery demanded. They also reflect the fact that Petitioners have not made any meaningful attempt to narrow their demands to the actual needs of this case. Accordingly, this

Court must deny the requests as beyond the scope authorized by Rule 26(b). Fed. R. Civ. P. 26(b)(2)(c).

     2.    *Petitioners' demands for additional discovery also exceed the scope of discovery authorized by this Court.*

Petitioners also ignore the discovery Order issued by this Court narrowing the discovery issues in this case. Following the hearing on August 27, 2019, this Court issued ECF No. 366. That Order plainly states:

> With regard to disputed issues, petitioners' discovery is allowed and limited as follows:
>
> a. Petitioners may take discovery from ICE Headquarters concerning policy directives given to ICE-Boston.
>
> b. Petitioners may take discovery from U.S. Citizenship and Immigration Services that is relevant to the claims in petitioners' Amended Complaint (Docket No. 27).
>
> c. Petitioners may take discovery for the period July 29, 2016 to February 28, 2020, the agreed-upon deadline for all discovery. Any requests for documents between July 29, 2016 and January 20, 2017 shall be particularized and not unduly burdensome.
>
> d. The four depositions petitioners have already taken shall not count against the 10 depositions they are permitted under Local Rule 26.l(c). Petitioners' deposition of Marcos Charles shall not be limited in duration due to his previous deposition.

Contrary to the Petitioners' assertion that this Court authorized any broader discovery, this Court quite clearly stated its Order was both allowing and "*limit[ing]*" discovery. *Id.* It would be a curiously unwarranted reading indeed to interpret this Court's Order "limit[ing]" discovery from ICE Headquarters to ICE Boston as also authorizing unfettered discovery into ICE, USCIS, *and* DHS Headquarters on matters never even communicated to ICE ERO Boston – such as Petitioners now demand that this Court compel.

     3.    *Petitioners' demands for additional discovery ignores the robust discovery they have already received.*

Petitioners' references to the discovery taken so far do not supplant their burden to establish that their demands are relevant and proportional to the needs of the case. By referencing the discovery taken so far, Petitioners, again, fail to present the entire picture. To the extent Petitioners' characterizations of the discovery taken so far could somehow aid their argument that this discovery is necessary — which Respondents assert they cannot — an accurate depiction of the discovery Petitioners have already received is warranted.

a.   <u>Respondents are already providing all the discovery that is relevant and proportional to the coordination between USCIS and ICE regarding I-130 interviews.</u>

Petitioners' assertion that Respondents have "refused to provide" USCIS "records regarding the scheduling of I-130 interviews," is false. Pets.' Memo at 1 (ECF No. 567). Both USCIS and ICE have provided voluminous documents related to communications between USCIS District 11 and ICE relating to the scheduling of I-130 interviews, as evidenced by Petitioners' reference of such records produced by Respondents. Ex. L to Pets.' Memo (ECF No. 567-12). *See also e.g.* Ex. C (Riordan Dep. Ex. 16). Notably, Petitioners' motion to compel fails to acknowledge the over 16,000 pages of documents that USCIS has already provided that is, arguably, relevant to Petitioners' claims. That discovery includes the following:

- Depositions of USCIS District Director Denis Riordan, Field Office Director Michael McCleary, and Supervisor Mirella Tiberi, who have provided approximately 17 hours of testimony on the record, and whose testimony included extensive questioning regarding the communication between CIE and USCIS District 11 concerning the scheduling of I-130 interviews.[4]

---

[4] This is an uncontroverted fact well established over two years ago, which also begs the question why additional discovery is needed to establish this fact even assuming it is relevant to Petitioners' claims. For example, this Court noted this fact during Petitioners' examination

- Policy documents discussing when, where, and how arrests may occur at USCIS offices.

- Emails and other correspondence between ICE and USCIS District 11, including correspondence discussing arrests at USCIS offices and I-130 interview-scheduling / logistics.

- All Significant Incident Reports pertaining to ICE arrests of class members at USCIS District 11 offices.

In short, *if the information is related to an enforcement action taken against a class member, Respondents are already providing it.* Respondents have simply insisted on following this Court's discovery order and objected to providing discovery that has *no tendency* to prove or disprove the sole issue in Petitioners' complaint: whether the arrest, detention, and removal of class members is unlawful, and which is not proportional to the needs of the case.

Additionally, Petitioners' assertion that discovery has revealed "USCIS worked with ICE to schedule these [I-130 interviews] including by spreading them out to ensure ICE availability to make arrests and to avoid public scrutiny" is misleading. As evidence of this unsupported conclusion, Petitioners cite for this Court only select portions of USCIS Director Riordan's testimony, ignoring those contemporaneous portions of Director Riordan's testimony that

---

of ICE ERO Acting Field Office Director Todd Lyons at hearing on August 21, 2018, in the following dialogue with counsel for Petitioners:

> THE COURT: Mr. Prussia, what's the point of all of this? It seems pretty clear that up to a certain point at least CIS was informing ICE of when aliens with final orders of removal were coming in for I-130 interviews, and ICE was letting CIS know which of them it wanted to arrest and detain. Is there more to this than that?

> MR. PRUSSIA: That's exactly it, Your Honor.

> THE COURT: I've got the point then.

Aug. 21, 2018 Hr'g Tr. at 149:4-12.

undermine Petitioners' argument. *Compare e.g.* Pets.' Memo at 7-8 (ECF No. 567) (citing Riordan Dep. 88:7-17 (Pets.' Ex. E to Opp. to. Mot. for Prot. Ord. (ECF No. 551-5)) with Ex. D (Riordan Dep. at 87:2-18) (regarding question of the term "collusion" between USCIS and ICE, "I would say in the way it's been expressed is -- is by design, we're actively working for the sole purpose of making people available to ERO to arrest, and *that is not true at all*. If you're talking about communicating and -- and making some logistical -- taking some logistical steps, that we do. But collude has a very negative connotation.")(emphasis added). *See also* Ex. D (Riordan Dep. at 87:19-25, 88:1-25, 89:1-7 (testifying that USCIS logistical steps taken attendant to notification by USCIS to ICE ERO included regulation of the interview dates for those cases as to which ICE indicated it would respond by appearance at the USCIS office, and that such management of interview dates by USCIS was out of USCIS concern for office resource efficiency and minimization of office disruption); Ex. D (Riordan Dep. at 173:21-25) (USCIS Director Riordan testifying that "I think that that arrest should happen away from the interview area and for -- for reasons of it should be -- it should be in an area that's –that's secure for -- for safety reasons and good order,"); Ex. D (Riordan Dep. at 176:25 – 177:1-10)(USCIS Director Riordan testifying that USCIS has "never tried to hide the fact that we contact [ICE] ERO regarding cases that the petitioner – or the beneficiary is the subject of a removal order," and that such arrests as ICE ERO may execute at USCIS offices were done with the safety and order of the office in mind).

What's more, a fair reading of Petitioners' demand for additional I-130 information shows that they have not narrowed their request in any way whatsoever. Specifically, the request still demands *all* "documents and communications reflecting policy or practices that may dictate or influence whether and when a class member would be scheduled for an I-130 interview from August 29, 2016 to the present." Pets.' Memo at 7 (ECF No. 567). At the outset, Petitioners do not

even try to comply with this Court's Order regarding the requirement for particularity with regard to documents pre-dating January 20, 2017, which came after a long colloquy with the Court on August 27, 2019. ECF No. 366 at ¶3.c. ("Any requests for documents between July 29, 2016 and January 20, 2017 *shall be particularized* and not unduly burdensome.")(emphasis added); Aug. 27, 2019 Hr'g Tr. at 72:11–76:18. Furthermore, Petitioners' "narrowed" demand still relies upon the "broadest" definitions of "documents" and "communications" propounded by Petitioners in their discovery requests. And although this new demand is drafted so as to convey the impression that this it is limited to the scheduling of class-members for interviews, the demand for everything "reflecting policy or practice that may dictate or influence whether or when a class member would be scheduled" defeats any limit. This follows because Petitioners' demand for everything reflecting any "policy or practice" (*i.e.* – what USCIS does) is the same as demanding everything that mentions the scheduling of I-130 interviews generally, as such documents will necessarily "reflect" upon the practice of scheduling of I-130 interviews for class-members. Moreover, as the demand is not limited to the class geography, it must apply nationally to everyone at USCIS. In sum, a discerning but fair read of Petitioners' demand shows that, in order for Respondents to comply with its terms, Respondents would have to provide *everything imaginable where anyone at USCIS ever mentioned the scheduling of I-130 interviews from August 29, 2016 to present*.

Such a sweeping demand is not proportional to the actual needs of the case, and must be denied.

           b.    <u>Respondents are already providing all of the discovery that is relevant and proportional to Petitioners' claims that the actions of ICE ERO Boston may have been motivated by animus based on race or national origin</u>.

Petitioners' assertion that "the total discovery Respondents have agreed to search for or produce relating specifically to the animus alleged in Petitioners' equal protection claim was a

search of the documents of certain Boston ERO custodians using eight racial slurs as search terms"
is patently false. Pets.' Memo at 12 (ECF No. 567). Through this statement, Petitioners appear to
be attempting to advance before this Court the misleading impression that other communications
that might reflect animus against class members on the basis of race or national origin have been
withheld by Respondents. In reality, in addition to searching *every e-mail* amongst relevant ICE
ERO Boston custodians for *any use* of the aforementioned pejoratives, regardless of the subject of
that e-mail, Respondents have also searched for and provided *all* documents and communications
relating to enforcement actions being taken against class-members. These documents not only
include communications entirely internal to ICE ERO Boston, but also between ICE ERO Boston
and ICE Headquarters. Obviously, if any of these communications included evidence of animus
based upon race or national origin, they would be included as a necessary subset, and any assertion
to the contrary is devoid of both logic and merit.

                c.     Respondents are already producing all relevant and proportional
discovery related to public affairs involvement in ICE ERO Boston enforcement decisions.

        Once again, Petitioners ignore what is already being provided in discovery by Respondents
in order to persuade this Court that it needs to order more. As it stands, Respondents are already
providing documents and communications regarding arrests of class members by ICE from both
ICE ERO Boston, and USCIS District 11. Petitioners are also already receiving communications
between ICE ERO Boston and USCIS District 11 pertaining to any enforcement actions
contemplated by ICE. Likewise, Petitioners are already receiving all communications from ICE
Headquarters to ICE Boston regarding enforcement actions taken against class members. And
Petitioners are receiving documents and communications from ICE Headquarters policy making
personnel that reflect internal discussions of ICE ERO Boston actions by officials within ICE ERO
Boston's chain of command.

What Petitioners are not receiving are documents and communications that are wholly internal to the Public Affairs offices of ICE and USCIS that were never shared with ICE ERO Boston or ICE Headquarters leadership. This is because such documents, to the extent they may exist, bear no absolutely no impact upon any policy decision or action taken by ICE ERO Boston. Nor would they shed any light on those decisions, as none of the communications involves any relevant decision-maker. Rather at best they would reflect the internal musings of public affairs officials doing their job – that is monitoring the news media for public reaction. Given the manner in which Petitioners have chosen to actively publicize this case, it is quite unsurprising that public affairs officials would discuss it amongst themselves. But the internal discussions of public affairs officials that are never shared beyond the public affairs offices are a far cry from relevant, much less proportional to the needs of the case – and Petitioners' demand for discovery into these communications is nothing more than a fishing expedition.

Furthermore, Petitioners cherry-pick USCIS deposition testimony to intimate a USCIS desire to "conceal their conduct to avoid publicity or negative media attention." This assertion disappointingly lacks any fidelity to a fair reading of the complete testimony of the USCIS deponents quoted. Pets.' Memo at 15 (ECF No. 567). For instance, Petitioners cite to the aforementioned "out of public view" terminology used by USCIS Field Office Director McCleary[5] in support of their assertion that, pursuant to some un-pleaded "scheme" USCIS sought to "conceal their conduct to avoid publicity or media attention." *Id*.

However, a review of the complete testimony of Director McCleary concerning USCIS expectations around ICE arrests in USCIS offices reveals something far different from attempts to

---

[5] Petitioners inaccurately identify 30(b)(6) deponent Michael McCleary as "[t]he District Director of USCIS." Pets.' Memo AT 15 (ECF No. 567). Mr. McCleary is actually the Director of the USCIS Boston Field Office, an office subordinate to USCIS District 11.

hide from public scrutiny: that is that safety for both officers and the individual being arrested was the guiding principle for determining the location to effect an arrest. ECF No. 568-18 (Pets.' Ex. R - McCleary Dep. at 95:2-9). Likewise, Petitioners' citation to USCIS District Director Riordan's deposition testimony as "to reasons USCIS avoided having multiple ICE arrests in one day," ECF No. 567 at 15, fails, utterly, to support Petitioners' theory of USCIS attempts "to conceal their conduct to avoid publicity or negative media attention." The deposition transcript text cited reflects no more than Director Riordan's speculation that in an unrecalled conversation with the ERO Field Office Director on April 4, 2017, "I probably wanted to make sure that the visits that – if ERO was going to respond to our advisory or our alert, that it be done in an orderly way."  ECF No. 568-19 (Ex. S - Riordan Dep. at 183:16-25). Petitioners also assert also —without a source citation – "USCIS's attempts to conceal these arrests went beyond helping to keep arrests out of the public." Pets.' Memo at 16 (ECF No. 567).

In sum, the additional information demanded by Petitioners, if even minimally relevant to claims actually pleaded in their Amended Complaint, is not proportional to the actual needs of the case. Petitioners' demands are unduly overbroad in their terms, and the burden of producing such discovery is outweighed by any *de minimis* benefit of their production.

## CONCLUSION

In the end, this Court should deny Petitioners' motion to compel discovery. First, and perhaps most significantly, Petitioners' Amended Complaint cannot survive Respondents' pending Motion to Dismiss and Rule 12(c) Motion for Judgment on the Pleadings. ECF No. 560. Second, Petitioners have not demonstrated the relevance of the additional discovery they seek to the actual allegations in their Amended Complaint, and their attempt to spin a false rhetorical narrative of "collusion" and "unlawful scheming" fails to transmute their complaint into something it is not.

And, finally, Petitioners' demands are neither narrowly tailored to the actual issues of this case,

nor is the production of any of the documents sought proportional to any need, such that the burden

of production of the demanded documents grossly outweighs any (if there is any) benefit of their

production. As such, this Court should deny Petitioners' motion to compel.

Respectfully submitted,


JEFFERY B. CLARK
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

ELIANIS N. PEREZ
Assistant Director

/s/ *William H. Weiland*
William H. Weiland (BBO# 661433)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 305-0770
(202) 305-7000 (facsimile)
william.h.weiland@usdoj.gov

*Counsel for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I, William H. Weiland, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *William H. Weiland*

William H. Weiland

Dated: December 22, 2020                    Trial Attorney