# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, Individually and on behalf of all others similarly situated, Plaintiffs-Petitioners, v. CHAD WOLF, *et al.*, Defendants-Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:18-cv-10225-MLW |

## PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION................................................................................................................1

BACKGROUND ................................................................................................................1

I.    Petitioner Lilian Calderon's Arrest While Pursuing Lawful Status under the Provisional Waiver Process..................................................................................................................1

II.    Petitioners' Class Complaint........................................................................................3

III.    The Court's August 23, 2018 Order on Respondents' Motion to Dismiss.........................3

IV.    The Court's May 16, 2019 Order on Respondents' Motion to Dismiss .............................6

V.    The Supreme Court's 2020 Decisions and the Status of Discovery in This Case .............7

ARGUMENT ....................................................................................................................7

I.    *Thuraissigiam* Does Not Disturb This Court's Decision Regarding Jurisdiction................7

    A.    The Suspension Clause Preserves this Court's Jurisdiction over Petitioners' Claims ............................................................................................................... 9

    1.    Thuraissigiam Does Not Overturn St. Cyr ................................................... 9

    2.    Thuraissigiam Does Not Bar Petitioners' Claims.......................................... 11

    3.    The Additional Cases Recited by Respondents Are Inapposite ................................. 13

    B.    Petitioners' Due Process and Equal Protection Claims Entitle them to the Exercise of this Court's Jurisdiction................................................................................................. 15

II.    *Regents* does not Require Judgment in Favor of Respondents on Petitioners' Equal Protection Claim ..........................................................................................................16

    A.    Respondents' 12(c) Motion is Procedurally Improper........................................... 17

    B.    Petitioners' Amended Complaint Pleads an Equal Protection Violation.............. 18

## **TABLE OF AUTHORITIES**

**Federal Cases** **Page(s)**

*Centro Presente v. U.S. Dep't. of Homeland Sec.*,
  332 F. Supp. 3d 393 (D. Mass. 2018) .................................................................20

*Citibank Glob. Mkts., Inc., v. Rodríguez Santana, et al.*,
  573 F.3d 17 (1st Cir. 2009) ................................................................................18

*D.A.M. v. Barr*,
  No. 20-cv-1321, 2020 WL 5525056 (D.D.C. Sept. 15, 2020) ..........................13, 14

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  140 S. Ct. 1891 (2020) ..........................................................................1, 7, 18, 19

*Dep't of Homeland Sec. v. Thuraissigiam*,
  140 S. Ct. 1959 (2020) .............................................................................. *passim*

*Devitri v. Cronen*,
  290 F. Supp. 3d 86 (D. Mass. 2017) ....................................................................13

*Gicharu v. Carr*,
  No. 19-1864, 2020 WL 7382130 (1st Cir. Dec. 16, 2020) ...................................15

*Gonzalez v. Justices of the Mun. Court*,
  420 F.3d 5 (1st Cir. 2005) ...................................................................................11

*Grajales v. Puerto Rico Ports Auth.*,
  682 F.3d 40 (1st Cir. 2012) .................................................................................17

*Hensley v. Mun. Court*,
  411 U.S. 345 (1973) ............................................................................................13

*INS v. St. Cyr*,
  533 U.S. 289 (2001) ................................................................................. *passim*

*New York v. Dep't of Homeland Sec.*,
  No. 19-CV-7777, 2020 WL 4347264 (S.D.N.Y. July 29, 2020) ...........................20

*Ragbir v. Homan*,
  923 F.3d 53 (2d. Cir. 2019) .................................................................................11

*Regents v. Dep't of Homeland Sec.*,
  298 F. Supp. 3d 1304 (N.D. Cal. 2018) ..............................................................19

*Reno v. American-Arab Discrimination Comm'n*,
  525 U.S. 471 (1999) ............................................................................................16

*Rutledge v. United States*,
  517 U.S. 292 (1996)..................................................................................18

*Tazu v. Attorney General*,
  975 F.3d 292 (3d Cir. 2020)..........................................................14, 15, 16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977).....................................................................................7

**Federal Statutes**

8 U.S.C. § 1252.............................................................................4, 5, 11, 16

Administrative Procedure Act (APA)...........................................................3, 4, 7

Immigration and Nationality Act (INA) ..............................................................3

REAL ID Act of 2005.........................................................................................4

**Regulations**

8. C.F.R. § 212.7................................................................................................4

8 C.F.R. § 241.4................................................................................................8

78 Fed. Reg. 535 (Jan. 3, 2013).......................................................................2

81 Fed. Reg. 50244 (July 29, 2016)...............................................................2, 3

Executive Order 13768 ...............................................................6, 7, 19, 20

**Other Authorities**

U.S. Const., art. III, § 2 ...................................................................................15

Henry M. Hart, Jr., The Power of Congress to Limit the Jurisdiction of Federal
  Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362, 1383 (1953)................16

Akhil Amar, A Neo-Federalist View of Article III: Separating the Two Tiers of
  Federal Jurisdiction, 65 B.U. L. Rev. 205, 250 (1985)......................................15

President Donald Trump, Remarks at the Department of Homeland Security (Jan.
  25, 2017), https://www.govinfo.gov/content/pkg/DCPD-
  201700513/html/DCPD-201700513.htm.............................................................19

## INTRODUCTION

More than two years into this litigation, and after the Court denied their motion to dismiss, certified a class, and opened discovery, Respondents seek once again to deprive Petitioners of their day in court by asking for the extraordinary actions of either dismissal or judgment on the pleadings based on two Supreme Court decisions from the previous term. Neither action is warranted.  Respondents are incorrect that either decision—*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020) or *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020)—requires dismissal.

First, *Thuraissigiam* leaves intact the Supreme Court's previous decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), on which this Court relied in denying Respondents' earlier motions to dismiss, and which recognized the Suspension Clause's applicability where noncitizens in the United States challenge their removal by seeking consideration of their eligibility for discretionary relief.  Such a challenge can be properly heard through a writ of habeas corpus.

Second, with respect to *Regents*, Respondents make **no mention** of the fact that the portion of *Regents* they rely upon was not joined by a majority of the justices.  Further, even that plurality opinion does not support Respondents' argument because it addressed different allegations of animus that had no direct causal connection to the executive action giving rise to the plaintiffs' claim—unlike the allegations here.  Respondents' motion should be denied.

## BACKGROUND

I.   **Petitioner Lilian Calderon's Arrest While Pursuing Lawful Status under the Provisional Waiver Process**

On January 17, 2018, named Petitioner Lilian Calderon—who had been living in the United States for 27 years and was married to a U.S. citizen with two young children—attended an interview at U.S. Citizenship and Immigration Services (USCIS) in an attempt to pursue a

process to legalize her immigration status.  Am. Compl. (Dkt. No. 27) ¶¶ 38, 43-45.  At the conclusion of that interview, Immigration and Customs Enforcement (ICE) officers appeared and arrested her.  *Id.* ¶ 49.  After the interview that led to her arrest, Ms. Calderon's marriage petition was approved, paving the way for her to obtain lawful status.  *Id.* ¶¶ 49, 53.  Nineteen days later, she filed a petition for writ of habeas corpus challenging her detention and imminent removal. Dkt. No. 1.  Respondents released her shortly before a hearing scheduled by this Court, and after she had been detained for nearly a month.  Dkt. No. 17; Am. Compl. (Dkt. No. 27) ¶¶ 44, 58.[1]

Ms. Calderon's petition alleged that ICE had violated the laws and regulations that established the provisional waiver process, a pathway for applicants like Ms. Calderon to remain with their families in the United States while pursuing waivers to certain inadmissibility grounds. Am. Compl. (Dkt. No. 27) ¶¶ 30-36.  While Ms. Calderon was ineligible to adjust her status within the United States, she could apply for an immigrant visa at a U.S. consulate abroad.  *Id.* But in doing so she would be subject to two inadmissibility grounds for which she would need to obtain a waiver, which historically had to be completed while applicants were abroad.  But in 2013 and 2016, the Department of Homeland Security (DHS) promulgated regulations allowing noncitizens, including those with final orders of removal who are married to U.S. citizens, to apply for provisional waivers while remaining in the United States.  *See* Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule, 78 Fed. Reg. 535, 536 (Jan. 3, 2013); Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule ("2016 Final Rule"), 81 Fed. Reg. 50244, 50245 (July 29, 2016); Am. Compl. (Dkt.

---

[1] As this Court noted, her detention and release was "part of a pattern that has emerged in related cases assigned to the court," Mem. and Order (Dkt. No. 17) at 2, and her "release may not necessarily moot her claims concerning detention or her other claims."  *Id.* at 6.

No. 27) ¶¶ 21-29.  The express purpose of these regulations was to encourage eligible noncitizens to obtain lawful status, to promote family unity, and to reduce the hardship on U.S. citizen spouses.  81 Fed. Reg. at 50244.

## II.    Petitioners' Class Complaint

Petitioners filed their Amended Class Action complaint on April 10, 2018 on behalf of Ms. Calderon and her husband as well as four other couples.  All noncitizen Petitioners were subject to final orders of removal and, by virtue of their marriages, were applying for legal immigration status through the provisional waiver process prescribed by USCIS.  One of them, Petitioner Lucimar de Souza, had been living in the U.S. since 2002 and was arrested at her USCIS interview on January 30, 2018.  Am. Compl. (Dkt. No. 27) ¶¶ 63-66.  Ms. de Souza was eventually released as a result of this litigation, but not until she had spent over three months in detention away from her husband and ten-year-old son.  Mem. & Order (Dkt. No. 95) at 10 n.2; Am. Compl. (Dkt. No. 27) ¶ 71.  Two other noncitizen Petitioners had been told by ICE to purchase plane tickets to leave the country, and another feared arrest if he were to appear at an I-130 interview.  Am. Compl. (Dkt. No. 27) ¶¶ 81-82, 91, 100.

Petitioners brought six causes of action alleging violations of the Immigration and Nationality Act (INA) and its regulations, the denial of due process and equal protection, and violations of the Administrative Procedure Act (APA).  Respondents filed a motion to dismiss each of these claims, which the Court denied in two orders dated August 28, 2018, and May 16, 2019.  *See* Resp'ts' Opp. (Dkt. No. 44).

## III.   The Court's August 23, 2018 Order on Respondents' Motion to Dismiss

The Court first held that it had jurisdiction and that Petitioners had stated a claim for violation of their due process rights.  Aug. 23, 2018 Hr'g Tr.; Mem. & Order (Dkt. No. 159).

Regarding jurisdiction, the Court held that all Petitioners were "in custody" for purposes of the writ of habeas corpus "because of their final orders of removal and, for four of the petitioners, orders of supervision that require that they appear for removal when ordered to do so."  Mem. & Order (Dkt. No. 159) at 16.  Respondents did not dispute that Petitioners were "all 'in custody' for the purpose of § 2241."  *Id.*

The Court then rejected Respondents' argument that certain provisions of the REAL ID Act of 2005 barred it from exercising jurisdiction over Petitioners' claims regarding removal.  *Id.* at 16-28.  The Court held that while 8 U.S.C. § 1252(g) applied to the legal question raised by Petitioners' claims—that as a result of the provisional waiver regulation, 8. C.F.R. § 212.7, ICE must "consider their pursuit of provisional waivers before deciding to execute their removal orders," *id.* at 24—the Suspension Clause operated to preserve the Court's jurisdiction over that claim.  *Id.* at 24-26 (quoting *St. Cyr*, 533 U.S. at 304, 308, and *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).  The Court explained that, under *St. Cyr*, "the habeas jurisdiction required by the Constitution extends to 'questions of law concerning an alien's eligibility for discretionary relief,' including claims, such as petitioners['] here, that DHS failed to make a discretionary decision required by regulation."  *Id.* at 25 (quoting *St. Cyr*, 533 U.S. at 304). The Court further explained that, under *St. Cyr* and *Accardi*, "a deportable alien had a right to challenge the Executive's failure to exercise the discretion authorized by the law."  *Id.* at 25-26 (quoting *St. Cyr*, 533 U.S. at 308).  Thus, the Court held that here, "as in *Accardi*, . . . the Constitution requires that, if it is a colorable claim, some court must have jurisdiction to review petitioners' claim that by deporting or removing them without considering their applications for provisional waivers, DHS is failing to exercise the discretion required by 8 C.F.R. § 212.7 . . . ."  *Id.* at 26. Therefore, Petitioners must have "'a meaningful opportunity to demonstrate' that ICE will

execute their removal orders 'pursuant to the [alleged] erroneous application or interpretation of relevant law,' and an opportunity to seek adequate relief—in this case, a stay of removal until DHS considers their pursuit of the provisional waivers authorized by statute and DHS regulations." *Id.* at 26-27 (citations omitted).

But Congress provided no such review of Petitioners' claim. *Id.* at 26-27. As the Court explained, "the administrative process leading to direct review in the court of appeals" provided by 8 U.S.C. § 1252 "could not adequately address petitioners' challenge to the execution of their removal orders in this case" for several reasons. *Id.* at 27. First, "it is too late for petitioners to file motions to reopen removal proceedings, as only 90 days are permitted to do so." *Id.* at 18 (citing 8 U.S.C. § 1229a(c)(7)(C)(i)). Second, "[i]f a petitioner's removal proceedings were reopened, he or she would be ineligible to apply for, or be considered for, a provisional waiver," and therefore the immigration court "could not provide any relief concerning [petitioners'] claims." *Id.* at 18-19. And third, judicial review of final orders of removal in the First Circuit, which is available under § 1252(a)(1), is limited to "matters on which the validity of the final order is contingent"—but because "petitioners do not challenge the validity of their orders of removal," this review is unavailable for their claims. *Id.* at 19-20 (citations omitted).

Here, "if deported, petitioners would be deprived of the relief they assert the regulations entitle them to seek from DHS—an opportunity to remain in the United States with their families until they must briefly travel abroad for their visa interviews. Therefore, if petitioners' claim is colorable, this court must exercise §2241 habeas jurisdiction over it." *Id.* at 27. The Court held that Petitioners' claim is not only colorable, but plausible, referring to its decision on the merits. *Id.* It therefore held that it was required to exercise jurisdiction to decide it. *Id.* at 25-28.

Regarding the merits of Petitioners' due process claim, the Court held that Petitioners

have a due process right to have their eligibility for a provisional unlawful presence waiver considered before they are removed. *Id.* at 28-40. The Court explained that "[t]he binding promises to United States citizens and their alien spouses in the provisional waiver regulations would be meaningless, and their purposes would be undermined, if ICE were not required to consider that an alien with a final order of removal is seeking a provisional waiver before requiring him or her to leave the United States." *Id.* at 36.[2]

## IV.   The Court's May 16, 2019 Order on Respondents' Motion to Dismiss

On May 16, 2019, the Court denied Respondents' motion to dismiss with respect to the remaining counts and certified a class of petitioners. May 16, 2019 Hr'g Tr. (Dkt. No. 254); May 17, 2019 Order (Dkt. No. 253).[3]

Regarding count three, alleging violations of the equal protection clause, Petitioners alleged that ICE's policy of arresting, detaining, and removing people pursuing the provisional waiver process was undertaken pursuant to President Trump's Executive Order 13768, which made it a priority to remove all people with final orders of removal. Am. Compl. (Dkt. No. 27) ¶¶ 110-11. Petitioners alleged that President Trump's statements during the campaign indicated that this Executive Order was promulgated with racial animus toward nonwhite and non-American people. *Id.* In denying Respondents' motion, this Court explained that "Petitioners'

---

[2] In its August 2018 decision, the Court did not resolve at what stage of the provisional waiver process individuals had due process rights to pursue provisional waivers. The Court subsequently ruled that they have such a right once they have a conditionally approved I-212 Petition for Permission to Reapply for Admission. May 16, 2019 Hr'g Tr. (Dkt. No. 254) at 15:8-19:10. The Court certified a sub-class of such Petitioners for purposes of the due process claim. *Id.* at 25:1-3.

[3] The Court reserved judgment on the aspect of Petitioners' due process claim regarding whether the U.S.-citizen-spouse Petitioners have a liberty interest in remaining in the U.S. with their noncitizen spouses and therefore a right to due process before their noncitizen spouses are removed. May 16, 2019 Hr'g Tr. (Dkt. No. 254) at 4:8-14.

allegations concerning President Donald Trump's statements and policies allege a plausible

claim that racial animus was one reason for the Executive Order," May 16, 2019 Hr'g Tr. (Dkt.

No. 254) at 9:3-5, and that Petitioners' equal protection claim could succeed based on proof that

the facially neutral policy found in President Trump's Executive Order 13768 had a racially

discriminatory intent or purpose.  *Id.* at 5:9-12, 6:22-9:2; *see also Vill. of Arlington Heights v.*

*Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268-71 (1977).

The Court also denied Respondents' motion to dismiss Petitioners' APA claim.  It held

that Petitioners adequately alleged that ICE had altered the provisional waiver regulations

without using notice and comment procedures and without considering the reliance interests

created by them.  It further held that Petitioners had adequately alleged that DHS's actions in

ignoring the noncitizens' participation in the provisional waiver process were arbitrary and

capricious.  May 3, 2019 Hr'g Tr. at 33:2-37:20.

**V.     The Supreme Court's 2020 Decisions and the Status of Discovery in This Case**

On June 18, 2020, the Supreme Court decided *Dep't of Homeland Sec. v. Regents of the*

*University of California*, 140 S Ct. 1891 (2020).  On June 25, 2020, the Supreme Court decided

*Dept' of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020).  Respondents filed this motion

five months later, on November 18, 2020.  Thus far in this proceeding, Petitioners have taken a

total of thirteen depositions and Respondents have produced over 13,000 documents.  Based on

the current case schedule, document production is currently scheduled to be completed on

January 1, 2021, and discovery closes on March 15, 2021.  Dkt. No. 572.

**ARGUMENT**

**I.     *Thuraissigiam* Does Not Disturb This Court's Decision Regarding Jurisdiction**

The Supreme Court's decision in *Thuraissigiam* does not support reversing this Court's

previous determination applying the Suspension Clause. *See* Mem. & Order (Dkt. No. 159) at 16-28.[4] *Thuraissigiam* left untouched—and in fact reaffirmed—the Supreme Court's decision in *INS v. St. Cyr*, on which this Court relied and which explained that the writ of habeas corpus can be invoked by noncitizens already in the United States who are in "custody" and who challenge their removal based on an unlawful failure to consider his or her eligibility for discretionary relief. *See Thuraissigiam*, 140 S. Ct. at 1981; *St. Cyr*, 533 U.S. at 300-03. The Supreme Court found that Mr. Thuraissigiam's effort to obtain judicial review of his failed asylum screening interview was "very different" from Mr. St. Cyr's ability to obtain a judicial determination of whether the government had improperly failed to consider him for discretionary relief from removal. *Thuraissigiam*, 140 S. Ct. at 1981. Moreover, *Thuraissigiam* confined its reasoning to "the writ as it existed in 1789," and did not determine the full scope of review protected by the Suspension Clause. *Id.* at 1969, 1975. Petitioners' claims seek to release Petitioners from the likelihood of imminent removal resulting from the executive's failure to exercise its discretion, and therefore remain cognizable under the writ of habeas corpus notwithstanding *Thuraissigiam*. Further, even apart from the applicability of the writ of habeas corpus through the Suspension Clause recognized in *St. Cyr*, Petitioners' due process and equal protection rights entitle them to have their claims heard in an Article III court.

---

[4] The government does not argue that *Thuraissigiam* provides a basis to dismiss Counts 5 and 6 of Petitioners' complaint, which allege violations of detention regulations provided for in 8 C.F.R. § 241.4 and violations of due process relating to class members' detention determinations. Moreover, because the Court has not reached the claims of the U.S. citizen spouses and the government's motion does not purport to address them, Petitioners do not address these claims. If the Court determines that any of the noncitizen Petitioners' claims are now jurisdictionally barred following *Thuraissigiam*, Petitioners request an opportunity for briefing and argument on whether these claims may proceed on behalf of the U.S. citizen spouses.

A.     **The Suspension Clause Preserves this Court's Jurisdiction over Petitioners' Claims**

1.   Thuraissigiam *Does Not Overturn* St. Cyr

As this Court correctly held, the Suspension Clause guarantees review of habeas petitions by individuals in the U.S. who challenge their imminent removal on the grounds that the executive failed to consider their eligibility for discretionary relief. *St. Cyr*, 533 U.S. at 298-314. This has been, and continues to the be, the law—nothing in *Thuraissigiam* holds otherwise. In *St. Cyr*, the petitioner had been ordered removed and filed a habeas action seeking an opportunity to apply for discretionary relief from removal. *Id.* at 293. St. Cyr argued that the attorney general had refused to consider his application because of a finding that he was ineligible on the basis of a criminal conviction to which he had pled guilty. *Id.* He sought a writ preventing his removal until he had an opportunity to apply for that discretionary relief and requiring the attorney general to consider his eligibility for such relief. *Id.* He argued that the Court had jurisdiction over his habeas petition because, historically, the writ was issued to redress the improper exercise of—or refusal to exercise—official discretion. *Id.* at 303-04.

The Supreme Court agreed.  It recognized that "[t]he Constitution's Suspension Clause, which protects the privilege of the habeas corpus writ, unquestionably requires some judicial intervention in deportation cases." *Id.* at 291 (citations omitted); *see also* Mem. & Order (Dkt. No. 159) at 25.  It explained that the requirement implicated the petitioner's claim, which was ***not*** a challenge to his removability, but instead a challenge to the executive's failure to exercise its discretion and consider his eligibility for relief from removal. *St. Cyr*, 533 U.S. at 298 ("[St. Cyr] does not dispute any of the facts that establish his deportability or the conclusion that he is deportable . . . Rather, he contests the Attorney General's conclusion that, as a matter of statutory interpretation, he is not eligible for discretionary relief.").  Such a claim, which seeks "to redress

9

the improper exercise of official discretion" could be brought in a petition for a writ of habeas

corpus. *Id.* at 303–04. That was so even though the petitioner's physical detention was

authorized by statute, and therefore not the direct object of his challenge. *Id.* In light of the

"serious Suspension Clause issue" that would arise if review of Mr. St. Cyr's claim was

unavailable, the Court in *St. Cyr* held that the jurisdiction-stripping provision at issue did not

apply. *Id.* at 305.

    *Thuraissigiam* did not overrule *St. Cyr*. Instead, it held that the *Thuraissigiam*

petitioner's invocation of the writ was "very different." *Id.* at 1981.[5] In *Thuraissigiam*, the

petitioner was apprehended shortly after crossing the border. *Id.* at 1967. He was subject to

expedited removal proceedings, during which he was found not to satisfy the "credible fear"

standard for avoiding expedited removal and receiving a full inquiry into his asylum claim. *Id.* at

1967-68. He then filed a habeas petition in the district court challenging the grounds for his

removal order, in particular that he was denied a meaningful opportunity to establish his claims

to asylum. *Id.* at 1968 (citation omitted). The petitioner sought a writ directing DHS to provide

him "a new opportunity to apply for asylum." *Id.* Thus, Mr. Thuraissigiam did not challenge

any executive failure to exercise ***discretion*** in his case, nor did he challenge his detention or

---

    [5] Respondents argue that *St. Cyr* says nothing about the reach of the Suspension Clause, but simply requires no more than that Congress explicitly state that a provision removes habeas jurisdiction in order to do so. Resp'ts' Br. 5-6. Respondents are incorrect. In *St. Cyr*, the Supreme Court explicitly stated that "a serious Suspension Clause issue would be presented if we were to accept the INS' submission that the 1996 statutes have withdrawn that power from federal judges and provided no adequate substitute for its exercise." *St. Cyr*, 533 U.S. at 304-05. It was the Suspension Clause's existence that caused the Court in *St. Cyr* to hold that the petitioner had access to the writ of habeas corpus. *Id.* And *Thuraissigiam* reaffirmed the fact that *St. Cyr* addressed the scope of the writ. *Thuraissigiam*, 140 S. Ct. at 1981 (citing *St. Cyr* for the proposition that "[t]he writ of habeas corpus as it existed at common law provided a vehicle to challenge all manner of detention by government officials, and the Court had held long before that the writ could be invoked by aliens already in the country who were held in custody pending deportation").

custody.  Rather, he challenged the removal determination *itself*, arguing that he "should have passed" an asylum screening interview.  *Id.*

### 2.  Thuraissigiam *Does Not Bar Petitioners' Claims*

The Petitioners' claims here are not challenges to the government's weighing of the evidence or factors in their individual cases, like the challenge rejected in *Thuraissigiam*. Rather, as in *St. Cyr*, Petitioners challenge the executive's failure to even make the discretionary determination required by law—namely, whether they should be removed despite their eligibility for the provisional waiver process that was extended to them in 2016.  This Court has already recognized as much in denying Respondents' previous attempt to dismiss the case.  Mem. & Order (Dkt. No. 159) at 25 ("In *St. Cyr*, the Court explained that the habeas jurisdiction required by the Constitution extends to 'questions of law concerning an alien's eligibility for discretionary relief,' including claims, such as petitioners['] here, that DHS failed to make a discretionary decision required by regulation.") (quoting *St. Cyr*, 533 U.S. at 304).  Petitioners therefore seek just what Mr. St. Cyr sought, *i.e.*, that before removing them DHS consider their eligibility for discretionary relief from which they had been categorically excluded.[6]

In seeking to stretch *Thuraissigiam* to cover this case, Respondents misconstrue

---

[6] The distinction between this case and *Thuraissigiam* is also apparent from the different jurisdiction-stripping provisions applicable in each.  The concerns in *Thuraissigiam* relating to an attempt to obtain a "do-over" of petitioner's asylum determination are not necessarily present in cases in which § 1252(g) applies and are certainly not implicated here.  The fact that the Supreme Court granted the petition for certiorari, then vacated and remanded *Ragbir v. Homan*, 923 F.3d 53 (2d. Cir. 2019)—a case in which 8 U.S.C. § 1252(g) was at issue—does not show that *Thuraissigiam* applies to *any* case in which § 1252(g) is at issue, as Respondents suggest. Resp'ts' Br. 7.  And, in any event, a grant, vacate, and remand order "does not constitute a final determination on the merits; it does not even carry precedential weight."  *Gonzalez v. Justices of the Mun. Court*, 420 F.3d 5, 7 (1st Cir. 2005) (citing *Lawrence v. Chater*, 516 U.S. 163, 178 (1996) (Scalia, J., dissenting) (explaining that a GVR represents a "vacation of a judgment and remand *without any determination of error in the judgment below*") (emphasis added)).

*Thuraissigiam* to prohibit all uses of the writ to challenge a detainee's removal.  Resp'ts' Br. 4-6.

In reality, *Thuraissigiam* confirms that the Suspension Clause protects the ability of noncitizens

who are in "custody" to bring at least certain challenges to their removal, including challenges to

the executive's failure to exercise the discretion required by law.  *Thuraissigiam*, 140 S. Ct. at

1975 n.21.  For example, the Supreme Court explained that using habeas for "release" permitted

individuals to seek release from "custody pending deportation," *id.* at 1981, which, the Court

explained, may have the "collateral consequence" of allowing the petitioner to remain in the

country.  *Id.* at 1973.  By contrast, Mr. Thuraissigiam did not mention "release," "[a]nd in any

event . . . the critical point is that what he sought in the habeas petition and still seeks—a writ

'directing [the Department] to provide [him] a new opportunity to apply for asylum'—is not a

form of relief that was available in habeas at the time of the adoption of the Constitution."  *Id.* at

1969 n.13 (citation omitted).  As the Court explained, this was a "very different . . . use of the

writ" than that at issue in *St. Cyr.  Id.* at 1981.  Because Petitioners' challenge, like that in *St.

Cyr*, is that the executive failed to make a ***discretionary*** determination that it was required to

make before removing them, it falls squarely within the scope of the writ as described in *St. Cyr*,

and is "very different" from the claim raised by Mr. Thuraissigiam.

The fact that Petitioners are not currently in physical detention does not make the writ

unavailable to them, as Respondents argue.  Resp'ts' Br. 6.  Rather, as this Court already held—

and as Respondents already conceded—Petitioners here are "in custody" "because of their final

orders of removal."  Mem. & Order (Dkt. No. 159) at 16 (citing *Devitri v. Cronen*, 290 F. Supp.

3d 86, 90 (D. Mass. 2017)).  While Ms. Calderon and Ms. de Souza were detained, the other

petitioners were also under restraint—facing the near certainty of detention once an interview

was scheduled, or the threat of being locked up if they did not comply with ICE's command to

12

leave the country.  "'Custody' is not limited to physical detention," as "[f]inal orders of removal have been held to satisfy the custody requirement" and "[a]n alien challenging the conditions of his immigration [order of supervision] also may be in custody for habeas purposes." *Devitri*, 290 F. Supp. 3d at 90 (citations omitted); *see also Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973) (holding a petitioner who must comply with the government's orders "at any time and without a moment's notice" is "in custody" for purposes of the writ of habeas corpus).  *Thuraissigiam* does not alter what constitutes "custody" for purposes of the writ of habeas corpus—indeed, the Court had no opportunity to address this question because the petitioner in *Thuraissigiam* was in physical detention (which he did not challenge).

Moreover, *Thuraissigiam*'s conclusions did not address the full scope of the Suspension Clause, but only "the writ as it existed in 1789," which is all that the petitioner argued for. *Thuraissigiam*, 140 S. Ct. at 1969.  Thus, the Court explicitly declined to "consider whether the scope of the writ as it existed in 1789 defines the boundary of the constitutional protection to which the *St. Cyr* Court referred, since the writ has never encompassed respondent's claims." *Id.* at 1969 n.12.  What is more, the Court treated Mr. Thuraissigiam as being at the "threshold of initial entry," *id.* at 1964, and not as a noncitizen who had "effected an entry" into the U.S., making him quite unlike both the noncitizen Petitioners here and their U.S. citizen spouses. *Id.* at 1982-83 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

### 3. *The Additional Cases Recited by Respondents Are Inapposite*

None of the post-*Thuraissigiam* decisions cited by Respondents support their request.

First, *D.A.M. v. Barr*, No. 20-cv-1321, 2020 WL 5525056 (D.D.C. Sept. 15, 2020) does not help Respondents.  Resp'ts' Br. 8.  There, the court rejected a Suspension Clause argument made by petitioners seeking a declaratory judgment providing them with a new opportunity to

apply for asylum after they had received negative "credible fear" determinations—much like the petitioner in *Thuraissigiam*.  *D.A.M.*, 2020 WL 5525056, at *11.  The *D.A.M.* court acknowledged that *Thuraissigiam* "leaves room for *some* constitutionally protected habeas claims outside the writ's historical core," but held that "it squarely rules out *this* claim as a candidate for Suspension Clause protection."  *Id.* at *12 (citing *Thuraissigiam*, 140 S.Ct. at 1969 n.12 (stating that "the writ has never encompassed" claims seeking an opportunity for further administrative review of credible fear claims)).  That case has no bearing on this one, in which Petitioners do not seek further administrative review of credible fear interviews, asylum determinations, or any further review of their final orders of removal.

Second, the Third Circuit's decision in *Tazu v. Attorney General*, 975 F.3d 292 (3d Cir. 2020), also does not support Respondents' jurisdictional argument.  *See* Resp'ts' Br. 8.  The *Tazu* court recognized that "[b]ecause Tazu's claims sound in due process, barring all judicial review could raise constitutional concerns."  *Tazu*, 975 F.3d at 299.  The *Tazu* court resolved that problem by noting that the Petitioner already had a petition for review pending before the Second Circuit in which he could raise these claims.  *Id.* at 300.[7]  Here, as this Court has correctly held, Petitioners could not obtain the relief they seek by filing petitions for review or by any other means.  *See* Mem. & Order (Dkt. No. 159) at 19-20 (noting a motion to reopen would not provide the review Petitioners seek because "petitioners do not challenge the validity of their orders of removal or any decision on which they are contingent" but rather "ICE's decision, on behalf of DHS, to enforce the order while they are pursuing provisional waivers"); *id.* at 18 ("it

---

[7] Further, the district court decision in *Tazu* that the Third Circuit affirmed was decided before this Court's decision on Respondents' first motion to dismiss, and Respondents brought it to this Court's attention then.  *See* Resp'ts' Notice of Suppl. Authority (Dkt. No. 226).  It did not impact this Court's ruling then and should not impact the Court's ruling now.

is too late for petitioners to file motions to reopen removal proceedings") (citing 8 U.S.C.

§ 1229a(c)(7)(C)(i)).  Thus, the *Tazu* court's reasoning that "judicial review of motions to reopen

covers the same kind of issues and offers roughly the same safeguards and scope of review as

habeas," is simply inapplicable here.  *Tazu*, 975 F.3d at 300.

Finally, to the extent Respondents also rely on the First Circuit's recent decision in

*Gicharu v. Carr*, No. 19-1864, 2020 WL 7382130 (1st Cir. Dec. 16, 2020), that reliance is also

misplaced.  *See* Resp'ts' Opp. to Mot. to Compel Discovery (Dkt. No. 575).  Mr. Gicharu sought

review of the BIA's refusal to reopen his removal proceedings in light of what he contends was

ineffective assistance of counsel, a claim that does not implicate the discretionary decision-

making at the heart of Petitioners' claims here.  *Gicharu*, 2020 WL 7382130, at *2-3.

## B.   Petitioners' Due Process and Equal Protection Claims Entitle them to the Exercise of this Court's Jurisdiction

*Thuraissigiam* also does not bar jurisdiction over Petitioners' claims because Petitioners

have rights to due process and equal protection.  Article III provides that "[t]he judicial power

shall extend to all cases, in law and equity, arising under th[e] Constitution."  U.S. Const., art.

III, § 2.  To ensure the Constitution's status as the supreme law of the land, it plainly "would

have been insufficient simply to empower, but not oblige, Congress to give federal courts

jurisdiction in these cases."  Akhil Amar, A Neo-Federalist View of Article III: Separating the

Two Tiers of Federal Jurisdiction, 65 B.U. L. Rev. 205, 250 (1985).  There is and must be

federal jurisdiction over colorable constitutional claims.

The Court in *Thuraissigiam* did not reach the Due Process Clause guarantees some level

of judicial review of removal decisions.  Its holding was based on its conclusion that Mr.

Thuraissigiam had not even "effected an entry" into the United States and was thus entitled only

to those procedural protections that Congress gave him.  *See Thuraissigiam*, 140 S. Ct. at 1981-

15

83 (quoting *Zadvydas*, 533 U.S. at 693).  The Court therefore rejected the petitioners' argument that the jurisdiction-stripping provisions of the expedited review process violated his right to due process.  *Id.* at 1981-82.  Here, by contrast, applying § 1252(g) to strip jurisdiction over Petitioners' claims would be unconstitutional under the due process clause and Article III, which require the exercise of jurisdiction to provide review of Petitioners' claims and to ensure that their removal is adequately considered in light of the purposes of the provisional waiver process.

As the Supreme Court observed in *Thuraissigiam*, "it is possible to imagine all sorts of abuses . . . that could be imposed on people in this country if the Constitution allowed Congress to deprive the courts of any jurisdiction to entertain claims," and there are "no doubt" arguments that due process "guaranteed judicial review."  *Id.* at 1975 n.21; *see also* Henry M. Hart, Jr., The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362, 1383 (1953) (noting that denying review of constitutional claims is a "total denial of any remedy" and thus "not a mere regulation of jurisdiction," but an unconstitutional denial of a substantive right); *see also Tazu*, 975 F.3d at 299 ("Because [the petitioner's] claims sound in due process, barring all judicial review could raise constitutional concerns.").  Only after reviewing the ***merits*** of his due process claim did the Supreme Court conclude that the petitioner in *Thuraissigiam¸* who had no ties to the U.S. and was apprehended within twenty-five yards of the border, had no right to additional process beyond the expedited removal statute. *Thuraissigiam*, 140 S. Ct. at 1983; *see also Reno v. American-Arab Discrimination Comm'n*, 525 U.S. 471, 488 (1999) (directly reviewing the noncitizen petitioners' claims under the First Amendment).  Because Petitioners in this case have such rights, jurisdiction over their claims is required by the Constitution.

## II. *Regents* does not Require Judgment in Favor of Respondents on Petitioners' Equal Protection Claim

16

*Regents* does not mandate a reversal of this Court's previous decision on Petitioners' equal protection claim.  It is not an intervening change in law, but a ***plurality*** decision assessing completely different facts.  There is no reason for the Court to consider the merits of Respondents' *Regents* argument now, in the middle of discovery; but if the Court chooses to consider it, it should deny Respondents' motion because *Regents* is not controlling and inapplicable.

### A.       Respondents' 12(c) Motion is Procedurally Improper

As a threshold matter, in the scheduling order Respondents proposed to the Court just five days before their filing, Respondents chose not to provide for any briefing on the merits before summary judgment.  *See* Dkt. No. 558.  Further, Respondents' motion for judgment on the pleadings is nothing more than an effort to obtain reconsideration of this Court's decision denying their first motion to dismiss Petitioners' equal protection claim over a year-and-a-half ago.  *See* May 16, 2019 Hr'g Tr. (Dkt. No. 254).  There is no provision in the Federal Rules providing for such motions, and the closest rule—Rule 59(e), governing motions to alter or amend a judgment—requires such motions be filed within twenty-eight days of the entry of judgment.  *See* Fed. R. Civ. P. 59(e).  To the extent that rule applies here, Respondents missed that deadline by a mile.  And even if the time for them to file began again on the date *Regents* was decided, Respondents still missed the window by four months.  It is inappropriate for Respondents to move on their *Regents* argument now, without permission from the Court, in the middle of discovery, and when the schedule ***Respondents proposed*** provides for merits briefing regarding summary judgment to be addressed in May.  *See* Dkt. Nos. 570, 572.

Moreover, motions for judgment on the pleadings are inappropriate after "the parties have invested substantial resources in discovery."  *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d

17

40, 46 (1st Cir. 2012). Respondents' argument to the contrary is incorrect. Resp'ts' Br. 9 n.4. It is true that, as Respondents allude, they have largely blocked meaningful discovery into Petitioners' equal protection claim. But that is hardly a reason to permit a procedurally improper reconsideration of this court's decision on Respondents' first motion to dismiss based on a plurality decision issued five months earlier. Thus, Respondents' motion is too late, and any argument based on *Regents* can be heard on summary judgement.

### B.    Petitioners' Amended Complaint Pleads an Equal Protection Violation

In any event, *Regents* does not change the fact that Petitioners have successfully pled an equal protection violation. To overcome a motion for judgment on the pleadings under Rule 12(c), the complaint must simply meet the same "plausibility" standard as for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Citibank Glob. Mkts., Inc., v. Rodríguez Santana, et al*., 573 F.3d 17, 23 (1st Cir. 2009). This Court recognized that Petitioners' Amended Complaint more than sufficiently pleads facts to overcome such a motion when it dismissed Respondents' motion to dismiss over a year-and-a-half ago. *See* May 16, 2019 Hr'g Tr. (Dkt. No. 254). The intervening *Regents* decision did not change that.

As a preliminary matter, the portion of *Regents* addressing equal protection was not issued by the majority, but a plurality of four justices.[8] It is therefore "not entitled to precedential weight," and does not mandate any action by this Court, much less reversal of its previous decision. *Rutledge v. United States*, 517 U.S. 292, 304 (1996).

But even if the plurality decision in *Regents* somehow bound this Court, its equal protection analysis simply concludes that the specific allegations in *that* case were not adequate

---

[8] Four other justices concurred in the portion of the judgment rejecting the equal protection claim without joining that portion of the opinion or providing any reasoning. *Regents*, 140 S. Ct. at 1919 n.1 (Thomas, J., concurring in part); *id*. at 1936 (Kavanaugh, J., concurring in part).

to state a plausible claim that animus motivated the decision to rescind the Deferred Action for Childhood Arrivals (DACA). In *Regents*, the Court's plurality explained that the pre-and post-election statements by President Trump described in the complaint were insufficient to allege that the challenged policy—the rescission of DACA—was motivated by racial animus. *Regents*, 140 S. Ct. at 1915-16. The plurality explained, first, that the relevant actors primarily responsible for rescinding DACA were not President Trump, but the Acting Secretary of Homeland Security and the Attorney General. *Id.* at 1916. Thus, the petitioners' allegations of racially biased statements by the President were not adequately tied to the challenged policy. *Id.* Second, the plurality explained that the statements from President Trump were "remote in time and made in unrelated contexts." *Id.* at 1916. While most of them were made in 2015 and 2016, DACA was not rescinded until September 2017. *Id.* at 1903, 1916; *Regents v. Dep't of Homeland Sec.*, 298 F. Supp. 3d 1304, 1314 (N.D. Cal. 2018). They were also not otherwise tied to the racially motivated campaign promises in the complaint. *Regents*, 140 S. Ct. at 1916.

*Regents* has no bearing on the statements identified in the Amended Complaint here, which have a direct causal connection with Executive Order 13768. First, Respondents make no argument that President Trump was not the relevant actor behind the Executive Order. Thus, here, unlike in *Regents*, his campaign statements *do* bear on the motivations for the challenged policy. Second, the campaign statements described in Petitioners' Amended Complaint were not "remote in time and made in unrelated contexts," *see id.* at 1916; President Trump himself connected those statements—many of which were made within a year of the issuance of Executive Order 13768—to the Executive Order when, immediately after coming into office, he described the Executive Order as "part of an immigration reform we outlined during the campaign." *See* President Donald Trump, Remarks at the Department of Homeland Security

19

(Jan. 25, 2017), https://www.govinfo.gov/content/pkg/DCPD-201700513/html/DCPD-201700513.htm; *see also New York v. Dep't of Homeland Sec.*, No. 19-CV-7777, 2020 WL 4347264, at *7 (S.D.N.Y. July 29, 2020) (distinguishing *Regents* and finding statements made in January 2018, May 2018, and July 2019 to be proximate in time and illuminating to the motivation behind a rule issued in August 2019).

Respondents argue that the President's statements of animus must specifically refer to aliens with final orders or Executive Order 13768 and that Petitioners must plead facts suggesting President Trump was personally involved in the decision to arrest class members. Resp'ts' Br. 12. This is incorrect. Petitioners allege that the unlawful arrest, detention, and removal of class members resulted from President Trump's racially motivated Executive Order; not that he personally targeted individual class members. Am. Compl. (Dkt No. 27) ¶¶ 110-11. It is hornbook law that an equal protection claim can be based on "not only the 'contemporary statements by members of the decisionmaking body' [here, President Trump and his Administration] but also more broadly 'the historical background of the decision' and 'the specific sequence of events leading up to the challenged decision.'" *Centro Presente v. U.S. Dep't. of Homeland Sec.*, 332 F. Supp. 3d 393, 414 (D. Mass. 2018) (quoting *Arlington Heights*, 429 U.S. at 267)).

Thus, *Regents* does not change this Court's decision that Petitioners have pled facts sufficient to create a triable issue whether the historical background and sequence of events leading to the arrest of class members were motivated by racial animus. Accordingly, this Court should deny Respondents' motion to dismiss or for judgment on the pleadings.

Respectfully submitted this 23rd day of December, 2020.

20

*Counsel for the Petitioners*

/s/  *Colleen McCullough*

Matthew R. Segal (BBO # 654489)            Kevin S. Prussia (BBO # 666813)
Adriana Lafaille (BBO # 680210)            Michaela P. Sewall (BBO # 683182)
AMERICAN CIVIL LIBERTIES UNION             Jonathan A. Cox (BBO # 687810)
FOUNDATION OF MASSACHUSETTS, INC.          Allyson Slater (BBO # 704545)
211 Congress Street                        Colleen M. McCullough (BBO # 696455)
Boston, MA 02110                           Matthew W. Costello (BBO # 696384)
(617) 482-3170                             Christina Luo (BBO # 705590)
                                           WILMER CUTLER PICKERING
                                             HALE AND DORR LLP
Kathleen M. Gillespie (BBO # 661315)       60 State Street
Attorney at Law                            Boston, MA 02109
6 White Pine Lane                          Telephone: (617) 526-6000
Lexington, MA 02421                        Facsimile: (617) 526-5000
(339) 970-9283                             kevin.prussia@wilmerhale.com
                                           michaela.sewall@wilmerhale.com
                                           jonathan.cox@wilmerhale.com
                                           allyson.slater@wilmerhale.com
                                           colleen.mccullough@wilmerhale.com
                                           matthew.costello@wilmerhale.com
                                           christina.luo@wilmerhale.com