**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, | ) ) ) | |
| Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs-Petitioners, | ) ) ) | No. 1:18-cv-10225-MLW |
| v. | ) ) ) | |
| PETE GAYNOR, *et al.*, | ) ) ) | |
| Defendants-Respondents. | ) ) ) | |

**PETITIONERS' REPLY IN SUPPORT OF THEIR**
**<u>MOTION TO COMPEL DISCOVERY</u>**

**INTRODUCTION**

Respondents' opposition confirms that the Court should grant Petitioners' motion to compel the production of three limited categories of documents: (1) USCIS documents regarding policies and practices for the scheduling of I-130 interviews; (2) Department of Homeland Security (DHS) records regarding the motivations behind Executive Order 13768; and (3) documents from ICE and USCIS's public affairs offices regarding arrests at USCIS offices.

*First*, Respondents' opposition is premised on an improperly narrow view of the scope of discovery under Rule 26(b)(1)—essentially that Petitioners cannot obtain information about any facts not explicitly plead in their complaint.  That is simply not the law.  Rather, the well-accepted rule in this District and others across the country is that Petitioners are entitled to discovery of any nonprivileged matter relevant to their "claim."  Fed. R. Civ. P. 26(b)(1).  Petitioners' discovery requests easily satisfy that standard.  That the Amended Complaint focused on one subagency of DHS (*i.e.*, ICE), does not absolve DHS of its obligation to provide full discovery that is relevant to Petitioners' claims.  While Petitioners now know more about USCIS's involvement in facilitating arrests at its offices than at the time the complaint was filed, Petitioners were not required to include in their complaint every aspect of DHS's unlawful conduct in order to pursue the specific and proportional discovery sought here.

*Second*, and more troublingly, Respondents' position is directly contrary to the parties' agreement that Respondents would not refuse to provide discovery "from or relating to USCIS on the basis that USCIS is not a named party."  Oct. 3, 2018 Joint Status Report (Dkt. No. 162) at ¶ 2(a) (emphasis added).  Respondents agreed to this after the Court directed the Parties to confer about whether the Amended Complaint would need to be amended further to add USCIS. Order (Dkt. No. 152); *see also* Sept. 12, 2018 Joint Report (Dkt. No. 158).  In light of these

1

representations, Petitioners agreed that they "[would] not seek leave to amend their complaint to add USCIS as a party." Oct. 3, 2018 Joint Status Report (Dkt. No. 162) at ¶ 2(a). Yet Respondents now point to "the conspicuous absence of USCIS as a named party" (Opp'n 6) as a reason that Petitioners should be denied the USCIS discovery they seek.

*Third,* Respondents' attempt to portray Petitioners' requests as expansive are nothing but a distraction from their refusal to produce *any* documents in particular categories at issue here. Respondents contend that Petitioners seek "unfettered discovery into ICE, USCIS, *and* DHS Headquarters," that would require them to "search for and produce nearly every document or communication imaginable bearing any tenuous relation to the discovery demanded." Opp'n 11-12 (emphasis in original). But Petitioners limited each of the three categories of documents at issue to a *particular* DHS office, *specific* subject matter, and, where applicable, a *defined* time period, and have attempted to confer with Respondents about these requests. Reasonably interpreted, Petitioners' requests do not impose an undue burden on Respondents.

*Finally*, Respondents' pending, second motion to dismiss (Dkt. No. 560) does not moot Petitioners' request, as Respondents' motion is without merit.

## ARGUMENT

### I.    Petitioners' Requests Are Proper

#### A.  Respondents Misinterpret Rule 26(b)(1)

Petitioners' requests are permitted under Rule 26(b)(1), which allows for proportional discovery into "any nonprivileged matter . . . *relevant to any party's claim or defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added). In opposing Petitioners' motion, Respondents characterize the 2015 amendments to the Federal Rules as imposing "heightened standards," Opp'n 4, requiring discovery to be "narrowly tailored [to] the matters alleged in [Petitioners'] amended

complaint." *Id.* at 10.  That is incorrect.[1]   The 2015 amendment removed the language that

authorized discovery into the "subject matter" of the case upon a showing of "good cause."  As

Advisory Committee notes to the 2015 amendment make clear, this removal was not designed to

heighten the bar to discovery or to make discovery more difficult to obtain.  *See* Fed. R. Civ. P.

26(b) advisory committee's note to 2015 amendment.  Rather, as the Committee put it, the

removed language was "rarely invoked," and "[p]roportional discovery relevant to any party's

claim or defense suffices, given a proper understanding of what is relevant to a claim or

defense."  *Id.*  Accordingly, contrary to Respondents' argument and under the plain text of the

rule, the standard for discovery is relevance ***to the claims***, not to what is "narrowly tailored" to

the text of the pleadings.  Opp'n 10; *see also Thompson v. Dep't of Hous. & Urban Dev.*, 199

F.R.D. 168, 172 (D. Md. 2001) ("[I]t would be a mistake to argue that no fact may be discovered

unless it directly correlates with a factual allegation in the complaint or answer."); *Kennicott v.*

*Sandia Corp.*, 327 F.R.D. 454, 471-74 (D.N.M. 2018) (holding discovery about pregnancy

discrimination and sexual harassment was permissible and within the scope of plaintiffs'

complaint alleging gender discrimination in pay and performance evaluations).

---

[1] None of the cases cited by Respondents support their reformulation of Rule 26(b)(1).  In
*Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810 (W.D. Pa. 2016), the 2016
decision simply rejected a recitation of the 2000 version of Rule 26.  209 F. Supp. 3d at 822-23.
But it explained that after the 2015 amendments, "the meaning and import of Rule 26(b)(1)
remains the same, i.e., the court and parties have obligations to analyze whether the discovery
sought is relevant to a party's claims or defenses and proportional to the needs of the case." *Id.*
at 822.  And in *FERC v. Silkman*, No. 16-00205, 2017 WL 6597510 (D. Me. Dec. 26, 2017),
*Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 13-04057, 2016 WL 146574 (N.D. Cal. Jan. 13,
2016), and *Waste Mgmt. of La., LLC v. River Birch, Inc.*, No. 11-2405, 2017 WL 2271982 (E.D.
La. May 24, 2017), the courts denied discovery into wholly ***unrelated*** issues, such as conduct by
third parties (*Silkman*), compounds not at issue in a patent case (*Gilead*), and a different
anticompetitive scheme than that alleged (*Waste Mgmt.*)—i.e., issues that were not relevant to
the parties' ***claims***.  *Cf. Gilead Scis.*, 2016 WL 146574, at *2 (comparing motion to compel to a
request that "GM [] produce discovery on Buicks and Chevys in a patent case about Cadillacs
simply because all three happen to be cars").

**B.  USCIS Discovery is Relevant and Not Unduly Burdensome**

Respondents refuse to provide discovery responsive to Petitioners' request[2] on the basis that: (1) the complaint "contains no allegation of 'coordination' between USCIS and ICE," Opp'n 6, and (2) Respondents have supposedly "already provid[ed]" discovery regarding such coordination.  Respondents are wrong on both counts.  *Id.* at 10, 13-14.  Not only that, Respondents' refusal to produce USCIS documents on the basis that USCIS is not a named party is directly contrary to Respondents' representations to Petitioners and this Court.

*First*, although the Amended Complaint does not use the word "coordination," that is not necessary for the sought-after documents to be relevant to Petitioners' "claims"—which is all that Rule 26 requires.[3]  Petitioners' "claims" arise out of Respondents' unlawful conduct in connection with USCIS's provisional waiver process.  While not specified by name in the Amended Complaint, there is no dispute that USCIS has and continues to play an essential role in the provisional waiver process.  A key part of the Amended Complaint is that the practice of detaining Petitioners while they were in the process of completing a required step in the provisional waiver process was and is unlawful.  For example, on at least one occasion, USCIS permitted ICE to unlawfully detain a noncitizen spouse in the interview room itself.  *See* Am. Compl. (Dkt. No. 27) at ¶¶ 46-49; *see also id.* ¶¶ 65-66.  The sought-after discovery could show to what extent USCIS's I-130 interview scheduling was influenced by Respondents' efforts to

---

[2] Petitioners seek "[d]ocuments and communications reflecting the USCIS policies and practices that influenced or influence whether and when a class member would be scheduled for an I-130 interview from August 29, 2016 to the present."  Br. 7-10.

[3] This Court has already ruled that Petitioners can seek discovery from USCIS so long as it is relevant "to the claims" in the Amended Complaint.  Aug. 28, 2019 Order (Dkt. No. 366) at ¶ 3(b).

effectively cut off the availability of the waiver process.  *See* Br. 7-9.  Thus, the discovery from

USCIS that Petitioners seek is directly related to their claims.[4]

      *Second*, the sought-after discovery is not burdensome.  What Respondents have provided

thus far reflects communications related to arrests at USCIS offices.  The documents provided

to-date do not show USCIS's I-130 scheduling *policies* that impact class members, and thus do

not show critical pieces of information like the policies and practices that impacted and

influenced the decision to bring class members in for interviews.  Providing records of USCIS's

scheduling policies and practices poses no unusual  burden, as Petitioners only ask for policy

documents that could have impacted a particular group of people (class members) during a finite

time period.[5]

      *Third*, and finally, Respondents' position in refusing to provide Petitioners' sought-after

discovery is in direct violation of the parties' agreement that Respondents would not object to

---

[4] Respondents' efforts to cast Petitioners' requests as a "fishing expedition," Opp'n 8, are belied by the discovery taken in this case, which Respondents largely ignore.  *See* Br. 8-9 (describing discovery to-date).  Respondents quote Director Riordan's testimony regarding USCIS communication and coordination with ICE in an effort to show that USCIS's I-130 interview scheduling policies were not intended to further any unlawful goals.  Opp'n 15. However, Respondents only further Petitioners' point that Petitioners need access to the underlying policies and procedures in order to properly assess the reasons USCIS scheduled I-130 interviews with class members, and whether those reasons were connected to ICE's arrests. For example, in their Reply in Support of Respondents' Motion for Protective Order, Respondents state that "class members' Form I-130s are subject to a higher standard of review, which supports the need for an in-person interview."  Resp'ts' Reply in Supp. of Mot. for Protective Order (Dkt. No. 556) at 10-11.  This is the first mention of such a "higher standard of review" for all class members and is precisely the kind of policy and practice Petitioners seek through the USCIS discovery requests at issue.

[5] Any argument that Petitioners have failed to meaningfully narrow the scope of the requests to USCIS is unavailing and ignores the substantive meet and confer discussions held over the course of several months.  Further, Respondents' citation to the standard definitions included in Petitioners' requests is a red herring; those definitions have never been an issue for Respondents in prior discussions.  Respondents are simply not willing to produce documents that do not fall within their overly narrow conception of what is directly connected to arrests at USCIS.

discovery on the basis that USCIS is not a named party.  *See* Oct. 3, 2018 Joint Report (Dkt. No. 162) at ¶ 2(a); *see also* Sept. 12, 2018 Joint Status Report (Dkt. No. 158) at ¶3(a).  Respondents point to "the conspicuous absence of USCIS as a named party," stating that this "entirely undermines" Petitioners' effort to obtain the documents Petitioners seek.  Opp'n 5.  But Petitioners' so-called "failure" to name USCIS as a party was in fact the result of Respondents' agreement that they would not object to discovery on the basis that USCIS is not a named party. Petitioners relied upon Respondents' representations and Respondents are now doing precisely what they agreed they would not.  Opp'n 13-16; *see also* Resp'ts' Reply in Supp. of Mot. for Protective Order (Dkt. No. 556) at 8-9.

### C.  Executive Order 13768 Discovery is Relevant and Not Burdensome

Respondents also refuse to provide the requested discovery[6] on the basis that:  (1) there is an insufficient nexus between Executive Order 13768 and the actions of ICE ERO Boston, and that "decision makers at ICE ERO Boston" are "the ***only*** relevant actors to [Petitioners'] equal protection claim," Opp'n 9 (emphasis added); and (2) they are "already providing all of the discovery . . . relevant and proportional" to Petitioners' animus claims.  *Id.* at 16-17.

As to the first point, Respondents ignore that Petitioners allege a clear nexus between the Trump Administration's animus-driven statements and ICE ERO Boston's actions in the Amended Complaint, and that this Court recognized the relevance of this discovery when it denied Respondents' Motion to Dismiss Petitioners' Equal Protection claim.  This Court explained that "petitioners must only plausibly allege that discrimination was one motivating

---

[6] Petitioners seek documents and communications in the possession of the Office of the Secretary of Homeland Security, including but not limited to the Secretary, Deputy Secretary, DHS Chief of Staff, and Executive, from January 20, 2017 to February 20, 2017 regarding the purpose for, and motivations behind Executive Order 13768 and Secretary Kelly's February 20, 2017 memorandum implementing that Executive Order.  Br. 10-14.

factor" behind "Executive Order 13768 and the [DHS's] removal policies following from that order." May 16, 2019 Hr'g Tr. 8:7-12. This Court further explained that "Petitioners' allegations concerning President Donald Trump's statements and policies allege a plausible claim that racial animus was one reason for the Executive Order." *Id.* at 9:3-5. Thus, this Court has already recognized that the alleged nexus between the motivations behind Executive Order 13768 and the enforcement actions at issue here give rise to an equal protection claim.

Further, Respondents arguments are directly contradicted by their positions taken throughout this case. Nearly all of the discovery thus far has made clear that the "basis" for ICE Boston's actions was Executive Order 13768. For example, in connection with Lilian Calderon's detention, ICE Deputy Field Office Director Todd Lyons admitted that she was detained "in accordance with Executive Order 13768." Lyons Aff. (Dkt. No. 19) ¶ 5. Likewise, Respondents have admitted in discovery that USCIS and ICE "coordinated efforts to adhere to DHS Secretary Kelly's February 2017 policy memorandum *Enforcement of the Immigration Laws to Serve the National Interest*," by, among other things, "routinely inform[ing] ICE officials of the[] scheduled appearance at the relevant USCIS Office [of aliens with final orders of removal]" so that ICE could effectuate their arrest. Ex. A (ICE's Objs. and Resps. to Pet'rs' First Set of Interrogs.) at 6, 11. Thus, Respondents have acknowledged the direct connection between the Executive Order and the actions taken by USCIS and Boston ERO.

Respondents are also incorrect that Petitioners are required to plead that "Secretary Kelly or his immediate staff" was involved in the decision to arrest and detain class members to receive relevant discovery into the Executive Order. Opp'n 9. The Executive Order and the implementing Kelly memorandum feature prominently in the Amended Complaint and Petitioners allege that the unlawful arrest, detention, and removal of class members ***resulted***

*from* President Trump's racially motivated Executive Order and Secretary Kelly's implementing memorandum.  Am. Compl. (Dkt No. 27) ¶¶ 110-11.  As noted above, Respondents have acknowledged that ICE ERO took the actions named in the complaint in an effort to comply with Secretary Kelly's memorandum, which implemented the Executive Order.  Ex. X (ICE's Objs. and Resps. to Pet'rs' First Set of Interrogs.) at 6, 11.  And it is hornbook law that an equal protection claim can be based on "not only the 'contemporary statements by members of the decisionmaking body' [here, President Trump and his Administration] but also more broadly 'the historical background of the decision' and 'the specific sequence of events leading up to the challenged decision.'"  *Centro Presente v. U.S. Dep't. of Homeland Sec.*, 332 F. Supp. 3d 393, 414 (D. Mass. 2018) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977)).[7]

Respondents' argument that they are "already providing all of the discovery . . . relevant and proportional" to Petitioners' animus claims fares no better.  Opp'n 16-17.  Despite its clear relevance—and the fact that Respondents continue to dispute the truth of Petitioners' allegation of animus—Respondents have provided *no* documents related to the formulation, drafting, and implementation of the Executive Order.  Respondents' boilerplate assertion of burden is similarly insufficient.  *See, e.g.*, *Green v. Cosby*, 152 F. Supp. 3d 31, 37-38 (D. Mass. 2015); Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment (noting the 2015 amendment was not "intended to permit the opposing party to refuse discovery simply by

---

[7] Moreover, Respondents' argument that *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) involved "nearly identical allegations of animus" is incorrect. Opp'n 3.  *Regents* is a *plurality* decision assessing completely different facts.  And, for the reasons outlined in Petitioners' Response in Opposition to Respondents' Motion to Dismiss (Dkt. No. 576), at 19-20, *Regents* is inapposite.

making a boilerplate objection that it is not proportional").  Having made no showing of burden, this Court should compel Respondents to provide Petitioners with this category of documents.

### D.  Discovery Related to Documents from the ICE Office of Public Affairs and USCIS External Affairs Directorate is Relevant and Not Burdensome

Respondents refuse to provide Petitioners' requested discovery[8] on the basis that: (1) the discovery sought is not relevant because they are already providing "all relevant and proportional" discovery into public affairs' involvement and (2) that Petitioners have not yet been able to show that USCIS wished to keep its role in the alleged unlawful scheme out of the public view.  Opp'n 17-19.

With respect to the first point, Respondents' recitation of the discovery already being provided does not help their cause.  Their blanket assertion that the Public Affairs documents sought "bear [] absolutely no impact upon any policy decision or action taken by ICE ERO Boston" is not evidence and is utterly without support.  *Id.* at 18.  Without discovery, Petitioners cannot verify that the Public Affairs documents and communications failed to impact any policy decisions of ICE ERO Boston.

Regarding the second point, Respondents' suggestion that Petitioners "cherry-pick[ed] USCIS deposition testimony" to demonstrate the relevance of public affairs documents is not only incorrect, but also inconsequential.  *Id.*  There is no requirement that Petitioners must hinge their request for further relevant documents on the presence of previous discovery.  *See Aronstein v. Mass. Mutual Life Ins. Co., No. 15-12864-MGM, 2017 WL 2818993,* at *3-4 (D. Mass. June 29, 2017) (granting the plaintiff additional discovery where similar documents

---

[8] Petitioners seek documents and communications in the custody of the local or headquarters-based ICE Office of Public Affairs or the USCIS External Affairs Directorate discussing arrests at USCIS offices in the jurisdiction of ICE Boston ERO.  Br. 15-17.

produced to-date were shown to be relevant).  Rather, such discovery simply bolsters the

relevance of such documents that are directly related to Petitioners' claims about the

coordination between USCIS and ICE.  Accordingly, discovery on this topic is warranted.

Respondents once again fail to make any particularized showing of burden with respect

to producing the public affairs documents.  Respondents point to vague claims that Petitioners

are "unduly overbroad in their terms" and make boilerplate objections that such production

would be a burden without specifying why.  Opp'n 19.  For the same reasons as above, such

undefined objections fail to demonstrate why production of these documents would be a burden.

## II.     Respondents' Pending Motion to Dismiss and for Judgment on the Pleadings Does Not Moot Petitioners' Discovery

Petitioners' discovery requests are not mooted by Respondents' pending motion because,

as Petitioners detailed in their Opposition to Respondents' Motion to Dismiss or for Judgment on

the Pleadings (Dkt. No. 576), Respondents are incorrect that either decision—*Dep't of Homeland

Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020) or *Dep't of Homeland Sec. v. Regents of the Univ.

of California*, 140 S. Ct. 1891 (2020)—requires dismissal.  Pet'rs' Opp'n to Resp'ts' Mot. to

Dismiss (Dkt. No. 576).

## CONCLUSION

Petitioners respectfully request that this Court grant their motion to compel to allow a full

and fair opportunity for discovery into their allegations of unlawful conduct.

Respectfully submitted this 12th day of January, 2021.

*Counsel for the Petitioners*

/s/  *Allyson Slater*

| | |
|---|---|
| Matthew R. Segal (BBO # 654489) | Kevin S. Prussia (BBO # 666813) |
| Adriana Lafaille (BBO # 680210) | Michaela P. Sewall (BBO # 683182) |
| AMERICAN CIVIL LIBERTIES UNION | Jonathan A. Cox (BBO # 687810) |
| FOUNDATION OF MASSACHUSETTS, INC. | Allyson Slater (BBO # 704545) |
| 211 Congress Street | Colleen M. McCullough (BBO # 696455) |
| Boston, MA 02110 | Matthew W. Costello (BBO # 696384) |
| (617) 482-3170 | Christina Luo (BBO # 705590) |
| | WILMER CUTLER PICKERING |
| Kathleen M. Gillespie (BBO # 661315) |   HALE AND DORR LLP |
| Attorney at Law | 60 State Street |
| 6 White Pine Lane | Boston, MA 02109 |
| Lexington, MA 02421 | Telephone: (617) 526-6000 |
| (339) 970-9283 | Facsimile: (617) 526-5000 |
| | kevin.prussia@wilmerhale.com |
| | michaela.sewall@wilmerhale.com |
| | jonathan.cox@wilmerhale.com |
| | allyson.slater@wilmerhale.com |
| | colleen.mccullough@wilmerhale.com |
| | matthew.costello@wilmerhale.com |
| | christina.luo@wilmerhale.com |

11