# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, | ) ) ) ) | |
| Individually and on behalf of all others similarly situated, | ) ) ) ) | No. 1:18-cv-10225-MLW |
| Plaintiffs-Petitioners, | ) ) | |
| v. | ) ) | |
| PETE GAYNOR, Acting Secretary of Homeland Security, *et al.*, | ) ) ) | |
| Defendants-Respondents. | ) ) | |

## RESPONDENTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS AND RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

i

## INTRODUCTION

This Court should dismiss this case in its entirety. This Court correctly held that 8 U.S.C. § 1252(g), if allowed to operate, bars Petitioners' claims to the extent they seek to prevent ICE from executing their removal orders. ECF No. 159 at 19-20. Therefore, to establish this Court's jurisdiction, Petitioners must demonstrate either that: (1) § 1252(g) violates the Suspension Clause as it existed in 1789 and as the Supreme Court interpreted it in *D.H.S. v. Thuraissigiam*, 140 S. Ct. 1959, 1970 (2020), (2) the Suspension Clause provides more relief *today* than it did at its inception and that this broader habeas right includes Petitioners' requested relief, or (3) § 1252(g) violates some other provision of the Constitution as applied to Petitioners' claims[1].

Regarding the first point, Petitioners' erroneously attempt to distinguish *Thuraissigiam*, and cases applying it, by pointing out their challenge to the government's action is substantively different from Thuraissigiam's. This is a distinction without a difference and is unsupported by *Thuraissigiam's* analysis, which held that whether the Suspension Clause applies depends on whether the *relief* sought was traditionally available in habeas. *Thuraissigiam*, 140 S. Ct. at 1961, 1971. It did not hold, as Petitioners suggest, that application of the clause depends on the specific government action challenged such that claims challenging removability and claims challenging the government's discretionary limits should be viewed differently for purposes of a Suspension Clause analysis. *See id*. Therefore, Petitioners' request to remain in the United States, even

---

[1] Petitioners' opposition is not clear on the first two points. It appears that they argue that the differences between their challenges to ICE's decision to execute their removal orders and the challenge in *Thuraissigiam* does not affect the Court's finding of subject-matter jurisdiction. ECF No. 576 at 11-13. Then they argue that even if *Thuraissigiam* does apply, its holding is limited to the writ as it existed in 1789. Therefore, it appears they argue that the writ of habeas today includes a broader range of relief, including their request that this Court interfere with ICE's execution of their removal order, and that is supported by the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). Both of these arguments are without merit.

temporarily, brings it outside the scope of the Suspension Clause as interpreted by the Supreme Court in *Thuraissigiam*.

Petitioners also fail to establish that the writ of habeas encompasses more relief today, including relief interfering with the execution of a removal order, that would somehow insulate their claims from § 1252(g)'s jurisdictional bar. Their reliance on *St. Cyr*, to support their argument that a broader habeas right exists ignores that *Thuraissigiam* **specifically denied** that *St. Cyr* indicated that the Suspension Clause protects more than simple release. Rather, in rejecting nearly the same argument Petitioners make here, the Supreme Court explained that *St. Cyr* is a statutory interpretation case that only stands for the proposition that aliens can use habeas to challenge all manner of executive detention[2] — not that aliens can use habeas to seek to remain in the United States.

Finally, Petitioners fail to apply the legal framework to their claim that § 1252(g) violates the Due Process or Equal Protection Clause, let alone establish that claim. First, Petitioners are not entitled to any more due process than is prescribed by Congress. Second, Petitioners cannot establish a legitimate expectation of entitlement to bring their claims in this Court because the authorizing statute of the provisional waiver regulations denies that any court has jurisdiction to review **any action** regarding the waiver. 8 U.S.C. § 1182(a)(9)(B)(i). This is fatal to their due process claim that relies on the text and purpose of the provisional waiver regulations to establish a liberty interest.

---

[2] There are many claims that aliens can bring that challenge their detention, but not ICE's ability to execute their removal order. For example, if Petitioners' detention claims relating to alleged Post Order Custody Review violations *did not seek* temporary or permanent stays of removal as a remedy, but instead merely sought release from custody, the writ of habeas would encompass these claims. However, *all* of Petitioners claims seek to remain in the United States either temporarily or permanently, which is relief not available in habeas as explained by *Thuraissigiam*. 140 S. Ct. at 1961, 1971.

Finally, this Court should enter judgement in favor of Respondents on Petitioners' equal protection claim. Petitioners have not alleged that President Trump was so involved in ICE Boston's individual enforcement decisions such that his statements are evidence that these enforcement actions were motivated by racial bias. And, even if he were a relevant actor, both *DHS v. Regents of Univ. of Cal.,* 140 S. Ct. 181 (2020)*,* and the Ninth Circuit's decision in *Ramos v. Wolf,* 975 F.3d 872, 898 (9th Cir. 2020), illustrate that the statements pled in Petitioners' complaint are too remote in time and unrelated to Executive Order 16738 to support an equal protection claim. Accordingly, this Court should dismiss Petitioners' entire complaint. Alternatively, it should enter judgment in favor of Respondents on Petitioners' equal protection claim.

## **ARGUMENT**

### I.   **The Suspension Clause Does Not Insulate Petitioners' Claims from 8 U.S.C. § 1252(g)'s Jurisdictional Limitation.**

Petitioners' argument that § 1252(g) violates the Suspension Clause as applied to Petitioners is wrong and based on a misinterpretation of the analysis in *Thuraissigiam*. First, Petitioners incorrectly argue that *Thuraissigiam* created a dichotomy between "removability challenges" and challenges to DHS's "failure to exercise their discretion" and that only the former fall outside the scope of the Suspension Clause. ECF No. 576 at 9. *Thuraissigiam* and subsequent cases, including the First Circuit, have *not* recognized such a dichotomy.

Likewise, Petitioners fail to demonstrate that the Suspension Clause *today* guarantees a broader right to habeas, beyond simple release. Petitioners ignore the context and scope of *St. Cyr* and *Accardi* despite *Thuraissigiam's* explanation of these cases' limitations.

### A.  **The Suspension Clause Does Not Apply to Petitioners' Claims Because They Seek Relief Beyond Release.**

Petitioners' opposition erroneously distinguishes their case from *Thuraissigiam* by focusing on the form of the claim rather than the relief sought. They argue that because they challenge the government's failure to exercise its discretion, as opposed to the "government's weighing of the evidence or factors in their individual cases"[3] the Suspension Clause applies. *Thuraissigiam* does not support such a distinction.

In *Thuraissigiam*, the Supreme Court analyzed whether § 1252(e)(2)'s application violated the Suspension Clause or Due Process Clause. Contrary to Petitioners' argument, the Court did not focus on the form of the plaintiff's challenge or indeed even his allegations. Rather, the Court's analysis began and ended with the *relief* the plaintiff sought. The Supreme Court explained that "the Clause protects the writ as it existed in 1789 when the Constitution was adopted" and that writ traditionally provided a means to *seek release from unlawful detention.*" *Thuraissigiam*, 140 S. Ct. at 1961. The Court held that because "Respondent does not seek release from custody" but rather to remain in the United States while he seeks asylum, the Suspension Clause does not protect his claims. *Id.* at 1962.

In Part II-B, where the Court determined that Clause does not insulate the plaintiff's claims, the Court's analysis entirely focuses on whether the **relief** sought by the plaintiff was traditional habeas relief protected by the Suspension Clause. *Id.* at 1970-71. Just as in *Munaf v. Geren,* 533 U.S. 674, 692 (2008), Thuraissigiam's request for relief beyond "simple release" and the opportunity to remain lawfully in the United States doomed his Suspension Clause argument. *Id.*

---

[3] Respondents dispute this characterization of Petitioners' claim. Petitioners *are* seeking that ICE reweigh the factors it uses to determine whether to execute a removal order and the facts in individual Petitioners' cases. This is illustrated by Petitioners' opposition to the removal of individuals even when ICE has considered a class members' pursuit of a provisional waiver. *See* ECF Nos. 382, 466. Therefore, regardless of Petitioners' characterization of their claims, they clearly seek to dictate ICE's discretion — not merely require its exercise.

at 1971 (citing *Castro v. U.S. Dept. of Homeland Security,* 835 F.3d 422, 450-51 (3d Cir. 2016)

("**That prayer for relief** . . . dooms the merits of their Suspension Clause argument.") (emphasis

added)). The Court did not mention any of the particulars of Thuraissigiam's claim or the substance

of his allegations in this analysis. *See id.* In fact, the Supreme Court explained that cases illustrating

a broad range of challenges brought in habeas did not support his argument "because respondent

seeks to use habeas to obtain something far different from simple release." *Id.* at 1972 (rejecting

plaintiff's argument that cases ordering release for various reasons, including violations of civil

detention rules, illustrated a broader habeas right). The Supreme Court's holding could not be

clearer: the Suspension Clause does not protect claims that seek relief beyond simple release,

*particularly those claims that seek to remain in the United States. Id.*

Petitioners attempt to muddy this simple holding by drawing a distinction between the

substance of Thurassigiam's allegation and their own. This dichotomy is contrary to the foundation

of the Supreme Court's opinion. Whether an alien is seeking to remain in the United States, while

he seeks to apply for asylum (claiming DHS violated its own procedures) or whether a class

member seeks to remain in the United States until DHS considers his pursuit of a provisional

waiver[4] (claiming the law requires DHS to do so) is immaterial. In both instances, the alien seeks

more than simple release by requesting to remain in the United States and in both instances, the

Suspension Clause does not provide jurisdiction.

---

[4] Petitioners have sought a stay of removal in connection to *all* of their claims – not just those related to the provisional unlawful presence waiver. The complaint seeks a stay of removal until DHS completes a variety of tasks such as consideration of their pursuit of a provisional waiver, a proper post order custody review under 8 C.F.R. § 241.4, a bond hearing, and a determination of dangerousness and flight risk. *See generally* ECF No. 27. Therefore, as stated in Respondents' opening brief (ECF No. 566 at 2, 14), Respondents move to dismiss the entirety of Petitioners' complaint. Petitioners' allegation that Respondents have not moved to dismiss their detention related claims is incorrect. *See* ECF No. 576 at 8 n.4.

Several circuits, including the First Circuit, have confirmed *Thuraissigiam's* applicability to other claims seeking more than simple release. In *Gicharu* the First Circuit determined that "the Suspension Clause is not implicated where, as here, the relief sought by the habeas petitioner is 'the opportunity to remain lawfully in the United States' rather than the more traditional remedy of 'simple release' from 'unlawful executive detention.'" *Gicharu,* 2020 WL 7382130 at *5 (citing *Thuraissigiam,* 140 S. Ct. at 1970-71). Petitioners attempt to distinguish this case by similarly arguing a dichotomy exists between claims challenging removal and claims challenging "the improper exercise of — or refusal to exercise — official discretion." ECF No. 576 at 9. However, this is not a distinction that appears anywhere in the Suspension Clause analysis *in Thuraissigiam, Girachu,* or other cases interpreting *Thuraissigiam's* applicability. *See Gicharu,* 2020 WL 7382130, at *5; *Huerta-Jimenez v. Wolf,* 830 Fed.Appx. 857 (9th Cir. 2020). The First Circuit, just like the Supreme Court, did not rely on the substance of the claim to determine that the Suspension Clause was inapplicable. Rather, it only analyzed whether the alien sought relief beyond "simple release from unlawful executive detention." *Gicharu,* 2020 WL 7382130, at *5. This analysis is binding on this Court.

The Third Circuit in *Tazu v. Att'y General,* 975 F.3d 292 (3d Cir. 2020), agreed. The *Tazu* court analyzed whether an alien had a right to be heard on his claims including that ICE had violated the provisional waiver regulations by attempting to execute his removal order. The Third Circuit held that § 1252 barred Tazu's claim and, because he sought more than simple release, the Suspension Clause did not protect his claim. *Id.* at 300. Once again, Petitioners attempt to distinguish this case by noting that Tazu had a pending petition for review where "he could raise these claims." ECF No. 576 at 14. This argument is problematic for two reasons. First, like in *Gicharu,* the *Tazu* court did not consider this fact in determining whether the Suspension Clause

insulated the alien's claims from § 1252. Although the court in *Tazu* opined about the scope of review in both habeas and petitions for review, their short Suspension Clause analysis focused only on the first prong of the question: whether the relief plaintiffs seek is available through a writ of habeas corpus. The court answered no, because "Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid – release into "the cabin of a plane." *Id.* at 330 (quoting *Thuraissigiam*, 140 S. Ct. at 1970). Therefore, neither the fact that he had a petition for review pending, or even the court's acknowledgment that Tazu's challenges raise 'constitutional claims or questions of law,' guaranteed for appellate review under § 1252(a)(2)(D), seemed to impact the court's Suspension Clause analysis. *Id.*.

Second, the certified classes here include people like the alien in *Tazu* who could file a petition for review because petitions are filed in the circuit where the removal order was entered, not where the petitioner resides. Therefore, the certified classes could include individuals just like Tazu who therefore *can* have their claims heard by a different Article III court via a petition for review. 8 U.S.C. § 1252(b)(2). Therefore, even if having a pending petition for review were relevant to the Suspension Clause analysis, Petitioners' argument seems to concede that the holding in *Tazu* is *indistinguishable* to at least part of their class.

Petitioners do not point to a single case where a court has distinguished *Thuraissigiam* on the basis of the substantive claim rather than the relief requested. Therefore § 1252(g) does not violate the Suspension Clause, as it was understood at the time it was drafted, as applied to Petitioners' claims.

### B. *Thuraissigiam* Forecloses Petitioners' Arguments Regarding *St. Cyr.*

As discussed above, *Thuraissigiam* clarifies that claims requesting relief beyond simple release are not protected by the Suspension Clause as understood at the time it was drafted.

Therefore, to meet their burden to establish subject-matter jurisdiction, Petitioners must illustrate either (1) that the Suspension Clause currently protects a broader right to habeas or (2) that § 1252(g) violates another provision of the Constitution as applied to Petitioners' claims. Petitioners' opposition does neither.

Petitioners erroneously argue that they are entitled to a broader habeas right than the plaintiff in *Thuraissigiam* because their claims fall under *St. Cyr* and *Accardi's* description of the scope of the Suspension Clause and district court review. In doing so, they attest that *Thuraissigiam* affirmed *St. Cyr* and therefore, this Court's analysis of *St. Cyr* in its order denying Respondents first motion to dismiss remains sound. ECF No. 576 at 9-12. This ignores *Thuraissigiam's* discussion about the limits of both *St. Cyr* and *Accardi* in Part III – B. Although *Thuraissigiam* only addressed the scope of available habeas relief at the Suspension Clause's inception, its discussion on the limits of *Accardi* and particularly *St. Cyr* were not limited to this analysis. Despite Respondents' detailed discussion of this portion of the *Thuraissigiam* opinion in their renewed motion to dismiss, Petitioners ignore that *Thuraissigiam's* clarifications regarding these cases must be applied in Petitioners' analysis even if *Thuraissigiam's* ultimate holding does not directly involve § 1252(g).

The plaintiff in *Thuraissigiam* argued that cases like *Accardi* and *St. Cyr* affirm that the Suspension Clause protects a broader habeas right than just simple release. The Supreme Court dismissed this argument. In doing so, it did not examine how Thurassigiam's claim differed from those claims in *Accardi* and *St. Cyr*. Rather, the Court only addressed whether those cases support the proposition that the "Suspension Clause guarantees a broader habeas right." *Thuraissigiam*, 140 S. Ct. at 1971. With regard to *Accardi* and other finality era cases, the Court rejected the plaintiff's interpretation that those cases held that "the Suspension Clause mandates a minimum

level of judicial review to ensure that the Executive complies with the law in effectuating removal." *Id.* at 1976. The Court explained that in *Accardi,* it "exercised its review because it was authorized to do so by statute" **not because** the "review was required by the Suspension Clause." *Id.* at 1976, 1980.

The Court similarly rejected Thuraissigiam's argument that *St. Cyr* supports a broader habeas right. *St. Cyr* only reaffirmed two propositions: (1) that an alien detained in the United States could invoke the habeas writ; and (2) that the writ "as it existed at common law provided a vehicle to challenge all manner of detention by government officials." *Id.* at 1980-81. The Court held that the statement in *St. Cyr* and *Heikkila v. Barber,* 345 U.S. 229 (1953), that "some judicial intervention in deportation cases is unquestionably required by the Constitution . . . does nothing for [plaintiff]" and his argument that the remaining in the United States to seek immigration relief was traditionally available in habeas. *Id.* at 1981. Therefore, neither *Accardi* nor *St. Cyr* bear on the scope of the Suspension Clause. *Id.*

Petitioners' argument relies on the same flawed logic the Supreme Court rejected in *Thuraissigiam* by attempting to turn *St. Cyr* and *Accardi* into cases that govern the scope of the Suspension Clause when *neither* of those courts decided that question. It is immaterial how similar Petitioners' claims are to either plaintiff in *Accardi* or *St. Cyr* because those cases ultimately held that the habeas statute — not the Suspension Clause — allowed for review of their claims. *See Thuraissigiam,* 140 S. Ct. at 1980. There is simply no support for Petitioners' proposition, especially after *Thuraissigiam,* that *St. Cyr* held that the Suspension Clause protects a broader habeas right to challenge the government's alleged failure to exercise its discretion **without regard** to the relief sought. *St. Cyr* merely affirmed an alien's ability to invoke the writ when challenging the executive detention. *Id.* at 1980. Because Petitioners seek more than release from allegedly

unlawful executive detention, *St. Cyr* does not support their argument. Indeed, Petitioners fail to point to a single case where any court has adopted this view of *St. Cyr* since *Thuraissigiam*. As a result, Petitioners' argument that this Court can simply rely on the similarity of their claims to the plaintiffs' claims in *St. Cyr* and *Accardi* to rule in their favor is untenable.[5]

### C. Petitioners' Argument Regarding *St. Cyr* Relies on a Single Paragraph in the *Thuraissigiam* Opinion, Which They Fatally Misinterpret.

Despite the Supreme Court's explanation that *St. Cyr* **does not** address whether the Suspension Clause protects relief beyond seeking release from unlawful detention, Petitioners argue that the Court recognized that Thurassigiam's claim was a 'very different . . . use of the writ' than at issue in *St. Cyr*." ECF No. 576 at 12 (citing *Thuraissigiam*, 533 U.S. at 1981). In other words, Petitioners use this quote to twist the *Thuraissigiam* analysis into one that would imply that the claim in *St. Cyr* was or would have been protected by the Suspension Clause, and that therefore, Petitioners' similar claims are likewise protected by the Suspension Clause. This is erroneous for three reasons. First, this interpretation conflicts with *Thurassigiam's* discussion (*see supra* at 9) that *St. Cyr* did not hold that a broader habeas right exists. *Thurassigiam*, 140 St. Ct. at 1980.

Second, Petitioners misinterpret the paragraph that they claim stands for this proposition. The Supreme Court in *Thuraissigiam* wrote:

> "The writ of habeas corpus as it existed at common law **provided a vehicle to challenge all manner of detention by government officials**, and the Court had held long before that the writ could be invoked by aliens already in the country who were held in custody pending deportation. *St. Cyr* reaffirmed these propositions, and this statement in *St. Cyr* does not signify approval of respondent's **very different attempted use of the writ**, which the Court did not consider."

---

[5] Petitioners make a strawman argument that "[t]he fact that Petitioners are not currently in physical detention does not make the writ unavailable to them." ECF No. 576 at 12-13. But Respondents assert that the Suspension Clause does not apply to Petitioners' claims because they do not seek habeas relief — not because they are not "in custody."

*Id*. at 1981 (emphasis added). Reading the entire quote, it is clear that the Supreme Court was explaining that Thurassigiam's attempted use of the writ was "very different" from a challenge to the **manner of detention**. *See id*. There is nothing to suggest, as Petitioners claim, that the Supreme Court was comparing Thuraissigiam's **use** of the writ — to obtain a stay of removal — to the **substantive claim** in *St. Cyr* that the government violated the law. *See id*. This paragraph merely notes that *St. Cyr* confirmed that the Suspension Clause protects challenges to the "manner of detention" and that Thuraissigiam's attempted use of the writ is "very different" because it does not challenge the executive's manner of detention. *See id*. The paragraph does **not** stand for the proposition that the substantive claim in *St. Cyr* is distinguishable from the substantive claim in *Thuraissigiam*, and that therefore, the Suspension Clause protects claims like the one in *St. Cyr*. *See id*. The footnote after this paragraph further negates Petitioners' challenge-based argument by pointing out that the Court has no need to consider the distinctions between the substance of the legal violations alleged in *St. Cyr* and *Thuraissigiam* to determine whether the Suspension Clause applies. *Id*. at 1981 n.27.

Third, if Petitioners' interpretation of this paragraph is accepted as true, and the Supreme Court *was* comparing the substance of the alleged violations of law in *Thuraissigiam* as opposed to *St. Cyr,* it follows that the applicability of the Suspension Clause turns on the *substance* and *severity* of the alleged legal violation. ECF No. 576 at 10. But footnote 21 directly contradicts this view. In it, the Court notes one can imagine certain jurisdiction-stripping scenarios that *could* cause a constitutional issue depending on the seriousness of the alleged abuse, but the Suspension Clause, unlike other parts of the Constitution, should not depend on the severity or the type of alleged violation. *See Thurassigiam,* 140 S. Ct. at 1976 n.21 (questioning the concurrence's argument and asking "[d]oes the availability of habeas review depend on a judge's view of the severity of the

irregularity asserted?"). Therefore, contrary to Petitioners' argument, *Thuraissigiam's* discussion of *St. Cyr,* made no judgement as to the scope of the Suspension Clause as it exists today; that the scope of the Suspension Clause turns on the type of legal violation alleged; or that the claim in *St. Cyr* would have been protected by the Suspension Clause if the statute in that case had barred the alien's claim. As a result, Petitioners' argument the Suspension Clause protects their claims because of their analogous nature to *St. Cyr* fails.

## II.     Neither the Due Process Clause nor Equal Protection Clause Preserve this Court's Jurisdiction.

As a last-ditch effort, Petitioners, for the first time, Petitioners contend that 8 U.S.C. § 1252(g) violates the Due Process Clause or Equal Protection Clause as applied to the class. Petitioners do not point to a single case where a court has held that either clause confers any right to be heard in the face of § 1252(g). *See generally* ECF No. 576 at 15-16. Instead, Petitioners rely on the *purely hypothetical* statement in *Thurassigiam* that the Constitution, in some extreme and rare circumstances, could invalidate a jurisdictional prohibition. ECF No. 576 at 16. However, Petitioners fail to explain how their claims meet such a standard let alone attempt to apply the legal framework applicable to due process claims. Notwithstanding these failures, Petitioners' argument that the Due Process or Equal Protection Clauses insulate their claims from § 1252(g) is without merit.

### A. Section 1252(g) Does Not Violate the Constitution as Applied to Petitioners Because Petitioners Only Have Those Rights that Congress Has Bestowed.

Once again, Petitioners baldly assert that they have a due process right without engaging in the corresponding legal analysis. Regardless, § 1252(g) does not violate the Due Process Clause nor the Equal Protection Clause as applied to Petitioners.

First, Petitioners do not have a constitutionally protected liberty interest to be heard in this Court on their claims seeking, whether temporarily or permanently, to stay their removal. An "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olin v. Wakinekona,* 461 U.S. 238, 250 (1983). Courts must start with the premise that removal "is not a criminal proceeding and has never been held to be punishment and thus no judicial review is guaranteed by the Constitution." *Hana v. Gonzales,* 503 F.3d 39, 43 (1st Cir. 2007) (quoting *Carlson,* 342 U.S. at 537); *see also Sukwanputra v. Gonzales,* 434 F.3d 627, 632-33 (3d Cir. 2006 ("Because judicial review is not constitutionally guaranteed, the judicial review bar of § 1158(a)(3) does not violate the Due Process Clause."); *Richardson v. Reno,* 162 F.3d 1338, 1360 (11th Cir. 1998) (reasoning affirmed on remand from *Richardson v. Reno,* 526 U.S. 1142 (1999) in *Richardson v. Reno,* 180 F.3d 1311 (11th Cir. 1999); *U.S. v. Benitez-Villafuerte,* 186 F.3d 651 (5th Cir. 1999); *Duldulao v. I.N.S.,* 90 F.3d 396, 40 (9th Cir. 1996). The Supreme Court recently affirmed that "aliens who arrive at ports of entry — **even those paroled elsewhere in the country for years pending removal** — are 'treated' for due process purposes 'as if stopped at the border." *Thuaissigiam,* 140 S. Ct. at 1982. (quoting *United Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212 (1953) (emphasis added). As such, Petitioners only have "such opportunity for judicial review of their action as congress may see fit to authorize or permit." *Carlson v. Landon,* 342 U.S. 524, 537 (1952); *see also Reno v. Flores,* 507 U.S. 292, 305 (1993) ("[O]ver no conceivable subject is the legislative power of Congress more complete . . ."). Given the Supreme Court's recent affirmation that those in Petitioners' position are only entitled to the

due process prescribed by Congress, including in matters of subject-matter jurisdiction, Petitioners cannot show that § 1252(g) would violate due process as applied.[6]

While *Thuraissigiam* may have left room for courts to find that due process, as opposed to the Suspension Clause, requires that courts exercise jurisdiction over particular heinous abuses, Petitioners' claims do not rise to this level. This is not a situation wherein a broadly applicable jurisdiction stripping statute, like § 1252(g), has been generally applied to bar the extreme hypotheticals discussed in *Thuraissigiam. See Thuraissigiam*, 140 S. Ct. 1975 n21 ("[T]here is the hypothetical alien denied asylum on the ground that Judaism is not a religion. Such a decision would of course be ridiculous, but why it would not raise a question of "brute fac[t]" that falls outside the concurrence's interpretation of the Suspension Clause, *post,* at 1995, is again not clear."); *id.* at 1989 (Breyer, J., concurring, raising hypotheticals of a person claiming to be a natural-born U.S. citizen, immigration officials forging the record of a credible fear interview, or denying a refugee asylum on the basis that Judaism does not qualify as a "religion" One can imagine scenarios in which these types of alleged abuses *might* confer a liberty interest to be heard on that claim. However, that situation does not exist here where Petitioners claim their liberty interest inheres from a regulation and that regulation's authorizing statute in addition to § 1252(g) denies this court subject-matter jurisdiction.

---

[6] While this Court has recognized that Petitioners have more connections to the United States than an individual like Thuraissigiam, these connections were obtained as a result their "ongoing violation of United States law" via their refusal to comply with their final order of removal — not by a lawful admission into the United States. *Reno v. AADC,* 525 U.S. 471, 491 (1999). Any rule that would credit Petitioners' connections obtained while remaining unlawfully in the United States would be problematic. First, it would create a perverse incentive to avoid complying with a final order of removal for as long as possible. Second, it would also create an absurd result wherein the alien who dutifully leaves the United States under a final order of removal is entitled to less due process than those who chose to ignore their final orders of removal. The law abhors such a result. *See Thuraissigiam,* 140 S. Ct. at 1983 (citing *Landon v. Plasencia,* 459 U.S. 21, 32 (1982)).

Petitioners cannot rely on the merits of their claims to establish this Court's subject-matter jurisdiction. Petitioners must individually establish a liberty interest in having their claims heard in this Court despite their final order of removal and their status as aliens unlawfully present in the United States without admission. While this Court may have found that the provisional waiver regulations' purpose and silence regarding the waiver's impact on ICE's ability to execute a removal order is indicative of a right to seek the relief, **the same is not true of the provisional waiver statute regarding an alien's ability to be heard on any action regarding the waiver.**[7] 8 U.S.C. § 1182(a)(2)(B)(i) ("No court shall have jurisdiction to review *a decision or action* by the [government] regarding a waiver [of unlawful presence] under this clause."). There is simply no room for Petitioners to argue that alleged violations of the provisional waiver regulations create a legitimate claim of entitlement to be heard on their claims in this court where the authorizing statute directly contradicts any interpretation of the regulation that would create an expectation of entitlement to be heard on claims regarding this waiver. Regulations cannot be interpreted in a way that violates these clear statutory commands.

This Court should be reticent to declare that a due process right exists here in light of the Supreme Court's warnings of the dangers of removing authority from the executive as well as the judicial creation of additional obstacles to removal. *AADC*, 525 U.S. at 490 ("Postponing justifiable deportation (in the hope that the alien's status will change—by, for example, marriage to an American citizen—or simply with the object of extending the alien's unlawful stay) is often

---

[7] Petitioners may allege that this statute refers to decisions regarding the waiver, not ICE's enforcement actions, the statute sweeps much more broadly. It does not merely use the word decision — but rather "any action." ICE's action in removing aliens in alleged violation of the regulations would certainly fall under this statute. Regardless, this statute, especially when combined with § 125(g), still disclaims any legitimate claim of entitlement to be heard on challenges regarding the waiver because its intent was clearly to preclude aliens from bringing suits in federal court that were any way related to this waiver.

the principal object of resistance to a deportation proceeding, and the additional obstacle of selective-enforcement suits could leave the INS hard pressed to enforce routine status requirements."). Declaring a due process right exists here where two statutes disclaim such a right and where no substantive right has been even cognizably alleged would gut § 1252(g) and allow any alien to sidestep jurisdictional mandates by alleging *any* cognizable claim. *Tazu*, 975 F.3d at 298 (holding that § 1252(g) cannot be subverted by claiming a violation of due process, equal protection the APA, or some other federal law because it would contravene the Supreme Court's holding in *AADC*). Moreover, Petitioners can point to no support for such a holding that would stand for the proposition that all cognizable claims must have an Article III forum.

Petitioners' equal protection claim likewise, for the reasons discussed below, does not create a right to be heard in the face of § 1252(g). Moreover, Petitioners point to no case where the existence of an Equal Protection claim has independently created a right to be heard in the face of a statute that denies such right exists. Therefore, Petitioners fail to establish that they have any right, inhering from anywhere in the Constitution, that this Court has subject-matter jurisdiction over their claims.[8]

---

[8] Petitioners' due process argument, if accepted, would *at least* raise a concern about whether § 1252(g) violates due process as applied to the entire class. To exercise subject-matter jurisdiction over the entire class, the Court would have to find that every class member has a liberty interest in bringing their claims and that the procedure available to each class member to be heard on their claims previously is constitutionally insufficient. These questions are impossible to answer on a class-wide basis because "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Assessing the interest at stake, the risk of erroneous deprivation and the probable value of additional safeguards, and the government's interest in a class member's ability to bring his claims in this Court is highly dependent on the class member. *See Mathews* v. *Eldridge,* 424 U.S. 319, 334-335 (1976). This Court has implicitly recognized the individual nature of due process claims when it certified a much narrower due process class. Therefore, should this Court be persuaded by Petitioners' due process argument, it should allow the parties to brief whether § 1252(g) violates the due process rights of the class as a whole such that the Court has subject-matter jurisdiction over the entire class as required for this case to proceed as a class action.

**III. The Court Should Grant Respondents Procedurally Proper Rule 12(c) Motion Because the Facts Petitioners' Pled in Support of Their Equal Protection Claim are Insufficient as a Matter of Law.**

As a threshold matter, Respondents' motion is procedurally proper and ripe for a decision. Petitioners point to no requirement that Respondents had to provide a schedule for briefing Rule 12(c) motions in the scheduling order. By advocating for such a rule, Petitioners essentially argue that Respondents are required to predict whether future Supreme Court decisions would impact this case and when. Further, as explained in Respondents' opening brief, the case Petitioners cite — *Grajales v. Puerto Rico Ports Authority,* 682 F.3d 40 (1st Cir. 2012) — is inapposite. In that case, the motion was not based on any intervening case law and as such all of the arguments could have been presented during the motion to dismiss phase. *Id.* at 44. Conversely, Respondents' renewed motion includes new arguments based on new **binding** precedent, which is appropriate for the Court to consider at this stage before the Court expends considerable resources deciding the scope of proper discovery on Petitioners' equal protection claim *and* the parties expend considerable resources conducting discovery into that claim. This is especially true given that the discovery Petitioners seek would require the time and effort of high level DHS officials. Respondents Rule 12(c) motion is not only procedurally proper, but seeks to conserve this Court's and the government's limited resources. It is ripe for a decision now.

Petitioners' opposition fails to address each part of Respondents' tiered argument. *Regents,* although a plurality decision, is the only time the Supreme Court has spoken on the particular issue raised by Petitioners' complaint. The slight decrease in precedential value it carries due to its existence *in part of the opinion* as a plurality should not prevent this Court from applying it to decide whether Petitioners' equal protection claim is plausible especially where a total of *eight* justices concurred in the judgement rejecting the plaintiffs' equal protection claim. *Regents,* 140

17

S. Ct. 1919 (Thomas, J., joined by Alito and Gorsuch, J., Concurring in the judgment in part and dissenting in part; *id.* at 1936 (Kavanaugh, J., concurring in the judgment in part and dissenting in part).

Petitioners' attempt to distinguish *Regents* from their equal protection claim fails. First, Plaintiffs confuse the relevant actors in this case. While President Trump is the relevant actor with regard to the Executive Order, he is not the relevant actor with regard to ICE Boston's enforcement actions against certain class members. Petitioners do not allege that Executive Order 13768 *required* ICE to take a certain enforcement action such that ICE Boston had *no discretion*. Also, Petitioners have not shown that President Trump's alleged discriminatory motivations could be directly attributed to ICE Boston's decision to take a certain enforcement action. As the Ninth Circuit recently explained "[i]t is expected — perhaps even critical to the functioning of government — for executive officials to conform their decision-making to the administration's policies. The mere fact that the White House exerted pressure on the [] decisions does not in itself support the conclusion that the President's alleged racial animus was a motivating factor." *Ramos,* 975 F.3d at 898. . As a result, Petitioners cannot allege that President Trump was the relevant actor in these individual enforcement decisions. The ICE Boston employees had the discretion to determine whether to take an enforcement action against the class members. Therefore, they are the relevant actors with regard to the individual arrests — not President Trump.

Employing Petitioners' logic, the *Regents* Court would have been forced to find that President Trump's alleged improper motivation in *asking* DHS to end DACA would have tainted DHS's decision to end DACA. The Supreme Court did not come to that conclusion. Recently, the Ninth Circuit similarly refused to assign President Trump's statements about ending TPS and limiting countries in the TPS program to the individual decisions made by DHS to end TPS for

certain countries. The Court should apply this same logic here where there is no evidence that President Trump's alleged animus had any impact on ICE's Boston's individual enforcement decisions. *See Pataud v. U.S. Citizenship and Immigration Servs. Bos. Field Office,* No. CV-20-10690-NMG, 2020 WL 6870991 at *5 (D. Mass. Nov. 20, 2020) ("Here plaintiff similarly relies on statements by President Trump . . . but cites no statements by actors with direct control over her application . . . who signed the Final Decision."). Accordingly, with regard to the legality of ICE Boston's enforcement actions against class members, President Trump is not the relevant actor and his statements cannot be utilized to make out a claim that the individual arrest, detention, and removal of class members violated the Equal Protection Clause.

The larger problem with Petitioners' equal protection claim is that the facts that they allege demonstrate a discriminatory motive are insufficient as a matter of law to state an equal protection claim. Despite that fact that the four statements pled in Petitioners' complaint were made within a year of Executive Order 13768, only *one* of these statements was made prior to the executive order. *Ramos,* 975 F.3d at 898 (noting that the "influence of [the remarks during a meeting with lawmakers about TPS] on the actual decisions to terminate TPS is belied by the fact that the meeting occurred three days *after* the TPS termination notices for Haiti an El Salvador issued" (emphasis in original)). Further, *none* of the statements were related to the executive order, people with final orders of removal, or even carrying out removal orders.[9] As the Supreme Court and the Ninth Circuit have recognized, these statements that are "remote in time and made in unrelated contexts" such as general statements about particular races, ethnicities, or national origins, "do not qualify as statements probative of the decision[s] at issue" — *either* the Executive Order itself or

---

[9] Petitioners cite an additional statement about the executive order being a "part of an immigration reform we outlined during the campaign." ECF No. 576 at 19. This statement was not mentioned in their complaint let alone alleged as evidence of animus.

ICE Boston's enforcement actions against certain class members. *Regents,* 140 S. Ct. at 1916; *Ramos,* 975 F.3d at 899 (citing *Regents* and finding that "the President's expressed animus towards 'non-white, non-European' countries and ethnicities" were insufficient because these statements occurred primarily in contexts removed from and unrelated to TPS policy or decisions).

Although cited in Respondents' opening brief, Petitioners do not attempt to distinguish *Ramos,* which held, despite President Trump's allegedly discriminatory statement *during a meeting about* TPS, his statement was still insufficient to make an equal protection claim asserting that the decisions to end TPS violated the Equal Protection Clause. *Ramos,* 975 F.3d at 898. Rather, Petitioners ask the Court to rely on the sequence of events leading up to the challenge decision and the historical background of the decision *without pointing to any facts in their complaint that establish either of these prongs.* ECF No. 576 at 20. Regardless, there is nothing unusual about a new administration altering an agency's priorities, nor is it unusual for ICE Boston to arrest and remove individuals who have valid, final orders of removal. *See Ramos,* 975 F.3d at 898.

Petitioners do not allege any evidence, other than President Trump's allegedly discriminatory statements, of improper animus to support their equal protection claim. Their claim hinges solely on contextually unrelated, remote statements by President Trump. Because these allegations are plainly insufficient to support Petitioners' claim, this Court should grant judgment in favor of Respondents on Petitioners' equal protection claim.

## CONCLUSION

For the forgoing reasons, this Court should dismiss Petitioners' complaint (ECF No. 27) for lack of subject-matter jurisdiction and/or alternatively issue judgment under Rule 12(c) in favor of Respondents on Petitioners' equal protection claim (Count 3).

Respectfully submitted,

Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

ELIANIS N. PEREZ
Assistant Director

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mary Larakers, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Mary L. Larakers*
Mary L. Larakers
Trial Attorney

Dated: January 15, 2021