**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

LILIAN PAHOLA CALDERON JIMENEZ,
and LUIS GORDILLO, *et al.*,

Individually and on behalf of all others
similarly situated,

      Plaintiffs-Petitioners,

      v.

ALEJANDRO MAYORKAS, *et al.*,

      Defendants-Respondents.

---

C.A. No. 18-10225-MLW


**JOINT MEMORANDUM IN SUPPORT OF THE PARTIES'**
**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**
**AND NOTICE OF SETTLEMENT AND FAIRNESS HEARING**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.    CASE BACKGROUND AND PROCEDURAL HISTORY ............................. 2

    A.  The Provisional Waiver Process ............................................................... 2

    B.  ICE's Detention of Lilian Calderon Jimenez .......................................... 4

    C.  The Class Action Lawsuit ......................................................................... 4

III.    THE SETTLEMENT AGREEMENT ............................................................. 7

IV.    DISCUSSION ................................................................................................. 10

    A.  Legal Standard for Approving Rule 23 Class Action Settlements .................. 10

    B.  The Proposed Settlement Is a Fair, Reasonable, and Adequate Resolution of This Lawsuit............................................................................... 11

    C.  The Proposed Method of Class Notice Should Be Approved Because It Satisfies Due Process Requirements ..................................................... 14

V.    CONCLUSION ............................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

Page(s)

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) ...........................................................................12

*Cancino Castellar v. Mayorkas, et al.*,
    No. 3:17-cv-00491 (S.D. Cal. 2024)...........................................................................15

*Hernandez v. Garland*,
    No. EDCV 16-620, 2022 WL 2288301 (C.D. Cal. Jan. 24, 2022) ............................15, 16

*Hochstadt v. Bos. Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................................10, 11

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ................................................................................10, 13

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
    270 F.R.D. 45 (D. Mass. 2010) ................................................................................11, 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ......................................................................................11, 12

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
    538 F. Supp. 3d 208 (D. Mass. 2021) .................................................................10, 11, 12

*Meaden v. HarborOne Bank*,
    No. 23-CV-10467, 2023 WL 3529762 (D. Mass. May 18, 2023)..................11, 12, 14, 15

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
    No. 3:15-CV-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020)............12, 13, 14

*P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) .......................................................................................12

**STATUTES AND REGULATIONS**

8 C.F.R. § 212.7 ...............................................................................................................5, 6

77 Fed. Reg. 19902 (Apr. 2, 2012) ......................................................................................2

78 Fed. Reg. 535 (Jan. 3, 2013) ...........................................................................................3

81 Fed. Reg. 50244 (July 29, 2016).................................................................................2, 3

89 Fed. Reg. 67459 (Aug. 20, 2024)...................................................................................................8

## RULES

Fed. R. Civ. P. 23(a) .............................................................................................................................6

Fed. R. Civ. P. 23(b) .............................................................................................................................5

Fed. R. Civ. P. 23(c) ...........................................................................................................................15

Fed. R. Civ. P. 23(e) ...............................................................................................................10, 11, 14

## I.      INTRODUCTION

Petitioners filed this class action in 2018 alleging violations of the Immigration and Nationality Act ("INA") and its accompanying regulations, the Administrative Procedure Act, and the due process and equal protection guarantees of the U.S. Constitution.  ECF No. 27.  The Court certified a class in 2019.  ECF No. 253.  After three years of active litigation and nearly four additional years of negotiations, the Parties have reached a settlement, as memorialized in the proposed Class Action Settlement Agreement ("Settlement Agreement") (Ex. A).[1]  The Parties now jointly seek preliminary approval of the Settlement Agreement as to all claims in this litigation.

This case began as an individual habeas petition for Lilian Calderon Jimenez, a noncitizen who was detained by Immigration and Customs Enforcement ("ICE") at the offices of U.S. Citizenship and Immigration Services ("USCIS") in January 2018 as she pursued lawful status through her marriage to a U.S. citizen.  ECF No. 1.  It was later amended into a class action filed by five U.S. citizens and their noncitizen spouses with final orders of removal.  ECF No. 27.  Petitioners' lawsuit concerns the interaction of ICE's detention and removal operations with the 2016 USCIS regulations that rendered noncitizens with final orders of removal eligible to pursue lawful status through a procedure sometimes called the "provisional waiver process."

The proposed Settlement Agreement is effective for a two-year period and has two key provisions.  *First*, it limits enforcement actions against noncitizen class members to the circumstance in which ICE Boston Enforcement and Removal Office ("ERO Boston") has both dl I makeconsidered the individual's pursuit of the provisional waiver process and made a determination that the noncitizen poses a threat to public safety or national security.  *Second*, the

---

[1] All referenced Exhibits are attached to the October 17, 2024 Declaration of Allyson Slater ("Slater Decl."), filed herewith.

Settlement Agreement creates a process for class members to seek reopening and dismissal of their removal proceedings in order to facilitate their pursuit of lawful status.

The proposed Settlement Agreement is fair, reasonable, and adequate, providing substantial benefit to class members while also preserving judicial and party resources that would otherwise be spent on litigating this case.  For the reasons set forth in this Memorandum, the Parties respectfully request that the Court preliminarily approve the Settlement Agreement and accompanying notice to class members (Ex. B).

## II.   CASE BACKGROUND AND PROCEDURAL HISTORY

### A.   The Provisional Waiver Process

The provisional unlawful presence waiver was created to promote family unity by allowing noncitizens married to U.S. citizens to pursue lawful immigration while minimizing disruption to their family life.  *See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule* ("2016 Final Rule"), 81 Fed. Reg. 50244, 50245 (July 29, 2016); *see also* ECF No. 159 at 7-8 (describing the provisional waiver regulations as intended to address the "financial, emotional, and humanitarian hardships" caused by family separation, which was "incompatible with promoting family unification, an important objective of the United States immigration laws").  Prior to the provisional waiver regulations being adopted in 2013, noncitizen spouses of U.S. citizens often had to spend months or years apart from their U.S. citizen spouses to go abroad and obtain a waiver of inadmissibility, apply for an immigrant visa, and interview with a U.S. consular official.  *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Proposed Rule*, 77 Fed. Reg. 19902, 19906 (Apr. 2, 2012); *see also* ECF No. 159 at 7-8.  With the 2013 regulations, the provisional waiver process allowed noncitizen spouses to apply for and obtain a provisional waiver of the unlawful presence ground of inadmissibility prior to leaving the U.S., greatly reducing the amount of time

families spent apart.  *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule* ("2013 Final Rule"), 78 Fed. Reg. 535, 536 (Jan. 3, 2013).

In 2016, the provisional waiver regulations were expanded to include, among others, noncitizens with outstanding final orders of removal, who needed an additional waiver of inadmissibility associated with their prior order of removal.  2016 Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016); *see also* ECF No. 159 at 8.  The amended regulations were "intended to encourage eligible individuals to complete the immigrant visa process abroad, promote family unity, and improve administrative efficiency."  2016 Final Rule, 81 Fed. Reg. 50244, 50244 (July 29, 2016).

For individuals with a final order of removal who are seeking lawful status through a U.S. citizen spouse by utilizing the provisional unlawful presence waiver, the "provisional waiver process" has five basic steps.  *See* ECF No. 27 ¶¶ 31-35.  ***First***, the U.S. citizen spouse files with USCIS a Form I-130, Petition for Alien Relative, to establish that their marriage to a noncitizen is *bona fide*.  USCIS sometimes conducts interviews as part of its consideration of an I-130 application.  *See* ECF No. 159 at 8-10.  ***Second***, the noncitizen spouse files with USCIS a Form I-212, Permission to Reapply for Admission into the United States After Deportation or Removal.  *Id.*  This form may be used, prior to departing the United States, to obtain conditional approval to seek admission to the country notwithstanding the inadmissibility triggered by the prior order of removal.  ***Third***, once the I-130 is approved and the I-212 is conditionally approved, a noncitizen files with USCIS a Form I-601A, Application for Provisional Unlawful Presence Waiver.  *Id.*  This form may be used, prior to departing the United States, to obtain a provisional waiver of the inadmissibility triggered by prior unlawful presence.  ***Fourth***, the noncitizen applies for a visa and appears for an immigrant visa interview at a U.S. consulate

overseas.  *Id.*  **Fifth**, if approved, the noncitizen travels to the United States with an immigrant visa, becoming a lawful permanent resident upon admission.  *Id.*; *see also* ECF No. 27 ¶¶ 31-35.

### B.    ICE's Detention of Lilian Calderon Jimenez

Ms. Calderon immigrated from Guatemala when she was three years old and had lived with a final order of removal since 2002, when the Board of Immigration Appeals ("BIA") affirmed a denial of her father's asylum application.  ECF No. 27 ¶¶ 38-42.  After marrying Luis Gordillo, a U.S. citizen, in 2016, Ms. Calderon appeared at a USCIS office in Johnston, Rhode Island on January 17, 2018, with her husband for their I-130 interview.  *Id.* ¶¶ 44-49.  After USCIS completed Ms. Calderon's portion of the interview, ICE Boston ERO arrested her in order to execute her final order of removal.  *Id.* ¶¶ 49-60.

### C.    The Class Action Lawsuit

Ms. Calderon filed this lawsuit in February 2018, alleging that Respondents violated her statutory and Constitutional rights when ICE detained and sought her removal at the conclusion of her I-130 interview at the USCIS office in Johnston, Rhode Island, despite the fact that she was in the midst of pursuing lawful permanent residency through the provisional waiver process.  *See* ECF No. 1 ¶¶ 14-64.  After Ms. Calderon's release from detention, Petitioners filed an Amended Complaint on April 10, 2018 on behalf of a putative class, alleging Respondents' actions violated the INA and its regulations (Count 1), the Due Process Clause of the Fifth Amendment (Count 2), the Equal Protection Clause (Count 3), and the Administrative Procedure Act (Count 4), by detaining and attempting to remove noncitizen Petitioners without regard for the provisional waiver process.  ECF No. 27 ¶¶ 112-27.  The Petitioners further alleged violations of the INA and its regulations (Count 5) and the Due Process Clause (Count 6) with regard to individuals in detention.  *Id.* ¶¶ 128-36.

The Petitioners include two noncitizens, Ms. Calderon and Lucimar de Souza, who were arrested at I-130 interviews in January 2018. *Id.* ¶¶ 38-71. Two noncitizen petitioners, Oscar Rivas and Sandro de Souza, had been under supervision of ICE when they were instructed to purchase tickets to depart the United States. *Id.* ¶¶ 72-92. One additional noncitizen petitioner, Deng Gao, had a pending I-130 application and was afraid that he could be detained at his I-130 interview. *Id.* ¶¶ 93-100.

On May 8, this Court determined that Ms. de Souza was detained in violation of the Due Process Clause and the regulations governing post-order custody, and that she would receive a bond hearing. ECF Nos. 66, 95. After that ruling, ICE released Ms. de Souza.

On August 23, 2018, the Court denied Respondents' motion to dismiss with regard to Petitioners' due process claims, *see* Aug. 23, 2018 Hr'g Tr.; ECF No. 159, and on May 16, 2019, the Court denied Respondents' motion to dismiss with respect to the remaining counts, with the exception of Petitioners' substantive due process claim on which the Court reserved judgment. *See* May 16, 2019 Hr'g Tr.; ECF No. 253. In the same order, the Court also certified a class of petitioners on May 16, 2019 under Fed. R. Civ. P. 23(b)(2), defined as the following for Counts 1, 3, and 4:

> [A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the United States citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212. 7 (e) (4) (i) or (vi); and (4) is within the jurisdiction of Boston Immigration and Customs Enforcement-Enforcement and Removal Operations ("ICE-ERO") field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

ECF No. 253 at 2.[2]  The class representatives were Oscar Rivas, Celina Rivera Rivas, Lucimar de Souza, Sergio Francisco[3], Deng Gao, and Amy Chen.  *Id.*

The Parties engaged in extensive fact discovery throughout the next year, including dozens of requests for production and interrogatories, thousands of pages of documents, and more than 60 hours of deposition testimony.  Slater Decl. ¶ 4.  The parties also litigated extensively on matters relating to the government's compliance with the post-order custody regulations.  *See, e.g.*, ECF Nos. 95, 366, 371.

On November 3, 2020, President Biden was elected.  On December 28, 2020, the Court ordered *sua sponte* the parties to confer and report their views on whether the case should be stayed in light of a change in presidential administration and therefore the Department of Homeland Security's ("DHS") policies and procedures.  ECF No. 577.  On January 27, 2021, the Court stayed the case for 120 days and asked the parties to confer and report by May 22, 2021 whether this case is settled or should be dismissed as moot.  *Id.*

Since the Court first ordered a stay on January 21, 2021, the Parties have continually engaged in extensive, arm's-length settlement negotiations while requesting the Court to

---

[2] The Court also certified a sub-class for Count 2, defined as:

> [A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of an approved I-130, Petition for Alien Relative, and conditionally approved I-212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212. 7 (e) (4) (i) or (vi); and (4) is within the jurisdiction of Boston ICE-ERO field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

[3] Mr. Francisco passed away on April 9, 2022, while this litigation was stayed.  His passing does not affect the adequacy of the remainder of the class representatives' abilities to fairly protect the interests of the class under Rule 23(a).

continue to stay the case.  During the last three-and-a-half years, the Parties have conferred numerous times and exchanged more than a dozen draft settlement proposals.  Slater Decl. ¶ 5. The parties reached an agreement in principle on May 9, 2024.  *Id.* ¶ 6.  On August 26, 2024, Respondents received final approval from Department of Justice to move forward with seeking court approval of the Settlement Agreement.  *Id*.

## III.    THE SETTLEMENT AGREEMENT

Class counsel for Petitioners believe the Settlement Agreement's terms and conditions are in the best interests of the class and offer substantial protection for class members who are seeking lawful immigration status through the provisional waiver process.  The Parties' proposed Settlement Agreement seeks to strike a balance between preserving the discretion of the ICE Boston ERO in cases involving threats to public safety, and preserving class members' rights and interests in pursuing lawful status without unreasonable fear of detention or removal.  The Settlement Agreement also serves the public interest, including by preserving judicial resources that would otherwise be required for adversarial litigation.

The Settlement Agreement also considers the impact of the Supreme Court's decision in *Garland v. Aleman-Gonzalez*, 596 U.S. 543 (2022), which relates to the availability of class-wide injunctive relief and was decided during the parties' negotiations.  While the parties do not necessarily share the same view of the application of *Aleman-Gonzalez* in the settlement context or otherwise, they agree the Settlement Agreement has been drawn to comply with any limitations that the case may impose.

The Settlement Agreement comprises several provisions.  ***First***, the Settlement Agreement establishes a process that will likely allow most noncitizen class members—who (by definition) have final orders of removal—to reopen and dismiss their removal proceedings.  The Settlement Agreement provides that ICE's Office of the Principal Legal Advisor ("ICE OPLA")

will presumptively join Motions to Reopen and Dismiss filed by noncitizen class members who

follow the procedure outlined in the Settlement Agreement.  The procedure includes a

requirement that the noncitizen submit specific supporting documentation, such as a declaration

that they intend to either leave the U.S. for consular processing or to apply for adjustment of

status.[4]  ICE OPLA may decline to join a motion to reopen for a class member who has complied

with these procedural requirements only if ICE OPLA determines, "based on an assessment of

the totality of the facts and circumstances, that the individual (1) is a threat to public safety,

typically because of serious criminal conduct; (2) is a threat to national security; or (3) has

engaged in serious immigration benefit fraud or is a repeat immigration violator."  Ex. A at 4.

*Second*, the Settlement Agreement provides that ICE Boston ERO may take enforcement

actions—defined as arrests, decisions to continue detention, ordering noncitizens to depart the

U.S., or removal—against class members only after it has both (a) taken into consideration the

noncitizen's eligibility to seek lawful status through the provisional waiver process,

(b) determined that the individual poses a threat to public safety or national security, and

---

[4] On June 17, 2024, after the parties had concluded settlement discussions, DHS announced plans to allow noncitizen spouses to request parole in place in order to become eligible to adjust their status from within the United States, rather than leave the country for consular processing. *See Fact Sheet: DHS Announces New Process to Promote the Unity and Stability of Families*, U.S. DEP'T OF HOMELAND SECURITY, dhs.gov/news/2024/06/17/fact-sheet-dhs-announces-new-process-promote-unity-and-stability-families (June 17, 2024).  On August 20, 2024, DHS announced the implementation of this Keeping Families Together process ("KFT") in the Federal Register.  *See* Implementation of Keeping Families Together, 89 Fed. Reg. 67459 (Aug. 20, 2024), govinfo.gov/content/pkg/FR-2024-08-20/pdf/2024-18725.pdf.  On August 26, 2024, the United States District Court for the Eastern District of Texas administratively stayed DHS from granting parole pursuant to the new KFT policy.  *See State of Texas, et al. v. United States Department of Homeland Security et al.,* No. 6:24-cv-00306 (E.D. Tex., Aug. 26, 2024), ECF No. 27.  The administrative stay remains in place.  *Id.* at ECF No. 69.

It is unknown whether the KFT policy announced in August 2024 will be in effect at some point during the settlement term.  Whether or not it does, this Settlement Agreement is still in the best interest of class members.  The settlement would not preclude class members from applying for KFT if it becomes effective during the settlement term.

(c) obtained the advance approval of a Deputy Field Office Director or an official with equivalent or higher authority.  *Id.* at 4-5.  ICE Boston ERO's arrest of a class member at a USCIS office to enforce the immigration laws of the United States must be approved by the Boston ERO Field Office Director in advance in writing, or verbally if exigent circumstances prevent written approval.  *Id.*

**Third**, the Settlement Agreement provides particular relief for two class representatives who are named Petitioners.  First, the Settlement Agreement stipulates that ICE will join a Motion to Reopen for named Petitioner Deng Gao within thirty days of the agreement's effective date, and second, that USCIS will adjudicate named Petitioner Lucimar de Souza's Form I-601A within thirty days of the agreement's effective date  or within sixty days of USCIS's receipt of a response to any Request for Evidence.  *Id*. at 5-6.

**Fourth**, the Settlement Agreement requires Respondents to notify class counsel of enforcement actions ICE Boston ERO takes against noncitizen class members.  Respondents must do so within five business days of the enforcement action.  In the event ICE Boston ERO decides to remove a class member or instruct a class member to depart the United States, it must provide class counsel with a brief description of ICE's consideration of the class member's eligibility to pursue lawful status through the provisional waiver process and determination that the individual poses a threat to public safety or national security no less than five business days before the date of removal or departure.  *Id.* at 6.

**Fifth**, the Settlement Agreement provides a means by which a class member can enforce the Settlement Agreement, should a class member feel that Respondents have failed to comply with its terms.  The Parties intend for an individual class member to first resolve their concerns through a conflict resolution procedure, whereby Respondents will meet and confer about the

issue within a specified time frame after being notified in writing. *Id.* at 6-7. If the matter

cannot be resolved through these procedures, the Settlement Agreement allows individual class

members to file a Motion to Enforce the Agreement in the District of Massachusetts. *Id.*

The Settlement Agreement is effective for two years. It provides that each side will bear

its own costs and fees in the litigation of this matter. *Id.* at 7-8.

## IV. DISCUSSION

The Parties now jointly request that the Settlement Agreement, which represents years of

arms-length negotiation between the Parties, be preliminarily approved as a fair, reasonable, and

adequate resolution to the litigation for the proposed settlement class.

### A. Legal Standard for Approving Rule 23 Class Action Settlements

Before a settlement of a certified class action can take effect, a court must first approve

the settlement. Fed. R. Civ. P. 23(e). In general, "the law favors class action settlements," *Jean-*

*Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (citing *In re*

*Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005)), and "there is

generally a presumption in favor of the settlement if the parties negotiated at arm's length and

conducted sufficient discovery." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D.

Mass. 2010) (internal quotations omitted) (citing *In re Pharm. Indus. Average Wholesale Price*

*Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)).

Approval of class action settlements requires a two-step process. First, if a class is

already certified,[5] a court must make a "preliminary determination regarding the fairness,

reasonableness, and adequacy of the settlement terms." *Meaden v. HarborOne Bank*, No. 23-

CV-10467, 2023 WL 3529762, at *1 (D. Mass. May 18, 2023). Additionally, the Court must be

---

[5] This Settlement does not have any distinct provisions relating solely to the sub-class that the
Court certified for purposes of the due process count.

satisfied that "the proposed notice and notice plan satisfy due process requirements."  *Id.* at \*2.

After a court grants preliminary approval, the second step is a fairness hearing, which gives class

members notice and an opportunity to provide input in favor of or against the proposed

settlement.  *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass.

2010).  After the fairness hearing, a court may give final approval of the settlement agreement.

*Hochstadt*, 708 F. Supp. 2d at 97 n.1.

      **B.**      **The Proposed Settlement Is a Fair, Reasonable, and Adequate Resolution of This Lawsuit**

      The proposed settlement should be preliminarily approved because it is fair, reasonable,

and adequate under Rule 23(e).  In making such a determination, courts assess various factors,

such as (a) whether "the class representatives and class counsel have adequately represented the

class," (b) whether "the proposal was negotiated at arm's length," (c) whether "the relief

provided for the class is adequate," taking into account the costs of trial, the effectiveness of

providing relief to the class, the terms of any proposed award of attorney's fees, and any other

agreement relevant to Rule 23, and (d) whether "the proposal treats class members equitably

relative to each other."  Fed. R. Civ. P. 23(e)(2); *see also Jean-Pierre*, 538 F. Supp. 3d at 212-13.

Courts in this Circuit have consistently held that "[i]f the parties negotiated at arm's length and

conducted sufficient discovery, the district court must presume the settlement is reasonable."

*Jean-Pierre*, 538 F. Supp. 3d at 213 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*,

588 F.3d at 32-33); *see also Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.

2015)(holding same) (citing *P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043

(1st Cir. 1996)); *Meaden*, 2023 WL 3529762, at \*3 (same).

      Class counsel and the class representatives have adequately represented the class

throughout this litigation.  Class representatives willingly took on the responsibility for

representing the class, including appearing in Court and testifying when called upon.  And class counsel has worked diligently over three years of litigation and four years of negotiations with Respondents to achieve a proposed settlement agreement that preserves class members' rights and interests.  Class counsel believe that the Parties' proposed settlement represents the best outcome for their clients, particularly when considering the costs of resumed litigation and the uncertainty of potential changes in ICE enforcement guidelines by future administrations.  *See Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020) (finding plaintiffs' counsel, who spent four years alternatively litigating and negotiating settlement agreement, to be adequate).

The Settlement Agreement should also be preliminarily approved because it was negotiated at arm's length, which courts have held creates a "presumption of reasonableness."  *Meaden*, 2023 WL 3529762, at *4.  Through multiple rounds of back-and-forth negotiations and dozens of exchanged term sheets over a period of four years, Petitioners and Respondents have at last come to an agreement that would both preserve both the class members' interests in availing themselves of the provisional waiver process, while also recognizing ICE's interests in fulfilling its duties to uphold the nation's immigration laws.  Slater Decl. ¶ 5.  The Parties are aligned that the proposed Settlement Agreement serves the interests of all and offers a more favorable outcome to this dispute compared to the alternative of expending judicial resources and time in litigating this case in court.  *See Nat'l Ass'n of Deaf*, 2020 WL 1495903, at *4 (holding that in similarly positioned civil rights class action, "settlement [was] an eminently reasonable choice" where it would be difficult to predict an outcome of the case and where defendant had already made steps towards improving accessibility, the key issue in the case).

The Parties' arms-length negotiation was also made possible by the extensive discovery that occurred when the Parties were actively litigating.  Respondents produced thousands of pages of documents, including emails between USCIS and ICE officers about class members' final orders of removal, the relevant effective policies and procedures that ICE Boston ERO followed in making removal and detention decisions, and electronic records from ICE Boston ERO.  Slater Decl. ¶ 4.  In addition, class counsel deposed several ICE Boston ERO and USCIS officials.  The amount of discovery in this case—in addition to the three years of litigation and four years of settlement negotiations that attorneys for both Respondents and Petitioners have "devoted to the interests of their clients"—supports a finding that the proposed Settlement Agreement is fair, reasonable, and conducted at arm's length.  *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. at 137 (finding that the proposed settlement was "free of any hint of collusion" in light of how "[t]he case ha[d] been vigorously contested from its inception," including three years of depositions); *see also In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. at 63 (finding Gillette's production of 100,000 pages of documents and other extensive discovery to be sufficient for the court "to make an informed preliminary review of the fairness of the proposed settlement").

Finally, the Settlement Agreement should be preliminarily approved because it provides meaningful relief for class members and treats them equitably relative to each other.  Here, where there is no request for monetary relief (including attorneys' fees) but rather a process for seeking to reopen proceedings and limitations on enforcement actions, the proposed Settlement Agreement offers the same relief to every class member.  The proposed terms of the Settlement Agreement therefore avoid any inequitable treatment of class members vis-à-vis each other.  *See* Fed. R. Civ. P. 23(e) adv. committee's notes (describing purpose of Rule 23(e)(2)(D) as

addressing concerns where "inequitable treatment of some class members vis-a-vis others" may

arise, such as disproportionately awarded relief or differences in scope of release).

C.     **The Proposed Method of Class Notice Should Be Approved Because It Satisfies Due Process Requirements**

Finally, the Parties' proposed settlement should be approved because the suggested form

and method of class notice satisfy due process in that it "inform[s] class members of their rights

to exclude themselves from the settlement and not to be bound by any judgment that

subsequently issues from final approval." *Meaden*, 2023 WL 3529762 at *4.  Class members are

entitled to receive "the best notice practicable" by being informed in sufficient enough detail to

"to alert those with adverse viewpoints to investigate and to come forward and be heard." *Nat'l*

*Ass'n of Deaf*, 2020 WL 1495903, at *4 (citations omitted).  In particular, Rule 23 requires that

notices explain the following in clear language: "(i) the nature of the action; (ii) the definition of

the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter

an appearance through an attorney if the member so desires; (v) that the court will exclude from

the class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ.

P. 23(c)(2)(B).

Here, the Parties have agreed on the form and content of the notice.  Slater Decl. ¶ 3.  The

Parties' proposed notice is a written document that class counsel intend to distribute either

directly or through ICE.  *See Meaden*, 2023 WL 3529762 at *4 (finding notices delivered by

mail and e-mail within thirty days of court's order to be "sufficient to notify individual class

members"); *see generally* Fed. R. Civ. P. 23(c)(2)(B) (notice may be issued through "United

States mail, electronic means, or other appropriate means").  ICE has agreed to distribute the

notice to nondetained class members whom ICE has reported to class counsel as having reported

to ICE Boston ERO since October 2022.[6]  ICE will also distribute the notice to class members

who report to ICE Boston ERO or are in ICE Boston ERO's custody during the notice period.

Class counsel will undertake notice designed to reach as many of these class members as

possible through other means.  For example, class counsel intend to distribute the notice by

providing it to members of the local American Immigration Lawyers' Association ("AILA") bar,

to legal service providers who are members of the Massachusetts Immigration Coalition, and to

the list of immigration counsel in New England who have already represented known class

members, compiled from the monthly reports Petitioners have received from the government in

this case.  *See, e.g.*, Order Granting Joint Motion for Preliminary Approval of Settlement

Agreement at 1, *Cancino Castellar v. Mayorkas, et al.*, No. 3:17-cv-00491 (S.D. Cal. 2024), ECF

No. 245 (granting preliminary approval where notice of settlement of immigration class action

was distributed through local immigration bar); *Hernandez v. Garland*, No. EDCV 16-620, 2022

WL 2288301, at *4 (C.D. Cal. Jan. 24, 2022) (same).  Class counsel from the ACLU of

Massachusetts will also post the notice and a copy of the Settlement Agreement on its website

page pertaining to this litigation.  *See Hernandez,* 2022 WL 2288301, at *4 (approving notice

that was posted in part on ACLU of Southern California's website).

    The content of the proposed Settlement Agreement notice provides sufficient information

for class members to understand both the lawsuit and their rights to decline to join the settlement

if they so choose.  The notice describes in plain language a history of the litigation, the claims

that were litigated, and a description of the certified class.  *See* Ex. B (Proposed Notice).  Given

that the class partly comprises immigrants in the New England area, the notice will be translated

---

[6] ICE respectfully requests at least one month to provide the notice to these class members via mail.

into languages commonly used by such individuals, including Spanish, Brazilian Portuguese, Haitian Creole, and Simplified Chinese. *See Hernandez,* 2022 WL 2288301, at *4 (approving settlement notice provided in both English and Spanish for an immigration class action). The notice also clearly states that class members may enter an appearance through a separate attorney from class counsel, and that they can also request to be excluded from the settlement process altogether by notifying class counsel in writing by January 15, 2025 (or other date determined by the Court). *See* Ex. B (Proposed Notice). Finally, the notice explains to recipients that unless they opt out of the settlement, a judgment in this case will have a binding effect on them under the Federal Rules. *Id*.

## V.      CONCLUSION

For the reasons set forth above, the Parties jointly request that this Court preliminarily approve the Settlement Agreement, attached hereto as Exhibit A, and the accompanying notice to class members, attached hereto as Exhibit B.

Respectfully submitted this 17th day of October 2024.

| *Counsel for the Respondents* | *Counsel for the Petitioners* |
|---|---|
| | */s/ Jonathan A. Cox* |
| MERRICK B. GARLAND | Kevin S. Prussia (BBO # 666813) |
| Attorney General | Jonathan A. Cox (BBO # 687810) |
| | Allyson Slater (BBO #704545) |
| | Christina Luo (BBO # 705590) |
| ELIANIS N. PEREZ | WILMER CUTLER PICKERING |
| Assistant Director |   HALE AND DORR LLP |
| | 60 State Street |
| */s/ Mary L. Larakers* | Boston, MA 02109 |
| Mary L. Larakers (Texas Bar # 24093943) | Telephone: (617) 526-6000 |
| Trial Attorney | Facsimile: (617) 526-5000 |
| U.S. Department of Justice, | kevin.prussia@wilmerhale.com |
| Civil Division Office of Immigration | jonathan.cox@wilmerhale.com |
| Litigation, | allyson.slater@wilmerhale.com |
| General Litigation and Appeals Section | christina.luo@wilmerhale.com |
| P.O. Box 868, Ben Franklin Station | |
| Washington, DC 20044 | Adriana Lafaille (BBO # 680210) |
| (202) 353-4419 | AMERICAN CIVIL LIBERTIES UNION |
| (202) 305-7000 (facsimile) | FOUNDATION OF MASSACHUSETTS, INC. |
| mary.l.larakers@usdoj.gov | One Center Plaza |
| | Suite 850 |
| | Boston, MA 02108 |
| | (617) 482-3170 |
| | alafaille@aclum.org |
| | |
| | Kathleen M. Gillespie (BBO # 661315) |
| | Attorney at Law |
| | 6 White Pine Lane |
| | Lexington, MA 02421 |
| | (339) 970-9283 |
| | kathleenmgillespieesq@gmail.com |