# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*,

Individually and on behalf of all others similarly situated,

    Plaintiffs-Petitioners,

  v.

KRISTI NOEM, *et al.*,

    Defendants-Respondents.

No. 18-cv-10225-MLW

# MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1
II. BACKGROUND .................................................................................................................. 2
III. PROCEDURAL HISTORY .................................................................................................. 4
    A. The Class Action and Settlement Agreement ........................................................... 4
    B. Attempts to Resolve this Dispute ............................................................................... 6
IV. DISCUSSION ....................................................................................................................... 7
V. CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Guilherme Batista Armondes v. Anton Moniz*,
   1:25-cv-10763-DJC, ECF No. 1 (D. Mass) ...............................................................................6, 8

*Disability L. Ctr. v. Mass. Dep't of Corr.*,
   960 F. Supp. 2d 271 (D. Mass. 2012) .............................................................................................5

**Federal Statutes**

8 U.S.C. § 1225(b)(1)(A) ..................................................................................................................8

28 U.S.C. § 1651(a) ..........................................................................................................................2

**Regulations**

8 C.F.R. § 212.7(e)(4) ..................................................................................................................4, 8

**Other Authorities**

Federal Rule of Civil Procedure 23(b)(2) ........................................................................................4

Federal Rule of Civil Procedure 23(e)(2) ........................................................................................5

I.      INTRODUCTION

Class counsel bring this motion to enforce the Settlement Agreement in this case on behalf of class member Guilherme Batista Armondes. The Settlement Agreement requires that, before Immigrations and Customs Enforcement ("ICE") may take an enforcement action against a class member, ICE must consider the individualized facts specific to each class member's case and determine, in good faith, that the class member *currently poses* a threat to public safety or national security. ECF No. 654-1 at 4-5. In cases involving criminal history that is followed by years of rehabilitation, that good-faith decision-making cannot consist of simply pointing to the old criminal conduct and assuming that someone who was once charged and/or convicted of particular offenses poses a threat *today*. But that is what is evidently occurring.

In the case of Mr. Batista, ICE has apparently determined that he poses a threat to public safety and decided to remove him based solely on offenses allegedly committed when he was between 18 and 20 years old—notwithstanding the evidence that for the past three years, Mr. Batista has committed himself to growing his business and supporting his wife and two young children, and has had no further criminal charges. Mr. Batista is not the only example. ICE also detained another class member who was evidently determined to pose a current threat to public safety on the sole basis of a *twelve*-year-old marijuana distribution offense for which he had been sentenced only to probation. Ex. A at 3; Ex. B at 3. Even after the meet-and-confer process was initiated under the Settlement and ICE was provided additional evidence of both class members' rehabilitation, including numerous letters of support showing that both men now devote their lives to running their businesses and caring for their families, ICE declined to release either of the men. Ex. A at 2; Ex. C at 2-4.

That only changed last week when class counsel were hours away from filing a motion asking this Court to intercede in both men's cases. At that point, knowing of the impending motion, counsel for the Government asked for additional time, and ICE was evidently persuaded to release the other class member, preventing this Court from considering his case. Ex. B at 2, 6-7. But that release does not undermine the inference that ICE has equated old criminal history with current dangerousness, without the individualized good-faith consideration that the settlement requires.

With regard to Mr. Batista, the evidence before ICE shows that, notwithstanding his prior charges, he is dedicated to his work, his faith, and his family. Because ICE's decision to remove him does not reflect good-faith decision-making based on individual facts as required under the Settlement Agreement, but rather demonstrates rote reliance on old criminal charges as an automatic harbinger of dangerousness, the Court should order Mr. Batista's release and enjoin further enforcement action against him unless it is based on new evidence that he poses a threat to public safety or national security. Class counsel additionally request that the Court order that Mr. Batista not be moved from Massachusetts pending resolution of this motion to enforce. *See* 28 U.S.C. § 1651(a); *see also, e.g.*, ECF No. 32.

II.   **BACKGROUND**

Mr. Batista arrived in the United States from Brazil in 2016, when he was fourteen years old. Ex. D at 3, 14. In 2019, when he was eighteen years old, Mr. Batista was arrested for possession with the intent to distribute morphine and oxycodone, unlicensed operation of a motor vehicle, failure to stop for police, negligent operation of a motor vehicle, and speeding. Ex. C at 3-4; Ex. D at 9, 11-12. After Mr. Batista admitted to sufficient facts, the case was continued without a finding, and Mr. Batista was sentenced to eighteen months' supervised probation. Ex.

2

C at 3-4; Ex. D at 11-12.  Mr. Batista filed a motion to vacate his plea on April 11, 2025, *see* Ex. D at 10, which was granted on May 8, 2025, and his case has been restored to the trial list, *id.* at 13.  In 2020, when he was nineteen years old, Mr. Batista was arrested in Massachusetts for assault and battery on a household member.  Those charges were dismissed.  *See* Ex. C at 4.  In 2022, at the age of twenty, Mr. Batista was arrested for driving offenses and required to pay a $100 civil penalty.  *Id*.

In 2021, Mr. Batista became a father.  Ex. D at 21, 23.  The record before ICE shows that in the past few years, he has worked to build a stable life for his young family.  *See, e.g., id.* at 24 ("He is always hardworking, the provider of our household, and an amazing father."); *id*. at 34 ("I was present when he became a father to two children and witnessed his transformation into a better person."); *id.* at 32 ("Since I met him I don't remember a time when he was not working, trying to provide for his family, trying to give the best for them.").  In March 2023, he married Vanessa Carvalho Firmino, his longtime partner, with whom he shares two U.S. citizen children—a four-year-old daughter and six-month-old son—and the care of Ms. Carvalho Firmino's older daughter.  *Id.* at 20-24.  In her letter of support, Mr. Batista's wife attests that he "is kind, gentle, and has a big heart," and that he is "an amazing father."  *Id.* at 24.  She affirms that Mr. Batista, as the sole provider for their family, "has never failed to support [their] family while [she] stay[s] home taking care of the children."  *Id*.

The facts before ICE show that Mr. Batista has grown since his experiences as a younger man and is now focused on his family, his faith, and his business—a construction company that he started and continues to grow.  Ex. D at 38 ("Guilherme is a person who's been going to church …. He's had his mistakes in the past but he learned from it, and today he is a responsible man, and a better person overall."); *id*. at 34.  Letters of support demonstrate that, over the past

3

few years, Mr. Batista's employees have come to know him as a hardworking leader who is respectful of his employees and everyone he encounters on job sites. *Id.* at 32 ("I saw him go through a lot with people trying [to] … take advantage of him in work, jobsites, but … he [is] always moving on with a good heart …."); *id.* at 36 ("Guilherme is an honest and hardworking man who is always seeking for new opportunities to ensure the success of his team."); *id.* at 38 (explaining that Mr. Batista's construction company "depends on him to lead.").

ICE detained Mr. Batista on March 18, 2025 and intends to remove him. Ex. C at 2, 10-11; Ex. D at 2. He is currently held at Plymouth County Correctional Facility. Letters submitted to ICE show that his family has suffered emotionally and financially since his detention and would struggle considerably if he were removed. Ex. D at 24 ("Our children [are] suffering from his abrupt absence …."); *id*. at 34 ("His family relies on him, and his family is everything to him.").

### III. PROCEDURAL HISTORY

#### A. The Class Action and Settlement Agreement

This case began in February 2018 with a petition for writ of habeas corpus by named plaintiff Lilian Calderon, who was arrested at a USCIS office where she had appeared for her I-130 interview with her U.S. citizen husband. *See* ECF No. 1. The case became a putative class action in April 2018, and on May 17, 2019, the Court certified the following class under Federal Rule of Civil Procedure 23(b)(2) for the purpose of Counts One, Three, and Four of the complaint: "Any United States citizen and his or her noncitizen spouse who: (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the United States citizen spouse; (3) is not 'ineligible' for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is

within the jurisdiction of Boston Immigration and Customs Enforcement - Enforcement and Removal Operations ('ICE-ERO') field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine)." ECF No. 677 at 2-3.[1]  This same class definition applies to the Settlement Agreement.  ECF No. 654-1 at 2.

On January 16, 2025, this Court approved the Parties' proposed Settlement Agreement after finding it to be fair, reasonable, and adequate in accordance with Rule 23(e)(2).  ECF No. 677 at 4.  The Court retained jurisdiction to enforce the provisions of the Settlement Agreement.  *Id*. at 5-6 (citing *Disability L. Ctr. v. Mass. Dep't of Corr.*, 960 F. Supp. 2d 271, 274, 278-79 (D. Mass. 2012)).

Section III(E) of the Settlement Agreement states that "[a]ny decision to arrest, initially detain, or continue to detain a Noncitizen Class Member, including those Noncitizen Class Members who are discovered to be Noncitizen Class Members after their initial detention decision, shall be approved by a [Deputy Field Office Director ("DFOD")]-level Officer after the consideration and the determination required by Section III(A)."  ECF No. 654-1 at 5.  Similarly, a decision to remove a class member also requires approval by a DFOD-level officer "after providing the consideration and making the determination required by Section III(A)."  *Id*.  Section III(A), in turn, requires Boston ICE ERO, before taking an enforcement action, to both (a) consider the noncitizen class member's I-130 petition and their eligibility to file Forms I-212 and I-601A, and (b) "determine[e], ***in good faith*** and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member ***poses a threat to public safety or threat to national security***."  *Id*. at 4-5 (emphasis added).  This consideration must be made "at each

---

[1] For Count Two of the complaint, the Court certified a sub-class not relevant to the dispute here. The relief provided in the Settlement Agreement is the same for all class members, regardless of membership in this sub-class.

5

Enforcement Action for a known Class Member," which includes the initial arrest, decisions to continue detention, and the decision to remove a class member. *Id*. at 2-5.

### B.     Attempts to Resolve this Dispute

Under the Conflict Resolution Procedures outlined in Section VI(C) of the Settlement Agreement, class counsel have raised and discussed concerns with Respondents about ICE's determinations with respect to Mr. Batista.

Class counsel were informed on April 23, 2025 of ICE's intention to remove Mr. Batista. Ex. C at 12-14. Mr. Batista had filed a habeas petition raising claims separate from the *Calderon* Settlement Agreement on April 3, 2025. *See Guilherme Batista Armondes v. Anton Moniz*, 1:25-cv-10763-DJC, ECF No. 1 (D. Mass). By order in that case, the Government was required to provide 48-hours' notice prior to transferring Mr. Batista out of Massachusetts. *Batista Armondes*, 1:25-cv-10763-DJC, ECF No. 7. On June 24, 2025, in that proceeding, the Government filed a notice of its intent to transfer Mr. Batista out of the jurisdiction for purposes of removal. *Batista Armondes*, 1:25-cv-10763-DJC, ECF No. 13. *Calderon* class counsel contacted counsel for the Government on June 25, 2025 to begin discussions on Mr. Batista's behalf and to ensure that ICE had considered materials submitted by Mr. Batista. Ex. C at 10-11.[2]

Counsel for the Government responded to class counsel on June 27, 2025, agreeing to conduct a new consideration of Mr. Batista's removal determination under Section III(A) of the Settlement Agreement. Ex. C at 5-8. On June 30 and July 7, 2025, counsel for the Government

---

[2] On June 26, 2025, in his habeas case, Mr. Batista moved for emergency relief to allow the *Calderon* process to play out. *Batista Armondes*, 1:25-cv-10763-DJC, ECF No. 15. The Court denied that motion, finding that Mr. Batista "ha[d] not shown that he has a reasonable likelihood of success on receiving any further relief under the *Calderon* settlement," and dismissed his petition. *Batista Armondes*, 1:25-cv-10763-DJC, ECF No. 19.

6

then reported that a DFOD-level officer had again decided to remove Mr. Batista after conducting a new consideration of Mr. Batista's immigration and criminal histories; his I-246 application and Renewed Request for Release packet; his eligibility to file a Form I-601A and an I-212 waiver; and the reasons for the Provisional Unlawful Presence Waiver. *Id*. at 2-4. Counsel for the Government conveyed that ICE would remove Mr. Batista no sooner than July 15, 2025. *Id*. at 2.

On July 15, class counsel again contacted counsel for the Government to inform them that class counsel intended to file a motion to enforce the Settlement Agreement on behalf of Mr. Batista and another class member. Ex. B at 7. Counsel for the Government requested additional time to discuss the class members' cases again with ICE without a pending motion to enforce, which class counsel agreed to in part. *Id*. at 5-7. On July 18, 2025, counsel for the Government responded that ICE had decided to proceed with Mr. Batista's removal, which it said would occur no sooner than five business days later (*i.e.*, by Friday, July 25, 2025). *Id*. at 2.

Pursuant to Section VI(C) of the Settlement Agreement, the Parties have attempted to resolve these issues raised under Section III before bringing them to the Court, and this Court has jurisdiction to hear this Motion to Enforce. ECF No. 677 at 6-7.

## IV.   DISCUSSION

Rather than make a good-faith and individualized determination of *current* threat to public safety, ICE has evidently made a determination that Mr. Batista automatically poses a danger merely because of his past criminal charges, regardless of the age of those charges and the strong evidence of rehabilitation. In doing so, the Government has failed to meet its

7

obligations under Section III(A) of the Settlement Agreement to individually consider "the facts in the Noncitizen Class Member's Case." ECF No. 654-1 at 4.[3]

ICE's determination to remove Mr. Batista is based in large part on a six-year-old non-violent continuance without a finding that has since been vacated. Ex. C at 3-4, 10-12. Mr. Batista was eighteen years old at the time of the incident. *Batista Armondes*, 1:25-cv-10763-DJC, ECF No. 1 at 3. The Government also indicated (without providing details) that ICE took into consideration a domestic assault charge against Mr. Batista from when he was nineteen years old that was ultimately dismissed, as well as an incident involving driving infractions that resulted in only a civil penalty. Ex. C at 3-4. Since then, however, the record before ICE illustrates that Mr. Batista has been a loving husband and caring father to two U.S. citizen children, works tirelessly to support his family, started his own small business in the construction industry, and provides essential personal and professional encouragement to his employees, friends, and those that know him. Ex. D at 23-24, 30-40.

These facts are not indicative of a good-faith determination that Mr. Batista *currently* poses a threat to public safety or national security. On the contrary, the facts before ICE support the opposite conclusion. The only reasonable inference is that, in deciding to pursue Mr. Batista's removal, ICE has determined that his past criminal charges automatically render him a danger irrespective of anything that Mr. Batista has done since that time. ICE decision-making

---

[3] There is no dispute that Mr. Batista is a class member. He has a final order of removal and has not departed the United States under that order; he is married to a U.S. citizen with a pending I-130 application before ICE; he lives in Massachusetts; and he is not ineligible for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi). Mr. Batista's order of removal, however, is procedurally irregular. Mr. Batista was deprived of a full removal proceeding and given an "expedited" order of removal on April 16, 2025—***nine*** years after being paroled into the United States—although he is neither "arriving in the United States" nor within two years of his entry, as the expedited removal statute requires. 8 U.S.C. § 1225(b)(1)(A).

8

involving the other class member discussed here—whom the agency detained on the basis of a marijuana offense twelve years ago—reflects a pattern of conduct that supports the inference that ICE's decision with regard to Mr. Batista was not based on the individualized facts of his case, but on an apparent rule of thumb that anyone who the agency might once have deemed a public safety threat may continue to be deemed a threat, regardless of the age of their criminal history or the other facts of their case.  The Settlement Agreement does not permit such a blanket determination.  Instead, it requires ICE to make a "good faith" determination of whether Mr. Batista *currently* poses any threat, based on the facts *specific* to his case.  See ECF No. 654-1 at 4-5.  Those facts show that he is a father, husband, and diligent businessman and worker who does not have a single criminal conviction on his record and whose only criminal charges date from years ago.  And because ICE has not acted based on good-faith consideration of these facts, the Settlement Agreement authorizes this Court to enter appropriate remedies, including release from detention.  See ECF No. 654-1 at 6-7.

## V. CONCLUSION

For the foregoing reasons, class counsel respectfully request that this Court enforce the Settlement Agreement as to Mr. Batista, order the Government to release him from ICE custody so that he can be reunited with his U.S. citizen spouse, young children, and community, and enjoin any further enforcement action against him unless it is based on new evidence that he poses a threat to public safety or national security.  Class counsel also request that, pending resolution of this motion, the Court order that Mr. Batista not be moved out of Massachusetts.

Respectfully submitted this 22nd day of July, 2025.

*Counsel for the Petitioners*

/s/ *Kevin S. Prussia*
Kevin S. Prussia (BBO # 666813)
Jonathan A. Cox (BBO # 687810)
Christina Luo (BBO # 705590)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
kevin.prussia@wilmerhale.com
jonathan.cox@wilmerhale.com
christina.luo@wilmerhale.com

Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza
Suite 850
Boston, MA 02108
(617) 482-3170
alafaille@aclum.org

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283
kathleenmgillespieesq@gmail.com