UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*,<br><br>Individually and on behalf of all others similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Defendants-Respondents. | C.A. No. 18-10225-MLW |

## RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

### INTRODUCTION

Less than six years ago, Mr. Batista was arrested and originally convicted for possession with intent to distribute a Class A narcotic after the police found over fifty pills, including the highly addictive oxycodone, in his vehicle. Less than five years ago, Mr. Batista was arraigned for domestic violence charges stemming from an incident in which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Less than five years ago, Mr. Batista was arrested again for a driving offense in which police officers observed erratic driving. Mr. Batista is also the husband of a U.S. citizen, has a pending Form I-130, is a father to U.S. citizen children, alleges that he provides for his family with a construction business, and has the support of friends and family. Immigration and Customs Enforcement (ICE) promptly identified him as a *Calderon* class member, considered these and other facts in his case at least four times, and determined that he is a public safety risk

1

and should be removed from the United States. Those determinations, as detailed in the declarations of Deputy Field Office Director Charpentier and Assistant Field Office Director Chan were made in good faith. There is no evidence that ICE engaged in any bad faith or impropriety in its consideration of Mr. Batista's case. Their consideration was honest and faithful to their duty under the Settlement Agreement.

Petitioners disagree that Mr. Batista is a public safety risk. Their motion to enforce attempts to transform their mere disagreement into an argument that ICE made its decision in bad faith and not based on the facts in Mr. Batista's case. But their argument is baseless. There is no per se policy or "rule of thumb" to determine that every *Calderon* class member is a public safety risk if they have engaged in particular criminal conduct. Petitioners' argument to the contrary is nothing more than an attempt to rewrite the terms of the settlement agreement and impose their own "rule of thumb" upon ICE to automatically discount charges they deem to be outdated.

This Court should deny Petitioners' attempt. Petitioners' inferences, assumptions, and allegations are all unfounded. In Mr. Batista's case—the sole case before this Court—the attached declarations demonstrate that ICE made good faith, reasoned decisions based *solely* on the facts in Mr. Batista's case to remove him. ICE did not allow other ICE policies, practices, or immigration enforcement efforts influence their decisions governed by the Settlement Agreement. That the parties or reasonable minds may disagree as to whether Mr. Batista is a public safety risk is not a basis to issue relief under this Settlement Agreement which prescribes an extremely narrow scope of review. Therefore, this Court should deny Petitioners' motion to enforce without delay and without a hearing.

**PROCEDURAL BACKGROUND**

I.  **The Settlement Agreement**

On January 16, 2025, nearly seven years after Petitioners filed their first amended complaint, this Court approved a classwide settlement agreement under Federal Rule of Civil Procedure 23(e)(2). ECF No. 677. The Court retained jurisdiction to enforce the Settlement Agreement (ECF No. 654-1) according to its terms. *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381-82 (1994). The Settlement Agreement generally places conditions on ICE's ability to take enforcement actions, as defined in the Agreement, against alien class members. As relevant here, ICE may continue an alien class member's detention (if they became a class member while detained) or remove them, "only after both (a) considering the Form I-130 visa petition filed on their behalf by their U.S. citizen spouse, the noncitizen's eligibility to file a Form I-212, and their eligibility to file a Form I-601A, and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security." ECF No. 654-1 at 3-4, 5-6. To demonstrate compliance with the Settlement Agreement, ICE must provide a "brief description of the consideration it completed" under the Settlement Agreement no less than five business days before ICE removes the class member. *Id.* at 7.

The Settlement Agreement allows for enforcement in this Court regarding detention and removal decisions "only on behalf of an individual Named Plaintiff or Class Member." *Id.* This Court may enter orders "only as applied to an individual Named Plaintiff or Noncitizen Class Member" and may not enter any order requiring compliance "as applied to categories of Noncitizen Class Members." *Id.* Additionally, any court order "shall be limited to addressing the case of the specific Named Plaintiff or Noncitizen Class Member whose facts are before the Court." *Id.*

3

## II.   ICE's Consideration of Mr. Batista's Case

Mr. Batista is a native and citizen of Brazil. Declaration of John Charpentier, Ex. A ¶ 5. He entered the United States without inspection and was shortly thereafter arrested by Customs and Border Protection (CBP) and released after he expressed a fear of return to Brazil. *Id.* Mr. Batista's removal order became administratively final on April 16, 2025, while he was in detention. *Id.* ¶ 10. On April 17, 2025, ICE promptly identified him as a *Calderon* class member and considered his case under the terms of the Settlement Agreement to determine whether it should continue Mr. Batista's detention. *Id.* ¶ 11. DFOD Charpentier decided to continue his detention after he considered Mr. Batista's pending Form I-130 petition, his eligibility to file a Form I-212 and Form I-601A and other facts in Mr. Batista's case, which included his criminal history, and determined in good faith that he was a public safety risk. *Id.* That criminal history included a 2019 arrest and conviction for possession with an intent to distribute a Class A drug (oxycodone and morphine), a 2020 arrest for assault and battery on a family member, and a 2022 arrest for operating a motor vehicle with a suspended license for which the corresponding police report indicated he was driving erratically. *Id.* DFOD Charpentier did not consider or otherwise allow factors not provided in the Settlement Agreement to influence his consideration of Mr. Batista's case. *Id.* ¶ 22.

On or around April 22, 2025, Assistant Field Office Director (AFOD) Keith M. Chan, acting as DFOD in DFOD Charpentier's absence, determined to remove Mr. Batista. Declaration of Keith M. Chan, Exhibit B ¶ 14. He did so after considering Mr. Batista's pending Form I-130 petition, his eligibility to file a Form I-212 and Form I-601A and other facts in Mr. Batista's case,

4

which included his criminal history and documents his counsel submitted in support of his release. *Id.* AFOD Chan did not consider or otherwise allow factors not provided in the Settlement Agreement to influence his consideration of Mr. Batista's case. *Id.* ¶ 16. On April 23, 2025, ICE provided notice and explanation under the Settlement Agreement of its decision to remove Mr. Batista. ECF No. 692-3 at 12.

Mr. Batista failed to cooperate with Brazil's government to obtain a travel document which significantly delayed his removal from the United States. Ex. A. ¶ 12. He also filed a habeas petition and motion for temporary restraining order before Judge Casper who denied the habeas petition and motion for a temporary restraining order finding that ICE had complied with the *Calderon* Settlement Agreement. *Batista Armondes v. Moniz,* 1:25-cv-10763, ECF No. 19 (D. Mass. July 3, 2025). After Mr. Batista filed his habeas petition and two months after Respondents' counsel were provided notice of ICE's intent to remove Mr. Batista, Petitioners' counsel invoked the conflict resolution procedures under the Settlement Agreement. ECF No. 692-3 at 10-11. They alerted ICE to documents that Mr. Batista's counsel recently submitted in support of Mr. Batista's release. *Id.* ICE agreed to conduct a new round of consideration under the Settlement Agreement to consider these new materials. *Id.* at 6-7.

On June 27, 2025, DFOD Charpentier considered the materials Mr. Batista submitted in support of his release including his Form I-246, Application for a Stay of Removal, and Renewed Request for Release. Ex. A ¶ 14. DFOD Charpentier considered Mr. Batista's criminal history and the information submitted in support of his release. *Id.* He considered that Mr. Batista alleges that he is the owner of a construction company and uses this income to support his family, but Mr. Batista did not include any objective evidence of this business or that he pays taxes on the income of this business. *Id.* ¶ 19. He considered all of the letters from Mr. Batista's family members and

5

friends, but these letters spoke generally of his character and the information Mr. Batista submitted did not include enough objective evidence verifying the claims made in the letters. *Id.* DFOD Charpentier also considered that although Mr. Batista's conviction for possession with intent to distribute was vacated, it was vacated on grounds that were unrelated to the underlying police report that DFOD Charpentier found to be specific and highly credible. *Id.* ¶ 16. Finally, DFOD Charpentier also again considered Mr. Batista's eligibility to file a Form I-212 and Form I-601A in the future and the purpose of the provisional unlawful presence waiver. *Id.* ¶ 14. Ultimately, DFOD Charpentier honestly and in good faith determined Mr. Batista is a public safety risk. *Id.* ¶ 20. DFOD Charpentier did not consider or otherwise allow factors not provided in the Settlement Agreement to influence his consideration of Mr. Batista's case. *Id.* ¶ 22.

On or about July 28, 2025, ICE obtained the police report for Mr. Batista's 2020 domestic violence arraignment. *Id.* ¶ 21. The police report states that police were called to a residence for a domestic disturbance. *Id.* ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████ As a result of this newly obtained information, DFOD Charpentier conducted a new round consideration under the Settlement Agreement of Mr. Batista's case. *Id.* He considered all of the information described *supra,* in addition to the police report related to Mr. Batista's 2020 arraignment and again determined that he was a public safety risk and should be removed from the United States. *Id.*

## STANDARD OF REVIEW

This Court's review under the Settlement Agreement is limited to whether "the facts of a non-citizen class member's case persuaded the deputy field office direct to decide in good faith

that this person posed a threat to public safety." Tr. August 6, 2025 Hr'g. at 30:15-19. The Settlement Agreement does not define "good faith," but the First Circuit has applied the Black's Law Dictionary definition consisting, as relevant here, of (1) honesty in belief or purpose, and (2) faithfulness to one's duty or obligation. *Kaufman v. C.I.R.,* 784 F.3d 56, 70 (1st Cir. 2015); *see also, In Re Keach,* 243 F.R. 851, 856 (B.A.P. 1st Cir. 2000) (citing Black's Law Dictionary).

**ARGUMENT**

I. **ICE Decided to Take Enforcement Actions Against Mr. Batista in Good Faith Based on the Facts in Mr. Batista's Case.**

ICE Boston complied with the terms of the Settlement Agreement as applied to Mr. Batista at every turn. ICE made its determination that Mr. Batista is a public safety risk (1) in good faith, (2) based on the facts in Mr. Batista's case, and (3) after considering his eligibility to apply for a Form I-601A and Form I-212 as required by the Settlement Agreement. *See generally* Exs. A-B. There is no evidence that DFOD Charpentier or AFOD Chan applied any per se rule or allowed factors outside those provided in the Settlement Agreement to influence their decisions. Therefore, ICE has complied with the Settlement Agreement and this Court should deny Petitioners' motion.

**A. Each of ICE Boston's Determinations Complied with the Settlement Agreement.**

To ascertain ICE's compliance with the Settlement Agreement, this Court should review ICE's most recent consideration of the facts in Mr. Batista's case in August 2025 because it is the most recent decision and was based on the most comprehensive record of the facts in Mr. Batista's case However, regardless of whether this Court reviews ICE's June or August 2025 decision to remove Mr. Batista, this Court should deny Petitioners' motion because both decisions complied with the Settlement Agreement.

The Settlement Agreement requires ICE to make a determination that an alien class member is a public safety risk prior to removing them. ECF No. 654-1 at 3-4, 5-6. It does not

prohibit ICE from reconsidering its decision. In fact, it is frequently in the alien's interest for ICE to do so and reconsideration pursuant to newly obtained facts is consistent with the Settlement Agreement's requirement that ICE consider the "facts in the noncitizen class member's case." ECF No. 654-1 at 5-6. It is also consistent with the Settlement Agreement's requirement that ICE consider the class member's case at several defined points in the removal process to ensure *all* the facts, as they arise and as they are discovered, are considered prior to removal. *See id.* Here, ICE reconsidered its decision upon Mr. Batista's request after Mr. Batista submitted information in support of his release, which was proper. *Id.* ¶ 14. ICE again reconsidered its decision after it was able to obtain the police report underlying Mr. Batista's arraignment for a domestic violence charge, which was likewise proper. *Id.* ¶ 21.

To the extent Petitioners fault Defendants for obtaining new information after they filed their motion to enforce, such criticism is unwarranted. Petitioners cannot have it both ways. They cannot argue that ICE is required under the Settlement Agreement to consider information Mr. Batista submitted weeks after making its decision to remove him in April but prohibited from collecting additional information *sua sponte*. Petitioners cannot accuse ICE of improperly considering Mr. Batista's 2020 arraignment for domestic violence charges and also argue that ICE is precluded from obtaining information relevant to whether ICE properly considered the 2020 arraignment as a negative factor.

Additionally, there is no evidence that ICE obtained and considered the police report for Mr. Batista's domestic violence arraignment in bad faith. *See Nelson v. USCIS,* No. 21-10334-LTS*, 2022 WL 20583561 at *10 (D. Mass. June 15, 2022) (noting that USCIS is permitted by regulation to reopen its decision and USCIS's decision to reopen after the initiation of litigation is not alone enough to establish that the agency reopened its decision in bad faith). Nor is ICE's

consideration of the police report a post hoc rationalization (as Petitioners may argue). ICE consistently identified Mr. Batista's arraignment on domestic violence charges as a factor relevant to its decision that Mr. Batista is a public safety risk. The police report is merely confirmation of ICE's concern arising from the 2020 arraignment. Moreover, the police report had the potential to aid Mr. Batista's argument supporting his release had it not supported ICE's previously noted concern.

Finally, ICE's timing in obtaining this police report does not prejudice Mr. Batista. Mr. Batista has known since April that ICE considered his arraignment for these charges as a negative factor and could have responded to ICE's consideration of those charges at any time. He chose not to specifically address the facts underlying these charges. Moreover, ICE's ability to obtain police reports is well known to Petitioners, Mr. Batista, and Mr. Batista's counsel. It cannot come as a surprise that ICE would obtain this report. Therefore, for all these reasons, this Court should consider ICE's August 2025 decision to remove Mr. Batista which was based on the most comprehensive record of the facts in Mr. Batista's case. However, for the reasons discussed *infra,* each of ICE's decisions complied with the Settlement Agreement.

**B. Petitioners' Allegations of Noncompliance are Baseless.**

Petitioners appear to have two bases for their allegation that ICE did not make its June 2025 decision to remove Mr. Batista in good faith based on the facts in Mr. Batista's case as required by the Settlement Agreement. First, Petitioners contend that ICE could not have made a compliant decision to remove Mr. Batista because Mr. Batista's criminal history is so old and his support and the materials submitted in support of his release are so compelling. *See* ECF No. 691 at 11-12. But, as illustrated by DFOD Charpentier's declaration, ICE carefully considered the materials submitted in support his release, including the information he submitted concerning his

9

construction business, fatherhood, and support of his family, and determined that he was nonetheless a public safety risk. Ex. A. ¶ 19. DFOD Charpentier gave a reasoned explanation for why he found Mr. Batista's criminal history so concerning and why Mr. Batista's supporting evidence did not, in his honest estimation, remedy those concerns. *Id.* ¶¶ 14-20. That reasoned explanation defeats Petitioners' motion. That Petitioners or reasonable minds may disagree with the way ICE considered the facts in Mr. Batista's case is immaterial to whether ICE complied with the Settlement Agreement by determining in good faith that Mr. Batista is a public safety risk. ICE did not ignore, outright dismiss, or otherwise refuse to consider the positive factors in Mr. Batista's case. ICE duly considered them, considered them against his serious criminal history, including for a violent crime, and determined he is a public safety risk. That determination was honest andnot influenced by factors not provided in the Settlement Agreement.Therefore, DFOD Charpentier was faithful to his duty under the Settlement Agreement. *See Kauffman,* 784 F.3d at 70.

      Petitioners' second basis for their allegation that ICE did not determine in good faith that Mr. Batista is a public safety threat is that ICE has a "rule of thumb" that "automatically render[ed]" Mr. Batista a public safety risk based on his criminal history. ECF No. 691 at 11-12. But ICE has no "rule of thumb." Ex. A. ¶ 3. ICE does not have some pre-determined list of criminal history that would automatically render a class member a public safety risk. *Id.* Rather, DFOD Charpentier employed his practice of considering "all the facts in a noncitizen class member's case that are presented to [him]" to determine that Mr. Batista is a public safety risk. *Id.* Those facts included Mr. Batista's pending charges for possession with intent to distribute a Class A narcotic and his arraignment for domestic violence. They also included facts favorable to Mr. Batista. ICE reasonably found that despite these facts, Mr. Batista posed a risk to public safety. Contrary to Petitioners' contention, there is another "reasonable inference," ECF No. 691 at 11, to be drawn

10

from Mr. Batista's case: Petitioners disagree that Mr. Batista is a public safety risk. However, that disagreement cannot be transformed into a finding of bad faith considering DFOD Charpentier's detailed, reasoned declaration. Accordingly, this Court should deny Petitioners' motion without delay.

To the extent Petitioners attempt in their reply[1] to argue that DFOD Charpentier's June 2025 decision was not in good faith because it is not "consisten[t] with the justified expectations of the other party," that argument also fails. *See Restatement (Second) of Contracts* § 205 (1981). There is nothing in the Settlement Agreement that gives Petitioners a justified expectation that ICE would discount criminal history after a certain period of time has passed nor is there an expectation that the type of evidence Mr. Batista has submitted would categorically cause ICE to find that an alien is not a public safety risk. And there certainly cannot be a justified expectation that ICE would find that an alien does not pose a public safety risk after being arraigned for a violent crime against a member of their household and being charged with possession for intent to distribute a narcotic. This criminal history has a clear, undisputed nexus to public safety. That ICE did not believe the positive factors in Mr. Batista's case to remediate his serious criminal history is not unreasonable nor outside the reasonable expectation of the parties. Based on ICE's conduct both before and after the implementation of this Settlement Agreement, Petitioners have no reasonable basis to claim they could not expect ICE to find Mr. Batista a public safety risk. Indeed, as DFOD Charpentier's declaration explains, he honestly believes he would have made the same decision to remove Mr. Batista a year ago. Ex. A ¶ 22. Petitioners may not like ICE's determination, but they cannot claim, nor have they demonstrated, that there was no basis to expect it.

---

[1] Petitioners did not define "good faith" in their motion. *See* ECF No. 691.

Ultimately, this dispute stems from Petitioners' apparent belief that they—not ICE—get to determine whether a class member is a public safety risk. But that is not the agreement the parties reached, and that is not what the Settlement Agreement provides. Petitioners' mere disagreement with ICE's good-faith determination that Mr. Batista is a public safety risk is not evidence of bad faith and does not constitute a violation of the Settlement Agreement. Accordingly, this Court should deny Petitioners' motion in its entirety.

## II.     A Hearing is Unnecessary.

A hearing is unnecessary to resolve this dispute. The declarations of AFOD Chan and DFOD Charpentier disclaim the bases for Petitioners' motion. There is no reasonable basis to believe that their live testimony would differ from their declarations which fulsomely explain their decision-making process with regard to Mr. Batista. Nor is this a case where a review of the facts in Mr. Batista's case would compel any reasonable person to find that he is *not* a public safety risk such that a hearing is necessary to more fully understand ICE's decision. Moreover, holding a hearing in these circumstances where Petitioners have no evidence of ICE impropriety under the Settlement Agreement could induce other class members to file baseless motions to enforce in an attempt to unnecessarily delay their removal by another few months. ICE has been trying to remove Mr. Batista since April; accordingly, this Court should rule in favor of Respondents without delay.

## III.    The Deliberative Process, Attorney Client and Attorney Work Product Privileges Apply to Some of ICE Boston's Internal Communications.

### A. Deliberative Process Communications

The deliberative process privilege is a governmental privilege which "rests on a policy of affording reasonable security to the decision-making process within a government agency." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 884 (1st Cir. 1995). "[T]o qualify for the privilege, a document must be (1) predecisional, that is, "antecedent to the

adoption of agency policy," and (2) deliberative, that is, actually "related to the process by which policies are formulated." *Id.* This privilege is qualified and is not absolute. *Id.* "In deciding how to exercise its discretion, an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Id.* Other factors that courts consider when balancing the competent interests involved include: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008).

"[W]here the documents sought may shed light on alleged government malfeasance," courts have refused to recognize the privilege. *Id.; see also In re Subpoena Duces Tecum,* 145 F.3d. 1422, 1424 (D.C. Cir. 1998). However, neither the First Circuit nor the D.C. Circuit has categorically held that the privilege does not apply in *any* case in which an agency's subjective motivations are *an* issue. Rather, the D.C. Circuit has held that the privilege is only unavailable in "circumstances in which the cause of action is *directed at* the agency's subjective motivation." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998) (panel rehearing) (emphasis added). The First Circuit has recognized that "'strong showing' of arbitrariness and discriminatory motives" or a conclusion that the government acted in bad faith can form the basis for piercing the privilege. *Texaco Puerto Rico, Inc.,* 60 F.3d at 884.

The communications between ICE officials related to Mr. Batista over which Respondents may seek to formally invoke a privilege fall within the core of the deliberative process privilege. They are pre-decisional because they occurred prior to a decision to take enforcement action

against Mr. Batista. They are deliberative because they directly relate to the enforcement decisions regarding Mr. Batista and contain the recommendations one ICE official made to another. *See Dep't of the Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001) (noting that privilege applies to recommendations).

While Petitioners' claim that ICE's subjective motivation is an issue in this dispute, this Court should nonetheless protect from disclosure such core deliberative process for several reasons. First, Petitioners have not made a "strong showing" of bad faith or improper motives especially considering the availability of other evidence (the declarations of AFOD Chan and DFOD Charpentier) which disclaim any bad faith or consideration of improper factors. Second, disclosure of this deliberative material would have a severe chilling effect on ICE's candid discussions of enforcement actions and may discourage exchanges over email altogether. Finally, a narrower solution at this juncture exists. If this Court is inclined to order the release of this deliberative information, this Court should review it in camera to properly weigh the appropriate factors, including: the information's relevance to this dispute and the availability of other evidence.

### B.  Attorney Client and Attorney Work Product[2]

Many of the communications referenced in this Court's order are protected by the attorney client privilege and attorney work product privilege. AFOD Chan and DFOD Charpentier exchanged numerous emails with their attorneys regarding Mr. Batista. All of these communications were exchanged with the purpose of seeking and giving legal advice concerning compliance with the Settlement Agreement. These communications are therefore protected from disclosure under the attorney client privilege. *See Cavallaro v. United States,* 284 F.3d 236, 245 (1st Cir. 2002)

---

[2] Respondents' understanding is that neither this Court nor Petitioners seek communications Respondents reasonably believe are covered by these privileges. Nonetheless, Respondents include this argument to preserve it.

(describing the essential elements of the privilege as "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."). Additionally, some of these communications between ICE Boston and their counsel and between ICE Boston officials include attorney work product because they contain materials reviewed by and/or prepared by attorneys for litigation purposes. *See State of Maine v. U.S. Dept. of Interior,* 298 F.3d 60, 66-67 (1st Cir. 2002) (describing the attorney work product privilege).

### IV. The Applicability of the Federal Rules of Evidence

Depending on the testimony at any live hearing, the Federal Rules of Evidence would apply to at least some of it. *See* Fed. R. Evid. 1101. This is a civil case and none of the noted exceptions in the Rules of Evidence apply to live testimony related to this motion. *See* Fed. R. Evid. 1101(d). However, the Federal Rules of Evidence do not apply to administrative proceedings and therefore would not apply to the facts that ICE considered when making its decisions regarding Mr. Batista nor would they apply to ICE testimony about those facts. *See Johnson v. Boston Public Schools,* 906 F.3d 182, 192 (1st Cir. 2018) ("Absent an express requirement, however, administrative hearings are not bound by the Federal Rules of Evidence."). Accordingly, while the Rules of Evidence may apply to some of the live testimony in any hearing before this Court, the applicability of those Rules in any hearing would be limited by the principle that these Rules do not apply to the facts of Mr. Batista's case before ICE. *See id.*

### V. An Order on Petitioners' Motion to Enforce Would be Appealable.

There does not appear to be any basis to conclude that this Court's decision granting or denying Mr. Batista's motion to enforce the Settlement Agreement would not be appealable. The

First Circuit has reviewed the merits of other decisions enforcing settlement agreements. *See, e.g., Metro-Goldwyn Mayer, Inc. v. 007 Safety Products, Inc.* 183 F.3d 10, 14-15 (1st Cir. 1999) (reviewing a district court's order granting an injunction for violation of a settlement agreement). Accordingly, this Court's decision on Petitioners' motion would be appealable. *See id.*[3]

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioners' motion and allow Mr. Batista's removal without delay.

Respectfully submitted,

| | |
|---|---|
| BRETT A. SHUMATE<br>Acting Assistant Attorney General | /s/ *Mary L. Larakers*<br>MARY L. LARAKERS<br>Senior Litigation Counsel |
| ELIANIS N. PEREZ<br>Assistant Director | U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br>(202) 353-4419<br>(202) 305-7000 (facsimile)<br>Mary.l.larakers@usdoj.gov |

---

[3] The Parties conferred on August 14, 2025 as ordered. *See* ECF No. 706. It is Respondents understanding that the Parties have come to some agreement over some of the items listed in this Court's order which will be reflected in Petitioners' reply.

**CERTIFICATE OF SERVICE**

   I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                    /s/ *Mary L. Larakers*
                    Mary L. Larakers
Dated: August 15, 2025         Senior Litigation Counsel