# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*,<br><br>Individually and on behalf of all others similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Defendants-Respondents. | C.A. No. 18-10225-MLW |

### DECLARATION OF ACTING DEPUTY FIELD OFFICE DIRECTOR JOHN CHARPENTIER

Pursuant to the authority of 28 U.S.C. § 1746, I, John Charpentier, acting Deputy Field Office Director for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1. I am a currently serving as an acting Deputy Field Office Director ("(a)DFOD") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, ("ICE") Enforcement and Removal Operations ("ERO"). I have been in this position since February 24, 2025.

2. As part of my official duties, I am the primary DFOD assigned to making enforcement

1

decisions regarding *Calderon* class members under the Settlement Agreement in this case. I am familiar with the history of this case, and I carefully read the Settlement Agreement and familiarized myself with its contents and requirements. I have also discussed the Settlement Agreement with my counsel. I am specifically familiar with the Settlement Agreement's requirements regarding enforcement actions. I understand that the Settlement Agreement requires that before taking an enforcement action against a class member ERO Boston must consider the Form I-130 visa petition filed on the class member's behalf and their eligibility for any Form I-601A and/or Form I-212 waiver. I am also aware that the Settlement Agreement requires that before taking an enforcement action against a class member, ERO Boston must also determine in good faith and based on the facts in the class member's case that the class member is a threat to public safety or national security.

3. I routinely make enforcement decisions regarding *Calderon* class members including whether to continue detention, to release a class member or to effectuate removal. I carefully make each decision on a case-by-case basis, reviewing the facts of each case. I do not make a determination on whether Boston ERO will take an enforcement action based on any one factor. I consider all the facts in a class member's case that are presented to me including as applicable: the purpose of the provisional waiver regulations, the Form I-130 filed on the class member's behalf and their eligibility to file a Form I-601A and Form I-212, their family and community ties, any specific needs of their children and family members, criminal activity (or lack thereof), the nature and facts of any criminal charges, evidence of rehabilitation, and any statements submitted by them or on their behalf. Although I consider an alien's criminal history when determining whether a class

member is a public safety risk, I do not automatically determine that an alien is a public safety risk based solely on any specific criminal activity, including drug activity. If information is obtained by ICE or submitted by or on behalf of a class member and presented to me after my initial determination that an alien class member is a public safety risk, I take all evidence into consideration as I did in Mr. Batista's case. I look at the totality of the facts in the alien's case as if I am looking at the facts for the first time. If needed, I will have conversations with my counsel to ensure my determination complies with the Settlement Agreement[1].

4. In preparing this declaration, I have examined ICE official records, emails, records pertaining to Mr. Batista's criminal history, and documents submitted to ERO by Mr. Batista. Before this Court's sequestration order (ECF No. 702), I also discussed Mr. Batista's case with Assistant Field Office Director Keith M. Chan.[2]

5. Mr. Batista is not a citizen or national of the United States. He is a native and citizen of Brazil. He last entered the United States in 2016 and was shortly thereafter, encountered, and arrested by United States Customs and Border Protection ("CBP"). CBP issued Mr. Batista a Form I-860, Notice and Order of Expedited Removal, and paroled Mr. Batista from custody after he expressed a fear of return to his home country. CBP did not execute the order of removal on the Form I-860.

6. On March 18, 2025, ERO arrested and detained Mr. Batista. He was referred to the Asylum Office at United States Citizenship and Immigration Services ("USCIS") for a credible fear interview based upon his stated fear of return to Brazil. Mr. Batista was not

---

[1] I have also communicated with counsel for both ICE and DOJ about Mr. Batista's case.
[2] On August 1, 2025, I communicated via email with Supervisory Deportation Officer ▇▇▇▇▇▇, in which he simply forwarded me AFOD Chan's April 22, 2025 enforcement determination.

3

a class member at the time of his administrative arrest as he was not subject to a final order of removal and did not have a pending or approved Form I-130 filed by a United States citizen spouse.

7. On March 25, 2025, Mr. Batista's United States citizen spouse filed a Form I-130 on his behalf.

8. On or about April 1, 2025, USCIS found that Mr. Batista did not have a credible fear of return to Brazil, and Mr. Batista requested that an Immigration Judge review that determination.

9. On or about April 16, 2025, an Immigration Judge affirmed the decision by USCIS.

10. On or about April 16, 2025, ICE executed Mr. Batista's I-860 removal order and Mr. Batista became subject to a final order of removal.

11. On April 17, 2025, I communicated via email with AFOD Keith Chan regarding the need for a DFOD level continued detention review for Mr. Batista as required by the Settlement Agreement. I conducted such a review and considered the Form I-130 filed by Mr. Batista's U.S. citizen spouse, Mr. Batista's eligibility to file a Form I-212 and Form I-601A waiver, the reasons for those waivers, and the other facts in Mr. Batista's including his criminal history. I noted that his criminal history included convictions for two counts of possession with intent to distribute a class A controlled substance, his charge for domestic violence, and his arrest for operating after a suspended license. Based upon the facts in his case, I determined that Mr. Batista poses a threat to public safety and approved his continued detention.

12. Mr. Batista was not promptly removed from the United States because he refused to cooperate with the government of Brazil concerning the issuance of a travel document.

Due to his lack of cooperation, ERO was required to obtain a certificate of nationality from Brazil which significantly delayed the removal process.

13. On or about May 8, 2025, Mr. Batista's convictions for two counts of possession with intent to distribute class A drugs (Morphine and Oxycodone) were vacated. The motion to vacate was based on a procedural issue regarding the interpreter used at his change of please hearing and did not challenge the facts contained in the police report, nor the types of drugs at issue. The case remains pending at this time.

14. On or about June 27, 2025, I was presented with additional information submitted on Mr. Batista's behalf in support of his release from custody. Upon being presented with this information, I considered Mr. Batista's case to determine whether, based on the totality of the facts now presented to me, he is a public safety risk. I considered all of these facts as if it was the first time the case was presented to me for review. I considered the individual facts of his case, including: the purpose of the provisional waiver, the Form I-130 filed on the class member's behalf and their eligibility to file a Form I-601A waiver and I-212 waiver, the vacatur of his possession with intent to distribute conviction, the reason for the vacatur, the information and documents contained in his request for a stay of removal, the documents and information in Mr. Batista's renewed request for release, and the underlying facts surrounding his criminal history. After conducting an individualized review and taking all facts and circumstances into account, I determined, in good faith, that Mr. Batista still posed a threat to public safety and decided to continue with efforts to effectuate Mr. Batista's removal order.

15. Also on or about June 27, 2025, I communicated via email with AFOD Keith Chan regarding my review of Mr. Batista's case under the Settlement Agreement and of my

decision to move forward with his removal.

16. In making my determination I was very concerned about the now pending charges of two counts of possession with intent to distribute a class A controlled substance and corresponding police report because the drugs involved were narcotics, specifically Morphine and Oxycodone, which are both schedule A controlled substances. I also considered that while the conviction was vacated, it was vacated on grounds which I did not believe cast doubt on the facts in the police report underlying the conviction. I considered that the incident occurred in 2019 but did not believe that passage of time to be particularly significant. I found the police report to be detailed and reliable. I was particularly concerned about the quantity of pills, nearly 60 pills, found in Mr. Batista's vehicle and the inconsistencies between the statements of the passenger and Mr. Batista concerning the source of the pills. I did not find Mr. Batista's statements to police to be particularly persuasive. I also took into consideration the negative effects that the sale of narcotics has on the community at large.

17. I also considered that Mr. Batista had contact with law enforcement in 2019, 2020, and 2022. Although at the time I made the determination to remove Mr. Batista on or around June 27, 2025, I did not have the police report underlying his 2020 arraignment on domestic violence charges, I found the fact that he had been charged with domestic violence concerning.

18. I also considered the facts surrounding Mr. Batista's 2022 driving without a license. Mr. Batista was observed driving at a high rate of speed, crossing over into the oncoming lane and sparks were observed coming from his car. I considered that this charge was reduced to a civil infraction. If this charge was his only criminal history I would have found it to

be much less significant. However, I found it to be more concerning when coupled with Mr. Batista's past criminal conduct and it contributed to my finding that Mr. Batista was a threat to public safety.

19. I also took into consideration the information in Mr. Batista's request for a stay of removal and renewed request for release. I considered his U.S. citizen spouse, their children, his other family ties in the United States, his residence in the United States and his work history. I also considered the photos Mr. Batista submitted and the letters written in support of Mr. Batista by community members and his family, including his U.S. citizen wife, his mother and stepfather. These letters speak about Mr. Batista's character generally, stating Mr. Batista has grown and is a good father and husband, but I did not find them very persuasive because of the insufficient evidence verifying their claims in Mr. Batista's submissions. For example, the letters mention he owns a construction company that supports his family, but Mr. Batista did not submit any objective proof of his company including information I would expect to see from a business owner, such as tax returns to show he pays taxes on any income derived from his company, proof of the existence of the company, registration as a business with the Secretary of State, evidence of insurance, or proof that he is paying his workers per required law.

20. Based upon all of these facts in Mr. Batista's case, I honestly, and in good faith determined that under the Settlement Agreement he is a public safety risk and to effectuate his removal from the United States.

21. On or about July 28, 2025, Boston ERO obtained the police report for Mr. Batista's arraignment for domestic violence charges in 2020 in order to understand the facts which led to Mr. Batista's domestic violence charge. When presented with these additional facts,

I again considered all of the facts in Mr. Batista's case as outlined above in addition to the facts contained in the police report for this incident as required by the Settlement Agreement. The facts contained in the police report for this incident gave me additional concern for the safety of the community, ███████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███ While I had already determined in good faith that Mr. Batista is a public safety risk based on the facts in his case in June 2025, I determined again, based on the facts in Mr. Batista's case and consistent with the Settlement Agreement that he is a public safety risk.

22. The record of facts I considered when determining to proceed with Mr. Batista's removal from the United States in June 2025 and August 2025 is attached as Exhibit 1 to this declaration. I am aware of the Administration's desires and efforts to increase enforcement of the immigration laws as enacted by Congress and to effectuate removal orders entered in accordance with such laws. I am not aware of any specific ordered quota of arrests or removals for the Boston ERO office. Regardless of any increased immigration

enforcement efforts and the Administration's goals, in order for Boston ERO to take an Enforcement Action against a *Calderon* class member and against Mr. Batista in particular, I am bound by the terms of the Settlement Agreement, which limits my consideration to the factors stated in the Settlement Agreement. The Settlement Agreement requires that I consider the Form I-130 visa petition filed on the noncitizen's behalf by their U.S. citizen spouse, the noncitizen's eligibility to file a Form I-212, and their eligibility to file a Form I-601A. I am also required to make a determination based in good faith and on the facts in the class member's case that the class member poses a threat to public safety or a threat to national security. I am also aware that Boston ERO must conduct this consideration before deciding whether to take any Enforcement Actions defined under the Settlement Agreement against class members. Consistent with the Settlement Agreement, I limited my consideration of whether to continue Mr. Batista's detention and remove him from the United States to the facts in Mr. Batista's case as summarized in this declaration and as detailed in Exhibit 1. If I reviewed Mr. Batista's case a year ago, I would have arrived at the same conclusion based on the totality of facts in his case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed on the 15th of August 2025.

*Digitally signed by J 7484 Charpentier*
*Date: 2025.08.15 13:17:57 -04'00'*

John Charpentier
Acting Deputy Field Office Director
U.S. Department of Homeland Security
United States Immigration and Customs Enforcement
Burlington, Massachusetts