# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*,<br><br>Individually and on behalf of all others similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Defendants-Respondents. | C.A. No. 18-10225-MLW |

**DECLARATION OF ASSISTANT FIELD OFFICE DIRECTOR KEITH CHAN**

Pursuant to the authority of 28 U.S.C. § 1746, I, Keith Chan, Assistant Field Office Director for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1. I am a currently serving as an Assistant Field Office Director ("AFOD") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, ("ICE") Enforcement and Removal Operations ("ERO"). I have been in the position since May 8, 2022.

2. Included in my official duties as an AFOD in Burlington, Massachusetts is the responsibility for assisting in and the managing, monitoring, scheduling and execution of removal orders for aliens in ICE custody. I am familiar with ICE policies and procedures for detaining aliens to initiate removal proceedings or to effectuate removal orders.

3. As part of my official duties, I am involved with the detention and removal of

1

*Calderon* class members. Occasionally I assume the duties of a Deputy Field Office Director ("DFOD"). While an Acting DFOD, I have made enforcement decisions regarding *Calderon* class members under the Settlement Agreement. I am familiar with the history of this case and I carefully read the Settlement Agreement and familiarized myself with its contents and requirements. I have also discussed the Settlement Agreement with my counsel. I am specifically familiar with the Settlement Agreement's requirements regarding enforcement actions. I understand that the Settlement Agreement requires that before taking an enforcement action against a class member, a DFOD level manager or above must consider the Form I-130 visa petition filed on the alien class member's behalf and their eligibility for any Form I-601A and/or Form I-212 waiver. I am also aware that the Settlement Agreement requires a good faith determination that the class member is a threat to public safety and that determination must be made on the facts specific to that class member's case.

4. As acting DFOD, I have made enforcement decisions regarding *Calderon* class members which include whether to continue detention and the removal of class members. I carefully make each decision on a case-by-case basis and stay within the bounds of the Settlement Agreement's requirements. I do not make determinations based on any one factor but based on all factors present in each individual case. I consider all the facts in a noncitizen class member's case that are presented to me including the purpose of the provisional waiver regulations, the Form I-130 filed on the class member's behalf and their ability eligibility to file a Form I-601A and Form I-212, their connection to their family and community whether they have a criminal history and the nature and facts of any criminal history, evidence of rehabilitation, and

any statements or other information submitted by them or on their behalf. I do not make determinations that a class member is a public safety risk based solely on criminal history or any specific type of criminal activity. I make my determinations under the Settlement Agreement based on a good faith review of all factors present in each case. I also have conversations with my counsel if necessary to ensure my determination complies with the Settlement Agreement.

5. In preparing this declaration, I have examined ICE official records, emails, the criminal history of Mr. Guilherme Batista Armondes. ("Batista") and the information contained in submissions by his counsel on his behalf. Before this Court entered its Sequestration Order (ECF No. 702), I also discussed this case internally with several ERO personnel as described below.

6. On April 16, 2025, I received an email communication from Supervisory Detention Deportation Officer ("SDDO") ███ ███████ seeking DFOD review of the continued detention of Mr. Batista. On April 17, 2025, I communicated via email with DFOD John Charpentier regarding the continued detention of Mr. Batista. Later that day, DFOD Charpentier made the decision to continue detention of Mr. Batista and I communicated that decision to Deportation Officer ████ ██████

7. On April 18, 2025, I reviewed an email communication requesting approval for a state district court's issuance of a writ of habeas corpus for April 24, 2025, seeking Mr. Batista's appearance in Milford District Court via Zoom, for a hearing on his motion for a new trial. I approved the habeas request.

8. On April 22, 2025, I communicated with SDDO ████ ███████ regarding DFOD review of Mr. Batista's removal and after reviewing Mr. Batista's case under the

3

Settlement Agreement as more fully detailed below, communicated back to SDDO ▮ that I had determined Mr. Batista is a public safety risk and to proceed with his removal.

9. Below is a summary of the facts I considered on April 22, 2025, in determining that Mr. Batista posed a threat to public safety.

10. Mr. Batista is a native and citizen of Brazil. He was first encountered by United States Customs and Border Protection ("CBP") in 2016. CBP began Expedited Removal proceedings when CBP issued him a Form I-860 Notice and Order of Expedited Removal. CBP released Mr. Batista after he expressed a fear of return to Brazil.

11. On March 18, 2025, ERO arrested and detained Mr. Batista. Due to his prior claim of fear, he was referred to the Asylum Office at United States Citizenship and Immigration Services ("USCIS") for a credible fear interview. Mr. Batista was not a class member at the time of this arrest because he was not then subject to a final removal order

12. On March 25, 2025, Mr. Batista's United States citizen spouse filed a Form I-130 on his behalf.

13. On April 1, 2025, USCIS found that Mr. Batista did not have a credible fear of return to Brazil. Mr. Batista requested a review of this decision by an Immigration Judge. On April 16, 2025, the Immigration Judge affirmed USCIS's decision. As a result, Mr. Batista became subject to a final removal order.

14. On or about April 22, 2025, I was acting as DFOD in acting DFOD John Charpentier's absence. I conducted a review of the facts in Mr. Batista's case to determine whether to remove him from the United States. I considered the Form I-130 filed on behalf of

Mr. Batista by his U.S. citizen wife, Mr. Batista's eligibility to file a Form I-212 and Form I-601A the reasons for those waivers, Mr. Batista's criminal history, and two requests for release sent to the Boston Outreach mailbox by Mr. Batista's counsel on March 28, 22025,and April 4, 2025.  At the time of my review, Mr. Batista's criminal history included convictions for two counts of possession with intent to distribute a Class A drug, to wit Oxycodone and Morphine, a charge for domestic assault and battery, and a charge for driving without a license.  I also considered the information in Mr. Batista's requests for release, including his Form I-130 filed by his USC spouse and the contents of the submissions by his counsel, including the letters of support by friends and family.  I noticed that the submissions from his counsel incorrectly stated that Mr. Batista has no criminal history or any history of violence either in the U.S. or Brazil even though at the time he had a conviction for possession with intent to distribute narcotics and had been previously charged for a domestic violence offense and driving without a license.  I found Mr. Batista's convictions for possession with intent to distribute Class A narcotics very serious and considered how the sale of these narcotics puts the public at risk, and considered the submissions by his counsel, including letters from friends and family.   The letters submitted to support Mr. Batista spoke positively of him but were not corroborated by much supporting evidence.  I considered Mr. Batista's family and pictures submitted.  I also considered Mr. Batista had been charged for domestic assault and battery but also recognized that it was dismissed. I also considered the facts and circumstances, including the police report, for Mr. Batista's arrest for driving without a license.  I considered this to be a negative factor when viewed in connection with his other criminal history. After a review of all

the documents, information and facts in Mr. Batista's case, I determined in good faith that Mr. Batista is a public safety risk and decided to remove him from the United States.

15. The record of the facts I considered in Mr. Batista's case are contained in Exhibit 1 of this declaration

16. I am aware that this Administration has increased lawful immigration enforcement. I am not aware of any specific quota for enforcement actions for the Boston ERO Office. I understand that regardless of any enforcement efforts for increased immigration enforcement, the Settlement Agreement limits my consideration of the factors I can consider when deciding whether to take enforcement actions against *Calderon* class members. Because of this limitation, I considered the facts and information in Mr. Batista's case, including his pending Form I-130 and eligibility to file Form I-212 and Form I-601A, when making my determination that Mr. Batista is a public safety risk.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed on the 15th of August 2025.

_____
Digitally signed by KEITH M CHAN
Reason: I attest to the accuracy and integrity of this document
Date: 2025.08.15 15:10:04 -04'00'

Keith Chan
Assistant Field Office Director
U.S. Department of Homeland Security
United States Immigration and Customs Enforcement
Burlington, Massachusetts

6