# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Tauland Deshati , *Petitioner*, -against- KRISTI NOEM, in her capacity as Secretary for the United States Department of Homeland Security; PATRICIA H. HYDE, Acting Field Office Director of Boston, Immigration and Customs Enforcement, in her official capacity PAMELA BONDI, in her official capacity as the Attorney General of the United States, *Respondents*. | Case No. 18-cv-10225-PBS |

**MEMORANDUM IN SUPPORT OF PETITIONERS'**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

# **TABLE OF CONTENTS**

| | |
|---|---|
| **MEMORANDUM IN SUPPORT OF PETITIONER'S** | 1 |
| CERTIFICATE OF SERVICE | 3 |
| **TABLE OF AUTHORITIES** | 1 |
| **INTRODUCTION** | 2 |
| **STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY** | 2 |
| **ARGUMENT** | 5 |
|     I. Tauland Deshati Is Likely to Succeed on the Merits of His Claims. | 5 |
| **CONCLUSION** | 9 |

## TABLE OF AUTHORITIES

**Cases**

*Ashley v. Ridge,* 288 F. Supp. 2d 662, 670-71 (D.N.J. 2003)     7
*Deshati v. Noem* et al, 1:25-cv-15940-ESK (D.N.J)     3
*Elrod v. Burns*, 427 U.S. 347, 373 (1976)     7
*Ferrara v. United States,* 370 F. Supp. 2d 351 (D. Mass. 2005)     7
*Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 962 F. Supp. 2d 311, 315 (D. Mass. 2013)     7
*Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir.1999)     6, 8
*Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11 (1st Cir. 2001)     8
*Reno v. Flores*, 507 U.S. 292, 306 (1993)     5
*Short v. United States,* 344 F.2d 549 (D.C. Cir. 1965)     7
*T & T Mfg. Co. v. A.T. Cross Co.*, 587 F.2d 533, 538 (1st Cir. 1978)     6, 8
*Trump v. J.G.G.*, 604 U. S. _, 145 S. Ct. 1003, 1006 (2025)     5
*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)     7
*Zavala v. Ridge*, 310 F. Supp. 2d 1071 (N.D. Cal. 2004)     7

**Statutes**

8 C.F.R. Section 1003.18     8, 9
8 C.F.R. Section 1239.2(b)     8

## INTRODUCTION

The instant matter requires urgent attention. DHS detained the Petitioner. DHS signed a joint motion to reopen ("JMTR") the Petitioner's order of removal because he is a Calderon Class Member. Despite signing the JMTR, Opposing Counsel repeatedly failed to answer whether DHS intends to remove the Petitioner. An ICE deportation officer visited Deshati and, "he told me (Deshati) I was not getting released and that I was going to be deported. He claimed he had my passport and ID license. I also believe ICE may have accessed or searched my property, including my wallet and my phone that is stored downstairs. Someone tried to login to my instagram account. My phone is in possession of the jail and the only people with access to my phone are the jail or ICE… I felt pressured, intimidated, and mentally abused. Officer Soto raised his voice when I said my home is here. Officer Williams made statements that made me feel scared and hopeless. I felt unsafe and extremely anxious." Exhibit B. Additionally, a screenshot showing an attempted login is attached with Exhibit B. Without this Court's intervention, DHS will deport a Calderon Class Member without the due process afforded by Section II, and III(E), III(A) of the Settlement Agreement. Additionally, Petitioner requests the Court immediately order a stay of removal pending the adjudication of the Motion to Enforce.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Mr. Deshati arrived in the United States from Albania on September 14, 2004, when he was seventeen years old. Thereafter, he applied for asylum for fear of returning to Albania. On or about April 11, 2007 the Petitioner's asylum application was heard before the Immigration Court at an individual calendar hearing. The Immigration Judge denied his claim. A timely appeal to the Board of Immigration Appeals "BIA" followed. On or about November 7, 2008, the BIA denied this appeal. The Petitioner filed a petition for review with the 2nd Circuit Court of Appeals. On or

about July 22, 2009 the Second Circuit Court of Appeals denied his claim. Despite the fact that the Petitioner had exhausted his judicial remedies he sought to remain in the USA through applications he submitted to USCIS after his marriage to a United States Citizen. On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf. This application and receipt notice detailed his home address. USCIS approved this application. Thereafter, the Petitioner filed a Form I-212 Application to Reapply for Admission After Deportation of Removal which detailed his home address. Additionally, his name is listed on the birth certificates for his USC children. The Petitioner, he has consistently paid taxes.

On or about September 21, 2025, DHS detained the Petitioner in an effort to execute his outstanding order of removal. On October 7, 2025, while the Petitioner was detained, Petitioner's Counsel began the Conflict Resolution Procedures outlined in Section VI(C) of the Settlement Agreement in order to determine whether the Petitioner was a Calderon Class Member. On October 9, 2025, the Petitioner's counsel filed a Joint Motion to Reopen arguing . On October 14, 2025, while the Petitioner was detained, Opposing Counsel indicated that OPLA NY believed that he was a Calderon Class member. Exhibit A and C. On October 15, 2025, Petitioner's Counsel requested that Opposing Counsel provide an update regarding release. Exhibit D-E. Petitioner's Counsel has asked, on numerous occasions, whether ICE will release the Petitioner or whether they intend to remove him. Exhibit D-E. To date, Opposing Counsel failed to provide a substantive response to the most basic questions contemplated by the Settlement Agreement. Without this Court's intervention, ICE will detain the Petitioner indefinitely or remove him without notifying counsel.

On September 24, 2025, Petitioner's counsel filed a Petition for Writ of Habeas Corpus arguing that DHS should release him based on arguments unrelated to the Settlement Agreement.

3

*Deshati v. Noem* et al, 1:25-cv-15940-ESK (D.N.J). Petitioner's counsel requested that the US Attorney representing ICE in the NJ Habeas Petition ascertain whether the Petitioner would be released. The US Attorney for New Jersey stated, "ICE-ERO's position is that Mr. Deshati has the motion before the BIA to reopen, and they will continue to detain him until that body grants relief." Exhibit G. This directly contradicts the Settlement Agreement. On November 3, 2025, Petitioner's counsel amended the Petition and included arguments related to the Petitioner's rights pursuant to the Settlement Agreement. Exhibit H. Opposing counsel responded that any arguments related to the Settlement Agreement were only appropriate for the instant venue. Exhibit I. On November 18, 2025, this Petition was denied. Exhibit J.

On November 11, 2025, Petitioner's Counsel requested that the Conflict Resolution Procedures commence regarding the Petitioner's release request and whether DHS intended to remove the Petitioner. Exhibit E. On November 17, 2025, Opposing Counsel stated that "We haven't heard anything from ICE about releasing him." Exhibit F. Petitioner's counsel has repeatedly asked the government for substantive answers to the questions. None have been provided. ICE is unable to credibly claim that the Petitioner must be detained. He has numerous family members within the community, he is the father to numerous USC Children with a long history of payment of taxes. Exhibit F. On October 31, 2018, the Petitioner was arrested and charged with violating the vehicle and traffic law 1. 509(1) Operating of a motor vehicle without a license 2. Operating a motor vehicle without a license plate. On October 31, 2018 he pleaded guilty to operating a motor vehicle without a license and paid a nominal fine. Exhibit F. In New York, a violation of the vehicle and traffic law is not a crime. This Court should order the Petitioner's release because DHS cannot credibly claim that Petitioner poses a threat to public safety or threat to national security.

4

# ARGUMENT

**I. Tauland Deshati Is Likely to Succeed on the Merits of His Claims.**

The Fifth Amendment guarantees that no person in the United States shall be deprived of liberty without due process. U.S. Const. amend. V. These substantive and procedural protections apply to all people, including noncitizens, regardless of their immigration status. *Trump v. J.G.G.*, 604 U. S. _, 145 S. Ct. 1003, 1006 (2025) (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

ICE has failed to make numerous determinations as required by the Settlement Agreement. In doing so, the Government has failed to meet its obligations:

1. under Section III(C) of the Settlement Agreement to state "whether a DFOD-level Officer has approved the removal or departure direction after providing the consideration and making the determination required by Section III(A)"

2. Under Section III E. "Any decision to arrest, initially detain, or continue to detain a Noncitizen Class Member, including those Noncitizen Class Members who are discovered to be Noncitizen Class Members after their initial detention decision, shall be approved by a DFOD-level Officer after the consideration and the determination required by Section III(A). ICE failed to make these decisions.

3. Under Section III A. Boston ERO will take Enforcement Actions against Named Plaintiffs or Noncitizen Class Members only after both (a) considering the Form I-130 visa petition filed on their behalf by their U.S. citizen spouse, the noncitizen's eligibility to file a Form I-212, and their eligibility to file a Form I-601A, and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public

5

safety or threat to national security. Boston ERO will consider subsections (a) and (b) under this paragraph at each Enforcement Action for a known Class Member.

Petitioner's counsel does not know whether ICE intends to remove the Petitioner or whether ICE will ever adjudicate the release request. ICE's misconduct begins with ignoring Petitioner's Counsels repeated inquiry related to basic questions under the Settlement Agreement. It is clear that the Petitioner should be released. Mr. Deshati is a native and citizen of Albania who arrived in the United States on or about September 14, 2004. Mr. Deshati is a hardworking and responsible individual who has consistently demonstrated good moral character. Mr. Deshati has never been accused of committing a crime. In 2018, he was arrested in relation to a violation of the NY vehicle and traffic law. Exhibit F. He pleaded guilty to this minor violation and paid a small fine. He has been steadily employed and has maintained a strong record of paying taxes and contributing positively to his community. His pay stubs and tax documents reflect his reliability and commitment to supporting his family through honest work. Mr. Deshati is married to a United States citizen, and together they are raising their U.S. citizen children. His wife, Pranvera Deshati filed an I-130 Application on his behalf. USCIS approved this application. He is a devoted husband and father whose presence is essential to the emotional and financial stability of his family. His detention has caused significant hardship to his wife and children, who depend on him for both care and support. Exhibit F

It is well-established that "[p]olicy favors the enforcement of settlement agreements so as to hold people to the contracts they make and to avoid costly and time-consuming litigation." *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 962 F. Supp. 2d 311, 315 (D. Mass. 2013) (*citing T & T Mfg. Co. v. A.T. Cross Co.*, 587 F.2d 533, 538 (1st Cir. 1978)); *see also Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11 (1st Cir. 2001) (affirming trial court's enforcement of

the parties' settlement agreement where parties had agreed on all material terms). There is no reason why these terms of agreement between the parties cannot be summarily enforced, *see Hardage*, 170 F.3d at 220, nor is there anything unfair about doing so.

There is no dispute as to the "validity or terms of the agreement". *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir.1999). In the instant matter, ICE is simply refusing to comply while complying in prior matters. As a result, a trial court may "summarily enforce a settlement agreement.'" *Malave Supra at 220*.

Deshati will suffer irreparable harm due to ICE's inability to comply with the Settlement Agreement and instead detain him until the BIA grants relief. Exhibit G. It has been held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Ferrara v. United States,* 370 F. Supp. 2d 351 (D. Mass. 2005) quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Obviously, the loss of liberty is a much more severe form of irreparable injury. *See, e.g., Short v. United States,* 344 F.2d 549 (D.C. Cir. 1965) (Bazelon, C.J. dissenting). *See also* "Petitioner's liberty interest in remaining free from governmental restraint[,] is of the highest constitutional import." *Zavala*, 310 F. Supp. 2d 1071, 1076 (N.D. Cal. 2004); *see also Ashley v. Ridge*, 288 F. Supp. 2d 662, 670-71 (D.N.J. 2003) (same). Indeed, "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Second, ICE's failure to abide by the terms of the Settlement Agreement —causes an erroneous deprivation of Deshati's liberty interest in remaining free from detention and relief pursuant to the Settlement Agreement. Instead of abiding by the Settlement Agreement, an ICE deportation officer visited Deshati in order to scare him into thinking that removal was imminent. Exhibit B. Additionally, the due process requirement this Court imposed on ICE was effectively

nullified when they failed to adjudicate his release request.

Petitioner's counsel has repeatedly requested that ICE adjudicate the release request. ICE still *has not* determined that Deshati should be detained; indeed, they only ignore Petitioner's counsel's requests. ICE's continued failure to show any reason why Deshati should be detained militates in favor of finding that his detention—which wrongly commenced on or around September 21, 2025 and has been running ever since—constitutes irreparable harm.

It is well-established that "[p]olicy favors the enforcement of settlement agreements so as to hold people to the contracts they make and to avoid costly and time-consuming litigation." *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 962 F. Supp. 2d 311, 315 (D. Mass. 2013) (*citing T & T Mfg. Co. v. A.T. Cross Co.*, 587 F.2d 533, 538 (1st Cir. 1978)); *see also Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11 (1st Cir. 2001) (affirming trial court's enforcement of the parties' settlement agreement where parties had agreed on all material terms). There is no reason why these terms of agreement between the parties cannot be summarily enforced, *see Hardage*, 170 F.3d at 220, nor is there anything unfair about doing so.

There is no dispute as to the "validity or terms of the agreement". *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999). In the instant matter, ICE is simply refusing to comply while complying in prior matters. As a result, a trial court may "summarily enforce a settlement agreement.'" *Malave Supra at 220.*

DHS is detaining the Petitioner because of his outstanding order of removal. Surprisingly, DHS has agreed to vacate his outstanding order of removal and terminate removal proceedings allowing him to rejoin his United States Citizen wife and young children. By law, the BIA must terminate removal proceedings because both parties are seeking termination. 8 C.F.R. Section 1003.18; 1003.1(m); *see also* 8 C.F.R. Section 1239.2(b).

8

The Executive Office for Immigration Review (EOIR) "mandatory termination" provisions describe when an Immigration Judge or the Board of Immigration Appeals can terminate proceedings. It creates two separate types of termination: "mandatory termination" and "discretionary" termination. 8 C.F.R. Section 1003.18; 1003.1(m); *see also* 8 C.F.R. Section 1239.2(b). Under the "mandatory termination" category which applies to this case, the Immigration Judges and the Board of Immigration Appeals are "required" to terminate proceedings if any of the following circumstances are present:

- The removal charges cannot be sustained;
- Termination is otherwise required by law;
- Fundamentally fair proceedings are not possible because of mental illness;
- The noncitizen obtained US citizenship after removal proceedings started;
- The noncitizen has obtained statute, LPR status, refugee status, U status, T status, S status;
- The noncitizen meets the termination standard under NACARA;
- **(G) "The parties jointly filed a motion to terminate, or one party filed a motion to terminate and the other party affirmatively indicated its non-opposition, unless the immigration judge articulates unusual, clearly identified, and supported reasons for denying the motion."** *See* **8 CFR Section 1003.18(d))(1)(i)(G)(Docket Management, Mandatory Termination)(emphasis added).**

Additionally, DHS is detaining the Petitioner in deplorable conditions. As detailed in the press: Delaney Hall, a privately run immigration detention center, has drawn widespread criticism for the inhumane conditions in which detainees are kept in. Detainees are not provided meals for "more than 20 hours". The meals that they are given are often inedible. Exhibit K. Basic necessities such as medication and clean water are denied to detainees. One detainee reported that she "did not receive her dose of medication for three or four days." Relatives of those detained in Delaney Hall are denied from seeing their loved ones, even after driving hours to the detention center. In

9

the past few months, detainees protested over the inhumane conditions. They are denied access to hygiene products such as soap, toothpaste, and toilet paper.  Exhibit K.

## CONCLUSION

Tauland Deshati asks this Court to enforce the Settlement Agreement, prohibit his immediate removal and order his immediate release. Additionally, Deshati asks that this Court order an expedited briefing schedule due to the fact he is detained in egregious conditions.

Dated: November 20, 2025
New York, NY

Respectfully submitted,

By: /s/ *Paul Grotas*
Paul B. Grotas, Esq
THE GROTAS FIRM, P.C.
499 Seventh Avenue, Suite 23N
New York, NY 10018
917-436-4444

*Seeking Pro Hac Vice Admission*

*COUNSEL FOR PETITIONER*