# EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY-NEWARK

Tauland Deshati ,

      *Petitioner*,

        -against-

KRISTI NOEM, in her capacity as Secretary for the
United States Department of Homeland Security;
CORY CHU, Acting Field Office Director of New
Jersey, Immigration and Customs Enforcement, in
his official capacity, PAMELA BONDI, in her
official capacity as the Attorney General of the
United States,

      *Respondents*.

Case No.

**PETITION FOR A WRIT OF HABEAS
CORPUS**

## PRELIMINARY STATEMENT

1. Petitioner, Tauland Deshati ("Petitioner" or "Mr. Deshati "), is a native and citizen of Albania who was born on August 7, 1987. On or about September 14, 2004 he crossed the US/Mexico border into the United States. Thereafter, he applied for asylum for fear of returning to Albania. On or about April 11, 2007 the Petitioner's asylum application was heard before the Immigration Court at an individual calendar hearing. The Immigration Judge denied his claim. A timely appeal to the Board of Immigration Appeals "BIA" followed. On or about November 7, 2008, the BIA denied this appeal. The Petitioner filed a petition for review with the 2nd Circuit Court of Appeals. On or about July 22, 2009 the Second Circuit Court of Appeals denied his claim. Despite the fact that the Petitioner had exhausted his judicial remedies he sought to remain in the USA through applications he submitted to USCIS after his marriage to a United States Citizen. On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf. This application and receipt notice detailed his home address. USCIS approved this application. Thereafter, the Petitioner filed a Form I-212 Application to Reapply for Admission After Deportation of Removal which detailed his home address. Additionally, his name is listed on the birth certificates for his USC children. Upon information and belief, the source being the Petitioner, he has consistently paid taxes.

2. On or about September 21, 2025, DHS detained the Petitioner in an effort to execute his outstanding order of removal. Petitioner is seeking his release from incarceration pursuant to the plain interpretation of the statute and recent Court decisions from this District and other Districts.

3. This Court should release the Petitioner because the removal period ended 90 days after the in absentia order, October 20, 2009 See 8 U.S.C. § 1231(a)(1)(A). A removal order becomes final

"upon expiration of the time allotted for an appeal," Section 1231(a)(1)(C) tolls the removal period if an alien "conspires or acts to prevent the alien's removal." 8 U.S.C. § 1231(a)(1)(C).

4.  The Petitioner was seeking to normalize his status in the USA and provided an accurate address to USCIS. On or about, September 22, 2025, DHS detained him, more than 15 years after his judicial appeals were completed. During his time in the USA, the Petitioner has been an upstanding member raising his United States citizen children. His actions are the antithesis of an "affirmative act preventing his detention"*Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499 (S.D.N.Y. 2009)

5.  Mr. Deshati respectfully requests that this Court grant a Petition for Writ of Habeas Corpus and order his release.

## I. PARTIES

6.  Petitioner Tauland Deshati is a man who is a citizen of Albania who has resided in the USA since 2004. He is the devoted father of his U.S. citizen children and his USC wife, who deeply value his care, guidance, and support. He has no criminal history and has consistently sought to enhance his family's well-being.

7.  Respondent Cory Chu is named in his official capacity as Field Office Director New Jersey for the U.S. Immigration and Customs Enforcement. In this capacity, he is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a); routinely transacts business in the District of New Jersey, and is legally responsible for pursuing Petitioner's detention and removal; and as such is the legal custodian of Petitioner. Respondent Chu's address is Peter Rodino Federal Building 970 Broad St # 904, Newark, NJ 07102.

8.  Respondent Kristi Noem is named in her capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a); routinely transacts business in the District of New Jersey, and is legally responsible for pursuing Petitioner's detention and removal; and as such is the legal custodian of Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, Washington, District of Columbia 20528.

9.  Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to INA § 103(g), 8 U.S.C. § 1103(g), routinely transacts business in the District of New Jersey, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings, and as such is the legal custodian of Petitioner. Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

## II. JURISDICTION

10. This Court has subject matter jurisdiction over the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl.2 of the United States Constitution; All Writs Act, 28 USC § 1651; the Administrative Procedure Act, 5 USC § 701; and for injunctive relief the Declaratory Judgment Act, 28 USC § 2201. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint on [Petitioner's] individual liberty," such that

Petitioner is "in custody in violation of the...laws...of the United States." See *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.

### III. VENUE

11. Venue is proper in the District of New Jersey-Newark under 28 U.S.C. § 1391 and 28 U.S.C. § 2242 because the Respondent is detained in the DHS detention facility located at 451 Doremus Avenue Newark, NJ 07105. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("[T]he proper respondent to a habeas petition is 'the person who has custody over the petitioner.'") (citing 28 U.S.C. § 2242).

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. DHS distributed a handout which specifically states, "It is ICE's legal position that the removal period does not begin until the noncitizen is detained in ICE Custody." This ignores the plain interpretation of the statute and recent Court decisions from this District.  As such, exhaustion is futile.

13. A district court may waive exhaustion when the pursuit of administrative remedies would either be futile or render the legal issue moot. *See, e.g., Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634–35 (2d Cir.2001) (procedural default may be excused where prisoner shows further appeals would be futile); *Monestime v. Reilly*, 10 Civ. 1374(WHP), 2010 WL 1427672, at *3 (S.D.N.Y. Apr. 9, 2010) (failure to exhaust excused where "DHS declined to revisit [petitioner's] mandatory detention status"); *Goren v. Apker*, 05 Civ. 9006(PKC), 2006 WL 1062904, at *4 (S.D.N.Y. Apr. 20, 2006).

## V. STATEMENT OF FACTS

14. Petitioner, Tauland Deshati ("Petitioner" or "Mr.  Deshati "), is a native and citizen of Albania who was born on August 7, 1987. On or about September 14, 2004 he crossed the US/Mexico border into the United States. Thereafter, he applied for asylum for fear of being deported to Albania. On or about April 11, 2007 the Petitioner asylum application was heard before the Immigration Court at an individual calendar hearing. The Immigration Judge denied his claim. A timely appeal to the Board of Immigration Appeals "BIA" followed. On or about  November 7, 2008, the BIA denied this appeal. The Petitioner filed a  petition for review with the 2nd Circuit Court of Appeals. On or about July 22, 2009 the Second Circuit Court of Appeals denied his claim.

15. Despite the fact that the Petitioner exhausted his judicial remedies he sought to remain in the USA through applications he submitted to USCIS after his marriage to a United States Citizen. On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf. This application and receipt notice detailed his home address. USCIS approved this application. Thereafter, the Petitioner filed a Form I-212 Application to Reapply for Admission After Deportation of Removal which detailed his home address. Additionally, his name is listed on the birth certificates for his USC. Upon information and belief, the source being the Petitioner, he has consistently paid taxes.

## VI. THE PETITIONER SHOULD BE RELEASED BECAUSE THE REMOVAL PERIOD ENDED ON OCTOBER 20, 2009

16. Statutory Authority to Detain Aliens: Several statutes set forth the Government's authority to detain an alien in removal proceedings. Section 241 of the Immigration and Nationality Act, governing detention, release, and removal of aliens, provides that, "when an alien is ordered

removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90–day period is referred to as the "removal period." *Id.* The removal period begins on the latest of one of the following:

      i.    The date the order of removal becomes administratively final.

      ii.    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

      iii.    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

17. 8 U.S.C. § 1231(a)(1)(B) (emphasis added).During the 90–day removal period, detention of the alien is mandatory. 8 U.S.C. § 1231(a)(2). An alien not removed within the initial 90–day removal period may be detained beyond that period, 8 U.S.C. § 1231(a)(6), subject to a custody review by ICE. 8 C.F.R. § 241.4(k) (1)(i).

18. Whereas a removal order becomes final "upon expiration of the time allotted for an appeal," a removal order entered *in absentia* becomes final "immediately upon entry of such order." 8 C.F.R. § 1241.1; *Farez–Espinoza v. Chertoff,* 600 F.Supp.2d 488, 499 (S.D.N.Y.2009) (order of removal entered in alien's absence became final immediately). As a result, the 90–day removal becomes final "upon expiration of the time allotted for an appeal. Section 1231(a)(1)(C) tolls the removal period if an alien "conspires or acts to prevent the alien's removal." 8 U.S.C. § 1231(a)(1)(C).

19. The overwhelming weight of authority applying section 1231(a)(1) (C) indicates that the removal period is subject to tolling where the alien acts to prevent his or her removal through judicial action, or by "demonstrat[ing] some sort of bad faith failure to cooperate." *Rajigah v. Conway,* 268 F.Supp.2d 159, 165 (E.D.N.Y.2003); *Ulysse v. Dep't of Homeland Security,* 291 F.Supp.2d 1318, 1324 n. 11 (M.D.Fla.2003) ("[T]he removal period can be extended beyond 90

days, if the alien thwarts or hinders the removal process"). *See generally Farez–Espinoza,* 600 F.Supp.2d at 501 (collecting cases).

20. In *Farez–Espinoza,* a factually analogous case, the petitioner was apprehended and detained by ICE 15 months *after* the immigration court entered the order of removal. 600 F.Supp.2d at 498–99. In challenging her detention, the petitioner argued that she had not been told by her attorney to appear for a subsequent hearing in Immigration Court, nor was she aware prior to being taken into custody that an order of removal had been entered. *Id.* at 491, 502. The Court held that the removal order became final when issued, and not 15 months later when petitioner was taken into custody. *Id.* at 499. In so holding, Judge Baer reasoned that petitioner's "address and whereabouts" were on file with DHS during the entire 15–month period, and that the Government should not benefit from its failure to "pursue removal ... until more than 15 months after her order of removal was entered." *Id.* at 500. Judge Baer rejected the Government's contention that the removal period was extended until the date petitioner was detained, finding that she had committed no "affirmative misleading act that prevented her return, nor did she refuse to cooperate with the removal order" prior to her apprehension. *Id.* at 502. Significant to the Court's holding was that a petitioner's failure to appear at a removal hearing, alone, is insufficient to trigger the tolling provision. *Id.* at 501.

21. Here, the Petitioner's facts are more favorable. On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf which detailed his home address in an effort to normalize his status. Throughout the normal course of this process he may have been required to appear at USCIS for biometrics and any required interviews. The Petitioner did not attempt to hoodwink DHS. *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499 (S.D.N.Y. 2009) . As a result, this Court should reach the same conclusion as

*Farez–Espinoza, Supra.* That the removal period ended on October 20, 2009 and any effort to detain the Petitioner is more than 15 years late.

22. The District Court in *Ulysse v. The Dep't of Homeland Security Court* considered an identical issue and found that the DHS had her address on file for four years and detained the Petitioner 17 months after the order of removal was issued. The court held that, "because the Government provided no explanation for its 17–month delay, the removal period commenced when the order was issued and, therefore, the Government had no statutory authority to detain her." 291 F.Supp.2d at 1321 1326. Here, the Court should demand DHS provide an identical explanation because the Petitioner provided his address to DHS and he was not detained for 15 years. Thus, DHS has no statutory authority to detain the Petitioner because the removal period has expired.

23. In *Guan Zhao Lin v. Holder*, DHS detained the Petitioner nearly 16 years later after the order of removal became final, which raised "serious constitutional concerns." *Guan Zhao Lin v. Holder,* No. 10 Civ. 4316 (RMB)(JLC), 2010 WL 2836144 (S.D.N.Y. July 2, 2010). Here, the Court should reach the same conclusion. The *Lin, infra* Court determined that the removal period would only be tolled if the "Petitioner affirmatively acted to avoid his removal." Similar to *Lin,* the Petitioner provided his address to DHS which prevents a finding that "he acted in bad faith to avoid his removal."

24.  In *Diaz-Ortega*, DHS detained the Petitioner 12 years after the order of removal became final. *Diaz-Ortega v. Lund*, 2019 WL 6003485, *7 (W.D. La. Oct.15, 2019). The Government took the position that the removal period under 1231(a) "restarted" upon her arrest by DHS. *Id.* The court held "there was no recurrence of a 'triggering event' under 8 U.S.C. § 1231(a)(1)(B).— which would, by definition, begin "the" removal period - § 1231(a)(1)(B) dictates that the removal period necessarily begins when a removal order becomes final, and necessarily ends 90 days

later." *Id.* Here, the Court should reach the identical conclusion, that the removal period began and ended 90 days after the judicial process ended on October 20, 2009 . As a result, the Petitioner must be released.

25. In *Leslie v. Herron*, the Court determined that Petitioner's detention is governed by 8 U.S.C. § 1231 because he is subject to a final removal order issued on July 23, 2007. The court noted that the removal period began on July 23, 2007, unless tolled by subsequent events, and that any presumptively reasonable six-month detention period has long since expired. *Leslie v. Herron*, No. 10-CV-00515(A)(M), 2010 U.S. Dist. LEXIS 113679, at *1 (W.D.N.Y. Oct. 26, 2010). Here, the Court should make the same finding.


## VII. THIS COURT SHOULD HOLD THE BOND HEARING OR ORDER RELEASE

26. Petitioner should be released or be afforded a bond hearing immediately because his detention is governed by 8 USC 1226(a).

27. This Court should maintain jurisdiction over the individualized bond hearing. As supported by existing case law, this Court is authorized to maintain jurisdiction in bond proceedings. In *Leslie v. Holder*, the District Court states "...we are empowered to conduct bail proceedings in habeas corpus proceedings brought by immigration detainees." 3:11-CV-249 * 10 (M.D. PA 2012). Similar to the facts in the instant case, the Petitioner in *Leslie* was detained for a prolonged period of time, and filed a petition for habeas corpus. The District Court ultimately conducted a bail hearing. (In citing *Leslie v. Attorney General*, 2012 WL 898614 the District Court states "Here, the law of the case, as defined by the mandate of the court of appeals is clear: 'Leslie's appeal will be remanded to the District Court with instructions to conduct an individualized bond hearing as required by Diop within ten days of the date when this opinion

and order are filed….") *Id.* at 12. Similarly, the Third Circuit Court of Appeals in *Chavez Alvarez v v. Warden York County Prison*, "remanded with instruction to enter an order granting the writ of habeas corpus and ensure that Chavez-Alvarez  is afforded, within ten days of the entry of this order, a hearing to determine whether, on evidence particular to Chavez-Alvarez, it is necessary to continue to detain him to achieve the goals of the statute") C*havez Alvarez  v. Warden York County Prison,* 14-1402 * 21 (3rd Cir. 2015).

28. Furthermore,  the  Court in *Flores-Powell  v.  Chadbourne*, granted  the  Petitioner's  Habeas Petition, and went on to hold that "the court will conduct a hearing to determine whether Flores is dangerous to the community or a flight risk" 677 F.Supp 2d 455 (2010). In deciding to conduct the bond hearing, the Court in *Flores-Powell* relied on the reasoning in *Alli v. Decker*, 644 F. Supp. 2d 535 (M.D. Pa. 2009); citing to *Alli's* decision:

> "Supervision of the reasonableness of detention through the habeas process also provides justified protection of the alien's liberty interest and conserves judicial resources. If the remedy for unreasonable detention were an order directing a bond hearing under § 1226(a), an alien who has already demonstrated that his detention is no longer reasonable would remain detained pending an initial custody determination by the DHS district director, 8 C.F.R. § 236.1(d)(1), a hearing before an immigration judge, *id.,* the IJ's decision, and a potential appeal to the BIA, *id.* § 236.1(d)(3). In addition, ... the only recourse for an alien dissatisfied with the outcome of his bond hearing would be to return to court again and file another habeas action. *Cf. Ly,* 351 F.3d at 272. A bond hearing before the habeas court avoids this circuitous and potentially lengthy process. The habeas court's determining whether a petitioner is entitled to release also serves the "`historic purpose of the writ,' namely, `to relieve detention by executive authorities without judicial trial.'" *Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491. See, *Flores-Powell,* 677 F.Supp 2d 455 (2010).

29. Therefore, as is clear from existing case law, this Court is well within its jurisdiction to conduct a bond hearing, and it would be in the interest of judicial economy.

## CLAIM FOR RELIEF

## FIRST CAUSE OF ACTION

## THE PETITIONER SHOULD BE RELEASED BECAUSE THE REMOVAL PERIOD ENDED ON OCTOBER 20, 2009

30. 8 U.S.C. § 1231(a)(1)(B) (emphasis added).During the 90–day removal period, detention of the alien is mandatory. 8 U.S.C. § 1231(a)(2). An alien not removed within the initial 90–day removal period may be detained beyond that period, 8 U.S.C. § 1231(a)(6), subject to a custody review by ICE. 8 C.F.R. § 241.4(k) (1)(i).

31. Whereas a removal order becomes final "upon expiration of the time allotted for an appeal," a removal order entered *in absentia* becomes final "immediately upon entry of such order." 8 C.F.R. § 1241.1; *Farez–Espinoza v. Chertoff,* 600 F.Supp.2d 488, 499 (S.D.N.Y.2009) (order of removal entered in alien's absence became final immediately). Section 1231(a)(1)(C) tolls the removal period if an alien "conspires or acts to prevent the alien's removal." 8 U.S.C. § 1231(a)(1)(C).

32. Here, the Petitioner has not acted in bad faith. In fact, he applied with DHS to normalize his status. As a result, the removal period has concluded.

WHEREFORE, Petitioner respectfully requests this Court to:

1.      Assume jurisdiction over this matter;

2.      Enjoin Respondents from removing Petitioner from the United States pending the resolution of this case;

3.       Order Respondents' provide Petitioner a pre-deprivation hearing with 48-hours advanced notice before any attempt is made to remove Petitioner from the United States;

4.      Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. §2412, or other statutes;

5.      Grant such further relief as the Court deems just and proper.

.

Respectfully submitted,

By: /s/ Paul Grotas
Paul B. Grotas, Esq
The Grotas Firm, P.C.
499 Seventh Avenue, Suite 23N
New York, NY 10018
917-436-4444

*COUNSEL FOR PETITIONER*

Dated:    New York, New York
          September 24, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY-NEWARK

Tauland Deshati ,

       *Petitioner*,

           -against-

KRISTI NOEM, in her capacity as Secretary for the
United States Department of Homeland Security;
CORY CHU, Acting Field Office Director of New
Jersey, Immigration and Customs Enforcement, in
his official capacity, PAMELA BONDI, in her
official capacity as the Attorney General of the
United States,

       *Respondents*.

Case No. 1:25-cv-15940-ESK

**1st AMENDED PETITION FOR A
WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

**TABLE OF CONTENTS**                                                                    **2**

**TABLE OF AUTHORITIES**                                                                 **2**

**PRELIMINARY STATEMENT**                                                                **4**

    I. PARTIES                                                        8

    II. JURISDICTION                                                  9

    III. VENUE                                                        10

    IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES                         10

    V. STATEMENT OF FACTS                                             11

    VI. THE PETITIONER SHOULD BE RELEASED BECAUSE THE REMOVAL PERIOD ENDED ON

    OCTOBER 20, 2009                                                  11

    VII. THE PETITIONER SHOULD BE RELEASED BECAUSE HE IS A CALDERON CLASS MEMBER 15

    VIII. THE PETITIONER SHOULD BE RELEASED BECAUSE HE WAS NOT PROVIDED A

    PRE-DEPRIVATION HEARING                                           19

    DUE PROCESS CLAUSE                                                19

    VII. THIS COURT SHOULD HOLD THE BOND HEARING OR ORDER RELEASE      **22**

**CLAIM FOR RELIEF FIRST CAUSE OF ACTION**                                               **23**

      THE PETITIONER SHOULD BE RELEASED BECAUSE THE REMOVAL PERIOD ENDED ON

      OCTOBER 20, 2009                                           23

# TABLE OF AUTHORITIES

**Cases**

*3:11-CV-249 * 10 (M.D. PA 2012).*                                                     21
<u>*Adam Laurence, A200 867 388 (BIA Feb. 7, 2014)*</u>                               14
<u>*Alma Delia Acosta Carmona, A086 285 207 (BIA June 1, 2020)*</u>                  14
<u>*Appeal ID 5358407 (BIA Aug. 18, 2023)*</u>                                        14
<u>*Appeal ID 5445041 (BIA Oct. 31, 2023)*</u>                                        14
<u>*A-Z-R-, AXXX XXX 351 (BIA Dec. 12, 2023)*</u>                                     14
<u>*Bilal Hassan Dyook, A076 305 737 (BIA July 22, 2015)*</u>                         14
*Bridges v. Wixon, 326 U.S. 135, 154 (1945)*                                          18
<u>*Calderon Jimenez v. Mayorkas.*</u>                                             5, 15
<u>*Carmen Anayanci Portillo-Munoz, A077 793 500 (BIA May 10, 2013)*</u>             14
*Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634–35 (2d Cir.2001)       9
*Chajchic v. Rowley, No. 1:17-CV-457, 2017 WL 4401895, at *5 (M.D. Pa. July 25, 2017)* 13, 17
*Chavez Alvarez v. Warden York County Prison,* 14-1402 * 21 (3rd Cir. 2015)           21
*Chhoeun v. Marin, 2018 WL 566821, at *9 (C.D. Cal., Jan. 25, 2018)*                  18
*Demore v. Kim,* 538 U.S. 510, 523 (2003) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))  18
*Diaz-Ortega v. Lund, 2019 WL 6003485, *7 (W.D. La. Oct.15, 2019).*                   13
<u>*Dimas Santillan, A076 329 2911* (BIA March 9, 2016)</u>                           14
<u>*Elizabeth Granados Misagal, A041 247 993* (BIA May 11, 2017)</u>                  14
*Ernest Arnold Sharpe, No. : A-XX XX0 202 - WAS, 2007 WL 4707425, at *1  (DCBABR Nov. 6, 2007)*  17
*Farez-Espinoza v. Chertoff,* 600 F. Supp. 2d 488,                                7, 12, 22
<u>*Felix Garcia-De Luna, A205 493 691* (BIA Jan. 6, 2017)</u>                        14
*Flores-Powell,* 677 F.Supp 2d 455 (2010)                                             22
*Goren v. Apker,* 05 Civ. 9006(PKC), 2006 WL 1062904, at *4 (S.D.N.Y. Apr. 20, 2006)  9
*Guan Zhao Lin v. Holder,* No. 10 Civ. 4316 (RMB)(JLC), 2010 WL 2836144 (S.D.N.Y. July 2, 2010)  13
*Guillermo M. R. v. Kaiser,* 2025 WL 1983677, at *9 (N.D.Cal., 2025)                  20
*Hensley v. Municipal Court,* 411 U.S. 345, 351 (1973)                                 9
<u>*Hernan Antonio Reyes, A095 084 205* (BIA Sept. 18, 2015)</u>                      14
<u>*Immacula Presmy, A095 517 631* (BIA June 13, 2013)</u>                            14
<u>*Isela Esmeralda Hernandez-Reyes, A098 719 936* (BIA Dec. 9, 2016)</u>            14
<u>*Jorge M.F. v. Jennings,* 534 F. Supp. 3d 1050, 1056 (N.D. Cal. 2021)</u>         20
<u>*Julian Sebastian Giraldo Arteaga, A088 744 005* (BIA March 14, 2016)</u>        14
*Leslie v. Herron,* No. 10-CV-00515(A)(M), 2010 U.S. Dist. LEXIS 113679, at *1 (W.D.N.Y. Oct. 26, 2010)  14
*Lopez Benitez v. Francis,* 2025 WL 2267803 (S.D.N.Y., 2025)                          20
*Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)                                     18 ,19
*Meridor v. U.S.  Att'y Gen.,* 891 F.3d 1302, 1306 (11th Cir. 2018)                   17
*Monestime v. Reilly,* 10 Civ. 1374(WHP), 2010 WL 1427672, at *3 (S.D.N.Y. Apr. 9, 2010)  9
<u>*N-O-A-, AXXX XXX 683* (BIA Nov. 3, 2016)</u>                                      14
*Ortega,* 415 F. Supp. 3d at 970; Vargas, 2020 WL 5074312, at *3–4                    20
<u>*Oscar Diaz-Medina, A096 188 908* (BIA Feb. 11, 2016)</u>                          14
*Rajigah v. Conway,* 268 F.Supp.2d 159, 165 (E.D.N.Y.2003)                            11
*Rumsfeld v. Padilla,* 542 U.S. 426, 434 (2004)                                        9
<u>*Thanh Hoang Nguyen, A042 647 333* (BIA Aug. 11, 2017)</u>                         14
*Ulysse v. Dep't of Homeland Security,* 291 F.Supp.2d 1318, 1324 n. 11 (M.D.Fla.2003)  11, 13
*Valencia Zapata v. Kaiser,* 2025 WL 2741654, at *11 (N.D.Cal., 2025)                 20
*Walters v. Reno,* 145 F.3d 1032 (9th Cir. 1998)                                      18
*Zadvydas v. Davis,* 533 U.S. 678, 690 (2001)                                       19, 22

**Statutes**

1231(a)(1)(C)                                                                    7, 11
21 U.S.C. §§ 846                                                                 16
28                                                                              8, 9, 23
28 U.S.C. § 1331                                                                 8
28 USC § 1651                                                                    8
28 USC § 2201                                                                    8
5 USC § 701                                                                      8
8  passim
8 C.F.R. § 241.4(k) (1)(i)                                                      11, 22
8 U.S.C. § 1231(a)(1)(A)                                                         7, 11
8 U.S.C. § 1231(a)(1)(B)                                                      11, 13, 22
8 U.S.C. § 1231(a)(2)                                                           11, 22
8 U.S.C. § 1231(a)(6)                                                           11, 22
841(a)(1)                                                                        16
INA § 103(g), 8                                                                  8
INA, 8 U.S.C. § 1103(a)                                                         7, 8

**Regulations**

291 F.Supp.2d at 1321 1326.                                                     13
192 F.3d at 398                                                                 16

**PRELIMINARY STATEMENT**

1. Petitioner, Tauland Deshati ("Petitioner" or "Mr. Deshati "), is a native and citizen of Albania who was born on August 7, 1987. On or about September 14, 2004 he crossed the US/Mexico border into the United States. Thereafter, he applied for asylum for fear of returning to Albania. On or about April 11, 2007 the Petitioner's asylum application was heard before the Immigration Court at an individual calendar hearing. The Immigration Judge denied his claim. A timely appeal to the Board of Immigration Appeals "BIA" followed. On or about November 7, 2008, the BIA denied this appeal. The Petitioner filed a petition for review with the 2nd Circuit Court of Appeals. On or about July 22, 2009 the Second Circuit Court of Appeals denied his claim. Despite the fact that the Petitioner had exhausted his judicial remedies he sought to remain in the USA through applications he submitted to USCIS after his marriage to a United States Citizen. On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf. This application and receipt notice detailed his home address. USCIS approved this application. Thereafter, the Petitioner filed a Form I-212 Application to Reapply for Admission After Deportation of Removal which detailed his home address. Additionally, his name is listed on the birth certificates for his USC children. Upon information and belief, the source being the Petitioner, he has consistently paid taxes.

2. On or about September 21, 2025, DHS detained the Petitioner in an effort to execute his outstanding order of removal. Petitioner is seeking his release from incarceration pursuant to the plain interpretation of the statute and recent Court decisions from this District and other Districts.

3. On October 17, 2025 DHS and Petitioner agreed that he is a "Calderon Class Member" and filed a joint motion to reopen and terminate removal proceedings. Exhibit A.

4. "On January 16, 2025, a federal district court approved a proposed settlement in *Calderon Jimenez v. Mayorkas*. The case was filed in 2018 on behalf of a class of certain U.S. citizens and

their noncitizen spouses who have final orders of removal and live in New England. The two-year settlement agreement has two key terms: First, it provides a process by which most noncitizen class members should be able to reopen and dismiss their removal proceedings. Second, during the two-year period of the settlement, ICE may not take enforcement actions against class members except when ICE determines that an individual poses a threat to public safety. The settlement is in effect from January 16, 2025 to January 16, 2027." Exhibit C

5.  The Approved Settlement specifically details protections afforded to class members:

    (a) Boston ERO will take Enforcement Actions against Named Plaintiffs or Noncitizen Class Members only after both (a) considering the Form I-130 visa petition filed on their behalf by their U.S. citizen spouse, the noncitizen's eligibility to file a Form I-212, and their eligibility to file a Form I-601A, and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security. Boston ERO will consider subsections (a) and (b) under this paragraph at each Enforcement Action for a known Class Member.
    Any decision to arrest, initially detain, or continue to detain a Noncitizen Class Member, including those Noncitizen Class Members who are discovered to be Noncitizen Class Members after their initial detention decision, shall be approved by a DFOD-level Officer after the consideration and the determination required by Section III(A). Exhibit C.

6.  This Court should release the Petitioner because DHS must detail that they have undertaken the steps required as detailed above. In the event that DHS has undertaken the steps required, this Court should order the Petitioner's release because: DHS can not credibly claim that the Petitioner, "poses a threat to public safety or threat to national security". On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf. This application and receipt notice detailed his home address, as well as Respondent's lease Agreement. USCIS approved this application. Thereafter, the Petitioner filed a Form I-212 Application to Reapply for Admission After Deportation of Removal which detailed his home address. Additionally, his name is listed on the birth certificates for his USC children. He has consistently paid taxes. The Petitioner was arrested and charged with a violation of the vehicle and traffic law. Exhibit B.

7.  The Executive Office for Immigration Review (EOIR) "mandatory termination" provisions describe when an Immigration Judge or the Board of Immigration Appeals can terminate proceedings. It creates two separate types of termination: "mandatory termination" and "discretionary" termination. 8 C.F.R. Section 1003.18; 1003.1(m); see also 8 C.F.R. Section 1239.2(b). Under the "mandatory termination" category which applies to this case, the Immigration Judges and the Board of Immigration Appeals are "required" to terminate proceedings if any of the following circumstances are present:

   • The removal charges cannot be sustained;

   • Termination is otherwise required by law;

   • Fundamentally fair proceedings are not possible because of mental illness;

   • The noncitizen obtained US citizenship after removal proceedings started;

   • The noncitizen has obtained statute, LPR status, refugee status, U status, T status, S status;

   • The noncitizen meets the termination standard under NACARA;

   **• (G) "The parties jointly filed a motion to terminate, or one party filed a motion to terminate and the other party affirmatively indicated its non-opposition, unless the immigration judge articulates unusual, clearly identified, and supported reasons for denying the motion." See 8 CFR Section 1003.18(d))(1)(i)(G)(Docket Management, Mandatory Termination)(emphasis added).**

8.  The Petitioner's continued detention is punitive. His removal proceedings will be terminated when the BIA reviews the joint motion to reopen as detailed above. Exhibit A. The BIA holds no discretion.

9.  This Court should release the Petitioner because the removal period ended 90 days after the in absentia order, October 20, 2009 See 8 U.S.C. § 1231(a)(1)(A). A removal order becomes final

"upon expiration of the time allotted for an appeal," Section 1231(a)(1)(C) tolls the removal period if an alien "conspires or acts to prevent the alien's removal." 8 U.S.C. § 1231(a)(1)(C).

10. The Petitioner was seeking to normalize his status in the USA and provided an accurate address to USCIS. On or about, September 22, 2025, DHS detained him, more than 15 years after his judicial appeals were completed. During his time in the USA, the Petitioner has been an upstanding member raising his United States citizen children. His actions are the antithesis of an "affirmative act preventing his detention"*Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499 (S.D.N.Y. 2009)

11. Mr. Deshati respectfully requests that this Court grant a Petition for Writ of Habeas Corpus and order his release.

## I. PARTIES

12. Petitioner Tauland Deshati is a man who is a citizen of Albania who has resided in the USA since 2004. He is the devoted father of his U.S. citizen children and his USC wife, who deeply value his care, guidance, and support. He has no criminal history and has consistently sought to enhance his family's well-being.

13. Respondent Cory Chu is named in his official capacity as Field Office Director New Jersey for the U.S. Immigration and Customs Enforcement. In this capacity, he is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a); routinely transacts business in the District of New Jersey, and is legally responsible for pursuing Petitioner's detention and removal; and as such is the legal custodian of Petitioner. Respondent Chu's address is Peter Rodino Federal Building 970 Broad St # 904, Newark, NJ

07102.

14. Respondent Kristi Noem is named in her capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a); routinely transacts business in the District of New Jersey, and is legally responsible for pursuing Petitioner's detention and removal; and as such is the legal custodian of Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, Washington, District of Columbia 20528.

15. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to INA § 103(g), 8 U.S.C. § 1103(g), routinely transacts business in the District of New Jersey, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings, and as such is the legal custodian of Petitioner. Respondent Bondi's address is U.S. Department of Justice,1q 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

## II.    <u>JURISDICTION</u>

16. This Court has subject matter jurisdiction over the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl.2 of the United States Constitution; All Writs Act, 28 USC § 1651; the Administrative Procedure Act, 5 USC § 701; and for injunctive relief the Declaratory Judgment Act, 28 USC § 2201. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint on [Petitioner's] individual liberty," such that

Petitioner is "in custody in violation of the...laws...of the United States." See *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.

### III.    VENUE

17. Venue is proper in the District of New Jersey-Newark under 28 U.S.C. § 1391 and 28 U.S.C. § 2242 because the Respondent is detained in the DHS detention facility located at 451 Doremus Avenue Newark, NJ 07105. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("[T]he proper respondent to a habeas petition is 'the person who has custody over the petitioner.'") (citing 28 U.S.C. § 2242).

### IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. DHS distributed a handout which specifically states, "It is ICE's legal position that the removal period does not begin until the noncitizen is detained in ICE Custody." This ignores the plain interpretation of the statute and recent Court decisions from this District. As such, exhaustion is futile.

19. A district court may waive exhaustion when the pursuit of administrative remedies would either be futile or render the legal issue moot. *See, e.g., Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634–35 (2d Cir.2001) (procedural default may be excused where prisoner shows further appeals would be futile); *Monestime v. Reilly*, 10 Civ. 1374(WHP), 2010 WL 1427672, at *3 (S.D.N.Y. Apr. 9, 2010) (failure to exhaust excused where "DHS declined to revisit [petitioner's] mandatory detention status"); *Goren v. Apker*, 05 Civ. 9006(PKC), 2006 WL 1062904, at *4 (S.D.N.Y. Apr. 20, 2006).

## V.    STATEMENT OF FACTS

20. Petitioner, Tauland Deshati ("Petitioner" or "Mr. Deshati "), is a native and citizen of Albania who was born on August 7, 1987. On or about September 14, 2004 he crossed the US/Mexico border into the United States. Thereafter, he applied for asylum for fear of being deported to Albania. On or about April 11, 2007 the Petitioner asylum application was heard before the Immigration Court at an individual calendar hearing. The Immigration Judge denied his claim. A timely appeal to the Board of Immigration Appeals "BIA" followed. On or about November 7, 2008, the BIA denied this appeal. The Petitioner filed a petition for review with the 2nd Circuit Court of Appeals. On or about July 22, 2009 the Second Circuit Court of Appeals denied his claim.

21. Despite the fact that the Petitioner exhausted his judicial remedies he sought to remain in the USA through applications he submitted to USCIS after his marriage to a United States Citizen. On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf. This application and receipt notice detailed his home address. USCIS approved this application. Thereafter, the Petitioner filed a Form I-212 Application to Reapply for Admission After Deportation of Removal which detailed his home address. Additionally, his name is listed on the birth certificates for his USC. Upon information and belief, the source being the Petitioner, he has consistently paid taxes.

22. On October 17, 2025 DHS and Petitioner agreed that he is a "Calderon Class Member" and filed a joint motion to reopen and terminate removal proceedings. Exhibit A.

23. "On January 16, 2025, a federal district court approved a proposed settlement in *Calderon Jimenez v. Mayorkas*. The case was filed in 2018 on behalf of a class of certain U.S. citizens and their noncitizen spouses who have final orders of removal and live in New England. The two-year settlement agreement has two key terms: First, it provides a process by which most noncitizen class members should be able to reopen and dismiss their removal proceedings.

Second, during the two-year period of the settlement, ICE may not take enforcement actions against class members except when ICE determines that an individual poses a threat to public safety. The settlement is in effect from January 16, 2025 to January 16, 2027." Exhibit C

## VI.    THE PETITIONER SHOULD BE RELEASED BECAUSE THE REMOVAL PERIOD ENDED ON OCTOBER 20, 2009

24. Statutory Authority to Detain Aliens: Several statutes set forth the Government's authority to detain an alien in removal proceedings. Section 241 of the Immigration and Nationality Act, governing detention, release, and removal of aliens, provides that, "when an alien is ordered

removed, the Attorney General shall remove the alien from the United States within a period of

90 days." 8 U.S.C. § 1231(a)(1)(A). This 90–day period is referred to as the "removal period."

*Id.* The removal period begins on the latest of one of the following:

    i.    The date the order of removal becomes administratively final.

    ii.    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

    iii.    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

25. 8 U.S.C. § 1231(a)(1)(B) (emphasis added).During the 90–day removal period, detention of the

alien is mandatory. 8 U.S.C. § 1231(a)(2). An alien not removed within the initial 90–day

removal period may be detained beyond that period, 8 U.S.C. § 1231(a)(6), subject to a custody

review by ICE. 8 C.F.R. § 241.4(k) (1)(i).

26. Whereas a removal order becomes final "upon expiration of the time allotted for an appeal," a

removal order entered *in absentia* becomes final "immediately upon entry of such order." 8

C.F.R. § 1241.1; *Farez–Espinoza v. Chertoff,* 600 F.Supp.2d 488, 499 (S.D.N.Y.2009) (order of

removal entered in alien's absence became final immediately). As a result, the 90–day removal

becomes final "upon expiration of the time allotted for an appeal. Section 1231(a)(1)(C) tolls

the removal period if an alien "conspires or acts to prevent the alien's removal." 8 U.S.C. §

1231(a)(1)(C).

27. The overwhelming weight of authority applying section 1231(a)(1) (C) indicates that the

removal period is subject to tolling where the alien acts to prevent his or her removal through

judicial action, or by "demonstrat[ing] some sort of bad faith failure to cooperate." *Rajigah v.*

*Conway,* 268 F.Supp.2d 159, 165 (E.D.N.Y.2003); *Ulysse v. Dep't of Homeland Security,* 291

F.Supp.2d 1318, 1324 n. 11 (M.D.Fla.2003) ("[T]he removal period can be extended beyond 90

days, if the alien thwarts or hinders the removal process"). *See generally Farez–Espinoza,* 600 F.Supp.2d at 501 (collecting cases).

28. In *Farez–Espinoza,* a factually analogous case, the petitioner was apprehended and detained by ICE 15 months *after* the immigration court entered the order of removal. 600 F.Supp.2d at 498–99. In challenging her detention, the petitioner argued that she had not been told by her attorney to appear for a subsequent hearing in Immigration Court, nor was she aware prior to being taken into custody that an order of removal had been entered. *Id.* at 491, 502. The Court held that the removal order became final when issued, and not 15 months later when petitioner was taken into custody. *Id.* at 499. In so holding, Judge Baer reasoned that petitioner's "address and whereabouts" were on file with DHS during the entire 15–month period, and that the Government should not benefit from its failure to "pursue removal ... until more than 15 months after her order of removal was entered." *Id.* at 500. Judge Baer rejected the Government's contention that the removal period was extended until the date petitioner was detained, finding that she had committed no "affirmative misleading act that prevented her return, nor did she refuse to cooperate with the removal order" prior to her apprehension. *Id.* at 502. Significant to the Court's holding was that a petitioner's failure to appear at a removal hearing, alone, is insufficient to trigger the tolling provision. *Id.* at 501.

29. Here, the Petitioner's facts are more favorable. On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf which detailed his home address in an effort to normalize his status. Throughout the normal course of this process he may have been required to appear at USCIS for biometrics and any required interviews. The Petitioner did not attempt to hoodwink DHS. *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499 (S.D.N.Y. 2009) .  As a result, this Court should reach the same conclusion as

*Farez–Espinoza, Supra.* That the removal period ended on October 20, 2009 and any effort to detain the Petitioner is more than 15 years late.

30. The District Court in *Ulysse v. The Dep't of Homeland Security Court* considered an identical issue and found that the DHS had her address on file for four years and detained the Petitioner 17 months after the order of removal was issued. The court held that, "because the Government provided no explanation for its 17–month delay, the removal period commenced when the order was issued and, therefore, the Government had no statutory authority to detain her." 291 F.Supp.2d at 1321 1326. Here, the Court should demand DHS provide an identical explanation because the Petitioner provided his address to DHS and he was not detained for 15 years. Thus, DHS has no statutory authority to detain the Petitioner because the removal period has expired.

31. In *Guan Zhao Lin v. Holder*, DHS detained the Petitioner nearly 16 years later after the order of removal became final, which raised "serious constitutional concerns." *Guan Zhao Lin v. Holder,* No. 10 Civ. 4316 (RMB)(JLC), 2010 WL 2836144 (S.D.N.Y. July 2, 2010). Here, the Court should reach the same conclusion. The *Lin, infra* Court determined that the removal period would only be tolled if the "Petitioner affirmatively acted to avoid his removal." Similar to *Lin,* the Petitioner provided his address to DHS which prevents a finding that "he acted in bad faith to avoid his removal."

32.  In *Diaz-Ortega*, DHS detained the Petitioner 12 years after the order of removal became final. *Diaz-Ortega v. Lund*, 2019 WL 6003485, *7 (W.D. La. Oct.15, 2019). The Government took the position that the removal period under 1231(a) "restarted" upon her arrest by DHS. *Id.* The court held "there was no recurrence of a 'triggering event' under 8 U.S.C. § 1231(a)(1)(B).— which would, by definition, begin "the" removal period - § 1231(a)(1)(B) dictates that the removal period necessarily begins when a removal order becomes final, and necessarily ends 90 days

later." *Id.* Here, the Court should reach the identical conclusion, that the removal period began and ended 90 days after the judicial process ended on October 20, 2009 . As a result, the Petitioner must be released.

33. In *Leslie v. Herron*, the Court determined that Petitioner's detention is governed by 8 U.S.C. § 1231 because he is subject to a final removal order issued on July 23, 2007. The court noted that the removal period began on July 23, 2007, unless tolled by subsequent events, and that any presumptively reasonable six-month detention period has long since expired. *Leslie v. Herron*, No. 10-CV-00515(A)(M), 2010 U.S. Dist. LEXIS 113679, at *1 (W.D.N.Y. Oct. 26, 2010). Here, the Court should make the same finding.

## VII.    THE PETITIONER SHOULD BE RELEASED BECAUSE HE IS A CALDERON CLASS MEMBER

34. On October 17, 2025 DHS and Petitioner agreed that he is a "Calderon Class Member" and filed a joint motion to reopen and terminate removal proceedings. Exhibit A.

35. The Executive Office for Immigration Review (EOIR) "mandatory termination" provisions describe when an Immigration Judge or the Board of Immigration Appeals can terminate proceedings. It creates two separate types of termination: "mandatory termination" and "discretionary" termination. 8 C.F.R. Section 1003.18; 1003.1(m); see also 8 C.F.R. Section 1239.2(b). Under the "mandatory termination" category which applies to this case, the Immigration Judges and the Board of Immigration Appeals are "required" to terminate proceedings if any of the following circumstances are present:

> • The removal charges cannot be sustained;
>
> • Termination is otherwise required by law;
>
> • Fundamentally fair proceedings are not possible because of mental illness;
>
> • The noncitizen obtained US citizenship after removal proceedings started;
>
> • The noncitizen has obtained statute, LPR status, refugee status, U status, T status,

S status;

• The noncitizen meets the termination standard under NACARA;

**• (G) "The parties jointly filed a motion to terminate, or one party filed a motion to terminate and the other party affirmatively indicated its non-opposition, unless the immigration judge articulates unusual, clearly identified, and supported reasons for denying the motion." See 8 CFR Section 1003.18(d))(1)(i)(G)(Docket Management, Mandatory Termination)(emphasis added).**

36. "On January 16, 2025, a federal district court approved a proposed settlement in *Calderon Jimenez v. Mayorkas*. The case was filed in 2018 on behalf of a class of certain U.S. citizens and their noncitizen spouses who have final orders of removal and live in New England. The two-year settlement agreement has two key terms: First, it provides a process by which most noncitizen class members should be able to reopen and dismiss their removal proceedings. Second, during the two-year period of the settlement, ICE may not take enforcement actions against class members except when ICE determines that an individual poses a threat to public safety. The settlement is in effect from January 16, 2025 to January 16, 2027." Source https://www.aclum.org/en/calderon-settlement

The Approved Settlement specifically details protections afforded to class members:

(a) Boston ERO will take Enforcement Actions against Named Plaintiffs or Noncitizen Class Members only after both (a) considering the Form I-130 visa petition filed on their behalf by their U.S. citizen spouse, the noncitizen's eligibility to file a Form I-212, and their eligibility to file a Form I-601A, and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security. Boston ERO will consider subsections (a) and (b) under this paragraph at each Enforcement Action for a known Class Member. Any decision to arrest, initially detain, or continue to detain a Noncitizen Class Member, including those Noncitizen Class Members who are discovered to be Noncitizen Class Members after their initial detention decision, shall be approved by a DFOD-level Officer after the consideration and the determination required by Section III(A).

37. DHS can not credibly claim that the Petitioner, "poses a threat to public safety or threat to national security". On or about February 5, 2017, the Petitioner's USC wife, Pranvera Deshati filed an I-130 Application on his behalf. This application and receipt notice detailed his home address, as well as Respondent's lease Agreement. USCIS approved this application. Thereafter, the Petitioner filed a Form I-212 Application to Reapply for Admission After Deportation of Removal which detailed his home address. Additionally, his name is listed on the birth certificates for his USC children. Upon information and belief, the source being the Petitioner, he has consistently paid taxes. The Petitioner was arrested and charged with a violation of the vehicle and traffic law. Exhibit B.

38.  This Court should release the Petitioner because DHS must detail that they have undertaken the steps required as detailed above. In the event that DHS has undertaken the steps required, this Court should order the Petitioner's release because: DHS can not credibly claim that the Petitioner is, "the Noncitizen Class Member poses a threat to public safety or threat to national security".

39. By comparing the facts of the instant matter to the facts of Guerrero-Sanchez, 905 F.3d at 224, it is clear that DHS' failure to set a bond is so arbitrary that it would offend  fundamental tenets of due process. *Chajchic v. Rowley, No. 1:17-CV-457, 2017 WL  4401895, at \*5 (M.D. Pa. July 25, 2017)*, report and recommendation adopted, *No.  1:17-CV-457, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017)*. Mr. Guerrero-Sanchez  was issued an expedited order of removal after attempting to enter the USA with a  fraudulent document. Thereafter, he re-entered the USA and was convicted of one  count of conspiracy to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and he was sentenced to forty-two  months of imprisonment. After his sentence, he was placed in reinstated removal   proceedings and sought CAT relief. The IJ denied his claim, the BIA denied his claim and the Third Circuit Court of Appeals granted his claim and remanded for further consideration. Mr. Guerrero-Sanchez filed a petition for writ of habeas corpus arguing  that he was eligible for a bond and the District Court Judge ordered that a bond  hearing be held. The Immigration Judge denied bond.

The District Court Judge vacated the Immigration Judge's decision holding:

    a.  Petitioner Is Not a Current Danger to the Community. The great weight of record evidence also indicates that Petitioner is not a present danger to the community. To be sure, Petitioner committed a serious crime. As the Third Circuit has admonished, it is not that past "convictions are no longer relevant. [But d]ue process is not satisfied ... by rubberstamp denials based on temporally distant offenses. The process due even to ... aliens requires an opportunity for an evaluation of the individual's current threat to the community[.]" Chi Thon Ngo, 192 F.3d at 398 (emphasis added). Indeed, "presenting danger to the community at one point by committing a crime does not place [a detainee] forever beyond redemption." Id

    b.  Here, the Petitioner has provided substantial evidence that he is not a present danger to the community. That evidence includes the absence of any criminal history beyond his drug conspiracy conviction, acceptance of responsibility for his criminal conduct, extensive evidence of rehabilitation and good conduct while incarcerated and detained, multiple offers of support from family and employers if he were to be released, and numerous sworn statements attesting to Petitioner's good character. Respondents, meanwhile, have attempted to carry their burden by relying almost exclusively on Petitioner's years-old drug conspiracy conviction and generalities regarding the violent nature of the drug trade. But such generalities, by their nature, are not "individualized" considerations of Petitioner's danger to the community, as the law requires. See Chavez-Alvarez, 783 F.3d at 478; Leslie, 678 F.3d at 271; Diop, 656 F.3d at 233. Moreover, "[d]ue process is not satisfied ... by rubberstamp denials based on temporally distant offenses." Chi Thon Ngo, 192 F.3d at 398. Accordingly, the court finds that the record evidence militates strongly in favor of finding that Petitioner is not a present danger to the community.

40.  Here, the Petitioner's positive equities are much greater than Sanchez's. Mr. Guerrero Sanchez was detained while re-entering the USA with fraudulent documents and immediately convicted of trafficking methamphetamine. Here, the Petitioner has never been convicted of a crime. He has numerous family members in the United States. He has paid taxes . As soon as the BIA reviews the joint motion to reopen will be reviewed by the Board of Immigration Appeals, then the Petitioner's order of removal will be vacated.

**VIII.    THE PETITIONER SHOULD BE RELEASED BECAUSE HE WAS NOT PROVIDED A PRE-DEPRIVATION HEARING**

41.    Immigrants who pursue lawful immigrant status in the United States have rights under the Due Process Clause of the Fifth Amendment. The fundamental requirement of Due Process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Elridge, 424 U.S. 319, 332 (1976). Procedural due process "imposes constraints on government decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth amendment." Id. Once a Plaintiff-Petitioner has identified a protected liberty or property interest, the Court must determine whether constitutionally sufficient process has been provided. Id. In making this determination, the Court balances (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural requirement would entail;" (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335. Due process cases recognize a broad liberty interest rooted in both the fact of deportation and the process of removal proceedings. See Bridges v. Wixon, 326 U.S. 135, 154 (1945) (deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom."); see also Chhoeun v. Marin, 2018 WL 566821, at *9 (C.D. Cal., Jan. 25, 2018) (finding a "strong liberty interest" where being deported means being separated from home and family). While this liberty interest typically arises in removal proceedings, courts have found procedural due process violations for persons not in removal proceedings. See, e.g., Walters v. Reno, 145 F.3d 1032 (9th Cir. 1998) (forms issued to noncitizens charged with civil document fraud violated due process clause); Soberano v. Johnson, 305 F.Supp.3d 1176, 1180 (W.D. Wash. Mar. 29, 2018) (concluding that "Agency

Defendants do not provide sufficient notice of the one-year deadline to satisfy the Due Process clause" to asylum-seeker subclasses both in and out of removal proceedings).

42. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." Demore v. Kim, 538 U.S. 510, 523 (2003) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

43. Due Process requires that there be "adequate procedural protections" to ensure that the government's asserted justification for a noncitizen's physical confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Id. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). In the immigration context, the Supreme Court only recognizes two purposes for civil detention: preventing flight and mitigating the risks of danger to the community. *Zadvydas*, 533 U.S. at 690; Demore, 538 U.S. at 528. A noncitizen may only be detained based on these two justifications if they are otherwise statutorily eligible for bond. *Zadvydas*, 533 U.S. at 690. 40. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To determine what process Petitioner is due, this Court should consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. Id. at 335.

44.  Before the government detains a noncitizen under Section 1226(a), due process requires that an individualized assessment be conducted regarding the person's circumstances: whether they are a flight risk or danger to society.

45. The Lopez Benitez Court found that Petitioner was denied due process when ICE detained him on July 16, 2025, without first conducting  an individualized assessment as to his dangerousness or flight risk,

or any kind of process at all sufficient to qualify as a valid exercise of discretion. The Respondents argued that, to cure this violation, Mr. Lopez Benitez may seek relief from this violation in a bond hearing in immigration court. The Court held that "[s]uch a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Lopez Benitez v. Francis*, 2025 WL 2267803 (S.D.N.Y., 2025)

46. At the hearing, counsel for Respondents argued that § 1226(a) does not require that a noncitizen be given notice and an opportunity to contest detention at "some sort of pre-deprivation hearing in front of a DHS officer." ''The Court does not hold anything to the contrary. To be clear, the Court does not hold that some sort of adversarial hearing-like process is required before DHS may exercise its discretion to detain a noncitizen under § 1226(a). Nor does the Court hold that DHS must engage in a painstaking review of every facet of a noncitizen's history and characteristics before doing so. Cf. Reno, 507 U.S. at 313 (finding that the requirement of an "individualized determination" in at least some contexts "does not mean that [DHS] must forswear use of reasonable presumptions and generic rules"). Benitez v. Francis, (S.D.N.Y. Aug. 8, 2025)

47. Absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ. See, e.g., *Ortega*, 415 F. Supp. 3d at 970; *Vargas*, 2020 WL 5074312, at *3–4; *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056 (N.D. Cal. 2021). *Guillermo M. R. v. Kaiser*, 2025 WL 1983677, at *9 (N.D.Cal., 2025).

48. Even though the statutory protections of section 1226(a) require only a prompt post-deprivation hearing, we conclude here that the high risk of erroneous deprivation in this case likely means that a pre-deprivation hearing is constitutionally necessary. *Valencia Zapata v. Kaiser*, 2025 WL 2741654, at *11 (N.D.Cal., 2025)

## VII.    THIS COURT SHOULD HOLD THE BOND HEARING OR ORDER RELEASE

49. Petitioner should be released or be afforded a bond hearing immediately because his detention is governed by 8 USC 1226(a).

50. This Court should maintain jurisdiction over the individualized bond hearing. As supported by existing case law, this Court is authorized to maintain jurisdiction in bond proceedings. In *Leslie v. Holder*, the District Court states "...we are empowered to conduct bail proceedings in habeas corpus proceedings brought by immigration detainees." 3:11-CV-249 * 10 (M.D. PA 2012). Similar to the facts in the instant case, the Petitioner in *Leslie* was detained for a prolonged period of time, and filed a petition for habeas corpus. The District Court ultimately conducted a bail hearing. (In citing *Leslie v. Attorney General*, 2012 WL 898614 the District Court states "Here, the law of the case, as defined by the mandate of the court of appeals is clear: 'Leslie's appeal will be remanded to the District Court with instructions to conduct an individualized bond hearing as required by Diop within ten days of the date when this opinion and order are filed….") *Id.* at 12. Similarly, the Third Circuit Court of Appeals in *Chavez Alvarez v v. Warden York County Prison*, "remanded with instruction to enter an order granting the writ of habeas corpus and ensure that Chavez-Alvarez is afforded, within ten days of the entry of this order, a hearing to determine whether, on evidence particular to Chavez-Alvarez, it is necessary to continue to detain him to achieve the goals of the statute") *Chavez Alvarez v. Warden York County Prison*, 14-1402 * 21 (3rd Cir. 2015).

51. Furthermore, the Court in *Flores-Powell v. Chadbourne*, granted the Petitioner's Habeas Petition, and went on to hold that "the court will conduct a hearing to determine whether Flores is dangerous to the community or a flight risk" 677 F.Supp 2d 455 (2010). In deciding to conduct the bond hearing, the Court in Flores-Powell relied on the reasoning in *Alli v. Decker*, 644 F. Supp. 2d 535 (M.D. Pa. 2009); citing to Alli's decision.

"Supervision of the reasonableness of detention through the habeas process also provides justified protection of the alien's liberty interest and conserves judicial resources. If the remedy for unreasonable detention were an order directing a bond hearing under § 1226(a), an alien who has already demonstrated that his detention is no longer reasonable would remain detained pending an initial custody determination by the DHS district director, 8 C.F.R. § 236.1(d)(1), a hearing before an immigration judge, *id.,* the IJ's decision, and a potential appeal to the BIA, *id.* § 236.1(d)(3). In addition, ... the only recourse for an alien dissatisfied with the outcome of his bond hearing would be to return to court again and file another habeas action. *Cf. Ly,* 351 F.3d at 272. A bond hearing before the habeas court avoids this circuitous and potentially lengthy process. The habeas court's determining whether a petitioner is entitled to release also serves the "`historic purpose of the writ,' namely, `to relieve detention by executive authorities without judicial trial.'" *Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491.
See, *Flores-Powell,* 677 F.Supp 2d 455 (2010).

52. Therefore, as is clear from existing case law, this Court is well within its jurisdiction to conduct a bond hearing, and it would be in the interest of judicial economy.

## **CLAIMS FOR RELIEF**

## **FIRST CAUSE OF ACTION**

## **THE PETITIONER SHOULD BE RELEASED BECAUSE THE REMOVAL PERIOD ENDED ON OCTOBER 20, 2009**

53. 8 U.S.C. § 1231(a)(1)(B) (emphasis added).During the 90–day removal period, detention of the alien is mandatory. 8 U.S.C. § 1231(a)(2). An alien not removed within the initial 90–day removal period may be detained beyond that period, 8 U.S.C. § 1231(a)(6), subject to a custody review by ICE. 8 C.F.R. § 241.4(k) (1)(i).

54. Whereas a removal order becomes final "upon expiration of the time allotted for an appeal," a removal order entered *in absentia* becomes final "immediately upon entry of such order." 8 C.F.R. § 1241.1; *Farez–Espinoza v. Chertoff,* 600 F.Supp.2d 488, 499 (S.D.N.Y.2009) (order of removal entered in alien's absence became final immediately). Section 1231(a)(1)(C) tolls the removal

period if an alien "conspires or acts to prevent the alien's removal." 8 U.S.C.1231(a)(1)(C)

55. Here, the Petitioner has not acted in bad faith. In fact, he applied with DHS to normalize his status. As a result, the removal period has concluded.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE CALDERON CLASS SETTLEMENT

56. Calderon Class members can only be detained if the "the Noncitizen Class Member poses a threat to public safety or threat to national security" Exhibit B. This Court should release the Petitioner because DHS must detail that they have undertaken the steps required as detailed above. In the event that DHS has undertaken the steps required, this Court should order the Petitioner's release because: DHS can not credibly claim that the Petitioner , "poses a threat to public safety or threat to national security".

57. Petitioner's continuing detention is therefore unlawful.

## THIRD CAUSE OF ACTION

### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide an Individualized Hearing for Domestic Civil Detention)

58. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

59. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V.

60. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)

 ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens

due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

61. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at (2001).

62. The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979)

 (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

63. Petitioner was arrested inside the United States and is being held without being provided any individualized detention hearing

64. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

65. On October 17, 2025 DHS and Petitioner agreed that he is a "Calderon Class Member" and filed a joint motion to reopen and terminate removal proceedings. Exhibit A.

66. The Executive Office for Immigration Review (EOIR) "mandatory termination" provisions describe when an Immigration Judge or the Board of Immigration Appeals can terminate proceedings. It creates two separate types of termination: "mandatory termination" and "discretionary" termination. 8 C.F.R. Section 1003.18; 1003.1(m); see also 8 C.F.R. Section 1239.2(b). Under the "mandatory termination" category which applies to this case, the Immigration Judges and the Board of Immigration Appeals are "required" to terminate proceedings if any of the following circumstances are present:

**• (G) "The parties jointly filed a motion to terminate, or one party filed a motion to terminate and the other party affirmatively indicated its non-opposition, unless the immigration judge articulates unusual, clearly identified, and supported reasons for denying the motion." See 8 CFR Section 1003.18(d))(1)(i)(G)(Docket Management, Mandatory Termination)(emphasis added).**

67. Here, the Petitioner's removal proceedings must be terminated. As a result, his continued detention is unlawful.

**FOURTH CAUSE OF ACTION**
**Violation of Fifth Amendment Right to Due Process**
**(Substantive Due Process)**

68. Because Petitioner is not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*, the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

69. Petitioners' detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

WHEREFORE, Petitioner respectfully requests this Court to:

1.     Assume jurisdiction over this matter;

2.     Enjoin Respondents from removing Petitioner from the United States pending the resolution of this case;

3.     Order Respondents' provide Petitioner a pre-deprivation hearing with 48-hours advanced notice before any attempt is made to remove Petitioner from the United States;

4.    <u>Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;</u>

5.    <u>Declare that Petitioner's detention violates the Immigration and Nationality Act,</u>

6.    <u>Declare that Petitioner's detention violates the Administrative Procedure Act;</u>

7.    <u>Grant a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody on his own recognizance or under parole, bond, or reasonable conditions of supervision;</u>

8.    Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. §2412, or other statutes;

9.    Grant such further relief as the Court deems just and proper.

.

Respectfully submitted,

By: /s/ Paul Grotas
Paul B. Grotas, Esq
The Grotas Firm, P.C.
499 Seventh Avenue, Suite 23N
New York, NY 10018
917-436-4444

*COUNSEL FOR PETITIONER*

Dated:    New York, New York
            November 3, 2025