# EXHIBIT I

TODD BLANCHE
U.S. Deputy Attorney General
ALINA HABBA
Acting United States Attorney
Special Attorney
JOHN T. STINSON
Assistant United States Attorney
Deputy Chief, Civil Division
401 Markt Street, 4th Floor
Camden, NJ 08101
john.stinson@usdoj.gov
*Attorneys for Respondents*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAULAND DESHATI,<br><br>    *Petitioner*,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>    *Respondents*. | Hon. Edward S. Kiel, U.S.D.J.<br><br>Civil Action No. 25-15940 (ESK) |

## ANSWER TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1
BACKGROUND ........................................................................................................... 2
    I.    Petitioner's Immigration History ................................................................. 2
    II.    Procedural History ....................................................................................... 3
STANDARD OF REVIEW ........................................................................................... 4
ARGUMENT ................................................................................................................. 4
    I.    Petitioner's Detention Under § 1231(a)(6) Is Proper and Not Unreasonably Prolonged ...................................................................................................... 4
        A. DHS Was Not Required to Detain Petitioner and Initiate Removal when his Removal Order Became Final ................................................................. 5
        B. Petitioner's Detention Remains "Presumptively Reasonable" ................. 8
    II.    The Court Lacks Jurisdiction to Grant Relief based on the Motion Filed with BIA or the *Calderon* Class Action and Should Decline to Conduct any Collateral Review of those Tribunals ........................................................... 9
CONCLUSION ............................................................................................................ 11

## PRELIMINARY STATEMENT

On September 19, 2025, Petitioner was detained by immigration officials in accordance with 8 U.S.C. § 1231(a)(6) because he is subject to a final order of removal. Petitioner brings this habeas action under 28 U.S.C. § 2241 alleging that his detention violates § 1231(a)(1)(B) and the Due Process Clause. *See* ECF No. 7-2 ("Am. Pet.") ¶¶ 53-55, 68-69. He also alleges that the detention contravenes a settlement agreement in *Calderon Jimenez v. Mayorkas*, 1:18-cv-10225-MLW (D. Mass.), and that he and the Department of Homeland Security submitted a joint motion to the Board of Immigration Appeals ("BIA") to re-open his longstanding final order of removal. Am. Pet. ¶¶ 56-67. He seeks an order from this Court staying any removal from the United States, requiring immigration officials to provide a "pre-deprivation hearing with 48-hours advance notice" of any effort to remove him, and releasing him from custody or ordering immigration officials to provide him with a bond hearing. *See* ECF No. 7-2.

Petitioner is lawfully detained under § 1231(a)(6), which grants United States Immigration and Customs Enforcement ("ICE") authority to detain individuals, like Petitioner, subject to a final order of removal. The period of detention is reasonable under established precedent. Regarding the motion to open before the BIA and the *Calderon* matter, this Court lacks jurisdiction to grant relief based on those proceedings, and Petitioner has recourse to the BIA and the United States District Court for the District of Massachusetts for relief in those matters. Respondents respectfully request that the Court dismiss this habeas petition.

1

# BACKGROUND

## I. Petitioner's Immigration History

Petitioner is a citizen of Albania. *See* Ex. A, Form I-862 Notice to Appear dated August 8, 2006. He entered the United States from Mexico without inspection on September 14, 2004. Ex. A; Am. Pet. ¶ 1. On April 11, 2007, an Immigration Judge denied Petitioner's request for asylum, withholding of removal, and withholding under the Convention Against Torture ("CAT"), and ordered him removed. Ex. B, IJ Order. Petitioner appealed to the BIA. Ex. C, appeal notices.

During his immigration proceedings, Petitioner sought asylum from U.S. Citizenship and Immigration Services ("USCIS"), which on August 16, 2006, declined to grant him relief based on material inconsistencies in his testimony and written statements and referred the matter to his immigration proceedings. Ex. D, Referral Notice.

On November 7, 2008, the BIA dismissed his appeal and adopted the Immigration Judge's order of removal after denying asylum, withholding, and withholding under CAT. Ex. E, BIA decision. As part of its decision, the BIA found that the "record establishes that there has been a fundamental change in circumstances in the country of Albania such that [Petitioner] would no longer fear persecution on the bases claimed." *Id*. Petitioner appealed the BIA decision to the United States Court of Appeals for the Second Circuit, which on July 22, 2009 denied his petition for review. *See* Ex. F, *Deshati v. Mukasey*, 08-5887 (2d Cir.).[1]

---

[1] Petitioner filed an unopposed motion to stay the order of removal, which was never granted and rendered moot by the Second Circuit's denial of relief. Ex. F.

On April 17, 2012, Petitioner moved to reopen his final order of removal before the BIA. *See* Ex. G, Notice of BIA decision. On October 25, 2012, the BIA denied the motion as untimely and because Petitioner failed to establish that country conditions in Albania were materially different to create a risk for him. *Id*. Petitioner appealed that denial to the Second Circuit on November 11, 2012. *See* Ex. H, docket. On May 9, 2014, the Second Circuit denied Petitioner's petition for review, which decision became final on July 1, 2014. Ex. I.

Petitioner alleges that his wife submitted an I-130 Petition for Alien Relative to USCIS on his behalf in February 2017 and thereafter submitted an I-212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal. Am. Pet. ¶ 1.

On March 6, 2018, the Department of Homeland Security issued a Warrant of Removal for Petitioner. Ex. J. ICE arrested him on September 19, 2025, and detained him at Delaney Hall Detention Facility.

## II. Procedural History

Petitioner filed his original Petition on September 24, 2025, asserting only that his detention under § 1231(a) is unlawful. ECF No. 1. The Court ordered Respondents to answer by October 22, 2025. ECF No. 3.

The parties submitted a joint request for an amended scheduling order permitting Petitioner to amend his Petition, which the Court granted, ECF No. 6. Petitioner amended his petition on October 31, 2025 and supplemented it on

3

November 3, 2025. ECF Nos. 7, 9. In the Amended Petition, he reasserts his § 1231 claim and raises claims arising from his BIA motion and the *Calderon* agreement.

## STANDARD OF REVIEW

28 U.S.C. § 2241(c)(3) authorizes a court to grant a writ of habeas corpus where a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, which is applicable to § 2241 petitions through Rule 1(b), provides this Court with the authority to dismiss a habeas petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *See also Moncrieffe v. Yost*, 367 F. App'x 286, 288 n.2 (3d Cir. 2010) (noting summary dismissal of a § 2241 habeas petition is appropriate pursuant to Rule 4 of the Rules Governing Section 2254 Cases). "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254, Rule 4).

## ARGUMENT

### THE COURT SHOULD DISMISS THE HABEAS PETITION

**I. Petitioner's Detention Under § 1231(a)(6) Is Proper and Not Unreasonably Prolonged**

Petitioner first argues his detention violates 8 U.S.C. § 1231(a)(1)(B), (a)(6), and *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The removal order in this case became administratively final on November 7, 2008, when the BIA denied all relief and dismissed his appeal of the Immigration Judge's order. 8 CFR § 1241.1

4

(describing latest-of dates that make a removal order administrative final).[2] DHS never detained Petitioner prior to September 19, 2025. The Court should reject this claim for the reasons that follow.

### A. DHS Was Not Required to Detain Petitioner and Initiate Removal when his Removal Order Became Final

Petitioner argues that § 1231(a)(1)(B) requires DHS to immediately detain and initiate removal of any alien when an order of removal becomes final. Beyond the 90-days following the final order, Petitioner argues, DHS may be limited in whether and how long it can detain and is required to provide an immediate bond hearing. *See, e.g.,* Am. Pet. ¶¶ 24-33. Petitioner is incorrect on all these points.

Where, as here, an alien is subject to a final order of removal, there is a 90-day "removal period," during which the government "shall" remove the alien. 8 U.S.C. § 1231(a)(1). Detention during this period is mandatory. *See* 8 U.S.C. § 1231(a)(2). However, § 1231(a)(1)(A) does not mandate immediate arrest or detention upon finality. The 90-day period begins to run when the order becomes administratively or judicially final, but the timing of arrest and detention within that period remains a matter of agency discretion. *See, e.g., Heckler v. Chaney*, 470 U.S. 82, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."). Thus, DHS's

---

[2] The mandatory removal period begins on the latest of three possible dates: (1) the date an order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date the alien is released from non-immigration detention. 8 U.S.C. § 1231(a)(1)(B).

5

timing in executing a removal order, and detaining an alien as part of that process, falls squarely within its discretionary enforcement authority. And contrary to Petitioner's argument here suggesting that DHS is barred from or limited in detaining him now, Congress authorized the detention of aliens under § 1231(a)(6) after the removal period. *Zadvydas*, 533 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.").

There are at least three potential outcomes in the event the government does not remove an alien during the 90-day mandatory removal period. First, the government may release the alien subject to conditions of supervised release. *See* 8 U.S.C. § 1231(a)(3). Second, the government may extend the removal period if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). And finally, the government may further detain certain categories of aliens, including those "inadmissible" under 8 U.S.C. § 1182. *See* 8 U.S.C. § 1231(a)(6). Continued detention under this latter category is often referred to as the "post-removal-period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

Petitioner's argument that, after the initial 90-day period, DHS is barred or limited in whether it can detain is incorrect:

> [Petitioner] is confusing the 90-day "removal period" under 8 U.S.C. § 1231(a)(1)(A), which began when his order of removal became final in 2006, *see id.* § 1231(a)(1)(B), with the six-month "presumptively reasonable period of detention" under *Zadvydas*, 533 U.S. at 701, 121 S. Ct. 2491, which could not have begun until he was detained by ICE in 2015. This result is compelled not only by the language of *Zadvydas* but

6

> also by its logic. It is the prospect of indefinite "detention" that led the Supreme Court to create the six-month presumption. *Id.* at 682, 121 S. Ct. 2491; *see also id.* at 689, 121 S. Ct. 2491 (read "in light of the Constitution's demands," § 1231(a)(6) "does not permit indefinite detention"); *Beckford*, 168 F. Supp. 3d at 536 ("In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling [the] apparent authorization of indefinite detention [under § 1231(a)(6) ] with the Fifth Amendment's prohibition against depriving a person of their liberty without due process."). Delays in effecting the deportation of a non-detained alien do not implicate the alien's liberty interests and thus do not raise the same "serious constitutional concerns." *Zadvydas*, 533 U.S. at 682, 121 S. Ct. 2491.

*Callender v. Shanahan*, 281 F. Supp. 3d 428, 435–36 (S.D.N.Y. 2017); *see id.* at n.7 ("[T]he district courts have come to inconsistent conclusions [about *Zadvydas* accrual] . . . however, most district courts have concluded—as does this Court—that *Zadvydas* meant what it said: six months is the presumptively reasonable period of 'detention' after the entry of a final order of removal."); *see, e.g.*, *Rodriguez–Guardado v. Smith*, 271 F. Supp. 3d 331, 335 n.8 (D. Mass. Sept. 22, 2017) ("Petitioner's contention that the *Zadvydas* clock runs while he is not in custody defies common sense."); *Chun Yat Ma v. Asher*, 2012 WL 1432229, at *3 (W.D. Wash. Apr. 25, 2012) ("Petitioner first argues that the time period for analyzing his detention under *Zadvydas* begins from when his removal order became final, rather than the date of his detention. The Court disagrees . . . Detention is the core issue in *Zadvydas*, and Petitioner was not detained until May 9, 2011," five years after his order of removal became final in 2006).

Finally, Petitioner points to 8 C.F.R. § 241.4(k)(1)(i) for the proposition that he is "subject to custody review by ICE." Am. Pet. ¶¶ 25. That regulation states as follows:

> Prior to the expiration of the removal period, the district director or

7

> Director of the Detention and Removal Field Office shall conduct a custody review for an alien described in paragraphs (a) and (b)(1) of this section where the alien's removal, while proper, cannot be accomplished during the period, or is impracticable or contrary to the public interest. As provided in paragraph (h)(4) of this section, the district director or Director of the Detention and Removal Field Office will notify the alien in writing that he or she is to be released from custody, or that he or she will be continued in detention pending removal or further review of his or her custody status.

8 C.F.R. § 241.4(k)(1)(i). Petitioner has not articulated how he falls under this provision, which addresses removals that "cannot be accomplished during the [removal] period[.]" The provision on its face does not create a broad entitlement to "custody review" once ICE decides to detain an alien with a final order of removal.

### B.    Petitioner's Detention Remains "Presumptively Reasonable"

The INA does not place an explicit time limit on how long detention during the "post-removal-period" can last. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). But the Supreme Court has held that the government may only detain aliens in the post-removal-period for the time "reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. And the Supreme Court further clarified that a six-month period of detention is "presumptively reasonable." *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, DHS detained Petitioner under § 1231(a)(6) approximately two-and-a-half months. He is not subject to "prolonged detention" at this point. Indeed, based on *Zadvydas*, any challenge to a post-removal-order detention by an alien who has

8

been detained "for **less than six months** must be dismissed as premature." *Kevin A.M. v. Essex Cnty. Corr. Facility*, No. 21-11212 (SDW), 2021 WL 4772130, at *2 (D.N.J. Oct. 12, 2021) (emphasis added); *see also Luma v. Aviles*, No. 13-6292 (ES), 2014 WL 5503260, at *4 (D.N.J. Oct. 29, 2014) ("To state a claim under *Zadvydas*, the presumptively reasonable six-month removal period must have expired at the time the Petition was filed; any earlier challenge to post-removal-order detention is premature and subject to dismissal."); *Cesar v. Achim*, 542 F. Supp. 2d 897, 902 (E.D. Wis. 2008) (collecting cases).

Moreover, Petitioner advances no argument that his removal is not reasonably foreseeable (assuming he is not released by BIA under the *Calderon* matter). *See Barneboy v. Att'y Gen.*, 150 F. App'x 258, 261 n.2 (3d Cir. 2005) (recognizing "burden is on the alien to provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (quotation omitted)). But even if Petitioner did propound that argument, the claim would fail. Here, ICE arrested Petitioner on September 19, immediately detained him, and is prepared to remove him (again, if the BIA does not release him under the *Calderon* matter).

II. **The Court Lacks Jurisdiction to Grant Relief based on the Motion Filed with BIA or the *Calderon* Class Action and Should Decline to Conduct any Collateral Review of those Tribunals**

Petitioner also seeks release from detention by pointing to the joint motion to reopen his removal proceedings pending before the BIA as well as the *Calderon* class action before the District of Massachusetts. This Court lacks jurisdiction to review

9

such issues in this habeas matter and should decline to permit any collateral attack on the District of Massachusetts' *Calderon* class action.

Courts often reject due process challenges to removal while motions to reopen are pending, reasoning that: (1) there is no jurisdiction for such a challenge; and (2) the noncitizen can still litigate the immigration matter while removal is pending and even after removal. *See, e.g.*, *Revan v. Warden, Essex Cnty. Corr. Facility*, 822 F. App'x 156, 157 (3d Cir. 2020) (citing 8 U.S.C. § 1252(a)(5) and finding no jurisdiction for an effort to remain in the United States to further challenge a final order of removal); *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020) (explaining that district courts lack jurisdiction "to review most claims that even relate to removal"); *M'Bagoyi v. Barr*, 423 F. Supp. 3d 99, 106 (M.D. Pa. 2019) ("[T]o the extent that the petitioner seeks a stay of his removal until he exhausts his remedies with respect to his motion to reopen his immigration proceedings, that would be a direct challenge to his removal order and the court does not have jurisdiction over that aspect of the petitioner's filing under § 1252."); *Ponce v. Garland*, No. 22-1751, 2022 WL 14318031, at *1 (C.D. Cal. Oct. 24, 2022) (denying petitioner's request for "a stay of removal until the Bureau of Immigration Appeals rules on Petitioner's pending motion to reopen"); *Beltran Prado v. Nielsen*, 379 F. Supp. 3d 1161, 1169-70 (W.D. Wash. 2019) ("If he is removed to Mexico while his motion to reopen is pending, he may continue to litigate his case from abroad . . . Allowing petitioner to remain in the United States while his motion to reopen is pending is unlikely to provide additional value, in terms of due process protections,

10

and it likely would provide at least some administrative burdens on ICE"). Indeed, federal courts routinely permit removal while an alien's motion to reopen a final order is pending. *See, e.g., M'Bagoyi*, 423 F. Supp. 3d at 106.

For similar reasons, there are no grounds for the Court to assume jurisdiction over Petitioner's alleged remedies under the *Calderon* settlement, which is before a different federal district court. *See* ECF No. 9-3. Petitioner filed a copy of the settlement agreement, *id.*, which states expressly that: (1) it addresses actions by the "Boston ERO" (§ I(E), (G)), not the Newark ERO that is detaining him presently; and (2) the District of Massachusetts retains jurisdiction to address any disputes regarding the application of the terms of the agreement and to provide enforcement remedies, (§ V). To the extent Petitioner believes *Calderon* offers him any remedy, he must seek that relief in the proper court.

## CONCLUSION

For the foregoing reasons, the Court should dismiss or deny the Amended Petition.

Respectfully submitted,

TODD BLANCHE
U.S. Deputy Attorney General

ALINA HABBA
Acting United States Attorney
Special Attorney

By: */s/ John T. Stinson*
JOHN T. STINSON
Assistant United States Attorney
Deputy Chief, Civil Division
*Attorneys for Respondents*

11

Dated: November 5, 2025

12