## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KRISTI NOEM, *et al.*, <br><br> Defendants-Respondents. | No. 18-cv-10225-PBS |

## MEMORANDUM IN SUPPORT OF PETITIONERS' <u>MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

    A.    The Class Action ..................................................................................... 3

    B.    The Settlement Agreement ...................................................................... 7

    C.    Factual Background Regarding Class Members ..................................... 11

        1.    Fernando Fagner Costa ............................................................ 11

        2.    Tauland Deshati .......................................................................... 12

        3.    Conflict Resolution Procedure .................................................. 13

III.  DISCUSSION .................................................................................................. 14

    A.    Removing Mr. Costa and Mr. Deshati Pending JMTR Adjudication Would
        Violate Section II of the Settlement Agreement .................................... 14

    B.    ICE Violated the Notice and Reporting Requirements of Section V of the
        Settlement Agreement ............................................................................ 19

IV.   CONCLUSION AND REQUEST FOR RELIEF ................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Calderon v. Cronen*,
  317 F. Supp. 3d 626 (D. Mass. 2018) .................................................................21

*Disability L. Ctr. v. Mass. Dep't of Corr.*,
  960 F. Supp. 2d 271 (D. Mass. 2012) .................................................................7

*Garcia-Carias v. Holder*,
  697 F.3d 257 (5th Cir. 2012) ...........................................................................16

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................16

*Ovalles v. Holder*,
  577 F.3d 288 (5th Cir. 2009) ...........................................................................16

*Santana v. Holder*,
  731 F.3d 50 (1st Cir. 2013) .............................................................................16

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ........................................................................................21

**Federal Statutes**

8 U.S.C. § 1229a .............................................................................................9, 16

28 U.S.C. § 1651(a) ............................................................................................3

**Regulations**

8 C.F.R. § 212.7 ................................................................................................6

8 C.F.R. § 1003.23 .....................................................................................9, 14, 16

8 C.F.R. § 1003.2 .............................................................................................16

*Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate
  Relatives; Final Rule*, 78 Fed. Reg. 535 (Jan. 3, 2013) ......................................4, 5

*Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final
  Rule*, 81 Fed. Reg. 50244 (July 29, 2016) .......................................................4, 5

*Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate
  Relatives; Proposed Rule*, 77 Fed. Reg. 19902 (Apr. 2, 2012).................................5

**Other Authorities**

Federal Rule of Civil Procedure 23(e)(2) ........................................................................7

Lyle Denniston, *Regrets, But No Apology*, SCOTUSblog,
    https://www.scotusblog.com/2012/04/regrets-but-no-apology .............................................17

Restatement (Second) of Contracts § 203(a) .............................................................18

## I.    INTRODUCTION

This case involves a class of noncitizens and their U.S. citizen spouses seeking to use pathways established by the federal government to gain lawful permanent residency in the United States.  After years of litigation and settlement negotiations, the parties entered into a Settlement Agreement that was approved on January 16, 2025.  The Settlement Agreement guarantees class members certain rights and protections from detention and removal, establishes processes for them to vacate their final orders of removal, provides certain notice and reporting obligations, and provides a mechanism for class members who believe their rights have been violated to bring a motion to enforce the Settlement Agreement before this Court.  The present dispute raises the question whether U.S. Immigration and Customs Enforcement ("ICE") violates its agreement to help class members get rid of their final orders of removal if it simultaneously acts to execute those removal orders.

Class counsel bring this motion to enforce the Settlement Agreement on behalf of class members Mr. Fernando Fagner Costa and Mr. Tauland Deshati.  The Settlement Agreement requires the Government to join class members in moving to reopen and dismiss their final orders of removal as long as those class members demonstrate prima facie eligibility to seek lawful permanent resident status and do not fall into an exception involving threats to public safety or prior serious immigration fraud.  But in these two cases, the Government threatens to functionally deny Mr. Costa and Mr. Deshati relief under the Settlement Agreement by removing them before their joint motions to reopen can be granted—even though ICE has ***already*** determined that they are prima facie eligible for the status they seek, that they pose no threat to public safety, and that there is no serious immigration fraud.

The Government's actions violate the Settlement Agreement in at least two distinct ways. *First,* the Government has violated Mr. Costa's and Mr. Deshati's right to pursue the reopening benefit made expressly available by Section II of the *Calderon* Settlement Agreement, ECF No. 654-1, which guarantees noncitizen class members the right to request that ICE join in moving to reopen and dismiss their final orders of removal ("JMTR request"). The Settlement Agreement provides that ICE's Office of the Principal Legal Advisor ("OPLA") is presumptively obligated to join such motions for any class member who demonstrates prima facie eligibility for lawful status, absent findings of threat to public safety or serious immigration fraud. And in the case of Mr. Costa and Mr. Deshati, ICE has *already* agreed to join each class member's JMTR request— thereby necessarily determining that neither poses a threat to public safety or national security and that both are qualified to apply for lawful permanent resident status. Yet ICE has rendered this action all but meaningless by continuing to threaten Mr. Costa and Mr. Deshati with removal before their joint motions to reopen can actually be granted by the Board of Immigration Appeals ("BIA"). In doing so, ICE circumvents its obligations under the Settlement Agreement and denies Mr. Costa and Mr. Deshati the benefits guaranteed to them by Section II, asserting without justification that it can remove class members who are entitled to seek to reopen and dismiss their removal proceedings before the reopening process is completed.

*Second*, the Government failed to comply with its separate notice and reporting obligations under Section V of the Settlement Agreement, under which it must provide class counsel with notice of each enforcement action taken against a class member. Although Mr. Costa and Mr. Deshati were both detained outside of New England—the jurisdiction of residency determining an individual's membership in the *Calderon* class—this jurisdictional boundary on class membership has no bearing on ICE's affirmative reporting obligation for these class

2

members.  But the Government will not agree to provide class counsel with any notice of whether or when it intends to remove Mr. Costa and Mr. Deshati, even though the Government does not contest that they are class members.  Frustratingly, the current motion practice has been made necessary because, ***even when asked***, the Government has repeatedly failed to provide concrete responses about Mr. Costa's or Mr. Deshati's intended removal; it also has been unable to provide class counsel any reassurance that removal is not imminent.

Accordingly, Petitioners request that this Court order the release of Mr. Costa and Mr. Deshati from detention and enjoin ICE from taking further enforcement action (including removal) against them unless it is based on new evidence that they pose a threat to public safety or national security.  Petitioners further respectfully request that this Court find that ICE violated Section V of the Settlement Agreement and order ICE to comply with the notice and reporting requirements of that provision.  Pending resolution of this motion, Petitioners also request that the Court continue to stay Mr. Costa's and Mr. Deshati's removal from the United States or transfer from their current locations of detention.  *See* 28 U.S.C. § 1651(a); *see also, e.g.*, ECF No. 32.

## II.    BACKGROUND

### A.    The Class Action

This case first arose more than seven years ago, in February 2018, from a habeas lawsuit filed by an individual petitioner, Ms. Lilian Calderon Jimenez.  Ms. Calderon had immigrated from Guatemala when she was three years old and had lived with a final order of removal since 2002.  In 2018, Ms. Calderon and her U.S. citizen husband had participated in an interview at the U.S. Citizenship and Immigration Services ("USCIS") office in Johnston, Rhode Island, to demonstrate that their marriage was *bona fide*—the first step in the "provisional waiver" process, described below, through which Ms. Calderon was seeking lawful status via her husband.

3

However, moments after she successfully completed her interview, agents from ICE's Enforcement and Removal Operations assigned to the Boston area of responsibility ("ICE Boston ERO") arrested her at the USCIS office in order to execute her final order of removal. *See generally* ECF No. 1.

Ms. Calderon was taking the first step in seeking lawful permanent status through what was then a relatively new "provisional waiver" process. Before 2013, the process for applying for lawful permanent status often required that noncitizen applicants spend months, or even years, apart from their U.S. citizen spouses because it often required them to go abroad to obtain a needed waiver of inadmissibility, apply for an immigrant visa, and interview with a U.S. consular official in their country of origin. But in 2013 and 2016, the Department of Homeland Security adopted the provisional waiver regulations, which were designed to promote family unity by allowing noncitizens married to U.S. citizens to pursue lawful immigration status while minimizing disruption to their family life. *See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule* ("2016 Final Rule"), 81 Fed. Reg. 50244, 50245 (July 29, 2016); *see also* ECF No. 159 at 7-8 (describing the provisional waiver regulations as intended to address "financial, emotional, and humanitarian hardships" caused by family separation, which was "incompatible with promoting family unification, an important objective of the United States immigration laws").

Following the enactment of the provisional waiver regulations in 2013, qualified noncitizens married to U.S. citizens could apply for and obtain a ***provisional*** waiver of the relevant ground of inadmissibility ***prior*** to leaving the United States, a measure that greatly reduced the amount of time families spent apart while seeking lawful status for the noncitizen spouse. *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate*

*Relatives; Final Rule* ("2013 Final Rule"), 78 Fed. Reg. 535, 536 (Jan. 3, 2013); *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Proposed Rule*, 77 Fed. Reg. 19902, 19906 (Apr. 2, 2012); *see also* ECF No. 159 at 7-8.

In 2016, the provisional waiver regulations were expanded to include, among others, noncitizens with outstanding final orders of removal who needed an additional waiver of inadmissibility associated with their prior order of removal. 2016 Final Rule, 81 Fed. Reg. at 50245; *see also* ECF No. 159 at 8. Consistent with the original purpose of the provisional waiver process, the amended regulations were "intended to encourage eligible individuals to complete the immigrant visa process abroad, promote family unity, and improve administrative efficiency." 2016 Final Rule, 81 Fed. Reg. at 50244. The regulations made it possible for eligible noncitizens with final orders of removal to seek lawful status through their U.S. citizen spouses by (1) being the beneficiary of a petition (a form "I-130") filed by their U.S. citizen spouse; (2) applying for two needed waivers of inadmissibility from within the United States; and (3) briefly traveling abroad for an interview at a U.S. consulate in their home country.

In her February 2018 lawsuit, Ms. Calderon alleged that the Government violated her statutory and constitutional rights when ICE detained her following her I-130 interview and sought her removal notwithstanding the fact that she was pursuing lawful permanent residency through the provisional waiver process—the process that the Government itself had established for her. *See* ECF No. 1 ¶¶ 14-64. After Ms. Calderon was released from detention, Petitioners filed an Amended Complaint on April 10, 2018, on behalf of a putative class, alleging that the Government's actions violated the Immigration and Nationality Act ("INA") and its regulations (Count 1), the Due Process Clause of the Fifth Amendment (Count 2), the Equal Protection Clause (Count 3), and the Administrative Procedure Act (Count 4), by detaining and attempting

to remove noncitizen Petitioners without regard for the provisional waiver process.  ECF No. 27

¶¶ 112-27.  The Petitioners further alleged violations of the INA and its regulations (Count 5)

and the Due Process Clause (Count 6) with regard to individuals in detention.  *Id.* ¶¶ 128-36.

In addition to Ms. Calderon, the named noncitizen plaintiffs to the amended class action

suit included: Lucimar de Souza, who, like Ms. Calderon, was arrested at her I-130 interview in

January 2018; Oscar Rivas and Sandro de Souza, who while under ICE supervision had been

instructed to purchase tickets to depart the United States, notwithstanding their pending efforts to

obtain lawful permanent status through their U.S. citizen spouses; and Deng Gao, who had a

pending I-130 application and was afraid he might be detained at his I-130 interview.  ECF No.

27 ¶¶ 38-100.

On May 16, 2019, the Court denied the Government's motion to dismiss the amended

class action complaint and certified a class of Petitioners, defined as the following for Counts 1,

3, and 4:

> [A]ny United States citizen and his or her noncitizen spouse who
> (1) has a final order of removal and has not departed the United
> States under that order; (2) is the beneficiary of a pending or
> approved I-130, Petition for Alien Relative, filed by the United
> States citizen spouse; (3) is not "ineligible" for a provisional
> waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the
> jurisdiction of Boston Immigration and Customs Enforcement-
> Enforcement and Removal Operations ("ICE-ERO") field office
> (comprising Massachusetts, Rhode Island, Connecticut, Vermont,
> New Hampshire, and Maine).

ECF No. 253 at 2.[1]  The class representatives were Oscar Rivas, Lucimar de Souza, Deng Gao,

and their U.S. citizen spouses.  *Id.*

---

[1] A narrower sub-class was defined for the purposes of Count 2, but that sub-class is not relevant
to the present dispute.  The relief provided in the Settlement Agreement is the same for all class
members, regardless of membership in this sub-class.

The Parties engaged in extensive fact discovery in the years following class certification, including significant document production and fact depositions of ICE and USCIS officials.  On January 27, 2021, following years of active litigation, the Court stayed the case as the parties pursued active settlement negotiations.  ECF No. 577.  The Parties then engaged in multiple rounds of arm's-length negotiations, conferring numerous times throughout the following three years and exchanging dozens of draft settlement proposals.  On May 9, 2024, the Parties reached an agreement in principle, and on August 26, 2024, the Government received final approval from the U.S. Department of Justice to move forward with seeking court approval of the Settlement Agreement.

On November 4, 2024, the Court preliminarily approved the Parties' proposed Settlement Agreement, ECF No. 664, and on January 16, 2025, the Court formally approved the Agreement after finding it to be fair, reasonable, and adequate in accordance with Federal Rule of Civil Procedure 23(e)(2), ECF No. 677 at 4.  The Court retained jurisdiction to enforce the provisions of the Settlement Agreement.  *Id*. at 5-6 (citing *Disability L. Ctr. v. Mass. Dep't of Corr.*, 960 F. Supp. 2d 271, 274, 278-79 (D. Mass. 2012)).

**B.    The Settlement Agreement**

The Settlement Agreement aims to keep noncitizen class members and their U.S. citizen spouses together for as long as possible by protecting noncitizens from enforcement actions taken by ICE—including detention and removal—absent a determination that the noncitizen poses a threat to public safety or national security.  The Agreement also aids noncitizen class members' pursuit of lawful permanent resident status by requiring ICE to join them in reopening and dismissing their final orders of removal as long as they meet certain criteria.  Taken collectively, the goal of the parties' Settlement Agreement is to allow noncitizen class members

to stay with their families in the United States while facilitating their pursuit of lawful permanent resident status.

The Settlement Agreement is generally effective for a period of two years, from January 17, 2025 through January 17, 2027, and includes four key provisions.[2]

*First*, Section II of the Settlement Agreement establishes a process that allows most noncitizen class members to reopen and dismiss their final orders of removal. ECF No. 654-1 § II. The Settlement Agreement requires that "ICE OPLA . . . review each request" by a noncitizen class member to join a motion to reopen and dismiss their removal proceedings, and it commits ICE OPLA to "presumptively join motions to reopen and dismiss" if the class member demonstrates their prima facie eligibility to obtain lawful status through one of two enumerated pathways[3] and provides certain documentation outlined by the Settlement Agreement. *Id.* § II(A). If a class member demonstrates prima facie eligibility and complies with the submission requirements, ICE OPLA may decline to join a motion to reopen ***only*** upon a determination "based on an assessment of the totality of the facts and circumstances, that the individual (1) is a threat to public safety, typically because of serious criminal conduct; (2) is a threat to national security; or (3) has engaged in serious immigration benefit fraud or is a repeat immigration violator." *Id.*

---

[2] A fifth key provision of the Settlement Agreement (titled Section IV) provided particular relief for two class representatives who are named Petitioners. ECF No. 654-1 §§ IV(A)-(B). This provision is not pertinent to the disputes before the Court.

[3] Section II(A) states that, to take advantage of the reopening provision, class members must "demonstrate they are *prima facie* eligible for either (a) consular processing utilizing the Form I-601A, or (b) adjustment of status" utilizing the Form I-485. ECF No. 654-1 § II(A). Both procedures enable an applicant to become a lawful permanent resident, if ultimately approved.

The joint motion to reopen process in the Settlement Agreement aids class members' ability to pursue lawful permanent residency in the United States.[4]  Motions to reopen and dismiss a final order of removal that are joined by ICE are not subject to certain limitations that are present when noncitizens file motions to reopen by themselves.  *See, e.g.*, 8 U.S.C. § 1229a(c)(7)(A) & (c)(7)(C)(i); 8 C.F.R. § 1003.23(b)(4)(iv).  Section II thus makes it possible for many class members to reopen and dismiss their removal proceedings when they would not otherwise have been able to do so without ICE's agreement to join.  And by allowing noncitizen class members to reopen and dismiss their removal proceedings, the Settlement Agreement provides the ability for them to pursue lawful status without a final order of removal hanging over them.  That, in turn, helps noncitizen class members avoid substantial hurdles associated with pursuing lawful status with a final order of removal and reduces class members' risks and fears of taking advantage of procedures for seeking lawful permanent resident status.  *See, e.g.*, Hr'g Tr. (Jan. 16, 2025) at 31:22-33:14 ("Many [class members] are afraid to go abroad and consular process because their order of removal imposes a burden on them and prevents them from participating in the provisional waiver process.").  All told, Section II of the Settlement Agreement allows noncitizen class members to vacate their removal orders and proceed on an easier and more streamlined path to seeking lawful status.

***Second***, Section III of the Settlement Agreement was designed to protect class members from detention or removal unless they pose a threat to public safety or national security.  Under that provision, "Boston ERO will take Enforcement Actions against Named Plaintiffs or

---

[4] ICE is currently experiencing a backlog in processing JMTR requests under the Settlement Agreement, which has led to delays in class members being able to vacate their final orders of removal and file for lawful permanent resident status.  Counsel for both sides have been collaborating in an effort to resolve cases identified by class counsel in which JMTR requests have been pending for three months or more.

Noncitizen Class Members only after both (a) considering the" noncitizen class member's eligibility to pursue lawful permanent resident status, "and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security." ECF No. 654-1 § III(A). This consideration must be made "at each Enforcement Action for a known Class Member." *Id*. Enforcement actions are defined by the Settlement Agreement as decisions to arrest, decisions to continue detention, ordering noncitizens to depart the United States, and removal. *Id*. § I(E). The Settlement Agreement also provides that decisions to arrest, detain, continue to detain, and remove noncitizen class members must be approved by a Deputy Field Office Director ("DFOD")-level Officer "after providing the consideration and making the determination required by" Section III. *Id*. § III(C).

 ***Third***, Section V of the Settlement Agreement requires certain notice and reporting to be provided to class counsel. It requires that "Defendants shall notify Class Counsel of ***any*** Enforcement Action taken against a Named Plaintiff or Noncitizen Class Member, and of ***any*** decision to remove a Noncitizen Class Member, within five (5) business days after any such Enforcement Action." *Id*. § V (emphasis added). Section V further provides that "[n]o less than five (5) business days before the Named Plaintiff or Noncitizen Class Member will be removed or the date by which they have been instructed to depart, Defendants shall provide Class Counsel with a brief description of the consideration it completed under Section III(A) of this Agreement," *i.e.*, ICE's consideration of the noncitizen's eligibility to pursue lawful permanent resident status and determination regarding whether a noncitizen poses a threat to public safety. *Id*. The Settlement Agreement defines "Defendants" to include the "Senior Official Performing the Duties of the Director of ICE," the "Secretary [of the] Department of Homeland Security,"

the "Field Office Director [for] Immigration and Customs Enforcement," and the "President of the United States." *Id*. § I(P).

 ***Finally***, Section VI of the Settlement Agreement provides a conflict resolution procedure if a class member believes the Government has failed to comply with its terms. *Id.* § VI(C). Class members are to provide written notice to Defendants when they "believe Defendants have failed to comply with the terms of this Agreement," following which Defendants are required to meet and confer within five business days if the dispute concerns the detention or removal of a noncitizen class member or within ten business days for all other disputes. *Id*. If counsel cannot resolve the class member's concern about Defendants' compliance, then the Settlement Agreement allows an individual class member to file a motion to enforce the Agreement in the District of Massachusetts. *Id*.

### C. Factual Background Regarding Class Members

#### 1. Fernando Fagner Costa

 Mr. Costa is a class member who resides in Massachusetts. On or about June 4, 2025, Mr. Costa filed a request for ICE OPLA to join his motion to reopen and dismiss his removal order. Ex. A at 4. On or about October 28, 2025, class counsel were informed by Mr. Costa's immigration attorney that he had recently been arrested and detained while traveling in Miami, Florida. *Id*. Although the Government does not contest that he is a class member, it did not notify class counsel of Mr. Costa's detention. Later that day, class counsel emailed the Government to note that Mr. Costa had a pending JMTR request under the Settlement Agreement and to seek confirmation that Mr. Costa would not be removed while his JMTR request was being adjudicated. *Id*. ICE did not confirm that Mr. Costa would not be removed while his JMTR was pending. *Id.* at 2-4.

On November 5, 2025, Mr. Costa's immigration attorney notified the Government that ICE had agreed to join Mr. Costa's JMTR request and inquired whether the Government intended to continue to detain and remove Mr. Costa given these developments. Ex. A at 2. But the Government continued to provide no assurance that it would not remove Mr. Costa while the BIA considered the parties' joint motion to reopen and dismiss. *Id*. The Government confirmed that it would continue to detain Mr. Costa while the BIA considered his JMTR and even informed his counsel that his "removal [was] reasonably foreseeable." *Id*. Mr. Costa continues to be detained in Florida, thousands of miles away from his family in New England.

### 2.    Tauland Deshati

Mr. Deshati is a class member who resides in Connecticut. ECF No. 737-6 at 9-14. Mr. Deshati was detained by ICE outside of New England on or about September 21, 2025. ECF No. 737-2 ¶ 1; ECF No. 737-9 at 3. He has been held in detention at Delaney Hall Detention Facility in Newark, New Jersey since then, though the Government never notified class counsel about his detention. ECF No. 737-9 at 3. Mr. Deshati's immigration attorney filed a JMTR request on September 29, 2025 by e-mailing the request to ICE OPLA's dedicated inbox to such requests (Calderon-JMTR-Requests@ice.dhs.gov). ICE OPLA initially denied Mr. Deshati's JMTR request on October 3, 2025 without referencing the *Calderon* Settlement Agreement, stating only that "the Department will not exercise its discretion in this matter." Ex. B.

On October 3, 2025, after conferring with Mr. Deshati's immigration attorney, class counsel contacted the Government to inquire about ICE OPLA's denial of Mr. Deshati's JMTR request. ECF No. 737-3 at 5-6. Receiving no update, class counsel connected Mr. Deshati's attorney with the Government on October 7, 2025, in order for Mr. Deshati to formally invoke the *Calderon* conflict resolution procedures under Section VI of the Settlement Agreement. *Id*. at 5. After Mr. Deshati's counsel provided additional information confirming his class

membership, the Government finally confirmed on October 14, 2025 that ICE OPLA would join

Mr. Deshati's JMTR—but ICE nevertheless refused to confirm his release. *Id*. at 2. While these

conversations were ongoing, ICE officers visited Mr. Deshati in detention twice, attempting to

initiate the process of obtaining a travel document to facilitate his removal. ECF No. 737-2 ¶ 1.

Despite repeated requests by Mr. Deshati's attorney seeking information on adjudication

of Mr. Deshati's release and raising concerns about ICE's actions to begin Mr. Deshati's removal

process, the Government never provided any information about whether Mr. Deshati would be

removed. Mr. Deshati's counsel explicitly asked that, at a minimum, ICE agree to stay his

removal while the BIA considered his JMTR. ECF No. 737-3 at 3. The Government still

refused to provide an answer, stating only that they would make the inquiry of ICE. To this day,

even though counsel for both Mr. Deshati and ICE anticipate that the joint motion to reopen will

be granted—as expressed at the November 21, 2025 status conference—Mr. Deshati continues to

be detained in New Jersey and separated from his wife and children, without any clarity as to

whether and when ICE intends to remove him. In fact, ICE visited Mr. Deshati a third time last

week, again seeking to obtain a travel document and deport him—even though ICE has agreed to

join his motion to reopen and he simply awaits approval by the BIA. ECF No. 737-2 ¶¶ 5-7.

### 3.    Conflict Resolution Procedure

On November 13, 2025, class counsel invoked the *Calderon* conflict resolution

procedures with respect to Mr. Costa and Mr. Deshati regarding (a) the Government's refusal to

stay removal of class members with pending or accepted requests to join motions to reopen; and

(b) the Government's failure to report the detention and removal of class members outside of

New England. Ex. C at 2-3. The Government responded, disputing that its actions were a

violation of the Settlement Agreement but failing to provide a time for the parties to meet and

confer. *Id*. at 2. On November 14, 2025, class counsel contacted the Government by phone to

13

discuss the issues invoked under the conflict resolution procedures, but the parties were unable to reach resolution.

Pursuant to Section VI(C) of the Settlement Agreement, the Parties have attempted to resolve the disputes at issue in this motion before bringing them to the Court, and this Court has jurisdiction to hear this Motion to Enforce.  ECF No. 677 at 6-7.

## III.    DISCUSSION

### A.    Removing Mr. Costa and Mr. Deshati Pending JMTR Adjudication Would Violate Section II of the Settlement Agreement

Mr. Costa and Mr. Deshati are entitled to the complete adjudication of their joint motion to reopen—free from threats of deportation—pursuant to Section II of the Settlement Agreement, which provides that ICE OPLA will presumptively join motions to reopen for class members who meet the minimum procedural requirements and are found not to be public safety threats, national security threats, or repeat immigration violators.  The Government's refusal to stay their removal while their JMTR is not only pending, but also ***approved*** by ICE OPLA, vitiates Section II, which was designed to allow eligible noncitizen class members like Mr. Costa and Mr. Deshati to actually vacate their final orders of removal.

Section II is a key provision of the Settlement Agreement.  Federal regulations generally place strict time and numerical limitations on motions brought by noncitizens to reopen and dismiss a final order of removal, ***unless*** such motions are agreed upon and jointly filed with the Government.  8 C.F.R. § 1003.23(b)(4)(iv) ("The time and numerical limitations [on motions to reopen] shall not apply to a motion to reopen agreed upon by all parties and jointly filed.").  And as long as their final orders of removal remain in place, class members face additional challenges in applying for lawful permanent residency in the United States and remaining with their U.S. citizen spouses and families as the provisional waiver process intended.  Accordingly, in

negotiating and drafting the *Calderon* Settlement Agreement, the parties included a provision explicitly requiring ICE OPLA to "review each [JMTR] request" and "***presumptively*** join motions to reopen and dismiss filed by Noncitizen Class Members," provided that those requests included certain documentation and information laid out in Section II(B) of the Agreement. ECF No. 654-1 § II(A) (emphasis added).

Section II further states that if a class member complies with the Settlement Agreement's requirements, ICE OPLA can decline a JMTR request only if it determines "that [the] individual (1) is a threat to public safety, typically because of serious criminal conduct; (2) is a threat to national security; or (3) has engaged in serious immigration benefit fraud or is a repeat immigration violator." *Id.* Here, ICE has necessarily already determined that neither Mr. Costa nor Mr. Deshati threatens public safety, national security, or has applicable immigration fraud, given that it agreed to join a motion before the BIA seeking to reopen and dismiss each class member's final order of removal. Yet ICE has continued to detain Mr. Costa and Mr. Deshati, refused to stay their removal, and even indicated that it may be preparing to execute their removal from the United States—***even though ICE does not dispute that these class members pose no threat to public safety or national security*** and agrees that the BIA should dismiss those removal proceedings. *See* Ex. A at 2 (Government stating that Mr. Costa's removal is "reasonably foreseeable," even after acknowledging that his JMTR was pending before the BIA).

ICE does not—and cannot—contest that Section II(A) of the Settlement Agreement requires it to join Mr. Costa's and Mr. Deshati's motions to reopen, and to remain joined through their resolution. Nevertheless, while it has formally joined their motions, ICE is simultaneously threatening to deny Mr. Costa and Mr. Deshati the benefits of Section II of the Settlement Agreement by preparing to remove them before those motions can be adjudicated. Deportation

will deprive Mr. Costa and Mr. Deshati of their rights under Section II, as removal triggers several legal and practical obstacles in the path of reopening.

    *First*, BIA and immigration court regulations provide that "[a] motion to reopen . . . shall not be made by or on behalf of a person who is the subject of . . . removal proceedings subsequent to his or her departure from the United States" and that "[a]ny departure from the United States, including . . . deportation or removal . . . occurring after the filing of a motion to reopen . . . shall constitute a withdrawal of such motion." *See* 8 C.F.R. § 1003.2(d) (for motions filed with the BIA); 8 C.F.R. § 1003.23(b)(1) (for motions filed before an Immigration Judge). Although this "post-departure bar" on the granting of motions to reopen has been struck down by some courts as to certain circumstances and is not applied to every motion to reopen,[5] the Government has provided no assurances that the post-departure bar would not be applied to bar adjudication of JMTRs in the cases of Mr. Costa and Mr. Deshati, or any that JMTRs filed for class members who are removed will be adjudicated in the ordinary course. ***Second***, even if a JMTR were adjudicated and granted after Mr. Deshati and Mr. Costa were removed, that grant would no longer be able to provide them with the full benefits of Section II. The grant of a noncitizen's motion to reopen and dismiss causes the noncitizen not to have a removal order; it is not a visa or document permitting return to the United States.[6] Thus, rather than being able to

---

[5] *See, e.g.*, *Santana v. Holder*, 731 F.3d 50, 51 (1st Cir. 2013) (striking down the post-departure bar as applied to "statutory" motions to reopen filed within 90 days of the entry of the order, as permitted under 8 U.S.C. 1229a(c)(7)); *Garcia-Carias v. Holder*, 697 F.3d 257, 264-65 (5th Cir. 2012) (citing *Ovalles v. Holder*, 577 F.3d 288, 296 (5th Cir. 2009)) (same, but leaving in place its prior decision upholding application of the post-departure bar to "sua sponte" motions to reopen filed after 90 days, but as permitted by 8 C.F.R. § 1003.23 or 8 C.F.R. § 1003.2).

[6] The Government has only reluctantly acknowledged this reality. During the litigation of *Nken v. Holder*, 556 U.S. 418 (2009), the Government asserted that noncitizens could continue to challenge their removal after being deported. Three years later, the Government felt compelled to submit a letter to the Court, clarifying that "the government is not confident that the process

proceed with their efforts to seek lawful status in the United States without a removal order hanging over them, the grant of Mr. Costa and Mr. Deshati's JMTRs after they had been removed would still leave them stranded outside the United States.

Thus, removal would leave Mr. Costa and Mr. Deshati thousands of miles away from their families, possibly for years, even if their motions to reopen were granted after removal—in other words, the exact scenario that the provisional waiver process was created to bypass and the precise harm that the *Calderon* litigation sought to halt.

To state the Government's position is to refute it. Although the Government agrees that it was required to join motions to reopen for Mr. Costa and Mr. Deshati, it now asserts that the Settlement Agreement allows ICE to use its enforcement power to effectively eliminate its Section II commitments as to these class members and any class member detained outside New England. This elimination could occur, in the Government's view, at any step in the JMTR process. For example, in the Government's view, even though ICE is required to join qualifying motions to reopen, ICE may use its enforcement arm (ERO) to remove a noncitizen class member before its legal arm (OPLA) even finishes reviewing a joint motion to reopen. Once removed, the noncitizen would no longer be a class member, and OPLA might contend that it is free to decline to join the request citing their lack of class membership (or, even if OPLA joined, the BIA might not adjudicate it due to the post-departure bar; and, even if the BIA adjudicated and granted it, the noncitizen would be stuck outside the United States). Similarly, in the Government's view, ICE is free to use its enforcement arm ***after*** its legal arm has conducted its

---

for returning removed aliens, either at the time its brief was filed or during the intervening three years, was as consistently effective as the statement in its brief in *Nken* implied." Lyle Denniston, *Regrets, But No Apology*, SCOTUSblog, https://www.scotusblog.com/2012/04/regrets-but-no-apology.

required review and joined a motion to reopen that it is required to join, and may remove a class member to ensure that the class member does not receive any benefit from the JMTR process, so long as it acts before the BIA grants the JMTR.

But that is not a plausible view of Section II or the Settlement Agreement.  Assuming the other elements of class membership are met, the Settlement Agreement extends protection to noncitizens who "reside[] or [are] detained within the jurisdiction of Boston ICE ERO (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine)." ECF No. 654-1 §§ I(C)-(D).  Mr. Costa and Mr. Deshati—both New England residents—do not cease being class members merely because they stepped foot outside of New England or are detained elsewhere outside of their control, nor are ICE's obligations to reopen and dismiss their removal orders limited by where they are detained.  Rather, Section II(A) requires ICE, through its legal arm, to dismiss class members' removal proceedings as long as they meet certain basic requirements.  *See id*. § II(A).  If a class member is detained outside of the jurisdiction of Boston ERO, the plain text of the Settlement Agreement nonetheless requires that ICE move to reopen and dismiss the final order of removal, not actively work to remove him.

Any intended removal of Mr. Costa and Mr. Deshati thus directly undermines ICE's obligation to join them in getting rid of their final orders of removal.  In other words, it cannot be true that ICE simultaneously has an obligation under the Settlement Agreement to help put an end to a class member's removal order and removal proceedings, but it can remove that class member anyway.  If the latter were true, the former would offer no protection at all.  Section II would be rendered meaningless if ICE could remove the class member even though it had agreed to have their removal order dismissed.  *See* Restatement (Second) of Contracts § 203(a) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is

preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").  Yet that is exactly what ICE contends here.

**B.      ICE Violated the Notice and Reporting Requirements of Section V of the Settlement Agreement**

ICE has similarly violated its notice and reporting obligations under the Settlement Agreement with regard to Mr. Costa and Mr. Deshati.  Section V of the Settlement Agreement requires that "Defendants shall notify Class Counsel of *any* Enforcement Action taken against a Named Plaintiff or Noncitizen Class Member, and of *any* decision to remove a Noncitizen Class Member, within five (5) business days after any such Enforcement Action."  ECF No. 654-1 § V (emphasis added).  Like Section II, this text contains no geographical restriction confining ICE's reporting obligations only to class members situated in New England.  And for the avoidance of doubt, Section V places obligations on "***Defendants***"—not just Boston ERO—with Defendants defined to encompass national-level officers including the "Senior Official Performing the Duties of the Director of ICE," the "Secretary [of the] Department of Homeland Security," the "Field Office Director [for] Immigration and Customs Enforcement," and the "President of the United States."  *Id*. § I(P).

Section V is significant, as it gives class counsel broad visibility into enforcement actions taken by both local and national-level officers against class members in order to permit class counsel to monitor compliance and raise disputes before it is too late.  For class members to enjoy full protection of the Settlement Agreement, then, class counsel must be notified within five days of when enforcement actions are taken against class members—wherever they are located—so that class members can be informed and take advantage of their rights and guarantees.  This principle is reflected by a similar protection outlined in Section V: ICE cannot remove a class member unless "Defendants" have notified class counsel of the removal

consideration it conducted under the Settlement Agreement at least five days **before** removal is scheduled to occur.  ECF No. 654-1 § V.  In brief, class counsel must be given notice of enforcement actions and removal so that class members have the opportunity to invoke the protections of the Settlement Agreement.

And yet the Government has provided no affirmative reporting whatsoever regarding enforcement actions taken against Mr. Costa and Mr. Deshati, even though they are class members who enjoy the benefits of the Settlement Agreement.  Even when class counsel have specifically brought their cases to the attention of the Government and asked discrete, knowable questions about whether ICE intends to remove or release them, the Government has refused to provide answers.  Critically, class counsel have consistently been deprived of any notice regarding ICE's intentions with regard to the potential removal of Mr. Costa and Mr. Deshati, despite repeated requests for this information.[7]  That lack of any assurance that Mr. Costa and Mr. Deshati would not be removed has made this motion necessary.  ICE cannot avoid its duties to class members under the Agreement simply because they are detained outside of New England, and to avoid similar situations in the future, the Court should find that ICE has violated its reporting obligations as to Mr. Costa and Mr. Deshati.

---

[7] To the extent ICE contends that it should have no nationwide reporting obligation because of the difficulty in administering such a requirement, not only does that argument contravene the text of the Settlement Agreement, but it provides no excuse for ICE's failure to provide class counsel with reporting on its enforcement actions **in these cases**.  Mr. Costa and Mr. Deshati have already been identified to ICE as members of the *Calderon* class, both through their JMTR requests and through the communications of class counsel and their invocation of the conflict resolution procedures.  With knowledge that Mr. Costa and Mr. Deshati are class members, ICE cannot contend that it would be an administrative burden to provide basic reports on its enforcement actions and planned removal with respect to these class members, yet it has repeatedly refused to do so.

## IV.    CONCLUSION AND REQUEST FOR RELIEF

Under the parties' Settlement Agreement, this Court retains jurisdiction over all Defendants—including the Secretary of Homeland Security and Director of ICE—to enforce the provisions of the Settlement Agreement.  ECF No. 677 at 5-6; ECF No. 654-1 §§ I(P), VI.  With regard to Sections II and III, motions to enforce the Settlement Agreement may be brought only as to individual class members, ECF No. 654-1 § VI(B), but the Court's jurisdiction is not impacted by whether the class member is detained in Massachusetts.  *See id*. § VI; *see also* Conf. Tr. (Aug. 6, 2025) at 14:19-15:4 ("[T]his is not a habeas case.  [The Court] retained jurisdiction to enforce the settlement agreement…. [I]f he had been moved out of Massachusetts, that would not have deprived [the Court] of jurisdiction in this case.").

This Court is thus empowered to resolve the parties' dispute and order appropriate relief. ***First***, the Court should find that any intended removal of Mr. Costa and Mr. Deshati would violate the Settlement Agreement and enjoin such removal unless it is based on new evidence that they pose a threat to public safety or national security.  ***Second***, because detention is only permissible if removal is reasonably foreseeable, and the Settlement does not permit Mr. Costa's and Mr. Deshati's removal, the Court should also order their release from detention and enjoin further detention unless it is based on new evidence that they pose a threat to public safety or national security.  *See Calderon v. Cronen*, 317 F. Supp. 3d 626, 653 (ECF No. 95) (D. Mass. 2018) (explaining that this Court has the authority to order release when an individual's "detention violates substantive due process [because] it does not 'bear a reasonable relation' to a 'special justification that outweighs the individual's constitutionally protected interest in avoiding physical restraint'"—including when a detained alien's removal is no longer "reasonably foreseeable" (cleaned up) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001))).

***Third***, the Court should find that ICE has violated Section V of the Settlement Agreement and order ICE to comply with the notice and reporting requirements of that provision.  ***Finally***, class counsel also respectfully request that, pending resolution of this motion, this Court continue to stay Mr. Costa's and Mr. Deshati's removal from the United States or transfer from their current location of detention.

Respectfully submitted this 26th day of November, 2025.

*Counsel for the Petitioners*

*/s/ Kevin S. Prussia*
Kevin S. Prussia (BBO # 666813)
Jonathan A. Cox (BBO # 687810)
Christina Luo (BBO # 705590)
Peter H. Merritt (BBO # 711435)
Caitlyn N. Galvin (BBO # 715167)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
kevin.prussia@wilmerhale.com
jonathan.cox@wilmerhale.com
christina.luo@wilmerhale.com
peter.merritt@wilmerhale.com
caitlyn.galvin@wilmerhale.com

Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza
Suite 850
Boston, MA 02108
(617) 482-3170
alafaille@aclum.org

Kathleen M. Gillespie (BBO # 661315)
Attorney at Law
6 White Pine Lane
Lexington, MA 02421
(339) 970-9283
kathleenmgillespieesq@gmail.com