**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

LILIAN PAHOLA CALDERON JIMENEZ,
and LUIS GORDILLO, *et al.*,

Individually and on behalf of all others similarly
situated,

Plaintiffs-Petitioners,                           C.A. No. 18-10225-PBS

v.

KRISTI NOEM, *et al.*,

Defendants-Respondents.

**RESPONDENTS' OPPOSITION TO PETITIONER MIGUELANGEL COELLO
FARFANS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**INTRODUCTION**

In March of 2009, Mr. Coello was arrested and subsequently convicted of three counts of
Sexual Assault in the first degree and three counts of Risk Injury to A Child. In 2012, the Supreme
Court of Connecticut reversed the verdict based upon hearsay testimony that was permitted during
the trial and remanded for a new trial. In February of 2014, Mr. Coello pled guilty to and was
convicted of the offenses of Reckless Endangerment in the second degree, Threatening in the
second degree, and Unlawful Restraint in the second degree. In April 2024, Mr. Coello received a
unconditional pardon by the Connecticut Board of Pardons and Parole. Mr. Coello is also the
husband of a U.S. citizen, has a pending Form I-130, is a father to U.S. citizen children, and has
the support of friends and family. On October 23, 2025, Immigration and Customs Enforcement
("ICE") considered these and other facts in his case, and determined in good faith that he is a

1

public safety risk and should be removed from the United States. Those determinations, as detailed in the declaration of Deputy Field Office Director John Charpentier ("DFOD Charpentier") were made in good faith. There is no evidence that ICE engaged in any bad faith or impropriety in its consideration of Mr. Coello's case. Their consideration was honest and faithful to their duty under the Settlement Agreement.

Petitioners disagree that Mr. Coello is a public safety risk. Their motion to enforce attempts to transform their mere disagreement into an argument that ICE made its decision in bad faith and not based on the facts in Mr. Coello's case. But their argument is baseless. There is no per se policy to determine that a *Calderon* class member is "automatically" a public safety risk if they have engaged in past criminal conduct. Petitioners' argument to the contrary is nothing more than an attempt to rewrite the terms of the settlement agreement and impose their own beliefs upon ICE to automatically discount charges they deem to be outdated or not a public safety risk.

Petitioners' inferences, assumptions, and allegations are all unfounded. In Mr. Coello's case, the attached declaration demonstrates that ICE made a good faith, reasoned decision based on the facts in Mr. Coello's case to remove him. That the parties or reasonable minds may disagree as to whether Mr. Coello is a public safety risk is not a basis to issue relief under this Settlement Agreement which prescribes an extremely narrow scope of review. The facts underlying Mr. Coello's previous convictions were egregious and have a direct nexus to public safety. His victim testified under oath against him and neither the victim nor her mother have ever withdrawn their assertions that Mr. Coello repeatedly sexually assaulted the victim. Therefore, as illustrated by Mr. Charpentier's declaration, ICE made its decision in good faith and this Court should deny Petitioners' motion to enforce.

**PROCEDURAL BACKGROUND**

## I.      The Settlement Agreement

This case arose from a habeas lawsuit in February 2018, filed by individual petitioner, Ms. Lilian Calderon Jimenez ("Ms. Calderon"). *See generally* ECF No. 1. Ms. Calderon was at an interview with her U.S. citizen husband at U.S. Citizenship and Immigration Services' ("USCIS") office in Johnston, Rhode Island, to demonstrate her eligibility for a Form I-130, Petition for Alien Relative, when she was detained by agents from ICE's Enforcement and Removal Operations assigned to the Boston area of responsibility ("Boston ERO"). *Id.* Ms. Calderon had a final removal order from 2002 for failure to voluntarily depart. *Id.* Following her release from detention, Ms. Calderon filed an Amended Complaint in 2018, on behalf of a putative class, alleging the Government's actions violated the Immigration and Nationality Act ("INA") and its regulations (Count 1), the Due Process Clause of the Fifth Amendment (Count 2), the Equal Protection Clause (Count 3), and the Administrative Procedure Act (Count 4), by detaining and attempting to remove noncitizen petitioners without allowing them an opportunity to first apply for the Form I-601A, Application for a Provisional Unlawful Presence Waiver. An alien who receives a provisional unlawful presence waiver may only need to be separated from his or her family a short time while they attend a visa interview abroad and potentially re-enter the United States as a lawful permanent resident. ECF No. 27 at 25-28; *see infra* at Sec. I.B. The Petitioners further alleged violations of the INA and its regulations (Count 5), and the Due process Clause (Count 6) with regard to individuals in detention. ECF No. 27 at 28-29.

On May 16, 2019, the Court denied the Government's motion to dismiss the amended class action complaint and certified a class of Petitioners, defined as the following for Counts 1, 3, and 4:

> [A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of
> removal and has not departed the United States under that order; (2) is the beneficiary of a
> pending or approved 1-130, Petition for Alien Relative, filed by the United States citizen
> spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or
> (vi); and (4) is within the jurisdiction of Boston Immigration and Customs Enforcement-
> Enforcement and Removal Operations ("ICE-ERO") field office (comprising
> Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

ECF No. 253, at 2.[1]

Following years of active litigation, on January 27, 2023, the Court stayed the case as the parties engaged in multiple rounds of extensive settlement negotiations. ECF No. 577. The parties conferred numerous times throughout the following three years and exchanged dozens of draft settlement proposals. ECF No. 654-1 at 1-2. On November 4, 2024, the Court preliminarily approved the parties proposed settlement agreement, ECF No. 664.

On January 16, 2025, nearly seven years after Petitioners filed their first amended complaint, this Court approved a class wide settlement agreement under Federal Rule of Civil Procedure 23(e)(2). ECF No. 677. The Court retained jurisdiction to enforce the Settlement Agreement (ECF No. 654-1) according to its terms. *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381-82 (1994). The Settlement Agreement generally places conditions on ICE's ability to take enforcement actions, as defined in the Agreement, against alien class members. As relevant here, ICE may remove them from the United States, "only after both (a) considering the Form I-130 visa petition filed on their behalf by their U.S. citizen spouse, the

---

[1] The same class definition applies to the relevant subclass outlined in the Settlement Agreement. ECF No. 654-1 at 2.

noncitizen's eligibility to file a Form I-212, and their eligibility to file a Form I-601A, and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security." ECF No. 654-1 at 3-4, 5-6. To demonstrate compliance with the Settlement Agreement, ICE must provide a "brief description of the consideration it completed" under the Settlement Agreement no less than five business days before ICE removes the class member. *Id.* at 7.

The Settlement Agreement allows for enforcement in this Court regarding removal decisions "only on behalf of an individual Named Plaintiff or Class Member." *Id.* This Court may enter orders "only as applied to an individual Named Plaintiff or Noncitizen Class Member" and may not enter any order requiring compliance "as applied to categories of Noncitizen Class Members." *Id.* Additionally, any court order "shall be limited to addressing the case of the specific Named Plaintiff or Noncitizen Class Member whose facts are before the Court." *Id.*

## II.    The Provisional Waiver Process[2]

The Immigration and Nationality Act ("INA") sets limits on when and how a noncitizen may immigrate to the United States. Generally, a noncitizen who is married to a U.S. citizen may immigrate to the United States and obtain lawful permanent resident status only if the government determines they are "admissible" under the INA. *See* 8 U.S.C. § 1182. If a noncitizen is "inadmissible" under the INA, the government may not issue the noncitizen an immigrant visa or adjust the noncitizen's status to that of a lawful permanent resident until the noncitizen obtains a "waiver" of each ground of inadmissibility. *See id.* Not all grounds of inadmissibility are waivable,

---

[2] Although not directly relevant, Defendants provide this background to provide a more comprehensive overview to the Court.

and waivers under the INA are committed by law to the discretion of the Department of Homeland Security ("DHS"). *See* 8 U.S.C. §§ 1182(a)(9)(A)(iii), (a)(9)(B)(v).

The class members in this case will be, if they depart the United State[3]s, inadmissible under at least two distinct grounds: (1) 8 U.S.C. § 1182(a)(9)(A), for being subject to final orders of removal; and (2) 8 U.S.C. § 1182(a)(9)(B), for having been unlawfully present in the United States for at least a year. DHS, in its sole discretion, may waive these grounds of inadmissibility if the noncitizen meets the statutory criteria. 8 U.S.C. §§ 1182(a)(9)(A)(iii), (a)(9)(B)(v).

Before 2013, noncitizens could apply for a waiver of inadmissibility under 8 U.S.C. § 1182(a)(9)(B) only from outside the United States. However, in 2013, DHS amended the governing regulation, 8 C.F.R. § 212.7, "to allow certain immediate relatives of U.S. citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications" via a Form I-601A. Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536 (Jan. 3, 2013). Although the Rule extended eligibility to noncitizens who were physically present in the United States, it warned that "the filing or approval of a provisional unlawful presence waiver application will not . . . protect an alien from being placed in removal proceedings or removed from the United States." *Id.*; *see also id.* at 555 ("[T]he approval of a provisional unlawful presence waiver does not . . . protect aliens from removal or law enforcement action, or grant any other immigration benefits"). Under the 2013 version of § 212.7, noncitizens with final removal orders were ineligible to apply for provisional unlawful presence waivers.

---

[3] Some class members do not need to depart the United States to become lawful permanent residents. Some, like Mr. Coello, can apply for adjustment of status from within the United States as Mr. Coello did during his immigration proceedings.

In 2016, DHS again amended § 212.7.[4] Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244 (July 29, 2016). The amendment extended eligibility for provisional unlawful-presence waivers to noncitizens with final removal orders, "provided that they have already applied for, and [U.S. Citizenship and Immigration Services ("USCIS")] has approved, an Application for Permission to Reapply for Admission into the United States After Deportation or Removal, Form I-212." *Id.* at 50245.

These two discretionary waivers, for which a noncitizen may apply using Forms I-212 and I-601A, obtained in a sequential process, provide a potential path to lawful permanent resident status for the discrete subset of class members who are not subject to other grounds of inadmissibility. This subset may apply for, and USCIS may approve, the Forms I-212 and I-601A from within the United States. *Id.* If USCIS approves the Form I-212, the noncitizen may then file his or her Form I-601A. If both the Form I-212 and Form I-601A are approved, the noncitizen may then commence the required consular process abroad with the Department of State ("DOS"). In consular processing, DOS schedules the noncitizen for an interview at a U.S. Embassy or Consulate, and then the noncitizen departs the United States to attend the interview. *See* 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61-62. If DOS determines that the noncitizen is admissible to the United States with their approved waiver applications, DOS may grant the noncitizen's immigrant visa application. With this immigrant visa, the noncitizen may seek admission into the United States as a lawful permanent resident. *See* 8 U.S.C. § 1225 (Inspection by Immigration Officers). If admitted by U.S.

---

[4] Neither the 2013 nor the 2016 Final Rule amended 8 C.F.R. § 212.2; rather, since 1971, § 212.2 has provided that a noncitizen may apply for a conditionally approved waiver of removal-order-based inadmissibility before he or she departs or is removed from the United States. 8 C.F.R. § 212.2(j) (1971), 36 Fed. Reg. 11635 (June 17, 1971). Plaintiffs' Amended Complaint portrays the application for a waiver of removal-order-based inadmissibility (Form I-212) and the application for a waiver of unlawful presence (Form I-601A) as related steps in a single process, but in fact they are unrelated in most respects. The absence of a simultaneous amendment reflects that fact.

Customs and Border Protection, the noncitizen becomes a lawful permanent resident. *See* 8 U.S.C. § 1201. In this situation, the noncitizen may spend a relatively short time apart from his or her U.S. citizen spouse before returning as a lawful permanent resident.

### III.    ICE's Consideration of Mr. Coello's Case

Mr. Coello is a native and citizen of Peru. Declaration of DFOD Charpentier ("Decl. of DFOD Charpentier") ¶ 5. He was admitted to the United States in 1993 as a B-2 non-immigrant with authorization to remain for six months. *Id.* Mr. Coello overstayed that visa. *Id.* ¶ 10. Then, in May of 2009, Mr. Coello was arrest and subsequently charged with three counts of Sexual Assault in the first degree and three counts of Risk Injury to A Child. *Id.* ¶ 7. The charges were based on allegations of sexual conduct, including intercourse, between Mr. Coello and the victim. *Id.* Following a jury trial in which the victim testified, Mr. Coello was convicted of three counts of Sexual Assault in the first degree and three counts of Risk Injury to A Child. *Id.* ¶ 8. Mr. Coello appealed the jury verdict and in March 2012, the Connecticut Supreme Court reversed the verdict, based upon hearsay testimony allowed during the jury trial and remanded for a new trial. *Id.* In February 2014, Mr. Coello pled guilty and was convicted of the offenses of Reckless endangerment in the second degree, Threatening in the second degree, and Unlawful Restraint in the second degree. *Id.* ¶ 9.

In September 2014, Mr. Coello was placed into removal proceedings and issued a Notice to Appear charging him with removability from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) because he had overstayed his visitor's visa. *Id.* ¶ 10. In April 2015, Mr. Coello's current U.S. citizen spouse, Ingrid Coello, filed an I-130 Petition for Alien Relative on his behalf, which was approved in April 2016. *Id.* ¶ 11. Mr. Coello applied for Adjustment of Status in his removal proceedings before an Immigration Judge pursuant to 8 U.S.C. § 1255. *Id.* ¶ 12. In January

2018, following a full evidentiary hearing, the Immigration Judge denied the application finding Mr. Coello did not warrant a favorable exercise of discretion and ordered Mr. Coello removed to Peru in January 2018. *Id.* Mr. Coello's timely appeal to the Board of Immigration Appeals (BIA) was denied in June 2019, with the BIA finding no error in the Immigration Judge's discretionary finding. *Id.* His Petition for Review with the United States Court of Appeals for the Second Circuit was also dismissed in March of 2021. *Id.*

In April of 2024, Mr. Coello received a pardon from the Connecticut Board of Pardons and Paroles. *Id.* ¶ 13.

Mr. Coello was detained by ICE Boston on August 14, 2025. On October 23, 2025, as required by the Settlement Agreement, DFOD Charpentier reviewed the facts of Mr. Coello's case to determine whether to effectuate his removal from the United States. *Id.* ¶140. He determined in good faith and based on the facts in his case, that Mr. Coello poses a threat to public safety and can therefore, under the Settlement Agreement, be removed from the United States. *Id.* In coming to this decision, DFOD Charpentier was particularly concerned about Mr. Coello's criminal conduct, specifically the sexual assault allegations. *Id.* DFOD Charpentier considered that the pardoned convictions stemmed from the repeated sexual abuse, including intercourse, of the minor victim. *Id.* The Connecticut Supreme Court records support the finding that during the course of his criminal conduct, Mr. Coello threatened the victim not to disclose the sexual assault and refused to allow her to leave an area until he sexually assaulted her. *Id.*

During his deliberation DFOD Charpentier also reviewed the documents submitted by Mr. Coello's counsel received on October 14, 2025. *Id.* ¶ 15. The packet of documents included various letters of support including one from Mr. Coello's wife, Ingrid Coello, a letter from his daughter, Kiara Coello, a school transcript submitted in Mr. Coello's son's name with no accompanying

letter of support, transcripts received from Lincoln Tech dated 2024, and a 2011-2012 certification from Unified School District. *Id.* He also reviewed the certificate of pardon from the Connecticut Board of Pardons and Paroles. *Id.* In this submission, Mr. Coello did not submit the documents he had submitted to the Connecticut Board of Pardons and Paroles with his supporting documentation. *Id.* Instead, he submitted FAQs providing general information regarding pardons in the state of Connecticut. *Id.* The certificate of pardon showed Mr. Coello received a pardon for the convictions of Reckless Endangerment in the second degree, Threatening in the second degree, and Unlawful Restraint in the second degree. *Id.* However, the packet did not include any statements by Mr. Coello or other individuals refuting the egregious acts resulting in his original convictions. *Id.*

As part of his October 2025 review, DFOD Charpentier also considered Mr. Coello's Form I-130 visa petition, and his eligibility to file a Form I-212 and Form I-601A waiver and determined in good faith and based on the facts this case that Mr. Coello poses a threat to public safety. *Id.* ¶ 16. DFOD Charpentier determined that the evidence submitted by Mr. Coello was not particularly persuasive. *Id.* Mr. Coello's spouse, Ingrid Coello's letter did not address or mention Mr. Coello's criminal conduct, any rehabilitation, or treatment. *Id.* In fact, none of the letters submitted on Mr. Coello's behalf addressed his criminal conduct. *Id.* While understanding these convictions were pardoned, DFOD Charpentier did not know the reason for the pardon and ultimately determined, in good faith that the acts underlying the original conviction were egregious and potentially provided a lifetime of trauma for the victim. *Id.* Accordingly, he determined in good faith based on the facts in Mr. Coello's case, that he is a public safety risk and to remove him from the United States. *Id.*

Mr. Coello was scheduled for removal when his counsel invoked the conflict resolution procedures under the Settlement Agreement. *Id.* ¶ 17. Upon learning that Mr. Coello had expressed

his innocence in the underlying original criminal conviction, DFOD Charpentier, in his discretion, decided to cancel the removal of Mr. Coello and allow him to submit additional information for ICE to consider. *Id.*

On or about November 13, 2025, a Deportation Officer attempted written text communication with the victim of the sexual assault. *Id.* ¶ 18. The victim responded thanking ERO for contacting her but stated she did not wish to be involved with this case anymore due to the passage of time, that she had put the situation behind her, and that she has not had any contact with Mr. Coello in over 15 years. ICE respected her wishes. *Id.*

On or about November 14, 2025, Mr. Coello's counsel submitted additional information ICE agreed to consider regarding Mr. Coello's threat to public safety. *Id.* ¶ 19. Among the new documents submitted was a letter by the victim's mother generally stating that while she previously opposed his pardon, she now thinks Mr. Coello should be able to remain with his family. *Id.* However, she did not dispute that he sexually assaulted her daughter. *Id.* She also included her phone number and indicated she was willing to talk further. *Id.* Due to the vagueness of the letter, DFOD Charpentier reached out to her via text message at the number she provided in her letter and requested to schedule a time to speak to her to get some clarification. *Id.* On November 19, 2015, the victim's mother called DFOD Charpentier without notice. *Id.* ¶ 20. During the call, which lasted less than 5 minutes, it was made clear to DFOD Charpentier that the victim's mother did not want to talk about her daughter's sexual assault with him and simply stated that Mr. Coello has been good to his family, she believes he has changed and she did not consider him to be "a threat to the public." *Id.*

When DFOD Charpentier asked her why she wanted to pardon him, she was unresponsive to his questions and only repeated what she said previously, then she hung up the phone. *Id.* He

tried to call her back but she did not answer. *Id.* Throughout the duration of this call, the victim's mother never disputed that Mr. Coello sexually assaulted her daughter. *Id.* DFOD Charpentier found the call did not provide any clarification on the vagueness of the letter. Later that same day, DFOD Charpentier attempted to reach the victim's mother again via text message, but she responded that she had included everything she wanted to say in the letter, that she thinks he deserves an opportunity, and that she does not wish to know any more about the case. *Id.* ¶ 21. Neither the victim, nor her mother, ever stated the sexual assaults did not occur. *Id.* ¶ 20.

DFOD Charpentier carefully read and considered all the materials Mr. Coello submitted in support of his release including the statements of Mr. Coello, his wife and children, his pardon attorney, his friends, and documents provided to the Connecticut Board of Pardons and Paroles. *Id.* ¶ 22. He considered Mr. Coello and his wife's allegations that the victim's mother had previously tried extorting them for money in exchange for dropping the criminal charges stemming from her daughter's allegations. *Id.* He also considered the Connecticut Supreme Court's decision in which it states that Mr. Coello's wife, Ingrid Coello, ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████ *Id.* ¶ 23. He also considered that while the pardon erases the criminal convictions, it does not mean the criminal conduct underlying the convictions never occurred. *Id.* DFOD Charpentier further considered that the victim testified at the trial, a jury believed her testimony, Mr. Coello subsequently pled guilty to lesser charges, and neither the victim nor her mother ever refuted or disputed that Mr. Coello committed repeated sexual assaults, threats, and unlawful restraint. *Id.* DFOD Charpentier spent considerable time reviewing the facts and documents in Mr. Coello's case and is aware of the negative effects his removal will have on his family. *Id.* However, after careful and lengthy consideration, he determined that the new

information provided by Mr. Coello did not alter his previous determination, made in good faith, that Mr. Coello is a threat to public safety. *Id.*

## STANDARD OF REVIEW

This Court's review under the Settlement Agreement is limited to whether "the facts of a non-citizen class member's case persuaded the deputy field office director to decide in good faith that this person posed a threat to public safety." Tr. August 6, 2025 Hr'g. at 30:15-19; ECF No. 654-1 at 4-5 ("Boston ERO will take Enforcement Actions against Named Plaintiffs or Noncitizen Class Members only after … determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security."). The Settlement Agreement does not define "good faith," but the First Circuit has applied the Black's Law Dictionary definition consisting, as relevant here, of (1) honesty in belief or purpose, and (2) faithfulness to one's duty or obligation. *Kaufman v. C.I.R.,* 784 F.3d 56, 70 (1st Cir. 2015); *see also, In Re Keach,* 243 F.R. 851, 856 (B.A.P. 1st Cir. 2000) (citing Black's Law Dictionary).

## ARGUMENT

I. **ICE Decided to Take Enforcement Actions Against Mr. Coello in Good Faith Based on the Facts in Mr. Coello's Case.**

ICE Boston complied with the terms of the Settlement Agreement as applied to Mr. Coello at every turn. ICE made its determination that Mr. Coello is a public safety risk (1) in good faith, (2) based on the facts in Mr. Coello's case, and (3) after considering his eligibility to apply for a Form I-601A and Form I-212 as required by the Settlement Agreement. *See generally* Decl. of DFOD Charpentier. There is no evidence that DFOD Charpentier applied any "automatic" rule to influence his decisions. Therefore, ICE has complied with the Settlement Agreement and this Court should deny Petitioners' motion.

**A.  ICE Boston's Determination Complied with the Settlement Agreement.**

To ascertain ICE's compliance with the Settlement Agreement, this Court should review ICE's most recent considerations of the facts in Mr. Coello's case in November 2025 because it is the most recent decision and was based on the most comprehensive record of the facts in Mr. Coello's case. This Court should deny Petitioners' motion because this decision complied with the Settlement Agreement.

The Settlement Agreement requires ICE to make a determination that an alien class member is a public safety risk prior to removing them. ECF No. 654-1 at 3-4, 5-6. Here, ICE considered Mr. Coello's case carefully and diligently before determining that he is a public safety risk. Decl. of DFOD Charpentier ¶¶ 4-23. And then, when counsel for Mr. Coello reached out indicating she would like to submit *additional* documents for consideration that may clarify the circumstances related to the pardon Mr. Coello received, ICE in its discretion and in good faith stayed his removal and allowed his counsel two weeks to submit additional documents. *Id.* ¶ 17. ICE then reconsidered its decision upon Mr. Coello's request after Mr. Coello submitted information in support of his release. *Id.* ¶ 19. ICE then, acting in good faith, attempted to gain further clarity regarding a letter submitted by the victim's mother *Id.* ¶¶ 19-21. All of these actions demonstrate that DFOD Charpentier took his duty to consider Mr. Coello's case seriously and discharged that duty faithfully in accord with the Settlement Agreement. *See generally* Ex. A. His declaration demonstrates that he took care in considering all the facts in Mr. Coello's case before coming to his conclusion that he is a public safety risk. *See generally* Ex. A. Ultimately, the documentation Mr. Coello submitted did not overcome the egregious actions his victim testified to under oath and which she, nor her mother, has ever withdrawn. *See generally* Ex. A. That Petitioners disagree with DFOD Charpentier's conclusion is not enough to require the issuance of

relief under this settlement agreement wherein DFOD Charpentier carefully considered the facts and relied on evidence of actions with a clear nexus to public safety to determine that Mr. Coello is a public safety risk. ICE appropriately determined he was a public safety risk after reviewing all known factors in his case on October 23, 2025, and then properly redetermined in good faith in November 2025, that the additional documents did not alter their previous determination.

**B. Petitioners' Allegations of Noncompliance are Baseless.**

Petitioners appear to have two bases for their allegation that ICE did not make its November 2025 decision to remove Mr. Coello in good faith based on the facts in Mr. Coello's case as required by the Settlement Agreement. First, Petitioners contend that ICE could not have made a compliant decision to remove Mr. Coello because Mr. Coello has received a pardon, and his support and the materials submitted in support of his release are so compelling. *See* ECF No. 749 at 5-7. But, as illustrated by DFOD Charpentier's declaration, ICE carefully considered the materials submitted in support his release, including the information he submitted concerning the Connecticut Supreme Court's reversal of his original convictions due to impermissible hearsay and remand for a new trial, the pardon of his criminal convictions, his fatherhood, and support of his family, and determined that he was nonetheless a public safety risk. Decl. of DFOD Charpentier ¶¶ 19-23 DFOD Charpentier gave a reasoned explanation for why he found Mr. Coello's criminal conduct so concerning and why Mr. Coello's supporting evidence did not, in his honest estimation, remedy those concerns. *Id.* ¶¶ 14-23. That reasoned explanation defeats Petitioners' motion.

That Petitioners or reasonable minds may disagree with the way ICE considered the facts in Mr. Coello's case is immaterial to whether ICE complied with the Settlement Agreement by determining in good faith that Mr. Coello is a public safety risk. ICE did not ignore, outright dismiss, or otherwise refuse to consider the positive factors in Mr. Coello's case. ICE duly

15

considered them, considered them against his serious criminal conduct, including for a sexual crime against a minor, and determined he is a public safety risk. That determination was honest and made in good faith. Therefore, DFOD Charpentier was faithful to his duty under the Settlement Agreement. *See Kauffman,* 784 F.3d at 70.

Petitioners' second basis for their allegation that ICE did not determine in good faith that Mr. Coello is a public safety threat is that ICE made a "blanket determination" that "automatically render[ed]" Mr. Coello a public safety risk based on his criminal history, irrespective of anything Mr. Coello has done since that time. ECF No. 749 at 7. But ICE does not make "blanket determinations." Decl. of DFOD Charpentier ¶ 3. ICE does not have some pre-determined list of criminal history that would automatically render a class member a public safety risk. *Id.* Rather, DFOD Charpentier employed his practice of considering "all the facts in a noncitizen class member's case that are presented to [him]" to determine that Mr. Coello is a public safety risk. *Id.* Those facts included the very serious criminal behavior that Mr. Coello sexually assaulted and had intercourse with the minor victim . They also included facts favorable to Mr. Coello, such as the Connecticut Supreme Court's reversal of his initial conviction and remand for a new trial, as well as his pardon from the Connecticut Board of Pardons and Parole for the lesser offenses. *Id.* ¶¶ 8, 23. ICE reasonably found that despite these facts, Mr. Coello posed a risk to public safety. *Id.* ¶ 23. Contrary to Petitioners' contention, the Settlement Agreement does not require a criminal conviction to support a finding that Mr. Coello is a threat to public safety to effectuate his removal. ECF No. 654-1 at 4-5. Petitioners' disagreement cannot be transformed into a finding of bad faith considering DFOD Charpentier's detailed, reasoned consideration outlined in his declaration. Accordingly, this Court should deny Petitioners' motion without delay.

To the extent Petitioners attempt in their reply[5] to argue that DFOD Charpentier's November 2025 decision was not in good faith because it is not "consisten[t] with the justified expectations of the other party," that argument also fails. *See Restatement (Second) of Contracts* § 205 (1981). There is nothing in the Settlement Agreement that gives Petitioners a justified expectation that ICE would discount criminal history after a certain period of time has passed nor is there an expectation that a pardon or the type of evidence Mr. Coello has submitted would categorically cause ICE to find that a noncitizen class member is not a public safety risk. And there certainly cannot be a justified expectation that ICE would find that a noncitizen class member does not pose a public safety risk after being charged and convicted by a jury trial for a sexual crime against a minor. This criminal history has a clear, undisputed nexus to public safety. That ICE did not believe the positive factors in Mr. Coello's case to remediate the actions he was accused of—by a victim testifying under oath—is not unreasonable nor outside the reasonable expectation of the parties. Based on ICE's conduct both before and after the implementation of this Settlement Agreement, Petitioners have no reasonable basis to claim they could not expect ICE to find Mr. Coello—whose victim credibly testified against him at trial—a public safety risk. Petitioners may not like ICE's determination, but they cannot claim, nor have they demonstrated, that there was no basis to expect it.

Ultimately, this dispute stems from Petitioners' apparent belief that they—not ICE—get to determine whether a class member is a public safety risk. But that is not the agreement the parties reached, and that is not what the Settlement Agreement provides. Petitioners' mere disagreement with ICE's good-faith determination that Mr. Coello is a public safety risk is not evidence of bad faith and does not constitute a violation of the Settlement Agreement. Neither Petitioners nor this

---

[5] Petitioners did not define "good faith" in their motion. *See* ECF No. 749.

Court are permitted under the Settlement Agreement to second guess ICE's determinations. Rather, the Settlement Agreement limits this Court's review to whether ICE made its decision in good faith. Here, ICE plainly has. Accordingly, this Court should deny Petitioners' motion in its entirety.

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioners' motion and allow Mr. Coello's removal without delay.

Respectfully submitted,

BRETT A. SHUMATE                          /s/ Susan Ansari
Acting Assistant Attorney General         SUSAN ANSARI
                                          Trial Attorney
ELIANIS N. PEREZ
Assistant Director                        /s/ Mary L. Larakers
                                          MARY L. LARAKERS
                                          Senior Litigation Counsel
                                          U.S. Department of Justice, Civil Division
                                          Office of Immigration Litigation
                                          P.O. Box 868, Ben Franklin Station
                                          Washington, DC 20044
                                          (202) 353-4419
                                          (202) 305-7000 (facsimile)
                                          Mary.l.larakers@usdoj.gov

### CERTIFICATE OF SERVICE

I, Susan Ansari, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Susan Ansari*
Susan Ansari
Dated: December 9, 2025                                    Trial Attorney