UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*,<br><br>Individually and on behalf of all others similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Defendants-Respondents. | C.A. No. 18-10225-PBS |

**DECLARATION OF ACTING DEPUTY FIELD OFFICE DIRECTOR JOHN CHARPENTIER**

Pursuant to the authority of 28 U.S.C. § 1746, I, John Charpentier, acting Deputy Field Office Director for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts declare as follows:

1. I am a currently serving as an acting Deputy Field Office Director ("(a)DFOD") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, ("ICE") Enforcement and Removal Operations ("ERO"). I have been in this position since February 24, 2025.

2. As part of my official duties, I am assigned to making enforcement decisions regarding *Calderon* class members under the Settlement Agreement in this case. I am familiar with the history of this case, and I carefully read the Settlement Agreement and familiarized myself with its contents and requirements. I have also discussed the Settlement Agreement with my counsel. I am specifically familiar with the Settlement Agreement's requirements regarding enforcement actions. I understand that the Settlement Agreement requires that before taking an enforcement action against a class member ERO Boston must consider the Form I-130 visa petition filed on the class member's behalf and their eligibility for any Form I-601A and/or Form I-212 waiver. I am also aware that the Settlement Agreement requires that before taking an enforcement action against a class member, ERO Boston must also make a good faith determination based on the facts in the class member's case that the class member is a threat to public safety or national security.

3. I routinely make enforcement decisions regarding *Calderon* class members including whether to continue detention, to release a class member or to effectuate removal. I carefully make each decision on a case-by-case basis, reviewing the facts of each case. I consider all the facts in a class member's case that are presented to me such as the purpose of the provisional waiver regulations, the Form I-130 filed on the class member's behalf and their eligibility to file a Form I-601A and Form I-212, their family and community ties, any specific needs of their children and family members, criminal activity (or lack thereof), the nature and facts of any criminal charges, evidence of rehabilitation, and any materials

submitted by them or on their behalf. Although I consider an alien's criminal history when determining whether a class member is a public safety risk, I do not automatically determine that an alien is a public safety risk based solely on any specific criminal activity. I consider any documents obtained by ICE or submitted by or on behalf of a class member at the time I am making a determination regarding whether a class member is a threat to public safety. I look at the totality of the facts in the alien's case. If needed, I will have conversations with my counsel to ensure my determination complies with the Settlement Agreement.

4. In preparing this declaration, I have examined ICE official records, records pertaining to Mr. Coello's criminal history, and documents submitted to ERO on behalf of Mr. Coello.

5. Mr. Coello is not a citizen or national of the United States. He is a citizen and national of Peru. Mr. Coello was admitted to the United States in 1993 as a B-2 non-immigrant visitor with authorization to remain for six months.

6. In April of 1997, Mr. Coello's previous United States ("U.S.") citizen spouse filed an I-130 Petitioner for Alien Relative on Mr. Coello's behalf with legacy Immigration and Naturalization Service. Mr. Coello filed an I-485 application to adjust his status at the same time. On October 7, 1997, both the I-130 visa petition and I-485 application were denied.

7. In May of 2009, Mr. Coello was arrested and subsequently charged with three counts of Sexual Assault in the First Degree and three counts of Risk Injury to a Child. These charges were based on allegations of sexual conduct, including intercourse, between Mr. Coello █████████████████████████

██████████████████████████.

8. After a jury trial, in which the victim testified, Mr. Coello was convicted of three counts of Sexual Assault in the First Degree and three counts of Risk Injury to a Child. Mr. Coello appealed the jury verdict. In March of 2012, the Supreme Court of Connecticut reversed the verdict and remanded the case for a new trial, based upon hearsay testimony allowed during the trial.

9. In February of 2014, Mr. Coello pled guilty to Reckless Endangerment in the Second Degree, Threatening in the Second Degree and Unlawful Restraint in the Second Degree.

10. In September 2014, Mr. Coello was placed into removal proceedings and issued a Notice to Appear charging him with being removable from the United States pursuant to 8 U.S.C. §1227(a)(1)(B) because he had stayed longer than the time permitted by his visitor's visa.

11. In April of 2015, Mr. Coello's current U.S. citizen spouse, Ingrid Coello, filed an I-130 Petition for Alien Relative on Mr. Coello's behalf. In April of 2016, that visa petition was approved.

12. Mr. Coello applied for adjustment of status pursuant 8 U.S.C. § 1255 in his removal proceedings. In January 2018, after a full evidentiary hearing, an immigration judge denied Mr. Coello's adjustment of status application finding he did not warrant a favorable exercise of discretion and ordered Mr. Coello removed to Peru based upon the B-2 overstay charge in the Notice to Appear. Mr. Coello timely appealed the decision of an immigration judge to the Board of Immigration Appeals. In June of 2019, the Board of Immigration Appeals dismissed Coello's

appeal finding no error with the immigration judge's discretionary finding. Mr. Coello filed a Petition for Review with the Second Circuit Court of Appeals. In March 2021, the Second Circuit Court of Appeals dismissed his Petition for Review.

13. In April of 2024, Mr. Coello received a full, complete and unconditional pardon by the Board of Pardons and Paroles in Connecticut.

14. On October 23, 2025, I reviewed the facts of Mr. Coello's case to determine whether to effectuate his removal from the United States. I determined in good faith and based on the facts in his case, that Mr. Coello poses a threat to public safety. I was particularly concerned about the criminal conduct of Mr. Coello, specifically the sexual assault of ▬▬▬▬. The pardoned conviction stems from the repeated sexual abuse, including intercourse, of ▬▬▬▬ ▬▬▬▬. The Connecticut Supreme Court records support that during these events Coello threatened her not to disclose his conduct and refused to allow her to leave an area until he sexually assaulted her.

15. I also reviewed documents submitted by Coello's counsel on his behalf. The documents were received in an October 14, 2025, email and entitled "90 day Custody Review Supporting Evidence" sent to the Boston Outreach email inbox. These documents included various letters of support including one from Coello's wife, Ingrid Coello, a letter from Mr., Coello's daughter, Kiara Coello, a school transcript submitted in Mr. Coello's son's name without a letter of support, Mr. Coello's transcript received from Lincoln tech in 2024, a 2011-2012 certification Mr. Coello received from Unified School District and a certificate of

pardon received from the Connecticut Board of Pardons and Paroles reissued on July 30, 2024. The documents submitted by Mr. Coello to the Connecticut Board of Pardons and Paroles were not included. The packet included FAQs from the state of Connecticut providing general information about pardons. The pardon certificate showed Mr. Coello received a pardon for the convictions of Reckless Endangerment Second Degree, Threatening Second Degree and Unlawful restraint Second Degree. The packet did not include any statements from Mr. Coello or other individuals refuting the egregious acts resulting in his original convictions, specifically repeated sexual abuse (intercourse) ███████ who was approximately thirteen-years-old or younger.

16. Additionally, I considered the Form I-130 visa petition and Mr. Coello's eligibility to file a Form I-212 and a Form I-601A In conducting my review, I considered that Mr. Coello entered as a B-2 non-immigrant. Additionally, I considered the fact that Mr. Coello had already applied for adjustment of status based upon his marriage to his U.S. citizen spouse and was denied such relief after a full hearing before an immigration judge. I also considered that both the Board of Immigration Appeals and Second Circuit Court of Appeals upheld the immigration judge's decision. I considered that the pardon did not disturb the underlying charge of removal, namely a B-2 overstay. I did not find the evidence submitted by Coello particularly persuasive. His spouse, Ingrid Coello's letter did not address or mention Mr. Coello's criminality nor mention any rehabilitation or treatment. In fact, none of the letters addressed Mr. Coello's criminal conduct. While I understood he had received a pardon, the exact reason for the pardon was unclear.

In good faith, I found the acts underlying his original conviction were egregious and potentially provided a lifetime of trauma for the victim. I therefore decided, in good faith based on the facts in Mr. Coello's case, that he is a public safety risk and to remove him from the United States.

17. After my decision, ICE scheduled Mr. Coello for removal. After Mr. Coello's counsel began the meet and confer process under the settlement agreement, I learned that Mr. Coello claims he is innocent of the actions underlying his original conviction. I, in my discretion, decided to cancel Mr. Coello's scheduled removal in order to allow Mr. Coello to submit additional information on his behalf for ICE ERO to consider.

18. On or about November 13, 2025, a Deportation Officer attempted to communicate with the victim of the sexual assault via text. The victim responded thanking ERO for contacting her but stated she did not wish to be involved due to the amount of time that had passed, that she has put the situation behind her and she has not had any contact with Mr. Coello in over 15 years. ICE respected her wishes.

19. On or about November 14, 2025, Mr. Coello's counsel submitted the additional information I had agreed to consider. In that documentation was a letter from the victim's mother ███████████████████████████████ In that letter Ms. ███████ generally states that she previously opposed the pardon but now thinks Mr. Coello should be able to remain with his family. She included her number and indicated she would be willing to talk further. The letter does not dispute the sexual assault of her daughter occurred. I reached out to Ms. ███████ because the letter was vague, and I wanted clarification. I texted Ms. ███████ at the

number she provided and requested an opportunity to schedule a time to speak.

20. On November 19, 2025, Ms. ▇▇▇ called me without notice. I had to unexpectedly find a fluent Spanish speaker to interpret because I was not expecting her call. After approximately 5 minutes I was able to find an ERO employee who is a fluent Spanish speaker. I spoke to Ms. ▇▇▇ for less than 5 minutes through an interpreter, and it was clear to me that Ms. ▇▇▇ did not want to talk with me. She stated that Mr. Coello ▇▇▇▇, has been good to his family, she believes that Mr. Coello has changed and she does not consider him to be "a threat to the public." When I asked her why she wanted to pardon him, she did not answer and repeated the above comments. She then hung up the phone. I immediately called her back, and she did not answer. During my conversation with Ms. ▇▇▇ she did not say that Mr. Coello did not commit the acts which led to his original convictions. I did not find the call provided clarification to the vagueness of her letter. Additionally, I found it odd that she would offer to speak to me in her letter but then be so abrupt when I contacted her. I also found it odd that she used the phrase "a threat to the public" which is similar to the wording in the Settlement Agreement. Her using that phrase made me concerned that she may have been pressured about what to say particularly because she never said that Mr. Coello did not commit the actions of which he was accused. Neither she nor the victim have stated the actions which led to Mr. Coello's original convictions did not occur.

21. Later that same day, I attempted to reach Ms. ▇▇▇ again via text message. Ms. ▇▇▇ responded that she included everything she wanted to say in the letter.

Ms. ▮▮▮▮▮ stated in the text she thinks he deserves an opportunity and that she does not wish to know any more about the case.

22. I carefully read the remaining documents provided by Mr. Coello, including the statements by Mr. Coello, his wife and children, his pardon attorney, and friends. I considered the documents he provided to the Board of Pardons. I considered the allegations by Mr. Coello and his wife that Ms. ▮▮▮▮▮ had previously tried extorting them for money in exchange for dropping the criminal charges.

23. I also considered the Connecticut Supreme Court's decision which indicates that it was Mr. Coello's wife, Ingrid, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While the pardon erases the criminal conviction, it does not mean the events never occurred. The victim testified at the trial, a jury believed the victim's testimony, Mr. Coello subsequently plead guilty to lesser charges, and neither the victim nor her mother refuted or disputed that Mr. Coello committed repeated sexual assaults, threats and unlawful restraint. I spent considerable time reviewing the facts in Mr. Coello's case. I am aware of the negative effects Mr. Coello's removal will have on his family and those effects are not something I took lightly. After careful and lengthy consideration, I determined that the new information provided by Mr. Coello did not alter my previous determination, made in good faith that Mr. Coello was a threat to public safety. I have determined in good faith and based on the facts in Mr. Coello's case that he is a threat to public safety.

I declare under the penalty of perjury that the foregoing is correct to the best of my knowledge.

Signed on the 9th of December 2025.

J 7484 Charpentier
(A)Deputy Feld Office Director - DFOD

Digitally signed by J 7484 Charpentier
Date: 2025.12.09 13:48:44 -05'00'

John Charpentier
Acting Deputy Field Office Director
U.S. Department of Homeland Security
United States Immigration and Customs Enforcement
Burlington, Massachusetts