UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LILIAN PAHOLA CALDERON JIMENEZ,
and LUIS GORDILLO, *et al.*,

Individually and on behalf of all others
similarly situated,

    Plaintiffs-Petitioners,

  v.

KRISTI NOEM, *et al.*,

    Defendants-Respondents.

No. 18-cv-10225-PBS

**PETITIONER MIGUEL COELLO'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................3
II. FACTS .............................................................................................................................3
III. THE GOVERNMENT'S DETERMINATION WAS NOT IN "GOOD FAITH" ...................7
IV. CONCLUSION ..............................................................................................................10

I.    INTRODUCTION

Counsel for Mr. Miguel Angel Coello Farfan ("Mr. Coello") hereby submits a reply to Respondent's Opposition to the Motion to Enforce on behalf of class member Miguel Angel Coello Farfan.  The Settlement Agreement requires that, before Immigrations and Customs Enforcement ("ICE") may take an enforcement action against a class member, ICE must consider the individualized facts specific to each class member's case and determine, in good faith, that the class member **_currently poses_** a threat to public safety or national security.  ECF No. 654-1 at 4-5.  Respondent alleges that ICE determined Mr. Coello poses a threat to public safety under Section III of the Settlement Agreement. ECF No. 748-1 at 2; *see also* ECF 768.

Mr. Coello contends that ICE has not made a good faith determination that Mr. Coello *currently* poses a threat to public safety. Mr. Coello alleges that ICE failed to meaningfully consider evidence on the record, including evidence that addressed the concerns ICE expressed during the meet and confer process, and other evidence that demonstrates Mr. Coello's current character within his community. ECF No. 750-2. ICE failed to provide Petitioners with the documentary evidence of which its decision was based on. ICE conducted investigations in a selective manner in an apparent attempt to find *post hoc* evidence to bolster a decision that was already made. ICE's determination that Mr. Coello is a threat to public safety is not the kind of individualized, good-faith determination the Settlement Agreement requires, but instead rests on speculation untethered to present dangerousness.

II.    FACTS

Petitioner Mr. Coello set forth the factual background for his Motion in his opening memorandum, but provides here a more detailed account of the facts that are relevant for this reply to the Respondent's opposition. ECF No. 749. Mr. Coello has lived in Connecticut with

3

his U.S. citizen wife and two children for the past 22 years. ECF No. 750-2 at 6. In 2009, Mr. Coello was arrested after allegations were made against him by his wife's sister's daughter. *Id.* His wife, upon hearing the allegations, was devastated and angry and told Mr. Coello to leave the home. *Id.* at 9. Mr. Coello denied the allegations, and to date, has continually maintained his innocence. *Id*. at 6. After the allegations were made, Mr. Coello's wife's sister approached his wife and asked for $60,000 in order to drop the charges. *Id.* at 9. Mr. Coello states that he refused to pay because he was innocent of the allegations. *Id.* at 6.

In a letter provided to ICE, Mr. Coello's wife stated that after her sister asked for money in exchange for dropping the charges, she began to have a suspicion that something was terribly wrong and that this was not about justice. *Id.* at 9. Mr. Coello's wife has since stood by her husband throughout the proceedings that followed. Mr. Coello was found guilty and sentenced to jail, and he served 26 months in jail. *Id.* at 6. Throughout the time that Mr. Coello was incarcerated, his wife and children visited him two times per week. *Id.* at 9. His daughter remembers that even during this time, her father worked hard to remind her and her brother that he loved them and that he would be there for them in any feasible way that he could. *Id.* at 10.

In August 2012, Mr. Coello's case was overturned. *Id.* at 6. Based on advice from his public defender, Mr. Coello accepted a plea to lesser charges in February 2014. *Id.* At the time, Mr. Coello believed this was the best way to focus on moving forward for him and his family. *Id.* The attorney who represented Mr. Coello on his subsequent pardon explained in a letter submitted to ICE that though he did not represent Mr. Coello in the proceedings in 2014, he reviewed the transcript of the final disposition and noted that there was no formal acknowledgement of the accuracy of any factual allegations in the record. *Id.* at 26. However, the Court nonetheless accepted the plea agreement, likely indicating the State's interest in a

pragmatic resolution. *Id.* Additionally, Mr. Coello is not and never was placed on the sex offender registry. *Id.* at 6.

Mr. Coello and his family tried to move forward as best they could. His daughter remembers the moment that her father was released, "he waited outside our family home on his knees, thankful to God to be able to see his children again." ECF No. 750-2 at 13. His wife went back to school and earned four degrees. ECF No. 750-3 at 14. She is now a psychiatric mental health nurse practitioner and states that she would not have been able to get where she is today without her husband's support. *Id.* His son states, "[m]y dad is a man who has taught me almost everything I know. His presence in my life hasn't just shaped me as a person, but inspired my career and given me a goal for who I want to be when I have a family of my own." *Id.* at 17. Mr. Coello started a family business with his wife and son, and he has been taking classes to get an HVAC license. *Id.* at 7. In her letter to ICE, Mr. Coello's daughter wrote, "[t]his is one of many letters I have written in favor of my father staying in the United States, and I would write 100 more for the chance to express my gratitude to the man that raised me, a man that would move Heaven and Earth to protect myself and my family."

In addition to unwavering support from his family, Mr. Coello presented numerous letters from friends and family- most of whom have known him for over 10 years or more- discussing Mr. Coello's outstanding character, integrity, and positive presence in the community. ECF No. 750-2, 3. One friend who has known him for over a decade says he is a neighbor of the "highest integrity" and that she has "seen firsthand the kind of father and husband Miguel is guiding his children with patience and love and helping them grow into responsible, admirable young adults." ECF No. 750-3 at 44. Another friend who met Mr. Coello through the church explained that Mr. Coello "has a genuine compassion for other people who

5

are in need", as demonstrated by the way he helped her to transport her mother to doctors' appointments when she herself was suffering from breast cancer and was not able to carry her mother. *Id.* at 55. Mr. Coello's Reverend explains that Mr. Coello volunteered his time to help complete construction on the church and he describes Mr. Coello as "an excellent person, loyal and trustworthy." *Id.* at 60.

In April 2024, the State of Connecticut granted Mr. Coello a full and absolute pardon. *Id.* at 12. The attorney that represented Mr. Coello in his pardon proceedings stated that it is very rare for the Connecticut Board of Pardons to grant pardons in cases involving sexual offenses, and exceedingly rarer for the Board to grant a pardon in the case of an individual who had a prior sex related conviction and steadfastly denied committing the offense. ECF No. 750-2 at 25. Mr. Coello's pardon attorney explained that the Connecticut Board of Pardons found that Mr. Coello was not a danger to the community, but a proven asset to his family, colleagues, and community at large. *Id.* at 26.

In August 2025, Mr. Coello was detained by ICE and transferred to the Strafford County Department of Corrections, where he remains to date. On October 23, 2025, ICE informed Class Counsel of its intent to remove Mr. Coello and on October 27, 2025, Class Counsel initiated the Calderon Settlement Agreement conflict resolution procedures. ECF No. 750-1 at 16-17. Counsel for the Government indicated they would consider additional documentation regarding Mr. Coello's innocence of the underlying events that had led to his prior conviction, and they requested more information regarding how the Connecticut Board of Pardons made their decision.

The Parties agreed to a 2-week time period for Mr. Coello to gather and submit new documentation. The new packet of information was submitted on November 14, 2025. ECF No. 750-2. On November 24, 2025, counsel for the Government indicated that ICE had declined to

change their decision to remove Mr. Coello, thereby implying that they still consider Mr. Coello a threat to public safety. ECF No. 750-1 at 3.

Petitioner Coello's counsel had requested ICE provide notice of its intent to remove Mr. Coello following ICE's review of the additional documentation, but ICE had not yet agreed to provide Mr. Coello or his counsel with notice, thereby prompting Petitioner Coello's counsel to file this Motion to Enforce expeditiously. *Id.* at 4-6.

### III. THE GOVERNMENT'S DETERMINATION WAS NOT MADE IN "GOOD FAITH" AS REQUIRED UNDER THE SETTLEMENT AGREEMENT

Section III(A) of the Settlement Agreement requires Boston ICE ERO, before taking an enforcement action, to both (a) consider the noncitizen class member's I-130 petition and their eligibility to file Forms I-212 and I-601A, and (b) "determine[e], ***in good faith*** and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member ***poses a threat to public safety or threat to national security***." ECF No. 654-1 at 4-5 (emphasis added). The Agreement thus imposes three linked constraints: (1) an individualized inquiry; (2) tethered to the full factual record in the class member's case, including equities; and (3) carried out in "good faith," understood to require "honesty in belief or purpose" and "faithfulness to one's duty or obligation." *Kaufman v. C.I.R.*, 784 F.3d 56, 70 (1st Cir. 2015).

Rather than make a good-faith and individualized determination of ***current*** threat to public safety, ICE has evidently decided that Mr. Coello automatically poses a threat to public safety merely because of his past criminal charges, regardless of the age of those charges, his full and absolute pardon, and his demonstrated family and community support. In doing so, the Government has failed to meet its obligations under Section III(A) of the Settlement Agreement to individually consider "the facts in the Noncitizen Class Member's Case." ECF No. 654-1 at 4.

7

A. **ICE Failed to Conduct Meaningful Review of Evidence on the Record**

Respondent states that "ICE did not ignore, outright dismiss, or otherwise refuse to consider the positive factors in Mr. Coello's case." ECF No. 768 at 15. However, there is no indication from DFOD Charpentier's declaration that he meaningfully considered mitigating evidence that was submitted, such as the letter from Mr. Coello's pardon attorney. In this letter, the attorney discussed the 2014 plea agreement and explained that though there was no formal acknowledgement of the accuracy of any factual allegations in the record, the Court nonetheless accepted the plea agreement, likely indicating the State's interest in a pragmatic resolution. ECF No. 750-2 at 26.

The pardon attorney states that the Connecticut Board of Pardons has only granted pardons in cases involving sexual offenses in the "rarest occasions", and even rarer, when an individual denies committing the offense. *Id.* Mr. Coello steadfastly denied the underlying charges in his pardon application, yet the CT Board of Pardons "obviously believed that the man appearing before them in 2024 was not a danger to the community, but a proven asset to his family, colleagues, and community at large." *Id.*

The Connecticut Board of Pardons and Paroles granted Mr. Coello a "full, complete and unconditional pardon" in 2024, erasing his convictions for reckless endangerment, threatening, and unlawful restraint. While a pardon does not erase history, it is a formal state determination—after independent review—that the person should no longer bear the legal consequences of those convictions. A good-faith public-safety assessment must reckon seriously with that judgment.

DFOD Charpentier, however, expressly states that the "exact reason for the pardon was unclear" and he proceeded as though the pardon had little to no bearing on dangerousness. ECF No. 768-1 at 16. He describes the absence of documentation explaining the Board's reasoning but then declines to consider the application and letter submitted, instead treating the underlying allegations as unchanged and determinative. That is the opposite of the "totality"-based review he claims to conduct

8

and falls short of the Settlement's requirement to base decisions on "the facts in the Noncitizen Class Member's case" as they exist now.

Mr. Coello also submitted numerous letters that demonstrate how he has become involved in his local community, volunteering with his church, helping neighbors, and attending classes to achieve his HVAC license. *Id.* DFOD Charpentier did not appear to acknowledge these positive factors.

B. **ICE's Pursuit of Additional Information Appeared to be Focused on Seeking *Post Hoc* Evidence to Bolster Its Decision**

In order to conduct good faith determination under the Settlement Agreement, ICE has the ability to seek out additional information that it finds is relevant to making its decision. In Mr. Coello's case, DFOD Charpentier indicated that "on or about November 13, 2025, a deportation officer attempted to communicate with the victim of the sexual assault via text." ECF No. 768-1 at 18. It is not clear in the record how DFOD Charpentier attained the victim's phone number and whether she was open to receiving this type of communication, considering she had been a minor when the allegations were made.

DFOD Charpentier also contacted the victim's mother. ECF No. 768-1 at 20. Counsel submitted a letter from the victim's mother supporting Mr. Coello's ability to remain with his family. ECF No. 750-2 at 22. DFOD Charpentier contacted her, but then discounted her statements as "odd" and potentially the product of "pressure" because she used the phrase "threat to the public," which he associated with the Settlement's language. ECF No. 768-1. Yet he points to no evidence—beyond his own subjective impression—that anyone coached her, and he concedes that she reiterated her belief that Mr. Coello "has changed" and is not a threat. Speculation about supposed coaching, unsupported by facts, is not a good-faith basis to ignore favorable, first-hand evidence bearing directly on public safety.

Though DFOD Charpentier took the time to contact the victim and her mother, he apparently

did not take any steps to contact any other entities involved in the alleged events off of which he is basing his decision. For example, he did not contact Mr. Coello's wife to inquire about additional details as it relates to the request for $60,000. He did not contact other individuals who submitted letters on Mr. Coello's behalf who may have had knowledge of the underlying events. There is no indication that he contacted other witnesses, the prosecutor or public defender involved in the case. Thus, he appeared to be focused on attaining a certain focused result instead of conducting a good-faith, complete investigation of the facts.

    C.    **The Government Failed to Provide Petitioners with a Record of Evidence Considered in Making Its Determination**

Respondents allege that its determination is supported by a declaration submitted by DFOD Charpentier but provides no additional records that DFOD Charpentier used in making his determination. Without being able to review the documentation submitted, Petitioner Coello is left without a clear understanding of how a good faith determination was indeed achieved. For example, respondents provide no record of the text messages or other questions DFOD Charpentier asked of the victim or her mother. Thus, ICE should be required to produce a full record of the evidence it based its determination on regarding Mr. Coello, in order to assist in deciding whether its decision was made in good faith.

    V.  **CONCLUSION**

For the foregoing reasons, counsel respectfully requests that this Court grant Petitioners' Motion to Enforce the Settlement Agreement as to Mr. Coello. Petitioner Coello respectfully requests that this Court order the Government to release him from ICE custody so that he can be reunited with his U.S. citizen spouse, U.S. citizen children, and community as soon as possible, and enjoin any further enforcement action against him unless it is based on new evidence that he poses a threat to public safety or national security.

Respectfully Submitted this 12th day of December 2025.

*Counsel for the Petitioner Miguel Coello*

/s/ *Rachel Lerman*
Clinical Fellow
Medical-Legal Partnership Clinic
127 Wall Street
New Haven, CT 06511
Email: rachel.lerman@yale.edu
Phone: (203) 903-1505

*Pro hac vice Admission*

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

      Pursuant to Local Rule 7.1, the undersigned certifies that counsel for Petitioner Miguel Coello conferred with counsel for Respondents and attempted in good faith to narrow or resolve the issues that are subject of this motion to enforce the Settlement Agreement. Specifically, the Parties have followed the Conflict Resolution Procedures outlines by Section VI(C) of the Settlement Agreement but have been unable to resolve their disputes with respect to Mr. Coello.

Dated: December 12, 2025

/s/ *Rachel Lerman*
Clinical Fellow
Medical-Legal Partnership Clinic
127 Wall Street
New Haven, CT 06511
Email: rachel.lerman@yale.edu
Phone: (203) 903-1505

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 12, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                            */s/ Rachel Lerman*
                                                           Rachel Amelia Lerman, Esq.