## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> KRISTI NOEM, *et al.*, <br><br> Defendants-Respondents. | C.A. No. 18-10225-PBS |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' FERNANDO FAGNER COSTA AND TAULAND DESHATI'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

### INTRODUCTION

The Court should deny Plaintiffs' motions to enforce, ECF Nos. 735, 760, because the Settlement Agreement,[1] ECF No. 654-1, does not mandate issuing a stay of removal for Class Members with a pending or approved Joint Motion to Reopen ("JMTR") by Immigration and Customs Enforcement ("ICE"), nor does it mandate reporting Enforcement Actions by ICE field offices other than ICE Boston ("Boston ERO"). *See generally* ECF No. 654-1. The Settlement Agreement constituted a full, fair, and complete settlement. *Id.* at 2. What Plaintiffs describe as a motion to enforce is in fact a belated request to change the terms of the Settlement Agreement and transform this regional class action settlement into a nationwide settlement.

---

[1] Capitalized terms used in this opposition memorandum appear as capitalized to maintain consistency with the terms as they appear and are defined in the Settlement Agreement.

Additionally, Plaintiff Fernando Fagner Costa's motion is moot. ICE has released him from custody, his immigration proceedings have been reopened and dismissed, and he is no longer a Class Member because he does not have a final order of removal. This Court lacks jurisdiction to issue any relief to Mr. Costa under the Settlement Agreement. *See* Ex. A. Accordingly, the Court should dismiss Plaintiffs' motions to enforce.

## PROCEDURAL BACKGROUND

### I.    The Settlement Agreement

This case arose from a habeas lawsuit in February 2018, filed by individual plaintiff, Ms. Lilian Calderon Jimenez ("Ms. Calderon"). *See generally* ECF No. 1. Ms. Calderon was at an interview with her U.S. citizen husband at U.S. Citizenship and Immigration Services' ("USCIS") office in Johnston, Rhode Island, to demonstrate her eligibility for a Form I-130, Petition for Alien Relative, when she was detained by agents from ICE's Enforcement and Removal Operations assigned to the Boston area of responsibility ("Boston ERO"). *Id.* Ms. Calderon had a final removal order from 2002 for failure to voluntarily depart. *Id.* Following her release from detention, Ms. Calderon filed an Amended Complaint in 2018, on behalf of a putative class, alleging the Government's actions of detaining and removing noncitizen Class Members without allowing them an opportunity to first apply for the Form I-601A, Application for a Provisional Unlawful Presence Waiver violated the law. *See generally* ECF No. 27. Plaintiffs asked the Court to prohibit their detention and removal while they pursued a provisional unlawful presence waiver that, ultimately, may reduce the amount of time separated from their family while they complete the process required to obtain an immigrant visa. ECF No. 27 at 25-28; *see infra* at Sec. I.B.

On May 16, 2019, the Court denied the Government's motion to dismiss the amended class action complaint and certified a class of Plaintiffs, defined as the following for Counts 1, 3, and 4:

[A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved 1-130, Petition for Alien Relative, filed by the United States citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of Boston Immigration and Customs Enforcement-Enforcement and Removal Operations ("ICE-ERO") field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

ECF No. 253, at 2.

Following years of active litigation, on January 27, 2023, the Court stayed the case as the parties engaged in multiple rounds of extensive settlement negotiations. ECF No. 577. The parties conferred numerous times throughout the following three years and exchanged numerous draft settlement proposals. ECF No. 654-1 at 1-2. On November 4, 2024, the Court preliminarily approved the parties proposed settlement agreement, ECF No. 664.

On January 16, 2025, nearly seven years after Plaintiffs filed their first amended complaint, this Court approved a class wide settlement agreement under Federal Rule of Civil Procedure 23(e)(2). ECF No. 677. The Court retained jurisdiction to enforce the Settlement Agreement (ECF No. 654-1) according to its terms. *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381-82 (1994)).

The Settlement Agreement has two primary provisions. First, it generally places conditions on ICE Boston's ability to take Enforcement Actions, as defined in the Settlement Agreement, against alien Class Members ("Enforcement Action Provision"). As relevant here, Boston ERO may remove an alien Class Member from the United States, "only after both (a) considering the Form I-130 visa petition filed on their behalf by their U.S. citizen spouse, the noncitizen's

3

eligibility to file a Form I-212, and their eligibility to file a Form I-601A, and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security." ECF No. 654-1 at 3-4, 5-6. Notably, the Settlement Agreement prohibits ICE ERO from transferring Class Members outside Boston ERO's area of responsibility without first complying with the Enforcement Provision or for the purpose of avoiding the Settlement Agreement. *Id.* at 5.

Second, the Agreement creates a process through which certain Class Members may have their removal proceedings reopened and terminated ("JMTR Provision"). *Id.* at 4. Class Members must submit a request to ICE Office of Principal Legal Advisor ("ICE OPLA")[2] that complies with certain requirements to obtain ICE OPLA's consent to the motion. *Id.* Generally, ICE OPLA must grant these requests unless it "determines, in its sole discretion" that the alien is a public safety or national security risk or has engaged in serious immigration benefit fraud or is a repeat immigration violator. *Id.* The Agreement does not require ICE OPLA to adjudicate requests within a particular time nor does the Agreement prohibit ICE from arresting, detaining, or removing Class Members while a JMTR request is pending with ICE OPLA or the Executive Office for Immigration Review ("EOIR"). *Id.* Class Members who have their removal proceedings reopened and terminated cease to qualify as Class Members under the Agreement. *Id.* at 2. However, these Class Members no longer have a removal order that ICE can execute and their path to becoming a lawful permanent resident faces one less administrative hurdle.

The Agreement also has reporting requirements ("Reporting Provision") related to the Enforcement Actions and consideration that Boston ERO must conduct under the Settlement

---

[2] Attorneys for ICE OPLA, among other duties, provide advice to ICE ERO and represent the Department of Homeland Security in Immigration Court.

Agreement. ECF No. 654-1 at 6. Generally, Defendants must notify class counsel when Boston ERO takes an Enforcement Action against a Class Member. *Id.* To demonstrate compliance with the Settlement Agreement's Enforcement Action Provision, Boston ERO must provide a "brief description of the consideration it completed" under the Settlement Agreement no less than five business days before ICE removes the Class Member. *Id.* at 7.

The Settlement Agreement allows for enforcement in this Court regarding only Boston ERO's removal decisions "only on behalf of an individual Named Plaintiff or Class Member." *Id.* This Court may enter orders "only as applied to an individual Named Plaintiff or Noncitizen Class Member" and may not enter any order requiring compliance "as applied to categories of Noncitizen Class Members." *Id.* Additionally, any court order "shall be limited to addressing the case of the specific Named Plaintiff or Noncitizen Class Member whose facts are before the Court." *Id.*

## II.    The Provisional Waiver Process[3]

The Immigration and Nationality Act ("INA") sets limits on when and how a noncitizen may immigrate to the United States. Generally, a noncitizen who is married to a U.S. citizen may immigrate to the United States and obtain lawful permanent resident status only if the government determines they are "admissible" under the INA. *See* 8 U.S.C. § 1182. If a noncitizen is "inadmissible" under the INA, the government may not issue the noncitizen an immigrant visa or adjust the noncitizen's status to that of a lawful permanent resident until the noncitizen obtains a "waiver" of each ground of inadmissibility. *See id.* Not all grounds of inadmissibility are waivable, and waivers under the INA are committed by law to the discretion of the Department of Homeland Security ("DHS"). *See* 8 U.S.C. §§ 1182(a)(9)(A)(iii), (a)(9)(B)(v).

---

[3] Although not directly relevant, Defendants provide this background to provide a more comprehensive overview to the Court.

The Class Members in this case will be, if they depart the United States, inadmissible under at least two distinct grounds: (1) 8 U.S.C. § 1182(a)(9)(A), for being subject to final orders of removal; and (2) 8 U.S.C. § 1182(a)(9)(B), for having been unlawfully present in the United States for at least a year. DHS, in its sole discretion, may waive these grounds of inadmissibility if the noncitizen meets the statutory criteria. 8 U.S.C. §§ 1182(a)(9)(A)(iii), (a)(9)(B)(v).

Before 2013, noncitizens could apply for a waiver of inadmissibility under 8 U.S.C. § 1182(a)(9)(B) only from outside the United States. However, in 2013, DHS amended the governing regulation, 8 C.F.R. § 212.7, "to allow certain immediate relatives of U.S. citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications" via a Form I-601A. Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536 (Jan. 3, 2013). Although the Rule extended eligibility to noncitizens who were physically present in the United States, it warned that "the filing or approval of a provisional unlawful presence waiver application will not . . . protect an alien from being placed in removal proceedings or removed from the United States." *Id.*; *see also id.* at 555 ("[T]he approval of a provisional unlawful presence waiver does not . . . protect aliens from removal or law enforcement action, or grant any other immigration benefits"). Under the 2013 version of § 212.7, noncitizens with final removal orders were ineligible to apply for provisional unlawful presence waivers.

In 2016, DHS again amended § 212.7. Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244 (July 29, 2016). The amendment extended eligibility for provisional unlawful-presence waivers to noncitizens with final removal orders, "provided that they have already applied for, and [U.S. Citizenship and Immigration Services

("USCIS")] has approved, an Application for Permission to Reapply for Admission into the United States After Deportation or Removal, Form I-212." *Id.* at 50245.

These two discretionary waivers, for which a noncitizen may apply using Forms I-212 and I-601A, obtained in a sequential process, provide a potential path to lawful permanent resident status for the discrete subset of Class Members who are not subject to other grounds of inadmissibility. This subset may apply for, and USCIS may approve, the Forms I-212 and I-601A from within the United States. *Id.* If USCIS approves the Form I-212, the noncitizen may then file his or her Form I-601A. If both the Form I-212 and Form I-601A are approved, the noncitizen may then commence the required consular process abroad with the Department of State ("DOS"). In consular processing, DOS schedules the noncitizen for an interview at a U.S. Embassy or Consulate, and then the noncitizen departs the United States to attend the interview. *See* 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61-62. If DOS determines that the noncitizen is admissible to the United States with their approved waiver applications, DOS may grant the noncitizen's immigrant visa application. With this immigrant visa, the noncitizen may seek admission into the United States as a lawful permanent resident. *See* 8 U.S.C. § 1225 (Inspection by Immigration Officers). If admitted by U.S. Customs and Border Protection, the noncitizen becomes a lawful permanent resident. *See* 8 U.S.C. § 1201. In this situation, the noncitizen may spend a relatively short time apart from his or her U.S. citizen spouse before returning as a lawful permanent resident.

## FACTUAL BACKGROUND

### I. Mr. Fernando Fagner Costa

On or about October 28, 2025, Mr. Costa was arrested and detained by Miami ERO while traveling in Miami, Florida. ECF No. 761 at 11. At the time Mr. Costa was arrested, he had a pending joint motion to reopen request with ICE Office of Principal Legal Advisor in Boston. *Id.*

On December 3, 2025, the Board of Immigration Appeals, the agency with jurisdiction over Mr. Costa's joint motion to reopen, granted his joint motion to reopen and terminated the proceedings against him. *See* Ex. A. Mr. Costa was released on December 5, 2025, upon receipt of the Board of Immigration Appeals order. Ex. B. Mr. Costa no longer has an order of removal against him; therefore, he is not a *Calderon* Class Member.

## II.    Mr. Tauland Deshati

Mr. Deshati is native and citizen of Albania and a Class Member residing in Connecticut. ECF Nos. 736 at 2, 761 at 12. Plaintiffs concede that on or about September 21, 2025, Mr. Deshati was detained outside New England and the Boston ERO area of responsibility—not by Boston ERO— and is currently detained at the Delaney Hall Detention Facility in Newark, New Jersey. ECF No. 761 at 12. After he was detained, on or about September 29, 2025, Mr. Deshati's immigration attorney submitted a joint motion to reopen request with ICE OPLA.[4] *Id.* Initially, his joint motion to reopen request was denied. *Id.* After Mr. Deshati's counsel provided additional evidence pertaining to his Class Membership, ICE OPLA was able to confirm his Class Membership and joined his motion request on October 17, 2025. *Id.* at 12-13. Mr. Deshati's joint motion to reopen remains pending at the Board of Immigration Appeals, the agency with jurisdiction over his motion. *Id.*

## APPLICABLE STANDARDS

A class-action settlement is a private contract negotiated between the parties. *See* Tr. January 16, 2025 Hr'g. at 02:11 ("you [a]re entering into a contract. … It [i]s enforceable. And it

---

[4] Joint motion to reopen requests are routed to ICE OPLA offices depending on which immigration court ordered the alien removed. For example, Mr. Deshati's removal order was entered by the New York immigration court. Therefore, his request was routed to the New York OPLA office for review.

can[no]t change if I dismiss the case"); *see also Kansas v. Nebraska*, 135 S. Ct. 1042, 1065 (2015), *citing*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). This Settlement Agreement is a full, fair, and complete settlement. ECF No. 654-1 at 2, 8 ("The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of this Agreement … superseding all previous negotiations and understanding"). This Court's review under the Settlement Agreement is limited by its terms. ECF No. 677 at 5; *see also* ECF No. 654-1 at 6. Any order requiring compliance with the provisions of Section III of the agreement must be limited to addressing the cases of the specific named Plaintiff or Noncitizen Class Members whose facts are before the court. *Id.*

## ARGUMENT

I.  **Mr. Costa is not a *Calderon* Class Member and his motion should be dismissed as moot.**

Mr. Costa alleges that Defendants have violated the Settlement Agreement because ICE Miami has refused to stay his removal and release him while his joint motion to reopen is pending before the Board of Immigration Appeals ("BIA"). But, on December 3, 2025, the BIA granted Mr. Costa's joint motion to reopen and terminated the proceedings against him. Ex. A. ICE Miami subsequently released Mr. Costa on December 5, 2025. Ex. B. Accordingly, Mr. Costa's claims alleging a violation of the Settlement Agreement are moot and his motion to enforce should be denied.

Additionally, this Court now lacks jurisdiction to issue any relief to Mr. Costa under the Settlement Agreement because he is no longer a Class Member subject to the Settlement Agreement. To be a *Calderon* Class Member, an alien must have a final order of removal. *See* ECF No. 253 at 2 ("[A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order"). Mr. Costa no longer

has a final order of removal now that the BIA has reopened and terminated his removal proceedings. Therefore, Mr. Costa is not a *Calderon* Class Member. Because the Settlement Agreement only provides relief to Class Members, this Court lacks jurisdiction to issue any relief to Mr. Costa. This Court should therefore deny his motion to enforce.

## II.    Plaintiffs have not shown a breach of the Settlement Agreement.

Plaintiffs appear to have three bases for their claim that Defendants have breached the Settlement Agreement. First Plaintiffs contend that ICE must stay a Class Member's removal upon the filing of a pending or approved request for joint motion to reopen by ICE OPLA *regardless* of which division of ICE ERO *(e.g.,* ICE ERO Miami, ICE ERO Chicago, ICE ERO New York) has arrested the Class Member. ECF No. 761 at 14-19. Second, Plaintiffs contend that all ICE ERO divisions must comply with the Reporting Provision by virtue of the Settlement Agreement's use of the word "Defendants." *Id.* at 19-20. Finally, Mr. Deshati's counsel—but not Class Counsel— argue that ICE ERO Newark was required to abide by the Enforcement Action Provision of the Settlement Agreement. ECF No. 736 at 7-8. Plaintiffs' motions fail. The JMTR Provision of the Settlement Agreement does not require a stay of removal pending the approval and adjudication of a joint motion to reopen. The Reporting Provision does not require Defendants to report Enforcement Actions taken nationwide against Class Members who have *chosen* to travel outside the Boston ERO area of responsibility in which they are protected by the Settlement Agreement. Finally, as Class Counsel implicitly admits, the Enforcement Action Provision only limits Enforcement Actions taken byBoston ERO. Therefore, ICE has complied with the Settlement Agreement, because the ERO office in question is not bound by the Settlement Agreement's terms. Therefore, this Court should deny Plaintiffs' motion.

### A.  Plaintiffs fail to show the Settlement Agreement requires ICE to stay the removal of Class Members with pending or approved Joint Motions to Reopen.

To ascertain ICE's compliance with the Settlement Agreement, this Court should review the terms as laid out within the Settlement Agreement because the agreement constitutes a full, fair, and complete Settlement of the underlying claim. ECF No. 654-1 at 2. The JMTR Provision (Section II) of the Settlement Agreement states, in relevant part, that ICE OPLA attorneys receiving joint motion to reopen and terminate proceeding requests "will review each request on a case-by-case basis and will presumptively join motions to reopen and dismiss filed by Noncitizen Class Members who comply with the requirements in Section II(B) and demonstrate they are prima facie eligible for either (a) consular processing utilizing the Form I-601A, or (b) adjustment of status." *Id.* at 3-4.

Section II(A) also states that ICE OPLA attorneys may in their discretion decline to join a joint motion to reopen request by a Class Member who has met the requests but is otherwise found to be under the totality of the facts and circumstances (1) a threat to public safety, (2) a threat to national security, or (3) has engaged in serious immigration benefit fraud or is a repeated immigration violator. *Id.* Section II(B) of the Settlement Agreement sets forth the requirements for Class Members' request to ICE OPLA to join their joint motion to reopen and dismiss. *Id.* Finally, Section II(C) pertains to joint motions to reopen and dismiss in absentia orders of removal. *Id.* The Settlement Agreement says *nothing* about (1) when ICE OPLA must review the JMTR request nor about (2) whether ICE ERO nationally is precluded from enforcing a Class Member's removal while the JMTR request is pending.

Mr. Deshati did not submit a joint motion to reopen and dismiss his proceedings request until October 9, 2025, after he was detained by ICE ERO Newark while he was *voluntarily* in Newark. Plaintiffs concede that ICE OPLA Attorneys, in accordance with the terms of the Settlement Agreement, reviewed and joined Mr. Deshati's request, *less than a week* after receiving

the request. That request was submitted to the Board of Immigration Appeals, the agency with jurisdiction of his case, on October 14, 2025. Similarly, ICE OPLA Boston has joined Mr. Costa's joint motion to reopen and dismiss his case on November 5, 2025. That request was submitted to the Board of Immigration Appeals, the agency with jurisdiction of his case, on November 12, 2025. Ex. A. Defendants, via ICE OPLA, have fulfilled their obligation to Mr. Deshati and Mr. Costa under the JMTR Provision of the Settlement Agreement.

Plaintiffs' argument that the government now asserts that the Settlement Agreement allows ICE to use its enforcement power to effectively eliminate its JMTR Provision of the Settlement Agreement is without merit and based on their misunderstanding of the Settlement Agreement. ECF No. 761 at 17. As a threshold matter, both Mr. Costa and Mr. Deshati voluntarily traveled outside ERO Boston's area of responsibility—the area in which they enjoy a high degree of protection from Boston ERO's Enforcement Actions. Had they remained within ERO Boston's area of responsibility, Boston ERO could not have arrested or detained them prior to complying with the Enforcement Action Provision. ECF No, 654-1 at 4-5. And, since neither alien has any criminal history of which ICE is presently aware, neither Mr. Costa nor Mr. Deshati would have been arrested but for their voluntary travel outside the New England area. *Id.*

Notwithstanding, the divisions within ICE mentioned in the Settlement Agreement have separate independent functions. The JMTR Provision of the Settlement Agreement sets specific obligations for ICE's Office of the Principal Legal Advisor, which includes ICE's attorneys that appear before EOIR and may join motions before EOIR. ECF No. 654-1 at 3-4. The parties defined ICE OPLA broadly and without geographic limitations. *Id.* at 3. This is because Class Members may have removal orders entered by immigration courts nationwide although all Class Members now reside in New England.

Conversely, the parties defined "Enforcement Action(s)" as the arrest, initial detention decision, continued detention decision, command that an individual depart, and the removal of an individual Class Member by Boston ERO specifically. *Id.* at 4-5. The Settlement Agreement only placed limits on Enforcement Actions, including the removal of Class Members, taken by ERO Boston. This is despite the fact that it was not unforeseeable that Class Members may travel outside the area comprised of Boston ERO's jurisdiction, be detained by other independent ICE ERO jurisdictions, be removed, and fall out of Class Membership. Although it was anticipatory,[5] the parties did not negotiate a nationwide stay of removal for Class Members with pending or approved joint motions to reopen. The JMTR Provision simply does not provide for the relief Plaintiffs seek. ERO jurisdictions—other than Boston ERO—are not bound by this Settlement Agreement and are free to remove Class Members from the United States.

Plaintiffs do not offer any real textual basis under the Settlement Agreement for their argument that other ICE ERO jurisdictions must stay a Class Members removal pending a JMTR request. They generally describe the JMTR process as a "right" and "guarantee," but fail to grapple with the fact that the Settlement Agreement says nothing about the specific relief they request: a stay of removal while the JMTR is pending. However they characterize their arguments, they cannot impose new requirements not contemplated by the Settlement Agreement. *See CNH Indus. N.V. v. Reese*, 583 U.S. 133, 139 (2018) ("a contract is not ambiguous unless, 'after applying established rules of interpretation, [it] remains reasonably susceptible to at least two reasonable

---

[5] Its foreseeability is further evident by Section III(G) which prohibits "U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations" with no geographic limitations from transferring a noncitizen Class Member outside the jurisdiction of Boston ERO for the purpose of avoiding the terms of the Settlement Agreement. ECF No. 654-1 at 8 ("no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving the interpretation of this Agreement.").

but conflicting meanings.'"); *see also Bank v. Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008) ("To answer the ambiguity question, the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties."); *General Convention of the New Jerusalem in the United States of America, Inc. v. MacKenzie*, 449 Mass. 832, 835–836 (2007) ("The initial ambiguity must exist … extrinsic evidence cannot be used to contradict or change the written terms, but only to remove or to explain the existing uncertainty or ambiguity.").

As demonstrated above, Defendants are not circumventing any obligation under the Settlement Agreement. Under the Settlement Agreement, ICE OPLA was obliged to join the JMTR requests of Mr. Costa and Deshati. It has done so. The government *did not* move Mr. Deshati or Mr. Costa with the purpose of avoiding the terms of the Settlement Agreement. Rather, Mr. Costa and Mr. Deshati voluntarily travelled outside the Boston ERO area of responsibility and put themselves at risk of being removed while their JMTR was pending. That Plaintiffs had the opportunity to negotiate a stay of removal for Class Members like Mr. Costa and Mr. Deshati— similarly to how they negotiated an anti-transfer provision—does not entitle them to relief beyond the plain text of the Settlement Agreement. *See CNH Indus. N.V. v. Reese*, 583 U.S. at 139; *see also Bank v. Thermo Elemental Inc.*, 451 Mass. at 648; *General Convention of the New Jerusalem in the United States of America, Inc. v. MacKenzie*, 449 Mass. at 835–836.

At any point during the settlement negotiations, Plaintiffs could have negotiated a nationwide stay of removal pending JMTRs but plainly failed to do so. Plaintiffs have not, and cannot, claim that the JMTR Provision of the Settlement Agreement mandates a stay of removal while the joint motion to reopen is pending with ICE OPLA, the Immigration Court, or the Board of Immigration Appeals because the Provision is entirely silent on the matter and, in any case,

places *no obligations* on ICE ERO jurisdictions at all. ECF No. 654-1 at 3-4 (requiring ICE OPLA, not ICE ERO, to process JMTR requests). Granting the relief Plaintiffs seek would not only expand the JMTR Provision, but it would also conflict with the Enforcement Provision which *only* limits Enforcement Actions taken by ERO Boston. Id. at 4-5 (referring only to ERO Boston). Judge Wolf clearly and unambiguously stated that the terms of the Settlement Agreement, once approved, cannot be changed. *See* Tr. January 16, 2025 Hr'g. at 02:11. Therefore, this Court should deny Plaintiffs' motion because it seeks to impose new requirements on other ERO jurisdictions not contemplated under the Settlement Agreement.

### B. Plaintiffs fail to show the Settlement Agreement requires reporting the detention and removal of Class Members outside of the Boston ERO area of responsibility.

Class counsel argues that the reporting requirements use of the term "Defendants" listed in the Reporting Provision (Section V) of the Settlement Agreement requires all ICE offices nationwide to report Enforcement Actions against Class Members. They incorrectly reason that because Defendants encompass national level officers such as the Senior Official Performing the Duties of the Director of ICE, the Secretary of the Department of Homeland Security, the Field Office Director of ICE, and the President of the United States, the word Defendants contains no geographic restrictions and applies nationwide (ECF No. 761 at 19). Their argument lacks merit for several reasons.

Section V states in relevant part:

> Defendants shall notify Class Counsel of any Enforcement Action taken against a Named Plaintiff or Noncitizen Class Member, and of any decisions to remove a Noncitizen Class Member, within five (5) business days after any such Enforcement Action. … In the case of any Named Plaintiff or Noncitizen Class Member arrested or detained by Boston ERO at USCIS or at an Application Support Center, this notification to Class Counsel shall also

> note the location of arrest or detention. … Defendants shall provide Class Counsel with a
>
> brief description of the consideration it completed under Section III(A) of this Agreement.
>
> Upon request by Class Counsel, Defendants will provide copies of the notice of post order
>
> custody review….

ECF No. 654-1 at 6. Plaintiffs are correct that the use of the word "Defendants" is intentional, but err in their reasoning for that intentionality. Here, "Defendants" is not used to impose a requirement on ICE ERO offices nationally. Rather, the word "Defendants" clearly and unequivocally delineates actions that are ultimately executed through Defendants' counsel. Every mention of "Defendants" refers to actions that are completed through Defendants' counsel.

For example, Section V requires notification of Enforcement Actions taken by Boston ERO. *Id.* While the actual decision to detain, continue detention, or remove a Noncitizen Class Member is made by the Deputy Field Office Director in the Boston ERO office, it is not the Deputy Field Office Director who conveys that decision directly to Class Counsel, but rather their Department of Justice (DOJ) counsel. The word "Defendants" is used again in Section VI(A), which states in relevant part:

> The Court shall retain jurisdiction to order appropriate relief, including release, when ruling
>
> on a Motion to Enforce alleging that in individual Named Plaintiff or Class Member has
>
> been detained in Violation of Section III after consideration of *Defendants'* response, if
>
> any, to such a motion.

*Id.* Here too, the use of the word Defendants refers to an action that is completed through DOJ counsel. DOJ counsel files responses to Motions to Enforce. Further, Section VI(C) pertaining to the Conflict Resolution Procedures of the Settlement Agreements states in relevant part:

> Plaintiffs shall raise the issue via written notice to Defendants as soon as practicable. Defendants shall meet and confer with Plaintiffs regarding this issue within five (5) business days of the written notification if Defendants decide to detain or remove a Noncitizen Class Member...

ECF No. 654-1 at 7. Again, Plaintiffs meet and confer with Defendants through DOJ counsel because Defendants are represented by DOJ counsel. As demonstrated by the use of the word "Defendants" throughout the agreement, the use of the term is meant to denote nothing more and nothing less than actions ultimately completed through Defendants' counsel.

As demonstrated above, there is a reason for the Settlement Agreement's use of the word "Defendants" throughout the Agreement. But it is not for the absurd reason Plaintiffs' claim—to require all ICE offices across the country who were never involved in this lawsuit to report Enforcement Actions against Class Members. It is simply to denote what actions are expected to be performed through counsel because Defendants are the represented, formal party. This Court should reject Plaintiffs' belated attempt to greatly expand the requirements of this Settlement Agreement through their strained interpretation of the word "Defendants."

Additionally, notably missing from the list of Defendants are all ICE ERO offices other than Boston ERO who were not parties in the underlying litigation or the final Settlement Agreement. *See generally* ECF Nos. 1, 654-1. Although the term "Defendants" includes the Senior Official Performing the Duties of the Director of ICE, the Secretary of the Department of Homeland Security, the Field Office Director of ICE, and the President of the United States (collectively "Senior Officials"), these individuals do not partake in daily Enforcement Actions by local ICE ERO offices. These Senior Officials are decision makers who set policy and are named as Defendants because of that role in the policy making process. They do not take individual

Enforcement Actions against Class Members and therefore do not resemble the individual ERO offices across the country that do. Therefore, there is no reason for this Court to interpret the Senior Officials inclusion in the term "Defendants" as imposing requirements on each and every ERO office across the country. The inclusion of a specific ERO office, ERO Boston, and not others further underscores Defendants' interpretation of this provision.

Furthermore, these reporting requirements would be unduly burdensome on the government if applied nationwide. As Judge Wolf recognized, the Parties worked hard "to strike this balance that maintains very substantial discretion for ICE and the Department of Homeland Security" while providing Noncitizen Class Members with adequate relief. Tr. January 16, 2025 Hr'g. at 02:11; *see also* ECF No. 766 at 4. Boston ERO has taken extensive measures to ensure resources are appropriately dedicated to the proper training of individuals on *Calderon* Enforcement Actions to ensure compliance with the agreement. The application of the same training requirements nationwide, given how burdensome it would be, would not be practicable.

Finally, contrary to Plaintiffs' accusations—for which they provide no documentation—it is untrue that the "Government has refused to provide answers" "about whether ICE intends to remove or release them." ECF No. 761 at 20. The Government has consistently, *regardless of a Class Members location*—engaged with Class Counsel and individual immigration counsel about these Class Members. The Government worked with counsel to determine their Class Membership, track their JMTR requests, and do what they can to ensure that the BIA has the information they need to adjudicate the JMTR. Indeed, in Mr. Deshati's case, ICE OPLA expedited consideration of his JMTR request granting it just days after it was filed. Regardless of where a Class Member is detained, the Government will continue to engage with Class Counsel as they have consistently done in the past.

III.    **Plaintiff Deshati failed to show the Settlement Agreement requires compliance with the Enforcement Actions Provision outside the Boston ERO area of responsibility.**

Plaintiff Deshati's Immigration counsel's argument that Defendants violated Mr. Deshati's Due Process rights by detaining him in the first instance without a Deputy Field Office Director determining that he is a public safety risk or national security threat and "fail[ing] to adjudicate his release request" (ECF No. 736 at 8), is without merit. Mr. Deshati was arrested and detained outside of New England for having an outstanding order of removal from April of 2007, and for the reasons mentioned *supra*, the Settlement Agreement's Section III on Enforcement Actions explicitly and unequivocally applies only to Boston ERO. ECF No. 654-1 at 4-5. Because Boston ERO did not arrest or detain Mr. Deshati, he is not entitled to the Enforcement Action requirements listed in Section III. Boston ERO does not have the authority to mandate the arrest, detention, or release of any individual outside its own jurisdiction. Notably, Class Counsel does not raise similar claims.

Finally, Immigration Counsel's arguments regarding the conditions of detention in New Jersey are not appropriately before this Court because this Court retains limited jurisdiction for the purpose of enforcing the terms of the Settlement Agreement itself, which does not address issues related to the condition of an alien's detention. *See generally* ECF Nos. 654-1, 677 at 5.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motions to enforce.


Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General                    /s/ *Susan Ansari*
                                              SUSAN ANSARI
ELIANIS N. PEREZ                              Trial Attorney

Assistant Director                     U.S. Department of Justice, Civil Division
Office of Immigration Litigation       Office of Immigration Litigation
                                       P.O. Box 868, Ben Franklin Station
MARY L. LARAKERS                       Washington, DC 20044
Senior Litigation Counsel              (202) 532-5537
                                       Susan.ansari2@usdoj.gov

## CERTIFICATE OF SERVICE

I, Susan Ansari, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Susan Ansari*
Susan Ansari
Dated: December 12, 2025                     Trial Attorney