```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

_____
                                    )
LILIAN PAHOLA CALDERON JIMENEZ and   )
LUIS GORDILLO, et al.,               )
individually and on behalf of all    )
others similarly situated,           )
                                     )     Civil Action
        Plaintiffs-Petitioners,      )     No. 18-cv-10225-PBS
                                     )
v.                                   )
                                     )
KRISTI NOEM, et al.,                 )
                                     )
        Defendants-Respondents.      )
_____)

## ORDER

March 2, 2026

Saris, J.

Class counsel has moved to enforce the class action settlement agreement in this case with respect to the reporting provision in Section V. The Court assumes familiarity with its January 23, 2026 opinion holding that "the settlement agreement implicitly forbids ICE from removing a class member with a pending JMTR request before ICE OPLA or a pending JMTR in immigration court or the BIA," regardless of where in the United States the class member is arrested or detained. Dkt. 802 at 8.[1]

The current dispute centers on Section V of the settlement agreement, which reads in relevant part as follows:

---

[1] All capitalized terms and acronyms have the same meaning ascribed to them in that opinion.

1

> Defendants shall notify Class Counsel of any Enforcement Action taken against a . . . Noncitizen Class Member, and of any decision to remove a Noncitizen Class Member, within five (5) business days after any such Enforcement Action. . . . No less than five (5) business days before the . . . Noncitizen Class Member will be removed . . . , Defendants shall provide Class Counsel with a brief description of the consideration it completed under Section III(A) of this Agreement.

Dkt. 654-1 ¶ V(A). Class counsel argues that this provision requires Defendants to report to class counsel any arrest, detention, or removal of a class member, regardless of the class member's location. Defendants respond that their obligations under this provision do not extend to arrests, detentions, and removals undertaken outside of Boston ERO's jurisdiction.

Federal common law governs the adjudication of a motion to enforce a settlement agreement in "a case like this one, arising under federal law and brought in federal court."[2] Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F.3d 77, 85 (1st Cir. 2021). Under federal common law, "unless the parties mutually intended and agreed to an alternative meaning," courts interpret a contract "in accordance with its express terms and the plain meaning thereof." Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 31 (1st Cir. 2022) (first quoting Harris v. Dep't of Veterans Affs., 142 F.3d 1463, 1467 (Fed. Cir. 1998); and then

---

[2] The settlement agreement in this case also contains a choice-of-law provision selecting federal law. See Dkt. 654-1 ¶ IX(I).

quoting C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1543 (Fed. Cir. 1993)).

The plain language of the settlement agreement refutes class counsel's argument that Defendants must report arrests and detentions of class members outside of Boston ERO's jurisdiction. The agreement provides that "Defendants shall notify Class Counsel of any Enforcement Action taken against a . . . Noncitizen Class Member . . . within five (5) business days after any such Enforcement Action." Dkt. 654-1 ¶ V(A). "Enforcement Action" is a defined term that means:

1. Boston ERO's arrest of a specific individual(s) whose identity is known to Boston ERO prior to the arrest, or Boston ERO's initial decision to keep an arrested individual in detention;

2. Boston ERO's decision to continue the detention of an individual in ICE detention after (a) the Post Order Custody Review Process or (b) Boston ERO learns that the individual is a Class Member;

3. Boston ERO's command that an individual depart the United States other than to attend an immigrant visa interview after the approval of a Form I-601A, Application for Provisional Unlawful Presence Waiver; or

4. the removal of an individual.

Id. ¶ I(E) (emphasis added). With respect to actions other than removals, this definition limits the term "Enforcement Action" to actions taken by Boston ERO. Thus, Defendants' duty under the settlement agreement to notify class counsel of arrests and

3

detentions extends only to actions within Boston ERO's jurisdiction.

Class counsel argues that Section V's use of the term "Defendants" establishes that the reporting obligations in that section are meant to encompass all class members regardless of geographic location. Class counsel points out that the settlement agreement's definition of the term "Defendants" includes national-level officers like the Director of ICE, the Secretary of the U.S. Department of Homeland Security, and the President of the United States. See id. ¶ I(P). But "Defendants" are simply the individuals upon whom the agreement imposes reporting obligations. Section V's use of the term "Defendants" does not expand the geographic limitations on those obligations imposed by that section's clear language.

That leaves Defendants' reporting obligations with respect to the removal of class members. These obligations appear in two sentences in Section V. The first states that "Defendants shall notify Class Counsel of any Enforcement Action taken against a . . . Noncitizen Class Member, and of any decision to remove a Noncitizen Class Member, within five (5) business days after any such Enforcement Action." Id. ¶ V(A). The second provides that "[n]o less than five (5) business days before the . . . Noncitizen Class Member will be removed . . . , Defendants shall provide

4

Class Counsel with a brief description of the consideration it completed under Section III(A) of this Agreement." Id.

This second sentence requiring notice five business days prior to removal only covers class members within Boston ERO's jurisdiction. That sentence mandates notification to class counsel of "the consideration [Defendants] completed under Section III(A)." Id. Section III(A), in turn, states that:

> Boston ERO will take Enforcement Actions against . . . Noncitizen Class Members only after both (a) considering [his or her visa petition and eligibility for two discretionary waivers of inadmissibility] and (b) determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security.

Id. ¶ III(A) (emphasis added). The agreement also specifies that "Boston ERO will not remove a . . . Noncitizen Class Member from the United States . . . unless a DFOD-level Officer has approved the removal . . . after providing the consideration and making the determination required by Section III(A)." Id. ¶ III(C) (emphasis added). Given that Section III(A) refers specifically to steps Boston ERO must take before removing a class member, the Court cannot interpret this sentence in Section V to apply to the removal of class members outside of Boston ERO's jurisdiction.

That said, the other sentence in Section V establishing a reporting requirement for removals -- under which "Defendants shall notify Class Counsel of any Enforcement Action taken against

5

a . . . Noncitizen Class Member, and of any decision to remove a Noncitizen Class Member, within five (5) business days after any such Enforcement Action," id. ¶ V(A) -- includes no geographic limitation. While, as noted above, the settlement agreement defines the term "Enforcement Action" to include arrests and detentions by Boston ERO specifically, the term encompasses any "removal of an individual" irrespective of location. Id. ¶ I(E)(4). The plain meaning of this sentence, then, is that Defendants must notify class counsel within five business days after deciding to remove a class member and after actually removing a class member.

Defendants contend that the parties intended for the settlement agreement to apply only in Boston ERO's jurisdiction and that a nationwide reporting obligation of this sort would be impractical. The complexity of the arguments the parties have raised with respect to the geographic scope of various provisions in the agreement belies the notion that the agreement evinces a clear intent to apply only within Boston ERO's jurisdiction. And Defendants' resort to the parties' subjective intent cannot overcome the plain meaning of the agreement's text. See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009); N. New Eng. Tel. Operations LLC v. Loc. 2327, Int'l Bhd. of Elec. Workers, 735 F.3d 15, 23 (1st Cir. 2013).

In interpreting the scope of Defendants' reporting duty, the Court construes the phrase "any decision to remove a Noncitizen

6

Class Member" to encompass ICE OPLA's denial of a JMTR request. Given that all class members by definition have final orders of removal, the denial of a JMTR request is effectively a decision that the class member should be removed. Accordingly, the settlement agreement requires that Defendants notify class counsel within five business days after ICE OPLA's denial of a JMTR request.

Following the Court's hearing on class counsel's motion, the parties submitted dueling proposals for an order intended to enforce Defendants' reporting obligations under the settlement agreement. Class counsel asks the Court to impose a lengthy set of detailed duties on Defendants, including sending out periodic notices to ERO field offices, requiring ICE officers across the nation to screen all current and future detainees for Calderon class membership, and mandating specific methods of notifying ICE officials of Defendants' obligations. Defendants protest that this proposal greatly expands the agreement's terms. Cognizant that it cannot "re-write the [s]ettlement [a]greement under the guise of contractual interpretation," In re Deepwater Horizon, 858 F.3d 298, 304 (5th Cir. 2017); see 11 Williston on Contracts § 31:5 (4th ed. 2025) ("[T]he court . . . may not make a new contract for the parties or rewrite their contract while purporting to interpret or construe it."), the Court agrees with Defendants.

7

For their part, Defendants propose sending out an email broadcast to all ERO field offices nationwide that include the following:

- The definition of Calderon Class Members.

- The obligation to stay the removal of any detained Class Members with a properly filed JMTR request with ICE OPLA or a pending JMTR with the immigration court or Board of Immigration Appeals.

- An instruction that ERO offices nationwide reach out to their local OPLA offices for legal advice on their obligations arising as a result of this Court's order regarding Class Members with pending JMTRs.

- An instruction that if ERO is affirmatively informed by the Class Member or their counsel of record of Calderon Class Membership, the case should be immediately reviewed under the Settlement Agreement.

Dkt. 810 at 3-4. Defendants also agree to continue to expeditiously implement stays for class members with pending JMTR requests or JMTRs who are identified to Defendants' counsel. While this proposal seems reasonable, the Court will not micromanage Defendants' internal procedures for implementing its obligations under Section V as interpreted by this order.

For the foregoing reasons, the Court **ALLOWS IN PART** and **DENIES IN PART** the motion to enforce (Dkt. 793) with respect to the reporting provision. Defendants shall notify class counsel within five business days after any decision to remove a class member, including ICE OPLA's denial of a JMTR request, and any removal of a class member.

8

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge