**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> MARKWAYNE MULLIN[1], *et al.*, <br><br> Defendants-Respondents. | C.A. No. 18-10225-PBS |

**RESPONDENTS' OPPOSITION TO PETITIONER YTZHAK AMAR'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**INTRODUCTION**

Mr. Amar entered the United States on a B-2 non-immigrant visa in February of 2023. In May of 2023, Mr. Amar was arrested and charged with Retail Theft. He was subject to a diversion program and the charges were ultimately dismissed. On August 16, 2025, Mr. Amar was arrested for third degree bribery, driving while impaired by alcohol, criminal possession of a controlled substance (500 milligrams of crack cocaine), and refusal to take a breathalyzer test. In September of 2025, he was sentenced to a conditional discharge, an impaired driving program, a fine, and suspension of his driver's license for driving while impaired by alcohol. Just one month later, on October 30, 2025, Mr. Amar was arrested for driving with a suspended license. This charge

---

[1] A public officer's successor is automatically substituted as a party. Fed. R. Civ. Pro. 25(d).

remains pending. Prior to coming to the United States, Mr. Amar was also arrested in Israel for arbitrary attack and sentenced to a conditional prison term of three months, a probation period of three years, and compensation to the victim. He did not disclose this offense in his visa application. Mr. Amar is also the husband of a U.S. citizen, has an approved Form I-130, and has the support of friends and family. On April 2, 2026, Immigration and Customs Enforcement ("ICE") considered these and other facts in his case, and determined in good faith that he is a public safety risk and should be removed from the United States. Those determinations, as detailed in the declaration of Deputy Field Office Director John Charpentier ("DFOD Charpentier") were made in good faith. There is no evidence that ICE engaged in any bad faith or impropriety in its consideration of Mr. Amar's case. Their consideration was honest and faithful to their duty under the Settlement Agreement.[2]

Petitioners disagree that Mr. Amar is a public safety risk. Their motion to enforce attempts to transform their mere disagreement into an argument that ICE made its decision in bad faith and not based on the facts in Mr. Amar's case. But their argument is baseless. There is no per se policy to determine that a *Calderon* Class Member is "automatically" a public safety risk if they have engaged in past criminal conduct. Petitioners' argument to the contrary is nothing more than an attempt to rewrite the terms of the Settlement Agreement and impose their own beliefs upon ICE to automatically discount criminal conduct they deem to be outdated or not a public safety risk.

Petitioners' inferences, assumptions, and allegations are all unfounded. In Mr. Amar's case, the attached declaration demonstrates that ICE made a good faith, reasoned decision based on the facts in Mr. Amar's case to remove him. That the parties or reasonable minds may disagree

---

[2] Capitalized terms used in this opposition memorandum appear as capitalized to maintain consistency with the terms as they appear and are defined in the Settlement Agreement.

as to whether Mr. Amar is a public safety risk is not a basis to issue relief under this Settlement Agreement which prescribes an extremely narrow scope of review. The facts underlying Mr. Amar's previous convictions have a direct nexus to public safety. Mr. Amar arbitrarily attacked someone in Isreal and was convicted for it which is directly relates to public safety. He then concealed this offense when applying for a visa indicating a dishonest nature aggravating this offense. After being in the United States for only three months, he stole items from a grocery store and was arrested and convicted for driving under the influence while being in possession of an illegal drug. He then continued to drive on a suspended license and was arrested just one month after his conviction for driving while impaired. ICE picked him up shortly thereafter ending his criminal conduct in the United States. As illustrated by Mr. Charpentier's declaration, ICE made its decision in good faith based upon the totality of the circumstances in his case and this Court should deny Petitioners' motion to enforce.

## **PROCEDURAL BACKGROUND**

### I.    **The Settlement Agreement**

This case arose from a habeas lawsuit in February 2018, filed by individual plaintiff, Ms. Lilian Calderon Jimenez ("Ms. Calderon"). *See generally* ECF No. 1. Ms. Calderon was at an interview with her U.S. citizen husband at U.S. Citizenship and Immigration Services' ("USCIS") office in Johnston, Rhode Island, to demonstrate her eligibility for a Form I-130, Petition for Alien Relative, when she was detained by agents from ICE's Enforcement and Removal Operations assigned to the Boston area of responsibility ("Boston ERO"). *Id.* Ms. Calderon had a final removal order from 2002 for failure to voluntarily depart. *Id.* Following her release from detention, Ms. Calderon filed an Amended Complaint in 2018, on behalf of a putative class, alleging the Government's actions of detaining and removing noncitizen Class Members without allowing

3

them an opportunity to first apply for the Form I-601A, Application for a Provisional Unlawful Presence Waiver violated the law. *See generally* ECF No. 27. Plaintiffs asked the Court to prohibit their detention and removal while they pursued a provisional unlawful presence waiver that, ultimately, may reduce the amount of time separated from their family while they complete the process required to obtain an immigrant visa. ECF No. 27 at 25-28; *see infra* at Sec. I.B.

On May 16, 2019, the Court denied the Government's motion to dismiss the amended class action complaint and certified a class of Plaintiffs, defined as the following for Counts 1, 3, and 4:

[A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved 1-130, Petition for Alien Relative, filed by the United States citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of Boston Immigration and Customs Enforcement-Enforcement and Removal Operations ("ICE-ERO") field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

ECF No. 253, at 2.

Following years of active litigation, on January 27, 2023, the Court stayed the case as the parties engaged in multiple rounds of extensive settlement negotiations. ECF No. 577. The parties conferred numerous times throughout the following three years and exchanged numerous draft settlement proposals. ECF No. 654-1 at 1-2. On November 4, 2024, the Court preliminarily approved the parties proposed Settlement Agreement, ECF No. 664.

On January 16, 2025, nearly seven years after Plaintiffs filed their first amended complaint, this Court approved a class wide Settlement Agreement under Federal Rule of Civil Procedure 23(e)(2). ECF No. 677. The Court retained jurisdiction to enforce the Settlement Agreement (ECF

No. 654-1) according to its terms. *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381-82 (1994)).

The Settlement Agreement allows for enforcement in this Court of Sections II and III of the Agreement regarding only Boston ERO's removal decisions "only on behalf of an individual Named Plaintiff or Class Member." *Id.* This Court may enter orders regarding these Sections "only as applied to an individual Named Plaintiff or Noncitizen Class Member" and may not enter any order requiring compliance "as applied to categories of Noncitizen Class Members." *Id.* Additionally, any court order "shall be limited to addressing the case of the specific Named Plaintiff or Noncitizen Class Member whose facts are before the Court." *Id.*

## II.    ICE's Consideration of Mr. Amar's Case

Mr. Amar is a native and citizen of Isreal. Declaration of DFOD Charpentier ("Decl. of DFOD Charpentier") ¶ 5. He was admitted to the United States in February of 2023 on a B-2 non-immigrant visa with authorization to remain for six months. *Id.* Mr. Amar did not disclose on his B-2 non-immigrant visa application that he was convicted in Israel of the offense of arbitrary attack. *Id.* ¶¶ 6, 16. Then, in May of 2023, Mr. Amar was arrested and charged with retail theft of property in Ogden, Utah. *Id.* ¶ 6. The charges were based on a police report, including security video footage, showing Mr. Amar placing both scanned and unscanned items into his shopping bags at a Walmart self-checkout and attempting to leave the store with the unpaid items. *Id.* The arresting officer who reviewed the footage noted it was "obvious" Mr. Amar was intentionally scanning only certain items. *Id.* The unscanned items were valued at approximately $135.00. *Id.*

In August of 2025, Mr. Amar was arrested and charged in New York City with third degree bribery, driving while impaired by alcohol, possession of a controlled substance (500 milligrams of crack cocaine) that was found in his pocket, and refusal to take a breathalyzer test. *Id.* ¶ 8. He

5

backed into an area blocked off by police tape and was observed to have bloodshot eyes, slurred speech, an odor of alcohol on his breath, and stumbled while exiting his vehicle. *Id.* Following his arrest, Mr. Amar attempted to bribe the police officers by offering them money. *Id.* On or about September 16, 2025, he was convicted of driving while impaired and ordered to complete an impaired driving program, pay a fine, and his license was suspended. *Id.* Just one month later, Mr. Amar was pulled over and arrested by Rhode Island State Police for driving with a suspended license, which was suspended due to his driving while impaired conviction. *Id.* ¶ 9.

In June 2024, Mr. Amar's current U.S. citizen spouse, ███████, filed an I-130 Petition for Alien Relative on his behalf, which was approved. *Id.* ¶ 7.

On or about March 19, 2026, as required by the Settlement Agreement, DFOD Charpentier reviewed the facts of Mr. Amar's case to determine whether to effectuate his removal from the United States. *Id.* ¶ 10. He determined in good faith and based on the facts in his case, that Mr. Amar poses a threat to public safety and decided to remove him from the United States. *Id.* In coming to this decision, DFOD Charpentier was particularly concerned about Mr. Amar's criminal conduct, including his driving while intoxicated that resulted in him backing into an area blocked off by police tape. *Id.* DFOD Charpentier also considered that Mr. Amar has only been present in the United States for a short period of time but has had multiple run-ins with law enforcement beginning just three months after his entry into the United States and continuing until his arrest and detention by ICE. *Id.*

During his deliberation DFOD Charpentier also reviewed the documents submitted by Mr. Amar's counsel received on March 19, 2026. *Id.* The documents included a lease agreement and a copy of the approval notice for Mr. Amar's I-130 visa petition. *Id.* DFOD Charpentier also considered Mr. Amar's Form I-130 visa petition, and his eligibility to file a Form I-212. *Id.* ¶ 11.

However, this initial packet did not include any statements by Mr. Amar addressing his criminal history or any rehabilitation efforts. *Id.* ¶¶ 16-17. Accordingly, DFOD Charpentier determined, based on the facts before him at the time and in good faith, that he is a public safety risk and to remove him from the United States. *Id.* ¶ 11.

Mr. Amar was scheduled for removal to Israel when his counsel invoked the conflict resolution procedures under the Settlement Agreement and asked that his client be allowed more time to submit documents in support of his release. *Id.* ¶ 12. Upon learning that Mr. Amar wished to submit additional documents, DFOD Charpentier, in his discretion, decided to cancel the removal of Mr. Amar, despite potential complications in removing aliens to Israel at present, and allow Mr. Amar to submit additional information for ICE to consider. *Id.* On March 30, 2026, Mr. Amar's counsel submitted the additional documentation. *Id.* ¶ 13. Among the new documents submitted was a detailed cover letter by his immigration attorney, identity documents, tax return documents, criminal records, photos, and statements from family and friends, including Mr. Amar's brother, ███████████████. *Id.* The new submissions did not include a statement from Mr. Amar addressing his criminal history or any rehabilitation efforts. *Id.*

DFOD Charpentier carefully read and considered all the materials Mr. Amar submitted in support of his release including the statements of Ms. Atkins, Ms. Atkins' doctor, Mr. Amar's brother, and Mr. Amar's friends and colleagues. *Id.* ¶¶ 14-15. He considered his brother's account of the theft offense and found it unpersuasive and not supported by the record. *Id.* ¶ 14. Specifically, Mr. Amar's brother claimed that he had simply forgotten to pay for a case of water. *Id.* But, the police report DFOD Charpentier considered stated that the video footage showed Mr. Amar placing over $100 of non-scanned items into his shopping cart, rather than simply forgetting to pay for a case of water as Mr. Amar's brother claimed. *Id.* He found the police report which

relied on the security footage to be more reliable than the brother's statement. *Id.* DFOD Charpentier also considered the letters of support by business associates, other family members, and friends submitted on behalf of Mr. Amar. *Id.* ¶ 15. He found that while the letters generally spoke about Mr. Amar's character, they did not address Mr. Amar's criminal history. *Id.* He also considered the letter by ███████, which he found to be the most compelling. *Id.* DFOD Charpentier considered seriously the impact Mr. Amar's removal would have on ████████ ███████ and that it would limit his ability to have children with ████████. *Id.* DFOD Charpentier took several days to consider Mr. Amar's case including, in particular, the hardship ████████ would suffer. *Id.*

DFOD Charpentier also considered that the information submitted did not include any statements by Mr. Amar or other individuals, aside from his brother's account of the theft, addressing his recent arrests for arbitrary attack, theft, driving while intoxicated, the drugs found on his person after he crashed the vehicle, his attempt to bribe an officer, or driving on a suspended license. *Id.* ¶¶ 13-15. Mr. Amar's attorney argued Mr. Amar's recent arrest for driving on a suspended license—that was a result of his driving while intoxicated charge—was due to a misunderstanding where Mr. Amar did not realize his license being suspended in New York meant it is also suspended in Rhode Island. *Id.* ¶ 17. However, this statement did not come from Mr. Amar. *Id.* Moreover, given Mr. Amar's recent dishonest behavior of concealing his arrest in Israel and his attempt to bribe a police offer, this explanation did not weigh heavily in Mr. Amar's favor and would not have even if the statement had come from Mr. Amar directly. *Id.* ¶¶ 16-17. As such, DFOD Charpentier determined that the evidence submitted by Mr. Amar was not particularly persuasive. *Id.* ¶ 17.

DFOD Charpentier spent considerable time reviewing the facts and documents in Mr. Amar's case and is aware of the negative effects his removal will have on his family and his ability to file a Form I-212. *Id.* ¶ 3-18. However, after careful and lengthy consideration, he determined that the new information provided by Mr. Amar did not alter his previous determination, made in good faith, that Mr. Amar is a threat to public safety. *Id.* ¶ 13-18.

## STANDARD OF REVIEW

This Court's review under the Settlement Agreement is limited to whether "the facts of a non-citizen Class Member's case persuaded the deputy field office director to decide in good faith that this person posed a threat to public safety." Tr. August 6, 2025 Hr'g. at 30:15-19; ECF No. 654-1 at 4-5 ("Boston ERO will take Enforcement Actions against Named Plaintiffs or Noncitizen Class Members only after … determining, in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security."). The Settlement Agreement does not define "good faith," but the First Circuit has applied the Black's Law Dictionary definition consisting, as relevant here, of (1) honesty in belief or purpose, and (2) faithfulness to one's duty or obligation. *Kaufman v. C.I.R.,* 784 F.3d 56, 70 (1st Cir. 2015); *see also, In Re Keach,* 243 F.R. 851, 856 (B.A.P. 1st Cir. 2000) (citing Black's Law Dictionary). Additionally, this Court has defined good faith as "'a state of mind' involving 'honestly in belief or purpose' and 'faithfulness to one's duty or obligation.'" ECF No. 789 at 3.

## ARGUMENT

I. **ICE Decided to Take Enforcement Actions Against Mr. Amar in Good Faith Based on the Facts in Mr. Amar's Case.**

ICE Boston complied with the terms of the Settlement Agreement as applied to Mr. Amar at every turn. ICE made its determination that Mr. Amar is a public safety risk (1) in good faith,

9

(2) based on the facts in Mr. Amar's case, and (3) after considering his eligibility to apply for a Form I-601A and Form I-212 as required by the Settlement Agreement. *See generally* Decl. of DFOD Charpentier. There is no evidence that DFOD Charpentier applied any "automatic" rule to influence his decisions. Therefore, ICE has complied with the Settlement Agreement and this Court should deny Petitioners' motion.

### A. ICE Boston's Determination Complied with the Settlement Agreement.

To ascertain ICE's compliance with the Settlement Agreement, this Court should review ICE's most recent considerations of the facts in Mr. Amar's case on April 2, 2026, because it is the most recent decision and was based on the most comprehensive record of the facts in Mr. Amar's case. This Court should deny Petitioners' motion because this decision complied with the Settlement Agreement.

The Settlement Agreement requires ICE to make a determination that an alien Class Member is a public safety risk prior to removing them. ECF No. 654-1 at 3-4, 5-6. Here, ICE considered Mr. Amar's case carefully and diligently before determining that he is a public safety risk. Decl. of DFOD Charpentier ¶¶ 3-18. And then, when counsel for Mr. Amar sought to submit *additional* documents for consideration, ICE in its discretion and in good faith stayed his removal and allowed his counsel time to submit additional documents. *Id.* ¶ 12. ICE then reconsidered its decision after the additional documentation was submitted. *Id.* ¶¶ 12-17. All of these actions demonstrate that DFOD Charpentier took his duty to consider Mr. Amar's case seriously and discharged that duty faithfully in accord with the Settlement Agreement. *See generally* Ex. A. His declaration demonstrates that he took care in considering all the facts in Mr. Amar's case before coming to his conclusion that he is a public safety risk. *See generally* Ex. A. Ultimately, the documentation Mr. Amar submitted did not overcome the threat his criminal conduct poses to

public safety. *See generally* Ex. A. That Petitioners disagree with DFOD Charpentier's conclusion is not enough to require the issuance of relief under this Settlement Agreement wherein DFOD Charpentier carefully considered the facts and relied on evidence of actions with a clear nexus to public safety to determine that Mr. Amar is a public safety risk. ICE appropriately determined he was a public safety risk after reviewing all known factors in his case on March 19, 2026, and then properly redetermined in good faith on April 2, 2026, that the additional documents did not alter their previous determination.

### B. Petitioners' Allegations of Noncompliance are Baseless.

Petitioners' basis for their allegation that ICE did not determine in good faith that Mr. Amar is a public safety threat is that ICE made a "blanket determination" that "automatically render[ed]" Mr. Amar a public safety risk based on his criminal history, irrespective of anything Mr. Amar has done since that time. ECF No. 819 at 10. But ICE does not make "blanket determinations." Decl. of DFOD Charpentier ¶ 3. ICE does not have some pre-determined list of criminal history that would automatically render a Class Member a public safety risk. *Id.* Rather, DFOD Charpentier employed his practice of considering "all the facts in a class member's case that are presented to [him]" to determine that Mr. Amar is a public safety risk. *Id.*

Here, those facts included a recent conviction for driving under the influence that resulted in Mr. Amar backing into an area *blocked off by police tape.* The driving under the influence charge was aggravated by the illegal drugs found on his person and his attempt to bribe a police officer. Plaintiff alleges that ICE has not taken into account what Mr. Amar has done since then; but, on the contrary, DFOD Charpentier considered that since Mr. Amar's public safety conviction, Mr. Amar showed further contempt for the justice system by driving on his suspended license. Mr. Amar was arrested shortly thereafter by ICE. As a result, Mr. Amar cannot show that he has spent

any significant time in the United States where he has *not* committed a crime. This is significant. Also significant is Mr. Amar's criminal history before coming to the United States—criminal history he concealed on his visa application.

Mr. Amar's criminal history has a direct nexus to public safety. Nevertheless, DFOD Charpentier agonized over this decision due to the serious consequences his removal would have on his U.S. Citizen wife and his relationship with her. DFOD Charpentier did not take the positive factors in Mr. Amar's case, including his ability to apply for a Form I-212 lightly. ICE reasonably found that despite these facts, Mr. Amar posed a risk to public safety. *Id.* ¶ 18.

As illustrated by DFOD Charpentier's declaration, ICE carefully considered the materials submitted in support Mr. Amar's release, including the information he submitted concerning his criminal history and support of his family, and determined that he was nonetheless a public safety risk. Decl. of DFOD Charpentier ¶¶ 3-18. DFOD Charpentier gave a reasoned explanation for why he found Mr. Amar's criminal conduct concerning and why Mr. Amar's supporting evidence did not, in his honest estimation, remedy those concerns. *Id.* ¶¶ 6-11, 13-17. That reasoned explanation defeats Petitioners' motion. This Court has previously found that ICE's determination that a Class Member's criminal history is dispositive "does not mean that he failed to consider all of the facts in [the Class Member's] case.". ECF No. 789 at 3.

That Petitioners or reasonable minds may disagree with the way ICE considered the facts in Mr. Amar's case is immaterial to whether ICE complied with the Settlement Agreement by determining in good faith that Mr. Amar is a public safety risk. ICE did not ignore, outright dismiss, or otherwise refuse to consider the positive factors in Mr. Amar's case. ICE duly considered them, considered them against his criminal conduct, and determined he is a public

safety risk. That determination was honest and made in good faith. Therefore, DFOD Charpentier was faithful to his duty under the Settlement Agreement. *See Kauffman,* 784 F.3d at 70.

Petitioners' disagreement cannot be transformed into a finding of bad faith considering DFOD Charpentier's detailed, reasoned consideration outlined in his declaration. This Court has already recognized that "while [a Class Member] may disagree with Acting DFOD Charpentier's weighing of the relevant facts," the Class Member has not shown that ICE "failed to undertake a legitimate review of the case or honestly determine that he poses a threat to public safety. ECF No. 789 at 4. Accordingly, this Court should deny Petitioners' motion without delay. To the extent Petitioners attempt in their reply[3] to argue that DFOD Charpentier's April 2, 2026, decision was not in good faith because it is not "consisten[t] with the justified expectations of the other party," that argument also fails. *See Restatement (Second) of Contracts* § 205 (1981). There is nothing in the Settlement Agreement that gives Petitioners a justified expectation that ICE would discount the particular criminal history at issue here that is so recent and only came to an end after Mr. Amar was detained by ICE. Additionally, Mr. Amar's criminal history, specifically for arbitrary attack and driving while intoxicated and having drugs on his person have a clear, undisputed nexus to public safety. That ICE did not believe the positive factors in Mr. Amar's case to remediate his concerning criminal history and dishonest actions is not unreasonable nor outside the reasonable expectation of the parties. Based on ICE's conduct both before and after the implementation of this Settlement Agreement, Petitioners have no reasonable basis to claim they could not expect ICE to find Mr. Amar—who drove while intoxicated and backed his vehicle into an area blocked off by police tape, amongst his other criminal history—a public safety risk.

---

[3] Petitioners did not define "good faith" in their motion. *See* ECF No. 819.

13

Petitioners may not like ICE's determination, but they cannot claim, nor have they demonstrated, that there was no basis to expect it.

Ultimately, this dispute stems from Petitioners' apparent belief that they—not ICE—get to determine whether a Class Member is a public safety risk. But that is not the agreement the parties reached, and that is not what the Settlement Agreement provides. Petitioners' mere disagreement with ICE's good-faith determination that Mr. Amar is a public safety risk is not evidence of bad faith and does not constitute a violation of the Settlement Agreement. Neither Petitioners nor this Court are permitted under the Settlement Agreement to second guess ICE's determinations. Rather, the Settlement Agreement limits this Court's review to whether ICE made its decision in good faith. Here, ICE plainly has. Accordingly, this Court should deny Petitioners' motion in its entirety.

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioners' motion and allow Mr. Amar's removal without delay.

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

MATTHEW SEAMON
Acting Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)

/s/ *Susan Ansari*
SUSAN ANSARI
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-5537
Susan.ansari2@usdoj.gov

Mary.l.larakers@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I, Susan Ansari, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Susan Ansari*
Susan Ansari
Trial Attorney

Dated: April 29, 2026