# EXHIBIT 2

**Sworn Declaration of Joanna Delfunt**

I, Joanna Delfunt, declare under penalty of perjury as follows:

1. I am an attorney licensed to practice law in Georgia. I have been practicing law since 2012. I have my own firm, Delfunt Law Firm, where I handle a full range of immigration cases, including removal defense, family-based immigration, and naturalization. I have been practicing immigration law for the past thirteen years.

2. The following is based on conversations with my former client, M. (hereinafter "my former client"), who was incorrectly issued an expedited removal order. It is also based on conversations with my former client's family, my review of his records, and my interactions with Department of Homeland Security personnel.

3. My former client was born in the Philippines, and lawfully entered the United States on May 24, 2014 on a B2 visitor visa. He has not left the United States since that time. As a result, my former client cannot lawfully be subjected to expedited removal.

4. Dozens of my former client's family members reside in the United States: my former client's mother is a lawful permanent resident ("LPR"), his two sisters are U.S. citizens, and his two brothers-in-law are U.S. citizens. He also has two U.S. citizen nieces, two U.S. citizen nephews, and an LPR nephew. Further, my former client has a host of cousins, aunts, and uncles all with status in the United States.

5. After his father passed away in 2013, my former client came to the United States with his mother to be with family. Since arriving in the United States, my former client has lived with his mother and been her primary caregiver. He has also helped care for his U.S. citizen sister's children.

6. My former client met his wife and her young daughter in July 2017. Both his wife and step-daughter are U.S. citizens.

7. On November 28, 2017, more than three years after entering the United States, my former client went to the Mexican border in Tecate, California to pick up his wife (his fiancée at the time) and her daughter. They were returning from a trip to Mexico to visit family. My former client did not want his then fiancée and her daughter to take public transportation from Tecate to their town of Bakersfield, California—what would be a nearly five hour drive.

8. While waiting at the border office, Customs and Border Patrol ("CBP") mistook my former client for a recent entrant and told my former client to "get in line" with people seeking admission. My former client explained that he had been in the United States for three years on a visa. He also presented his valid California driver's license, and even offered to show the officer his car on the U.S. side of the border. A different CBP officer also explained to the arresting officer that my former client had entered the CBP office

from the U.S. side of the border moments earlier. Nevertheless, the arresting officer repeatedly said that my former client was "his catch" and refused to release him. My former client was detained, given no opportunity to seek guidance from counsel or family, and issued an expedited removal order.

9. At the time the expedited removal order was issued, my former client had been in the United States for three years, and he was not seeking admission. He therefore could not lawfully be subject to expedited removal.

10. Even though my former client fell outside the reach of expedited removal laws and regulations, he was ordered removed from the United States.

11. My former client was then detained for roughly six months—from November 2017 to May 2018—causing hardship to his mother, wife and stepdaughter.

12. After learning of the case in February 2018, I filed a March 14, 2018 Application for a Stay of Deportation or Removal, requesting both a stay of the removal and that my former client be released from U.S. Immigration and Customs Enforcement ("ICE") custody. I informed ICE that my former client was erroneously issued an expedited removal order. I also explained the host of other humanitarian reasons that supported his release from custody, including that my former client was eligible for adjustment of status based on his marriage to his U.S. citizen wife, that my former client has dozens of family members in the United States with status, that my former client plays a critical role in caring for his mother and his sister's family, and that my former client is a respected and valuable member of the United States.

13. ICE denied the Application for a Stay on May 11, 2018. That same day, I filed a motion to reopen with CBP requesting that the expedited removal order be reopened and that my former client be issued a Notice to Appear so that he may present his eligibility for adjustment of status, based on his marriage to his U.S. citizen wife, to an immigration judge. Three days later—on May 14, 2018—I received notice from the Atlanta ICE office that my former client's expedited removal order had been lifted and a notice to appear was being issued. On May 14, 2018, I also requested an ICE bond so that my former client could be released from ICE custody. That request was granted shortly after, and my former client was released on $10,000 bond. I received a letter from CBP dated May 17, 2018, stating that the motion to reopen was dismissed as moot, as the expedited removal order had already been lifted.

14. After being released, my former client returned home to California to be with his wife and step-daughter. My former client has since retained California counsel and to my knowledge was pursuing an adjustment of status.

15. I believe that without my assistance and advocacy, my former client would have been wrongfully removed from the country under an erroneous expedited removal order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 7th day of June, 2025.

__________________________

Joanna Delfunt
Delfunt Law Firm
115 Samaritan Drive, Suite 200
Cumming, GA 30040