**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

LILIAN PAHOLA CALDERON JIMENEZ, and LUIS GORDILLO, *et al.*,

Individually and on behalf of all others similarly situated,

Plaintiffs-Petitioners,

v.

MARKWAYNE MULLIN, *et al.*,

Defendants-Respondents.

C.A. No. 18-10225-PBS

**DEFENDANTS' OPPOSITION TO PLAINTIFF DARWIN CRUZ'S MOTION TO ENFORCE SETTLEMENT AGREEMENT[1]**

**INTRODUCTION**

The Court should deny Plaintiff's motion to enforce, ECF No. 866, because Plaintiff is not a Class Member and the Settlement Agreement,[2] ECF No. 654-1, therefore does not apply to him. Both the text and legal justification of the class definition confirm that Plaintiff is not a class member. Plaintiff is excluded from class membership because he had a "final order of removal" and "departed the United States under that order." *See* ECF No. 253, at 2. Plaintiff's argument that he has a new final order, via a reinstatement order under Section 1231(a)(5), ignores the legal basis on which the class was certified. The class captures aliens who are eligible to pursue the so-called

[1] Defendants recognize that opposition is being filed after 6:00 pm and apologize to the Court for the late filing. Due to the situation occurring with Mr. Monseratte yesterday and last night, ICE and DOJ were unable to complete timely review of this filing before the 6:00 pm deadline.
[2] Capitalized terms used in this opposition memorandum appear as capitalized to maintain consistency with the terms as they appear and are defined in the Settlement Agreement.

provisional waiver process. Plaintiff is not eligible for that process. Notably, class counsel has not signed this motion to enforce; it is undersigned counsel's understanding that the class counsel and Defendants have historically agreed that aliens, like Plaintiff, who have reinstated orders of removal are *not* class members due to their ineligibility to pursue the provisional waiver process. Indeed, the inclusion of such ineligible aliens in the class definition would have precluded class certification under Federal Rule of Civil Procedure 23(b)(2).

Even if Plaintiff was a class member, the Settlement Agreement does not mandate Immigration and Customs Enforcement's Office of Principal Legal Advisor ("ICE OPLA")[3] to join a motion to reopen Plaintiff's reinstated removal order for two additional reasons. First, Plaintiff cannot show that he is prima facie eligible to consular process utilizing the Form I-601A nor to adjust status as required by the Settlement Agreement. Second, as Defendants argued in ECF Nos. 851 and 869, the JMTR provision of the Settlement Agreement only applies to removal orders issued in Section 1229(a) removal proceedings. Reinstated orders, conversely, are issued by Enforcement and Removal Operations ("ERO") and Customs and Border Protection ("CBP") outside of removal proceedings before the Executive Office of Immigration Review ("EOIR"). Individuals with such orders are ineligible for consular processing utilizing the Form I-601A. ICE OPLA plays no role in the issuance of reinstated removal orders such that they cannot later "join" a motion to reopen.

## PROCEDURAL BACKGROUND

### I. The Settlement Agreement

[3] Attorneys for ICE OPLA, among other duties, represent the Department of Homeland Security in *immigration court*.

This case arose from a habeas lawsuit in February 2018, filed by individual plaintiff, Ms. Lilian Calderon Jimenez ("Ms. Calderon"). *See generally* ECF No. 1. Ms. Calderon was at an interview with her U.S. citizen husband at U.S. Citizenship and Immigration Services' ("USCIS") office in Johnston, Rhode Island, to demonstrate her eligibility for a Form I-130, Petition for Alien Relative, when she was detained by agents from ICE's Enforcement and Removal Operations assigned to the Boston area of responsibility ("Boston ERO"). *Id.* Ms. Calderon had a final removal order from 2002 for failure to voluntarily depart. *Id.* Following her release from detention, Ms. Calderon filed an Amended Complaint in 2018, on behalf of a putative class, alleging the Government's actions of detaining and removing noncitizen Class Members without allowing them an opportunity to first apply for the Form I-601A, Application for a Provisional Unlawful Presence Waiver violated the law. *See generally* ECF No. 27. Plaintiffs asked the Court to prohibit their detention and removal while they pursued a provisional unlawful presence waiver that, ultimately, may reduce the amount of time separated from their family while they complete the process required to obtain an immigrant visa. ECF No. 27 at 25-28; *see infra* at Sec. I.B. The entire purpose of the lawsuit was to allow aliens, who were married to U.S. citizens, and eligible to apply for each step of the provisional waiver process: the Form I-130, the Form I-212, and the Form I-601A, to do so from within the United States. *See* ECF No. 1.

On May 16, 2019, the Court denied the Government's motion to dismiss the amended class action complaint and certified a class of Plaintiffs, defined as the following for Counts 1, 3, and 4:

> [A]ny United States citizen and his or her noncitizen spouse who (1) **has a final order of removal and has not departed the United States under that order**; (2) is the beneficiary of a pending or approved 1-130, Petition for Alien Relative, filed by the United States citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of Boston Immigration and Customs

> Enforcement-Enforcement and Removal Operations ("ICE-ERO") field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

ECF No. 253, at 2 (emphasis added). The class definition is plainly written to exclude aliens who cannot take advantage of the purpose of the provisional waiver regulations.

On Plaintiffs' Due Process claim, the Court certified a narrower class:

> [A]ny United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of an **approved** 1-130, Petition for Alien Relative, and **conditionally approved** I-212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of Boston Immigration and Customs Enforcement-Enforcement and Removal Operations ("ICE-ERO") field office (comprising Massachusetts, Rhode Island, Connecticut, Vermont, New Hampshire, and Maine).

ECF No. 253, at 2-3 (emphasis added).

Following years of active litigation, on January 27, 2023, the Court stayed the case as the parties engaged in multiple rounds of extensive settlement negotiations. ECF No. 577. On January 16, 2025, nearly seven years after Plaintiffs filed their first amended complaint, this Court approved a class wide Settlement Agreement under Federal Rule of Civil Procedure 23(e)(2). ECF No. 677. The Court retained jurisdiction to enforce the Settlement Agreement (ECF No. 654-1) according to its terms. *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381-82 (1994)). The Settlement Agreement adopted the class certified on claims 1, 2 and 4.

The Settlement Agreement has two primary provisions. First, it generally places conditions on Boston ERO's ability to take Enforcement Actions, as defined in the Settlement Agreement, against alien Class Members ("Enforcement Action Provision"). ECF No. 654-1 at 4-5. Second, and as relevant here, the Agreement creates a process through which certain Class Members may have their removal proceedings reopened and terminated ("JMTR

Provision"). *Id.* at 3-4. Class Members must submit a request to ICE OPLA that complies with certain requirements to obtain ICE OPLA's consent to the motion. *Id.* Among those requirements is that the Class Member show they are prima facie eligible for either (a) consular processing utilizing the Form I-601A, or (b) adjustment of status." *Id.* at 3-4.

The Settlement Agreement allows for enforcement in this Court of Sections II and III of the Agreement regarding only Boston ERO's removal decisions "only on behalf of an individual Named Plaintiff or Class Member." *Id.* This Court may enter orders regarding these Sections "only as applied to an individual Named Plaintiff or Noncitizen Class Member" and may not enter any order requiring compliance "as applied to categories of Noncitizen Class Members." *Id.*

## II. The Provisional Waiver Process

The Immigration and Nationality Act ("INA") sets limits on when and how a noncitizen may immigrate to the United States. Generally, a noncitizen who is married to a U.S. citizen may immigrate to the United States and obtain lawful permanent resident status only if the government determines they are "admissible" under the INA. *See* 8 U.S.C. § 1182. If a noncitizen is "inadmissible" under the INA, the government may not issue the noncitizen an immigrant visa or adjust the noncitizen's status to that of a lawful permanent resident until the noncitizen obtains a "waiver" of each ground of inadmissibility. *See id.* Not all grounds of inadmissibility are waivable, and waivers under the INA are committed by law to the discretion of the Department of Homeland Security ("DHS"). *See* 8 U.S.C. §§ 1182(a)(9)(A)(iii), (a)(9)(B)(v).

The Class Members in *Calderon* will be, if they depart the United States, inadmissible under at least two distinct grounds: (1) 8 U.S.C. § 1182(a)(9)(A), for being subject to final orders of removal; and (2) 8 U.S.C. § 1182(a)(9)(B), for having been unlawfully present in the United

States for at least a year. DHS, in its sole discretion, may waive these grounds of inadmissibility if the noncitizen meets the statutory criteria. 8 U.S.C. §§ 1182(a)(9)(A)(iii), (a)(9)(B)(v). Importantly, Class Members, unlike Plaintiff, are *not* inadmissible under 8 U.S.C. § 1182(a)(9)(C) for being unlawfully present in the United States after previously being removed.

In 2016, DHS amended § 212.7. Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244 (July 29, 2016). The amendment extended eligibility for provisional unlawful-presence waivers to noncitizens with final removal orders, "provided that they have already applied for, and [USCIS] has approved, an Application for Permission to Reapply for Admission into the United States After Deportation or Removal, Form I-212." *Id.* at 50245. This Form I-212 is a pre-requisite to filing a Form I-601A.

These two discretionary waivers, for which a noncitizen may apply using Forms I-212 and I-601A, obtained in a sequential process, provide a potential path to lawful permanent resident status for the discrete subset of Class Members who are not subject to other grounds of inadmissibility. First, a Class Member establishes their relationship with their spouse via a Form I-130 petition. Next, Class Members apply for a Form I-212, which works as a waiver for their removal order. Only once a class member has an approved Form I-212, can they apply for a Form I-601. 8 U.S.C. § 1182(a)(9)(C)(ii) (requiring an alien depart the United States for more than ten years and the Secretary of the United States consent to their application to reapply for admission). If both the Form I-212 and Form I-601 are approved, the noncitizen may then commence the required consular process abroad with the Department of State ("DOS"). In consular processing, DOS schedules the noncitizen for an interview at a U.S. Embassy or Consulate, and then the noncitizen departs the United States to attend the interview. *See* 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61-62. If DOS determines that the noncitizen is *admissible* to the United States with their

approved waiver applications, DOS may grant the noncitizen's immigrant visa application. With this immigrant visa, the noncitizen may seek admission into the United States as a lawful permanent resident. *See* 8 U.S.C. § 1225 (Inspection by Immigration Officers). If admitted by U.S. Customs and Border Protection, the noncitizen becomes a lawful permanent resident. *See* 8 U.S.C. § 1201. In this situation, the noncitizen may spend a relatively short time apart from his or her U.S. citizen spouse before returning as a lawful permanent resident.

Aliens who were previously removed and return the United States cannot avail themselves of this provisional waiver process. Aliens, like Plaintiff, who were previously removed from the United States multiple times are inadmissible under Section 1182(a)(9)(A). Aliens who are inadmissible under this ground *cannot apply* for a Form I-212 until they spend twenty years outside the United States. 8 U.S.C. § 1182(a)(9)(A)(ii). Because these aliens cannot obtain a Form I-212 from within the United States, they are *ineligible* to apply for the Form I-601A. 8 C.F.R. 212.7(e)(3) (Upon departure, the alien would be inadmissible only under section 212(a)(9)(B)(i) of the INA at the time of the immigrant visa interview); ECF No. 50-9. In short, these aliens are not eligible for the provisional waiver process on which this entire lawsuit was built.

## FACTUAL BACKGROUND

### I. Mr. Darwin Cruz

Mr. Cruz is a native and citizen of Honduras residing in Massachusetts. ECF No. 866 at 4-5. He entered the United States in 1997 and was ordered removed by an immigration judge in the Boston Immigration Court in 2013. *Id.* at 4. On or around April of 2014, Mr. Cruz was removed to Honduras. *Id.* at 5. Shortly after, he unlawfully reentered the United States, was apprehended, and his removal order was reinstated. ECF No. 866-3. He was then removed on or around August of 2014. ECF No. 866 at 5. On or around 2014 or 2015, Mr. Cruz again reentered the United States

unlawfully. *Id.* on June 28, 2026, ICE apprehended the Plaintiff and again reinstated his removal order a second time. *Id.*

On August 8, 2026, while detained pending execution of his reinstated removal order, Plaintiff married his U.S. citizen spouse who subsequently filed a Form I-130, Petition for Citizen Relative on his behalf. *Id.* at 6. On or around August 13, 2026, ICE provided Plaintiff with notice that it would be conducting a 90-day post order custody review and instructed him to file any supporting documentation. *Id.* Plaintiff filed Form I-246, Application for Stay of Deportation or Removal alleging *Calderon* class membership. *Id.* On August 31, 2026, ICE denied the Form I-246 application. *Id.* On September 2, 2026, Plaintiff, through his counsel, requested ICE OPLA join his motion to reopen and ICE OPLA declined to join the motion because Plaintiff did not meet the definition of a Class Member because he has departed under a final order of removal. *Id.* at 6-7. Plaintiff requested reconsideration and OPLA again declined because Plaintiff is not a Class Member. *Id.* at 7. On September 22, 2026, Plaintiff's immigration counsel brought this to the attention of DOJ counsel and asked for confirmation of Plaintiff's class membership and for his JMTR request to be granted by ICE OPLA. *Id.* On September 29, 2026, ICE OPLA, through DOJ Counsel, informed his immigration counsel that Mr. Cruz is not a Class Member. *Id.*

**APPLICABLE STANDARDS**

A class-action settlement is a private contract negotiated between the parties. *See* Tr. January 16, 2025 Hr'g. at 02:11 ("you [a]re entering into a contract. … It [i]s enforceable. And it can[no]t change if I dismiss the case"); *see also Kansas v. Nebraska*, 135 S. Ct. 1042, 1065 (2015), *citing*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). This Settlement Agreement is a full, fair, and complete settlement. ECF No. 654-1 at 2, 8 ("The terms and conditions set forth in this Agreement constitute the complete and exclusive

statement of this Agreement … superseding all previous negotiations and understanding"). Courts "interpret a contract according to the plain meaning of its language and will avoid any interpretation that renders a provision meaningless." *Zhao v. CIEE Inc.*, 3 F.4th 1, 3 (1st Cir. 2021). If a term is subject to only one reasonable meaning, then the Court must apply that unambiguous meaning. If, however, "where a term is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one, the term is ambiguous." *Easthampton Congregational Church v. Church Mut. Ins. Co*, 916 F.3d 86, 92 (1st Cir. 2019) (internal quotations omitted). "Ambiguity is not created merely because the litigants disagree about the meaning of a contract." *Nicolaci v. Anapol*, 387 F.3d 21, 26 (1st Cir. 2004). Courts determine whether a term is ambiguous by looking at "the contract a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *Arch Ins. Co. v. The Graphic Builders LLC*, 36 F.4th 12, 17 (1st Cir. 2022). Terms should not be interpreted in isolation. *Id.*

## ARGUMENT

### I. Plaintiff is not a Class Member.

Plaintiff contends that the Settlement Agreement requires ICE OPLA to join the "Class Member's" request to join and reopen his reinstated removal order issued under 8 U.S.C. §1231(a)(5). ECF No. 866 at 9-17. Plaintiff's motion first fails because the Settlement Agreement makes a distinction between individuals who have departed under a final order of removal, like Plaintiff, and individuals who have a final removal order but have not departed. *Supra* at 2 (class definition).

Plaintiffs' argument that he is a Class Member because he has a new (reinstated) final order of removal that he has not departed under ignores both the plain language and purpose of the class

definition. First, the plain language of the class definition provides that the alien must not have departed under a final order of removal. Plaintiff has departed under final orders of removal *twice.* ECF Nos. 866-3, 866-9.

Plaintiff's argument also ignores the purpose of the class definition, adopted in the Settlement Agreement, and the legal basis for class certification. The purpose of this lawsuit and Settlement Agreement was to allow for Class Members to benefit from the provisions of 8 C.F.R. § 212.7 (the provisional waiver regulations). The class definition was written so as to include aliens who *can apply* for a provisional waiver and, in the Class's ideal scenario, remain in the United States while they work toward approval of their Form I-601A. To ensure certification under the rigorous standard of Federal Rule of Civil Procedure 23, the class could only include aliens who are eligible to take advantage of this process. If the class included aliens ineligible for this process, it would have defeated the class's commonality because ineligible aliens lack any legal basis for claiming any right to apply for a provisional waiver. *See* Fed. R. Civ. P. 23(b)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied) (internal citation omitted).

For Class Members, if USCIS approves the Form I-212, the Class Member may then file his or her Form I-601A. *Id.* If both the Form I-212 and Form I-601A are approved, the Class Member may then commence the required consular process abroad with the Department of State ("DOS"). But aliens like Plaintiff cannot reach that penultimate step in the process because aliens like Plaintiff *cannot* apply for nor receive a Form I-212 until they spend 10 outside the United States. In other words, the Form I-212 step is where the distinction is between individuals who are

Class Members and individuals who are not. Individuals like Plaintiff are ineligible for a provisional waiver, the waiver underlying this entire lawsuit, and are therefore not Class Members.

It is undersigned counsel's understanding that Defendants and Class counsel have always agreed that aliens, like Plaintiff, are not Class Members. An example from the outset of this case confirms that Judge Wolf understood, before certifying the class, that aliens like Plaintiff were not Class Members. At the beginning of this case, the parties litigated ICE's compliance with 8 C.F.R. 241.4, the Post Order Custody Review Regulations (POCR). The habeas petitions of aliens alleging non-compliance with the POCR regulations were related to Judge Wolf and this class action temporarily for Judge Wolf to decide whether ICE had violated the POCR regulations. *See* ECF No. 95. One such related habeas petition was filed by Mr. Junqueira. *Id.* Mr. Junqueira had a reinstated removal order. *Id.* at n. 5. In Judge Wolf's order deciding ICE's compliance with the POCR regulations for both putative (at the time) *Calderon* class members and Mr. Junqueira, Judge Wolf understood that some of the aliens whose habeas claims were before him were *not* part of the Calderon putative class action. *Id.* at n. 7 (noting that another alien, Ms. De Souza, was part of the putative class action), 35 ("Because of his illegal reentry, [Mr. Junquera's] is not eligible for a waiver of inadmissibility from CIS and cannot therefore may not remain in the United States while he pursues his application for Permanent Resident status."), 36 (noting the government's argument that Junqueira is not eligible for the waivers at issue in *Calderon*). Even the counsel for Mr. Junqueira recognized that his client's path was different than that of the putative class members. *See* Tr. May 1, 2018 Hr'g. at 38 (plaintiff's counsel in that case explained "he's subject to the so-called lifetime bar. The lifetime bar essentially is for people who have re-entered the country with an order of removal after 1997 or people who have lived here with one year of unlawful presence after 1997 and then left and re-entered. You have to essentially leave the country

and then apply for the 212 waiver but after waiting ten years."). Accordingly, it is undersigned counsel's understanding that when Judge Wolf certified the class a short time later, it was generally understood that aliens with reinstated removal orders were *not* part of the *Calderon* class having encountered the issue previously and because of the language in the definition providing that an alien cannot have "departed" under a final order of removal.

If that weren't enough, the First Circuit has foreclosed the ability of reinstated aliens from pursuing adjustment of status. *Lattab v. Ashcroft*, 384 F.3d 8 (1st Cir. 2004). "[INA] section 241(a)(5) [8 U.S.C. § 1231(a)(5)] subjects an illegal re-entrant to three independent consequences: reinstatement of the prior deportation order, *ineligibility for any relief*, and removal." *Id.* at 16 (emphasis added). An alien, who is otherwise eligible for adjustment, is "squarely foreclosed by the text of the statute" from obtaining such relief. *Id.* Therefore, even if Plaintiff was facially eligible for some form of relief, his reinstated order of removal precludes him from obtaining a provisional waiver or obtaining immigration status before spending the required period of time outside the United States.

To the extent Plaintiff attempts to argue that he is eligible to apply for an unlawful presence waiver (Form I-601A) that will allow him to briefly travel to his home country to attend an interview overseas and complete the process of becoming a lawful permanent resident, he is wrong. Plaintiff is statutorily ineligible to complete such process and instead must remain outside the United States for twenty years before lawfully immigrating to the United States. *See* 8 U.S.C. § 1182(a)(9)(A).

As discussed *supra,* an alien is inadmissible under Section 1182(a)(9)(C)(i)(II) if the alien was previously removed and enters or attempts to re-enter the United States without being admitted. An alien who has been removed and had his removal order reinstated *twice* may only

avoid this ground of inadmissibility by (1) remaining outside the United States for more than twenty years after the alien's last departure from the United States; *and* (2) prior to returning to the United States, gets permission to be admitted, via a Form I-212, Application for Permission to Reapply to the United States After Deportation or Removal. 8 U.S.C. § 1182(a)(9)(A)(ii); 8 C.F.R. § 212.2. After both of these steps are completed, an alien, like Plaintiff may then file a request for an unlawful presence waiver on a Form I-601—not Form I-601A which is at issue in *Calderon*—from *outside* the United States. 8 U.S.C. § 1182(a)(9)(B); 8 C.F.R. § 212.7 (describing procedures for Form I-601). In short, an alien who is inadmissible under 8 U.S.C. § 1182(a)(9)(C) may not apply for a Form I-601A unlawful presence waiver from within the United States due to their inability to receive a Form I-212. *See id.*

Plaintiff, through counsel, has acknowledged that after his initial unlawful entry into the United States in 1997, he remained in the United States for a period of more than one year before he was ordered removed in 2013 by an immigration Judge in the Boston Immigration Court in 1229a removal proceeding and the final removal order was executed. ECF Nos. 866 at 4-5, 866-9. Plaintiff reentered the United States unlawfully in 2014, he was apprehended, the removal order was reinstated, and he was removed again. ECF Nos. 866 at 5, 866-3. Plaintiff again reentered the United States unlawfully in 2014 or 2015. ECF Nos. 866 at 5, 866-4. Accordingly, Plaintiff is inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I)-(II) and ineligible to apply for a provisional unlawful presence waiver (Form I-601A).

## II. The Settlement Agreement Does Not Require Reopening of a Reinstated Removal Order.

Even if the Court finds Mr. Cruz is a Class Member (he is not), the Court should deny his motion to enforce because the Settlement Agreement does not require ICE OPLA to join a motion to reopen a reinstated order of removal for two reasons. First, ICE OPLA is only required to

generally reopen the removal orders of aliens who comply with the requirements in Section II(B) and demonstrate they are prima facie eligible for either (a) consular processing utilizing the Form I-601A, or (b) adjustment of status." ECF No. 654-1 at 3-4. Plaintiff is not eligible to adjust status nor to consular process via the Form I-601A for the reasons discussed *supra* and therefore ICE OPLA is not required to join his JMTR. *See Lattab*, 384 F.3d at 12-13.

Second, as the government has previously argued in ECF Nos. 851 and 869, OPLA attorneys are not required to join motions to reopen related to reinstated removal orders because reinstated removal orders are entered by ICE or Customs and Border Protection (CBP). As the government has explained in ECF Nos. 851 and 869, ICE OPLA is only required, under the Settlement Agreement, to grant JMTR requests of removal orders entered in regular removal proceedings Section 1229a.

This Court need not resolve this legal issue, which overlaps with Plaintiffs' motion to enforce at ECF No. 841, to resolve the instant motion. Rather, this Court only need to determine that Plaintiff is not a Class Member or otherwise ineligible for either of the processes for which the JMTR provision was designed to resolve this motion to enforce.

However, alternatively, by its terms, the Settlement Agreement's JMTR provisions are incompatible with reopening of reinstated removal orders. The provision repeatedly refers to ICE OPLA and "joint motion[s]" that will be submitted to an immigration court. But ICE OPLA has no role to play in the reinstatement of removal order context because they are not the immigration officers that issue reinstated removal orders. Further, there is no immigration court to which a "joint motion" can be submitted in the reinstated removal order context. In Section 1229a removal proceedings, ICE OPLA may join motions to reopen because such motions are presented to the immigration court wherein ICE OPLA represents the government. Conversely, in the reinstated

removal context, reinstated removal orders are issued by an immigration officer—not an immigration judge. See ECF Nos. 866-3, 866-4. The Settlement Agreement goes on to refer to the ICE OPLA office having "jurisdiction" over the removal order. But again, there is no ICE OPLA office with "jurisdiction" over a reinstated removal order because ICE OPLA plays no role in the issuance of a reinstated removal order.

And regardless, *again*, the language in the Settlement Agreement specifically referring to roles and procedures governing the reopening of Section 1229a proceedings forecloses any interpretation of the Settlement Agreement that requires reopening reinstated removal orders. The Settlement Agreement requires ICE OPLA to join motions to reopen Section 1229a proceedings because they are the entity with the power to do so under 8 C.F.R. § 1003.23(b)(4)(iv). The Settlement Agreement refers to "joint motions to reopen and dismiss" because that is the procedural mechanism for reopening Section 1229a proceedings. 8 C.F.R. §§ 1003.23(b)(3), (4)(iv). None of the language in the JMTR provision makes any sense in the context of a reinstated removal order where the Plaintiff remains ineligible for admission under section 1182(a)(9)(C)(i)(I)-(II). *Compare* ECF No. 654 1 at 3-4 *with* 8 U.S.C. § 1182(a)(9)(C)(ii), 8 C.F.R. § 212.2, 8 C.F.R. § 212.7(e)(3)(iii). Additionally, reopening his second reinstatement order would not make Plaintiff eligible because he would still be subject to a prior reinstatement order from 2014 and a final removal order from 2013. ECF Nos. 866-3, 866-9. There was no reason to explicitly exclude reinstated removal orders in the Settlement Agreement because the language of the Agreement itself makes it clear that it cannot possibly be referring to individuals with reinstated removal orders who are ineligible for a provisional waiver, the very purpose of the underlying habeas claim that resulted in this class action Settlement Agreement. Therefore, Plaintiffs' motion to enforce should be denied.

Finally, Defendants clearly never intended the Settlement Agreement to invade on the attorney-client relationship between ICE OPLA and ICE ERO. Plaintiff's second reinstated removal order at issue before this Court was signed by a Deportation Officer and ordered and certified by an Assistant Field Office Director, both of which are ICE ERO officers. ECF No. 866-4. Plaintiff argues that OPLA is required under the Settlement Agreement to *join* in a motion to reopen a reinstated removal order before ICE ERO—OPLA's client. But that plainly invades ICE and OPLA's attorney-client relationship by preventing OPLA attorneys from "exercise[ing] independent professional judgment." ABA Model R. 2.1. In other words, Plaintiff seeks to force ICE OPLA—the entity that represents and advises ICE ERO—to make a recommendation to ICE based on the Settlement's parameters. That is not and cannot be what ICE intended. Nor should this Court interpret the Settlement Agreement in a way that would invade on the attorney-client relationship between ICE OPLA and ICE ERO.

As demonstrated above, Defendants are not circumventing any obligation under the Settlement Agreement. Judge Wolf clearly and unambiguously stated that the terms of the Settlement Agreement, once approved, cannot be changed. *See* Tr. January 16, 2025 Hr'g. at 02:11. Therefore, this Court should deny Plaintiff's motion because it seeks to impose new requirements on ICE OPLA not contemplated under the Settlement Agreement and that are contrary to law.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion to enforce.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MATTHEW P. SEAMON
Assistant Director

/s/ *Susan Ansari*
SUSAN ANSARI
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station

MARY L. LARAKERS
Senior Litigation Counsel

Washington, DC 20044
(202) 532-5537
Susan.ansari2@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Susan Ansari, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Susan Ansari*
Susan Ansari
Trial Attorney

Dated: October 23, 2026