**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LILIAN PAHOLA CALDERON JIMENEZ and LUIS GORDILLO, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Defendants-Respondents. | Civil Action<br>No. 18-cv-10225-PBS |

**ORDER**

October 28, 2026

Saris, J.

Class counsel has moved to enforce the class action settlement agreement in this case on behalf of Victor Alexander Granda Jimenez.[1] Class counsel argues that the government has violated the settlement agreement by refusing to join Granda Jimenez's motion to reopen and dismiss his removal order. The government responds that it has no obligation under the settlement agreement to join Granda Jimenez's motion because his removal order was issued by the U.S. Department of Homeland Security ("DHS") in

[1] Class counsel also filed the motion to enforce on behalf of Nathalya Alves da Silva. Upon examination of the documentation in Alves da Silva's case, the government has taken the position that she is not a class member because she does not have a final removal order. The parties are conferring on this issue, and this order does not resolve the motion with respect to Alves da Silva.

expedited removal proceedings rather than by an immigration judge in standard removal proceedings.

The Court assumes familiarity with its prior orders resolving disputes about the meaning of the settlement agreement in this case. See Calderon Jimenez v. Noem, No. 18-cv-10225, 2026 WL 574620 (D. Mass. Mar. 2, 2026); Calderon Jimenez v. Noem, No. 18-cv-10225, 2026 WL 184500 (D. Mass. Jan. 23, 2026). After review of the parties' filings and a hearing, the Court allows the motion to enforce with respect to Granda Jimenez.

The current dispute concerns Section II of the settlement agreement, which establishes a process for class members to eliminate their final removal orders via a joint motion to reopen and dismiss their removal proceedings ("JMTR"). Class members may submit a request that meets certain requirements to U.S. Immigration and Customs Enforcement's Office of the Principal Legal Advisor ("ICE OPLA") seeking ICE OPLA's consent to a JMTR. See Dkt. 654-1 ¶ II(B). The settlement agreement provides that:

> ICE OPLA attorneys who receive requests to join motions to reopen and dismiss will review each request on a case-by-case basis and will presumptively join motions to reopen and dismiss filed by Noncitizen Class Members who comply with the requirements in Section II(B) [for a JMTR request] and demonstrate they are prima facie eligible for either (a) consular processing utilizing the Form I-601A, or (b) adjustment of status. ICE OPLA attorneys may decline to join a motion to reopen for a Noncitizen Class Member who has met the requirements of this paragraph and II(B) if ICE determines, in its sole discretion based on an assessment of the totality of the facts and circumstances, that an individual (1) is a

> threat to public safety, typically because of serious criminal conduct; (2) is a threat to national security; or (3) has engaged in serious immigration benefit fraud or is a repeat immigration violator.

Id. ¶ II(A). The government contends that this provision only contemplates that ICE OPLA will join motions to reopen standard removal proceedings in immigration court and that ICE OPLA has no obligation to join efforts to reopen and dismiss expedited removal orders issued by DHS (either by U.S. Customs and Border Protection ("CBP") or by ICE). See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108-110 (2020) (describing the difference between standard and expedited removal proceedings).

Federal common law governs the adjudication of a motion to enforce a settlement agreement in "a case like this one, arising under federal law and brought in federal court."[2] Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F.3d 77, 85 (1st Cir. 2021). "[F]ederal common law incorporates general principles of contract . . . law." InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003); see Nault v. United States, 517 F.3d 2, 4 (1st Cir. 2008) (explaining that courts apply "the same basic rules that govern the interpretation of ordinary contracts" when construing a settlement agreement). Courts applying federal common law "are normally 'free to borrow from state law,' absent

[2] The settlement agreement in this case also contains a choice-of-law provision selecting federal law. See Dkt. 654-1 ¶ IX(I).

any conflict between federal interests and the borrowed state law." Commonwealth Sch., 994 F.3d at 85 (quoting McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994)).

The Court concludes that Section II of the settlement agreement applies to class members with expedited removal orders issued by DHS. The government does not dispute that a noncitizen with an expedited removal order has "a final order of removal" and, thus, may be a "Noncitizen Class Member" under the settlement agreement. Dkt. 654-1 ¶ I(C) (requiring "a final order of removal" for class membership); cf. 8 C.F.R. § 235.3(b)(7) (explaining when an expedited removal order "is considered final"). Section II speaks in broad terms about "Noncitizen Class Members" and "motions to reopen and dismiss." Dkt. 654-1 ¶ II. Nothing in its plain language distinguishes between class members with standard removal orders issued by an immigration judge and those with expedited removal orders issued by DHS. The apparent purpose of Section II is to provide all class members with final removal orders who are eligible for lawful permanent resident status with a mechanism to streamline the process for applying for such status, unless ICE determines they are public safety or national security threats or have engaged in certain immigration violations. See 11 Williston on Contracts § 31:4 (4th ed. 2026) ("[T]he object in interpreting or construing a written contract is to ascertain the meaning and intent of the parties as expressed in and determined by the words

they used . . . ."); Barbetti v. Stempniewicz, 189 N.E.3d 264, 279 (Mass. 2022) ("To ascertain and effectuate the intent of the parties as manifested by the words used and the object to be accomplished is the goal of all interpretations of written agreements." (quoting MacDonald v. Gough, 93 N.E.2d 260, 262 (Mass. 1950))).

This intent is manifest in the parties' representations to the district judge who approved the settlement agreement. In their joint motion for preliminary settlement approval, the parties stated that the agreement "treats [class members] equitably relative to each other" and "offers the same relief to every class member," including "a process for seeking to reopen proceedings." Dkt. 653 at 17. Similarly, their joint motion for final settlement approval explained that "all class members have fundamentally the same rights and protections under the Settlement Agreement." Dkt. 671 at 17-18. At no point did the parties suggest that the agreement treats class members with expedited removal orders differently than those with standard removal orders.

The government's primary response is that Section II does not apply to class members with expedited removal orders because those orders legally cannot be reopened. The government stresses that a noncitizen who is ordered removed on an expedited basis "is not entitled to a hearing before an immigration judge in [standard removal proceedings], or to an appeal of the expedited removal

order to the Board of Immigration Appeals.” 8 C.F.R. § 235.3(b)(2)(ii); see 8 U.S.C. § 1225(b)(1)(A)(i) (providing that an immigration “officer shall order” certain noncitizens “removed from the United States without further hearing or review”); id. § 1225(b)(1)(C) (stating that an expedited removal order “is not subject to administrative appeal” except for review of a negative credible fear determination). The government contrasts this bar on administrative review with the express statutory and regulatory authority for motions to reopen standard removal proceedings in immigration court, see 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.23(b), including joint motions to reopen, see 8 C.F.R. § 1003.23(b)(4)(iv).

The Court is not convinced that expedited removal orders cannot be reopened. The government cites provisions barring administrative review or appeal of an expedited removal order rather than reopening of such an order. By contrast, 8 C.F.R. § 103.5(a)(1)(i) broadly provides that “when the affected party files a motion, the [DHS] official having jurisdiction may, for proper cause shown, reopen the proceeding or reconsider the prior decision.” The Supreme Court, the First Circuit, and other courts have cited 8 C.F.R. § 103.5 as authorizing DHS to reopen expedited removal orders or other types of removal orders issued by DHS. See Thuraissigiam, 591 U.S. at 140 n.28 (expedited removal orders); Santos v. Blanche, 190 F.4th 173, 186-91 (2d Cir. 2026) (reinstated

removal order); Xu v. Garland, 26 F.4th 100, 103-04 (1st Cir. 2022) (final administrative removal order); Escoto-Castillo v. Napolitano, 658 F.3d 864, 866 (8th Cir. 2011) (same). The government points to a separate regulation stating that "[t]he provisions of [§] 103.5 shall not apply to credible fear determinations," 8 C.F.R. § 208.30(g)(1)(i), but that regulation on its face does not apply to the expedited removal order itself. And contrary to the government's argument, the regulations outline a process for expedited removals that can be reopened and dismissed. See 8 C.F.R. § 235.3(b)(2)-(7).

Agency practice confirms that expedited removal orders can be reopened. A separate immigration class action settlement with the government provided a mechanism for class members to ask DHS to "rescind" an expedited removal order. Dkt. 857-1 at 7. Class counsel has cited habeas cases in this district in which DHS has cancelled an expedited removal order or moved a noncitizen with an expedited removal order into standard removal proceedings. See Lopes Ramiro v. Moniz, No. 25-cv-11851 (D. Mass. July 22, 2025), Dkt. 36-1; Orellana Juarez v. Moniz, No. 25-cv-11266 (D. Mass. May 12, 2025), Dkt. 15 at 1-2. Class counsel has also provided declarations from immigration attorneys who state that they are aware of various instances in which DHS has done the same. See Dkt. 857-2 ¶ 13; Dkt. 858 ¶¶ 6, 8-10; Dkt. 859 ¶¶ 4-5; Dkt. 860 ¶¶ 4, 6; Dkt. 861 ¶ 4; Dkt. 862 ¶ 3. Although DHS framed its

actions in these instances using terms like "rescind" and "cancel" rather than "reopen," the fact remains that DHS appears to regularly exercise its authority to eliminate expedited removal orders as § 103.5(a)(1)(i) allows.

The government separately contends that Section II must refer only to motions to reopen standard removal proceedings in immigration court because it tasks ICE OPLA in the appropriate "jurisdiction" with deciding whether to grant a JMTR request and ICE OPLA represents the government in immigration court but not in expedited removal proceedings. Relatedly, the government asserts that ICE OPLA has no authority to join a motion to reopen an expedited removal order since it plays no role in the expedited removal process. And while § 1003.23(b)(4)(iv) expressly permits joint motions to reopen in standard removal proceedings, the government stresses, § 103.5 does not.

Although the government's contention that Section II's language most naturally refers to removal orders issued by an immigration judge has some force, the Court is ultimately unpersuaded that Section II does not also apply to class members with expedited removal orders. It appears that the parties failed to contemplate that some class members might have expedited removal orders rather than standard ones. Yet as just explained, a legal mechanism exists for moving to reopen an expedited removal order, and Section II's plain language covers such a motion. The fact

that ICE OPLA plays no role in expedited removal proceedings does not mean that it cannot serve the function of determining whether reopening an expedited removal order is warranted under the terms of the settlement agreement.

Finally, the government argues that applying Section II to class members with expedited removal orders would improperly invade on the attorney-client relationship between ICE OPLA and ICE Enforcement and Removal Operations ("ICE ERO") because the requirement for ICE OPLA to join certain motions to reopen would force it to advise ICE ERO, its client, in a certain way. Granda Jimenez's case does not directly implicate this concern because CBP, rather than ICE, issued his expedited removal order. In any event, as just noted, the settlement agreement assigns ICE OPLA the function of determining whether reopening an expedited removal order is warranted under the agreement's terms. ICE OPLA is carrying out that function, rather than acting as ICE ERO's counsel, when it joins a motion to reopen.

Accordingly, the motion to enforce the settlement agreement (Dkt. 841) is **ALLOWED** with respect to Granda Jimenez. ICE OPLA shall review Granda Jimenez's JMTR request in accordance with Section II of the settlement agreement.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge